# Exhibit B

1 Melissa D. Ingalls (State Bar No. 174861)
melissa.ingalls@kirkland.com
2 Robyn E. Bladow (State Bar No. 205189)
robyn.bladow@kirkland.com
3 Tammy A. Tsoumas (State Bar No. 250487)
tammy.tsoumas@kirkland.com
4 **KIRKLAND & ELLIS LLP**
333 South Hope Street
5 Los Angeles, California 90071
Telephone: (213) 680-8552
6 Facsimile: (213) 808-8073

7 Attorneys for Defendants DIRECTV, Inc. and
DIRECTV Holdings LLC
8

9 **UNITED STATES DISTRICT COURT**

10 **NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 11 | ROBERT GARY LIPPINCOTT, JR., individually, and on behalf of all others similarly situated, | ) CASE NO. 3:15-cv-05096 ) ) ) |
| 12 | | |
| 13 | *Plaintiff,* | ) **NOTICE OF REMOVAL** ) |
| 14 | | ) |
| 15 | v. | ) ) |
| 16 | DIRECTV, INC. and DIRECTV HOLDINGS, LLC, | ) ) |
| 17 | | ) |
| 18 | *Defendants.* | ) ) |
| 19 | | ) ) |

NOTICE OF REMOVAL                                                              Case No. 3:15-cv-05096

1   Defendants DIRECTV, Inc.[1], and DIRECTV Holdings LLC (collectively, "DIRECTV"), by
2   and through their counsel, hereby give notice of the removal of this action, from the Superior Court
3   of the State of California for the County of Sonoma to the United States District Court for the
4   Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on the
5   following facts.

## BACKGROUND

7   1.  Plaintiff Robert Gary Lippincott, Jr. filed this putative class action in the Superior
8   Court of the State of California, Sonoma County on October 6, 2015.  *See* Ex. 1 ("Complaint" or
9   "Compl.") at 1.  DIRECTV was served on October 7, 2015, and DIRECTV has filed this Notice of
10  Removal within thirty (30) days of its receipt of Plaintiff's Complaint, which was the first pleading
11  received by DIRECTV, through service or otherwise, setting forth the claim for relief upon which
12  this action is based.  This notice is therefore timely under 28 U.S.C. § 1446(b).
13  2.  Plaintiff is a resident of Sonoma County, California.  Compl. ¶¶ 19-20.
14  3.  DIRECTV is headquartered in El Segundo, California (*id.* ¶¶ 21-22), and provides
15  multi-channel digital television programming services via satellite to individuals and businesses
16  throughout the United States.  Among other services available from DIRECTV, DIRECTV is the
17  only multi-channel television service provider to offer a sports programming package that allows
18  customers who subscribe to it to view all out-of-market, Sunday afternoon (Eastern time) NFL
19  games.  *Id*. ¶¶ 4, 8.  That sports programming package is called NFL Sunday Ticket®.  *Id.* ¶ 4.
20  Plaintiff alleges that, without NFL Sunday Ticket, he and others similarly situated are limited to
21  viewing NFL games that are "national telecast[s]" or games "provided by the subscriber's local team
22  and/or the local team's television partners."  *Id*. ¶ 30.  But with NFL Sunday Ticket, DIRECTV
23  subscribers are offered "exclusive access to presentations of Sunday afternoon NFL out-of-market
24  games."  *Id.* ¶ 32.
25  4.  Plaintiff alleges that he purchased "DIRECTV's NFL Sunday Ticket service
26  beginning in or around August 2010," and continues to subscribe to it to this day.  *Id.* ¶ 26.  Plaintiff

---

[1] DIRECTV, Inc. is a company that no longer exists.  DIRECTV, LLC, however, is a California limited liability company with its principal place of business in El Segundo, California.  DIRECTV, Inc. was merged into DIRECTV, LLC, with DIRECTV, LLC as the surviving entity.

