Melissa D. Ingalls (Bar No. 174861)
melissa.ingalls@kirkland.com
Robyn E. Bladow (Bar No. 205189)
robyn.bladow@kirkland.com
Tammy A. Tsoumas (Bar No. 250487)
tammy.tsoumas@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone:      (213) 680-8400
Facsimile:      (213) 680-8500

*Attorneys for DIRECTV Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | CASE NO. 2:15-ml-02668-BRO (JEMx) |
| | **DIRECTV'S OPPOSITION TO PLAINTIFF LIPPINCOTT'S MOTION TO REMAND** |
| | Hon. Beverly Reid O'Connell |
| THIS DOCUMENT RELATES TO: | DATE:        March 29, 2016 |
| | TIME:         9:00 a.m. |
| *Lippincott v. DIRECTV, Inc.*, | LOCATION:   Courtroom 14 |
| Case No. CV 15-09996 BRO (JEMx) | |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND ................................................................................................ 3

    A. Twenty-Six NFL Sunday Ticket Cases Are Currently Pending In This
Court, Including Four Cases, In Addition To *Lippincott,* That Were
Filed By Lippincott's Attorneys. .......................................................... 3

    B. Plaintiff Filed A State Court Complaint Based Entirely On DIRECTV's
Alleged Monopolistic Conduct And Supposed Supra-Competitive Prices
For NFL Sunday Ticket, Leading DIRECTV To Remove His Complaint
On Federal Question Grounds. ............................................................. 4

III. ARGUMENT ..................................................................................................... 6

    A. Plaintiff's Claims Necessarily Raise A Substantial Question Under The
Federal Sherman Act`. ........................................................................ 8

        1. The gravamen of Plaintiff's Complaint is that DIRECTV has
unilaterally used its "monopoly" power to charge "supra-
competitive" prices, allegations which can only be assessed
under the Sherman Act. ............................................................. 8

        2. Plaintiff cannot avoid federal jurisdiction by simply calling his
"monopoly" allegations "descriptive terms" or by arguing that he
has pled alternative state law theories. .................................. 12

            a. Plaintiff cannot now disregard the allegations on which he
based his claims, all of which require resolution of federal
antitrust questions. ....................................................... 12

            b. Plaintiff has not pled any alternative theories based solely
on state law. ................................................................. 17

    B. The Federal Questions Raised By Plaintiff's Complaint Are Disputed
And Substantial, And Resolving Them In Federal Court Comports With
Principles of Federalism. ................................................................. 18

IV. CONCLUSION ................................................................................................ 21

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) ........................................................................ 9

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ............................................................................... 7, 13

*Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*,
   808 F.3d 694 (7th Cir. 2015) ..................................................................... 20

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   401 F. Supp. 2d 1022 (N.D. Cal. 2005) ....................................................... 7

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473, 1478 (9th Cir. 1986), *modified*, 810 F.2d 1517 (9th Cir. 1987) ......... 9

*Eichman v. Fotomat Corp.*,
   759 F.2d 1434 (9th Cir. 1985) ................................................................... 19

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
   852 F. Supp. 2d 1171 (N.D. Cal. 2012) ....................................................... 9

*Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.*,
   260 U.S. 261 (1922) .................................................................................. 19

*Gunn v. Minton*,
   133 S. Ct. 1059 (2013) .............................................................. 7, 19, 20, 21

*Hansen v. Blue Cross of Cal.*,
   891 F.2d 1384 (9th Cir. 1989) ..................................................................... 7

*Hendricks v. Dynegy Power Mktg., Inc.*,
   160 F. Supp. 2d 1155 (S.D. Cal. 2001) ................................................. 17, 18

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ................................................................. 9, 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   457 F. Supp. 2d 77 (D. Mass. 2006) ........................................................... 21

*Liberty Legal Found. v. Nat'l Democratic Party of USA, Inc.*,
   868 F. Supp. 2d 734 (W.D. Tenn. 2012) ..................................................... 20

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) ............................................................ passim

*Lorenzo v. Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) ....................................................... 9

*Marrese v. Am. Acad. of Orthopedic Surgeons*,
   470 U.S. 373 (1985)........................................................................19

*Morris v. Redwood Empire Bancorp*,
   128 Cal. App. 4th 1305 (2005) ......................................................14

*Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.*,
   2004 WL 1888769 (N.D. Cal. July 21, 2004) ...............................10

*PeopleBrowsr, Inc. v. Twitter, Inc.*,
   2013 WL 843032 (N.D. Cal. Mar. 6, 2013) ...................................11

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................9

*Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.*,
   159 F.3d 1209 (9th Cir. 1998) ..................................................passim

*U.S. Golf Ass'n v. Arroyo Software Corp.*,
   69 Cal. App. 4th 607 (1999) ..........................................................19

*Walter v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010)..........................................14

**Statutes**

15 U.S.C. § 1 et seq. (Sherman Act).................................................passim

28 U.S.C. § 1441 ....................................................................................7

## I.     INTRODUCTION

Plaintiff Robert Lippincott's Complaint belongs in federal court because it raises substantial, disputed federal questions that can only be resolved with reference to the federal Sherman Act.  Plaintiff's Complaint repeatedly alleges that DIRECTV has "monopoly power," "abuses its monopoly power," and has injured Plaintiff by charging "supra-competitive," "monopoly" prices for DIRECTV's NFL Sunday Ticket sports programming package.  There are twenty-five other complaints currently pending in federal court making the same "monopoly" and "supra-competitive" pricing allegations with regard to NFL Sunday Ticket, including four cases that were filed by the same attorneys that represent Plaintiff here.  But, unlike the plaintiffs in those twenty-five similar lawsuits, who joined the National Football League ("NFL") as a party and expressly alleged violations of the Sherman Act, Plaintiff here sued only DIRECTV (not the NFL), alleged unilateral monopolization actions by DIRECTV, and then asserted only claims under California's Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and for quasi-contract/unjust enrichment.  It is no secret why Plaintiff did not join the NFL (a New York corporation) as a defendant and did not expressly allege Sherman Act claims—Plaintiff is trying to carve out a copycat case in state court by pleading around federal jurisdiction.

