ZIMMERMAN REED, LLP
Caleb Marker (SBN 269721)
 E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 – Telephone
(877) 500-8781 – Facsimile

*Attorney for Plaintiffs*

*(Additional Counsel Listed Below)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-BRO-JEM<br><br>*Assigned to the Honorable Beverly Reid O'Connell*<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAITNIFF'S MOTION TO REMAND CASE TO THE SONOMA COUNTY SUPPERIOR COURT** |
| THIS DOCUMENT RELATES TO:<br><br>LIPPINCOTT, ET AL. V. DIRECTV, INC., ET AL.<br><br>Case No. CV 15-09996 BRO (JEMx) | Hearing Date: March 29, 2016<br>Time:    Hon. Beverly Reid O'Connell<br>Location:  Courtroom 14 |

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND PROCEEDINGS

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II. ARGUMENT ................................................................................................... 2

    A.  Plaintiff Exercised His Right As "Master" of His Complaint in Deciding To Assert Only State Claims ........................................................................ 2

    B.  Plaintiff's Claims Do Not Require References to "Monopoly" or "Supra-Competitive Pricing" Terminology ......................................................... 3

    C.  California Courts Regularly Apply Terminology Such as "Monopoly" and "Supra-Competitive Pricing" Without Reference to the Sherman Act ............. 5

    D.  State and Federal Law May Prohibit the Same Conduct ................................. 6

    E.  The "Gravamen" of Plaintiffs' Complaint Does Not Require a Finding that Defendants Violated Federal Law .......................................................... 9

    F.  Defendants Have Failed to Satisfy the Final Two *Gunn* Factors ..................... 10

III. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) .............................. 4

*Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997) *supplemented,* 121 F.3d 714 (9th Cir. 1997) ............................................................................................... 3

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1 (1989) ......... 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000) ............ 4

*California v. Pinnacle Sec. CA. LP*, 746 F. Supp. 2d 1129 (N.D. Cal. 2010) .............. 7

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ........................................ 3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ... 5

*Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ........................................................................ 3

*D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001) ......................... 9

*Dukow v. Sony Pictures Entm't, Inc.*, No. BC566884 (L.A. Cnty. Superior Court) ..... 3

*Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 1996) ....................................................... 4

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) .................................... 1

*Fisherman's Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal. App. 4th 309 (2003) ........................................................................................................................ 5

*Fletcher v. Solomon*, No. C-06-05492 RMW, 2006 WL 3290399 (N.D. Cal. Nov. 13, 2006) ........................................................................................................................ 3

*Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) ........................................................... 1

*Gunn v. Minton*, 133 S. Ct. 1059 (2013) ............................................................... 1, 10

*Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155 (S.D. Cal. 2001) ....... 1

*In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2015 WL 2092435 (D. Kan. May 5, 2015) ............................................................................................. 3

*Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660 (7th Cir. 1976) ................................. 6

*Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003) ... 3, 4, 9, 10

*National Credit Reporting Assoc., Inc. v. Experian Info. Solutions*, No. C–04–1661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004) ......................................... 7, 8

*PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013) .............................................................................................. 7, 8, 9

*Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477 (9th Cir. 1990) ...... 2, 6

*Salveson v. W. States Bankcard Ass'n.,* 731 F.2d 1423 (9th Cir. 1984) ................... 2, 6

*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 (1913) ......................................... 2

**Other Authorities**

Moore's Federal Practice ¶ 0.160, at 185 (2d ed. 1979) ................................................ 3

Russell Korobkin, *Bounded Rationality, Standard Form Contracts, and Unconscionability*, 70 U. CHI. L. REV. 1203 (2003) ..................................................... 7

## I. INTRODUCTION

"'To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1162-63 (S.D. Cal. 2001) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). Defendants seek to significantly expand this well-established rule. Instead of "a right or immunity created by the Constitution or laws of the United States," Defendants argue that conduct not rising to the level of a violation of federal law somehow still invokes federal jurisdiction. Likewise, Defendants contend that, even though a violation of the Sherman Act is not an "element" of any of Plaintiff's state law claims, federal jurisdiction nonetheless attaches because the alleged conduct could arguably form the basis for a federal claim. Defendants' theory would represent a much lower standard for federal jurisdiction than that required by the Ninth Circuit and Supreme Court precedent, and it should be rejected.

Defendants expend considerable effort in an attempt to deprive Plaintiff of his rights as the master of his complaint. Where the same conduct is prohibited by both federal and state law, Plaintiff has every right to choose to enforce state law claims instead of federal law claims.

