Marc M. Seltzer, Bar No. 545340
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

*Attorneys for Plaintiffs 8812 Tavern Corp., d/b/a
Bench Sports Bar, Christina Malerba and Nicholas
Racklin*

Roman M. Silberfeld, Bar No. 62783
RSilberfeld@RobinsKaplan.com
David Martinez, Bar No. 193183
DMartinez@RobinsKaplan.com
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Fax: (310) 229-5800

*Attorneys for Plaintiff 1465 3rd Ave. Rest. Corp.
d/b/a Gael Pub*

(Additional Counsel for Plaintiffs Listed on
Signature Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-BRO (JEMx) |
|  | **JOINT PRELIMINARY REPORT** |
|  | Hon. Beverly Reid O'Connell |
| THIS DOCUMENT RELATES TO ALL ACTIONS | DATE: May 18, 2016 |
|  | TIME:  1:30 p. m. |
|  | LOCATION: Courtroom 14 |

i

1    Pursuant to the Court's Order Setting Case Management Conference and
2    Briefing Schedule (the "Case Management Order") (Doc. 27), entered on
3    February 1, 2016, as modified by the Court's Order on the Stipulation to
4    Reschedule Case Management Conference and Deadline for Submission of Joint
5    Preliminary Report, entered on March 8, 2016 (Doc. 97), the parties in the above-
6    captioned Multidistrict Litigation (the "MDL") respectfully submit this Joint
7    Preliminary Report.  This Report is the result of conferences held between counsel
8    for the parties on February 24, 2016 and March 9, 2016.

9    **I.       BRIEF NARRATIVE OF THE FACTS NOT IN DISPUTE**

10   **The Court's Request**:

11   A brief narrative statement regarding those facts relating to the cases that are
12   not in dispute.

13   **The Parties' Statement:**

14   This is an antitrust case.  Plaintiffs challenge an alleged agreement of all 32
15   National Football League ("NFL") teams to pool their individual television
16   broadcast rights and to license certain rights to "out-of-market" games through the
17   "Sunday Ticket" package distributed exclusively by DIRECTV.  The plaintiffs
18   include residential and commercial subscribers to the "Sunday Ticket" package, and
19   the named defendants include the NFL, all of its constituent clubs, DIRECTV, CBS,
20   Fox, NBC, and ESPN.

21   The following background facts are not disputed by the parties:

22   1.       The NFL and its 32 member clubs produce an annual series of football
23   games that culminate in the Super Bowl championship. The NFL and its clubs,
24   acting through the League, collectively license the television broadcast rights to
25   these games.

26   2.       During its 2015 regular season, the NFL generally scheduled between
27   10 and 13 games on Sunday afternoons, which were televised on CBS and Fox. The
28   NFL generally scheduled one game each on Thursday, Sunday, and Monday nights.

CBS and the NFL Network televised the Thursday night games; NBC televised the Sunday night games; and ESPN televised the Monday night games.

3. On Sunday afternoons during the regular season, television viewers generally have free, over-the-air access to every game played by the team or teams located in or near the viewer's local area, and to at least two "out-of-market" games, *i.e.*, games played between teams based outside of the viewer's local area.

4. DIRECTV, LLC ("DIRECTV")[1] is a provider of direct broadcast satellite ("DBS") television service in the United States.

5. The NFL has licensed to DIRECTV the right to redistribute, with limited exceptions, the live telecasts of all NFL teams' Sunday afternoon regular season games currently produced by FOX and CBS. Under that license agreement, DIRECTV redistributes a package of out-of-market NFL games played on Sunday afternoons—the "Sunday Ticket" package. DIRECTV currently has the exclusive right to distribute the Sunday Ticket package in the United States.

6. Plaintiffs generally allege that they are subscribers of DIRECTV's Sunday Ticket package. Some plaintiffs are residential subscribers who received the Sunday Ticket package in their homes. Other plaintiffs are commercial subscribers (*e.g.*, bars or restaurants) that permit their customers to view Sunday Ticket package games while patronizing those establishments.

## II.   <u>PRINCIPAL FACTUAL AND LEGAL ISSUES IN THE CASES</u>

### <u>The Court's Request</u>:

A brief statement of the factual and legal issues that the parties currently believe are central to a resolution of the case, and those that are potentially dispositive. ***Because these statements will not be binding on any party, will not***

---

[1] DIRECTV Holdings LLC is the direct parent company and 100 percent owner of DIRECTV, LLC. DIRECTV Sports Networks, LLC owns and operates regional sports networks in certain regions of the United States. These regional sports networks do not broadcast any live regular season NFL games.

