Roman M. Silberfeld, Bar No. 62783
RSilberfeld@RobinsKaplan.com
David Martinez, Bar No. 193183
DMartinez@RobinsKaplan.com
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Fax: (310) 229-5800

*Attorneys for Plaintiff 1465 3rd Ave. Rest. Corp.*
*d/b/a Gael Pub*

Scott Martin (*pro hac vice*)
SMartin@Hausfeld.com
HAUSFELD LLP
Broad Financial Center
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1195
Fax: (212) 202-4322

*Attorneys for Plaintiff Ninth Inning, Inc.*
*d/b/a The Mucky Duck*

(Additional Counsel for Plaintiffs Listed on
Signature Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-BRO (JEMx) |
| | **RESPONSE IN FURTHER SUPPORT OF THE APPLICATION OF HAUSFELD LLP AND ROBINS KAPLAN LLP TO BE APPOINTED CO-LEAD COUNSEL FOR COMMERCIAL ESTABLISHMENT PLAINTIFFS** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Hon. Beverly Reid O'Connell |
| | DATE: May 18, 2016 TIME: 1:30 p. m. LOCATION: Courtroom 14 |

i

1   Hausfeld LLP ("Hausfeld") and Robins Kaplan LLP ("Robins") respectfully
2   submit this response to the applications by certain Plaintiffs' counsel for case
3   leadership positions (Dkt. Nos. 128 and 129), filed by firms that brought actions in
4   the Southern District of New York.  Those firms are Susman Godfrey LLP; Langer,
5   Grogan & Diver LLP; and Cohen Milstein LLP (collectively,
6   "Susman/Langer/Cohen") and Girard Gibbs LLC ("Girard Gibbs").

7   **1.  The Vast Majority of Plaintiffs Support the Hausfeld/Robins**
8   **Leadership Application and Separate Representation for Commercial**
9   **And Residential Plaintiffs**

10   The most important factor for determining leadership structures in class action
11   litigation is "achieving efficiency and economy without jeopardizing the fairness to
12   the parties."  Manual for Complex Litigation (Fourth) § 10.221 (2004); Fed. R. Civ.
13   P. 23(g) (requiring the appointment of counsel that will "fairly and adequately
14   represent the interests of the class").  It is most efficient and fair in this litigation
15   to appoint separate co-lead counsel for separate commercial establishment and
16   residential consumer plaintiff classes – who would appropriately coordinate in
17   discovery and on common issues – to properly represent and pursue the
18   unique interests of each group.

19   It is well-settled that a plaintiff is entitled to be the master of its
20   complaint.  14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
21   *Federal Practice and Procedure* § 3702 (4th ed. 2011).  Here, Plaintiffs in 22 of the
22   26 related actions, who assert claims on behalf of separate residential or commercial
23   establishment subscriber classes, acknowledge the need for separate tracks for the
24   two groups, and 21 of those 22 (all but Girard Gibbs) expressly support Hausfeld's
25   and Robins' co-leadership of the commercial group.[1]  With due respect to the small
26

27   _____
[1] In leadership papers submitted last week in another antitrust litigation, the Susman
28   and Cohen firms noted that "an overwhelming majority of the plaintiffs' counsel –
10 of the 12 – who have filed complaints in this matter have voted for [their]

1

1    minority of firms who seek to conflate the interests of these separate groups of

2    plaintiffs into a single unitary class, their bare assertion that "[t]here is no conflict"

3    (Susman/Langer/Cohen Application at 5) misses the mark.

4         Indeed, regardless of whether an actual legal conflict exists at this pleading

5    stage, basic principles governing multidistrict litigation call for separate counsel

6    for commercial and residential counsel in this matter.  The Manual for Complex

7    Litigation provides that "where diverse interests exist among the parties, the court

8    may designate a committee of counsel representing different interests" to "fairly

9    represent the various interests." *Manual for Complex Litigation (Fourth)* § 10.224

10   (2004).  Here, the many factual and legal differences between residential and

11   commercial plaintiffs militate in favor of separate pleadings and representation –

12   including, among others, different and distinct contract terms (including arbitration

13   provisions), distribution channels, markets, viewing interests, pricing models, and

14   marketing campaigns (reflecting industry recognition of these differences).

