Marc M. Seltzer, Bar No. 545340
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

*Attorney for 8812 Tavern Corp., Christina*
*Malerba, and Nicholas Racklin*

Howard I. Langer, *Pro Hac Vice*
LANGER, GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19130
Phone: (215) 320-5660
Fax: (215) 320-5703

Richard Koffman, *Pro Hac Vice*
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave, NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for New Lounge 4324, LLC, Pedal Haus*
*Brewery, LLC, Trilogy Holding, LLC, Whiskey*
*Rocks Tempe, LLC, and Jonathan Franzen*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-BRO (JEMx)<br><br>**RESPONSE RE: APPLICATION BY CERTAIN PLAINTIFFS' COUNSEL FOR CASE LEADERSHIP POSITIONS**<br><br>Hon. Beverly Reid O'Connell |
| THIS DOCUMENT RELATES TO ALL ACTIONS | DATE: May 18, 2016<br>TIME: 1:30 p. m.<br>LOCATION: Courtroom 14 |

i

1    In our application for leadership, we proposed that three attorneys, and their

2  law firms, could provide an efficient leadership. These attorneys and firms have

3  decades of experience serving as lead counsel in successful nationwide and other

4  antitrust class action cases. The proposed leadership group includes Marc M. Seltzer

5  who has worked cooperatively with the other plaintiffs' firms in his appointed role in

6  this matter.  He has been appointed lead counsel in many high-profile cases in this

7  district, including the landmark *Korean Air Lines* litigation and the landmark *Toyota*

8  MDL. In *Toyota*, Judge Selna appointed Mr. Seltzer to serve as one of the three co-

9  lead counsel, commenting later that "Class counsel has consistently demonstrated

10  extraordinary skill and effort."[1] The proposed leadership group also includes

11  Howard Langer and Richard Koffman, the counsel who led the NHL and MLB class

12  actions upon which this case is based. The application that we submitted also

13  followed the structure indicated by the Court in its Order dated February 1, 2016.

14  (Dkt. 27).

15    The applications for case leadership filed by Hausfeld LLP and Robins

16  Kaplan LLP (collectively "Hausfeld") and the Law Offices of Alexander Schack and

17  Murray Law Firm (collectively "Schack") propose to provide for two different

18  leadership structures, involving other firms in undesignated roles.  The Schack

19  proposal further states that all seven "residential firms" supporting the application

20  will share equal work with the two firms seeking appointment as co-lead counsel.

21  This proposal for two leadership structures should be rejected for three reasons.

22    *First*, there is no reason for the Court to break the class apart prior to the

23  emergence of any conflict.  Hausfeld and Schack have identified no conflict among

24  class members. To the contrary, all plaintiffs' claims arise from a common core—the

25  alleged illegal agreement to exclusively sell game telecasts jointly through the

26  _____

27  [1] *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices, &*
   *Prods. Liab. Litig.*, Case No. CV 10-ML-2151 (C.D. Cal.), Dkt. No. 3933 at 12.

28

1

NFL—and will rise or fall together.

*Second*, the Hausfeld and Schack proposals may result in unnecessary duplication in efforts and other inefficiencies. It is unclear who would be in charge of litigating common issues and how disagreements would be resolved, nor is it clear how many firms would be actively working in the two structures. We think it would be far more efficient to have one leadership structure that oversees the entire litigation.  In their application, the Schack applicants say they would give an "equal[] share" of work to at least seven "residential class" firms (Dkt. 130, at 1 n.2); the Hausfeld applicants do not discuss what roles the "over 30 law firms" that they mention expect to have in the litigation (Dkt. 127 at 1). The Hausfeld and Schack proposals would not be consistent with the "most important" factor in selecting case leadership: "achieving <u>efficiency and economy</u> without jeopardizing fairness to the parties." *Manual for Complex Litigation* §10.221 (4th ed. 2001) (emphasis added).

