1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE BEVERLY REID O'CONNELL, U.S. DISTRICT JUDGE

4

5  IN RE: NATIONAL FOOTBALL LEAGUE        )       Case No.
   SUNDAY TICKET ANTITRUST LITIGATION     )  ML 15-2668 BRO (JEMx)
6                                         )
   _____)
7

8

9

10

11

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS
              CASE MANAGEMENT CONFERENCE
16                       and
            MOTION TO CONSOLIDATE ACTIONS
17          WEDNESDAY, MAY 18, 2016
                   1:58 P.M.
18          LOS ANGELES, CALIFORNIA

19

20

21

22  _____

23   MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
          FEDERAL OFFICIAL COURT REPORTER
24        312 NORTH SPRING STREET, ROOM 430
          LOS ANGELES, CALIFORNIA  90012
25                 (213) 894-2305

1                   **APPEARANCES OF COUNSEL:**

2

3    **FOR THE VARIOUS PLAINTIFFS:**

4         SUSMAN GODFREY, LLP
          BY:  MARC M. SELTZER
5              Attorney at Law
          1901 Avenue of the Stars, Suite 950
6         Los Angeles, California  90067
          (310) 789-3102
7

8    **FOR THE VARIOUS PLAINTIFFS:**

9
          LANGER, GROGAN & DIVER, PC
10        BY:  HOWARD LANGER
               Attorney at Law
11        1717 Arch Street, Suite 4130
          Philadelphia, Pennsylvania  19103
12        (215) 320-5660

13

14   **FOR THE PLAINTIFF NINTH INNING, INC.:**

15        HAUSFELD, LLP
          BY:   SCOTT ALLAN MARTIN
16             Attorney at Law
          33 Whitehall Street, 14th Floor
17        New York, New York  10004
          (646) 357-1100
18

19
     **FOR THE PLAINTIFF GAEL PUB:**
20
          ROBINS KAPLAN
21        BY:  HOLLIS SALZMAN
               Attorney at Law
22        601 Lexington Avenue, Suite 3400
          New York, New York  10022
23        (212) 980-7400

24

25

                    **UNITED STATES DISTRICT COURT**

```
 1    APPEARANCES OF COUNSEL, CONTINUED:

 2

 3    FOR THE PLAINTIFF GAEL PUB:

 4        ROBINS KAPLAN
          BY:  DAVID MARTINEZ
 5             Attorney at Law
          2049 Century Park East, Suite 3400
 6        Los Angeles, California  90067
          (310) 552-0130
 7

 8

      FOR PLAINTIFF D.J.'S SPORTS BAR:
 9
          GIRARD GIBBS
10        BY:  DENA CONNOLLY SHARP
               Attorney at Law
11        601 California Street, 14th Floor
          San Francisco, California  94108
12        (415) 981-4800

13

14    FOR THE PLAINTIFF MICHAEL HOLINKO:

15        LAW OFFICES OF ALEXANDER M. SCHACK
          BY:  ALEXANDER M. SCHACK
16        BY:  NATASHA NARAGHI
               Attorneys at Law
17        16870 West Bernardo Drive, Suite 400
          San Diego, California  92127
18        (858) 485-6535

19

20    FOR THE PLAINTIFFS OUR VENTURES, INC., JAMMERS, INC., and
      ROBERT GARY LIPPINCOTT, JR.:
21
          ZIMMERMAN REED
22        BY:  BRIAN C. GUDMUNDSON
               Attorney at Law
23        80 South 8th Street
          Minneapolis, Minnesota  55402
24        (612) 341-0400

25
```

UNITED STATES DISTRICT COURT

```
 1   APPEARANCES OF COUNSEL, CONTINUED:

 2

 3   FOR THE PLAINTIFFS OUR VENTURES, INC., JAMMERS, INC., and
     ROBERT GARY LIPPINCOTT, JR.:
 4
         ZIMMERMAN REED
 5       BY:  CALEB MARKER
             Attorney at Law
 6       2381 Rosecrans Avenue, Suite 328
         Manhattan Beach, California  90245
 7       (877) 500-8780

 8

 9   FOR THE PLAINTIFFS JAMMERS, INC., and ROBERT GARY LIPPINCOTT,
     JR.:
10
         MURRAY LAW FIRM
11       BY:  ARTHUR M. MURRAY
             Attorney at Law
12       625 St. Charles Avenue, Third Floor
         New Orleans, Louisiana  70130
13       (504) 525-8100

14

15   FOR THE VARIOUS PLAINTIFFS:

16       COHEN, MILSTEIN, SELLERS & TOLL
         BY:  RICHARD A. KOFFMAN
17           Attorney at Law
         1100 New York Avenue NW, Suite 500 West
18       Washington, DC  20005
         (202) 408-4600
19

20
     FOR THE PLAINTIFF SIR WALDON, INC.:
21
         THE MOGIN LAW FIRM, PC
22       BY:  DANIEL J. MOGIN
             Attorney at Law
23       707 Broadway, Suite 1000
         San Diego, California  92101
24       (619) 687-6611

25
```

