Michael E. Baumann (Bar No. 145830)
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.baumann@kirkland.com
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

*Attorneys for Defendants*
*DIRECTV, LLC and DIRECTV Holdings LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION <br><br><br> _____ <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS <br><br> _____ | CASE NO. 2:15-ml-02668-BRO (JEMx) <br><br> **MEMORANDUM IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** <br><br> Judge: Hon. Beverly Reid O'Connell <br><br> Consolidated Amended Complaint Filed: June 24, 2016 <br><br> Date: December 12, 2016 <br> Time: 1:30 p.m. <br> Courtroom: 14 |

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................2

    A.    Plaintiffs Have Accepted Their DIRECTV Customer Agreements And Their Arbitration Provisions Multiple Times And In Multiple Ways. ................................................................................................3

          1.    Plaintiff Robert Gary Lippincott................................................3

          2.    Plaintiff Michael Holinko .........................................................5

          3.    Plaintiff Gael Pub.....................................................................6

          4.    Plaintiff The Mucky Duck ........................................................7

    B.    Both Mr. Lippincott's And Mr. Holinko's 2016 Residential Customer Agreements And Gael Pub's and The Mucky Duck's 2014 Commercial Customer Agreements Contain FAA-Governed Arbitration Provisions. ..........................................................................8

          1.    Relevant terms of the 2016 DIRECTV Residential Customer Agreement's arbitration provision ............................................9

          2.    Relevant terms of the 2014 Commercial Customer Agreement's arbitration provision ..........................................11

III. ARGUMENT.....................................................................................................12

    A.    Each Plaintiff Entered Into Customer Agreements With DIRECTV That Contain Arbitration Provisions. ..................................................13

          1.    Residential Plaintiffs Lippincott and Holinko .........................14

          2.    Commercial Plaintiffs Gael Pub and The Mucky Duck ..........15

    B.    Plaintiffs' Claims Fall Within Their Arbitration Provisions' Broad Scopes....................................................................................................16

          1.    Mr. Lippincott's and Mr. Holinko's claims about their NFL Sunday Ticket programming service easily fall within their arbitration agreement's broad scope. ......................................18

          2.    Gael Pub's and The Mucky Duck's NFL Sunday Ticket claims are also covered by their broadly-worded arbitration agreement. ................................................................................18

    C.    Plaintiffs' Claims Against DIRECTV Should Be Stayed Pending Arbitration.. ................................................................................18

IV. CONCLUSION ................................................................................................19

---

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerberg v. Citicorp USA, Inc.*,
  898 F. Supp. 2d 1172 (N.D. Cal. 2012) ....................................................................14

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...............................................................................................passim

*Bassett v. Elec. Arts Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ..........................................................................17

*Bassett v. Elec. Arts Inc.*,
  2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ............................................................17

*Bischoff v. DirecTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) ..............................................................15, 18

*Blau v. AT&T Mobility*,
  2012 WL 566565, at *3 (N.D. Cal. Feb. 21, 2012) ..................................................13

*Brown v. DIRECTV, LLC*,
  2013 WL 3273811 (C.D. Cal. June 26, 2013) ..........................................................15

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ...................................................................................................14

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) .....................................................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...................................................................................18

*Clements v. DIRECTV, LLC*,
  2014 WL 1266834 (W.D. Ark. Mar. 26, 2014) ...................................................13, 15

*Coneff v. AT&T Corp.*,
  673 F.3d 1155 (9th Cir. 2012) .....................................................................................2

*Craig v. Brown & Root, Inc.*,
  84 Cal. App. 4th 416 (2000) ......................................................................................14

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463 (2015) .............................................................................................2, 13

*Ellin v. Credit One Bank*,
  2015 WL 7069660 (D.N.J. Nov. 13, 2015) ...............................................................14

*Ferrie v. DirecTV, LLC*,
  2016 WL 183474 (D. Conn. Jan. 12, 2016) ..............................................................13

MEMORANDUM IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ..............................................................................18

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
  845 N.E.2d 1265  (N.Y. 2006) ...........................................................16

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) .............................................................14

*Hodsdon v. DIRECTV LLC*,
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) .................................13, 18

*In re DirecTV Early Cancellation Fee Mktg. & Sales Prac. Litig.*,
  738 F. Supp. 2d 1062 (C.D. Cal. 2010) ...............................................13

*In re DIRECTV Early Cancellation Fee Mktg. & Sales Prac. Litig.*,
  810 F. Supp. 2d 1060 (C.D. Cal. 2011) ...............................................13

*Kingray, Inc. v. NBA, Inc.*,
  188 F. Supp. 2d 1177 (S.D. Cal. 2002) .................................................1

*Lombardi v. DirecTV, Inc.*,
  549 Fed. App'x 617 (9th Cir. 2013) .....................................................13

*Lombardi v. DIRECTV, Inc.*,
  546 Fed. App'x 715 (9th Cir. 2103) .....................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ..........................................................................12, 16

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ............................................12, 14, 15, 16

*O'Conner v. AT&T Corp.*,
  2013 WL 3107496 (M.D. La. June 18, 2013) .......................................13

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ....................................................................2

*Roberts v. AT&T Mobility LLC*,
  2016 WL 1660049 (N.D. Cal. Apr. 27, 2016) .......................................13

