Michael E. Baumann (Bar No. 145830)
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.baumann@kirkland.com
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

*Attorneys for Defendants*
*DIRECTV, LLC and DIRECTV Holdings LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:   ALL ACTIONS | CASE NO. 2:15-ml-02668-BRO (JEMx)<br><br>**DECLARATION OF JOHN GARDNER IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Judge: Hon. Beverly Reid O'Connell<br><br>Consolidated Amended Complaint Filed: June 24, 2016<br><br>Date:         December 12, 2016<br>Time:         1:30 p.m.<br>Courtroom:  14 |

I, John Gardner, declare under penalty of perjury that the following is true and correct:

1. I have been employed by DIRECTV, LLC ("DIRECTV") since 2012. I am currently a Senior Manager of Sales Operations and act as the Integration and Implementation Manger. In this role, I am responsible for managing all projects that impact DIRECTV's commercial subscriber call centers and systems. To fulfill my role and responsibilities, I have had to become familiar with DIRECTV's current, and past, policies governing commercial subscriber accounts and DIRECTV's current, and past, practices regarding the retention of commercial subscribers' customer documents. The facts contained in this declaration are based on my personal knowledge and my review of regularly-maintained corporate records, and I can testify competently to them if called upon to do so.

2. DIRECTV has maintained electronic archives of commercial customer documents for at least ten years. Currently, DIRECTV maintains an archive document system known as Document DNA ("Doc DNA"), which is a repository that stores documents including those submitted to DIRECTV by its commercial customers, or by authorized DIRECTV dealers on behalf of DIRECTV's commercial customers. Each time DIRECTV receives a document, either by fax or by e-mail, from one of its commercial subscribers, such as an order requesting additional sports programming or a document raising an issue with that commercial customer's account, DIRECTV employs routine business practices to address the requests or issues raised in those documents and then upload the documents to Doc DNA. All documents stored in Doc DNA are maintained by DIRECTV in the regular course of business. DIRECTV employees can then access these documents by logging into the Doc DNA system using their unique usernames and passwords and searching for a commercial customer's account.

3. My understanding, based on my position in Sales Operations for commercial customer accounts, is that before the fall of 2009, it was DIRECTV's

1

routine business policy and practice to have new commercial subscribers sign a hard copy version of DIRECTV's Commercial Viewing Agreement when signing up for DIRECTV's service. The signed agreements were then returned to DIRECTV to be filed and maintained in the regular course of DIRECTV's business. I have reviewed the declaration of Steven Mullins, which is consistent with my understanding of the Commercial Viewing Agreement and the different processes DIRECTV has used to ensure that its commercial subscribers have accepted the Commercial Agreement.

4. Once DIRECTV began using electronic archives for commercial subscriber documents, DIRECTV's policy was for all hard-copy commercial customer documents that DIRECTV had been storing to be uploaded into the electronic databases, and ultimately to Doc DNA. As such, the hard copies of signed Commercial Viewing Agreements for commercial subscribers that began their DIRECTV service before DIRECTV implemented electronic archives should be electronically stored in the Doc DNA repository to the extent they still existed in DIRECTV's hard copy files.

5. I have been asked to provide information about the commercial customer accounts of Plaintiffs 1465 3rd Ave. Restaurant Corporation (d/b/a Gael Pub) and Ninth Inning, Inc. (d/b/a The Mucky Duck). I have reviewed DIRECTV's customer records for each of these accounts, and I base my discussion below on my personal knowledge of DIRECTV's past and present routine business policies and practices as well as my review of those customers' account records, which were created and have been maintained by DIRECTV in the ordinary course of DIRECTV's business in accordance with the practices discussed above.

**Gael Pub**

6. Plaintiff Gael Pub (DIRECTV Account No. 44671534) receives DIRECTV service in New York, New York. Gael Pub's commercial subscriber account was activated on September 13, 2006. Gael Pub signed the the 2006 DIRECTV Commercial Viewing Agreement twice, first on September 12, 2006, and

again on March 21, 2008. Attached as Exhibit 1 is a true and correct copy of Gael Pub's signed Commercial Viewing Agreement dated September 12, 2006, and attached as Exhibit 2 is a true and correct copy of Gael Pub's signed agreement dated March 21, 2008. Both of Gael Pub's signed Commercial Viewing Agreements contain an arbitration provision in paragraph 16, which is on the signature page of the agreement. Under the capitalized, bolded heading **ARBITRATION**, the arbitration provision states:

> Any claim or dispute arising out of, or relating to, this Agreement which cannot be settled by the parties shall be resolved according to binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. The decision of the arbitrator shall be final and binding on the parties and any award of the arbitrator may be entered in any court of competent jurisdiction.

**The Mucky Duck**

7.  Plaintiff The Mucky Duck (DIRECTV Account No. 1317009) receives DIRECTV service in San Francisco, California. The Mucky Duck's account was activated on June 6, 1996. The files in Doc DNA for The Mucky Duck's account only go back to 1998, and thus we were unable to locate The Mucky Duck's original Commercial Viewing Agreement from when it activated DIRECTV service in 1996. The declarations of my colleagues Steven Mullins and Alisa Kellogg provide information on The Mucky Duck's updated Commercial Viewing Agreements.

Executed on this 5 day of August, 2016 in Denver, Colorado.

*/s/ John Gardner*

JOHN GARDNER