# EXHIBIT 6



# DIRECTV.

# CUSTOMER AGREEMENT

effective as of October 1999 until replaced

---

THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS REGARDING YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE. IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU AGREE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND, ACCORDINGLY, THEY WILL BE LEGALLY BINDING ON YOU.

CONTACTING DIRECTV:
You may contact us 24 hours a day, any day of the year, by calling (800) 531-5000 or by writing to:

DIRECTV, INC.
Customer Service
P.O. Box 92600
Los Angeles, CA 90009

You can also visit our website at www.directv.com.

Thank you for choosing DIRECTV for your television programming service. DIRECTV provides programming service to residents of the continental United States and certain parts of Alaska. We do not provide service to addresses outside of this area. This is your copy of the Customer Agreement between DIRECTV and you as a customer of DIRECTV. Please keep it for your records.

1. OUR SERVICE
These are the terms on which we will provide you DIRECTV subscription programming, DIRECT TICKET® Pay Per View services, and other services (referred to collectively as "Service"):

(a) Program Choices. We offer a variety of programming packages (at least one of which you have already selected), sports subscriptions and pay per view programming available on special order. All programming selections have their own rates, terms, and conditions. These are described in our literature, which we can supply to you on request. Information is also available on our website at www.directv.com. Some Service is available only if you purchase and maintain a minimum level of programming.

(b) Ordering Pay Per View. You may order pay per view service by using your on-screen program guide and remote control unit or by calling us. If you call, a fee may apply (described in Section 2). The most convenient method is the on-screen program guide, which requires that your receiver be continuously connected to a land-based telephone line. In this way, information about the program that you order is transmitted via the telephone line. During the short transmission period, you may not be able to use the line for other purposes.

(c) Your Programming Changes. You may change your programming selection by notifying us. A fee may apply to such changes (described in Section 2).

(d) Our Programming Changes. Many different and changing considerations affect the availability, cost, and quality of programming and customer demand for it. Accordingly, we must reserve the unrestricted right to change, re-arrange, add, or delete our programming packages, the selections in those packages, our prices, and any other Service we offer, at any time. We will endeavor to notify you of any change that is within our reasonable control and its effective date. In most cases, this notice will be about one month in advance. You always have the right to cancel your service, in whole or in part, if you do not accept the change. If you do cancel, we will refund to you, on a pro rata basis, any unused prepaid subscription fees paid to us, but we will not refund prepaid seasonal sports subscriptions after the season starts. If you do not cancel, your continued receipt of our Service will constitute acceptance.

(e) Your Access Card and Receiving Equipment. You have been provided with a conditional access card that is inserted into your receiver unit (referred to as the "Access Card"). The Access Card is part of the receiving equipment used to receive our Service, which consists of a receiver unit, the Access Card, a remote control unit, and a receiving antenna dish (referred to as the "Receiving Equipment"). Your Access Card will work only in the Receiving Equipment that it came with. Access Cards are nontransferable. If you tell us that your Access Card was lost, damaged, defective, or stolen, we will replace it, as long as there is no evidence of unauthorized tampering or modification. A replacement fee will apply (described in Section 2). Tampering with or other unauthorized modification of the Access Card is strictly prohibited and may result in legal action.

(f) Additional Receivers. If you add additional receivers to your account, you may purchase a separate subscription for each one. Or, if all your receivers are continuously connected to the same land-based phone line, we can "mirror" the programming from your primary receiver to your additional receivers and charge you only the additional receiver fee amount described in Section 2. Pay per view programming cannot be mirrored.

(g) Phone Connections. Your receiver units must always be directly connected to a land-based telephone line to receive certain Service, such as sports subscriptions and your local regional sports network, and to be authorized to order pay per view services with your remote control. If it is not so connected, or if it is connected to a line other than the one you tell us, or if the line is not performing according to our requirements, we may deactivate the applicable Service. If we do, you will still be responsible for all services purchased through the date of deactivation. Your receiver unit must also be connected to a land-based telephone line in order to be eligible to pay the additional receiver fee rather than purchase a separate subscription for each additional receiver.

(h) Mobile Units. We do provide service to Receiving Equipment that is installed in mobile units such as campers, boats and other recreational vehicles. However, without a permanent land-based phone connection, this Receiving Equipment is not eligible for the additional receiver discount described above, pay per view ordering with the remote control, or certain programming such as seasonal sports subscriptions.

