Michael E. Baumann (Bar No. 145830)
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.baumann@kirkland.com
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

*Attorneys for Defendants*
*DIRECTV, LLC and DIRECTV Holdings LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | CASE NO. 2:15-ml-02668-BRO (JEMx)<br><br>**DECLARATION OF AMANDA MITCHELL IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Judge: Hon. Beverly Reid O'Connell<br><br>Consolidated Amended Complaint Filed: June 24, 2016<br><br>Date: December 12, 2016<br>Time: 1:30 p.m.<br>Courtroom: 14 |

I, Amanda Mitchell, declare under penalty of perjury that the following is true and correct:

1. I have been employed by DIRECTV, LLC ("DIRECTV") since February 2013, and I currently hold the position of E-mail Manager for the "Welcome" department. Between 2013 and 2015, my position was Manager of E-Mail Marketing. My responsibilities in that role included managing e-mail communications between DIRECTV and its customers. In 2014 and 2015, I was part of the DIRECTV team that was responsible for sending updated DIRECTV Customer Agreements and annual notifications to DIRECTV customers. As part of those responsibilities, I became familiar with the policies, procedures, and automated systems used to provide DIRECTV customers with their Customer Agreements. The facts contained in this declaration are based on my personal knowledge and my review of DIRECTV's business records, and I can testify competently to them if called upon to do so.

2. The terms and conditions governing the receipt of DIRECTV's service are principally contained in the DIRECTV Customer Agreement. Whenever DIRECTV updates the Customer Agreement, DIRECTV sends the updated Customer Agreements for customers to review and to either accept or reject the updated terms. The DIRECTV Customer Agreement is also always available for anyone to view on DIRECTV's website at http://www.directv.com/legal.

3. Since 2012, DIRECTV's policy and practice has been to provide updated Customer Agreements to its customers via e-mail, rather than to send the updated Customer Agreements by U.S. mail. Although DIRECTV prefers to e-mail customers about updated Customer Agreements whenever possible, there are some exceptions to this rule. For example, customers who have not provided DIRECTV with a valid e-mail address, or whose DIRECTV account privacy flag is set to "Do Not Receive E-Mail," receive their updated Customer Agreements by U.S. mail. Or, in the event an e-mail sending an updated Customer Agreement is not

successfully delivered to a customer, the updated Customer Agreement will then be sent to the customer by U.S. mail. I understand that my colleague, Alisa Kellogg, will be providing a declaration to describe the policies and procedures for how Plaintiffs who received their updated Customer Agreements by mail were sent those agreements.

4.  For customers who receive notices about their updated Customer Agreements by e-mail, there is a series of automated processes that work as follows. DIRECTV's Business Analytics team first identifies the DIRECTV customers who have a valid e-mail address associated with their DIRECTV account by running a query in DIRECTV's electronic data warehouse. The Business Analytics team then extracts certain data from DIRECTV's electronic billing system and compiles an electronic file containing these customers' account information, including their names, account numbers, e-mail addresses, and mailing addresses. That electronic file is then posted to DIRECTV's Secure File Transfer Protocol ("SFTP"). Experian CheetahMail, which is DIRECTV's vendor for purposes of e-mailing updated Customer Agreements to its customers, automatically sweeps DIRECTV's SFTP for the electronic file and downloads the file to its own SFTP.

5.  DIRECTV uses Experian for many different e-mail campaigns. In my role as Manager of E-Mail Marketing, I worked with Experian on a daily basis and managed the relationship between DIRECTV and Experian. I have worked with Experian on a couple thousand (approximately 60-75/month) e-mail campaigns, including the 2014 and 2015 Customer Agreement update campaigns. I am familiar with the automated systems that Experian uses to send e-mails to DIRECTV customers. In my experience, I have found that Experian is a reliable and efficient vendor.

6.  Experian's program uses the electronic file of DIRECTV customer information data provided by DIRECTV to generate an individual, personalized e-

mail for each customer by populating each customer's information in a template e-mail that notifies the customer about the updated Customer Agreement. Experian's program then sends the updated Customer Agreement e-mail to each customer. If the e-mail is successfully delivered, then delivery of the updated Customer Agreement to that customer is complete.

7. I have been asked to provide information about the two residential Plaintiffs in this action who received Customer Agreement updates in 2012, 2013, 2014 and 2015. Residential customers who had valid e-mail addresses on file during this time received updated Residential Customer Agreements via e-mail using the method described above.

8. Attached hereto as Exhibit 1 is a true and correct copy of the e-mail sent to customers regarding the updated 2012 Residential Customer Agreement. That email instructed customers to "Please take a few moments to read our updated Customer Agreement and Privacy Policy" and explained that the documents can be viewed and printed in English and Spanish. The email also explained that "The Customer Agreement describes the terms and conditions of your DIRECTV Service" and instructed the customer to "Click here to view or print." The underlined words "Click here" acted as a hyperlink to a webpage on DIRECTV's website containing the full text of the updated 2012 Customer Agreement. A true and correct copy of the 2012 Residential Customer Agreement is attached hereto as Exhibit 2.

