1  Michael E. Baumann (Bar No. 145830)
   Melissa D. Ingalls (Bar No. 174861)
2  Robyn E. Bladow (Bar No. 205189)
   Tammy A. Tsoumas (Bar No. 250487)
3  **KIRKLAND & ELLIS LLP**
   333 South Hope Street
4  Los Angeles, California  90071
   Telephone: (213) 680-8400
5  Facsimile: (213) 680-8500
   michael.baumann@kirkland.com
6  melissa.ingalls@kirkland.com
   robyn.bladow@kirkland.com
7  tammy.tsoumas@kirkland.com

8  *Attorneys for Defendants*
   *DIRECTV, LLC and DIRECTV Holdings LLC*
9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12  IN RE:  NATIONAL FOOTBALL          )   CASE NO. 2:15-ml-02668-BRO (JEMx)
    LEAGUE'S "SUNDAY TICKET"           )
13  ANTITRUST LITIGATION               )   **DECLARATION OF CARINE**
                                       )   **YAHINIAN IN SUPPORT OF**
14                                     )   **DIRECTV'S MOTION TO COMPEL**
                                       )   **ARBITRATION AND STAY**
15                                     )   **PROCEEDINGS**
                                       )
16                                     )
    THIS DOCUMENT RELATES              )   Judge: Hon. Beverly Reid O'Connell
17  TO:   ALL ACTIONS                  )
                                       )   Consolidated Amended Complaint Filed:
18                                     )   June 24, 2016
                                       )
19                                     )
                                       )   Date:          December 12, 2016
20                                     )   Time:          1:30 p.m.
                                       )   Courtroom:     14
21

22

23

24

25

26

27

28

I, Carine Yahinian, declare under penalty of perjury that the following is true and correct:

1.     I have been employed by DIRECTV, LLC ("DIRECTV") since 2007 and currently hold the position of Director, Marketing Alliance.  From December 2012 to August 2015, I held the position of Director, Telco Sales, and from November 2007 until November 2012, I was Senior Manager, Fulfillment Operations.  In my Fulfillment Operations position, I was part of the team that oversaw the processes by which customers receive letters and e-mails confirming their orders for DIRECTV service and equipment, as well the processes by which new customers receive their initial DIRECTV Customer Agreements.  I am therefore familiar with these processes and the automated systems utilized to implement them.  The facts contained in this declaration are based on my personal knowledge and my review of regularly-maintained corporate records, and I can testify competently to them if called upon to do so.

2.     Prospective DIRECTV subscribers can order DIRECTV service in several different ways, including by calling 1-800-DIRECTV and speaking with a customer service representative, by going online to DIRECTV's website (www.directv.com), by signing up through an authorized dealer, or in some areas of the country, by signing up for DIRECTV service through one of the telecommunications companies ("telcos") that bundles their telephone and internet services with DIRECTV's satellite television services.  When prospective DIRECTV customers order DIRECTV service, they must provide certain personal information during the ordering process, including the address at which they will receive DIRECTV service and an e-mail address if they have one.

3.     DIRECTV uses certain automated systems and processes to send customers their order confirmations and Customer Agreements.  Below, I will describe the processes followed and automated systems used to send order confirmations to customers, and the processes and automated systems involved in

1

1  sending new customers hard copies of their initial Customer Agreements.

2      4.      With respect to order confirmations, DIRECTV sends different types

3  of confirmation e-mails and letters for each of the different types of orders that can

4  be placed through authorized dealers, call centers, online, or through telcos.

5  DIRECTV's order systems assign each completed order a letter code, which then

6  dictates the type of e-mail or letter the customer receives based on DIRECTV's

7  business rules.  There are approximately 60 different letter codes, each

8  corresponding to a different type of order, such as orders placed by new DIRECTV

9  customers and orders placed by existing customers who are obtaining additional

10  and/or upgraded receiving equipment.

