Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Scott Martin
Irving Scher
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322
smartin@hausfeld.com
ischer@hausfeld.com

[Additional Counsel Listed in Signature Page]

*Interim Class Counsel*

Howard Langer
Edward Diver
Peter Leckman
**LANGER GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
hlanger@langergrogan.com
ndiver@langergrogan.com
pleckman@langergrogan.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 2:15-ml-02668−BRO (JEMx)<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DIRECTV'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>DATE:     December 12, 2016<br>TIME:     1:30 p.m.<br>PLACE:   Courtroom of the Hon. Beverly Reid O'Connell |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY .....................2

III.    Argument ..............................................................................................3

        A.     The Commercial Subscribers' Claims Are Excluded From
               Arbitration. ...............................................................................4

        B.     Even If DirecTV's Arbitration Clause Applies To The Injunctive
               Claims Here, The Clause Is Unenforceable Because DirecTV's
               Position Would Deprive Plaintiffs Of Their Ability To Obtain
               Injunctive Relief. .......................................................................6

        C.     DirecTV's Arbitration Provisions Are Unconscionable. ........9

               1.      The Arbitration Clauses Are Procedurally Unconscionable .....10

               2.      The Arbitration Clauses Are Substantively Unconscionable. ..12

               3.      The Entire Arbitration Clause Must Be Stricken. ....................14

        D.     The Mucky Duck Never Agreed To Arbitrate At All. .........................16

IV.     Conclusion ..........................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Juniper Networks, Inc.*,
   115 Cal. App. 4th 638 (2004) ..................................................................11, 12, 15

*Ackerberg v. Citicorp USA, Inc.*,
   898 F. Supp. 2d 1172 (N.D. Cal. 2012) ...............................................................18

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (2012) ...............................................................................14

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ......................................................................................2, 9

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) .................................................................................. *passim*

*AT&T Mobility LLC v. Bernardi*,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011).................................................1, 6, 7

*AT&T Mobility LLC v. Bushman*,
   2011 WL 5924666 (S.D. Fla. Sept. 23, 2011) ....................................................6, 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).............................................................................................4, 15

*AT&T Mobility LLC v. Fisher*,
   2011 WL 5169349 (D. Md. Oct. 28, 2011) ..........................................................8, 9

*AT&T Mobility LLC v. Gonnello*,
   2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) .......................................................6, 7

*AT&T Mobility LLC v. Princi*,
   2011 WL 6012945 (D. Mass. Dec. 2, 2011) ............................................................6

*AT&T Mobility LLC v. Smith*,
   2011 WL 5924460 (E.D. Pa. Oct. 7, 2011)..........................................................6, 7

*Avery v. Integrated Healthcare Holdings, Inc.*,
   218 Cal. App. 4th 50 (2013) ...............................................................................4, 20

*Badie v. Bank of America*,
   67 Cal. App. 4th 779 (1998) ................................................................................18

*Balasanyan v. Nordstrom, Inc.*,
   2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ......................................................11, 21

*Benedek v. PLC Santa Monica, LLC*,
    104 Cal. App. 4th 1351 (2002) ................................................................5

*Billingsley v. Citi Trends, Inc.*,
    560 Fed. Appx. 914 (11th Cir. 2014) ......................................................21

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ..................................................18

*Blau v. AT&T Mobility*,
    2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ..........................................22

*Carlson v. Home Team Pest Defense, Inc.*,
    239 Cal. App. 4th 619 (2015) ................................................................13

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991)..........................................................................12, 17

*Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co. of Tenn.*,
    118 F. Supp. 2d 1002 (C.D. Cal. 2000) ..................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ..................................................................3

*Clements v. DirecTV, LLC*,
    2014 WL 1266834 (W.D. Ark. Mar. 26, 2014) ........................................1

*Commercial Factors Corp. v. Kurtzman Bros.*,
    131 Cal. App. 2d 133 (1955) ..................................................................17

*Cory v. Golden State Bank*,
    95 Cal. App. 3d 360 (1979) ....................................................................17

*Craig v. Brown & Root, Inc.*,
    84 Cal. App. 4th 416 (2000) ..................................................................18

*Delta Funding Corp. v. Harris*,
    189 N.J. 28 (2006) ..........................................................................10, 11

*In re DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*,
    810 F. Supp. 2d 1060 (C.D. Cal. 2011) ....................................................1

*In re DirecTV Early Cancellation Litig.*,
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) ............................................11, 15

*DirecTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015)..............................................................................15

*DirecTV, Inc. v. Mattingly*,
    376 Md. 302 (App. Ct. 2003)......................................................16, 18, 19

*Eaves-Leanos v. Assurant, Inc.*,
  2008 WL 80173 (W.D. Ky. Jan. 8, 2008) ........................................................18

*FCI Grp., Inc. v. City of New York*,
  862 N.Y.S. 2d 352 (App. Div. 2008) ...............................................................4

*Ferrie v. DirecTV, LLC*,
  2016 WL 183474 (D. Conn. Jan. 12, 2016) ....................................................15

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ......................................................................................1, 4

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ...........................................................................................9

*Gonzalez v. A-1 Self Storage, Inc.*,
  350 N.J. Super. 403 (2000) .............................................................................13

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807 (1981) .......................................................................................5

*Hodson v. DirecTV LLC*,
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) ...................................................1

*India Paint and Lacquer Co. v. United Steel Prods. Corp.*,
  123 Cal. App. 2d 597 (1954) .....................................................................17, 19

*Jacob v. Norris, McLaughlin & Marcus*,
  128 N.J. 10 (1992) ..........................................................................................14

*Jacobson v. Sassower*,
  66 N.Y. 2d 991 (App. Ct. 1985) .......................................................................5

*Jimenez v. Menzies Aviation Inc.*,
  2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ...........................................11, 21

*Jones v. Star Credit Corp.*,
  289 N.Y.S. 2d (Sup. Ct. 1969) .......................................................................14

*Lombardi v. DirecTV, Inc.*,
  549 Fed. Appx. 617 (9th Cir. 2013) .................................................................1

*Martinez v. Master Protection Corp.*,
  118 Cal. App. 4th 107 (2004) .........................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1985) ..........................................................................................2

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ........................................................................18

iv

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d. 1171 (9th Cir. 2014) ...................................................................4, 21, 22

*O'Conner v. AT&T Corp.*,
   2013 WL 3107496 (M.D. La. June 18, 2013)...................................................15

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal. App. 4th 1425 (2012) ...................................................................11, 21

*Piekarski v. Amedisys Illinois, LLC*,
   4 F. Supp. 3d 952 (N.D. Ill. 2013) .....................................................................21

*Pyo v. Wicked Fashions, Inc.*,
   2010 WL 1380982 (D. N.J. Mar. 31, 2010)......................................................13

*Roberts v. AT&T Mobility LLC*, ,
   2016 WL 1660049 (N.D. Cal. Apr. 27, 2016) ...................................................15

*Rosenthal v. Great W. Fin. Secs. Corp.*
   14 Cal. 4th 394 (1996) .........................................................................................4

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ..................................................................................10, 13

*Santana v. Verizon Wireless*,
   2014 WL 2197804 (N.D. Okla. May 27, 2014) ................................................15

*Sherman v. AT&T Inc.*,
   2012 WL 1021823 (N.D. Ill. Mar. 26, 2012)......................................................1

*Simar Holding Corp. v. GSC*,
   928 N.Y.S. 2d 592 (App. Div. 2011) .................................................................13

