| | |
|---|---|
| Beth A. Wilkinson (admitted *pro hac vice*)<br>**WILKINSON WALSH + ESKOVITZ LLP**<br>1900 M Street NW, Suite 800<br>Washington, DC 20036<br>Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005<br>bwilkinson@wilkinsonwalsh.com | Marc M. Seltzer (54534)<br>**SUSMAN GODFREY L.L.P.**<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150<br>mseltzer@susmangodfrey.com<br><br>*Interim Co-Lead Counsel* |

Sean Eskovitz (Bar No. 241877)
**WILKINSON WALSH + ESKOVITZ LLP**
11726 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-BRO (JEMx)<br><br>**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**<br><br>Judge: Hon. Beverly Reid O'Connell |

WHEREAS, Defendants in the above-captioned matter (the "Actions"), by and through their counsel, have met and conferred with Plaintiffs in all Actions, by and through Plaintiffs' co-lead counsel, as such counsel has been designated by this Court in its May 23, 2016 Order (Doc. 143), on a process governing the discovery of Electronically Stored Information ("ESI");

WHEREAS the parties have agreed upon a protocol for ESI discovery in the Actions, and seek to alert the Court of the terms their agreement and to obtain the Court's approval to proceed thereunder for the purposes of ESI discovery in all Actions;

NOW, THEREFORE, the parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding Discovery of Electronically Stored Information and Other Documents ("ESI Order"):

1. **PURPOSE**

This ESI Order represents the parties' agreement on technical and other specifications that will apply to ESI discovery in this case. This ESI Order shall govern all ESI discovery in the Actions, as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. To the extent that this ESI Order imposes limitations on discovery otherwise available under the Federal Rules of Civil Procedure, the parties have agreed to such limitations. The fact that the parties have agreed to this ESI Order shall not be deemed an acknowledgement that any information excluded from discovery by this ESI Order would or would not be discoverable in the absence of this ESI Order.

2. **LIAISON**

The parties have identified outside counsel liaisons (each a "Designated ESI Liaison") to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each Designated ESI Liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-

discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

The parties will rely on the Designated ESI Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention wherever possible. The parties may freely change their Designated ESI Liaisons by providing notice to the other parties without further approval of the Court. The parties identify the following individuals as their Designated ESI Liaisons:

- Plaintiffs: Ian M. Gore, Susman Godfrey L.L.P.
- NFL Defendants (including the NFL teams): John Playforth, Covington & Burling LLP
- DirecTV Defendants: Ashley Neglia, Kirkland & Ellis LLP

**3. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and production and to ensure proper ESI is preserved, the parties agree that:

a) Databases that cannot be produced in a production format set forth in Section 7 below or are otherwise not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and existing ESI from these sources, will be preserved (unless otherwise excluded from preservation by this Section 3) but will not be searched, reviewed, or produced except in accordance with this Order. A party with such a database that may have potentially responsive information shall notify the requesting party in writing of the existence of the database, the name of the database, and a description of the information stored within that database. The requesting party may then seek production of ESI from any such database subject to an agreement of the parties or other resolution as to the burden of accessing, searching, reviewing or producing ESI from such database.

b) In addition to the databases described in Section 3(a), above, the parties agree not to preserve, search, review, or produce the following, provided that if a document produced in discovery, a party's discovery response, or deposition testimony refers to discoverable information stored on one of the following formats, a party may seek access to such information (if otherwise preserved) only upon a showing of exceptional need and upon an agreement or other resolution as to the burden of producing such information:

- Backup media, backup tapes, or other long-term storage media, including cloud-based storage media, that were created strictly for use as a data back-up or disaster recovery medium;
- Voicemail, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats;
- For persons who are custodians as a result of their current or past employment, instant messaging communications and text messaging communications, including Skype communications;
- Automatically saved versions of documents and temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;
- Deleted, slack, fragmented, or other data only accessible by forensics;
- On-line access data such as temporary Internet files, history, cache, cookies, and the like;
- Email or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such email is routinely saved elsewhere;
- Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;
- Logs of communications made from mobile devices; and

- For persons who are custodians as a result of their current or past employment, any data that exists on personal, non-company-owned electronic storage devices, including but not limited to smartphones, personal computers, PDAs, cellular telephones, digital cameras, personal cloud-based accounts, or web-based personal email accounts, provided that such storage devices are or were not used as a primary means of conducting business with respect to that employment.

