1  Michael E. Baumann (Bar No. 145830)
   Melissa D. Ingalls (Bar No. 174861)
2  Robyn E. Bladow (Bar No. 205189)
   Tammy A. Tsoumas (Bar No. 250487)
3  **KIRKLAND & ELLIS LLP**
   333 South Hope Street
4  Los Angeles, California 90071
   Telephone: (213) 680-8400
5  Facsimile: (213) 680-8500
   michael.baumann@kirkland.com
6  melissa.ingalls@kirkland.com
   robyn.bladow@kirkland.com
7  tammy.tsoumas@kirkland.com

8  *Attorneys for Defendants*
   *DIRECTV, LLC and DIRECTV Holdings LLC*

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12  IN RE:  NATIONAL FOOTBALL      )   CASE NO. 2:15-ml-02668-BRO (JEMx)
    LEAGUE'S "SUNDAY TICKET"       )
13  ANTITRUST LITIGATION           )   **REPLY IN SUPPORT OF**
                                    )   **DIRECTV'S MOTION TO COMPEL**
14                                  )   **ARBITRATION AND STAY**
                                    )   **PROCEEDINGS**
15  _____ )
                                    )   Judge: Hon. Beverly Reid O'Connell
16                                  )
    THIS DOCUMENT RELATES          )   Date:          December 12, 2016
17  TO:   ALL ACTIONS              )   Time:          1:30 p.m.
                                    )   Courtroom:     7C
18                                  )
                                    )
19                                  )
                                    )
20                                  )
    _____ )
21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

Page

3
I.    The Commercial Plaintiffs' Claims Are Not About NFL Blackout
      Restrictions On Local Broadcasts Of Home Team Games. ............................ 1

4

5
II.   The Unavailability Of Classwide Injunctive Relief Is No Barrier To
      Enforcement Of Plaintiffs' Arbitration Agreements. ..................................... 3

6
III.  The Limited Carveout For Claims Related To Theft Of Service Does Not
      Render Plaintiffs' Arbitration Agreements Unconscionable. ......................... 6

7

8
IV.   Mucky Duck Is Bound To Arbitrate Its Disputes With DIRECTV,
      Notwithstanding Its Inability To Recall Receiving The Agreement.............. 8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
  203 Cal. App. 4th 771 (2012) ............................................................... 6

*Am. Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) ............................................................... 3, 4, 5

*AT&T Mobility, LLC v. Bushman*,
  2011 WL 5924666 (S.D. Fla. Sept. 23, 2011) ............................................................... 6

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................... 5

*Badie v. Bank of Am.*,
  67 Cal. App. 4th 779 (1998) ............................................................... 10

*Bischoff v. DIRECTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................... 8

*Castro v. Fireman's Fund Am. Life Ins. Co.*,
  206 Cal. App. 3d 1114  (1988) ............................................................... 3

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ............................................................... 10

*Chavez v. Bank of Am.*,
  2011 WL 4712204  (N.D. Cal. Oct. 7, 2011) ............................................................... 9

*Clements v. DirecTV, LLC*,
  2014 WL 1266834 (W.D. Ark. Mar. 26, 2014) ............................................................... 8

*Colvin v. NASDAQ OMX Grp., Inc.*,
  2015 WL 6735292 (N.D. Cal. Nov. 4, 2015) ............................................................... 8

*Dang v. Samsung Elecs. Co.*,
  2015 WL 4735520 (N.D. Cal. Aug. 10, 2015) ............................................................... 10

*Dialysis Access Ctr., LLC. v. RMS Lifeline, Inc.*,
  638 F.3d 367 (1st Cir. 2011) ............................................................... 3

*DIRECTV, Inc. v. Mattingly*,
  376 Md. 302 (2003) ............................................................... 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ............................................................... 4, 5

*Hodsdon v. DirecTV LLC*,
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) ............................................................... 8

REPLY IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION

*In re Apple & AT&TM Antitrust Litig.*,
   826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................................................5

*In re DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*,
   810 F. Supp. 2d 1060 (C.D. Cal. 2011) , *rev'd in part on unrelated grounds*,
   *Lombardi v. DirecTV, Inc.*, 546 Fed. App'x 715 (9th Cir. 2013) ..........................7

