Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
Email: mseltzer@susmangodfrey.com

Scott Martin
Irving Scher
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322
Email: smartin@hausfeld.com
Email: ischer@hausfeld.com

Howard Langer
Edward Diver
Peter Leckman
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
Email: hlanger@langergrogan.com
Email: ndiver@langergrogan.com
Email: pleckman@langergrogan.com

[Additional Counsel listed in Signature Block]

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. ML 15-02668−BRO (JEMx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' POSITION STATEMENT ON REDACTIONS** |

Plaintiffs respectfully submit this Position Statement pursuant to Paragraph 2 of the So-Ordered Stipulation Regarding Production of Media Agreements, filed and entered on November 28, 2016 ("Stipulation"), Dkt. 205. As set forth below, Plaintiffs entered into the Stipulation reasonably expecting that the NFL would, in fact, produce the broadcast contracts covered by the Stipulation. Instead, the NFL has produced copies of its contracts with CBS and Fox (the "Network Contracts") that are almost entirely redacted, and effectively unusable. We respectfully request an order requiring the NFL to produce unredacted copies of the CBS and Fox contracts.

The relevance of these contracts can hardly be overstated. Plaintiffs claim that the NFL teams and their television partners—including CBS and Fox—are artificially constraining the availability of professional football telecasts through, among other things, these very contracts. The NFL itself recognizes this: the NFL attached isolated excerpts of these Network Contracts in support of its motion to dismiss, asserting that "the complaint depends on the contents of each agreement…" Dkt. 199, NFL Reply Br. at 5, n.1. Plaintiffs objected to the NFL's reliance on these extra-pleading materials in connection with the motion to dismiss—particularly since Plaintiffs had never seen these contracts—and requested access to the full, unredacted copies. Dkt. 188. Given the central nature of these Network Contracts and the NFL's reliance on excerpts from them, Plaintiffs agreed to limit discovery during the pendency of the motion to dismiss, provided that the NFL agreed to produce, *inter alia*, the Network Contracts with CBS and Fox. That agreement was embodied in the Stipulation and Order, and was entered into on the assumption that the NFL was largely acquiescing to Plaintiffs' earlier request for copies of the complete agreements.

Contrary to the purpose and spirit of that agreement, the NFL produced copies of the Network Contracts that are *almost entirely redacted*, other principally

1

than title headings and mentions of the Sunday Ticket. *See* Ex. 1 (Redacted CBS Contract) & Ex. 2 (Redacted Fox Contract). The NFL did not even identify the substance of the redactions, as required by paragraph 2 of the Stipulation, leaving Plaintiffs devoid of any explanation or ability to determine the nature of the redactions. By all appearances, the wholesale redactions were done indiscriminately, to the point that one Network even *redacted portions of their Network Contract that have already been filed in this case by the NFL. Compare* Ex. 1, Section 11.1 (redacted Fox section) *with* Dkt. 170-2, Ex. 2, Section 11.1 (same provision unredacted). While the NFL left in the section headers, they are insufficient to identify the contents of what has been redacted, but even those headers suggest many important materials have been omitted.[1]

The parties have met and conferred on this dispute. Given the almost-entirely censored documents and the NFL's failure to identify the substance and purpose of each redaction, Plaintiffs challenged all the redactions pursuant to the Stipulation. Neither the NFL nor the Networks have identified any burden in producing the unredacted versions. Rather, the Networks explained that the purpose of the redactions was to remove materials they deemed irrelevant and to preserve confidentiality. Neither explanation has merit. Courts in this District recognize that redactions for relevance are improper – not least because the producing party cannot be entrusted to determine what is relevant to Plaintiffs' claims – especially where, as here, any confidentiality concerns are answered by the terms of a governing protective order. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10 ML 02151 JVS, 2012 WL 9337626, at *1 (C.D. Cal. Jan. 13, 2012) ("[W]e feel that the better policy is not to

---

[1] Among many other sections, the NFL has redacted all or nearly all of the sections regarding topics such as rights fees, the division of rights between the NFL and the Network, indemnification, licensing, and exclusivity.

2

allow unilateral redactions based on relevance by the producing party. This is especially true when a protective order is in place, as is the case here.").[2]

Even if redactions for relevance were permissible (which they are not), the Networks' redactions are extreme. The Networks seem to believe that the only possibly relevant portions of the Network Agreements are those that mention Sunday Ticket by name. Not so. For example, one of the primary harms of the agreements between the League and its television partners is to limit the availability of professional football telecasts. The Network Contracts constitute a key part of this output restriction. As Plaintiffs explain in their Opposition to the NFL's Motion to Dismiss:

> Ultimately, the core agreements at issue are not to manipulate the market in rights, but to limit the availability of telecasts at the consumer level. The NFL Defendants have secured agreements from Fox and CBS to distribute only one of the games they produce at a given time on local television, and that only three such games will be available OTA ["over-the-air"]. CAC ¶¶84-85. They have insisted that Sunday Ticket be limited

---

[2] The existence of the Stipulation raised the possibility that there might be *some* redactions to the agreements concerning discrete items that the Networks viewed as highly sensitive (even in the presence of the Court-entered protective order). In order to avoid burdening the Court with motion practice, Plaintiffs agreed to postpone broader discovery in this litigation in exchange for the production now of particularly relevant agreements, including the Network Contracts, and entered into the Stipulation in good faith. Plaintiffs did so, of course, without agreement to any such redactions and with the reasonable expectation that any special redactions sought by the NFL and Networks would be narrowly-tailored, few in number, and carefully explained. The Stipulation reflects this understanding and provides the Plaintiffs with a vehicle to challenge individual redactions when necessary. The NFL and Networks, though, have flipped the Stipulation on its head by engaging in wholesale censorship without particularized explanation, not only rendering the agreements useless as produced, but dropping in the magistrate judge's lap the near-entirety of the Network Contracts for analysis in conjunction with the allegations and implications of the pleadings. This tactic defies the purpose of the protective order in the discovery process, is a waste of resources for the Court and the parties, and is clearly not what the parties bargained for.

