JAMES W. QUINN
james.quinn@weil.com
YEHUDAH L. BUCHWEITZ
yehudah.buchweitz@weil.com
ERIC S. HOCHSTADT
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Non-Party CBS Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE SUNDAY TICKET ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. ML 15-02668-BRO (JEMx)<br><br>**NON-PARTY CBS CORPORATION'S RESPONSE TO PLAINTIFFS' POSITION STATEMENT** |

Non-Party CBS Corporation ("CBS") respectfully submits this response to Plaintiffs' Position Statement (Dkt. 206), pursuant to the So-Ordered Stipulation Regarding Production of Media Agreements ("Redaction Order") (Dkt. 205). Almost immediately after inducing CBS to agree to the Redaction Order, Plaintiffs have pulled a bait-and-switch and sought an order requiring the production of a totally *unredacted* copy of one of CBS' most important contracts. Plaintiffs' request is improper because Plaintiffs (i) failed to comply with the clear process in the Redaction Order, and (ii) failed to explain why they need commercially sensitive provisions with no bearing on this lawsuit. Plaintiffs' request should therefore be denied.

**1. CBS' Contract Is Highly Commercially Sensitive And The Redaction Order Was Intended To, And Allowed For, Production Of Only The Relevant "Sunday Ticket" Provisions**

CBS is a contractual counterparty with the defendant National Football League ("NFL") to the Sunday AFC Package Television Agreement, executed by and among the National Football League and CBS on February 5, 2014 and in effect today (the "CBS Sunday AFC Television Agreement"). As this Court already recognized (*see* Dkt. 178), the CBS Sunday AFC Television Agreement contains confidential, competitively sensitive terms that warrant protection from disclosure. *See* Declaration of Robert Correa ¶¶ 3-9 (Dkt. 169). Virtually all the highly sensitive proprietary information in the agreement has *no relevance* to issues in this case, and has never been made public. *See id*. ¶¶ 4, 9. Production without serious protections from possible disclosure to the public at trial, or to certain parties to this litigation or their counsel, would highly prejudice CBS in its ability to negotiate and CBS would suffer significant irreparable harm because competitors could learn valuable business information that could help them in future competitions to obtain sports telecasting rights. *Id*. ¶¶ 5-8.[1]

---

[1] Because of this, when Plaintiffs earlier sought production of the CBS Sunday (continued…)

NON-PARTY CBS' RESPONSE TO PLAINTIFFS' POSITION STATEMENT — 1 — CASE NO. ML 15-02668-BRO (JEMx)

In late October 2016, Plaintiffs and NFL discussed an agreement providing for limited discovery pending resolution of the motions to dismiss. *See* Declaration of Yehudah Buchweitz ("Buchweitz Decl.") ¶ 2. CBS agreed to production of relevant excerpts of the CBS Sunday AFC Television Agreement on the condition that the disclosing and receiving parties enter into a redaction protocol, a form of which CBS, and other television networks, had been using with success in resolving disputes about production of commercially sensitive college sports telecasting rights agreements in another litigation in California federal court. *See id*. ¶ 3.[2] CBS provided a sample redaction protocol from that case, which had been judicially approved on multiple occasions by Magistrate Judge Nathanael M. Cousins, and on November 15, Plaintiffs and the NFL agreed to that stipulation. Accordingly, on December 1, 2016, as soon as the stipulation was "so ordered", CBS provided the NFL a redacted version of the

---

AFC Television Agreement, CBS declined to produce the entire agreement and on September 22, 2016, Plaintiffs filed an Objection to Consideration of Extrinsic Evidence Outside the Face of Plaintiffs' Complaint in Support of the NFL Defendants' Motion to Dismiss (Dkt. 188) (the "Objection"), which is *sub judice*. Subsequently, the Court so-ordered a protective order (Dkt. 197). The protective order, however, does not restrict the use of highly confidential information at trial, nor in the event a motion to seal is denied for pre-trial filings. *See id.* ("This Order does not govern the use of Protected Information at trial. Any use of Protected Information at trial shall be governed by the orders of the trial judge."). It also permits disclosure of highly confidential information to parties' outside counsel, some of whom may participate in future commercial negotiations with CBS and could disadvantage CBS with knowledge of these terms. *Id.*

[2] In *In re NCAA Grant-In Aid Cap Antitrust Litig.*, No. 14-md-02541-CW-NC (N.D. Cal.) ("GIA"), the parties entered into stipulations that mirror and were the basis for the Redaction Order. *See* Buchweitz Decl. ¶ 3. CBS would not have proposed using the GIA protocol in this case if it had not been its intent that the processes would function the same way. *Id*. In the GIA case, this process has thus far proceeded smoothly with plaintiffs providing lists of redactions with which they take exception, followed by good faith discussions with CBS. *Id*. To date all issues have been resolved without court intervention. *Id*.

contract. *Id*. ¶ 4. CBS **did not redact** any provision that governs the Sunday Ticket package at issue in this case. *Id*. CBS also left unredacted the provisions that the NFL relied on in its motion to dismiss, a provision concerning the term of the agreement, certain portions that are public information, and definitions needed to understand unredacted provisions. CBS also left every heading and subheading unredacted, which fully complied with the Redaction Order's requirement that CBS provide "reasonable identification of the subject matter of each redaction, if not apparent from the face of the redacted document." Dkt. 205.

