Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Scott Martin
Irving Scher
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322
smartin@hausfeld.com
ischer@hausfeld.com

Howard I. Langer
Edward Diver
Peter Leckman
**LANGER GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
hlanger@langergrogan.com
ndiver@langergrogan.com
pleckman@langergrogan.com

[Additional Counsel Listed in Signature Page]

*Interim Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 2:15-ml-02668−BRO (JEMx)<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Plaintiffs respectfully submit this notice of supplemental authority to bring to the Court's attention the Ninth Circuit's recent decision in *Norcia v. Samsung Telecommunications America, LLC*, __ F.3d __, 2017 WL 218027 (Jan. 19, 2017), attached as Exhibit A hereto. The decision concerns contract formation under California law, which is relevant to defendant DirecTV's motion to compel arbitration. *See* ECF Nos. 171 (Mot. to Compel Arbitration), 196 (Opp'n to Mot. to Compel); 202 (Reply in Support of Mot. to Compel Arbitration).

DirecTV cited *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), in support of its motion to compel arbitration, arguing that plaintiff The Mucky Duck's continued acceptance of DirecTV service constituted an implied acceptance of DirecTV's arbitration clause. *See E*CF No. 171-1 at 15-16. *Norcia* makes clear that this portion of *Murphy* was dicta and that the assumptions that underpinned it are questionable. *See Norcia,* 2017 WL 218027, at *8 & n.4. *Norcia* also cited *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d, 987, 993 (1972) for the proposition that "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* Plaintiffs note that *Windsor Mills* was cited in support of The Mucky Duck's argument that it had not agreed to arbitrate with DirecTV. *See* ECF No. 196 (citing *Windsor Mills* at 16, 19, 20, and 22).

Dated: February 2, 2017                    Respectfully submitted,


                                        By:   */s/ Marc M. Seltzer*
                                               Marc M. Seltzer

Marc M. Seltzer
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100

1

Fax: (310) 789-3150

Arun Subramanian
asubramanian@susmangodfrey.com
William Christopher Carmody
bcarmody@susmangodfrey.com
Seth Ard
sard@susmangodfrey.com
Ian M. Gore
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Michael D. Hausfeld
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Scott Martin
smartin@hausfeld.com
Irving Scher
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (SBN 77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (SBN 176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (SBN 184546)
clebsock@hausfled.com
HAUSFELD LLP

600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard I. Langer
hlanger@langergrogan.com
Edward Diver
diver@langergrogan.com
Peter Leckman
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Interim Class Counsel*

# Exhibit A

2017 WL 218027
United States Court of Appeals,
Ninth Circuit.

Daniel Norcia, on his own behalf and on behalf of all others similarly situated, Plaintiff–Appellee,
v.
Samsung Telecommunications America, LLC, a New York Corporation; Samsung Electronics America, Inc., a New Jersey corporation, Defendants–Appellants.

No. 14–16994
|
Argued and Submitted October 17, 2016 San Francisco, California
|
Filed January 19, 2017

**Synopsis**
**Background:** Customer brought putative class action against smartphone manufacturer under California state law, alleging that manufacturer made misrepresentations as to the performance of smartphone. The United States District Court for the Northern District of California, James Donato, J., 2014 WL 4652332, denied manufacturer's motion to compel arbitration. Manufacturer appealed.

**Holdings:** The Court of Appeals, Ikuta, Circuit Judge, held that:

[1] arbitration clause in product safety and warranty information brochure was not supported by mutual assent of parties;

[2] product safety and warranty information brochure was not enforceable as an in-the-box contract; and

[3] manufacturer failed to establish that it was third-party beneficiary to customer's agreement with wireless service provider.

Affirmed.

West Headnotes (21)

[1] **Alternative Dispute Resolution**
 Scope and standards of review
Court of Appeals reviews a district court's decision to deny a motion to compel arbitration de novo.

Cases that cite this headnote

[2] **Federal Courts**
 Findings
**Federal Courts**
 'Clearly erroneous' standard of review in general
Court of Appeals reviews district court's factual findings for clear error, but where no facts are in dispute Court of Appeals' entire review is de novo.

Cases that cite this headnote

[3] **Alternative Dispute Resolution**
 Contractual or consensual basis
Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

Cases that cite this headnote

[4] **Federal Courts**
 Highest court
**Federal Courts**
 Anticipating or predicting state decision
In discerning California law, Court of Appeals is bound by the decisions of the California Supreme Court, including reasoned dicta, but if the California Supreme Court has not directly addressed the question before it, Court of Appeals must predict how California Supreme Court would decide the issue.

