Daniel M. Petrocelli (Bar No. 97802)
Randall Oppenheimer (Bar No. 77649)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
dmarroso@omm.com

Robyn E. Bladow (Bar No. 205189)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Tammy A. Tsoumas (Bar No. 250487)
Jonathan J. Faria (Bar No. 274019)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
tammy.tsoumas@kirkland.com
jonathan.faria@kirkland.com

*Attorneys for Defendants DIRECTV, LLC and*
*DIRECTV Holdings LLC*

*[additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-PSG (JEMx) |
| | **MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| | Judge: Hon. Philip S. Gutierrez |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Consolidated Amended Complaint Filed: June 24, 2016 |
| | Date:       April 19, 2021 |
| | Time:       1:30 p.m. |
| | Courtroom:  6A |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ..................................................................................2

    A.    The Agreements' Clear and Capacious Arbitration Provisions...................................................................................3

          1.    Residential agreements....................................................3

          2.    Commercial agreements ..................................................6

    B.    Each Plaintiff's Clear Acceptance of the Arbitration Provisions...................................................................................8

          1.    Plaintiff Robert Gary Lippincott ...................................8

          2.    Plaintiff Michael Holinko................................................9

          3.    Plaintiff Gael Pub..........................................................10

          4.    Plaintiff The Mucky Duck..............................................12

    C.    Procedural Background..........................................................12

III.  ARGUMENT .....................................................................................14

    A.    The Valid Arbitration Agreements Unambiguously Cover Plaintiffs' Claims. ...............................................................14

    B.    Plaintiffs Have No Valid Defenses. ......................................18

IV.  CONCLUSION...................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ................................................................ 18

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................ 1, 15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................. 2

*Augustine v. TLC Resorts Vacation Club, LLC*,
  2018 WL 3913923 (S.D. Cal. Aug. 16, 2018) ........................... 16

*Bassett v. Elec. Arts Inc.*,
  2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ............................. 16

*Brown v. DIRECTV, LLC*,
  2019 WL 6604879 (C.D. Cal. Aug. 5, 2019) ............................ 15

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) .................................... 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ..................................... 14, 16, 17

*Cordoba v. DIRECTV, LLC*,
  801 F. App'x 723 (11th Cir. Feb. 19, 2020) ............................. 15

*DIRECTV, Inc. v. Imburgia*,
  577 U.S. 47 (2015) ................................................................. 15

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
  2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ........................... 17

*Ferrie v. DirecTV, LLC*,
  2016 WL 183474 (D. Conn. Jan. 12, 2016) ............................. 15

*Fisher v. A.G. Becker Paribas Inc.*,
  791 F.2d 691 (9th Cir. 1986) .................................................. 18

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................... 2

*Heller v. Rasier, LLC*,
  2020 WL 413243 (C.D. Cal. Jan. 7, 2020) .............................. 14

*Hodsdon v. DIRECTV, LLC,*
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012)............................................. 15

*Lamps Plus, Inc. v. Varela,*
  139 S. Ct. 1407 (2019) ................................................................................. 1

*Laster v. T-Mobile USA, Inc.,*
  2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ........................................... 17

*Lombardi v. DirecTV, Inc.,*
  549 F. App'x 617 (9th Cir. 2013) .............................................................. 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................. 16, 19

*Murphy v. DirecTV, Inc.,*
  724 F.3d 1218 (9th Cir. 2013) ............................................................ 14, 15

*Stachurski v. DirecTV, Inc.,*
  642 F. Supp. 2d 758 (N.D. Ohio 2009)...................................................... 15

*Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.,*
  2015 WL 13546433 (C.D. Cal. Oct. 29, 2015).......................................... 19

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.,*
  46 F. App'x 412 (9th Cir. 2002)................................................................. 17

*United Steelworkers v. Warrior & Gulf Nav. Co.,*
  363 U.S. 574 (1960) ..................................................................................... 2

