DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
M. RANDALL OPPENHEIMER (S.B. #77649)
  roppenheimer@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

IAN SIMMONS (Pro Hac Vice)
  isimmons@omm.com
KATRINA ROBSON (S.B. #229835)
  krobson@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:   (202) 326-2128
Facsimile:    (202) 383-5414

Attorneys for Defendants DIRECTV, LLC and
DIRECTV Holdings LLC

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE SUNDAY TICKET ANTITRUST LITIGATION | Hon. Philip S. Gutierrez |
| | Case No. 2:15-ml-02668-PSG-JEM |
| | **DEFENDANTS DIRECTV, LLC AND DIRECTV HOLDINGS LLC'S REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| | Date:         April 19, 2021<br>Time:         1:30 p.m.<br>Courtroom:  6A |

# TABLE OF CONTENTS

**Page**

A.    DIRECTV Did Not Waive Its Right To Arbitrate ................................................. 1

B.    Neither The Effective Vindication Doctrine Nor *McGill* Precludes Enforcement Of The Arbitration Agreements' Remedial Provisions ................. 3

C.    The 2017 Agreements Control Here, But The Result Would Be The Same Even If The Prior Agreements Controlled ...................................................... 7

      1.    The 2017 Agreements Control ........................................................................ 7

      2.    The Earlier Agreements Also Require Arbitration ................................... 10

D.    The Mucky Duck Agreed To Arbitrate .................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................................ 4, 5

*Assad v. Josefsson*,
2018 WL 3046958 (C.D. Cal. June 19, 2018) ............................................................ 3

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ...................................................................................................... 8

*Badie v. Bank of Am.*,
67 Cal. App. 4th 779 (1998) ........................................................................................ 9

*Balasanyan v. Nordstrom, Inc.*,
2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ................................................................. 9

*Blair v. Rent-A-Ctr., Inc.*,
2017 WL 4390173 (N.D. Cal. Oct. 3, 2017), *aff'd* 928 F.3d 819 (9th
Cir. 2019) ...................................................................................................................... 6

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ....................................................................................... 7

*Blau v. AT & T Mobility*,
2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ................................................................. 12

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................................................ 5, 6

*Cayanan v. Citi Holdings, Inc.*,
928 F. Supp. 2d 1182 (S.D. Cal. 2013) ..................................................................... 12

*Chavez v. Bank of Am.*,
2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ............................................................ 12

*Cheverez v. Plains All Am. Pipeline, LP*,
2016 WL 861107 (C.D. Cal. Mar. 3, 2016) ................................................................ 8

*Davidson v. Cingular Wireless LLC*,
2007 WL 896349 (E.D. Ark. Mar. 23, 2007) ............................................................. 8

*Delp v. Am. Express Centurion Bank*,
2008 WL 11422487 (C.D. Cal. Mar. 4, 2008) ............................................................ 9

*DiCarlo v. MoneyLion, Inc.*,
988 F.3d 1148 (9th Cir. 2021) .............................................................................. 6, 10

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) .................................................................................................. 9, 10

*Dvash-Banks v. Pompeo*,
2019 WL 911799 (C.D. Cal. Feb. 21, 2019) .............................................................. 5

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .................................................................................................. 5

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986) ........................................................................................ 1

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ........................................................................................................ 5

*Goetsch v. Shell Oil Co.*,
   197 F.R.D. 574 (W.D.N.C. 2000) ................................................................................ 8

*Heller v. Rasier, LLC*,
   2020 WL 413243 (Jan. 7, 2020) ................................................................................ 12

*Hooper v. Advance Am.*,
   589 F.3d 917 (8th Cir. 2009) ....................................................................................... 2

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   433 F. Supp. 3d 395 (E.D.N.Y. 2020) ......................................................................... 5

*In re Apple & AT&TM Antitrust Litig.*,
   826 F. Supp. 2d 1168 (N.D. Cal. 2011) ...................................................................... 5

*James v. Comcast Corp.*,
   2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) .......................................................... 12

