UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  #306

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**   The Court GRANTS Defendants' motion to compel arbitration and to stay proceedings

Before the Court is a motion to compel arbitration and to stay further proceedings filed by Defendants DirecTV, LLC and DirecTV Holdings LLC ("DirecTV").  *See generally* Dkt. # 306-1 ("*Mot.*").[1]  Plaintiffs Ninth Inning Inc. d/b/a The Mucky Duck ("TMD"), 1465 Third Avenue Restaurant Corp. d/b/a Gael Pub ("Gael Pub"), Robert Gary Lippincott, Jr. ("Lippincott"), and Michael Holinko ("Holinko") (collectively, "Plaintiffs"), opposed.  *See generally* Dkt. # 315 ("*Opp.*").  DirecTV replied.  *See generally* Dkt. # 317 ("*Reply*").  The Court held a hearing via video conference on April 19, 2021.  After considering the moving, opposing, and reply papers, and the arguments at the hearing, the Court **GRANTS** DirecTV's motion to compel arbitration and to stay further proceedings.

I.    Background

In this consolidated putative class action, Plaintiffs claim that DirecTV's exclusive agreement with the National Football League ("NFL") to broadcast certain NFL games is anticompetitive and violates the Sherman Act.  *See generally Consolidated Amended Class Action Complaint*, Dkt. # 163 ("*CAC*").

The NFL and DirecTV have an exclusive agreement, under which DirecTV offers its subscribers paid access to "Sunday Ticket."  *Id.* ¶ 89.  Sunday Ticket allows DirecTV customers to watch out-of-market NFL games that would otherwise be unavailable.  *Id.* ¶¶ 90–91.  Plaintiffs claim that the exclusive agreement between the NFL and DirecTV results in them

---

[1] DirecTV's motion is Docket Entry # 306.  The Court cites to the memorandum in support of the motion, Dkt. # 306-1, because it contains DirecTV's substantive arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

paying more to access out-of-market games than they otherwise would if the rights to broadcast out-of-market games were negotiated competitively. *Id.* ¶ 94.

The operative Consolidated Amended Class Action Complaint ("CAC") alleges two causes of action against the NFL Defendants[2] and DirecTV:

> First Cause of Action: violation of § 1 of the Sherman Act. *CAC* ¶¶ 155–58.

> Second Cause of Action: violation of § 2 of the Sherman Act. *CAC* ¶¶ 159–63.

On August 8, 2016, the NFL Defendants moved to dismiss the CAC under Federal Rule of Civil Procedure 12(b)(6). *See generally* Dkt. # 170. On the same day, DirecTV moved to compel arbitration and to stay further proceedings. *See generally* Dkt. # 171.

On June 30, 2017, the Court granted the NFL Defendants' motion, and therefore dismissed Plaintiffs' claims on their merits. *See generally* Dkt. # 251. Accordingly, the Court denied DirecTV's motion to compel arbitration as moot. *See id.* at 7 n.6; *id.* at 38.

On July 28, 2017, Plaintiffs appealed the Court's dismissal to the Ninth Circuit. *See generally* Dkt. # 255. DirecTV joined the NFL Defendants' brief on appeal, but "reserve[ed] all rights to renew the arbitration motion if necessary." *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, No. 17-56119 (9th Cir. Apr. 6, 2018), Dkt. # 38 at 3. The Ninth Circuit reversed the Court's dismissal. *See generally In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019). DirecTV then joined The NFL Defendants' petition for certiorari from the Supreme Court, again reserving the right to renew the arbitration motion. *See* Pet. for Writ of Cert. at 9 n.1, *Nat'l Football League v. Ninth Inning, Inc.*, No. 19-1098 (U.S. Feb. 7, 2020). The Supreme Court denied the petition. *See generally Nat'l Football League v. Ninth Inning, Inc.*, 141 S. Ct. 56 (2020).

Following the Ninth Circuit's remand to this Court, DirecTV now renews its motion to compel arbitration and to stay proceedings. *See generally Mot.* The Court **GRANTS** DirecTV's motion.

---

[2] The NFL Defendants are not parties to this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

II.  Legal Standard

"The 'principal purpose' of the [Federal Arbitration Act ("FAA")] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The FAA states that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original).  When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

If an arbitration agreement exists and covers the dispute at issue, section 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

III.  Discussion

The Court first considers whether DirecTV waived its right to arbitrate.  It did not.

