MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
RAYMOND K. WRIGHT (331950)
rwright@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
IRVING SCHER
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel listed on Signature Page]

*Plaintiffs' Interim Co-Lead Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 2:15-ml-02668−PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NFL CLUB DEFENDANTS**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: June 22, 2021 at 10:00 a.m.<br>Place: Courtroom 640<br><br>Discovery Cutoff Date: 3/22/2022<br>Pretrial Conference Date: TBD<br>Trial Date: TBD |

# TABLE OF CONTENTS

PLAINTIFFS' PRELIMINARY STATEMENT...........................................................1

NFL DEFENDANTS' PRELIMINARY STATEMENT .......................................3

DOCUMENT REQUESTS AND RESPONSES IN DISPUTE....................................6

PARTIES' CONTENTIONS ..................................................................40

PLAINTIFF'S STATEMENT ................................................................40

    A.    Factual and Procedural Background. .........................................40

    B.    Legal Standard..................................................................43

    C.    The Documents Requested from Club Defendants are Relevant to Plaintiffs' Claims...............................................................43

    D.    The Documents Requested from Club Defendants are Proportional to the Needs of This Case..............................................45

        1.    The Issues Raised Are Important and May Impact Several Million people...................................................................46

        2.    The Amount in Controversy is Significant. ............................46

        3.    The Club Defendants Have Greater Relative Access to the Requested Information..................................................47

        4.    The Club Defendants Have Significant Resources at Their Disposal.......................................................................48

        5.    The Requested Information Goes to the Central Elements of Plaintiffs' Claims. ..........................................................48

        6.    The Club Defendants' Purported Burden is Outweighed by the Likely Benefit of the Discovery..................................49

    E.    Plaintiffs Clearly Seek Non-Duplicative Documents and Communications from Club Defendants..............................50

    F.    The Club Defendants' Boilerplate Objections Should be Overruled ........52

    G.    Conclusion.......................................................................53

i

THE NFL DEFENDANTS' STATEMENT.................................................................54

    A.    Factual and Procedural Background ............................................54

          1.    Plaintiffs Requested Extremely Broad Discovery from the
League and the Member Clubs. ..................................................55

          2.    Over the Course of the Meet-and-Confer Process, Plaintiffs
Expanded the Scope of Their Requests While Claiming That
They Were Making "Concessions."...............................................55

          3.    The NFL Defendants Have Already Agreed to Provide
Plaintiffs with Broad Discovery. .................................................56

    B.    Legal Standard.........................................................................60

    C.    Plaintiffs' Motion to Compel Should Be Denied.......................61

          1.    Plaintiffs' Demands Are A Fishing Expedition That Are Not
Reasonably Calculated To Lead To Discoverable Information. .....61

          2.    Plaintiffs' Requests Are Unduly Burdensome...............................64

          3.    Other, Less Burdensome, Discovery Methods Are Available to
Plaintiffs. ...............................................................................66

    D.    Conclusion...............................................................................67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM Energy & Construction, Inc. v. Ripley*,
  No. CV 17-5398 ................................................................................................53

*Am. Needle Inc. v. NFL*,
  560 U.S. 183 (2010) ...........................................................................................1

*Ardestani v. BMW of N. Am., LLC*,
  No. SACV 17-00721-CJC, 2018 WL 6016955 (C.D. Cal. May 4, 2018) ...............48

*ATS Products, Inc. v. Champion Fiberglass, Inc.*,
  No. 13-cv-02403, 2015 WL 3561611 (N.D. Cal. June 8, 2015) ............................66

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) ...........................................................................................1

*Covarrubias v. Ocwen Loan Servicing, LLC*,
  No. ED CV 17-904-FMO, 2018 WL 5914240 (C.D. Cal. June 21,
  2018) .....................................................................................................43, 44

*Danaher Corp. v. Lean Focus, LLC*,
  No. 19-cv-750, 2021 WL 1626707 (W.D. Wis. Apr. 27, 2021) ............................65

*Duran v. Cisco Systems, Inc.*,
  258 F.R.D. 375 (C.D. Cal. 2009) ........................................................................53

*Fischer v. Forrest*,
  No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694 (S.D.N.Y. Feb. 28,
  2017 ) ...............................................................................................................52

*Hallet v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) .............................................................................61

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1993) .............................................................................64

*In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*,
No. MDL 11-2274-DSF, 2012 WL 10450139 (C.D. Cal. June 7, 2012) ................49

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
No. 17-MD-2785, 2018 WL 1440923 (D. Kan. Mar. 15, 2018) ...........................64

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) ...........................................................*passim*

*Inland Concrete Enters., Inc. v. Kraft Ams. LP*,
No. CV 10-1776-VBF, 2011 WL 13209239 (C.D. Cal. Feb. 3, 2011) ....................50

*Kristensen v. Credit Payment Servs., Inc.*,
No. 2:12-cv-0528-APG-PAL, 2014 WL 6675748 (D. Nev. Nov. 25, 2014) ........................................................................................53

*Meggitt (Orange Cty.), Inc. v. Nie*,
No. SA CV 13-00239-DOC, 2015 WL 12743695 (C.D. Cal. Feb. 17, 2015) ........................................................................................53

*Milliner v. Mutual Secs., Inc.*,
No. 15-cv-03354-TEH, 2017 WL 6419275 (N.D. Cal. Mar. 24, 2017)...................47

*Monster Energy Co. v. Vital Pharm., Inc.*,
No. 5:18-cv-01882-JGB, 2020 WL 2405295 (C.D. Cal. Mar. 10, 2020) ...............60

*N. Pac. Ry. Co. v. United States*,
356 U.S. 1 (1958)..........................................................................46

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016) ........................................................47

*O.L. v. City of El Monte*,
No. 20-cv-00797, 2021 WL 922078 (C.D. Cal. Jan. 27, 2021) .............................67

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978).......................................................................43

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
322 F.R.D. 1 (D.D.C. 2017) ...........................................................*passim*

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ...........................................................44

iv

*Queensridge Towers, LLC v. Allianz Global Risks US Ins. Co*.,
  No. 2:13-cv-00197-JCM-PAL, 2014 WL 496952 (D. Nev. Feb. 4,
  2014) ................................................................................................................52

*RePet, Inc. v. Zhao*,
  No. ED CV 15-2315-VAP, 2016 WL 11634744 (C.D. Cal. Nov. 3,
  2016) ................................................................................................................61

*Rivera v. NIBCO, Inc*.,
  364 F.3d 1057 (9th Cir. 2004) ..................................................................64

*Salazar v. McDonald's Corp.*,
  No. 14-cv-02096-RS (MEJ), 2016 WL 736213 (C.D. Cal. Feb. 25,
  2016) ................................................................................................................60

*Sandpiper Resorts Dev. Corp. v. Glob. Realty Invs., LLC*,
  No. 8-cv-01360, 2012 WL 4120410 (D. Ariz. Sept. 19, 2012)...............64

*Schueneman v. Arena Pharms., Inc.*,
  No. 10-cv-1959, 2017 WL 3118738 (S.D. Cal. Jul. 21, 2017) .........................65, 67

*Secs. & Exchange Comm'n v. Chen*,
  No. CV 15-7425-RGK, 2016 WL 3598108 (C.D. Cal. Feb. 4, 2016) ....................47

*Sierrapine v. Refiner Products Mfg.*,
  275 F.R.D. 604 (E.D. Cal. Aug. 2, 2011) ................................................62

*Smash Tech., LLC v. Smash Solutions, LLC*,
  335 F.R.D. 438 (D. Utah 2020) ................................................................53

*Somers v. Apple, Inc*.,
  729 F.3d 953 (9th Cir. 2013) ....................................................................44

*SpeechNow.org v. Federal Election Commission*,
  No. CV 08-7056 JFW, 2009 WL 10675043 (C.D. Cal. Jan. 16, 2009) ..................51

*SPS Techs, LLC v. Briles Aerospace, Inc.*,
  No. CV 18-9536 MWF, 2019 WL 2619646 (C.D. Cal. June 6, 1019) ..................50

*United States v. Louisiana*,
  No. 11-470-JJB-DLD, 2012 WL 3726754 (M.D. La. Aug. 27, 2012).....................50

*United States v. Medtronic, Inc.*,
  No. 95-1236, 2000 WL 1478476 (D. Kan. July 13, 2000)....................................6, 66

*Woodard v. Labrada*,
    No. ED CV 16-189-JCB, 2018 WL 6930767 (C.D. Cal. Jan. 11, 2018) .................49

**Statutes**

15 U.S.C. § 1 ..............................................................................................41, 44, 45

15 U.S.C. § 2 ...........................................................................................................44

15 U.S.C. § 15 .........................................................................................................47

15 U.S.C. § 1291 .....................................................................................................55

Sherman Act § 1 ......................................................................................................41

Sherman Act § 2 ...............................................................................................41, 44

Sports Broadcasting Act of 1961 ...............................................................37, 54, 65

**Rules**

Fed. R. Civ. P. 26 ............................................................................................*passim*

Fed. R. Civ. P. 26(b)(1)..............................................................................5, 43, 60, 61

Fed. R. Civ. P. 26(b)(2)(C) .....................................................................................60

Fed. R. Civ. P. 33 ....................................................................................................68

Fed. R. Civ. P. 34(b)(2)(B) .....................................................................................52

Fed. R. Civ. P. 34(b)(2)(C) .....................................................................................52

Fed. R. Civ. P. 37 ............................................................................................1, 6, 42

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, Plaintiffs and the NFL Defendants[1] submit the following joint stipulation regarding Plaintiffs' Motion to Compel Production of Documents by NFL Club Defendants.[2]

## PLAINTIFFS' PRELIMINARY STATEMENT

Plaintiffs have been forced to file this motion to compel because 32 named defendants are refusing to participate in *any* document discovery.

Plaintiffs allege that the League and the 32 Club Defendants have agreed to limit the availability of football telecasts to artificially increase the value of that programming. This agreement limits the number of NFL games available on standard television channels and forces consumers that wish to watch any of the other games to subscribe to DirecTV and purchase DirecTV's add-on "NFL Sunday Ticket" package. *See generally In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019). The Club Defendants now seek to use the precise restraint of trade alleged by Plaintiffs as a shield to providing ***any*** documents in discovery, arguing that because the Club Defendants colluded to restrain trade with the League, any independent production by the Club Defendants would be duplicative. This position is factually wrong, not a justification for refusing to conduct discovery, and flies in the face of the Supreme Court's admonition that "[e]ach of the teams is a substantial, independently owned, and independently managed business. '[T]heir general corporate actions are guided or determined' by 'separate corporate consciousnesses,' and '[t]heir objectives are' not 'common.'" *Am. Needle Inc. v. NFL*, 560 U.S. 183, 196 (2010) (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984)). The Court should reject the Club Defendants' improper attempt to avoid their independent discovery obligations and compel the Club Defendants' production of documents as requested by Plaintiffs.

---

[1] For purposes of this motion, "NFL Defendants" refers to all defendants in this case, specifically the National Football League ("NFL" or "the League") and the individual NFL member Clubs. "Club Defendants" refers to the NFL member Clubs collectively, separate and apart from the League entities.

[2] Pursuant to Local Rule 37-2, a copy of the current scheduling order in this case is attached as Exhibit 1.

The Club Defendants' central files, including their internal communications regarding football broadcasting, NFL Sunday Ticket, and their independent market surveys, fan surveys, and consumer surveys are unquestionably relevant to Plaintiffs' antitrust allegations. These documents go directly to the Club Defendants' participation in the underlying restraint of trade alleged by Plaintiffs—whereby each Club Defendant agreed to broadcast its out-of-market Sunday afternoon games only through the League and DirecTV—as well as the but-for-world that would exist absent this restraint of trade in which all Club Defendants would compete amongst each other in executing broadcast agreements with networks. Much of the League's business, moreover, is done through the Club Defendants—and many documents and communications related to that business would not be captured if only documents in the League's possession are reviewed and produced. Plaintiffs therefore seek specific discovery from the Club Defendants, and in particular the Club Defendants' production of documents in response to Plaintiffs' requests for production Nos. 1–2, 4–5, 7–8, 12–16, 22–27, 30–31, 35–36, 41, 43–44, 51–53, 60–63, 65, 67–70, 72–74, 89, 92–93, 95–96. The Club Defendants, despite being named parties in this action, have refused on a wholesale level to produce documents in response to these requests for production (or any requests, frankly). Instead, the Club Defendants insist that Plaintiffs bear the burden of justifying with specificity any document discovery from the Club Defendants, a burden nowhere to be found in the Federal Rules of Civil Procedure or the caselaw on discovery.

