# EXHIBIT 2

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

32ND FLOOR

1301 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10019-6023

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

| SUITE 5100 | SUITE 1400 | SUITE 3800 |
|---|---|---|
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

EDWARD DELMAN
DIRECT DIAL (212) 729-2052

E-MAIL EDELMAN@SUSMANGODFREY.COM

April 7, 2021

VIA E-MAIL

Jeremy Barber
Wilkinson Stekloff LLP
130 W 42nd Street, 24th Floor
New York, NY 10036

Re:   *In re National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)

Dear Jeremy:

Plaintiffs write regarding the NFL Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production. Plaintiffs provide this letter pursuant to Local Rule 37-1 and request a meet and confer to discuss these issues, the scope of Plaintiffs' document requests, and, to the extent not resolved in our upcoming discussion, the process for identifying custodians and negotiating search terms. Plaintiffs propose conducting the meet and confer at 3:00pm ET on April 15, 2021. If that date and time does not work, please propose an alternative within the timeframe provided in Local Rule 37-1.

## Objections to Relevant Time Period

The NFL Defendants object to the relevant time period and state that they will only produce documents from June 17, 2011 to June 24, 2016. Plaintiffs do not believe a blanket limitation on the time frame of discovery is appropriate.

The NFL Defendants proposed limitation is problematic on both ends. As alleged in Plaintiffs' consolidated complaint, the restraints at issue were originally implemented before June 17, 2011, *see, e.g.*, Compl. ¶ 75, and it is well established that in antitrust cases, when relevant, the factfinder must consider "the history of the restraint, and the reasons why it was imposed." *Nat'l Soc. of Pro. Engineers v.*

April 7, 2021
Page 2


*United States*, 435 U.S. 679, 692 (1978); *accord Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918) ("The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts."). That is one reason why "courts have held that the scope of discovery should not be defined by the limitations periods or plaintiff's alleged damages." *Cyntegra, Inc. v. IDEXX Lab'ys*, No. CV 06-4170-PSG (CTx), 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) (collecting antitrust cases where discovery period stretched long before the limitations period); *see also New Park Ent. L.L.C. v. Elec. Factory Concerts, Inc.*, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) ("The asserted history of the conspiracy and not the scope of plaintiff's damage provides the temporal boundary for the discovery." (quotation marks omitted)); *F.T.C. v. Lukens Steel Co.,* 444 F. Supp. 803, 805 (D.D.C. 1977) (stating that, in antitrust conspiracy cases, courts have "frequently permitted discovery of information or documents relatively remote in time and in periods prior to the time when recovery may be had"). Here, at a minimum, Plaintiffs are entitled to discovery surrounding the Clubs' agreement to cede their broadcast licensing rights to the League and, of course, discovery concerning the Sunday Ticket package prior to its launch in 1994.

Denying Plaintiffs discovery of all documents generated prior to June 17, 2011 would deny Plaintiffs the opportunity to obtain evidence relating to the formation and implementation of the NFL Defendants' and DirecTV's agreements at issue in this litigation. *See In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 429-30 (E.D. Pa. 2004) (explaining "that a broad scope of discovery is particularly appropriate in antitrust litigation because, for example, relevant business documents pertaining to the antitrust conspiracy may not exist and covert behavior may have to be proven through less direct means."). As for those Requests for Production ("RFPs") that request documents before 1994, those requests are limited in scope. For example, Plaintiffs have requested the NFL's current and historical versions of its constitutions, by-laws, and other league-wide rules, all of which should be readily available. Likewise, meeting minutes regarding the agreements at issue in this litigation should not be unduly burdensome to produce. Similarly, Plaintiffs have requested documents concerning two related cases from the Eastern District of Pennsylvania and documents concerning the Sports Broadcasting Act. There materials are plainly relevant to Plaintiffs' claims in this case.

