# EXHIBIT 3



130 West 42nd Street, 24th Floor

New York, New York 10036

WWW.WILKINSONSTEKLOFF.COM

———

A LIMITED LIABILITY PARTNERSHIP

April 27, 2021

*Via E-mail*

Edward Delman
Susman Godfrey LLP
32nd Floor
1301 Avenue of the Americas
New York, New York 10019-6023

**Re:**   *In re National Football League's "Sunday Ticket" Antitrust Litigation*, **Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)**

Dear Edward:

Thank you for your correspondence on April 7, 2021 ("Letter") and subsequent discussion during our meet-and-confer call on April 16, 2021. As we discussed on the meet-and-confer call, Plaintiffs have now served more than 100 Requests for Production ("RFPs") and are taking the position that they are entitled to documents from 34 entities spanning a period of nearly 30 years.

As the NFL Defendants made clear in their responses to these RFPs, many of these requests are overly broad and the burden of producing documents in response far outweighs the needs of this case. While we look forward to negotiating the outstanding discovery requests in good faith, discovery may not be used as a fishing expedition. *Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1072 (9th Cir. 2004). In that context, the NFL Defendants offer the following responses to your Letter.

**Relevant Time Period**

We understand that Plaintiffs take issue with both the start and end date of production. As to the former, your Letter states that "[d]enying Plaintiffs discovery of all documents generated prior to June 17, 2011 would deny Plaintiffs the opportunity to obtain evidence relating to the formation and implementation of the NFL Defendants' and DirecTV's agreements at issue in this litigation" and goes on to offer a purported "compromise" for more than 80 of Plaintiffs' RFPs. Letter at 2–3.

As indicated during the meet and confer, this "compromise" would expand the production start date for the vast majority of the RFPs beyond what was actually requested by Plaintiffs. *See* RFP Set One, Instruction 1 ("[u]nless otherwise specified, these requests for documents call for documents, data, and other information prepared, created, sent, altered, or received *since June 17, 2011*" (emphasis added)). Of course, a party cannot use a meet-and-confer letter to expand the scope of their RFPs. *See, e.g.*, *Simmons v. Arnett*, 2017 WL 10562569, at *4 n.1 (C.D. Cal. Dec. 22, 2017).

On the merits, Plaintiffs appear to appreciate that their current requests are far too broad; your Letter notes, for example, that, "at a minimum, Plaintiffs are entitled to discovery surrounding the Clubs' agreement to cede their broadcast licensing rights to the League and, of course, discovery concerning the Sunday Ticket package prior to its launch in 1994." Letter at 2. To the extent that Plaintiffs believe that these particular topics warrant pre-2011 discovery, the NFL Defendants already indicated their willingness to meet and confer about how to appropriately narrow specific requests targeted at this information. *See* Responses to RFP No. 50 (creation of the Sunday Ticket package) and No. 53 (Clubs' decision to pool their broadcast rights with the League). The NFL Defendants remain open to these conversations, but do not believe it is proper to otherwise expand 80 requests beyond the start date Plaintiffs initially proposed.

Regarding the end date for production, Plaintiffs' position ignores the unique circumstances of this case and the breadth of your requests. The Consolidated Amended Complaint was filed in June 2016—nearly 5 years ago—and contains only vague and overly generalized allegations of a continued conspiracy. These allegations do not justify extending compliance with over 100 RFPs indefinitely into the future, and cannot outweigh the burden of doing so.

