MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
RAYMOND K. WRIGHT (331950)
rwright@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
IRVING SCHER
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel listed on Signature Page]

*Plaintiffs' Interim Co-Lead Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 2:15-ml-02668−PSG (JEMx)<br>**DISCOVERY MATTER**<br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NFL CLUB DEFENDANTS**<br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: June 22, 2021 at 10:00 a.m.<br>Place: Courtroom 640<br>Discovery Cutoff Date: 3/22/2022<br>Pretrial Conference Date: TBD<br>Trial Date: TBD |

1    The thrust of the NFL Defendants' argument—that a plaintiff could bring an action
2    against multiple defendants alleging they all participated in an illegal antitrust
3    conspiracy, have the validity of those claims be sustained by the Court of Appeals, and
4    yet be denied *any* document discovery from nearly all of those defendants—is, to say the
5    least, remarkable. To support that argument, the NFL Defendants re-hash old arguments
6    that were rejected by the Ninth Circuit and erect hurdles to discovery that are
7    unsupported by authority. Furthermore, the NFL Defendants focus extensively on the
8    discovery requested of the League, ignoring the fact that the Club Defendants are
9    independent entities separately named as defendants in this action. While Plaintiffs have
10   always been, and remain willing, to discuss ways to reduce discovery burdens (including
11   limiting the number of Club document custodians), the NFL Defendants have insisted
12   that *no* Club Defendant should be required to participate in *any* document discovery.

13   **I.    The NFL Defendants Mischaracterize Plaintiffs' Claims and Renew**
14   **Arguments Previously Rejected by the Ninth Circuit.**

15   The NFL Defendants premise their arguments on the flawed assumption that only
16   the League's decision to license Sunday Ticket to DIRECTV on an exclusive basis is
17   relevant to this case. As a result, they argue that discovery from the Club Defendants is
18   unnecessary because they have pooled their broadcasting rights, that such pooling is
19   "sanctioned" by the Sports Broadcasting Act ("SBA"), and that they do not negotiate the
20   League's broadcast agreements. *See* J.S. at 54, 62.[1]

21   But, as the Ninth Circuit acknowledged, the SBA expressly *excludes* pooling of
22   rights for non-sponsored broadcasting—like Sunday Ticket. The decision to pool these
23   rights forms a critical part of the claims in this case. Indeed, the Ninth Circuit held that
24   the horizontal arrangement among the teams to pool their "separate property rights" is
25   an integral part of this case and cannot be artificially divorced from the interrelated
26   agreement between the NFL and DIRECTV. *In re Nat'l Football League's Sunday Ticket*

27

28   _____
[1] Plaintiffs cite to the parties' Joint Stipulation for this Motion at Dkt. No. 330-1 as "J.S."

*Antitrust Litig.*, 933 F.3d 1136, 1153 (9th Cir. 2019). The Ninth Circuit went on to note that the teams are capable of licensing their own broadcasts, but that the "agreements that are the subject of plaintiffs' antitrust action"—including the agreement among the Club Defendants to pool their rights—"prevent such independent actions." *Id.* at 1154.

The conduct among the Club Defendants, as opposed to just the League and DIRECTV, are fundamental to Plaintiffs' claims. The Ninth Circuit agreed.

## II.   Discovery From the League Is Irrelevant to Whether the Club Defendants Should Produce Documents.

Much of the NFL Defendants' arguments focus on the so-called "expansive" discovery requested from the ***League***. Those arguments are unavailing because the Club Defendants are *separate* entities from the League. The Supreme Court has made that clear. *See Am. Needle Inc. v. NFL*, 560 U.S. 183, 196 (2010). Thus, as the Ninth Circuit recognized in this very case, the agreements among the Club Defendants "concern separately owned intellectual property." *In re Sunday Ticket*, 933 F.3d at 1154. The Club Defendants are separately named as co-conspirators in this action and the NFL Defendants fail to cite any authority that would permit imputing any burden on the League entities onto the independent entities comprising the Club Defendants.[2]

