MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel listed on Signature Page]

*Plaintiffs' Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-PSG (JEMx) |
| | **DISCOVERY MATTER** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NFL DEFENDANTS** |
| | Magistrate Judge: Hon. John E. McDermott |
| | Date/Time: January 11, 2022 at 10:00 a.m. |
| | Discovery Cutoff Date: 5/15/2022 |
| | Pretrial-Conference Date: TBD |
| | Trial Date: TBD |

**Redacted Version of Document Proposed to Be Filed Under Seal**

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENTS..................................................................1

    A.     PLAINTIFFS' PRELIMINARY STATEMENT.................................1

    B.     NFL DEFENDANTS' PRELIMINARY STATEMENT ....................1

II.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE....................3

III.   PARTIES' CONTENTIONS ...................................................................5

    A.     PLAINTIFFS' STATEMENT ...............................................................5

        1.     Factual and Procedural Background..........................................5

        2.     Legal Standard ........................................................................7

        3.     The Network Contracts Should Be Produced in Their Entirety..................................................................................8

        4.     Conclusion ............................................................................12

    B.     NFL DEFENDANTS' STATEMENT................................................12

        1.     Factual and Procedural Background........................................12

        2.     Legal Standard ......................................................................17

        3.     Redactions to the Network Agreements Are Appropriate ...........................................................................17

        4.     Plaintiffs' Motion Is Procedurally Improper ...........................21

        5.     Conclusion ............................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
    2009 WL 511866 (S.D. Ill. Feb. 27, 2009) ................................................................ 18

*Anderson, Greenwood & Co. v. Nibsco Supply, Inc.*,
    1996 WL 377205 (W.D.N.Y. June 27, 1996) ........................................................... 19

*Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 18-cv-1220 (JLS) (ADS),
    2019 WL 7841078 (C.D. Cal. Nov. 8, 2019) ........................................................... 22

*Beverage Distributor, Inc. v. Miller Brewing Co.*,
    2010 WL 1727640 (S.D. Ohio Apr. 28, 2010) ......................................................... 10

*Covarrubias v. Ocwen Loan Servicing, LLC*,
    2018 WL 5914240 (C.D. Cal. June 21, 2018) ........................................................... 8

*Diak v. Dwyer, Costello & Knox, P.C.*,
    33 F.3d 809 (7th Cir. 1994) ..................................................................................... 18

*DIRECTV, Inc. v. Trone*,
    209 F.R.D. 455 (C.D. Cal. 2002) .............................................................................. 8

*Doe v. Trump*,
    329 F.R.D. 262 (W.D. Wash. 2018) ................................................................ 11, 12

*Epic Games, Inc. v. Apple Inc.*,
    2021 WL 1326298 (N.D. Cal. Apr. 9, 2021) ...................................................... 17, 21

*Epstein v. MCA, Inc.*,
    54 F.3d 1422 (9th Cir. 1995) ................................................................................... 17

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ................................................................................. 17

*Evon v. Law Offices of Sidney Mickell*,
    2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ............................................................. 11

*Glenn-Colusa Irrigation Dist. v. U.S. Army Corps of Eng'rs*,
    2019 WL 3231748 (E.D. Cal. July 18, 2019) ......................................................... 21

*Hansen-Poulsen v. Dep't of Defense*,
    2020 WL 2043999 (C.D. Cal. Mar. 3, 2020) ......................................................... 21

*Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*,
    2020 WL 5044610 (C.D. Cal. June 16, 2020) ....................................................... 18

*Hill v. Asset Acceptance, LLC*,
   2014 WL 3014945 (S.D. Cal. July 3, 2014) ........................................................... 10

*Holley v. Gilead Scis., Inc.*,
   2020 WL 2097602 (N.D. Cal. May 1, 2020) .......................................................... 19

*Hsingching Hsu v. Puma Biotech., Inc.*,
   2018 WL 4951918 (C.D. Cal. June 27, 2018) .......................................................... 8

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019)............................................................... 6, 11, 13

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   2012 WL 629225 (N.D. Cal. Feb. 27, 2012)........................................................... 18

*In re Takata Airbag Prods. Liab. Litig.*, No. 15-md2599 (FAM),
   2016 WL 1460143 (S.D. Fla. Mar. 1, 2016) .......................................................... 18

*Johnson v. Hewlett Packard Co.*,
   2011 WL 13153654 (N.D. Cal. Apr. 21, 2011) ....................................................... 18

*MetroPCS v. A2Z Connection, LLC*,
   2020 WL 127550 (D. Nev. Jan. 10, 2020) .............................................................. 10

*Moi v. Chihuly Studio, Inc.*,
   846 F. App'x 497 (9th Cir. 2021) ...................................................................... 17

*Narayan v. EGL, Inc.*,
   2006 WL 3050851 (N.D. Cal. Oct. 24, 2006)........................................................... 19

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
   322 F.R.D. 1 (D.D.C. 2017).................................................................................. 8

*Perez v. Wells Fargo Bank, N.A.*,
   2019 WL 289831 (N.D. Cal. Jan. 8, 2019) ............................................................ 11

*Reynolds v. Liberty Mut. Ins. Co.*,
   2017 WL 6415360 (D. Ariz. May 23, 2017)............................................................ 10

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
   2019 WL 12536127 (C.D. Cal. Sept. 26, 2019)................................................... 17, 21

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
   2016 WL 6246384 (C.D. Cal. Feb. 23, 2016)......................................................... 11

*United States v. McGraw-Hill Cos., Inc.*,
   2014 WL 8662657 (C.D. Cal. Sept. 25, 2014)........................................................ 11

1

2

**<u>Rules</u>**

3

Fed. R. Civ. P. 26 ............................................................................................................ 7, 17, 22

Fed. R. Civ. P. 37 ............................................................................................................ 1, 3, 7, 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, Plaintiffs and the NFL Defendants submit the following joint stipulation regarding Plaintiffs' Motion to Compel Production of Documents.

