# EXHIBIT 9

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF DANIEL WEINBERG IN SUPPORT OF NON-PARTY CBS BROADCASTING INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NFL DEFENDANTS**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: January 4, 2022 at 10:00 a.m.<br><br>Discovery Cutoff Date: 5/15/2022<br>Pretrial-Conference Date: TBD<br>Trial Date: TBD |

I, Daniel Weinberg, declare that the following is true:

1. I am the Executive Vice President of Programming for non-party CBS Sports, a division of CBS Broadcasting Inc. ("CBS"). I am over 18 years of age and make this declaration of my own personal knowledge, and, if called to do so, could testify competently to the facts stated herein under oath.

2. I am advised that Plaintiffs in this matter are seeking to compel the disclosure of CBS' highly confidential and competitively sensitive 2014 and 2021 media agreements with the NFL (together, the "CBS Agreements") without redactions. The 2021 CBS Agreement amends, in part, extends, and incorporates provisions within the 2014 CBS Agreement, both of which are still in effect today.

3. There are compelling reasons for protecting the confidential information at issue from disclosure.

4. The CBS Agreements relate to the distribution rights for broadcasts of Sunday afternoon regular season NFL games. CBS seeks to protect limited portions of the CBS Agreements which contain highly sensitive proprietary information, including ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, that has never been made public, and which would highly prejudice CBS if disclosed by hindering its ability to negotiate licensing agreements to broadcast content in the future.

5. CBS competes with a number of entities to obtain rights to manage and distribute content, and if the terms of the CBS Agreements were made publicly available (which, despite the protections afforded by the Stipulated Protective Order entered in this action, could occur at trial, as described in Paragraph 14 *infra*), CBS would suffer significant irreparable competitive harm because competing broadcasters and media companies would learn valuable business information that could help them in future competitions to obtain sports broadcasting rights, including, but not limited to, future NFL broadcast rights.

6. For example, certain provisions in the CBS Agreements describe the suite of rights granted as consideration for the agreement. The negotiated bundle of rights granted under the

1

agreement has not been shared publicly or with third parties outside of CBS and the NFL Defendants. These terms were heavily-negotiated, and if fully disclosed beyond the unredacted sections already produced in this case, would reduce the competitive advantage CBS retains over its competitors. Further disclosure beyond that which CBS has already agreed to disclose here would also give other entities with which CBS negotiates for distribution of content, including the NCAA (and its member conferences for both college football and college basketball), the PGA Tour, and other sports leagues, an advantage because they could attempt to extract terms at least as favorable as the terms in these provisions of the CBS Agreements, hindering CBS' ability to negotiate different and/or more favorable bundles of rights in its future licensing agreements.

7. Other terms in the CBS Agreements contain nonpublic information that, if disclosed, would create an asymmetry of information for CBS in the negotiation of future licensing deals, and/or could cause CBS to lose the competitive advantages it has as an incumbent vis-à-vis other competitors that do not presently broadcast Sunday afternoon regular season NFL games. CBS would also be placed in a diminished bargaining position in renegotiating the terms of the licenses if the specifics of the redacted provisions are disclosed. CBS has produced substantial, unredacted portions of the CBS Agreements that are relevant to Plaintiffs' claims. The provisions that CBS has redacted, on the other hand, relate to, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, none of which are relevant to this action.

8. For example, CBS redacted provisions in the CBS Agreements specifying rights granted to it with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are not a part of the Sunday Ticket package and are therefore totally irrelevant to the litigation. CBS has also redacted provisions related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which likewise are not part of the Sunday Ticket package.

9. CBS also redacted a limited number of provisions with respect to the ▮▮▮▮▮▮▮▮▮▮, including its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Were this information made public, CBS would suffer

1  irreparable harm in that other broadcasts would be able to learn competitive business information
2  about how CBS prepares its game broadcasts and could cause other entities with which CBS
3  negotiates for distribution of content to seek comparable productions. Furthermore, these
4  provisions bear no relevance to this action.
5       10.   CBS further redacted provisions in the CBS Agreements related to ▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮. Disclosure of this information would prejudice CBS if
7  ▮▮▮▮▮▮ learned about the details around CBS's agreement with the NFL, and
8  may negatively impact CBS's ability to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  Anything even tangentially related to these topics can be obtained through other means from the
10 Defendant, the NFL.
11      11.   CBS takes steps to ensure that the CBS Agreements and the highly confidential
12 information therein are not disclosed outside of a limited group of persons within CBS who have
13 a business reason to know their contents. To protect the highly confidential nature of these and
14 other similar CBS agreements, I have also submitted similar declarations on behalf of CBS in
15 other actions regarding sports broadcast agreements, including *O'Bannon v. NCAA,* No. 09-CV-
16 3329-CW (N.D. Cal.) and *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.,* No. 4:14-md-
17 02541-CW (N.D. Cal.). I understand that similar redactions and/or sealing of CBS' confidential
18 licensing agreements in those cases have been permitted.
19      12.   Notably, the Stipulated Protective Order entered in this action does not adequately
20 address the concerns discussed above, because it does not cover the admission and disclosure of
21 documents at trial. CBS has previously faced a similar situation in *O'Bannon*.
22      13.   During discovery and class certification in *O'Bannon*, and its related case, *Keller
23 v. Elec. Arts, Inc.,* No. 4:09-cv-01967-CW (N.D. Cal.), the Court held that broadcast agreements
24 "contain commercially valuable information that could competitively disadvantage the[
25 broadcasters] in future negotiations," and issued orders allowing such agreements to be redacted
26 and filed under seal. *Id.* (ECF No. 645) at 4. But, only ordering that the documents be filed under
27 seal is not adequate protection for CBS.
28

