# EXHIBIT 6

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 1400 | SUITE 3800 |
| --- | --- | --- |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

EDWARD DELMAN
DIRECT DIAL (212) 729-2052

E-MAIL EDELMAN@SUSMANGODFREY.COM

October 19, 2021

VIA E-MAIL

Carter Greenbaum
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:   *In re National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)

Dear Carter:

      Plaintiffs write regarding Charter Communications, Inc.'s ("Charter") responses and objections to Plaintiffs' subpoena for production of documents and electronically stored information. Pursuant to Local Rule 37-1 of the U.S. District Court for the Central District of California,[1] we request a meet and confer conference to discuss whether and what Charter intends to produce in response to Plaintiffs' subpoena. Plaintiffs propose conducting the meet and confer on October 25, 2021, at 10:00am ET. If that day does not work for you, please propose an alternative within the timeframe provided in Rule 37-1.

---

[1] Because this case is proceeding as a multi-district litigation ("MDL") in the Central District of California, disputes and motion practice regarding subpoenas fall within that Court's jurisdiction. *See, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) ("A judge presiding over an MDL case … can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt."); *In re Clients and Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671-72 (5th Cir. 2007) (explaining that "the overwhelming weight of authority" supports the proposition that the MDL statute authorizes the MDL judge to "hear and decide motions to compel or motions to quash or modify subpoenas directed to nonparties in any district," including subpoenas for document production).

October 19, 2021
Page 2

**Charter's Failure to Engage in the Meet-and-Confer Process**

It has now been four months since Plaintiffs served their subpoena for third-party discovery on Charter, and over two months since Plaintiffs and Charter first met and conferred regarding Charter's responses and objections to the subpoena. During that span of time, Plaintiffs have been diligent and acted in good faith in trying to secure an amicable resolution to their subpoena. Indeed, in Plaintiffs' first meet and confer with Charter, on August 5, 2021, Plaintiffs proposed a narrowing of their original subpoena requests—which consisted of 28 different categories of documents—to a targeted list of six categories.[2] But despite this good-faith effort to reduce Charter's burden and expedite conversations, it was not until September 20, 2021, that Plaintiffs were able to get any substantive response to their proposal. And the delays continue: as of the sending of this letter, Charter has still not responded to Plaintiffs' counterproposal of September 24, 2021, or the undersigned's follow-up email on October 6, 2021.

Charter's dilatory responses to Plaintiffs' subpoena have gone on too long. *See Sandigo v. Ocwen Loan Servicing, LLC*, 2018 WL 4293339, at *1 (N.D. Cal. July 18, 2018) (admonishing party that went four months without "produc[ing] a single document or … answer[ing] a single interrogatory"). It is time for Charter to offer a definitive position on what documents it intends to produce in response to Plaintiffs' targeted requests, and when it intends to produce them. If Charter is unwilling to engage in the subpoena process in good faith, Plaintiffs will have no choice but to bring Charter's conduct to the attention of the Court.

**Charter's Prior Proposal Was Manifestly Inadequate**

Although, as discussed above, Charter has offered no clear answer on how it intends to respond to Plaintiffs' subpoena, counsel for Charter did during the September 20 meet and confer outline a preliminary proposal. This proposal included Charter's willingness to produce valuations of NFL Sunday Ticket, NFL Network, and NFL RedZone. But this willingness was contingent on Plaintiffs agreeing to forgo all of their other requests. Plaintiffs cannot accept this proposal.

As explained in the undersigned's September 24 email, Charter has no valid basis for refusing to produce carriage rates for channels that carry NFL football and college football; documents and internal communications about contractual arrangements with individual Clubs; and viewership information about viewers of NFL football and college football. All of these requested categories are relevant to

---

[2] In the undersigned's September 24, 2021 email to counsel for Charter, Plaintiffs reformulated those six categories into the four categories reprinted at the end of this letter. While the form of the requests has changed, the substance of what is being requested has not.

October 19, 2021
Page 3

Plaintiffs' claims: if responsive documents exist, they will provide key insights into the current contours of the market for professional football and what that market could look like absent the restraints challenged in this case. Moreover, Plaintiffs' already narrow set of requests imposes little burden on Charter. Therefore, Plaintiffs expect Charter to produce, at minimum, the following:

1. Valuations of NFL Sunday Ticket, NFL Network, and NFL RedZone.
2. Carriage rates for channels that carry professional football, and carriage rates for channels that carry collegiate football.
3. Internal studies, reports, documents, and communications about contractual arrangements with individual Clubs, such as the Carolina Panthers.
4. Viewership information about viewers of NFL football and viewers of college football, including documents sufficient to show the number of viewers watching either/both sport(s) and Charter's analysis of the viewership for either/both sport(s).

*See In re Pioneer Corp.*, 2019 WL 5401015, at *5 (C.D. Cal. Jan. 9, 2019) ("The party resisting discovery bears the burden of showing why it should not be granted.")

Plaintiffs request that Charter provide a date certain by which they will produce documents responsive to the above categories. If Charter fails to do so, or refuses to produce documents responsive to any of the above categories, Plaintiffs will seek appropriate relief from the Court.

Sincerely,

*Edward Delman*

Edward Delman