# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DECLARATION OF CARTER GREENBAUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM NON-PARTY CHARTER COMMUNICATIONS, INC.** |

I, Carter E. Greenbaum, an attorney duly admitted to practice in the State of New York, certifies under penalty of perjury as follows:

1. I am an associate with the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), counsel for non-party Charter Communications, Inc. ("Charter") in connection with a third-party subpoena issued by Plaintiffs in the above-captioned litigation. I have personal knowledge of the facts and statements in this declaration.

2. Charter received Plaintiffs' subpoena on June 21, 2021. A copy of Plaintiffs' subpoena was attached to the Declaration of Edward Delman as Exhibit 3. *See* Delman Decl. Ex. 3.

3. Charter responded and objected to Plaintiffs' subpoena on July 2, 2021. A copy of Charter's responses and objections to Plaintiffs' subpoena is attached to the Declaration of Edward Delman as Exhibit 4. *See* Delman Decl. Ex. 4. As reflected in Charter's responses and objections, Charter explained that it was "prepared to meet and confer with Plaintiffs to attempt to work out an agreement on a production of documents responsive"

to 14 of Plaintiffs' 28 document requests.  *Id.*

4. On July 20, 2021, Raymond Wright from the law firm of Susman Godfrey LLP, counsel for Plaintiffs in this litigation, requested a meet-and-confer to discuss Charter's objections.

5. I promptly responded to Mr. Wright's request and the parties scheduled a meet-and-confer for August 5.

6. On August 5, I spoke with Edward Delman from Susman Godfrey, LLP.

7. Rather than discussing any of the 14 requests for which Charter had agreed to "meet and confer with Plaintiffs," Mr. Delman identified six "categories of documents" that Plaintiffs wanted Charter to produce.  Those categories included valuations of NFL Sunday Ticket, NFL Network, and NFL RedZone, carriage rates for channels that carry professional and college football, contracts, studies, and communications with and about individual NFL Clubs, and certain studies or reports about viewership of NFL and college football.

8. Following the August 5 meet-and-confer, Charter evaluated Plaintiffs' new requests for those six categories of documents.

9. On August 25, I followed up with Mr. Delman via email to help Charter evaluate the burden of Plaintiffs' request and to ask Plaintiffs to identify "the time period for which Plaintiffs are requesting discovery" and whether Plaintiffs had reached any agreements with the NFL or the NFL Club Defendants concerning the scope of discovery.  A copy of my email to Mr. Delman is attached to his Declaration as Exhibit 5.  *See* Delman Decl.

Ex. 5 at 10.

10. The parties scheduled a second meet-and-confer on September 20.

11. During that meet-and-confer, I informed Mr. Delman of Charter's willingness to search for and produce documents responsive to Plaintiffs' request for valuations of NFL Sunday Ticket, NFL Network, and NFL RedZone, if any.

12. Mr. Delman and I also discussed Plaintiffs' request for contracts, studies, and communications with individual Clubs. I explained that Charter's contracts with individual Clubs were not, in Charter's view, relevant to Plaintiffs' claims because they are local, small in scope, and involve select non-exclusive preseason games, rather than any regular season Sunday Ticket games. I asked whether the NFL Club Defendants had agreed to produce documents related to their contracts with Charter. Plaintiffs' counsel did not answer that question, and instead told me that the NFL Club Defendants have not been cooperative with discovery. I set out Charter's position that Plaintiffs should obtain those documents from the NFL Club Defendants before seeking discovery from Charter.

13. On September 20, Mr. Delman and I also discussed Plaintiffs' request for Charter's carriage rates. At the outset of our discussion, I asked Mr. Delman to explain why Charter's carriage rates were relevant to Plaintiffs' claims. Mr. Delman could not, stating that he would follow up "regarding the carriage rates as soon as I can." *See* Delman Decl. Ex. 5 at 6.

14. Four days later, on September 24, Mr. Delman followed up, explaining that Charter's carriage rates were relevant because they "serve as a proxy for how NFL games might be distributed" and they are "a significant cost that influences whether and how MVPDs choose to distribute channels." *See id.* at 5.

15. Mr. Delman's September 24 communication reiterated Plaintiffs' demand that Charter produce each of the six categories of documents that Plaintiffs had previously requested, disagreeing with Charter's efforts to compromise on several of those categories.

16. Charter undertook a search for documents responsive to those of Plaintiffs' requests for which Charter did not object.

