# Susman Godfrey l.l.p.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| Suite 5100<br>1000 Louisiana Street<br>Houston, Texas 77002-5096<br>(713) 651-9366 | Suite 1400<br>1900 Avenue of the Stars<br>Los Angeles, California 90067-6029<br>(310) 789-3100 | Suite 3800<br>1201 Third Avenue<br>Seattle, Washington 98101-3000<br>(206) 516-3880 |
|---|---|---|

Tyler Finn
Direct Dial (212) 729-2016

E-Mail TFinn@susmangodfrey.com

November 24, 2021

VIA E-MAIL

Carter Greenbaum
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:   *In re National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)

Dear Carter:

Plaintiffs write regarding Charter Communications, Inc.'s ("Charter") November 19, 2021 production of documents in response to Plaintiffs' subpoena. Pursuant to Local Rule 37-1 of the U.S. District Court for the Central District of California,[1] we request a meet and confer to discuss identified deficiencies in that production. Plaintiffs propose conducting the meet and confer on December 2, 2021 at 3:30pm. If that day does not work for you, please propose an alternative within the timeframe provided in Rule 37-1.

---

[1] Because this case is proceeding as a multi-district litigation ("MDL") in the Central District of California, disputes and motion practice regarding subpoenas fall within that Court's jurisdiction. *See, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) ("A judge presiding over an MDL case … can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt."); *In re Clients and Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671-72 (5th Cir. 2007) (explaining that "the overwhelming weight of authority" supports the proposition that the MDL statute authorizes the MDL judge to "hear and decide motions to compel or motions to quash or modify subpoenas directed to nonparties in any district," including subpoenas for document production).

November 24, 2021
Page 2

### Charter's Production Has Noticeable Gaps

On June 21, 2021, Plaintiffs served a subpoena for document production on Charter, requesting 28 different categories of documents. On September 24, 2021, following several meet-and-confers, Plaintiffs proposed narrowing their requests to the following four categories:

1. Valuations of NFL Sunday Ticket, NFL Network, and NFL RedZone.

2. Carriage rates for channels that carry professional football, and carriage rates for channels that carry collegiate football.

3. Internal studies, reports, documents, and communications about contractual arrangements with individual Clubs, such as the Carolina Panthers.

4. Viewership information about viewers of NFL football and viewers of college football, including documents sufficient to show the number of viewers watching either/both sport(s) and Charter's analysis of the viewership for either/both sport(s).

On October 19, 2021, having received no response to the above proposal, Plaintiffs served a letter pursuant to Rule 37-1, requesting a date certain by which Charter would produce documents responsive to the above categories. Counsel for Charter represented during the subsequent meet and confer that it would complete production before the Thanksgiving holiday.

Charter completed its second, and final, round of production on November 19, 2021. Having reviewed that production, Plaintiffs are concerned that Charter has either not conducted a diligent search for documents or has improperly withheld responsive documents. Charter has also applied redactions to several produced documents without providing any explanation for those redactions.

*First*, with respect to the third category of documents, Charter represented in a letter accompanying its November 19 production that its searches for "'[i]nternal studies,'" and "'reports'" did not reveal any responsive documents. Plaintiffs are concerned that the search terms or other parameters employed by Charter were inappropriately restrictive. It is unlikely, for example, that a study of contractual arrangements with NFL clubs would be labelled "[i]nternal studies," let alone that such a search term would capture the full universe of such documents.

*Second,* the number of documents produced in response to the request for viewership information about NFL football is miniscule, consisting of only three

November 24, 2021
Page 3

pages of slide decks. Those three pages are hardly responsive to Plaintiffs' request. The first two pages purport to summarize a "15-min online survey" about whether subscribers would leave DirectTV if it ceased to offer NFL Sunday Ticket, while the third is a redacted slide that describes 2016 NFL RedZone viewership trends. *See* CHARTER-NFL-0000336-38. It is improbable that Charter has never generated documents or conducted any analysis relating to the viewership of professional and/or college football. Indeed, several other multichannel video programming distributors have produced such information in response to Plaintiffs' subpoenas. *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) ("An earmark of a recipient's inadequate inquiry is the obvious absence of documents and other written materials that the recipient reasonably would be expected to have retained in the ordinary course of its business." (internal brackets omitted)). Based on Plaintiffs' experience with other providers, Plaintiffs have repeatedly suggested to Charter's counsel that such information may be found in marketing materials that Charter prepares for advertisers. Yet Charter has provided no such information.

Given the above issues, Plaintiffs request that Charter either produce the documents requested or provide a detailed explanation of what search it conducted for the missing documents. *See id*. at 366-67 (explaining that when "a dispute arises out of the completeness of the production that is made, the subpoenaed person must come forward with an explanation of the search conducted 'with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence'"). If Plaintiffs do not receive a satisfactory response to these issues, Plaintiffs will seek appropriate relief from the Court.

**Charter Has Improperly Redacted Documents in Its Production**

Apart from the gaps in its production, Charter has also improperly redacted portions of their production, without explanation. These redactions appear to shield information about Charter's subscriber numbers and other information specific to Charter. Charter has no legal basis for redacting any portion of these documents, and it should produce unredacted copies of every document in its production immediately.

Although Plaintiffs can only assume that Charter applied redactions for purposes of confidentiality, that is not an adequate justification in this context. As Charter is aware, the parties have stipulated to, and the Court has entered, two separate protective orders that will ensure that any sensitive information produced in this litigation is appropriately safeguarded. *See MetroPCS v. A2Z Connection, LLC*, 2020 WL 127550, at *2 (D. Nev. Jan. 10, 2020) (ordering that unredacted documents be produced because, "[t]o the extent the concern is privacy or confidentiality, a protective order will alleviate that concern"); *Reynolds v. Liberty Mut. Ins. Co.*, 2017 WL 6415360, at *2 n.2 (D. Ariz. May 23, 2017) (finding that

November 24, 2021
Page 4

"in light of the Protective Order issued in this case, Defendant may not redact discoverable material on the basis of confidentiality"); *Hill v. Asset Acceptance, LLC*, 2014 WL 3014945, at *4 (S.D. Cal. July 3, 2014) (ordering Defendant to remove all non-privilege-related redactions in part because "there is a protective order in this case governing the exchange of confidential information"). Charter is undoubtedly aware of these protective orders, as evidenced by its designation of most of its produced materials as highly confidential/commercially sensitive pursuant to those orders.

Any appeals to the alleged irrelevancy of the redacted information would also fall flat. Redactions for non-responsiveness are not permitted. *See, e.g., Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) ("[The defendant] may not redact otherwise responsive documents because those documents contain irrelevant material."); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. It should not come as a shock to those involved in litigation, that parties may see the outcome differently.").

Charter should produce the documents in its production in their entirety. If Charter fails to so produce, Plaintiffs will move to compel.

Sincerely,

Tyler Finn