# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DECLARATION OF TOM MONTEMAGNO IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM NON-PARTY CHARTER COMMUNICATIONS, INC.** |

I, Tom Montemagno, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief.

1. I am an Executive Vice President, Programming Acquisition, at Charter Communications, Inc. My responsibilities include negotiating Charter's carriage agreements with broadcasters and cable programming networks. I have personal knowledge of the facts contained herein.

2. I submit this Declaration in opposition to Plaintiffs' Motion to Compel discovery of Charter's carriage rates with FOX, CBS, NBC, ESPN, NFL Network, NFL RedZone, SEC Network, FS1, ESPNU, Pac-12 Network, ACCN, and Big Ten Network (BTN) ("Requested Networks").

3. Charter is the nation's second largest multichannel video programming distributor ("MVPD"). MVPDs provide households and commercial enterprises across the United States with broadcast and cable

television service. MVPDs enter into "carriage agreements" with broadcast and cable networks such as Fox, CBS, and NBC whereby the MVPD pays the network a fee (typically expressed as a monthly per-subscriber rate) to deliver their programming.

4. The rates that MVPDs pay to networks for carriage of their programming channels are vigorously negotiated and their terms kept extremely confidential. Charter's carriage agreements with networks take into account a variety of factors including the networks' programming offerings as a whole, viewership, cost, type of programming, length of contract, and other terms. Charter's carriage rates are typically expressed in a single, unitary, and undifferentiated per-subscriber amount for all programming on a particular channel, 24 hours per day, 365 days per year.

5. Any disclosure of these highly confidential contractual rates and terms could expose Charter's strategies and prices to its competitors or counterparties, and could create a substantial risk of competitive harm to Charter, which strives to obtain the best carriage rates for its subscribers. For example, and as described below, disclosure of these contracts would expose disparities in the carriage rates that Charter pays different entities, which Charter's counterparties would exploit to demand higher rates from Charter.

6. I understand that Charter is being asked to produce its carriage rates with respect to the Requested Networks. Charter's current agreements with the Requested Networks contain strict confidentiality provisions, typically limiting access even within Charter and the relevant network to key personnel with a bona fide business need to know their

terms. Those restrictions reflect the sensitive financial nature of the agreements and the effect on competition disclosure of such terms would have upon the competitive position of Charter. Charter's current agreements with the Requested Networks also contain strict confidentiality provisions and require Charter to take affirmative steps to safeguard the agreements and their terms from any disclosure.

7. Aside from restricting access to carriage agreements, Charter takes a number of additional measures to prevent their disclosure. For example, Charter's computer systems restrict access to carriage agreements and rate information to Charter's programming executives as well as staff on a need-to-know basis.

8. Any kind of disclosure of Charter's carriage agreements could cause substantial damage to Charter by providing a competitive advantage to Charter's competitors and to its counter-parties (networks). Charter's counterparties (the networks) could use Charter's carriage rate information to demand more attractive terms for their agreements, which could negatively impact Charter and its subscribers. For example, if one network learned that Charter paid higher carriage rates for a similar network, they would demand that Charter pay a higher carriage rate for their network, negatively impacting Charter and Charter's customers, who could be impacted by a corresponding subscription price increase.

9. Charter negotiates in private with networks to obtain the best possible rates for its subscribers. It would also damage Charter if its MVPD competitors became aware of Charter's rates. Charter's competitors could use information about its carriage agreements to demand lower rates

and improve their competitive position, attracting more customers from Charter by passing on the savings by way of lower rates to their subscribers.

10. With the exception of NFL Network and NFL RedZone, which exclusively transmit NFL programming, none of the Requested Networks' programming is limited to football.

11. The broadcast networks of FOX, CBS, and NBC are general broadcast entertainment channels with limited football programming, typically on weekends, for less than half the year. FOX, CBS, NBC, ESPN, and FS1 air both college and professional football. Charter pays a single fee for all of this programming, with no specification of the value or cost of professional or collegiate football programming.

12. Even for ESPN and FS1, networks that are devoted entirely to sports programming, NFL and collegiate football make up only a small fraction of their overall programming offerings. Again, the fees paid by Charter to these networks, are unitary fees for all of their sports offerings, with no value ascribed to football specifically. There is no separate fee schedule for professional or collegiate football.

13. SEC Network, FS1, ESPNU, Pac-12 Network, ACCN, and Big Ten Network (BTN) each carry programming associated with a variety of sports including football, basketball, baseball, volleyball, and many more. Those networks carry only college sports programming. Once again, football represents only a portion of these networks' programming. The costs associated with individual programming is not expressed in Charter's current carriage rate agreements with these networks.

14. I understand that Plaintiffs have also requested carriage rate agreements for NFL Network and NFL RedZone. I have the same concerns about confidentiality of these agreements. Moreover, both of those networks are owned by the NFL, which is a Defendant in this litigation.

15. I do not understand how carriage rates could permit a greater understanding of how college football games are distributed, the structure of the market for college football games, or the costs associated with those games. Charter's carriage rates are expressed in a single unitary rate for all programming on a particular channel and therefore shed no light on the costs associated with college football programming.

Dated: December 16, 2021

Stamford, Connecticut

Tom Montemagno