MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel listed on Signature Page]

*Plaintiffs' Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY CHARTER COMMUNICATIONS, INC.**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: January 11, 2022 at 10:00 a.m.<br>Discovery Cutoff Date: 5/15/2022<br>Pretrial-Conference Date: TBD<br>Trial Date: TBD |

Charter gives no legitimate reason why it should not produce the carriage rates for a dozen channels that broadcast football as well as its communications regarding contractual arrangements with the NFL Club Defendants. *First*, the supplemental protective order in this action—which expressly limits the disclosure of "carriage rate information" produced by non-parties—squarely addresses Charter's concerns about the protection of its trade secrets. *Second,* as Plaintiffs have explained during numerous meet-and-confers over the past six months, each of these categories of documents is relevant to Plaintiffs' antitrust claims. Under Rule 45, the combination of those two factors compels an order obligating Charter to produce that material.

## I. Plaintiffs Have a Substantial Need for Charter's Carriage Rates

This motion turns on the relevance of the requested documents. Rule 45 incorporates Rule 26's broad definition of relevant information, which is that "reasonably calculated to lead to admissible evidence." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). Here, the subpoenaed carriage rates will likely lead to admissible evidence of the existence of a unique market for NFL football. They will also demonstrate that, compared to the NCAA, broadcasters collectively pay *more* for the rights to televise *fewer* football games.

This information is relevant because the Sherman Act requires Plaintiffs to establish the "relevant market" in which the NFL Defendants exert monopoly power. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1151 (9th Cir. 2019). Plaintiffs have long maintained that the NFL is a unique product that has no substitute. *See id.* at 1155 (concluding that Plaintiffs plausibly alleged that "professional football games have no substitutes"). Defendants have long argued that the relevant market is broader, consisting either of televised football (*i.e.*, including the NCAA) or televised sports. To prevail on their claims, Plaintiffs will need to prove that NFL football constitutes its own economically distinct product market. Carriage rates, insofar as they establish that the market pays a premium to broadcast the NFL over the NCAA, will tend to prove that such a market exists.

Charter's sole argument to the contrary borders on the disingenuous. Plaintiffs are aware that carriage rates are unitary and do not include an express surcharge for football. If such a surcharge existed, Plaintiffs would surely marshal that evidence. In reality, Plaintiffs must reconstruct the market value of the NFL from information that actually exists. Carriage rates are the best proxy for the value that MVPDs like Charter place on telecasts of NFL games. As Plaintiffs have explained to Charter *ad nauseum*, differences in carriage rates between the channels that show NFL football and those that show college football may provide strong evidence that the NFL constitutes its own market. There is indeed a "correlation between Charter's carriage rates for these networks and pricing of … football game programming." Joint Stip. at 21. That is precisely why Plaintiffs seek carriage rates from multiple sources—to facilitate the identification and calculation of the NFL surcharge that is implicitly built into these ostensibly unitary carriage rates.

For those same reasons, Plaintiffs have a "substantial need" for this material within the meaning of Rule 45(d)(3)(C). To make that showing, Plaintiffs need only "demonstrate that the requested discovery is relevant and essential to a judicial determination of its case." *Gonzales,* 234 F.R.D. at 685. It is well-established that the "information [sought] need not be dispositive of the entire issue disputed in the litigation in order to be discoverable by subpoena." *Id.; Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, 2018 WL 2197544, at *3 (N.D. Cal. May 14, 2018). Instead, "the district court's role in th[e substantial-need] inquiry is to balance the need for the trade secrets against the claim of injury resulting from disclosure." *Gonzales,* 234 F.R.D. at 685; *HM Elecs., Inc. v. R.F. Techs., Inc*., 2014 WL 3014660, at *5 (S.D. Cal. July 3, 2014).

The protective orders in this case upend that balance in favor of Plaintiffs. Charter claims only one type of potential injury, namely that it will be disadvantaged if its MVPD competitors or the networks themselves discover Charter's rates. Joint Stip. at 29. What Charter doesn't say is that the supplemental protective order, which

governs all documents produced by subpoenaed non-parties, addresses *precisely* that concern. *See* Dkt. 360. That order creates a "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE DESIGNATION," that "shall only apply to *carriage rate information*" and other sensitive material implicated in the negotiation of agreements in the NFL. *Id.* at 2 (emphasis added). Information so designated may be disclosed only to outside counsel, experts, vendors, and court personnel. *Id.* Importantly, that order prevents disclosure to "any outside counsel in this litigation who has any responsibility for advising any person regarding the negotiation or execution of affiliation agreements or licensing agreements with the NFL." *Id.* at 3. In other words, the protective order expressly precludes disclosure of "carriage rate information" to anyone with any conceivable relationship to any of Charter's competitors. Accepting Charter's claim of injury would therefore be tantamount to impugning the effectiveness of the protective order. Courts throughout this Circuit have rejected such arguments. *See Gradillas*, 2018 WL 2197544, at *6 ("reject[ing] … proposition that a protective order can never be sufficient to protect trade secrets"); *AFMS LLC v. UPS*, 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012) ("The relatively remote potential for inadvertent disclosure of confidential documents does not justify the withholding of discovery altogether."); *Walker v. Intelli-Heart Servs., Inc.*, 2019 WL 1028001, at *5 (D. Nev. Mar. 4, 2019) (same).

