UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

| Present: The Honorable | JOHN E. MCDERMOTT, UNITED STATES MAGISTRATE JUDGE |
|---|---|
| S. Lorenzo | |
| Deputy Clerk | Court Reporter / Recorder |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY CHARTER COMMUNICATIONS, INC.**
**(Dkt. 377)**

Before the Court is Plaintiffs' Rule 37 Motion To Compel Production Of Documents By Non-Party Charter Communications, Inc. ("Charter") ("Motion") filed on December 21, 2021. (Dkt. 377, 377-1.) Plaintiffs filed a Supplemental Memorandum on December 28, 2021. (Dkt. 381.) Charter did not file a Supplemental Memorandum. The Court heard oral argument on the Motion at a January 11, 2022 hearing and took the Motion under submission. (Dkt. 394.) The Court GRANTS the Motion except as noted below.

The Motion seeks to enforce compliance with two Requests in a Rule 45 subpoena issued to Charter. The first asks Charter to produce communications regarding Charter's contractual arrangements with three individual NFL clubs. (JS 1, 5-6.) A second Request seeks carriage rates for channels that carry professional football and college football. (JS 1, 17.)[1]

<u>Relevant Federal Law</u>

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevancy should be construed liberally. See <u>Covarrubias v. Ocwen</u>

---

[1] Plaintiffs acknowledged at the hearing that Requests 10, 12 and 22 were no longer at issue. (Dkt. 397 at 22:6-11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

Loan Servicing, LLC, 2018 WL 5914240*2 (C.D. Cal.). Information need not be admissible in evidence to be discoverable. Id.

A Rule 45 subpoena authorizes discovery from non-parties equivalent to discovery from parties under Rule 34. See Adv. Comm. Note to 1991 Amendment; Meeks v. Parsons, 2009 WL 30003718*2-*3 (E.D. Cal.). Rule 45(d)(1), however, obligates the one issuing a subpoena "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(2)(B)(ii) provides that an order compelling subpoena compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." See also Gonzalez v. Google, 234 F.R.D. 674, 684 (N.D. Cal. 2006).

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or if the subpoena "subjects a person to undue burden." Rule 45(d)(3)(A)(iii) and (iv). The court also may order production of trade secrets or other confidential research, development or commercial information if the issuing party "shows a substantial need for the testimony or material that cannot be met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated." Rule 45(d)(3)(C)(i) and (ii).

### Communications With NFL Clubs

Charter objects to producing its communications with individual NFL clubs based on relevancy and undue burden. There are only six contracts with 3 clubs dating back to 2014. (JS 5:8-10; Dkt. 397 at 17:17-18.) The clubs are the Green Bay Packers, Carolina Panthers and Los Angeles Chargers. (Dkt. 377-11 at 6, ¶ 25.) The Court rejects Charter's relevancy objection. Charter argues that its contracts concern only preseason games, not regular season Sunday ticket games that are at issue in the case. Plaintiffs, however, contend that these contracts provide insight into what the market for NFL football would look like absent the challenged restraints. (Id.) Plaintiffs have explained that Charter's local affiliates are able to contract with local NFL teams for the broadcasting of preseason games only because those games are not subject to the same restraints as regular season games. (JS 4.) This rebuts NFL's argument that production of NFL games requires joint action as it shows that individual clubs can and do contract with multichannel video programming distributors when those restrictions are removed. (Id.) Charter did not respond to Plaintiffs' explanation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

Charter's undue burden and expense argument is another matter. Charter argues that Plaintiffs should obtain the information from the NFL clubs directly before pursuing it from Charter, a non-party. Rule 45(d)(1) provides that a person issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 26(b)(2)(C) commands that discovery be limited if it is determined that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Rule 45(d)(2)(B)(ii) provides that an order compelling subpoena compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."

To begin, Charter's internal communications about its contracts with the NFL clubs are not available from the NFL clubs. (Dkt. 397 at 22:1-5; 381 at 5:4-6.) When asked why they cannot be produced, Charter answered that discovery between the parties will help focus Plaintiffs on a particular time or custodian. (Dkt. 397 at 26:2-18.) No amount of discovery between the parties, however, will avoid the need to produce Charter's internal communications. The Court ORDERS their production **within 15 days of this Order**.

As for Charter's communications with the three NFL clubs, Charter already has produced its contracts with those clubs as well as studies and reports regarding those agreements. Presumably, Charter already has identified and interviewed the personnel responsible for the club contracts as part of its effort to locate internal reports and studies. It is certainly more efficient to seek these communications from one source rather than three, especially as Charter must produce its own internal communications regarding the contracts.

