Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**NFL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER**<br>**[ECF No. 423]**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: March 18, 2022<br>TIME: 1:30 P.M.<br>COURTROOM: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 4

LEGAL STANDARD ................................................................................................... 6

ARGUMENT ................................................................................................................. 7

    A.    Plaintiffs Have Not Demonstrated Good Cause for A Second Continuance. 7

    B.    The NFL Defendants Would Be Prejudiced by a Second Continuance....... 13

CONCLUSION............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Guerrero v. General Motors Corp.*,
    No. CV F 06-1539 LJO SMS, 2008 WL 1338894 (E.D. Cal. Apr. 9, 2008) ....... 12

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ................. 3, 7

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) ... 3

*Party Animal Inc. v. Evanger's Dog & Cat Food Co.*,
    No. 17-cv-3422 PSG (FFMx), 2019 WL 8355728 (C.D. Cal. Dec. 9, 2019) .. 7, 12

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
    No. 17CV1118-BEN(BLM), 2018 WL 2979575 (S.D. Cal. June 8, 2018) ........... 8

*Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080 (9th Cir. 2002) ............. 7

ii

Case No. 2:15-ml-02668-PSG (JEMx)            The NFL Defendants' Opposition to Plaintiffs' Motion to Amend Scheduling Order

# INTRODUCTION

Under the original Scheduling Order in this case, the parties were given fourteen months to complete fact discovery. At Plaintiffs' request, that Scheduling Order was later amended to expand that time to sixteen months. Declaration of Rakesh Kilaru in Support of NFL Defendants' Opposition to Plaintiffs' Motion to Amend Scheduling Order [ECF No. 423] ("Kilaru Decl.") ¶ 16. The NFL Defendants have abided by that timeline and complied with their obligations. Plaintiffs' Motion to Amend the Scheduling Order (ECF No. 423) demonstrates that they have not and are now seeking a bailout to cure their failure to properly litigate their case. Their motion should be denied.

Plaintiffs' approach to discovery has been to constantly expand the scope of what they are seeking, even as discovery progresses to a close. To date, they have served 160 Requests for Production ("RFPs") on the NFL Defendants, some as recently as this week. Kilaru Decl. ¶ 5. Those RFPs have covered topics as far-flung as all documents relating to the effect of additional bye weeks on the scheduling of NFL games (RFP No. 47) and ticket pricing information for each NFL Club (RFP No. 68), for example. *Id*. ¶ 4. In response, the NFL Defendants have timely produced 128,149 documents, including the custodial files from 21 witnesses, as well as documents from the NFL's Media Department shared drive. *Id*. ¶ 11. Plaintiffs have also received 291,202 documents from DirecTV and 4,633 documents from other third parties. *Id*. ¶ 12.

But Plaintiffs have done virtually nothing to turn this far-reaching discovery into a coherent case theory. Their complaint is not that they have been denied materials they need—they are now in receipt of all documents identified in their motion. Rather, their complaint is that they need more time to review all of what they have received. Moreover, Plaintiffs have noticed *zero* depositions and now use that delay to somehow blame the NFL Defendants for the limited time that remains

for them to take up to the ten depositions they are entitled to under the Federal Rules of Civil Procedure.

In short, Plaintiffs are asking this Court to fix a problem that Plaintiffs produced. There is no basis for granting that extraordinary request. Plaintiffs should have tailored their discovery requests as discovery progressed, and the Court should not reward them for doing the opposite. The law precludes a party from obtaining a continuance when it has overreached and failed to exercise diligence during the discovery period. And Plaintiffs are represented by multiple well-resourced law firms that are certainly capable of completing discovery within the next three months.

Plaintiffs' two arguments to the contrary are unavailing.

