Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
**LANGER GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO AMEND SCHEDULING ORDER**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: March 18, 2022<br>TIME: 1:30 p.m.<br>COURTROOM: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 4

   A. The NFL Defendants' Produced a Massive Number of Documents After the Substantial Completion Deadline that Were Responsive to Plaintiffs' First Requests for Production of Documents............................................................. 4

   B. The NFL Defendants' Incorrect Statements in Their Interrogatory Responses Prejudiced Plaintiffs and Resulted in the NFL Defendants' Failure to Timely Produce Highly Relevant Documents ............................................................. 8

CONCLUSION........................................................................................................... 10

# INTRODUCTION

The NFL Defendants wrongly assert that "Plaintiffs are asking this Court to fix a problem that Plaintiffs produced." Opp. at 2. To the contrary, NFL Defendants failed to meet the Court's deadline for substantial completion of document discovery in response to document requests served nine months earlier, misrepresented their compliance with their discovery obligations, and disrupted Plaintiffs' ability to conduct an orderly process for document review and analysis and deposition preparation—depriving Plaintiffs of more than three months they should have had to prepare for and take depositions—and they now seek to blame Plaintiffs for their own discovery failures. Plaintiffs seek only what they believe is fair and reasonable, an adjustment to the schedule to give Plaintiffs the five months they would have had after the substantial completion of document production to prepare for, take and complete depositions, and that agreed-upon, Court-ordered time should be restored to them, in a way that keeps the trial date and the summary judgment briefing schedule intact.

In November 2021, the NFL Defendants represented that they had "substantially completed their document productions..." Dkt. No. 362. That representation is not correct. After that date, the NFL Defendants produced more material in the following months – including most recently a major production on February 19, 2022, than they had prior to the Court's October 22, 2021 "substantial completion" deadline. Dkt. No. 423-3 at ¶¶ 6, 8. Lacking a justification for their failure to comply with the Court's substantial-completion deadline, the NFL Defendants assert that their November 2021 representation referred only to documents responsive to Plaintiffs' initial set of document requests. That assertion is not only wrong, it also misses the point: Plaintiffs' initial document requests – which the Defendants have repeatedly complained about as being too broad because they assertedly cover everything under the sun – plainly included most of the documents

produced after October 22, 2021. For example, on February 19, 2022, the NFL produced its fan database, which is explicitly called for by RFPs 15 and 57, the latter of which calls for "documents relating to the demographics of consumers or viewers of live, professional football programming…."" Tellingly, in opposition of this motion, the NFL Defendants never expressly state that they actually did substantially complete their document production responsive to that initial set of requests by October 22, 2021, because, as described below, it did not happen. The NFL Defendants' delayed production further prejudices Plaintiffs because they have had to deal with their late productions while also dealing with the fact that DirectTV also continues to produce documents, including dealing with tens of thousands of documents produced by DirecTV as recently as last week.[1]

The NFL Defendants argue that, with less than three months remaining in the fact discovery period, the remaining time under the current schedule is "more than sufficient for Plaintiffs to take the up to ten depositions allowed under the rules." Opp. at 13. But the NFL Defendants ignore the volume of their recent productions, which will require Plaintiffs to devote significant resources to review and analyze before taking certain key depositions.[2] They also ignore the time necessary for Plaintiffs' experts to digest that material—including a database with information on millions of NFL fans that the NFL's interrogatory responses claimed did not exist— in order to prepare expert reports for class certification.

The NFL Defendants' position, if accepted, would unfairly cut in half the

---

[1] DirecTV has continued to make productions through February 2022, and, as recently as February 22, 2022, produced an additional 81, 127 documents, totaling an additional 1.2 million pages.

[2] The NFL Defendants suggest that Plaintiffs should be limited to ten depositions in a case involving 32 teams and the NFL, but that is not correct for reasons not relevant here, including that they have listed more than 24 people in their initial disclosures that they may call as witnesses at trial. It is unclear why the NFL Defendants criticize the Plaintiffs for waiting until the NFL substantially produces its documents to issue deposition notices, but in any event, the initial deposition notices will be served this coming week.

