# EXHIBIT A

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100/Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
IRVING SCHER
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100/ Fax: (2121) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660/ Fax: (215) 320-5703

[Additional Counsel listed on Signature Page]

*Plaintiffs' Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | CASE NO.: 2:15-ml-02668−PSG (JEMx)<br><br>CLASS ACTION |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO NFL DEFENDANTS** |

PROPOUNDING PARTY:     Plaintiffs Ninth Inning Inc., dba The Mucky Duck, 1465 Third Avenue Restaurant Corp., dba Gael Pub, Robert Gary Lippincott, Jr., and Michael Holinko

RESPONDING PARTY:     NFL Defendants (as defined below)

SET NUMBER:     ONE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that each of the NFL Defendants (as defined below) produce the documents and things herein requested within 30 days of the date of service at the offices of Susman Godfrey L.L.P, 1900 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067, or such other time and place as may be agreed upon by counsel.  Pursuant to Federal Rule of Civil Procedure 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental responses and production of documents are required to be made as provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions and instructions shall apply to these document requests:

1.     The terms "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of the requests documents which might otherwise be construed to be outside the scope so as to give the broadest possible meaning to a particular request in which either or both is used. The singular includes the plural number and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

1

2.     "Club" means any football club or team that is a member of the National Football League.

3.     "Communication" means, without limitation, the imparting or exchange of information, thoughts, or opinions by any means including orally, in writing, by signs, signals, or code, including oral, written or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence, or other exchange of written or recorded information.  The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

4.     "Document" means any writing or other thing as described in Rule 34 of the Federal Rules of Civil Procedure and includes the original and all non-identical copies of all written, printed, recorded, or electronically stored information, including, but not limited to, letters, correspondence, memoranda, drafts, legal pleadings, calendars, diaries, day planners, journals, travel records, lists, outlines, summaries, notes, reports, compilations, notebooks, work papers, graphs, charts, spreadsheets, databases, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, telephone records, voicemail, telegrams, facsimiles, photographs, videotapes, audiotapes, digital audio or video recordings, other film and sound reproductions, presentations, slideshows, emails, email attachments, text messages, instant messages, internal or external web sites, social networking data and messages, compact discs, computer files and disks, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, transcripts, all written or graphic records or representations of any kind, and all electronic data, records or representations of any kind, including all file folders, directories, and metadata.

5.     "Electronically stored information" ("ESI") includes, without limitation, the following:

2

a. Activity listings of electronic mail receipts or transmittals;

b. Output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, mobile instant messengers, web browser-based messengers or social network messengers) or bulletin board programs, operating and backup systems, source code, PRF files, PRY files, batch files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a backup file or system, a deleted file or system, or file fragment; and

c. Any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, cloud data centers or in any other vehicle for digital data storage or transmittal, such as, but not limited to, desktop computers, servers, and other network computers, backup tapes or systems, laptop computers, tablets, iPhones, cellular telephones, or similar device, external storage devices (such as "keychain" drives) and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

6. "Media" means any means of mass communication such as television, newspapers, radio, magazine, websites, social media, and internet streaming and distribution.

7. "Media policy" means any policy relating to the use, lack of use, or interactions with the media, including, but not limited to, rights, duties, obligations, permissions, abilities, and cooperation with respect to the distribution of audio and video presentations of football game footage by over-the-air broadcast, cable, satellite, fiber-optic, or hybrid television distribution systems, or by radio or internet streaming.

7869473v1/014918

8.     "Multichannel video package" means any package of video programming channels offered for sale by an MVPD.

9.     "MVPD" means any multichannel video programming distributor, including, but not limited to, DirecTV.

10.     "NFL" or "League" means the National Football League, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that the NFL manages or controls, including those merged with or acquired by the NFL, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

11.     "NFL Defendants" means the NFL, NFL Enterprises, LLC and the following NFL member Clubs:

Arizona Cardinals, Inc., Atlanta Falcons Football Club LLC, Baltimore Ravens Limited Partnership, Buffalo Bills, Inc., Panthers Football LLC, Chicago Bears Football Club, Inc., Cincinnati Bengals, Inc., Cleveland Browns LLC, Dallas Cowboys Football Club, Ltd., Denver Broncos Football Club, Detroit Lions, Inc., Green Bay Packers, Inc., Houston NFL Holdings LP, Indianapolis Colts, Inc., Jacksonville Jaguars Ltd., Kansas City Chiefs Football Club, Inc., Miami Dolphins, Ltd., Minnesota Vikings Football Club LLC, New England Patriots, LP, New Orleans Louisiana Saints LLC, New York Football Giants, Inc., New York Jets Football Club, Inc., Oakland Raiders LP, Philadelphia Eagles Football Club, Inc., Pittsburgh Steelers Sports, Inc., Chargers Football Co., San Francisco Forty Niners Ltd., Football Northwest LLC, The Los Angeles Rams LLC, Buccaneers Limited Partnership, Tennessee Football, Inc., and Washington Football Inc.

