Beth Wilkinson (admitted *pro hac vice*)
Brian Stekloff (admitted *pro hac vice*)
Rakesh Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION,<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS. | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING THE NFL DEFENDANTS' MOTION TO COMPEL COMMERCIAL PLAINTIFFS TO RESPOND TO INTERROGATORY NO. 10**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: 5/17/2022, 10:00 a.m.<br><br>Discovery Cutoff Date: 8/5/2022<br>Pretrial Conference Date: 2/9/2024<br>Trial Date: 2/22/2024 |

## TABLE OF CONTENTS

I. PRELIMARY STATEMENTS ................................................................. 1

    A. NFL DEFENDANTS' PRELIMINARY STATEMENT ..................... 1

    B. PLAINTIFFS' PRELIMINARY STATEMENT ................................. 2

II. DISCOVERY REQUESTS AND RESPONSES IN DISPUTE .................... 3

III. PARTIES' CONTENTIONS ..................................................................... 3

    A. NFL DEFENDANTS' STATEMENT ................................................ 3

        1. Factual and Procedural Background ........................................ 3

        2. Legal Standard ........................................................................ 5

        3. Commercial Plaintiffs must respond to this Plainly Relevant Interrogatory ........................................................... 5

        4. Conclusion ............................................................................... 9

    B. PLAINTIFFS' STATEMENT ............................................................. 9

        1. Downstream Discovery is Highly Disfavored ........................ 9

        2. NFL Defendants Seek Discovery of Downstream Data That Do Not Exist and Would be Unduly Burdensome, If Even Possible, to Create ................................. 10

        3. Interrogatory No. 10 Seeks Irrelevant Downstream Data ........................................................................................ 12

        4. Conclusion ............................................................................. 14

i

Case No. 2:15-ml-02668-PSG (JEMx)      Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, the NFL Defendants and Plaintiffs Ninth Inning Inc., dba The Mucky Duck, and 1465 Third Avenue Restaurant Corp., dba Gael Pub (collectively, the "Commercial Plaintiffs") submit the following joint stipulation regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10, which was served on Commercial Plaintiffs via the NFL Defendants' First Set of Interrogatories on November 29, 2021.

## I.   PRELIMARY STATEMENTS

### A.   NFL DEFENDANTS' PRELIMINARY STATEMENT

Commercial Plaintiffs have taken the unreasonable position that they are not required to respond to an interrogatory that requests relevant information. Specifically, the NFL Defendants served an interrogatory that seeks to have each Commercial Plaintiff identify both the approximate amount of revenue generated on each day of the week and the day of the week on which they generated the most revenue. Interrogatory No. 10, the NFL Defs.' First Set of Interrogatories to Commercial Plaintiffs [Ex. A.]. This information is relevant to issues related to both class certification and the merits. Among other things, the role (if any) that NFL Sunday Ticket played in generating the revenues obtained by the Commercial Plaintiffs goes to their adequacy as class representatives and the proper market definition for their claims.

To date, Commercial Plaintiffs have refused to respond to this Interrogatory, relying on cases that suggest that discovery of "downstream" revenue data is precluded when it is sought to be used to support a "pass-on" defense—*i.e.*, a defense that claims that plaintiffs are not harmed because they passed the cost of the alleged overcharge on to the end consumer. The NFL Defendants, however, are not seeking this discovery in support of a potential "pass-on" defense. Instead, the Interrogatory seeks information relevant to other purposes, including class certification and the merits of the case, and thus is proper.

1

Case No. 2:15-ml-02668-PSG (JEMx)         Joint Stipulation Regarding the NFL Defendants' Motion to
                                          Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

The NFL Defendants respectfully request that the Court compel Commercial Plaintiffs to respond to Interrogatory No. 10.

### B. PLAINTIFFS' PRELIMINARY STATEMENT

Downstream discovery into class representatives' business matters is highly disfavored in principle; it does not turn merely on the presence of a "pass-on" defense. The Supreme Court, appellate courts, and trial courts have repeatedly warned against the potential chilling impact such discovery can have on the important role of private enforcement of the antitrust laws. That case law is legion, and the NFL Defendants rely instead on outlier (or inapplicable) cases.

Here, the presumption against such downstream discovery is particularly apt, and the NFL Defendants' attempts to justify it are particularly strained. In the first instance, the NFL Defendants seek *daily* revenue information concerning these small neighborhood bars over an eleven-year class period, which the class representatives do not maintain in any manner that would allow for reasonable summary. It would be enormously burdensome—and potentially impossible, in some places, based on present accounting records—to perform the requested calculations and supply this information.

