# EXHIBIT D



130 West 42nd Street, 24th Floor
New York, New York 10036

WWW.WILKINSONSTEKLOFF.COM
—
A LIMITED LIABILITY PARTNERSHIP

February 9, 2022

**VIA EMAIL**

Scott Martin
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004

**Re:** *In re National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)

Dear Scott:

The NFL Defendants write regarding Plaintiffs' Responses to NFL Defendants' First Set of Interrogatories to Residential and Commercial Plaintiffs (collectively "Plaintiffs"), received on January 24, 2022. The NFL Defendants are disappointed in Plaintiffs' evasive and incomplete answers to these Interrogatories, despite receiving two extensions to respond.

The NFL Defendants provide this letter pursuant to Local Rule 37-1 and request a response by February 16, 2022. We also propose a meet and confer to address the issues raised herein on February 18, 2022 at 12:00 PM. If that day does not work for you, please propose an alternative within the time-period allowed by Local Rule 37-1.

**Commercial Plaintiffs' Deficient Responses to Interrogatories Nos. 4, 5, 7, and 9**

Commercial Plaintiffs have failed to comply with their obligation to provide complete responses to Interrogatories Nos. 4, 5, 7, and 9, as required by Rule 33 of the Federal Rules of Civil Procedure. *See Rhoden v. Dep't of State Hosps.*, 2019 WL 316860, at *2 (E.D. Cal. Jan. 24, 2019) ("Parties are obligated to respond to interrogatories to the fullest extent possible under oath.") (citing Fed. R. Civ. P. 33(b)(3)).

Interrogatory No. 4

Interrogatory No. 4 requests that Commercial Plaintiffs identify the number of televisions in their establishments, the number of televisions that would show NFL games, including how many televisions would show NFL games at the same time when multiple games were on, and to identify how Commercial Plaintiffs would decide which games to show. Gael Pub responds that it had "up to seven" televisions during the Class Period, but does not identify the precise numbers and how those numbers varied during this time. We ask that Gael Pub supplement its response to identify the specific years it had seven televisions, and all other time periods where that number was different than seven, including the precise number of televisions during that time-period.

Mucky Duck's response to this Interrogatory is also incomplete. Mucky Duck states only that it had nine televisions "[f]or 10 years." That response fails to identify which ten years Mucky Duck is referring to and, given that Mucky Duck has been in operation for twenty-six years and the proposed class period runs for more than 10 years, Mucky Duck must supplement its response to provide a complete response. To the extent Mucky Duck had less or more than 9 televisions at any time period, Mucky Duck should identify the number of televisions it had and the time period it had that different number of televisions. Mucky Duck's response is also deficient because it does not identify which games Mucky Duck would decide to show when multiple games were available nor does it identify how many televisions would specifically show NFL games, *i.e.*, whether all televisions would be used for NFL games or whether NFL games would be shown alongside other sports or other entertainment programming. We request that Mucky Duck supplement its responses to provide this properly requested information.

Interrogatory No. 5

Interrogatory No. 5 requests that Commercial Plaintiffs identify how NFL games were marketed, whether any marketing materials specified a specific football club or clubs, and whether the marketing efforts included paid advertisements and social media posts. Gael Pub responded simply that "[i]t never paid for marketing" and "sporadically posted on social media, and a Bears pennant was displayed in the interior of the establishment." Publicly available social media posts demonstrate that specific football clubs were mentioned in its marketing materials, yet that information was left out of its responses to this interrogatory. Gael Pub should further supplement its response accordingly. Mucky Duck, on the other hand, failed to indicate one way or another whether its marketing materials specified any specific club or clubs or whether its marketing efforts included paid advertisements and social media. We request that Mucky Duck supplement its response to address these inquiries with the required specificity.

