# EXHIBIT E

| | |
|---|---|
| Marc M. Seltzer (54534) | Howard Langer |
| mseltzer@susmangodfrey.com | hlanger@langergrogan.com |
| **SUSMAN GODFREY L.L.P.** | Edward Diver |
| 1900 Avenue of the Stars, Suite 1400 | ndiver@langergrogan.com |
| Los Angeles, CA 90067-6029 | Peter Leckman |
| Phone: (310) 789-3100 | pleckman@langergrogan.com |
| Fax: (310) 789-3150 | **LANGER GROGAN & DIVER, P.C.** |
| | 1717 Arch Street, Suite 4130 |
| Scott Martin | Philadelphia, PA 19103 |
| smartin@hausfeld.com | Tel: (215) 320-5660 |
| Irving Scher | Fax: (215) 320-5703 |
| ischer@hausfeld.com | |
| **HAUSFELD LLP** | |
| 33 Whitehall Street, 14th Floor | |
| New York, NY 10004 | |
| Tel: (646) 357-1100 | |
| Fax: (2121) 202-4322 | |

*Plaintiffs' Co-Lead Counsel*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668−PSG (JEMx) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **AMENDED RESPONSES OF NINTH INNING INC., DBA THE MUCKY DUCK TO NFL DEFENDANTS' FIRST SET OF INTERROGATORIES TO COMMERCIAL PLAINTIFFS** |
| | DATE:     March 7, 2022 |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Commercial Plaintiff, Ninth Inning Inc., dba The Mucky Duck ("Mucky Duck"), otherwise preserving all of its rights, hereby provides its amended objections and responses as follows to the First Set of Interrogatories ("Interrogatories") propounded by Defendants National Football League, NFL Enterprises, LLC, and the member Clubs (collectively, the "NFL Defendants"):

**GENERAL OBJECTIONS**

1. By responding to a particular Interrogatory, Mucky Duck does not accept, adopt, or concede the truth or validity of any characterization made in that Interrogatory.

2. These Responses and Objections are based upon Mucky Duck's present knowledge, information, and belief. Irrespective of whether Mucky Duck provides information in response to the Interrogatories, Mucky Duck reserves its rights (but does not assume any obligation): (i) to revise, correct, supplement, or clarify the content of these responses in accordance with the applicable rules; (ii) to provide additional responsive information in the future; and (iii) to object to further discovery in this matter.

3. Mucky Duck objects to the Interrogatories to the extent that they purport to require Mucky Duck to draw legal conclusions or are predicated upon legal conclusions or arguments. Subject to and without waiving any of its objections, the responses are not intended, and may not be construed, as an admission or legal conclusion.

4. Mucky Duck objects to the Interrogatories insofar as they seek "downstream" discovery, as such Interrogatories seek information that has no bearing on any claims or defenses in this litigation, are not reasonably calculated to lead to the discovery of admissible evidence, are overly burdensome and harassing, and are thus beyond the scope of permissible discovery. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.,* 15-cv-07488 (S.D.N.Y. June 21, 2017), ECF No. 276 (denying defendants' downstream document requests for sales data and distribution related materials); *In re Asacol Antitrust Litig.,* No. 15-cv-12730, 2017 WL 53695, at *5 (D. Mass. Jan. 4, 2017) (denying discovery into direct purchaser plaintiffs' "Sales, Pricing, and Premium information"); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,* No. 14-md-2503, 2016 WL 6897809, at *1 (D. Mass. Sept. 19, 2016) (denying motion to compel downstream discovery because it was not relevant to class certification or any other issues in the case); *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 221 (3d Cir. 2012) (plaintiffs' sales and profits not discoverable on adequacy of representation, damages and indirect purchaser issues); *In re Niaspan Antitrust Litig.*, No. 13-md-2460, 2015 WL 4197590, at *1 (E.D. Pa. July 9, 2015) (joining other courts in finding downstream discovery

