Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER
PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NFL DEFENDANTS**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: 6/7/2022, 10:00 a.m.<br>Discovery Cutoff Date: 8/5/2022<br>Pretrial-Conference Date: 2/9/2024<br>Trial Date: 2/22/2024 |

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENTS...................................................................1

       A.     PLAINTIFFS' PRELIMINARY STATEMENT.................................1

       B.     THE NFL DEFENDANTS' PRELIMINARY STATEMENT ............3

II.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE....................6

III.   PARTIES' CONTENTIONS ........................................................................9

       A.     PLAINTIFFS' STATEMENT ..........................................................9

              1.    Factual and Procedural Background...........................................9

              2.    Legal Standard ........................................................................14

              3.    The NFL Defendants Must Produce Documents from
                    *USFL*........................................................................................15

              4.    The NFL Defendants Must Produce Documents from
                    *NFL Properties v. Dallas Cowboys*.........................................17

              5.    Conclusion ...............................................................................19

       B.     THE NFL DEFENDANTS' STATEMENT .....................................19

              1.    Factual Background ..................................................................19

              2.    Legal Standard ........................................................................23

              3.    Prior Litigation Materials From *USFL* Are Irrelevant
                    And Their Production Would Be Unduly Burdensome
                    And Not Proportionate To The Needs Of The Case ...............24

              4.    The NFL Has Conducted A Reasonable Search for
                    Deposition Transcripts and Expert Reports from *NFL
                    Properties*, And Cannot Be Ordered To Request Them
                    From Opposing Counsel..........................................................27

              5.    Conclusion ...............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Farber & Partners, Inc. v. Garber,*
    234 F.R.D. 186 (C.D. Cal. 2006) ........................................................................ 14

*Clark v. Vega Wholesale Inc.,*
    181 F.R.D. 470 (D. Nev. 1998) .......................................................................... 28

*Eon Corp. IP Holdings, LLC v. AT&T Mobility, LLC,*
    2013 WL 12234628 (D.P.R. July 16, 2013) ...................................................... 26

*Epic Games, Inc. v. Apple Inc.,*
    559 F. Supp. 3d 898 (N.D. Cal. 2021) .............................................................. 15

*Epstein v. MC, Inc.,*
    54 F.3d 1422 (9th Cir. 1995) ............................................................................. 23

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.,*
    2016 WL 6522808 (S.D. Cal. Nov. 3, 2016) ........................................... 18, 28, 29

*Foltz v. State Farm Mut. Auto Ins. Co.,*
    331 F.3d 1122 (9th Cir. 2003) ........................................................................... 26

*Insight Psych. and Addition, Inc. v. Cty. of Costa Mesa,*
    2021 WL 6102425 (C.D. Cal. Oct. 29, 2021) ................................................... 23

*Matosich v. Wright Medical Grp.,*
    2020 WL 2216864 (D. Mon. May 7, 2020) ...................................................... 25

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest.*
    *Employees Int'l Union,*
    212 F.R.D. 178 (S.D.N.Y. 2003) ....................................................................... 24

*Moi v. Chihuly Studio, Inc.,*
    846 F. App'x 497 (9th Cir. 2021) ..................................................................... 23

*NFL Properties, Inc. v. Dallas Cowboys Football Club,*
    922 F. Supp. 849 (S.D.N.Y. 1996) .............................................................. 17, 27

*Oahu Gas Serv., Inc. v. Pacific Res., Inc.,*
    838 F.2d 360 (9th Cir. 1988) .......................................................................... 5, 25

*Reinsdorf v. Skechers U.S.A., Inc.,*
   296 F.R.D. 604 (C.D. Cal. 2013) ................................................................24, 27

*Salazar v. McDonald's Corp.,*
   2016 WL 736213 (C.D. Cal. Feb. 25, 2016) ..........................................24, 25, 29

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
   157 F. Supp. 2d 561 (E.D. Pa. 2001) ..................................................................12

*Shaw v. Dallas Cowboys Football Club, Ltd.,*
   1998 WL 419765 (E.D. Pa. June 23, 1998) .......................................................10

*Soto v. City of Concord,*
   162 F.R.D. 603 (N.D. Cal. 1995) .......................................................................27

*Todd v. Exxon Corp.,*
   275 F.3d 191 (2d Cir. 2001) ...............................................................................25

*U.S.F.L. v. NFL,*
   644 F. Supp. 1040 (S.D.N.Y. 1986) ...................................................................15

*U.S.F.L. v. NFL,*
   842 F.2d 1335 (2d Cir. 1988) ......................................................................15, 24

*United States v. NFL,*
   116 F. Supp. 319 (E.D. Pa. 1953) ......................................................................10

*United States v. NFL,*
   196 F. Supp. 445 (E.D. Pa. 1961) ......................................................................10

*Valdez v. Genesis Healthcare LLC,*
   2021 WL 5989963 (C.D. Cal. Sept. 7, 2021) ..............................................14, 18

*Villery v. Crounse,*
   2021 WL 5040379 (E.D. Cal. Oct. 29, 2021) ....................................................14

**Rules**

Fed. R. Civ. P. 26 .............................................................................................4, 23, 24

Fed. R. Civ. P. 34 .........................................................................................14, 18. 19

Fed. R. Civ. P. 37 .................................................................................................1, 14

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, Plaintiffs and the NFL Defendants submit the following joint stipulation regarding Plaintiffs' Motion to Compel Production of Documents by the NFL Defendants.

## I.    PRELIMINARY STATEMENTS

### A.    PLAINTIFFS' PRELIMINARY STATEMENT

Plaintiffs bring this motion to compel the NFL to produce a narrow set of documents—largely deposition transcripts of NFL employees and expert reports—from two prior litigation matters that bear directly on this case and to which the NFL was a party. This motion comes after more than a year of negotiations, during which Plaintiffs' good-faith efforts to reach a compromise have been met with obfuscation and delay.

Plaintiffs first requested prior-litigation documents in February 2021 in their first set of requests for production. Plaintiffs requested documents from two cases, *U.S. v. Nat'l Football League*, Civil No. 12808 (E.D. Pa.) and *Shaw v. Dallas Cowboys Football Club*, Civil No. 97-5184 (E.D. Pa.). In subsequent requests, Plaintiffs sought similar documents from two additional cases that involved the NFL Defendants, *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.) and *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.). In the 15 months since those initial requests, the parties have met-and-conferred on the issue numerous times and Plaintiffs have offered to significantly narrow the scope of the requests—to include only deposition transcripts and expert reports. Yet the NFL has not produced any of the requested documents.

The NFL's responses to Plaintiffs' requests and compromise offers have shifted over time. Initially, the NFL refused to produce *any* documents from prior related litigation based on boilerplate objections of overbreadth, undue burden, and irrelevance. Then it changed tack. Instead of openly withholding responsive documents on the basis of their objections, the NFL agreed to conduct electronic

searches, but only of largely unrelated custodians (such as current employee emails despite the cases occurring several years ago) using search terms agreed upon for other purposes. This ploy achieved its intended effect, as the NFL's search methodology apparently yielded no responsive documents. Plaintiffs' review of the NFL's rolling productions indicates that no documents from the requested cases have been produced. Recognizing the deficiencies in the NFL's approach, Plaintiffs asked the NFL to request the documents from its in-house legal department and the attorneys who represented them in prior litigation—a more reasonable and direct method of document collection. The NFL refused.