1
NOTICE OF REMOVAL                                                                                           Case No. 3:15-cv-05096

contends that "DirecTV's monopoly over the broadcast of Sunday afternoon out of market NFL games allows it to charge consumers unreasonably high, supra-competitive prices for its NFL Sunday Ticket programming within the State" and that "[w]ith this power, DirecTV does, in fact, charge consumers unreasonably high, supra-competitive prices for this product." *Id.* ¶ 7. Plaintiff purports to bring this action individually and on behalf of "[a]ll DirecTV residential subscribers residing in the State of California who purchased NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time beginning four years prior to the filing of this complaint and until DirecTV's unfair and illegal conduct ends." *Id.* ¶ 44. Plaintiff seeks, among other things, an injunction against DIRECTV's allegedly wrongful conduct, and disgorgement of any profits DIRECTV obtained as a result of the allegedly illegal conduct. *Id.*, Prayer For Relief F-H.

5. DIRECTV, Inc. (a company that no longer exists, but which was merged into DIRECTV, LLC as the surviving entity), and DIRECTV Holdings LLC are the only defendants named in the Complaint, and each consents to and joins in this Notice of Removal.

### **BASIS FOR JURISDICTION**

6. This case is removable based on federal question jurisdiction, 28 U.S.C. §§ 1331, 1441, and 1446. Although Plaintiff's Complaint purports to assert three state law claims—for violations of California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), and quasi-contract/unjust enrichment common law—Plaintiff's claims are based on alleged "monopolistic" conduct by DIRECTV, are necessarily federal in character, and Plaintiff's right to relief depends upon the resolution of substantial, disputed questions of federal antitrust law. *See Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.*, No. 04-cv-01661, 2004 WL 1888769, at *5 (N.D. Cal. July 21, 2004) (denying a motion to remand because claims were federal in nature and relief depended on the resolution of substantial questions of federal law); *California ex rel. Lockyer v. Mirant Corp.*, No. 02-cv-VRW, 2002 WL 1897669, at *2 (N.D. Cal. Aug. 6, 2002) (same).

7. The "artful pleading" doctrine prevents a plaintiff from circumventing federal jurisdiction by omitting from the Complaint any allegations of explicit violations of federal law. Indeed, Plaintiff cannot "avoid federal jurisdiction by omitting from the complaint allegations of

federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (quoting *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989)). Under the doctrine, if "a plaintiff chooses to plead what 'must be regarded as a federal claim,' then 'removal is at the defendant's option.'" *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987)). Specifically, if the "right to relief depends on the resolution of a substantial, disputed federal question," removal is proper. *ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000). Shrouding a federal claim in state law language does not save it from removal. *Am. Mitac Corp. v. Fed. Ins. Co.*, No. 93-cv-2873, 1994 WL 110384, at *2 (N.D. Cal. Mar. 29, 1994) ("If the . . . state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading.").

        8.      Here, Plaintiff has sued one company—DIRECTV. (Compl. ¶ 2.) And Plaintiff premises each of his claims on allegations of DIRECTV's unilateral, "monopolistic" conduct. But California's antitrust laws simply do not regulate unilateral monopolistic conduct. *See* Cal. Bus. & Prof. Code § 16720 *et seq.*; *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012) (noting that unilateral monopoly claims are not cognizable under the California Cartwright Act); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1306 (S.D. Cal. 2009) (same); *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011) ("[T]he Cartwright Act applies only to a 'combination' involving 'two or more persons' . . . not to unilateral conduct"). The "monopolistic" conduct Plaintiff alleges (although untrue) is therefore only arguably actionable under Section 2 of the Sherman Act.

        9.      *National Credit Reporting Association* is instructive. *Nat'l Credit Reporting Ass'n,* 2004 WL 1888769, at *5. In that case, the plaintiff filed a complaint in California state court against certain credit reporting agencies alleging that each had market power as "one of the three dominant repositories of consumer credit information," and committed anticompetitive acts based on their "monopolistic" power. *Id.* at *1. But the plaintiff did not pursue any state or federal antitrust causes of action, and instead alleged just a violation of California's UCL. *Id.* In federal court, twenty-four

1 of the plaintiff's members had filed "a similar complaint but alleg[ed] violations of Section 2 of the
2 Sherman Act[.]" *Id.* Defendants removed the case on the basis of federal question jurisdiction,
3 citing the artful pleading doctrine, and plaintiff sought remand. Because the complaint was "void of
4 any allegations of an agreement or a conspiracy to act among defendants," and "the gravamen of
5 plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct to
6 maintain or augment its monopoly," the court found that plaintiff's UCL claim required resolution of
7 questions of federal law and denied remand. *Id.* at *3-5.