The artful pleading doctrine, however, forecloses Plaintiff's attempt to avoid federal jurisdiction.  The doctrine recognizes that federal question jurisdiction exists where a plaintiff pleads state law claims that are necessarily premised on substantial federal questions.  Here, each of Plaintiff's claims turns on repeated allegations that DIRECTV has a "monopoly" and that DIRECTV has "abused its monopoly position" to charge "supra-competitive prices" for NFL Sunday Ticket.  These allegations of unilateral, monopolistic conduct are only actionable under the federal Sherman Act, not California state law, something Plaintiff's Motion to Remand does not dispute.  Accordingly, determining whether DIRECTV has a "monopoly," or has "abuse[d] its

1

monopoly position," or has charged "supra-competitive prices," must necessarily be resolved by reference to federal law.

Plaintiff's arguments to try to avoid that straightforward analysis are meritless. In his Motion to Remand, Plaintiff contends that his pervasive allegations about DIRECTV's monopolistic conduct are only "descriptive terms," and that he has supposedly pled alternative theories premised solely on California state law. Both of these arguments are easily refuted by the Complaint's actual allegations. Far from being simply "descriptive," Plaintiff's monopoly allegations are the essential and pivotal allegations upon which his purported state law claims turn. And, contrary to the assertions in his Motion, Plaintiff has not pled any theory other than the monopoly theory set forth in the Complaint.

Finally, the United States Supreme Court has instructed courts to be mindful of "the federal-state balance" in cases where a plaintiff has pled state law claims that present substantial federal questions. Here, not only are Plaintiff's "artfully pled" Sherman Act claims within the exclusive jurisdiction of federal courts, but there also are twenty-five other federal actions asserting broadly similar claims under the Sherman Act, tipping that balance strongly in favor of federal jurisdiction. Indeed, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated all twenty-six NFL Sunday Ticket actions before this Court for the very purpose of ensuring consistency and uniformity across the cases. Plaintiff should not be permitted to proceed on a separate track in state court when his claims raise substantial, disputed federal questions that can only be resolved by reference to Section 2 of the Sherman Act.

Plaintiff's Motion to Remand should be denied.

## II.    BACKGROUND

### A.    Twenty-Six NFL Sunday Ticket Cases Are Currently Pending In This Court, Including Four Cases, In Addition To *Lippincott,* That Were Filed By Lippincott's Attorneys.

NFL Sunday Ticket is a sports programming package offered exclusively by DIRECTV that allows customers who subscribe to it to view all live out-of-market, Sunday afternoon (Eastern time) NFL games.  *Lippincott* is just one of twenty-six pending lawsuits related to DIRECTV's NFL Sunday Ticket package.  *See* Dkt. No. 27 (2/1/16 Order Setting Case Mgmt. Conf.), at 12-14 (listing twenty-five cases); *see also Sir Waldon Inc. d/b/a Oggi's Pizza v. Nat'l Football League, Inc.*, No. 2:16-cv-01025, Dkt. No. 1(C.D. Cal.).  Thomas Abrahamian filed the first NFL Sunday Ticket complaint in this Court on June 17, 2015, naming both DIRECTV and the NFL as defendants and alleging that the companies violated Sections 1 and 2 of the federal Sherman Act by distributing out-of-market, Sunday afternoon NFL games through the NFL Sunday Ticket package and by allegedly charging "supra-competitive" monopoly prices.  *See Abrahamian v. Nat'l Football League, Inc.*, No. 2:15-cv-04606, Dkt. No. 1 (C.D. Cal.).  Plaintiff Abrahamian, a California residential subscriber to DIRECTV, just like Plaintiff Lippincott here, filed his lawsuit on behalf of a putative class that would encompass the class alleged by Plaintiff.  *See id.*, ¶¶ 12, 49.

Since *Abrahamian*, over twenty similar actions have been filed, including, in addition to *Lippincott*, four additional lawsuits filed by Lippincott's counsel.  *See Jammers, Inc. v. Nat'l Football League, Inc.,* No. 2:15-cv-06959, Dkt. No.1 (*Jammers* Compl.) (C.D. Cal.); *Two Pauls v. Nat'l Football League*, No. 2:15-cv-09180, Dkt. No. 1 (*Two Pauls* Compl.) (C.D. Cal.); *P.J. Hafiz Club Mgmt., Inc.*, No. 2:15-cv-09175, Dkt. No. 1 (*PJ Hafiz* Compl.) (C.D. Cal.); *JS Entm't, Inc. v. Nat'l Football League, Inc.*, No. 2:15-cv-09794, Dkt. No. 1 (*JS Entm't* Compl.) (C.D. Cal.).  Like the other federal actions, *Jammers, Two Pauls, P.J. Hafiz,* and *JS Entertainment* name DIRECTV and the NFL as defendants and allege violations of Sections 1 and 2 of the

3

Sherman Act in connection with DIRECTV's NFL Sunday Ticket programming package.  *See* Dkt *Jammers* Compl. ¶¶ 111-31; *Two Pauls* Compl. ¶¶ 111-131; *P.J. Hafiz* Compl. ¶¶ 70-90; *JS Entm't* Compl. ¶¶ 112-25.

On December 8, 2015, the JPML centralized the NFL Sunday Ticket cases in this Court.  *See In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, MDL No. 2668, Dkt. No. 112.  The JPML found that the complaints presented "[c]ommon questions of fact" including "the effect of the alleged agreements on the relevant market; whether defendants have pro-competitive justifications for the alleged conduct; and the scope of relief." *Id.* at 2.  The JPML therefore decided "that centralization will . . . promote the just and efficient conduct of this litigation" and "prevent inconsistent pretrial rulings." *Id.* at 1-2.