Moreover, Defendants have not carried their burden to prove that removal is proper. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (the removing party has the burden of proving that removal was proper). Defendants have not satisfied the *Gunn* factors, upon which they rely to oppose remand. *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). Plaintiff's allegations raise no federal issues, and the purported federal issues raised by Defendants are not "necessary" to Plaintiff's state law claims, are not "substantial," and are not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *See id.* Ninth Circuit and Supreme Court precedent demand that this action be remanded.

## II. ARGUMENT

**A. Plaintiff Exercised His Right As "Master" of His Complaint in Deciding To Assert Only State Claims**

Plaintiff properly asserted claims under California law based on facts and language that happen to coincide with facts and language that could also be used to prove certain federal claims. This fact does not provide a basis for federal jurisdiction.

"'It is well established that the party who brings a suit is master to decide what law he will rely upon.'" *Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477, 479 (9th Cir. 1990) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (internal quotation marks omitted)).  Moreover, "if [a plaintiff] can maintain his claim on both state and federal grounds, he may ignore the federal question and assert only a state law claim and defeat removal." *Id.* (citations omitted); s*ee also Salveson v. W. States Bankcard Ass'n,* 731 F.2d 1423, 1427 (9th Cir. 1984) ("[W]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." (citing 1A Moore's Federal Practice ¶ 0.160, at 185 (2d ed. 1979)).

Plaintiff does not deny that he has standing to assert, and factually could have asserted, federal claims for a violation of the Sherman Act. However, as the "master" of his complaint, and for reasons Defendants refuse to accept as valid, Plaintiff chose not to do so—a decision wholly within Plaintiff's prerogative. By deciding to pursue exclusively state claims for violations of the CLRA, UCL, and for quasi-contract/unjust enrichment, Plaintiff focuses his Complaint solely on Defendants' unconscionable contract provisions and related unfair business practices. There are numerous justifiable reasons for Plaintiff to do so, for instance to avoid having to prove an illegal conspiracy as required for antitrust claims on behalf of residential consumers.

Additionally, though Defendants write at length about other plaintiffs within this MDL who are represented by the undersigned counsel (Opp. to Mot. to Remand, ECF No. 107 at Part II.A), they cite no case law that indicates that the status, or even

existence, of other lawsuits filed by Plaintiff's counsel in any way affects subject matter jurisdiction in this action. (*See id.*) Plaintiff, likewise, is unaware of any such precedent. Indeed, it is quite common for state and federal cases with similar conduct to be maintained concurrently. *See, e.g*, *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) (based on same set of facts as *Dukow v. Sony Pictures Entm't, Inc.*, No. BC566884 (L.A. Cnty. Superior Court); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2015 WL 2092435, at *2 (D. Kan. May 5, 2015). Defendants gloss over the fact that Plaintiff's counsel seek to represent an entirely different class in federal court actions – commercial subscribers – than the residential subscriber class asserted by Plaintiff Lippincott here.

Proceeding with Plaintiff's individual claims in state court will also serve the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (discussing principles to consider when remanding case to state court). "State courts are the proper fora for [state] claims, and the federal courts should stay out of the fray unless there is a reason for them to jump-in." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1002 (9th Cir. 1997) *supplemented,* 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997). Despite Defendants' baseless contentions to the contrary, there is no reason for this Court to "jump-in" here. As discussed in detail below, Plaintiff's claims are not federal claims in disguise—they are state claims. Here, where "plaintiff . . . clearly desire[s] a state forum", the Court should remand. *Fletcher v. Solomon*, No. C-06-05492 RMW, 2006 WL 3290399, at *4 (N.D. Cal. Nov. 13, 2006).

**B.  Plaintiff's Claims Do Not Require References to "Monopoly" or "Supra-Competitive Pricing" Terminology**

"If a plaintiff can support his claim with alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22, 2003). In his Complaint,

Plaintiff alleges unconscionable conduct by Defendants as the basis of his state law claims, all of which would survive without any reference to "monopoly" or "supra-competitive pricing" terminology. This alone refutes Defendants' baseless theory that using such terminology somehow federalizes Plaintiff's claims. (*See generally* Opp. to Mot. to Remand)

To prove unconscionability, a plaintiff must show "'both a "procedural" and "substantive" element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, [and] the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486—87 (1982)). The procedural element is satisfied by Plaintiff's allegation that "DirecTV has substantial market power because it is the only company with the rights to present Sunday afternoon NFL out-of-market live game telecasts, which it does through its NFL Sunday Ticket Program." (*See* Compl., ECF. No. 1-1 at 5) In other words, "DirecTV has no competition in the market for Sunday afternoon NFL out-of-market live game broadcasts." (*See id.* at 6.) Next, the substantive element is satisfied by Plaintiff's allegation that Defendants' unequal bargaining position has caused "Plaintiff . . . to be [ ] overcharged by DirecTV for the video presentation of Sunday afternoon out-of-market NFL games." That is, "[c]onsumers wishing to watch Sunday afternoon NFL out-of-market live game video presentations have no meaningful choice but to pay for DirecTV's unfair and unreasonable prices for its NFL Sunday Ticket Service." (*See id.* at 8.)