1  ***waive any claims or defenses, and may not be offered into evidence by any party***
2  ***against any other party in later proceedings,*** the Court expects the parties to
3  candidly discuss what they believe to be the most important issues in the case.  The
4  Court prefers a focused discussion that will assist the Court in understanding the
5  important issues to be resolved.

6       **A.**     **Plaintiffs' Statement**

7       This MDL concerns a horizontal agreement among the NFL and its 32
8  member teams to not compete with respect to the sale of television broadcast rights
9  for live, out-of-market NFL games and to combine those rights into a single
10  package, and a corresponding agreement with DIRECTV to sell that package in a
11  long-term exclusive deal. DIRECTV then broadcasts out-of-market NFL games
12  through its all-or-nothing NFL "Sunday Ticket" subscription service.

13       Each NFL team individually owns the right to license the live broadcasts of its
14  own games. Through their anticompetitive agreements, defendants have eliminated
15  competition among teams and among programming distributors alike. As a result, no
16  options exist at all for purchasing the subject out-of-market games on the basis of
17  individual games or individual teams; no options exist for purchasing from any
18  entity other than DIRECTV; purchasers are deprived of choice and price
19  competition; and the defendants reap monopoly profits. These agreements—to pool
20  all 32 NFL teams' television broadcast rights and to sell those rights exclusively to
21  DIRECTV—are precisely the types of restraints of trade that the Sherman Act
22  prohibits.[2]

23       Defendants' anticompetitive conduct injures both residential subscribers and
24  commercial subscribers. Plaintiffs are currently evaluating how best to organize this
25  litigation in light of these types of subscribers, including whether claims should be
26  asserted on behalf of a single class comprised of all subscribers.

27
28  [2] Certain plaintiffs have also named the television networks that carry NFL games as defendants.

1    The antitrust exemption in the Sports Broadcasting Act ("SBA") is

2  inapplicable in these circumstances.  The core issue in these cases is the horizontal

3  agreement among the 32 teams to exclusively sell their telecasts jointly through the

4  NFL, which in turn makes most games available in each area by subscription

5  packages or pay television—not sponsored telecasts.  Courts have consistently

6  rejected the argument that the SBA exempts agreements to distribute telecasts

7  through pay television and subscription-only packages, including the Sunday Ticket

8  package in particular.  *See Shaw v. Dallas Cowboys Football Club, Ltd.*, 172 F.3d

9  299, 300-02 (3d Cir. 1999).

10    Plaintiffs further disagree with defendants' contention that their claims must

11  be arbitrated.  Any arbitration clause between the plaintiffs and DIRECTV, to the

12  extent one exists, is inapplicable to the plaintiffs' claims. Any arbitration clause is

13  also unenforceable because of, *inter alia*, lack of mutuality of obligation and

14  procedural and/or substantive unconscionability.  Furthermore, any arbitration

15  clause with DIRECTV cannot be used to compel arbitration with any third parties.

16  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013)

17  ("Generally, the contractual right to compel arbitration 'may not be invoked by

18  one who is not a party to the agreement and does not otherwise possess the right to

19  compel arbitration.'") (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744

20  (9th Cir. 1993)).

21    Contrary to defendants' contention, there is no obstacle to certifying any

22  class of plaintiffs or to antitrust standing.  Plaintiffs were all victims of defendants'

23  conspiracy and paid higher prices as a result of that conspiracy.  The single issue of

24  the existence and scope of the conspiracy will predominate the class.[3]  Additionally,

25  because plaintiffs are direct purchasers of a product that was overpriced as a result

26  _____

27  [3] While most pending actions assert claims on behalf of putative classes of
residential or commercial subscribers, some assert claims on behalf of a class

28  comprised of both residential and commercial subscribers.

of defendants' conspiracy, there is also no *Illinois Brick* problem.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Even if *Illinois Brick* were somehow deemed to preclude standing to sue for antitrust damage claims here, plaintiffs would still be entitled to seek broad injunctive relief under the Sherman and Clayton Acts (as defendants concede), as well as monetary claims under state law.