15        Combining these different and distinct groups of plaintiffs into a single

16   unitary class would create complexities for any anticipated motions to dismiss, class

17   certification, and antitrust damages analyses – and almost certainly create

18   conflicting positions that cannot properly be voiced by a single advocate for both

19   groups.  Compelling the majority of plaintiffs to face undue challenges that they had

20   already properly navigated by virtue of their separate pleadings would be inequitable

21   and against the best interests of the classes they seek to represent.  In

22   short, appointing separate co-lead counsel for residential and commercial subscriber

23

---

24   Original Plaintiffs' proposed leadership structure.  Original Plaintiffs now simply
     seek the Court's approval of this structure."  *See* Original Plaintiffs' Response to
25   Mahony-Killian Plaintiffs and Plaintiff Michelle White's Leadership Motions (at 7),
26   in *In re Anadarko Basin Oil and Gas Lease Antitrust Litig.*, No. 16-cv-209-M (W.D.
     Okla. May 6, 2016) (Appendix A hereto).  In this litigation, more than a mere
27   referendum, the preference of the vast majority of plaintiffs is also grounded in
28   substantive issues affecting the best interests of their class.

1   plaintiffs will best and most efficiently enable counsel to adequately represent

2   the different interests of those constituencies and proposed classes.  *See* Rule

3   23(g)(1)(B).

4   **2.  This Is Not the *Laumann/Garber* Litigation**

5   Hausfeld filed the first commercial subscriber action in this litigation, based

6   upon development of a legal strategy and factual investigation conducted at the

7   request of commercial establishment clients over the course of approximately a year,

8   in July 2015.  The Langer and Cohen firms filed their case[2] more than three months

9   later, in the Southern District of New York (where the Susman firm also filed, after

10  Hausfeld and Robins had filed in this Court).

11  This is not the litigation pursued by the Langer and Cohen firms against the

12  National Hockey League (*Laumann*) and Major League Baseball (*Garber*) in the

13  Southern District of New York.  As Susman/Langer/Cohen recognize, in comparing

14  the NFL, on the one hand, to the NHL and MLB, on the other, "there are "significant

15  differences in the leagues' broadcast arrangements."[3]  (Susman/Langer/Cohen

16  Application at 2)

17  The *Laumann/Garber* litigation did not involve a downstream exclusive

18  arrangement with a multichannel video programming distributor ("MVPD") – *i.e.*,

19  DirecTV.  Unlike that litigation, DirecTV's long-term exclusive agreement for the

20  entire "Sunday Ticket" bundle of out-of-market games, which was not put out for

21  competitive bid, figures prominently in this litigation.  Also unlike here, in the

22  *Laumann/Garber* litigation, various regional sports networks ("RSNs") that hold the

23  local broadcast rights to NHL and MLB games (but not NFL regular season games)

24  were named as defendants.

25  [2] *Trilogy Holding LLC d/b/a Bounce Sporting Club v. National Football League,*

26  *Inc.*, No. 1:15-cv-08188 (S.D.N.Y) ("*Trilogy*").

27  [3] In their Application, Susman/Langer/Cohen discuss the complaint in *Abrahamian*

28  *v. National Football League*.  *Abrahamian* is not a commercial-establishment action
    and was not filed by Hausfeld or Robins.

1    Moreover, the *Laumann/Garber* litigation did not involve the "unitary class"

2    that Susman/Langer/Cohen advocate here.  Indeed, in *Laumann/Garber,* the Langer

3    and Cohen firms filed on behalf of and pleaded a class comprised of *individual*

4    consumers, not commercial establishments; pursued certification of a class of

5    *individual* consumers (which was defeated as to damages and certified only as to

6    injunctive relief); and settled on behalf of *individual* consumers.

7    In short, *Laumann/Garber* and this litigation involve different sports with

8    "significant differences in broadcast arrangements," different types of classes facing

9    different pricing structures, and differences in restraints of trade – beyond factual

10   differences spanning the parties' agreements, witnesses, market analysis,

11   transactions, and so forth.  Indeed, the *Trilogy* plaintiffs state that "[n]o other major

12   sports league has such a drastic, total elimination of competition in the broadcasting

13   market" as here.[4]  (*Trilogy* Compl. ¶ 5)

14   **3.  Hausfeld and Robins Will Collaborate with All Counsel in**

15   **Representing the Best Interests of the Class**

16   Hausfeld and Robins have reviewed leadership papers submitted by firms

17   representing residential consumers. (*See*  Dkt. No. 130)  We would be pleased to

18   coordinate with those firms, on all appropriate issues, to ensure the effective and

19   efficient prosecution of the litigation.

20   The Hausfeld/Robins team likewise would welcome the input of counsel in

21   the Susman/Langer/Cohen group.  That said, we cannot act contrary to what we, and

22   the overwhelming majority of other involved counsel, believe to be in the best

23   interests of the plaintiffs, such as adopting their proposed unitary class structure in a

24   forthcoming consolidated amended complaint.[5]

---

25   [4] The *Laumann/Garber* litigation has some relevancies, of course, and it is

26   unsurprising that various complaints here cited certain portions of expert reports and

27   opinions from that litigation (just as the complaints in the *Laumann/Garber*

     litigation quoted from others).