*Third*, the Hausfeld and Shack proposals do not follow the PAC/PSC structure proposed by this Court, which is designed to ensure the type of efficient structure that best suits this case.

## I.    The Two-Leadership Structure Is Unnecessary

There is no need for separate structures for commercial and residential subscribers, just as there is no need to break apart and treat separately classes of these plaintiffs. Fracturing the class would only be warranted if there were a fundamental conflict within the class, but the Hausfeld and Schack plaintiffs can identify none. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (rejecting "speculative conflicts" as an objection to class certification); *Newberg on Class Actions* § 7:31 (4th ed. 2002) ("[T]he court must be satisfied that there is a clear need to authorize multiple classes and class counsel to avoid confusion and to assure that prosecution of class claims will proceed efficiently without giving rise to requests for excessive attorneys' fees from

1    unnecessary duplication of work . . . .").

2        While the Hausfeld and Schack plaintiffs argue that there are some potential

3    factual differences between the two groups of subscribers, there is no explanation of

4    why those differences would require different classes and different case management

5    structures. That is especially true given that the parties have already acknowledged

6    that the fundamental issues in this case are common to all consumers. As set forth in

7    the parties' joint preliminary report, "[t]he core issue in these cases is the horizontal

8    agreement among the 32 teams to exclusively sell their telecasts jointly through the

9    NFL." (Dkt. 116, at 4); *id.* ("The single issue of the existence and scope of the

10   conspiracy will predominate the class."). This core issue is the same for commercial

11   and residential subscribers. The threshold legal issues addressed in the parties' joint

12   report—applicability of the Sports Broadcasting Act to bar the plaintiffs' claims,

13   whether arbitration clauses bar these claims, and antitrust standing—are also

14   common to all subscribers.

15       In the face of these overwhelming common interests, the Hausfeld and Schack

16   plaintiffs principally base their argument for a duplicate structure on the fact that

17   commercial and residential establishments purchase according to different pricing

18   structures and may be considered two separate markets or submarkets.

19       The different price structures applicable to commercial and residential

20   purchases do not create any conflict, nor do Hausfeld and Schack suggest that they

21   do. There is nothing unusual about the same counsel representing a single class that

22   includes plaintiffs who purchase in related but separate markets or submarkets.[2] *See,*

23   *e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d

24   

_____

25   [2] Hausfeld and Schack both note that the *8812 Tavern Corp*. complaint pleads a
     product market limited to commercial subscribers. (Doc. No. 127 at 2 n.4; Doc. No.
26   130 at 2 n.5). But they fail to inform the Court that that complaint also pleaded a
     broader, all-purchaser market. *See* Complaint, Doc. No. 1, No. 15-cv-6771
27   (S.D.N.Y. Aug. 26, 2015), at ¶¶ 24, 81.

28

1126, 1137 (N.D. Cal. 2014) (where the Hausfeld firm asserted antitrust claims affecting two markets, namely a "college education" market and a "group licensing" market). The Schack plaintiffs also note that one complaint included California state law claims, but national actions frequently include a California-law subclass without any conflict.[3] *See, e.g.*, *In re SRAM Antitrust Litig.*, 264 F.R.D. 603, 617 (N.D. Cal. 2009).

Of course, if at some point in this litigation a real conflict arises between certain plaintiffs, the Court always has the option of creating subclasses with separate representation. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) (affirming single-class certification because "[a]t this stage in the litigation, the existence of such conflicts is hypothetical [and if] and when they become real, the district court can certify subclasses with separate representation of each"). There is no reason to provide for separate case leadership structures at this preliminary phase of the case, in the absence of any actual—or even alleged—conflict. *See, e.g.*, *Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 132716, at *16 (C.D. Cal. July 31, 1990) (granting the plaintiffs' motion for class certification but declining to create subclasses because the "potential benefits in terms of case management . . . will not be realized until this action is in a posture closer to adjudication on the merits").