UNITED STATES DISTRICT COURT

```
 1    APPEARANCES OF COUNSEL, CONTINUED:

 2

 3    FOR THE PLAINTIFF DAVENPORT'S FAMILY RESTAURANT:

 4         BLOCK & LEVITON, LLP
           BY:  LESLEY E. WEAVER
 5              Attorney at Law
           520 Third Street, Suite 108
 6         Oakland, California  94607
           (415) 968-8992
 7

 8

 9    FOR THE PLAINTIFF TRILOGY HOLDING, INC.:

           HACH, ROSE, SCHIRRIPA & CHEVERIE, LLP
10         BY:  FRANK SCHIRRIPA
                Attorney at Law
11         185 Madison Avenue, 14th Floor
           New York, New York  10016
12         (212) 213-9311

13

14    FOR THE PLAINTIFF MARIO ALIANO:

15         SULLIVAN, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER
           BY:  ADAM M. TAMBURELLI
16              Attorney at Law
           444 West Ocean Boulevard, Suite 1700
17         Long Beach, California  90802
           (562) 597-7070
18

19

20    FOR THE DEFENDANT NATIONAL FOOTBALL LEAGUE, INC.:

           WILKINSON, WALSH & ESKOVITZ
21         BY:  BETH A. WILKINSON
           BY:  JONATHAN D. KELLEY
22              Attorneys at Law
           1900 M Street, NW, Suite 800
23         Washington, D.C.  20036
           (202) 847-4000
24

25
```

```
 1   APPEARANCES OF COUNSEL, CONTINUED:

 2

 3   FOR THE DEFENDANT NATIONAL FOOTBALL LEAGUE, INC.:

 4       WILKINSON, WALSH & ESKOVITZ
         BY:  SEAN ESKOVITZ
 5            Attorney at Law
         11726 San Vicente Boulevard, Suite 600
 6       Los Angeles, California  90049
         (202) 847-4000
 7
         COVINGTON & BURLING, LLP
 8       BY:  DEREK LUDWIN
              Attorney at Law
 9       850 Tenth Street, NW
         Washington, DC  20001
10       (202) 662-5429

11       COVINGTON & BURLING, LLP
         BY:  NEEMA T. SAHNI
12            Attorney at Law
         2029 Century Park East, Suite 3100
13       Los Angeles, California  90067
         (424) 332-4757
14

15
     FOR THE DEFENDANT DIRECTV, LLC:
16
         KIRKLAND & ELLIS, LLP
17       BY:  MICHAEL E. BAUMANN
         BY:  MELISSA D. INGALLS
18       BY:  ROBYN E. BLADOW
         BY:  TAMMY A. TSOUMAS
19            Attorneys at Law
         333 South Hope Street
20       Los Angeles, California  90071
         (213) 680-8424
21

22   FOR THE DEFENDANT ESPN:

23       MUNGER, TOLLES & OLSON
         BY:  GLENN D. POMERANTZ
24            Attorney at Law
         355 South Grand Avenue, 35th Floor
25       Los Angeles, California  90071
         (213) 683-9100
```

```
 1    APPEARANCES OF COUNSEL, CONTINUED:

 2

 3    FOR THE DEFENDANT CBS CORPORATION:

 4        WEIL, GOTSHAL & MANGES, LLP
          BY:  YEHUDAH L. BUCHWEITZ
 5             Attorney at Law
          767 Fifth Avenue
 6        New York, New York  10153
          (212) 310-8256
 7

 8

      FOR THE DEFENDANT NBC UNIVERSAL MEDIA, LLC:
 9
          GIBSON, DUNN & CRUTCHER
10        BY:  SCOTT EDELMAN
               Attorney at Law
11        2029 Century Park East, Suite 4000
          Los Angeles, California  90067
12        (310) 552-8500

13

14    FOR THE DEFENDANT FOX BROADCASTING COMPANY:

15        WILLIAMS & CONNOLLY, LLP
          BY:  JOHN E. SCHMIDTLEIN
16             Attorney at Law
          725 Twelfth Street, N.W.
17        Washington, D.C.  20005
          (202) 434-5901
18

19

20

21

22

23

24

25
```

```
 1              WEDNESDAY, MAY 18, 2016; 1:58 P.M.

 2                 LOS ANGELES, CALIFORNIA

 3                          -oOo-

 4         THE COURTROOM DEPUTY:  Case No. ML 15-2668 BRO,

 5  In Re: National Football League Sunday Ticket Antitrust

 6  Litigation.

 7      Counsel, please state your appearances.

 8         MR. SELTZER:  Your Honor, if it please the Court,

 9  Marc Seltzer of Susman Godfrey on behalf of certain plaintiffs.

10         THE COURT:  Good afternoon.

11         MR. LANGER:  Howard Langer, Langer, Grogan & Diver,

12  also on behalf of certain plaintiffs.

13         MR. MARTIN:  Scott Martin, Hausfeld, LLP, on behalf

14  of plaintiff Ninth Inning, Inc.

15         MS. SALZMAN:  Hollis Salzman, Robins Kaplan, on

16  behalf of Gael Pub.

17         MS. SHARP:  Your Honor, Dena Sharp from Girard Gibbs

18  on behalf of plaintiff D.J.'s Sports Bar.  Thank you.