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) .................................................................2

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940  (S.D.N.Y. Feb. 23, 2015) ........................................14

*Santana v. Verizon Wireless*,
  2014 WL 2197804 (N.D. Okla. May 27, 2014) .....................................13

*Schwartz v. Comcast Corp.*,
  256 Fed. App'x 515 (3d Cir. 2007) ......................................................14

iii

*Sherman v. AT&T Inc.*,
   2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ............................................... 13

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d. 81 (S.D.N.Y. 2015) ........................................................ 2

*Stachurski v. DirecTV, Inc.*,
   642 F. Supp. 2d 758 (N.D. Ohio 2009) ............................................... 13, 15

*Truitt v. DirecTV, Inc.*,
   2008 WL 5054570 (E.D. La. Nov. 21, 2008) ...................................... 13, 15

*Tsadilas v. Providian Nat'l Bank*,
   13 A.D.3d 190 (N.Y. App. Div. 2004) ................................................... 15

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
   46 Fed. App'x 412 (9th Cir. 2002) ....................................................... 18

**Statutes**

9 U.S.C. § 2 ............................................................................................ 12

9 U.S.C. § 3 .................................................................................... 18, 19

9 U.S.C. § 4 ............................................................................................ 13

15 U.S.C. § 1 .......................................................................................... 1

15 U.S.C. § 2 .......................................................................................... 1

**MEMORANDUM IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

# INDEX OF DECLARATIONS SUPPORTING DIRECTV'S MOTION

1.   Declaration of John Gardner

2.   Declaration of Michelle Harris

3.   Declaration of Alisa Kellogg

4.   Declaration of Julianne Lusain

5.   Declaration of Amanda Mitchell

6.   Declaration of Steven Mullins

7.   Declaration of Kyle Wells

8.   Declaration of Carine Yahinian

**MEMORANDUM IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# I. INTRODUCTION

Each Plaintiff here has an agreement with DIRECTV to individually arbitrate their disputes, including the one alleged in this lawsuit. The enforceability of these arbitration agreements has been firmly settled for more than five years. Notwithstanding the lack of any credible basis for trying to evade these contractual obligations, Plaintiffs disregarded their arbitration agreements and filed this purported class action against DIRECTV. DIRECTV therefore moves for an order compelling Plaintiffs to arbitrate as they agreed.

In their Complaint, Plaintiffs Robert Gary Lippincott, Michael Holinko, 1465 3rd Avenue Restaurant Corp. (d/b/a Gael Pub) ("Gael Pub"), and Ninth Inning, Inc. (d/b/a The Mucky Duck) ("The Mucky Duck") (collectively, "Plaintiffs") challenge DIRECTV's decades-old exclusive agreements with the NFL, contending that DIRECTV charges "supra-competitive" and "unreasonable" prices for its NFL Sunday Ticket® sports programming package and asserting claims under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). But there is nothing "supra-competitive" or "unreasonable" about the prices DIRECTV charges for NFL Sunday Ticket, nor have DIRECTV and the NFL engaged in any behavior that violates the Sherman Act. Quite the contrary, DIRECTV was just a startup television service fiercely competing with established cable television providers when it first negotiated for and obtained its exclusive distribution agreement with the NFL back in 1994. As a result of DIRECTV's sustained commitment to and substantial investment in the NFL Sunday Ticket product, DIRECTV has negotiated subsequent renewals of its exclusive distribution agreement despite competing bids from its television provider rivals, which has in turn helped DIRECTV become the leading provider of direct broadcast satellite television service in the country. Because the antitrust laws encourage this type of competition for exclusive contracts, DIRECTV's distribution agreement for NFL Sunday Ticket is presumptively legal under the antitrust laws. *See, e.g., Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1196 (S.D. Cal. 2002)

1

(quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987)); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d. 81, 116 (S.D.N.Y. 2015); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) ("[C]ompetition to be an exclusive supplier may constitute a 'vital form of rivalry, and often the most powerful one, which the antitrust laws encourage rather than suppress.'") (citation omitted). Plaintiffs' antitrust challenge to NFL Sunday Ticket accordingly lacks merit.

Arbitrators, however, will determine that Plaintiffs' antitrust allegations are baseless. A series of U.S. Supreme Court decisions has established beyond doubt that Plaintiffs' claims against DIRECTV must be resolved in individual arbitrations, not in this purported class action. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court held that the AT&T arbitration provision that is nearly identical to the arbitration agreements Plaintiffs Lippincott and Holinko have with DIRECTV is fully enforceable. The Ninth Circuit has acknowledged that *Concepcion*'s broad reach requires enforcement of arbitration agreements under the Federal Arbitration Act ("FAA"). *See Coneff v. AT&T Corp*., 673 F.3d 1155, 1158 (9th Cir. 2012) ("*Concepcion* is broadly written."). In *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463 (2015), which involved an arbitration clause nearly identical to Gael Pub's and The Mucky Duck's arbitration agreements here, the Supreme Court reaffirmed the broad holding in *Concepcion*: "The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act." *Id.* at 468.

Plaintiffs never should have filed this action against DIRECTV. This Court should grant DIRECTV's motion and compel Plaintiffs to arbitrate their individual disputes in accordance with their respective arbitration agreements.