(i) Private Viewing. We provide Service only for your private non-commercial use, enjoyment, and home viewing. The programming may not be viewed in areas open to the public or received by commercial establishments. You may not rebroadcast, transmit, or perform the programming, charge admission for its viewing, or transmit or distribute running accounts of it. You may not use any of our trademarks for any purpose. Notwithstanding the provisions of Section 8, we or any programming provider may prosecute violations of the foregoing against you and other responsible parties in any court of competent jurisdiction, under the rules and regulations of the Federal Communications Commission, and other applicable laws.

(j) Blackouts. Certain programming we transmit, including some subscription services, sports events, and broadcast network services, may be blacked out in your local reception area. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit our website for more blackout information. If you circumvent or attempt to circumvent any of these blackouts, you may be subject to legal action.

(k) Loss of Receiving Equipment. You should notify us immediately if your Receiving Equipment is stolen or removed from your premises without your authorization. If you notify us within 5 days after such removal, we will not charge you for any unauthorized use. In any case, we will not charge you for unauthorized use occurring after we receive your notification.

(l) Transfer of Receiving Equipment. You should also notify us immediately if you sell or transfer your Receiving Equipment to someone else. We consider you the owner of the Receiving Equipment and the recipient of our programming unless and until you notify us otherwise. You may be liable for charges incurred in the use of your Receiving Equipment by others until you have notified us.

(m) Your Viewing Restrictions. It is your responsibility to impose any viewing restrictions on other family members or guests, as you think appropriate. We are not responsible to you or anyone else based on the content of our programming.

(n) Change of Address. You must notify us immediately of any change in your name, mailing address, residence address, or telephone number.

2. PAYMENT
In return for receiving our Service, you promise to pay us as follows:

(a) Programming. You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your permission, through all periods until the Service is canceled.

(b) Taxes. You will pay all taxes or other governmental fees and charges, if any, which are assessed based on your receipt of our Service.

(c) Administrative Fees. In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances only to those customers responsible for them. Accordingly, you will pay the following fees when they are applicable:

(1) Access Card Replacement Fee. If we have to replace your Access Card, we may charge you a replacement fee of up to $150.00. If you return your old Access Card to us, you may receive partial credit to your account. If you request overnight delivery of the Replacement Card, you must pay a shipping and handling fee of up to $16.50.

(2) Additional Receiver Authorization Fee. If you meet the qualifications described in Section 1(f), we may charge you a monthly fee of up to $4.99 for each additional receiver, rather than a full subscription fee on each additional receiver. This reduced rate is available only if all receivers are located at your residence and are continuously connected to the same land-based telephone line. If not, you will be responsible for the full amount of our programming charges for each receiver.

(3) Administrative Late Fee. If we do not receive your payment by the due date appearing on your bill, we may charge you an administrative late fee of up to $5.00 per month or partial month until the delinquent amount is paid in full, subject to applicable law. We do not extend credit to customers and this late fee is not an interest charge. This fee is reasonably related to the actual expense we incur due to late payment and may be subject to limitations set forth by law in your state.

(4) Change of Service Fee. If you change your Service package, we may charge you a fee of up to $5.00.

(5) Check by Phone Fee. If you elect to pay any outstanding balance by the telephone check method, we may charge you a fee of up to $5.50 in each case.

(6) Deposits. If you wish to reactivate your Service after a deactivation, you must bring your account current in full and we may require a deposit before we reactivate you. Deposits will appear on your bills as credits, from which we will deduct our charges. Deposits will not earn interest.

(7) Order Assistance Fee. If you order a pay per view Service by calling us, instead of using the on-screen remote control ordering capability, we may charge you a fee of up to $5.00 for each separate movie, event, or other program so ordered, even if it is later canceled.

(8) Disconnect Fee. If we deactivate your Service because of your failure to pay or for some other breach on your part, we may charge you a fee of up to $15.00.

(9) Duplicate Statement Fee. If you request a duplicate statement, we may charge you a fee of up to $1.75 for each statement copy.

(10) Ledger Request Fee. If you request a payment ledger itemizing past payments on your account, we may charge you a fee of up to $2.75.

(11) Returned Payment Fee. If any bank or other financial institution refuses to honor any payment of yours, we may charge you a fee of up to $20.00 ($15.00 for residents of Louisiana, Missouri and Wisconsin; $10.00 for residents of Oklahoma), to the extent allowed by applicable law. This fee is not an interest charge and it is reasonably related to the actual expense we incur due to unsatisfied payment.