9. Attached hereto as Exhibit 3 is a true and correct copy of the e-mail sent to customers with the updated 2013 Residential Customer Agreement. That e-mail, like the one in 2012, also instructed customers to "Please take a few moments to read our updated Customer Agreement and Privacy Policy," explaining again that "The Customer Agreement describes the terms and conditions of your DIRECTV Service" and instructing customers to "Click here to view or print." The underlined words "Click here" again acted as a hyperlink to a webpage on

DIRECTV's website that contained the full text of the updated 2013 Customer Agreement. A true and correct copy of the 2013 Residential Customer Agreement is attached hereto as Exhibit 4.

10. Attached hereto as Exhibit 5 is a true and correct copy of the e-mail sent to customers with the updated 2014 Residential Customer Agreement. That e-mail, like the ones in 2012 and 2013, also instructed customers to "Please take a few moments to read our updated Customer Agreement and Privacy Policy." The e-mail also explained that "The Customer Agreement describes the terms and conditions of your DIRECTV Service" and instructed customers to "<u>Click here</u> to view or print." The underlined words "<u>Click here</u>" once again acted as a hyperlink to a webpage on DIRECTV's website containing the full text of the updated 2014 Customer Agreement. A true and correct copy of the 2014 Residential Customer Agreement is attached hereto as Exhibit 6.

11. Attached hereto as Exhibit 7 is a true and correct copy of the e-mail sent to customers with the updated 2015 Residential Customer Agreement. That e-mail informed customers that "a minor change to the agreement" had been made, identified that change, and, like the e-mails in 2012, 2013 and 2014, instructed customers to "<u>Click here</u> to view or print the Customer Agreement." The underlined words "<u>Click here</u>" once again acted as a hyperlink to a webpage on DIRECTV's website containing the full text of the updated 2015 Customer Agreement. A true and correct copy of the 2015 Residential Customer Agreement is attached hereto as Exhibit 8.

12. All four of the 2012, 2013, 2014 and 2015 updated Residential Customer Agreements state in bold, capitalized letters in the first paragraph:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9) AND DISCLAIMER OF WARRANTIES (SECTION 8). IF YOU**

**DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR ORDER OR SERVICE SUBJECT TO APPLICABLE CANCELLATION TERMS AND/OR FEES (SECTION 5). IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

All four of the 2012, 2013, 2014 and 2015 Residential Customer Agreements also set forth their arbitration provisions in Section 9.

13. According to Experian's web-based electronic interface, which tracks the delivery and opening of updated Customer Agreement e-mails, the following residential Plaintiffs received their updated Customer Agreements via e-mail on the dates and times described below.

14. Plaintiff Robert Gary Lippincott (DIRECTV Account No. 52484761) was successfully sent his updated 2013 Customer Agreement on May 26, 2013 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, rob.lippincott@gmail.com. Mr. Lippincott's 2013 Customer Agreement e-mail was opened on May 26, 2013 at 9:51 a.m. EST. Mr. Lippincott was successfully sent his updated 2014 Customer Agreement on May 26, 2014 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, rob.lippincott@gmail.com. Mr. Lippincott's 2014 Customer Agreement e-mail was opened on May 26, 2014 at 1:18 p.m. EST. Mr. Lippincott was successfully sent his updated 2015 Customer Agreement on May 14, 2015 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, rob.lippincott@gmail.com.

15. Upon receiving these updated Customer Agreement e-mails, Mr. Lippincott did not contact DIRECTV to dispute any of the updated terms or conditions, or to cancel his DIRECTV service.

16. Plaintiff Michael Holinko (DIRECTV Account No. 5294189) was

successfully sent his updated 2012 Customer Agreement on May 10, 2012 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, CGLINK@MSN.com. Mr. Holinko was successfully sent his 2013 Customer Agreement on June 5, 2013 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, CGLINK@MSN.com. Mr. Holinko was successfully sent his 2014 Customer Agreement on June 5, 2014 at 4:00 a.m. EST to the e-mail address then on file with DIRECTV, CGLINK@MSN.COM. Mr. Holinko's 2014 Customer Agreement e-mail was opened on June 4, 2014 at 8:18 a.m. EST. Mr. Holinko was successfully sent his updated 2015 Customer Agreement on May 15, 2015 at 12:00 a.m. EST to the e-mail address then on file with DIRECTV, CGLINK@MSN.COM. Mr. Holinko's 2015 Customer Agreement e-mail was opened on May 15, 2015 at 6:39 a.m. EST.

17. Upon receiving these updated Customer Agreement e-mails, Mr. Holinko did not contact DIRECTV to dispute any of the updated terms or conditions, or to cancel his DIRECTV service.

18. The Residential Customer Agreement was most recently updated in 2016. I understand that my colleague, Michelle Harris, will be providing further information on this most recent update to DIRECTV's Residential Customer Agreement.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of August 2016, in New York, NY.

*[signature]*

AMANDA MITCHELL