11      5.      For delivery of hard copy order confirmations and hard copies of new

12  customers' DIRECTV Customer Agreements, DIRECTV has used RR Donnelley, a

13  company that specializes in bulk mailing services, as its vendor since 2008.  RR

14  Donnelley also works alongside another DIRECTV vendor, Xert, a company that

15  specializes in bulk e-mailing services, to deliver e-mailed order confirmations and

16  e-mailed copies of new customers' initial DIRECTV Customer Agreements.  Xert

17  has been DIRECTV's vendor for these bulk e-mailing services since 2011.  I

18  worked directly with both RR Donnelley and Xert in my position as Senior

19  Manager, Fulfillment Operations, and am therefore familiar with the processes by

20  which RR Donnelley and Xert send order confirmations and new customers' initial

21  Customer Agreements.  In my experience, RR Donnelley and Xert are reliable and

22  efficient vendors.

23      6.      DIRECTV provides RR Donnelley and Xert with DIRECTV's

24  business rules that dictate the processes for mailing and e-mailing order

25  confirmations and initial Customer Agreements.  Those business rules include

26  requirements regarding which documents need to be sent to a customer, when the

27  documents must be sent, and how long copies or images of the documents that are

28  sent must be archived.  As DIRECTV receives customer orders, DIRECTV's order

system combines individual orders into electronic batches on an hourly basis.  Once an hour, DIRECTV's system uploads the most recent batch to a server maintained by RR Donnelley.  From there, the batch is also immediately shared with a server maintained by Xert.

7.     Pursuant to DIRECTV's business rules, upon placing an order, every customer who has provided DIRECTV with a valid e-mail address is sent his or her order confirmation by e-mail.  Pursuant to DIRECTV's business rules, Xert is required to send those e-mails within 15 minutes after a batch of customer orders is uploaded by DIRECTV's systems to RR Donnelley's server.  For certain types of orders, such as new customer orders, Xert will also send the new customer a separate e-mail containing the customer's initial DIRECTV Customer Agreement within twenty-four hours.

8.     If DIRECTV does not have a valid e-mail address for a customer who placed an order, or if an e-mail sent to a customer by Xert is returned as undeliverable, the order is then placed in an electronic batch of orders that will cause order confirmation letters to be sent by mail.  Within twenty-four hours, RR Donnelley then mails a hard copy order confirmation letter to the service address of any customer in that batch.

9.     As dictated by the agreed upon Statement of Work it has with DIRECTV, RR Donnelley prints a letter for each order in the electronic batch that requires a hard copy order confirmation.  For each order, the customer's name and address is printed directly onto the letter.  The letter is then automatically inserted into an envelope utilizing barcode technology to help ensure all records are accounted for.  In addition, the barcode technology helps ensure that any inserts, such as a new customer's initial DIRECTV Customer Agreement, are included in the envelope when required by DIRECTV's business rules.  The sealed envelopes are placed on mail trays by zip code and are delivered to USPS trucks that pick up the mail onsite from RR Donnelley.

**DECLARATION OF CARINE YAHINIAN IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

10.     Once order confirmations and, if applicable, initial Customer Agreements, have been sent successfully to DIRECTV customers by Xert and RR Donnelley, those documents are stored in an electronic archive, where they are maintained for four years.  This archive is regularly maintained by RR Donnelley at DIRECTV's instruction, so that DIRECTV can ensure that order confirmations and new customers' initial Customer Agreements have been successfully sent to DIRECTV customers in accordance with DIRECTV policy.  A document will only appear in this archive if it was successfully e-mailed or mailed to the customer.

11.     I have been asked to provide information about order confirmations that Plaintiffs in this case have received.  I am also providing information about the initial Customer Agreement sent to Plaintiff Lippincott.  Based on my personal knowledge and review of records created and maintained by DIRECTV in the ordinary course of its business, below are details about order confirmations provided to Plaintiffs and Mr. Lippincott's initial DIRECTV Customer Agreement.