*Sitogum Holdings, Inc. v. Ropes*,
   352 N.J. Super. 555 (2002) .....................................................................10, 13, 15

*Stachurski v. DirecTV, Inc.*,
   642 F. Supp. 2d 758 (N.D. Ohio 2009)........................................................15, 18

*State v. Wolowitz*,
   468 N.Y.S. 2d 131 (App. Div. 1983) ....................................................10, 11, 13

*Truitt v. DirecTV, Inc.*,
   2008 WL 5054570 (E.D. La. Nov. 21, 2008) ...................................................15

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972) ......................................................................  *passim*

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
   111 Cal. App. 4th 784 (2003) ..............................................................................4

*Zullo v. Superior Court*,
   197 Cal. App. 4th 477 (2011) .......................................................................................10

**Statutes**

Cal. Civ. Code §1654 ........................................................................................................5

Cal. Civ. Code §1670.5 ...................................................................................................15

Clayton Act, 15 U.S.C. § 26 .............................................................................................9

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................3, 4, 15

**Other Authorities**

Fed. R. Evid. 1002 ..........................................................................................................17

Williston on Contracts §18:17 ........................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   __INTRODUCTION__

Plaintiffs Ninth Inning Inc. dba The Mucky Duck ("The Mucky Duck"), 1465 Third Avenue Restaurant Corp. dba Gael Pub ("Gael Pub"), Robert Gary Lippincott, Jr. ("Lippincott"), and Michael Holinko ("Holinko") respectfully submit that the Court should deny the motion to compel arbitration and stay proceedings filed by DirecTV, LLC and DirecTV Holdings LLC (collectively, "DirecTV"), for several reasons.

*First*, for all commercial subscribers, DirecTV's arbitration provision does not apply to this dispute, which challenges the legality of the agreement between the National Football League ("NFL") defendants and DirecTV that results in the blackout of out-of-market Sunday Afternoon football games, except through the NFL Sunday Ticket service provided by DirecTV. The arbitration clause set forth in DirecTV's 2014 Commercial Subscriber Agreement expressly carves out "any claim" relating to any blackout restrictions.

*Second*, DirecTV is attempting to impose a "Catch-22" on all Plaintiffs, commercial and residential subscribers alike, by advancing a position that implies there is *no* forum in which Plaintiffs can pursue their claims for injunctive relief. DirecTV argues here that Plaintiffs may only bring their claims in arbitration and on an individual basis. But DirecTV's owner, AT&T, has repeatedly argued in analogous contexts that consumers *cannot* pursue in arbitration the type of broad injunctive relief necessary to remedy their individual claims because any such claim would be a *de facto* representative action forbidden by the arbitration clause. *See, e.g., AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011). DirecTV cannot have it both ways, contending in arbitration that the claims *cannot* be brought in arbitration and contending in court that the claims *must* be brought in arbitration. Either the arbitration clause does not encompass each Plaintiff's claims for injunctive relief or the arbitrator must have the ability to fashion a broad injunction that applies beyond the individual consumer. If there is no forum in which each Plaintiff can pursue the injunctive relief necessary to remedy DirecTV's antitrust violations and effectively vindicate its individual antitrust claims, the

arbitration clause is invalid. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985) (if an arbitration clause operates "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *accord Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

*Third*, there is a demonstrable lack of mutuality in DirecTV's invocation of arbitration clauses, by which it seeks to deprive its subscribers, but not itself, of access to the courts. Evidence presented here for the first time shows that DirecTV has sued its own customers *in court on thousands of occasions* in recent years. Under the law of California (The Mucky Duck/Lippincott), New Jersey (Holinko) and New York (Gael Pub), DirecTV must proffer a legitimate commercial need for this disparity, which it clearly cannot do in light of the fact that in 2016 it abandoned this unfairly one-sided provision. The lack of mutuality in its arbitration clauses renders arbitration procedurally and substantively unconscionable, and on this basis, DirecTV's attempt to compel arbitration as to claims against it must be denied as to all plaintiffs.

*Finally*, for The Mucky Duck, no agreement to arbitrate exists. There is no dispute that matters of contract formation, the scope of any agreement to arbitrate, and any defenses to an obligation to arbitrate are governed by general principles of contract interpretation as determined by the applicable state law. Under California law, The Mucky Duck, a California Corporation, did not assent to any agreement to arbitrate with DirecTV prior to filing suit. It never signed an arbitration agreement with DirecTV. Nor did it orally or otherwise assent to arbitration. Thus, DirecTV's motion to compel arbitration as to The Mucky Duck fails at the threshold.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their Consolidated Amended Complaint ("CAC") [Dkt. No. 163] on June 24, 2016, alleging in part that:

> [the] exclusive deal [between the NFL and DirecTV], along with other contractual arrangements between the NFL, its member teams, and DirecTV, as well as Fox, ESPN, CBS, and NBC

(collectively, the "Networks"), results in the blackout or unavailability of out-of-market games, except through the bundled NFL/DirecTV Sunday Ticket. These arrangements result in substantial injury to competition, including through eliminating distribution of out-of-market games through competing Multichannel Video Programing Distributor ("MVPD") platforms, such as the Dish Network, Comcast Corporation ("Comcast"), and Spectrum Cable (formerly Time Warner Cable); reducing game offerings and package mixes; and imposing supracompetitive pricing for consumers. …

But for the NFL teams' agreements in which DirecTV and others have joined, teams would compete against each other in the market for NFL football programming, which would induce more competitive pricing and content.

*Id.* at ¶¶10-11.[1]

DirecTV filed its motion to compel arbitration and stay proceedings as to it on August 8, 2016 [Dkt. No. 171-1]. DirecTV asserts that it has secured binding commitments from Plaintiffs to arbitrate the antitrust claims alleged in this multidistrict litigation. Plaintiffs deny any such obligation for the reasons set forth more fully below. The NFL Defendants did not join DirecTV's motion to compel arbitration.

## III.   **Argument**

Section 2 of the Federal Arbitration Act ("FAA") (9 U.S.C. § 2) provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The FAA limits the Court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In determining whether a valid arbitration agreement exists, federal courts "apply ordinary

---

[1] A more detailed description of the facts giving rise to the CAC is set forth in Plaintiffs' Memorandum in Opposition to the NFL Defendants' Motion to Dismiss [Dkt. 184].

1  state-law principles that govern the formation of contracts." *First Options of Chicago,*
2  *Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

3      Section 2 of the FAA "permits arbitration agreements to be declared unenforceable
4  upon such grounds as exist at law or in equity for the revocation of any contract. This
5  saving clause permits agreements to arbitrate to be invalidated by generally applicable
6  contract defenses, such as fraud, duress, or unconscionability, but not by defenses that
7  apply only to arbitration or that derive their meaning from the fact that an agreement to
8  arbitrate is at issue." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011)
9  (citations omitted).

10     Thus, it is well-settled that "[a]rbitration is [] a matter of contract" (*Avery v.*
11 *Integrated Healthcare Holdings, Inc.,* 218 Cal. App. 4th 50, 59 (2013)), and that "consent
12 to, or acceptance of, the arbitration provision [is] necessary to create an agreement to
13 arbitrate." *Windsor Mills, Inc. v. Collins & Aikman Corp.,* 25 Cal. App. 3d 987, 992
14 (1972); *see also Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014)
15 (same). And DirecTV, as the petitioner, bears the burden of proving the existence of such
16 a valid arbitration agreement by a preponderance of the evidence. *Rosenthal v. Great W.*
17 *Fin. Secs. Corp.* 14 Cal. 4th 394, 413 (1996).