4. **DE-DUPLICATION**

A party may produce a single copy of a responsive document and a party may de-duplicate responsive ESI across custodians using MD5 or SHA1 Hash, or a similar method. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, if and only if all previous emails in the thread are contained within the final message. In addition, only a single copy of an email need be produced even where it was sent to multiple recipients. However, such de-duplication of email threads shall not apply to new email threads that branch off from an original email thread (*e.g.* the original thread is forwarded to a new group of recipients, or new content is introduced in the midst of an already-existing email thread). To the extent any de-duplication is applied to a document other than email, (1) such de-duplication efforts may only be applied to documents that are identical in content and may not be applied to withhold production of non-identical versions of such documents (*e.g.*, earlier or later versions of documents, drafts of documents, etc.), and (2) all custodians with that document shall be identified in the metadata provided with that document in a "Duplicate Custodian" field.

For hardcopy documents, if a document that was originally generated by a software application (*e.g.*, Microsoft Word or Microsoft Outlook) is collected from a custodian in hard copy form, the producing party has no obligation to locate and

5
**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

produce the electronic file from which the hard copy was created. However, if the electronic file would otherwise be gathered as part of the producing party's collection, both the electronic file and the hard copy shall be produced.

5. **SEARCH**

The parties agree that in responding to a Fed. R. Civ. P. 34 request, they will meet and confer about search terms and other methods that a party may choose to implement in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. At least 96 hours prior to any such meet and confer, the requesting party shall propose search criteria to the responding party.

With respect to ESI, the fact that a document is captured by the application of the agreed-upon search protocol does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. The discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' meet-and-confer process.

6. **TECHNOLOGY-ASSISTED REVIEW**

The parties shall not rely on any form technology-assisted review, such as predictive coding, to limit the scope of review for responsive ESI without first providing notice to the other parties and resolving any disputes regarding the use of such technology-assisted review. This notice shall contain a description of the methodology to be used for such technology-assisted review. The parties agree to cooperate in good faith to reach an agreement regarding the methodology to be used for such technology-assisted review. In the event that the parties cannot reach an agreement, the party proposing to use technology-assisted review shall move for and obtain a protective order prior to using it.

7. **PRODUCTION FORMATS**

ESI shall be produced according to the following formatting standards. Family structure will be maintained in productions and identified by the fields in Section 7.D below. All attachments shall be produced if a family member is deemed to be responsive, unless otherwise excluded from production. Notwithstanding the foregoing, Defendants may redact non-responsive attachments that they in good faith believe reflect particularly sensitive information where (a) the redactions are clearly reflected in the production materials and (b) there is a table of contents or other information on the face of the document that provides plaintiffs with notice of the subject matter of the redacted information; provided, however, that plaintiffs reserve all rights to request production of any redacted non-responsive attachments if they have a good faith basis to believe that such materials may lead to the discovery of admissible evidence.

A. **Images**
- Each image shall contain a single page.
- Each single image shall be produced as a separate file.
- Each image shall be produced in 300 DPI black-and-white Group IV TIF format.
- Upon a party's request for color images of specifically identified documents, color images shall be produced in JPG format.
- Filenames should be of the form:

    <Bates num>.<ext>

    Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (*e.g.*, .tif).
- All TIF images shall be produced in a folder named "IMAGES", which shall contain sub-folders named "0001", "0002", etc.
- Each sub-folder shall contain no more than 3,000 images.
- Images from a single document shall not span multiple sub-folders.

**B.     OCR or Extracted Text**

- Each document shall be produced with a separate, single OCR file covering all of the document's pages.
- Each page within the OCR file shall be separated by a form feed character (*i.e.*, decimal 12, hex 0xC).
- OCR filenames shall be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.
- All OCR files shall be produced in a folder named "TEXT".