*James v. Comcast Corp.*,
   2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) .....................................................10

*Kalman Floor Co. v. Joseph L. Muscarelle, Inc.*,
   481 A.2d 553 (N.J. App. Div. 1984) ......................................................................7

*Lombardi v. DirecTV, Inc.*,
   549 Fed. App'x 617 (9th Cir. 2013) .......................................................................8

*Miceli v. Staples, Inc.*,
   2016 WL 6122793 (Cal. Ct. App. Oct. 20, 2016) ................................................10

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) ..................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................................................3

*Sablosky v. Edward S. Gordon Co.*,
   535 N.E.2d 643 (N.Y. 1989) ..................................................................................7

*Schikore v. BankAmerica Suppl. Ret. Plan*,
   269 F.3d 956 (9th Cir. 2001) ..................................................................................9

*Soto v. State Indus. Prods., Inc.*,
   642 F.3d 67 (1st Cir. 2011)......................................................................................8

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ...................................................................................10

*Tompkins v. 23andMe, Inc.*,
   2016 WL 6072192 (9th Cir. Oct. 13, 2016) ...........................................................7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)................................................................................................3

**Statutes**

9 U.S.C. § 2 ..................................................................................................................8

15 U.S.C. § 26 ..............................................................................................................3

15 U.S.C. § 1292 ..........................................................................................................2

iii

**Other Authorities**

*Am. Express Co. v. Italian Colors Restaurant,*
  Respondents' Br., 2013 WL 267025 (Jan. 22, 2013) ....................................................4

Sports Blackout Rules,
  79 FR 63547-02 ...............................................................................................................2

**REPLY IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION**

None of the four arguments in Plaintiffs' Opposition provides a valid basis for refusing to enforce their arbitration agreements with DIRECTV.

***First***, the two commercial Plaintiffs mischaracterize their claims as "challeng[ing] the legality of NFL blackout restrictions" in an attempt to fall within an exception to their arbitration agreements. But in fact, Plaintiffs' claims (which challenge how much they pay to view *out-of-market* games) have nothing to do with NFL blackout rules (which prohibited the broadcast of *local* games in local markets if the game didn't sell out).

***Second***, Plaintiffs argue that requiring disputes to be resolved on an individual basis deprives them of a "statutory right" to seek an injunction that would provide relief to, and impose obligations on, third parties. But Supreme Court precedent makes clear that there is no such substantive right under the antitrust laws and that a court cannot invalidate an arbitration agreement for not authorizing broad injunctive relief.

***Third***, Plaintiffs contend that their arbitration agreements are unconscionable because they allow certain claims to be brought in court. But as many courts have held, under the FAA, parties may agree to exclude certain claims from arbitration.

***Finally***, while three of the four Plaintiffs concede that they entered into arbitration agreements, Mucky Duck disputes that it has one. But Mucky Duck has not rebutted the legal presumption that it received notice of the agreement, and its continued acceptance of DIRECTV service therefore amounts to assent.

This Court should compel Plaintiffs to arbitrate their individual disputes.

## I.     The Commercial Plaintiffs' Claims Are Not About NFL Blackout Restrictions On Local Broadcasts Of Home Team Games.

Gael Pub and Mucky Duck first try to avoid arbitration by mischaracterizing their claims as involving the "legality of NFL blackout restrictions." Opp. at 5-6 (arguing that their claims fall under the Section 1(h) exception to arbitration).

NFL blackout restrictions, which were in place since 1973 and supported by the FCC until 2014, prevented local fans from watching their local team's home games on

TV if the game did not sell out, in order to encourage ticket sales. *See* Sports Blackout Rules, 79 FR 63547-02 ("Under the NFL's blackout policy, if a game is not sold out within 72 hours prior to kickoff, the game is blacked out on network affiliates in both the team's home market and [within 75 miles of game site]"); *see* 15 U.S.C. § 1292 (preserving NFL's ability to prohibit broadcast of games "within the home territory of a member club of the league on a day when such club is playing a game at home"). Section 1(h) of the Commercial Agreement thus informs customers that blackout restrictions exist and may result in local sports programming being blacked out in a consumer's "local reception area," and that any "attempt to circumvent any of these blackouts, [] may be subject to legal action." Kellogg Decl., Ex. 16 § 1(h).