3

> so as not to put significant competitive pressure on OTA telecasts. *Id.* ¶77. Likewise, DirecTV has insisted that OTA broadcasts not be expanded, in order to protect Sunday Ticket. See CAC, ¶¶13, 114-118. … The fundamental restraint, in other words, is on the access that consumers have to game telecasts.

Dkt. 184, Plaintiffs' Memorandum In Opposition to the NFL Defendants' Motion to Dismiss, at 8.

These contracts embody these restraints. Even seemingly unimportant sections may contain evidence pertinent to the many issues that must be proven in an antitrust action, including relevant market, market power, harm to competition, supposed procompetitive justifications, and the existence of less restrictive alternatives. That is why the Plaintiffs insisted that the NFL explain the basic contents of each section they redacted. It is worth noting that the parallel network contracts were produced without *any* redactions in *Laumann v. the National Hockey League*, 12-cv-1817 (SAS), S.D.N.Y. and *Garber v. Office of the Commissioner of Baseball*, 12-cv-3704 (SAS), S.D.N.Y. Those cases involved similar allegations and were resolved without any issue ever being raised regarding the Plaintiffs' handling of the materials.

Finally, the Networks seem to argue that the Stipulation authorized the Networks to make broad redactions. To the contrary, the Stipulation recognizes that "disputes may arise concerning *whether redactions* to those documents *are appropriate*." Dkt. 205 ¶1 (emphases added). The remaining protocol was put in place to resolve any disputes concerning redactions, but it did not suggest or imply that Plaintiffs would acquiesce in whatever unknown redactions the NFL or networks may apply.[3]

___
[3] The Networks have argued that this stipulation was based on the stipulation in *National Collegiate Athletic Association Athletic Grant-in-Aid Antitrust Litigation*, Case Number 4:14-md-02541 (N.D. Cal.), where the Networks say they have applied many redactions. The provenance of the stipulation is irrelevant – it

4

Plaintiffs remain willing to discuss narrow, principled redactions, notwithstanding the Court's own Protective Order (to which it properly should be expected that all parties and counsel will adhere), but there is simply no justification for such an indiscriminate and wholesale redaction of such crucial materials. Plaintiffs have provided notice of our objections to the redactions to counsel for the NFL, CBS and Fox, pursuant to Paragraph 2 of the Stipulation and Order. In consideration of the manner in which the agreements were produced, a strategy that renders any informed dialogue impracticable, we also have asked counsel for the NFL to produce non-redacted versions of the agreements to us, which we would treat on an attorneys-eyes-only basis. In the absence of the NFL's agreement, Plaintiffs respectfully request an order requiring the NFL to do so.

Dated:  December 14, 2016                Respectfully submitted,


                                         By:   _/s/ Marc M. Seltzer_
                                               Marc M. Seltzer

Marc M. Seltzer                          Arun Subramanian
SUSMAN GODFREY L.L.P.                    William Christopher Carmody
1901 Avenue of the Stars, Suite 950      Seth Ard
Los Angeles, CA 90067                    Ian M. Gore
Tel: (310) 789-3100                      SUSMAN GODFREY LLP
Fax: (310) 789-3150                      1301 Avenue of the Americas, 32nd FL.
Email: mseltzer@susmangodfrey.com        New York, NY 10019
                                         Tel: (212) 336-8330
                                         Fax: (212) 336-8340
Michael D. Hausfeld                      Email:
_____
explicitly does not commit the Plaintiffs to agree to any particular redactions. Nor is the course of conduct in that case relevant. That case involves caps on scholarship packages to college athletes. It is not a case, like this one, that challenges output restrictions in the very contracts the networks seek to redact.  The proper analogues here are the _Laumann_ and _Garber_ cases, where network contracts were produced without redactions.

5

4675752v1/014918

HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com

Scott Martin
Irving Scher
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
Email: smartin@hausfeld.com
Email: ischer@hausfeld.com

asubramanian@susmangodfrey.com
Email: bcarmody@susmangodfrey.com
Email: sard@susmangodfrey.com
Email: igore@susmangodfrey.com

Michael P. Lehmann (SBN77152)
Bonny E. Sweeny (SBN 176174)
Christopher L. Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
Email: mlehmann@hausfeld.com
Email: bsweeney@hausfeld.com
Email: clebsock@hausfled.com

Howard Langer
Edward Diver
Peter Leckman
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
Email: hlanger@langergrogan.com
Email: diver@langergrogan.com
Email: pleckman@langergrogan.com

*Interim Class Counsel*

6