### 2. The Plaintiffs Did Not Comply With The Redaction Order

Pursuant to the Redaction Order, if a dispute arises, prior to filing a position statement, Plaintiffs were required to provide a complete, written list of any redaction they took issue with for discussion with CBS. *Id*. But on December 8, 2016, Plaintiffs' counsel, Mr. Ard, demanded an unredacted CBS Sunday AFC Television Agreement by the *next day*, and for CBS to agree in the *next five hours*. *See* Buchweitz Decl. ¶ 5. Plaintiffs' counsel incorrectly referred to CBS' redactions as "wholesale," and "indiscriminat[e]." *Id*. Mr. Ard threatened to file a motion that evening absent CBS' acceding to his unilateral demands. *Id*. Counsel for CBS explained that CBS had provided all relevant provisions, and advised that the threat to file without discussion was a violation of the Redaction Order's requirements. *See id*.

Plaintiffs' counsel agreed to a meet and confer on December 12, during which, CBS asked Plaintiffs repeatedly to identify particular provisions that were relevant and offered to discuss such provisions, but Plaintiffs declined to provide any such written list. *See id*. ¶ 6. This blatantly violates the Redaction Order. Plaintiffs' counsel argued that it needed more than was provided because their claims include the restriction of football broadcast outputs generally, not just regarding "Sunday Ticket," and that therefore *any* provision could be relevant and the "entire" agreement had to be produced. *See id*. But, at both the meet and confer and in their Position Statement, Plaintiffs have still failed to articulate why the entire agreement is relevant. Further,

the unredacted headings make clear the complete irrelevance of the redacted terms here, including for example, provisions governing "American Football Conference Championship Game Contract Principles," and "Super Bowl Game Contract Principles" (which are highly confidential to CBS, but have no relevance whatsoever to Plaintiffs' theory of restricted output because they involve only one game airing across the country, and therefore there is no output to restrict). Plaintiffs' case law supporting their argument that relevance redactions are improper is inapposite.[3] This is particularly the case because the parties to the Redaction Order specifically agreed to redactions.[4] In fact, the Redaction Order refers to "redactions" six times.

Nevertheless, in an effort to resolve this dispute, CBS offered to review the CBS Sunday AFC Television Agreement and consider unredacting additional provisions that Plaintiffs believe might be relevant to their restricted output theory, if

---

[3] Plaintiffs' own citation recognizes "that there is a split of authority regarding 'relevance redactions' within responsive documents." *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2012 WL 9337626, at *1 (C.D. Cal. Jan. 13, 2012). And, subsequent cases demonstrate that ordering the production of irrelevant provisions of highly commercially sensitive contracts does not strike the required balance in discovery, *see In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *4-5 (N.D. Cal. Feb. 27, 2012) (denying motion to compel wholesale production of nonparties' broadcast agreements despite "marginal[] relevan[ce]" because they contained highly confidential commercial information, and finding plaintiffs' rejection of nonparties' proposed redactions, without specifying which additional provisions plaintiffs sought, to be unreasonable), nor is it proportional to the needs of the case as required under the amended Fed. R. Civ. P. 26, *see In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1460143, at *2-3 (S.D. Fla. Mar. 1, 2016) (citing proportionality and approving irrelevance redactions to permit withholding of competitively sensitive information because "a party is not entitled to receive every piece of . . . irrelevant information in responsive documents if the producing party has a persuasive reason for why such information should be withheld").

[4] Plaintiffs' attempt to circumvent the Redaction Order appears to also be a thinly veiled effort to submit a sur-reply on the Objection, which is *sub judice*.

the parties could also negotiate additional protections in the protective order to prevent the public disclosure of the CBS Sunday AFC Television Agreement at what will undoubtedly be a highly publicized trial or in the event that the Court denied a motion to seal the agreement. Buchweitz Decl. ¶ 7. Plaintiffs' counsel declined the compromise. CBS remains willing to review and consider additional provisions it could unredact, consistent with the Redaction Order, to address Plaintiffs' relevance arguments, either under the current protective order, or under an enhanced order, in order to continue its good faith attempts to resolve this dispute. *Id*. ¶ 8. Accordingly, CBS respectfully requests that the Court deny Plaintiffs' request for the wholesale production of the CBS Sunday AFC Television Agreement.

DATED: December 21, 2016        Respectfully submitted,

  /s/ Yehudah L. Buchweitz

James W. Quinn (admitted *pro hac vice*)
Yehudah L. Buchweitz (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue, 25th Floor
New York, NY 10153
Telephone: (212)310-8000
Facsimile: (212)-310-8007
james.quinn@weil.com
yehudah.buchweitz@weil.com
eric.hochstadt@weil.com

*Counsel for Non-Party CBS Corporation*