Cases that cite this headnote

| | | | |
|---|---|---|---|
| **[5]** | **Federal Courts**<br>🗝 Inferior courts | **[8]** | **Contracts**<br>🗝 Signing in ignorance of contents in general |

In predicting how California Supreme Court would decide an issue not directly addressed before it, Court of Appeals generally will follow a published intermediate state court decision regarding California law unless it is convinced that the California Supreme Court would reject it.

Cases that cite this headnote

Under California law, a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.

Cases that cite this headnote

| | | | |
|---|---|---|---|
| **[6]** | **Alternative Dispute Resolution**<br>🗝 In general;formation of agreement<br>**Alternative Dispute Resolution**<br>🗝 Validity of assent | **[9]** | **Contracts**<br>🗝 Necessity of assent |

Arbitration clause in product safety and warranty information brochure included in product box for smartphone was unenforceable for lack of mutual assent under California law; customer did not expressly assent to any agreement in the brochure, customer did not sign the brochure or otherwise act in a manner that showed his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement, customer did not retain any benefit by failing to act, customer did not give any outward manifestations of consent that would have led a reasonable person to believe he had assented to the agreement, and outside of box did not notify customer that opening the box would be considered agreement to the terms set forth in the brochure.

Cases that cite this headnote

Under California law, courts must determine whether the outward manifestations of consent would lead a reasonable person to believe an offeree has assented to an agreement.

Cases that cite this headnote

| | | | |
|---|---|---|---|
| | | **[10]** | **Contracts**<br>🗝 Acceptance of Offer and Communication Thereof |

Under California law, as a general rule, silence or inaction does not constitute acceptance of an offer.

Cases that cite this headnote

| | | | |
|---|---|---|---|
| | | **[11]** | **Contracts**<br>🗝 Acceptance of Offer and Communication Thereof |

Under California law, an offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty.

Cases that cite this headnote

| | | | |
|---|---|---|---|
| **[7]** | **Contracts**<br>🗝 Signing in ignorance of contents in general | **[12]** | **Contracts**<br>🗝 Acceptance of Offer and Communication Thereof |

Under California law, a party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. Cal. Civ. Code § 1550.

Cases that cite this headnote

Under California law, an offeree's silence may be treated as consent to a contract when the party retains the benefit offered. Cal. Civ. Code § 1589.

Cases that cite this headnote

[13]  **Contracts**
 Acceptance of Offer and Communication Thereof

Under California law, an offeree's inaction after receipt of an offer is generally insufficient to form a contract.

Cases that cite this headnote

[14]  **Alternative Dispute Resolution**
 In general;formation of agreement
**Sales**
 Particular terms and obligations in general
**Sales**
 Particular cases and goods

Product safety and warranty information brochure included in product box for smartphone was not enforceable as an in-the-box contract between customer and smartphone manufacturer under California law; brochure indicated only that it contained safety information and manufacturer's warranty relating to the phone, which would not have put a reasonable person in customer's position on notice that brochure contained a freestanding obligation outside scope of warranty, or that receipt of manufacturer's warranty and customer's failure to opt out of arbitration provision contained within warranty constituted assent to provision requiring arbitration of all claims against manufacturer, including claims not involving the warranty.

Cases that cite this headnote

[15]  **Sales**
 Statements or Representations Constituting Warranty
**Sales**
 Samples or models
**Sales**
 Advertising and promotion

Under California law, a seller is bound by any express warranties given to the buyer, including statements in written warranty agreements, advertisements, oral representations, or presentations of samples or models.

Cases that cite this headnote

[16]  **Sales**
 Operation and Effect

Under California law, language in a written warranty agreement is contractual in the sense that it creates binding, legal obligations on the seller, but a warranty does not impose binding obligations on the buyer.

Cases that cite this headnote

[17]  **Sales**
 Construction, Operation, and Effect in General

Under California law, a warranty generally does not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises.

Cases that cite this headnote

[18]  **Sales**
 Construction, Operation, and Effect in General

Under California law, a condition that must be satisfied before a consumer can enforce a warranty is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself.

Cases that cite this headnote

[19]  **Alternative Dispute Resolution**
 Persons entitled to enforce

Smartphone manufacturer failed to establish that it was third-party beneficiary to customer's agreement with wireless service provider, as would support manufacturer's claim that customer agreed to arbitrate his claims against manufacturer by signing

customer agreement with provider; although agreement included a number of terms governing relationship between customer and provider, including an arbitration provision, manufacturer was not a signatory to agreement, and nothing in agreement referenced manufacturer or any other party.