**Statutes**

9 U.S.C. § 2............................................................................................... 16

9 U.S.C. § 3................................................................................................. 2

9 U.S.C. § 4................................................................................................. 1

15 U.S.C. § 1............................................................................................. 13

15 U.S.C. § 2............................................................................................. 13

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................. 1

iii

## <u>INDEX OF DECLARATIONS SUPPORTING DIRECTV'S MOTION</u>

1.      Declaration of Nancy Fossey (filed concurrently)

2.      Declaration of John Gardner (Dkt. 171-2)

3.      Declaration of Michelle Harris (Dkt. 171-5)

4.      Declaration of Alisa Kellogg (filed concurrently)

5.      Declaration of Julianne Lusain (Dkt. 171-33)

6.      Declaration of Amanda Mitchell (Dkt. 171-35)

7.      Declaration of Steven Mullins (Dkt. 171-44)

8.      Declaration of Kyle Wells (Dkt. 171-48)

9.      Declaration of Carine Yahinian (Dkt. 171-59)

**MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## I.    INTRODUCTION

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1412 (2019); *accord, e.g., AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011); *see* 9 U.S.C. §§ 2-4. That longstanding principle lights the way here. Each Plaintiff in this case wants to challenge the terms of DIRECTV's NFL Sunday Ticket® sports programming package. But each has an agreement with DIRECTV that requires all disputes relating to DIRECTV's programming to be resolved via individual arbitration. The Court should enforce the terms of those agreements, grant DIRECTV's motion, and compel Plaintiffs to arbitrate their individual disputes as their agreements require.

DIRECTV originally moved to compel arbitration of each Plaintiff's individual dispute (and to stay the claims against it in the meantime) when Plaintiffs filed their consolidated complaint in August 2016, *see* Dkt. 171, but Judge O'Connell did not rule on that motion. Rather, the NFL Defendants, who do not have a contract with Plaintiffs and thus do not have an arbitrability defense, moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Judge O'Connell granted that motion, so there was nothing left for DIRECTV to arbitrate. *See* Dkt. 251 at 38 (denying DIRECTV's motion to compel as moot).

Now that the Ninth Circuit has reversed Judge O'Connell's decision on the NFL Defendants' motion to dismiss and the Supreme Court has denied certiorari (with Justice Kavanaugh writing separately to note that Plaintiffs' claims are likely to fail), the issue of whether to compel Plaintiffs to submit to arbitration is not only live, but front-and-center. And the proper resolution of that issue could not be clearer. The Supreme Court has long held that "where [a] contract contains an arbitration

**MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (second alteration in original) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Here, each Plaintiff's agreement with DIRECTV unambiguously requires all disputes with DIRECTV to be submitted to arbitration. This Court should give effect to the plain terms of those agreements and grant DIRECTV's renewed motion to compel arbitration and to stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending resolution of arbitration); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

## II.   BACKGROUND

As is typical in the industry, subscribing to DIRECTV television programming services comes with certain written terms and conditions. For individual customers, those terms and conditions are primarily contained in a Residential Customer Agreement; for business customers, they are primarily contained in a Commercial Customer Agreement. *See* Decl. of Alisa Kellogg ¶ 3; Dkt. 171-35 (Decl. of Amanda Mitchell) ¶ 2.[1] Each Plaintiff here—Robert Lippincott, Michael Holinko, Gael Pub, and The Mucky Duck—had DIRECTV Customer Agreements at all relevant times. Each was apprised of the terms and conditions associated with

---

[1] All declarations cited in this memorandum were either filed in support of DIRECTV's August 2016 Motion to Compel Arbitration and Stay Proceedings (Dkt. 171) and detailed the relevant facts as of the date of their filing, or they have been updated as appropriate and are filed concurrently with this renewed motion. For reference, the declarations (and docket cites) are listed alphabetically on page iv.

**MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

receiving DIRECTV television service multiple times in multiple ways. And each of their agreements explicitly provides that the disputes Plaintiffs are trying to litigate here must be decided in individual arbitration, not in a class action in federal court.

### A. The Agreements' Clear and Capacious Arbitration Provisions

#### 1. Residential agreements

Residential customers are required to submit their disputes with DIRECTV to individual arbitration under the clear terms of their agreements with DIRECTV. The very first paragraphs of DIRECTV's Residential Customer Agreement highlight, in bold and capital letters, that the Agreement includes an arbitration provision, and that, by deciding to receive DIRECTV's service, the customer accepts the Agreement's terms:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV® SERVICE.** THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS (SEE SECTION 8), AND ALSO LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE (SEE SECTION 7).
>
> …
>
> **IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR ORDER OR SERVICE SUBJECT TO APPLICABLE CANCELLATION TERMS AND/OR**

**FEES (SECTION 5). IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

Fossey Decl., Ex. 4, Intro (2017 Residential Customer Agreement).

Section 8 of the Agreement, to which the introduction refers, is entitled "**DISPUTE RESOLUTION BY BINDING ARBITRATION.**" *Id.* § 8 (bold and capitalization in original). It makes clear that, by agreeing to the terms of the agreement, "DIRECTV and you agree to arbitrate **all disputes and claims** between us." *Id.* § 8.2 (emphasis in original). And it provides the term of that agreement in considerable detail.