*Jimenez v. Menzies Aviation Inc.*,
   2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ............................................................ 9

*Laster v. T-Mobile USA, Inc.*,
   2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ..................................................... 7, 8, 9

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ..................................................................................... 2

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ............................................................................................... 4, 6

*McKee v. Audible, Inc.*,
   2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ............................................................... 9

*Miceli v. Staples, Inc.*,
   2016 WL 6122793 (Cal. Ct. App. Oct. 20, 2016) ..................................................... 12

*Moffett v. Recording Radio Film Connection, Inc.*,
   2019 WL 6898955 (C.D. Cal. Oct. 4, 2019) ............................................................... 3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................................... 5

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Nghiem v. NEC Elec., Inc.*,
   25 F.3d 1437 (9th Cir. 1994) .................................................................................................. 10

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ............................................................................. 9

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) .................................................................................................... 4

*Revitch v. Uber Techs., Inc.*,
   2018 WL 6340755 (C.D. Cal. Sept. 5, 2018) ............................................................................. 7

*Roberts v. AT&T Mobility LLC*,
   2018 WL 1317346 (N.D. Cal. Mar. 14, 2018), *aff'd on other grounds,* 801
   F. App'x 492 (9th Cir. 2020) ...................................................................................................... 6

*Robinson v. Delicious Vinyl Records, Inc.*,
   2014 WL 5332837 (C.D. Cal. Oct. 20, 2014) ........................................................................... 2

*Schatz v. Cellco P'ship*,
   842 F. Supp. 2d 594 (S.D.N.Y. 2012) ........................................................................................ 5

*Schikore v. BankAmerica Suppl. Ret. Plan*,
   269 F.3d 956 (9th Cir. 2001) .................................................................................................... 11

*Sharif v. Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) ...................................................................................................... 2

*Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*,
   2015 WL 13546433 (C.D. Cal. Oct. 29, 2015) ......................................................................... 1

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ...................................................................................................... 1

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ...................................................................................................................... 6

**Statutes**

9 U.S.C. § 2 ................................................................................................................................. 7, 9

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (2010) ...................... 6

1    The arguments in Plaintiffs' opposition cannot be reconciled with controlling
2 precedent, uncontroverted record evidence, or the terms of the Plaintiffs' FAA-
3 governed arbitration agreements. The Court should give effect to those plain terms
4 and compel arbitration here.

5    **A.    DIRECTV Did Not Waive Its Right To Arbitrate.**

6    Plaintiffs' waiver argument can be summarily rejected. From the outset of this
7 litigation, DIRECTV has without exception maintained its right to arbitrate. It moved
8 to compel arbitration six weeks after the consolidated complaint was filed in 2016 and
9 never sought a merits ruling from this Court. Joining the NFL's briefs following
10 Plaintiffs' appeal of that judgment was not inconsistent with arbitration, since the
11 claims that were subject to arbitration had been dismissed, and DIRECTV expressly
12 reserved its right to compel arbitration if there were again any claim to arbitrate. And
13 Plaintiffs have not shown—nor could they—that DIRECTV's joinder of the NFL's
14 briefs in appellate courts caused Plaintiffs undue (or any) prejudice. Without a showing
15 that (1) DIRECTV took actions that were inconsistent with its right to arbitrate, and
16 (2) those actions prejudiced Plaintiffs, there can be no waiver. *See Fisher v. A.G. Becker*
17 *Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (waiver "is disfavored" and requires (as
18 relevant here) "acts inconsistent with" arbitration and "prejudice to the party opposing
19 arbitration resulting from such inconsistent acts").

20    **First,** Plaintiffs do not come close to satisfying this "heavy burden of proof" to
21 show waiver. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)
22 (quotation omitted). They **do not** contend that the parties were well into the lawsuit
23 before DIRECTV asserted its right to arbitrate, that DIRECTV filed a counterclaim or
24 engaged in significant discovery, or that DIRECTV delayed its arbitration motion until
25 the eve of trial—all factors this Court has considered when analyzing waiver. *See*
26 *Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 WL 13546433, at *4 (C.D. Cal.
27 Oct. 29, 2015) (Gutierrez, J.).