The Court then considers whether TMD agreed to arbitrate disputes with DirecTV.  It did.

The Court then considers whether this dispute is governed by (i) the versions of the parties' agreements that existed before this suit was filed in 2015 or (ii) the 2017 versions.  The Court concludes that the 2017 versions govern.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

The Court finally considers whether the 2017 versions of the agreements are enforceable. They are.

    A.    <u>Whether DirecTV Waived Its Right to Arbitrate</u>

Plaintiffs argue that DirecTV engaged in litigation conduct that waived its right to arbitrate this dispute. *See Opp.* 11:3–13:1. The Court disagrees.

To establish waiver of the right to arbitrate, the party opposing arbitration must show, among other things, that it suffered prejudice. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Here, Plaintiffs suffered no prejudice when DirecTV joined the NFL Defendants' briefs on appeal and their petition for certiorari. Regardless of whether DirecTV joined the NFL Defendants' briefs and petition, Plaintiffs would have had to answer such arguments. Therefore, DirecTV's joinder caused Plaintiffs no prejudice.

Plaintiffs also argue that DirecTV waived its right to arbitrate by removing Plaintiff Lippincott's case to federal court rather than moving to compel arbitration in state court. *See Opp.* 12:13–19. The Court disagrees. "[N]umerous courts have held that merely removing a case to federal court, where the defendant has not engaged in protracted litigation or obtained discovery, does not give rise to waiver of the right to arbitrate because removal alone is not sufficiently inconsistent with the right to seek arbitration and does not give rise to prejudice." *DeMartini v. Johns*, No. 3:12–cv–03929–JCS, 2012 WL 4808448, at *5 (N.D. Cal. Oct. 9, 2012) (collecting cases).

Accordingly, DirecTV did not waive its right to arbitrate.

    B.    <u>Whether TMD Agreed to Arbitrate</u>

TMD argues that it never agreed to arbitrate its claims with DirecTV. *Opp.* 26:27–28. The Court disagrees.

It is undisputed that TMD's initial Commercial Customer Agreement did not include an arbitration clause. However, DirecTV contends that it mailed TMD (1) the 2014 Commercial Customer Agreement, which included an arbitration clause, with TMD's June 7, 2014 billing statement, *see Declaration of Alisa Kellogg*, Dkt. # 306-8 ("*Kellogg Decl.*"), ¶ 45; and (2) the 2017 Commercial Customer Agreement, which included an arbitration clause, with TMD's May

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

7, 2017 billing statement, *see id.* ¶ 41.[3] Therefore, DirecTV argues that (1) there is a presumption that TMD received these documents,[4] and (2) TMD assented to their terms by continuing to use DirecTV's services. *Reply* 11:26–12:7.

    TMD counters that "sending a bill stuffer that purports to add new conditions after a course of dealing has been established is *not* sufficient to bind the party receiving it." *Opp.* 28:15–16. Even accepting this as true, which TMD has not established in these circumstances, TMD ignores that it *also* paid each of its monthly invoices, which explicitly acknowledged that any claims not resolved informally "may be resolved only through binding arbitration, as provided in the Commercial Customer Agreement." *See, e.g.*, Dkt. # 306-31 at 3. TMD therefore received monthly notice that its agreement had been changed to include a binding arbitration clause, and its argument that it lacked such notice is contradicted by the record. Consequently, TMD's continued use of DirecTV's constituted assent to the updated agreements. *See Heller v. Rasier*, No. CV 17-8545 PSG (GJSx), 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (finding that "plaintiffs were given adequate notice of the terms in the current user agreement," and that they "accepted and agreed to the current terms by continuing to use Facebook after receiving that notice").

    TMD also argues that DirecTV used a third-party vendor to send out the customer agreements, and that DirecTV "provide[s] no information about the third party vendor's error/break down rates during this period of time, or how many other bill stuffers were included in the envelope, or in what order the various documents were inserted." *Opp.* 28:27–29:7, 31:13–21. For the same reasons provided above, TMD's argument fails. Additionally, TMD has not cited any cases indicating that these considerations are relevant. Accordingly, the Court concludes that TMD agreed to arbitrate pursuant to the 2014 and 2017 Commercial Customer Agreements.