Plaintiffs have made several concessions to reduce the Club Defendants' alleged burden of producing requested documents. Plaintiffs limited the requests for production that would apply to the Clubs from 104 (as initially requested) to 47.[3] Plaintiffs also agreed to limit the time periods that would apply to these requests for production, agreeing to seek documents going back to creation of Sunday Ticket in 1994 for a subset

---

[3] In moving to compel, Plaintiffs have additionally reduced the number of document requests they seek to apply to Plaintiffs, declining to compel the Club Defendants' responses to RFP Nos. 40, 42, and 55.

of RFPs, and agreeing to seek documents going back to 2004, 2008, and 2011 for additional subsets of RFPs. The Club Defendants refused these offers, and improperly argue that they will not produce *any* documents in response to these requests for production.

The Club Defendants' production of documents in response to Plaintiffs' identified requests for production is clearly relevant to Plaintiffs' claims in this case. The proportionality factors all weigh in Plaintiffs' favor. Moreover, Plaintiffs plainly show how their requests to the Club Defendants seek non-duplicative documents, and the Club Defendants provide no argument as to how their document production would be unreasonably duplicative. The remainder of the Club Defendants' objections are boilerplate and should be overruled. As a result, Plaintiffs request that the Court compel the Club Defendants to produce documents as requested in this motion.

## NFL DEFENDANTS' PRELIMINARY STATEMENT

Plaintiffs are asking this Court to permit a fishing expedition involving the NFL's 32 member Clubs that would stretch Rule 26 beyond all reason.

Contrary to Plaintiffs' more sweeping suggestions in this motion, this case involves a challenge to a single element of the NFL's television arrangements: the NFL's exclusive deal with DIRECTV for the broadcast of regular season, out-of-market professional football games on Sundays.  Plaintiffs' Complaint recognizes that the challenged agreements have always been negotiated by the NFL, and never by the individual member Clubs.  Accordingly, over the course of meet-and-confers that began in early April and remain ongoing, the NFL Defendants have agreed to custodial discovery from numerous NFL employees, including business-critical senior NFL executives who have been intimately involved with the League's broadcast infrastructure and the specific agreements at issue in this case.  These employees' time at the League dates back to the early 1990s, with an average tenure of more than a decade.  And the NFL Defendants have agreed to search for documents from the custodial files of

individuals including the President and Chief Operating Officer of the NFL dating back to the beginning of the NFL's relationship with DIRECTV.

Rather than engage in good faith negotiations or agree to review the extensive production that the NFL Defendants have offered, Plaintiffs have both expanded the scope of their demands and rushed to this Court to prematurely seek broader custodial discovery that is as irrelevant as it is excessive. For all the arguments in their motion, Plaintiffs did not once actually describe for this Court the full scope of discovery they are seeking to compel. Even beyond their demands for dozens more League custodians, Plaintiffs are now seeking to compel *custodial* discovery from *121 employees* across the 32 member Clubs, seeking documents over a period that spans upwards of 30 years. *See* Plfs. Ex. 4 at 8–12. Plaintiffs' requests span a broad range of vague and irrelevant topics, even though no decisions about the NFL's relationship with DIRECTV have ever been made at the Club level. And Plaintiffs' list of proposed Club custodians includes dozens of individuals who focus on football, not business, including player-personnel executives such as general managers and even a head coach.

The sheer scope of Plaintiffs' proposal for custodial Club discovery threatens to derail this case for years. Plaintiffs inexplicably ask this Court to compel all of the discovery listed above within 60 days, s*ee infra* p. 54, but using industry standard rates of review, the quantity of documents Plaintiffs seek could take over *ten years to review* by fifteen reviewers working full time. Klismet Decl., Defs. Ex. A at ¶ 10. And it appears that Plaintiffs will settle for nothing less—they have rejected multiple offers from the NFL Defendants for a reasonable approach to Club discovery calibrated to the issues actually presented in this case.

Plaintiffs have not identified a single case sanctioning discovery of this breadth, let alone at such an early stage and involving parties that are barely mentioned in the complaint and have no involvement in the challenged conduct. Indeed, it is hard to imagine any circumstance that could justify such an extraordinary burden, but this case is certainly not it.

As explained further below, Plaintiffs' position cannot be squared with Rule 26's requirements for three reasons.

*First*, Plaintiffs' request is not reasonably calculated to lead to discovery of a "nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The Complaint says virtually nothing about the member Clubs. That is unsurprising—Plaintiffs' claims are about the NFL's regular season agreements with DIRECTV; the Clubs have never negotiated with DIRECTV and have not negotiated regular season broadcast deals in more than half a century.

Yet Plaintiffs' RFPs fail to make any distinction between the League and the Clubs, having lodged 104 identical requests against the NFL and its 32 member Clubs. Given the centralized nature of the NFL's broadcasting arrangements, Plaintiffs have never justified how broad custodial discovery from the Clubs could be reasonably calculated to lead to information that is relevant to the claims Plaintiffs have brought in this litigation.

*Second*, Plaintiffs' request is not "proportional to the needs of the case."  *Id*.  As explained further in the declaration of Kary Klismet, Defs. Ex. A, Plaintiffs' proposal is immensely burdensome.  Based on common estimates used in the e-discovery business, the mere collection of the information Plaintiffs seek could sweep in nearly 12 terabytes of data, amounting to 120 million documents.  *Id.* at ¶ 6.  Even if 75% of those documents were screened out by date filters and search terms (a debatable proposition, given Plaintiffs' approach to those issues such far), document review would take 300,000 hours to complete, at a potentially extraordinary—and entirely unjustifiable—cost.  *Id.* at ¶ 8–9.  And even if these time estimates are off by a factor of ten, it would remain impossible to comply with Plaintiffs' demands without wreaking havoc on the discovery schedule in this case.  Under any reading of Plaintiffs' proposal, it is disproportionate and unduly burdensome.

*Third*, Plaintiffs' request is premature.  The parties have been meeting and conferring for just over three months.  And contrary to their suggestion, *see supra* p. 1,

the NFL Defendants have *not* refused to engage in Club discovery. The NFL Defendants have already agreed to broad discovery, including from NFL Committees that consist of representatives from the member Clubs. The NFL Defendants have also made clear to Plaintiffs time and again that they are willing to continue to discuss targeted discovery from the NFL member Clubs once Plaintiffs have had the opportunity to review those documents, in the unlikely event there is a factual basis for such further discovery. This approach would serve whatever interest Plaintiffs have in Club discovery at an appropriate time.

Plaintiffs "ought not be permitted . . . to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *United States v. Medtronic, Inc.*, No. 95-1236, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000). That is especially the case where, as here, the "exploratory operations" would involve decades worth of document review unlikely to unearth responsive documents. Plaintiffs' motion should be denied in its entirety.

## DOCUMENT REQUESTS AND RESPONSES IN DISPUTE

Pursuant to Local Rule 37-2.1, the document requests at issue and the NFL Defendants' and Club Defendants' responses to them are copied verbatim below. This dispute centers on whether the Club Defendants are required to produce documents in response to these requests for production.

**Request for Production No. 1.**

Your annual and quarterly financial statements from 1994 to the present

**NFL Defendants' Response to Request for Production No. 1**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad in asking for annual and quarterly financial statements, which are not relevant to the claims in the current case; (b) seeking production of information that is not relevant to the party's claims and defenses and is disproportionate to the needs of the case, as NFL Defendants' financial

statements include information unconnected to the NFL Sunday Ticket package; and (c) exceeding the relevant time period and is unduly burdensome and disproportionate.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

**Request for Production No. 2**

Documents sufficient to identify the names, titles, and job descriptions of each of your current or former officers, directors, or employees with responsibilities relating to the licensing and distribution of NFL football game programming for television.

**NFL Defendants' Response to Request for Production No. 2:**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad in asking for information about "all current or former officers, directors, or employees with responsibilities relating to licensing and distribution of NFL football game programming for television." Further, the NFL Defendants object to the term "employees with responsibilities relating to licensing and distribution" as being impermissibly vague, ambiguous, and thus unduly burdensome and disproportionate.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce documents sufficient to identify the names, titles, and job descriptions of each of the NFL Defendants' current or former officers, directors, or employees who were responsible for managing the League's business relationship with DirecTV or other television providers that offered live NFL regular season game broadcasts between June 17, 2011 and June 24, 2016.

**Request for Production No. 4.**

All documents, including all contracts and documents reflecting communications, relating to the licensing and distribution of NFL football games over television since January 1, 1987.

**NFL Defendants' Response to Request for Production No. 4**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad in its request for "all documents including all contracts and documents reflecting communications" related to the distribution of NFL football games without reasonable limitation in scope; (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for all documents related to licensing and distribution of NFL football games over television, even those with no bearing on the present litigation; and (c) exceeding the relevant time period and is unduly burdensome and disproportionate. This request is impermissibly ambiguous and vague by asking for "all documents reflecting communications" without specifying a party.

NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 6 and 7.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce final contracts between the League and CBS, NBC, Fox, ESPN, and DirecTV that were operative between June 17, 2011 and June 24, 2016 and relate to the licensing and distribution of live regular season NFL football games over television. The NFL Defendants also state that they will produce documents reflecting communications by or among the League and CBS, NBC, Fox, ESPN, and DirecTV that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to the negotiation or terms and conditions of the final contracts referenced previously in this response and reference the NFL Sunday Ticket package.

**Request for Production No. 5**

All documents, including all contracts and documents reflecting communications, between Clubs and the League regarding the video distribution of NFL football game programming, including by online streaming and over television.

**NFL Defendants' Response to Request for Production No. 5**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents . . . between Clubs and the League regarding the video distribution of NFL football game programming" without reasonable limitation in scope; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for all documents between Clubs and the League without tailoring the request to documents related to the NFL Sunday Ticket package. The NFL Defendants also object to the phrase "documents reflecting communications" as being impermissibly vague and ambiguous. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 4.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce final contracts between the League and the Clubs that were operative between June 17, 2011 and June 24, 2016 and relate to the video distribution of live regular season NFL games over television and online streaming.

**Request for Production No. 7**

All documents, including contracts and documents reflecting communications, by or among the Clubs, the League, DirecTV, NFL Network, CBS, NBC, Fox, Yahoo/Oath, Amazon, ESPN, or any other provider of video services regarding the NFL Sunday Ticket package.

**NFL Defendants' Response to Request for Production No. 7**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome

9

in its request for "all documents" regarding the NFL Sunday Ticket Package without a reasonable limitation in scope. The NFL Defendants also object to the terms "all documents . . . reflecting communications" and "other provider of video services" as being impermissibly vague and ambiguous.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 4.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce final contracts between the League and CBS, NBC, Fox, Yahoo/Oath, Amazon, and ESPN that were operative between June 17, 2011 and June 24, 2016 and reference the NFL Sunday Ticket package. The NFL Defendants also state that they will produce documents reflecting communications by or among the League and CBS, NBC, Fox, Yahoo/Oath, Amazon, and ESPN that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) reference the NFL Sunday Ticket package.

**Request for Production No. 8**

All documents reflecting communications, drafted by any of your current or former officers, directors, managers, or employees that refer to the League or its business practices, or the business practices of the Clubs, or any of their arrangements, or agreements as anti-competitive, or as a cartel, or as a monopoly, or as having market power, as well as any discussions of actual and potential competitors or competition.

**NFL Defendants' Response to Request for Production No. 8**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents reflecting communications" that in any way relate to discussions of potential or actual competition; and (b) seeking production of

information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for documents related to the business practices of the Clubs, which is unrelated to the provision of the NFL Sunday Ticket Package. The NFL Defendants further object to the terms "all documents reflecting communications," "having market power," "business practices," and "potential competitors or competition" as being impermissibly vague and ambiguous.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

**Request for Production No. 12**

All documents relating to the negotiation of television contracts, including documents relating to pricing guidelines, pricing methods, pricing formulas, pricing procedures, or authorization procedures.