Plaintiffs also allege that the unlawful conduct is ongoing. Class members have continued to suffer damages, and their claims for prospective relief implicate Defendants' current conduct. There is therefore no basis for excluding from discovery all documents generated after the filing of Plaintiff's consolidated complaint. *See, e.g.*, *In re Fresh & Process Potatoes Antitrust Litig.*, No. 4:10-md-

April 7, 2021
Page 3

02186-BLW-CWD, 2013 WL 12142375, at *6-7 (D. Idaho June 26, 2013) (holding that documents generated, received, or otherwise acquired after the filing of the complaint must be produced in light of allegation of "ongoing conspiracy"); *Rosales v. FitFlop USA, LLC*, No. 11cv0973-W(KSC), 2013 WL 12416060, at *3 (S.D. Cal. Jan. 4, 2013) (finding that plaintiffs "are entitled to discover up-to-date information" about marketing strategies and advertising, and refusing to bar or preclude discovery of matters occurring after the filing of the complaint).

Despite Plaintiffs' belief that the RFPs as framed are appropriate, in an effort to reach a compromise as to time limitation issues, Plaintiffs propose the below time periods for the following RFPs:

- For RFP Nos. 87-90, and 98: For memoranda, reports, and court documents, Plaintiffs believe it is appropriate and necessary for the NFL Defendants to produce historical documents as requested. These requests are limited in scope. For communications and other ESI searches, Plaintiffs propose that documents be produced that were generated at any time from 2008 to the present.
- For RFP Nos. 1-2, 9-10, 32, 35-37, 55-56, and 100-101: Plaintiffs propose documents be produced that were generated at any time from 1994 to the present.
- For RFP Nos. 4-6, 13, 22-30, 34, 39, 49-53, 65-66, 70-72, 74, 79, and 93-97: For those documents constituting or relating to contracts, reports, studies, and other analyses, Plaintiffs propose that documents that were generated at any time from 1994 to the present be produced. For communications and other ESI searches, Plaintiffs propose that documents that were generated at any time from 2008 to the present be produced.
- For RFP Nos. 15-16: For reports, studies, and other analyses, Plaintiffs propose that documents that were generated at any time from 1994 to the present be produced. For communications and other ESI searches, Plaintiffs propose that documents that were generated at any time from 2011 to the present be produced.
- For RFP Nos. 8, 12, 17, 21, 31, 33, 46-48, and 102-104: Plaintiffs propose that documents that were generated at any time from 2008 to the present be produced.
- For RFP Nos. 40-45, 60-64, 67-69, 73, 75-78, and 92: Plaintiffs propose that documents generated from 2011 to the present be produced.
- For RFP No. 99: Plaintiffs propose that documents generated from 2004 to the present be produced.

April 7, 2021
Page 4

## Refusal to Search Individual Clubs' Files

The NFL Defendants contend that their productions will be sufficient without conducting searches of documents solely in the possession of individual NFL Clubs. The NFL Defendants have "object[ed] to [Plaintiffs'] Document Requests to the extent they seek custodial searches of documents for individuals solely affiliated with any NFL Club." That position is unjustified. Each NFL Club is a defendant in this litigation and this objection amounts to a claim that parties to the litigation are not required to respond to discovery.

## Boilerplate Objections

The NFL Defendants' responses begin with a series of generic "General Conditions and Objections" that fail to provide any specificity and are then incorporated into their responses to specific requests for production. The use of boilerplate objections has long been criticized by courts and amounts to no objection at all. *See Meggitt (Orange Cnty.), Inc. v. Nie Yongzhong*, No. CV 13-00239-DOC (DMFx), 2015 WL 12743695, at *1 (C.D. Cal. Feb. 17, 2015); *Queensridge Towers, LLC v. Allianz Glob. Risks US Ins. Co.*, No. 2:13-cv-00197-JCM-PAL, 2014 WL 496952, at *4 (D. Nev. Feb. 4, 2014) ("The general objections, reservations, and boilerplate objections look like a form provided to the firm's most junior attorney thirty years ago to teach new lawyers how to obstruct discovery."); *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185-87 (N.D. Iowa 2017); *Collins v. Landry's Inc.*, No. 2:13-cv-1674-JCM-VCF, 2014 WL 2770702, at *3 (D. Nev. June 17, 2014) ("Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. . . . Proper objections 'show' or 'specifically detail' why the disputed discovery request is improper."); Fed. R. Civ. P. 33(b); *see also* Committee Notes to 2015 Amendment to Rule 33 (requiring objections to be stated with specificity and whether responsive material are being withheld). The NFL Defendants repeat this practice of boilerplate objections in making their specific objections to each of Plaintiffs' RFPs.