More generally, courts routinely hold that proposed discovery periods that span decades—like the period sought by Plaintiffs here—impose an unreasonable burden on the responding party. *See, e.g.*, *Miller Marital Deduction Tr. by & through Miller v. Est. of DuBois*, No. 2:16-CV-01883-SB, 2018 WL 1023200, at *4 (E.D. Cal. Feb. 21, 2018) (requests for insurance policies issued over a thirty-year period of time "poses an undue burden"); *LSG Techs., Inc. v. United States Fire Ins. Co.*, No. 2:07CV399, 2011 WL 13152811, at *6 (E.D. Tex. Nov. 4, 2011) ("burden of producing all responsive documents from an approximately thirty year period outweighs the minimal relevance of such discovery"); *Cone v. Rainbow Play Sys., Inc.*, No. CIV 06-4128, 2009 WL 2207186, at *2 (D.S.D. July 21, 2009) (deeming thirty year period of discovery to be "excessive" and allowing discovery for only four years prior to plaintiff's termination and two years after); *United States v. Medtronic, Inc.*, No. 95-1236-MLB, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (discovery that requested documents over a 20 year period was "extraordinarily burdensome"). While the NFL Defendants will work cooperatively with Plaintiffs to try to find a mutually agreeable solution on these requests, Plaintiffs' current position is not reasonable.

**Individual Club Files**

Plaintiffs make conclusory demands for discovery from each of the NFL's 32 member Clubs, but provide no basis for those demands. Plaintiffs direct *all* of their RFPs to *all* of the NFL Defendants without regard to whether the Clubs would reasonably be expected to have relevant or responsive information. In addition, Plaintiffs give no consideration to whether any relevant documents in the Clubs' possession—if they even exist—would be merely duplicative of the documents in the League's possession. *See Handloser v. HCL America, Inc.*, No. 19-cv-01242, 2020 WL 7405686, at *2–3 (N.D. Cal. Dec. 17, 2020) (plaintiffs failed to show why any information held by additional requested custodians would "differ[] from discovery they h[ad] already obtained"). Absent identification of specific types of documents that Plaintiffs have a good-faith basis to believe are in the possession of individual member Clubs—and *not in the*

*possession of the League*—Plaintiffs' request for broad Club discovery is not "proportional to the needs of the case" and amounts to little more than a disfavored fishing expedition. *See Rivera*, 364 F.3d at 1072.

Plaintiffs' blanket requests for Club discovery are particularly inappropriate given that the Consolidated Amended Complaint is devoid of any Club-specific allegations. Rather, the Complaint's allegations relating to the member Clubs are limited solely to a generic claim that the agreement between the League and the Clubs to pool broadcasting rights is anticompetitive. *See, e.g.*, Compl. ¶¶ 66, 93. And, to the extent Plaintiffs seek documents relating to this allegation, that request was encompassed in RFP No. 53, to which the NFL Defendants have offered to meet and confer.

During the recent meet-and-confer call, the sole basis Plaintiffs provided for these sweeping requests was the suggestion that discovery into individual member Clubs would be necessary to understand whether any of the individual member Clubs has expressed any desire to individually broadcast NFL football games despite the pooling agreement between the League and the Clubs. But Plaintiffs have not alleged that any Club had expressed such a desire, and have not identified anything that would suggest such documents even exist within the Clubs' possession. As Plaintiffs are undoubtedly aware, litigants "ought not be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Medtronic*, 2000 WL 1478476, at *3.

### Use of Search Terms

Both sides agree that the use of search terms is appropriate for some of Plaintiffs' Requests, but the NFL Defendants disagree with Plaintiffs as to the long list of Requests for which Plaintiffs now claim search terms are unnecessary. *See* Letter at 9. And by referencing RFP No. 15 as an example in the Letter, Plaintiffs further show the benefit of using search terms. Plaintiffs purport that RFP No. 15 only calls for "all documents relating to analysis of actual or potential consumer usage and viewership of NFL Sunday Ticket" or similar packages anywhere in the world—already an overly broad request—while ignoring that their request continued on to further request "satellite or direct-to consumer packages sold under any branding" and listed without limitation a broad range of potential documents including fan surveys and competition reviews. The NFL Defendants are willing to work with Plaintiffs on this Request and the others identified in Defendant's Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents but one thing is clear: The use of search terms is appropriate to limit these overbroad requests and reduce the excessive burden of collection, review, and production.