Separately, the NFL Defendants wrongly characterize the requested discovery as a fishing expedition. This is simply not the case. As the Court can see by reviewing the requests, the requests seek a confined set of materials relevant to the core of Plaintiffs' claims. Documents reflecting Club finances is necessary for any number of reasons, including responding to Defendants' claim that their agreed-upon broadcasting restraints are necessary to maintain on-field competitive balance. Plaintiffs also seek documents related to the Clubs' independent negotiations for radio and pre-season broadcasts, which demonstrate that the Clubs *can* independently negotiate such deals without going through the League. The Clubs are not public entities and without document discovery there will

---

[2] Negotiations over League discovery are ongoing. The scope of that discovery is not before the Court on this motion.

1    be no way to accurately assess the potentially divergent interests of the co-conspirators
2    on a host of other relevant topics. These include each Club's conduct regarding the
3    restraints, which prevent Clubs from, as the CEO of the 49ers put it, "try[ing] new things
4    or try[ing] to disrupt." J.S. at 45. This also includes the Clubs' evidence regarding the
5    legality of the restraints, market characteristics, the effects of revenue sharing, the
6    incentives to compete with other clubs for fan viewership inside and outside their
7    designated territories, the value of each Club's separate marks and intellectual property,
8    and any individual club efforts to expand the scope of the Sports Broadcasting Act.

9         Discovery in antitrust litigation is necessarily broad as it often encompasses
10   conduct undertaken over extensive periods of time, analysis of how that conduct affected
11   a market, and determining what the but-for world would look like absent the defendants'
12   improper conduct. For these and other reasons, "[i]n antitrust cases, courts have generally
13   allowed liberal discovery." *Cyntegra, Inc. v. IDEXX Labs., Inc.*, 2007 WL 9701999, at
14   *4 (C.D. Cal. June 29, 2007); *see also New Park Ent. L.L.C. v. Elec. Factory Concerts,
15   Inc.*, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) ("[D]iscovery in antitrust litigation
16   is most broadly permitted and the burden or cost of providing the information sought is
17   less weighty a consideration than in other cases." (quotation marks omitted)). This
18   includes the relevant time period. *See New Park*, 2000 WL 62315, at *3 ("The asserted
19   history of the conspiracy and not the scope of plaintiff's damage provides the temporal
20   boundary for the discovery." (quotation marks omitted)).

21        Thus, the NFL Defendants are wrong in claiming that there is not a single case
22   involving discovery similar to what plaintiffs seek here. *See* J.S. at 4. For one thing, the
23   Club Defendants themselves have been exposed to such discovery in antitrust litigation
24   before. The Dallas Cowboys, one of the NFL's clubs, brought an antitrust action against
25   the League **and each of the Club Defendants** regarding the League's requirements to
26   pool other forms of intellectual property. *See* Am. Compl., *Dallas Cowboys Football
27   Club, Ltd.*, No. 95 Civ. 9426 (S.D.N.Y. Jan. 11, 1996), ECF No. 10, 1996 WL 34473933.
28   Moreover, in a similar case involving restraints on sports broadcasting by Major League

1   Baseball and the National Hockey League, all defendant clubs participated fully in

2   discovery. *See, e.g.*, *Laumann v. NHL*, 56 F. Supp. 3d 280, 305-06 (S.D.N.Y. 2014)

3   (discussing deposition testimony of the owner of the Boston Red Sox). Other antitrust

4   cases against multiple defendants further demonstrate "discovery of this breadth." J.S. at

5   4. *See*, *e.g.*, Mem. in Support of Pls.' Counsel's Joint App. for an Award of Attorneys'

6   Fees & Reimbursement of Expenses, *In re Air Cargo Shipping Servs. Antitrust Litig.*,

7   No. 06-MD-1775 (E.D.N.Y. Aug. 19, 2016), ECF No. 2472-1 at 7 (stating that discovery

8   in antitrust case involved a "large number of defendants (30 defendant groups), millions

9   of documents, [and] more than 90 depositions").