## I.   PRELIMINARY STATEMENTS

### A.   PLAINTIFFS' PRELIMINARY STATEMENT

The NFL Defendants have produced copies of agreements with CBS, ESPN, FOX, and NBC (the "Network Contracts") that are replete with improper redactions. The Network Contracts are at the heart of this antitrust litigation—they not only represent some of the longest-standing distribution models for NFL football, and therefore offer valuable insight into the costs and technicalities associated with traditional television broadcasts and alternative distribution models, but also are a key vehicle for restricting the number of games available to consumers. Given the importance of these documents to Plaintiffs' claims—and the presence of not one, but two protective orders that provide more than enough safeguards for any confidential or commercially sensitive information—the NFL Defendants have no basis for redacting any portion of the Network Contracts. Plaintiffs therefore respectfully request that the Court compel the NFL Defendants to produce unredacted versions of the Network Contracts, which include but are not necessarily limited to the documents currently identified as NFL_0000001; NFL_0000133; NFL_0377291; NFL_0419932; NFL_0458529; NFL_0458574; NFL_ 0458617; and NFL_0458699.

### B.   NFL DEFENDANTS' PRELIMINARY STATEMENT

In their complaint, Plaintiffs allege that the NFL's arrangement with DIRECTV "allows the Defendants to restrict the output of, and raise the prices for, the live broadcast of NFL Sunday afternoon out-of-market games."  Consolidated Amended Complaint, Dkt. 163, ¶ 11.  The agreements that are truly at the heart of this case—the ones between the NFL and DIRECTV for the provision of the NFL Sunday Ticket package—have been produced in unredacted form.

The instant motion concerns certain redactions made by *third parties* CBS,

Fox, NBC, and ESPN to the produced versions of *other* broadcast agreements with the NFL.  These other agreements fall outside the scope of Plaintiffs' claims, and the sponsored telecasts are indisputably protected from antitrust challenge by the Sports Broadcasting Act.  Furthermore, the redactions to these other agreements were applied only to limited, commercially sensitive provisions that have nothing to do with NFL Sunday Ticket or the broadcast of any regular-season, out-of-market NFL football games.

Substantively, Plaintiffs' position lacks merit.  The produced contracts with CBS, Fox, NBC, and ESPN provide Plaintiffs all the information they need for this litigation, including memorialization of agreements relating to the NFL Sunday Ticket package, █████████████████████████████████████████████████████████████████████████████████████████████████████, and the like.  Plaintiffs now claim they need access to all redacted provisions from those contracts, but have failed to articulate with any specificity why that is the case. Meanwhile, the NFL's broadcast partners have spelled out in detail, in declarations attached to this filing, the prejudice they would face from disclosure of those redacted provisions.

And as a procedural matter, it is unclear why this issue is currently before the Court.  The parties entered a court-approved stipulation setting forth procedures for resolving disputes regarding the scope of redactions to certain broadcast agreements. Plaintiffs have made no effort to comply with this Court's Order.  Nor have they otherwise attempted to complete good-faith meet-and-confers with the broadcasters implicated by their motion.

Plaintiffs' motion should be denied.

2

## II.   DISCOVERY REQUESTS AND RESPONSES IN DISPUTE

Pursuant to Local Rule 37-2.1, the discovery requests at issue and the NFL Defendants' responses to those requests are copied verbatim below.

**Request for Production No. 4:**

All documents, including all contracts and documents reflecting communications, relating to the licensing and distribution of NFL football games over television since January 1, 1987.

**Response to Request for Production No. 4:**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad in its request for "all documents including all contracts and documents reflecting communications" related to the distribution of NFL football games without reasonable limitation in scope; (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for all documents related to licensing and distribution of NFL football games over television, even those with no bearing on the present litigation; and (c) exceeding the relevant time period and is unduly burdensome and disproportionate. This request is impermissibly ambiguous and vague by asking for "all documents reflecting communications" without specifying a party.

NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Numbers 6 and 7.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce final contracts between the League and CBS, NBC, Fox, ESPN, and DirecTV that were operative between June 17, 2011 and June 24, 2016 and relate to the licensing and distribution of live regular season NFL football games

over television. The NFL Defendants also state that they will produce documents reflecting communications by or among the League and CBS, NBC, Fox, ESPN, and DirecTV that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to the negotiation or terms and conditions of the final contracts referenced previously in this response and reference the NFL Sunday Ticket package.

**Request for Production No. 6:**

All documents, including all contracts and documents reflecting communications, between the League and any television providers, including, but not limited to, CBS, NBC, Fox, ESPN/ABC/Disney (collectively, "ESPN"), NFL Network, DirecTV, or any other provider of video services.

**Response to Request for Production No. 6:**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for all documents between the League and any television provider without a reasonable limitation in scope; and (b) seeking production of information that is not relevant to any party's claim or defense and not proportionate to the needs of the case in asking for all documents without tailoring the request to documents related to the NFL Sunday Ticket Package. The NFL Defendants also object to the terms "all documents . . . reflecting communications" and "other provider of video services" as being impermissibly vague and ambiguous.

NFL Defendants also object to this request to the extent it seeks information more appropriately obtained from other parties, non-parties, publicly available information, or information as easily obtainable by the Plaintiffs as by the NFL Defendants. The NFL Defendants further object to this request as duplicative of other requests in this set, including, without limitation, Request Number 7.

Subject to the foregoing General and Specific Objections, the NFL Defendants state that they will produce final contracts between the League and CBS, NBC, Fox,

ESPN/ABC/Disney (collectively "ESPN"), and DirecTV that were operative between June 17, 2011 and June 24, 2016 and relate to the licensing and distribution of live regular season NFL football games over television and online streaming. The NFL Defendants also state that they will produce documents reflecting communications by or among the League and CBS, NBC, Fox, ESPN, and DirecTV that (a) are discovered in the course of a reasonable search; (b) are dated between June 17, 2011 and June 24, 2016; and (c) relate to the negotiation or terms and conditions of the final contracts referenced previously in this response and reference the NFL Sunday Ticket package.