14. During the *O'Bannon* trial, unredacted versions of CBS' agreements were attempted to be shown in open court to, among others, reporters and competitors who were present in the courtroom, and CBS had to intervene to seek protection thereof. The *O'Bannon* court, however, recognized the confidentiality of certain CBS agreements. (ECF 201) (Granting in part and denying in part CUSA and Big 12 conference's Administrative Motion to File Under Seal Confidential Trial Exhibits and allowing portions of CBS Agreements to remain confidential during trial). The declaration CBS filed in in support of the NCAA's Administrative Motion to File Under Seal Confidential Trial Exhibits in *O'Bannon* further supports the filing of the CBS Agreements under seal here. *Id.* (ECF No. 200-9). After CBS' filing of that declaration, the Court in *O'Bannon* entered a stipulation and order recognizing CBS' declaration, ordering that certain portions of CBS' Agreement with the NCAA remain redacted throughout the trial, and ordering that, to the extent the agreement was filed with any pleading or motion in the case, it must be filed under seal. *Id.*

15. Thereafter, the Court in *NCAA Athletic Grant-In-Aid Cap Antitrust Litigation* recognized the confidentiality of various CBS media agreements (including, but not limited to, CBS' agreements with the NCAA, Southeastern Conference, and Conference USA), ordered that CBS be allowed to redact certain provisions of its agreements, and further provided for a specific meet and confer process to resolve any disputes about such redactions during the course of discovery. *Id.* (ECF No. 537); *Jenkins v. NCAA*, No. 4:14-cv-02758-CW (ECF Nos. 212, 264). The Court further ordered that the redacted portions of the CBS agreements be sealed and further restricted their use at trial. No. 4:14-md-02541-CW (ECF 1015). *See also id.* (ECF Nos. 392, 499, 503, 534, 537). Indeed, the Court repeatedly held that the Broadcasters had "compelling reasons" to seek protection of their confidential information. *See id.* (ECF Nos. 805, 959, 1011, 1029, 1102, 1112-1114). The Ninth Circuit, likewise, agreed that "[c]ompelling reasons justify continuing the seal of the Broadcasters' confidential information." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 19-15566 (9th Cir. Oct. 29, 2019) (ECF No. 65).

16. Notwithstanding the significant sensitivities discussed above, CBS has taken more than adequate steps to provide Plaintiffs the information they purport to need to support their

claims. As an initial matter, Plaintiffs have disregarded this Court's Order regarding the production of media agreements (ECF No. 205). When Plaintiffs first sought copies of the CBS Agreements, Plaintiffs and NFL agreed to a specific dispute resolution procedure wherein Plaintiffs must first provide written notice to CBS and the NFL, and "simultaneously provide a complete list of the redactions to which they take exception for discussion with CBS." Plaintiffs provided no such notice to CBS, in clear violation of this Court's Order.

17. Furthermore, I understand that after the NFL produced an initial version of the CBS Agreements in redacted form, Plaintiffs informed the NFL that it was dissatisfied with the scope of the redactions, but would not state which provisions it specifically sought to be unredacted. In an effort to avoid a dispute and provide Plaintiffs an opportunity to better understand the contents of the CBS Agreements, CBS, on its own account, revised the redactions on the CBS Agreements to unredact various provisions, all headers, and the table of contents. I also understand that CBS' counsel offered to meet and confer with Plaintiffs' counsel to discuss any additional provisions Plaintiffs sought after its review of the reproduced, less-redacted, CBS Agreements, but Plaintiffs' counsel did not contact CBS' counsel.

18. Based on the foregoing, we respectfully request that the Court protect the confidentiality of the CBS Agreements and not compel their unredacted disclosure.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on December 9, 2021, in New York, New York.

DANIEL WEINBERG
EVP Programming
CBS Sports