17. In connection therewith, Paul, Weiss interviewed several Charter executives and employees across multiple departments, including Programming Acquisition, Research, Spectrum Sports Networks, Spectrum Networks, and Spectrum Reach, Charter's outside advertising sales group. We also reviewed numerous files of current and departed employees that were potentially responsive to Plaintiffs' document requests.

18. On October 17, while Charter was still conducting its search for responsive documents, I received Plaintiffs' first Rule 37-1 letter. I immediately indicated my availability to meet-and-confer with Plaintiffs. I explained that "Charter has consistently indicated its willingness to respond to a reasonable set of requests and we remain prepared to do so." A copy of my letter to Mr. Delman is attached to his declaration as Exhibit 7. *See* Delman Decl. Ex. 7.

19. On October 25, I met and conferred with Mr. Delman. I explained that Charter was prepared to produce documents responsive to Plaintiffs' requests for valuations of Sunday Ticket, RedZone, and NFL Network, if any. I also explained that Charter was prepared to produce its agreements with NFL Club Defendants, even though, as I explained, Charter continued to maintain that its agreements with those Clubs to re-air preseason games in a local market were not relevant to Plaintiffs' claims.

20. Immediately following the meet-and-confer, I emailed Mr. Delman to explain that Charter would produce its agreements with NFL Clubs so that Plaintiffs would "understand the basis for Charter's view" that its "agreements with individual clubs are not relevant to Plaintiffs' claims." *See* Delman Ex. 5 at 1. I informed Mr. Delman that "[i]f after reviewing the contracts, you have a different view, we would be prepared to hear and consider your arguments concerning the relevancy of anything more than the agreements themselves." Mr. Delman never followed up after Charter's production to discuss his request for Charter's communications with the NFL Club Defendants or the relevancy of those agreements.

21. During the meet-and-confer, I also reiterated Charter's argument that Charter's carriage rates were not relevant to Plaintiffs' claims and would not provide a valid comparison between costs associated with airing professional and college football.

22. Once again, Plaintiffs' counsel demanded documents responsive to each of their six requests.

23. On November 5, I spoke with Mr. Delman and explained that Charter intended to complete productions of responsive documents

before Thanksgiving.

24.  On November 19, Charter produced more than 700 pages of documents in response to Plaintiffs' requests. Charter searched for documents responsive to each of Plaintiffs' six requests, with the sole exception of carriage rates. In response to Plaintiffs' request for "contracts, studies, or communications" with the NFL Club Defendants, Charter agreed to search for and produce responsive contracts, studies, or reports, but objected to producing its communications regarding those contracts.

25.  Charter's production of documents included its telecast agreements with NFL Club Defendants. Charter produced agreements with the Green Bay Packers, the Carolina Panthers, and the Los Angeles Chargers. Charter's agreements with the Packers and Panthers allowed Charter or its predecessor to air pre-season games on a non-exclusive basis in markets local to those NFL Clubs. Charter's agreement with the Chargers permitted Charter to air "behind the scenes" stories, "episodes of programming," and other similar content created by the Chargers. Of those three agreements, only Charter's agreement with the Packers remains in effect.

26.  Late in the day on the Wednesday afternoon before Thanksgiving, Plaintiffs' counsel sent Charter a second Rule 37-1 letter. A true and correct copy of Plaintiffs' November 19 Rule 37-1 letter is attached hereto as Exhibit A. A true and correct copy of Charter's response to Plaintiffs' letter is attached as Exhibit B.

27.  I met and conferred with Mr. Delman and Tyler Finn, counsel for Plaintiffs from Susman Godfrey, LLP, on December 6, 2021,

and described Charter's search for documents. I expressed Charter's willingness to consider using search terms to identify responsive documents. Mr. Delman confirmed that Plaintiffs were not asking Charter to use search terms to identify documents responsive to their requests for "studies" or "reports" of Charter's contracts with the NFL Club Defendants.

28. During our call on December 6, neither Mr. Delman nor Mr. Finn discussed Plaintiffs' request for carriage rates or Plaintiffs' request for communications related to Charter's agreement with the NFL Club Defendants. Nor did they offer to discuss the relevance of those agreements based on a review of Charter's production.

29. During our call on December 6, neither Mr. Delman nor Mr. Finn informed me that they would be moving to compel a production of Charter's carriage rates or communications related to Charter's agreements with the NFL Club Defendants three days later, on December 9.

30. I have spoken with counsel for another MVPD that received Plaintiffs' subpoena. I understand from those conversations that they have, so far, refused to produce discovery of their carriage rates.

Dated: December 16, 2021          /s/ Carter E. Greenbaum

New York, New York                Carter E. Greenbaum