Nothing in Charter's opposition justifies deviation from these precedents. Certainly not the three decade-old and out-of-circuit cases that stand for no other principle than skepticism of the efficacy of protective orders. Charter claims without any support that the order is not adequate to protect its information. Yet it identifies no specific deficiencies. Nor could it. That document expressly addresses Charter's only concerns about producing its carriage rates. If Charter has concerns about the possible public disclosure of its carriage rates at trial, Plaintiffs have been open to discussing accommodations. In this context, however, Plaintiffs' need for carriage rates outweighs the remote possibility that Charter will be injured by disclosure.

**II.     Communications About Contractual Arrangements Are Relevant**

Charter provides two justifications for its refusal to produce documents concerning its contractual arrangements with the NFL clubs—irrelevance and undue burden. Neither stands up to scrutiny.

This category of documents is reasonably calculated to lead to admissible evidence on two fronts: 1) to prove antitrust injury and 2) to answer Defendants' procompetitive justifications for their conduct. *First,* these contracts provide insight into what the market for NFL football would look like absent the challenged restraints. Local Charter affiliates are able to contract with local NFL teams for the broadcasting of preseason games only because those games are not subject to the same restraints as regular season games. The contracts produced by Charter contemplate simulcasting those games, indicating that the market for the NFL is large enough to sustain the simultaneous airing of one game on two different channels. Charter's argument that these contracts are "local, small in scope, and involve select preseason games, and not any Sunday Ticket games," Joint Stip. at 19, thus misses the mark. That these decentralized arrangements exist in the preseason context supports Plaintiffs' principal claim of injury, that the restraints reduce the output and raise the prices of NFL game broadcasts. *Second,* Defendants have long argued that the production of NFL games "requires joint action, and therefore the restrictions are pro-competitive." *In re NFL Sunday Ticket*, 933 F.3d at 1153. One way to rebut that defense is to show that individual NFL clubs can, and ***do***, contract with individual MVPDs when those restrictions are removed. The preseason-game contracts are real-world examples of that conduct.

Charter's arguments for undue burden—raised for the first time in this motion despite multiple conversations with Plaintiffs about these documents—are similarly illogical. As an initial matter, Charter assumes incorrectly that Plaintiffs did not seek these same documents from defendants. Charter would know this already if it had been willing during the meet-and-confer process to move past its insistence that these

4

documents are irrelevant to Plaintiffs' claims. In fact, Plaintiffs' fourth request for production to the NFL Defendants seeks "All documents, including all contracts and documents reflecting communications, relating to the licensing and distribution of NFL football games over television." That request covers the documents sought here except for Charter's internal communications, which are not available from another source.

Without that assumption, Charter's claims of undue burden fall apart. Charter *already* searched for and located its contracts with the clubs. There are six in total, with three clubs. The earliest dates back to 2014. As represented during the December 6 meet-and-confer, Charter *already* identified and interviewed the personnel responsible for those contracts as part of its efforts to locate internal reports and studies. It thus defies belief that locating the communications underlying those six concededly small agreements would require significant additional expense.

### III. Plaintiffs Have Complied with Rule 45

Considering Plaintiffs' demonstrated efforts to work with Charter over the past six months, Charter's suggestion of sanctions is preposterous. The Ninth Circuit has held that "absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45[(d)(1)] sanctions are inappropriate." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). In this context, undue burden exists only "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). None of those factors are present here. Quite the opposite. Plaintiffs have continually attempted to accommodate Charter's concerns through the meet-and-confer process. Notably, Plaintiffs agreed to narrow their subpoena to six targeted requests in an effort to reach a mutually agreeable solution. In short, the invocation of sanctions is a distraction. The Court should reject it and grant Plaintiffs' motion to compel.

| | | |
|---|---|---|
| 1 | Dated: December 28, 2021 | Respectfully submitted, |

MARC M. SELTZER
SUSMAN GODFREY L.L.P.

SCOTT MARTIN
IRVING SCHER
HAUSFELD LLP

HOWARD LANGER
EDWARD DIVER
PETER LECKMAN
LANGER GROGAN AND DIVER PC

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
TYLER FINN
tfinn@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200/Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

By: */s/ Marc M. Seltzer*
Marc M. Seltzer

*Attorneys for Plaintiffs' Interim Co-Lead Class Counsel*