Although it offers no supporting declaration, Charter asserts that there are 10,000 documents that will cost over $20,000 to review and produce (JS 25:27-26:8) and seeks compensation and sanctions if ordered to produce the communications at issue. As a non-party, Charter contends that Plaintiffs should seek the documents from the three NFL clubs who are parties to this litigation before imposing that burden on Charter. Plaintiffs have indicated that they have sought the communications from the three NFL clubs. They say that discussions are "ongoing" and that the clubs "haven't specifically withheld those documents either." (Dkt. 397 at 21:17-18.)

Charter's request that Plaintiffs pursue the clubs first is not unreasonable, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

supported by Rules 26(b)(2)(C), 45(d)(1) and 45(d)(2)(B)(ii). The Court ORDERS Plaintiffs to seek a definitive statement **within the next 30 days** from the three clubs as to whether they will produce the Charter communications. If they decline to do so, then Charter must do so, as the case must go on. The communications at issue are relevant, confidential business information that Plaintiffs have a substantial need to obtain. The documents are subject to the protective order. If it occurs that Charter incurs "undue" or "substantial" expense, it can seek a compensation order under Rule 45(d)(3)(C)(ii).[2]

Carriage Rates

Plaintiffs seek an order compelling Charter to produce its carriage rates for channels that carry professional football and for channels that carry college football. (JS 1, 13.) These channels or networks include FOX, CBS, NBC, ESPN, NFL RedZone, NFL Network, FS1, ESPNU, Pac-12 Network and Big Ten Network (BTN). (Dkt. 377-14, Montemagno Decl., ¶ 2.)

Plaintiffs say they need the carriage rate information for 2 reasons. First, the information will prove that NFL football constitutes its own market. (JS 14); see Epic Games, Inc. v. Apple, Inc., 493 F. Supp. 3d 817, 834 (N.D. Cal. 2020) ("A threshold step in any antitrust case is to accurately define the relevant market"). Differences between the carriage rates for channels that carry NFL football and those carrying college football may show that NFL football and college football exist in separate markets. (JS 14.) Second, Plaintiffs contend that the decentralized licensing and distribution regime in place for NCAA football demonstrates how NFL football may be distributed in a world without the challenged restraints. (JS 15:2-5; Complaint, ¶ 139.) "Carriage rates permit a greater understanding of how college football games are distributed, the structure of the market for college football games and the costs associated with those games. (JS 15.)

There is no serious debate that Charter's carriage rates are confidential commercial

---

[2] Charter seeks both reasonable costs as compensation under Rule 45(d)(3)(C)(ii) and also sanctions under Rule 45(d)(1). (JS at 31:6-19.) Plaintiffs responded only to Charter's sanctions request in their Supplemental Memorandum but were silent on compensation. (Dkt. 381 at 5:14-27.) The Court rejects the sanctions request. There has been no opposition or bad faith in issuing the subpoena here. See Mount Hope Church v. Bash Back!, 705 F.3d 418, 429 (9th Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

information subject to the protections of Rule 45(d)(3)(B) and (C). The Montemagno Declaration explains that Charter's carriage rates are vigorously negotiated and their terms extremely confidential. (Dkt. 377-14, ¶ 4.) The Declaration states that disclosure of the highly confidential rates and terms would create "a substantial risk of competitive harm to Charter." (Id., ¶ 5.) Charter's agreements contain strict confidentiality provisions and Charter limits access to its own key personnel. (Id., ¶¶ 6-7.) Plaintiffs do not dispute these facts.

Charter makes no serious argument that it would be unduly burdensome under Rule 45(d)(1) or Rule 45(d)(3)(A)(iv) to produce its carriage rates for a dozen channels. Its portion of the Joint Stipulation is silent on the matter.

Charter, however, challenges the relevancy of the carriage rates in proving Plaintiffs' claims and therefore asserts that Plaintiffs cannot establish "substantial need" for its carriage rates. The Montemagno Declaration states that Charter's carriage rates are typically expressed in "a single, unitary and undifferentiated per-subscriber amount for all programming." (Id., ¶ 4.) Except for the NFL channels, none of the other networks' programming is limited to football. (Id., ¶ 10.) FOX, CBS, NBC, ESPN and FS1 air both college and professional football. (Id., ¶ 11.) Charter pays a single fee for all the programming with no specification of the value or cost of professional or college football programming. (Id., ¶ 11.) Fees paid by Charter to the networks for sports programming are unitary fees; there is no separate fee schedule for professional or college football. (Id., ¶ 12.) Finally, Charter's carriage rates are "expressed in a single unitary rate for all programming on a particular channel and therefore shed no light on the costs associated with college football programming." (Id., ¶ 15.)