*First*, Plaintiffs' reliance on documents produced after the substantial completion deadline misrepresents the history of these productions. The Scheduling Order is clear that the substantial completion deadline applied only to the *first* set of RFPs from Plaintiffs, which were served on January 22, 2021. ECF No. 294 at 1. (January 14, 2021 Scheduling Order). The NFL Defendants complied with that deadline by producing 65,685 documents by October. *Id*. ¶ 8. It should not come as a surprise to anyone that the NFL Defendants have produced more documents since, because Plaintiffs served five *additional* sets of RFPs between April 2021 and February 2022, and some of the documents they requested implicated confidentiality concerns requiring negotiations with third parties. *Id*. ¶ 5. In any event, Plaintiffs have several months before the end of discovery, giving them ample time to review the documents and litigate this case, particularly given the numerous lawyers and law firms they have working on this matter.

*Second*, Plaintiffs, not the NFL Defendants, are responsible for any delays in the production of data from the NFL's fan database. Plaintiffs' arguments to the contrary once again mischaracterize the record. In January 2021, Plaintiffs served an interrogatory requesting a description of all categories of information "that reflects or is or can be associated with individual consumers or viewers of live NFL football

1  telecasts." *See* ECF No. 423-5, Ex. B.  The NFL Defendants objected to the term
2  "individual consumers or viewers of live NFL football telecasts" as vague and
3  ambiguous but understood Plaintiffs to be requesting viewership data.  *Id.* at 3.  In
4  response, the NFL Defendants explained at length what data they possessed at the
5  time relating to "viewers of live NFL football telecasts," and made clear that some
6  of that data was stored in a database containing "information relating to fans of NFL
7  football."  *Id.* at 4.  Plaintiffs offered no response for more than ten months—they
8  asked no questions and sought no clarifications.  Kilaru Decl. ¶ 20.  Then, finally last
9  month, they served a request for production of data from the fan database, which they
10 received less than a month later.  *Id*.  Nothing about this scenario warrants a
11 continuance.  Plaintiffs did not diligently pursue discovery on this issue, and in any
12 event have over four months to process and analyze that data before producing their
13 first expert report.

14       Plaintiffs' claim that a continuance would cause "no prejudice to the NFL
15 Defendants," ECF No. 423-1 at 13, is likewise inaccurate.  Plaintiffs' proposed new
16 schedule would result in the parties' serving merits expert reports before class
17 certification has been resolved.  That approach is inefficient and wasteful, because it
18 could result in the parties and experts spending time and resources on issues that are
19 not relevant.  Their approach would also prejudice the NFL Defendants, by forcing
20 expensive antitrust discovery to drag on even longer than it already has, and cut in
21 half the time that the NFL Defendants have to prepare summary judgment briefing.

22       In short, Plaintiffs have failed to meet the high burden required to obtain
23 *another* continuance in this matter.  Plaintiffs have not "used the entire discovery
24 period efficiently" or shown that they "could not have, with due diligence sought to
25 obtain the discovery earlier in the discovery period."  *Mission Power Eng'g Co. v.*
26 *Cont'l Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995).  Where the party requesting
27 a modification to a scheduling order "was not diligent, the inquiry should end."  *See*
28 *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

The NFL Defendants respectfully request that the Court deny Plaintiffs' request and maintain the current schedule as outlined in ECF No. 363, which has already given Plaintiffs the benefit of additional time to conduct discovery.

## BACKGROUND

Discovery in this case began more than a year ago, in January 2021. Following a hearing on January 12, 2021, ECF No. 301, the Court issued a scheduling order whereby the "deadline for substantial completion of document productions *in response to document requests served by January 22, 2021*" was October 22, 2021, and the deadline for completion of fact discovery was five months later, on March 22, 2021. ECF No. 294 at 1 (emphasis added). At the hearing, the parties and the Court also discussed the importance of setting a case schedule where the parties would get a decision on class certification before diving into merits expert discovery. ECF No. 301, 1/12/21 Hr'g Tr. at 10:1–3; 10:17–22 (MS. WILKINSON: "[W]e would want to make sure our discovery focuses on the way you define the class and your ruling . . . ." THE COURT: "[Y]ou are going to know in October, you know, whether or not there's a class and how it's defined . . . . I think you are right. You are going to know if there's a class or no class end of October 2022. And if that's the case, it seems like the dates were reasonable."). The Court thus determined that briefing on class certification should conclude on September 19, 2022, so that it could issue a decision on class certification by the end of October 2022, before merits expert reports were due to be served. *Id.* at 11:13–15; *see also* ECF No. 294. The Court further noted that it "want[ed] those dates to be firm." ECF No. 301, 1/12/21 Hr'g Tr. at 11:8.