amount of time, stipulated by the parties and ordered by the Court, that would be afforded Plaintiffs to prepare for, notice, and take those depositions after receiving the bulk of the NFL Defendants' document productions. As the NFL Defendants acknowledge, the original scheduling order provided for five months of discovery following "substantial completion" of document productions (Opp. at 4), which was enlarged by stipulation in November 2021 to nearly seven months (October 22, 2021 until May 15, 2022) in consideration, *inter alia*, of the volume of documents produced, those expected to be produced by DirecTV, and the time required to analyze all of that information before conducting key depositions and needed for expert analysis (see Opp. at 5-6; Dkt. No. 362 at 2-3).[3] In the absence of the reasonable extension Plaintiffs now seek, that work would have to be completed in half the agreed-upon time, three and one-half months (January 31, 2022 to May 15, 2022), penalizing Plaintiffs for the NFL Defendants' delays.[4]

The NFL Defendants claim that they would be also prejudiced by Plaintiffs' requested extension because they would not "get a decision on class certification before diving into merits expert discovery." Opp. at 3. The NFL Defendants do not articulate any specific prejudice in this regard, nor is it at all unusual for a class certification decision to be issued after expert merits discovery commences. Regardless, the NFL Defendants' expressed desire to focus their experts on any modifications to the proposed classes ordered by the Court during class certification

---

[3] Plaintiffs have aggressively pursued discovery from the NFL Defendants despite the substantial roadblocks they have had to overcome—requiring them to file three motions to compel, two of which were granted (*see* Dkt. Nos. 346, 403) and one that remains pending, engaging in months of motion practice and meet-and-confers concerning many requests, including the critically important NFL - network agreements, and even having to seek *ex parte* relief (Dkt. No. 424), contested by the NFL Defendants (Dkt. No. 425), to have the instant motion heard more than one month prior to the current fact discovery cutoff.

[4] The NFL Defendants complain that they should not be subjected to more discovery, but the parties stipulated to serving all document requests and interrogatories by February 22, 2022 (Dkt. No. 362 at 3), and Plaintiffs are seeking no change to that deadline.

can readily be addressed in responsive or short supplemental reports (to which Plaintiffs would have no objection).

## ARGUMENT

### A. The NFL Defendants' Produced a Massive Number of Documents After the Substantial Completion Deadline that Were Responsive to Plaintiffs' First Requests for Production of Documents.

The NFL Defendants claim that their late productions can be explained by Plaintiffs' service of additional document requests ("RFPs") after the initial set on January 22, 2021. *See* Opp. at 2. The facts, however, demonstrate otherwise.[5]

The NFL Defendants do not claim that they produced all, substantially all, or even a majority of documents responsive to Plaintiffs' first set of RFPs prior to their January 2022 productions. That is because they did not. Indeed, the NFL Defendants admit that "some documents from the first set of RFPS were produced after the deadline." Opp. at 8. That is an understatement.

Here are the facts. Plaintiffs served 104 RFPs to Defendants on January 22, 2021. While Plaintiffs have served additional requests over the course of discovery, the vast majority of their requests were served in January 2021. Of the requests served afterward, many of them were largely duplicative of the ones served in January 2021 in order to—as Plaintiffs told the NFL Defendants at the time they were served— obviate a specific objection that the NFL Defendants lodged on the prior requests regarding the relevant time period covered by the requests. Leckman Decl. ¶¶ 5-8. Others were specifically tailored to documents such as deposition transcripts and expert reports in prior related litigation, none of which have been produced to date (an issue that Plaintiffs intend to raise with the Court separately). And one of the most recent requests by Plaintiffs was targeted to a specific database that was plainly

---

[5] The representation, made by the NFL Defendants in November 2019, moreover, made it appear as if the NFL Defendants had substantially completed all of their productions of the document requests that had been served as of that date. At no point during the negotiations regarding the stipulation to modify the discovery cutoff date did the NFL Defendants inform Plaintiffs that they were planning to produce more documents than they had in the *entirety* of the discovery period up to that point.

responsive to Plaintiffs' initial requests, but which Defendants had improperly failed to produce: the fan database, which is plainly responsive to initial RFPs number 15 and 57, which seek, respectively, "All documents relating to analysis of actual or potential consumer usage/viewership of NFL Sunday Ticket" and "All documents relating to the demographics of consumers or viewers of live, professional football programming, including reports, studies, or analyses of consumer or viewer demographics." These specific requests, covered by the broader initial requests, was made only after it was revealed on January 18, 2022 that the NFL Defendants' interrogatory response from a year ago omitted information about the fan database—a revelation discovered by Plaintiffs' diligence, not an independent, voluntary disclosure by the NFL Defendants.