12.     "NFL Sunday Ticket" means the subscription package of NFL games, that allows residential and commercial subscribers to watch televised broadcast of Sunday afternoon regular season NFL games.

4

13.   "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

14.   "Policy" or "procedure" means any rule, practice, course of conduct, guidelines, business methods, or traditions, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by you.

15.   "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean, without limitation, the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluation, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part, directly or indirectly.  Documents are considered relating to the subject matter whether they are viewed alone or in combination with other documents.

16.   "Television" includes any form of making televised broadcasts of NFL football games available to be viewed via television or other video platforms, including sponsored broadcasts and through a MVPD, and includes making NFL football games available by over-the-air broadcasts or distributed or otherwise available through NBC, CBS, FOX, ESPN, the NFL Network, or DirecTV.

17.   "You," "your" or "your company," unless otherwise noted, means each Defendant to whom these requests are directed, including its predecessors, wholly-owned or controlled   subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by a Defendant, together with all present and former directors, officers,

5

employees, agents, attorneys, representative, or any persons acting or purporting to act on their behalf.

## INSTRUCTIONS

1.     Unless otherwise specified, these requests for documents call for documents, data, and other information prepared, created, sent, altered, or received since June 17, 2011.

2.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these document requests are continuing in nature so that if you subsequently discover or obtain possession, custody, or control of any document covered by these requests, you shall make any such document available to Plaintiffs.

3.     These document requests are directed to each of the NFL Defendants and it is the responsibility of each NFL Defendant to respond separately to the document requests independently of any response by another NFL Defendant.

4.     In producing documents and other materials, you are to furnish all documents in your possession, custody, or control regardless of whether such documents or materials are physically or otherwise possessed, in the custody of or controlled directly or indirectly by you or your current or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by your attorneys or their employees, agents or investigators.  Archived documents, ESI, or other information maintained by third-party vendors, cloud data centers, or off-site shall be considered within your possession, custody or control.

5.     All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained.  If for any reason the container cannot be produced, you should produce copies of all labels or other identifying marks that may be present on the container.

6.     Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

6

7.     Documents shall be produced in such fashion as to identify the department branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found.

8.     All documents produced should be numbered sequentially, with a unique production number on each page (i.e., a Bates number), and with a prefix identifying the party producing the document.  An electronic document produced in its native format shall include the document's production number and associated metadata.

9.     If a document once existed and subsequently has been lost, destroyed, or is otherwise missing or cannot be located, you should provide sufficient information to identify the document or state, in writing, the details, including whether the document:

       a.     is lost or missing;

       b.     has been destroyed and, if so, by whom at whose request;

       c.     has been transferred or delivered, voluntarily or involuntarily, to another person or entity and at whose direction or request; or

       d.     has been otherwise disposed of.

10.     In each instance in which a document once existed but now is lost or missing or has been destroyed or otherwise disposed of, explain the circumstances surrounding the disposition of the document, including, but not limited to:

       a.     the identity of the person or entity who last possessed the document;

       b.     the date or approximate date of the document's disposition; and

       c.     the identity of all persons who have or had knowledge of the documents' contents.

11.     If any document responsive to any of these requests is claimed to be privileged, and the document or any portion of the document requested is withheld based on a claim of privilege pursuant to Rule 26(b)(5) of the Federal Rules of Civil

Procedure, provide a statement of the claim of privilege and all facts relied upon in support of that claim of privilege, as required by Federal Rules of Civil Procedure, including the following information:

        a.     the reason for withholding the document;

        b.     the date of the document;

        c.     the nature of the document;

        d.     the general subject matter of the document;

        e.     the present location of the document; and

        f.     the number or numbers of these document requests to which such document is responsive.

12.    Each document requested herein should be produced in its entirety and without deletion, redaction or excision, regardless of whether you consider the entire document or only part of it to be relevant or responsive to these document requests. If you have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document which you have redacted.