And even assuming that the NFL Defendants' interrogatory could be answered with reasonable confidence in approximations (which, by all appearances, it cannot), the burden would be undue and disproportionate because the information sought lacks relevance. This is an antitrust **overcharge** case. Whether Commercial Plaintiffs' purchases of Sunday Ticket increased their revenue is immaterial: they were harmed because they paid more than they would have but for the NFL Defendants' anticompetitive agreements. Finally, the NFL Defendants' argument that daily revenue figures for the two bars are relevant for antitrust market definition is logically flawed and a throwaway at best considering the Ninth Circuit's statements concerning the relevant market here.

2

Case No. 2:15-ml-02668-PSG (JEMx)   Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

## II. DISCOVERY REQUESTS AND RESPONSES IN DISPUTE

Pursuant to Local Rule 37-2.1, the interrogatory at issue (Interrogatory No. 10) and Commercial Plaintiffs' responses to that interrogatory are copied verbatim below.

INTERROGATORY NO. 10

Identify the approximate amount of revenue generated on each day of the week and identify the day of the week that Your establishment generated the most revenue.

GAEL PUB'S RESPONSE TO INTERROGATORY NO. 10

Gael Pub objects to this Interrogatory as "downstream," overly broad, unduly burdensome, and not seeking information relevant to any party's claims or defense in this litigation. Gael Pub will not provide information concerning "downstream" discovery in response to the Interrogatories.

MUCKY DUCK'S RESPONSE TO INTERROGATORY NO. 10

Mucky Duck objects to this Interrogatory as "downstream," overly broad, unduly burdensome, and not seeking information relevant to any party's claims or defense in this litigation. Mucky Duck will not provide information concerning "downstream" discovery in response to the Interrogatories.

## III. PARTIES' CONTENTIONS

### A. NFL DEFENDANTS' STATEMENT

#### 1. Factual and Procedural Background

On November 29, 2021, the NFL Defendants served their First Set of Interrogatories on Commercial Plaintiffs. Declaration of Justin Mungai in Support of the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10 ("Mungai Decl."); Ex. A. Commercial Plaintiffs requested an extension to provide their responses, which the NFL Defendants granted as a courtesy. Commercial Plaintiffs thereafter responded to the First Set of Interrogatories on January 24, 2022. Mungai Decl.; Mucky Duck Responses to NFL

3

Defs.' First Set of Interrogatories [Ex. B.]; Gael Pub Responses to NFL Defs.' First Set of Interrogatories [Ex. C.].  That response included numerous evasive and incomplete responses to several interrogatories.[1]

On February 9, 2022, the NFL Defendants served a letter to the Commercial Plaintiffs, pursuant to Local Rule 37-1, pointing out the deficiencies in their responses.  Mungai Decl.; 2022.02.09 NFL Defs.' Letter to Plfs [Ex. D.]. During a subsequent meet and confer, Plaintiffs agreed to provide amended responses by February 25, 2022,

Plaintiffs, however, delayed even further and ultimately did not serve their amended responses until March 7, 2022.  Mungai Decl.; Mucky Duck Amended Responses to NFL Defs.' First Set of Interrogatories [Ex. E.], Gael Pub Amended Responses to NFL Defs.' First Set of Interrogatories [Ex. F.].  The amendments did not cure the problems, prompting the NFL Defendants to serve yet another letter to Commercial Plaintiffs pursuant to Local Rule 37-1 on March 15, 2022.  Mungai Decl.; 2022.03.15 NFL Defs.' Letter to Plfs. [Ex. G.]

The parties met and conferred again on March 22, 2022.  In the interest of streamlining the areas for dispute, the NFL Defendants addressed the sufficiency of Commercial Plaintiffs' responses to only two interrogatories—Interrogatory Nos. 9 and 10.  Commercial Plaintiff Mucky Duck agreed to supplement its inadequate response to Interrogatory No. 9, which it did on April 1, 2022.[2]  Mungai Decl.; Mucky Duck Second Amended Responses to NFL Defs.' First Set of Interrogatories

---

[1] As one example, the NFL Defendants requested that Commercial Plaintiffs identify, on average, how many customers they had on each day of the week, the day of the week on which they had the most Customers, and their customers' television preferences and Club loyalties. Mucky Duck's initial response, which it has since supplemented, was simply that "the amount of customers [it] has at any given time varies all of the time."  Ex. B, Response to Interrogatory No. 9.