Interrogatory No. 7

Interrogatory No. 7 requests that Commercial Plaintiffs identify what other entertainment, sports, or television programming was displayed in their establishment, including the duration of those displays, the number of televisions that would feature those displays, and whether those displays were played alongside any NFL games. Mucky Duck failed to provide any specificity as to whether their televisions displayed other entertainment programming, or which sports it specifically displayed. Mucky Duck also failed to include in its response whether it displayed other entertainment or sports programming simultaneously alongside football games. Similarly, Gael Pub failed to include in its response whether it displayed other entertainment or sports programming alongside NFL games that did not feature the Chicago Bears. Publicly available social media posts make clear that the Gael Pub displayed baseball games at their establishment, yet that information is not reflected in its interrogatory response. We request that Commercial Plaintiffs supplement their responses to this Interrogatory.

Interrogatory No. 9

Interrogatory No. 9 requests that Commercial Plaintiffs identify, on average, how many customers their establishment had on each day of the week, "the day of the week in which [their] establishment had the most Customers, [their] Customers' television preferences, [and their] Customers' NFL Preferences and club loyalties, if any." This request seeks information that is plainly relevant to assessing the procompetitive effects of Sunday Ticket. Commercial Plaintiffs provided evasive and incomplete responses to this Interrogatory.

Rather than respond to the specific questions asked in the Interrogatory, Mucky Duck responded that the number of customers in its establishment "at any given time varies all of the time." This is not a valid response. The NFL Defendants seek easily ascertainable facts regarding Mucky Duck's customer base, which Mucky Duck is obligated to provide. Mucky Duck's objections are baseless, given that the NFL Defendants do not seek to assert a "pass-on" defense, nor has Mucky Duck explained why it would be burdensome to provide the information requested. Mucky Duck also failed to identify its customers' television preferences, club loyalties, and NFL preferences, if any.

While Gael Pub's response to this Interrogatory is more forthcoming than Mucky Duck's, it too requires supplementation. Gael Pub claims not to possess records that would identify the average number of customers on any given day of the week. However, specific records tracking customer counts are not necessary to respond to this Interrogatory. Gael Pub could simply use its sales/revenue records, for example, to derive an approximation of the average number of customers it had on particular days of the week. Providing those estimates would be responsive to this Interrogatory. Moreover, Gael Pub failed to identify which day of the week it had the most customers as well as its customers' television preferences. Again, specific records are not necessary to respond to this Interrogatory. That Gael Pub is no longer in operation does not excuse it from complying with its discovery obligations. And just like Mucky Duck, Gael Pub's other objections on the basis of "downstream discovery" and undue burden are similarly meritless.

We request that Commercial Plaintiffs supplement their responses to this Interrogatory.

**Commercial Plaintiffs' Refusal to Respond to Interrogatory No. 10**

Interrogatory No. 10 requests that Commercial Plaintiffs "identify the approximate amount of revenue generated on each day of the week and identify the day of the week that [their] establishment generated the most revenue." This information is relevant to class certification, among other things. Commercial Plaintiffs summarily object to Interrogatory No. 10 as "downstream," overly broad, and unduly burdensome, but fail to provide any specific justifications supporting their objections.

As an initial matter, it is not clear to the NFL Defendants that the requests seek "downstream" discovery, nor have Plaintiffs explained why that is the case, as they must. Therefore, objections on this basis are unavailing. However, even if this information sought was

"downstream" discovery, Commercial Plaintiffs are incorrect in their assertion that "downstream" discovery is categorically prohibited. Indeed, as one of the cases cited by the Commercial Plaintiffs in their response states, downstream data is not irrelevant where "defendants are not seeking discovery of this data in order to assert a pass-on defense." *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 299 (D.D.C. 2000). Rather, the proper inquiry is "whether the requested discovery [is] relevant to the issues of the case." *See In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 463 (D. Kan. 2006). Here, it undoubtedly is.