irrelevant in both the direct purchaser and indirect purchaser cases); *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196, 2014 WL 764617, at *3-4 & 2012 WL 5970908 (N.D. Ohio Nov. 29, 2012) (upholding prior ruling barring downstream discovery because "the focus of this case is the manufacturing of foam, not the downstream use or resale of foam products"); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143, Docket No. 943 (N.D. Cal. Jul. 19, 2013) (motion for protective order granted where whatever minimal relevance of downstream discovery was substantially outweighed by burden on Direct Purchaser Plaintiffs); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. 12-md-02328, Docket No. 174 at 13-23 (E.D. La. Nov. 6, 2012) ("[L]ower courts have, for the most part, found downstream information to be non-discoverable, whether for market definition, class certification, damages, or indirect purchaser issues."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-01775, 2010 WL 4916723, at *4 (E.D.N.Y. Nov. 4, 2010) (rejecting effort to obtain discovery of plaintiffs' pricing and methods of determining downstream pricing and recognizing the myriad of cases that have denied downstream discovery); *In re Flat Glass Antitrust Litig. (II)*, No. 08-mc-00180, Docket No. 238 (W.D. Pa. Jan. 6, 2010) (motion to compel denied where downstream information was not relevant or necessary to determine class certification); *Meijer Inc. v. Abbott Labs*, 251 F.R.D. 431, 433-34 (N.D. Cal. 2008) (denying motion to compel documents in response to requests seeking downstream sales information); *In re Aspartame Antitrust Litig.*, No. 06-cv-01732, 2008 WL 2275528, at *4-6 (E.D. Pa. Apr. 8, 2008) (downstream information not discoverable on class certification and indirect purchaser issues); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 WL 1479819, at *7-8 (E.D. Pa. May 26, 2006) (precluding downstream discovery relating to market conditions, nature of industry and damages); *In re Pressure-Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 498 (M.D. Pa. 2005) (denying motion to compel plaintiffs' prices and methods to determine prices of downstream products); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 298-302 (D.D.C. 2000) (denying motion to compel documents regarding plaintiff's "use, manufacture, sale, marketing, distribution or supply of vitamins or vitamin-containing products"; "downstream" discovery not relevant to Direct Purchaser Plaintiffs' antitrust claims and benefit of such

3

discovery outweighed by burden or expense to plaintiff of providing such discovery). Mucky Duck will not provide information concerning "downstream" discovery in response to the Interrogatories.

5. Mucky Duck objects to the Interrogatories to the extent that they seek information protected from disclosure under the attorney-client privilege, the work product doctrine, or any other applicable privilege or evidentiary principle.

6. The foregoing General Objections and the Objections to Definitions below are incorporated into the Specific Responses and Objections below as if fully set forth in such Responses and Objections, and the Specific Responses and Objections are expressly subject to them. The failure to incorporate specifically a general response or objection, and the specific reiteration of a general response or objection in response to an Interrogatory, does not waive the response or objection with respect to other Interrogatories.

## OBJECTIONS TO DEFINITIONS

1. Mucky Duck objects to Definition No. 1 ("You") as vague and ambiguous, overly broad, and unduly burdensome, and because it calls for information that is not relevant to any of the claims or defenses in this action and calls for information that is not proportional to the needs of the case. Mucky Duck further objects to this definition to the extent it purports to require any attorneys, investigators, contractors, consultants, experts, other representatives, or any other persons acting or purporting to act on behalf of Mucky Duck to act separately or require Plaintiff to produce privileged or otherwise protected information within the possession, custody, or control of Plaintiff outside the scope of the Federal Rules of Civil Procedure.

2. Mucky Duck objects to Definition No. 8 ("Subscription Programming Services") as vague and ambiguous as to the phrase "other similarly situated subscription services."

3.      In response to Definition No. 5 ("Alleged Class Period"), Mucky Duck states that by responding to these Interrogatories as to the specified time period as defined by Defendants, Mucky Duck is not expressing any agreement that Defendants have correctly identified the relevant time period.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

For each month that you subscribed to Sunday Ticket, identify what package of Sunday Ticket you were subscribed to and how much you specifically paid for that package.  In responding to this Interrogatory, indicate those months that you were:

(a) A Full Price paying subscriber of Sunday Ticket;

(b) A paying subscriber of Sunday Ticket, but not paying Full Price for the package; and

(c) A non-paying subscriber of Sunday Ticket.