Consequently, on March 18 Plaintiffs served the NFL with a joint stipulation for a motion to compel production of expert reports and deposition transcripts from the four cases identified in Plaintiffs' requests for production. Plaintiffs' motion identified the outside counsel who represented the League and Clubs in three of those cases, which is a matter of public record. Once served with a joint stipulation, the NFL changed tack again and agreed to contact the law firms identified by Plaintiffs. In response, Plaintiffs tabled the motion in hopes that the issue was finally resolved. At the subsequent meet-and-confer, the NFL represented that it had contacted the law firms and that two firms had located boxes containing documents from the pertinent cases.

Then the NFL Defendants reverted back to their familiar pattern of obfuscation and delay. First, the NFL asked for more time to investigate the scope of any protective orders in those cases. Plaintiffs agreed. Several weeks later, much to Plaintiffs' surprise, the NFL reversed its position as to *United States Football League v. Nat'l Football League*. The NFL now refuses to produce any documents from that case, on the basis of its original objections of relevance or proportionality—begging the question of why Plaintiffs were made to wait weeks for the NFL to locate the documents held by outside counsel and investigate the effect of protective orders. The NFL also refuses to contact the law firm who

represented the Dallas Cowboys in *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.* because Plaintiffs' requests for production were directed towards the League and not to the Club defendants—even where the Cowboys are a member club of the NFL and are represented in this very case by the same counsel.

In the two months that have passed since Plaintiffs served their initial joint stipulation, the NFL has agreed only to produce a limited set of materials from one of the four cases from which Plaintiffs requested documents.[1] Yet the transcripts and expert reports from the two cases from which the NFL refuses to produce documents, *United States Football League v. Nat'l Football League* and *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.* are demonstrably relevant to Plaintiffs' antitrust claims.

Plaintiffs are again left with no other option but to seek relief from the Court.

## B.    THE NFL DEFENDANTS' PRELIMINARY STATEMENT

It is important to clarify what this dispute is about.  Over the past year, Plaintiffs have served a number of requests seeking documents from four separate cases that are all more than 20 years old.  Since then, Plaintiffs appear to have dropped their request for documents from *United States v. Nat'l Football League*, Civil No. 12808 (E.D. Pa.), a case that is over 60 years old where the firms that represented the NFL no longer exist.  In an effort to avoid burdening this Court with another discovery dispute, the NFL agreed to produce deposition transcripts from the most recent of the remaining cases, *Shaw v. Dallas Cowboys Football Club*, Civil No. 97-5184 (E.D. Pa.).  Rather than accepting that compromise, Plaintiffs are now asking this Court to order the production of depositions and expert reports from the following two cases:

---

[1] The NFL's production of documents from two of the four cases cited in the original requests are no longer in dispute: the NFL represented that it could not locate any documents from *U.S. v. Nat'l Football League* and has agreed to produce documents from *Shaw v. Dallas Cowboys Football Club*.

- *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.)—a trademark (not antitrust) lawsuit against the NFL by one of its member clubs, filed over 27 years ago, where it is undisputed that the NFL's counsel no longer has any documents and Plaintiffs' request is for the NFL to request the documents from *opposing counsel* in that case, notwithstanding the existence of a protective order; and

- *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.)—a lawsuit against the NFL by a different sports league (not Sunday Ticket customers), filed more than 35 years ago, that is subject to a protective order that can be obtained only from the U.S. District Court for the Southern District of New York's offsite storage facility several months from now.

These requests stretch beyond any reasonable reading of Rule 26 and should be denied in full for several reasons.

*First*, collecting these materials poses substantial and unwarranted burdens. As to *NFL v. Dallas Cowboys*, Plaintiffs' request appears to be for the NFL to not only reach out to its *opposing* counsel, but also review any materials produced to determine whether they comply with a court order entered by a different court several decades ago. And as to the *USFL* case, Plaintiffs appear to be asking the NFL to burden the Southern District of New York's Clerk's Office by obtaining a protective order from the archives, and then scan and review 20 boxes of documents to determine if they contain relevant materials that can be produced consistent with that order. Plaintiffs' suggestion that the orders can be bypassed because they probably do not apply simply misapprehends how court orders work. And in any event, Plaintiffs cite no authority ordering production in such onerous circumstances.

*Second*, these burdens are unwarranted in light of the clear irrelevance of these documents. Again, the *Dallas Cowboys* and *USFL* cases are each over 25 years old, and both involved issues far afield from this case. *Dallas Cowboys* was a trademark dispute that did not involve antitrust claims, broadcasting, or Sunday Ticket. And the only similarity between this case and *USFL* is that both involved antitrust law.

4

1    Plaintiffs' suggestion that materials from *USFL*, which predates the existence of the
2    Sunday Ticket package, will somehow shed light on the relevant market in this case
3    borders on the absurd—market definition and market power are fact and context-
4    specific inquiries.  *Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360, 363-64
5    (9th Cir. 1988) ("The definition of the relevant market is basically a fact question
6    dependent upon the special characteristics of the industry involved.") (citation
7    omitted).  A mere glance at the media options available to a consumer today shows
8    that materials from over three decades ago are unlikely to shed any light on that
9    issue.

10        *Third*, the burdens are particularly unwarranted in light of Plaintiffs' approach
11   to this issue.  Plaintiffs initially issued a set of four discovery requests for all
12   materials from these cases, and after extensive meeting and conferring, Plaintiffs
13   agreed that it would be acceptable for the NFL to review documents in its own files
14   using search terms proposed *by Plaintiffs*.  Then, unsatisfied with the bargain they
15   struck, Plaintiffs filed yet another round of discovery requests, seeking to reopen the
16   same issues and continuing to press the issue even after the NFL agreed, in the spirit
17   of compromise, to make documents available from the *Shaw* case.  This type of sharp
18   discovery practice should not be rewarded.

19        The Court should deny Plaintiffs' request in full and prevent an unnecessary
20   and unwarranted fishing expedition for materials from old and irrelevant cases.

21
22
23
24
25
26
27
28

## II.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE

Pursuant to Local Rule 37-2.1, the discovery requests at issue and the NFL Defendants' responses to those requests are copied verbatim below.

**REQUEST FOR PRODUCTION NO. 109:**

All documents produced by any party and transcripts of any depositions taken in *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.).

**RESPONSE TO REQUEST NO. 109:**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly burdensome in its request for "all documents" produced in an entirely separate litigation; and (b) seeking production of information that is not relevant to any party's claim or defense; and (c) exceeding the relevant time period by requesting documents from approximately 25 years ago, which far predates the proposed start of the class period, and the burden of compiling and producing responsive documents is vastly disproportionate to the needs of this case.

Based on the foregoing General and Specific Objections, the NFL Defendants are unable to search for, collect, or produce documents responsive to this request at this time. The NFL Defendants are willing to meet and confer to determine if the request can be appropriately narrowed to allow the NFL Defendants to respond without undue burden.

**REQUEST FOR PRODUCTION NO. 110:**

All expert reports, settlement agreements, and non-privileged communications relating to *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.).