8     10. As in *National Credit*, the "gravamen" of Plaintiff's Complaint here is DIRECTV's
9 alleged unilateral "monopolistic" conduct:

10     a. "DirecTV's monopoly over the broadcast . . . allows it to charge consumers
11         unreasonably high, supra-competitive prices" (Compl. ¶ 7);
12     b. "DirecTV has trademarked NFL Sunday Ticket. It is a separate product from the
13         NFL game broadcasts" (Compl. ¶ 6);
14     c. "DirecTV's monopoly position serves no purpose other than to secure the ability to,
15         and in fact impose, unreasonably high, supra-competitive pricing on Plaintiff and
16         other residential subscribers" (Compl. ¶ 9);
17     d. "DirecTV's unreasonably high, supra-competitive pricing of NFL Sunday Ticket in
18         the State of California unjustly yields millions of dollars in excess profits for the
19         company. But for DirecTV's abuse of its market power and monopolistic leverage,
20         prices . . . would be much lower" (Compl. ¶ 11);
21     e. "DirecTV has no competition in the market for Sunday afternoon NFL out-of-market
22         live game broadcasts. Plaintiff and the Class are limited in their choices and pay
23         higher prices because of DirecTV's abuse of its monopoly power" (Compl. ¶ 35);
24     f. "DirecTV abuses its monopoly power by leveraging its status . . . to dictate supra-
25         competitive, non-negotiable prices" (Compl. ¶ 41);
26     g. "Defendants, aware of their monopoly position with respect to Sunday afternoon NFL
27         out-of-market live game video presentations, maliciously and oppressively abuse that
28         position by imposing unreasonably high prices on its NFL Sunday Ticket

subscribers" (Compl. ¶ 58);

    h. "But for DirecTV's abuse of its monopoly position, consumers would pay lower prices to watch Sunday afternoon NFL out-of-market live game video presentations" (Compl. ¶ 68);

    i. "Because of [DIRECTV's] abuse of their monopolistic position, the free market decisions of Plaintiff . . . were unjustifiably hampered" (Compl. ¶ 69).

11. Plaintiff then summarizes his three causes of action again with allegations of DIRECTV's "monopolistic" conduct. *See*, *e.g*., Compl. ¶¶ 55, 58, 60 (basing CLRA claim on DIRECTV's "abuse" of its "monopoly position" and its "extract[ion]" of "monopoly profits"); *id*. ¶¶ 67-69, 72 (basing UCL claim on "DirecTV's abuse of its monopoly position" and "extracting monopoly profits", and on violation of CLRA due to same unilateral monopolistic conduct); *id*. ¶ 77 (basing quasi-contract/unjust enrichment claim on the allegation that Plaintiff "conferred upon [DIRECTV] an economic benefit in the form of monopoly profits").

12. But, as in *National Credit*, without any state law antitrust violation to rely on, resolution of Plaintiff's claims necessarily requires a determination of whether DIRECTV's alleged unilateral, monopolistic actions violate Section 2 of the Sherman Act. *See, e.g.*, *See Nat'l Credit Reporting Ass'n,* 2004 WL 1888769, at *5. Because Plaintiff's claims are necessarily federal in character (as they are all predicated on allegations of DIRECTV's "monopolistic" conduct), and Plaintiff's right to relief depends upon the resolution of substantial, disputed questions of federal antitrust law, this case is removable under 28 U.S.C. §§ 1331, 1441, and 1446. Plaintiff's "artful pleading" is not sufficient to avoid federal jurisdiction. To the contrary, "Plaintiff has made a Sherman Act bed and must now lie in it." *Nat'l Credit Reporting Ass'n*, 2004 WL 1888769, at *5.

### PENDING FEDERAL LITIGATION

13. Plaintiff's motive for trying to plead around federal jurisdiction is no secret. Plaintiff filed the Complaint here only after fourteen other class action complaints had been filed in federal court—including by Plaintiff's own counsel—alleging violations of Sections 1 and 2 of the Sherman Act in connection with DIRECTV's exclusive NFL Sunday Ticket offering. Exs. 2-15. These class action complaints were filed by both residential DIRECTV subscribers (like Plaintiff) and

5
NOTICE OF REMOVAL                                Case No. 3:15-cv-05096

1  commercial DIRECTV subscribers (bars and restaurants). *Id.* A motion to transfer and consolidate
2  the pending federal cases as a Multidistrict Litigation in the Central District of California was also
3  already pending by the time Plaintiff filed this Complaint against DIRECTV. Ex. 18. A hearing on
4  that motion is set for December 3, 2015 in New Orleans, Louisiana before the Judicial Panel on
5  Multidistrict Litigation. *Id.* In addition, since Plaintiff filed his Complaint in state court, two more
6  complaints have been filed in federal court. Exs. 16-17.