**B.    Plaintiff Filed A State Court Complaint Based Entirely On DIRECTV's Alleged Monopolistic Conduct And Supposed Supra-Competitive Prices For NFL Sunday Ticket, Leading DIRECTV To Remove His Complaint On Federal Question Grounds.**

Plaintiff Lippincott filed the present action in the California Superior Court for Sonoma County on October 6, 2015.  *See Lippincott v. DIRECTV, Inc.*, No. 3:15-cv-05096 ("N.D. Cal. Dkt."), Dkt. No. 1 (Notice of Removal), Ex. 1 ("*Lippincott* Compl.") (N.D. Cal.).  At the time Lippincott filed his Complaint, there were over a dozen complaints and a JPML motion to transfer already pending in federal court. *See id.*, Dkt. No. 2 (Notice of Pendency of Other Actions).  Like many of the then-existing complaints, Plaintiff's Complaint was copied in large part from the pending federal complaints—particularly the federal complaint Plaintiff's counsel had already filed in *Jammers*. *Compare Lippincott* Compl. ¶¶ 5, 7-9, 11-13, 27, 33, 35 *with Jammers* Compl. ¶¶ 4, 47-52, 84-88, 126-131.  For this reason, the basic substance of the pending federal complaints and Plaintiff's Complaint is very similar.  In particular, each alleges that DIRECTV has monopolized the market for distribution of Sunday

4

1  afternoon out-of-market NFL games, and plaintiffs have therefore paid "supra-

2  competitive prices" for the NFL Sunday Ticket package.[1]

3         The principal differences between Plaintiff's Complaint and the pending federal

4  cases are changes that were made to this Complaint in what one can only assume was

5  an effort to try to avoid federal jurisdiction.  In particular, Plaintiff:  (i) omitted the

6  NFL as a defendant; (ii) omitted several of the numerous allegations made in federal

7  court regarding the NFL and its agreement with DIRECTV (Plaintiff's Complaint

8  contains passing references to DIRECTV's NFL Sunday Ticket agreement,

9  *e.g.*, *Lippincott* Compl. ¶ 5, but never names the NFL as the other party to that

10  agreement); and (iii) attempted to state federal monopolization claims under

11  California's CLRA and UCL—rather than assert Sherman Act violations as the

12  federal complaints do.

13         But the theory underlying Plaintiff's Complaint is the same as the theory

14  underlying the other complaints' Sherman Act monopoly claims:  that DIRECTV

15  allegedly has a "monopoly" and that "[b]ut for DirecTV's abuse of its market power

16  and monopolistic leverage, prices . . . would be much lower."  *Lippincott* Compl. ¶¶ 9,

17  11.  Between the "Introduction," "Factual Allegations," and "Class Action

18  Allegations" sections of the Complaint, there are 22 paragraphs that expressly allege

19  that DIRECTV has a "monopoly" and "abuses its monopoly power", and allege

20  purported facts in support of that theory.  *See, e.g., id.* ¶¶ 4, 5, 7, 8, 9, 10, 11, 12, 13,

21  23, 27, 28, 32, 33, 35, 36, 37, 38, 39, 41, 42, 47.  Each of Plaintiff's causes of action

22  then "incorporates and re-alleges" all of those monopoly allegations as the basis for

23  Plaintiff's claims.  *See id.* ¶¶ 51, 55, 58, 60 (basing CLRA claim on DIRECTV's

24

25  [1] *Compare, e.g., Lippincott* Compl. ¶ 35 ("DirecTV has no competition in the market
    for Sunday afternoon NFL out-of-market live game broadcasts.  Plaintiff and the Class
26  are limited in their choices and pay higher prices because of DirecTV's abuse of its
    monopoly power") *with Jammers* Compl. ¶ 4 ("DirecTV is the sole distributor of out
27  of market live NFL game feeds through DirecTV's 'NFL Sunday Ticket' service.
    This exclusive deal allows DirecTV to [c]harge supra-competitive prices for NFL
28  Sunday Ticket."); *compare, e.g., Lippincott* Compl. ¶¶ 7, 9, 11 (allegations of "supra-
    competitive" prices) *with Jammers* Compl. ¶¶ 4, 49, 84 (same).

5

"abuse" of its "monopoly position" and its "extract[ion]" of "monopoly profits"); *id.* ¶¶ 64, 67-69, 72 (basing UCL claim on "DirecTV's abuse of its monopoly position" and "extracting monopoly profits", and on violation of CLRA due to same unilateral monopolistic conduct); *id.* ¶¶ 74, 77 (basing quasi-contract/unjust enrichment claim on DIRECTV's "monopoly profits").

Recognizing the Complaint as a classic attempt at carving out a copycat state-court action through artful pleading of a Sherman Act Section 2 unilateral monopolization claim (a claim that is not redressable under California state law), DIRECTV removed this case to federal court. *See Lippincott* N.D. Cal. Dkt. No. 1. DIRECTV also filed a related-case notice with the JPML, identifying this case as a tag-along action for inclusion in any coordinated proceedings. *See In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, MDL No. 2668, Dkt. No. 66. Plaintiff filed his Motion to Remand in the Northern District of California on November 13, 2015, and noticed a hearing for December 18, 2015. *See* N.D. Cal. Dkt. No. 16. Accordingly, the parties completed briefing on Plaintiff's Motion at the same time that the JPML was considering the transfer motion. *See id.*, Dkt. No. 25 (DIRECTV's Opp. to Mot. to Remand) & No. 27 (Pl.'s Reply).