All three of Plaintiff's claims are premised on an unconscionability theory. (Mem. in Supp., ECF No. 25 at Part I) Thus, Plaintiff's claims can be independently proven and the analysis need not proceed any further. *See Lippitt*, 340 F.3d at 1043; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir. 1996) ("[I]f a single state-law based theory of relief can be offered for each of the . . . causes of action in the complaint, then the exercise of removal jurisdiction [is] improper.").

### C. California Courts Regularly Apply Terminology Such as "Monopoly" and "Supra-Competitive Pricing" Without Reference to the Sherman Act

"Monopoly position" or "supracompetitive" prices are not terms exclusive to the Sherman Act. California courts have applied these descriptors in unconscionability cases. *See, e.g.*, *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 23 (1989) (applying California unconscionability law by determining whether defendant had a "monopoly" and whether it "used that monopoly power" to achieve unfair results).

The use of terminology such as "monopoly" and "supra-competitive pricing" does not transform Plaintiff's state law claims into Sherman Act claims, nor is reference to federal law necessary to define or apply those terms. Simply because a lack of competition, or, , "monopoly power," is a consideration for both procedural unconscionability (unequal bargaining power) and attempted monopoly (Sherman Act claim) claims does not mean that every such unconscionability case is automatically converted into a Sherman Act claim. Likewise, simply because consumers are charged prices that are higher than what would occur in a normal, competitive market does not eliminate every unconscionability case based upon supra-competitive pricing. Such a result would obliterate state laws such as the CLRA.[1]

As UCLA Law Professor Russell Korobkin has explained with regard to unconscionability:

> Courts frequently allege that unequal bargaining power resulting from a seller's market power allows the seller to force onerous contract terms on buyers and thus supports a finding of procedural unconscionability. It is true that when a buyer can purchase a product only from a single

---

[1] California courts commonly use this same terminology when analyzing purely state law claims. *See Fisherman's Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal. App. 4th 309, 316-17 (2003) (discussing defendant's anticompetitive conduct and monopoly position in relation to state law claims under the Cartwright Act and UCL); *Appalachian*, 214 Cal. App. 3d at 23 (discussing "monopoly" position in applying California unconscionabilty law); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 202 (1999) (discussing "supracompetitive pricing" with respect to UCL claims).

>monopolist seller or not at all, the seller enjoys bargaining leverage not available to sellers in competitive markets. If a widget maker is a monopolist, buyers can threaten to exit the market, but they cannot exercise leverage by threatening to buy from another seller.

Russell Korobkin, *Bounded Rationality, Standard Form Contracts, and Unconscionability*, 70 U. CHI. L. REV. 1203, 1260 (2003). Therefore, whether the defendant is in a monopolistic position is directly applicable to state unconscionability claims. Applying Defendants' novel theory to Professor Korobkin's observation would mean that every time a plaintiff alleged unconscionability-related claims requiring the court to consider the defendant's monopolistic market position, those claims would be automatically removable, eviscerating state unconscionability law. Defendants' theory is contrary to law, as well as logic, and should be rejected.

**D.   State and Federal Law May Prohibit the Same Conduct**

That Defendants' conduct might *also* violate the Sherman Act does not make this a federal case. Federal antitrust laws do not preempt state competition laws, and California is free to prohibit conduct regulated by the Sherman Act, as well as conduct beyond the scope of that law. *See Redwood Theatres, Inc.*, 908 F.2d at 479-80; *see also Salveson*, 731 F.2d at 1427 ("[F]ederal jurisdiction is not preferred merely because the nature of the claim is such that it could be framed as a federal cause of action as well as one arising under state law. The federal antitrust laws do not preempt the jurisdiction of state courts to determine claims based on state law grounds. '[T]he plaintiff has the prerogative of determining the theory of his action . . . .'") (quoting *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976)).