Finally, the anticompetitive nature of defendants' conduct is evident: absent the conspiracy, the NFL teams would have competed to offer their own games in individual packages at low prices, and all packages would have been cheaper as a result.  This would benefit consumers by giving them more options of what packages to buy (e.g., a Cowboys fan in New York could buy only Cowboys games) at cheaper prices. Both fact and expert discovery will elucidate the many competitive harms of defendants' conspiracy.

Plaintiffs believe that the following principal factual and legal issues will be central to the prosecution of this case:

1.    whether the agreements entered into by the defendants constitute anticompetitive restraints of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

2.    whether the agreement entered into by the defendants foreclosed competition and caused antitrust injury to the plaintiffs and the members of the class;

3.    as to claims for which a relevant market is required, the definition of the relevant market applicable to each such claim;

4.    the extent of defendants' market power within any relevant market;

5.    whether the defendants' conduct constitutes unlawful monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2;

6.    whether the plaintiffs must arbitrate their claims against DIRECTV or any other defendant;

7.    the amount of damages sustained by plaintiffs and the class members;

8.    the amount of restitution that plaintiffs and the class are entitled to recover;

9.    the scope of any injunctive relief that should be granted by the Court; and

10.   whether the class or classes should be certified pursuant to Rule 23.

**B.    NFL and DIRECTV Defendants' Statement of the Central Factual and Legal Issues**

Because plaintiffs have not filed their consolidated complaint, defendants do not know which allegations and claims, or even which parties, will be included in the complaint. Defendants understand that plaintiffs principally challenge the contractual arrangement whereby the NFL has granted DIRECTV certain exclusive rights to distribute the Sunday Ticket package of "out-of-market" games.

There are at least five core legal and factual issues central to the resolution of that challenge, some of which are potentially dispositive as to certain claims and/or defendants. The list below is not intended to be exhaustive, and is not a waiver of any other defenses or arguments.

1.    **The Sports Broadcasting Act**. In 1961, Congress passed the Sports Broadcasting Act, exempting from the antitrust laws "any joint agreement by or among persons engaging in or conducting the organized professional team sport[] of football . . ., by which any league of clubs participating in professional football . . . contests, sells or otherwise transfers all or any part of the rights of such league's member clubs in the sponsored telecasting of the games of football . . . engaged in or conducted by such clubs." 15 U.S.C. § 1291. The SBA unambiguously protects, among other things, the NFL clubs' pooling of the sponsored telecast rights to their games and the collective grant of those rights. To the extent plaintiffs challenge any aspect of those arrangements, that challenge is fatally flawed as a matter of law. Defendants anticipate a motion to dismiss on this ground in response to the consolidated complaint.

2. **The Arbitration Clause in DIRECTV's Customer Agreements**. DIRECTV provides DIRECTV service to residential and commercial customers pursuant to the terms and conditions of the DIRECTV Residential Customer Agreement and the DIRECTV Commercial Customer Agreement, respectively. *See* http://www.directv.com/legal. Both the Residential Customer Agreement and the Commercial Customer Agreement contain arbitration provisions. Section 9 of both Agreements provides that "you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a 'Claim') will be resolved . . . in binding arbitration."   Because each plaintiff, whether a residential or commercial subscriber, subscribed to DIRECTV service and agreed that the Customer Agreement's terms and conditions would govern their receipt of DIRECTV service (which includes sports programming packages like NFL Sunday Ticket), plaintiffs must resolve their disputes with DIRECTV in individual arbitration pursuant to the Customer Agreements' arbitration provision, which has been enforced across the country, including by the Ninth Circuit, and Central District of California.  In addition, state contract law requires at least some of the DIRECTV subscribers to arbitrate their claims against the NFL. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631-32 (2009) (approving enforceability of arbitration provisions by certain non-signatories). Defendants anticipate a motion to compel arbitration in response to the consolidated complaint.

3. **Class Certification**. Defendants expect that plaintiffs will be unable to meet the Rule 23 class certification standards. The current complaints reflect wide variation in the goals, interests, and preferences of the putative plaintiffs, and further suggest that at least some plaintiffs materially benefit from the challenged arrangements.

4. **Lack of Antitrust Standing**. Plaintiffs lack antitrust standing to seek damages allegedly caused by the NFL's decision to license to DIRECTV the rights to distribute out-of-market Sunday afternoon football games. Under *Illinois Brick*

1  *Co. v. Illinois*, 431 U.S. 720 (1977) and Ninth Circuit precedent, plaintiffs are

2  indirect purchasers with respect to that agreement, and their damages claims may

3  not proceed.