28   [5] This holds true with respect to appropriate and separate representation as well as

1    Girard Gibbs submitted an application seeking "to serve as a member of the

2    leadership team for the plaintiffs in this litigation."  (Dkt. No. 128, at 1)  The

3    application notes that partner Dena C. Sharp is a member of the *Sedona Conference*

4    *Working Group on Electronic Document Retention and Production*.  Although

5    Hausfeld and Robins alternatively could draw upon substantial resources and

6    expertise concerning such matters (*e.g.*, the Chair of the *Sedona Conference* working

7    group is Hausfeld partner William Butterfield, a nationally recognized expert in e-

8    discovery, and Robins also has its own dedicated e-discovery practice group), the

9    Hausfeld/Robins team would invite meaningful contributions by Girard Gibbs, as

10   with any other firm, to the prosecution of this litigation.

11                                    Respectfully submitted,

12

13   Dated:  May 11, 2016              By:   /s/ David Martinez
                                       David Martinez, Bar No. 193183
14                                     Roman M. Silberfeld, Bar No. 62783
15                                     ROBINS KAPLAN LLP
                                       2049 Century Park East, Suite 3400
16                                     Los Angeles, CA 90067
17                                     Telephone: (310) 552-0130
                                       Fax: (310) 229-5800
18                                     RSilberfeld@RobinsKaplan.com
19                                     DMartinez@RobinsKaplan.com

20                                     Hollis Salzman
21                                     Kellie Lerner
                                       ROBINS KAPLAN LLP
22                                     601 Lexington Avenue
23                                     Suite 3400
                                       New York, NY 10022
24                                     Telephone: (212) 980-7400
25                                     Fax: (212) 980-7499

26   _____

27   effective and efficient prosecution of the litigation.  The *Trilogy* complaint names 40
     defendants, including the owner/operators of each NFL team and the CBS, Fox,
28   NBC, and ESPN networks as alleged conspirators.

1
2

HSalzman@RobinsKaplan.com
KLerner@RobinsKaplan.com

3
4

*Counsel for Plaintiff 1465 3rd Ave. Rest.
Corp. d/b/a Gael Pub*

5
6

By:   /s/ Michael D. Hausfeld
Michael D. Hausfeld

7

HAUSFELD LLP

8

1700 K Street NW, Suite 650
Washington, DC 20006

9

Telephone: (202) 540-7200
Fax: (202) 540-7201

10

MHausfeld@Hausfeld.com

11
12

Michael P. Lehmann, Bar No. 77152
Christopher L. Lebsock, Bar No. 184546

13

HAUSFELD LLP

14

44 Montgomery Street, Suite 3400
San Francisco, CA 94104

15

Telephone: (415) 633-1908
Fax: (415) 358-4980

16

MLehmann@Hausfeld.com

17

CLebsock@Hausfeld.com

18
19

Scott Martin
Irving Scher

20

HAUSFELD LLP
Broad Financial Center

21

33 Whitehall Street, 14th Floor
New York, NY  10004

22

Telephone: (646) 357-1195

23

Fax: (212) 202-4322
SMartin@Hausfeld.com

24

IScher@Hausfeld.com

25
26

*Counsel for Plaintiff Ninth Inning, Inc. d/b/a
The Mucky Duck*

27
28

6

# APPENDIX A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE ANADARKO BASIN OIL AND GAS LEASE ANTITRUST LITIGATION | Case No.: 16-cv-209-M |

### ORIGINAL PLAINTIFFS' RESPONSE TO MAHONY-KILLIAN PLAINTIFFS' AND PLAINTIFF MICHELLE WHITE'S LEADERSHIP MOTIONS

Plaintiffs Brian Thieme, Don Beadles I/T/F The Alva Synagogue Church of God, Janet Lowry, Garvin Holdings, L.L.C., The Ruby L. Stucky Trust Dated April 22, 1997, Ida Powers, Larry Powers, Curtis L. Crandall, Janet K. Crandall, Catherine Juanita Behrenbrinker, Derrick R. Herzog, Amy K. Herzog, James Van Meter, and John Wright (collectively, the "Original Plaintiffs"), through their counsel, respond in opposition to the Mahony-Killian Plaintiffs' Motion for Appointment of Schneider Wallace as Interim Lead Counsel and Rachel Lawrence Mor as Interim Liaison Counsel (Doc. 68) and Plaintiff Michelle White's Alternative Motion for (1) Appointment of Representative Management Committee, with Counsel From Each Case, or (2) Appointment of Counsel for Michelle White as Liaison Counsel or to Executive Committee (Doc. 81).