## II.    The Two-Leadership Structure Is Inefficient

Duplicate management structures tend to create needless duplication of effort and unnecessary complexity in the litigation. *See Manual for Complex Litigation §10.221 (4th ed. 2001)* (recognizing that unnecessary committees of counsel often "lead to substantially increased costs, and . . . unnecessary duplication of efforts

---

[3] The Schack plaintiffs also note that defendants are likely to move to compel arbitration, and theorize that such a motion might be more successful against one portion of the class than another, but they offer no reason to support that theory.

1  . . . .").  They are not recommended when fewer lawyers can do the job equally well.

2  *See id.* (noting that the court or lead counsel "may task committees with preparing

3  briefs or conducting portions of the discovery program if one lawyer cannot do so

4  adequately") (emphasis added).

5       Moreover, while on the surface it appears that two firms have been proposed

6  for leadership of the "commercial" class, and two firms proposed for leadership of

7  the "residential" class, the Schack application concedes in a footnote that the

8  applicants plan to appoint to special positions several lawyers who have supported

9  their application, and indeed plan to give every single firm that supported them – a

10  total of 7 firms – an "equal[] share in the workload." (Doc. No. 130 at 1 n.2). The

11  Hausfeld application does not describe what role the over 30 firms listed in

12  Appendix A to their application will have moving forward in this case, and why such

13  involvement would be necessary.

14       Finally, the Hausfeld and Schack proposals do not follow the PAC/PSC

15  structure proposed by this Court, which was designed to advance the case "in the

16  most efficient and expeditious manner through coordination." (Dkt. 27).  By

17  contrast, our application adopted the PAC/PSC structure and explicitly committed to

18  "impose internal limitations to ensure the efficient and cost-effective prosecution of

19  these actions." (Doc. No. 129 at 5). This is key to minimizing waste and avoiding

20  costly redundancies.

21       We welcome working with other counsel in prosecuting the litigation, but

22  firmly believe that a leaner structure would best serve the interests of the plaintiffs

23  and efficiency in this litigation.  By contrast, we think the nine-lawyer, dual-

24  leadership structure proposed by the Hausfeld and Schack groups would not best

25  serve those interests.

26

27

28

1

2    Dated: May 11, 2016                    */s/ Marc M. Seltzer*
                                            Marc M. Seltzer (54534)
3                                           SUSMAN GODFREY L.L.P.
                                            1901 Avenue of the Stars, Suite 950
4                                           Los Angeles, CA 90067-6029
                                            Telephone: (310) 789-3100
5                                           Fax: (310) 789-3150
                                            mseltzer@susmangodfrey.com
6

7

8                                           William C. Carmody
                                            Arun Subramanian
9                                           Seth D. Ard
                                            Ian M. Gore
10                                          SUSMAN GODFREY L.L.P.
                                            560 Lexington Avenue, 15th Floor
11                                          New York, NY 10022
                                            Telephone: (212) 336-8330
12                                          Fax: (212) 336-8340
                                            igore@susmangodfrey.com
13                                          sard@susmangodfrey.com
                                            asubramanian@susmangodfrey.com
14                                          bcarmody@susmangodfrey.com
15
16

17                                          *Attorneys for 8812 Tavern Corp., Christina*
                                            *Malerba, and Nicholas Racklin*
18

19                                          Howard I. Langer, *Pro Hac Vice*
                                            Edward Diver, Pro Hac Vice
20                                          Peter Leckman (235721)
                                            LANGER, GROGAN & DIVER, P.C.
21                                          1717 Arch Street, Suite 4130
                                            Philadelphia, PA 19130
22                                          Phone: (215) 320-5660
                                            Fax: (215) 320-5703
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard Koffman, *Pro Hac Vice*
Jeffrey Dubner, P*ro Hac Vice*
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Ave, NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
Fax: (202) 408-4699

*Attorneys for New Lounge 4324, LLC, Pedal Haus Brewery, LLC, Trilogy Holding, LLC, Whiskey Rocks Tempe, LLC, and Jonathan Franzen*

7