19         MR. SCHACK:  Good afternoon, Your Honor.

20  Alex Schack on behalf of plaintiff Holinko.

21         MR. GUDMUNDSON:  Good afternoon, Your Honor.

22  Brian Gudmundson from Zimmerman Reed on behalf of Jammers, Inc.

23         MR. MARKER:  Caleb Marker from Zimmerman Reed,

24  Jammers, Inc., as well, Your Honor.

25         MR. MURRAY:  Your Honor, Arthur Murray, Murray Law
```

```
 1   Firm, on behalf of plaintiffs Lippincott and Jammers, Inc.
 2            MR. MARTINEZ:  Good afternoon, Your Honor.
 3   David Martinez of Robins Kaplan on behalf of Gael Pub.
 4            MR. KOFFMAN:  Good afternoon, Your Honor.
 5   Richard Koffman of Cohen Milstein on behalf of certain
 6   plaintiffs.
 7            MR. MOGIN:  Good afternoon, Your Honor.  Dan Mogin
 8   on behalf of Sir Waldon, Inc.
 9            THE COURT:  Not a South Dakota company.
10            MS. WEAVER:  Good afternoon, Your Honor.
11   Lesley Weaver, Block & Leviton, on behalf of Davenport's Family
12   Restaurant.
13            THE COURT:  Thank you.
14            MR. SCHIRRIPA:  Good afternoon, Your Honor.
15   Frank Schirripa of Hach Rose, on behalf of Trilogy Holding,
16   Inc.
17            THE COURT:  Afternoon.
18            MR. TAMBURELLI:  Good afternoon, Your Honor.
19   Adam Tamburelli on behalf of plaintiff Mario Aliano.
20            THE COURT:  Have I gotten everybody from the
21   plaintiffs' side?  Okay.
22       Let's hear from our defendants, please.
23            MS. WILKINSON:  Good afternoon, Your Honor.
24   Beth Wilkinson from Wilkinson, Walsh & Eskovitz on behalf of
25   the NFL.
```

```
1              THE COURT:  Good afternoon.
2              MR. ESKOVITZ:  Good afternoon, Your Honor.
3    Sean Eskovitz from Wilkinson, Walsh & Eskovitz on behalf of the
4    NFL.
5              MR. LUDWIN:  Good afternoon, Your Honor.
6    Derek Ludwin of Covington & Burling on behalf of the NFL.
7              MS. SAHNI:  Good afternoon, Your Honor.  Neema Sahni
8    from Covington & Burling on behalf of the NFL.
9              THE COURT:  Afternoon.
10             MR. BAUMANN:  Good afternoon, Your Honor.
11   Michael Baumann of Kirkland & Ellis on behalf of DIRECTV.
12             MS. INGALLS:  Melissa Ingalls, Kirkland & Ellis, on
13   behalf of DIRECTV.
14             MS. BLADOW:  Robyn Bladow of Kirkland & Ellis on
15   behalf of DIRECTV.
16             MS. TSOUMAS:  Good afternoon, Your Honor.
17   Tammy Tsoumas of Kirkland & Ellis on behalf of DIRECTV.
18             MR. POMERANTZ:  Good afternoon, Your Honor.
19   Glenn Pomerantz on behalf of ESPN.
20             MR. KELLEY:  Good afternoon, Your Honor.
21   Jonathan Kelley from Wilkinson, Walsh & Eskovitz on behalf of
22   the NFL.
23             MR. BUCHWEITZ:  Good afternoon, Your Honor.
24   Yehudah Buchweitz of Weil, Gotshal & Manges on behalf of
25   CBS Corporation.
```

```
 1            MR. EDELMAN:  Good afternoon, Your Honor.
 2    Scott Edelman from Gibson, Dunn & Crutcher on behalf of
 3    NBC Universal.
 4            MR. SCHMIDTLEIN:  Good afternoon, Your Honor.
 5    John Schmidtlein of Williams & Connolly on behalf of defendant
 6    Fox Broadcasting Company.
 7            THE COURT:  All right.  Looks like we've gotten
 8    everybody.
 9        Pause a moment, please.
10        All right.  First, welcome to Los Angeles to many of you
11    or welcome back.
12        Before we begin today, I am disclosing to you that in
13    2015 I previously owned CBS Corporation stock.  I no longer own
14    CBS Corporation stock.
15        We are here for our first case management conference and
16    motion to consolidate actions.  We were going to begin at 1:30,
17    but I gave you folks some time to -- actually, the plaintiffs
18    to talk amongst themselves -- the defense didn't have a
19    position on this, rightly so -- to talk amongst themselves to
20    see if you wished to reach an agreement as to the PAC and the
21    PSC in this case.
22        And let me ask, first, Mr. Seltzer or Mr. Langer -- you
23    stood up first, Mr. Langer.  Do you want to respond?  Or,
24    Mr. Seltzer, you want to respond?  I think you asked for the
25    extra time, so let's put you on the hot seat.
```