## II.   BACKGROUND

As is customary with obtaining cellular, television, internet, banking, and similar such services, there are terms and conditions that accompany the provision and

2

receipt of DIRECTV television programming services. Those terms and conditions are primarily contained in DIRECTV's Residential and Commercial Customer Agreements. *See* Decl. of Steven Mullins ("Mullins Decl.") ¶ 2; Decl. of Amanda Mitchell ("Mitchell Decl.") ¶ 2.[1] Both DIRECTV's Residential Customer Agreement and Commercial Customer Agreement are posted at www.directv.com/legal and are available to anyone, at any time, to review. Plaintiffs here were provided their applicable DIRECTV Customer Agreements, and otherwise apprised of the terms and conditions associated with receiving DIRECTV television service, multiple times and in a variety of ways. Below, DIRECTV describes how each Plaintiff entered into their respective Customer Agreements with DIRECTV, and then sets forth the relevant terms of the Plaintiffs' operative arbitration provisions.

## A. Plaintiffs Have Accepted Their DIRECTV Customer Agreements And Their Arbitration Provisions Multiple Times And In Multiple Ways.

### 1. Plaintiff Robert Gary Lippincott

Plaintiff Lippincott, of Healdsburg, California, has been a residential DIRECTV customer for more than six years, during which time he received and accepted the DIRECTV Residential Customer Agreement, as updated, on seven occasions. *See* Decl. of Michelle Stratton Harris ("Harris Decl.") ¶ 5, Ex. 2 (2016 Residential Customer Agreement); Mitchell Decl. ¶ 14, Exs. 4, 6, 8 (2013, 2014 and 2015 Residential Customer Agreements); Decl. of Julianne Lusain ("Lusain Decl.") ¶ 7, Ex. 1 (2012 Residential Customer Agreement); Decl. of Alisa Kellogg ("Kellogg Decl.") ¶ 13, Ex. 1 (2011 Residential Customer Agreement); Decl. of Carine Yahinian ("Yahinian Decl.") ¶¶ 12, Ex. 1 (2010 Customer Agreement). Mr. Lippincott most

---

[1] All declarations cited herein have been filed concurrently with DIRECTV's Motion. For reference, the declarations filed in support of DIRECTV's Motion are listed alphabetically on page v.

recently received the updated June 2016 Residential Customer Agreement on June 26, 2016.  Harris Decl. ¶ 5, Ex. 2.

The very first paragraph of DIRECTV's Customer Agreements (both Residential and Commercial) highlights, with bold, capitalized emphasis, that the Agreement includes an arbitration provision, and that the customer accepts the Agreement's terms by deciding to receive DIRECTV's service:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9) AND DISCLAIMER OF WARRANTIES (SECTION 8). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR ORDER OR SERVICE SUBJECT TO APPLICABLE CANCELLATION TERMS AND/OR FEES (SECTION 5). IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

*See* Harris Decl. ¶ 4, Ex. 2, Intro (2016 Residential Customer Agreement); Kellogg Decl. ¶ 31, Ex. 16, Intro (2014 Commercial Customer Agreement).  When Mr. Lippincott received his initial Customer Agreement, and then each updated Customer Agreement, he had the opportunity to reject the terms by cancelling his DIRECTV service.  Mr. Lippincott has never sought to cancel his service after receiving the DIRECTV Customer Agreement, and has instead accepted each agreement, including the updated June 2016 Agreement, by continuing to receive DIRECTV's service.  *See* Kellogg Decl. ¶ 14; Mitchell Decl. ¶ 15.

Mr. Lippincott also signed the DIRECTV Equipment Lease Agreement ("ELA") when he received new DIRECTV receiving equipment.  *See, e.g.*, Decl. of Kyle Wells ("Wells Decl.") ¶ 18, Ex. 6. (Lippincott signature capture for 2012), Ex. 7

4

(2012 ELA). The first paragraph of the ELA states that "[t]he Customer Agreement, together with this ELA, comprise the terms of your service agreement with DIRECTV." *Id.*, Ex. 7. The ELA also informs customers that both the Customer Agreement and ELA can be reviewed online at www.directv.com/legal. *See id.* And under the bolded, underlined, and capitalized heading "**ARBITRATION**," the ELA confirms the parties' agreement to arbitrate their disputes, as set forth in the Customer Agreement's arbitration provision:

> You and DIRECTV agree that both parties will resolve any dispute under this ELA, the DIRECTV Customer Agreement, or regarding your DIRECTV service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.

*Id.* Mr. Lippincott recently executed the ELA again on December 30, 2015, during a service call for installing DIRECTV equipment at his new address. *See id.* ¶ 20, Ex. 10 (Lippincott signature capture for 2015), Ex. 9 (2015 ELA).

DIRECTV also notified Mr. Lippincott of the Customer Agreement and its arbitration provision in many other ways throughout his years as a DIRECTV subscriber. *See, e.g.*, Yahinian Decl. ¶ 13, Ex. 2 (order confirmation reminding Mr. Lippincott to "**Review your customer agreements**" and specifying key terms, including that "any dispute arising under or relating to your agreements or service with DIRECTV . . . will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement"); Kellogg Decl. ¶ 16, Exs. 2, 3, 4 (examples of monthly billing statements reminding Mr. Lippincott that "[y]our Customer Agreement describes the terms and conditions upon which you accept our service. Please consult your Customer Agreement, which is also available at directv.com/agreement" and that disputes "may be resolved only through binding arbitration, as provided in the Customer Agreement").