(d) Billing Statements. We will send you a statement for each billing cycle (usually once every 30 days) unless you have a zero or nominal balance due, or a nominal credit balance, on your account at the end of a billing cycle. If you elect to make automatic credit card or electronic funds payments, you will not receive monthly statements unless you request that they be sent. Statements will show: (1) payments, credits, purchases, and any other charges to your

account, (2) the amount you owe us, and (3) the payment due date.

(e) **Questions About Your Statement.** If you think your statement is incorrect or if you need more information about it, contact us. We will respond to you and try to resolve any complaints you have as promptly as we can. If you write to us, please include the following information:

- your name and account number;
- the dollar amount in question;
- an explanation of why you believe there is an error;
- any suggestions you may have for solving the problem.
- If you need more information about an item, describe the item and what information you need.

If you have questions, call or write us as soon as possible. Please do not include correspondence with your payment; use the address on the first page of this agreement. In order for us to investigate the problem, you must contact us within 60 days of the date you receive the statement in question. Undisputed portions of the statement must be paid by the due date to avoid a late fee and possible deactivation of Service.

(f) **Payments.** You must pay your statements by check or money order payable to DIRECTV in U.S. dollars, unless we agree otherwise. We may, in our discretion, accept credit card and electronic funds transfer payments. Due to the subjective nature of creditworthiness, we reserve the right to require payment via cashier's check, money order, or credit card, regardless of some objective credit rating or any past practice. The outstanding balance is due in full each month. We may, in our discretion, accept partial payments, which will be applied to the oldest outstanding statement. No payment in full notation or other restrictive endorsement written on your payments will restrict our ability to collect all amounts owing to us.

(g) **If You Don't Pay On Time.** We may deactivate your Service if you do not pay your statements on time, after any applicable grace period. If you purchased an annual subscription to any Service and your account is past due, we may convert your subscription to a monthly subscription. If so, we will prorate your subscription and amounts owed to us and will apply your pre-payments to past due amounts and any remaining credit to future obligations.

(h) **Consents Regarding Credit.** In order to establish an account with us, you authorize us to inquire into your creditworthiness, by checking with credit reporting agencies. If you are delinquent in any payment to us, you also authorize us to report any late payment or nonpayment to credit reporting agencies.

(i) **Collection Costs.** You will pay us any costs we reasonably incur to collect amounts you owe us.

3. **RECEIVING EQUIPMENT**
We do not make Receiving Equipment or any other equipment you may use to receive and display our programming. We only provide programming Service. You must obtain your Receiving Equipment, and any repairs, parts, and service for it, from suppliers. Although from time to time we may offer our customers incentives for the purchase of Receiving Equipment, we do not warrant any such equipment in any way whatsoever and are not in any way responsible for the statements, practices, promises, or warranties of such suppliers. If you have any complaints about your Receiving Equipment, you should direct them to your supplier.

4. **CHANGES IN CONTRACT TERMS**
Due to the evolving nature of the satellite broadcast business, its competition, and the requirements and costs of programming suppliers, we must reserve the right to change our programming and the terms on which we offer Service from time to time, as we believe appropriate, including our fees and charges. If we make any such changes, we will send you a notice describing them and their effective date, in the manner described in Section 9(a). You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such changed terms or changes in programming. If you do cancel, we will refund to you, on a pro rata basis, any unused prepaid subscription fees paid to us, but we will not refund prepaid seasonal sports subscriptions after the season starts. If you elect not to cancel your Service after receiving our notice of a change, your continued receipt of Service from us will constitute acceptance of the changed terms. If you notify us that you do not accept such terms, then we may cancel your Service as provided in Section 5, as we cannot offer Service to different customers on different terms.

5. **CANCELLATION**
(a) **Term.** The term of this Agreement is indefinite and Service will continue until cancelled as provided herein. We will automatically renew Service that you subscribe to on a periodic basis, including monthly and annual subscriptions and seasonal sports subscriptions, as long as we continue to carry the Service, unless you notify us that you wish to cancel it.

(b) **Your Cancellation.** You may cancel Service by notifying us. Your notice is effective on the day we receive it. You will still be responsible for payment of all outstanding balances accrued through that effective date. We will credit your final statement with any amounts you may have prepaid, but we will not refund prepaid seasonal sports subscriptions after the season starts.