**Robert Gary Lippincott**

12.     Plaintiff Robert Gary Lippincott (DIRECTV Account No. 52484761) receives DIRECTV service in Healdsburg, California.  According to Mr. Lippincott's customer records (which DIRECTV maintains in several databases, including STMS, OMS and RIO), Mr. Lippincott placed an initial order for DIRECTV service on May 24, 2010, and, in accordance with DIRECTV's business rules, he was sent an order confirmation letter, along with hard copy of the DIRECTV Customer Agreement then in effect, via U.S. mail on or around that same date.  A true and correct copy of the Customer Agreement Mr. Lippincott was sent on or around May 24, 2010 is attached hereto as Exhibit 1**.**  The first paragraph of the 2010 DIRECTV Customer Agreement states in bold, capitalized letters:

**THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9) AND**

4

1  **DISCLAIMER OF WARRANTIES (SECTION 8).  IF YOU DO**
2  **NOT ACCEPT THESE TERMS, PLEASE NOTIFY US**
3  **IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.**
4  **IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT**
5  **WILL MEAN THAT YOU ACCEPT THESE TERMS AND**
6  **THEY WILL BE LEGALLY BINDING.**

7  Section 9 of the 2010 DIRECTV Customer Agreement contains the arbitration

8  provision.  Mr. Lippincott's service was activated on May 25, 2010.

9       13.  On July 2, 2012, after Mr. Lippincott placed an order for upgraded

10  DIRECTV receiving equipment, Mr. Lippincott was sent by mail another order

11  confirmation letter confirming his order for a DIRECTV Plus® HD DVR, and a

12  Cinema Connection Kit.  A true and correct copy of Mr. Lippincott's July 2, 2012

13  equipment order confirmation letter is attached hereto as Exhibit 2.  The front of

14  Mr. Lippincott's order confirmation letter stated in bold letters, "**Review your**

15  **customer agreements,**" and advised Mr. Lippincott to "Please take a moment to

16  familiarize yourself with the **24-month service agreement** by visiting

17  directv.com/agreement and reviewing the Terms and Conditions on the reverse side

18  of this letter."  The reverse side of Mr. Lippincott's July 2, 2012 order confirmation

19  letter reminded Mr. Lippincott of his arbitration agreement with DIRECTV, stating

20  "[y]ou and DIRECTV agree that any dispute arising under or relating to your

21  agreements or service with DIRECTV, which cannot be resolved informally, will

22  be resolved through binding arbitration as fully set forth in your DIRECTV

23  Customer Agreement."

24      **Michael Holinko**

25      14.  Plaintiff Michael Holinko (DIRECTV Account No. 5294189) receives

26  DIRECTV service in Belle Mead, New Jersey.  Mr. Holinko activated DIRECTV

27  service on September 4, 1998.  I understand that my colleague, Alisa Kellogg, will

28  provide information regarding Mr. Holinko's initial, and certain of his updated,

1 DIRECTV Customer Agreements.

2    15.    On September 22, 2013, Mr. Holinko was sent an order confirmation

3 letter confirming an order he placed for a DIRECTV Plus® HD DVR.  The front of

4 this order confirmation stated in bold letters, "**Review your customer**

5 **agreements,**" and advised Mr. Holinko to "[p]lease take a moment to familiarize

6 yourself with the **24-month service agreement** by visiting directv.com/agreement

7 and reviewing the Terms and Conditions on the reverse side of this letter."  The

8 reverse side of Mr. Holinko's September 22, 2013 order confirmation reminded Mr.

9 Holinko of his arbitration agreement with DIRECTV, stating "[y]ou and DIRECTV

10 agree that any dispute arising under or relating to your agreements or service with

11 DIRECTV, which cannot be resolved informally, will be resolved through binding

12 arbitration as fully set forth in your DIRECTV Customer Agreement."  A true and

13 correct copy of Mr. Holinko's September 22, 2013 equipment order confirmation is

14 attached hereto as Exhibit 3.