18     **A.      The Commercial Subscribers' Claims Are Excluded From Arbitration.**

19     "Absent a clear agreement to submit disputes to arbitration, courts will not infer
20 that the right to a jury trial has been waived." *Wolschlager v. Fidelity Nat'l Title Ins. Co.,*
21 111 Cal. App. 4th 784, 789 (2003); *FCI Grp., Inc. v. City of New York,* 862 N.Y.S. 2d 352,
22 355 (App. Div. 2008) ("Arbitration and other alternative procedures for resolving
23 disputes are creatures of contract, and while the law favors such alternatives to litigation,
24 a party will not be denied judicial resolution of a controversy unless it falls within the
25 governing ADR provision. The constitutional right to seek redress before the courts
26 cannot be waived by implication but must be relinquished in a clear and unequivocal
27 manner.") (citations omitted).

28     The law has long recognized that where a contract clause is unclear, "the ambiguity

4

in that language must be interpreted against the drafter." *See* Cal. Civ. Code §1654 ("the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist"); *Jacobson v. Sassower*, 66 N.Y. 2d 991, 994 (App. Ct. 1985) ("a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language"); *Benedek v. PLC Santa Monica, LLC*, 104 Cal. App. 4th 1351, 1357 (2002) ("[a]n ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing") (citations omitted). And, where the arbitration clause is adhesive—as it unquestionably is here based upon DirecTV's own assertion (*see* Declaration of Steven Mullins ("Mullins Decl.") at ¶6 (noting that the Commercial Viewing Agreement was offered on a "take it or leave it" basis))—ambiguities will be subject to an even stricter construction against the party with the stronger bargaining power. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819 n.16 (1981).

The June 2014 version of the Commercial Subscriber Agreement, which DirecTV contends binds the commercial subscribers to arbitration (*see* Mullins Decl. at ¶7 and Exh. 3), provides the following broad arbitration **exclusion**: "Exceptions. Notwithstanding the foregoing: (i) *any Claim* based on Section 1(h) above . . . may be decided only by a court of competent jurisdiction." *See* Mullins Decl., Exh. 3 at §9(d) (emphasis added). And Section 1(h) provides as follows:

> Blackouts. Certain programming, including sports events, may be blacked out in your local reception area or otherwise unavailable to commercial customers in your local reception area due to legal, contractual, or other restrictions. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit www.directv.com for more information. If you circumvent or attempt to circumvent any of these blackouts, you may be subject to legal action.

In this case, Plaintiffs challenge the legality of NFL blackout restrictions. *See* CAC ¶10 ("This exclusive deal, along with other contractual arrangements between the NFL, its member teams, and DirecTV, as well as Fox, ESPN, CBS, and NBC (collectively, the "Networks"), results in the blackout or unavailability of out-of-market games, except

1   through the bundled NFL/DirecTV Sunday Ticket."); and ¶93 ("[t]his anticompetitive
2   effect implicates blackouts of out-of-market games, both broadly and as discussed in the
3   NFL's Constitution and Bylaws.").

4        The "contractual" restrictions, in other words, including DirecTV's own exclusive
5   agreement, render certain out-of-market games "unavailable" except through Sunday
6   Ticket. Once these restraints are removed, Plaintiffs allege that many of those games, and
7   likely all, *will* be available on local television. *See, e.g*., CAC ¶11 ("But for the NFL
8   teams agreement in which DirecTV and other have joined, teams would compete against
9   each other in the market for NFL football programming, which would induce more …
10  content."). As such, Plaintiffs' claims necessarily fall within DirecTV's broad blackout
11  provision in its agreement with commercial subscribers. Accordingly, for commercial
12  subscribers, such as The Mucky Duck and Gael Pub, the broadly worded exception of
13  §9(d) excludes claims for damages and injunctive relief.

14      **B.   Even If DirecTV's Arbitration Clause Applies To The Injunctive Claims**
15          **Here, The Clause Is Unenforceable Because DirecTV's Position Would**
16          **Deprive Plaintiffs Of Their Ability To Obtain  Injunctive Relief.**

17      DirecTV argues here that Plaintiffs may only pursue their claims in arbitration and
18  only on an individual basis. But DirecTV's owner, AT&T, has repeatedly argued in
19  district courts around the United States that similar arbitration clauses *do not* encompass
20  an agreement to arbitrate injunctive claims that apply beyond the particular individual
21  bringing the action. For example, in 2011, AT&T moved in various federal courts to
22  enjoin thousands of individual arbitrations that sought to stop AT&T's proposed merger
23  with T-Mobile USA. *See, e.g., Bernardi*; *AT&T Mobility LLC v. Princi*, No. 11-11448
24  RWZ, 2011 WL 6012945, at *1 (D. Mass. Dec. 2 2011); *AT&T Mobility LLC v. Bushman*,
25  No. 11-80922-CV, 2011 WL 5924666, at *2 (S.D. Fla. Sept. 23, 2011); *AT&T Mobility*
26  *LLC v. Smith*, No. 110cv-5157, 2011 WL 5924460, at *7 (E.D. Pa. Oct. 7, 2011); *AT&T*
27  *Mobility LLC v. Gonnello*, No. 11 Civ. 5636 (PKC), 2011 WL 4716617, at *3 (S.D.N.Y.
28  Oct. 7, 2011).

1      AT&T moved to enjoin the customers' arbitration demands "argu[ing] the parties

2  have not agreed that the claims in the Customers' demands may be resolved by an

3  arbitrator" because the relevant clause in the arbitration agreement stated that "[y]ou and

4  AT&T agree that each may bring claims against the other only in your or its individual

5  capacity, and not as a plaintiff or class member in any purported class or representative

6  proceeding. Further, unless both you and AT&T agree otherwise, the arbitrator may not

7  consolidate more than one person's claims, and may not otherwise preside over any form

8  of a representative or class proceeding." *Bernardi*, 2011 WL 5079549, at *5.[2]

9      The courts agreed, holding that while the arbitration demands were nominally

10  brought in a customer's individual capacity, the court was obligated to examine the effect

11  of the claim and not its form. *See Bernardi*, 2011 WL 5079549, at *6 ("Customers are

12  four of over 1,000 people who . . . seek[] the same, non-individualized relief: injunction

13  of the ATTM/T–Mobile merger. The demands bear all the critical hallmarks of class and

14  representative actions, and thus, run afoul of the agreement's prohibition of 'any form of

15  a representative or class proceeding.'"); *Bushman*, 2011 WL 5924666, at *2 ("Although

16  each arbitration demand is brought by an individual consumer, the arbitrators are not

17  being asked to award relief affecting only the individual claimants, such as an adjustment

18  to an individual rate plan."); *Smith*, 2011 WL 5924460, at *7 (arbitration demands have

19  the "hallmarks" of a representative action because "all demands, including Smith's, seek

20  the same, indivisible relief, i.e., enjoining or restructuring the proposed ATTM/T–Mobile

21  merger"); *Gonnello*, 2011 WL 4716617, at *3 (rejecting demand for arbitration seeking

22  "an injunction against the announced merger or, alternatively, a host of conditions on the

23  merger—none of which are tailored to the individual claimant.").

24      Accordingly, here, to be consistent with the position espoused by its owner,

25

26  _____

27  [2] The applicable language here reads: "Neither you nor we shall be entitled to join or
consolidate claims in arbitration by or against other individuals or entities, or arbitrate
any claim as a representative member of a class or in a private attorney general capacity."

28  *See* Mullins Decl., Exh. 3 at §9.2(c); Declaration of Amanda Mitchell ("Mitchell Decl."),
Exh. 6 at §9.2(c).

1    DirecTV should concede that the arbitration clause does *not* encompass each individual

2    Plaintiff's claims for injunctive relief. As part of the remedy for the harms they have each

3    individually suffered, each Plaintiff here seeks an injunction ending Defendants'

4    restrictive arrangements. That injunction, even if this action were brought on an

5    individual basis, would necessarily apply to the market as a whole. The injunction would

6    enable each NFL team to offer their own broadcasts in competition with Sunday Ticket,

7    increasing the options not just for the individual Plaintiff, but all other subscribers as

8    well. CAC, ¶11. The injunction would require that Sunday Ticket be offered to

9    distributors other than DirecTV, enabling not just the Plaintiff, but all others, the choice

10   of which television service they prefer. CAC, ¶10. And the injunction would result in an

11   expansion of the NFL programming available on local over-the-air and cable packages,

12   inuring to the benefit of all professional football fans. CAC, ¶87. The injunction

13   necessary to remedy any one Plaintiff's harms, in other words, will transform the

14   dynamics of the entire market and necessarily affect all other prospective class members.

15        By now claiming that the Plaintiffs cannot pursue their injunctive claims in court,

16   DirecTV is essentially arguing that there is *no* forum in which the Plaintiffs may pursue

17   their statutory rights. Indeed, in *AT&T Mobility LLC v. Fisher*, No. DKC 11-2245, 2011

18   WL 5169349 (D. Md. Oct. 28, 2011), another of the AT&T merger cases discussed above,

19   AT&T claimed "that, not only did the parties not agree to arbitrate this dispute, but the

20   customers also waived any right to bring this type of action anywhere, including in

21   court." *Id*. at *5. The *Fisher* court recognized that this argument would run afoul of

22   Supreme Court precedent:

23            While it is not necessary at this time to decide whether ATTM is correct .
24            . . it bears noting that the position espoused by ATTM misses a
             significant distinction between an agreement that waives some procedural
25            mechanism, such as a jury trial or class action, and a waiver of a right
             otherwise available under a statute. If, by purportedly waiving the right to
26            participate in a class or representative action, a litigant waives the right to
             a particular remedy under the antitrust acts (or even to bring an antitrust
27            action at all), the clause might violate public policy and be
             unenforceable.
28

*Id*. at *5 (citing *Mitsubishi Motors*, 473 U.S. at 637 n.19).

1    The Supreme Court recently reaffirmed the principle, holding that "the [effective

2    vindication] exception [to arbitration] finds its origin in the desire to prevent 'prospective

3    waiver of a party's right to pursue statutory remedies,' . . . . *That would certainly cover a*

4    *provision in an arbitration agreement forbidding the assertion of certain statutory*

5    *rights*." *Italian Colors*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors*, 473 U.S. at 637

6    n.19) (emphasis added).[3]

7         DirecTV cannot have it both ways. Either the clause does not apply and customers

8    may pursue broad relief in court or the clause does apply and customers may bring

9    individual arbitrations in which they can pursue the complete relief necessary to remedy

10   their claims. If the injunctive relief sought in this case cannot be pursued in court *or* in

11   arbitration, the arbitration clause is unenforceable because it would deprive Plaintiffs of

12   their federal statutory right to seek an effective injunction under Section 16 of the

13   Clayton Act 15 U.S.C. § 26.

14        Finally, the arbitration provisions prevent severing this part of the clause: "[a] court

15   may sever any portion of Section 9 that it finds to be unenforceable, except for the

16   prohibition on class, representative and private attorney general arbitration." *See* Mullins

17   Decl., Exh. 3 at §9.2(c); Mitchell Decl., Exh. 6 at §9.2(c).  Therefore, by its express

18   terms, the entire arbitration provision is unenforceable – including any alleged

19   requirement to arbitrate claims for money damages – because the class action and

20   representative ban cannot be severed from the other provisions of Section 9.

21        **C.    DirecTV's Arbitration Provisions Are Unconscionable.**

22

23   [3] In *Fisher*, AT&T cited *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) for the

24   proposition that an arbitration clause could waive a statutory remedy. *See* 2011 WL 5169349, at
     *5. As the *Fisher* court correctly recognized—and as the Supreme Court reaffirmed in *Italian
     Colors*, 133 S. Ct. at 2310, that is not the law. *Gilmer* stands for the proposition that if an

25   individual can obtain complete relief through arbitration via a narrowly tailored injunction, it is

26   unproblematic that the arbitration clause forecloses "broad equitable relief" beyond that
     individual's particular circumstance. The crucial difference here, of course, is that it is

27   impossible to fashion an injunction that would apply *solely* to a Plaintiff's individual claims. The
     injunctive relief Plaintiffs seek to remedy their individual claims would necessarily alter the

28   marketplace in myriad ways and thereby have a broader effect.

An arbitration clause is deemed unconscionable under general principles of California, New Jersey, and New York law when it has both unconscionable procedural and substantive elements. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *see also Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015); *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006) (New Jersey employs "sliding scale analysis for contracts of adhesion"); *State v. Wolowitz*, 468 N.Y.S. 2d 131, 145 (App. Div. 1983) ("in general, it can be said that procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa").

### 1.  The Arbitration Clauses Are Procedurally Unconscionable.

"The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 484 (2011) (citations omitted); *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564 (2002) ("the first factor—procedural unconscionability—can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."); *Wolowitz*, 468 N.Y.S. 2d at 145 (procedural unconscionability normally requires a showing of "a lack of a meaningful choice").

Here, clear evidence exists of an "inequality of bargaining power," and "no real negotiation" of the arbitration clause occurred. Indeed, Section 4 of the June 24, 2014 version of the Residential Subscriber Agreement (the "2014 Residential Agreement")[4]

---

[4] The 2014 Residential Agreement is the proper agreement to analyze because the first

1  provides:

2      > We reserve the right to change the terms and conditions on which we
       > offer Service. . . . You always have the right to cancel your Service, in
3      > whole or in part, at any time, and you may do so if you do not accept any
       > such changed terms or conditions. . . . If you notify us that you do not
4      > accept such terms and conditions, then we may cancel your Service as
       > provided in Section 5, as we cannot offer Service to different customers
5      > on different terms, among other reasons.

6

7  *See* Mitchell Decl., Exh. 6 at §4. The 2014 Commercial Subscriber Agreement (the "2014

8  Commercial Agreement") contains an identical provision. *See* Declaration of Alisa

9  Kellogg ("Kellogg Decl."), Exh. 16 at §4.

10         Accordingly, procedural unconscionability is demonstrated by the plainly adhesive

11  nature of subscriber agreements. *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App.

12  4th 638, 663 (2004) ("take it or leave it" arbitration agreement contained "a high degree

13  of oppressiveness"); *Delta*, 189 N.J. at 40 (procedural unconscionability shown by "take-

14  it-or-leave-it nature of [] standardized form"); *Wolowitz*, 468 N.Y.S. 2d at 145 (procedural

15  unconscionability shown by "a lack of a meaningful choice"). Other courts in this District

16  have found that DirecTV's arbitration clause is procedurally unconscionable on these

17  grounds. *See In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1082 (C.D.

18  Cal. 2010) ("DirecTV's arbitration clause fails to give consumers a meaningful choice, is

19  not presented to customers until after they are subject to the Cancellation Fee, does not

20  give consumers any bargaining power and includes terms far more favorable to DirecTV.

21  Looking at all of these factors, DirecTV's arbitration clause satisfies the test for

22  procedural unconscionability.").

23

---

24  residential subscriber complaint was filed on June 17, 2015—*Abrahamian v. National Football
    *League, Inc. et al.*, C.D. Cal. Case No. 2:15-cv-04606—prior to DirecTV's issuance of a revised
25  agreement "effective June 24, 2015 until replaced." *See* Mitchell Decl., Exh. 8 (2015 Residential
    Customer Agreement); *see also Peleg*, 204 Cal. App. 4th at 1432 ("we determine that an
26  arbitration contract containing a modification provision is illusory if an amendment,
    modification, or revocation—a contract change—applies to claims that have accrued or are
27  known to the employer"); *Jimenez*, 2015 WL 4914727, at *6; *Balasanyan*, 2012 WL 760566, at
    *4.
28

1

<u>2.</u>      <u>The Arbitration Clauses Are Substantively Unconscionable.</u>

2      There is also a substantive defect in both the 2014 Residential Agreement and the

3   2014 Commercial Agreement. Section 9.2(d) of the 2014 Residential Agreement provides

4   an exception to the arbitration obligation that solely benefits DirecTV. That clause states:

5      <u>Exceptions</u>. Notwithstanding the foregoing: (i) any Claim based on
       Section 1(h) above, and (ii) any dispute involving a violation of the

6      Communications Act of 1934, 47 U.S.C. § 605, or the Digital Millennium
       Copyright Act, 17 U.S.C. § 1201, or the Electronic Communications

7      Privacy Act, 18 U.S.C. §§ 2510-2521, or any other statement or law

8      governing theft of service, may be decided only by a court of competent
       jurisdiction.

9

10   *See* Mitchell Decl., Exh. 6 at §9.2(d). The 2014 Commercial Agreement contains a

11   substantially similar provision. *See* Kellogg Decl., Exh. 16 at §9(d).

12      According to a Westlaw docket search DirecTV has used this exception to sue

13   *thousands* of its customers in court in recent years while vigorously enforcing the

14   arbitration agreement against its customers during this same period. *See* Declaration of

15   Christopher L. Lebsock ("Lebsock Decl."), Exh. 2. "[T]he paramount consideration in

16   assessing conscionability is mutuality." *Abramson*, 115 Cal. App. 4th at 657. "[A]n

17   arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if

18   it requires one contracting party, but not the other, to arbitrate all claims arising out of the

19   same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24

20   Cal. 4th at 120.

21      Here, such mutuality and basic principles of fairness are seriously lacking. *See*

22   *generally Carnival*, 499 U.S. at 595 ("It bears emphasis that forum-selection clauses

23   contained in form passage contracts are subject to judicial scrutiny for fundamental

24   fairness."). DirecTV has reserved for itself the right to access the courts to resolve

25   disputes it has with its customers—and has done so on literally thousands and thousands

26   of occasions—while simultaneously denying that right to Plaintiffs. *See Martinez v.*

27   *Master Protection Corp.*, 118 Cal. App. 4th 107, 115 (2004) (arbitration improper where

28   "FireMaster [the employer]—but not Martinez [the employee]—retain[ed] the right to

12

1  pursue its judicial remedies" in certain cases involving trade secrets and the wrongful

2  uses of confidential information); *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal.

3  App. 4th 619, 639-40 (2015) (same); *Sitogum,* 352 N.J. Super. at 571 (finding option

4  contract unconscionable because it was too one-sided); *Pyo v. Wicked Fashions, Inc.,*

5  2010 WL 1380982, at *6 (D. N.J. Mar. 31, 2010) (lack of mutuality plus "further indicia

6  of unfairness" can result in unconscionability finding); *Simar Holding Corp. v. GSC,* 928

7  N.Y.S. 2d 592, 595 (App. Div. 2011) ("unreasonably favorable contractual provisions" to

8  one party are substantively unconscionable).

9       Where a departure from equal treatment is demonstrated on the face of the

10  agreement, there must be a reasonable explanation proffered for that disparity. *See*

11  *Sanchez,* 61 Cal. 4th at 917 ("legitimate commercial need" must be established) (citations

12  omitted); *Armendariz,* 24 Cal. 4th at 117 ("Given the disadvantages that may exist for

13  plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior

14  bargaining power to impose arbitration on the employee as plaintiff but not to accept such

15  limitations when it seeks to prosecute a claim against the employee, without at least some

16  reasonable justification for such one-sidedness based on business realities.'") (citations

17  omitted); *Gonzalez v. A-1 Self Storage, Inc.*, 350 N.J. Super. 403, 410 (2000) ("The basic

18  test of unconscionability is whether, 'in the light of the general commercial background

19  and the commercial needs of the particular trade or case, the clauses involved are so one-

20  sided as to be unconscionable under the circumstances existing at the time of the making

21  of the contract.'") (emphasis omitted); *Wolowitz,* 468 N.Y.S. 2d at 146 ("the

22  circumstances of the signing of the contract, and the disputed terms' setting, purpose and

23  effect" are relevant to the conscionability analysis). Here, DirecTV has not advanced a

24  legitimate justification for this disparity. Nor could it, given that the 2016 version of the

25  Residential Customer Agreement (which does not apply to this case) eliminates the one-

26  sidedness contained in its earlier agreements. *See* Declaration of Michelle Harris ("Harris

27  Decl."), Exh. 2.

28       DirecTV cites several cases – all distinguishable – in which courts have rejected

this lack of mutuality argument.[5] Importantly, none of these cases considered the evidence of DirecTV's one-sided use of the "theft of service" clause on thousands of occasions or whether DirecTV had proffered a legitimate justification for the one-sidedness of its clause. Moreover, as noted above, DirecTV's carve-out of "theft of service" claims demonstrates that, *in practice*, it is deriving an unreasonably disproportionate benefit of court access that it does not afford to its subscribers. Plaintiffs' deeper analysis of the relevant precedent renders reliance on these cases inappropriate in this litigation.

### 3.     The Entire Arbitration Clause Must Be Stricken.

Under longstanding contract principles of California, New Jersey, and New York law, courts have discretion to either sever unconscionable provisions in a contract; or, when the unconscionability permeates the agreement, the court may strike the entire clause. *Armendariz*, 24 Cal. 4th at 124-25; *Jacob v. Norris, McLaughlin & Marcus*, 128 N.J. 10, 33 (1992) ("[i]f striking the illegal portion defeats the primary purpose of the contract, we must deem the entire contract unenforceable. However, if the illegal portion does not defeat the central purpose of the contract, we can sever it and enforce the rest of the contract"); *Jones v. Star Credit Corp.*, 298 N.Y.S. 2d 264, 265 (Sup. Ct. 1969) (same); Williston on Contracts §18:17 (Effect of unconscionability; remedies). What a court may not do, however is "rewrite the agreement, since courts cannot cure contracts by reformation or augmentation." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 803

---

[5] *See, e.g.*, *In re DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1068 (C.D. Cal. 2011) (rejecting lack of mutuality defense, but without benefit of the evidence of DirecTV's affirmative use of the "theft of service" clause, *in practice*); *Hodson v. DirecTV LLC*, No. C 12-02827 JSW, 2012 WL 5464615, at *6-7 (N.D. Cal. Nov. 8, 2012) (same); *Lombardi v. DirecTV, Inc.*, 549 Fed. Appx. 617, 619 (9th Cir. 2013) (addressing unconscionability under the laws of Arizona, Illinois, Florida, and Pennsylvania law, which are not relevant here, and discussing lack of mutuality defense without reference to evidence of DirecTV's conduct, in practice); *Clements v. DirecTV, LLC*, No. 4:13-cv-4048, 2014 WL 1266834, at *4 (W.D. Ark. Mar. 26, 2014) (rejecting lack of mutuality defense under Arkansas law, without considering how the lack of mutuality applies in practice); *see also Sherman v. AT&T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *5 (N.D. Ill. Mar. 26, 2012) (rejecting lack of mutuality defense under Illinois law).

1  (2012); *see also Abramson*, 115 Cal. App. 4th at 666-67 ("[w]e cannot save the contract

2  by simply hacking off the provisions governing what claims are arbitrable").

3  As the California Supreme Court explained in *Armendariz*, "in the case of the

4  agreement's lack of mutuality, such permeation is indicated by the fact that there is no

5  single provision a court can strike or restrict in order to remove the unconscionable taint

6  from the agreement. Rather, the court would have to, in effect, reform the contract, not

7  through severance or restriction, but by augmenting it with additional terms. Civil Code

8  section 1670.5 does not authorize such reformation by augmentation . . . ." 24 Cal. 4th at

9  124-25; *Sitogum*, 352 N.J. Super. at 561 (New Jersey law does not allow the courts to

10  "rewrite contracts"). In the case of the 2014 Residential Agreement and the 2014

11  Commercial Agreement, the lack of mutuality concerning access to the courts similarly

12  cannot be resolved by a simple strike-out of the offending language and thus the entire

13  arbitration clause must be severed from the agreement.[6]

14

15  [6] DirecTV string-cites a number of additional cases for the proposition that other courts have
enforced its arbitration clauses, or ones similar to it. But even a cursory analysis of these cases
16  demonstrates the inapplicability of their holdings to the issues presented here. *See In re DirecTV
Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1084 (C.D. Cal. 2010) (class action waiver not
17  unconscionable under New York law); *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC,
2016 WL 1660049, at *10 (N.D. Cal. Apr. 27, 2016) (rejecting challenge to the FAA on state
18  action grounds); *Santana v. Verizon Wireless*, No. 14-CV-0052-CVE-FHM, 2014 WL 2197804
(N.D. Okla. May 27, 2014) (finding that scope of dispute in that case was encompassed by
19  arbitration clause that is materially different than the one contained in the 2014 Commercial
Subscriber Agreement); *O'Conner v. AT&T Corp.*, No. 13-112-SDD-SCR, 2013 WL 3107496,
20  at *2 (M.D. La. June 18, 2013) (finding that plaintiffs' fraud in the inducement theory pertained
to the contract as a whole (and not just the arbitration clause) and was therefore a question for
21  the arbitrator to decide); *DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 470 (2015) (finding the "law
of your state" clause in DirecTV's arbitration contract does not mean invalid state law); *Ferrie
22  v. DirecTV, LLC*, No. 3:15-CV-409 (JCH), 2016 WL 183474, at *12 (D. Conn. Jan. 12, 2016)
(sending unconscionability argument that attacked the DirecTV agreement as a whole to
23  arbitration); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 770-71 (N.D. Ohio 2009)
(rejecting numerous unconscionability arguments, but not lack of mutuality defense); *Truitt v.
24  DirecTV, Inc.*, No. 08-3782, 2008 WL 5054570, at *4 (E.D. La. Nov. 21, 2008) (determining
that there was insufficient procedural and substantive unconscionability under Louisiana law
25  without discussing the disparity in mutuality, in practice); *AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 351 (2011) (holding that the FAA pre-empts state laws that prohibit class action
26  waivers). None of these cases are apposite here.

27

28

### D.     The Mucky Duck Never Agreed To Arbitrate At All.

Finally, as to The Mucky Duck, no agreement to arbitrate exists.

DirecTV acknowledges that The Mucky Duck has been a DirecTV commercial subscriber since June 6, 1996. Declaration of John Garver ("Garver Decl.") at ¶4. DirecTV's Vice President and General Counsel, Steven Mullins ("Mullins") avers that "before fall 2009, the DIRECTV Commercial Viewing Agreement was signed by new commercial customers. The signed agreements were then to be returned to DIRECTV by fax, and are currently archived in an electronic database." *See* Mullins Decl. at ¶4. However, no such signed agreement between Mucky Duck and DirecTV has been proffered by DirecTV. This is because arbitration clauses were not part of the terms and conditions when The Mucky Duck initially became a customer. *See DirecTV, Inc. v. Mattingly*, 376 Md. 302, 306-307 (App. Ct. 2003) (noting that the arbitration provision were first included in the 1997 version of the customer agreements). DirecTV has failed to produce any arbitration agreement with Mucky Duck in support of its motion to compel arbitration, and also did not produce The Mucky Duck's "Public Viewing Agreement/Customer Information" sheet signed by its owner Jason Baker ("Baker") on June 6, 1996. Although one might assume from reading the declarations proffered by DirecTV that an arbitration clause has always been included in DirecTV's agreements with its customers, the Public Viewing Agreement signed by Baker demonstrates that this is not so. *See* Declaration of Jason Baker ("Baker Decl."), Exh. 1.

Additionally, there is no evidence that The Mucky Duck affirmatively assented to arbitration, which leaves DirecTV to argue that Mucky Duck's *lack of action* can be deemed to be an affirmative consent. But this is incorrect. "In California, a party's intent to contract is judged objectively, by the party's outward manifestation of consent." *See Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co. of Tenn.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) *citing Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). However, "when the offeree does not know that a proposal has been made to him this objective standard does not apply." *Windsor Mills*, 25 Cal. App. 3d at 993.

1  "Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by

2  inconspicuous contractual provisions of which he was unaware, contained in a document

3  whose contractual nature is not obvious." *Id.; see also Commercial Factors Corp. v.*

4  *Kurtzman Bros.*, 131 Cal. App. 2d 133, 135 (1955) (no manifestation of assent to terms

5  on back of order forms).[7]

6     This rule of exclusion applies with equal vigor both within and outside of the

7  arbitration context. *See Cory v. Golden State Bank,* 95 Cal. App. 3d 360, 366–367 (1979)

8  (service charge provision on back side of money order not part of contract); *India Paint*

9  *and Lacquer Co. v. United Steel Prods. Corp.,* 123 Cal. App. 2d 597, 606–07, 610–11

10 (1954) (disclaimer of warranty contained in invoice excluded).

11    DirecTV proffers Mullins' declaration for the proposition that DirecTV sent a letter

12 to "all" of its existing commercial customers in March 2010 "to notify them of the

13 updated [2009] Commercial Viewing Agreement." Mullins Decl. at ¶6.[8] Even if that

14 statement were accurate, the copy of the letter proffered—Mullins Decl., Exh. 2—is not

15 personalized to The Mucky Duck, is not signed, and did *not* include the 2009

16 Commercial Customer Viewing Agreement as an attachment to the letter. Additionally,

17 the letter did not describe any purported changes to the Commercial Customer Viewing

18 Agreement. Nor did it not reference any obligation to arbitrate.

19    DirecTV's Alisa Kellogg ("Kellogg") avers that "[a]ccording to DirecTV's

20 business Rules and based on my review of The Mucky Duck's records, The Mucky

21 Duck's 2014 Commercial Customer Agreement was included in the envelope along with

22 its June 7, 2014 billing statement." *See* Kellogg Decl. at ¶36. Even assuming that

23 statement is accurate, sending a bill stuffer that purports to add new conditions after a

24

25 [7] DirecTV cites *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991) for the proposition
   that "accept-or-return" provisions can result in contract formation. *See* DirecTV Mem. 14. But in

26 *Carnival*, the Court was not analyzing California law and the plaintiffs "d[id] not claim lack of
   notice of the forum clause." *Id.* at 595.

27 [8] The Mucky Duck separately objects to various declarations proffered by DirecTV on the
   grounds that the declarants lack personal knowledge of certain matters to which they attest, and

28 became certain of the proffered testimony violates Fed. R. Evid. 1002.

1    course of dealing has been established is *not* sufficient to bind the party receiving it. *See*

2    *Badie v. Bank of America*, 67 Cal. App. 4th 779, 803 (1998) ("Thus, after analyzing the

3    credit account agreements in light of the standard canons of contract interpretation, we

4    conclude that when the account agreements were entered into, the parties did not intend

5    that the change of terms provision should allow the Bank to add completely new terms

6    such as an ADR clause simply by sending out a notice."); *Mattingly*, 376 Md. at 320-21

7    (adding arbitration clause to DirecTV's customer agreements after course of dealing

8    established was not effective without separate warning).[9]

9        Moreover, Kellogg provides no support for her contention that a Commercial

10   Customer Agreement was actually included as a bill stuffer in 2014, and it is not at all

11   clear what she personally knows or whether her statement is based on information and

12   belief. This is particularly true since, as Kellogg avers, a third-party vendor, "DST

13   Output", prepares and then mails bills for DirecTV. *See* Kellogg Decl. at ¶¶8-11.[10] Even

14

_____

15   [9] DirecTV cites *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012)
16   for the proposition that a unilateral addition of an arbitration clause can result in an enforceable
     agreement in some circumstances. *Ackerberg* distinguishes *Badie* on the grounds that "the
17   cardholders were provided no realistic opportunity to exit the account when the new terms were
     added." *Id.* That was not actually the holding of *Badie*, but even so, *Ackerberg* relies on credit
18   card cases applying South Dakota law and not the law of California. *E.g.*, *Eaves-Leanos v.*
     *Assurant, Inc.*, No. 3:07-CV-18-S, 2008 WL 80173, at *6 (W.D. Ky. Jan. 8, 2008) ("South
19   Dakota expressly authorizes a credit card issuer to change the terms of any credit card
     agreement. *See* S.D. Codified Laws § 54-11-10. In addition the Attorney General of South
20   Dakota has issued an opinion expressly authorizing the addition of an arbitration agreement to a
     credit card agreement in the manner used by Citibank."). DirecTV also relies on *Bischoff v.*
21   *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1104 (C.D. Cal. 2002). *Bischoff* distinguishes *Badie* on the
     grounds that an arbitration clause had been in effect *since the parties in that case commenced*
22   *their relationship. Id.* Here, of course, the addition of the arbitration clause occurred many years
     after the parties first formed their relationship. *See* Baker Decl., Exh. 1. DirecTV also cites
23   *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013) and *Stachurski v. DirecTV,*
24   *Inc.*, 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009) for the very general proposition that a DirecTV
     customer can become bound to an agreement to arbitrate, but neither case is factually similar to
25   the situation presented here.

26   [10] The prerequisites underlying the presumption that a correctly addressed and properly mailed
27   letter is presumed to have been received in the ordinary course of mail have not been
     satisfactorily established by DirecTV here. *See* *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th
28   416, 421 (2000).

1  if she could lay a proper foundation, she does not state what extraneous materials would

2  also have been included in the envelope, such as advertising circulars (*see, e.g.,* Lebsock

3  Decl. Exh. 6); whether there was any specific note on either the outside of the envelope

4  or on the bill itself to consult the enclosed Commercial Subscriber Agreement; the font

5  size or shape of the Commercial Subscriber Agreement; or in what order additional

6  materials were inserted with the June bill. Nor has she provided DST Output's

7  breakdowns/error rates in or around June 2014—and so there is no way for this Court to

8  judge whether any clause buried deep within the agreement provided reasonable notice to

9  The Mucky Duck of an obligation to arbitrate. *See generally* Lebsock Decl., Exh. 6

10  (exemplar of recent bill and accompanying bill stuffers). What is clear is that Jason

11  Baker, the owner of The Mucky Duck who produced his original 1996 agreement, has no

12  recollection of receiving this document. *See* Baker Decl. at ¶9; *Windsor Mills,* 25 Cal.

13  App. 3d at 993 ("an offeree, regardless of apparent manifestation of his consent, is not

14  bound by inconspicuous contractual provisions of which he was unaware, contained in a

15  document whose contractual nature is not obvious.").

16         DirecTV also proffers three recent invoices from DirecTV to Mucky Duck as

17  evidence of its intent to commit litigation like this to arbitration. *See* Kellogg Decl., Exhs.

18  21-24; *India Paint,* 123 Cal. App. 2d at 607 ("[t]he prevailing rule is that an invoice,

19  standing alone, is not a contract . . . and a buyer is ordinarily not bound by statements

20  thereon which are not a part of the original agreement"). In contrast to the color

21  presentation on the front-side of the invoices, however, the information on the reverse

22  side is presented in gray font, with small lettering. On the back of each invoice is a

23  reference to a "Commercial Viewing Agreement" and an assertion that "*[y]ou received

24  your DirecTV Commercial Viewing Agreement with your contract*. The Commercial

25  Viewing Agreement describes the terms and conditions upon which you accept our

26  service." *See* Kellogg Decl., Exhs. 21-24 (emphasis added). DirecTV has failed to offer

27  any evidence of the "terms and conditions" that were contained in its 1996 contract with

28  Mucky Duck, but we do know from *Mattingly,* 376 Md. at 306-07, that they did *not*

1    contain an arbitration clause. *See also* Baker Decl., Exh. 1 (no arbitration clause signed

2    agreement with DirecTV). The ambiguity surrounding DirecTV's assertions that the

3    parties' agreement is governed by the Commercial Viewing Agreement that The Mucky

4    Duck received with its "contract"—which DirecTV did not produce, but which Mucky

5    Duck has (and which does not reference arbitration at all)—preclude a finding that the

6    parties mutually agreed to arbitrate this, or any other, dispute.

7         The subsequent section on the back-side of the invoice concerns "Errors or

8    Questions About Your Invoice." In this section, DirecTV describes how one can

9    "dispute" or "question" an invoice. After stating that DirecTV will not report accounts as

10   delinquent during the pendency of a dispute, the invoice states in rather inconspicuous

11   text at the end of the paragraph that "[w]e will make every effort to resolve claims

12   informally. Any claims not so resolved may be resolved only through binding arbitration

13   as provided in the Commercial Viewing Agreement." *Id.* Other than stating that "you"—

14   Mucky Duck—"received your Commercial Viewing Agreement with your contract",

15   DirecTV provides no indication on the invoice about how to find the agreement, or what

16   it specifically purports to require. The invoices certainly do not say that "[b]y continuing

17   [your] DirecTV service . . . The Mucky Duck [has] agreed to arbitrate [its] disputes with

18   DirecTV." *See* Mem. P's & A's at 16:21-23; *Windsor Mills*, 25 Cal. App. 3d at 990

19   (rejecting terms and conditions set forth on "reverse" side of order confirmations).

20        Carine Yahinian ("Yahinian") further notes that on August 26, 2015—*after* The

21   Mucky Duck's July 13, 2015 complaint was filed (*see* Dkt. No. 1 in *Ninth Inning Inc. dba*

22   *The Mucky Duck v. National Football League, Inc. et al.*, C.D. Cal. Case No. 2:15-cv-

23   05261)—DirecTV sent an email order confirmation to "Jason Baker of The Mucky

24   Duck" regarding The Mucky Duck's addition of the Big Ten Network. *See* Declaration of

25   Carine Yahinian ("Yahinian Decl.") at ¶18 and Exh. 8. Unsurprisingly, such post-filing

26   efforts to bind a party to arbitration do not pass muster. *See Avery v. Integrated*

27   *Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 61 (2013) ("an employer may not make

28   unilateral changes to an arbitration agreement that apply retroactively to 'accrued or

20

1  known' claims because doing so would unreasonably interfere with the employee's

2  expectations regarding how the agreement applied to those claims"); _Peleg v. Neiman_

3  _Marcus Grp., Inc._, 204 Cal. App. 4th 1425, 1433 (2012) ("we determine that an

4  arbitration contract containing a modification provision is illusory if an amendment,

5  modification, or revocation—a contract change—applies to claims that have accrued or

6  are known to the employer"); _Jimenez v. Menzies Aviation Inc._, No. 15-cv-02392-WHO,

7  2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) ("[c]ourts routinely exercise their

8  discretion to invalidate or refuse to enforce arbitration agreements implemented while a

9  putative class action is pending if the agreement might interfere with members' rights");

10  _Balasanyan v. Nordstrom, Inc._, No. 11-cv-2609-JM-WMC, 2012 WL 760566, at *4 (S.D.

11  Cal. Mar. 8, 2012) ("Nordstrom's attempt to impose an arbitration agreement upon

12  putative class members during the pendency of litigation cannot be allowed"); _Billingsley_

13  _v. Citi Trends, Inc._, 560 Fed. Appx. 914, 923 (11th Cir. 2014) (affirming District Court's

14  invalidation of post-filing arbitration clause); _Piekarski v. Amedisys Illinois, LLC_, 4 F.

15  Supp. 3d 952, 956 (N.D. Ill. 2013) (invalidating post-filing arbitration agreement).

16        Moreover, Yahinian does not aver that the email was opened or viewed by Baker or

17  anyone else associated with The Mucky Duck. In addition, the "Order Confirmation"

18  email provided by Yahinian states in relevant part: "Below is a summary of your order as

19  well as the terms and conditions of the offer." _See_ Yahinian Decl., Exh. 8. There appears

20  to be a hyperlink to the "Terms and Conditions"—which may or may not have been

21  visible to the recipient without scrolling. Even assuming, _arguendo_, that it was visible,

22  "proximity or conspicuousness of the hyperlink alone is not enough to give rise to

23  constructive notice . . . ." _See Nguyen_, 763 F.3d at 1178. Notably, there is no reference to

24  any purported arbitration clause anywhere on Yahinian Exhibit 8.

25        Yahinian then purports to provide the hyperlinked "terms and conditions"—_see_

26  Yahinian Decl. at ¶18 and Exh. 7—but the actual title of the hyperlinked document reads

27  "DirecTV Installation Checklist." _See_ Yahinian Decl., Exh. 7.[11] Well down the page—out

28

---

[11]  Yahinian Exhibit 7 is dated August 3, 2016, nearly a year after the "Order Confirmation"

1  of view of the reader without scrolling—is a section entitled "Existing Customer Offer

2  Terms and Conditions", and the second to last bullet point reads: "You and DirecTV

3  agree that any dispute arising under or relating to your agreements or service with

4  DirecTV, which cannot be resolved informally, will be resolved through binding

5  arbitration as fully set forth in your Commercial Viewing Agreement (available at

6  directv.com/commercial_agreement)." *Id.* This set of circumstances provides insufficient

7  notice to impute consent to arbitrate. *See Nguyen*, 763 F.3d at 1177 ("[w]here the link to a

8  website's terms of use is buried at the bottom of the page or tucked away in obscure

9  corners of the website where users are unlikely to see it, courts have refused to enforce

10  the browsewrap agreement").

11      In sum, the evidence mustered by DirecTV falls well short of demonstrating that

12  The Mucky Duck consented to arbitration prior to filing suit simply by continuing to

13  subscribe to DirecTV's programming services. *Windsor Mills,* 25 Cal. App. 3d at 992.

14  DirecTV's insertion of arbitration terms in purported agreements with The Mucky Duck

15  after their course of dealing commenced, burying those terms deep inside a bill stuffer, or

16  on the backside of an invoice, or on the bottom of hyper-linked webpages is simply not

17  adequate notice under California law. *See generally, Nguyen*, 763 F.3d at 1176 ("Were

18  there any evidence in the record that Nguyen had actual notice of the Terms of Use or

19  was required to affirmatively acknowledge the Terms of Use before completing his online

20  purchase, the outcome of this case might be different.").[12] Arbitration cannot be

21  compelled on such a slender reed.

22

23  email was purportedly sent to The Mucky Duck. *See* Yahinian Decl., Exh. 7 (top left-hand corner referencing a date of 8/3/2016).

24  [12]In *Blau v. AT&T Mobility,* No. C 11–00541 CRB, 2012 WL 566565 (N.D. Cal. Feb. 21, 2012),

25  a case relied upon by DirecTV, the plaintiff alleged that the defendant waived arbitration despite the fact that he affirmatively clicked a check box stating "I have read and agree to the Service

26  Agreement under the terms and conditions listed above" *Id.* at *1; *see also* Lebsock Decl., Exh. 4 (exemplar of email communication from a counterparty that requires affirmative conduct by

27  the recipient in order to meet terms of agreement). Here, of course, The Mucky Duck did no such thing.

28

## IV.     Conclusion

Plaintiffs respectfully request that DirecTV's motion seeking to compel arbitration and requesting a stay as to DirecTV be denied in its entirety.

Dated: October 3, 2016                    Respectfully submitted,


                                          By:   */s/ Marc M. Seltzer*
                                                Marc M. Seltzer


                                          Marc M. Seltzer
                                          mseltzer@susmangodfrey.com
                                          SUSMAN GODFREY L.L.P.
                                          1901 Avenue of the Stars, Suite 950
                                          Los Angeles, CA 90067
                                          Tel: (310) 789-3100
                                          Fax: (310) 789-3150

                                          Arun Subramanian
                                          asubramanian@susmangodfrey.com
                                          William Christopher Carmody
                                          bcarmody@susmangodfrey.com
                                          Seth Ard
                                          sard@susmangodfrey.com
                                          Ian M. Gore
                                          igore@susmangodfrey.com
                                          SUSMAN GODFREY LLP
                                          1301 Avenue of the Americas, 32nd Fl.
                                          New York, NY 10019
                                          Tel: (212) 336-8330
                                          Fax: (212) 336-8340

                                          Michael D. Hausfeld
                                          mhausfeld@hausfeld.com
                                          HAUSFELD LLP
                                          1700 K. Street NW, Suite 650
                                          Washington, DC 20006
                                          Tel: (202) 540-7200
                                          Fax: (202) 540-7201

Scott Martin
smartin@hausfeld.com
Irving Scher
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (SBN 77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (SBN 176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (SBN 184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard Langer
hlanger@langergrogan.com
Edward Diver
diver@langergrogan.com
Peter Leckman
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Interim Class Counsel*