**C.     Load and Cross-Reference Files**

- Load files in either *.DAT or *.CSV format shall be provided.
  - The first line of each DAT or CSV file shall contain the column/field names (see Metadata Fields, below).
  - Each row in each DAT or CSV file shall have the same number of columns/fields (empty values are acceptable).
  - Each value in each DAT or CSV file shall be enclosed by þ (ASCII code 254, hex FE, Latin small letter thorn).
  - Each value in each DAT or CSV file shall be separated by ¶ (ASCII code 182, hex B6, Paragraph sign).
- Cross-reference files in either *.LOG or *.OPT format shall be provided.
  - The LOG or OPT files shall be image cross-reference files and shall link images to a database.
  - The LOG or OPT files shall be comma-delimited files consisting of seven fields per line:

    [PageID],[Volume],[Path]\[FileName],[DocStart],[Folder],[PageCount]
  - There shall be a line in a LOG or OPT file for every image in the database.

- All Load and Cross-reference files shall be produced in a folder named "DATA".

   **D.    Metadata Fields**

With the exception of the fields for DocBeg, DocEnd, PgCount, Confidentiality designation, Notation of Redaction presence, Text Link, and DocLink, these fields apply only to data maintained in electronic format, and with the exception of the field for Custodian, will be provided only to the extent that they are contained in the original documents:

- DocBeg (Beginning Bates number)
- DocEnd (Ending Bates number)
- PgCount (Page Count)
- AttachBeg (Begin Attachment(s))
- AttachEnd (End Attachment(s))
- Family (Parent/Children) Bates Range
- Custodian (Last Name, First Name)
- Duplicate Custodian (Last Name, First Name) (multiple entries separated by "; ")
- Document Title, unless the document title has been redacted
- Document Date (date sent for e-mails; latest chronologically saved date for electronic documents) MM/DD/YYYY
- Document Date_GMT (equivalent GMT date/time)
- Date Created (date the document was created) MM/DD/YYYY
- Subject (subject line for e-mails)
- Author (will be blank for emails)
- From/Sender
- To/Recipients (multiple entries separated by "; ")
- CC (multiple entries separated by "; ")
- BCC (multiple entries separated by "; ")

- Source File Path
- MD5 or SHA1 Hash for Native Format Documents (used for de-duplication, if any)
- Confidentiality designation (if applicable)
- Notation of Redaction presence (if applicable)
- Text Link
- DocLink (or NativeLink, used to provide path to file as produced in native)

**E.     Production of Certain Documents in Native Format**

- Except as specified in this section, all documents shall be produced in TIF format. Aside from the document categories noted in this Section 7.E, the parties will meet and confer to discuss any requests for the production of documents in native format on a case-by-case basis where good cause exists for such request.
- All Microsoft Excel files will be produced in native format, except that Excel files that have been redacted will be produced in TIF format, with OCR and metadata when available.
- All audio, video, or any other file types that cannot be converted to TIF will be produced in native format.
- Each document produced in native format shall be produced as a separate, single file.
- To the extent a document is produced both in native format and as a TIF, the parties will use the TIF version as an exhibit in depositions, briefs, hearings or at trial. The parties will meet and confer to discuss any requests for the use of documents in a native format on a case-by-case basis.
- Filenames for documents produced in native format shall be of the form:

    <Bates num> <Confidentiality>.<ext>

    Where <Bates num> is the BATES number of the first page.

    And where <Confidentiality> is the document's confidentiality designation

under the protective order entered in and governing the Actions ("Protective Order"), as follows:

        Nonconfidential (or, alternatively, including no confidentiality designation if the document is not confidential)

        Confidential

        Highly_Confidential

- A single-paged TIF placeholder (reading "Document Produced Natively"), with the appropriate production BATES and confidentiality stamps, shall be produced corresponding to each native file.

**F.   Delivery**

- Productions will be delivered to receiving counsel on CDs, DVDs, or hard drives, or by FTP.
- Media volume names will have both (a) the volume number assigned to that production by the producing party; and (b) the bates range of the documents included in that volume.

**8.   PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding possibilities for phasing the production of ESI.

**9.   DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not, in and of itself, a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

For any privileged or work-product-protected documents recalled pursuant to

the clawback procedure set forth in the Protective Order, or any similar mutually agreed upon clawback procedure, the receiving party shall—in addition to the clawback procedures provided in such Protective Order or any similar mutually agreed-upon clawback procedure—ensure that all electronic copies of each such document are appropriately removed from the receiving party's database or other review system and shall confirm such removal to the producing party in writing.

**10.** **PRIVILEGE LOGS**

Within a reasonable period after each production of documents, a producing party shall serve opposing counsel with a privilege log relevant to that party's previous production of documents. Each producing party shall produce its final privilege log within 45 days prior to the close of fact discovery, absent good cause shown or mutual agreement of the parties.

Communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**11.** **CONTINUING OBLIGATIONS**

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including agreeing to modify any of the dates and time frames set forth in this protocol. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority with respect to discovery obligations other than the search for and review of potentially relevant ESI. Furthermore, nothing in this protocol shall operate to limit a party's obligations to produce responsive information which it has collected. Nor shall it limit the continuing production obligations of Rule 26(e) of the Federal Rules of Civil Procedure. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not

prevent any party from undertaking searches of its own ESI for its own purposes at any time.

**12.** **MODIFICATION**

This ESI Order may be modified by a further Stipulated Order of the parties, as entered by the Court, or by the Court, for good cause shown.

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: October 10, 2016

*s/ Mark M. Seltzer*
Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Howard I. Langer
LANGER, GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Fax: (215) 320-5703
hlanger@langergrogan.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street
14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

*Co-Lead Plaintiffs' Counsel*

14
**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

| | |
|---|---|
| 1 | DATED: October 10, 2016 |
| 2 | |
| 3 | |
| 4 | *s/ Beth A. Wilkinson*<br>Beth A. Wilkinson (admitted *pro hac vice*)<br>WILKINSON WALSH + ESKOVITZ LLP |
| 5 | 1900 M Street NW, Suite 800<br>Washington, DC 20036 |
| 6 | Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005 |
| 7 | bwilkinson@wilkinsonwalsh.com |
| 8 | |
| 9 | Sean Eskovitz (Bar No. 241877)<br>WILKINSON WALSH + ESKOVITZ LLP |
| 10 | 11726 San Vicente Boulevard, Suite 600<br>Los Angeles, CA 90049 |
| 11 | Telephone: (424) 316-4000<br>Facsimile: (202) 847-4005 |
| 12 | seskovitz@wilkinsonwalsh.com |
| 13 | |
| 14 | Neema T. Sahni (Bar No. 274240)<br>COVINGTON & BURLING LLP |
| 15 | 1999 Avenue of the Stars<br>Suite 1500 |
| 16 | Los Angeles, CA 90067-6045<br>Telephone: (424) 332-4800 |
| 17 | Facsimile: (424) 332-4749<br>nsahni@cov.com |
| 18 | |
| 19 | Gregg H. Levy (admitted *pro hac vice*)<br>Derek Ludwin (admitted *pro hac vice*) |
| 20 | COVINGTON & BURLING LLP<br>One CityCenter |
| 21 | 850 Tenth Street NW<br>Washington, DC 20001 |
| 22 | Telephone: (202) 662-6000<br>Facsimile: (202) 662-6291 |
| 23 | glevy@cov.com<br>dludwin@cov.com |
| 24 | |
| 25 | *Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs* |
| 26 | |
| 27 | |
| 28 | |

15

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

DATED: October 10, 2016

*s/ Tammy A. Tsoumas*
Michael E. Baumann (Bar No. 145830)
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.baumann@kirkland.com
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

*Counsel for Defendants DIRECTV, LLC and DIRECTV Holdings LLC*

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

DATED:_____


Hon. John E. McDermott
United States Magistrate Judge
17
**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**