Plaintiffs' Complaint, on the other hand, is not about local team home games; it is about games broadcast elsewhere in the country. *E.g.*, Consol. Am. Compl. ¶ 8 (Sunday Ticket is an "out-of-market sports package"); ¶ 53 (Sunday Ticket "caters to fans that are not located within the geographical confines of their favorite teams' home territories"). And Plaintiffs' Complaint is not even that they are unable to view these out-of-market games; it is that they ***can*** view them, but at a price they believe to be too high. *Id.* ¶ 9. That purported antitrust claim has no discernible connection to Section 1(h), and just calling it a challenge to "blackout restrictions" does not make it so. Indeed, Plaintiffs concede that their Complaint cannot possibly be challenging NFL blackout restrictions, as they admit these restrictions on local games *were suspended two seasons ago*. *See id.* ¶ 122 ("The NFL itself has now abandoned all blackouts of non-sold-out local games, having been the last major sports league to limit broadcasts to encourage ticket sales."); *see also* 79 FR 63547-02.

Plaintiffs further suggest that they have at least created an ambiguity about the Section 1(h) exclusion, and this ambiguity should be resolved against arbitration. But Plaintiffs' generic use of the word "blackout"—to refer to out-of-market games they can actually view and thus that are not "blacked out" in any sense—is not a reasonable interpretation of the contract, especially in the face of uniform evidence (including

REPLY IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION

Plaintiffs' own admission) of what NFL blackouts actually are. *See Castro v. Fireman's Fund Am. Life Ins. Co.*, 206 Cal. App. 3d 1114, 1120 (1988) (ambiguity exists only when an alternative interpretation is reasonable, and not when "a word or phrase isolated from its context is susceptible of more than one meaning"). In any event, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *see also Dialysis Access Ctr., LLC. v. RMS Lifeline, Inc.*, 638 F.3d 367, 382 n.14 (1st Cir. 2011) (when, as here, a plaintiff seeks to evade arbitration by invoking a state-law tenet requiring that "ambiguities should be interpreted against" the drafter, "the strong federal policy in favor of arbitration trumps the tenet").

In short, Plaintiffs' claims have nothing to do with the NFL blacking out local games in local markets, much less with "circumvent[ing]" these suspended blackout rules. Thus, their claims are not excluded from arbitration by Section 9(d).

## II.     The Unavailability Of Classwide Injunctive Relief Is No Barrier To Enforcement Of Plaintiffs' Arbitration Agreements.

Plaintiffs next argue that their arbitration agreements are unenforceable because they prohibit them from obtaining the broad, classwide injunction they seek in their putative class action. Opp. at 6-9. But that argument rests on the erroneous premise that the Clayton Act's provision for injunctive relief (15 U.S.C. § 26) confers a right to such broad, classwide injunctive relief.

Indeed, the argument is foreclosed by Supreme Court precedent. In *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), the plaintiffs sought to avoid having to arbitrate their antitrust claims, arguing they could not effectively vindicate their statutory rights under the Sherman Act in arbitration. They argued that

3

the arbitration provision was unenforceable not only because it made pursuing damages claims prohibitively expensive, but also because it "precludes the possibility of obtaining the kind of market-wide injunctive relief that is often necessary to remedy systemic anti-competitive conduct." *Italian Colors*, Respondents' Br., 2013 WL 267025, at \*9. The Supreme Court held that the FAA required enforcement of the agreement, explaining that there is no substantive right to obtain relief on behalf of others under the antitrust laws. *Italian Colors*, 133 S. Ct. at 2309-10. Rather, it is Rule 23—a procedural rule, adopted after Congress passed the Sherman and Clayton Acts—that allows plaintiffs proceeding in court to obtain classwide damages and injunctive relief. *Id.* By agreeing to arbitrate antitrust claims on an individual basis and waiving class procedures, parties are thus simply agreeing to the "usual rule": that "litigation is conducted by and on behalf of the individual named parties only." *Id.*

Similarly, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the plaintiff asserted claims under the Age Discrimination in Employment Act ("ADEA"), which provides employees with a right to injunctive relief for violations of the Act and expressly allows them to proceed on a representative basis. The plaintiff argued that an arbitrator could not issue the broad injunction he was seeking, and that he should not have to arbitrate in accordance with his agreement because that would thwart the purposes of the ADEA. *Id.* at 32. The Supreme Court rejected plaintiff's argument that "arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief and class actions," and enforced the agreement. *Id.* The Court held that arbitrators "have the power to fashion equitable relief" and that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* (internal quotation and citation omitted).

The bottom line is that the unavailability of broad injunctive relief in arbitration is not a basis to refuse to enforce an arbitration agreement. Indeed, a California federal

4

district court, faced with the very same "effective vindication" argument under the antitrust laws that Plaintiffs make here, rejected it as "misguided," explaining that "[t]he Supreme Court clearly stated [in *Gilmer*] that the fact that arbitration procedures 'do not provide for broad equitable relief' does not render those procedures void." *See In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1175 (N.D. Cal. 2011).

Notwithstanding this controlling precedent, Plaintiffs contend their arbitration agreements should be invalidated because those agreements supposedly "forbid[] the assertion of certain statutory rights" and require Plaintiffs to "waive a statutory remedy." Opp. at 9. But in reality, the arbitration agreements do not limit the rights Plaintiffs may assert or the relief they may seek on an individual basis in arbitration. *See* Harris Decl., Ex. 2 § 9.1; Kellogg Decl., Ex. 16 § 9(b). Plaintiffs can arbitrate their claim that DIRECTV has charged them "supracompetitive" prices in violation of antitrust laws, and seek treble damages and individual injunctive relief (such as a potential price reduction on their NFL Sunday Ticket package going forward). What they cannot do is seek that relief **on behalf of third parties**, because they have validly waived the procedures necessary to obtain such broad-based relief. *See Italian Colors*, 133 S. Ct. at 2309; *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011). And that waiver does not deprive Plaintiffs of any rights or remedies under the antitrust laws because those laws provide no substantive right to collective relief. *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 988 (9th Cir. 2016) (noting "the antitrust laws are silent on the issue of concerted legal redress" and that the Supreme Court has "concluded that the antitrust laws establish no statutory right to pursue concerted claims").

Plaintiffs' inability to distinguish substance from procedure also explains their heavy reliance on the series of cases involving arbitration demands that sought to block AT&T Mobility's proposed merger with T-Mobile. Opp. at 6, 8-9. In those cases, over a thousand claimants (represented by the same law firms) filed separate arbitration demands all seeking to enjoin the merger on behalf of the general public,

without seeking any "relief affecting only the individual claimants, such as an adjustment to an individual rate plan." *AT&T Mobility, LLC v. Bushman*, 2011 WL 5924666, at *2 (S.D. Fla. Sept. 23, 2011). Because the claimants had all agreed to proceed individually and waived class and representative actions, the demands to stop the merger did not seek any relief that the arbitrators could grant. *Id.* AT&T thus argued, and courts across the country agreed, that the arbitrations should be enjoined. Opp. at 7. But AT&T's argument was not, as Plaintiffs claim, that there was "no forum in which the Plaintiffs may pursue their statutory rights." *Id.* at 8. Rather, the claimants were free to pursue their *individual* statutory rights in arbitration, but, having validly waived procedures needed to represent others, they could not disregard that waiver and try to obtain *market-wide* relief. The same is true here.

## III.    The Limited Carveout For Claims Related To Theft Of Service Does Not Render Plaintiffs' Arbitration Agreements Unconscionable.

As DIRECTV has explained (Mot. at 13), courts have consistently upheld the arbitration agreements at issue, including under New York, New Jersey, and California law, against the same unconscionability challenges Plaintiffs rehash here.

As Plaintiffs note, these states' laws assess unconscionability on a sliding scale: the less procedural unconscionability, the more substantive unconscionability is required, and vice versa. Plaintiffs assert only that their agreements are "adhesive" (Opp. at 10-11), which adds up to a "low" degree of procedural unconscionability, meaning a high degree of substantive unconscionability is required to invalidate the agreements. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012).

But Plaintiffs muster just one argument for substantive unconscionability: that the arbitration agreements are unconscionable for lack of mutuality because certain claims relating to theft of DIRECTV service may be litigated in court. Opp. at 12-14. As to the Residential Plaintiffs, the premise is false. Any arbitration these Plaintiffs file would be governed by their operative 2016 Residential Customer Agreements, which contain no carveout and require all disputes to be arbitrated. Harris Decl., Ex. 2

§ 9.2. These Plaintiffs have identified nothing about their operative agreements that they consider unconscionable, and accordingly, they must be enforced.[1]

As to New York Plaintiff Gael Pub, whose agreement does contain an exception for theft-of-service claims, the argument that it is unconscionably non-mutual fails because in New York "[m]utuality of remedy is not required in arbitration contracts." *Sablosky v. Edward S. Gordon Co.*, 535 N.E.2d 643, 645 (N.Y. 1989) (enforcing "arbitration clause compelling one party to submit all disputes to arbitration but allow[ing] the other party the choice of pursuing arbitration or litigation").

As to California Plaintiff Mucky Duck, the Ninth Circuit recently rejected the same argument Plaintiffs make here that an arbitration provision's exclusion of certain claims was unconscionable under California law because the company was "more likely to bring [such] claims against its customers than vice versa." *Tompkins v. 23andMe, Inc.*, 2016 WL 6072192, at *9 (9th Cir. Oct. 13, 2016). The court explained that this argument was impermissible under the FAA because it was "based on the assumption that an arbitral forum is inferior to a judicial forum." *Id.* at *9-11.

And while, as *Tompkins* pointed out, the California "modicum of bilaterality" standard has been called into question by more recent California decisions (*id.* at *10), multiple courts have already found that the DIRECTV agreement meets that standard too—it requires **both** DIRECTV and Plaintiffs to arbitrate "any legal or equitable claim," and permits **both** DIRECTV and Plaintiffs to litigate certain disputes related to the theft of DIRECTV service (Kellogg Decl., Ex. 16 § 9(d)), and thus "clearly meets

---

[1]  The Residential Plaintiffs contend that their 2014 Agreement should apply because it was in effect when the first NFL Sunday Tickey suit was filed, notwithstanding their acceptance of updated agreements in 2015 and 2016. Opp. at 10-11 n.4. Given that the updated 2016 Agreement does not prejudice them in any way—and actually does not contain a provision Plaintiffs argue is unconscionable—it is unclear on what principled basis they make that argument. In any event, the 2014 Residential Agreement is equally enforceable under New Jersey (Holinko) and California (Lippincott) law. *See Kalman Floor Co. v. Joseph L. Muscarelle, Inc.*, 481 A.2d 553, 559-60 (N.J. App. Div. 1984) (there is "no statutory or current philosophical bar to a contract clause which requires commercial arbitration of only certain disputes between the parties"); *In re DirecTV Early Cancellation Fee Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1069 (C.D. Cal. 2011) , *rev'd in part on unrelated grounds*, *Lombardi v. DirecTV, Inc.*, 546 Fed. App'x 715 (9th Cir. 2013) .

7

1    the standard propounded by California courts" and is "not unconscionably unilateral."

2    *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1112 (C.D. Cal. 2002).[2]

3         Finally, to the extent any state law purports to require point-by-point mutuality

4    within an arbitration provision, such laws are preempted by the FAA. *See*, *e.g.*, *Soto v.*

5    *State Indus. Prods., Inc.*, 642 F.3d 67, 76-77 (1st Cir. 2011) (holding that "the FAA

6    preempts [a state] from imposing such a [mutuality] requirement applicable only to

7    arbitration provisions"); *Bischoff*, 180 F. Supp. 2d at 1110 (state laws requiring

8    mutuality within an arbitration clause "impose a special burden on agreements to

9    arbitrate and therefore conflict with the federal policy favoring arbitration");

10   *Clements*, 2014 WL 1266834 at *4 (similar).[3]

11   **IV.    Mucky Duck Is Bound To Arbitrate Its Disputes With DIRECTV,**

12   **Notwithstanding Its Inability To Recall Receiving The Agreement.**

13        Although three of four Plaintiffs concede they have arbitration agreements with

14   DIRECTV, Mucky Duck argues that, for itself, "no agreement to arbitrate exists."

15   Opp. at 2, 16. But Mucky Duck cannot avoid the contract terms, including arbitration,

16   that Plaintiff Gael Pub and all other commercial DIRECTV customers are bound by.

17        Mucky Duck does not dispute (neither does Gael Pub) that DIRECTV mailed

18   the March 2010 letter notifying commercial customers of the updated 2009

19   Commercial Agreement, and mailed the updated 2014 Commercial Agreement, in the

20

21   [2]  *See also In re DirecTV*, 810 F. Supp. 2d at 1069 ("[W]hile Plaintiffs contend that the

22   Customer Agreement 'requires one contracting party, but not the other, to arbitrate all
     claims,' even a quick reading of the Arbitration Clause reveals that this is untrue.");

23   *Lombardi v. DirecTV, Inc.*, 549 Fed. App'x 617, 619 (9th Cir. 2013); *Hodsdon v. DirecTV*
     *LLC*, 2012 WL 5464615, at *6-7 (N.D. Cal. Nov. 8, 2012); *Clements v. DirecTV, LLC,* 2014

24   WL 1266834, at *4 (W.D. Ark. Mar. 26, 2014). In addition, Plaintiffs' Westlaw docket
     search (Lebsock Decl., Ex. 2) is irrelevant. *See* DIRECTV's Evid. Obj. (filed herewith). And

25   Plaintiffs are not, as they claim, the first to submit such evidence and make this mutuality
     argument. *See In re DirecTV*, Case No. 8:09-ml-02093-AG-AN, Dkt. 223, Ex. P (similar

26   attorney declaration with Westlaw docket search used to make same argument). It was
     immaterial in that case, and it is immaterial here. *See In re DirecTV*, 810 F. Supp. 2d at 1069.

27   [3]  If this Court were to hold the Section 9(d) carveouts unconscionable for lack of mutuality,
     the FAA and the agreement's express severance language would require that the supposedly

28   offending provision be severed and the arbitration agreement otherwise enforced. *See* 9
     U.S.C. § 2; *Colvin v. NASDAQ OMX Grp., Inc.*, 2015 WL 6735292, at *8 (N.D. Cal. Nov. 4,
     2015); *see also* Harris Decl., Ex. 2 § 10(d); Kellogg Decl., Ex. 16 §§ 9(c), 10(d).

regular course of business, through automated processes. Mot. at 7-8. That undisputed evidence creates the presumption the documents *were in fact received*. *Schikore v. BankAmerica Suppl. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). Mucky Duck has done nothing to rebut that presumption. Its owner, Jason Baker, does not deny receiving the March 2010 letter, and concedes he has received monthly bills from DIRECTV for the past twenty years, which include the June 2014 bill that enclosed the updated 2014 Agreement. Baker Decl. ¶ 9. Mr. Baker says only that he "do[es] not recall" receiving the updated Agreement, which, as a matter of law, does not rebut the presumption that it was in fact received. *See Chavez v. Bank of Am.*, 2011 WL 4712204, at *8 (N.D. Cal. Oct. 7, 2011) (statement that plaintiff "does not recall" receiving contract terms was "not the sort of reliable evidence necessary to defeat the presumption of receipt by mail"). Nor do Mucky Duck's baseless objections to DIRECTV's uncontroverted evidence make its contractual obligations disappear. *See* DIRECTV's Resp. to Evid. Obj. at 1-2.

Similarly, nowhere does Mucky Duck dispute that continued acceptance of service after receiving notice of service terms constitutes assent under California law. *See* Mot. at 14-15. Instead, Mucky Duck argues that DIRECTV's notices were not adequate, relying on cases in which parties were unaware of contract provisions because they were "inconspicuous" and "contained in a document whose contractual nature [was] not obvious." Opp. at 16-17. That argument fails. The sole purpose of DIRECTV's March 2010 letter was to tell customers that the Commercial Agreement had been updated, remind them that it "describes the terms and conditions of your receipt and payment for the DIRECTV service," inform them that "[y]our continued receipt of the DIRECTV service constitutes your acceptance of these terms and conditions," and provide them with the website address where they could review the agreement. Mullins Decl., Ex. 2. In June 2014, DIRECTV also mailed a physical copy of the updated 2014 Commercial Agreement, which (like the 2009 Agreement) states in bold, in the very first paragraph, that the agreement is "**SUBJECT TO**

9

1  **ARBITRATION**." *Id.*, Ex. 3. In addition, Mucky Duck's monthly invoices (which

2  Mr. Baker admits he received, reviewed and paid) reminded him of the parties'

3  agreement to arbitrate disputes. Kellogg Decl., ¶¶ 36, 38, Exs. 21-24.

4  If Mucky Duck was truly unaware of its arbitration agreement, it is because its

5  owner admittedly did not bother to read the documents DIRECTV sent him and

6  repeatedly apprised him of. Under California law, "a party cannot avoid the terms of a

7  contract by failing to read them." *Dang v. Samsung Elecs. Co.*, 2015 WL 4735520, at

8  *6 (N.D. Cal. Aug. 10, 2015); *see also Specht v. Netscape Commc'ns Corp.,* 306 F.3d

9  17, 31 (2d Cir. 2002) ("receipt of a physical document containing contract terms or

10  notice thereof" is sufficient to "place the offeree on inquiry notice of those terms").

11  Mucky Duck lastly argues that an updated arbitration agreement cannot be sent

12  via a bill insert, and so it was not bound by the updated 2014 Agreement. Opp. at 17-

13  18 (citing *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998)). Putting aside that

14  Mucky Duck would still be bound by the 2009 Agreement, there simply is no such

15  rule. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1200 (S.D. Cal. 2013)

16  ("*Badie* did not hold that bill stuffer notices are per se invalid."). Indeed, under near-

17  identical circumstances—where defendants could not find the original agreement[4] and

18  sought to enforce an arbitration provision in an updated agreement sent by bill

19  insert—two courts held that the plaintiffs were bound to arbitrate. *See James v.*

20  *Comcast Corp.*, 2016 WL 4269898, at *1 n.1, *2-4 (N.D. Cal. Aug. 15, 2016)

21  (rejecting argument that arbitration clause "was hidden because it was included with

22  the July 2011 bill, rather than [sent as] a stand-alone document" and distinguishing

23  *Badie*); *Miceli v. Staples, Inc.*, 2016 WL 6122793, at *3 (Cal. Ct. App. Oct. 20, 2016)

24  (enforcing arbitration provision in updated credit card agreement sent with monthly

25  billing statement, and distinguishing *Badie*).

26  This Court should reach the same result here.

27  ───────────────

28  [4]  As DIRECTV explained, it was unable to locate Mucky Duck's 1996 Agreement. Gardner
Decl. ¶ 7. Mucky Duck's reliance on *DIRECTV, Inc. v. Mattingly*, 376 Md. 302 (2003), is
misplaced because it involved a residential, not commercial, agreement.

10

1     Dated:  November 14, 2016           Respectfully submitted,

2

3                                          */s/ Robyn E. Bladow*
                                         Michael E. Baumann (Bar No. 145830)

4                                          Melissa D. Ingalls (Bar No. 174861)
                                         Robyn E. Bladow (Bar No. 205189)

5                                          Tammy A. Tsoumas (Bar No. 250487)
                                         **KIRKLAND & ELLIS LLP**

6                                          333 South Hope Street
                                         Los Angeles, California 90071

7                                          Telephone: (213) 680-8400
                                         Facsimile: (213) 680-8500

8                                          michael.baumann@kirkland.com
                                         melissa.ingalls@kirkland.com

9                                          robyn.bladow@kirkland.com
                                         tammy.tsoumas@kirkland.com

10                                          *Attorneys for Defendants DIRECTV, LLC*

11                                          *and DIRECTV Holdings LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY IN SUPPORT OF DIRECTV'S MOTION TO COMPEL ARBITRATION**