Cases that cite this headnote

**[20]  Contracts**
   Agreement for Benefit of Third Person

Under California law, the mere fact that a contract results in benefits to a third party does not render that party a third party beneficiary; rather, the parties to the contract must have intended the third party to benefit.

Cases that cite this headnote

**[21]  Alternative Dispute Resolution**
   Constitutional and statutory provisions and rules of court

**Alternative Dispute Resolution**
   Persons affected or bound

The Federal Arbitration Act embodies the national policy favoring arbitration, but the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement. 9 U.S.C.A. § 16.

Cases that cite this headnote

Appeal from the United States District Court for the Northern District of California, James Donato, District Judge, Presiding, D.C. No. 3:14–cv–00582–JD

**Attorneys and Law Firms**

John R. Hurley (argued), Eduardo G. Roy, Daniel C. Quintero, and Jill Dessalines, Prometheus Partners L.L.P., San Francisco, California, for Plaintiff–Appellee.

Sean D. Unger (argued), John P. Phillips, and Ryan C. Nier, Paul Hastings LLP, San Francisco, California, for Defendants–Appellants.

Before: Sidney R. Thomas, Chief Judge, and Carlos T. Bea and Sandra S. Ikuta, Circuit Judges.

**OPINION**

IKUTA, Circuit Judge:

Daniel Norcia filed a class action complaint against Samsung Telecommunications America, LLC, and Samsung Electronics America, Inc., (collectively, "Samsung"), alleging that Samsung made misrepresentations as to the performance of the Galaxy S4 phone. Samsung moved to compel arbitration of the dispute on the ground that an arbitration provision, which was contained in a warranty brochure included in the Galaxy S4 box, was binding on Norcia. We affirm the district court's denial of Samsung's motion.

I

On May 23, 2013, Norcia entered a Verizon Wireless store in San Francisco, California, to purchase a Samsung Galaxy S4 phone. Norcia paid for the phone at the register, and a Verizon Wireless employee provided a receipt entitled "Customer Agreement" followed by the name and address of the Verizon Wireless store. The receipt stated the order location, Norcia's mobile number, the product identification number, and the contract end date. Under the heading "Items," the receipt stated "WAR6002 1 YR. MFG. WARRANTY." Under the heading "Agreement," the receipt included three provisions, including a statement (in all capital letters):

> I agree to the current Verizon Wireless Customer Agreement, including the calling plan, (with extended limited warranty/service contract, if applicable), and other terms and conditions for services and selected features I have agreed to purchase as reflected on the receipt, and which have been presented to me by the sales representative and which I had the opportunity to review.

The receipt also stated (in all capital letters): "I understand that I am agreeing to ... settlement of disputes by arbitration and other means instead of jury trials, and other important terms in the Customer Agreement." The Customer Agreement did not reference Samsung or any other party. Norcia signed the Customer Agreement, and Verizon Wireless emailed him a copy.

 **\*2** After signing the Customer Agreement, Norcia and a Verizon Wireless employee took the Galaxy S4 phone, still in its sealed Samsung box, to a table. The front of the product box stated "Samsung Galaxy S4." The back of the box stated: "Package Contains ... Product Safety & Warranty Brochure." The Verizon Wireless employee opened the box, unpacked the phone and materials, and helped Norcia transfer his contacts from his old phone to the new phone. Norcia took the phone, the phone charger, and the headphones with him as he left the store, but he declined the offer by the Verizon Wireless employee to take the box and the rest of its contents.

The Samsung Galaxy S4 box contained, among other things, a "Product Safety & Warranty Information" brochure. The 101–page brochure consisted of two sections. Section 1 contained a wide range of health and safety information, while Section 2 contained Samsung's "Standard Limited Warranty" and "End User License Agreement for Software." The Standard Limited Warranty section explained the scope of Samsung's express warranty. In addition to explaining Samsung's obligations, the procedure for obtaining warranty service, and the limits of Samsung's liability, the warranty section included the following (in all capital letters):

> All disputes with Samsung arising in any way from this limited warranty or the sale, condition or performance of the products shall be resolved exclusively through final and binding arbitration, and not by a court or jury.

Later in the section, a paragraph explained the procedures for arbitration and stated that purchasers could opt out of the arbitration agreement by providing notice to Samsung within 30 calendar days of purchase, either through email or by calling a toll-free telephone number. It also stated that opting out "will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty." Norcia did not take any steps to opt out.

In February 2014, Norcia filed a class action complaint against Samsung, alleging that Samsung misrepresented the Galaxy S4's storage capacity and rigged the phone to operate at a higher speed when it was being tested. The complaint alleged that these deceptive acts constituted common law fraud and violated California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750–1784), California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200–17210), and California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500–17509). The complaint sought certification of the case as a class action for all purchasers of the Galaxy S4 phone in California. Norcia did not bring any claims for breach of warranty.

Instead of filing an answer to the complaint, Samsung moved to compel arbitration by invoking the arbitration provision in the Product Safety & Warranty Information brochure. The district court denied Samsung's motion. It held that even though Norcia should be deemed to have received the Galaxy S4 box, including the Product Safety & Warranty Information brochure, the receipt of the brochure did not form an agreement to arbitrate non-warranty claims. Samsung timely appealed the district court's order.

 **[1]** **[2]** The district court had jurisdiction under 28 U.S.C. § 1332(d)(2), because the parties satisfied minimal diversity and the amount in controversy exceeded $5 million. We have jurisdiction under the Federal Arbitration Act, 9 U.S.C. § 16. "We review the district court's decision to deny the motion to compel arbitration de novo." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1091 (9th Cir. 2014). "Factual findings are reviewed for clear error, but where no facts are in dispute our entire review is de novo." *Id.* (internal citation omitted).

II

 **\*3** **[3]** "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Therefore, to

evaluate the district court's denial of Samsung's motion to compel arbitration, we must first determine "whether a valid agreement to arbitrate exists." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc). As the party seeking to compel arbitration, Samsung bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996)).

Samsung raises two theories of contract formation to support its argument that Norcia entered into a binding contract with Samsung to arbitrate his claims. First, Samsung claims that the inclusion of the arbitration provision in the Product Safety & Warranty Information brochure created a valid contract between Samsung and Norcia to arbitrate all claims related to the Galaxy S4 phone. Second, Samsung contends that the Customer Agreement signed by Norcia incorporated the terms of its Product Safety & Warranty Information brochure by reference and created a binding contract between Norcia and Samsung.

[4] [5] In analyzing these arguments, we "apply ordinary state-law principles that govern the formation of contracts" to decide whether an agreement to arbitrate exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Here, the parties agree that California law governs the issue of contract formation. In discerning California law, we are bound by the decisions of the California Supreme Court, "including reasoned dicta." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). If the California Supreme Court has not directly addressed the question before us, we must predict how it would decide the issue. See *Glendale Assocs., Ltd. v. NLRB*, 347 F.3d 1145, 1154 (9th Cir. 2003) (internal quotation marks omitted). We generally will "follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it." *Muniz*, 738 F.3d at 219. Applying California law, we address each of Samsung's theories in turn.

A

[6] We first evaluate whether the Product Safety & Warranty Information brochure in the Galaxy S4 box created a binding contract between Norcia and Samsung to arbitrate the claims in Norcia's complaint. Although the brochure is in the form of an express consumer warranty from Samsung to Norcia, the arbitration provision states that arbitration is required not only for "[a]ll disputes with Samsung arising in any way from this limited warranty" but also for all disputes arising from "the sale, condition or performance of the products." Norcia's complaint involves a non-warranty dispute. Thus, our analysis is governed by contract law—not warranty law.

[7] [8] We begin with the basic principles of California contract law. Generally, under California law, "the essential elements for a contract are (1) '[p]arties capable of contracting;' (2) '[t]heir consent;' (3) '[a] lawful object;' and (4) '[s]ufficient cause or consideration.' " *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (alterations in original) (quoting Cal. Civ. Code § 1550). A party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal.App.4th 1042, 1049, 107 Cal.Rptr.2d 645 (2001).

**\*4** [9] "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Cal. Com. Code § 2204(1). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson*, 771 F.3d at 565 (citing *Meyer v. Benko*, 55 Cal.App.3d 937, 942–43, 127 Cal.Rptr. 846 (1976)).

[10] As a general rule, "silence or inaction does not constitute acceptance of an offer." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1385, 25 Cal.Rptr.2d 242 (1993); *see also Sorg v. Fred Weisz & Assocs.*, 14 Cal.App.3d 78, 81, 91 Cal.Rptr. 918 (1970). California courts have long held that "[a]n offer made to another, either orally or in writing, cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on

the part of the offeree into acceptance." *Leslie v. Brown Bros. Inc.*, 208 Cal. 606, 621, 283 P. 936 (1929); *see also* 1 Witkin, Summary of California Law, Contracts § 193 (10th ed. 2005) (collecting California cases).

[11] There are exceptions to this rule, however. An offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty. *Golden Eagle*, 20 Cal.App.4th at 1386, 25 Cal.Rptr.2d 242; *see also Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal.App.2d 650, 655, 4 Cal.Rptr. 543 (1960). For example, in *Gentry v. Superior Court*, an employee signed an "easily readable, one-page form" acknowledging that he would be required to arbitrate all employment-related legal disputes unless he opted out. 42 Cal.4th 443, 468, 64 Cal.Rptr.3d 773, 165 P.3d 556 (2007), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). By signing this agreement, the employee "manifested his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Id.* Therefore, the California Supreme Court held that the employee's failure to act constituted acceptance of the agreement. *Id.*

[12] An offeree's silence may also be treated as consent to a contract when the party retains the benefit offered. *See Golden Eagle*, 20 Cal.App.4th at 1386, 25 Cal.Rptr.2d 242; *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."). In *Golden Eagle*, a couple received a renewal certificate from their insurance company, and retained the benefit of the renewed insurance policy without paying the premium. 20 Cal.App.4th at 1386, 25 Cal.Rptr.2d 242. The court held that in light of the existing relationship between the couple and the insurance company, the couple's retention of the renewal certification was "sufficient evidence of acceptance of the renewal policy" under California law. *Id.* at 1386–87, 25 Cal.Rptr.2d 242.

Even if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 993, 101 Cal.Rptr. 347 (1972). In *Windsor Mills*, a buyer ordered yarn from a supplier, and the supplier acknowledged the order on a printed form which stated "in small print" on the reverse side of the form, "15. Arbitration: Any controversy arising out of or relating to this contract shall be settled by arbitration in the City of New York...." *Id.* at 989–90, 101 Cal.Rptr. 347. The court concluded that the buyer was not bound by this provision because "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 993, 101 Cal.Rptr. 347; *see also Marin Storage*, 89 Cal.App.4th at 1049–50, 107 Cal.Rptr.2d 645 (noting that a party is not bound by a document that "does not appear to be a contract and the terms are not called to the attention of the recipient").

\*5 [13] We now apply these principles of California law to determine whether Norcia engaged in any conduct sufficient to show that he agreed to be bound by the arbitration agreement in the Product Safety & Warranty Information brochure. There is no dispute that Norcia did not expressly assent to any agreement in the brochure. Nor did Norcia sign the brochure or otherwise act in a manner that would show "his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Gentry*, 42 Cal.4th at 468, 64 Cal.Rptr.3d 773, 165 P.3d 556. Under California law, an offeree's inaction after receipt of an offer is generally insufficient to form a contract. *Leslie*, 208 Cal. at 621, 283 P. 936. Therefore, Samsung's offer to arbitrate all disputes with Norcia "cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent," *id.* unless an exception to this general rule applies.

Samsung fails to demonstrate the applicability of any exception to the general California rule that an offeree's silence does not constitute consent. Samsung has not pointed to any principle of California law that imposed a duty on Norcia to act in response to receiving the Product Safety & Warranty Information brochure. *Gentry*, 42 Cal.4th at 468, 64 Cal.Rptr.3d 773, 165 P.3d 556. Nor was there any previous course of dealing between the parties that might impose a duty on Norcia to act. *See Beatty Safway Scaffold*, 180 Cal.App.2d at 655, 4 Cal.Rptr. 543. Moreover, Samsung has not alleged that Norcia retained any benefit by failing to act. *See* Cal. Civ. Code § 1589.

Indeed, the brochure states that Norcia was entitled to "the benefits of the Limited Warranty" regardless whether Norcia opted out of the arbitration agreement.

In the absence of an applicable exception, California's general rule for contract formation applies. Because Norcia did not give any "outward manifestations of consent [that] would lead a reasonable person to believe the offeree has assented to the agreement," *Knutson*, 771 F.3d at 565, no contract was formed between Norcia and Samsung, and Norcia is not bound by the arbitration provision contained in the brochure.

To counter this conclusion, Samsung argues that Norcia was bound by the terms set forth in the brochure because the brochure is analogous to a shrink-wrap license, which we held was enforceable in California, *see Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 782 (9th Cir. 2006), or is analogous to terms included in a box sent to the consumer (referred to here as an "in-the-box" contract), which the Seventh Circuit has held to be enforceable, *see Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997). We consider each of these arguments in turn.

In *Wall Data*, we considered a software manufacturer's claim that a sheriff's department had violated the terms of its shrink-wrap license, click-through license, and volume license booklets, and infringed the manufacturer's copyright, by installing software on 6,007 computers when the department was licensed to install the software on only 3,663 computers. 447 F.3d at 773–75. We defined a "shrink-wrap license" as "a form on the packing or on the outside of the CD–ROM containing the software which states that by opening the packaging or CD–ROM wrapper, the user agrees to the terms of the license." *Id.* at 775 n.4. In connection with upholding an evidentiary ruling by the district court, we stated that such licenses are enforceable in *California, id.* at 782, citing *Lozano v. AT&T Wireless*, 216 F.Supp.2d 1071, 1073 (C.D. Cal. 2002).[1] We did not address the question whether the license created a contract; rather, we held that the sole issue to be resolved at trial was whether the sheriff's department violated the terms of the software licenses, and therefore the district court did not err in declining to provide an instruction on contract formation. *Wall Data,* 447 F.3d at 786.

**\*6** In light of this limited analysis, *Wall Data* at most stands for the proposition that a shrink-wrap license of intellectual property is enforceable in California. This prediction of how California courts would rule is not untenable: Where a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude, consistent with California contract law, that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice. This principle does not help Samsung, however. Even if a license to copy software could be analogized to a brochure that contains contractual terms, the outside of the Galaxy S4 box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure. *Cf. id.* at 775 n.4. Under these circumstances, California's general rule that silence or inaction does not constitute acceptance is binding. Accordingly, *Wall Data* does not support Samsung's argument that Norcia was bound by the brochure contained in the Galaxy S4 box.

**[14]** We next consider Samsung's argument that the Product Safety & Warranty Information brochure is enforceable as an in-the-box contract, as the Seventh Circuit held in *Hill*, 105 F.3d 1147. In *Hill*, consumers ordered a computer over the phone. *Id.* at 1148. When the box arrived, it contained the computer and "a list of terms, said to govern unless the customer return[ed] the computer within 30 days." *Id.* The terms included an arbitration provision. *Id.* The Seventh Circuit stated that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products," *id.* at 1149, and concluded that "[b]y keeping the computer beyond 30 days, the [buyers] accepted [the seller's] offer, including the arbitration clause," *id.* at 1150.[2]

Samsung claims that California courts have adopted the reasoning expressed in *Hill*, citing *Weinstat v. Dentsply International Inc.*, 180 Cal.App.4th 1213, 103 Cal.Rptr.3d 614 (2010). In *Weinstat*, dentists brought an action for breach of express warranty (among other claims) against the manufacturer of a tooth-cleaning device. 180 Cal.App.4th at 1217–18, 103 Cal.Rptr.3d 614. The warranties at issue were contained in an instruction booklet sealed in the box containing the device. *Id.* at 1228, 103 Cal.Rptr.3d 614. The manufacturer argued that such statements were not express warranties because the dentists were not aware of them before they bought the product. *Id.* The court rejected that argument, holding that absent proof to the contrary, any affirmation made by the manufacturer before the delivery of the product to a

consumer, including statements contained in the product box, constituted an express warranty. *Id.* at 1229, 103 Cal.Rptr.3d 614. Although section 2313 of the California Commercial Code provides that express warranties are comprised of affirmations by the manufacturer that become "part of the basis of the bargain," the court stated that the parties' bargain "is distinguishable from the 'contract' " so a manufacturer's affirmations could become "part of the basis of the bargain" for purposes of warranty law even after a contract was formed. *Id.* at 1230, 103 Cal.Rptr.3d 614. Therefore, the dentists could state a cause of action for breach of the express warranties contained in the instruction booklet. *Id.*

Samsung argues that *Weinstat*, read in light of *Hill*, stands for the proposition that terms and conditions included in a brochure in a product box constitute a binding contract between the manufacturer and the consumer. Therefore, Samsung claims, Norcia accepted Samsung's offer contained in the Product Safety & Warranty Information brochure, including the arbitration clause, which became a binding agreement between Norcia and Samsung.

 [15]  [16]  [17]  [18] We disagree. Samsung's reliance on *Weinstat* is misplaced, because it is based on a misunderstanding of the difference between California warranty law and contract law, which are governed by different sets of rules. *Compare* Cal. Com. Code §§ 2201–2210 (governing contract formation), *with* Cal. Com. Code §§ 2313–2317 *and* Cal. Civ. Code §§ 1790–1795.8 (governing the formation of express and implied warranties). A seller is bound by any express warranties given to the buyer, including statements in written warranty agreements, advertisements, oral representations, or presentations of samples or models. *See Keith v. Buchanan*, 173 Cal.App.3d 13, 20, 220 Cal.Rptr. 392 (1985); *see also* 4 Witkin, Summary of California Law, Sales §§ 56–62 (10th ed. 2005). Language in a written warranty agreement is "contractual" in the sense that it creates binding, legal obligations on the seller, *see Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d 118 (2006), but a warranty does not impose binding obligations on the buyer. Rather, warranty law "focuses on *the seller's* behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller in essence agreed to sell." *Weinstat*, 180 Cal.App.4th at 1228, 103 Cal.Rptr.3d 614 (internal quotation marks omitted); *see also* Cal. Com. Code § 2313. A buyer may have to fulfill certain statutory conditions to obtain the benefit of a warranty. *See, e.g.*, Cal. Civ. Code § 1793.02(c) (stating that "[i]f the buyer returns the [assistive device for an individual with a disability] *within the period specified in the written warranty*," the seller must adjust or replace the device (emphasis added)). But a warranty generally does not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises. *Weinstat*, 180 Cal.App.4th at 1228, 103 Cal.Rptr.3d 614 ("[T]he whole purpose of warranty law is to determine what it is that the seller has in essence agreed to sell...." (internal quotation marks omitted)); Cal. Com. Code § 2313(1)(a) (stating that an express warranty is a "promise made by the seller to the buyer which relates to the goods"). A condition that must be satisfied before a consumer can enforce a warranty is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself.

**\*7** *Weinstat* focused on warranty formation under section 2313 of the California Commercial Code, not on contract formation. Accordingly, *Weinstat* did not adopt the rule stated in *Hill*, that statements in a brochure enclosed in a product box create a contract between the seller and consumer that can limit the consumer's rights to bring legal actions against the manufacturer for claims not involving an express warranty. [3]

Samsung also relies on a Second Circuit case, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012), to support its argument that California courts have adopted the reasoning in *Hill* for enforcing in-the-box contracts. In *Schnabel*, the Second Circuit considered a complaint involving defendants who encouraged website visitors to enroll for a free trial period of an entertainment service, and then continued to bill those customers each month if they failed to cancel the service. 697 F.3d at 114–17. The defendants moved to compel arbitration of the complaint. *Id.* at 117. They argued that they had presented an arbitration provision to the customers through a hyperlink on their website, as well as by sending the customers a follow-up email. *Id.* at 113. By failing to cancel the service, the defendants argued, the customers had agreed to be bound by the arbitration provision. *Id.* at 121. In responding to this argument, *Schnabel* noted that some recent cases had held that licenses included in a product box may "become enforceable contracts upon the customer's purchase and receipt of the package and

the failure to return the product after reading, or at least having a realistic opportunity to read, the terms and conditions of the contract included with the product." *Id.* at 122 (citing *Hill*, 105 F.3d at 1150). But even cases applying these principles, *Schnabel* noted, "do not nullify the requirement that a consumer be on notice of the existence of a term before he or she can be legally held to have assented to it." *Id.* at 124. Because the information provided to the customers did not give them inquiry notice of the arbitration provision included in the email, *Schnabel* rejected the defendants' arguments as a matter of both California and Connecticut contract law (without resolving the dispute as to which state's law was applicable). *Id.* at 128.

We used similar reasoning in *Knutson*. See 771 F.3d at 566–67. This case raised the question whether a plaintiff who bought a Toyota vehicle that included a 90–day trial subscription to a satellite radio service was bound by a customer agreement in a "Welcome Kit" that he received a month later from the radio service. *Id.* at 561–62. Applying California law, we held that the plaintiff was not bound because a reasonable person in the plaintiff's position would not understand that receiving the Welcome Kit and failing to cancel the trial subscription to the radio service constituted assent to the arbitration provision. *Id.* at 565. We rejected the defendant's argument that its customer agreement was a valid shrink-wrap agreement, holding that while "a party cannot avoid the terms of a contract by failing to read them before signing," *id.* at 567, no contract is formed "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient," *id.* (quoting *Marin Storage*, 89 Cal.App.4th at 1049–50, 107 Cal.Rptr.2d 645).

**\*8** Neither *Schnabel* nor *Knutson* held that California courts enforce in-the-box contracts. Rather, they concluded that even if a customer may be bound by an in-the-box contract under certain circumstances, such a contract is ineffective where the customer does not receive adequate notice of its existence. Even under this analytic approach, Samsung's arguments would fail. In this case, Samsung gave a brochure entitled "Product Safety & Warranty Information." Such a brochure indicates that it contains safety information and the seller's warranty, which constitutes the seller's "affirmation of fact[s] or promise" relating to the Galaxy S4 phone. Cal. Com. Code § 2313(1)(a). A reasonable person in Norcia's position would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty. Nor would a reasonable person understand that receiving the seller's warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty. Because "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious," *Windsor Mills, Inc.*, 25 Cal.App.3d at 993, 101 Cal.Rptr. 347, Norcia was not bound by the arbitration provision even if the in-the-box contract were otherwise enforceable under California law. [4]

In the absence of support from California courts, Samsung urges us to conclude, as the Seventh Circuit did in *Hill*, that the practicalities of consumer transactions require the enforcement of in-the-box contracts and that consumers expect that products will come with additional terms. We decline this request. Even if we were persuaded by Samsung's argument, "the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state." *Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 71, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (1998). If the California Legislature believes that its current commercial code fails to strike an appropriate balance between consumer expectations and the burden on commerce, it can amend the law.

Because California courts have not adopted the principle set forth in *Hill*, but have made clear that silence alone does not constitute assent, *see Golden Eagle*, 20 Cal.App.4th at 1385, 25 Cal.Rptr.2d 242, we reject Samsung's argument that Norcia reasonably assented to the arbitration provision because he failed to opt out of the arbitration provision contained in the product box. Under the circumstances in this case, we conclude that Samsung's inclusion of a brochure in the Galaxy S4 box, and Norcia's failure to opt out, does not make the arbitration provision enforceable against Norcia.

B

[19] We next turn to Samsung's second argument, that Norcia agreed to arbitrate his claims by signing the Customer Agreement with Verizon Wireless. This argument is meritless.

The Customer Agreement is an agreement between Verizon Wireless and its customer. Samsung is not a signatory. While the agreement itself includes a number of terms governing the relationship between Norcia and Verizon Wireless, including an arbitration provision, nothing in the agreement references Samsung or any other party.

[20] Samsung argues that it may enforce the arbitration agreement because it is a third-party beneficiary of the agreement between Verizon Wireless and Norcia. Under California law, "[t]he mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary' "; rather, the parties to the contract must have intended the third party to benefit. *Matthau v. Superior Court*, 151 Cal.App.4th 593, 602, 60 Cal.Rptr.3d 93 (2007); *see also Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524, 117 Cal.Rptr.2d 220, 41 P.3d 46 (2002); 1 Witkin, Summary of California Law, Contracts § 689 (10th ed. 2005). In this case, Samsung does not point to any evidence in the record indicating that Norcia and Verizon Wireless intended the Customer Agreement to benefit Samsung. Therefore, we conclude that Samsung fails to bear its burden of establishing that it was a third-party beneficiary.

## III

**\*9** [21] The Federal Arbitration Act "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). But the "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis omitted); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so...."). Because Samsung failed to carry its burden of proving the existence of a contract with Norcia to arbitrate as a matter of California law, the district court did not err in denying Samsung's motion to compel arbitration.

**AFFIRMED**.

**All Citations**

--- F.3d ----, 2017 WL 218027

## Footnotes

1    Our unreasoned conclusion that California courts would enforce a shrink-wrap license is not free from doubt. *Lozano* did not cite any California cases and has since been vacated. *See Lozano v. AT&T Wireless*, No. CV02–00090WJRAJWX, 2003 WL 25548566, at \*1 (C.D. Cal. Aug. 18, 2003). We have found no California case addressing this issue, and Samsung has cited none.

2    *Hill* did not determine which state's law applied to contract formation; nor did it cite the law of any state. 105 F.3d at 1149. Rather, the Seventh Circuit appeared to provide its own view of the Uniform Commercial Code. *Id.*

3    Under *Weinstat*, Samsung may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty contained in the Product Safety & Warranty Information brochure, but we need not consider the enforceability of any such limitation because Norcia has not brought any warranty claims against Samsung.

4    Samsung also cites *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), to support its argument that California courts recognize in-the-box contracts. But *Murphy* is inapposite. *Murphy* held that plaintiffs waived their argument that they had not assented to an arbitration provision contained in a customer agreement; therefore we provided no analysis of the elements required for a contract to be enforceable under California law. *Id.* at 1225 n.4. Absent such explanation, *Murphy*'s dicta that the district court correctly concluded that plaintiffs had received the customer agreement, accepted defendant's services, and were bound by the terms of the contract, does not provide guidance in this case.

---

**End of Document**     © 2017 Thomson Reuters. No claim to original U.S. Government Works.