First, Section 8.1 summarizes the arbitration provision's terms:

> **In the unlikely event that DIRECTV's customer service department is unable to resolve a complaint you may have to your satisfaction (or if DIRECTV has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction. . . . Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**

*Id.* § 8.1 (emphasis in original).

Section 8.2 continues by explaining that the arbitration agreement is "intended to be broadly interpreted" and includes, but is not limited to, "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or

4

1  any other legal theory." *Id.* The agreement expressly covers existing

2  disputes and "claims that arose before this or any prior Agreement" and

3  "claims that are currently the subject of purported class action litigation in

4  which you are not a member of a certified class." *Id.* It also explains the

5  meaning of the agreement to arbitrate (again, in bold type): "**You agree**

6  **that, by entering into this Agreement, you and DIRECTV are each**

7  **waiving the right to a trial by jury or to participate in a class**

8  **action**." *Id.* (bold in original).

9      The arbitration agreement provides that DIRECTV will pay all

10  arbitration costs (*id.* § 8.2(3)); that all individual remedies available in

11  court are available in arbitration (*id.* § 8.1); that any hearing will be

12  conducted in the customer's home town (*id.* § 8.2(3)); that disputes will be

13  governed by the customer's home state's laws and applicable federal laws

14  (*id.* § 9(b)); that such arbitration is governed by the FAA (*id.* § 8.2(1)); that

15  attorneys' fees are available to a prevailing customer (*id.* §§ 8.1, 8.2(4)-(5));

16  and that the customer may proceed in small claims court as an alternative

17  to arbitration (*id.* §§ 8.1, 8.2(1)). It provides that if the arbitrator finds in

18  the customer's favor for an amount greater than the last settlement

19  amount offered by DIRECTV, then DIRECTV will "pay you the amount of

20  the award or $10,000 . . . whichever is greater," and twice the amount of

21  attorneys' fees, along with reasonable expenses. *Id.* § 8.2(4).

22      And, finally, the agreement reiterates that arbitration will proceed

23  on an individual basis: "**YOU AND DIRECTV AGREE THAT EACH**

24  **MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR**

25  **ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR**

26  **CLASS MEMBER IN ANY PURPORTED CLASS OR**

27

28

MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS

**REPRESENTATIVE PROCEEDING**." *Id.* § 8.2(6) (bold and capitalization in original).[2]

### 2. Commercial agreements

Commercial customers are also required to submit their disputes relating to DIRECTV's programming to individual arbitration under the clear terms of their agreements with DIRECTV. Like the Residential Customer Agreement, the very first paragraph of the Commercial Customer Agreement highlights, in bolded capital letters, that the Agreement includes an arbitration provision, and that the customer accepts the Agreement's terms by deciding to receive DIRECTV's service. The Commercial Customer Agreement opens by emphasizing that the Agreement is "**SUBJECT TO ARBITRATION**" and directing Plaintiffs to Section 10, the arbitration provision. *See* Kellogg Decl., Ex. 16, Intro (2017 Customer Commercial Agreement). Section 10 is entitled "**RESOLVING DISPUTES**" and leads with the standalone statement, "**PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS**." *Id.* § 10 (bold and capitalization in original). Section 10 then describes the arbitration provision in the same language as the Residential Customer Agreement. *See id.* § 10.1 (agreeing to resolve disputes "through binding arbitration or small claims court" and providing that "the same damages and relief that

---

[2] DIRECTV's separate Equipment Lease Agreement ("ELA"), which comes with the physical equipment DIRECTV provides, contains similar terms that are provided in a similar format. The first paragraph of the ELA states that "[t]he Customer Agreement, together with this ELA, comprise the terms of your service agreement with DIRECTV." Dkt. 171-48 (Decl. of Kyle Wells), Ex. 7. The ELA also informs customers that both the Customer Agreement and ELA can be reviewed online at www.directv.com/legal. *See id.* And under the heading "**ARBITRATION**," the ELA confirms the parties' agreement to arbitrate their disputes, as set forth in the Customer Agreement. *Id.* ("You and DIRECTV agree that both parties will resolve any dispute under this ELA, the DIRECTV Customer Agreement, or regarding your DIRECTV service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.").

a court can award" are available in arbitration, that arbitration "will take place on an individual basis" and "class arbitrations and class actions are not permitted," that DIRECTV will pay all costs, and that attorneys' fees are available to the customer to the same extent as they would be in court); § 10.2(a) ("**You agree that, by entering into this Agreement, you and DIRECTV are each waiving the right to a trial by jury or to participate in a class action.**" (emphasis in original)).

Like the Residential Agreement, the Commercial Agreement makes clear that its arbitration provision applies broadly to "**all disputes and claims** between [DIRECTV and the customer]," including, but not limited to, "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." *Id.* (emphasis in original). The agreement goes on to clarify that it expressly covers existing disputes and "claims that arose before this or any prior Agreement" and "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." *Id.* It also reiterates in bold, capitalized emphasis that the customer and DIRECTV may only bring claims in their "**INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING**." *Id.* § 10.2(f) (bold and capitalization in original).

Lastly, and also like the Residential Agreement, the Commercial Agreement provides that DIRECTV will pay all arbitration costs (*id.* § 10.1); that all remedies available to the individual commercial customer in court, including recovery of attorneys' fees, are also available (*id.*); that any hearing will take place in the commercial customer's home town area (*id.* § 10.2(c)); that disputes will be governed by the customer's home

state's laws and applicable federal laws (*id.* § 10(b)); that the customer may proceed in small claims court as an alternative to arbitration (*id.* §§ 10.1, 10.2); and that, if the arbitrator finds in the customer's favor for an amount greater than DIRECTV's last settlement offer, then the customer will receive the greater of the amount of award or $10,000, as well as twice the amount of attorneys' fees, along with reasonable expenses (*id.* § 10.2(d)).

In addition, DIRECTV billing statements remind commercial customers each billing period not only that "[t]he Commercial Viewing Agreement describes the terms and conditions upon which you accept our service," but specifically that disputes will be resolved "through binding arbitration, as provided in the Commercial Viewing Agreement." *See* Kellogg Decl. ¶ 41, Exs. 19-21 (examples of Gael Pub's billing statements); *id.* ¶ 48, Exs. 23-25 (examples of The Mucky Duck's billing statements).

## B.   Each Plaintiff's Clear Acceptance of the Arbitration Provisions

Each Plaintiff here entered into their respective Customer Agreements with eyes open.

### 1.   Plaintiff Robert Gary Lippincott

Mr. Lippincott, of Healdsburg, California, was a residential DIRECTV customer for more than ten years. During that time he received and accepted the DIRECTV Residential Customer Agreement, as updated, on multiple occasions.[3] He received the updated December 2017

---

[3] *See* Decl. of Nancy Fossey ¶¶ 3-7, 10-11, Exs. 1-4 (March 2017 and December 2017 Residential Customer Agreements); Dkt. 171-5 (Decl. of Michelle Stratton Harris) ¶ 5, Ex. 2 (2016 Agreement); Dkt. 171-35 ¶ 14, Exs. 4, 6, 8 (2013, 2014, and 2015 Agreements); Dkt. 171-33 (Decl. of Julianne Lusain) ¶ 7, Ex. 1 (2012 Agreement); Kellogg Decl. ¶ 13, Ex. 1 (2011 Agreement); Dkt. 171-59 (Decl. of Carine Yahinian) ¶ 12, Ex. 1 (2010 Agreement).

Residential Customer Agreement on December 1, 2017. Fossey Decl. ¶ 6,
10-11, Exs. 3-4. And he also signed and agreed to the terms of the
DIRECTV ELA. *See, e.g.*, Dkt. 171-48 ¶ 18, Ex. 6 (Lippincott signature
capture for 2012), Ex. 7 (2012 ELA).

DIRECTV notified Mr. Lippincott of the Customer Agreement and its
arbitration provision in many other ways too throughout Mr. Lippincott's
years as a DIRECTV subscriber. *See, e.g.*, Fossey Decl. ¶ 12, Ex. 5 (Aug.
13, 2018 order confirmation reminding Mr. Lippincott to "**Review your
customer agreement**," providing a link thereto, and specifying key
terms, including that "any dispute arising under or relating to your
agreements or service with DIRECTV . . . will be resolved through binding
arbitration as fully set forth in your DIRECTV Customer Agreement"
(emphasis in original)); Dkt. 171-59 ¶ 13, Ex. 2 (July 2, 2012 order
confirmation with same language); Kellogg Decl. ¶ 16, Exs. 2, 3, 4
(examples of monthly billing statements reminding Mr. Lippincott that
"[y]our Customer Agreement describes the terms and conditions upon
which you accept our service. Please consult your Customer Agreement,
which is also available at directv.com/agreement" and that disputes "may
be resolved only through binding arbitration, as provided in the Customer
Agreement"). The terms of the Residential Customer Agreement were also
available to review at any time at www.directv.com/legal. Mr. Lippincott
canceled his DIRECTV service only recently, in August 2020, four years
after filing this lawsuit. Fossey Decl. ¶ 11.

### 2.   Plaintiff Michael Holinko

Mr. Holinko, of Belle Mead, New Jersey, has been a residential
DIRECTV customer since 1998, during which time he received and
accepted the residential DIRECTV Customer Agreement on at least

9

sixteen occasions.[4] Mr. Holinko received the updated December 2017 Customer Agreement on December 1, 2017. Fossey Decl. ¶¶ 6-8. Like Mr. Lippincott, when Mr. Holinko received his initial Customer Agreement and any updated Customer Agreement, he opted to continue receiving DIRECTV's service, thereby manifesting assent to the terms. *See* Kellogg Decl. ¶ 27; Dkt. 171-35 ¶ 17.

Also like Mr. Lippincott, Mr. Holinko received additional notifications and reminders about the Customer Agreement and the arbitration provision. *See, e.g.*, Dkt. 171-59 ¶ 15, Ex. 3 (Sept. 22, 2013 order confirmation) ("You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV . . . will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement."); *id.* ¶ 16, Ex. 4 (Oct. 21, 2013 order confirmation) (same); Kellogg Decl. ¶ 29, Exs. 13, 14, 15 (examples of monthly billing statements noting that Customer Agreement contains terms and conditions of DIRECTV service, where to find it online, and that disputes will be resolved in arbitration).

### 3.   Plaintiff Gael Pub

Gael Pub, a bar and restaurant with multiple locations in New York City, was a commercial DIRECTV customer for almost 13 years. During that time it received and accepted the DIRECTV commercial customer agreement on multiple occasions.[5] Gael Pub most recently received the

---

[4] *See* Fossey Decl. ¶¶ 3-9, Exs. 1-4 (March 2017 and December 2017 Agreements); Dkt. 171-5 ¶ 7, Ex. 2 (2016 Agreement); Dkt. 171-35 ¶ 16, Exs. 2, 4, 6, 8 (2012, 2013, 2014, and 2015 Agreements); Kellogg Decl. ¶¶ 17-26, Exs. 1, 5, 6, 7, 8, 9, 10, 11, 12 (1997, 1999, 2001, 2004, 2006, 2007, 2009, 2010, and 2011 Agreements); Dkt. 171-59 ¶ 14.

[5] *See* Kellogg Decl. ¶¶ 33-37, 40, Ex. 16 (2017 Commercial Customer Agreement); *id.* ¶¶ 38-40, Ex. 17 (2014 Agreement); Dkt. 171-44 (Decl. of

updated 2017 Agreement, and its updated version of the arbitration provision, in May 2017. Kellogg Decl. ¶¶ 33-37. Upon receiving its initial Commercial Customer Agreement, and then each updated agreement, Gael Pub had the opportunity to reject the terms by canceling its services. For more than a decade, Gael Pub never sought to cancel its service after receiving an updated agreement, and instead accepted each agreement, including the updated May 2017 Agreement, by continuing to receive DIRECTV's service. *See id.* ¶ 40; Dkt. 171-44 ¶ 6; 171-2 ¶ 6. (Gael Pub canceled its DIRECTV service in June 2019, nearly three years after filing this lawsuit. Kellogg Decl. ¶ 39.)

Gael Pub has also received reminders in its monthly DIRECTV billing statements that "The Commercial Viewing Agreement describes the terms and conditions upon which you accept our service" and that disputes will be resolved "through binding arbitration, as provided in the Commercial Viewing Agreement." *See* Kellogg Decl. ¶ 40, Exs. 19, 20, 21 (examples of Gael Pub's billing statements). In addition, Gael Pub received an order confirmation e-mail in October 2015 reminding it (in bold) to "**[r]eview your customer agreements**," with hyperlinks to the Commercial Customer Agreement and to a list of key terms and conditions, including that any dispute must be resolved in binding arbitration as set forth in the Customer Agreement. Dkt. 171-59 ¶ 17, Exs. 5 (Oct. 2015 order confirmation), 6 (link at "View Agreements"), 7 (link at "View Terms & Conditions"). And, as with the Residential Agreement, the Commercial Agreement was available to review at any time at www.directv.com/legal.

---

Steven Mullins) ¶ 6, Exs. 1, 2 (2009 Agreement); Dkt. 171-2 (Decl. of John Gardner) ¶ 6, Exs. 1, 2 (2006 and 2008 Agreements).

MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

### 4.   Plaintiff The Mucky Duck

The Mucky Duck, a sports bar in San Francisco, California, has been a commercial DIRECTV customer for over twenty-four years. During that time it received and accepted the DIRECTV Commercial Customer Agreement on multiple occasions.[6] Like Gael Pub, The Mucky Duck most recently received the updated 2017 Commercial Customer Agreement, and updated arbitration provision, in May 2017. Kellogg Decl. ¶¶ 41-44, Ex. 16 (2017 Commercial Customer Agreement). Also like Gael Pub, The Mucky Duck decided to continue accepting DIRECTV service when it received the updated agreement in May 2017, just as it had since 1996. Id. ¶ 47.

The Mucky Duck's monthly DIRECTV billing statements also remind it that "The Commercial Viewing Agreement describes the terms and conditions upon which you accept our service" and that disputes will be resolved "through binding arbitration, as provided in the Commercial Viewing Agreement." See Kellogg Decl. ¶ 48, Exs. 23, 24, 25 (examples of The Mucky Duck's billing statements). And on August 26, 2015, when it added the Big Ten Network to its DIRECTV service, The Mucky Duck received an order confirmation e-mail that advised it to "**[r]eview your customer agreements**" and included a hyperlink to The Mucky Duck's current Commercial Customer Agreement and key terms and conditions, including arbitration. Dkt. 171-59 ¶ 18, Exs. 8 (Aug. 26, 2015 order confirmation), 6 (link at "View Agreements"), 7 (link at "View Terms & Conditions"). The Mucky Duck remains a DIRECTV subscriber to this day.

### C.   Procedural Background

Plaintiffs filed their consolidated amended complaint on June 24,

---

[6] See Kellogg Decl. ¶¶ 41-44, Ex. 16 (2017 Commercial Customer Agreement); id. ¶ 45, Ex. 17 (2014 Agreement); Dkt. 171-2 ¶ 7; Dkt. 171-44 ¶ 6, Exs. 1, 2 (2009 Agreement).

1   2016, challenging DIRECTV's decades-old exclusive agreements with the

2   NFL to sell its NFL Sunday Ticket® sports programming package and

3   asserting claims under Sections 1 and 2 of the Sherman Act. *See* Dkt. 163.

4   In response, DIRECTV immediately moved to compel arbitration and stay

5   proceedings (Dkt. 171), and the NFL Defendants moved to dismiss (Dkt.

6   170). On June 30, 2017, Judge O'Connell granted the NFL Defendants'

7   motion to dismiss, but did not reach the merits of DIRECTV's arbitration

8   motion, instead concluding that DIRECTV's motion was moot based on her

9   finding that Plaintiffs' complaint did not state a claim upon which relief

10  could be granted. Dkt. 251 at 38.

11       Plaintiffs appealed. Rather than file a brief of its own, DIRECTV

12  filed a short joinder noting that it supported the NFL Defendants'

13  arguments, but making clear that it was "reserving all rights to renew the

14  arbitration motion if necessary." Joinder of DIRECTV Defendants at 2, *In

15  re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, No. 17-56119

16  (9th Cir. Apr. 6, 2018). The Ninth Circuit ultimately reversed Judge

17  O'Connell's decision. *See In re Nat'l Football League's Sunday Ticket

18  Antitrust Litig., 933 F.3d 1136 (9th Cir. 2019)*. Pursuant to the NFL

19  Defendants' motion, the Ninth Circuit stayed the issuance of its mandate

20  pending the outcome of a petition for certiorari to the Supreme Court.

21  Order, *id.*, No. 17-56119 (9th Cir. Oct. 16, 2019).

22       The NFL Defendants, joined by DIRECTV, petitioned the Supreme

23  Court for a writ of certiorari; as it did on appeal, DIRECTV expressly

24  reserved its right to renew its motion to compel arbitration in the event

25  Plaintiffs' complaint was resurrected. *See* Pet. for Writ of Cert. at 9 n.1,

26  *Nat'l Football League v. Ninth Inning, Inc.*, No. 19-1098 (U.S. Feb. 7,

27  2020). The Supreme Court denied the petition, with Justice Kavanaugh

28

13

issuing a Statement respecting the denial, noting that while "the interlocutory posture is a factor counseling against this Court's review at this time," "antitrust law likely does not require that the NFL and its member teams compete against each other with respect to television rights." Statement Respecting Denial of Cert., *id.*, 2020 WL 6385695 (U.S. Nov. 2, 2020).

Following the issuance of the Supreme Court's mandate, jurisdiction returned to this Court. Pursuant to the briefing schedule on which Plaintiffs and DIRECTV agreed, DIRECTV now renews its motion to compel arbitration and stay proceedings.

## III.   ARGUMENT

"The court's role under the [FAA] is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Both requirements are met here.

### A.   The Valid Arbitration Agreements Unambiguously Cover Plaintiffs' Claims.

As explained above, the existence of the arbitration clauses in each of Plaintiffs' agreements here is a matter of indisputable fact, as is the fact that each agreement is governed by the FAA.

Plaintiffs' acceptance of the terms of those agreements cannot reasonably be disputed either. The Ninth Circuit has held that DIRECTV customers who continue to accept service upon receiving the Customer Agreement become parties to the Customer Agreement and are bound by its terms, including its arbitration provision. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013) (confirming that continuing to accept DIRECTV's services after receiving the agreement bound customers

to the terms of the contract); *cf. Heller v. Rasier, LLC*, 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms."). And, as explained, each individual Plaintiff accepted the terms contained in DIRECTV's Residential Agreement, including its arbitration provision, time and time again, *see* Dkt. 171-5 ¶¶ 5-8; Dkt. 171-35 ¶¶ 14-17; Dkt. 171-33 ¶ 7; Kellogg Decl. ¶¶ 13-14, 17-26; *see also* Fossey Decl. ¶¶ 3-11, Exs. 1-4 Intro., § 8, and each commercial Plaintiff did the same vis-à-vis the Commercial Agreement, including its arbitration provision, too, *see* Kellogg Decl. ¶¶ 33-39, 41-45, 47, Ex. 16 Intro, § 10.2.

Nor is there any question about validity of the arbitration provisions at issue here, which have consistently been upheld—including, most notably, by the Supreme Court and the Ninth Circuit. *See, e.g., DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 49-50, 58-59 (2015); *Murphy*, 724 F.3d at 1225; *Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 618-20 (9th Cir. 2013); *see also Concepcion*, 563 U.S. at 344 (finding enforceable AT&T arbitration provision that is substantively identical to Plaintiffs' agreements with DIRECTV).[7] That is unsurprising, as the DIRECTV arbitration agreements are the industry gold standard. DIRECTV agrees to pay all arbitration costs; that any arbitration hearing will be conducted in the customer's home town and will be governed by the customer's home state's laws (and applicable federal laws); that attorneys' fees are available to a

---

[7] *See also, e.g., Cordoba v. DIRECTV, LLC*, 801 F. App'x 723, 724-26 (11th Cir. Feb. 19, 2020); *Brown v. DIRECTV, LLC*, 2019 WL 6604879, at *6-8 (C.D. Cal. Aug. 5, 2019); *Ferrie v. DirecTV, LLC*, 2016 WL 183474, at *12 (D. Conn. Jan. 12, 2016); *Hodsdon v. DIRECTV, LLC*, 2012 WL 5464615, at *4-7 (N.D. Cal. Nov. 8, 2012); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009).

15

prevailing customer; that the customer may proceed in small claims court as an alternative; and that the customer will receive at least $10,000 as an award (and twice the amount of attorneys' fees, along with reasonable expenses) in the event the arbitrator finds in the customer's favor for an amount greater than DIRECTV's last settlement offer. *See* pp. 5-8, *supra*.

The only question, then, is "whether the agreement[s] encompass[] the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130; *see* 9 U.S.C. § 2. They do. Indeed, it is not even a close call.

Given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). But there are no doubts here. The arbitration provisions in both the Residential Customer Agreement and the Commercial Customer Agreement extend to "**all disputes and claims** between us." Fossey Decl. Ex. 4 § 8.2(1) (emphasis in original); Kellogg Decl., Ex. 16 § 10.2(a) (same language). And as many courts have held, such language must be interpreted broadly to effectuate the purposes underlying the FAA. *See, e.g.*, *Augustine v. TLC Resorts Vacation Club, LLC*, 2018 WL 3913923, at *8 (S.D. Cal. Aug. 16, 2018); *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *5 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013). On that basis alone, the question of whether Plaintiffs' disputes about their NFL Sunday Ticket sports programming service fall within the scope of their arbitration agreements is not a close one.

There is more. Each Plaintiff's Agreement expressly extends to "claims that arose before this or any prior Agreement" and "claims that are currently the subject of purported class action litigation in which you are

16

1  not a member of a certified class." Fossey Decl. Ex. 4 § 8.2(1); Kellogg
2  Decl., Ex. 16 § 10.2(a); *see also Laster v. T-Mobile USA, Inc.*, 2008 WL
3  5216255, at *7 (S.D. Cal. Aug. 11, 2008) (evaluating motion to compel
4  arbitration under version of arbitration agreement that was revised after
5  litigation commenced), *abrogated on other grounds by Concepcion*, 563 U.S.
6  333; *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7
7  (E.D. Ark. Mar. 25, 2008) (same). Each Agreement further contains a non-
8  exhaustive list of "disputes and claims" that the arbitration provision
9  covers. That list includes, *inter alia*, "claims arising out of or relating to
10  any aspect of the relationship between us, whether based in contract, tort,
11  statute, fraud, misrepresentation or any other legal theory." Fossey Decl.
12  Ex. 4 § 8.2(1); Kellogg Decl., Ex. 16 § 10.2(a). That list captures Plaintiffs'
13  claims to a T: Plaintiffs allege that DIRECTV violated federal antitrust
14  laws by selling to them its NFL Sunday Ticket sports programming
15  package, *see* Dkt. 163, which means they are challenging a programming
16  package to which they each subscribed and the prices charged for that
17  programming package—exactly what the arbitration agreement covers.
18  Lest there be any doubt on that score, binding caselaw erases it, as the
19  Ninth Circuit has repeatedly held that "the phrase 'relating to' . . . has a
20  broad and inclusive meaning" in an arbitration agreement. *United
21  Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 413 (9th
22  Cir. 2002); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d
23  1126, 1131 (9th Cir. 2000) ("relating to" language is "broad and far
24  reaching").
25        In sum, Plaintiffs' claims fall squarely within the broad scope of their
26  valid arbitration agreements.
27
28

**MEMORANDUM IN SUPPORT OF DIRECTV'S RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

**B.     Plaintiffs Have No Valid Defenses.**

When DIRECTV initially moved to compel arbitration in August 2016, *see* Dkt. 171, Plaintiffs made multiple arguments regarding enforceability of their arbitration agreements, including arguments about unconscionability, mutuality, and whether the arbitration agreements supposedly prevented Plaintiffs from vindicating their rights under federal antitrust laws. *See* Dkt. 196 (Pls.' 2016 Opp'n Br.). Arguments like Plaintiffs' about unconscionability and lack of mutuality have been made, and rejected, in countless courts. *See* p. 15 & n.7, *supra* (collecting cases). And the Supreme Court has made clear that plaintiffs can effectively vindicate their individual rights under federal antitrust law in arbitration, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-38 (2013) (holding that the FAA requires enforcement of arbitration agreements even where only individual remedies under the antitrust laws would be available in arbitration), so any argument Plaintiffs may make to the contrary is foreclosed by controlling precedent. In short, Plaintiffs' attempts to evade the plain terms of their arbitration agreements were wrong back in 2016 and, to the extent they try to make them again, DIRECTV will explain in its reply why Plaintiffs' arguments are equally wrong today.

Perhaps recognizing that their prior arguments are doomed to fail, Plaintiffs have stated their intention to argue that DIRECTV somehow waived its right to enforce the parties' arbitration agreements "through its prior conduct in this litigation." Dkt. 283 (Joint Report) at 10 n.5. That argument is belied by the procedural history of this case. DIRECTV has insisted from the outset that Plaintiffs' individual disputes must be resolved in arbitration and has always acted consistently with its arbitration rights. And any such waiver argument would run afoul of

controlling law on waiver of arbitration rights. *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) ("Waiver of a contractual right to arbitration is not favored" and "any doubts" must be resolved in favor of arbitration) (citing *Moses H. Cone*, 460 U.S. 1, 24-25); *see also, e.g.*, *Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 WL 13546433, at *4 (C.D. Cal. Oct. 29, 2015) (explaining that the "Plaintiff bears a heavy burden of proof" in arguing waiver, and finding no waiver where the "Defendants did not serve Plaintiffs with discovery requests, did not file a counterclaim, and otherwise did not substantially invoke the litigation machinery").

## IV.   CONCLUSION

Plaintiffs' arbitration agreements with DIRECTV are valid, enforceable, and provide an efficient, cost-free way to resolve their individual disputes. This Court should grant DIRECTV's motion to compel arbitration and stay these proceedings pending resolution of Plaintiffs' individual arbitrations with DIRECTV.

Dated: February 12, 2021                    Respectfully submitted,

*/s/ Robyn E. Bladow*
Robyn E. Bladow (Bar No. 205189)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

Tammy A. Tsoumas (Bar No. 250487)
Jonathan J. Faria (Bar No. 274019)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
tammy.tsoumas@kirkland.com
jonathan.faria@kirkland.com

Erin E. Murphy (*phv* forthcoming)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 879-5000
erin.murphy@kirkland.com

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (Bar No. 97802)
Randall Oppenheimer (Bar No. 77649)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067
Telephone: (310) 553-6700
dpetrocelli@omm.com
dmarroso@omm.com

Katrina M. Robson (Bar No. 229835)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone:   (202) 383-5300
krobson@omm.com

*Attorneys for Defendants DIRECTV, LLC and DIRECTV Holdings LLC*

20