28    Instead, Plaintiffs argue that when Judge O'Connell entered judgment based on

1

1 **the NFL's** motion and declared DIRECTV's arbitration motion moot, Dkt. 251,
2 DIRECTV waived its right to arbitrate because it (i) failed to press the Court to undo
3 its "final judgment dismissing Plaintiffs' claim," and (ii) joined the NFL's appellate
4 brief and petition for certiorari, Opp. 4-5. This is not waiver—not even close.
5       Plaintiffs do not explain how failing to object to a court judgment that
6 DIRECTV **did not ask for** is inconsistent with arbitration. Certainly, Plaintiffs cite no
7 case requiring such an objection.[1] Nor was DIRECTV's support of the NFL's
8 positions on appeal inconsistent with arbitration. "[M]ere participat[ion] in litigation"
9 does not constitute waiver in any circumstance. *See, e.g.*, *Robinson v. Delicious Vinyl*
10 *Records, Inc.*, 2014 WL 5332837, at *5 (C.D. Cal. Oct. 20, 2014) (no waiver despite
11 defendant's opposition to plaintiffs' motion for preliminary injunction, motion to
12 clarify injunction, motion to dismiss certain claims, answer to complaint, attendance at
13 deposition, and response to discovery requests). Regardless, mere participation on
14 appeal does not possibly amount to waiver here, since DIRECTV did not ask for the
15 underlying judgment and its appellate participation occurred when there was nothing
16 left to arbitrate. And as even Plaintiffs admit (Opp. 4), DIRECTV expressly reserved
17 its right to compel arbitration in the event of appellate reversal.
18       **Second**, and in any event, Plaintiffs do not demonstrate prejudice from
19 DIRECTV's actions. Plaintiffs' only argument about prejudice is that they will
20 supposedly have to relitigate merits issues that have already been litigated. But
21 Plaintiffs made no attempt to show that DIRECTV's involvement on appeal or the

---

[1] Plaintiffs' waiver cases offer no help because they concern parties who sought rulings on the merits **before** moving to compel arbitration or engaged in significant delays. Opp. 4-5 (citing *Newirth*, *Hooper*, and *Martin*). In *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016), for example, the defendant waited 17 months before moving to compel, after answering the complaint and taking depositions. In any event, these cases show that "it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Hooper v. Advance Am.*, 589 F.3d 917, 922 (8th Cir. 2009) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)) (cited at Opp. 4). If filing a motion to dismiss does not waive a right to arbitrate, then neither does siding with the NFL during appellate proceedings seeking affirmance of the grant of the NFL's dismissal motion.

nature of its arguments created any additional work for them: it was the NFL that moved to dismiss, and while DIRECTV joined the NFL's appellate brief and petition for certiorari, Plaintiffs would have appealed and answered the subsequent petition regardless of DIRECTV's participation or objection to the judgment. In *Assad v. Josefsson*, 2018 WL 3046958 (C.D. Cal. June 19, 2018) (Gutierrez, J.), this Court held that the defendant's participation in discovery did not prejudice plaintiff because discovery would have proceeded in court against another defendant no matter what. *Id.* at *6-7. DIRECTV's appellate participation likewise did not "result in duplicative proceedings," precluding a finding of waiver here. *Id.* at *7.

Plaintiffs separately contend that DIRECTV waived arbitration by removing Lippincott's case to federal court before moving to compel arbitration. But that contention is contrary to well-established precedent. *See Moffett v. Recording Radio Film Connection, Inc.*, 2019 WL 6898955, at *6 (C.D. Cal. Oct. 4, 2019) (Gutierrez, J.) ("[M]erely removing a case to federal court, where the defendant has not engaged in protracted litigation or obtained discovery, does not give rise to waiver of the right to arbitrate." (quotation omitted)).

**B.    Neither The Effective Vindication Doctrine Nor *McGill* Precludes Enforcement Of The Arbitration Agreements' Remedial Provisions.**

Plaintiffs concede that their arbitration agreements allow them to seek the same individual relief in arbitration that they could seek in court, including treble damages and injunctive relief (such as a potential price reduction on their NFL Sunday Ticket package going forward) if they prove that DIRECTV violated the antitrust laws. Opp. 6. They also concede that "they cannot … seek that relief on behalf of third parties, because they have validly waived the procedures necessary to obtain such broad-based relief." *Id.* (quoting Dkt. 202 at 5). But Plaintiffs nonetheless argue that they are entitled to avoid their arbitration agreements because they wish to pursue broad injunctive relief precluded by the agreements, Opp. 6-9, including an injunction against the exclusivity agreement between the NFL and DIRECTV, and an order precluding

3

the NFL from bundling all games into the NFL Sunday Ticket product and instead allowing each individual team to sell its own package, Compl. ¶¶ 8-13, 158. But neither the "effective vindication" doctrine nor the California state rule in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), allows Plaintiffs to avoid their agreements to arbitrate.

The "effective vindication" doctrine is a "judge-made exception to the FAA" that allows courts "to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). That doctrine does not apply because Plaintiffs will be able to obtain all the equitable relief they could obtain in court, for two reasons.

First, the arbitration agreements would not prevent Plaintiffs from obtaining the injunctive relief to which they say they are entitled because if they really were entitled to that relief in court, then they could obtain it in court against the NFL. The NFL is not a party to the arbitration agreements, so those agreements would not prevent Plaintiffs from obtaining in court everything they say they are owed: namely, an order precluding the NFL from continuing exclusivity with DIRECTV (or from signing a similar agreement with a different distributor), and precluding the NFL from bundling all its games into a single package. Plaintiffs do not need any relief against DIRECTV to achieve those results. Indeed, only the NFL has the power to redress complaints concerning the NFL's chosen distribution method and bundling decisions.

Second, because of the equitable principles that apply in antitrust lawsuits, the arbitration agreements also allow Plaintiffs to obtain all the injunctive relief they could obtain in court against DIRECTV. Although it is Plaintiffs' burden to prove a defense to arbitration, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017), they fail to explain why they would be entitled in court (or in any forum) to more than an injunction that ameliorates their own individual injury. After all, it is a fundamental principle under Section 16 of the Clayton Act "that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Dvash-Banks v. Pompeo*, 2019

WL 911799, at *6 (C.D. Cal. Feb. 21, 2019) (same). Plaintiffs' complaint against DIRECTV can only be about the price it is charging, and that harm could be redressed through backward-looking damages and an injunction reducing the price going forward. And as just explained, DIRECTV has no power to redress injuries stemming from the NFL's decisions about distribution method and bundling, so an injunction against DIRECTV relating to those issues would be ineffective and unwarranted.

Even if Plaintiffs could in theory obtain a market-wide injunction in court, the "effective vindication" doctrine does not prevent Plaintiffs from agreeing to limit the scope of injunctive relief in arbitration. That is why the Supreme Court rejected the argument in *Gilmer* that "arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for **broad equitable relief** and class actions." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (emphasis added). The Court in *American Express* reaffirmed this point in explaining that "[i]n *Gilmer* … , we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue … expressly permitted collective actions. We said that statutory permission did 'not mean that individual attempts at conciliation were intended to be barred.'" 570 U.S. at 237 (quoting *Gilmer*, 500 U.S. at 32).

Other courts have followed suit in numerous statutory contexts, *see Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 613 (S.D.N.Y. 2012), and have rejected in particular the contention that "market-wide equitable relief is necessary for effective vindication of [plaintiffs'] rights under the Clayton Act." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 433 F. Supp. 3d 395, 407 (E.D.N.Y. 2020); *see also In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1175 (N.D. Cal. 2011). That conclusion properly balances the Clayton Act's interest in providing equitable relief with the FAA's strong policy favoring speedy resolution of claims through arbitration, *see, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (courts must harmonize federal statutes with congressional directive "to enforce arbitration agreements according to their

5

terms—including terms providing for individualized proceedings"). Clayton Act Section 16 promises equity, the agreements here allow Plaintiffs to obtain equity in the form of tailored injunctive relief, and there is nothing inequitable about holding Plaintiffs to their agreement to seek that relief (and only that relief) in arbitration.[2]

Nor does the California Supreme Court's decision in *McGill* apply here. *McGill* invalidated arbitration agreements purporting to preclude the arbitrator from issuing "public injunctions" under Cal. Bus. & Prof. Code §§ 17200 (UCL) and 17500 (FAL), and Cal. Civ. Code § 1750 et seq. (CLRA)[3]; it has never been applied to federal claims. *See Blair v. Rent-A-Ctr., Inc.*, 2017 WL 4390173, at *2 (N.D. Cal. Oct. 3, 2017), *aff'd* 928 F.3d 819 (9th Cir. 2019). That is because a "public injunction" does not exist under federal law. The hallmark of "public" injunctive relief is that it is "not tailored to 'rectif[y] individual wrongs,'" *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021) (quoting *McGill*, 2 Cal. 5th at 955), whereas an injunction under federal law must "be no more burdensome … than necessary to provide complete relief to the plaintiffs," *Califano*, 442 U.S. at 702. The "public injunction" is thus "peculiar" to California. *MoneyLion*, 988 F.3d at 1158. Moreover, a "public" injunction "benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public.'" *McGill*, 2 Cal. 5th at 955 (quotations omitted). Yet Plaintiffs' requested relief here is

---

[2] In various contexts, equity requires holding parties to their agreements even if equitable principles would offer a broader remedy absent the contract. *See, e.g.*, *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013) (in context of equitable lien created by agreement, courts of equity must "enforc[e] the lien by holding the parties to their mutual promises" and "declin[e] to apply rules [at odds with those commitments], even if they would be 'equitable' in a contract's absence"); Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (2010) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment").

[3] The *McGill* rule also does not apply to the claims brought by the two non-California plaintiffs. *See Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *9 (N.D. Cal. Mar. 14, 2018), *aff'd on other grounds,* 801 F. App'x 492 (9th Cir. 2020) (holding that *McGill* did not apply to non-California plaintiff's claims).

6

intended to benefit themselves and similarly situated individuals directly.[4] And "[w]here … the relief sought has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals relief similarly situated to the plaintiff, [*McGill*] does not apply." *Revitch v. Uber Techs., Inc.*, 2018 WL 6340755, at *5 (C.D. Cal. Sept. 5, 2018) (Gutierrez, J.) (internal citations and quotations omitted).[5]

### C. The 2017 Agreements Control Here, But The Result Would Be The Same Even If The Prior Agreements Controlled.

#### 1. The 2017 Agreements Control.

Plaintiffs spend a substantial portion of their opposition arguing that the 2017 agreements do not apply to this dispute. Opp. 9-16. Not so. The 2017 agreements apply—both under their express terms and established precedent. Under the FAA, "an agreement in writing to submit to arbitration **an existing controversy** . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (emphasis added). Courts thus routinely enforce arbitration agreements amended during the pendency of litigation where the terms of the agreement reflect that intent. *See, e.g.*, *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6-7 (S.D. Cal. Aug. 11, 2008) (applying later arbitration provision where agreement applied to "claims that arose before this or any prior

---

[4] *See, e.g.*, Compl. ¶ 158 (seeking relief for "Plaintiffs and other commercial and residential subscribers")

[5] Even if this Court were to accept Plaintiffs' invitation to create new law and invalidate the agreements' limitations on injunctive relief, the 2017 agreements state that if the agreements' limitations on arbitrating "a particular claim for relief" cannot be enforced, then "that claim (and only that claim) must be severed from arbitration and may be brought in court." Dkt. 306-6 (Fossey Decl. Ex. 4) ("2017 Residential Agreement") at § 8.2(6); Dkt. 306-24 (Kellog Decl. Ex. 16) ("2017 Commercial Agreement") at § 10.2(f). Thus, Plaintiffs' damages claims for relief would be arbitrated and the claims for injunctive relief would be litigated. Plaintiffs seek to avoid that result (Opp. 8-9) based on *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019). But unlike in *Blair*, the arbitration agreements here make clear that the "claim for relief" language refers to requests for "declaratory or injunctive relief" that an "individual party" may "seek[]," not to the entire cause of action. 2017 Residential Agreement § 8.2(6); 2017 Commercial Agreement § 10.2(f).

7

Agreement ... [and] claims that are currently the subject of purported class action litigation in which you are not a member of a certified class");[6] *accord Davidson v. Cingular Wireless LLC*, 2007 WL 896349, at *6 (E.D. Ark. Mar. 23, 2007); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000).

Here, the 2017 agreements expressly cover existing disputes, including "claims that arose before this or any prior Agreement" and "claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." 2017 Residential Agreement § 8.2(1); 2017 Commercial Agreement at § 10.2(a). The earlier agreements explicitly allowed DIRECTV to change the contractual terms and Plaintiffs accepted the changes by continuing to receive DIRECTV's services. Dkt. 171-47 § 4; Dkt. 171-43 § 4. While the 2017 agreement preamble allows customers to cancel service if they do not accept the agreements' updated terms,[7] Plaintiffs continued to use DIRECTV's services. Plaintiffs thus assented to the 2017 agreements, and under the FAA—which, again, governs "agreement[s] in writing to submit to arbitration an existing controversy," 9 U.S.C. § 2—the 2017 agreements apply.[8]

---

[6] Plaintiffs' attempt to distinguish *Laster* (Opp. 11 n.7) lacks merit. *Laster* was ultimately reversed because the district court incorrectly found the class action waiver unenforceable, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011), not because of the district court's holding that the later arbitration agreement controlled. Indeed, the Supreme Court in *Concepcion* applied the agreement introduced after the *Laster* litigation commenced. Nor does *Laster* hold that subsequent agreements are enforced only where they are more plaintiff-friendly—*Laster* enforced the amended agreement not because of its substance but because "the terms of the agreement" reflected the parties' intent that it would control. 2008 WL 5216255, at *6.

[7] 2017 Commercial Agreement ("IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR ORDER OR SERVICE … IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING."); 2017 Residential Agreement (same).

[8] Plaintiffs have accepted multiple revisions to the terms of their arbitration agreements since they became DIRECTV subscribers. Mot. to Compel 8 n.3. And the two residential-customer plaintiffs accepted, without objection, revised terms in 2016 after commencing this lawsuit. *See* Dkt. 171-1.

8

1    Plaintiffs' cases, meanwhile, are inapposite, addressing a defendant's attempts to
2    obtain releases from potential class members, Opp. 9-10 (citing *Cheverez*); impose an
3    obligation to arbitrate for the first time after litigation already commenced, *id.* at 9, 11
4    (citing *McKee, Jimenez,* and *O'Connor*); or impose "unacceptably confusing" terms, *id.* at
5    10 (citing *Balasanyan*). Here, the parties had already agreed to arbitrate before this
6    litigation was commenced, Dkts. 171-1 and 202 (DIRECTV's original motion to
7    compel arbitration and reply), and Plaintiffs do not contend that the modifications to
8    the 2017 agreements are confusing.

    Nor does the implied covenant of good faith and fair dealing preclude enforcement of the 2017 agreements. *See* Opp. 12-13. A "change-in-terms" provision authorizes a party to modify the terms of a contract unilaterally, as long as the exercise of that power is consistent with the covenant of good faith and fair dealing. *Badie v. Bank of Am.,* 67 Cal. App. 4th 779, 795-96 (1998). For example, such a provision may be unlawful if it "singled out" Plaintiffs or their claims, *see Laster*, 2008 WL 5216255, at *6-7 (modifications permitted in part because AT&T "included the revision in a mailing to all its customers"), or added an arbitration agreement when one did not exist at the outset of the litigation, *see Delp v. Am. Express Centurion Bank*, 2008 WL 11422487, at *5 (C.D. Cal. Mar. 4, 2008) (*Badie* inapplicable when original agreements included agreement to arbitrate), but that did not happen here. The earlier agreements included agreements to arbitrate and the 2017 agreements apply to all of DIRECTV's "million[s]" of residential and commercial customers. *See* Compl. ¶ 34.

    Plaintiffs' final, most puzzling argument (Opp. 16-17) as to why the 2017 agreements do not apply is that there is no "agreement in writing" (9 U.S.C. § 2), so the California Arbitration Act rather than the FAA applies.[9] This argument flies in the face of decades of court decisions from around the country confirming that the FAA

---

[9] Plaintiffs offer no explanation for why California law would ever apply to the claims of non-California plaintiffs Gael Pub (a New York resident) and Michael Holinko (a New Jersey resident). *See* Opp. 8 n.5.

9

governs these exact arbitration agreements. *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (FAA preempts California law as to DIRECTV arbitration agreements); Mot. to Compel 14-17 (citing cases). Of course the 2017 agreements are written, and thus are "in writing." *Id.* And if the argument is that there is no agreement in writing because the agreements are assented to but not signed, that is wrong. *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed by the parties."(quotation omitted)).

### 2. The Earlier Agreements Also Require Arbitration

Even if the prior agreements applied here as Plaintiffs' opposition suggests (*e.g.*, Opp. 17-19), the Court must still compel arbitration. Plaintiffs rely on two provisions that are in the earlier agreements but not the 2017 agreements: (i) a "private attorney general" limitation, and (ii) a "blackout" exception. Neither provisions would preclude arbitration, so the Court need not decide whether the 2017 agreements apply.

**The "Private Attorney General" Limitation.** The 2017 agreements do not include a limitation on "private attorney general" actions, so Plaintiffs' argument based on that limitation (Opp. 17) is irrelevant. The "private attorney general" provision in the earlier agreements would not preclude arbitration in any event. The Ninth Circuit recently rejected a virtually identical argument in *MoneyLion*, which made clear that a private attorney general action is one where the plaintiff sues solely on behalf of the public, rather than on his own behalf. *See* 988 F.3d at 1156-58. That is not the case here for the reasons already explained. *See supra* 6-7. Indeed, federal law does not authorize injunctive relief that is broader than necessary to redress the plaintiff's own injury. *See id.* It does not matter that the Supreme Court has sometimes colloquially described Clayton Act plaintiffs as "private attorneys general," Opp. 17; as *MoneyLion* held, courts often describe plaintiffs bringing public-interest-related causes of action as "private attorneys general," but that term's narrower meaning for purposes of addressing limitations on arbitration proceedings is limited to actions (unlike this one)

10

1  brought **solely** for the public, and not to ameliorate the plaintiff's own harm. 988 F.3d
2  at 1156-58.

3        **The "Blackout" Exception.** The 2017 Commercial Agreement does not
4  include the Section 1(h) "blackout" exception, so the exception is irrelevant. And
5  contrary to Plaintiffs' argument (Opp. 18-19), the prior commercial agreement's
6  "blackout" exception would not have precluded arbitration anyway. That agreement
7  contained an exception to arbitration for claims "based on Section 1(h)," which
8  provided that "[c]ertain programming, including sports events, may be blacked out in
9  your local reception area … due to legal, contractual, or other restrictions …." Dkt.
10 171-47 § 1(h). But as DIRECTV has already explained, Dkt. 202 at 1-3, Plaintiffs'
11 claims are not "based on" the blackout provision. This provision concerns potential
12 blackouts of games in a consumer's "local reception area." *Id.* Plaintiffs' complaint has
13 nothing to do with their local team's **in-market** games; it is about **out-of-market**
14 games broadcast elsewhere in the country. Compl. ¶¶ 8, 53. Moreover, the NFL
15 blackout restrictions on local games were suspended well before Plaintiffs filed this
16 litigation. *Id.* ¶ 122. Nor do Plaintiffs even assert that they are unable to view out-of-
17 market games; their complaint is that they can only view them at a price they believe to
18 be too high. *Id.* ¶ 9. Plaintiffs' antitrust claims have nothing to do with blackout
19 restrictions, and thus the section 1(h) exception is inapposite.

20       **D.**    **The Mucky Duck Agreed To Arbitrate.**

21       The Mucky Duck contends that it is the one Plaintiff (and apparently the one
22 DIRECTV customer out of millions) who did not agree to arbitrate at all, because its
23 owner did not read or recall the agreements' terms and conditions. That contention
24 should be rejected. *See also* Dkt. 202 at 8-10. The Mucky Duck does not dispute that
25 DIRECTV mailed both the updated 2014 Commercial Agreement and the 2017
26 Commercial Agreement in the regular course of business. Opp. 21, 24. This
27 undisputed evidence creates the presumption the documents were in fact received, *see*
28 *Schikore v. BankAmerica Suppl. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001), and The

11

Mucky Duck's bare assertion that it "has no recollection" of receiving the 2014 agreement (Opp. 22) or that DIRECTV did not provide information about error rates of the third-party vendor who mailed the 2017 agreement (Opp. 24), does not rebut that presumption as a matter of law, *see Chavez v. Bank of Am.*, 2011 WL 4712204, at *8 (N.D. Cal. Oct. 7, 2011). As this Court has held, when consumers receive notice of an arbitration agreement update, continued use of the service constitutes assent to the updated terms. *Heller v. Rasier, LLC*, 2020 WL 413243, at *11 (Jan. 7, 2020) (Gutierrez, J.). This is true "even if their initial registration processes were somehow flawed." *Id.*

In addition, The Mucky Duck's monthly invoices—which its owner admits he received, reviewed, and paid—provided notice of the parties' agreement to arbitrate disputes.[10] Mot. to Compel 8. And it also received a 2015 email advising it to "[r]eview [its] customer agreements" that included a link to the Commercial Agreement and key terms and conditions, including arbitration. *Id.* at 11. Again, The Mucky Duck says its owner does not recall reading this email. But "[i]f a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless." *Blau v. AT & T Mobility*, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012).[11]

The motion to compel arbitration should be granted.

---

[10] The Mucky Duck's reliance on *Badie*, 67 Cal. App. 4th at 791 (Opp. 25), is misplaced. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1200 (S.D. Cal. 2013) ("*Badie* did not hold that bill stuffer notices are *per se* invalid."); *James v. Comcast Corp.*, 2016 WL 4269898, at *1 n.1, *2-4 (N.D. Cal. Aug. 15, 2016) (similar); *Miceli v. Staples, Inc.*, 2016 WL 6122793, at *3 (Cal. Ct. App. Oct. 20, 2016) (similar).

[11] DIRECTV incorporates its responses to Plaintiffs' evidentiary objections. Dkt. 202-2.

12

| | |
|---|---|
| Dated:  March 26, 2021 | By:   /s/ Daniel M. Petrocelli<br>Daniel M. Petrocelli |

DANIEL M. PETROCELLI
M. RANDALL OPPENHEIMER
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

IAN SIMMONS
KATRINA ROBSON
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:     (202) 326-2128
Facsimile:      (202) 383-5414

ROBYN E. BLADOW
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
robyn.bladow@kirkland.com

TAMMY A. TSOUMAS
JONATHAN J. FARIA
KIRKLAND & ELLIS LLP
2049 Century Park East,
Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200

Attorneys for Defendants DIRECTV, LLC and DIRECTV Holdings LLC