---

[3] The Court overrules Plaintiffs' evidentiary objections to these declarations to the extent it relies on such declarations here.

[4] TMD's lack of recollection of receiving the updated agreements "is not the sort of reliable evidence necessary to defeat the presumption of receipt by mail." *See Chavez v. Bank of Am.*, No. C 10–653 JCS, 2011 WL 4712204, at *8 (N.D. Cal. Oct. 7, 2011); *FEC v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) ("[F]ailure to remember and lack of knowledge are not sufficient to create a genuine dispute.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

  C. <u>Which Version of the Parties' Agreements Govern this Dispute</u>

  Plaintiffs argue that this dispute is governed by their customer agreements with DirecTV that were in effect when this suit was filed in 2015. *See Opp.* 16:11–24:10. DirecTV disagrees, arguing that the 2017 agreements govern. *See generally Mot.*

  Plaintiffs contend that the 2017 agreements cannot govern because (1) the Court should exercise its authority under Federal Rule of Civil Procedure 23 to prohibit the changes to the agreements that were made during the course of litigation, *see Opp.* 16:13–18:23; (2) the changes in the agreements violated the implied covenant of good faith and fair dealing, *see id.* 19:1–23:13; and (3) compelling arbitration under the 2017 version would violate California law, *see id.* 23:14–24:10. The Court with disagrees with Plaintiffs on all grounds.

    i. *Rule 23*

  It is undisputed that DirecTV had the right to change the terms of the parties' pre-dispute agreements. *See* Dkt. # 171-47 § 4 ("We reserve the right to change the terms and conditions on which we offer Service. If we make any such changes, we will send you a copy of your new Customer Agreement containing its effective date. You always have the right to cancel your Service, in whole or in part, at any time, and you may do so if you do not accept any such changed terms or conditions."); Dkt. # 171-43 § 4 (same). Nonetheless, Plaintiffs argue that the Court has authority under Rule 23 "to prevent parties from misleading putative class members or otherwise engaging in coercive conduct that may impair the rights of class members," which includes "a defendant's effort to avoid class litigation by altering its arbitration agreements while the litigation is underway." *Opp.* 16:17–22. Plaintiffs assert that the Court should exercise this authority, *see id.* 18:21–23, but the Court disagrees.

  The Court finds *Laster v. T-Mobile USA, Inc.*, No. 05cv1167 DMS (AJB), 2008 WL 5216255, at *1 (S.D. Cal. Aug. 11, 2008), *rev'd on other grounds sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011), instructive. In *Laster*, the plaintiffs argued that a change to the parties' arbitration clause was "ineffective because it was implemented through improper contact between Defendants and members of a class action, which this Court may regulate under Federal Rule of Civil Procedure 23(d)." *Id.* at *6. The Court rejected the plaintiffs' argument because (1) they "were not singled out for receipt of the revised agreement," (2) their pre-dispute agreements already contained an arbitration clause, and (3) the terms of arbitration were modified to be more favorable to the plaintiffs. *Id.* at *6–*7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

Here, like the plaintiffs in *Laster*, DirecTV (1) changed the arbitration provision in all of their customers' agreements, not just Plaintiffs', and (2) Plaintiffs' pre-dispute agreements contained an arbitration clause. *See* Dkt. # 171-47 § 9; Dkt. # 171-43 § 9; *Reply* 9:19–21. Additionally, as discussed more fully below, Plaintiffs have not demonstrated that the 2017 agreements were less favorable to them. Accordingly, the Court rejects Plaintiffs' argument that the changes were inappropriate under Rule 23.

        *ii.*       *Implied Covenant of Good Faith and Fair Dealing*

"[T]he covenant of good faith and fair dealing implied in every contract requires contracting parties not to deprive another party of 'his or her reasonable expectations under the agreement.'" *Opp.* 19:7–10 (quoting *Avery v. Integrated Healthcare Holdings*, 218 Cal. App. 4th 50, 61 (2013)). Plaintiffs argue that the post-dispute changes to their customer agreements defeated their legitimate expectations regarding the scope of arbitrable claims, and therefore such changes violated the implied covenant. *Id.* 23:11–13. To understand this argument, the Court must first determine what changed between the pre- and post-dispute versions of Plaintiffs' customer agreements.

Although not explicit, Plaintiffs apparently argue that the 2017 agreements materially changed two provisions of their pre-dispute agreements.

First, §§ 9(c) of the pre-dispute agreements state that "[n]either [Plaintiffs] nor [Defendants] shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity." *See* Dkt. # 171-47 § 9(c); Dkt. # 171-43 § 9(c). Plaintiffs argue that they bring claims in their capacities as private attorneys general, and that such claims were carved out of the pre-dispute arbitration provisions but not the 2017 arbitration provisions. *Opp.* 25:4–7. But the Court is not persuaded that Plaintiffs' characterization of the pre-dispute provision as a carve out is correct.

To elaborate, the pre-dispute version specifically states that all claims will be formally resolved, if necessary, "only by binding arbitration." *See, e.g.*, Dkt. # 171-47 § 9(a)–(b). Therefore, because § 9(c) appears to prohibit private attorney general claims in arbitration, and because *all disputes* must be arbitrated, the pre-dispute agreements seem to prohibit private attorney general claims *altogether*. And because Plaintiffs seemingly agreed to *completely* release such claims in the pre-dispute version, the 2017 agreements are more favorable to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

Plaintiffs than the pre-dispute agreements because the 2017 agreements do not contain a complete release of such claims.[5]

Second, Plaintiffs point to § 9(d) of the pre-dispute Commercial Customer Agreements, which states the following "exception" to mandatory arbitration for DirecTV's commercial customers: "Notwithstanding the foregoing: (i) any Claim based on Section 1(h) above . . . may be decided only by a court of competent jurisdiction." *See* Dkt. # 171-47 § 9(d). Section 1(h), in turn, provides as follows:

> Certain programming, including sports events, may be blacked out in your local reception area or otherwise unavailable to commercial customers in your local reception area due to legal, contractual, or other restrictions. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit www.directv.com for more information. If you circumvent or attempt to circumvent any of these blackouts, you may be subject to legal action.

*See* Dkt. # 171-47 § 1(h).

Plaintiffs argue (1) that they "challenge the legality of NFL blackout restrictions" in this case, and, (2) thus, the removal of the blackout exception in the 2017 agreements violated their reasonable expectations. *Opp.* 26:8–25.

Regarding Plaintiffs' purported challenge to the legality of NFL blackout restrictions, they argue that "[t]he contractual restrictions, including DirecTV's own exclusive agreement with the NFL, render broadcasts of certain out-of-market games 'unavailable' to be viewed except through Sunday Ticket." *Id.* 26:17–19. However, as DirecTV correctly points out, the "blackouts" contemplated in § 1(h) relate to the unavailability of *local* broadcasts rather than out-of-market games, which are broadcast elsewhere in the country. *See Reply* 11:10–14; Dkt. # 202 1:22–3:17. Additionally, although Plaintiffs label such games as "blacked out," the games are not actually unavailable to Plaintiffs (unlike a blacked-out game). Instead, Plaintiffs

---

[5] To the extent the pre-dispute arbitration provision might have been unenforceable due to the complete release of such claims, Plaintiffs' implied covenant argument would still fail because Plaintiffs would have to contend (1) that they somehow intended to agree to an unenforceable arbitration provision, and (2) therefore they were deprived of their legitimate expectations when they agreed to the 2017 agreements' enforceable arbitration provision. Such an argument would strain credulity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

acknowledge that they can access such games, but they complain that the price to do so is too high. *See Reply* 11:16–18; *CAC* ¶ 9 ("[T]he total elimination of competition allows the NFL its Teams, and DirecTV to charge supracompetitive monopoly prices . . . ."). Accordingly, the changes in the 2017 agreements did not violate Plaintiffs' reasonable expectations because their claims would not have fallen under § 1(h) of the pre-dispute agreements.

In sum, because the changes in the 2017 version of Plaintiffs' agreements did not deprive them of their reasonable expectations under the pre-dispute agreements, DirecTV did not violate the implied covenant of good faith and fair dealing.

        *iii.*    *California Law and Policy*

Plaintiffs argue that the 2017 agreements cannot govern this dispute under California law. *See Opp.* 23:14–24:10.

This argument rests on the premise that the California Arbitration Act—not the FAA—applies here. *See id.* at 23:16–25. Specifically, Plaintiffs contend that "[t]he present controversy among the parties 'exist[ed]' as of July of 2015 when [TMD] filed suit. For 'existing' controversies, FAA § 2 makes clear that there must be 'an agreement in writing' between the parties to arbitrate that particular controversy. Here, there is no such 'agreement in writing' between the parties." *Opp.* 23:16–20 (alteration in original). Therefore, Plaintiffs argue that § 2 of the FAA does not apply and that the California Arbitration Act applies instead. *Id.* 23:26–24:10. The Court disagrees because the 2017 agreements are in writing. *See generally* Dkt. # 306-6; Dkt. # 306-24. Accordingly, Plaintiffs' argument fails.

        D.    <u>Whether the 2017 Agreements are Enforceable</u>

Plaintiffs argue that, even if the 2017 agreements govern this dispute, the arbitration clauses are unenforceable because they seek to prospectively limit injunctive relief that would ordinarily be available under the Sherman Act. *See Opp.* 13:2–16:10. For example, under the agreements, "[a]n individual can only obtain 'individual injunctive relief,'" such as a "'potential price reduction' for that individual." *Id.* 13:15–17. However, according to Plaintiffs, "under the Sherman Act, every affected plaintiff has broader, structural remedies available, such as to compel changes to the rigid and exclusive distribution arrangements currently in place so that they can benefit—as an individual—from the multitude of viewing options that would be available in a free and unconstrained market." *Id.* 13:17–21. "Accordingly, federal public policy prohibits the waiver of Plaintiffs' statutory right to pursue injunctive relief that returns

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

competition to the marketplace, and, thus, DirecTV's arbitration clause may not be enforced here." *Id.* 15:11–13. The Court disagrees.

First, Plaintiffs have not provided any authority supporting, and have not otherwise substantiated, their assertion regarding the breadth of "structural remedies" and injunctive relief that would be available under the Sherman Act absent the parties' agreements. And, to the extent that "broader, structural remedies" such as "changes to the rigid and exclusive distribution arrangements currently in place" would benefit Plaintiffs as individuals, Plaintiffs have not offered any reason why such relief would not qualify as "individual injunctive relief" under the 2017 agreements.

Second, even accepting Plaintiffs' argument that the 2017 agreements narrowed the scope of available injunctive relief, Plaintiffs have not persuaded the Court that such limitations impair their ability to effectively vindicate their statutory rights under the Sherman Act. The Supreme Court has recognized that the availability of treble damages under the Sherman Act itself helps "vindicate the important public interest in free competition." *See Fortner Enters. v. United States Steel Corp.*, 394 U.S. 495, 502 (1969). Thus, the availability of treble damages in this case mitigates Plaintiffs' concerns about the effective vindication of their statutory rights.

Third, the California *McGill*[6] rule is irrelevant because it concerns California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's false advertising law ("FAL"), Cal. Civ. Code §§ 17500, *et seq. See McGill*, 2 Cal. 5th at 961 (finding an arbitration provision that prohibited the right to seek public injunctive relief "*under these statutes*"—i.e., the CLRA, the UCL, and the FAL— unenforceable under *California law* (emphasis added)). None of these statutes are involved in this dispute.

Accordingly, because Plaintiffs do not otherwise challenge that (1) the 2017 agreements exist, and (2) the 2017 agreements encompass this dispute, the Court **GRANTS** DirecTV's motion to compel arbitration and stay further proceedings. *See Concepcion*, 563 U.S. at 344 (section 4 of the FAA requires courts to compel arbitration under the terms of the agreement where the agreement exists and covers the dispute at issue).

---

[6] *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | April 20, 2021 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

IV.     Conclusion

The Court **GRANTS** DirecTV's motion to compel arbitration under the 2017 version of the parties' customer agreements.  The Court **ORDERS** Plaintiffs to arbitrate their disputes with DirecTV as required by their respective agreements.  Further proceedings in this action related to Plaintiffs' claims against DirecTV are **STAYED** pending arbitration.

**IT IS SO ORDERED.**