**NFL Defendants' Response to Request for Production No. 12**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to the negotiation of television contracts; and (b) seeking production of information that is not proportionate to the needs of the case, as many documents relating to pricing and authorization procedures would have no relevance to the provision of the NFL Sunday Ticket Package.

NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Requests Numbers 4 and 6.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be

appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 13**

All documents relating to any Club's interest, analysis, or consideration of its rights to separately license the broadcast of its games on television.

**NFL Defendants' Response to Request for Production No. 13**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" relating to any Club's interest or consideration of its separate broadcast rights, when, because of the pooling agreement, relevant information regarding the NFL Sunday Ticket Package would be in the League's control; and (b) seeking production of information that is not proportionate to the needs of the case.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, or control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to any Club's interest, analysis, or consideration of its rights to separately license the broadcast of the League's regular season games on television.

**Request for Production No. 14**

All documents relating to financial or economic analysis of Media and Media policies by or for you.

**NFL Defendants' Response to Request for Production No. 14**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to analysis of Media and Media policies for the NFL; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the

case, as many documents relating to financial analysis of Media would have no connection to the NFL Sunday Ticket Package.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 15**

All documents relating to analysis of actual or potential consumer usage/viewership of NFL Sunday Ticket, or any package offering less games than NFL Sunday Ticket (e.g., packages of individual games or games of individual Clubs), in the United States or elsewhere, and any other satellite or direct-to-consumer packages sold under any branding, including, but not limited to, fan, market, consumer, or surveys or analysis, business reviews or reports, or competition reviews.

**NFL Defendants' Response to Request for Production No. 15**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for any analysis of "any other satellite or direct-to-consumer packages sold under any branding"; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case. The NFL Defendants also object to the term "fan, market, consumer, or surveys or analysis, business reviews or reports, or competition reviews" as impermissibly vague and ambiguous.

The NFL Defendants further object to the extent the request calls for the production of documents and data that include highly confidential business and proprietary information, or information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine. The

NFL Defendants object to the extent that it seeks production of expert materials prepared in the course of this litigation, which will be produced at the time and to the extent required by the Federal Rules of Civil Procedures and the Stipulated Expert Protocol (ECF No. 289).

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 16**

All documents relating to analysis of actual or potential consumer or customer viewership of NFL games broadcast on DirecTV outside of NFL Sunday Ticket, CBS, NBC, Fox, ESPN, NFL Network, or any other television network, including, but not limited to, fan, market, or consumer surveys or analysis, business reviews or reports, or competition reviews.

**NFL Defendants' Response to Request for Production No. 16**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as ambiguous and unduly burdensome, as it is not clear what Plaintiffs are requesting. The NFL Defendants object to this request to the extent that the phrase "fan, market, or consumer surveys or analysis, business reviews or reports, or competition reviews" is impermissibly vague and ambiguous.

NFL Defendants object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants also object to the extent that it seeks production of expert materials prepared in the course of this litigation, which will be produced at the time and to the extent

required by the Federal Rules of Civil Procedures and the Stipulated Expert Protocol (ECF No. 289). The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 15.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 22**

All documents relating to the sharing of revenue between Clubs and the League.

**NFL Defendants' Response to Request for Production No. 22**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" related to the sharing of revenue; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as many kinds of revenue sharing, such as in-person ticket and merchandise sales, are unrelated to the sharing of broadcasting revenue.

The NFL Defendants further object to the extent the request calls for the production of documents and data that include highly confidential business and proprietary information, or information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce the NFL's Constitution and Bylaws, which include all of the League's historical resolutions and reflect all amendments to the NFL Constitution since its adoption in 1970, and which describes revenue sharing agreements between Clubs and the League.

**Request for Production No. 23**

All documents relating to policies, formulas, or analyses regarding competitive balance among the Clubs.

**NFL Defendants' Response to Request for Production No. 23**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to any policy or analyses regarding competitive balance of the Clubs; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as the competitive balance of the Clubs bears little relation to the provision of the NFL Sunday Ticket Package. The NFL Defendants also object to the term "policies, formulas, or analyses" as being impermissibly vague and ambiguous.

The NFL Defendants further object to the extent the request calls for the production of documents and data that include highly confidential business and proprietary information, or information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce the NFL's Constitution and Bylaws which include all of the League's historical resolutions and reflect amendments to the NFL Constitution since its adoption in 1970, as well as a copy of any Collective Bargaining Agreement between the NFL Defendants and the NFL Players Association that was operative between June 17, 2011 and June 24, 2016.

**Request for Production No. 24**

All documents relating to the elasticity of demand or price sensitivity of, or consumers' willingness to pay for, the NFL Sunday Ticket package or any alternative package (e.g., for individual games or games of individual Clubs).

**NFL Defendants' Response to Request for Production No. 24**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome

in its request for "all documents" relating to consumers' willingness to pay for any alternative package of NFL games. The NFL Defendants also object to the term "elasticity of demand or price sensitivity" as being impermissibly vague and ambiguous.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to the extent that it seeks production of expert materials prepared in the course of this litigation, which will be produced at the time and to the extent required by the Federal Rules of Civil Procedures and the Stipulated Expert Protocol (ECF No. 289).

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to the elasticity of demand or price sensitivity of, or consumers' willingness to pay for, the NFL Sunday Ticket package.

**Request for Production No. 25**

All documents reflecting Your revenue and earnings derived, directly or indirectly from the NFL Sunday Ticket package.

**NFL Defendants' Response to Request for Production No. 25**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" reflecting the NFL Defendants' revenue from the NFL Sunday Ticket package. The NFL Defendants also object to the term "indirectly" as being impermissibly vague and ambiguous.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents sufficient to show revenue and

earnings received from DirecTV for the NFL Sunday Ticket package between June 17, 2011 and June 24, 2016.

**Request for Production No. 26**

All documents reflecting the costs associated with producing, distributing, or in any other way related to the provision of the NFL Sunday Ticket package.

**NFL Defendants' Response to Request for Production No. 26**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" reflecting any costs associated with the provision of the NFL Sunday Ticket package. The NFL Defendants also object to the term "costs associated with . . . the provision of the NFL Sunday Ticket package" as being impermissibly vague and ambiguous.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 27.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 27**

All budgets, projections, estimates, or related studies or reports prepared or received by your current or former directors, officers, or employees related to the distribution of football games over television.

**NFL Defendants' Response to Request for Production No. 27**

18

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all budgets, estimates, or related studies or reports" even tangentially related to the distribution of football games over television; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 30**

All business or strategic plans relating to the market for live presentation of professional football games in the United States.

**NFL Defendants' Response to Request for Production No. 30**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all business or strategic plans" relating to the market for live presentation of professional football games; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as not all business plans that relate to the live presentation of NFL games relate to DirecTV or the NFL Sunday Ticket package. The NFL Defendants also object to the term "market for live presentation of professional football" as being impermissibly vague and ambiguous.

The NFL Defendants further object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL

19

Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 27 and 29.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) reflect the League's formal studies, analyses, business plans, and strategic plans relating to the live presentation or distribution of live professional football games in the United States.

**Request for Production No. 31**

All documents relating to forecasted, projected, estimated, planned, or actual demand for live presentation of professional football games in the United States.

**NFL Defendants' Response to Request for Production No. 31**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to "forecasted, projected, estimates, planned, or actual demand for live presentation of professional football games"; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as many forms of live presentation of professional football games has no relationship to the NFL Sunday Ticket package. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 27, 29, and 32.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to forecasted, projected, estimated, planned, or actual demand for live presentation of regular season NFL games in the United States.

**Request for Production No. 35**

All documents relating to any memoranda, studies, reports, analyses, or presentations concerning the distribution of NFL games on television prepared by any consulting firm, agency, research firm, investment bank, commercial bank, or other investment advisors or financial services firm.

**NFL Defendants' Response to Request for Production No. 35**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to "any memoranda, studies, reports, analyses, or presentations" concerning NFL game distribution; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case. The NFL Defendants also object to the terms "concerning the distribution of NFL games on television" and "consulting firm, agency, research firm, investment bank, commercial bank, or other investment advisors or financial services firm" as being impermissibly vague and ambiguous.

The NFL Defendants further object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 29.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 36**

All documents relating to any possible or alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws, and any similar laws, rules, or regulations by you or any other Defendant, including, but not limited to:

a. any inquiry, investigation, administrative, criminal, or civil litigation, or similar actions (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed, or final) by any government entity, legislative body, or representative or instrumentality thereof (i.e., the U.S. Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Internal Trade Commission, any state law enforcement agency, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any domestic or international government body) (including all documents received from or provided to such governmental entities or used during or regarding discussions or negotiations with them);

b. any communications with any government entity regarding the legality of any media policy of yours or any other Defendant;

c. any internal audit, inquiry, or investigation (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed, or final) and further including any violation of internal antitrust or competition law policies or practices; and

d. any private actions or civil litigation (including arbitrations, mediations or negotiations and further including any violation of internal antitrust or competition law policies or practices) in which you have been a party, witness, participant, or subject.

**NFL Defendants' Response to Request for Production No. 36**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to any communications, inquiries, internal investigations, or litigations in any way related to

competition-based regulations or laws; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as this request could encompass many documents without any connection to pooled broadcast rights or NFL Sunday Ticket.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to the extent the request calls for the production of documents and data that include highly confidential business and proprietary information, or information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine. The NFL Defendants further object to the extent that it seeks production of expert materials prepared in the course of this litigation, which will be produced at the time and to the extent required by the Federal Rules of Civil Procedure and the Stipulated Expert Protocol (ECF No. 289).

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time.

**Request for Production No. 41**

All documents concerning or relating to the number of NFL fans in the United States and Canada by team and team city (e.g., Colts fans in the United States and Canada and the greater Indianapolis area).

**NFL Defendants' Response to Request for Production No. 41**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" concerning the number of NFL fans in the United States; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as requests for number of NFL fans encompasses documents entirely irrelevant to the issues raised in

this litigation. The NFL Defendants further object to this request as seeking production of information that is not relevant and not proportionate to the needs of the case to the extent it asks for documents related to NFL fans outside of the United States, as the number of NFL fans in other countries is entirely irrelevant to the issues raised in this litigation. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 40.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

**Request for Production No. 43**

All team fan club mailing lists.

**NFL Defendants' Response to Request for Production No. 43**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as team fan club mailing lists are not relevant to any party's claim or defense and/or not proportionate to the needs of the case. The NFL Defendants also object to this request to the extent that some team fan club mailing lists may not be within the custody of the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

**Request for Production No. 44**

All data from website tracking devices or services concerning or relating to the location of fans visiting a Club's website.

**NFL Defendants' Response to Request for Production No. 44**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all data" concerning or relating to the location of website visitors; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as the location of visitors to a specific Club's website has no relation to the distribution of the NFL Sunday Ticket

package. The NFL Defendants also object to the term "website tracking" as being impermissibly vague and ambiguous.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 51**

All documents relating to any negotiation or agreement, whether consummated or not, concerning (a) the licensing or carriage of any out-of-market games in the United States, or (b) the licensing or carriage of the NFL Sunday Ticket package on an exclusive or non-exclusive basis.

**NFL Defendants' Response to Request for Production No. 51**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" related to negotiations or agreements concerning the licensing or carriage of out-of-market games; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as negotiations concerning out-of-market games do not reflect the actual NFL Sunday Ticket package at issue in this litigation.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to the extent the request calls for the production of documents and data that include highly confidential business and proprietary information, or information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to negotiation or agreement concerning the licensing or carriage of any out of market games in the United States or the licensing or carriage of the NFL Sunday Ticket on an exclusive or non-exclusive basis.

**Request for Production No. 52**

All documents relating to the decision to provide NFL Sunday Ticket exclusively through DirecTV in the United States.

**NFL Defendants' Response to Request for Production No. 52**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" even tangentially related to the decision to provide NFL Sunday Ticket exclusively through DirecTV.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) reflect communications between the League and DirecTV relating to the consideration of offering NFL Sunday Ticket on an exclusive or non-exclusive basis through DirecTV in the United States.

**Request for Production No. 53**

All documents relating to the decision by the Clubs to pool their broadcast rights with the League.

**NFL Defendants' Response to Request for Production No. 53**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" even tangentially related to the decision by the Clubs

26

to pool their broadcast rights. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 3 and 4.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 60**

All documents concerning the characteristics (including preferences or proclivities) of NFL games or fans of professional football in comparison to the games, events, or fans of other sporting or entertainment activities, including but not limited to (i) documents sent to advertisers, licensors, sponsors, or broadcasters; (ii) assessments or analyses of NFL viewership; (iii) assessments or analyses of the strength or intensity of interest or support by football fans in individual NFL Defendants teams or in the League generally; (iv) assessments or analyses of the loyalties, demographics, or purchasing habits of football fans; or (v) television ratings or market share of the broadcast of NFL games, individually or collectively.

**NFL Defendants' Response to Request for Production No. 60**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to a very broad, inadequately defined category of information; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case. The NFL Defendants also object to the term "characteristics" as being impermissibly vague and ambiguous.

The NFL Defendants further object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 40 and 41.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 61**

All documents reflecting any discussion of the benefits or relative merits of advertising and sponsorship opportunities with the League or any member Club.

**NFL Defendants' Response to Request for Production No. 61**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" reflecting any discussion of the merits of advertising and sponsoring the League or any member club; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as the "benefits or relative merits of advertising or sponsorship opportunities" in the NFL are not relevant to the issues raised in this litigation. The NFL Defendants also object to the term "benefits or relative merits" as being impermissibly vague and ambiguous.

The NFL Defendants further object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL

Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 40 and 62.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 62**

All documents reflecting any substantive discussion of the benefits or relative merits of advertising and sponsorship opportunities associated with professional football programming.

**NFL Defendants' Response to Request for Production No. 62**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" reflecting any discussion of the merits of advertising and sponsorship opportunities with professional football programming; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as the "benefits or relative merits of advertising or sponsorship opportunities" in the NFL are not relevant to the issues raised in this litigation. The NFL Defendants also object to the term "benefits or relative merits" as being impermissibly vague and ambiguous.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time.

The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 63**

All documents related to advertising availability, pricing, and buy-in rates for live, professional football programming.

**NFL Defendants' Response to Request for Production No. 63**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" related to advertising availability, pricing, and buy-in rates for live football programming; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as the advertising availability, pricing, and buy-in rates are unconnected to the offering of the NFL Sunday Ticket package.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 65**

All documents or analyses concerning any impact on live attendance or ticket sales for professional football games as a result of making live NFL game broadcasts available through any medium (e.g., over television, internet, mobile device).

**NFL Defendants' Response to Request for Production No. 65**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents or analyses" even tangentially related on live broadcasts' impact on live attendance or ticket sales for NFL games and overbroad in seeking information on "any medium"; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as live attendance and ticket sales of professional football games generally are unconnected with the NFL Sunday Ticket package.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 66.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 67**

All documents concerning the strength of affinity, relationship, or association between fans and the NFL or individual Clubs, including but not limited to, fan, market, consumer or team surveys or analysis, business reviews or reports, or competition reviews.

**NFL Defendants' Response to Request for Production No. 67**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" concerning the relationship between NFL fans and the League and its individual Clubs; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as the relationship of fans with the League is unconnected to the issues in the current litigation. The NFL Defendants also object to the terms "strength of affinity," "fan, market, consumer or team surveys or analysis" and "competition reviews" as being impermissibly vague and ambiguous.

The NFL Defendants further object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 40 and 41.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) reflect the League's formal studies or analyses relating to the strength of fan loyalty to the individual Clubs.

**Request for Production No. 68**

Documents sufficient to show ticket pricing for each Club.

**NFL Defendants' Response to Request for Production No. 68**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case, as the price of tickets for in-person attendance at games is entirely unconnected to the distribution of the NFL Sunday Ticket package. The NFL Defendants also object

32

to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

**Request for Production No. 69**

Documents sufficient to show in person attendance figures for each regular-season Sunday afternoon game.

**NFL Defendants' Response to Request for Production No. 69**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as the in-person attendance figures for regular season NFL games is entirely unconnected to the distribution of the NFL Sunday Ticket package.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are dated between June 17, 2011 and June 24, 2016; and (b) are sufficient to show in person attendance figures for each regular-season Sunday afternoon game.

**Request for Production No. 70**

All documents or communications relating to the benefits received by the League, the Clubs, DirecTV, NBC, CBS, Fox, ESPN, or the NFL Network as a result of offering NFL Sunday Ticket exclusively through a single provider or through DirecTV specifically.

**NFL Defendants' Response to Request for Production No. 70**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents or communications" even tangentially related to benefits

received by the League, Clubs, DirecTV, NBC, CBS, Fox, ESPN, or the NFL Network because of NFL Sunday Ticket's exclusivity.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to the extent that it seeks production of expert materials prepared in the course of this litigation, which will be produced at the time and to the extent required by the Federal Rules of Civil Procedures and the Stipulated Expert Protocol (ECF No. 289).

In response to Request Numbers 51 and 52, the NFL Defendants already agree to produce documents that largely address the topic of this request. The NFL Defendants are willing to meet and confer to determine if this request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 72**

All documents or communications relating to the decision to offer NFL Sunday Ticket or any other NFL broadcasting rights on a non-exclusive basis in Canada or elsewhere outside the United States, and all documents relating to the price of packaged television bundles offered by DirecTV and other broadcasters in Canada or elsewhere outside the United States.

**NFL Defendants' Response to Request for Production No. 72**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents or communications" relating to the decision to offer any NFL broadcasting rights on a non-exclusive basis "in Canada or elsewhere outside the United States"; and (b) overbroad and unduly burdensome in its request for "all documents" relating to the price of packaged television bundles offered in Canada

34

or elsewhere outside the United States. The NFL Defendants further object to this request as seeking production of information that is not relevant and not proportionate to the needs of the case to the extent it asks for documents related to NFL consumers outside of the United States.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 21, 50, and 51.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 73**

All documents or communications relating to competition for fans: (i) between the NFL (and its Clubs) and other professional sports leagues; (ii) between the NFL (and its Clubs) and other football leagues, including college football; (iii) between the NFL (and its Clubs) and any other sports league, professional or amateur; and (iv) between and amongst the individual NFL Clubs.

**NFL Defendants' Response to Request for Production No. 73**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents or communications" related to competition between the League and other sports leagues, other football leagues, and between and amongst the individual NFL Clubs; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 74**

All documents or communications relating to any consideration whether to offer NFL Sunday Ticket or any other NFL broadcasting rights on a non-exclusive basis in the United States.

**NFL Defendants' Response to Request for Production No. 74**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents or communications" even tangentially related to any consideration of whether to offer NFL Sunday Ticket or any other NFL broadcasting rights on a non-exclusive basis; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as any consideration of whether to offer broadcasting rights other than NFL Sunday Ticket on a nonexclusive basis is unconnected to issues raised in the current litigation.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, and control that (a) are discovered in the course of a reasonable search; (b) are

dated between June 17, 2011 and June 24, 2016; and (c) relate to consideration of offering NFL Sunday Ticket on an exclusive or non-exclusive basis in the United States.

**Request for Production No. 89**

All documents related to any lobbying or advocacy work done by any Person relating to the Sports Broadcasting Act or any proposed amendment to that Act.

**NFL Defendants' Response to Request for Production No. 89**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" even tangentially related to any lobbing or advocacy work done by Person relating to the Sports Broadcasting Act; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case. The request is also impermissibly broad insofar it seeks "any lobbying or advocacy work done by any Person," which Plaintiffs define as encompassing virtually any legal entity anywhere in the world.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request to the extent it seeks production of documents containing information protected by any privilege, including First Amendment and attorney-client privileges, or the attorney work-product doctrine.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time.

**Request for Production No. 92**

Documents sufficient to show the cost of producing an individual NFL game broadcast.

**NFL Defendants' Response to Request for Production No. 92**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants also object to the term "costs of producing an individual NFL game

broadcast" as being impermissibly vague and ambiguous. NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 93**

All documents relating to any plan, proposed or realized, by a club or subset of clubs equaling less than the entirety of the NFL to independently broadcast live professional football games via television, radio, or the internet.

**NFL Defendants' Response to Request for Production No. 93**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as overbroad and unduly burdensome in its request for "all documents" relating to any club plan to independently broadcast live professional football games. The NFL Defendants also object to the term "club or subset of clubs equaling less than the entirety of the NFL" as being impermissibly vague and ambiguous.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce non-privileged documents in the League's possession, custody, or control that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016 and (c) relate to a plan, proposed or realized, by a club or subset of clubs to independently broadcast live professional football games via television, radio, or the internet.

**Request for Production No. 95**

38

All documents, communications, and data relating to the audio-only broadcasting of NFL games, including but not limited to contracts entered into by individual NFL teams, licensing agreements with radio stations, and data relating to pricing and number of listeners. This request includes, but is not limited to, radio broadcasts, satellite radio broadcasts, and internet radio broadcasts.

**NFL Defendants' Response to Request for Production No. 95**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents, communications, and data" even tangentially related to the audio-only broadcast of NFL games; and (b) seeking production of information that is not relevant to any party's claim or defense and/or not proportionate to the needs of the case, as the audio-only broadcast of games is not comparable to the televised broadcast of games, and so has no relation to the distribution of the NFL Sunday Ticket package. The NFL Defendants also object to the terms "audio-only" and "data" as being impermissibly vague and ambiguous.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to focus on non-duplicative, relevant, and proportionate information, potentially using search terms and a limited set of custodians, to allow the NFL Defendants to respond without undue burden.

**Request for Production No. 96**

All documents, communications, studies, or reports regarding the broadcasting of collegiate football, including but not limited to analyses of the effect of non-exclusive licensing agreements on viewership, pricing, quality of broadcast, and any other relevant metrics.

**NFL Defendants' Response to Request for Production No. 96**

The NFL Defendants understands this request as asking for communications relating to collegiate football, a legally distinct entity. Based on this understanding, in addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents, communications, studies, or reports" regarding the broadcast of collegiate football; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case. The NFL Defendants also object to the terms "quality of broadcast" and "any other relevant metrics" as being impermissibly vague and ambiguous.

The NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request.

## PARTIES' CONTENTIONS
## PLAINTIFF'S STATEMENT

### A. Factual and Procedural Background.

This case involves a decades-long scheme among Defendants to collusively sell all out-of-market NFL Sunday afternoon games only through DirecTV's "Sunday Ticket" package. *See* Consolidated Am. Compl. ("Compl.") ¶¶ 89–98. The 32 Club Defendants, each of which is an independently owned and managed business, obtained an exemption in 1961 to the antitrust laws to permit them to pool broadcasting rights and sell them jointly, but only on the condition that they provide the games on free, over-the-air television. Notwithstanding this limitation, in 1987, they agreed to allow the League to sell those pooled rights to cable networks as well, in exchange for an equal share of the resulting revenues. *Id.* ¶¶ 1, 81, 83. Beginning in the 1994 football season, the League

entered into an agreement with DirecTV to offer DirecTV's subscribers exclusive access to Sunday afternoon out-of-market NFL games in what is now known as DirecTV's "Sunday Ticket" package. *Id.* ¶¶ 75–76. Absent the Club Defendants' agreement to pool broadcasting rights, each of the Club Defendants would compete against each other in the broadcasting market for professional football games, resulting in more competitive pricing and content. *Id.* ¶¶ 11, 105–07.

Plaintiffs allege that the interlocking agreements between DirecTV, the League, and the Club Defendants violate federal antitrust laws. Plaintiffs filed a consolidated complaint alleging violations of Section 1 and Section 2 of the Sherman Act on June 24, 2016. *See* Dkt. No. 163. The NFL Defendants moved to dismiss Plaintiffs' consolidated complaint, arguing that Plaintiffs failed to state a claim under either Section 1 or Section 2 of the Sherman Act. *See* Dkt. No. 170. The district court granted the NFL Defendants' motion, dismissing Plaintiffs' consolidated complaint for failure to state a claim. *See* Dkt. No. 251. The Ninth Circuit reversed, concluding that Plaintiffs adequately stated claims for violations of Section 1 and Section 2 of the Sherman Act. *See* Dkt. Nos. 266, 267. In its opinion, the Ninth Circuit provided an extensive overview of the Club Defendants' historical broadcasting practices, and concluded that Plaintiffs adequately pleaded "that the vertical NFL-DirecTV Agreement works in tandem with the Teams-NFL agreement to restrain competition." *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1143–49, 1153 (9th Cir. 2019).

Plaintiffs subsequently served their first set of requests for production on the League and the Club Defendants. The Club Defendants' refused to produce any of the requested information in the form of a General Objection:

> "Because broadcast rights are pooled, any relevant Club documents and communications that impact the League's broadcast considerations would necessarily be duplicative of documents or communications in the League's possession, custody, or control. Custodial searches associated with each of the 32 Clubs thus impose an undue burden on the NFL Defendants, are disproportionate to the needs of the case, and are inconsistent with the obligations imposed by the Federal Rules of Civil Procedure."

Plaintiffs subsequently served a letter pursuant to Local Rule 37-1 to the Club Defendants and the League on April 7, 2021. *See* Ex. 2. The parties then conferred via telephone and email over several weeks to negotiate the scope of the requests and identify what information the League and Club Defendants were capable of producing.[4] During those discussions, the Club Defendants claimed that ***any*** production of documents by them in response to Plaintiffs' requests for production would be duplicative of the League's production, and refused to agree to having even a ***single*** ESI custodian for each Club Defendant. *See, e.g.*, Plfs' Ex. 4 (May 3, 2021 letter from Plaintiffs' counsel summarizing Club Defendants' position on document production); Ex. 5 (May 12, 2021 response from League's and Club Defendants' counsel).

During these conversations, Plaintiffs provided a series of proposals to attempt to reduce any potential burden on the Club Defendants from providing the requested information. For example, although Plaintiffs initially sought production from the Club Defendants in response to each of their 104 requests for production, Plaintiffs offered to limit the requests that would apply to the Club Defendants to the following: Requests for Production Nos. 1-2, 4-5, 7-8, 12-16, 22-27, 30-31, 35-36, 40-44, 51-53, 55, 60-63, 65, 67-70, 72-74, 89, 92-93, 95-96. *See* Plfs' Ex. 4 at 2.[5] Furthermore, recognizing that the requests implicated several decades' worth of documents, Plaintiffs proposed reasonable limitations to the time periods that would apply to several subsets of requests for production. *See, e.g.*, Ex. 2. at 1–3.

In general, Plaintiffs and the League and Club Defendants have been unable to resolve their dispute regarding discovery from the Club Defendants. Although other outstanding issues remain that the parties are attempting to resolve—including the appropriate time period for production of documents—the Club Defendants refuse to

---

[4] Plaintiffs' counsel and counsel for Club Defendants and NFL Defendants conferred telephonically on: April 16, 2021 and May 14, 2021.

[5] In moving to compel, Plaintiffs have additionally limited the RFPs that would apply to the Club Defendants, and have not moved to compel the Club Defendants' responses to RFP Nos. 40, 42, and 55.

produce *any* requested documents. *See, e.g.*, Ex. 5 at 2. Instead, the Club Defendants have repeatedly stated that any production by them would necessarily be duplicative of production by the League, despite the Club Defendants being named parties in this action and the demonstrable fact that they control relevant material that will not be found in League files.[6]

### B. Legal Standard.

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See also Covarrubias v. Ocwen Loan Servicing, LLC*, No. ED CV 17-904-FMO (SPx), 2018 WL 5914240, at *2 (C.D. Cal. June 21, 2018); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (analyzing proportionality factors in context of antitrust claims).

### C. The Documents Requested from Club Defendants are Relevant to Plaintiffs' Claims.

The requested documents from the Club Defendants are relevant to Plaintiffs' Sherman Act claims against the Defendants. "A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Covarrubias*, 2018 WL 5914240, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Relevancy should be construed liberally and with common sense and discovery should be allowed

---

[6] Plaintiffs are further concerned that the Clubs and relevant custodians at the Clubs may not have received a litigation hold notice. The League has refused to identify all the individuals that received such notices.

1  unless the information sought has no conceivable bearing on the case." *Id.* (quotation

2  marks omitted).

3         Plaintiffs allege that each of the 32 Club Defendants colluded with the League and

4  DirecTV to pool broadcasting rights and to allow DirecTV to become the exclusive

5  provider for live television broadcasts of Sunday afternoon out-of-market NFL games,

6  in violation of Section 1 and Section 2 of the Sherman Act. *See* 15 U.S.C. §§ 1, 2; *In re*

7  *Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136. To prove their

8  Section 1 claim, Plaintiffs must show (1) a contract, combination, or conspiracy among

9  two or more persons or distinct business entities, (2) by which the persons or entities

10  intended to harm or restrain trade or commerce among the several States, or with foreign

11  nations, (3) which actually injures competition, and (4) antitrust standing (i.e. that

12  Plaintiffs were harmed by Defendants' contract, combination, or conspiracy and that this

13  harm was caused by the anti-competitive aspect of Defendants' conduct) *See In re Nat'l*

14  *Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1150. Plaintiffs allege two

15  forms of a Section 2 claim: (1) a conspiracy to monopolize claim, and (2) a

16  monopolization claim. *Id.* at 1159. To prove their conspiracy to monopolize claim,

17  Plaintiffs must show: (1) the existence of a combination or conspiracy to monopolize,

18  (2) an overt act in furtherance of the conspiracy, (3) specific intent to monopolize, and

19  (4) causal antitrust injury. *Id.* (quoting P*aladin Assocs., Inc. v. Montana Power Co*., 328

20  F.3d 1145, 1158 (9th Cir. 2003)). The monopolization claim requires Plaintiffs to show:

21  (1) the possession of monopoly power in the relevant market, (2) the willful acquisition

22  or maintenance of that power, and (3) causal antitrust injury. *Id.* (quoting *Somers v.*

23  *Apple, Inc*., 729 F.3d 953, 963 (9th Cir. 2013)).

24         The documents requested from the Club Defendants—including the Club

25  Defendants' financial statements, the Clubs' internal communications on issues

26  identified by Plaintiffs, the Clubs' internal documents on issues identified by Plaintiffs,

27  and the Clubs' independent market research—are relevant to the intent and injury to

28  competition elements of Plaintiffs' claims. In this case, those elements will likely hinge

on how the Club Defendants would compete against each other in a world without the alleged restraint of trade, as well as the Club Defendants' understanding of their individual rights to license broadcasts of professional football games absent the pooling agreement between the Club Defendants and the League. Documents and communications regarding the Club Defendants' financial performance, revenue derived from professional football game broadcasts, considerations of their rights to independently broadcast games, and independent market research, may help Plaintiffs demonstrate the but-for world that would exist absent the alleged restraints of trade, as well as the Club Defendants' specific intent to monopolize trade. As a result, the requested information is relevant to Plaintiffs' Sherman Act claims.

To provide just one example that is in the public domain, Jed York, the CEO of the San Francisco 49ers, spoke on the Freakonomics podcast and stated: "I would first say that the biggest blessing and the biggest curse of the N.F.L. are the TV contracts, where it makes you very successful, but it also makes it so you don't really try new things and try to disrupt." *See* Ex. 6 at 9. The existence of monopoly profits ("makes you very successful") and a lack of innovation ("don't really try new things and try to disrupt") are precisely the harms Congress designed the antitrust laws to remedy. Mr. York happened to speak publicly but there are undoubtedly other internal materials within each Club Defendant that address similar issues.

### D. The Documents Requested from Club Defendants are Proportional to the Needs of This Case.

Plaintiffs' requests for documents from the Club Defendants also satisfy Rule 26's proportionality test. Although no one factor is dispositive, each factor weighs in Plaintiffs' favor. The requested information goes to central parts of Plaintiffs' claims. Furthermore, the amount in controversy is substantial and the Club Defendants have greater access to the information and sufficient resources to satisfy their discovery obligations. Lastly, the Club Defendants' purported burden does not outweigh the likely benefit.

1

2

### 1.  The Issues Raised Are Important and May Impact Several Million People.

Rule 26 recognizes that cases implicating important public policy issues often "have importance far beyond the monetary amount involved." Fed. R. Civ. P. 26 advisory committee notes to 1983 Amendment. The public policy issues underlying Plaintiffs' claims include establishing a broadcasting market for live professional football games that "preserv[es] free and unfettered competition as the rule of trade" *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958). Plaintiffs' claims implicate the same public policy issues recognized by the United States Department of Justice in 1953 when it successfully challenged the NFL's and its teams' similar agreement to prohibit some out-of-market television broadcasts as violating the Sherman Act. *See* Compl. ¶ 2. The restraint of trade committed by the League, Club Defendants, and DirecTV here has significantly reduced competition in the professional football broadcasting market, substantially increasing prices paid by consumers for decades and severely limiting broadcasting output during the same period.

Moreover, because the Sunday Ticket package currently has over 2 million residential and consumer subscribers, this case has "the potential to impact many people." *Oxbow Carbon*, 322 F.R.D. at 7. Plaintiffs seek to certify two classes: one for residential Sunday Ticket subscribers, and another for commercial Sunday Ticket subscribers. Compl. ¶¶ 40–43. Although Plaintiffs have not yet determined the precise number of members for each putative class, the residential subscriber class includes several million people, and the commercial subscriber class likely includes tens of thousands of entities. *See, e.g.*, id. at ¶ 34.

This action involves complex antitrust issues arising from Defendants' decades-long restraint on the television broadcasting market for live professional football and has the potential to impact several million people. As a result, the issues at stake in the action are substantial and this factor weighs in Plaintiffs' favor.

### 2.  The Amount in Controversy is Significant.

46

In considering the amount in controversy, courts should "compare the cost of discovery to the amount in controversy to determine the proposed discovery's proportionality." *Oxbow Carbon*, 322 F.R.D. at 7 (quotation marks and alterations omitted). Although Plaintiffs have not yet quantified damages at this early stage, this is an antitrust case where the putative classes include millions of residential subscribers and tens of thousands of commercial subscribers on a nationwide scale. Furthermore, antitrust law imposes treble damages, attorneys' fees, and joint and several liability. *See* 15 U.S.C. § 15; *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 314 (N.D. Cal. 2016). As a result, damages may amount to several billion dollars. (Indeed, the League garnered multiple billions of dollars each year of the now 10-year class period through its various television deals.) Given the significant amount in controversy, the cost of the requested discovery is proportional. *See Milliner v. Mutual Secs., Inc.*, No. 15-cv-03354-TEH, 2017 WL 6419275, at *3 (N.D. Cal. Mar. 24, 2017) (granting motion to compel where amount in controversy was "tens of millions of dollars"); *Secs. & Exchange Comm'n v. Chen*, No. CV 15-7425-RGK, 2016 WL 3598108, at *5 (C.D. Cal. Feb. 4, 2016) (amount in controversy potentially exceeding $32 million was "significant"); *Oxbow Carbon*, 322 F.R.D. at 7-8. Thus, this factor weighs in Plaintiffs' favor.

### 3.  The Club Defendants Have Greater Relative Access to the Requested Information.

The advisory committee notes to Rule 26 recognize that some cases involve an informational asymmetry where "[o]ne party—often an individual plaintiff—may have very little discoverable information" while the "other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve." Fed. R. Civ. P. 26 advisory committee notes to 2015 Amendment. Where such an asymmetry exists, the "burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id.*

The information requested from the Club Defendants—such as internal communications among the Clubs, market research performed by the Clubs, the Clubs' business plans, and other internal Club documents—is uniquely available only to the Club Defendants. Plaintiffs are private commercial entities and private individuals who cannot otherwise access this information. As a result, this factor weighs in Plaintiffs' favor. *See Ardestani v. BMW of N. Am., LLC*, No. SACV 17-00721-CJC (JDEx), 2018 WL 6016955, at *3 (C.D. Cal. May 4, 2018) ("[A]n individual plaintiff may not be in a position to proffer a greater showing about internal systems of another party."); *Oxbow Carbon*, 322 F.R.D. at 8.

### 4. The Club Defendants Have Significant Resources at Their Disposal.

Although the Club Defendants have claimed that producing the requested information would result in a substantial burden for their counsel—who have agreed to represent both the League and all 32 Club Defendants—no individual Club Defendant has made any showing that it lacks the resources to provide the requested documents. *See Oxbow Carbon*, 322 F.R.D. at 8. Nor could they. Each individual Club Defendant is a highly successful business, with each Club Defendant generating hundreds of millions of dollars in annual revenue. This factor weighs in Plaintiffs' favor.

### 5. The Requested Information Goes to the Central Elements of Plaintiffs' Claims.

In determining the importance of the requested discovery in resolving the issues in the case, courts examine whether "the issues at stake are at the very heart of the litigation" or related to a side issue. *Id.* As discussed above, the information requested from the Club Defendants directly relates to how the Club Defendants would compete against each other absent the alleged restraint of trade, as well as the Club Defendants' intent to monopolize trade. Those issues are central elements of Plaintiffs' claims in this case. As a result, this factor weighs in Plaintiffs' favor.

### 6.  The Club Defendants' Purported Burden is Outweighed by the Likely Benefit of the Discovery.

In its response to the document requests and the parties' negotiations on independent production by the Club Defendants, the Club Defendants have yet to explain the burden they claim with the requisite degree of specificity. *See Woodard v. Labrada*, No. ED CV 16-189-JCB (SPx), 2018 WL 6930767, at *2 (C.D. Cal. Jan. 11, 2018). Instead, the Club Defendants have rested on broad assertions of burden, arguing that it would take significant effort and cost to produce the requested documents. Beyond that, the Club Defendants have made no effort to specify the burden of producing the requested documents. But "[t]he mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*, No. MDL 11-2274-DSF (PLAx), 2012 WL 10450139, at *4 (C.D. Cal. June 7, 2012); *see also Oxbow Carbon*, 322 F.R.D. at 9 (compelling discovery estimated to cost $142,000 in antitrust suit).

Moreover, Plaintiffs have made substantial concessions to reduce the potential burden on the Club Defendants in producing the requested documents. Plaintiffs proposed that the Club Defendants produce documents responsive to only 47 of Plaintiffs' initial 104 requests for production. *See* Plfs' Ex. 4 at 2. Plaintiffs also proposed limiting the time period that would apply to Plaintiffs' first set of requests for production, proposing periods that began at the time of the creation of Sunday Ticket in 1994 for several dozen requests for production. *See* Ex. 2 at 3. The Club Defendants have uniformly rejected these proposals and have offered no counterproposals whereby they would agree to produce ***any*** responsive documents independent from the League.

49

### E. Plaintiffs Clearly Seek Non-Duplicative Documents and Communications from Club Defendants

The core of the Club Defendants' objections to participating in discovery is that any production by them would necessarily be duplicative of the League's production because the Club Defendants have agreed to pool broadcasting rights with the League. *See* Ex. 5 at 2. This objection is misplaced for several reasons.

First, the League has not produced any documents in response to Plaintiffs' requests for production, so any claim that production by the Club Defendants is duplicative of documents produced by the League is premature. *See SPS Techs, LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASx), 2019 WL 2619646, at *4 (C.D. Cal. June 6, 1019) ("To the extent that responsive information is duplicative of documents that have been produced in response to other Requests, Plaintiff need not duplicate its production."). Moreover, the Club Defendants err in arguing that the League's future document productions relieve them of their independent obligations under the Federal Rules of Civil Procedure. *See United States v. Louisiana*, No. 11-470-JJB-DLD, 2012 WL 3726754, at *6 n.3 (M.D. La. Aug. 27, 2012) ("[Respondent] also argues that the discovery is duplicative because . . . the result is that plaintiff would have three copies of the same documents. This is a specious argument . . . The discovery would be duplicative only if [Respondent] already produced documents and had to produce the same documents again."). The Club Defendants have also made no showing as to how Plaintiffs' identified requests seek ***unreasonably*** duplicative production, failing to meet their burden in objecting to Plaintiffs' requests. *See Inland Concrete Enters., Inc. v. Kraft Ams. LP*, No. CV 10-1776-VBF (OPx), 2011 WL 13209239, at *2 (C.D. Cal. Feb. 3, 2011) ("Defendant has failed to establish that any duplicative requests were 'unreasonably cumulative or duplicative.'" (emphasis in original)).

Second, Plaintiffs' requests for production clearly seek documents from the Club Defendants that would not be in the League's custody or control. These documents include, among others, (1) the Club Defendants' separate financial statements (RFP No.

1), (2) documents identifying the Clubs Defendants' officers, directors, and employees (RFP No. 2), (3) internal communications by the Club Defendants relating to the licensing and distribution of NFL games (RFP No. 4), (4) internal communications by the Club Defendants, and among Club Defendants, regarding the Sunday Ticket package (RFP No. 7), (5) communications by the Club Defendants' officers, directors, managers, or employees describing the NFL's business practices as anticompetitive (RFP No. 8), (6) internal communications by the Club Defendants and among Club Defendants relating to the negotiation of television contracts (RFP No. 12), (7) internal documents held by the Club Defendants relating to their interest, analysis, or consideration of their rights to separately licensing games on television (RFP No. 13), (8) internal financial or economic analyses regarding the League's Media policies, including how those Media policies impact the financial health of each Club Defendant (RFP No. 14), (9) the Club Defendants' own market surveys, fan surveys, consumer surveys, business reviews, reports, and competition reviews (RFP No. 15), (10) internal documents showing the costs of the NFL Sunday Ticket Package to each Club Defendant (RFP No. 26), (11) the Club Defendants' own budgets, estimate, studies, or reports related to the distribution of football games over television (RFP No. 27), and (12) the Club Defendants' own business plans regarding the market for live football games (RFP No. 30). *See SpeechNow.org v. Federal Election Commission*, No. CV 08-7056 JFW (FMOx), 2009 WL 10675043, at *5 (C.D. Cal. Jan. 16, 2009) ("[M]erely because the requests are identical does not presuppose that the documents produced will be identical, let alone cumulative."). The Club Defendants have made no showing as to how these documents—or any other Club-specific documents requested by Plaintiffs—are unreasonably duplicative of the League's production or other Club Defendants' production.

Moreover, the Club Defendants ignore the fact that discovery from the Clubs is also discovery from the League itself. The League is governed by committees comprised of representatives from the Clubs. For example, the League's Executive Committee

includes one representative from each of the 32 Clubs. *See* Ex. 7 at 2 ("The Executive Committee includes one representative—an owner or top officer—from each of the league's 32 clubs."). That includes committees directly responsible for the League's licensing of television broadcast rights. *See* Ex. 8 at 1 (stating that Robert Kraft, owner of the New England Patriots, was chairman of the League's Media Committee).[7] As a result, some relevant discovery regarding the League as a whole is not possible without discovery from the Clubs.

In sum, Plaintiffs' requests for production from the Club Defendants clearly seek non-duplicative documents from the Club Defendants, and the Club Defendants' objections on this basis should be overruled.

### F. The Club Defendants' Boilerplate Objections Should be Overruled

In responding to the RFPs identified above, the Club Defendants included a litany of boilerplate objections that should be overruled.

First, the Club Defendants listed 35 "general objections" in its response to Plaintiffs' first set of requests for production, without providing any explanation as to why those objections are justified in response to Plaintiffs' requests. The Club Defendants then improperly attempt to incorporate each of those 35 general objections in their responses to Plaintiffs' requests for production, again providing no explanation as to why any of those objections are warranted. *See Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017 )"[I]ncorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection"); *see also Queensridge Towers, LLC v. Allianz Global Risks US Ins. Co*., No. 2:13-cv-00197-JCM-PAL, 2014 WL 496952, at *4 (D. Nev. Feb. 4, 2014) ("The general objections, reservations, and

---

[7] Indeed, although the League and Club Defendants identified Robert Kraft on their Rule 26 initial disclosures as a person with discoverable information, they have thus far refused to search Robert Kraft's custodial files or the custodial files of any other proposed ESI custodian for the Club Defendants.

boilerplate objections look like a form provided to the firm's most junior attorney thirty years ago to teach new lawyers how to obstruct discovery."). Each of the Club Defendants' general objections should be overruled.

Second, the Club Defendants repeatedly object to Plaintiffs' requests for production using "to the extent" language, a practice that has been routinely recognized as tantamount to providing no objection whatsoever. *See Meggitt (Orange Cty.), Inc. v. Nie*, No. SA CV 13-00239-DOC (DFMx), 2015 WL 12743695, at *1 (C.D. Cal. Feb. 17, 2015) ("The practice of making boilerplate general objections couched in terms of 'to the extent' . . . is improper."); *Kristensen v. Credit Payment Servs., Inc*., No. 2:12-cv-0528-APG-PAL, 2014 WL 6675748, at *5 (D. Nev. Nov. 25, 2014) (overruling and striking objections couched in "to the extent" language); *see also Smash Tech., LLC v. Smash Solutions, LLC*, 335 F.R.D. 438, 447 (D. Utah 2020) ("[A]ll of Plaintiffs' 'to the extent that' objections fail the specificity requirements because they conceal from opposing counsel and the court the actual problem with each request."). Each of the Club Defendants' "to the extent" objections should be overruled.

Third, in objecting to various requests as irrelevant, vague, or unduly burdensome, the Club Defendants provide no argument as to why any of these objections are justified, again relying on bald assertions. *See Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper.") (collecting cases); *AECOM Energy & Construction, Inc. v. Ripley*, No. CV 17-5398 RSWL (SSx), 2018 WL 6266462 (C.D. Cal. Oct. 3, 2018) (same). Each of the Club Defendants' unexplained and unsupported objections should be overruled.

### G. Conclusion

Plaintiffs respectfully request the Court compel the Club Defendants to produce documents in response to RFP Nos. RFP Nos. 1–2, 4–5, 7–8, 12–16, 22–27, 30–31, 35–36, 41, 43–44, 51–53, 60–63, 65, 67–70, 72–74, 89, 92–93, 95–96. Given the Club Defendants' obstinate refusal to produce any documents, Plaintiffs respectfully request the Court compel this production within 60 days of the Court's hearing on this motion.

1

## THE NFL DEFENDANTS' STATEMENT

2       Plaintiffs' request for custodial discovery from the NFL member Clubs is not

3   remotely calculated to lead to responsive documents, is unduly burdensome, and is

4   premature.  It is therefore unsurprising that Plaintiffs have identified no authority

5   justifying anything remotely similar to the fishing expedition they seek to begin here.

6   Plaintiffs' motion should be denied.

7       **A. Factual and Procedural Background**

8       For the last 60 years, since Congress expressly exempted the NFL's broadcast

9   agreements from antitrust scrutiny through the Sports Broadcasting Act of 1961

10  ("SBA"), 15 U.S.C. § 1291[8], the League has controlled all aspects of television

11  distribution for the NFL's regular season games.  That arrangement has been to the great

12  benefit of consumers.  The NFL is immensely popular and competitive.  Every Sunday

13  afternoon, the League's devoted fans get access to a variety of high-quality professional

14  football games.  And, in contrast to most other professional sports leagues, all of those

15  games are broadcast on free, over-the-air television.

16      For purposes of the present motion to compel, the essential point is that the NFL

17  member Clubs have no role in negotiating the media deals the League enters, including

18  those at issue in this case.  The member Clubs pooled their media rights decades ago and

19  turned them over to the League—a decision sanctioned by the SBA.  Plaintiffs do not

20  and cannot dispute this; a central premise of their claims is that the League's broadcast

21  deal with DIRECTV is negotiated by the League, not by the individual Clubs.  Compl.

22  ¶ 92; *see also id.* ¶ 81 (it is the League who "negotiate[s] pooled rights television deals"

23  on behalf of the Clubs); NFL Const. & Bylaws, Art. X.  To the extent individuals from

24  the member Clubs might have some exposure to the regular season media negotiations

25  and issues like revenue sharing, it is only through the NFL's centralized Committees, the

26

27  ───────────────
[8] For this reason, it is puzzling that Plaintiffs claim these agreements are being challenged
and assert that the League "limits the number of NFL games available on standard
television channels." *See supra* p. 1.

28

54

minutes and briefing materials of which the NFL Defendants have already agreed to produce.

### 1.  Plaintiffs Requested Extremely Broad Discovery from the League and the Member Clubs.

On January 22, 2021, Plaintiffs served a set of 104 RFPs on all of the NFL Defendants in this matter.  These RFPs sought everything under the sun, including topics far afield of the NFL–DIRECTV Sunday Ticket package at the center of this litigation. Plaintiffs' requests run the gamut from the sweepingly broad—*e.g.*, *all* documents relating to the licensing and distribution of NFL football games over television since January 1, 1987 (RFP No. 4), *all* communications without limitation between the League and any television provider (RFP. No. 6), *all* documents concerning the characteristics of NFL games or fans of professional football (RFP. No. 60)—to the clearly irrelevant— *e.g.*, all documents concerning the effect or potential effect of additional bye weeks on the scheduling or broadcasting of all NFL games, (RFP No. 47), and ticket prices for in-stadium attendance for each Club, (RFP No. 68).  Furthermore, Plaintiffs addressed all RFPs to the League and the member Clubs, without any effort to consider whether all of the NFL Defendants would be expected to have responsive information.

The RFPs also noted that, "[u]nless otherwise specified, these requests for documents call for documents, data, and other information prepared, created, sent, altered, or received since June 17, 2011," which is the start of the alleged class period. *See* Plfs. Ex. 3 at 1.[9]

### 2.  Over the Course of the Meet-and-Confer Process, Plaintiffs Expanded the Scope of Their Requests While Claiming That They Were Making "Concessions."

---

[9] On April 8, 2021, Plaintiffs served a second set of RFPs on the NFL Defendants, which are not the subject of this motion to compel.

Notwithstanding the extraordinary breadth of Plaintiffs' discovery requests, the NFL Defendants expended significant effort in response to Plaintiffs' requests, including through interviews of potential document custodians. *See infra* p. 59. The NFL Defendants agreed to meet and confer with Plaintiffs in good faith, attempting to reasonably narrow the issues in dispute. Plaintiffs, however, used the meet-and-confer process not to reach good faith compromises, but instead to *expand* their requests. For example, notwithstanding the RFPs' limitation to documents after 2011, Plaintiffs' first meet-and-confer letter sought to extend the time period for more than 80 of their requests extend still further back, including as far back as 1994, and inexplicably labeled this as a "compromise" position. *See* Plfs. Ex. 2 at 3; Ex. 3 at 1–2. Plaintiffs subsequently doubled-down on this position, claiming that they were entitled to discovery in a wide range of areas dating back more than *70 years* but that they were purportedly being reasonable by requesting "only" discovery for a nearly 30-year period.

Plaintiffs have taken a similarly unrestrained approach to custodial discovery from the NFL. The NFL Defendants initially agreed to search the files of 12 League custodians. Plaintiffs responded by demanding searches of the files of more than 20 current and former NFL employees, as well as "all other persons" who held 17 different positions at the NFL between 1994 and the present, along with all of their administrative assistants—some 160 custodians, in total. Plfs. Ex. 4 at 8–12. In addition, Plaintiffs have demanded searches of the files of 121 Club custodians including a head coach, a seemingly random collection of marketing and operations employees, and an individual who left his position more than 20 years ago. *Id.* They also listed 30 general managers, a position focused on selecting coaches and running backs, not Sunday Ticket.

### 3.  The NFL Defendants Have Already Agreed to Provide Plaintiffs with Broad Discovery.

Plaintiffs' entire approach to discovery in this litigation has been to seek as many documents as possible on as many topics as possible, without regard for relevance, scope, burden, or proportionality. Despite the incredible and unreasonable burden Plaintiffs'

strategy creates, the NFL Defendants have agreed to expansive League discovery on a broad host of topics.  To date, the NFL Defendants have agreed to search for or provide the following from the League:

- all present and historical League constitutions and by-laws (RFP No. 3);
- all contracts between the NFL and CBS, NBC, Fox, ESPN, Yahoo, Amazon, and DIRECTV since 2011 (RFP Nos. 4, 6, 7, and 104);
- all communications about those contracts that reference the NFL Sunday Ticket Package (RFP Nos. 4, 6, 7, and 104);
- all minutes of the Executive Committee relating to the live distribution of NFL games or the NFL Sunday Ticket Package (RFP Nos. 9 and 10);
- all documents that relate to any Club's interest, analysis, or consideration of its rights to separately license the broadcast of the League's regular season games on television (RFP No. 13);
- the Collective Bargaining Agreement between the NFL and the NFL Players Association (RFP No. 23);
- documents relating to the elasticity of demand for NFL Sunday Ticket (RFP No. 24);
- revenue and earnings from the Sunday Ticket Package (RFP No. 25);
- documents reflecting any of the League's formal studies, analyses, business plans, and strategic plans for live football distribution (RFP Nos. 29 and 30);
- documents relating to forecasted or actual demand for live presentation football games (RFPs No. 31 and 32);
- documents relating to changing or setting Sunday Ticket prices (RFP No. 34);
- documents sufficient to show the schedule for Sunday afternoon regular season games (RFP No. 45);
- documents relating to DIRECTV's and the League's Sunday Ticket advertising strategies (RFP No. 49);

- documents relating to the negotiation of out of market games or licensing of Sunday Ticket (RFPs No. 51 and 52);

- documents comparing and contrasting purchasers of residential subscriptions and commercial subscriptions of Sunday Ticket (RFP No. 59);

- documents concerning the impact of television viewership or revenue as a result of Sunday Ticket (RFP No. 66);

- documents reflecting formal studies or analyses relating to fan loyalty to individual Clubs (RFP No. 67);

- attendance figures for every regular-season Sunday afternoon game (RFP No. 69);

- documents related to the consideration of offering Sunday Ticket on an exclusive or non-exclusive basis in the United States (RFP No. 74);

- documents related to the impact of the acquisition of DIRECTV by AT&T on Sunday Ticket (RFP No. 76);

- documents sufficient to show contact information, job descriptions, and dates of employment for individuals on the NFL Defendants' initial disclosures (RFP No. 86);

- documents related to plans by member Clubs to independently broadcast live professional football (RFP No. 93);

- documents that relate to the effect of exclusivity on broadcast quality (RFP No. 97);

- briefing memoranda submitted to the League's Broadcast or Media Committees since 1994 (RFP No. 98); and

- formal studies or analysis created by the League's Finance Committee (RFP No. 101).

Critically, and contrary to Plaintiffs' misleading claim, this discovery involves the NFL member Clubs, all of whom have representatives on various Committees.  For example, every NFL member Club has a representative on the Executive Committee, and

the NFL Defendants agreed to produce minutes of the Executive Committee meetings that relate to the Sunday Ticket package or the licensing and distribution of live football games, *see* NFL Defs. Responses to RFP Nos. 9–10.  The NFL Defendants also agreed to produce briefing materials submitted to the Broadcast and Media Committees, *see* NFL Defs. Response to RFP No. 98, which similarly are composed of representatives from NFL member Clubs.[10]  In addition, the NFL Defendants agreed to produce the following discovery as it relates to the NFL member Clubs:  identifying information for any NFL Defendant's personnel with responsibilities relating to the licensing and distribution of NFL football game programming (RFP No. 2); all final contracts between the Clubs and the League regarding the video distribution of NFL games (RFP No. 5); all documents reflecting revenue and earnings from the NFL Sunday Ticket package (RFP No. 25); and in-person attendance figures for each regular-season Sunday afternoon game (RFP No. 69).

As part of this discovery, the NFL Defendants have also agreed to conduct reasonable searches for documents from the custodial files of 17 current and former high-ranking NFL employees, all of whom have been involved in the NFL's media broadcasting deals for many years.  This list includes the former President and Chief Operating Officer who is credited with creating the original NFL Sunday Ticket Package, and high-ranking NFL officials who have led negotiations over every subsequent agreement for the licensing and distribution of the NFL Sunday Ticket Package.  The NFL Defendants have also agreed to search the NFL's Media Department shared drive—the central depository for all broadcasting-related matters at the NFL—for responsive documents.

Further, although Plaintiffs' initial requests identified June 2011 as the start date for the required searches, Defendants have agreed to extend this start date for 6

---

[10] The Media Committee, which was previously known as the Broadcast Committee, does not produce minutes of its meetings.  Decisions of these Committees are memorialized in League resolutions, which the NFL Defendants have agreed to produce. *See* NFL Defs. Responses to RFPs 3, 11.

1   custodians who were at the heart of the DIRECTV media negotiations, and search their

2   custodial files going back to the beginning of their NFL tenures. These custodians have

3   an average tenure at the NFL of nearly 15 years and, in some cases, have been at the NFL

4   for 20 years. The NFL Defendants have likewise compromised on the end date of

5   production, agreeing—despite the unusual circumstance that Plaintiffs' operative

6   Complaint was filed nearly 5 years ago—to extend the end date of discovery to the date

7   on which Defendants collect ESI for all agreed-upon custodians.

8       All told, the NFL Defendants have agreed to produce significant discovery on all

9   topics reasonably within the scope of the Complaint, including from numerous key

10  custodians, covering nearly 30 years and almost 50 topics.

11      **B. Legal Standard**

12      The right to discovery must not exceed issues relevant to a party's claim or

13  defense. Fed. R. Civ. P. 26(b)(1). And "even plainly relevant" discovery must "be

14  denied or limited where: (i) the discovery sought is unreasonably cumulative or

15  duplicative, or can be obtained from some other source that is more convenient, less

16  burdensome, or less expensive; (ii) the party seeking discovery has had ample

17  opportunity to obtain the information by discovery in the action; or (iii) the proposed

18  discovery is outside the scope permitted by Rule 26(b)(1)." *Monster Energy Co. v. Vital*

19  *Pharm., Inc.*, No. 5:18-cv-01882-JGB (SHKx), 2020 WL 2405295, at *5 (C.D. Cal. Mar.

20  10, 2020) (citing Fed. R. Civ. P. 26(b)(2)(C)).

21      Central to the court's assessment of a party's discovery requests and enjoying

22  "pride of place" in Rule 26 is "the concept of proportionality." *Oxbow Carbon &*

23  *Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 2 n.3 (D.D.C. 2017) (internal

24  citations omitted). All parties and the court have a "collective responsibility to consider

25  the proportionality of all discovery and consider it in resolving discovery disputes." Fed.

26  R. Civ. P. 26 Ad. Comm. Notes. Parties must "consider the factors bearing on

27  proportionality before propounding discovery requests, issuing responses and objections,

28  or raising discovery disputes before the court." *Salazar v. McDonald's Corp.*, No. 14-

cv-02096-RS (MEJ), 2016 WL 736213, at *2 (C.D. Cal. Feb. 25, 2016).  Proportionality determinations "must be made on a case-by-case basis."  *Oxbow Carbon*, 322 F.R.D. at 3 (citation omitted).

Additionally, "[i]n moving to compel the production of documents, the moving party has the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery."  *RePet, Inc. v. Zhao*, No. ED CV 15-2315-VAP (SPx), 2016 WL 11634744, at *3 (C.D. Cal. Nov. 3, 2016) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

## C. Plaintiffs' Motion to Compel Should Be Denied

The massive discovery burden Plaintiffs seek to impose, after only minimal negotiation, is nowhere near proportional to the needs of the actual claims in this case and amounts to nothing more than a cost-prohibitive fishing expedition.  Plaintiffs seek to force the NFL Defendants to undergo expansive and expensive custodial searches that lack foundation in the complaint and are not tailored in any relevant sense.  The NFL Defendants have consistently offered less burdensome, more appropriately tailored discovery methods that will better serve the interests of the parties and the Court.

### 1.  Plaintiffs' Demands Are A Fishing Expedition That Are Not Reasonably Calculated To Lead To Discoverable Information.

Rule 26 requires that discovery be calculated to lead to "relevant information."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs know that the DIRECTV agreement has always been negotiated by the League, not the Clubs, and that there is accordingly no reason to believe that the Clubs would have relevant information beyond what the NFL Defendants have already agreed to provide—and certainly no reason to believe that a broad custodial search of the Clubs' files would be warranted.  Plaintiffs offer no reasonable explanation for the discovery they seek here.

Nor should Plaintiffs be permitted to justify the breadth of their requests by misstating what this case is about.  At points, Plaintiffs appear to suggest that this litigation is challenging the entire NFL football broadcast system, *see, e.g.*, *supra* p. 1

("Plaintiffs allege that the NFL Defendants and the 32 Club Defendants have agreed to limit the availability of football telecasts to artificially increase the value of that programming.  That agreement limits the number of NFL games available on standard television channels . . .").  As noted above, however, the agreements that provide for free broadcasts of NFL football games through media partners such as Fox and CBS are exempted from antitrust scrutiny by the SBA.  In any event, the broadcast agreements are also negotiated by the League, not the Clubs, such that custodial discovery would be inappropriate even if the case had this broader scope.

Plaintiffs' efforts to specify the information they are hoping to obtain does not make their position more justifiable.

*First*, Plaintiffs claim they are entitled to financial information from the individual NFL member Clubs.  *Supra* p. 45.  But the NFL Defendants have already agreed to provide relevant financial information regarding revenue earned from the Sunday Ticket package and the share of such revenues allocated to each Club.[11]  *See* NFL Defs. Responses to RFP Nos. 22, 25, *supra* pp. 15, 17.  Plaintiffs have provided no explanation for why they also need financial statements from all NFL Defendants, RFP No. 1, *supra* p. 6.  And courts generally do not allow discovery into a defendant's financial condition because such discovery is not relevant to the parties' claims or defenses.  *Sierrapine v. Refiner Products Mfg.*, 275 F.R.D. 604, 609–10 (E.D. Cal. Aug. 2, 2011) (collecting cases).[12]  More importantly, even if Plaintiffs were entitled to financial statements from the 32 member Clubs—which they are not—that would, at most, justify a request for those documents, not costly and burdensome custodial discovery from 121 Club custodians.

---

[11] In their motion to compel, Plaintiffs broadly assert that they are entitled to "revenue derived from professional football game broadcasts."  *Supra* p. 45.  But none of Plaintiffs' RFPs actually request this information.

[12] One narrow exception is when a party seeks punitive damages, something not available in antitrust cases.  *Sierrapine v. Refiner Products Mfg.*, 275 F.R.D. 604, 609 (E.D. Cal. Aug. 2, 2011).

*Second*, Plaintiffs attempt to rationalize their broad discovery demands by claiming that they are entitled to "the Clubs' independent market research." *Supra* p. 45. But Plaintiffs do not even seek market research in any of the RFPs that are the subject of this motion. Plaintiffs suggest that RFP No. 15 broadly requests "the Club Defendants' own market surveys, fan surveys, consumer surveys, business reviews, reports and competition reviews." *Supra* p. 51. In fact, RFP No. 15 requests only documents relating to "analysis of actual or potential consumer usage/viewership of NFL Sunday Ticket, or any package offering less games than NFL Sunday Ticket." *Supra* p. 13.[13]

In any event, Plaintiffs have provided no reason to believe that any particular NFL member Club has conducted any such research, much less all 32 Clubs, particularly given that market research related to viewership of NFL regular season football broadcasts is typically conducted by the League. More importantly, even if there was some reason to believe Clubs had conducted such research, that would at most justify a request or search for that specific information, not custodial searches of the files of 121 Club employees, which involves collecting, producing, and uploading large amounts of information.

*Finally*, and on the other end of the spectrum, Plaintiffs seek internal documents and communications from the NFL member Clubs about "considerations of their rights to independently broadcast games." *Supra* p. 45. For example, Plaintiffs claim they are seeking documents that provide information about the "Club Defendants' understanding of their individual rights," their "considerations of their rights to independently broadcast games," their "own business plans regarding the market for live football games," and their "intent to monopolize trade." *Supra* pp. 45, 51. But here too Plaintiffs have provided no reason to think that such document actually exists within custodial files of the 32 member Clubs, particularly given that they have not licensed their own regular-

---

[13]  A more recent request from Plaintiffs seeks "documents reflecting market research relating to viewers of live NFL football telecasts, including documents reflecting information related to viewer's demographics, product purchases, viewership of other sports programming, and preferred Clubs." RFP No. 108. This request was propounded by Plaintiffs in a later set of RFPs, and is not the subject of the present motion to compel.

season media rights for more than 60 years.  And given the broad and unbounded nature of these requests (and the broad and unbounded search terms proposed by Plaintiffs to seek documents related to these requests), the NFL Defendants would be forced to collect and search through an immense amount of nonresponsive documents to confirm that is the case.

Tellingly, all Plaintiffs offer in support of this request is a misleading mischaracterization.  Plaintiffs offer a snippet of a quote from Jed York, CEO of the San Francisco 49ers, that—on their telling—supports their claims of enhanced innovation for out-of-market games absent the challenged agreements.  *Supra* p. 45.  But the quote they identify was *not* about the Sunday Ticket package, but about the network broadcast agreements, which are shielded from antitrust scrutiny by the Sports Broadcasting Act.  Furthermore, the interview did not involve any suggestion by Mr. York that the 49ers would like to independently broadcast their games or think doing so would benefit consumers.  The fact that this interview is Plaintiffs' best factual support for their purported discovery confirms that they are engaging in an impermissible fishing expedition.  *See Sandpiper Resorts Dev. Corp. v. Glob. Realty Invs., LLC*, No. 8-cv-01360, 2012 WL 4120410, at *2 (D. Ariz. Sept. 19, 2012) ("[D]iscovery may not be used as a 'fishing expedition.") (citing *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004)); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993) (stating that the broad construction of relevancy "should not be misapplied so as to allow fishing expeditions in discovery").

### 2.  Plaintiffs' Requests Are Unduly Burdensome.

"Discovery of ESI—especially in cases where the parties anticipate a large amount of ESI to be searched, reviewed, and produced—makes proportionality considerations particularly significant."  *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018).  Plaintiffs' demand for broad custodial discovery from 121 Club employees

across a decades-long period, all on top of the extensive discovery that the NFL Defendants have already agreed to produce, is disproportional by any measure.

Extrapolating from standard e-discovery industry assumptions, the total data to be collected from 121 Club custodians could reach nearly 12 terabytes and exceed 100 million documents even after processing the data to remove duplicates and omit documents outside of predetermined date filters and search terms. Klismet Decl., Defs. Ex. A at ¶¶ 6, 8–9. And the time required to review such a mass of documents would be measured in years. Using industry standard rates of review, document review is estimated to take 300,000 hours—amounting to more than ten years for a team of fifteen reviewers working full-time—and is likely to incur significant costs. *Id.* at ¶ 12. Even if these estimates were significantly off, Plaintiffs' demands would still be disproportional, especially given the low likelihood of these searches revealing any discoverable information. *See supra* p. 48. Indeed, the more modest task of reviewing these documents and analyzing whether they are responsive to this litigation (let alone privileged or confidential) would require significant effort and incur considerable costs, even if it is ultimately determined that there are little to no responsive documents that would need to be produced. Klismet Decl., Defs. Ex. A at ¶ 11.

Courts routinely find that production of ESI would be unduly burdensome and costly for discovery requests far less burdensome than what Plaintiffs now seek to compel. *See Schueneman v. Arena Pharms., Inc.*, No. 10-cv-1959, 2017 WL 3118738, at *4 (S.D. Cal. Jul. 21, 2017). In *Schueneman*, the court considered that "reviewing material responsive to [Plaintiff's requests] for relevance and privilege would take weeks" and incur costs far less significant than Plaintiffs' proposal could here. *Id.* Thus, due to the "extremely broad discovery requests," their "minimal relevance" and "the large number of potentially responsive documents," the court held that the discovery requested did not satisfy Rule 26's proportionality requirements. *Id.; see also Danaher Corp. v. Lean Focus, LLC*, No. 19-cv-750, 2021 WL 1626707, at *2 (W.D. Wis. Apr. 27, 2021) (denying discovery request as disproportional that was limited to four

custodians).  Plaintiffs' requests are many orders of magnitude higher than those denied in *Schueneman* and *Danaher* and should similarly be denied.  Indeed, Plaintiffs provide no authority sanctioning anywhere near the burden they seek to impose on the NFL Defendants.

### 3.  Other, Less Burdensome, Discovery Methods Are Available to Plaintiffs.

Before imposing such extraordinary burdens on the NFL Defendants, Plaintiffs must pursue less burdensome and more tailored options.  One example would be serving interrogatories to the Clubs to ask whether there are documents that might be responsive to a tailored set of inquiries, rather than forcing them to engage in a broad-based collection and review of documents.  That approach could easily be tailored to the categories of information Plaintiffs purport to want.  *See supra* pp. 44–46. Another is to review the forthcoming League discovery to determine if there is a factual predicate for additional, more targeted, Club discovery.  *See ATS Products, Inc. v. Champion Fiberglass, Inc.*, No. 13-cv-02403, 2015 WL 3561611, at *6 (N.D. Cal. June 8, 2015) (requiring plaintiff to "first attempt to obtain [sought discovery] information from other sources more convenient and less burdensome."), *Medtronic*, 2000 WL 1478476, at *3 (litigants "ought not be permitted to use broadswords where scalpels will suffice" to obtain more targeted discovery).  The NFL Defendants have raised these options in their meet and confers with Plaintiffs and indicated that, should these less burdensome means provide support for some of the discovery that Plaintiffs seek, the NFL Defendants would be amenable to discussing them further.  *See, e.g.*, Plfs. Ex. 5 at 2–3.  The availability of these other methods, should they be necessary, provides another basis for denying Plaintiffs' overbroad requests. [14]

---

[14] Plaintiffs end their motion by asking this Court to overrule the NFL Defendants' objections as purportedly "boilerplate."  *Supra* pp. 52–54.  That argument is without merit and, in any event, unnecessary to decide in connection with the issues raised by Plaintiffs' motion.

### D. Conclusion

Even though Plaintiffs' own allegations confirm that relevant information will be found with League employees, Plaintiffs seek to force the NFL Defendants to expend immense resources—both in time and money—to review a potentially massive volume of documents from hundreds of Club custodians.  Rule 26 does not sanction this needle-in-a-haystack approach, especially in comparison to the less burdensome methods the NFL Defendants have suggested and that courts have repeatedly endorsed.  The Court should accordingly deny Plaintiffs' motion to compel custodial discovery from the Clubs.

---

The NFL Defendants' responses "either state that inspection . . . will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons," as required by Rule 33.  *O.L. v. City of El Monte*, No. 20-cv-00797, 2021 WL 922078, at *2 (C.D. Cal. Jan. 27, 2021).  Confirming the point, Plaintiffs use some of the same language that they challenge as inappropriate in their own responses to discovery.  For example, Plaintiffs claim that using the phrase "to the extent" is "tantamount to providing no objection whatsoever," *supra* p. 53, apparently ignoring that they used this phrase 66 times in response to the NFL Defendants' forty RFPs.

More importantly, the present dispute concerns whether Plaintiffs are entitled to broad *custodial* discovery from the NFL member Clubs.  Resolution of that issue does not require this Court to assess the propriety of the NFL Defendants' objections on behalf of both the League and the member Clubs applicable to all 104 RFPs, particularly while meet and confers on those RFPs are ongoing.

**DATED:** June 1, 2021                   Respectfully submitted,

MARC M. SELTZER
RAYMOND KEITH WRIGHT
SUSMAN GODFREY L.L.P.

SCOTT MARTIN
IRVING SCHER
HAUSFELD LLP

HOWARD LANGER
EDWARD DIVER
PETER LECKMAN
LANGER GROGAN AND DIVER PC

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200/Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

By:     */s/ Marc M. Seltzer*
            Marc M. Seltzer

*Attorneys for Plaintiffs' Interim Co-Lead Class Counsel*

Dated:   June 1, 2021          */s/ Beth A. Wilkinson*
                                        Beth A. Wilkinson (admitted *pro hac vice*)
                                        Brian L. Stekloff (admitted *pro hac vice*)
                                        Rakesh N. Kilaru (admitted *pro hac vice*)
                                        Jeremy S. Barber (admitted *pro hac vice*)
                                        **WILKINSON STEKLOFF LLP**
                                        2001 M Street NW, 10th Floor
                                        Washington, DC 20036
                                        Telephone: (202) 847-4000
                                        Facsimile: (202) 847-4005
                                        bwilkinson@wilkinsonstekloff.com
                                        bstekloff@wilkinsonstekloff.com
                                        rkilaru@wilkinsonstekloff.com
                                        jbarber@wilkinsonstekloff.com

                                        Neema T. Sahni (Bar No. 274240)
                                        **COVINGTON & BURLING LLP**
                                        1999 Avenue of the Stars
                                        Suite 1500
                                        Los Angeles, CA 90067-6045
                                        Telephone: (424) 332-4800
                                        Facsimile: (424) 332-4749
                                        nsahni@cov.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*