For example, several of the NFL Defendants' objections to Plaintiffs' RFPs use "to the extent" language. Such objections without specifying the extent to which the NFL Defendants contend the RFP is objectionable are impermissible. *See Meggitt*, 2015 WL 12743695, at *1 ("The practice of making boilerplate general objections couched in terms of 'to the extent' . . . is improper."); *see also Gersh v. Anglin*, No. CV 17-50-M-DLC-JCL, 2019 WL 265800, at *4 (D. Mont. Jan. 18, 2019) (disapproving of boilerplate objections made "to the extent" discovery request was objectionable); *Kristensen v. Credit Payment Servs., Inc.*, No. 2:12-cv-0528-APG-PAL, 2014 WL 6675748, at *5 (D. Nev. Nov. 25, 2014) (holding that

April 7, 2021
Page 5

"to the extent" objections should be stricken); *Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of the United States v. Leonard*, No. CIV S-07-2665 LKK GGH. 2009 WL 1118896, at *4 (E.D. Cal. Apr. 23, 2009) (objections made "just in case" are not permitted).

As an additional example, in responding to RFP Nos. 4, 6-7, 12, 16-17, 18-20, 24, 26, 28, 30, 32-36, 38-39, 45-49, 51, 54, 57-68, 70-72, 74-76, 88-92, 94, 96 and 102, the NFL Defendants state that Plaintiffs could obtain these documents from other parties. The NFL Defendants fail to show why this information is more appropriately obtained from other parties, making only a boilerplate objection to each request. *See AECOM Energy & Constr., Inc. v. Ripley*, No. CV 17-5398 RSWL (SSx), 2018 WL 6266462, at *6 (C.D. Cal. Oct. 3, 2018) ("'[U]nexplained and unsupported boilerplate objections are improper.'" (quoting *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009))). Furthermore, the fact that information *might* be available from other parties does not preclude Plaintiffs from seeking those documents from the NFL Defendants.

The NFL Defendants also claim that terms used throughout Plaintiffs' First Set of Requests for Production are vague and ambiguous. But, absent technical terms of art, discovery requests must be given their plain meaning and assessed in the context of the litigation. *See ODS Techs., L.P. v. Magna Entm't Corp.*, No. CV 07-3265-DDP(RCx), 2008 WL 11343031, at *2 (C.D. Cal. July 31, 2008); *Ann Chae v. SLM Corp.*, No. CV 07-2319-ER(RCx), 2008 WL 11343020, at *4 (C.D. Cal. Feb. 22, 2008) ("However in light of the allegations and language used in plaintiffs' Amended Complaint, defendants should know the meaning of these terms and must give them their plain meaning."). The NFL Defendants fail to provide any specific basis as to why any of the RFPs are ambiguous or explain how the NFL Defendants interpret the purportedly ambiguous terms. For example, in response to RFP No. 8, the NFL Defendants object to the phrase "having market power" as impermissibly vague and ambiguous without providing a specific basis for why that term is vague or ambiguous within the context of this litigation and or allegations in Plaintiffs' consolidated complaint.

The NFL Defendants further object to the RFPs by claiming that the documents sought are "not relevant to any party's claim or defense and not proportionate to the needs of the case." The NFL Defendants provide no specificity in explaining why Plaintiffs' RFPs are not relevant or proportionate. Moreover, the NFL Defendants have adopted a narrow view of relevance that is contrary to applicable law. *See Cyntegra, Inc.*, 2007 WL 9701999, at *4 ("In antitrust cases, courts have generally allowed liberal discovery.").

For example, the NFL Defendants object to Plaintiffs' RFP No. 8, requesting documents reflecting communications that refer, *inter alia*, to the

April 7, 2021
Page 6

League or its business practices as "anti-competitive, or as a cartel, or as a monopoly," on the basis that the RFP "seek[s] production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for documents relating to the business practices of the Clubs, which is unrelated to the provision of the NFL Sunday Ticket Package." But Plaintiffs allege, among other things, that the Clubs' pooling of their broadcast right by agreement with the League is part of an overall set of agreements that are anti-competitive. Compl. ¶¶ 5-6. The documents sought in RFP No. 8 are plainly relevant and proportionate. As another example, the NFL Defendants claim that RFP No. 21, which seeks documents relating to NFL packages outside of the United States, is not relevant or proportionate "to the extent it asks for documents related to NFL consumers outside of the United States." But the consolidated complaint expressly alleges the NFL's non-exclusive licensing and pricing of Sunday Ticket outside of the United States as evidence of anti-competitive behavior and in part in the United States. *Id.* at ¶¶ 15, 17, 111, 115, 125. Documents relating to this conduct is plainly related to this litigation.

Finally, the NFL Defendants object to RFPs that they claim seek either "highly confidential business and proprietary information, or information protected by any privilege." However, the parties and the Court have already addressed the production of confidential or privileged information in their stipulated protective order and stipulated ESI order. Given that there are already orders in place to protect confidential information, the NFL Defendants cannot use the confidential nature of a document as a basis for objecting to discovery. *See Holcombe v. Advanced Integration Tech.*, No. 4:17-CV-00522, 2018 WL 3819974, at *5 (E.D. Tex. Aug. 10, 2018) (overruling objections regarding confidential and proprietary information because there was already a protective order in the case); *Natland v. McGowen*, No. SACV 13-0495-JLS (JPRx), 2013 WL 12114513, at *3 (C.D. Cal. Nov. 18, 2013) (noting that defendants' objections that sought documents might contain confidential or proprietary information "is not well taken, as a protective order has already been entered in this case"); *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4008009, at *3 (D. Kan. Sept. 9, 2011) (finding "that High Point's purpose in asserting its confidentiality objection, after a protective order limiting the use and disclosure of confidential information had already been entered in the case, was merely to maximize the number of objections to the requested discovery"). As for documents claimed to be privileged, the proper response is to provide a detailed privilege log pursuant to the orders, not to raise a blanket boilerplate objection. *See Natland*, 2013 WL 12114513, at *3.

April 7, 2021
Page 7


**Use of Limiting Language**

In their responses to RFP Nos. 17, 29-30, 67, and 101, the NFL Defendants state that they will only produce "formal" studies and analyses, despite the fact that Plaintiffs' requests do not limit themselves to "formal" documents, whatever that may mean. Similarly, in RFP Nos. 4-7 and 104, the NFL Defendants state that they will produce "final" contracts or communications related to "final" contracts, despite the fact that Plaintiffs do not limit their requests to "final" versions of contracts. The NFL Defendants have not provided an explanation for unilaterally imposing these limitations on their responses, *see Pinn, Inc. v. Apple, Inc.*, No. 8:19-cv-01805-DOC (JDEx), 2020 WL 4258813, at *3 (C.D. Cal. June 20, 2020) (explaining that "the burden falls on [the interrogatee] to, by competent evidence, justify its objection and unilateral limitation of the scope of its responses"), and the limitations are unjustified on their face.

**Requests Where the NFL Defendants Claim Production is Impossible**

The NFL Defendants state, in response to RFP Nos. 1, 36-37, 40-43, 46-48, 55-56, 68, 71, 77-78, 89-90, 94, 96, and 100, that they are "unable to search for, collect, or produce documents responsive to th[ose] request[s] at this time." Plaintiffs disagree. For example, the NFL Defendants state that they are unable to search for, collect, or produce their annual and quarterly financial statements from 1994 to the present, as requested in RFP No. 1. But the only objection relevant to an inability to produce—that Plaintiffs' request "exceed[s] the relevant time period and is unduly burdensome and disproportionate"—is not a reason for refusing to produce the documents in question. Documents going back to 1994 are plainly relevant and properly discoverable in this litigation, and Plaintiffs believe that financial statements such as those requested in RFP No. 1 should also be readily available to the NFL Defendants. The same applies to RFP Nos. 55-56.

The NFL Defendants similarly claim that they are unable to search for, collect, or produce documents responsive to RFP Nos. 36-37, but the stated inability is based on the claims that the requested documents are either confidential or privileged. As Plaintiffs explain above, any concerns about producing confidential information are addressed by the Court's orders, while claims of privilege must be addressed using a privilege log. These are not sufficient reasons for failing to produce responsive, non-privileged documents. The same applies to RFP Nos. 77-78 and 89-90.

The NFL Defendants state that they are unable to search for, collect, or produce documents responsive to RFP Nos. 40-43, which call for documents concerning or relating to the number of NFL fans in particular locations. But the NFL Defendants do not provide any explanation for why responsive documents

April 7, 2021
Page 8

cannot be produced, and instead challenge the relevance of the requests. Relevance (or lack thereof) does not speak to whether a party is "unable to search for, collect, or produce" responsive documents; it speaks to willingness to produce. Because Plaintiffs' requests are relevant and proportionate to the needs of this litigation, documents responsive to those requests should be produced. And insofar as the NFL Defendants claim they cannot produce documents responsive to RFP No. 43 because those documents are in the custody, possession, or control of individual Clubs, that objection has no basis in law or fact where, as here, the Clubs are themselves defendants.

For RFP Nos. 46-48, 68, 71, 94, and 96, the NFL Defendants claim that they cannot search for, collect, or produce responsive documents both because of lack of relevancy or proportionality and because the information sought might be "more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants." These objections are unsound for the reasons disclosed above. As for whether the documents sought might be more appropriately obtained from other sources, that objection—similarly to relevancy—speaks to the NFL Defendants' willingness to produce as opposed to their ability to produce. Moreover, the NFL Defendants have offered no specifics as to what other parties might serve as a more ready source for the requested documents. Absent a showing by the NFL Defendants that Plaintiffs can more easily obtain the requested documents from other parties, this objection is without merit. But, even if documents may be available from other sources, that would not relieve the NFL Defendants of their obligation to produce relevant documents in their possession. *See Turner v. GEICO Indem. Co.*, No. 11-20546-CIV, 2020 WL 11769047, at *2 (S.D. Fla. Sept. 8, 2011) (overruling objection that "information sought … is available through other means" where defendant "cite[d] no authority for the proposition that it need not produce relevant discovery simply because the information may be available from other sources"); *cf. Finjan, Inc. v. Juniper Network, Inc.*, Case No. 17-cv-05659-WHA (TSH), 2019 WL 2749577, at *2 (N.D. Cal. July 1, 2019) (noting that "party discovery is typically *easier* and faster than non-party discovery" (emphasis added)).

Finally, the NFL Defendants assert that they cannot produce documents "created by or related to the NFL's Long Range Planning Committee concerning media rights or revenue-sharing," as provided in RFP No. 100. However, as with the above RFPs, the NFL Defendants do not provide a reason for why those documents cannot be produced. These documents are clearly relevant, Compl. ¶¶ 66, 69, and the NFL provides no explanation as to why responsive studies, reports, or memoranda cannot be located and produced.

April 7, 2021
Page 9

**Requests Where Exchange of Search Terms is Unnecessary**

In responding to RFP Nos. 12, 14-16, 21, 26-28, 33, 35, 38-39, 44, 50, 53-54, 57-58, 60-63, 65, 70, 72-73, 75, 79, 92, 95, 99, and 103, the NFL Defendants propose exchanging search terms to narrow Plaintiffs' requests. With respect to RFP Nos. 15, 16, 21, 27, 35, 38-39, 44, 50, 57-58, 60, 63, 70, 92, and 95, Plaintiffs believe that the NFL Defendants are capable of identifying and producing most, if not all, responsive documents without narrowing search terms proposed by Plaintiffs.

By way of example, in RFP No. 15, Plaintiffs seek all documents relating to analysis of actual or potential consumer usage and viewership of NFL Sunday Ticket, or any package offering fewer games than NFL Sunday Ticket (e.g., packages of individual games or games of individual Clubs), in the United States or elsewhere. The NFL Defendants claim to be unable to search for, collect, or produce documents responsive to this request, but the NFL Defendants admitted to having precisely these sorts of documents in Sections II.4 and II.9 of their Amended Rule 26 Initial Disclosure Statement.

Because RFP Nos. 15, 16, 21, 27, 38-39, 44, 50, 57-58, 60, 63, 70, 92, and 95 seek relevant information in clear, unambiguous terms, exchanging search terms for these RFPs appears to be unnecessary.

**Requests Where Exchange of Search Terms is Ripe**

With respect to RFP Nos. 12, 14, 26, 28, 53, 54, 61-62, 65, 72-73, 75, 79, 99, and 103, Plaintiffs agree that proposing search terms may aid the NFL Defendants in producing responsive documents. To that end, Plaintiffs intend to provide a list of proposed search terms. Plaintiffs also propose discussing the identification of custodians.

**Other Objections**

The NFL Defendants raise several objections to specific RFPs in addition to those addressed above.

First, in responding to RFP No. 2, the NFL Defendants agree to provide "documents sufficient to identify the names, titles, and job descriptions of each of the NFL Defendants' current or former officers, directors, or employees who were responsible for managing the League's business relationship with DirecTV or other television providers that offered live NFL regular season game broadcasts[.]" However, that limitation is unjustified , especially given the minimal burden likely associated with producing organizational charts.  Providing documents for those

April 7, 2021
Page 10

officers, directors, or employees who dealt with only television providers is too narrow given that the NFL Defendants have entered into licensing arrangements with non-television providers, including Amazon.com, Inc. and Twitter, Inc.

Second, in responding to RFP No. 4, the NFL Defendants agree to provide "final contracts between the League and CBS, NBC, Fox, ESPN, and DirecTV that . . . relate to the licensing and distribution of live regular season NFL football games over television. The NFL Defendants also state that they will produce documents reflecting communications by or among the League and CBS, NBC, Fox, ESPN, and DirecTV that . . . relate to the negotiation or terms and conditions of the final contracts referenced previously in this response and reference the NFL Sunday Ticket package." As with RFP No. 2, the NFL Defendants provide no acceptable reason why production should be limited to "final" contracts or communications relating to "final" contracts or contracts relating only to non-television providers, given that the NFL Defendants also license with non-television providers. In addition, Plaintiffs requested communications relating to negotiations for licensing agreements for live regular season NFL football games, and not merely communications that reference the NFL Sunday Ticket package.

Third, in responding to RFP No. 5, the NFL Defendants agree to provide only "final contracts between the League and the Clubs that . . . relate to the video distribution of live regular season NFL games over television and online streaming," However, Plaintiffs request contracts and communications between the Clubs and the League regarding the video distribution of NFL football game programming. The NFL Defendants do not explain why the limitations to "final" contracts or subject matter are appropriate or necessary.

Fourth, in responding to RFP No. 22, the NFL Defendants agree to provide only the NFL's constitution and bylaws, including the League's historical resolutions and amendments to the NFL constitution. However, Plaintiffs' claims relate to more than just official League organization matters. Communications between the Clubs, as well as communications between the Clubs and the League and communications within each Club, relating to the sharing of revenue between the Clubs and the League, are plainly relevant to Plaintiffs' claims. Compl. ¶¶ 66, 69, 81.

Fifth, in responding to RFP No. 52, the NFL Defendants agree to provide documents that "reflect communications between the League and DirecTV relating to the consideration of offering NFL Sunday Ticket on an exclusive or non-exclusive basis through DirecTV in the United States." However, providing only communications between the NFL and DirecTV fails to include documents relevant to Plaintiffs' claims. Plaintiffs requested internal League documents, as well as

April 7, 2021
Page 11

communications between the League and the Clubs, communications among the Clubs, and communications within each Club.

Sixth, in responding to RFP No. 99, the NFL Defendants state that "[a]ny Resolutions resulting from the League's 2004 Resolution BV-4 will be produced as part of the League's Constitution and Bylaws."  However, Plaintiffs seek not only resolutions resulting from the League's 2004 Resolution BV-4, but also all documents created by or related to the special committee created under the League's 2004 Resolution BV-4 concerning revenue and cost-sharing alternatives. This request includes communications relating to that Resolution.

Plaintiffs request that the NFL Defendants amend their responses to Plaintiffs' RFPs and agree to produce the documents Plaintiffs have requested in light of the above comments. In the absence of such amendment, Plaintiffs intend to move to compel production of those documents.

Sincerely,

Edward Delman

Cc:  All NFL Defendants' counsel