Given the NFL Defendants' knowledge of organizational structure and familiarity with the issues in this case, the NFL Defendants will propose a list of search terms to address those Requests for which the NFL Defendants have agreed to conduct custodial searches.

### Other General Issues

Plaintiffs also raise a series of other general issues with the NFL Defendants' responses. Letter at 4–9. These concerns do not withstand scrutiny.

*First*, the NFL Defendants' responses are not boilerplate; to the contrary, they more than meet the requirements that for each request, they "either state that inspection . . . will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." *O. L. v. City of El Monte*, No. 20-cv-00797, 2021 WL 922078, at *2 (C.D. Cal. Jan. 27, 2021). For the large majority of requests for which Plaintiffs seem to take issue, the NFL Defendants have either agreed to produce documents—stating in detail what documents they have agreed to produce—or have offered to meet and confer to determine an appropriate scope of production. As such, any concerns with the NFL Defendants' objections are either unwarranted or premature.

*Second*, any concerns about the NFL's privilege determinations are similarly premature. Plaintiffs will have ample time to review the privilege log for any documents that the NFL Defendants determine should not be produced on privilege grounds.

*Third*, the NFL Defendants appropriately agreed in response to certain requests to produce "formal" studies and analyses in lieu of *all documents or plans* even tangentially related to an inadequately defined category of documents. For example, RFP No. 29 seeks "*all documents* relating to studies, reports, and presentations received or prepared by" *any* current or former NFL employee, director, or officer, relating to the "market for live presentation of professional football games in the United States." (emphasis added). The burden and expense of responding to this request as written would be staggering. The NFL Defendants agreed to produce the final product—*e.g.*, the formal studies, analyses, business plans, and strategic plans themselves—relating to this broad topic, and this sensible limitation serves to provide Plaintiffs with the information they seek while avoiding costly, unnecessary, and burdensome discovery.

Plaintiffs similarly take issue with the NFL Defendants' responses to five of Plaintiffs' other broad requests that seek, for example, *all documents* relating to the licensing and distribution of NFL football games and *all communications* between the League and its television broadcast partners, *without limitation*. *See* Letter at 7; RFP Nos. 4–7, 104. As is the case for many of Plaintiffs' requests, the burden of complying with these as written would be overwhelming. The NFL Defendants reasonably agreed to produce the contracts at issue (whether they reference the NFL Sunday Ticket package or not), along with certain communications about those contracts that do reference the NFL Sunday Ticket package, which will ensure that Plaintiffs obtain the relevant discovery to which they are entitled while avoiding costly discovery demands that exceed the needs of the case.[1]

*Fourth*, Plaintiffs challenge a variety of other responses where the NFL Defendants indicated they were "unable to search for, collect, or produce documents . . . at this time." Letter at 7. To be clear, for each of the requests at issue here, the NFL Defendants are unable to comply

---

1 To the extent that Plaintiffs seek discovery related to negotiated contracts that were not consummated, the NFL Defendants agreed, in response to RFP No. 51, to conduct a reasonable search during an appropriate time period for documents related to negotiations concerning the licensing or carriage of any out of market games in the United States or the licensing or carriage of the NFL Sunday Ticket package on an exclusive or non-exclusive basis.

4

with Plaintiffs' requests because the requests seek discovery beyond that authorized by Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs' letter, however, consistently mischaracterizes and ignores the entirety of the NFL Defendants' stated objections to these requests. For example, Plaintiffs' letter seeks to raise concerns with the fact that the NFL Defendants objected to the relevant time period of production for RFP No. 1, which seeks nearly 30 years of annual and quarterly financial statements from the League and all member Clubs. Plaintiffs' letter ignores that the NFL Defendants also objected to this request because it seeks irrelevant information and is overbroad and disproportionate to the needs of the case, particularly in light of the fact that the NFL Defendants agreed, in response to RFP No. 25, to produce discovery related to revenue and earnings for the NFL Sunday Ticket package.

As another example, Plaintiffs' letter attempts to takes issue with one specific objection raised by the NFL Defendants in response to RFP No. 37, which seeks legal documents like joint defense agreements. *See* Letter at 7 (focusing solely on the NFL Defendants' confidentiality and privilege objections to RFP No. 37). But the NFL Defendants explained with specificity multiple bases for its decision not to produce documents in response to this request, and that position is consistent with the law. *See, e.g.*, *Phase II Chin, LLC v. Forum Shops, LLC*, No. 08-cv-00162, 2010 WL 11636216, at *9 (D. Nev. Mar. 2, 2010) ("Federal courts have generally declined to order production of a joint defense agreement on the grounds that it is not relevant to the claims or defenses in the lawsuit and is therefore not discoverable under Rule 26(a).").

The NFL Defendants remain willing to further discuss those RFPs for which they have declined to produce documents, but any such discussion must take into account the entirety of the NFL Defendants' stated objections.

### **Other Objections**

Plaintiffs end their letter by highlighting six specific requests, many of which were already raised at prior points in their letter. Letter at 9–11.

*First*, Plaintiffs argue that the NFL Defendants' response to RFP No. 2 is somehow too narrow because it agrees to produce only certain documents related to officers, directors, or employees "who dealt with only television providers." Letter at 10. But Plaintiffs' request itself was limited to this exact group of people. *See* RFP No. 2 (seeking only certain information relating to individuals "with responsibilities relating to the licensing and distribution of NFL football game programming *for television*" (emphasis added)).

*Second*, Plaintiffs raise concerns with the NFL Defendants' response to RFP Nos. 4 and 5. Those concerns have been addressed above.

*Third,* in response to RFP No. 22, the NFL Defendants agreed to provide documents covering a 50-year period that explain the revenue-sharing process between the NFL and its member Clubs. Plaintiffs' current insistence that the NFL Defendants collect and produce *all documents* "relating to the sharing of revenue" is untenable. The NFL Defendants invite Plaintiffs to explain how additional documents about revenue sharing are relevant and proportional to the

needs of the case and remain willing to meet and confer on this request if Plaintiffs are able to do so.

*Fourth*, in response to RFP No. 52, the NFL Defendants agreed to produce communications between the League and DirecTV relating to the consideration of offering NFL Sunday Ticket on an exclusive or non-exclusive basis. Plaintiffs' letter suggests that it would be inappropriate for the NFL Defendants to limit production to communications between the League and DirecTV. Those concerns are already largely addressed by the NFL Defendants' agreement in response to RFP Nos. 51 and 74 to conduct a reasonable search for documents in the League's possession that (a) relate to negotiations or agreements concerning the licensing or carriage of NFL Sunday Ticket on an exclusive or non-exclusive basis and (b) relate to consideration of offering NFL Sunday Ticket on an exclusive or non-exclusive basis in the United States. Further, it is the NFL, rather than the individual member Clubs, that negotiated with DirecTV to offer NFL Sunday Ticket on an exclusive basis in the United States. Plaintiffs' requests for "communications among the Clubs, and communications within each Club," Letter at 10-11, are therefore not relevant or proportional to the needs of the case.

*Lastly,* RFP No. 99 seeks *all documents* created by or relating to a special committee created in 2004 concerning revenue and cost-sharing alternatives. The NFL Defendants have already agreed to produce any resolutions resulting from the committee, even those that predate Plaintiffs' start date of production for this request. The NFL Defendants invite Plaintiffs to explain how additional documents relating to this special committee are relevant and proportional to the needs of the case. The NFL Defendants are willing to meet and confer on this request if Plaintiffs are able to do so.

### **Conclusion**

As indicated above, the NFL Defendants remain willing to work cooperatively with Plaintiffs to resolve these issues.

Sincerely,

Jeremy Barber

CC: Plaintiffs' Counsel of Record