10  **III.    The NFL Defendants Seek to Impose Hurdles Unsupported by the Law.**

11          The NFL Defendants apparently believe that, for any document request, a party

12  must provide a particularized justification for why they think "that such document

13  actually exists." J.S. at 63. But Rule 26 provides that discovery is appropriate where it is

14  relevant and proportional, not whether a party has evidence that a document actually

15  exists. The NFL Defendants cite no authority for their "actually exists" rule and such a

16  rule would create endless discovery disputes. Imagine if a party requesting a company's

17  organizational charts or financial statements, as just one example, had to justify their

18  belief that the company actually created those documents before requesting them.

19          In any event, there is good reason to believe that the Club Defendants have

20  analyzed or discussed the League's requirement to pool broadcast rights. The antitrust

21  case filed by the Dallas Cowboys against the NFL and the other Club Defendants is a

22  perfect example. In that case, the Dallas Cowboys complained about the League's

23  requirements to pool the marks owned by the various clubs. *See* Am. Compl., *Dallas*

24  *Cowboys Football Club*, 1996 WL 34473933. The Dallas Cowboys alleged that the

25  required pooling of the marks eliminated competition among the NFL Clubs and

26  prevented the Cowboys from independent commercial use of its marks in violation of

27  the Sherman Act. *See id.* While it did not involve television broadcast rights, the

28  Cowboys case demonstrates that the teams do consider the economics of pooling their

intellectual property with the League as opposed to acting independently.

**IV.     The Requested Discovery Is Relevant and Plaintiffs Have Made Clear That They Are Willing to Further Confer Regarding Any Purported Burden.**

The documents requested from the Club Defendants are undoubtedly relevant to the claims at issue in this case. Not only do they relate to the Club Defendants' decision to pool their broadcast rights, but the requested documents further go to examining the anticompetitive effects of those agreements and the damage caused by them. For example, Plaintiffs allege that in the but-for world, the Club Defendants would separately compete by offering team-specific broadcast license offerings that would not require consumers to pay for access to all of the league's games. Documents requested from the Club Defendants, including the Club Defendants' financial statements, will be relevant in examining what that but-for world would look like.

In addition, documents requested from the Club Defendants are also relevant to discovery sought from the League given that the League's governing committees include representatives from the Club Defendants. While the League has stated it intends to provide minutes and briefing materials from the relevant League committees, they omit critical categories of documents relevant to the work of those committees such as email correspondence among the Club Defendants regarding committee meetings and actions.

With regard to any potential burden on the Club Defendants, Plaintiffs have made efforts to reduce it. For example, Plaintiffs narrowed the requests directed to the Club Defendants to only 47—many of which seek similar types of materials from each of these Defendants. And while the NFL Defendants point out the number of custodians proposed by the Plaintiffs for the Club Defendants, Plaintiffs have always expressed a willingness to discuss which custodians are appropriate and to narrow that list. But on a meet and confer among the parties, the NFL Defendants made it clear that they would not agree to even a ***single*** custodian for any of the Club Defendants. In light of that position, Plaintiffs had no choice but to bring the instant motion. Should the Court grant this motion, Plaintiffs remain prepared to negotiate the number of custodians for the Club Defendants.

DATED: June 8, 2021                      Respectfully submitted,

MARC M. SELTZER
RAYMOND K. WRIGHT
SUSAN GODFREY L.L.P.

SCOTT MARTIN
IRVING SCHER
HAUSFELD LLP

HOWARD LANGER
EDWARD DIVER
PETER LECKMAN
LANGER GROGAN AND DIVER PC

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006

Tel: (202) 540-7200/Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

By:    */s/ Marc M. Seltzer*  _____
          Marc M. Seltzer

*Plaintiffs' Interim Co-Lead Class Counsel*