## III.  PARTIES' CONTENTIONS

### A.  PLAINTIFFS' STATEMENT

#### 1.  Factual and Procedural Background

This antitrust action revolves around the NFL Defendants' decades-long effort to monopolize and artificially constrain the market for out-of-market Sunday afternoon NFL games. *See* Consolidated Amended Complaint ("CAC"), Dkt. 163, ¶¶ 1-13. At the heart of the NFL Defendants' unlawful scheme are a series of interlocking agreements: (1) the pooling agreement between the NFL and the Clubs, by which the Clubs have foresworn their ability to license telecasts of their regular season games; (2) the exclusive licensing agreement between the NFL and DirecTV for the NFL Sunday Ticket package; and (3) the Network Contracts that regulate the distribution of telecasts of regular season NFL games that are also distributed as out-of-market games as part of the NFL Sunday Ticket package. *See id*. ¶ 10. Plaintiffs allege that each of these interlocking agreements play a role in ensuring that consumers who wish to watch the majority of regular season out-of-market NFL games may only do so by subscribing to NFL Sunday Ticket. *See id*. Indeed, the Network Contracts specifically constrain the number of regular season games that are available to consumers free over-the-air, and therefore help justify the supracompetitive prices that the NFL Defendants and DirecTV charge for NFL

Sunday Ticket. *See id*. ¶¶ 86-87. Plaintiffs further allege that absent these anti-competitive agreements, one possible outcome would be a proliferation of Club-specific telecasts that would compete with one another for consumers' attention and dollars. *See id*. ¶ 11.

On June 24, 2016, Plaintiffs filed the CAC, alleging that the NFL Defendants and DirecTV had violated Sections 1 and 2 of the Sherman Act. *See* Dkt. 163. The NFL Defendants moved to dismiss the CAC, arguing that Plaintiffs had failed to state a claim. *See* Dkt. 170. While the NFL Defendants' motion to dismiss was pending, the parties agreed to—and the Court entered—a stipulation concerning the production of CBS's and FOX's agreements with the NFL. *See* Dkt. 205. The stipulation, which was entered on December 1, 2016, was designed for the specific context of providing "limited discovery to Plaintiffs during the pendency of the NFL Defendants' Motion to Dismiss." *See id*. While the stipulation foresaw the possibility that CBS and FOX might request redactions of certain portions of their agreements with the NFL, *see id*., the NFL Defendants instead produced copies of the agreements that were almost entirely redacted, *see* Dkt. 206. Plaintiffs objected to these improper and indiscriminate redactions, *see* Dkt. 206, but the issue was not decided before the Court's decision on the motion to dismiss and the removal of jurisdiction to the Ninth Circuit, discussed below.

On June 30, 2017, the district court granted the NFL Defendants' motion, *see* Dkt. 251, and Plaintiffs subsequently appealed to the Ninth Circuit, *see* Dkt. 255. The Ninth Circuit reversed, concluding that Plaintiffs had adequately alleged violations of Sections 1 and 2 of the Sherman Act. *See* Dkt. 266. As part of its analysis, the Ninth Circuit noted the manner in which the Network Contracts directly contribute to the scarcity of games available to consumers outside of NFL Sunday Ticket. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1148 (9th Cir. 2019) (explaining that as a result of both the NFL-DirecTV Agreement and the NFL-Network Agreement, "fans who do not subscribe to Sunday Ticket have

access to, at most, two to three local games each Sunday afternoon, in any given geographic area").

Following the Ninth Circuit's reversal of the district court's dismissal of this action, the parties have been engaged in discovery. As part of its first set of requests for production, Plaintiffs requested that the NFL Defendants produce the Network Contracts. The NFL Defendants agreed to produce these Network Contracts, but Plaintiffs have since discovered that the NFL Defendants have, once again, produced copies that are replete with redactions. *See generally* Ex. 4-7. An NFL-FOX contract, for example, has 38 of its 56 pages *entirely* redacted, including for information as basic as FOX's rights fees to the NFL. *See generally* Ex. 7. Plaintiffs served a letter pursuant to Local Rule 37-1 on the NFL Defendants on November 8, 2021, explaining that there is no proper legal basis for redacting any portion of the Network Contracts and requesting that the Network Contracts be reproduced in their entirety. *See generally* Ex. 3. The parties, joined by counsel for FOX, met and conferred on November 18, 2021. The NFL Defendants and FOX inquired as to whether there were specific (unseen) portions of the Network Contracts that Plaintiffs believed should be unredacted, and Plaintiffs reiterated their position that all redactions were improper. The NFL Defendants also expressed their belief that the Court's December 1, 2016 stipulation still governed the production of the Network Contracts, despite the stipulation being agreed to and entered five years ago and in the specific context of allowing limited discovery during the pendency of a motion to dismiss. In short, the parties were unable to resolve their dispute as to the appropriateness of redactions in the Network Contracts, and Plaintiffs now move to compel production of unredacted copies of those Contracts.

## 2.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See also Covarrubias v. Ocwen Loan Servicing, LLC*, 2018 WL 5914240, at *2 (C.D. Cal. June 21, 2018); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (analyzing proportionality factors in context of antitrust claims). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002); *see also Hsingching Hsu v. Puma Biotech., Inc.*, 2018 WL 4951918, at *4 (C.D. Cal. June 27, 2018) ("The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied.").

### 3.    The Network Contracts Should Be Produced in Their Entirety

In conversations between the parties, the NFL Defendants have raised three arguments in support of the improper Network Contract redactions: (1) the redactions are permitted pursuant to the parties' December 1, 2016 stipulation; (2) the redactions are required to protect commercially sensitive information; and (3) the redactions are only applied to non-responsive portions of the Network Contracts. All of these arguments are meritless and should be disregarded.

*First*, and before addressing the NFL Defendants' supposed rationales for their redactions, it bears mention that the NFL Defendants' redactions themselves are inconsistent. For example, whereas the NFL Defendants have redacted the entirety of the rights fees section in the FOX contract, *see* Ex. 7, they have redacted only a portion of that same section in the CBS contract, *see* Ex. 4, and none of that section in the NBC contract, *see* Ex. 5. In addition, the NFL's contract with Amazon for Thursday Night Football is entirely unredacted. *See* Ex. 8. The NFL Defendants' inconsistent treatment of the various Network Contracts indicate that the redactions

do not reflect principled concerns about confidentiality or responsiveness, but rather appeasement of the individual whims of the NFL Defendants' network partners.

*Second*, the NFL Defendants' reliance on the December 1, 2016 stipulation is, in a word, absurd. As a preliminary matter, even if the stipulation had any continuing force, it would by its own terms apply only to the NFL's agreements with CBS and FOX. *See* Dkt. 205 (specifying that the stipulation pertains to "the production of certain media agreements between the NFL Defendants and CBS and FOX"). The stipulation does not encompass, and never has encompassed, the NFL's agreements with ESPN and NBC.

But the larger issue is that the December 1, 2016 stipulation simply does not apply to contracts produced in 2021 in response to Plaintiffs' formal requests for production. The stipulation, which was executed over five years prior to the filing of this motion to compel, was entered into with the express purpose of providing Plaintiffs with "limited discovery … during the pendency of the NFL Defendants' Motion to Dismiss." *Id*. As Plaintiffs explained in a December 14, 2016 position statement, Plaintiffs agreed to this limited discovery primarily because the NFL Defendants relied on excerpts of the CBS and FOX agreements in its motion to dismiss briefing. *See* Dkt. 206 at 1. Notably, the NFL Defendants did not disagree with this characterization of the purpose of the December 1, 2016 stipulation in their contemporaneous opposing position statement. *See* Dkt. 215.

None of the antecedent conditions surrounding the December 1, 2016 stipulation remain. Whereas the December 1, 2016 stipulation was agreed to and entered when a motion to dismiss was pending and discovery had not yet begun, the parties are now engaged in full discovery. And whereas the prior redacted versions of the CBS and FOX agreements were expressly produced pursuant to the parties' stipulation, the Network Contracts were produced in response to Plaintiffs' requests for production and with no reference to the stipulation. It would strain common sense for the NFL Defendants or the Court to believe that the parties reasonably expected

that a stipulation agreeing to limited discovery, for a limited purpose, and outside of formal discovery, would control or even relate to documents produced five years later in formal discovery. In fact, the NFL Defendants never mention the stipulation in its objections to Plaintiffs' RFPs regarding the contracts. *See supra* RFPs 4 & 6. The December 1, 2016 stipulation is irrelevant to the instant dispute.

*Third*, the NFL Defendants have no basis to redact the Network Contracts because of the potential presence of commercially sensitive information. There are not one, but two, stipulated protective orders in place in this action. *See* Dkt. 197, 360. These protective orders enable the parties to keep any documents that deserve such treatment from the public eye, and the most recent protective order even goes so far as to potentially prohibit disclosure of certain documents from outside counsel and experts. The NFL Defendants, for their part, have offered no explanation as to why these protective orders do not alleviate their or any non-party's concerns about purposeful or inadvertent disclosure of confidential information. Moreover, the law is clear that, where a protective order is in place, redactions for confidentiality are unnecessary and inappropriate. *See MetroPCS v. A2Z Connection, LLC*, 2020 WL 127550, at *2 (D. Nev. Jan. 10, 2020) (ordering that unredacted documents be produced because, "[t]o the extent the concern is privacy or confidentiality, a protective order will alleviate that concern"); *Reynolds v. Liberty Mut. Ins. Co.*, 2017 WL 6415360, at *2 n.2 (D. Ariz. May 23, 2017) (finding that "in light of the Protective Order issued in this case, Defendant may not redact discoverable material on the basis of confidentiality"); *Hill v. Asset Acceptance, LLC*, 2014 WL 3014945, at *4 (S.D. Cal. July 3, 2014) (ordering Defendant to remove all non-privilege-related redactions in part because "there is a protective order in this case governing the exchange of confidential information"); *see also Beverage Distributor, Inc. v. Miller Brewing Co.*, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010) ("[T]he fact that the producing party is not harmed … by producing sensitive information which is

subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case.").

*Fourth*, any redactions based on claims of non-responsiveness are manifestly improper and contrary to law. *See, e.g.*, *Doe v. Trump*, 329 F.R.D. 262, 275-76 (W.D. Wash. 2018) ("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive from documents that are otherwise responsive to a discovery request."); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) ("[The defendant] may not redact otherwise responsive documents because those documents contain irrelevant material."); *United States v. McGraw-Hill Cos., Inc.*, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek … merely to keep non-responsive information out of an adversary's hands."); *see also Perez v. Wells Fargo Bank*, *N.A.*, 2019 WL 289831, at *1 (N.D. Cal. Jan. 8, 2019) ("The delay and distrust caused by Defendant's decision to redact this recent batch of documents are the precise reasons why relevancy redactions are ill advised."); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. It should not come as a shock to those involved in litigation, that parties may see the outcome differently.").

Moreover, even if redactions for irrelevancy were permissible, it would still be improper to redact any portion of the Network Contracts. As Plaintiffs have alleged, *see* CAC ¶¶ 10, 12, 71, 86-87, and as the Ninth Circuit has confirmed, *see In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1148, the Network Contracts are at the heart of this litigation and play a key role in restricting the output of telecasts available to consumers. Moreover, as longstanding and existing models for the license and distribution of live NFL telecasts, even seemingly irrelevant provisions of the Network Contracts may offer insight into potential alternative

means of distribution and the less apparent costs associated with producing such telecasts. *See Doe v. Trump*, 329 F.R.D. at 276 ("It is a rare document that contains only relevant information; and irrelevant information within an otherwise relevant document may provide context necessary to understand the relevant information."). For example, NBC's redaction of a section entitled "████████████████," *see* Ex. 5, may hide useful information about potential means of distributing out-of-market NFL games other than via NFL Sunday Ticket. In short, the Network Contracts are essential documents and the redaction of any information risks disguising crucial information or context. The Court should compel the NFL Defendants to produce the Network Contracts absent redaction.[1]

### 4.      Conclusion

Plaintiffs respectfully request that the Court compel the NFL Defendants to produce unredacted copies of the Network Contracts, which include but are not limited to the documents currently identified as NFL_0000001; NFL_0000133; NFL_0377291; NFL_0419932; NFL_0458529; NFL_0458574; NFL_ 0458617; and NFL_0458699. Given the minimal burden associated with collecting these documents, Plaintiffs respectfully request that the Court compel these productions within seven (7) days of the Court's hearing on this motion.

### B.      NFL DEFENDANTS' STATEMENT

### 1.      Factual and Procedural Background

In this case, Plaintiffs allege that the NFL and its 32 member Clubs have agreed among themselves and with DIRECTV to eliminate competition in the broadcast and sale of DIRECTV's NFL Sunday Ticket package of out-of-market games. Consolidated Amended Complaint, Dkt. 163, ¶ 1. The Ninth Circuit's review of this case confirmed that the "challenged arrangement" is that "between the NFL teams,

---

[1] As Plaintiffs noted in their 2016 position statement, the parallel network contracts were produced without any redactions in *Laumann v. the National Hockey League*, 12-cv-1817 (SAS), S.D.N.Y. and *Garber v. Office of the Commissioner of Baseball*, 12-cv-3704 (SAS), S.D.N.Y. *See* Dkt. 206 at 4.

the NFL, and DirecTV," and that the NFL's "sale of telecast rights to free, over-the-air television networks" like CBS, Fox, and NBC is "squarely" protected from antitrust challenge by the Sports Broadcasting Act.  *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1144, 1147 (9th Cir. 2019).  It is thus not the case, as Plaintiffs suggest, that this litigation subjects the NFL's agreements with CBS, Fox, or NBC to antitrust scrutiny.

With that context in mind, the NFL Defendants have produced completely unredacted versions of each of their agreements with DIRECTV dating back to 1994.  In addition, the NFL Defendants have produced a wide range of agreements with additional broadcasters such as CBS, Fox, NBC, ESPN, and Amazon, most of which are also completely unredacted.  Plaintiffs now challenge the limited redactions that were made to some of those agreements by CBS, Fox, NBC, and ESPN to protect third-party confidentiality interests.

More than five years ago, when this production began, the parties entered into a stipulation that, as Plaintiffs acknowledge, "foresaw the possibility that CBS and FOX might request redactions of certain portions of their agreements."  *See supra*, at 6.  That stipulation, which the Court entered on December 1, 2016, recognized the possibility of disputes over the scope of redactions to the CBS and Fox agreements, and created a clear process for their resolution.  *See* Order re: Stipulation Regarding Production of Media Agreements ("Stipulated Order"), Dkt. 205, ¶ 2.  More specifically, the Stipulated Order requires Plaintiffs to provide written notice to the NFL Defendants and the third-party broadcast partner with a complete list of redactions they challenge before seeking Court intervention.  *Id.*

While it is correct that the Stipulated Order does not expressly apply to agreements with NBC or ESPN, that is not surprising, as those agreements do not involve the broadcasting of NFL games on Sunday afternoons and thus are even less relevant to this litigation than the agreements with CBS and Fox.  Instead, the NBC and ESPN agreements relate to a single national broadcast on Sunday and Monday

nights respectively and have nothing to do with the bundle of games potentially available on Sunday afternoons as part of the NFL Sunday Ticket package at issue here.

The concept of relevancy redactions to network agreements is not new to this case. Similar redaction protocols have been agreed to in other antitrust litigation involving sports leagues. *See, e.g.*, *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. 09-cv-3329 (CW), Dkt. 209 (N.D. Cal. June 12, 2014) (stipulation between plaintiffs in that matter—represented by Hausfeld LLP, a firm that also represents Plaintiffs in this matter—and third-party CBS agreeing to redactions of a CBS broadcast agreement); Declaration of Daniel Weinberg in Support of Non-Party CBS Broadcasting Inc.'s Opposition to Plaintiffs' Motion to Compel Production of Documents by NFL Defendants ("Weinberg Declaration"), Ex. 9, ¶ 11 (referencing CBS's similar redactions in *O'Bannon* and related actions). And the Stipulated Order outlined a protocol that was successfully implemented at all stages of the litigation in a related case involving some of these same players. *See* Declaration of Yehudah L. Buchweitz in Support of Non-Party CBS Corporation's Response to Plaintiffs' Position Statement, Dkt. 216-1, ¶ 3 (citing *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig. ("GIA")*, No. 14-md-02541 (CW) (NC) (N.D. Cal.)). In *GIA*, the court ordered that CBS be permitted to redact provisions of its agreements and detailed a specific meet-and-confer process to resolve disputes about redactions, citing "compelling reasons" to protect the confidential information. Weinberg Declaration, Ex. 9, ¶ 15.

As anticipated by the Stipulated Order, the NFL Defendants produced redacted versions of the network agreements with CBS and Fox on December 5, 2016. Less than two weeks later, in violation of the explicit terms of the Stipulated Order, Plaintiffs lodged a challenge directly with the Court about the scope of the redactions. *See* Plaintiffs' Position Statement on Redactions, Dkt. 206. Plaintiffs' motion was never decided given the Court's subsequent decision to grant the NFL Defendants'

1   motion to dismiss.

2   During the course of renewed discovery this year, the NFL Defendants
3   produced numerous broadcast agreements between the NFL and third parties in
4   response to Plaintiffs' discovery requests.  For example, the NFL Defendants
5   produced agreements with DIRECTV dating back to 1994, in unredacted fashion.
6   The NFL Defendants also produced redacted versions of their agreements with CBS,
7   Fox, NBC, and ESPN.  These produced agreements give Plaintiffs more than
8   sufficient information for purposes of this litigation.  Anything concerning the NFL
9   Sunday Ticket package has been left unredacted in these agreements.  Moreover, the
10  unredacted portions of these agreements include information about ████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████.

13  The portions of the agreements that were redacted contain irrelevant,
14  commercially sensitive information that could adversely affect the networks'
15  business interests.  The ESPN agreement, for example, redacts only information
16  relating to ████████████████████████████████████████████████

17  ████████████████████████████.  *See* Delman Decl., Ex. 6.  Similar provisions
18  ████████████████████████████████████████████████████████ are
19  redacted in the CBS agreement.  *Id.*, Ex. 4.

20  While irrelevant to this litigation, much of this redacted information is central
21  to the networks' business strategy.  Declaration of Kai Dhaliwal in Support of Non-
22  Party Fox Networks' Position in Response to Plaintiffs' Motion to Compel
23  Production of Documents by NFL Defendants ("Dhaliwal Declaration"), Ex. 10, ¶ 2.
24  Sports media rights are critical to the networks and the "highly competitive and
25  sensitive information" is heavily negotiated.  Declaration of Brett Goodman in
26  Support of Non-Party NBCUniversal Media, LLC's Opposition in Response to
27  Plaintiffs' Motion to Compel Production of Documents by NFL Defendants
28  ("Goodman Declaration"), Ex. 11, ¶ 4-5.  And even inadvertent disclosure of this

sensitive information could cause the networks significant, irreparable competitive harm. Weinberg Declaration, Ex. 9, ¶ 4. Indeed, the information is so valuable that ESPN stores "executed copies [of agreements] in a locked storage library in the legal department." Declaration of Robert Burke Magnus III in Support of Non-Party American Broadcasting Company and ESPN Inc.'s Opposition to Plaintiffs' Motion to Compel Production of Documents by NFL Defendants ("Magnus Declaration"), Ex. 12, ¶ 5.

Plaintiffs first raised complaints about the scope of the redactions to the network agreements on November 8, 2021. *See* Letter from Edward Delman to Jeremy Barber, Ex. 3. In response, the NFL Defendants attempted to resolve this issue by facilitating a meet-and-confer on November 18, 2021, which counsel for Fox joined. During the call, counsel for Fox pressed Plaintiffs, to no avail, to explain how they were prejudiced by the redactions in the Fox agreement, and agreed to consider Plaintiffs' request to modify the scope of the redactions. The NFL Defendants also informed Plaintiffs that a version of the CBS agreement with fewer redactions would be produced in the near future and made clear that the other network partners were willing to speak directly with Plaintiffs to attempt to resolve the issue.

The NFL Defendants and the networks then continued trying to reach a resolution. Counsel for Fox met with Plaintiffs on November 22, 2021, and invited Plaintiffs to explain any specific concerns they had with the redactions in Fox's agreement. Dhaliwal Declaration, Ex. 10, ¶ 5. Plaintiffs never responded to this request. *Id.*

On November 29, 2021, the NFL Defendants produced a new version of the 2014 and 2021 CBS agreements that contained fewer redactions. CBS's counsel offered to meet and confer with Plaintiffs' counsel to discuss any provisions Plaintiffs requested to be produced unredacted, but Plaintiffs' counsel did not contact CBS' counsel. Weinberg Declaration, Ex. 9, ¶ 17.

Instead of continuing the meet-and-confer process, Plaintiffs filed this motion,

seeking to compel production of the agreements without any redactions at all. Notably, Plaintiffs have never articulated why the information they received—which goes far beyond the subject of this litigation—is insufficient, or why the information they still seek is necessary.

### 2.    Legal Standard

A party's right to obtain discovery under Rule 26 "is not unlimited." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). While the Federal Rules of Civil Procedure generally allow for broad discovery, that discovery is limited to non-privileged information that is relevant, not unduly burdensome on the producing party, and proportional to the needs of the case. *See Moi v. Chihuly Studio, Inc.*, 846 F. App'x 497, 499–500 (9th Cir. 2021) (mem) ("Rule 26 expressly limits discovery to 'any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case . . . .'" (emphasis in original) (quoting Fed. R. Civ. P. 26(b)(1))).

Courts have broad discretion to protect commercially sensitive information, including trade secrets, from disclosure. *See Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Indeed, in exercising that broad discretion, courts have permitted the use of redactions and protective orders concurrently to protect sensitive information. *See, e.g.*, *Sleep Number Corp. v. Sizewise Rentals, LLC*, 2019 WL 12536127, at *4 (C.D. Cal. Sept. 26, 2019) (upholding redactions of sensitive third-party commercial information where there was a protective order in place); *Epic Games, Inc. v. Apple Inc.*, 2021 WL 1326298, at *3 (N.D. Cal. Apr. 9, 2021) (same).

### 3.    Redactions to the Network Agreements Are Appropriate

The limited redactions at issue are permissible under existing case law and appropriate given the highly commercially sensitive nature of the information and its lack of relevance to Plaintiffs' challenge to the Sunday Ticket package.

As a threshold matter, Plaintiffs offer two categorical statements of law that are simply incorrect. The first is that relevancy redactions are "manifestly improper and contrary to law." *See supra*, at 11. Numerous courts across the country, including courts in this district, have sanctioned such redactions. *See Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, 2020 WL 5044610, at *3 (C.D. Cal. June 16, 2020) (approving redaction of payment-method portion of document that "lacks relevance to the case"); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994) (affirming district court's approval of redacted portions of tax returns "immaterial to the [claim]"); *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md2599 (FAM), 2016 WL 1460143, at *2–3 (S.D. Fla. Mar. 1, 2016) (allowing redactions of commercially sensitive information because "a party is [] not entitled to receive every piece of irrelevant information in responsive documents if the producing party has a persuasive reason for why such information should be withheld"); *Johnson v. Hewlett Packard Co.*, 2011 WL 13153654, at *2 (N.D. Cal. Apr. 21, 2011) (approving redactions of information "not relevant to the issues being litigated"); *Abbott v. Lockheed Martin Corp.*, 2009 WL 511866, at *2–3 (S.D. Ill. Feb. 27, 2009) (approving redactions of information "not relevant to issues in th[e] case and not reasonably calculated to lead to the discovery of admissible evidence").

The second misstatement is Plaintiffs' suggestion that it is inappropriate to redact commercially sensitive information to protect the interests of the disclosing party or of third parties. *See supra* at 8–9. As noted above, courts have protected these interests in other sports antitrust cases. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *4–5 (N.D. Cal. Feb. 27, 2012) (denying motion to compel wholesale production of nonparties' broadcast agreements despite "marginal[] relevan[ce]" because they "call[ed] for highly confidential commercial information from nonparties and [were] not tailored to minimize the potential prejudice that the nonparties could suffer by releasing such information").

Moreover, courts allow redaction of irrelevant, confidential information in other contexts as well. *See Holley v. Gilead Scis., Inc.*, 2020 WL 2097602, at *3 (N.D. Cal. May 1, 2020) (approving the redaction of irrelevant, commercially sensitive information from produced documents); *Narayan v. EGL, Inc.*, 2006 WL 3050851, at *2 (N.D. Cal. Oct. 24, 2006) (permitting the redaction of documents to "protect legitimate third-party privacy interests"); *Anderson, Greenwood & Co. v. Nibsco Supply, Inc.*, 1996 WL 377205, at *3 (W.D.N.Y. June 27, 1996) (allowing third party to redact confidential information because it "should not . . . have to risk being unduly prejudiced by revealing any of its proprietary information").

The question thus is not whether confidentiality or relevancy redactions are permissible, but whether they are justified here. They are. The limited redactions requested by the NFL's broadcast partners are "minimal in comparison to what courts have previously protected" and appropriately balance Plaintiffs' entitlement to relevant discovery with protecting the sensitive business information of the NFL and its broadcast partners. Magnus Declaration, Ex. 12, ¶ 4. These partners limit redactions only to "information that is both highly sensitive and unlikely to be relevant" to any claim. Goodman Declaration, Ex. 11, ¶ 6. Those provisions that are arguably relevant to Plaintiffs' claims remain unredacted. For example, any portion of the agreements that references Sunday Ticket is unredacted. Plaintiffs also have access to the provisions in every agreement concerning the ██████████████ ████████████████ .

Furthermore, the redacted information is irrelevant to this case. For example, the NFL produced entirely unredacted versions of their 2011 agreements with both ESPN and NBC, but from its most recent agreement with ESPN, the NFL redacted a provision regarding ████████████████ . *See* NFL_0458617 at -658, Ex. 6. Other redactions relate to a host of other irrelevant topics including, for example, ████████████████████████████████████████ ████████████████ .

Indeed, Plaintiffs have failed to articulate any prejudice they will suffer if these provisions remain redacted.  And to the contrary, the NFL's broadcast partners have spelled out in detail in the attached declarations why this information is sensitive and merits redactions.  *See* Weinberg Declaration, Ex. 9, ¶¶ 4, 11 (noting that the redacted information "has never been made public," is disclosed only to a "limited group of persons within CBS," and "would highly prejudice CBS if disclosed by hindering its ability to negotiate licensing agreements to broadcast content in the future"); Goodman Declaration, Ex. 11, ¶ 7-8 (explaining that disclosure of the redacted information would reveal insights into NBCUniversal's sports programming strategy and advantage its competitors who seek to acquire sports media rights); Dhaliwal Declaration, Ex. 10, ¶¶ 2, 4 (indicating that the redacted provisions include "highly proprietary business terms that represent the result of intense business negotiations between Fox and the NFL," some of which are "known only by those employees at Fox who have a need to know such terms.").

Simply put, these redactions are necessary—even in the presence of this case's protective orders—to protect third-party confidentiality interests.  Any disclosure of this information could cause "significant irreparable competitive harm because competing broadcasters and media companies would learn valuable business information that could help them in future competitions to obtain sports broadcasting rights."  Weinberg Declaration, Ex. 9, ¶ 5; *see also* Dhaliwal Declaration, Ex. 10, ¶ 3. This harm could also extend to the networks' ability to negotiate for the distribution of other content including with the NCAA, the PGA Tour, and other sports leagues. Weinberg Declaration, Ex. 9, ¶ 6.

Contrary to Plaintiffs' suggestion, the presence of a protective order does not eliminate the need for redactions in circumstances involving highly sensitive commercial information.  These agreements contain some of the networks' "most closely guarded, strategic business information," Dhaliwal Declaration, Ex. 10, ¶ 4, and protective orders are not sufficient protection against potential disclosure to other

parties to the litigation, their counsel, or to the public. As some of the network partners have experienced, a protective order like the one here can sometimes fail to protect a party's interests. In *O'Bannon*, although the court ordered CBS' agreements to be filed under seal, unredacted versions of the agreements were nearly shown in open court during trial and CBS had to intervene to prevent their disclosure. *See* Weinberg Declaration, Ex. 9, ¶¶ 12–14; Magnus Declaration, Ex. 12, ¶ 6. This is even more true in the event a motion to seal is denied. *See, e.g.*, Dkt. 216 at 2 n.1. Thus, both redactions and protective orders are necessary to protect the networks' interests. *See Epic Games, Inc.*, 2021 WL 1326298, at *3 (upholding redactions for third-party confidentiality concerns despite existence of protective order); *cf. Hansen-Poulsen v. Dep't of Defense*, 2020 WL 2043999, at *4 (C.D. Cal. Mar. 3, 2020) (allowing defendants to designate documents as confidential under a protective order *and* also redact highly sensitive information); *Sleep Number Corp.*, 2019 WL 12536127, at *4 (upholding redactions to protect third-party privacy interests where there was a protective order in place).

### 4.    Plaintiffs' Motion Is Procedurally Improper

Plaintiffs' motion also has two procedural flaws. *First*, in the Stipulated Order, Plaintiffs agreed, among other things, that CBS and Fox could prepare redacted versions of their broadcast agreements with the NFL. There is no reason to think that Order has been lifted. It remains on the docket, and does not include a sunset provision or any express language precluding its applicability to the current stage of this litigation. Plaintiffs' effort to rely on recitals in the Order misses the mark, because recitals merely explain the context of the Order; and do not undermine its continued validity. *See Glenn-Colusa Irrigation Dist. v. U.S. Army Corps of Eng'rs*, 2019 WL 3231748, at *4 (E.D. Cal. July 18, 2019) (stating that recitals are "'merely explanations of the circumstances surrounding the execution of the contract' . . . and do not form any part of the real agreement" (collecting cases)).

*Second*, despite having ample opportunity to do so, Plaintiffs failed to properly

meet and confer with the affected parties before triggering this motion.  *See* Fed. R. Civ. P. 26(c)(1) (requiring that "the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action"); L.R. 37-1 ("[C]ounsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible").  Plaintiffs cut short their meet-and-confer efforts with Fox on November 18, 2021 and made no attempt to negotiate with any other broadcast network despite the NFL Defendants' assurance that they would help facilitate that process.  Because Plaintiffs have access to the table of contents of the agreements and/or the headers of the redacted provisions, they should discuss with the NFL Defendants and the network partners if there are specific provisions they believe should not be redacted on relevancy or confidentiality grounds.  Instead, throughout the meet-and-confer process, Plaintiffs have continually failed to identify with any specificity why they object to the redacted provisions in the respective agreements.

If the Court were to determine that any additional information should not be redacted, it should order Plaintiffs to follow the path they have already agreed to. They should be required to meet and confer with the NFL Defendants and counsel for the relevant networks to reach a resolution.  *See Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 18-cv-1220 (JLS) (ADS), 2019 WL 7841078, at *2 (C.D. Cal. Nov. 8, 2019) (denying plaintiff's motion for failure to engage in a proper meet-and-confer).

### 5.   Conclusion

Plaintiffs' request for an order requiring the production of unredacted network agreements with CBS, Fox, NBC, and ESPN should be denied.  Plaintiffs have not disputed that the redacted information is indeed commercially sensitive.  Nor have they articulated why the redacted provisions in these network agreements—which are completely unrelated to the NFL's broadcasting of out-of-market regular season football games via DIRECTV's NFL Sunday Ticket package—have any relevance

1    to their case.  And Plaintiffs failed to meaningfully meet and confer with the NFL

2    Defendants and their network partners before burdening this Court with this motion.

3    Under these circumstances, the Court should deny Plaintiffs' motion to compel.

4

5    Dated:  December 14, 2021                 Respectfully submitted,

6

7                                             MARC M. SELTZER
                                             SUSMAN GODFREY L.L.P.

8                                            SCOTT MARTIN
                                             IRVING SCHER
9                                            HAUSFELD LLP

10                                           HOWARD LANGER
                                             EDWARD DIVER
11                                           PETER LECKMAN
                                             LANGER GROGAN AND DIVER PC
12
                                             ARUN SUBRAMANIAN
13                                           asubramanian@susmangodfrey.com
                                             WILLIAM CHRISTOPHER CARMODY
14                                           bcarmody@susmangodfrey.com
                                             SETH ARD
15                                           sard@susmangodfrey.com
                                             EDWARD DELMAN
16                                           edelman@susmangodfrey.com
                                             TYLER FINN
17                                           tfinn@susmangodfrey.com
                                             SUSMAN GODFREY LLP
18                                           1301 Avenue of the Americas, 32nd FL.
                                             New York, NY 10019
19                                           Tel: (212) 336-8330/ Fax: (212) 336-8340

20                                           IAN M. GORE
                                             igore@susmangodfrey.com
21                                           SUSMAN GODFREY LLP
                                             1201 Third Avenue, Suite 3800
22                                           Seattle, WA 98101
                                             Tel: (206) 505-3841/Fax: (206) 516-3883
23
                                             MICHAEL D. HAUSFELD
24                                           mhausfeld@hausfeld.com
                                             HAUSFELD LLP
25                                           1700 K. Street NW, Suite 650
                                             Washington, DC 20006
26                                           Tel: (202) 540-7200/Fax: (202) 540-7201

27                                           MICHAEL P. LEHMANN
                                             mlehmann@hausfeld.com
28                                           BONNY E. SWEENY
                                             bsweeney@hausfeld.com

1

CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

2

3

4

5

By: */s/ Marc M. Seltzer*
      Marc M. Seltzer

6

*Attorneys for Plaintiffs' Interim Co-Lead Class Counsel*

7

8

/s/ *Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

9

10

11

12

13

14

15

16

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

17

18

19

20

21

22

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

23

24

25

26

27

28

*Counsel for Defendants National Football*

24

1

*League, NFL Enterprises LLC, and the
Individual NFL Clubs*

2

3     *All signatories listed, and on whose behalf the filing is submitted, concur in the
filing's content and have authorized the filing.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28