Plaintiffs' response is that carriage rates for channels carrying NFL football and those carrying college football may show the extent that the two forms of football exist in separate markets, even though Charter's carriage rates do not include any surcharge. (JS 14:25-15:2.) In their Supplemental Memorandum, Plaintiffs assert that "[c]arriage rates, insofar as they establish that the market pays a premium to broadcast the NFL over the NCAA, will tend to prove that such a market exists." (Dkt. 381 at 1:27-28.) Plaintiffs say that, even though carriage rates are unitary and do not include any surcharge, they must reconstruct the market value of the NFL and carriage rates are the best proxy for the value Charter places on NFL telecasts. (Id. at 2:1-6.) Plaintiffs say they need carriage rates from multiple sources "to calculate the NFL surcharge implicitly built into these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

ostensibly unitary carriage rates." (Id. at 2:11-13.)

At the hearing, Plaintiffs stated, "The principal reason why carriage rates are relevant to Plaintiffs' claims is to show whether the carriage of NFL games carries with it a price premium and that price premium goes to proof of whether the NFL and NFL games constitute a separate and distinct market." (Dkt. 397 at 8:9-13.) Plaintiffs say they want to recreate the market price of NFL football using carriage rates to prove a price premium. (Id. at 9:7-19.) They say they can make a meaningful comparison between the carriage rates between the NFL network and the PAC-10 network. (Id. 12:2-7.) Plaintiffs say they would be significantly hampered if the second largest cable company did not provide its carriage rates. (Id. at 16:4-8.)

Thus, Plaintiffs believe that Charter's carriage rates are essential to proving their claims against the NFL. Charter argues that unitary carriage rates with no NFL surcharge can provide no relevant information for determining any NFL premium or differentiating the price/cost of NFL from college football programming. These differing views constitute a factual dispute that neither party can prove or disprove at this point. It is a factual dispute that goes to the merits of the case and cannot be resolved on a discovery motion by this Court but only by the District Court on summary judgment or at trial. Plaintiffs need the carriage rate information to conduct their analyses. The NFL can argue later that any analysis is flawed. Given the broad scope of relevant discovery under Rule 26(b)(1), the Court finds that Charter's carriage rates are relevant and Plaintiffs have demonstrated a substantial need for the rate information pursuant to Rule 45(d)(3)C).

The Court also rejects Charter's assertion that it will suffer significant harm if its carriage rates are disclosed and that the protective orders in place are not adequate to protect its competitively sensitive carriage rates. (JS at 29:13-30:1-17.) In addition to the general protective order in place (Dkt. 197), a second protective order was put into place on November 16, 2021 (Dkt. 360) to protect non-parties. That supplemental protective order creates a "HIGHLY CONFIDENTIALLY COMMERCIALLY SENSITIVE DESIGNATION" that "shall only apply to carriage rate information" and other confidential material information in agreements with the NFL. (Id. at 2.) Information so designated may be disclosed only to outside counsel, experts, vendors and court personnel. (Id.) It forbids disclosure to any outside counsel who has any responsibility for negotiating affiliation agreements. (Id. at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 15-ML-02668 PSG (JEMx) | Date | January 20, 2022 |
|---|---|---|---|
| Title | In Re National Football Leagues Sunday Ticket Antitrust Litigation | | |

Plaintiffs, moreover, stated at the hearing that they have no present intention of exhibiting carriage rates at trial as they are only needed as inputs for an expert analysis about the existence of a distinct product for NFL football. (Dkt. 397 at 15:4-10.) (The Court encourages the parties to meet and confer on a third protective order to put in place specific protocols for how Charter's data will be handled in discovery and at trial, but will not order it.) The Court also notes that Comcast and Dish Network have agreed to disclose their carriage rates. (Dkt. 377-2, ¶ 11.)

The Court rejects any argument that the protective orders are inadequate to protect Charter's carriage rate information. See Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP, 2018 WL 2197544*6 ("rejec[ting] proposition that a protective order can never be sufficient to protect trade secrets"); AFMS LLC v. UPS, 2012 WL 3112000*7 (S.D. Cal.) ("The relatively remote potential for inadvertent disclosure of confidential documents does not justify the withholding of discovery altogether"). There must be thousands of protective orders governing production of trade secrets, patent information and confidential business information. Charter cites no study indicating that there have been disclosures of protected material despite a protective order.

Charter must produce the requested carriage rate information **within 15 days of this Order**.

|  | : |  |
|---|---|---|
|  | Initials of Preparer | slo |