Plaintiffs then served their first of six sets of RFPs on January 22, 2021, which included 104 extremely broad requests. Kilaru Decl. ¶ 4-5. Following negotiations on search terms and custodians, the NFL Defendants began producing extensive discovery to Plaintiffs. *Id.* ¶ 6. The NFL Defendants' first production in response to this first set of RFPs was on August 13, 2021, and consisted of 1,997 documents,

totaling 12,980 pages. *Id*. Following this production, and before the substantial completion deadline of October 22, 2021, the NFL Defendants made five more productions. *Id*. ¶ 8. By the substantial completion deadline, the NFL Defendants had produced 65,685 documents, totaling 513,398 pages. *Id*. ¶ 8. These documents included documents from the custodial files of many senior NFL executives who have been central to the negotiations of the Sunday Ticket agreements with DirecTV throughout the class period. *Id*. ¶ 9. For example, by January 2021—five months before the end of the current fact discovery deadline—12,873 documents or 96 percent of Hans Schroeder's custodial files (the NFL's Executive Vice President and Chief Operating Officer) and 10,822 documents or 96 percent of Brian Rolapp's custodial files (the NFL's Chief Media and Business Officer) had been produced. *Id*.

Plaintiffs then served three more sets of RFPs on the NFL Defendants before November 2021, *id*. ¶ 5, when Plaintiffs requested their first continuance in this matter. ECF No. 362. (November 19, 2021 Joint Stipulation Regarding Modifications to Scheduling Order). Plaintiffs acknowledged that the NFL Defendants had complied with their discovery obligations [1] and outlined the following rationale for a continuance: "Plaintiffs believe that an extension to the fact discovery deadline is necessary due to the volume of discovery produced to date, the volume of discovery that remains to be produced by DirecTV (including the substantial volume of transactional data yet to be produced), and the need to review

---

[1] Plaintiffs' claim that, when Plaintiffs requested the first continuance in this matter, "the NFL Defendants represented that their discovery productions in response to all of Plaintiffs' document requests were substantially complete," ECF No. 423-1 at 6, is incorrect. Plaintiffs' first request for a continuance noted that "*in compliance with the Court's scheduling order*, both Plaintiffs and the NFL Defendants contend they have substantially completed their document productions to each other." ECF No. 362 at 2 (emphasis added). The Court's Scheduling Order clearly stated that October 22, 2021 was the "deadline for substantial completion of document productions *in response to document requests served by January 22, 2021*." ECF No. 294 at 1.

and analyze that information before conducting key depositions in this matter or for the parties' experts to analyze." *Id.* at 3.

The NFL Defendants did not oppose Plaintiffs' first request for a continuance in the interest of professional courtesy and in recognition of the fact that the proposed extension would minimally impact the Court's carefully crafted schedule. *Id*. ¶ 13. The Court granted Plaintiffs' unopposed request for a continuance on November 29, 2021. ECF No. 363. Pursuant to the amended Scheduling Order, the fact discovery deadline was moved nearly two months from March 22, 2022 to May 15, 2022. *Id.* Class certification briefing, however, was still scheduled to conclude on September 19, 2022, thereby maintaining a structure where the parties would receive a decision on class certification prior to serving merits expert reports. *Id.*

More than three months have passed since the Plaintiffs sought the first continuance, which was premised on their alleged need to review discovery in order to conduct key depositions. Yet, to date, Plaintiffs have not noticed a single deposition or even raised the topic of depositions with defense counsel. Kilaru Decl. ¶ 17. Instead, they have focused all of their efforts on seeking further expansive document discovery from the NFL Defendants, serving, for example, two additional sets of RFPs since the first continuance was granted.

Discovery has now been ongoing for more than a year. To date, Plaintiffs have issued 160 RFPs to the NFL Defendants and the 32 member Clubs, including issuing requests as recently as February 22, 2022. *Id*. ¶ 5. The NFL Defendants have made twelve productions, totaling 128,149 documents. *Id*. ¶ 11. Plaintiffs, on the other hand, have made only two productions, totaling 630 documents, in response to the numerous RFPs that the NFL Defendants have served on them. *Id*. ¶ 12.

## LEGAL STANDARD

Once a court enters a pretrial scheduling order, any requests for modifications are governed by Rule 16 of the Federal Rules of Civil Procedure, which requires the moving party to show "good cause" for the modification. *Johnson*, 975 F.2d at 608–

6

09.  This standard "primarily considers the diligence of the party seeking the amendment," *id.* at 609, but "[t]he Court can also consider whether the non-moving party will be prejudiced by a modification to the scheduling order." *Party Animal Inc. v. Evanger's Dog & Cat Food Co.*, No. 17-cv-3422 PSG (FFMx), 2019 WL 8355728, at *3 (C.D. Cal. Dec. 9, 2019).

The burden to justify a continuance—and even more so, a *second* continuance—is significant.  As this Court has repeatedly made clear, there is "a strong interest in keeping scheduled dates certain" and "changes in dates are disfavored." Hon. Philip S. Gutierrez Standing Order at 10; *see also Party Animal Inc.*, 2019 WL 8355728, at *4 (reiterating that continuances are disfavored).

# ARGUMENT

**A. Plaintiffs Have Not Demonstrated Good Cause for A Second Continuance.**

The NFL Defendants have expended significant time and effort to meet their discovery obligations in this matter and are prepared to complete discovery under the current deadline.  Unlike the NFL Defendants, Plaintiffs have failed to meet their obligation to complete discovery under the existing Scheduling Order.  Plaintiffs have issued numerous (and overly broad) requests for discovery, including two new sets of RFPs in 2022.  Kilaru Decl. ¶ 5.  The NFL Defendants have produced voluminous discovery in response to such requests.  But the law does not permit Plaintiffs to ask for an ever-growing set of documents and then complain about the burden of reviewing what they asked for.  Plaintiffs' lack of diligence in tailoring the discovery requests and failure to move fact discovery forward should not be rewarded.

A scheduling order should only be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002).  When the party seeking modification has not been diligent, "the inquiry should end and the motion to modify should not be granted."  *Id.*  Plaintiffs have failed to demonstrate both an

inability to meet the current schedule—which gives Plaintiffs' well-resourced law firms nearly three months to complete fact discovery—or diligence in their efforts. As such, "the inquiry should end" there, *id.*, and Plaintiffs' request should be denied.

Neither of Plaintiffs' purported justifications for the continuance can satisfy the good cause standard.

*First*, Plaintiffs' arguments about the NFL Defendants' production of documents after October 22, 2021 do not justify the relief they seek. As a preliminary matter, the substantial completion deadline was specifically for all RFPs issued by January 22, 2021 and did not apply to the numerous RFPs issued after this date.[2] Kilaru Decl. ¶ 3. The NFL Defendants produced 65,685 documents by the October 22, 2021 deadline for substantial completion, thereby complying with their obligations. *Id*. ¶ 8. Plaintiffs are simply misrepresenting the record in suggesting that all or even most documents needed to be produced by that point in time.

Further, the fact that some documents from the first set of RFPs were produced after the deadline was due to matters outside the NFL Defendants' control, which Plaintiffs well know. A significant number of documents relating to the first set of RFPs included data from Nielsen that was subject to confidentiality provisions. The parties also needed to negotiate redactions to broadcast agreements with several of the NFL's broadcast partners. Plaintiffs were intimately involved in these negotiations with third parties and anticipated that several documents impacted by these ongoing negotiations would be produced after the October 22, 2021 deadline—in addition to documents responsive to Plaintiffs' other RFPs. *Id*. ¶ 4.

---

[2] Furthermore, as to the first set of RFPs, the substantial completion deadline "does not act as a bar to all subsequent discovery" and by its plain language contemplated that some material could still be produced following the deadline. *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 17CV1118-BEN(BLM), 2018 WL 2979575, at *4 (S.D. Cal. June 8, 2018).

1    Last, Plaintiffs have not been prejudiced in any way by the production of documents after October 22, 2021. Under the original Scheduling Order, the completion of fact discovery was scheduled to occur five months after the deadline for substantial completion on Plaintiffs' first set of RFPs. ECF No. 294. The apparent logic behind this structure was that five months was sufficient time for Plaintiffs to review the majority of documents produced in response to this first set of RFPs *and* engage in other discovery, such as depositions. Plaintiffs then received an extension of the completion of fact discovery to May 15, 2022. By the same logic, Plaintiffs would be able to diligently complete discovery if they received a "substantially complete" document production by January 15, 2022. That is exactly what happened: By January 15, 2022, Plaintiffs were in receipt of 74 percent of documents produced to date. And by January 31, 2022, Plaintiffs were in receipt of 100 percent of documents produced to date.[3]

*Second*, the recently produced data from the NFL's fan database was a by-product of Plaintiffs' lack of diligence, as opposed to the NFL Defendants' delay. To understand why, it is important to set the factual record straight.

Plaintiffs' Interrogatory No. 1 asked the NFL Defendants to describe all categories of information "associated with individual consumers or viewers *of live NFL football telecasts*," including, among other things, personal identification and demographic information for such individuals. ECF No. 423-5, Ex. B at 3 (emphasis added). The NFL Defendants responded to this interrogatory on March 10, 2021. *Id.*

---

[3] It also bears noting that when Plaintiffs requested the first continuance, they represented that an extension to the current deadline for fact discovery was required to give them sufficient time to review "approximately 600,000 documents" produced by DirecTV. ECF No. 362. DirecTV has subsequently only produced a little more than half of that amount. Kilaru Decl. ¶ 15. Further, DirecTV's production, when combined with the NFL Defendants' additional productions, amounts to less than 600,000 documents.

Among other objections, the NFL Defendants "object[ed] to the phrase 'individual consumers or viewers of live NFL football telecasts'"—a phrase Plaintiffs had not defined in their interrogatory—"as vague and ambiguous." *Id.* The NFL Defendants understood this request to be asking for categories of viewership data they possessed and proceeded to answer the interrogatory in a three-page response. For example, the NFL Defendants stated that they possessed aggregate-level Nielsen ratings data, data from market research, and data related to viewers who watch live games on a multichannel video programming distributor or MVPD. The NFL Defendants explained that "the League collects data associated with viewers of live NFL football telecasts who are logged into an NFL domain while viewing a live NFL football telecast," but made clear that such data does "not include personal identification or other demographic information, information about preferred NFL football teams or information relating to viewership of other sports programming, but may include information relating to certain product purchases." The NFL Defendants also clarified that such data is "fed into, and stored in, the Fan Centric Marketing database ('FCM database'), a database that contains certain information relating to fans of NFL football." *Id*. at 4.[4]

Plaintiffs did not follow up. Kilaru Decl. ¶ 20. They did not offer any clarification of the term "individual consumers and viewers of live NFL football

---

[4] On January 17, 2022—many months after responding to Interrogatory No. 1—the NFL began receiving a limited subset of data from NBC on total minutes watched on various platforms affiliated with NBC for individuals who have both viewed a minimum amount of NFL content on their platforms and have agreed that certain identifying information may be shared with the NFL. Kilaru Decl. ¶ 22. The NFL Defendants notified Plaintiffs of this additional limited data less than a month after the NFL began receiving it, and this data has already been produced to Plaintiffs. *Id*. The NFL does not possess any other information about the actual viewership habits of individual fans outside of the limited data received from NBC, as described above. *Id*.

telecasts," notwithstanding the NFL Defendants' objection to the term. *Id*. They did not ask for clarifications about any of the data or information the NFL Defendants provided. *Id*. And they did not ask any further questions about the Fan Centric Marketing database for more than ten months.[5] *Id*.

Then, just weeks before filing this Motion seeking an extension, Plaintiffs served a letter objecting, for the first time, to the NFL Defendants' interrogatory response, followed by an RFP seeking data from the Fan Centric Marketing database. Kilaru Decl. ¶ 20. In arguments mirroring the ones made in this, Plaintiffs claimed, again for the first time, that they were seeking not just viewership information, but information relating to NFL fans more generally, including whether they subscribe to Sunday Ticket. *Id*. Just weeks later, the NFL Defendants made a timely and large production of the data Plaintiffs requested. *Id*.

Nothing about this situation warrants a continuance. For one thing, the crisis Plaintiffs claim is one of their own creation. The NFL Defendants provided a three-page response to Interrogatory No. 1 based on their best understanding of what Plaintiffs were seeking and the information available at the time. That response included an objection to a vague term at the heart of this dispute, and a description of the FCM database. Plaintiffs did not follow up about the FCM database for more than ten months. They offered no clarification of the terms they used, and they did not seek any further information about the databases the NFL Defendants mentioned. Only on the eve of filing this motion did they claim they wanted information from the FCM database all along, based on arguments they had never ventilated before. A

---

[5] In April 2021, a month after receiving the NFL Defendants' response to Interrogatory No. 1, Plaintiffs issued an RFP seeking documents and data related to some of the information provided in that response—but did not seek any further information from or clarification of the FCM database. Kilaru Decl. ¶ 21. In response, the NFL Defendants offered to produce data relating to "viewers of live NFL football telecasts," after meeting and conferring "to discuss and clarify the scope of this Request." *Id*. Once again, Plaintiffs never followed up in any way. *Id*.

11

party cannot sleep on their rights for so long and then credibly claim prejudice. *See Guerrero v. General Motors Corp.*, No. CV F 06-1539 LJO SMS, 2008 WL 1338894, at * (E.D. Cal. Apr. 9, 2008) (noting that any prejudice the plaintiffs suffered was "self-inflicted" due to their own failure to properly conduct discovery).

Moreover, Plaintiffs have not explained how they are prejudiced by the timing of receiving the data. Just days after receiving the RFP asking for the data from the fan database, the NFL Defendants notified Plaintiffs that they intended to produce responsive data promptly, despite the great expense and effort in doing so. This data was then produced in full by February 19, 2022. This data is unlikely to be relevant to any fact witness depositions (and Plaintiffs have not suggested otherwise), and Plaintiffs' first expert report is not due until June 2022.

*Finally*, if Plaintiffs feel, despite their ample resources, that they do not have sufficient time to "identify witnesses for deposition[s], [and] conduct those deposition[s]," ECF No. 423-1 at 9, it is only because of their own lack of diligence. Plaintiffs first received a production of documents on August 13, 2021. Prior to this production, there were extensive discussions between the parties regarding the necessary custodians. Plaintiffs presumably could not have carried out those discussions without some idea of whom they might depose. Yet now, more than six months later, Plaintiffs have yet to even start the process of discussing or noticing any depositions. It is unreasonable for Plaintiffs to strategically delay noticing any depositions, and then rely on that fact to complain that they are "at risk of running out of time." *See Party Animal Inc. v. Evanger's Dog and Cat Food Co.*, No. CV 17-3422 PSG (FFMx), 2019 WL 10944854, at *6 (Mar. 5, 2019) ("Even if the Court were to look only at Plaintiff's conduct after the first stipulated continuance, the continuance was granted on June 8, 2018 yet Plaintiff made no attempt to notice any depositions for dates before mid to late September, more than three months later and less than two months before the discovery cut-off. By waiting until the last minute

to attempt to schedule depositions, Plaintiff put itself at risk of running out of time.").[6]

There is no good cause for a continuance here. Plaintiffs have—for many months—had tens of thousands of documents from the NFL Defendants, which go to the core of Plaintiffs' allegations in this case. And Plaintiffs received the fan database data in an expedited manner following their own delayed requests. The three months remaining in the fact discovery period are more than sufficient for Plaintiffs to take up to the ten depositions allowed under the rules, defend any depositions noticed by the NFL Defendants, and complete fact discovery.

**B. The NFL Defendants Would Be Prejudiced by a Second Continuance.**

The Court should further deny Plaintiffs' request due to the prejudice that a second continuance would impose.

The parties worked carefully to craft a schedule that was predicated on getting class certification resolved before merits expert discovery. Under Plaintiffs' current proposal, merits expert reports would be due one week following the completion of class certification briefing—well before the Court would be able to schedule a hearing, and much less rule, on class certification. The current schedule allows for more than a month-and-a-half between these deadlines, for good reason. Clarity on class certification would allow the parties to focus their efforts on a threshold issue before the Court. A contrary approach is inefficient and wasteful, because it could

---

[6] Plaintiffs' delays in this litigation are not just limited to discovery. For example, Plaintiffs note that one of their class representatives passed away and vaguely claim that "the addition of a new plaintiff may also impact the current discovery schedule," ECF No. 423-1 at 4 n.2. Through their own diligence, the NFL Defendants learned of Mr. Holinko's passing on January 18, 2022. Kilaru Decl. ¶ 23. Plaintiffs did not, however, inform the NFL Defendants of this fact until January 24, 2022 and indicated that they would propose a new class representative within a week. *Id*. As of the date of this filing, however, Plaintiffs have not yet proposed a new class representative. *Id*.

result in the parties and experts spending time and resources on issues that are not relevant

Plaintiffs' proposed schedule also harms the NFL Defendants in other ways. The NFL Defendants have been diligently complying with their discovery obligations for more than a year and produced more than 128,000 documents by the deadlines set out by this Court. The process has been extensive and has already cost the NFL Defendants millions of dollars. Moreover, Plaintiffs' proposal condenses later deadlines to the NFL Defendants' detriment. For example, Plaintiffs' proposed schedule shaves nearly a week of the time period for merits expert depositions and cuts in half the time that the NFL Defendants have to prepare any motion for summary judgment after the conclusion of expert discovery. At bottom, Plaintiffs are seeking more time for discovery because of their failures to develop their case, and also to shorten the NFL Defendants' time to respond to whatever theories Plaintiffs eventually develop. The Court should deny that inequitable request.

## CONCLUSION

For the foregoing reasons, the NFL Defendants respectfully request that the Court deny Plaintiffs' request to amend the Scheduling Order in this matter, and maintain the deadlines already ordered on November 29, 2021, as outlined in ECF No. 363.

Dated:  February 25, 2022

Respectfully submitted,

/s/ Beth Wilkinson
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# CERTIFICATE OF SERVICE

I, Roxana Guidero, attorney at Wilkinson Stekloff LLP, hereby certify that, on February 25, 2022, I caused the foregoing NFL Defendant's Opposition to Plaintiffs' Motion to Amend Scheduling Order to be served via e-mail delivery on the following counsel:

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Howard I. Langer
LANGER, GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
hlanger@langergrogan.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

*Co-Lead Plaintiffs' Counsel*

Executed on February 25, 2022.

By: */s/ Roxana Guidero*
Roxana Guidero