The RFPs in the initial January 22, 2021 set, had they been fairly responded to over the following nine months, would have allowed Plaintiffs not only to obtain relevant documents regarding their claims in this complex antitrust action but also to identify witnesses, prepare for depositions, and provide materials for expert analysis. To illustrate, the January 22, 2021 requests included the following:

- RFP No. 4: All documents, including all contracts and documents reflecting communications, relating to the licensing and distribution of NFL football games over television since January 1, 1987.
- RFP No. 9: All minutes of the NFL Executive Committee or meetings of Club owners concerning or relating to any media policies.
- RFP No. 11: All documents relating to League-wide Media rules and policies.
- RFP No. 12: All documents relating to the negotiation of television contracts, including documents relating to pricing guidelines, pricing methods, pricing formulas, pricing procedures, or authorization procedures.
- RFP No. 14: All documents relating to financial or economic analysis of Media and Media policies by or for you.

- RFP No. 15: All documents relating to analysis of actual or potential consumer usage/viewership of NFL Sunday Ticket, or any package offering less games than NFL Sunday Ticket (e.g., packages of individual games or games of individual Clubs), in the United States or elsewhere, and any other satellite or direct-to-consumer packages sold under any branding, including, but not limited to, fan, market, consumer, or surveys or analysis, business reviews or reports, or competition reviews.

- RFP No. 17: All documents related to analysis of actual or potential consumer or customer usage of NFL games broadcast via the internet, mobile phones, or any other electronic means.

- RFP No. 21: All non-transaction specific documents relating to the price of subscribers of the NFL Sunday Ticket package and comparable packages in Canada, Mexico and other foreign countries (including price analyses, announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, and pricing formulas).

- RFP No. 31: All documents relating to forecasted, projected, estimated, planned, or actual demand for live presentation of professional football games in the United States.

- RFP No. 100: All documents created by or related to the NFL's Long Range Planning Committee concerning media rights or revenue-sharing.

- RFP No. 101: All documents created by or related to the NFL's finance committee concerning media rights or revenue-sharing.

- RFP No. 103: All documents related to NFL Game Pass.

Based on metadata and search tools available to Plaintiffs, it is clear that the documents produced by Defendants *after* the substantial completion deadline are ***overwhelmingly*** responsive to Plaintiffs' first set of requests. For example, a significant number of documents—133,826 pages of them—contain "mediastorageimage" in the filepath of the document, indicating that such documents relate to discussions of the NFL's media strategy, and are thus relevant to requests in the first set of RFPs. Leckman Decl. ¶¶ 14-15. Documents with the

mediastorageimage filepath include, for example, various documents about NFL game viewership and test markets for NFL Sunday Ticket, all of which were encompassed by the January 22, 2021 first set of RFPs, especially RFP Nos. 9, 11 15, and 16 set forth above. *See also id.* This undercuts the NFL Defendants' argument that its late production can be excused as constituting some minor amount of trailing documents or because of "matters outside NFL Defendants' control" (Opp. at 8) or simply "data from Nielsen that was subject to confidentiality provisions" (*id.*) or the "broadcast agreements" as to which Plaintiffs and Defendants have negotiated redactions for several months (*id.*).

Additionally, search terms that have been run on the NFL Defendants' productions made after the substantial completion deadline reveal their responsiveness to the first set of RFPs. For example, the search term "fan research" yielded 22,741 pages of material; the search term "gamepass" yielded 50,249 pages of material; and the search term "pric* strat*" yielded 8,230 pages of material. Dkt. No. 423-3 at ¶ 9; Leckman Decl. ¶ 12. These documents are responsive to, *inter alia*, RFP Nos. 12, 14, 15, 17, 21, 103, as set forth above.

Notably, such later-produced documents also came from key custodians in the matter who were identified in the NFL Defendants' initial disclosures in January 2021. To illustrate, document volumes produced from some key custodians *before* versus *after* the substantial completion deadline are shown below:

| Name | Title | Pages Produced Before Substantial Completion Deadline | Pages Produced Uniquely After Substantial Completion Deadline |
|---|---|---|---|
| Brent Lawton | Vice President, Media Strategy and Business Development | 54,838 | 74,156 |

| Kevin Laforce | Senior Vice President, Media Strategy and Business Development | 15,721 | 24,601 |
|---|---|---|---|
| Steve Bornstein | Former Executive Vice President, Media, NFL, and Former President & CEO, NFL Network | 15,370 | 9,701 |
| Hans Schroeder | Executive Vice President and Chief Operating Officer, NFL Media | 57,223 | 86,676 |
| Brian Rolapp | Chief Media and Business Officer, NFL | 72,479 | 59,342 |
| TOTAL | | 215,631 | 254,476 |

In all these cases, the defendants produced *more than half* the documents after the substantial completion deadline. Defendants quibble about what "substantial" means, but it cannot mean less than half.

The NFL Defendants' assertions that they produced 96% of custodial files from Hans Schroeder and Brian Rolapp as of "January 2021 [sic]—five months [actually four months] before the end of the current fact discovery deadline" (Opp. at 5) thus tells only the lesser part of the story. For those custodians highlighted by the NFL Defendants themselves, 129,702 pages of material were produced before the substantial completion deadline, and 146,018 pages afterwards. Again, more than half were late.

### B. The NFL Defendants' Incorrect Statements in Their Interrogatory Responses Prejudiced Plaintiffs and Resulted in the NFL Defendants' Failure to Timely Produce Highly Relevant Documents

In a complex antitrust case such as this, extensive expert data analysis is often required. As a result, some of Plaintiffs' very first discovery requests were aimed at

identifying key sources of data so that they could discuss those sources with their experts and craft tailored document requests for relevant data. Thus, in an interrogatory served in January 2021, Plaintiffs sought:

> all categories of information in your possession, custody, or control that reflects or is or can be associated with individual consumers or viewers of live NFL football telecasts, including, but not limited to (a) the personal identification of consumers and viewers; (b) the number of such viewers and consumers of NFL telecasts and their demographics; (c) purchases of any product; (d) preferred NFL football teams of consumers or viewers of NFL telecasts; and (e) viewership of other sports programming by consumers or viewers of NFL telecasts.

Dkt. No. 423-3 at ¶ 11.

The NFL Defendants argue that they objected that "individual consumers *or* viewers" was vague even though the phrase "consumer or viewers" is self-evident. And, in any event, the NFL Defendants' March 10, 2021 interrogatory response was a model of clarity when they answered, in no uncertain terms, that "[t]he FMC [Fan Centric Marketing] database **does not track personal identification or other demographic information relating to individual viewers of live NFL football telecasts.**" Dkt. No. 423-3 at ¶ 12 (emphasis added); Leckman Decl. ¶ 16-18. Given that response, it is disingenuous for the NFL Defendants to assert that Plaintiffs somehow failed to act with diligence concerning the database (Opp. at 12). Plaintiffs were seeking information regarding individuals that watched or bought live NFL football telecasts—and the NFL Defendants told Plaintiffs that they did not possess that information.

When Plaintiffs discovered that NFL Defendants' interrogatory response was incorrect because the Fan Centric Marketing database did, in fact, contain information regarding individual viewers of NFL football telecasts, the parties met and conferred on January 21, 2022, and NFL Defendants finally made a production

of the data on Saturday, February 19, 2022, one day after this motion was filed.[6] Leckman Decl. ¶ 19. This data is plainly responsive to many of the initial RFPs, served over a year ago, such as RFPs 15, 16, and 57. Such data is relevant to the primary audience of NFL Sunday Ticket and live professional football games generally, how such demographic information informed the NFL and DirectTV's marketing efforts, and other important information such as consumers' purchases of digital and broadcast products, live game tickets, and merchandise. This is the type of data that takes substantial time for Plaintiffs and their experts to review and analyze, conduct any follow-up discovery prior to taking depositions about the data and its significance, including questions relating to how Sunday Ticket was valued by the NFL Defendants and DirectTV and its competitors, and the impact of the challenged restraints on Plaintiffs and the putative class.

## CONCLUSION

Plaintiffs respectfully request based on this record that the Court grant Plaintiffs' Motion to Amend the Scheduling Order to Order.

Dated: March 4, 2022                    Respectfully submitted,

By: /s/ Marc M. Seltzer
     Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

---

[6] Plaintiffs have sought clarification from the NFL Defendants regarding their production of data from the fan database. The documents the NFL produced state that the database tracks 100 million fans, but the data received contains only 56 million unique fan accounts. The documents also describe the database as containing 80 terabytes of data yet the NFL's production contained only 14 gigabytes of data. The NFL Defendants have yet to explain these apparent discrepancies.


Arun Subramanian (*Pro Hac Vice*)
asubramanian@susmangodfrey.com
William Christopher Carmody
(*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Michael D. Hausfeld (*Pro Hac Vice*)
mhausfeld@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*