13.    All documents produced in paper form should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

14.    All ESI shall be produced in such fashion as to identify the location, i.e., the network file folder, hard drive, back-up tape, or other location, where the documents are stored and, where applicable, the natural person in whose possession they were found and the name and business address of each document's custodian. All ESI must include a .dii file or similar industry standard load file indicating the beginning and ending Bates numbers of all documents.

15.    ESI shall be produced, in its native format without deletion or alteration of metadata, or in a reasonably usable format agreed upon by the parties

and shall include information or instructions sufficient to enable the propounding party to access the ESI in such format.

16.     If a producing party produces electronic documents without some or all of the metadata that was contained in the electronic documents, the producing party shall inform all other parties of this fact, in writing, at or before the time of production.

## **DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:**

Your annual and quarterly financial statements from 1994 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to identify the names, titles, and job descriptions of each of your current or former officers, directors, or employees with responsibilities relating to the licensing and distribution of NFL football game programming for television.

**REQUEST FOR PRODUCTION NO. 3:**

All present and historical League constitutions, by-laws, and all other league-wide rules governing league structure, the licensing and distribution of football game programming over television, or the business practices of the Clubs.

**REQUEST FOR PRODUCTION NO. 4:**

All documents, including all contracts and documents reflecting communications, relating to the licensing and distribution of NFL football games over television since January 1, 1987.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, including all contracts and documents reflecting communications, between Clubs and the League regarding the video distribution of NFL football game programming, including by online streaming and over television.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 6:**

All documents, including all contracts and documents reflecting communications, between the League and any television providers, including, but not limited to, CBS, NBC, Fox, ESPN/ABC/Disney (collectively, "ESPN"), NFL Network, DirecTV, or any other provider of video services.

**REQUEST FOR PRODUCTION NO. 7:**

All documents, including contracts and documents reflecting communications, by or among the Clubs, the League, DirecTV, NFL Network, CBS, NBC, Fox, Yahoo/Oath, Amazon, ESPN, or any other provider of video services regarding the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 8:**

All documents reflecting communications, drafted by any of your current or former officers, directors, managers, or employees that refer to the League or its business practices, or the business practices of the Clubs, or any of their arrangements, or agreements as anti-competitive, or as a cartel, or as a monopoly, or as having market power, as well as any discussions of actual and potential competitors or competition.

**REQUEST FOR PRODUCTION NO. 9:**

All minutes of the NFL Executive Committee or meetings of Club owners concerning or relating to any media policies.

**REQUEST FOR PRODUCTION NO. 10:**

All minutes of the NFL Executive Committee or meetings of Club owners concerning or relating to DirecTV or the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 11:**

All documents relating to League-wide Media rules and policies.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to the negotiation of television contracts, including documents relating to pricing guidelines, pricing methods, pricing formulas, pricing procedures, or authorization procedures.

**REQUEST FOR PRODUCTION NO. 13:**

All documents relating to any Club's interest, analysis, or consideration of its rights to separately license the broadcast of its games on television.

**REQUEST FOR PRODUCTION NO. 14:**

All documents relating to financial or economic analysis of Media and Media policies by or for you.

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to analysis of actual or potential consumer usage/viewership of NFL Sunday Ticket, or any package offering less games than NFL Sunday Ticket (e.g., packages of individual games or games of individual Clubs), in the United States or elsewhere, and any other satellite or direct-to-consumer packages sold under any branding, including, but not limited to, fan, market, consumer, or surveys or analysis, business reviews or reports, or competition reviews.

**REQUEST FOR PRODUCTION NO. 16:**

All documents relating to analysis of actual or potential consumer or customer viewership of NFL games broadcast on DirecTV outside of NFL Sunday Ticket, CBS, NBC, Fox, ESPN, NFL Network, or any other television network, including, but not limited to, fan, market, or consumer surveys or analysis, business reviews or reports, or competition reviews.

**REQUEST FOR PRODUCTION NO. 17:**

All documents related to analysis of actual or potential consumer or customer usage of NFL games broadcast via the internet, mobile phones, or any other electronic means.

11

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the number of commercial subscribers to NFL Sunday Ticket in the United States or abroad, and the net amount they paid for their Sunday Ticket service and their overall DirectTV service, including all discounts and promotional offers that may have been applied to the cost of subscription, broken down by reporting period utilized—monthly, quarterly, or otherwise.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to show, for each year the number of residential subscribers to NFL Sunday Ticket packages in the United States or abroad, and the net amount they paid for their NFL Sunday Ticket service and their overall DirecTV service, including all discounts and promotional offers that may have been applied to the cost of subscription, broken down by reporting period utilized—monthly, quarterly, or otherwise.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to show viewership of the NFL Sunday Ticket package broken down weekly for each year.

**REQUEST FOR PRODUCTION NO. 21:**

All non-transaction specific documents relating to the price of subscribers of the NFL Sunday Ticket package and comparable packages in Canada, Mexico and other foreign countries (including price analyses, announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, and pricing formulas).

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to the sharing of revenue between Clubs and the League.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to policies, formulas, or analyses regarding competitive balance among the Clubs.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to the elasticity of demand or price sensitivity of, or consumers' willingness to pay for, the NFL Sunday Ticket package or any alternative package (e.g., for individual games or games of individual Clubs).

**REQUEST FOR PRODUCTION NO. 25:**

All documents reflecting Your revenue and earnings derived, directly or indirectly from the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 26:**

All documents reflecting the costs associated with producing, distributing, or in any other way related to the provision of the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 27:**

All budgets, projections, estimates, or related studies or reports prepared or received by your current or former directors, officers, or employees related to the distribution of football games over television.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to competitive conditions in the market for the distribution of football games over television, including reports, studies or analyses related to forecasted, projected, estimated, planned, or actual: (i) market shares; (ii) consolidation; (iii) fixed or variable costs; (iv) pricing; (v) entry or exit conditions; (vi) demand or demand trends; or (vii) substitute products.

**REQUEST FOR PRODUCTION NO. 29:**

All documents relating to studies, reports, and presentations received or prepared by your current or former directors, officers, or employees relating to the market for live presentation of professional football games in the United States (including management reports and presentations, financial reports and presentations, business planning and strategy reports and presentations, planning analyses, budgets, forecasts, sales projections, and consulting and advisory reports and presentations).

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 30:**

All business or strategic plans relating to the market for live presentation of professional football games in the United States.

**REQUEST FOR PRODUCTION NO. 31:**

All documents relating to forecasted, projected, estimated, planned, or actual demand for live presentation of professional football games in the United States.

**REQUEST FOR PRODUCTION NO. 32:**

All documents relating to forecasted, projected, estimated, planned, or actual demand for live presentation of professional football games in the United States via NFL Sunday Ticket.

**REQUEST FOR PRODUCTION NO. 33:**

All documents relating to the ways in which consumers or customers may watch professional football games via NFL Sunday Ticket, including any document referring to the time period of access (e.g., one day access, one month access, or season-long access), the scope of the purchase (e.g., a la carte, bundled or all-or-nothing), and devices on which the programming may be viewed.

**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to any proposal or decision to change, set, or maintain prices to subscribers, for the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to any memoranda, studies, reports, analyses, or presentations concerning the distribution of NFL games on television prepared by any consulting firm, agency, research firm, investment bank, commercial bank, or other investment advisors or financial services firm.

**REQUEST FOR PRODUCTION NO. 36:**

All documents relating to any possible or alleged violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel

14

laws, unfair competition laws, anti-bribery laws, and any similar laws, rules, or regulations by you or any other Defendant, including, but not limited to:

a. any inquiry, investigation, administrative, criminal, or civil litigation, or similar actions (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed, or final) by any government entity, legislative body, or representative or instrumentality thereof (i.e., the U.S. Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Internal Trade Commission, any state law enforcement agency, any grand jury, any committee of the United States Congress, any agency of a state or other political subdivision, and any domestic or international government body) (including all documents received from or provided to such governmental entities or used during or regarding discussions or negotiations with them);

b. any communications with any government entity regarding the legality of any media policy of yours or any other Defendant;

c. any internal audit, inquiry, or investigation (regardless of characterizations such as non-adjudicative, cooperating, preliminary, informal, formal, incomplete, open, closed, or final) and further including any violation of internal antitrust or competition law policies or practices; and

d. any private actions or civil litigation (including arbitrations, mediations or negotiations and further including any violation of internal antitrust or competition law policies or practices) in which you have been a party, witness, participant, or subject.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 37:**

All documents relating to any joint defense, contribution, indemnity, or judgment sharing agreements between any of the Defendants or NBC, CBS, Fox, NFL Network, ESPN or DirecTV.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to complaints received from any actual or potential subscriber or customer of Direct TV or other television provider regarding NFL Sunday Ticket being exclusively available through DirecTV.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to complaints received from any actual or potential subscriber or customer of DirectTV or other television provider regarding the terms and conditions of the NFL Sunday Ticket, including any complaints about needing to purchase NFL Sunday Ticket package instead of a more tailored or limited package of football games.

**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning or relating to the number of NFL fans in the United States, Canada, and any other country, broken down by country.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning or relating to the number of NFL fans in the United States and Canada by team and team city (e.g., Colts fans in the United States and Canada and the greater Indianapolis area).

**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning or relating to the number of fans of any NFL team residing or viewing games outside their team city (e.g., Colts fans in any area other than the greater Indianapolis area).

**REQUEST FOR PRODUCTION NO. 43:**

All team fan club mailing lists.

16

**REQUEST FOR PRODUCTION NO. 44:**

All data from website tracking devices or services concerning or relating to the location of fans visiting a Club's website.

**REQUEST FOR PRODUCTION NO. 45:**

All documents concerning or relating to the scheduling or broadcasting of Sunday afternoon NFL games viewable through local broadcasts on CBS or Fox and those otherwise available through NFL Sunday Ticket.

**REQUEST FOR PRODUCTION NO. 46:**

All documents concerning or relating to the scheduling or broadcasting of all NFL games viewable on NBC, CBS, Fox, ESPN, or the NFL Network on any day of the week, including consideration or analysis of scheduling or broadcasting any NFL games on non-traditional days or in non-traditional timeslots on any day of the week (e.g., Tuesday, Wednesday, Friday, or Saturday games).

**REQUEST FOR PRODUCTION NO. 47:**

All documents concerning or relating to the effect or potential effect of additional Bye weeks on the scheduling or broadcasting of all NFL games (e.g., each team playing 16 games over an 18 week regular season, 17 games over a 19 week regular season).

**REQUEST FOR PRODUCTION NO. 48:**

All documents concerning or relating to the effect or potential effect of additional regular season games on the scheduling or broadcasting of all NFL games (e.g., each team playing 17 or 18 regular season games per regular season).

**REQUEST FOR PRODUCTION NO. 49:**

All documents concerning or relating to the marketing or advertising of NFL Sunday Ticket to commercial establishments and residential consumers.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 50:**

All documents relating to the creation of the NFL Sunday Ticket package since 1990.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to any negotiation or agreement, whether consummated or not, concerning (a) the licensing or carriage of any out-of-market games in the United States, or (b) the licensing or carriage of the NFL Sunday Ticket package on an exclusive or non-exclusive basis.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to the decision to provide NFL Sunday Ticket exclusively through DirecTV in the United States.

**REQUEST FOR PRODUCTION NO. 53:**

All documents relating to the decision by the Clubs to pool their broadcast rights with the League.

**REQUEST FOR PRODUCTION NO. 54:**

All documents relating to any consideration of, or decision related to, the availability of live NFL game broadcasts over the internet or on mobile devices.

**REQUEST FOR PRODUCTION NO. 55:**

For each Club (and, if applicable, any Club-affiliated entity), the audited financial statements and proposed budgets as submitted to the League.

**REQUEST FOR PRODUCTION NO. 56:**

The League's audited financial statements and proposed budgets.

**REQUEST FOR PRODUCTION NO. 57:**

All documents relating to the demographics of consumers or viewers of live, professional football programming, including reports, studies, or analyses of consumer or viewer demographics.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 58:**

All documents comparing or contrasting the demographics of consumers of professional football programming to consumers of other sports programming.

**REQUEST FOR PRODUCTION NO. 59:**

All documents comparing or contrasting purchasers of residential subscriptions to NFL Sunday Ticket with purchasers of commercial subscriptions to NFL Sunday Ticket.

**REQUEST FOR PRODUCTION NO. 60:**

All documents concerning the characteristics (including preferences or proclivities) of NFL games or fans of professional football in comparison to the games, events, or fans of other sporting or entertainment activities, including but not limited to (i) documents sent to advertisers, licensors, sponsors, or broadcasters; (ii) assessments or analyses of NFL viewership, (iii) assessments or analyses of the strength or intensity of interest or support by football fans in individual NFL teams or in the League generally; (iv) assessments or analyses of the loyalties, demographics, or purchasing habits of football fans; or (v) television ratings or market share of the broadcast of NFL games, individually or collectively.

**REQUEST FOR PRODUCTION NO. 61:**

All documents reflecting any discussion of the benefits or relative merits of advertising and sponsorship opportunities with the League or any member Club.

**REQUEST FOR PRODUCTION NO. 62:**

All documents reflecting any substantive discussion of the benefits or relative merits of advertising and sponsorship opportunities associated with professional football programming.

**REQUEST FOR PRODUCTION NO. 63:**

All documents related to advertising availability, pricing, and buy-in rates for live, professional football programming.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to show advertising pricing for programming other than professional football games on each network that shows live, professional football programming.

**REQUEST FOR PRODUCTION NO. 65:**

All documents or analyses concerning any impact on live attendance or ticket sales for professional football games as a result of making live NFL game broadcasts available through any medium (e.g., over television, internet, mobile device).

**REQUEST FOR PRODUCTION NO. 66:**

All documents or analyses concerning any impact on television viewership or revenues as a result of the NFL Sunday Ticket package.

**REQUEST FOR PRODUCTION NO. 67:**

All documents concerning the strength of affinity, relationship, or association between fans and the NFL or individual Clubs, including but not limited to, fan, market, consumer or team surveys or analysis, business reviews or reports, or competition reviews.

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to show ticket pricing for each Club.

**REQUEST FOR PRODUCTION NO. 69:**

Documents sufficient to show in person attendance figures for each regular-season Sunday afternoon game.

**REQUEST FOR PRODUCTION NO. 70:**

All documents or communications relating to the benefits received by the League, the Clubs, DirecTV, NBC, CBS, Fox, ESPN, or the NFL Network as a result of offering NFL Sunday Ticket exclusively through a single provider or through DirecTV specifically.

20

**REQUEST FOR PRODUCTION NO. 71:**

All documents relating to the price of packaged television bundles offered by other professional sports leagues on DirecTV (e.g., MLB Extra Innings).

**REQUEST FOR PRODUCTION NO. 72:**

All documents or communications relating to the decision to offer NFL Sunday Ticket or any other NFL broadcasting rights on a non-exclusive basis in Canada or elsewhere outside the United States, and all documents relating to the price of packaged television bundles offered by DirecTV and other broadcasters in Canada or elsewhere outside the United States.

**REQUEST FOR PRODUCTION NO. 73:**

All documents or communications relating to competition for fans: (i) between the NFL (and its Clubs) and other professional sports leagues; (ii) between the NFL (and its Clubs) and other football leagues, including college football; (iii) between the NFL (and its Clubs) and any other sports league, professional or amateur; and (iv) between and amongst the individual NFL Clubs.

**REQUEST FOR PRODUCTION NO. 74:**

All documents or communications relating to any consideration whether to offer NFL Sunday Ticket or any other NFL broadcasting rights on a non-exclusive basis in the United States.

**REQUEST FOR PRODUCTION NO. 75:**

All documents or communications concerning competition for television viewership between NFL games and other television programming.

**REQUEST FOR PRODUCTION NO. 76:**

All documents or communications concerning the acquisition of DirecTV by AT&T that refer to or relate to the NFL, professional football games, or NFL Sunday Ticket.

21

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 77:**

Documents sufficient to show your policies and practices concerning the backup, archiving, retention, storage, destruction, disposal, or preservation of documents or ESI (including litigation hold policies and procedures).

**REQUEST FOR PRODUCTION NO. 78:**

Documents sufficient to identify and describe your computer hardware and systems, software, ESI, database, storage, backup and archiving systems and communications systems used in connection with the subject matter of this action.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and data received from any non-party that relates to this action.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and data exchanged with or generated by any witness who you anticipate will provide testimony in this action.

**REQUEST FOR PRODUCTION NO. 81:**

All documents concerning the compensation of any witness who you anticipate will provide expert testimony in this action.

**REQUEST FOR PRODUCTION NO. 82:**

All documents concerning facts, data, or assumptions relied on by any witness who you anticipate will provide expert testimony in this action.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and data that support your contention that the practices and agreements at issue in this action are pro-competitive.

**REQUEST FOR PRODUCTION NO. 84:**

All documents referenced in your initial disclosures.

**REQUEST FOR PRODUCTION NO. 85:**

All documents that support each affirmative defense asserted in your answer to Plaintiffs' consolidated amended complaint.

**REQUEST FOR PRODUCTION NO. 86:**

For each of the individuals you list in your initial disclosures that was or is employed by you, all documents sufficient to show:

    a. contact information, including all email addresses used by such persons for any business purposes, even if only sparingly;

    b. job descriptions; and

    c. dates of employment.

**REQUEST FOR PRODUCTION NO. 87:**

All documents produced and transcripts of any depositions taken in *U.S. v. Nat'l Football League*, Civil No. 12808 (E.D. Pa.).

**REQUEST FOR PRODUCTION NO. 88:**

All documents produced and transcripts of any depositions taken in *Shaw v. Dallas Cowboys Football Club*, Civil No. 97-5184 (E.D. Pa.).

**REQUEST FOR PRODUCTION NO. 89:**

All documents related to any lobbying or advocacy work done by any Person relating to the Sports Broadcasting Act or any proposed amendment to that Act.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and communications related to the possibility of amending the Sports Broadcasting Act to cover cable or satellite television.

**REQUEST FOR PRODUCTION NO. 91:**

Documents sufficient to identify subscriber-level data on viewership for all DirecTV subscriptions that were used to watch any NFL, MLB, NHL, or NBA game, reflecting the amount of time spent by each subscriber viewing any programming. Data should be provided on a time-series basis (at a monthly or higher frequency). The data should be subscriber-specific, but should assign an anonymous ID number to each subscriber, instead of revealing personal information (e.g., subscriber name, address).  For each subscriber, please include the following information:

7869473v1/014918

a.   Subscriber's zip code.

b.   DirecTV service purchased, including:

Type of service purchased;

Pricing of service;

Discounts applied to service, if any;

Date of purchase of service;

Date of cancellation of service, if any;

Date of service change, if any; and

Channels included in service.

c.   Any sports package purchased, including, but not limited to, NFL Sunday Ticket, MLB Extra Innings, NHL Center Ice, and NBA League Pass, including:

Type of package purchased;

Pricing of package;

Discounts applied to package, if any;

Date of purchase of package;

Date of cancellation of package, if any; and

Date of service change, if any.

d.   All viewing instances in chronological order, including:

Date and time of viewership;

Channel viewed;

Duration of viewership (hours or minutes); and

Location of viewing, if other than the subscriber's zip code.

**REQUEST FOR PRODUCTION NO. 92:**

Documents sufficient to show the cost of producing an individual NFL game broadcast.

**REQUEST FOR PRODUCTION NO. 93:**

All documents relating to any plan, proposed or realized, by a club or subset of clubs equaling less than the entirety of the NFL to independently broadcast live professional football games via television, radio, or the internet.

**REQUEST FOR PRODUCTION NO. 94:**

All documents, communications, studies, or reports regarding broadcasting arrangements or packages for other U.S. professional sports leagues, including, but not limited to, MLB, NHL, and NBA.

**REQUEST FOR PRODUCTION NO. 95:**

All documents, communications, and data relating to the audio-only broadcasting of NFL games, including but not limited to contracts entered into by individual NFL teams, licensing agreements with radio stations, and data relating to pricing and number of listeners.  This request includes, but is not limited to, radio broadcasts, satellite radio broadcasts, and internet radio broadcasts.

**REQUEST FOR PRODUCTION NO. 96:**

All documents, communications, studies, or reports regarding the broadcasting of collegiate football, including but not limited to analyses of the effect of non-exclusive licensing agreements on viewership, pricing, quality of broadcast, and any other relevant metrics.

**REQUEST FOR PRODUCTION NO. 97:**

All documents, communications, studies, or reports relating to the effect of exclusive distribution agreements on quality of broadcasts.

**REQUEST FOR PRODUCTION NO. 98:**

The complete historical records of the NFL's Broadcasting Committee, including, but, not limited to, all minutes of meetings of the Committee.

**REQUEST FOR PRODUCTION NO. 99:**

All documents created by or related to the special committee created under the NFL's 2004 Resolution BV-4 concerning revenue and cost-sharing alternatives.

7869473v1/014918

**REQUEST FOR PRODUCTION NO. 100:**

All documents created by or related to the NFL's Long Range Planning Committee concerning media rights or revenue-sharing.

**REQUEST FOR PRODUCTION NO. 101:**

All documents created by or related to the NFL's finance committee concerning media rights or revenue-sharing.

**REQUEST FOR PRODUCTION NO. 102:**

All documents related to NFL RedZone or DirecTV's Red Zone channel (hereafter, "either product"), including documents relating to:

    a.    Any analysis, report, study, or communication about either product's creation;

    b.    Any analysis, report, study, or communication about the cost of creating, producing, distributing, broadcasting, or otherwise making either product available;

    c.    Any analysis, report, study, or communication about either product's effect on NFL viewership, generally, and NFL Sunday Ticket viewership and subscription to the NFL Sunday Ticket package, specifically;

    d.    Any analysis, report, study, or communication about either product's effect on advertising rates; and

    e.    Any analysis, report, study, or communication regarding the distribution of either product or similar products on different platforms, including mobile or the internet.

**REQUEST FOR PRODUCTION NO. 103:**

All documents related to NFL Game Pass, including documents relating to:

    a.    Any analysis, report, study, or communication about its creation;

    b.    Any analysis, report, study, or communication about the cost of creating, producing, distributing, broadcasting, or otherwise making Game Pass available;

c.     Any analysis, report, study, or communication about its effect on NFL viewership, generally, and NFL Sunday Ticket subscriptions or viewership, specifically;

d.     Any analysis, report, study, or communication about its effect on fan interest or loyalty;

e.     Any analysis, report, study, or communication about its effect on coverage of the NFL by any entity, including but not limited to television, print, and internet media coverage of the NFL; and

f.     Any analysis, report, study, or communication regarding the distribution of Game Pass or similar products on any platform.

**REQUEST FOR PRODUCTION NO. 104:**

All documents relating to the NFL's current and prior negotiations with CBS, Fox, ESPN/ABC/Disney, NBC, Amazon, and any other potential partners for TV rights to broadcast NFL games.

Dated:  January 22, 2021                    Respectfully submitted,

MARC M. SELTZER
SUSMAN GODFREY L.L.P.

SCOTT MARTIN
IRVING SCHER
HAUSFELD LLP

HOWARD LANGER
EDWARD DIVER
PETER LECKMAN
LANGER GROGAN AND DIVER PC

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
SUSMAN GODFREY LLP

1

1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

2

3

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

4

5

6

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200/Fax: (202) 540-7201

7

8

9

10

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

11

12

13

14

15

16

By:     /s/ *Marc M. Seltzer*
         Marc M. Seltzer

17

Plaintiffs' Interim Co-Lead Class Counsel

18

19

20

21

22

23

24

25

26

27

28

28

## **PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 1400, Los Angeles, California 90067-6029.

On January 22, 2021, I served the foregoing document(s) described as follows:

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO NFL DEFENDANTS**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

**See Attached Service List**

____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

_____ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

_____ BY FAX
I served by facsimile as indicated on the attached service list.

_XX_ BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on January 22, 2021, at Los Angeles, California.

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_XX_ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_Helen Danielson_____
(Type or Print Name)

_____
(Signature)

29

7869473v1/014918

# SERVICE LIST

Michael E. Baumann
michael.baumann@kirkland.com
Robyn E. Bladow
robyn.bladow@kirkland.com
Melissa D. Ingalls
melissa.ingalls@kirkland.com
Tammy A. Tsoumas
tammy.tsoumas@kirkland.com
KIRKLAND & ELLIS LLP
333 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Counsel for Defendants DirecTV LLC and DirecTV Holdings LLC*

Gregg H. Levy
glevy@cov.com
Derek Ludwin
dludwin@cov.com
John Playforth
jplayforth@cov.com
COVINGTON & BURLING LLP
850 Tenth Street NW One City Center
Washington, DC 20001-4956
Telephone: (202) 622-5292
Facsimile: (202) 662-6804

Neema Trivedi Sahni
nsahni@cov.com
COVINGTON & BURLING LLP
2029 Century Park East Suite 3100
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4782

Roxana C. Guidero
rguidero@wildinsonstekloff.com
Beth A. Wilkinson
bwilkinwon@wilkinsonstekloff.com
Rakesh Kilaru
rkilaru@wilkinsonstekloff.com
Brian L. Stekloff
bstekloff@wilkinsonstekloff.com
Jeremy S. Barber
jbarber@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
2001 M Street NW, Suite 10th Floor
Washington, DC 20036
Telephone: (424) 291-9661

*Counsel for Defendants National Football League, Inc. and NFL Enterprises LLC and the Individual NFL Clubs*

7869473v1/014918