[2] Commercial Plaintiff Gael Pub had provided a more forthcoming response in its First Amended Response and did not further amend its response.

4

Case No. 2:15-ml-02668-PSG (JEMx)                    Joint Stipulation Regarding the NFL Defendants' Motion to
                                                     Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

[Ex. H.]. Both Commercial Plaintiffs refused to provide any supplemental response to Interrogatory No. 10.

Commercial Plaintiffs' failure to provide any response whatsoever to a legitimate interrogatory has left the NFL Defendants no choice but to seek court intervention to compel a response.

### 2. Legal Standard

Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009).

### 3. Commercial Plaintiffs must respond to this Plainly Relevant Interrogatory

The sole basis Commercial Plaintiffs provide for refusing to substantively respond to Interrogatory No. 10 is that it seeks "downstream data,"[3] and thus is categorically exempt from discovery. That refusal is unjustified. Notably, there are no decisions in this Circuit that support a categorical prohibition on the discovery of downstream data. Commercial Plaintiffs point to district court cases from other circuits in an attempt to justify their refusal, but, in the process, overread the holdings of those cases. Simply put, most of the cases on which Plaintiffs rely do *not* hold that discovery of "downstream data" is categorically prohibited. Instead, they stand merely for the proposition that such information is not relevant where it is being

---

[3] The NFL Defendants understand "downstream" data to refer to information regarding Plaintiffs' activities that are not directly related to Defendants or the alleged antitrust violation.

5

Case No. 2:15-ml-02668-PSG (JEMx)   Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

sought in support of an argument that an antitrust defendant should be free from liability if the alleged overcharge has been passed on to third parties. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 299–301 (D.D.C. 2000) (holding that downstream data is relevant where defendants "are not seeking discovery of this data in order to assert a pass-on defense."); *In re Solodyn (Minocycline Hydrochloride) Antitrust. Litig.*, No. 14-2503-DJC, 2016 WL 6897809, at *1 (D. Mass. Sept. 19, 2016) (acknowledging that downstream data is discoverable where it is relevant to class certification or other issues in the case); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06–MD–1775, 2010 WL 4916723, at *2–3 (E.D.N.Y. Nov. 24, 2010) (explaining that courts disfavor downstream discovery where a defendant asserts a pass-on defense, but also recognizing certain exceptions where that evidence is relevant to specific issues in the case); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 498 (M.D. Pa. Feb. 17, 2005) (noting that downstream data is discoverable where a showing can be made that "some large subset of the class benefitted from the price fixing conspiracy, making their interests antagonistic to other class members.").[4]

Importantly, the NFL Defendants are not seeking this discovery in order to assert a pass-on defense. Therefore, the only pertinent question is "whether the requested [downstream] discovery [is] relevant to [other] issues of the case." *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 463 (D. Kan. 2006). Such information can be relevant where it bears on the issue of whether the interests of a putative class are substantially aligned with the interests of the class members whom they purport to represent under Rule 23. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d

---

[4] The prohibition on discovery related to a potential pass-on defense is grounded in the Supreme Court's decisions in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977), which only hold that an antitrust defendant is not absolved of antitrust liability where an alleged overcharge is passed on to consumers.

6

Case No. 2:15-ml-02668-PSG (JEMx)   Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

1181, 1193–94 (11th Cir. 2003) (noting that where some "class members would have experienced a net gain from the conduct alleged to be wrongful in this instance[,] it is highly likely . . . that the economic interests of these putative class members would be substantially in conflict with the interests of the named representatives who did not experience a net gain from the defendants' conduct").

That logic applies here: the revenue information requested is important to assess whether Commercial Plaintiffs "experienced a net gain" from the alleged antitrust violation, in comparison to other commercial establishments that were smaller in size or did not have the capability to display multiple games or to accommodate more customers, and thus may have been harmed. *See Valley Drug*, 350 F.3d at 1196 ("Rule 23(a)(4) does not permit a class to be certified under such circumstances because it would be impossible for the named representatives to 'vigorously prosecute the interests of the class' if significant members in the class[, including the named representatives themselves,] actually experience a net benefit from the conduct [they are] challeng[ing.]") (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.RD. 447, 456 (N.D. Ala. 2003)); *cf. In re Fresh and Process Potatoes Antitrust Litig.*, 2014 WL 12616658, at *2 (D. Idaho June 24, 2014) (permitting downstream discovery into customer purchasing decisions in order to determine if the class members were driven to purchase the potatoes for divergent reasons, potentially revealing misaligned interests).

Moreover, the requested revenue information is also relevant to market definition, and thus the merits. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal. 2014) (allowing downstream discovery because it was relevant to merits issues, including "injury, and to rebut any argument that competitor communications and price monitoring are indicative of an improper conspiracy"). The product market for antitrust purposes "must encompass the product at issue as well as all economic substitutes for the product." *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR, 2021 WL 4128925, at *81 (N.D. Cal.

7

Sept. 10, 2021) (citation omitted). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it," taking into account factors such as the product's characteristics and the customers of the product. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325–26(1962). Comparison of the amount of revenue earned on Sundays (when out-of-market NFL football games are shown on Sunday Ticket) versus other days of the week (when other entertainment or sports were available for customers on the establishments' televisions) is relevant to determining whether other television programming is substitutable for live NFL telecasts.

Given that the information requested is at least relevant for the two reasons detailed above, Commercial Plaintiffs should be required to respond to this Interrogatory. Despite boilerplate objections, Plaintiffs have made no showing of burden, nor can they. The Interrogatory is targeted, specific, and can be easily ascertained using Commercial Plaintiffs' records. *See In re Vitamins*, 198 F.R.D. at 301–02 (noting that the Court weighs the burden of responding to discovery with the relevance of the information sought). Were this Interrogatory burdensome, Plaintiffs could have detailed the extent of that burden in their responses, amended responses, or during the parties' two meet and confers, but they did not. Any attempt to allege burden now must be considered waived.[5]

Ultimately, to the extent Plaintiffs contend that the information requested is not relevant, such "a factual dispute . . . goes to the merits of the case and cannot be resolved on a discovery motion by this Court but only by the District Court on

---

[5] The NFL Defendants made clear to Commercial Plaintiffs that their responses need not reflect precise revenue earnings for the requested periods; rather, the NFL Defendants are primarily interested in average revenues over time, which will give the NFL Defendants a sense of what days of the week Commercial Plaintiffs generate most of their revenue. This information can be presented by quarter for the duration of the Class Period.

8

Case No. 2:15-ml-02668-PSG (JEMx)   Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

summary judgment or at trial." Minutes Order re Plfs.' Motion to Compel Production of Documents by Non-Party Charter Communications, Inc. (Dkt. No. 403 at 6). "[N]either party can prove or disprove [relevance] at this point[,]" but the NFL Defendants require the information to "conduct their analyses," as described above. *Id.* Accordingly, the Court should hold that the requested revenue information is relevant for discovery purposes here.

### 4. Conclusion

For these reasons detailed above, The NFL Defendants respectfully request that the Court compel Commercial Plaintiffs to respond to Interrogatory No. 10. Given the minimal burden associated with responding to this Interrogatory, the NFL Defendants respectfully request that the Court compel these responses within ten (10) days of the Court's hearing on this motion.

### B.    PLAINTIFFS' STATEMENT

#### 1.    Downstream Discovery is Highly Disfavored

The NFL Defendants here merely knock down their own straw man. Contrary to the NFL Defendants' implication, the presumption against downstream discovery in antitrust class actions is not limited to the question of passing-on of damages. Courts disfavor such fishing expeditions in general. "[L]ower courts have, for the most part, found downstream information to be non-discoverable, whether for market definition, class certification, damages, or indirect purchaser issues." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. 12-md-02328, Docket No. 174 at 14-15 (E.D. La. Nov. 6, 2012) (Vance. J.).[6] Notably, the Supreme Court has admonished

---

[6] *See also In re Niaspan Antitrust Litig.,* No. 13-MD-2460, 2015 WL 4197590, at *1 (E.D. Pa. July 9, 2015) (denying downstream motion to compel noting "that courts and juries will not be forced down the rabbit hole of hypothetical issues antitrust violators may raise to minimize their liability") (quoting *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-MD-2343, 2014 WL 2002887, at *5 (E.D. Tenn. May 15, 2014)); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-01775, 2010 WL 4916723, at *4 (E.D.N.Y. Nov. 4, 2010) (rejecting effort to obtain discovery of

9

that diversions into downstream inquiries have the potential to "substantially reduce[]" the effectiveness of antitrust actions. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-94 (1968); *see also Meijer Inc. v. Abbott Laboratories*, 251 F.R.D 431, 434 (N.D. Cal. 2008) (noting the "potential deterrent effect" of permitting fishing expeditions into plaintiffs' downstream data).

Accordingly, at least one court has expressly held that "[d]efendants … have a very high standard to meet to establish the right to seek downstream discovery." *In re K-Dur Antitrust Litig.*, No. CIV-01-1652 (JAG), 2007 WL 5302308, at *14 (D.N.J. Jan. 2, 2007); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7-8 (E.D. Pa. May 26, 2006) (declining to "depart from the longheld practice of proscribing discovery of downstream data"). The NFL Defendants here fail to satisfy their substantial burden.

## 2. NFL Defendants Seek Discovery of Downstream Data That Do Not Exist and Would be Unduly Burdensome, If Even Possible, to Create

As a threshold matter, Commercial Plaintiffs can only respond to discovery requests with information in their possession, custody, or control. Commercial Plaintiffs are small local sports bars that do not maintain revenue matrices and have not tracked daily revenues generated throughout the class period in a way that would

---

plaintiffs' pricing and methods of determining downstream pricing and recognizing the myriad cases that have denied downstream discovery); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 WL 1479819, at *7-8 (E.D. Pa. May 26, 2006) (precluding downstream discovery relating to market conditions, nature of industry and damages); *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 369 (D. Mass. 2004) ("*Hanover Shoe* precludes not only the "passing on" defense, but also the subtle variation . . . which might be termed the "otherwise benefiting" defense") (citing *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 884–85 (10th Cir.1997); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn. 1990) (holding that plaintiffs' downstream data were irrelevant because plaintiffs were seeking overcharge damages, not damages based on their lost profits or lost sales).

10

Case No. 2:15-ml-02668-PSG (JEMx)     Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

readily enable a response to the NFL Defendants' Interrogatory No. 10. Requiring Commercial Plaintiffs to attempt to construct daily approximations through deposit records and other information would be an unreasonable burden to impose here.[7]

NFL Defendants *assume* that the Commercial Plaintiffs can "easily" calculate revenue earnings for the entirety of the eleven-year class period by day of the week and, from those calculations, determine which day of the week generated the most revenue. But the Commercial Plaintiffs have no business reason to have maintained their accounting in this way (comparing revenue, by day of the week, for 11 years), nor would it be a small task to amass all of their accounting records and attempt these types of calculations. One of the two Commercial Plaintiffs is no longer an ongoing concern, and both small businesses have piecemeal accounting records that would require considerable effort to reassemble in the precise manner that the NFL Defendants insist on.

It is no solution either that the NFL Defendants are "interested in average revenues . . . for the duration of the Class Period." *Supra* at 8 n. 5. The investigative work and forensic accounting would be much the same, and the Commercial Plaintiffs doubt that their present records, when stitched together, would even supply the raw data needed to calculate average revenues, by day, for the whole class period. NFL Defendants do not seem to comprehend the enormity of the task and what it would take for these small businesses to provide what the NFL Defendants seek.

---

[7] The NFL Defendants make a meritless assertion that Commercial Plaintiffs' burden argument has somehow been waived because it was not raised in the *meet and confer* sessions regarding Interrogatory No. 10. Commercial Plaintiffs objected on burden grounds in each of its responses and supplemental responses, as the responses above reflect. The NFL Defendants never sought to confer on that point because Commercial Plaintiffs declined production flatly on the NFL Defendants' failure to meet their high burden.

11

Case No. 2:15-ml-02668-PSG (JEMx)    Joint Stipulation Regarding the NFL Defendants' Motion to
                                     Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

### 3. Interrogatory No. 10 Seeks Irrelevant Downstream Data

#### a. The NFL Defendants' Overcharges Benefited No One

There is also no merit to the NFL Defendants' assertion that the downstream information here is relevant to assess whether the class representatives "experienced a net gain" compared to "other commercial establishments that were smaller in size or did not have the capability to display multiple games or to accommodate more customers." *Supra* at 7:7-10. Contrary to the NFL Defendants' argument, whether the class representatives' revenues increased because they purchased Sunday Ticket does not create a class certification concern. Indeed, it stands to reason that every entity purchasing Sunday Ticket for its business did so because it anticipated doing so would add to the bottom line. Nor does that dynamic mitigate an antitrust overcharge; every intermediate commercial buyer of goods and services strives to make a profit downstream, and doing so does not disqualify them as victims of antitrust violations upstream. *See Hanover Shoe*, 392 U.S. at 494-95; *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729-30 (1977); *In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2015 WL 4197590, at *1 (E.D. Pa. July 9, 2015) (recognizing that once a supplier sells a product at an anticompetitive price "the injury [is] complete") (quoting *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-MD-2343, 2014 WL 2002887, at *5 (E.D. Tenn. May 15, 2014)).

The relevant question is not whether the product purchased might have facilitated profits down the line (all businesses hope to recoup their input costs), but rather whether the *anticompetitive conduct* benefited class members differently. Here, the named class representatives and the class members they represent seek recovery of an overcharge, not lost profits. Regardless of their respective revenues, their interests are aligned because they all paid more than they would have for Sunday Ticket in the absence of the supracompetitive conspiratorial price.

The NFL Defendants fundamentally misapply the principal case on which they rely for their class certification relevance argument, *Valley Drug Co. v. Geneva*

12

Case No. 2:15-ml-02668-PSG (JEMx)    Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

*Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003). *Valley Drug* involved an agreement by a brand-name drug manufacturer with a generic company to delay the generic's entry into the market. In denying class certification, the court found the potential for the requisite "fundamental" conflict going to the specific issues in controversy because national wholesalers sold "their products on a 'cost-plus' basis pursuant to which they charge the same percentage mark-up from their acquisition cost on both branded and generic drugs." *Valley Drug*, 350 F.3d at 1190.

As the Eleventh Circuit panel observed in *Valley Drug*, "[a] fundamental conflict exists where some party members claim to have been harmed by the same **conduct** that benefitted other members of the class." 350 F.3d at 1189 (emphasis added). The national wholesalers benefited from the challenged conduct itself – the agreement to forestall generic entry – because they were able to sell more branded drugs, with a higher base price for the percentage mark-up than generics. In contrast, regional wholesalers who did not sell on a "cost-plus" basis were not similarly benefited, and indeed were harmed, by the agreement. *Id.* at 1190-93. *Valley Drug* is the exceptional case where the challenged conduct yielded a specific benefit to some.

Not so here. The named class representatives, like every subscriber in the commercial class, are alleged to have suffered an *overcharge* on Sunday Ticket; there were no windfalls or "winners" from the challenged conduct, only losers. The revenue information sought would provide no insight into any purported class conflict whatsoever.

### b. The Revenue Information Sought Cannot Inform Market Definition

The NFL Defendants' argument that this revenue information is necessary for market definition is similarly incoherent. Even if Commercial Plaintiffs went to great lengths to supply the information sought, that day-by-day revenue comparison

13

would tell us nothing about "whether other television programming is substitutable for live NFL telecasts." *Supra* at 8:9-10.

People go to Commercial Plaintiffs' establishments—and spend money there—for many reasons, not just because of what is on television. The Mucky Duck, for example, features darts and pool and even hosts San Francisco Dart League games. Monday nights are "industry nights," with specials for hospitality workers. From time to time, specific fundraisers and benefits have likewise drawn in crowds. While it was in business, Gael Pub hosted live music and had "the best trivia in NYC," according to *New York Magazine*. For all of these reasons, "[c]omparison of the amount of revenue earned on Sundays (when out-of-market NFL football games are shown on Sunday Ticket) versus other days of the week (when other entertainment or sports were available for customers on the establishments' television" *cannot* "determin[e] whether other television programming is substitutable for live NFL telecasts." *Supra* at 8:5-10. Gross revenue data would only show how much these businesses brought in from their operations (and attractions) in total.

The NFL Defendants' insistence on detailed plaintiff revenue information for purposes of market definition (purportedly to demonstrate that "other entertainment or sports" are substitutes for NFL games) is untenable for another reason too. The Ninth Circuit has already held—in this case—that "fans do not consider NFL games to be comparable to other sports or forms of entertainment." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1155 (9th Cir. 2019) (*citing L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1393 (9th Cir. 1984). That should end the discussion.

### 4. Conclusion

For the foregoing reasons, Commercial Plaintiffs respectfully request that the Court deny NFL Defendants' motion to compel a response to Interrogatory No. 10.

14

Case No. 2:15-ml-02668-PSG (JEMx)     Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

Dated:  April 26, 2022

By: */s/ Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

By: */s/ Marc M. Seltzer*
MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004

15

Case No. 2:15-ml-02668-PSG (JEMx)    Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

Tel: (646) 357-1100
Fax: (212) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
TYLER FINN
tfinn@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200/Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

16

Case No. 2:15-ml-02668-PSG (JEMx)    Joint Stipulation Regarding the NFL Defendants' Motion to
Compel Commercial Plaintiffs to Respond to Interrogatory No. 10

*Attorneys for Plaintiffs' Co-Lead Counsel*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

17

Case No. 2:15-ml-02668-PSG (JEMx)     Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10