For example, courts have held that, for Rule 23 purposes, information pertaining to so-called "downstream" discovery should be disclosed where it bears on the issue of whether the interests of the named representatives of a putative class are substantially aligned with the interests of the class members whom they purport to represent. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1193–94 (11th Cir. 2003) (noting that where some "class members would have experienced a net gain from the conduct alleged to be wrongful in this instance[,] it is highly likely . . . that the economic interests of these putative class members would be substantially in conflict with the interests of the named representatives who did not experience a net gain from the defendants' conduct); *see also Urethane*, 237 F.R.D. at 463–64 (holding that downstream data is discoverable because it is relevant to class certification issues and the adequacy of named Plaintiffs as class representatives); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 103–04 (E.D.N.Y. 2012) (acknowledging that where Plaintiffs seek both damages and injunctive relief, conflict among class members and class members could potentially arise). And, as the Eleventh Circuit noted in *Valley Drug*, a court's decision "to permit 'downstream discovery' to determine whether a fundamental conflict exists among the class members does not conflict with the Supreme Court's concern that the ability of a party to assert a 'passing-on' defense might undermine a plaintiff's ability to recover[] damages by unduly complicating the issue of proof of damages." 350 F.3d at 1195.

Given the relevance of this information and the fact that Plaintiffs have failed to articulate with any specificity how responding to this Interrogatory is unduly burdensome or how it is overly broad, we ask that Plaintiffs supplement their response. To be clear, the NFL Defendants are not seeking granular revenue data through this Interrogatory. Rather, the NFL Defendants seek comparative data that shows the approximate revenue on each day of the week, in sum. In addition, the NFL Defendants specifically request that Commercial Plaintiffs identify which day of the week they tended to generate the most revenue, when in operation. Neither of these tasks are unduly burdensome or overly broad.

**Plaintiffs' Refusal to Provide Information on Class Representative Selection**

In its interrogatories, the NFL Defendants asked Plaintiffs to identify and describe how they "were selected to be a class representative in this case."[1] All Plaintiffs objected to this

---

[1] *See* Interrogatory No. 12 to Commercial Plaintiffs; Interrogatory No. 10 to Residential Plaintiffs.

4

Interrogatory, arguing that the attorney-client privilege and/or work product doctrine exempted disclosure.

As an initial matter, by failing to provide the bases for which the privilege is claimed, the subject matter of the withheld information, and any information sufficient to identify the withheld information, including the names of the persons or entities privy to such information, Plaintiffs fail to comply with Instruction No. 11 when lodging these objections. Moreover, Plaintiffs also fail to comply with Instruction No. 4, which directs Plaintiffs to respond to an interrogatory to the extent it is unobjectionable. Therefore, even if Plaintiffs are partially correct that this Interrogatory implicates some privileges, Plaintiffs are still obligated to respond to the Interrogatory with relevant information that does not implicate those privileges. That would include, for example, how Plaintiffs found out about the litigation (*e.g.*, did they view any non-privileged advertisements) and when they first communicated with Plaintiffs' counsel about the case, among other things. We request that Plaintiffs supplement their responses to this Interrogatory.

**Plaintiffs' Refusal to Provide Information on the Amount of Damages**

The NFL Defendants also asked Plaintiffs to "[s]tate the amount of damages, if any," that they seek and to "describe with specificity how these amounts were calculated."[2] Plaintiffs objected to this Interrogatory as premature and properly the subject of expert discovery, ignoring the fact that a party cannot "hid[e] behind the expert disclosure witness deadline" to avoid "timely respond[ing] to discovery in good faith." *Diversified Metal Prods., Inc. v. Bechtel Nat., Inc.*, 2011 WL 98540, at *5 (D. Idaho Jan. 6, 2011). Therefore, while it is true that precise damages calculations likely depend in large part on expert analysis, Plaintiffs are still obligated to provide a response to the Interrogatory to the best of their ability with the information they have available to them now. *See id.* For example, Plaintiffs can provide a generalized description of their theory of damages and how they expect that amount to be calculated, including the bases for that theory. Accordingly, the NFL Defendants request that Plaintiffs supplement their responses to this Interrogatory.

**Conclusion**

The NFL Defendants look forward to reaching an amicable resolution on these issues. Failure to respond or supplement Plaintiffs' responses may result in the NFL Defendants seeking relief from the court. The NFL Defendants reserve all rights.

Sincerely,

Justin Mungai

---

[2] *See* Interrogatory No. 13 to Commercial Plaintiffs; Interrogatory No. 11 to Residential Plaintiffs.

5

cc: Plaintiffs' Counsel (by email)

6