**RESPONSE:**

Without waiver of the foregoing specific objections or any General Objections Mucky Duck responds that, to the best of its knowledge, Mucky Duck was a Full Price paying subscriber and prices increased from year to year from at least 2009 through 2021.

**INTERROGATORY NO. 2:**

Describe with specificity the factor(s) You considered in deciding to subscribe to Sunday Ticket. To the extent Your response includes multiple factors, list them in order of importance.

**RESPONSE:**

Mucky Duck objects to this Interrogatory as vague and ambiguous as to the undefined term "factors".  Subject to and without waiving its objections, Mucky Duck responds that it had no alternative to deciding to subscribe to Sunday Ticket through DirecTV in order to receive out-of-market Sunday NFL games.

5

**INTERROGATORY NO. 3:**

Describe with specificity the factor(s) You considered in deciding to cancel your subscription to Sunday Ticket. To the extent Your response includes multiple factors, list them in order of importance.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as vague and ambiguous as to the undefined term "factors". Subject to and without waiving its objections, Mucky Duck responds that it is a seasonal DirecTV subscriber in order to obtain Sunday Ticket and has not cancelled its subscription.

**INTERROGATORY NO. 4:**

Identify the number of televisions in Your establishment, the number of televisions in Your establishment that show NFL games, including how many televisions would show NFL games at the same time when multiple games were on, and Identify how You would decide which games to show?

**RESPONSE**:

Mucky Duck objects to this Interrogatory as temporally vague and/or ambiguous. Subject to and without waiving its objections, Mucky Duck responds as follows: During the Class Period, there were 9 televisions in Mucky Duck which carried all games available through DirecTV.

**INTERROGATORY NO. 5:**

During the Alleged Class Period, identify how Your establishment marketed the NFL games it displayed, including but not limited to whether Your marketing materials specified a particular football club or club(s) and whether your marketing efforts included paid advertisements (for example through television, print, or the Internet) and social media posts.

**RESPONSE**:

Subject to and without waiver of its General Objections, Mucky Duck objects to this Interrogatory as temporally vague and/or ambiguous. Subject to and without waiving its objections, Mucky Duck used promotional materials from DirecTV and Mucky Duck's website promoting the Sunday Ticket.

6

**INTERROGATORY NO. 6:**

During the Alleged Class Period, identify whether Your establishment displayed multiple football games simultaneously through the Sunday Ticket package, and if so, include in Your response:

(a) the frequency with which you did so, for example, every Sunday of the month or otherwise; and

(b) the approximate number of games You would show on the Sundays that You did display multiple games through Sunday Ticket, for example, all games available on Sunday Ticket on any given Sunday, or approximately three games on any given Sunday available on Sunday Ticket.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as cumulative and temporally vague and/or ambiguous and as being Compound. Subject to and without waiver of its objections, Mucky Duck responds as follows:

a) Every Sunday game of the month

b) 3-9 games

**INTERROGATORY NO. 7:**

During the Alleged Class Period, identify what other entertainment, sports, or television programming Your establishment would display and include duration of those displays and on how many televisions that programming would be displayed. Include in Your response whether any of the programming described above was displayed at the same time as any NFL football games.

**RESPONSE**:

Subject to and without waiver of its General Objections, Mucky Duck responds as follows: Mucky Duck carried all sports available through DirectTV.

7

**INTERROGATORY NO. 8:**

Identify all sporting content that is displayed in Your establishment, including the Subscription Programming Service or any other medium used to acquire that content (for example, DirecTV, Hulu Sports, etc.). In responding to this Interrogatory, specify whether You subscribe to other Out-of-Market Sports Packages other than Sunday Ticket.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as temporally vague and/or ambiguous and Mucky Duck objects to this Interrogatory as being compound. Subject to and without waiver of its General Objections, Mucky Duck responds as follows: DirecTV.

**INTERROGATORY NO. 9:**

During the Alleged Class Period, identify, on average, how many customers you had on each day of the week, the day of the week in which Your establishment had the most Customers, Your Customers' television preferences, and Your Customers' NFL preferences and club loyalties, if any.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as "downstream," overly broad, unduly burdensome, and not seeking information relevant to any party's claims or defense in this litigation. Mucky Duck will not provide information concerning "downstream" discovery in response to the Interrogatories.

Subject to and without waiving its objections, Mucky Duck responds as follows: The amount of customers Mucky Duck has at any given time varies all of the time and Mucky Duck cannot make the generalizations sought by this interrogatory.

**INTERROGATORY NO. 10:**

Identify the approximate amount of revenue generated on each day of the week and identify the day of the week that Your establishment generated the most revenue.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as "downstream," overly broad, unduly burdensome, and not seeking information relevant to any party's claims or defense in this litigation. Mucky Duck will not provide information concerning "downstream" discovery in response to the Interrogatories.

**INTERROGATORY NO. 11:**

Identify how many years Your establishment has been in operation, and, if it is no longer in operation, identify the date operations ceased and identify the person who currently represents the interests of Your establishment.

**RESPONSE**:

Subject to and without waiver of its General Objections, Mucky Duck responds as follows: 26 years.

**INTERROGATORY NO. 12:**

Identify and describe how You were selected to be a class representative in this case.

**RESPONSE**:

Mucky Duck objects to this Interrogatory as seeking information protected from disclosure under the attorney-client privilege and/or the work product doctrine. Subject to and without waiving waiver of this objection or any of its General Objection, Mucky Duck responds that it did not respond, e.g., to a public advertisement for this litigation.

**INTERROGATORY NO. 13:**

State the amount of damages, if any, that You seek and describe with specificity how these amounts were calculated.

**RESPONSE**:

Mucky Duck objects to this Interrogatory insofar as it seeks information protected from disclosure under the attorney-client privilege, the work product doctrine, or any other applicable privilege or

9

evidentiary principle. Mucky Duck further objects to this Interrogatory as premature, and as seeking Mucky Duck's expert discovery and legal conclusions, and asserts that the determination of damages and the amount that Mucky Duck was overcharged as a subscriber to Sunday Ticket are properly the subject of expert analysis and testimony.

Dated: March 7, 2022

By:    */s/ Marc M. Seltzer*

Marc M. Seltzer
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Arun Subramanian
asubramanian@susmangodfrey.com
William Christopher Carmody
bcarmody@susmangodfrey.com
Seth Ard
sard@susmangodfrey.com
Edward Delman
edelman@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin
smartin@hausfeld.com

10

Irving Scher
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (SBN 77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (SBN 176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (SBN 184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard Langer
hlanger@langergrogan.com
Edward Diver
ndiver@langergrogan.com
Peter Leckman
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Co-Lead Plaintiffs Counsel*

11

# CERTIFICATE OF SERVICE

I, Farhad Mirzadeh, attorney at Hausfeld LLP, hereby certify that, on March 7, 2022, I caused the foregoing Responses of Ninth Inning Inc., dba The Mucky Duck, to NFL Defendants' First Set of Interrogatories to Commercial Plaintiffs to be served via email delivery on the following counsel:

Beth A. Wilkinson
Brian L. Stekloff
Rakesh N. Kilaru
Jeremy S. Barber
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy
Derek Ludwin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants
National Football League,
NFL Enterprises LLC,
and the Individual NFL Clubs*

12

Daniel M. Petrocelli
M. Randall Oppenheimer
O'MELVENY AND MYERS LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (213) 430-6407
dpetrocelli@omm.com
roppenheimer@omm.com

Katrina M. Robson
Ian Simmons
O'MELVENY AND MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
krobson@omm.com
isimmons@omm.com

*Counsel for Defendants DIRECTV, LLC and DIRECTV Holdings LLC*

Dated: March 7, 2022

By: */s/ Farhad Mirzadeh*
    Farhad Mirzadeh

13