**RESPONSE TO REQUEST NO. 110:**

In addition to their previously stated General Objections, incorporated herein, the NFL Defendants specifically object to this request as (a) overbroad and unduly

1   burdensome in its request for "all . . . communications" relating to an entirely

2   separate litigation; and (b) seeking production of information that is not relevant to

3   any party's claim or defense; and (c) exceeding the relevant time period by

4   requesting documents from approximately 25 years ago, which far predates the

5   proposed start of the class period, and the burden of compiling and producing

6   responsive documents is vastly disproportionate to the needs of this case.

7   Based on the foregoing General and Specific Objections, the NFL Defendants

8   are unable to search for, collect, or produce documents responsive to this request at

9   this time. The NFL Defendants are willing to meet and confer to determine if the

10  request can be appropriately narrowed to allow the NFL Defendants to respond

11  without undue burden.

12  **REQUEST FOR PRODUCTION NO. 114:**

13  All expert reports served by any party in *United States Football League v.*

14  *Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.).

15  **RESPONSE TO REQUEST NO. 114:**

16  In addition to their previously stated General Objections, incorporated herein,

17  the NFL specifically objects to this request as (a) unduly burdensome; (b) seeking

18  production of documents that are not relevant to any party's claim or defense; (c)

19  exceeding the relevant time period by requesting documents from approximately 50

20  years ago, which far predates the proposed start of the Class Period; (d) seeking

21  documents that are potentially protected from disclosure by an operative protective

22  order in collateral litigation; and (e) seeking documents from an unrelated and

23  dissimilar case.

24  Subject to the foregoing General and Specific Objections, the NFL states that

25  it will conduct a reasonable search, using the agreed-upon search terms on only the

26  agreed-upon League custodians' files, for expert reports served by any party in

27  *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484

28

(S.D.N.Y.) and will produce any such expert reports that might be found provided their disclosure is not precluded by any operative protective order.

**REQUEST FOR PRODUCTION NO. 115:**

All deposition transcripts of persons who, at the time of the deposition, were employed by the NFL or a Club, affiliated with the NFL or a Club, or represented by the NFL's counsel in *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.).

**RESPONSE TO REQUEST NO. 115:**

In addition to their previously stated General Objections, incorporated herein, the NFL specifically objects to this request as (a) unduly burdensome; (b) seeking production of documents that are not relevant to any party's claim or defense; (c) exceeding the relevant time period by requesting documents from approximately 50 years ago, which far predates the proposed start of the Class Period; (d) seeking documents that are potentially protected from disclosure by an operative protective order in collateral litigation; and (e) seeking documents from an unrelated and dissimilar case.

Subject to the foregoing General and Specific Objections, the NFL states that it will conduct a reasonable search, using the agreed-upon search terms on only the agreed-upon League custodians' files, for deposition transcripts of NFL or Club employees in *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.), and will produce any such transcripts that might be found provided their disclosure is not precluded by any operative protective order.

**REQUEST FOR PRODUCTION NO. 116:**

Copies of the transcript and exhibits admitted into evidence for the trial held in *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.).

**RESPONSE TO REQUEST NO. 116:**

In addition to their previously stated General Objections, incorporated herein, the NFL specifically objects to this request as (a) unduly burdensome; (b) seeking production of documents that are not relevant to any party's claim or defense; (c) exceeding the relevant time period by requesting documents from approximately 40 years ago, which far predates the proposed start of the Class Period; and (d) seeking documents from an unrelated and dissimilar case.

Subject to the foregoing General and Specific Objections, the NFL states that it will conduct a reasonable search, using the agreed-upon search terms on only the agreed-upon League custodians' files, for trial transcripts and exhibits in *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.), and will produce any such transcripts or exhibits that might be found provided their disclosure is not precluded by any operative protective order. The NFL will not take steps to determine whether documents reviewed during the search described above were actually trial exhibits from this litigation, and will only produce documents if, on their face, it is clear they were indeed trial exhibits.

## III. PARTIES' CONTENTIONS

### A. PLAINTIFFS' STATEMENT

#### 1. Factual and Procedural Background

This antitrust case—brought pursuant to Sections 1 and 2 of the Sherman Act—revolves around a series of interlocking agreements among and between the NFL, its 32 member Clubs, DIRECTV, and several television networks. *See* Second Consolidated Amended Complaint ("Complaint" or Compl."), Dkt. No. 441 ¶¶ 1-13. These agreements work two different, but symbiotic, restraints: they prohibit all distributors other than DIRECTV from offering telecasts of out-of-market Sunday afternoon NFL games, and they bar the Clubs from separately licensing their own broadcast rights. *Id*. ¶ 11. Together these restraints ensure that consumers who wish to watch the majority of regular season NFL games, or any out-of-market NFL game,

have only one option available to them—subscribing to DIRECTV's "NFL Sunday Ticket" package. *Id*. ¶ 8. This purposeful restraint on competition results in supracompetitive prices for NFL Sunday Ticket, drastically fewer games available to all consumers, and reduced innovation in broadcasting of live NFL games. *Id*. ¶¶ 10-12, 19.

As Plaintiffs pled in the Complaint, litigation involving the NFL over the past half century has made clear that such agreements unreasonable restrain trade. *Id*. ¶ 2. Throughout its history, the NFL has entered into restrictive agreements with broadcasters that reduce the amount of live football that is broadcast on television. *See id*. ¶¶ 60-80. And those agreements have often found their way to the courts, including findings that the NFL has violated the Sherman Act. *See United States v. NFL*, 116 F. Supp. 319 (E.D. Pa. 1953); *United States v. NFL*, 196 F. Supp. 445 (E.D. Pa. 1961). The NFL's monopolistic behavior extends beyond the television context. For example, the United States Football League ("USFL"), a short-lived competitor to the NFL, sued the League for monopolization and won a jury verdict in 1986. *Id*. ¶ 56. And in *Shaw v. Dallas Cowboys Football Club, Ltd*., 1998 WL 419765 (E.D. Pa. June 23, 1998), *aff'd*, 172 F.3d 299 (3d Cir. 1999), a court held that the Sunday Ticket arrangement was subject to antitrust scrutiny (the case subsequently settled). *Id*. ¶¶ 151-153. The conduct challenged by Plaintiffs in this litigation implicates a historical pattern of monopolization and unreasonable restraints on trade by the NFL.

In recognition of this fact, and the connection between prior litigation and the arrangements challenged here, Plaintiffs requested documents from four prior cases to which the NFL Defendants were a party, and whose subject matter bears on the instant action. Plaintiffs' first set of requests for production sought all documents produced and transcripts of any depositions taken in *U.S. v. Nat'l Football League*, Civil No. 12808 (E.D. Pa.) ("*NFL I*") and *Shaw v. Dallas Cowboys Football Club*, Civil No. 97-5184 (E.D. Pa.)—two antitrust cases that concerned substantially the

same competitive restraints challenged in this litigation. Plaintiffs cite both cases in their complaint. Compl. ¶¶ 2, 151. Plaintiffs' second set of requests for production, served on April 9, 2021, similarly sought produced documents, deposition transcripts, expert reports, and settlement agreements from *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.), a suit by the NFL alleging that the Cowboys' exploitation of its own trademarks violated the agreement between the League and its Clubs.

The NFL Defendants initially refused to produce documents responsive to these requests, instead demanding a meet-and-confer to narrow the universe of documents sought by Plaintiffs. Plaintiffs subsequently agreed to narrow their requests to **only** deposition testimony and expert reports. Discovery continued and Plaintiffs expected that these prior-litigation documents would be included in the NFL Defendants' rolling productions. According to the NFL Defendants, both parties had agreed that the NFL Defendants would limit their search to a series of agreed-upon search terms on the files of certain agreed-upon custodians—an agreement that applied globally to Plaintiffs' first set of requests of production. Yet only two of the proposed search terms were targeted towards the prior litigation. None were designed to locate documents from the *Shaw* case. And the custodians were recent League employees who, in many cases, were not working for the NFL during those prior cases. As a result, the documents produced by the NFL contain no documents related to prior litigation.

When Plaintiffs reviewed those productions and learned that they contained no deposition transcripts or expert reports from prior litigation, they promptly served a letter pursuant to Local Rule 37-1. *See* Ex. 4. (January 20, 2022 Letter of Ian Gore).[2] The parties met-and-conferred on January 28, 2022, during which Plaintiffs proposed that the NFL Defendants reach out to its in-house legal department and the

---

[2] All exhibits cited by Plaintiffs are attached to the Declaration of Tyler Finn ("Finn Decl.") filed contemporaneously with this joint stipulation.

law firms who represented the League or its Member Clubs in those prior cases—a relatively easy way to locate the responsive documents without any undue burden. While the NFL Defendants initially agreed to consider that proposal, they rejected it in writing on February 8, arguing that their prior custodial searches satisfied their discovery obligations, that requesting documents from outside counsel would be unduly burdensome, and that the underlying cases "likely have protective orders in place." *See* Ex. 5 (February 8, 2022 Letter of Jeremy Barber).

Meanwhile, Plaintiffs served additional requests for production, as contemplated by the parties. In particular, Plaintiffs served discovery on January 20, 2022 which requested deposition transcripts, trial transcripts, and trial evidence for *Schwartz v. Dallas Cowboys Football Club*, Case No. 2:97-cv-05184 (E.D. Pa.) and *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.). *Schwartz* is the same case as *Shaw* but reflects a change in the caption following Mr. Shaw's dismissal as a class representative. *See Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 565 n.2 (E.D. Pa. 2001). As noted above, *USFL* involved a monopolization claim by a rival professional football league against the NFL, which Plaintiffs cited in the "relevant market" section of the Consolidated Amended Complaint. *See* Compl. ¶ 56.

The NFL Defendants responded to these new requests with obfuscation. Instead of affirmatively withholding documents, they agreed to a search that would use only "the agreed-upon search terms on only the agreed-upon League custodians' files," even though the search terms and custodians were never designed to capture prior-litigation documents, let alone Plaintiffs' most recent requests. Plaintiffs raised this objection in a March 7, 2022 letter sent pursuant to Local Rule 37-1, noting that the NFL Defendants' proposed search methodology would exclude nearly all responsive documents. *See* Ex. 6 (March 7, 2022 Letter of Tyler Finn). Plaintiffs reiterated that the most efficient method of locating the documents would be

contacting the law firms that represented the NFL Defendants in the relevant cases or the records of the NFL's in-house legal department.

The parties met-and-conferred on March 14. Yet the NFL Defendants would not agree to collect any new documents in response to Plaintiffs' newly served requests. Having reached an impasse, Plaintiffs served the NFL with their portion of a joint stipulation for a motion to compel on March 18, which identified the law firms who represented the NFL or its Clubs in *Shaw, USFL*, and *NFL Properties v. Dallas Cowboys*. Finn Decl. ¶ 9. In response, the NFL agreed to contact the law firms identified in the joint stipulation who represented the League.[3] *Id.* ¶ 10. During the next meet-and-confer, on March 30, the NFL told Plaintiffs that Skadden Arps (who represented the NFL in *USFL*) and Covington & Burling (who represented the League in *Shaw*) had located pertinent documents in hard copy storage while Wachtell Lipton (who represented the NFL in *NFL Properties v. Dallas Cowboys*) represented that it no longer had any documents. The NFL refused to contact Wilmer Hale, whose predecessor firm Wilmer Cutler & Pickering represented the Dallas Cowboys in *NFL Properties*, because the relevant request for production was directed towards the League, but not the Club defendants. *Id.* ¶ 11.

With respect to *Shaw* and *USFL,* the NFL indicated that it needed more time to locate any pertinent protective orders to determine whether any such orders precluded production of deposition transcripts and expert reports to Plaintiffs. Plaintiffs agreed to wait. On April 8, the parties met-and-conferred to discuss the status of this investigation.[4] Much to Plaintiffs' surprise, the NFL reversed course on that call, arguing that documents from that litigation were not relevant to Plaintiffs' claims. *Id.* ¶ 12. Even though the NFL had identified no protective order that would preclude disclosure and even though Skadden had located boxes from

---

[3] Plaintiffs subsequently agreed to not pursue their requests for documents from *NFL I.*, given the age of the case and the fact that the law firm that represented the league appears to be defunct.

[4] The NFL eventually agreed to produce the *Shaw* documents from its co-counsel Covington. Those documents are not the subject of this motion.

*USFL* labelled "depositions," the NFL contends that the burden of locating these documents outweighs their relevance.

The parties met-and-conferred again on April 20. *See Id.* ¶ 13. Despite Plaintiffs' efforts to explain why *USFL* bears on the definition of the relevant market, the NFL refused to budge from its position. The NFL similarly disregarded Plaintiffs' arguments that documents held by Wilmer Hale were within the NFL's possession, custody, and control because the Dallas Cowboys have a legal right to access them. The NFL refuses to request that the Cowboys, a co-defendant in this case, contact its former law firm to request documents.

## 2.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 37(a), a party may move for an order compelling disclosure or discovery, so long as it certifies that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Rule 37 specifically permits a motion to compel where "a party fails to produce documents… as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

Federal Rule of Civil Procedure 34 requires production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). "Property is deemed within a party's 'possession, custody, or control' if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand." *Villery v. Crouse*, 2021 WL 5040379, at *1 (E.D. Cal. Oct. 29, 2021). "[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *Valdez v. Genesis Healthcare LLC*, 2021 WL 5989963, at *6 (C.D. Cal. Sept. 7, 2021) (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006)).

### 3. The NFL Defendants Must Produce Documents from *USFL.*

Plaintiffs seek trial transcripts, deposition transcripts, and expert reports from *USFL.* These documents are relevant to the instant litigation because *USFL* involved a claim of monopolization that bears directly on Plaintiffs' antitrust claims. Indeed, Plaintiff cited *USFL* in the section of their Complaint about the relevant market. *See* Compl. ¶ 56.

As this Court well knows, establishing the relevant market is a required element for an antitrust claim under the Sherman Act. "It is the plaintiff's burden to establish the relevant product and geographic markets," and to "produce specific evidence supporting the proposed market definition that is relevant to the particular legal issue being litigated." *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) (internal quotation marks omitted). Here, Plaintiffs contend that the relevant product market is "live video presentations of regular season NFL games." Compl. ¶ 53. The viability of this market definition hinges, at least in part, on the NFL's monopoly over major league professional football in the United States. *Id.* ¶¶ 56-57. The NFL apparently disputes the contention that it enjoys a monopoly over professional football in this country. In an interrogatory response served on April 29, the NFL contended that "substitutes for live telecasts of NFL games include, but are not limited to: live telecasts of non-NFL professional football games." Ex. 7 at 8.

Documents from *USFL* may bear directly on Plaintiffs' proof of a relevant market because the scope of the relevant market was squarely at issue in that case. The *USFL* jury concluded that the NFL "had willfully acquired or maintained monopoly power in a *relevant market consisting of major league professional football in the United States*." *U.S.F.L. v. NFL,* 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) (emphasis added), *aff'd*, 842 F.2d 1335 (2d Cir. 1988). The *USFL* jury was also asked to determine the viability of the allegation that there was a relevant "submarket" consisting "only of the sale to the networks of television broadcasting rights for major league professional football in the Fall." *U.S.F.L. v. NFL,* 842 F.2d

1335, 1363 (2d Cir. 1988). Because the definition of the relevant market and submarket was a central dispute in *USFL*, the evidence presented on that issue—at trial, through depositions, or by experts—may be instructive here. The documents will provide Plaintiffs with prior sworn testimony and expert opinions about the definition of the relevant market for professional football.

The age of the *USFL* case, which was tried in 1986, does not materially affect the relevance of the evidence presented. Plaintiffs contend, as is made clear throughout the Complaint, that the bulk of the competitive restraints challenged in the instant litigation have not changed in decades. Plaintiffs similarly contend that the market for professional football has not changed either, in large part due to the NFL's successful monopolization of the sport of football. In the years since *USFL*, no viable competitor to the NFL has emerged.

For similar reasons, proportionality concerns favor production. It would not be unduly burdensome for the NFL Defendants to collect the documents from Skadden. According to the NFL, Skadden has *already* located the boxes that contain hard-copy documents from this case. It is reasonable to assume that a law firm of the caliber of Skadden has stored its old case files in some kind of organized manner in which they can be readily retrieved. Indeed, the NFL represented to Plaintiffs that Skadden located a box of *USFL* documents labelled "depositions." The requests are also not burdensome because Plaintiffs have limited their requests to transcripts of testimony and expert reports; Plaintiffs are ***not*** asking the NFL to hand over every document produced in discovery.

The Court should likewise reject the NFL Defendants' objection that protective orders *may* bar disclosure of the documents requested by Plaintiffs. That is pure speculation. The NFL Defendants have not provided Plaintiffs with any evidence that a protective order bars production of documents from *USFL*. Without knowledge of the particular protective order that may or may not exist, it is impossible to judge whether such an order bars the disclosure requested by Plaintiffs.

As an initial matter, the transcripts of a public trial do not likely implicate a protective order. In addition, because the bulk of the documents sought by Plaintiff implicate the confidentiality only of the NFL Defendants, such as deposition transcripts of witnesses who testified *on behalf of the NFL*, the NFL itself would have been the party that designated any material confidential in that case (as opposed to a third party or even the plaintiffs in that case). Lastly, the Court should reject any argument that locating the protective orders would impose any additional burden on the NFL. There is simply no reason to believe that locating a protective order is more difficult than locating the other documents at issue.

### 4. The NFL Defendants Must Produce Documents from *NFL Properties v. Dallas Cowboys*.

As an initial matter, the second case implicated in this motion—*NFL Properties v. Dallas Cowboys*—is plainly relevant to Plaintiffs' antitrust claims. The NFL has not seriously argued otherwise. *NFL Properties* involved a suit by the League against the Dallas Cowboys, claiming that the Cowboys' alleged contractual arrangements with sponsors violated an agreement whereby the clubs transferred to the NFL the exclusive right to use club trademarks. 922 F. Supp. 849 (S.D.N.Y. 1996). A similar arrangement, in which the Clubs transferred to the NFL the rights to license game telecasts, is at issue in this case.

The key dispute between the parties over this request concerns whether the NFL Defendants are deemed to be in possession, custody, or control, of the deposition transcripts and expert reports produced in that case. The NFL Defendants were a party to this suit and represented by Wachtell Lipton. The League, however, has represented that Wachtell no longer has hard copy records. As an alternative, Plaintiffs asked the NFL Defendants to obtain the documents from Wilmer, who represented the Cowboys in the same litigation. The League refused that offer, on the basis that the pertinent request for production was directed only at the NFL Defendants but to the Clubs.

1    The NFL's formalist objection does not justify such an evasion of its

2    discovery obligations. Rule 34 imposes upon the League an affirmative duty to seek

3    information that is "reasonably available to it from its… agents, or others subject to

4    its control." *Valdez*, 2021 WL 5989963, at *6. "In determining whether a responding

5    party has the requisite control within the meaning of Rule 34, courts have considered

6    the corporate structure of the party and nonparty, the nonparty's connection to the

7    transaction at issue in the litigation, the degree that the nonparty will benefit from

8    the outcome of the case, whether the related entities exchange documents in the

9    ordinary course of business, and whether the nonparty has participated in the

10   litigation at issue." *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc*., 2016 WL

11   6522808, at *9 (S.D. Cal. Nov. 3, 2016). Each of these factors weigh in favor of

12   production in this case. Most importantly, the Dallas Cowboys are a named

13   defendant in this litigation, are alleged to be a member of the challenged conspiracy

14   and are represented by the same counsel as the League. There can be no dispute that

15   the Cowboys are "connected" to the issues to the litigation, are interested in its

16   outcome, and have participated in it. With respect to corporate structure, the Dallas

17   Cowboys are a member organization of Defendant National Football League, Inc.

18   and their broadcast rights are held by Defendant NFL Enterprises LLC. The

19   Cowboys and the NFL undoubtedly "exchange documents in the ordinary course of

20   business." *Id.* For example, the Club's contracts for radio and preseason-television

21   broadcasts must be sent to the League.

22   That the Cowboys and the NFL were opposing parties in the prior litigation

23   does not change this fact. Plaintiffs request only documents that were available to

24   both parties in *NFL Properties*—deposition transcripts, expert reports, and the

25   settlement agreement. All of these documents would be available to the NFL if it

26   maintained them in the ordinary course of business or if their own law firm had

27   stored them. Because the documents are in the possession, custody, and control of

28

the NFL for purposes of Rule 34 in the context of this litigation, the NFL should produce them.

In any case, the NFL is required to conduct a reasonable search of its own files to determine whether it possesses any documents responsive to Plaintiffs' request. It is not clear to Plaintiffs that the NFL has taken this reasonable step.  The League's letter of February 8 stated only that the documents at issue "are not maintained in any centralized matter with the League's Legal Department."  Ex. 5 at 3.  Whether or not the NFL controls the documents held by a law firm formerly retained by the Cowboys within the meaning of Rule 34, the Court should still compel the NFL to conduct a reasonable search for these undisputedly relevant documents.

### 5.    Conclusion

Plaintiffs respectfully request that the Court compel the NFL Defendants to produce: 1) trial transcripts, deposition transcripts of NFL employees and expert reports from *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.) and 2) deposition transcripts of NFL employees, expert reports, and the settlement agreement from *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.).

### B.    THE NFL DEFENDANTS' STATEMENT

#### 1.  Factual Background

As the Court well knows, this case involves Plaintiffs' challenge, under the antitrust laws, to the agreements establishing DIRECTV's NFL Sunday Ticket package of out-of-market Sunday Afternoon NFL games.  Second Consolidated Amended Complaint, Dkt. 441, ¶ 1.  During the course of discovery in this case, Plaintiffs issued Requests for the Production of Documents that seek materials from four decades-old prior cases involving the League, most of which have no relevance to the NFL Sunday Ticket package that is central to this litigation.  Because of the age of these cases, some predated the creation of the Sunday Ticket product at issue

here. They also predated the commonplace use of electronic storage and at least some of the law firms involved in these cases no longer exist.

Initially, Plaintiffs served the following four RFPs:

- RFP No. 87 (served on January 22, 2021, seeking *all* documents produced and *all* transcripts of *any* deposition taken in *United States v. Nat'l Football League*, Civil No. 12808 (E.D. Pa.)) (superseded by 15 U.S.C. §§ 1291-1295), a case filed over 60 years ago;

- RFP No. 88 (served on January 22, 2021, seeking *all* documents produced and *all* transcripts of *any* depositions taken in *Shaw v. Dallas Cowboys Football Club*, Civ. No. 97-5184 (E.D. Pa.)), a case filed over 20 years ago;

- RFP No. 109 and 110 (served on April 8, 2021, seeking *all* documents produced, *all* transcripts of *any* deposition taken in, and all settlement agreements and all non-privileged communications relating to *Nat'l Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, No. 1:95-cv-07951-SAS-THK (S.D.N.Y.)), a case filed over 27 years ago.

RFP Nos. 87 and 88 were served on all of the NFL Defendants whereas, for the remaining two RFPs listed above, Plaintiffs opted only to serve the NFL and *not* its member Clubs. Declaration of Jeremy Barber ("Barber Decl."), Exs. A-B.

Initially, the NFL objected to these four RFPs given their sheer overbreadth, irrelevance, and lack of proportionality to the issues in this case, but offered to meet and confer with Plaintiffs to see if the requests could be appropriately narrowed to allow the NFL to respond without undue burden. Barber Decl. ¶¶ 3-6; *supra* at 11. During meet and confers on these topics in August 2021, Plaintiffs proposed that the NFL search the custodial files that had been collected in this case, using search terms proposed *by Plaintiffs* and agreed upon by the parties, for documents responsive to these four RFPs. In an effort to reach compromise, the NFL agreed to Plaintiffs' proposal. Barber Decl., Ex. C (August 25, 2021 Max Warren Letter to Peter

Leckman).  Plaintiffs raised no questions about that agreed-upon process for more than three months.

In early 2022, two things happened that are relevant to this dispute.  *First*, Plaintiffs served RFP Nos. 113 through 116 on January 20, 2022, all of which requested that the NFL—and not the member Clubs—produce additional documents related to prior litigation.

- RFP No. 113 (served on January 20, 2022, seeking *all* expert reports served by any party in *Shaw v. Dallas Cowboys Football Club*, Civ. No. 97-5184 (E.D. Pa.));

- RFP Nos. 114, 115, and 116 (served on January 20, 2022, seeking (i) *all* expert reports served by any party; (ii) *all* deposition transcripts of employees of the NFL Defendants; and (iii) *all* trial transcripts and *all* trial exhibits in *U.S. Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.)), a case filed over 35 years ago.  Barber Decl., Ex. D.

In response to these new requests, which brought into the fold yet another new litigation that had not been previously raised, the NFL agreed, again in the spirit of compromise without acknowledging the relevance of these documents, to employ the same process that the parties had agreed to for the other similar RFPs; that is, to search the collected custodial files, using the agreed-upon search terms, for responsive documents and to produce non-privileged responsive documents assuming disclosure was not precluded by any operative protective order.  *Supra* at 7-9.

*Second*, on February 20, 2022, Plaintiffs complained to the NFL that it had failed to produce documents responsive to RFP No. 87, 88, 109, and 110.  *See* Finn Decl., Pls' Ex. 4.  That complaint was unexpected, given that the NFL had employed the precise searches Plaintiffs had themselves proposed.   In response to this complaint, the NFL agreed (i) to review the entirety of the collected custodial files,

regardless as to whether the documents hit on any of the agreed-upon search terms; and (ii) to review the centralized files of the NFL's legal department, to see if any responsive documents could be located.  Barber Decl. ¶ 11.  Not surprisingly given the age of the cases at issue, no additional documents were located.

Plaintiffs inexplicably continued to press the issue, insisting that the NFL contact prior counsel for the NFL to see if any possessed deposition transcripts or expert reports from these decades-old cases.  The NFL agreed to do so (without conceding the relevance of the requested material), in an effort to avoid burdening the Court with yet another discovery dispute.  Barber Decl. ¶ 13.  Specifically, the NFL then took the following steps:

- *First*, the NFL determined that its outside counsel in *United States v. Nat'l Football League*, a case from more than 60 years ago, was no longer in operation.  Barber Decl. ¶ 14.  As such, no documents could be collected related to that case.  *Id*.  Accordingly, any disputes relating to RFP No. 87 have been resolved and are not the subject of the present motion to compel.

- *Second*, even though the NFL continues to dispute the relevance of the *Shaw* litigation to this matter, the NFL went above and beyond their obligations to collect prior deposition transcripts from its outside counsel in *Shaw*.  Barber Decl. ¶ 15.  After further meet and confers with Plaintiffs about the scope of the production, the NFL produced responsive documents on May 7, 2022. *Id*.  As such, any disputes relating to RFP No. 88 and 113 have been resolved and are not the subject of the present motion to compel.

- *Third,* the NFL determined that its outside counsel in *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.* no longer has possession of documents from that 27-year-old matter.  Barber Decl. ¶ 16.  A review of the court's docket also reflected the existence of a Protective Order, prohibiting the disclosure of confidential documents and

transcripts from the litigation, absent court order. *Id.* The NFL was able to obtain the Protective Order, which precludes disclosure of "Documents or information designated as 'Confidential/Counsel Only'" beyond a limited set of enumerated individuals. *Id.*, Ex. F at 9-10.

- *Fourth,* the NFL learned that prior counsel in *United States Football League v. National Football League* possesses hardcopy documents in off-site storage that include prior deposition transcripts from that case. Barber Decl. ¶ 17. The NFL's former counsel confirmed that their records do not indicate that they have any retained expert reports from the litigation. *Id.* As with *NFL Properties*, a review of the court's docket in *United States Football League v. National Football League* reveals the existence of a Protective Order in that case. *Id.*, Ex. G, *USFL* Docket. The NFL does not have access to the order itself at this time. Given a backlog of pending requests, the Clerk's Office in the Southern District of New York indicated it would take months to obtain the Protective Order from the court's offsite storage. Barber Decl. ¶ 18.

## 2.    Legal Standard

A party's right to obtain discovery under the Federal Rules "is not unlimited." *Epstein v. MC, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). While the Rules of Civil Procedure generally allow for broad discovery, that discovery is limited to non-privileged information that is relevant, not unduly burdensome on the producing party, and proportional to the needs of the case. *See Moi v. Chihuly Studio, Inc.*, 846 F. App'x 497, 499-500 (9th Cir. 2021) (mem) ("Rule 26 expressly limits discovery to 'any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional to the needs of the case . . . .*'" (emphasis in original) (quoting Fed. R. Civ. P. 26(b)(1))); *Insight Psych. and Addition, Inc. v. Cty. of Costa Mesa*, 2021 WL 6102425, at *3 (C.D. Cal. Oct. 29, 2021) (rejecting "speculative proffers of relevance" and noting that relevance "is not without boundaries.")

All parties and the court have a "collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note. Parties must "consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the court." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (C.D. Cal. Feb. 25, 2016).

In responding to discovery requests, a party must "reasonably and diligently search for and produce responsive documents." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013). "However, while parties must impose a reasonable construction on discovery requests and conduct a *reasonable* search when responding to requests, the Federal Rules do not demand perfection." *Id.* (emphasis added). The Rules of Civil Procedure require only what is a "reasonable inquiry under the circumstances." *Id.* (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest. Employees Int'l Union*, 212 F.R.D. 178, 223 (S.D.N.Y. 2003)).

### 3. Prior Litigation Materials From *USFL* Are Irrelevant And Their Production Would Be Unduly Burdensome And Not Proportionate To The Needs Of The Case

Plaintiffs now seek deposition transcripts and expert reports from *USFL*, an antitrust case filed by the United State Football League against the NFL in 1984. The case had nothing to do with the Sunday Ticket package because Sunday Ticket did not exist at the time. Instead, the case involved a claim by the USFL that the NFL constituted a monopoly under the Sherman Act and that certain of the NFL's broadcast agreements with CBS and FOX operated as an illegal restraint of trade. *USFL v. NFL*, 842 F.2d 1335 (2d Cir. 1988). This case not only predated the Sunday Ticket package, it predated any contract with non-sponsored telecasting. Because the agreements themselves were insulated from scrutiny by the Sports Broadcast Act, the lawsuit focused on the relationship between the NFL and the networks and whether that relationship prevented competitors from accessing cable contracts.

Despite the age of *USFL* and the fact that it has nothing to do with the NFL Sunday Ticket package, Plaintiffs argue that the NFL should be compelled to undergo the burden of collecting, scanning, reviewing, and producing hard-copy deposition transcripts and expert reports from the NFL's prior counsel.  Plaintiffs offer no convincing justification for this request.  Plaintiffs' suggestion that the documents "*may* bear directly on Plaintiffs' proof of a relevant market" in this case blinks reality.  *Supra* at 5  (emphasis added); *see also supra* at 16 (the requested documents "*may* be instructive here.") (emphasis added); *Cf. Matosich v. Wright Medical Grp.*, 2020 WL 2216864, at *1, 4-5 (D. Mon. May 7, 2020) (denying discovery into other product liability suits against the defendant because it was "unclear what benefit will arise from litigation documents" sought).  The media options available to a consumer today—broadcast, cable, streaming services, high-speed internet, high-definition televisions, streaming devices—would have been unfathomable in the 1980s.  Whatever evidence relied upon by a 1980s jury in assessing a broadcasting world predating the creation of Sunday Ticket and the expansion of Internet streaming would have little relevance in defining the relevant market today, more than thirty years later.  *See, e.g.*, *Oahu Gas Serv.*, 828 F.2d at 363 (the "definition of the relevant market is basically a fact question dependent upon the special characteristics of the industry involved."); *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (Sotomayor, J.) (explaining the importance of discovery in antitrust actions "[b]ecause market definition is a deeply fact-intensive inquiry.").  Given the lack of relevance of these decades-old transcripts, the burden of collecting and producing the requested materials is not proportional to the needs of the case.  *See Salazar*, 2016 WL 736213, at *2 (requiring parties to consider the proportionality factors before "propounding discovery requests" or "raising discovery disputes before the court.").

The Protective Order in *USFL* presents yet another hurdle to production.  The *USFL* docket contains a docket description referencing a Protective Order that

requires that "[a]ll docs and other material produced by any party or non-party in connection with discovery may be used solely in connection with [this] litigation." Barber Decl. ¶ 16, Ex. G, Docket No. 38.  The NFL's prior counsel was not able to locate the actual Protective Order from that case, and the NFL's efforts to obtain a copy from the Clerk's Office in the Southern District of New York have been unavailing.  The Clerk's Office indicated that the requested material was in off-site storage out-of-state and that it would take months to obtain.

Plaintiffs' assertion that the Protective Order would not bar disclosure of the requested documents misunderstands how protective orders work.  At a minimum, it is incumbent on the parties to review the actual Protective Order to better understand its terms before sweeping them aside.  It also strains credulity to think that the deposition transcripts would *not* discuss documents that were covered by the Protective Order.  And if the requested documents *were* subject to the Protective Order, it is uncontested that the NFL would be unable to produce them.[5]  *See Eon Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 2013 WL 12234628, at *2 (D.P.R. July 16, 2013) (noting that a party does "not have a responsibility to produce documents from previous litigation if such production is barred by a protective order entered in the previous litigation.").

In sum, Plaintiffs are demanding the NFL obtain, review, and produce 20 boxes of thirty-five-year-old deposition transcripts that may well be protected from disclosure by the operative protective order, from an irrelevant case that was resolved years before the creation of the product at issue.  That is not proportional to the needs of this matter by any measure.

---

[5] If the documents are covered by the Protective Order, Plaintiffs would need to obtain a modification of that Order directly from the *USFL* court by demonstrating the relevance of the requested material.  *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131-1132 (9th Cir. 2003) (holding that "[t]he court that issued the [protective] order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery.").

**4.   The NFL Has Conducted A Reasonable Search for Deposition Transcripts and Expert Reports from *NFL Properties*, And Cannot Be Ordered To Request Them From Opposing Counsel.**

Plaintiffs also seek documents from *NFL Properties*, a trademark suit brought by the NFL against the Dallas Cowboys in 1995, alleging that the Cowboys were licensing its logos and marks in violation of the Cowboys' licensing agreements with NFL Properties.   *NFL Properties, Inc. v. Dallas Cowboys Football Club*, 922 F. Supp. 849 (S.D.N.Y. 1996).   This case had nothing to do with broadcasting or even the antitrust laws.   Yet the NFL conducted a reasonable search in response to Plaintiffs' requests for deposition transcripts and expert reports.   Specifically, the NFL reviewed all collected custodial files in this case (regardless as to whether they hit on any agreed-upon search terms), searched its Legal Department's centralized storage files, and inquired whether outside counsel possessed responsive documents. This more than fulfills the NFL's discovery obligations to conduct a "reasonable inquiry."   *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (the Rules of Civil Procedure require only what is a "reasonable inquiry under the circumstances.").

Plaintiffs now seek to compel the NFL to take the additional steps of reaching out to a law firm that represented a different party who previously sued the NFL, on the chance that the firm may have retained responsive documents from this decades-passed case.   Because the NFL cannot reasonably be held to have access to documents in the custody of its opposing counsel, Plaintiffs' request should be rejected.   Further, given the non-existent relevance of the requested material, granting Plaintiffs' request would impose burden disproportionate to the needs of the case.

*First*, it is undisputed that Plaintiffs served the relevant Requests solely on the NFL, and not the Dallas Cowboys.   *See generally* Barber Decl. ¶ 4, Ex. B, Pls.' 2nd Set of RFPs.   The NFL has satisfied those requests by searching for documents in its possession, custody, or control.   *See Soto v. City of Concord*, 162 F.R.D. 603, 619

(N.D. Cal. 1995) (documents sought in discovery "must be within the 'possession, custody, or control' of the party *upon whom the request is served*.") (emphasis added); *cf. Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998) ("A party that has a legal right to obtain certain documents is deemed to have control of the documents."). Nor is there any basis for allowing Plaintiffs to constructively amend their request now. Plaintiffs have propounded discovery requests on the Clubs numbering in the hundreds. But Plaintiffs chose in this instance not to propound requests for *NFL Properties* on the Cowboys. That should be the end of the matter.

In any event, the NFL Defendants cannot be compelled to produce documents in possession of the Cowboys because the NFL does not "have exclusive control of the documents." *Id*. When determining whether a Court can compel a party to produce documents in the possession of a third party, the relationship "between the party and the person or entity having actual possession of the document" is "central." *Id*. And a party only has exclusive control of the documents where it has the authority "to command release of the documents by the person or entity in actual possession." *Id.*

Here, the NFL does not have legal authority to command the release of documents possessed by opposing counsel from a prior litigation, and Plaintiffs do not, and cannot, suggest otherwise. The sole authority Plaintiffs cite in support of their contrary request actually involved a court *refusing* to compel production of the requested discovery. *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2016 WL 6522808, at *9 (S.D. Cal. Nov. 3, 2016). In that matter, the plaintiffs, two waterpark rides manufacturers, sued a rival for patent infringement. During discovery, plaintiffs sought sales information from defendant's subsidiary company. Unlike here, the defendant "[did] not argue that it lack[ed] possession, custody, or control over" the subsidiary. *Id*. Also unlike here, the subsidiary company was founded by the defendant's CEO and shared the same business address as the defendant. And

yet, despite all these factors, the court in *FlowRider still* declined to hold that the
defendant had the requisite control over the requested materials. *Id.* at 10 ("Although
Defendant's CEO founded Defendant and [its subsidiary] and both companies share
the same business address, such factors, without more, are insufficient to establish
the requisite control.").

*Second*, as with the *USFL* litigation, there are only speculative arguments as
to the relevance of the requested material.[6]   The *NFL Properties* case was a
trademark dispute between the NFL and a member club.  It did not touch on the
Sunday Ticket Package, the broadcasting landscape, or media contracts.  Plaintiffs
have offered no credible justification for the request.  Their speculation as to the
requested materials' relevance does not justify the burden of contacting opposing
counsel and, assuming they actually possess responsive documents, collecting,
scanning, and reviewing them. *See Salazar*, 2016 WL 736213, at *2.

*Lastly*, as with the *USFL* materials, the documents from *NFL Properties*
requested by Plaintiffs may well be protected by the court's Protective Order.  The
NFL has access to the Protective Order from the *NFL Properties* case, which
expressly prohibits the dissemination of materials designated confidential outside of
the litigation.  Barber Decl. ¶ 15, Ex. F at 9-10.  So even if the NFL could obtain
documents from the Dallas Cowboys, it would then have to review them to
determine whether they can be produced—adding to the unreasonable burdens of
this request.

---

[6] Plaintiffs allege that the NFL has conceded the relevance of the requested materials.
*Supra* at 13.  Not so.  Since its initial response to Plaintiffs' RFPs, the NFL has
maintained that the requested materials are not relevant to the instant litigation.  NFL
Defs.' Obj. & Resp. to Pls.' 5th RFPs at 10-11 ("the NFL specifically objects to
[these] requests as (a) unduly burdensome; (b) seeking production of documents that
are not relevant to any party's claim or defense; (c) exceeding the relevant time period
by requesting documents from approximately 40 years ago, which far predates the
proposed start of the Class Period; and (d) seeking documents from an unrelated and
dissimilar case."

### 5.    Conclusion

Plaintiffs' request for an order requiring the production of litigation materials from two different decades-old cases should be denied.  The NFL has already taken efforts to produce prior litigation material, using processes proposed by Plaintiffs. Plaintiffs have brought this motion after being disappointed by the results.  They have failed to meet their burden of establishing that the requested materials are relevant, that the NFL has not already conducted a reasonable search for the documents, or that the undue burden associated with Plaintiffs' requests are proportionate to the needs of the case.  Under these circumstances, the Court should deny Plaintiffs' motion to compel.

Dated: May 17, 2022                  Respectfully submitted,

                                    By:   /s/ Marc M. Seltzer
                                          Marc M. Seltzer

                                    Marc M. Seltzer (54534)
                                    mseltzer@susmangodfrey.com
                                    SUSMAN GODFREY L.L.P.
                                    1900 Avenue of the Stars, Suite 1400
                                    Los Angeles, CA 90067
                                    Tel: (310) 789-3100
                                    Fax: (310) 789-3150

                                    Arun Subramanian (*Pro Hac Vice*)
                                    asubramanian@susmangodfrey.com
                                    William C. Carmody (*Pro Hac Vice*)
                                    bcarmody@susmangodfrey.com
                                    Seth Ard (*Pro Hac Vice*)
                                    sard@susmangodfrey.com
                                    Tyler Finn (*Pro Hac Vice*)
                                    tfinn@susmangodfrey.com
                                    SUSMAN GODFREY L.L.P
                                    1301 Avenue of the Americas, 32nd Fl.
                                    New York, NY 10019
                                    Tel: (212) 336-8330
                                    Fax: (212) 336-8340

                                    Ian M. Gore (*Pro Hac Vice*)
                                    igore@susmangodfrey.com
                                    SUSMAN GODFREY L.L.P.
                                    1201 Third Avenue, Suite 3800
                                    Seattle, WA 98101
                                    Tel: (206) 505-3841
                                    Fax: (206) 516-3883

                                    Armstead Lewis (*Pro Hac Vice*)
                                    alewis@susmangodfrey.com
                                    SUSMAN GODFREY L.L.P.
                                    1000 Louisiana, Suite 5100
                                    Houston, TX 77002
                                    Tel: (713) 651-9366
                                    Fax: (713) 654-6666

                                    Scott Martin (*Pro Hac Vice*)
                                    smartin@hausfeld.com
                                    HAUSFELD LLP
                                    33 Whitehall Street, 14th Floor
                                    New York, NY 10004
                                    Tel: (646) 357-1100
                                    Fax: (212) 202-4322

                                    Christopher L. Lebsock (184546)
                                    clebsock@hausfled.com
                                    HAUSFELD LLP
                                    600 Montgomery St., Suite 3200

San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

/s/ Jeremy S. Barber
Jeremy S. Barber (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800

Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*