7  14. Plaintiff's Complaint was copied in large part from the many pending federal
8  complaints—particularly the federal complaint Plaintiff's counsel filed in *Jammers, Inc. v. National
9  Football League, Inc. et al.*, No. 15-cv-06959 (C.D. Cal.). *Compare* Compl. ¶¶ 5, 7-9, 11-13, 27, 33,
10  35 *with* Ex. 11 (*Jammers* Compl.) ¶¶ 4, 47-52, 84-88, 126-131. For this reason, the basic substance
11  of the pending federal complaints and Plaintiff's Complaint is very similar. In particular, each
12  alleges that DIRECTV has monopolized the market for distribution of Sunday afternoon out-of-
13  market NFL games, and plaintiffs have therefore paid "supra-competitive prices" for the NFL
14  Sunday Ticket package.[2]

15  15. The principal differences between Plaintiff's Complaint and the pending federal cases
16  are the changes Plaintiff's counsel made to this Complaint to try to avoid federal jurisdiction. In
17  particular, Plaintiff: (i) omitted the NFL as a defendant; (ii) omitted several of the numerous
18  allegations made in federal court regarding the NFL and its agreement with DIRECTV (although a
19  few passing references to DIRECTV's NFL Sunday Ticket agreement remain, *e.g.*, Compl. ¶ 5,
20  Plaintiff never names the NFL as the other party to that agreement); and (iii) attempted to state
21  federal monopolization claims under California's CLRA and UCL— rather than assert Sherman Act
22  violations as the federal complaints do. But Plaintiff cannot carve out his own copycat litigation in
23  state court from the actions already pending in federal court when his Complaint is nothing other
24  than an "artfully pled" federal action. *See Nat'l Credit Reporting Ass'n*, 2004 WL 1888769, at *5.

---

[2] *Compare, e.g.,* Compl. ¶ 35 ("DirecTV has no competition in the market for Sunday afternoon NFL out-of-market live game broadcasts. Plaintiff and the Class are limited in their choices and pay higher prices because of DirecTV's abuse of its monopoly power") *with* Ex. 11 (*Jammers* Compl.) ¶ 4 (" . . . DirecTV is the sole distributor of out of market live NFL game feeds through DirecTV's 'NFL Sunday Ticket' service. This exclusive deal allows DirecTV to charge supra-competitive prices for NFL Sunday Ticket."); *compare, e.g.,* Compl. ¶¶ 7, 9, 11 (allegations of "supra-competitive" prices) *with* Ex. 11 (*Jammers* Compl.) ¶¶ 4, 49, 84 (same).

# NOTICE TO THE STATE COURT

16. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all adverse parties and filed with the Superior Court of the State of California, Sonoma County, where this case was originally filed.

# STATE COURT PLEADINGS PROVIDED

17. DIRECTV attaches hereto as Exhibits 19-22 all other process, pleadings, and orders previously served upon them in the state court action.

18. By removing this action to this Court, DIRECTV does not waive any defenses or its right to enforce the parties' agreement to arbitrate this dispute.

# VENUE

19. The state court in which this case was commenced is within this Court's federal district. Therefore, this action is properly removable to this Court pursuant to 28 U.S.C. § 1446(a).

20. Accordingly, for the above reasons, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

WHEREFORE, Defendants DIRECTV, Inc., a company that no longer exists, and DIRECTV Holdings LLC respectfully request that this action in the Superior Court of the State of California for Sonoma County be removed to this Court, and that no further proceedings be had in state court.

Dated: November 6, 2015

KIRKLAND & ELLIS LLP

/s/ *Melissa D. Ingalls*
Melissa D. Ingalls

Attorneys for Defendants DIRECTV, Inc. and DIRECTV Holdings LLC