On December 14, 2015, the JPML issued a Conditional Transfer Order transferring Lippincott's Complaint to this Court. *See In re National Football League's "Sunday Ticket" Antitrust Litig.*, MDL No. 2668, Dkt. No. 114. Plaintiff Lippincott did not oppose the Conditional Transfer Order, and it became final on December 22, 2015. *See id.* No. 117. Plaintiff then filed a new version of his remand motion in this Court on January 29, 2016. *See* Case No. 2:15-ml-02668-BRO (JEMx), Dkt. No. 25.

## III.  ARGUMENT

The "artful pleading" doctrine prevents a plaintiff from "avoid[ing] federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340

F.3d 1033, 1041 (9th Cir. 2003) (quoting *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989)).  Under this doctrine, if "a plaintiff chooses to plead what 'must be regarded as a federal claim,' then 'removal is at the defendant's option.'" *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.,* 159 F.3d 1209, 1213 (9th Cir. 1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987)).  "The artful pleading doctrine allows courts to 'delve beyond the face of the state court complaint and find federal question jurisdiction' by 'recharacteriz[ing] a plaintiff's state-law claim as a federal claim.'"  *Lippitt*, 340 F.3d at 1041 (citation omitted).

In *Lippitt*, the Ninth Circuit recognized that the artful pleading doctrine is commonly used in "substantial federal question cases."  *Id.*  The Supreme Court has distilled the standard for finding "substantial federal question" jurisdiction to four factors:  "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013); *see also Lippitt*, 340 F.3d at 1042 (jurisdiction exists where "a substantial, disputed question of federal law is a *necessary* element of . . . the well-pleaded state claim" or "the right to relief depends on the resolution of a substantial, disputed federal question").

Federal jurisdiction over the entire case is proper even when only one asserted state law claim turns on a substantial federal question.  *See Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) ("If only one of several state claims satisfies the requirements for removal on federal-question grounds, then any other purely state claims in the same complaint may also be determined by the federal court under its supplemental jurisdiction.") (citing 28 U.S.C. § 1441(c)).  Here, all three of Plaintiff's claims raise substantial federal questions and therefore belong in federal court along with the rest of the NFL Sunday Ticket cases.

**A.  Plaintiff's Claims Necessarily Raise A Substantial Question Under The Federal Sherman Act**

"Courts have fashioned a number of proxies to determine whether a state claim depends on the resolution of a federal question to such an extent as to trigger subject matter jurisdiction." *Lippitt*, 340 F.3d at 1045.  In evaluating whether jurisdiction exists, a court must determine if the federal question goes to the "gravamen" of a plaintiff's claims, or, in other words, "[i]s the federal question 'basic' and 'necessary' as opposed to 'collateral' and 'merely possible'?  Is the federal question 'pivotal' as opposed to merely 'incidental'?  Is the federal question 'direct and essential' as opposed to 'attenuated?'" *Id.* (internal citations omitted); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (substantial federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law").

**1.  The gravamen of Plaintiff's Complaint is that DIRECTV has unilaterally used its "monopoly" power to charge "supra-competitive" prices, allegations which can only be assessed under the Sherman Act.**

As explained in DIRECTV's Notice of Removal (N.D. Cal. Dkt. No. 1, ¶¶ 10-11), the gravamen of Plaintiff's Complaint is that DIRECTV has a "monopoly" that "allows it to charge . . . unreasonably high, supra-competitive prices for its NFL Sunday Ticket programming," and "[b]ut for DirecTV's abuse of its market power and monopolistic leverage, prices . . . would be much lower." *Lippincott* Compl. ¶¶ 7, 11; *see also id.* ¶¶ 9, 27, 35-41, 55, 58-60, 67-69, 72, 77-79 (same or substantially similar allegations).  Each of Plaintiff's claims is specifically and exclusively premised on this theory.  *See id.* ¶¶ 55, 58, 60 (basing CLRA claim on DIRECTV's "abuse" of its "monopoly position" and its "extract[ion]" of "monopoly profits"); *id.* ¶¶ 67-69, 72 (basing UCL claim on "DirecTV's abuse of its monopoly position" and

"extracting monopoly profits," and on violation of CLRA due to same unilateral monopolistic conduct); *id.* ¶ 77 (basing quasi-contract/unjust enrichment claim on DIRECTV's "monopoly profits").

And, as was also explained in DIRECTV's Notice of Removal (N.D. Cal. Dkt. No. 1, ¶¶ 8-9, 12), the unilateral monopolistic conduct Plaintiff alleges (although untrue) is only arguably actionable under Section 2 of the Sherman Act. That is because "[n]o California statute deals expressly with monopolization or attempted monopolization." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), *modified*, 810 F.2d 1517 (9th Cir. 1987); *see also Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012) (noting that unilateral monopoly claims are not cognizable under the California Cartwright Act); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1306 (S.D. Cal. 2009) (same). Rather, it is the federal Sherman Act and decades of federal case law that address and set the standards for assessing the monopolistic conduct alleged in the Complaint. *See, e.g., Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("[m]onopoly power is the power to control prices or exclude competition" and can be proven under Section 2 of the Sherman Act by "(1) defin[ing] the relevant market, (2) show[ing] that the defendant owns a dominant share of that market, and (3) show[ing] that there are significant barriers to entry and show[ing] that existing competitors lack the capacity to increase their output in the short run") (internal quotation omitted); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1000 (9th Cir. 2010) (explaining that a Sherman Act § 2 monopoly claim requires anticompetitive conduct, which can be proven by showing that a monopolist "abuse[d] or leverage[d] its monopoly power" to harm competition); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (defining "supracompetitive prices" as "prices above competitive levels"). Plaintiff's Motion does not dispute this crucial distinction between California and federal law.

1    Another California district court recognized the importance of this distinction in

2    another artful pleading case involving California state law claims that were, in fact,

3    premised on federal antitrust laws.  *See Nat'l Credit Reporting Ass'n, Inc. v. Experian*

4    *Info. Solutions, Inc.*, 2004 WL 1888769, at *5 (N.D. Cal. July 21, 2004).  In *National*

5    *Credit*, the plaintiff filed a complaint in California state court against certain credit

6    reporting agencies alleging that each had market power as "one of the three dominant

7    repositories of consumer credit information," and committed anticompetitive acts

8    based on their "monopolistic" power.  *Id.* at *1.  But the plaintiff did not pursue any

9    state or federal antitrust causes of action, and instead attempted to allege a violation of

10   California's UCL.  *Id.*  At the same time in federal court, twenty-four of the plaintiff's

11   members had filed "a similar complaint but alleg[ed] violations of Section 2 of the

12   Sherman Act[.]"  *Id.*  Defendants removed the case on the basis of federal question

13   jurisdiction, citing the artful pleading doctrine, and plaintiff sought remand.  Looking

14   past the plaintiff's own characterization of its claims, the court explained that "the

15   gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in

16   anticompetitive conduct to maintain or augment its monopoly" and that therefore the

17   "plaintiff seems to have asserted only claims for monopolization or attempted

18   monopolization under Section 2 of the Sherman Act."  *Id.* at *3.  The court then

19   explained that "Federal courts have exclusive jurisdiction over such claims because

20   California's antitrust laws do not address such unilateral, monopolization

21   conduct."  *Id.*  Because the plaintiff's UCL claim required resolution of questions of

22   federal law, the court denied remand.  *Id.*

23   As in *National Credit*, the gravamen of Plaintiff's Complaint here is unilateral,

24   monopolistic conduct that is only arguably actionable under Section 2 of the Sherman

25   Act.  Plaintiff's only response to *National Credit* is to argue that the plaintiff in that

26   case expressly predicated its claim under the UCL on federal law.  Mot. at 4-5.  But

27   the artful pleading and substantial federal question doctrines are not limited to

28   situations where a state law claim *expressly* mentions a violation of federal law on its

10

face.  Indeed, the exact opposite is true.  The doctrines are intended for cases, like this one, where the plaintiff has artfully omitted an express federal claim, even though the "gravamen" of the lawsuit is federal in nature.  *See Sparta*, 159 F.3d at 1212 ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law."); *Nat'l Credit*, 2004 WL 1888769, at *2 (same); *see also Grable*, 545 U.S. at 312 ("[F]ederal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").

In addition, Plaintiff appears to have abandoned any argument based on *PeopleBrowsr, Inc. v. Twitter, Inc.*, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013), a case Lippincott previously cited in his reply to his remand motion filed in the Northern District of California, but did not raise in his remand motion in this Court.  As DIRECTV explained in its prior filings in this case, *PeopleBrowsr* underscores the difference between state law claims and claims that rely exclusively on federal antitrust challenges.  *PeopleBrowsr* was a garden-variety, business-to-business dispute involving claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, promissory estoppel, as well as a UCL claim predicated on the same allegations as those business torts.  *PeopleBrowsr* did not involve allegations about "abuse of monopoly power" or "supra-competitive pricing," let alone exclusive reliance on such antitrust allegations as the factual bases for the claims, the way Lippincott's Complaint's does here.  *Compare, e.g., Lippincott Compl. ¶¶ 9, 11* (alleging that DIRECTV has a "monopoly" and that DIRECTV supposedly "abuse[s]" this monopoly to charge "supra-competitive pric[es]") *with PeopleBrowsr, Inc. v. Twitter, Inc.*, Case No. 3:12-cv-06120-EMC (N.D. Cal.), Dkt. No. 1-1 (*PeopleBrowsr* Compl.) (no allegations that Twitter had a "monopoly" or charged "supra-competitive prices").

Because California law does not address Plaintiff Lippincott's monopolization claims, and therefore cannot answer the questions raised in the Complaint about

whether DIRECTV has a "monopoly," or has "abuse[d] its monopoly position," or charged "supra-competitive prices," Plaintiff's claims necessarily require a determination of whether DIRECTV's alleged actions violate Section 2 of the Sherman Act. *See, e.g.*, *See Nat'l Credit,* 2004 WL 1888769, at *5.

> **2.    Plaintiff cannot avoid federal jurisdiction by simply calling his "monopoly" allegations "descriptive terms" or by arguing that he has pled alternative state law theories.**

Brushing aside that his monopoly allegations necessarily require an analysis under Section 2 of the Sherman Act, Plaintiff makes two arguments for why this case should be remanded despite the federal questions raised in his Complaint:  (1) that his repeated and pervasive monopoly allegations are merely "descriptive terms" that the Court should ignore (Mot. at 8), and (2) that he has supposedly pled "alternative and independent theories" based purely on state law.  *Id.* at 10 (internal quotation omitted). As discussed below, both arguments should be rejected because they misapprehend the law and mischaracterize the allegations in the Complaint.

> **a.    Plaintiff cannot now disregard the allegations on which he based his claims, all of which require resolution of federal antitrust questions.**

Having filed a Complaint premised on allegations about monopolistic conduct, Plaintiff now contends after removal that these allegations are merely "descriptive terms that are sometimes associated with federal antitrust claims" and that "none of Plaintiff's claims even reference federal statutes." Mot. at 8.  Plaintiff's argument makes no attempt to address the relevant standard under the artful pleading doctrine. The question is not whether Plaintiff has explicitly referenced a federal statute or whether he has merely made incidental references to federal law.  Instead, it is whether the underlying premise of Plaintiff's claims turns on a federal question.  *See, e.g., Sparta,* 159 F.3d at 1212.  As the Ninth Circuit explained in *Sparta*, "[i]n addition to examining the literal language selected by the plaintiff, the district court

must analyze whether federal jurisdiction would exist under a properly pleaded complaint." *Id.* at 1212.  "[T]he rule that state law claims cannot be alchemized into federal causes of action by incidental reference . . .  has no application when relief is partially predicated on a subject matter committed exclusively to federal jurisdiction." *Id.* at 1212-13.[2]

Here, even a cursory review of the Complaint demonstrates that each of Plaintiff's causes of action is predicated on his multiple monopoly allegations. Indeed, Plaintiff's assertion that the monopoly allegations are simply "descriptive terms" is refuted by the Complaint's repeated and exclusive reliance on those allegations.  And it is the Complaint's allegations, not Plaintiff's post-removal arguments, that determine federal jurisdiction.  *See Sparta*, 159 F.3d at 1213 ("[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal . . . ."); *Nat'l Credit*, 2004 WL 1888769, at *4 (rejecting argument that federal issues were "merely an incidental reference" because "Plaintiff cannot at this juncture re-write its complaint").

With respect to his "unconscionable contract provision" claim under the CLRA, Plaintiff admits that he included the unilateral monopolization allegations in order to try to "establish the procedural and substantive elements of unconscionability under California law." Mot. at 8.  So, to support his CLRA claim, Plaintiff included allegations such as "Defendants abused their monopoly position, leaving Plaintiff . . . with no available market alternatives" (*Lippincott* Compl. ¶ 55), and DIRECTV "maliciously and oppressively abuse[s] that position by imposing unreasonably high prices . . . ." *Lippincott* Compl. ¶ 58.  Plaintiff also alleges that "[t]he price charged

---

[2] Plaintiff's Motion similarly misapprehends the well-pleaded complaint rule. Plaintiff argues that the Complaint "[c]omports" with the rule because "[o]n its face, Plaintiff's complaint does not state a claim that 'arises under' federal law." Mot. at 2. The question under the well-pleaded complaint rule is not whether the complaint states a federal claim, but instead whether "a *federal question* is presented on the face of the plaintiff's properly pleaded complaint." *See Caterpillar Inc.*, 482 U.S. at 391 (emphasis added); *see also Lippitt*, 340 F.3d at 1041 (noting that "[t]he artful pleading doctrine is a corollary to the well-pleaded complaint rule" that allows courts to consider federal questions that were artfully omitted from the complaint).

by DirecTV for its NFL Sunday Ticket service is disproportionately and unreasonably high . . . compared to the prices a competitive market would produce" (*Lippincott* Compl. ¶ 59), and that DIRECTV has allegedly "extract[ed] monopoly profits by charging . . . supra-competitive prices." *Lippincott* Compl. ¶ 60.

These allegations are not merely "descriptive." Rather, Plaintiff bases the essential elements of his claim exclusively on these monopolization allegations, which necessarily raise federal questions. *See Sparta*, 159 F.3d at 1212; *Nat'l Credit*, 2004 WL 1888769, at *3-5.[3] Indeed, without his monopoly allegations, Plaintiff's CLRA claim would amount to nothing more than a complaint that the retail price for NFL Sunday Ticket is just too high, which would not state a CLRA claim as a matter of law. *See Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1046-47 (N.D. Cal. 2010) (CLRA claim dismissed with prejudice where "Plaintiffs simply state that the imposition of the fee was unconscionable, without explaining how it 'shocked the conscience' or was 'harsh or oppressive'"); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1323 (2005) ("Allegations that the price exceeds cost or fair value, standing alone, do not state a cause of action.").

Plaintiff's UCL claim also depends entirely on Plaintiff's monopoly allegations. Plaintiff's claim under the UCL's unlawful prong is derivative of his CLRA claim, and therefore raises the exact same federal questions discussed above. *See Lippincott* Compl. ¶ 60. And his claim under the UCL's unfair prong is also predicated entirely on his monopoly abuse theory. While Plaintiff asserts that the allegations in Paragraphs 67-69 of the Complaint simply "track [the] elements" of a UCL unfairness claim (Mot. at 4), Plaintiff's Motion selectively quotes from those

---

[3] Nor does Plaintiff contend that the state law claims pled in the Complaint somehow provide the legal standards for assessing whether DIRECTV has a "monopoly", or "abused" a monopoly position, or charged "supra-competitive" prices. For example, California's unconscionability law, relied on by Plaintiff in his Motion, requires proof of both procedural (oppression/surprise) and substantive (shock the conscience) unconscionability. Mot. at 3. But no element of California unconscionability law provides the standards by which Plaintiff's monopoly allegations can be resolved. Only the Sherman Act does. *See, e.g., Image Technical Servs., Inc.*, 125 F.3d at 1202.

paragraphs and uses ellipses to omit the monopoly allegations that form the basis of that claim too:

| Plaintiff's Motion to Remand | Plaintiff's Complaint |
|---|---|
| "Plaintiff and members of the class have suffered substantial injury . . ." Mot. at 4 (quoting *Lippincott* Compl. ¶ 67). | "Plaintiff and members of the Class have suffered substantial injury **due to unreasonably high, supra-competitive prices** for NFL Sunday Ticket. Defendants have abused their superior bargaining position to extract **monopoly profits** from Plaintiff and the Class." *Lippincott* Compl. ¶ 67 (emphasis added). |
| "The substantial injury sustained by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers or competition . . ." Mot. at 4 (quoting *Lippincott* Compl. ¶ 68). | "The substantial injury sustained by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers or competition. **But for DirecTV's abuse of its monopoly position, consumers would pay lower prices** to watch Sunday afternoon NFL out-of-market live game video presentations." *Lippincott* Compl. ¶ 68 (emphasis added). |

| Plaintiff's Motion to Remand | Plaintiff's Complaint |
|---|---|
| "Neither Plaintiff nor other members of the Class could have reasonably avoided substantial injury . . ." Mot. at 4 (quoting *Lippincott* Compl. ¶ 69). | "Neither Plaintiff nor other members of the Class could have reasonably avoided substantial injury. **Because of Defendants' abuse of their monopolistic position, the free market decisions of Plaintiff and members of the Class were unjustifiably hampered**, leaving them with no meaningful choice in obtaining telecasts of Sunday afternoon NFL out-of-market live games." *Lippincott* Compl. ¶ 69 (emphasis added). |

Plaintiff's monopoly allegations are not merely surplusage—they are the only basis for Plaintiff's UCL claim, and thus the claim can only be evaluated by reference to Section 2 of the Sherman Act.

Finally, Plaintiff's unjust enrichment/quasi-contract claim also turns entirely on the Complaint's monopolization allegations. Plaintiff alleges that DIRECTV has retained "monopoly profits resulting from Defendants' supra-competitive pricing," and that this benefit is "unjust" because the price for NFL Sunday Ticket is "disproportionately and unreasonably high . . . compared to the prices a competitive market would produce." *Lippincott* Compl. ¶¶ 77-78. Again, the only way to evaluate whether DIRECTV's conduct was somehow "unjust" is to evaluate DIRECTV's supposed "monopoly power" under the Sherman Act.

Because each of Plaintiff's claims necessarily turns on an analysis of whether DIRECTV is a monopolist, whether DIRECTV abused its monopoly power, and whether DIRECTV reaped "monopolistic profits" by charging "supra-competitive prices for NFL Sunday Ticket," Plaintiff's claims are "merely a naked attempt to

16

enforce the Sherman Act in the guise of [California state law] claim[s] and remed[ies]." *Nat'l Credit*, 2004 WL 1888769, at *4. Plaintiff's claims therefore belong in federal court.

### b. Plaintiff has not pled any alternative theories based solely on state law.

Plaintiff also argues that his "right to relief *does not* require resolution of a substantial, disputed federal question" because he supposedly alleged "alternative and independent theories" that purportedly rely on "state law theor[ies]." Mot. at 9-10 (internal quotations omitted). Plaintiff's Complaint, however, is completely devoid of any such "alternative and independent theories." Indeed, Plaintiff's Motion does not describe what those theories supposedly are, let alone quote or cite any allegations from the Complaint that would support them. *See id.*

Instead, Plaintiff's Motion simply rehashes the elements of his state law claims, without articulating any specific theory actually alleged in the Complaint. *See id.* at 9 ("As discussed above, all three causes of action in Plaintiff's complaint can succeed on state law theories of liability."); *see also id.* at 4-5 (broadly summarizing the legal elements of his claims). Plaintiff's threadbare recitation of the legal elements of his state law claims is irrelevant to the artful pleading analysis. Indeed, the very purpose of the artful pleading doctrine is to "delve beyond the face of the state court complaint," *Lippitt*, 340 F.3d at 1041 (citation omitted), and to determine "whether federal jurisdiction would exist under a properly pleaded complaint." *See Sparta*, 159 F.3d at 1212. Here, as detailed above, each of Plaintiff's claims is premised entirely on monopoly allegations that can only be addressed with reference to Section 2 of the Sherman Act.

The lack of any true alternative state law theories in Plaintiff's Complaint also distinguishes this case from the two cases his remand motion relies on, *Lippitt* and *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1161 (S.D. Cal. 2001). *See* Mot. at 8-9. The plaintiff in *Lippitt* pled a "standard consumer protection claim

17

that challenges the methods used by Defendants when selling and marketing callable CDs." *Lippitt*, 340 F.3d at 1045-46.  The *Lippitt* court held that this "standard consumer protection claim" about deceptive sales practices "does not require a court to make an independent assessment about whether [d]efendants violated [federal] exchange rules or regulations," and that there was "no 'basic' or 'pivotal' federal question that impinges on his right to relief." *Id.*  By contrast, Plaintiff here chose to base his claims solely on alleged acts of unilateral monopolization.  Thus, unlike the claims in *Lippitt*, all of Plaintiff's claims *do* depend on a pivotal issue that is governed exclusively by federal law.

Plaintiff's reliance on *Hendricks* is similarly unavailing.  In *Hendricks*, the plaintiffs asserted claims under California's Cartwright Act and the UCL based on an alleged illegal combination between the defendants.  *See Hendricks*, 160 F. Supp. 2d at 1156.  The *Hendricks* court held that the plaintiffs' UCL claims could "not be recharacterized as federal under the artful pleading doctrine because they flow from Defendants' alleged anticompetitive acts in violation of the Cartwright Act." *Id.* at 1164.  Plaintiff here, however, alleges monopolistic conduct that is only actionable under the federal Sherman Act.  *See supra* § III.A.1.  And while the *Hendricks* court found that the alleged anticompetitive acts in that case could also constitute "unfair" acts under the UCL, *Hendricks*, 160 F. Supp. 2d at 1165, Plaintiff's Complaint here forecloses that possibility because his unfairness claim, like his other claims, is supported exclusively by allegations of DIRECTV's monopolistic conduct.

Plaintiff has not alleged any "independent and alternative" theories under state law that would allow him to avoid removal.

**B.**     **The Federal Questions Raised By Plaintiff's Complaint Are Disputed And Substantial, And Resolving Them In Federal Court Comports With Principles of Federalism.**

Because the Complaint necessarily presents federal questions, the next considerations are whether the federal questions are: "(2) actually disputed, (3)

18

substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 133 S. Ct. at 1065.  As explained below, each of those factors is satisfied here and federal jurisdiction lies over Plaintiff's purported state law claims.

There can be little question that all of Plaintiff's monopoly allegations are actually disputed by DIRECTV.  DIRECTV vigorously denies all of the allegations in Plaintiff's Complaint, including all allegations that it is a monopolist, that it has "abused a monopoly position," that it charges "supra-competitive" prices, or that it has "extract[ed] monopoly profits."  Accordingly, this factor is easily satisfied, and Plaintiff has not argued otherwise.

The final two factors—whether the federal questions at issue in this Complaint are substantial and capable of resolution in federal court without disrupting the balance of federalism—are related.  A federal question is substantial if it "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313; *see also Gunn* 133 S. Ct. at 1068 (federal question is substantial when it is "significant to the federal system as a whole").  Here, Plaintiff's artfully pled federal Sherman Act claims "are within the exclusive jurisdiction of the federal courts." *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 379 (1985); *see also Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.*, 260 U.S. 261, 286-88 (1922).  A California state court, therefore, cannot preside over Plaintiff's artfully-pled Sherman Act claims.  *See Eichman v. Fotomat Corp*., 759 F.2d 1434, 1437 (9th Cir. 1985) (California state court judgment had no preclusive effect on Sherman Act claims "[b]ecause federal antitrust claims are within the exclusive jurisdiction of the federal courts"); *U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 623-24 (1999) (noting that even if a state court plaintiff had made a Sherman Act claim, "the trial court would not have had jurisdiction to consider it" because "[f]ederal courts have exclusive jurisdiction over all Sherman Act claims, and state courts are precluded from considering such claims").  And, as

19

explained earlier, California law does not reach the unilateral monopolistic conduct alleged in Plaintiff's Complaint.  *See supra* § III.A.1.  Thus, the exclusively federal questions here "implicate[] a federal interest sufficiently substantial to establish federal subject matter jurisdiction."  *See Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 702 (7th Cir. 2015) (federal jurisdiction existed over artfully pled state law claims that depended on interpretation of securities exchange rules that were subject to exclusive federal jurisdiction).

Moreover, the very reason removal is permitted in substantial federal question cases is that such cases "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.  That interest in "uniformity" is particularly acute here, where Plaintiff's Complaint is just one of twenty-six pending cases alleging federal antitrust claims related to DIRECTV's NFL Sunday Ticket package, including four additional cases, *Jammers*, *Two Pauls*, *P.J. Hafiz*, and *JS Entertainment* filed by the same attorneys that represent Plaintiff Lippincott here.  *See, e.g., Liberty Legal Found. v. Nat'l Democratic Party of USA, Inc.*, 868 F. Supp. 2d 734, 740 (W.D. Tenn. 2012) (holding that there was a substantial federal interest where similar lawsuits had been filed and thus "there is a risk of inconsistent adjudications on the federal issue presented").  Indeed, that federal interest in uniformity is the very reason the JPML created this MDL proceeding.  *See In re National Football League's "Sunday Ticket" Antitrust Litig.*, MDL No. 2668, Dkt. No. 112 at 1-2 (JPML Dec. 8, 2016) ("centralization will . . . promote the just and efficient conduct of this litigation" and will "prevent inconsistent pretrial rulings").[4]

---

[4] The fact that this case poses similar federal questions to the other twenty-five pending NFL cases also readily distinguishes this case from *Gunn*.  *See Gunn*, 133 S. Ct. at 1067-68.  Moreover, in *Gunn*, the Court found that the federal patent law question that underpinned a legal malpractice claim was not substantial "[b]ecause . . . the backward-looking nature of a legal malpractice claim" rendered "the [federal] question . . . merely hypothetical," and because "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result

1   Likewise, given that there are twenty-five other Sunday Ticket cases pending,

2   exercising jurisdiction would not "disrupt[] the federal-state balance approved by

3   Congress."  *Gunn*, 133 S. Ct. at 1065; *see In re Pharm. Indus. Average Wholesale*

4   *Price Litig.*, 457 F. Supp. 2d 77, 81 (D. Mass. 2006) (exercising substantial federal

5   question jurisdiction over state law claims pled in one action in a MDL proceeding is

6   "unlikely to upset any [federal-state] balance because of the substantial number of

7   similar cases that are already pending in federal courts").  In contrast, remanding this

8   case to state court *would* disturb the federal-state balance by allowing Plaintiff to

9   proceed on a parallel track in state court even though his claims raise substantial,

10  disputed federal questions that can only be resolved by reference to Section 2 of the

11  Sherman Act.

12  **IV.    CONCLUSION**

13  The state law claims in Plaintiff's Complaint are, in fact, artfully pled federal

14  Sherman Act claims.  Plaintiff's claims necessarily raise federal questions that are

15  disputed and substantial, and those federal questions should be resolved in a federal

16  court.  Accordingly, the Court should deny Plaintiff's Motion to Remand as this case

17  belongs in federal court as part of the NFL Sunday Ticket MDL.

18

19

20

21

22

23

24

25

26

27  of the prior federal patent litigation.  [The] patent will remain invalid."  *Gunn*, 133 S.
    Ct. at 1066-67.  Here, there would be nothing "backward-looking" or "hypothetical"
28  about a state court addressing Plaintiff's artfully pled federal antitrust claims in the
    first instance.

1    DATED:  March 15, 2016       Respectfully submitted,

2

3                                *s/ Robyn E. Bladow*

                               Melissa D. Ingalls (Bar No. 174861)

4                                Robyn E. Bladow (Bar No. 205189)

                               Tammy A. Tsoumas (Bar No. 250487)

5                                **KIRKLAND & ELLIS LLP**

6                                333 South Hope Street

                               Los Angeles, CA 90071

7                                Telephone: (213) 680-8400

8                                Facsimile: (213) 680-8500

                               melissa.ingalls@kirkland.com

9                                robyn.bladow@kirkland.com

10                              tammy.tsoumas@kirkland.com

11                              *Attorneys for DIRECTV Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28