Although a unilateral monopoly *cause of action* is exclusively federal, unilateral monopolistic *conduct* is not. As demonstrated by Plaintiff's Complaint and Motion to Remand, Defendants' abuse of their monopoly-like market position (*i.e.*, unequal bargaining position due to little to no competition) to impose unfair, supra-competitive prices on consumers can be used to establish multiple legal theories,

including unconscionability, a distinctly state law theory. (*See* Mot. to Remand, ECF No. 16 at 2-4)

Defendants' pin their hopes primarily on one, easily distinguishable case, *National Credit Reporting Assoc., Inc. v. Experian Info. Solutions*, No. C–04–1661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004). Again, however, Plaintiff Lippincott does not predicate his state law claims on a violation of the federal Sherman Act, as the plaintiff in *National Credit Reporting* did. (*See* Mem. in Supp. at 4-5.) Indeed, Courts have, on multiple occasions, distinguished *National Credit Reporting* on that very ground. *See PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032, at *3-4 (N.D. Cal. Mar. 6, 2013) (noting that "the court [in *National Credit Reporting*] relied heavily on the fact that the plaintiff's [state law claims were] . . . derived from violation of federal law, as stated in its complaint"); *see also California v. Pinnacle Sec. CA. LP*, 746 F. Supp. 2d 1129, 1132 (N.D. Cal. 2010) (noting that "*National Credit Reporting* . . . does not help defendant . . . [because] [i]n *National Credit Reporting*, plaintiff alleged a *violation* of 'state and federal antitrust laws'" (quoting *National Credit Reporting*, 2004 WL 1888769 at *3) (emphasis added)). Here, Plaintiffs do not base any of their claims on a *violation* of federal law. Although Defendants repeatedly note that the Complaint contains allegations concerning monopolistic bargaining position and the charging of supracompetitive prices, basing claims on *conduct* that may also be used to prove a Sherman Act claim is vastly different than basing claims on a *violation* of federal law. *PeopleBrowsr* and *Pinnacle* expressly recognize this crucial distinction. *See PeopleBrowsr*, 2013 WL 843032, at *3-4; *Pinnacle*, 746 F. Supp. 2d at 1132.

*PeopleBrowsr* is strikingly analogous to the present case. *See* 2013 WL 843032. In *PeopleBrowsr*, the defendant's notice of removal virtually mirrored Defendants' Notice of Removal here. *Compare PeopleBrowsr*, No. C-12-6120 EMC, Docket No. 1 at 1-2 *with* Notice of Removal (ECF No. 1 at 2-5) There, the defendant,

Twitter, removed the case to federal court, offering the following purported justification:

> PeopleBrowsr alleges . . . that Twitter violates [California law] . . . by "committing acts of unfair competition that significantly threaten or harm competition. Twitter is the dominant player in the market for real-time, public micro-blog data in the United States . . . Twitter is using its exclusive control over its data to gain control of the Twitter Big Data Analytics market . . . Twitter's actions were unreasonable and anticompetitive." Compl. ¶¶ 155-58. Those allegations, which form the sole basis for PeopleBrowsr's claims . . . , state a claim—if at all—under Section 2 of the Sherman Act, over which the Federal Courts have exclusive jurisdiction.
>
> . . . Because PeopleBrowsr's [California law claim] arises under federal antitrust law, it is necessarily federal in character, and presents substantial, disputed questions of federal antitrust law.

*PeopleBrowsr*, No. C-12-6120 EMC, Docket No. 1 at 1-2 (attached as Exhibit A). Despite the pervasive use of terminology traditionally associated with antitrust law, the court determined that such conduct could also give rise to non-antitrust state law claims and and remanded the case. *PeopleBrowsr*, 2013 WL 843032 at *4

Like Defendants here, Twitter attempted to base its removal on the "novel legal theory that [a claim] asserting solely state law . . . based on facts that *could* also give rise to a federal claim is alone sufficient to confer on [the] Court federal question jurisdiction." *Id.* And, like Defendants here, Twitter "cite[d] to no cases that ha[d] so held." *Id.* The court noted that, "[i]n fact, the only case [Twitter] cite[d] reaching an analogous result is [*National Credit Reporting*] . . . , in which federal law was explicitly invoked by the plaintiff." *Id.* The court ultimately concluded that Twitter, having relied primarily on *National Credit Reporting*, "lacked an objectively

reasonable basis for seeking removal." *Id.* The court found Twitter's novel theory so untenable, in fact, that it sanctioned Twitter for its unreasonable removal. *Id.* at *4-5.

In their Response, DirecTV attempts to distinguish *PeopleBrowsr* on the basis that "*PeopleBrowsr* did not involve allegations about "abuse of monopoly power" or "supra-competitive pricing." (Opp. to Mot. to Remand, at 11.) This is false. While PeopleBrowsr's allegations may not have used those exact words, the *PeopleBrowsr* complaint did indeed contain allegations involving abuses of monopoly power and anticompetitive conduct. (*See PeopleBrowsr* Notice of Removal, attached as Exhibit A (quoting allegations from PeopleBrowsr's complaint: "acts of unfair competition that significantly threaten or harm competition" "Twitter is the dominant player in the market" "Twitter's actions were unreasonable and anticompetitive").)

This Court should follow *PeopleBrowsr*, reject Defendants' improper removal theory, and grant Plaintiff's Motion to Remand.

### E. The "Gravamen" of Plaintiffs' Complaint Does Not Require a Finding that Defendants Violated Federal Law

Defendants assert several times that federal question jurisdiction attaches if "the 'gravamen' of the lawsuit is federal in nature." (*See* Opp. to Mot. to Remand at 12, 14-15 (citing *Lippitt*, 340 F.3d at 1045)  However, Defendants fail to explain how *Lippitt* actually applied this "gravamen" analysis.[2]  In *Lippitt*, the court analyzed *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001), a case that had been heavily cited by the defendant . *Lippitt*, 340 F.3d at 1044-45. The court noted, "A sufficient federal interest existed in D'Alessio's case because the 'gravamen' of his claims required a finding that the [defendant] *violated* the federal securities laws." *Id.* at 1045 (emphasis added). By contrast, the *Lippitt* court found no federal question raised because "[w]hether the Defendants' [conduct] violate[d] federal law [was] not material to Lippitt's UCL claim." *Id.* The Ninth Circuit therefore reversed and

---

[2] Defendants' only attempt at distinguishing *Lippitt* is to conclusively state that, unlike in *Lippitt*, "all of Plaintiff's claims *do* depend on a pivotal issue and is [sic] governed exclusively by federal law." (Opp. to Mot. to Remand, at 18 (emphasis in original).)

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND PROCEEDINGS     9

remanded the action to state court. *See id.* at 1046. Here, as in *Lippitt*, whether Defendants' conduct violates the Sherman Act is not material to Plaintiff's claim and remand is similarly appropriate.

### F. Defendants Have Failed to Satisfy the Final Two *Gunn* Factors

Defendants devote more than seventeen pages of their opposition brief to addressing whether federal issues are "necessary" to Plaintiff's claims, but merely skim over the remaining, equally important, *Gunn* factors. Even assuming, *arguendo*, that Plaintiffs' claims necessarily raise federal issues, which they do not, such issues are neither substantial nor "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. 1059, 1066-68 (2013). Defendants contend that the federal issues here are "substantial," as required by *Gunn*, but offer little support. Instead, Defendants simply conclude the federal issues are substantial because they "are within the exclusive jurisdiction of the federal courts." (Opp. to Mot. to Remand at 19 (internal quotation marks omitted).) That conclusory statement, however, misapprehends *Gunn*'s substantiality requirement. In *Gunn*, the Supreme Court held this requirement "looks . . . to the importance of the issue to the federal system as a whole." 133 S. Ct. at 1066; (*see* also Mem. in Supp. at 10-11 (in depth discussion of *Gunn*'s final two factors.)

For the same reasons, Defendants also do not satisfy the fourth *Gunn* factor is. "The Federal courts have exclusive jurisdiction of all cases arising under [Section 2 of the Sherman Act, but not of all questions in which [monopolistic conduct] may be the subject-matter of the controversy." *Gunn*, 133 S. Ct. at 1068. Defendants' failure to satisfy the *Gunn* factors is fatal to their improper attempt to federalize Plaintiff's state law claims.

### III. CONCLUSION

Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Remand.

|   |   |   |
|---|---|---|
|   |   | Respectfully submitted, |
|   |   | ZIMMERMAN REED, LLP |
| Dated: March 22, 2016 | By: | /s/ Caleb Marker |

Caleb Marker (SBN 269721)
  E-mail: caleb.marker@zimmreed.com
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 – Telephone
(877) 500-8781 – Facsimile

Brian C. Gudmundson (MN Bar No. 336695)
  E-mail: brian.gudmundson@zimmreed.com
Wm Dane DeKrey (MN Bar No. 0397334)
  E-mail: dane.dekrey@zimmreed.com
Jason R. Lee (MN Bar No. 396847)
  E-mail: jason.lee@zimmreed.com
ZIMMERMAN REED, LLP
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400 –Telephone
(612) 341-0844 – Facsimile

Arthur M. Murray (LA Bar No. 27694)
  E-mail: amurray@murray-lawfirm.com
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
(504) 525-8100 – Telephone
(504) 584-5249 – Facsimile

*Attorneys for Plaintiffs*
ROBERT GARY LIPPINCOTT, JR.
And on behalf of all others similarly situated