4       5.    **Competitive Effects of the NFL-DIRECTV Sunday Ticket**

5  **Agreement**. Defendants maintain that the exclusive Sunday Ticket licensing

6  agreement between the NFL and DIRECTV offers significant pro-consumer benefits

7  and is fully consistent with the antitrust laws. Defendants anticipate filing motions to

8  dismiss and/or motions for summary judgment on the following bases, any one of

9  which would defeat plaintiffs' antitrust claims.

10      *First*, plaintiffs cannot demonstrate that the Sunday Ticket agreement between

11  the NFL and DIRECTV harms competition in a properly defined relevant antitrust

12  market, as required to state a claim under the antitrust laws. An exclusive

13  distribution agreement, standing alone, is not a violation of the antitrust laws and

14  does not in most circumstances adversely affect competition in any properly defined

15  relevant market. Moreover, the Sunday Ticket agreement has significant

16  procompetitive effects; among other things, it has generated the effective

17  production, marketing, and distribution of a popular and high quality product, and it

18  has helped stimulate competition and innovation in the distribution of multichannel

19  video programming distribution services, including by enabling the growth of the

20  DBS industry and fostering greater competition with cable providers.

21      *Second*, the relevant market identified in a number of the complaints—for

22  "out-of-market" NFL games—is not a plausible market. In-market broadcast games

23  airing on CBS and FOX on Sunday afternoons are among the many reasonable

24  substitutes for the "out-of-market" games in the Sunday Ticket package, and the

25  availability of such in-market games on free, over-the-air television—in addition to

26  the numerous other competing entertainment options available to consumers—

27  defeats any claim that either or both the NFL and DIRECTV have monopoly power

28  in any relevant market.

1          C.      **Network Defendants' Statement**

2          If named as defendants in any consolidated amended complaint, each

3  Network (CBS, ESPN, Fox, and NBC) anticipates making at least the following

4  threshold challenges, each of which warrants their immediate dismissal from this

5  case:

6          *First*, there are no factual allegations plausibly connecting any Network to any

7  alleged conspiracy between the NFL, its teams, and DIRECTV concerning the

8  Sunday Ticket package.[4] The sole connection is each Network's separate broadcast

9  contract with the NFL – which are immune from antitrust challenge under the Sports

10 Broadcasting Act.  Moreover, some of the Networks' games, *e.g.,* NBC's and

11 ESPN's, are not even televised on Sunday afternoon for rebroadcast in the Sunday

12 Ticket package. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and its progeny

13 make clear that "an account of a defendant's commercial efforts" is insufficient to

14 state a conspiracy claim. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir.

15 2008); *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186,

16 1194 (9th Cir. 2015) ("Allegations of facts that could just as easily suggest rational,

17 legal business behavior by the defendants as they could suggest an illegal conspiracy

18 are insufficient to plead a § 1 violation.").

19         *Second*, for the same reasons the Networks are not plausibly alleged to be part

20 of any supposed conspiracy, there are no allegations that plaintiffs suffered any

21 antitrust injury flowing from each of the Network's lawful broadcast contracts with

22 the NFL. *See, e.g., Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489

23 _____

24 [4] Indeed, some plaintiffs themselves have acknowledged that there is no basis for
including the Networks in this action.  *See, e.g.*, JPML Dkt. No. 65 at 2 (Plaintiff

25 Ninth Inning's Response To Plaintiff Trilogy Holding's Support Of Transfer To The
Southern District Of New York) (noting that it is unclear "what role the four

26 networks played in the restraint being alleged or how they should be held liable for
the damages claimed as a result of DirecTV's exclusive deal with the NFL" and

27 concluding that "inclusion of these networks as defendants in this situation—
something no other plaintiff has done—thus smacks of gamesmanship . . . .").

28

1   (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the

2   antitrust laws were intended to prevent and that flows from that which makes

3   defendants' acts unlawful."); *In re Canadian Import Antitrust Litig*., 470 F.3d 785,

4   791-92 (8th Cir. 2006) (dismissing complaint brought by consumers against drug

5   manufacturers where the purported injury (higher drug prices) was caused by the

6   government's prohibition on importing Canadian drugs, not the conduct of the

7   defendants).

8        *Finally*, any named plaintiffs or absent class members in the putative class(es)

9   with valid and enforceable arbitration clauses in their subscriber agreements with

10   DirecTV cannot avoid those provisions – and the express bar on class action

11   lawsuits like this one – by suing the Networks instead because they purport to allege

12   a scheme (albeit an implausible one) where the claims against the Networks are

13   intertwined with the claims against DIRECTV. *See, e.g., Arthur Andersen LLP*, 556

14   U.S. at 631-32 (non-signatories to arbitration provisions can enforce those

15   provisions under certain circumstances); *In re Apple & AT&TM Antitrust Litig.*, 826

16   F.Supp.2d 1168, 1175-79 (N.D. Cal. 2011) (allowing Apple to enforce the

17   arbitration provision in AT&T's subscriber agreement).

18        Perhaps not surprisingly, given the foregoing reasons, the vast majority of the

19   complaints transferred to this MDL did not sue the Networks.  If, however, the

20   Networks are named in any consolidated amended complaint, they will defend

21   themselves vigorously. The Network Defendants reserve their rights to assert

22   additional defenses, if and to the extent the Network Defendants are named in any

23   consolidated complaint(s) and any claim remains after threshold motions to dismiss.

24   **III.   PROPOSED DISCOVERY PLAN**

25   **The Court's Request**:

26        A joint proposed discovery plan, in as much detail as is presently possible.

27

28

**Parties Submission:**

    **A.**    **Proposed Changes in the Timing, Form, or Requirement for Initial Disclosures Pursuant to Rule 26(a)**

        **1.**    **Plaintiffs' Position**

Plaintiffs propose exchanging initial disclosures sixty (60) days after plaintiffs' filing of consolidated pleadings.

        **2.**    **Defendants' Position**

Defendants propose exchanging initial disclosures sixty (60) days after the filing of motions to dismiss and/or to compel arbitration. While defendants believe all discovery should be stayed until their motions to dismiss and motions to compel arbitration are decided, they nonetheless agreed to provide these initial disclosures. By agreeing to make these initial disclosures, no defendant is waiving any rights under Federal Rule of Civil Procedure 12(b)(6) or pursuant to any applicable arbitration agreement.

    **B.**    **Subjects on Which Discovery May be Needed**

The plaintiffs anticipate taking discovery on the relationships, communications, and agreements among: (a) the NFL and its member teams; (b) the NFL and DIRECTV; and (c) the NFL and other broadcasters of live NFL games. The plaintiffs also anticipate taking discovery on the effect of these relationships on plaintiffs and the class(es), and defendants' knowledge of consumer demand for various types of NFL programming. Furthermore, discovery may be taken regarding the relevant product and geographic markets at issue in this litigation, the market power of the defendants within these markets, and consumer demand. Finally, issues related to class certification and the appropriate relief, including damages, will also likely require discovery.

The defendants anticipate taking discovery concerning each plaintiff's decision to subscribe to Sunday Ticket; the reason for that subscription; the terms and circumstances of that subscription; any subscriber and/or other agreements that

1    the plaintiff entered into in connection with that subscription; how that plaintiff

2    uses the Sunday Ticket product; the plaintiff's consumption of other television and

3    other entertainment products; and the alleged harms and damages arising from that

4    subscription.  The defendants anticipate taking discovery concerning, among other

5    things, the appropriateness of class certification in this case as well as plaintiffs'

6    alleged market definition.

7          The parties reserve the right to seek discovery on additional topics in the

8    litigation.

9          **C.    Timing of Commencement of Discovery.**

10              1. **Plaintiffs' Position**

11         With respect to the commencement of discovery, plaintiffs do not seek any

12   discovery at this time. Plaintiffs will confer regarding the proper commencement

13   date of fact discovery following the appointment of plaintiffs' leadership.

14              2. **Defendants' Position**

15         As explained above, defendants intend to file motions to dismiss on several

16   grounds, which, if granted, will dispose of plaintiffs' claims in their entirety. In

17   addition, certain defendants intend to move to compel arbitration; those motions, if

18   granted, also would negate the need for discovery with respect to those defendants.

19   Defendants therefore maintain that discovery should be stayed until the Court rules

20   on the motions to dismiss and motions to compel arbitration.  *See, e.g.*, *Top Rank,*

21   *Inc. v. Haymon*, 2015 WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015) (staying

22   discovery while motion to dismiss pending); *Hill v. Asset Acceptance, LLC*, 2014

23   WL 1289578, at *2 (S.D. Cal. Mar. 27, 2014) (staying discovery while motion to

24   compel arbitration was pending).

25         If the Court requires, defendants are prepared to brief the issue of a discovery

26   stay. As explained elsewhere in this Joint Report, defendants have attempted to

27   compromise with plaintiffs by offering to exchange initial disclosures and to

28   develop a protective order and ESI protocol. It would be inappropriate to commence

any more burdensome discovery until the Court has ruled on defendants' motions to dismiss and to compel arbitration.

### D.   Proposed Schedule for Discovery and Phased Discovery.

The following proposed schedule is based on the parties' discussions regarding the appropriate timeline for the conduct of this litigation.  The parties note that the dates below, and other critical dates that may need to be included in any Scheduling Order, may depend, in part, on the Court's appointment of leadership for plaintiffs.

The parties request that the schedule below be subject to modification by agreement of the parties or by further order of the Court.

| Event | Proposed Date |
|---|---|
| Hearing on motion for consolidation | May 18, 2016 (in conjunction with the CMC), as previously ordered by the Court |
| 5-page letter on plaintiffs' proposed leadership structure(s) (if contested) | TBD by Court |
| 5-page responses on plaintiffs' proposed leadership structure(s) (if contested) | TBD by Court |
| Appointment of leadership for plaintiffs | TBD by Court |
| Filing of Consolidated Complaint | 30 days after plaintiffs' leadership is appointed |
| Motions to dismiss/compel arbitration | 45 days after filing of consolidated complaint |
| Opposition to motions to dismiss/compel arbitration | 45 days after filing of motions to dismiss/compel arbitration |
| Deadline to amend pleadings or add parties without leave of court | 45 days after filing of motions to dismiss/compel arbitration |
| Initial Disclosures under Rule 26(a)(1) | The parties' respective positions are set forth in Section III.A., above |

| Event | Proposed Date |
|---|---|
| Replies in support of motions to dismiss/compel arbitration | 30 days after filing of Opposition to motions to dismiss/compel arbitration |
| Order on motions to dismiss/compel arbitration ("MTD Order") | TBD by Court |
| Answer to Consolidated Complaint ("Answer") | 30 days after MTD Order |
| Discovery commences | The parties' respective positions are set forth in Section III.C., above |
| Deadline for substantial production of usable transactional data | 3 months after commencement of discovery |
| Deadline for substantial completion of document production | 7 months after commencement of discovery |
| Deadline for completion of fact discovery | 11 months after commencement of discovery |
| Plaintiffs' class certification motion and accompanying expert reports | 12 months after Answer |
| Deadline for production back-up data in connection with expert reports | 5 calendar days after submission of each respective expert report |
| Deadline for completion of expert depositions | 30 days after service of each respective expert report |
| Defendants' response to class certification motion and accompanying class certification expert reports | 75 days after filing of class certification motion |
| Plaintiffs' replies to response to class certification motion and accompanying rebuttal class certification expert reports | 45 days after filing of defendants' response to class certification motion |
| Plaintiffs' opening merits expert reports served | 18 months after Answer |
| Defendants' merits expert reports served | 75 days after service of plaintiffs' opening merits expert reports |
| Summary judgment motions filed | Not later than 45 days after the deadline for completion of expert depositions |

| Event | Proposed Date |
|-------|---------------|
| Responses to summary judgment motions | 60 days after filing of summary judgment motions |
| Replies in support of summary judgment motions | 30 days after filing of oppositions |

### D.      Electronically Stored Information

The parties anticipate filing a stipulation regarding the preservation and collection of electronically stored information.  The parties propose that this issue be further addressed in a supplemental joint report to be filed within 60 days of the Court appointing leadership for the plaintiffs.

### E.      Issues Regarding Privilege or Attorney Work Product

The parties propose that this issue be addressed in a supplemental joint report to be filed within 90 days of the Court appointing leadership for the plaintiffs.

### F.      Proposed Changes in the Limitations on Discovery Imposed by the Rules

The parties propose that this issue be addressed in a supplemental joint report to be filed within 60 days of the Court appointing leadership for the plaintiffs.

### G.      Other Orders the Court Should Issue Under Rules 16(b), 16(c), or 26(c)

The parties anticipate filing a joint proposed protective order with the magistrate judge in accordance with the Court's Standing Order. The parties propose that this issue be further addressed in a supplemental joint report to be filed within 60 days of the Court appointing leadership for the plaintiffs.

## IV.    PROPOSED SCHEDULE FOR LAW AND MOTION MATTERS

The parties propose law and motion matters be conducted in accordance with the schedule proposed in Section III.C, *supra*.

**V.     LIST OF PARTIES, AFFILIATES, AND COUNSEL**

A list of the parties, corporate affiliates, and counsel associated with this MDL is provided in Exhibit A, attached hereto.

**VI.    PENDING MOTIONS**

1. The motion for consolidation filed by plaintiffs on February 29, 2016.

2. The motion for remand filed by the plaintiff in *Lippincott v. DirecTV, Inc.* case (No. 2:15-cv-09996-BRO-JEMx) on January 29, 2016.

**VII.   OUTSTANDING DISCOVERY REQUESTS**

Discovery has not commenced in this litigation; therefore, no discovery requests are currently outstanding.

**VIII.  RELATED CASES PENDING IN STATE OR FEDERAL COURT**

Two related cases are pending that were not identified in the Case Management Order:

1)     Seifert Holdings, Inc. et al. v. Nat'l Football League, Inc., et al., Case No. 2:15-cv-09944-BRO-JEMx; and

2)     Sir Waldon Inc. v. Nat'l Football League, Inc., et al., Case No. 2:16-cv-01025-BRO-JEMx.[5]

Both cases have since been added to the MDL docket and were identified and included in the motion to consolidate actions filed by plaintiffs on February 29, 2016.

**IX.    FORMATION OF PLAINTIFFS' LEADERSHIP STRUCTURE**

**A.     Plaintiffs' Statement**

Plaintiffs have not yet determined plaintiffs' leadership structure among themselves. If the issue is not determined before the May 18, 2016 Case Management Conference, Plaintiffs will be prepared to discuss leadership matters

---

[5] The MDL docket incorrectly lists Sir Waldon, Inc. as a South Dakota corporation; Sir Waldon, Inc. is a California corporation.

1   with the Court at the Case Management Conference and will advise the Court if any

2   agreements are reached in the interim.

3       **B.      Defendants' Statement**

4       Defendants take no position as to the composition of the Plaintiffs' Steering

5   Committee or the Plaintiffs' Administrative/Management Committee.  Whether

6   plaintiffs make arrangements among themselves to determine leadership, or the

7   Court designates members of the committees following consideration of applications

8   submitted by interested counsel, defendants offer no objection to the composition of

9   either such committee.

10      Defendants also take no position as to whether the Court should designate a

11  Plaintiffs' Liaison Counsel, but maintain that plaintiffs should be required to

12  designate a single contact for defendants to facilitate communications with

13  plaintiffs' counsel.

14  **X.   OTHER TOPICS**

15      The parties further address the following topics identified in the Court's

16  proposed agenda for the Case Management Conference and Local Rule 26-1.

17      **A.      Likelihood of Additional Parties**

18      The parties do not believe additional parties are likely to be added to the cases

19  already pending before the Court.

20      **B.      Trial Estimate**

21      The parties propose that this issue be addressed in a supplemental joint report

22  to be filed within 60 days of the Court ruling on the motions to dismiss and motions

23  to compel arbitration.

24      **C.      Selection of Alternative Dispute Resolution Format**

25      The parties propose that this issue be addressed in a supplemental joint report

26  to be filed within 60 days of the Court ruling on the motions to dismiss and motions

27  to compel arbitration.

28

### D.      Complexity of Litigation

The parties believe that the procedures in the Manual for Complex Litigation may be relevant to this litigation.

### E.      Mechanism for Apprising the Court of Case Status

The parties propose the Court require the parties to submit a joint status report every 60 days after the filing of this Joint Preliminary Report to apprise the Court of the status of the litigation.  Until the Court appoints leadership for the plaintiffs, the parties propose that the interim counsel identified in the Case Management Order prepare any further joint status reports.

### F.      Jurisdictional Issues, Including Whether Any Actions Should be Remanded to State Court

Plaintiff in the *Lippincott* case seeks a remand to state court. DIRECTV opposes the remand motion. Furthermore, the parties anticipate that certain defendants will move to compel arbitration of the claims against those defendants. The parties are not aware of any other potential jurisdictional issues at this time.

### G.      Establishment of a Website

The parties do not believe a website is necessary at this time, but reserve the right to propose one if deemed necessary or appropriate.

Respectfully submitted,

Dated:  March 25, 2016

By: */s/ Marc M. Seltzer*
Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

William C. Carmody
Arun Subramanian
Seth D. Ard

18

Ian M. Gore
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340
igore@susmangodfrey.com
sard@susmangodfrey.com
asubramanian@susmangodfrey.com
bcarmody@susmangodfrey.com

*Counsel for Plaintiffs 8812 Tavern Corp., d/b/a Bench Sports Bar, Christina Malerba, and Nicholas Racklin*


By:  */s/ David Martinez*
David Martinez, Bar No. 193183
Roman M. Silberfeld, Bar No. 62783
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Fax: (310) 229-5800
RSilberfeld@RobinsKaplan.com
DMartinez@RobinsKaplan.com


Hollis Salzman
Kellie Lerner
ROBINS KAPLAN LLP
601 Lexington Avenue
Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Fax: (212) 980-7499
HSalzman@RobinsKaplan.com
KLerner@RobinsKaplan.com

*Counsel for Plaintiff 1465 3rd Ave. Rest. Corp. d/b/a Gael Pub*

1

2                                        By: */s/ Beth A. Wilkinson*
                                         Beth A. Wilkinson (admitted *pro hac vice*)
3                                        Jonathan D. Kelley (admitted *pro hac vice*)
                                         WILKINSON WALSH + ESKOVITZ LLP
4                                        1900 M Street NW, Suite 800
                                         Washington, DC 20036
5                                        Telephone: (202) 847-4000
                                         Facsimile: (202) 847-4005
6                                        bwilkinson@wilkinsonwalsh.com
7                                        jkelley@wilkinsonwalsh.com
8

9                                        Neema T. Sahni (Bar No. 274240)
                                         COVINGTON & BURLING LLP
10                                       2029 Century Park East, Suite 3100
                                         Los Angeles, CA 90067-3044
11                                       Telephone: (424) 332-4800
                                         Facsimile: (424) 332-4782
12                                       nsahni@cov.com
13

14                                       Gregg H. Levy (admitted *pro hac vice*)
15                                       Derek Ludwin (admitted *pro hac vice*)
                                         COVINGTON & BURLING LLP
16                                       One CityCenter
                                         850 Tenth Street NW
17                                       Washington, DC 20001
18                                       Telephone: (202) 662-6000
                                         Facsimile: (202) 662-6291
19                                       glevy@cov.com
20                                       dludwin@cov.com

21

22                                       *Counsel for NFL Defendants*

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:  */s/ Melissa D. Ingalls*
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

*Counsel for Defendants DIRECTV, LLC and DIRECTV Holdings LLC, DIRECTV Group Holdings LLC, and DIRECTV Sports Networks LLC*

By:  */s/ James W. Quinn*
James W. Quinn (admitted *pro hac vice*)
Yehudah L. Buchweitz (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, 25th Floor
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
james.quinn@weil.com
yehudah.buchweitz@weil.com
eric.hochstadt@weil.com

*Counsel for Defendant CBS Corporation*

By:  */s/ Glenn D. Pomerantz*
Glenn D. Pomerantz (Bar No. 112503)
Steven M. Perry (Bar No. 106154)
MUNGER TOLLES & OLSON LLP
355 South Grand Ave., 35th Floor

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Los Angeles, CA 90071
Telephone: (213)-683-9132
Facsimile: (213)-683-5132
Glenn.Pomerantz@mto.com
Steven.Perry@mto.com

*Counsel for Defendant ESPN, Inc.*


By:  */s/ John E. Schmidtlein*
John E. Schmidtlein (Bar No. 163520)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202)-434-5901
Facsimile: (202)-434-5029
JSchmidtlein@wc.com

*Counsel for Defendant Fox Broadcasting Company*


By:  */s/ Daniel G. Swanson*
Daniel G. Swanson (Bar No. 116556)
Melissa Phan (Bar No. 266880)
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
dswanson@gibsondunn.com
mphan@gibsondunn.com

Scott A. Edelman (Bar No. 116927)
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-8500
Facsimile: (310) 551-8741
sedelman@gibsondunn.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel for Defendant NBCUniversal Media, LLC*