### INTRODUCTION

Plaintiff Brian Thieme filed the first complaint in this consolidated action on March 3, 2016. Over the next 40 days, Original Plaintiffs' counsel set this case on a course to proceed through motion practice and discovery. Original Plaintiffs' counsel likewise negotiated an uncontested leadership structure, comprising three co-lead counsel with nearly unparalleled experience in successfully prosecuting complex antitrust and oil and gas cases and a deeply experienced executive committee.

1

On April 13, 2016, Original Plaintiffs filed an "Agreed Motion for Appointment of Burns Charest LLP, Susman Godfrey LLP, and Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Counsel and Mitchell DeClerck PLLC as Liaison Counsel." (Doc. 37). On the same day—nearly six weeks after the first complaint was filed—the Mahony-Killian Plaintiffs and Plaintiff Michelle White filed related class action complaints. Thereafter, the Mahony-Killian Plaintiffs and Plaintiff Michelle White filed motions to appoint alternative leadership to shepherd this case. (Docs. 68 & 61.) The Original Plaintiffs' efforts to resolve the leadership dispute have been unsuccessful.

This case demands representation by counsel with extensive experience with antitrust price-fixing and bid-rigging claims, oil and gas royalties, and the management of complex class actions. Put simply, no other proposed leadership team brings the breadth and depth of experience as the team proposed by Original Plaintiffs. The Original Plaintiffs' proposed structure is efficient and has repeatedly been approved by district courts through the country. Their proposed co-leads, executive committee, and liaison counsel have also demonstrated a willingness to work cooperatively with counsel for all parties in moving this case forward. And, finally, the Original Plaintiffs have advanced this case materially; the other plaintiffs have not.

Original Plaintiffs respectfully request that the Court enter an order denying the Mahony-Killian Plaintiffs' and Plaintiff Michelle White's motions and appointing Burns Charest, Susman Godfrey, and Cohen Milstein as interim co-lead counsel and Mitchell DeClerck as interim liaison counsel.

## ARGUMENT

### I.  No other proposed structure provides the same breadth and depth of experience.

Original Plaintiffs respectfully submit that the Court's decision should ultimately be guided by a determination of which proposed structure will best serve the interests of the proposed class. With respect to the many fine lawyers representing the Mahony-Killian Plaintiffs and Plaintiff Michelle White, Original Plaintiffs' proposed interim co-lead counsel bring unparalleled experience and a proven track record to the prosecution of this consolidated case. *See* Fed. R. Civ. P. 23(g)(ii)–(iii).

As more fully detailed on pages 7 through 16 of the Original Plaintiffs' memorandum supporting their agreed leadership motion (Doc. 37), Burns Charest, Susman Godfrey, and Cohen Milstein routinely serve as co-lead counsel in many of the largest and most complex antitrust class actions prosecuted in this country. Their lawyers have tried many of those cases to verdict. The firms also have frequently worked together in leadership positions to advance the interests of class members. It should come as no surprise then that the attorneys in 10 of the 12 cases before this Court agree that Burns Charest, Susman Godfrey, and Cohen Milstein should lead this case going forward.

In addition to their wide-ranging antitrust experience, the Original Plaintiffs' proposed interim co-lead counsel have also prosecuted numerous oil and gas cases on behalf of royalty owners in Oklahoma, Texas, and beyond. In the past year alone, Burns Charest has represented numerous royalty owners in four cases against Chesapeake, recovering significant sums for their clients. In over a decade of litigation against Chesapeake and other industry giants, Burns Charest has gained unique experience in the oil and gas industry that

will benefit the proposed class in this case. Similarly, Susman Godfrey has spent decades representing royalty and working interest owners in complex oil and gas cases. Finally, proposed interim liaison counsel Mitchell DeClerck regularly represents Oklahoma citizens in oil and gas contract negotiations and litigation. No other proposed leadership group or structure can match this collective experience.

## II.    The Original Plaintiffs have done significantly more work in investigating the claims at issue and have otherwise advanced the case significantly.

The Mahony-Killian Plaintiffs and Plaintiff Michelle White both claim that no other plaintiff or plaintiffs' counsel has taken steps to significantly advance this case. This simply is not accurate by any objective measure, and it does a disservice to the substantial work Original Plaintiffs have done to further the claims of the proposed class long before the Department of Justice indictment came down.

Courts routinely appoint to a leadership position counsel who have undertaken significant factual research and advanced the pleadings beyond recognition of matters present in the public record. *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 121 (S.D.N.Y. 2010) (selecting class counsel who had conducted significant investigation beyond the public record); *Adedipe v. US Bank Nat'l Ass'n*, Nos. 13-cv-2687 (JNE/JJK), 13–2944 (JNE/JJK), 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing Cohen Milstein as interim co-lead counsel in large part because Cohen Milstein "identified claims and conducted preliminary investigation"). This is an express factor courts consider in making such appointments, *see* Fed. R. Civ. P. 23(g)(i), and for good reason. The firms that have expended the most time and effort in furthering the proposed class' interests at the outset—

4

or even before the initiation of—the litigation will be best positioned to continue in this vein going forward.

In this case, Original Plaintiffs' counsel have conducted significant factual research leading to a fuller understanding of the issues present in this litigation. This research is reflected in the most recent complaint filed by Original Plaintiffs' proposed interim co-lead counsel on behalf of plaintiffs James M. Van Meter and John L. Wright, as well as in prior complaints filed on behalf of Plaintiffs Janet Lowry and Ida and Larry Powers by Cohen Milstein near the outset of this litigation. (*See* Ex. A, attached hereto). Those complaints contain significant, unique factual allegations detailing substantive elements of the conspiracy, which are detailed in Original Plaintiffs' opening leadership brief. Such allegations are not, however, found in the Mahony-Killian and Wright complaints. This is hardly surprising, though, as these unique factual allegations are the product of many months of extensive factual investigation that was conducted before the Department of Justice indicted Chesapeake's former CEO.

Further, Original Plaintiffs' counsel continue to devote significant resources to the factual development of this case. Original Plaintiffs' counsel have prepared and circulated to all plaintiffs' counsel plaintiff questionnaires designed to help determine which plaintiffs to include as class representatives in the consolidated amended complaint. They also have a schedule in place for interviewing plaintiffs to help further inform which plaintiffs should be included in this complaint. Finally, and importantly, they also have commenced work in earnest on a consolidated amended complaint that they will be prepared to file on or before the court-ordered deadline on May 30, 2016.

III.    **Courts routinely appoint leadership structures like that proposed by the Original Plaintiffs.**

The Mahony-Killian Plaintiffs complain that the Original Plaintiffs' proposed structure of three co-lead firms is inefficient, despite the fact that the same or similar structure has been used in numerous antitrust class actions throughout the country.

Far from a novel aberration, Original Plaintiffs' proposed leadership structure is an efficient, time-tested structure that draws on the significant experience of counsel in this consolidated case. It is just the type of structure that courts routinely appoint in complex antitrust cases like the present case. *See, e.g., In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC), Doc. 1 (E.D.N.Y. Feb. 2, 2016) (appointing four interim co-lead class counsel, including Cohen Milstein and Susman Godfrey, who are working with a multi-firm executive committee in representing the proposed class); *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 187 (S.D.N.Y. 2008) (appointing three interim co-lead class counsel, including Susman Godfrey, who are working with a multi-firm executive committee); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (appointing three interim co-lead class counsel and an executive committee of six firms to represent the direct purchaser plaintiffs); *In re TFT-LCD (Flat Panel) Antitrust Litiga.*, MDL No. 1827 (N.D. Cal.) (appointing two interim co-lead counsel, who are working with an eight-member executive committee to represent the direct purchaser plaintiffs); *see also In re Domestic Drywall Antitrust Litig.*, No. 13-MDL-2437, Doc. 11 (E.D. Pa. May 5, 2013) (appointing three firms, including Cohen Milstein, as co-lead counsel for direct purchaser class); *In re Automotive Parts Antitrust Litig.*, No. 16 (E.D. Mich. Mar. 19, 2012) (appointing four firms as co-lead counsel for direct purchaser class).

6

Proposed interim co-lead counsel in this case have also routinely worked together—with much success—on cases of similar size and complexity that involve leadership structures like the one that the Original Plaintiffs propose here.  In Original Plaintiffs' counsel's experience, marshaling the substantial resources and experience of three firms in a co-lead structure often results in a dynamic exchange of ideas and perspectives that directly benefits the class.  *See* Fed. R. Civ. P. 23(g)(1)(iv).  No efficiency is lost in a three-firm structure where firms with an equal voice must make decisions by consensus.  Further, it is also Original Plaintiffs' experience and commitment that the co-leads in this case will speak with a single voice before the Court.

Plaintiff White suggests that the Court appoint a ten-member "representative management committee" and leave it to that committee to work out its leaders as needed by majority vote.  That suggestion, however, overlooks the fact that leadership *already* has been decided under this very method: an overwhelming majority of the plaintiffs' counsel—10 of the 12—who have filed complaints in this matter have voted for the Original Plaintiffs' proposed leadership structure.  Original Plaintiffs now simply seek the Court's approval of this structure.

Further, Plaintiff White's request for a large "representative management committee" in addition to co-lead counsel would lead to gross inefficiency, unnecessary confusion, and likely disagreement during the course of this inevitably lengthy case.  It would be much less manageable and efficient, for quite obvious reasons, to have ten law firms, rather than three, entrusted with responsibilities like managing discovery, preparing briefs, working with expert economists, attending court hearings, engaging in settlement discussions, and preparing for

and conducting trial.  The bottom line is that a ten-member committee, with or without an appointed head, is far less efficient and manageable than the Original Plaintiffs' proposed structure.

Unsurprisingly, the structure proposed by Plaintiff White appears to be unprecedented in antitrust class litigation.  Not only are Original Plaintiffs unaware of a court-approved structure like this one, but Plaintiff White also fails to cite a single case approving such a structure in a case remotely similar to this one.  In support of this fragmented leadership structure, Plaintiff White cites two mass tort cases involving thousands of individual cases in which steering committees were appointed. *See* White Mot. at 3, n.1.  Given the obvious differences between mass tort actions and the complex antitrust class action here, the Court should reject Plaintiff White's mass-tort leadership structure.

Self-ordering in complex cases like this one should be encouraged.  MANUAL COMPLEX LITIG. § 10.22 at 24.  Plaintiffs in 10 of the 12 cases before this Court negotiated a leadership structure to prosecute this consolidated case.  Also, as Original Plaintiffs have previously represented, Original Plaintiffs' leadership team is committed to an inclusive approach that will use the skills of each plaintiff's counsel.  Accordingly, Original Plaintiffs request that the Court honor the significant efforts of the lawyers in all but two cases that resulted in an agreed leadership structure.

## IV.   Acreage Is No Proxy for Experience.

The Mahony-Killian Plaintiffs make much of the fact that they apparently hold thousands of acres of property in unspecified areas of Oklahoma. Acreage, however, is not a proxy for experience in managing a complex antitrust class action like the one before this

Court.  Nevertheless, original Plaintiffs' counsel commit that the Mahony-Killian *Plaintiffs*, like all other *plaintiffs* here, will be considered for inclusion as class representatives in the consolidated amended complaint that will be filed in the coming weeks.  Whether their *lawyers* should represent the interests of the proposed class as a whole going forward is a different matter.  As explained above, no other proposed leadership group brings the same level of experience in litigating and trying cases like this one as does the Original Plaintiffs' proposed leadership structure.

The Mahony-Killian Plaintiffs have not demonstrated how the size of their holdings distinguishes them in any way from any other member of the class, let alone entitles their counsel to lead the case.  In fact, the Mahony-Killian Plaintiffs' basic allegations concerning the conspiracy and its effect are substantially similar to those alleged by the Original Plaintiffs (the unique factual allegations uncovered by Original Plaintiffs' extensive independent investigation notwithstanding), calling into question why any plaintiff's ownership interest could or should constitute a distinguishing factor.

This is not a securities case where a plaintiff's individual financial stake in the case determines leadership, as required by the Private Securities Litigation Reform Act.  Indeed, the "special requirements" of the PSLRA "contrast with the approach to class representation in other cases." *See* 7A Fed. Prac. & Proc. Civ. § 1767 (3d ed. 2016); *accord id.* (noting "the vast majority of courts have held that the extent of the representatives' interest is not determinative for purposes of satisfying Rule 23(a)(4)"); *Eufaula Drugs, Inc. v. TDI Managed Care Servs.*, 250 F.R.D. 670, 678 (M.D. Ala. 2008) ("However, the fact that named representatives have a small stake in the litigation does not make them inadequate; indeed, it

is the principal justification for class actions—using a cost spreading mechanism to allow plaintiffs to bring suits that otherwise would not be profitable."); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 202 F.R.D. 154, 161 (E.D. Pa. 2001) ("the size of a representative plaintiff's claim is not determinative as to whether the plaintiff will fairly and adequately protect the interests of the class") (internal citation and quotations omitted), *rev'd on other grounds sub nom. Fanning v. United States*, 346 F.3d 386 (3d Cir. 2003).  This is an antitrust case, and the Original Plaintiffs' proposed leadership team is the most experienced and able team to lead it.

Original Plaintiffs further note that the Mahony-Killian Plaintiffs are not alone in representing significant royalty interests.  Collectively, Original Plaintiffs' counsel represent owners of thousands of acres of property in Texas, Oklahoma, and Kansas. This geographic diversity is significant in this case in light of Original Plaintiffs' allegations of unlawful activity outside Oklahoma. The Original Plaintiffs are unique in that they are the only proposed leadership group that represent clients outside of Oklahoma; indeed, they are the only such group that comprises plaintiffs from all three states.  By contrast, the Mahony-Killian Plaintiffs' land interests are limited to Oklahoma.

**V.     The Court should appoint Mitchell DeClerck as liaison counsel.**

Plaintiff White has alternatively urged the Court to appoint a member of her counsel group, Dr. Tara T. Tabatabaiae, as liaison counsel or as a member of the executive committee.   Dr. Tabatabaiae certainly possesses impressive credentials and particular expertise in chemistry and mass torts.  This is an antitrust case, however, and Original Plaintiffs' proposed leadership team brings the requisite subject-matter expertise to

successfully prosecute this action. Although Original Plaintiffs oppose Dr. Tabatabaiae's appointment as liaison counsel or as an executive committee member, Original Plaintiffs' proposed leadership team remains committed to working with Dr. Tabatabaiae and all counsel in this case.

Original Plaintiffs further note that the Mitchell DeClerck team brings a unique perspective and substantial expertise to the role of liaison counsel in this case. For decades, Mitchell DeClerck has represented royalty owners in contract negotiations and litigation— experience that is directly relevant here. Moreover, Mitchell DeClerck has already conducted significant title and other factual research pertaining to this case that will directly benefit the proposed class. Mitchell DeClerck stands alone as the most appropriate interim liaison counsel in this case.

## CONCLUSION

Only one proposed leadership team in this consolidated case maintains the necessary experience, commitment, and resources to successfully prosecute this matter. And only one such team has conducted a significant independent investigation into the claims in this matter above and beyond what is in the public record stemming from the recent DOJ indictment. For the reasons expressed above and in their agreed leadership motion (Doc. 37), Original Plaintiffs respectfully request that the Court appoint Burns Charest, Susman Godfrey, and Cohen Milstein as Interim Co-Lead Counsel and Mitchell DeClerck as Interim Liaison Counsel.

DATED: May 6, 2016                                Respectfully submitted,

                                                  /s/Warren T. Burns

11

Warren T. Burns
Daniel H. Charest
Will Thompson
(*Admitted Pro Hac Vice*)
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com

Douglas D. Wilguess,
OBA No. 16337
Heather A. Garrett, OBA No. 19099
WILLGUESS & GARRETT, PLLC
One Leadership Square
211 N. Robinson, Suite 1350
Oklahoma City, OK 73102
Telephone: (405) 235-0200
Facsimile: (405) 232-6515
wilguess@wgokc.com
garrett@wgokc.com

Larry D. Lahman
Michael E. Kelly
Carol Hambrick Lahman
Roger L. Ediger
MITCHELL DECLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Telephone:  (800) 287-5144
larry.lahman@sbcglobal.net
mek@mdpllc.com
carollahman@gmail.com
rle@mdpllc.com

Christopher J. Cormier
(*Admitted Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210-5407

12

Telephone: (720) 583-0650
ccormier@cohenmilstein.com

Richard A. Koffman
Emmy L. Levens
Robert W. Cobbs
(*Admitted Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
rkoffman@cohenmilstein.com
elevens@cohenmilstein.com
rcobbs@cohenmilstein.com

Issac Diel
(*Pro Hac Vice* to be filed)
SHARP MCQUEEN PA
6900 College Boulevard Suite 285
Overland Park, Kansas 66211
Telephone: (913) 661-9931
idiel@sharpmcqueen.com

Terrell W. Oxford
(*Pro Hac Vice* to be filed)
SUSMAN GODFREY LLP
1000 Louisiana
Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
toxford@susmangodfrey.com

William C. Carmody
Arun Subramanian
(*Pro Hac Vice* to be filed for all)
SUSMAN GODFREY L.L.P.
560 Lexington Ave., 15 Floor
New York, NY 1002-6828
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
bcarmody@susmangodfrey.com

13

asubramanian@susmangodfrey.com

Benjamin F. Johns
Andrew W. Ferich
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
bfj@chimicles.com
awf@chimicles.com

Terry W. West
Bradley C. West
THE WEST LAW FIRM
124 West Highland Street
Shawnee, OK 74801
Telephone: (405) 395-4699
Facsimile: (405) 275-0052
brad@thewestlawfirm.com
terry@thewestlawfirm.com

R. Bryant McCulley
Stuart H. McCluer
MCCULLEY MCCLUER PLLC
1022 Carolina Boulevard, Suite 300
P.O. Box 505
Charleston, SC 29451
Telephone:  (205) 238-6757
Facsimile:  (662) 368-1506
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

A. Hoyt Rowell, III
James L. Ward, Jr.
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN LLC
P.O. Box 1007
Mt. Pleasant, SC 29465
Telephone:  (843) 727-6500
Facsimile:  (843) 216-6509
hrowell@rpwb.com
jward@rpwb.com

14

Chris Stucky
STUCKY FIELDS LLC
214 W. 18th St., Suite 200
Kansas City, MO 64108
Telephone:  (816) 659-9970
Facsimile:  (816) 659-9969
chris@stuckyfields.com

Simone Gosnell Fulmer
Harrison Lujan
FULMER LAW GROUP
1101 No. Broadway Ave., Suite 102
Oklahoma City, OK  73101
Telephone:  (405) 510-0077
sfulmer@fulmergrouplaw.com
hlujan@fulmergrouplaw.com

Garrett D. Blanchfield
Brant D. Penney
REINHARDT WENDORF
BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

Daniel C. Hedlund
Jason S. Kilene
GUSTAFSON GLUEKPLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
jkilene@gustafsongluek.com

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector

15

SPECTOR ROSEMAN KODROFF &
WILLIS, P.C.
1818 Market Street, Suite 2500,
Philadelphia, PA  19103
Telephone: 215 496 0300
Facsimile: 215 496 6611
espector@srkw-law.com
bcaldes@srkw-law.com
jspector@srkw-law.com

David P. McLafferty
LAW OFFICES OF DAVID P.
MCLAFFERTY & ASSOCIATES, P.C.
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 940-4000
Facsimile: (610) 940-4007
dmclafferty@mclaffertylaw.com

Mark A. Griffin
(*admitted pro hac vice*)
Washington State Bar #16296
mgriffin@kellerrohrback.com
Derek W. Loeser
(*admitted pro hac vice*)
Washington State Bar #24274
dloeser@kellerrohrback.com
Raymond J. Farrow
(*admitted pro hac vice*)
Washington State Bar #31782
rfarrow@kellerrohrback.com

KELLER ROHRBACK LLP

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900,
Facsimile: (206) 623-3384

Dennis A. Caruso (OBA # 11786)
CARUSO LAW FIRM, P.C.
The Colonial Building
1325 East 15th Street, Suite 201
Tulsa, OK 74120
Telephone: (918) 583-5900

16

dcaruso@carusolawfirm.com

Joseph Goldberg
Frank T. Davis
(Pro Hac Vice application pending for all)
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960
jg@fbdlaw.com
ftd@fbdlaw.com

Kathryn A. Reilly
Hugh Q. Gottschalk
(Pro Hac Vice application pending for all)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
reilly@wtotrial.com
gottschalk@wtotrial.com

Eric L. Cramer
Michael C. Dell'Angelo
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
mdellangelo@bm.net

Donald L. Perelman
Roberta D. Liebenberg
Gerard A. Dever
FINE, KAPLAN & BLACK, R.P.C.
One South Broad Street
Suite 2300
Philadelphia, PA 19107
Telephone: (215) 567-6565
dperelman@finekaplan.com
rliebenberg@finekaplan.com
gdever@finekaplan.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants using the CM/ECF System:

Daniel H. Charest
dcharest@burnscharest.com

Douglas D. Wilguess
wilguess@wgokc.com

Heather A. Garrett
garrett@wgokc.com

Michael E. Kelly
mek@mdpllc.com

Larry D. Lahman
larry.lahman@sbcglobal.net

Carol H. Lahman
carollahman@gmail.com

Bradley S. Keller
bkeller@byrneskeller.com

Paul R. Taylor
ptaylor@byrneskeller.com

Timothy J. Bomhoff
Tim.Bomhoff@mcafeetaft.com

Bryan N B King
bking@fellerssnider.com

Robert G. McCampbell
rmccampbell@fellerssnider.com

Travis V. Jett
tjett@fellerssnider.com

George S. Corbyn, Jr
gcorbyn@corbynhampton.com

Roger L. Ediger
rle@mdpllc.com

Andrew W. Ferich
awf@chimicles.com

Benjamin F. Johns
bfj@chimicles.com

Bradley C. West
brad@thewestlawfirm.com

Carin L. Marcussen
clm@federmanlaw.com

Dennis Albert Caruso
dcaruso@carusolawfirm.com

Eric L. Cramer
ecramer@bm.net

Harrison C. Lujan
hlujan@fulmergrouplaw.com

Michael C. Dell'Angelo
mdellangelo@bm.net

Noble K. McIntyre
noble@mcintyrelaw.com

R. Bryant McCulley
bmcculley@mcculleymccluer.com

Rachel Lawrene Mor

18

rmor@thelawgroupokc.com

Simone Gosnell Fulmer
sfulmer@fulmergrouplaw.com
Tara T. Tabatabaie
tara@sill-law.com

Terry W. West
terry@thewestlawfirm.com

William B. Federman
wbf@federmanlaw.com

Stuart H. McCluer

smccluer@mcculleymccluer.com

Garrett Dennis Blanchfield
g.blanchfield@rwblawfirm.com

William G. Caldes
bcaldes@srkw-law.com

Jeffrey L. Spector
jspector@srkw-law.com

Daniel C. Hedlund
dhedlund@gustafsongleuk.com


/s/ *Warren T. Burns*
Warren T. Burns

19