 1          MR. SELTZER:  Yes, Your Honor.  Thank you,

 2  Your Honor.  Marc Seltzer for certain plaintiffs.

 3          We took Your Honor's admonition in the case management

 4  order to see if we could work out an agreement among the

 5  plaintiffs' lawyers concerning leadership.  We tried very hard

 6  to do that over a period of time since the Court issued its

 7  order.  And this morning, this afternoon before the hearing

 8  today, we had further discussions.  I think we made fairly

 9  substantial progress towards reaching an agreement, but we're

10  not quite there yet.

11          And I've discussed the matter with Scott Martin of the

12  Hausfeld firm and Hollis Salzman with the Robins Kaplan firm

13  and other of my colleagues here.  And we'd like to make this

14  request of the Court, since we did make a lot of progress,

15  whether the Court might consider deferring hearing or ruling on

16  the motions for leadership today, allow us one additional day

17  to see if we can actually come to an agreement.  And, if so,

18  then we would submit that to the Court, you know, at the close

19  of business tomorrow.

20          That would be the request I think that the counsel that

21  have been involved in these negotiations would make.  We would

22  request the Court's indulgence in that regard.

23          THE COURT:  All right.  So here's the thing.  You

24  asked me for two things.

25          MR. SELTZER:  Yes.

1        THE COURT:  One was to defer any hearing, and two

2   was to defer any ruling.

3       If you are unable to reach an agreement, I may have some

4   questions for you.

5        MR. SELTZER:  Yes, Your Honor.

6        THE COURT:  And while, Mr. Seltzer, it might be

7   quite convenient for you to roll down the 10 Freeway to my

8   court, my recollection is not everybody is so conveniently

9   located to Los Angeles.

10      So while I am desirous of giving you the time you need to

11  work it out, the defer ruling part is easier than the defer

12  hearing part.  The folks are here.  I don't want you to become

13  entrenched in your positions after arguing such that it

14  destroys any progress you've made.

15      So let's pause a moment.  Let's see what --

16       MR. SELTZER:  And, Your Honor, if I may, one

17  suggestion that occurs to me is perhaps, if there is not

18  agreement that's reached tomorrow, that perhaps the Court could

19  schedule a telephonic hearing so that counsel who came from out

20  of town could participate by telephone.

21       THE COURT:  I hate telephonic conferences.  I don't

22  find them to be helpful to me, but I don't mind Skype.  I want

23  to be able to look at you when you respond to my questions

24  because I make decisions based on taking in all the evidence,

25  including your responses visually.

```
1        So I don't have a problem with Skype if we can work it

2   out in this very old building.  But -- I don't have a problem

3   with that.  But I'm not typically amenable to telephonic

4   conferences because I think there is a lot to be gained from

5   seeing one another.

6        So I'll see if I could work that out.  I think I can.  We

7   have the Roybal building over there which has some great Wi-Fi

8   technology.  But I think that could -- that may solve that

9   problem.

10       But let's pause a moment, please.

11            MR. SELTZER:  And then if counsel wanted to appear

12  in the courtroom in person in addition to that, they could, I

13  assume.

14            THE COURT:  Sure.

15            MR. SELTZER:  Excuse me one second, Your Honor.

16            (Pause in the proceedings.)

17            THE COURT:  Okay.  Mr. Seltzer, are you asking me

18  for -- if you don't reach an agreement by the end of the day

19  tomorrow, to appear on Friday?  Or are you asking me to -- if

20  you don't reach an agreement to appear tomorrow?

21            MR. SELTZER:  Either day would be okay as far as I'm

22  concerned.  But I think Friday would probably be better, if

23  counsel are traveling back East to have themselves available on

24  Friday.

25            THE COURT:  Do you want a moment to confer --
```

```
1              MR. SELTZER:  Yes, please.
2              THE COURT:  -- because there's a whole bunch of you.
3              (Off-the-record discussion among counsel.)
4              MR. SELTZER:  I'm sorry, Your Honor.
5              THE COURT:  Go ahead.  Take a moment.
6              MS. SALZMAN:  Thank you.
7              (Off-the-record discussion among counsel.)
8              THE COURT:  Mr. Seltzer.
9              MR. SELTZER:  Yes, Your Honor.  After talking with
10   my colleagues, I think what we'd like to request is that the
11   hearing be either tomorrow if we can't reach agreement or the
12   next day.
13             THE COURT:  That would be Thursday or Friday.
14   Right?  I mean, is it not -- is it Wednesday today?  I think
15   so.
16             MR. SELTZER:  I -- I've totally lost track of time.
17             MS. SALZMAN:  I think what we're saying if we could
18   come back -- we're hopeful that we will reach the agreement and
19   not have to bother Your Honor, but --
20             THE COURT:  Okay.
21             MS. SALZMAN:  -- if we can't reach an agreement, if
22   we could come back tomorrow, if you have time for us.  That
23   would be preferable.
24             THE COURT:  All right.
25             MS. SALZMAN:  Thank you.
```

UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Okay.  Thank you.
 2         All right.  What's the defendants' availability tomorrow?
 3    You're all here now, I know.
 4              MS. WILKINSON:  Your Honor, may I consult --
 5              THE COURT:  Yes.  There's quite a number of you on
 6    the other side as well.
 7              (Off-the-record discussion among counsel.)
 8              THE COURT:  Let me tell you what I'm thinking while
 9    you're conferring is I do have time tomorrow at 3:00 p.m.,
10    3:00 p.m.
11              MS. WILKINSON:  Your Honor?
12              THE COURT:  I just don't have any time in the
13    morning, period.  Yep.
14              MS. WILKINSON:  Obviously we would like to have it
15    as soon as possible.  We all flew out here.  Our client flew
16    out.  And as you know, you gave sufficient time for people to
17    discuss this.  But we understand if plaintiffs are close.
18         I think for us, we could do it in the morning.  And it
19    sounds like that won't work for your schedule.  We have one of
20    our counsel who has a hearing in San Jose tomorrow afternoon.
21    And other people have, you know, scheduled flights back on
22    Friday.
23         We agree with you, we do not want to do it even by Skype.
24    We want to be discussing with you the schedule and all the
25    other things you put on the agenda.  And it's important to us
```

1    to be here in person with you.

2            THE COURT:  Well, I prefer at least our first

3    meeting to discuss things to be in person.  I don't necessarily

4    foreclose -- I don't want to say every meeting has to be in

5    person, but this is a -- the kickoff.

6        If -- I don't want to foreclose -- because, look, this is

7    a working relationship.  And I understand that.  So if you can

8    reach an agreement that I can live with, I want to give you --

9    well, additional time, not really, but it has been my

10   experience that things get done more quickly when I'm sitting

11   on this bench and you're sitting out there.

12       So, Mr. Seltzer, what's the minimum amount of time you

13   need to get --

14           MR. SELTZER:  Your Honor, after further discussion

15   and also listening to the logistics issues that have been

16   raised with out-of-town counsel, what I would suggest -- and

17   if -- subject to Ms. Salzman and Scott Martin's views on it and

18   also Mr. Langer's -- is that rather than put it over, that --

19   instead, that the hearing take place later on today at

20   4:00 o'clock if we can't reach agreement.

21       That -- we were very, very close.  There was one issue

22   separating us on leadership structure.  If we can resolve that

23   one issue, then I think we can have an agreement.  If we can't,

24   then I think we can be prepared to come back and argue it today

25   and, therefore, avoid the additional travel for everyone else

```
 1   and all the other logistics.
 2        And I apologize for being a moving target.
 3             THE COURT:  You definitely are.  Hold on one second.
 4             (Pause in the proceedings.)
 5             THE COURT:  We have our own logistics here too.
 6   And -- all right.  Everybody go get a cup of coffee.  And when
 7   I say 4:00 o'clock, I mean 3:59:59 ready to go, no "we need ten
 8   more minutes."  We don't need ten minutes more because this is
 9   your additional time.  And I have staff considerations that I
10   really -- I can't let push much past that.  Okay, folks?
11             MR. SELTZER:  That's understood, Your Honor.
12             THE COURT:  To give us enough time to discuss --
13   we're not just going to come in and be done at 4:10, so --
14             MS. SALZMAN:  Your Honor, I don't want to jinx it.
15   But if we are ready to report to you before 4:00 o'clock, would
16   you like an earlier report?
17             THE COURT:  I have a conference call that starts at
18   3:00.
19             MS. SALZMAN:  Okay.
20             THE COURT:  So an earlier -- if you're ready to
21   go -- there's a lot of people that may be at different spots.
22   So I'm going to just say no, 4:00 o'clock is the time.  You
23   folks can get a cup of coffee.  Everybody can just come back
24   here between a quarter of 4:00, and I'll be ready at 3:59 to
25   come back and visit with you folks.  Okay?
```

1          MS. SALZMAN:  Okay.  Thank you.

2          THE COURT:  Because even if you are ready,

3    unfortunately there's just way too many moving parts here.  I

4    want everybody to be on the same page.

5          MR. SELTZER:  Very well, Your Honor.

6          MS. WILKINSON:  Thank you, Your Honor.

7          THE COURT:  Okay.  Thank you, folks.  We'll see you

8    at 4:00 o'clock.

9          (Break taken.)

10          THE COURT:  We're back on the record in the matter

11    of In Re: NFL Football League Sunday Ticket Antitrust

12    Litigation.  All parties are present represented by counsel,

13    rather than take the 15 minutes to do your appearances again.

14       All right.  Mr. Seltzer, when we last left off, you were

15    working on coming to some agreement.

16          MR. SELTZER:  Yes, Your Honor.  And I'm pleased to

17    report to the Court that we have reached an agreement by all

18    the plaintiffs' counsel except for one who will be heard

19    separately.  And let me recite the terms of the agreement that

20    we have reached which is all, of course, subject to the

21    approval of the Court.

22       That there would be four co-lead counsel.  We noted

23    Your Honor's terminology of a plaintiffs' administrative and

24    management committee.  But these lawyers would be effectively

25    the co-lead counsel in the case who would supervise and direct

UNITED STATES DISTRICT COURT

```
1    and oversee the management of the litigation.

2        We didn't know precisely whether Your Honor wanted to

3    appoint attorneys as opposed to law firms or both attorneys and

4    law firms or law firms.  We're prepared to do it whatever way

5    Your Honor would prefer.

6            THE COURT:  I would like attorneys and law firms.  I

7    know -- because, Mr. Seltzer, I am familiar with your law firm,

8    but I would hope and expect to see you personally.  Mr. Lerner,

9    I think you actually in your papers said you are -- represented

10   you would personally be here in addition and handling the

11   litigation, so I would expect that.

12       So why don't you start with that.  Let's start with that.

13           MR. SELTZER:  Yes, Your Honor.  The four co-leads

14   would be myself and the Susman Godfrey law firm.  The next one

15   would be Hollis Salzman and the Robins Kaplan firm.  And

16   Ms. Salzman is here in the courtroom, as Your Honor knows.  The

17   next firm would be Howard Langer and his firm.  And Mr. Langer

18   is -- is here as well.

19           THE COURT:  Yes.  I -- did I call you Mr. Learner?

20   I apologize, Mr. Langer.  Okay.

21           MR. SELTZER:  And then -- and then Scott Martin and

22   the Hausfeld firm would be the fourth.

23           THE COURT:  Okay.  So you propose not having a PAC

24   and a PSC.  You propose four co-lead counsel who would subsume

25   the duties of both?
```

1           MR. SELTZER:  Well, actually, we would also propose

2     that there be a plaintiffs' steering committee along the lines

3     of what Your Honor indicated in your order.  And there would be

4     five firms or five individuals and firms on that committee.

5     They would be, um -- two firms would act as co-chairs.  One

6     co-chair would be the Cohen Milstein firm and Mr. Koffman, who

7     is here.  The other would be the Murray Law Firm and Art Murray

8     who is representative of residential plaintiffs.

9           There would be three other members to be proposed to your

10    Court to the -- to Your Honor in an order that we would submit,

11    and that is under discussion as to who would be suggested for

12    those positions.

13          Uh, the -- the idea would be the co-leads would supervise

14    and manage the litigation, that they would make work

15    assignments to other lawyers in the case as they believe would

16    be appropriate to serve the best interests of plaintiffs and

17    the class.  And this would be the leadership structure for all

18    of the cases in litigation.

19          That's the proposal.  And what we would request the

20    Court's permission to do is to submit a proposed formal order

21    that would set forth those nominations to the positions and

22    that would also say what I -- what I just said about the

23    overall management and direction of the litigation.

24          THE COURT:  And what would be the -- you -- what

25    would you envision the steering committee doing that the

```
 1    co-leads are going to basically supervise and manage the
 2    litigation?
 3              MR. SELTZER:  They would do assigned tasks in
 4    litigation.  For example, there's a case I'm currently one of
 5    the co-lead counsel with my firm in the Auto Parts Antitrust
 6    Litigation in Detroit where Ms. Salzman and her firm are
 7    another one of the co-lead counsel.  And we have other firms
 8    that we assign specific tasks to, specific discovery
 9    assignments, specific briefing assignments.  But all of that is
10    done under our supervision, in other words, under our
11    direction.  And we would lay that out in the proposed order,
12    Your Honor.
13              THE COURT:  And so maybe this question is more for
14    Mr. Langer whose papers really focused on the lean workable
15    leadership structure.  So why should I double -- make it
16    larger?
17          You're reluctant to speak to me.  Most people are.  So
18    I'm -- it doesn't bother me.
19              MR. LANGER:  No, you know, I clearly have a view of
20    these things.  And I've had a view throughout my career,
21    frankly, and -- of how these things should be done.  But, you
22    know, sometimes I have to bow to the views of others in order
23    to get things peacefully presented to the Court.
24              THE COURT:  Okay.  Understood.
25              MR. SELTZER:  All right.  And as indicated in our
```

```
 1    papers, by the way, Mr. Langer and I have worked together and
 2    known each other for many, many years, goes back almost
 3    40 years of antitrust litigation.  And I have the greatest
 4    regard for Mr. Langer.
 5              THE COURT:  I'm sure it's mutual.  So --
 6         Okay.  All right.  Let's hear from, please, one party who
 7    is objecting.  Who's objecting?  Okay.
 8              MR. SELTZER:  Thank you, Your Honor.
 9              THE COURT:  Sure.  Thank you, Mr. Seltzer.
10              MS. SHARP:  Thank you, Your Honor.  Dena Sharp from
11    Girard Gibbs on behalf of D.J.'s Sports Bar, also known as the
12    fly in the ointment, perhaps.
13              THE COURT:  Well, you're entitled to state your
14    position.
15         MS. SHARP:  Thank you.  We appreciate that,
16    Your Honor.
17         And Your Honor has expressed one of the concerns that we
18    have as well, which is the groups that are before Your Honor
19    today have advocated for a lean structure.  In our experience,
20    we found that to be the most certain way to achieve the types
21    of efficient and economic results in litigation that we strive
22    to achieve and to advocate for our clients' interests by
23    ensuring that we don't have a raft of attorneys who are
24    conducting, whether advertently or inadvertently, duplicative
25    work and inefficiently doing so.
```

24

```
1        I think counsel have stated the -- the benefits of having
2   a lean structure better than I probably can now.  We do share
3   that concern.
4        We weren't included in today's discussions.  We haven't
5   been included much in the lead counsel discussions.  And that's
6   consistent with the repeat-player dynamic that we articulated
7   in our papers, Your Honor.  The group mentality here is part of
8   that dynamic.  And for better or worse, that can foster what we
9   found to be less lean, broader structures that at times are
10  relatively unuseful in terms of ensuring that the best results
11  are achieved for the class.
12       As we point out in our papers, diversifying leadership --
13            THE COURT:  Okay.  So I've read your papers, and
14  this is one of the things that I do.  I read every word you
15  write.  And there are a lot of written words here.  So please,
16  at 4:15 or 4:10, don't read me your papers.
17            MS. SHARP:  I certainly don't intend to do so,
18  Your Honor.  Thank you for the clarification.
19       The point is that, in our view, including fresh
20  perspectives in a group as bloated as this one, does have
21  benefits that renown both to the Court and the parties.  I
22  won't rehash the points that we've made in our papers.
23       To the contrary, um, the leaner structures here don't
24  necessarily mean a less diverse group of lawyers.  We certainly
25  have a raft of seasoned, able attorneys here.  And nobody is
```

**UNITED STATES DISTRICT COURT**

1  questioning that.  The question, Your Honor, is whether younger

2  attorneys who may not have the lengthy résumés that these --

3  that these more seasoned veterans do should be given an

4  opportunity to appear before the Court as well.

5       Um, so I'd respectfully submit that I've paid my dues in

6  antitrust litigation like many of the lawyers here.  My

7  involvement in the leadership structure and any leadership

8  structure the Court deems appropriate would benefit the parties

9  and the Court and will advance the interests of ensuring that

10  the leadership appointments in cases like this don't perpetuate

11  an endless feedback.

12       I'll stop there, unless the Court has any questions for

13  me.

14            THE COURT:  No.  I don't have any questions.

15            MS. SHARP:  Thank you.

16            THE COURT:  Anybody care to give me any further

17  argument as to why the structure you've created will help the

18  efficient movement of this action?  You don't have to.  But if

19  you want to, just a brief response I will entertain.

20            MR. SELTZER:  Yes.  I just want to make one comment

21  in terms of how we would work the case going forward if the

22  Court were to appoint us as co-lead counsel.  And this is,

23  again, consistent with the practice that we followed in the

24  Auto Parts Antitrust Litigation and other cases as well.

25       That counsel who are assigned work in the case would be

```
 1   required to, uh, report their time and expenses on a monthly
 2   basis to the co-lead counsel so that we keep tabs on all the
 3   work that's done, making sure that it is work that is deemed
 4   both necessary and authorized to be performed.  And that is --
 5   is an important check to keep the work deemed done in the most
 6   efficient way possible.  And I found that that process works
 7   quite well in terms of monitoring the litigation and making
 8   sure that it's run in as efficient a way as possible.
 9        Of course, in litigation like this, there's every
10   incentive on the part of the plaintiffs' counsel to work as
11   efficiently as possible.  And we -- you know, speaking for
12   myself at least, you know, one of the hallmarks of our practice
13   is to be very efficient in how we litigate cases.
14        Thank you, Your Honor.
15          THE COURT:  All right.  Thank you, Mr. Seltzer.
16        All right.  That matter will be submitted.  I'm going to
17   issue an order.  If I agree with you, Mr. Seltzer, I will
18   permit you to submit a proposed stipulation.  If I disagree
19   with you, the order will provide sufficient instructions where
20   we go from here.  Okay?
21        We have a whole host of other issues, I want to try to
22   get to now both sides of the table.
23        First, if you're not familiar litigating in this
24   district, let me give you a little background here.  Magistrate
25   Judge John McDermott has been assigned the discovery on this
```

1   case.  He's been very experienced.  He will handle any

2   discovery issues.

3        My view of the amendments to the Federal Rules of Civil

4   Procedure enacted and applicable December 1, 2015, are that you

5   needn't wait until the close of the pleadings to engage in

6   discovery.  There's some desire on behalf of the defendants to

7   stay the discovery until we get the pleadings set.

8        I am not prepared to rule on any oral motion to stay if

9   you believe that -- that you have.  The defendants have agreed

10  sort of informally to provide some certain disclosures is my

11  understanding of your joint preliminary report.  That's fine.

12       If you believe, any defendant believes that there exists

13  a legal basis for a motion for stay, please file it, and we

14  will go from there.

15       Much of the evidence that was listed appears to the Court

16  that it might be electronic.  So my view of new amendments to

17  Rule 37 is there should be a litigation hold on -- make sure

18  nothing is getting written over or destroyed.  And I'm sure you

19  have a plan.  You've talked about a proposed protective order.

20       Many of our magistrate judges have their favored

21  protective orders on their Web site.  McDermott does not --

22  Judge McDermott does not.  So if you have a stipulated or

23  proposed protective order, then that's fine.  He will entertain

24  that.  I will only entertain it if there's a problem.  He will

25  manage all aspects of the discovery.  Of course, you have the

```
 1   right to appeal any of his decisions to me.

 2        In the proposed plan, it was interesting in your

 3   report -- I'm not sure why this is.  And, Mr. Seltzer, I'll

 4   address this to you because I think you're interim co-lead

 5   counsel.

 6        Many of the information you anticipate filing within

 7   60 days of my order appointing leadership for the plaintiffs.

 8   But the issues regarding privilege or attorney work product is

 9   90 days.  Is that -- is there some reason why you need an

10   additional 30 days for that, or is that just maybe a

11   typographical error?  That's at page 15, line 12.

12             MR. SELTZER:  I see that, Your Honor.  I think that

13   was what the parties had discussed, but I --

14             THE COURT:  Okay.

15             MR. SELTZER:  -- I think 60 days is fine.

16             THE COURT:  No.  If there's a reason for that, then

17   that's fine.  If you folks think that the extra 30 days --

18   because I'd prefer one supplemental joint report, not one in

19   60 days, one in 90 days.  And it says addressed in a

20   supplemental joint report, 90 days.  And then the other stuff

21   says addressed in a supplemental joint report, 60 days.

22        So if you think -- let me ask the defense if there's a

23   reason why -- I really only want one joint supplemental report.

24   I don't want multiple.  So do you need the 90 days, or is

25   60 days workable?
```

```
 1         MS. WILKINSON:  We do need the 90 days for privilege

 2  issues, Your Honor.  So I would suggest that we just do one

 3  report in 90 days, especially at the commencement of the

 4  litigation.  It's just going to be easier.  As counsel on the

 5  other side is getting organized, I think it -- it's more

 6  feasible.

 7         THE COURT:  No, I don't have a problem.  So it's

 8  going to be one 90-day -- I don't need a 60 and a 90.  So just

 9  one 90.  All right?

10         MR. SELTZER:  Very well, Your Honor.

11         THE COURT:  And we'll make sure that we are clear in

12  our order to you on that.

13     I don't really have any quarrel with your dates.  It

14  appears as though -- well, the defense has identified a number

15  of grounds.  Certain defendants have identified their desire to

16  file a motion to dismiss almost immediately.  Others have

17  identified additional issues, including -- including the motion

18  to compel the arbitration.  That appears to be a central issue

19  in the case.  The television entities have indicated a desire

20  to file a motion to dismiss to -- immediately.  So I don't have

21  a problem with your dates on that.

22     What I want to turn to for a second is the consolidation

23  issues and to determine whether anybody wants to be heard from

24  the plaintiffs' side as to the consolidation issues.  It sort

25  of was wrapped into your argument as to why there should --
```

```
 1    certain people should be lead counsel for certain subgroups or
 2    groups, the residential and commercial groups, from the
 3    plaintiffs' side.
 4         But, Mr. Seltzer, I'll hear from you if you want to be
 5    heard on the consolidation motion.
 6              MR. SELTZER:  Yes, Your Honor.  As the Court knows,
 7    we filed a motion to consolidate all the cases for pretrial
 8    purposes.
 9              THE COURT:  Well, and I will say that.  There was
10    some concern that this consolidation was not for something more
11    than pretrial.  And let me assure you that all the MDL
12    litigation is for pretrial purposes.  And certainly the case
13    is -- a number of these cases -- makes it a little bit
14    different because a number of these cases were filed in the
15    Central District and then low-numbered to me.  Those are in a
16    different stead.
17         But the MDL was clear, it's for pretrial purposes.  If
18    they go to trial, the New York cases will be unwound and sent
19    back.
20              MR. SELTZER:  Right.  And typically in these cases,
21    what has happened is that after the completion of pretrial
22    proceedings or sometimes before that, the cases are, um,
23    modified in a way by either dismissing the actions that were
24    filed in other jurisdictions or other actions are taken which
25    enable a consolidation for trial purposes of the cases that
```

1  remain pending before the Court.

2        But that's something that gets decided down the road.  If

3  that doesn't happen, then -- then under Lexicon, the cases that

4  came from New York would be required to be remanded to -- to

5  that jurisdiction for -- for trial purposes.

6        As far as the consolidation is concerned, we think all

7  the cases should be consolidated for these purposes.  The

8  issues are largely the same in all the cases having to do with

9  defendants' conduct, whether the agreements in question were

10  illegal under the antitrust laws, whether the defendants'

11  justifications, alleged procompetitive justifications for the

12  restraints, again, that's common to all the cases.

13        You have the issues of the Sports Broadcasting Act and

14  how that applies to the cases.  That's really the same for all

15  the cases.  So we think the consolidation should be -- should

16  be for all purposes.

17        We will decide -- I say "we" -- whoever is appointed as

18  lead counsel will decide what -- what form the consolidated

19  complaint will look like, and we'll resolve that very promptly

20  in terms of how residential and commercial customers are

21  treated.  But there's no need to have any -- anything else

22  other than consolidation for pretrial purposes at this time,

23  Your Honor.

24            THE COURT:  Okay.  Anybody else from the plaintiffs'

25  side wish to be heard on that issue?

1        Okay.  And my understanding of the defense position --

2   please correct me if I'm wrong -- is that they think it should

3   be consolidated as well.  Yes?

4            MS. WILKINSON:  That's right, Your Honor.  And some

5   of the other issues, I think, are not ripe, as Mr. Seltzer was

6   saying.  So, yes, of course we think it should be consolidated

7   for discovery and pretrial purposes.

8            THE COURT:  Okay.  All right.  I've also read -- you

9   don't need a Web site.  That's fine.  I'm not concerned about

10  that.  I want to make sure that you have a plan in place,

11  though, with Magistrate Judge McDermott.

12       Any issues, Mr. Seltzer, that you wish to raise at this

13  time?

14           MR. SELTZER:  I don't believe so, Your Honor.  I

15  think Your Honor's touched on the discovery questions, and that

16  should be addressed very promptly after the Court's order.

17           THE COURT:  Okay.  Let's hear from the defendants

18  and see if you wish to raise anything with the Court at this

19  time.

20       I don't believe that the -- there needs to be an order

21  with respect to the motions to dismiss and arbitration

22  regarding which comes first because some defendants appear to

23  be in a different position than other defendants as it comes to

24  this case.

25           So -- but let's hear from the defense, please.

1          MS. WILKINSON:  Your Honor, I don't believe we have

2    anything at this time.  I believe some of the issues we can

3    work out with counsel once you appoint who co-lead or lead

4    counsel is.  Thus far, we've been able to work out most things.

5    And we understand that would be better for the Court if we

6    could work out most of the scheduling and issues subject to

7    Your Honor's approval.

8          THE COURT:  Sure.  Okay.  All right.  Well, you're

9    going to -- here's what is left.  You're going to get an order

10   from me either agreeing to, Mr. Seltzer, the proposal you

11   articulated or not.

12         And, two, I am inclined to consolidate the matters for

13   pretrial purposes and discovery.  That would mean one case

14   number and everything flowing on that.  You'll also get an

15   order from me on that in fairly short order.

16         I will reflect upon the comments of counsel, and you will

17   hear from us.

18         Anything further from the plaintiffs' side?

19         MR. SELTZER:  No, Your Honor, not from the

20   plaintiffs.

21         THE COURT:  All right.  Anything further from the

22   defense side?  Any defendant wish to be heard who has not

23   spoken?

24         MS. SAHNI:  No, Your Honor.

25         THE COURT:  All right.  Thank you for your patience.

**UNITED STATES DISTRICT COURT**

1          We'll be in recess.

2               (Proceedings concluded at 4:25 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6              I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17              DATED THIS 26TH DAY OF MAY, 2016.

18

19

20              /S/ MYRA L. PONCE
                _____
21              MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                    FEDERAL OFFICIAL COURT REPORTER
22

23

24

25
```

**UNITED STATES DISTRICT COURT**