### 2. Plaintiff Michael Holinko

Plaintiff Michael Holinko, of Belle Mead, New Jersey, has been a residential DIRECTV customer since 1998, during which time he received and accepted the residential DIRECTV Customer Agreement on fourteen occasions. *See* Harris Decl. ¶ 7, Ex. 2 (2016 Residential Customer Agreement); Mitchell Decl. ¶ 16, Exs. 2, 4, 6, 8 (2012, 2013, 2014, and 2015 Residential Customer Agreements); Kellogg Decl. ¶¶ 17-26, Exs. 1, 5, 6, 7, 8, 9,10, 11, 12 (1997,1999, 2001, 2004, 2006, 2007, 2009, 2010 and 2011 Residential Customer Agreements); Yahinian Decl. ¶ 14. Mr. Holinko most recently received the updated June 2016 Customer Agreement on June 5, 2016. Harris Decl. ¶ 7. Like Mr. Lippincott, when Mr. Holinko received his initial Customer Agreement, and any updated Customer Agreement over the years, he opted to continue receiving DIRECTV's service, thereby manifesting assent to the terms. *See* Kellogg Decl. ¶ 27; Mitchell Decl. ¶ 17.

In addition, just like Mr. Lippincott, Mr. Holinko received additional notifications and reminders about the Customer Agreement and the arbitration provision. *See, e.g.,* Yahinian Decl. ¶ 15, Ex. 3 (September 22, 2013 order confirmation) ("You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV . . . will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement."); *id.* ¶ 16, Ex. 4 (October 21, 2013 order confirmation) (same); Kellogg Decl. ¶ 29, Exs. 13, 14, 15 (examples of monthly billing statements noting that Customer Agreement contains terms and conditions of DIRECTV service, where to find it online, and that disputes will be resolved in arbitration).

### 3. Plaintiff Gael Pub

Gael Pub, a bar and restaurant with multiple locations in New York City, has been a commercial DIRECTV customer for ten years, during which time it received and accepted the DIRECTV commercial customer agreement on multiple occasions. *See* Kellogg Decl. ¶ 33, Ex. 16 (2014 Commercial Customer Agreement); Mullins

6

Decl. ¶ 6, Exs. 1, 2 (2009 Commercial Viewing Agreement and 2010 notice letter about updated 2009 Commercial Viewing Agreement); Decl. of John Gardner ("Gardner Decl.") ¶ 6, Exs. 1, 2 (2006 and 2008 Commercial Viewing Agreements). Gael Pub most recently received and accepted the updated 2014 Commercial Customer Agreement, and its updated version of the arbitration provision, in May 2014. Kellogg Decl. ¶ 33. Upon receiving this 2014 updated version of the commercial viewing agreement, Gael Pub continued to receive DIRECTV service, and continues to do so to this day. *See id.* ¶ 34.

Gael Pub has also received reminders in its monthly DIRECTV billing statements that "The Commercial Viewing Agreement describes the terms and conditions upon which you accept our service" and that disputes will be resolved "through binding arbitration, as provided in the Commercial Viewing Agreement." *See id.* ¶ 36, Exs. 18, 19, 20 (examples of Gael Pub's billing statements). Gael Pub also received an order confirmation e-mail in October 2015 reminding it (in bold) to "**[r]eview your customer agreements**," with hyperlinks to the Commercial Customer Agreement and to a list of key terms and conditions, including that any dispute must be resolved in binding arbitration as set forth in the Customer Agreement. Yahinian Decl. ¶ 17, Exs. 5 (October 2015 order confirmation), 6 (link at "View Agreements"), 7 (link at "View Terms & Conditions").

### 4.   Plaintiff The Mucky Duck

The Mucky Duck, a sports bar in San Francisco, California, has been a commercial DIRECTV customer for twenty years, during which time it received and accepted the DIRECTV Commercial Customer Agreement on multiple occasions. *See* Kellogg Decl. ¶ 36, Ex. 16 (2014 Commercial Customer Agreement); Gardner Decl. ¶ 7; Mullins Decl. ¶ 6, Exs. 1, 2 (2009 Commercial Viewing Agreement and 2010 notice letter about updated 2009 Commercial Viewing Agreement). Like Gael Pub, The Mucky Duck most recently received the updated 2014 Commercial Customer Agreement, and updated arbitration provision, in June 2014. Kellogg Decl. ¶ 36, Ex.

7

16 (2014 Commercial Customer Agreement). Upon receiving the 2014 updated agreement, The Mucky Duck decided to continue accepting DIRECTV service in June 2014, as it had since 1996, and remains a DIRECTV subscriber to this day. *Id.* ¶ 37.

The Mucky Duck's monthly DIRECTV billing statements also remind it that "The Commercial Viewing Agreement describes the terms and conditions upon which you accept our service" and that disputes will be resolved "through binding arbitration, as provided in ¶ the Commercial Viewing Agreement." *See id.* ¶ 39, Exs. 22, 23, 24 (examples of The Mucky Duck's billing statements). And on August 26, 2015, when it added the Big Ten Network to its DIRECTV service, The Mucky Duck received an order confirmation e-mail that advised it to "**[r]eview your customer agreements**" and included a hyperlink to The Mucky Duck's current Commercial Customer Agreement and key terms and conditions, including arbitration. Yahinian Decl. ¶ 18, Exs. 8 (August 26, 2015 order confirmation), 6 (link at "View Agreements"), 7 (link at "View Terms & Conditions").

In sum, Plaintiffs here received and accepted multiple DIRECTV Customer Agreements with arbitration provisions during their many years as DIRECTV customers. The operative arbitration provisions in Plaintiffs' agreements with DIRECTV are further described below.

**B.**     **Both Mr. Lippincott's And Mr. Holinko's 2016 Residential Customer Agreements And Gael Pub's and The Mucky Duck's 2014 Commercial Customer Agreements Contain FAA-Governed Arbitration Provisions.**

Because Mr. Lippincott and Mr. Holinko each received the updated 2016 DIRECTV Residential Customer Agreement, and remain residential DIRECTV customers to this day, the 2016 DIRECTV Residential Customer Agreement and arbitration provision govern Mr. Lippincott's and Mr. Holinko's relationships with DIRECTV. *See* Harris Decl. ¶¶ 5-8, Ex. 2 (2016 Residential Customer Agreement). Because Gael Pub and The Mucky Duck each received and accepted the updated 2014

8

Commercial Customer Agreement, the 2014 Commercial Customer Agreement and arbitration provision govern Gael Pub's and The Mucky Duck's relationships with DIRECTV. *See* Kellogg Decl. ¶¶ 30-31, 33, 36, Ex. 16 (2014 Commercial Customer Agreement). As with the earlier versions of the DIRECTV Agreements Plaintiffs accepted over their many years as DIRECTV customers, the 2016 Residential Customer Agreement and 2014 Commercial Customer Agreement contain arbitration provisions that are expressly governed by the Federal Arbitration Act ("FAA"). *See* Kellogg Decl. Ex. 16 §§ 9, 10(b); Harris Decl. Ex 2 §§ 9, 10(b).

      **1.**      **Relevant terms of the 2016 DIRECTV Residential Customer Agreement's arbitration provision[2]**

      The first paragraph of the 2016 Residential Customer Agreement states, in bold, capitalized letters, that the Agreement is "**SUBJECT TO ARBITRATION**," and directs Plaintiffs to Section 9 for the arbitration provision. *See* Harris Decl. Ex. 2, Intro. Also in bold, capitalized letters, and set off from the surrounding text, Section 9 is entitled "**DISPUTE RESOLUTION BY BINDING ARBITRATION**." *Id.* § 9. Section 9.1 then summarizes the arbitration provision's terms:

> **In the unlikely event that DIRECTV's customer service**
> **department is unable to resolve a complaint you may have to your**
> **satisfaction (or if DIRECTV has not been able to resolve a dispute**
> **it has with you after attempting to do so informally), we each**
> **agree to resolve those disputes through binding arbitration or**
> **small claims court instead of in courts of general jurisdiction . . . .**
> **Any arbitration under this Agreement will take place on an**
> **individual basis; class arbitrations and class actions are not**

---

[2] AT&T acquired DIRECTV last year, and, as it has done every time it merged with or acquired another company (such as Leaf Wireless and Cricket Wireless), it made AT&T's arbitration clause available to DIRECTV's residential customers as part of the 2016 DIRECTV Residential Customer Agreement, and like DIRECTV's prior residential arbitration agreement, the AT&T version is also unquestionably enforceable. *See Concepcion*, 563 U.S. at 333.

9

**permitted.**  For any non-frivolous claim that does not exceed $75,000, DIRECTV will pay all costs of the arbitration. Moreover, in arbitration you are entitled to recover attorneys' fees from DIRECTV to at least the same extent as you would be in court.

*Id.* § 9.1 (emphasis in original).  The arbitration agreement is expressly governed by the FAA.  *Id.* § 9.2(1).

Section 9.2 then sets forth the scope of the arbitration agreement:  "DIRECTV and you agree to arbitrate **all disputes and claims** between us."  *Id.* (emphasis in original).  Section 9.2 continues by explaining that the arbitration agreement is "intended to be broadly interpreted" and includes, but is not limited to, "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory."  *Id.*  The arbitration provision also explains the meaning of the agreement to arbitrate (again, in bold type): "**You agree that, by entering into this Agreement, you and DIRECTV are each waiving the right to a trial by jury or to participate in a class action**." *Id*. (emphasis in original)

The arbitration agreement provides that DIRECTV will pay all arbitration costs (*id.* § 9.2(3)); that all individual remedies available in court are available in arbitration (*id* § 9.1); that any hearing will be conducted in the customer's home town (*id.* § 9.2(3)); that disputes will be governed by the customer's home state's laws and applicable federal laws (*id.* § 10(b)); that attorneys' fees are available to a prevailing customer (*id.* §§ 9.1, 9.2(4)-(5)); and that the customer may proceed in small claims court as an alternative to arbitration (*id.* §§ 9.1, 9.2(1)).  The provision also reiterates that the customer and DIRECTV "**AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING**."  *Id.* § 9.2(6) (emphasis in original).

Finally, the 2016 Residential Customer Agreement provides that if the arbitrator finds in the customer's favor for an amount greater than the last settlement amount offered by DIRECTV, then DIRECTV will "pay you the amount of the award or $10,000 . . . whichever is greater," and twice the amount of attorneys' fees, along with reasonable expenses.  *Id.* § 9.2(4).

### 2. Relevant terms of the 2014 Commercial Customer Agreement's arbitration provision

Similar to the Residential Customer Agreement's arbitration provision (and in fact modeled after recent versions of it), the first paragraph of the 2014 Commercial Customer Agreement also states, in bold, capitalized letters, that the Agreement is "**SUBJECT TO ARBITRATION**," and directs Plaintiffs to Section 9 for the arbitration provision.  *See* Kellogg Decl. Ex. 16, Intro.  Section 9 is entitled "**RESOLVING DISPUTES**," and states that all disputes between the commercial customer and DIRECTV are subject to binding arbitration:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows . . . . [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

*Id.*  The arbitration provision also explains the meaning of the agreement to arbitrate (again in bold, capitalized emphasis):  "**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.**" *Id.*  The arbitration provision is expressly governed by the FAA (*id.* § 10(b)), and applies broadly to any claim relating to the Commercial Customer Agreement, any addendum, or the commercial customer's DIRECTV service.  *See id.* § 9.  The provision provides that DIRECTV

will pay all arbitration costs (*id.*); that all remedies available to the individual commercial customer in court, including recovery of attorneys' fees, are also available in arbitration (*id.* § 9(b)); and that any hearing will take place in the commercial customer's home town area (*id.*).  The provision also states that "[n]either you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity."  *Id.* § 9(c)(ii).

## III.  ARGUMENT

The arbitration agreements here are governed by the Federal Arbitration Act.  *See* 9 U.S.C. § 2 (contracts "evidencing a transaction involving commerce" are governed by the FAA); *see also* Harris Decl. Ex. 2 § 9.2(1) (arbitration provision in Residential Customer Agreement is expressly governed by the FAA); Kellogg Decl. Ex. 16 § 10(b) (arbitration provision in Commercial Customer Agreement is expressly governed by the FAA).  Under the FAA, Plaintiffs' arbitration agreements with DIRECTV are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As the Supreme Court has explained, "[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4 , is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *Concepcion*, 563 U.S. at 344; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements").  And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary."  *Concepcion*, 563 U.S. at 346 (internal quotation marks omitted); *accord*, *e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2013).

Here, the Residential and Commercial Customer Agreements governing Plaintiffs' receipt of DIRECTV service contain FAA-governed arbitration provisions, and Plaintiffs' NFL Sunday Ticket disputes come within those provisions' broad

12

scopes. Because the Plaintiffs' arbitration agreements with DIRECTV are valid and enforceable under the FAA, this Court should compel arbitration and stay Plaintiffs' claims pending completion of their respective individual arbitrations, just as courts have done, time and again, as to the very agreements at issue here. *See, e.g.*, *Concepcion*, 563 U.S. at 352 (enforcing AT&T arbitration agreement, which is nearly identical to Lippincott's and Holinko's, with California plaintiffs applying FAA and California law); *Blau v. AT&T Mobility*, 2012 WL 566565, at *3 (N.D. Cal. Feb. 21, 2012) (same); *In re DIRECTV Early Cancellation Fee Mktg. & Sales Prac. Litig.*, 810 F. Supp. 2d 1060, 1066-70 (C.D. Cal. 2011) (enforcing DIRECTV arbitration agreement with New Jersey plaintiff under FAA and New Jersey law), *rev'd in part on unrelated grounds, Lombardi v. DirecTV, Inc.*, 546 Fed. App'x 715 (9th Cir. 2013); *In re DirecTV Early Cancellation Fee Mktg. & Sales Prac. Litig.*, 738 F. Supp. 2d 1062, 1084 (C.D. Cal. 2010) (enforcing DIRECTV arbitration agreement with New York plaintiff under FAA and New York law); *Hodsdon v. DIRECTV, LLC*, 2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) (enforcing DIRECTV arbitration agreement with California plaintiff under FAA and California law); *see also Roberts v. AT&T Mobility LLC*, 2016 WL 1660049, at *10 (N.D. Cal. Apr. 27, 2016); *Santana v. Verizon Wireless*, 2014 WL 2197804, at *4 (N.D. Okla. May 27, 2014); *O'Conner v. AT&T Corp.*, 2013 WL 3107496, at *2-3 (M.D. La. June 18, 2013); *Sherman v. AT&T Inc.*, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012); *see also Imburgia*, 136 S. Ct. at 471; *Lombardi v. DirecTV, Inc.*, 549 Fed. App'x 617, 619 (9th Cir. 2013); *Ferrie v. DirecTV, LLC*, 2016 WL 183474, at *12 (D. Conn. Jan. 12, 2016), *appeal withdrawn* (May 4, 2016); *Clements v. DIRECTV, LLC*, 2014 WL 1266834, at *3 (W.D. Ark. Mar. 26, 2014); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009); *Truitt v. DirecTV, Inc.*, 2008 WL 5054570, at *3 (E.D. La. Nov. 21, 2008).

**A. Each Plaintiff Entered Into Customer Agreements With DIRECTV That Contain Arbitration Provisions.**

       **1. Residential Plaintiffs Lippincott and Holinko**

As explained above, after years of subscribing to DIRECTV television service and entering into their initial and several updated Customer Agreements (including their arbitration provisions), Mr. Lippincott and Mr. Holinko received the updated 2016 Residential DIRECTV Customer Agreement. *See* Harris Decl. ¶ 4, Ex. 2, Intro., § 9. Both Mr. Lippincott and Mr. Holinko accepted the updated terms contained in the 2016 Customer Agreement, including its arbitration provision, by continuing to receive DIRECTV service. *See* Harris Decl. ¶¶ 6, 8. Courts across the country, including those applying California or New Jersey law (Lippincott's and Holinko's home states),[3] have recognized that this type of "accept-or-return" method of contract formation is valid. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (enforcing terms on back of cruise ship ticket after passenger chose to board cruise after receiving ticket); *Ellin v. Credit One Bank*, 2015 WL 7069660, at *3 (D.N.J. Nov. 13, 2015) (enforcing arbitration agreement under New Jersey law where customer's continued use of her credit card signaled acceptance of customer agreement received in mail); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) (same under California law); *see also Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) (applying New Jersey law and concluding that because "Plaintiff continued to use [Defendant's] services" after receiving a notice of Defendant's updated terms and conditions of service, Plaintiff "thereby accept[ed] the revised terms, including the arbitration clause"); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420-21 (2000) (enforcing arbitration

---

[3] Contract formation with respect to arbitration agreements is governed by ordinary state law principles, as long as they are applied consistently with the FAA. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-50 (7th Cir. 1997); *Schwartz v. Comcast Corp.*, 256 Fed. App'x 515, 518-20 (3d Cir. 2007).

agreement where employee continued to work for employer after receiving agreement in mail).

Indeed, many courts, including the Ninth Circuit, have held that DIRECTV customers who have continued to accept service upon receiving the Customer Agreement, like Plaintiffs did here, have become parties to the Customer Agreement and are bound by its terms, including its arbitration provision. *See, e.g.*, *Murphy*, 724 F.3d at 1225 n.4 (confirming that continuing to accept DIRECTV's services after receiving the agreement bound customers to the terms of the contract); *Clements*, 2014 WL 1266834, at *3 (same); *Stachurski*, 642 F. Supp. 2d at 766 (same); *Truitt*, 2008 WL 5054570, at *3 (same); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103-06 (C.D. Cal. 2002) (same).

In addition, as mentioned earlier, both Mr. Lippincott and Mr. Holinko received and accepted numerous prior versions of the Customer Agreement, including their arbitration provisions, during their many years as DIRECTV customers. *See* Mitchell Decl. ¶¶ 14, 16; Lusain Decl. ¶ 7; Kellogg Decl. ¶¶ 13, 18-26. And Mr. Lippincott also executed ELAs, confirming his agreement to arbitrate his individual disputes with DIRECTV (Wells Decl. ¶¶ 18-20), which provides yet no other basis on which to conclude that he agreed to arbitrate this dispute with DIRECTV. *See Brown v. DIRECTV, LLC*, 2013 WL 3273811, at *4 (C.D. Cal. June 26, 2013) (plaintiff expressly assented to Customer Agreement and its arbitration provision by signing ELA).

### 2. Commercial Plaintiffs Gael Pub and The Mucky Duck

After years of subscribing to DIRECTV services for their commercial establishments, and having entered into prior commercial viewing agreements with DIRECTV that contained arbitration provisions, commercial subscribers Gael Pub and The Mucky Duck received the updated 2014 Commercial Customer Agreement and its arbitration provision about two years ago. Kellogg Decl. ¶¶ 33, 36, Ex. 16 Intro, § 9. Both Gael Pub and The Mucky Duck decided to continue receiving DIRECTV

15

service and thereby accepted the updated terms of the 2014 Commercial Customer Agreement and its arbitration provision. Kellogg Decl. ¶¶ 34, 37. It is currently their operative agreement with DIRECTV. *See Murphy*, 724 F. 3d at 1225 n.4; *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 190 (N.Y. App. Div. 2004) (enforcing arbitration provision in Defendant's cardholder agreement because "Defendant sufficiently proved that it sent the arbitration provision to plaintiff" and plaintiff's continued use of Defendant's credit card constituted acceptance); *see also God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1266-67 (N.Y. 2006) (noting the "long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed," where "both parties operated under [the agreement's] terms").

In addition, as mentioned earlier, Gael Pub and The Mucky Duck each accepted prior versions of the DIRECTV commercial viewing agreement, including their arbitration provisions, and received numerous other documents from DIRECTV during their many years as DIRECTV commercial customers that reminded them of their arbitration agreements. *See* Mullins Decl. ¶¶ 5-6 (2009 Commercial Customer Agreement); Gardner Decl. ¶ 6, Exs. 1, 2 (Gael Pub's signed 2006 and 2008 commercial viewing agreements); Yahinian Decl. ¶¶ 17-18, Exs. 5, 8 (Gael Pub's and The Mucky Duck's 2015 order confirmations); Kellogg Decl. ¶¶ 35, 38, Exs. 18, 19 20, 22, 23, 24. (examples of Gael Pub's billing statements and examples of The Mucky Duck's billing statements). By continuing their DIRECTV service, Gael Pub and The Mucky Duck have agreed to arbitrate their disputes with DIRECTV throughout the course of their years as DIRECTV customers. *See Murphy*, 724 F. 3d at 1225 n.4; *Tsadilas*, 13 A.D.3d at 190.

## B. Plaintiffs' Claims Fall Within Their Arbitration Provisions' Broad Scopes.

The next inquiry is whether Plaintiffs' disputes fall within the scope of the parties' arbitration agreements. Given the strong federal policy favoring arbitration,

"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24-25. Here, as discussed below, the question of whether Plaintiffs' disputes about their NFL Sunday Ticket sports programming service falls within the scope of their arbitration agreements is not a close one.

> **1.** **Mr. Lippincott's and Mr. Holinko's claims about their NFL Sunday Ticket programming service easily fall within their arbitration agreement's broad scope.**

The Residential Customer Agreement's arbitration clause extends to "**all disputes and claims** between us". Harris Decl. Ex. 2 § 9.2(1) (emphasis in original). The arbitration agreement's scope language continues with a non-exhaustive list of such "disputes and claims," including "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." *Id.* Such language requiring arbitration of "all disputes and claims" is to be interpreted broadly. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013) (where arbitration agreement contained language stating that "all disputes" between the parties were subject to arbitration, "[t]he plain language of Plaintiffs' arbitration agreements indicates that the parties intended to agree to broad arbitration provisions"); *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *5 (E.D.N.Y. Feb. 9, 2015) ("Arbitration provisions specifying that 'any disputes' shall be determined by arbitration are typically deemed to be 'broad' arbitration provisions and are consistently upheld as such."), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015); *see also Concepcion*, 563 U.S. at 336 (upholding the validity of an AT&T Mobility arbitration agreement virtually identical to the one at issue here, which also required "arbitration of all disputes").

Here, Mr. Lippincott and Mr. Holinko allege that DIRECTV violated Sections 1 and 2 of the Sherman Act in connection with its NFL Sunday Ticket sports

programming package.  *See* Consolidated Amended Complaint, Dkt. No. 163.  These claims fall squarely within the broad scope of their arbitration agreements with DIRECTV.

### 2. Gael Pub's and The Mucky Duck's NFL Sunday Ticket claims are also covered by their broadly-worded arbitration agreement.

The 2014 Commercial Customer Agreement's arbitration provision extends to "any legal or equitable claim relating to this Agreement, any addendum, or your Service."  Kellogg Decl. Ex. 16, § 9.  In an arbitration agreement, "the phrase 'relating to' . . . has a broad and inclusive meaning."  *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. App'x 412, 413 (9th Cir. 2002); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (arbitration agreement containing "relating to" language is "broad and far reaching").  Indeed, one court in this district found specifically that an antitrust action fell within the scope of a prior DIRECTV Customer Agreement's arbitration clause with identical language.  *See Bischoff*, 180 F. Supp. 2d at 1106 ("Plaintiffs allege that they have paid higher prices for services and equipment than they otherwise would have but for DirecTV's alleged anti-competitive acts.  These allegations center around DirecTV's services, disputes which clearly fall within the scope of the arbitration clause."); *see also Hodsdon*, 2012 WL 5464615, at *4 (noting that the DIRECTV "arbitration provision is worded very broadly").

There can be no question that the commercial Plaintiffs' claims "relat[e] to" both their DIRECTV service and their Commercial Customer Agreement, placing them squarely within the scope of the Commercial Customer Agreement's broad arbitration provision.

**C.** **Plaintiffs' Claims Against DIRECTV Should Be Stayed Pending Arbitration.**

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

**IV.** **CONCLUSION**

Plaintiffs' arbitration agreements with DIRECTV are valid, enforceable, and provide an efficient, cost-free way to resolve their individual disputes. This Court should grant DIRECTV's motion to compel arbitration and stay these proceedings pending resolution of Plaintiffs' individual arbitrations with DIRECTV.

Dated:  August 8, 2016                    Respectfully submitted,

                                          */s/ Robyn E. Bladow*
                                          Michael E. Baumann (Bar No. 145830)
                                          Melissa D. Ingalls (Bar No. 174861)
                                          Robyn E. Bladow (Bar No. 205189)
                                          Tammy A. Tsoumas (Bar No. 250487)
                                          **KIRKLAND & ELLIS LLP**
                                          333 South Hope Street
                                          Los Angeles, California  90071
                                          Telephone: (213) 680-8400
                                          Facsimile: (213) 680-8500
                                          michael.baumann@kirkland.com
                                          melissa.ingalls@kirkland.com
                                          robyn.bladow@kirkland.com
                                          tammy.tsoumas@kirkland.com

                                          *Attorneys for Defendants DIRECTV, LLC*
                                          *and DIRECTV Holdings LLC*