(c) **Our Cancellation.** We may cancel your Service at any time if you fail to pay amounts owing to us when due, subject to any grace periods, or breach any other material provision of this Agreement. In such case, you will still be responsible for payment of all outstanding balances accrued through that effective date, including the disconnect fee described in Section 2. In addition, we may terminate this Agreement if you elect not to accept any changed terms described to you, as provided in Section 4.

6. **CUSTOMER LIST**
We make portions of our customer list available to carefully selected companies that we believe offer products and services that may be of interest to you. If you prefer that we not provide your name, please call us.

7. **LIMITS ON OUR RESPONSIBILITY**
(a) **Service Interruptions.** Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure, or any other cause beyond our reasonable control. Because we value our customers, for an interruption of a significant length of time that is within our reasonable control, upon your request we will provide what we determine to be a fair and equitable adjustment to your account to make up for such service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

(b) **Disclaimers.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE DISCLAIMED.

(c) **Limitations of Liability.** WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. OUR TOTAL LIABILITY TO YOU AND ANY OTHER PERSONS RECEIVING OUR SERVICE, REGARDLESS OF THE CAUSE, WILL IN NO EVENT EXCEED THE AMOUNT PAID TO US FOR THE SERVICE IN QUESTION. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. You may have greater rights than described above under your state's laws. You should consult them.

8. **RESOLVING DISPUTES**
In order to expedite and control the cost of disputes, you and we agree that any legal claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a) **Informal Resolution.** We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 8(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b) **Formal Resolution.** Except as provided in Section 8(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association that are in effect at the time the arbitration is initiated (referred to as the "AAA Rules") and under the rules set forth in this Agreement. If there is a conflict between the AAA Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. If you initiate the arbitration, you agree to pay a fee of $125 or, if less and you tell us in writing, the amount that you would pay to initiate a lawsuit against us in the appropriate court of law in your state. We agree to pay any additional fee or deposit required by the American Arbitration Association in excess of your filing fee. We also agree to pay the costs of the arbitration proceeding up to a maximum of one-half day (four hours) of hearings. Other fees, such as attorney's fees, expenses of travel to the arbitration and the costs of a proceeding that goes beyond one-half day will be paid in accordance with the AAA Rules. The arbitration will be held at a location within one hundred miles of your residence unless you and we both agree to another location. To start an arbitration, you or we must do the following things:

(i) Write a demand for arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered.

(ii) Send three copies of the demand for arbitration plus the appropriate filing fee to:

American Arbitration Association
13455 Noel Road, Suite 1750
Dallas, Texas 75240-6636
(800) 426-8792

(iii) Send one copy of the demand for arbitration to DIRECTV.

(c) **Special Rules.** In the arbitration proceeding, the arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction. A court may sever any portion of this Section 8 that it finds to be unenforceable.

(d) **Exceptions.** Notwithstanding the foregoing: (i) any dispute over the validity of either party's intellectual property rights or our licenses to operate our business, (ii) any Claim based on Section 1(f) above, and (iii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, or the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, may be decided only by a court of competent jurisdiction. Nothing in this Agreement shall affect our ability to terminate Service for non-payment of amounts owed to us at the time due.

9. **MISCELLANEOUS**
(a) **Notice.** Notices to you will be deemed given when deposited in the United States Postal Service and addressed to you at your last known address, hand delivered to you or your place of residence, or sent electronically via your DIRECTV e-mail system. Mailed notices may be included in our statements to you. We may also provide notice to you by telephone, which will be deemed given when a message is left with you or someone answering the telephone at your residence. Your notices to us will be deemed given when we receive them at the address or telephone number set forth on the first page of this Agreement.

(b) **Applicable Law.** The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 8 shall be governed by the Federal Arbitration Act.

(c) **Assignment of Account.** We may assign your account to a third party for collection purposes, without notice. You must continue making all required payments to us in accordance with your billing statement, unless notified otherwise.

(d) **Other.** This states our entire agreement. No salesperson or other representative is authorized to change it. If any provision is declared by a competent authority to be invalid, that provision will be deleted or modified to the extent necessary, and the rest of the Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

THANK YOU FOR CHOOSING DIRECTV.

© 1999 DIRECTV, Inc. DIRECTV and DIRECT TICKET are trademarks of DIRECTV, Inc., a unit of Hughes Electronics Corp.

DTV 1199ICUSAG