15    16.    On October 21, 2013, Mr. Holinko was sent another order

16 confirmation letter confirming his order for a B-Band Converter.  The front of this

17 order confirmation similarly advised Mr. Holinko to review the terms and

18 conditions on the reverse side of the letter.  And the reverse side of Mr. Holinko's

19 October 21, 2013 order confirmation letter again reminded him of his arbitration

20 agreement with DIRECTV, stating "[y]ou and DIRECTV agree that any dispute

21 arising under or relating to your agreements or service with DIRECTV, which

22 cannot be resolved informally, will be resolved through binding arbitration as fully

23 set forth in your DIRECTV Customer Agreement."  A true and correct copy of Mr.

24 Holinko's October 21, 2013 equipment order confirmation letter is attached hereto

25 as Exhibit 4.

26    **Gael Pub**

27    17.    Plaintiff Gael Pub (1465 3rd Ave. Restaurant Corporation d/b/a Gael

28 Pub, DIRECTV Account No. 44671534) receives DIRECTV service in New York,

New York. On October 3, 2015 Gael Pub was sent an order confirmation e-mail confirming its order to add The Big Ten Network to its service package. A true and correct copy of Gael Pub's October 3, 2015 order confirmation e-mail is attached hereto as Exhibit 5. In bold letters, the order confirmation e-mail stated "**Review your customer agreements**" and included below that heading hyperlinks to "View Agreements" and "View Terms and Conditions." The View Agreements hyperlink provided a copy of the 2014 DIRECTV Commercial Customer Agreement. A true and correct copy of the 2014 Commercial Customer Agreement is attached hereto as Exhibit 6, and its arbitration provision can be found in Section 9. The "View Terms and Conditions" hyperlink led to a copy of the Terms and Conditions then in effect. A true and correct copy of the Terms and Conditions in effect on October 3, 2015 is attached hereto as Exhibit 7. The Terms and Conditions page reminded Mr. Holinko of his arbitration agreement, stating, "You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV, which cannot be resolved informally, will be resolved through binding arbitration as fully set forth in your Commercial Viewing Agreement (available at directv.com/commercial_agreement). Arbitration means you waive your right to a jury trial."

**The Mucky Duck**

18. Plaintiff The Mucky Duck (Ninth Inning Inc. d/b/a The Mucky Duck, DIRECTV Account No. 1317009) receives DIRECTV service in San Francisco, California. On August 26, 2015, The Mucky Duck was sent an order confirmation e-mail confirming its order to add The Big Ten Network to its service package. A true and correct copy of The Mucky Duck's August 26, 2015 order confirmation is attached hereto as Exhibit 8. Like Gael Pub's order confirmation e-mail, The Mucky Duck's order confirmation stated "**Review your customer agreements**" and provided hyperlinks to "View Agreements" and "View Terms and Conditions." As noted in paragraph 17 above, the "View Agreements" hyperlink led to a copy of

1   the 2014 DIRECTV Commercial Customer Agreement (*see* Ex. 6), and the "View

2   Terms and Conditions" hyperlink led to a copy of the Terms and Conditions then in

3   effect (*see* Ex. 7).  The Terms and Conditions reiterated The Mucky Duck's

4   arbitration agreement, stating "You and DIRECTV agree that any dispute arising

5   under or relating to your agreements or service with DIRECTV, which cannot be

6   resolved informally, will be resolved through binding arbitration as fully set forth in

7   your Commercial Viewing Agreement (available at

8   directv.com/commercial_agreement).  Arbitration means you waive your right to a

9   jury trial."

10      I declare under penalty of perjury that the foregoing is true and correct.

11   Executed the 4ᵗʰ day of August, 2016 in El Segundo, CA.


                                    _____

                                    CARINE YAHINIAN

DECLARATION OF CARINE YAHINIAN IN SUPPORT OF
DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS