# EXHIBIT 7

Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | ) Case No. 2:15-ml-02668−PSG (JEMx) <br> ) <br> ) **THE NFL'S SUPPLEMENTAL** <br> ) **OBJECTIONS AND RESPONSES** <br> ) **TO PLAINTIFFS' THIRD SET OF** <br> ) **INTERROGATORIES TO THE** <br> ) **NFL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) <br> ) Judge:  Hon. Philip S. Gutierrez <br> ) <br> ) <br> ) |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants National Football League and NFL Enterprises, LLC (collectively "the NFL" or "the League") respond to Plaintiffs' Third Set of Interrogatories to the NFL (the "Interrogatories") as follows.

The NFL provides the following objections and responses based on facts and information presently known to it.  Because discovery in this matter is ongoing, the NFL provides these responses reserving its right, and without prejudice to its right, to amend or further supplement based on subsequently discovered information.

## GENERAL CONDITIONS AND OBJECTIONS

The following general conditions and objections are incorporated into each of the NFL's responses as if fully set forth in each individual response.  The NFL's responses to these Interrogatories shall not be deemed a waiver of any General Objection.

1.     The NFL objects to the Interrogatories, including the Definitions and Instructions, to the extent that they purport to give meaning to words different from their ordinary English meaning or definitions set forth in applicable statutes or rules. The specific responses set forth below are based upon the NFL's interpretation of the language used in the Interrogatories, and the NFL reserves its right to amend or supplement further its response if Plaintiffs assert an interpretation that differs from the NFL's interpretation.

2.     The NFL objects to Plaintiffs' definition of "NFL" because it is exceedingly broad and unduly burdensome.  The NFL answers each interrogatory on behalf of the League only, and not on behalf of any subsidiaries, affiliates, other corporations or separate legal entities, or any other individuals.

3.     The NFL objects to Plaintiffs' definition of "NFL Defendants" as "the NFL and NFL Enterprises, LLC."  In the NFL Defendants' Answer to Plaintiffs' Consolidated Amended Complaint, as well as prior discovery requests and responses, the parties defined the "NFL Defendants" as Defendants National Football League,

1

Case No. 2:15-ml-02668-PSG (JEMx)                    The NFL's Supplemental Objections and Responses to
                                                     Plaintiffs' Third Set of Interrogatories to the NFL

NFL Enterprises, LLC, and its member Clubs.  Therefore, as discussed, the NFL continues to define "NFL Defendants" as the National Football League, NFL Enterprises, LLC, and its member clubs, while using "the NFL" or "the League" to refer to the National Football League and NFL Enterprises, LLC.

4.      The NFL objects to Plaintiffs' definition of "You," "your," or "your organization" because it is exceedingly broad and unduly burdensome.  The NFL answers each interrogatory on behalf of the specific corporate entities named as defendants in this action, and not on behalf of any predecessors, subsidiaries, affiliates, other corporations or separate legal entities, or any other individuals.

5.      The NFL objects to Plaintiffs' Instructions to the extent they impose obligations on the NFL in addition to, or different from, those imposed by the Federal Rules of Civil Procedure, the rules of this Court, and any other applicable rules.  The NFL answers each interrogatory based on its good-faith reasonable investigation to date.

6.      The NFL objects to Plaintiffs' Interrogatories to the extent they require the NFL to draw legal conclusions or make legal arguments.  Any response to any interrogatory is not intended, and may not be construed, as an admission or legal argument.

7.      The NFL objects to Plaintiffs' Interrogatories to the extent they seek information from before the proposed class period.

8.      The NFL objects to Plaintiffs' Interrogatories to the extent they exceed the number permitted by Rule 33(a)(1) of the Federal Rules of Civil Procedure ("Rule 33(a)(1)"), which requires "[d]iscrete or separate questions [to] be counted as separate interrogatories." *See Stiles v. Walmart, Inc.*, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020) (citation omitted).

9.      The NFL objects to Plaintiffs' Interrogatories to the extent they seek information and/or documents that are protected from discovery by any privilege or protection, including First Amendment privilege, attorney-client privilege, or the

work product doctrine.  The NFL construes the Interrogatories as not seeking such information, and such information shall not be produced in response to the Interrogatories.  Any inadvertent disclosure thereof shall not be deemed a waiver of any privilege or immunity with respect to such information, or of any work-product protection which may attach thereto.

10.     The NFL objects to Plaintiffs' Interrogatories to the extent they seek information containing confidential business or other proprietary information, or confidential information submitted to the NFL under contractual promise of non-disclosure.

11.     The NFL neither waives nor intends to waive, but expressly reserves, any and all objections it may have as to the relevance, competence, materiality, admissibility, or use at trial of any information, documents, or writings produced, identified, or referred to herein, or to the introduction of any evidence at trial relating to the subjects covered by any response.  All such objections may be made at any time up to and including the time of trial.

12.     The NFL reserves its right to object on any ground to such other or supplemental requests for production involving or relating to the subject matter of these Interrogatories.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 4:**

Describe in detail the legal and factual bases for each of your affirmative defenses.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to this interrogatory to the extent it asks the NFL to draw legal conclusions or make legal arguments.  Furthermore, the NFL objects to this interrogatory as premature insofar as it requests description of the factual bases for the NFL's affirmative defenses before fact witnesses have been deposed.  The NFL

reserves all rights to further develop the legal and factual bases for each of its affirmative defenses at the appropriate time set forth pursuant to the Federal Rules of Civil Procedure and/or the Court's Orders.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL addresses each of its affirmative defenses in turn.[1]

Fourth Defense: Failure to Mitigate Damages

"The doctrine of mitigation of damages prevents an injured party from recovering damages that the injured party could have avoided if it had taken reasonable efforts after the wrong was committed." *Smith v. Ardew Wood Prod., Ltd.*, No. 07-CV-5641 (FDB), 2009 WL 36882, at *2 (W.D. Wash. Jan. 5, 2009). The NFL believes the upcoming depositions will demonstrate that Plaintiffs have failed to take reasonable steps to mitigate their alleged damages, which precludes recovery in this case.

Fifth Defense: Unjust Enrichment

The elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*, No. 08-CV-3008 (MMM) (CWX), 2010 WL 11505571, at *31 (C.D. Cal. Sept. 7, 2010) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). The NFL believes the upcoming depositions will demonstrate that Plaintiffs have unjustly retained benefits at another's expense, which precludes recovery in this case.

Sixth Defense: Statute of Limitations

Claims brought pursuant to the Sherman Act are subject to a four-year statute

---

[1] The NFL discusses only its affirmative defenses, *i.e.*, "matters extraneous to [Plaintiffs'] prima facie case, which deny [Plaintiffs'] right to recover, even if the allegations of the complaint are true." *Dairy Emps. Union Loc. No. 17 v. Dairy*, No. 14-CV-1295 (RSWL) (MAN), 2015 WL 505934, at *3 (C.D. Cal. Feb. 6, 2015) (quoting *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10–CV–0168 (LHK), 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010)).

of limitations.  *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1062 (N.D. Cal. 2016).  The NFL believes the upcoming depositions will demonstrate that Plaintiffs' alleged injuries occurred more than four years before they filed their Complaint, and their claims are thus barred by the statute of limitations.

### Seventeenth Defense: Laches

Laches bars claims where a defendant demonstrates: (i) lack of diligence by the party against whom the defense is asserted, meaning an inexcusable or unreasonable delay, and (ii) prejudice to the party asserting the defense.  *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990), *cert. denied*, 501 U.S. 1260, (1991).  Plaintiffs began their subscriptions to the NFL Sunday Ticket package long before commencing this action in 2015, and continued their subscriptions for years without complaint.  Their delay in bringing this action is inexcusable and unreasonable, and prejudices the NFL Defendants.

### Eighteenth Defense: Unclean Hands

 "The doctrine of unclean hands 'bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'"  *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1091–92 (C.D. Cal. 2016) (quoting *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)).  The NFL believes the upcoming depositions will demonstrate that Plaintiffs' prior conduct has violated conscience, good faith, and other equitable principles, and therefore precludes recovery in this case.

### Nineteenth Defense: Waiver, Acquiescence, Estoppel

Plaintiffs' claims against the NFL Defendants are barred, in whole or in part, by waiver, acquiescence, and/or equitable estoppel.  *See Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 1330598, at *1 (N.D. Cal. Apr. 11, 2017) (recognizing equitable doctrines such as laches, estoppel, waiver, and limitations period-related doctrines as affirmative defenses).   Waiver is the intentional

relinquishment or abandonment of a known right. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997). "To establish an acquiescence defense, a defendant must plead: '(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.'" *California Brewing Co. v. 3 Daughters Brewing LLC*, No. 15-CV-2278 (KJM) (CMK), 2016 WL 4001133, at *3 (E.D. Cal. July 26, 2016) (quoting *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010)). And "to establish a defense of estoppel, a party must show that the adverse party, either intentionally or under circumstances that induced reliance, engaged in conduct upon which [the relying party] relied and that the relying party acted or changed [its] position to [its] detriment." *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, No. 15-CV-861 (KJM), 2015 WL 5436784, at *14 (E.D. Cal. Sept. 15, 2015).

Plaintiffs began their subscriptions to the NFL Sunday Ticket package long before commencing this action in 2015, and continued their subscriptions for years without complaint. Their delay in bringing this action is inexcusable and unreasonable, and prejudices the NFL Defendants.

**INTERROGATORY NO. 5:**

Identify each product You contend to have been a reasonable substitute to live NFL telecasts from January 1, 2011 to the present and the basis for that contention. To the extent You contend that such reasonable substitutes differ between residential and commercial consumers, explain the basis for that distinction.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the terms "product" and "reasonable substitute" as vague and ambiguous. Furthermore, the NFL objects to any request by Plaintiffs to have the NFL define the relevant market at this point in the litigation because, in an antitrust

6

Case No. 2:15-ml-02668-PSG (JEMx)          The NFL's Supplemental Objections and Responses to
                                           Plaintiffs' Third Set of Interrogatories to the NFL

case, "[i]t is the plaintiff's burden to establish the relevant product and geographic markets" by "produc[ing] specific evidence supporting the proposed market definition." *Epic Games, Inc.*, 2021 WL 4128925, at *82 (citations omitted). Furthermore, any request for the NFL to speculate about the cross-elasticity of demand in any market is premature; any such economic modeling is properly the subject of expert analysis and testimony.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

The NFL further objects to the extent this interrogatory seeks information from prior to June 17, 2011, the start of the proposed class period. Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that, based on its reasonable knowledge and belief, substitutes for live telecasts of NFL games include, but are not limited to: live telecasts of non-NFL professional football games; live telecasts of college or other amateur football games; live telecasts of other professional sports games; live telecasts of college or other amateur sports games; streaming of NFL games on devices other than televisions; streaming of non-NFL professional football games on devices other than televisions; streaming of college or other amateur football games on devices other than televisions; streaming of other professional sports games on devices other than televisions; live radio broadcasts of NFL games; live radio broadcasts of non-NFL professional football games; live radio broadcasts of college or other amateur football games; live radio broadcasts of other professional sports games; in-person attendance at NFL games; in-person attendance at non-NFL professional football games; in-person attendance at college or other amateur football games; in-person attendance at other professional sports games; in-person attendance at college or other amateur sports games; and various other forms of televised, streaming, and in-person sports and non-sports entertainment.

The NFL expressly reserves the right to revise, correct, clarify, or supplement this list as discovery—including expert discovery—in this case proceeds, and in further briefing before the Court.

7

Case No. 2:15-ml-02668-PSG (JEMx)          The NFL's Supplemental Objections and Responses to
                                           Plaintiffs' Third Set of Interrogatories to the NFL

**INTERROGATORY NO. 6:**

Explain in detail each and every reason why You chose to license the rights to NFL Sunday Ticket within the United States on an exclusive basis to DIRECTV in 1994 and each renewal of those rights since then.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the request to list "each and every reason" for decisions made as far back as almost three decades ago as unduly burdensome.  The NFL further objects to any characterization of the Sunday Ticket package's exclusive distribution through DIRECTV as an independent decision by the NFL rather than the result of negotiations with DIRECTV.  Furthermore, the NFL expressly reserves the right to revise, correct, clarify, or supplement its response in further discovery.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that reasons why the Sunday Ticket package is licensed on an exclusive basis to DIRECTV include, but are not limited to: incentivizing investment in innovation to improve product quality; incentivizing promotion to consumers; maximizing fan reach; maximizing fan access; increasing game exposure; increasing output of out-of-market telecasts; increasing consumer choice; enhancing and stabilizing competitive balance in the League; promoting smaller-market teams; promoting the League as a whole; ensuring that out-of-market NFL games are reliably available to viewers; ensuring that out-of-market NFL Games are consistently available to viewers; maximizing clarity with respect to the platform or network through which viewers can watch each NFL game, including out-of-market games; ensuring that out-of-market NFL games are available to viewers at the lowest price; serving the best interest of the widest range of fans, including those interested in fantasy football; and preserving free, over-the-air broadcasts of NFL games.

**INTERROGATORY NO. 7:**

Explain in detail each and every reason why You chose to license the rights to NFL Sunday Ticket within the United States to DIRECTV on a league-wide basis rather than smaller packages of telecasts, including, but not limited to, packages of telecasts for each conference or specific Club.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the request to list "each and every reason" for decisions made as far back as almost three decades ago as unduly burdensome.  The NFL further objects to any characterization of the Sunday Ticket's League-wide packaging as an independent decision by the NFL rather than the result of negotiations and coordination with DIRECTV.  Furthermore, the NFL expressly reserves the right to revise, correct, clarify, or supplement its response in further discovery.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that reasons why the rights to out-of-market NFL games on Sunday afternoons are licensed on a League-wide basis include, but are not limited to: incentivizing investment in innovation to improve product quality; incentivizing promotion to consumers; maximizing fan reach; maximizing fan access; increasing game exposure; increasing output of out-of-market telecasts; increasing consumer choice; enhancing and stabilizing competitive balance in the League; promoting smaller-market teams; promoting the League as a whole; ensuring that out-of-market NFL games are reliably available to viewers; ensuring that out-of-market NFL Games are consistently available to viewers; maximizing clarity with respect to the platform or network through which viewers can watch each NFL game, including out-of-market games; ensuring that out-of-market NFL games are available to viewers at the lowest price; serving the best interest of the widest range of fans,

9

Case No. 2:15-ml-02668-PSG (JEMx)                    The NFL's Supplemental Objections and Responses to
                                                     Plaintiffs' Third Set of Interrogatories to the NFL

1    including those interested in fantasy football; and preserving free, over-the-air

2    broadcasts of NFL games.

3    **INTERROGATORY NO. 8:**

4         Describe in detail each and every procompetitive justification You contend

5    exists for any restriction on the NFL's Clubs from: (a) licensing live telecasts and/or

6    live telecast retransmissions of regular season games separate from the NFL

7    Defendants; (b) launching, operating, or participating in the launch or operation of, a

8    Club-dedicated Network; and (c) acquiring or holding an equity or quasi-equity

9    interest in a Club-equity Network.

10   **RESPONSE TO INTERROGATORY NO. 8:**

11        In addition to its previously stated General Objections, incorporated herein,

12   the NFL objects to this interrogatory as compound despite being styled as a single

13   Interrogatory.  Because this interrogatory seeks information regarding three distinct

14   topics, each topic "must be considered a separate interrogatory."  *See Mailhoit v.*

15   *Home Depot U.S.A., Inc.*, 2012 WL 12883970, at *2 (C.D. Cal. Sept. 5, 2012)

16   (quoting *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005)).

17        The NFL further objects to the term "procompetitive justification" as vague

18   and ambiguous, and impossible to answer without specifying the market at issue.

19   The NFL also objects to the request to list "each and every" procompetitive

20   justification as unduly burdensome, particularly insofar as this interrogatory lacks a

21   temporal limitation.  Furthermore, the NFL objects to the extent this interrogatory

22   suggests that the NFL's member Clubs are "restrict[ed]" from "licensing live

23   telecasts and/or live telecast retransmissions of regular season games separate from

24   the NFL," "launching, operating, or participating in the launch or operation of, a

25   Club-dedicated Network," or "acquiring or holding an equity or quasi-equity interest

26   in a Club-equity Network"; to the extent this interrogatory makes reference to any

27   provision of the NFL's Constitution or Bylaws, all such provisions are approved and

28   adopted by the member Clubs, and thus any limitation on Club conduct made

1  pursuant to those provisions are voluntary decisions the Clubs and League jointly
2  choose to undergo.

3      The NFL further objects to this interrogatory insofar as it requires the NFL to
4  speculate about the extent to which policies affect competition in an undefined
5  market; inquiries about competitive effects are properly the subject of expert
6  discovery.  Requests for the NFL to make a contention regarding the application of
7  law to these facts are premature at this stage of the litigation, *i.e.*, before depositions
8  or expert discovery.  Furthermore, to the extent this interrogatory challenges policies
9  not included in the claims in Plaintiffs' Consolidated Amended Complaint—*i.e.*, the
10 Clubs' agreement to refrain from launching, operating, participating in the launch or
11 operation of, a Club-dedicated Network, or acquiring or holding an equity or quasi-
12 equity interest in, a Club-equity Network—such a challenge is beyond the scope of
13 this litigation.

14     Subject to and without waiver of the foregoing General and Specific
15 Objections, the NFL states that member Clubs' agreement to refrain from licensing
16 live telecasts separate from the NFL is protected from challenge by the Sports
17 Broadcasting Act, and has procompetitive effects including, but not limited to:
18 incentivizing investment in innovation to improve product quality; incentivizing
19 promotion to consumers; maximizing fan reach; maximizing fan access; increasing
20 game exposure; increasing output of out-of-market telecasts; increasing consumer
21 choice; enhancing and stabilizing competitive balance in the League; promoting
22 smaller-market teams; promoting the League as a whole; ensuring that out-of-market
23 NFL games are reliably available to viewers; ensuring that out-of-market NFL
24 Games are consistently available to viewers; maximizing clarity with respect to the
25 platform or network through which viewers can watch each NFL game, including
26 out-of-market games; ensuring that out-of-market NFL games are available to
27 viewers at the lowest price; serving the best interest of the widest range of fans,
28

11

**Case No. 2:15-ml-02668-PSG (JEMx)**          The NFL's Supplemental Objections and Responses to
                                                Plaintiffs' Third Set of Interrogatories to the NFL

including those interested in fantasy football; and preserving free, over-the-air broadcasts of NFL games.

**INTERROGATORY NO. 9:**

Describe in detail each and every procompetitive justification You contend existed or exists for licensing NFL Sunday Ticket in the United States on an exclusive basis to DIRECTV.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the term "procompetitive justification" as vague and ambiguous, and impossible to answer without specifying the market at issue.  The NFL also objects to the request to list "each and every" procompetitive justification that has "existed or exists" as unduly burdensome, particularly insofar as this interrogatory lacks a temporal limitation.  The NFL further objects to this interrogatory insofar as it requires the NFL to speculate about the extent to which policies affect competition in an undefined market; inquiries about competitive effects are properly the subject of expert discovery.  Requests for the NFL to make a contention regarding the application of law to these facts are premature at this stage of the litigation, *i.e.*, before depositions or expert discovery.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that procompetitive effects of licensing the Sunday Ticket package on an exclusive basis to DIRECTV include, but are not limited to: incentivizing investment in innovation to improve product quality; incentivizing promotion to consumers; maximizing fan reach; maximizing fan access; increasing game exposure; increasing output of out-of-market telecasts; increasing consumer choice; enhancing and stabilizing competitive balance in the League; promoting smaller-market teams; promoting the League as a whole; ensuring that out-of-market NFL games are reliably available to viewers; ensuring that out-of-market NFL Games are consistently available to viewers; maximizing clarity with respect to the

platform or network through which viewers can watch each NFL game, including out-of-market games; ensuring that out-of-market NFL games are available to viewers at the lowest price; serving the best interest of the widest range of fans, including those interested in fantasy football; and preserving free, over-the-air broadcasts of NFL games.

**INTERROGATORY NO. 10:**

Explain in detail each and every procompetitive justification You contend exists or existed for licensing the rights to NFL Sunday Ticket within the United States to DIRECTV on a league-wide basis rather than smaller packages of telecasts, including, but not limited to, packages of telecasts for each conference or specific Club.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the term "procompetitive justification" as vague and ambiguous, and impossible to answer without specifying the market at issue. The NFL also objects to the request to list "each and every" procompetitive justification that has "existed or exists" as unduly burdensome, particularly insofar as this interrogatory lacks a temporal limitation. The NFL further objects to this interrogatory insofar as it requires the NFL to speculate about the extent to which policies affect competition in an undefined market; inquiries about competitive effects are properly the subject of expert discovery. Requests for the NFL to make a contention regarding the application of law to these facts are premature at this stage of the litigation, *i.e.*, before depositions or expert discovery.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that procompetitive effects of licensing out-of-market games on Sunday afternoons on a League-wide basis include, but are not limited to: incentivizing investment in innovation to improve product quality; incentivizing promotion to consumers; maximizing fan reach; maximizing fan access; increasing

13

game exposure; increasing output of out-of-market telecasts; increasing consumer choice; enhancing and stabilizing competitive balance in the League; promoting smaller-market teams; promoting the League as a whole; ensuring that out-of-market NFL games are reliably available to viewers; ensuring that out-of-market NFL Games are consistently available to viewers; maximizing clarity with respect to the platform or network through which viewers can watch each NFL game, including out-of-market games; ensuring that out-of-market NFL games are available to viewers at the lowest price; serving the best interest of the widest range of fans, including those interested in fantasy football; and preserving free, over-the-air broadcasts of NFL games.

**<u>INTERROGATORY NO. 11:</u>**

Identify all of the persons, entities, or organizations (including You and all of Your competitors) that you contend provide professional football that are telecast live within the United States and the market share You contend each has in the market for live video presentations of professional football games and define in detail the values used to calculate the shares (both numerator and denominator) and the source of those values.

**<u>RESPONSE TO INTERROGATORY NO. 11:</u>**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to this interrogatory as compound despite being styled as a single Interrogatory.  Because this interrogatory seeks information regarding two topics, each topic "must be considered a separate interrogatory."  *See Mailhoit*, 2012 WL 12883970, at *2 (quoting *Willingham*, 226 F.R.D. at 59).

The NFL further objects to the terms "competitors," "provide professional football," "market share," and "value used to calculate the shares" as vague and ambiguous.  The NFL also objects to the extent this interrogatory asks the NFL to speculate about other persons, entities, or organizations, particularly with respect to topics properly the subject of expert discovery, including market share.  Furthermore,

14

**Case No. 2:15-ml-02668-PSG (JEMx)**          **The NFL's Supplemental Objections and Responses to
Plaintiffs' Third Set of Interrogatories to the NFL**

the NFL objects to extent identifying any competitors requires Plaintiffs to first define the relevant market. *See Epic Games, Inc.*, 2021 WL 4128925, at *82 (N.D. Cal. Sept. 10, 2021) ("It is the plaintiff's burden to establish the relevant product and geographic markets." (citing *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1372 (9th Cir. 1989); *Fount-Wip, Inc. v. Reddi-Wip*, Inc., 568 F.2d 1296, 1302 (9th Cir. 1978))).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**

The NFL further objects to the extent this interrogatory seeks information from prior to June 17, 2011, the start of the proposed class period. Subject to and without waiver of the foregoing General and Specific Objections, the NFL believes that other providers of professional football that are currently telecasted live within the United States, or have been telecasted live within the United States during the proposed class period, may include (but may not be limited to): Alliance of American Football; Arena Football League; Canadian Football League; United Football League; XFL; and United States Football League. To the extent Plaintiffs seek information about the market shares of the foregoing entities, the NFL has not made such calculation. In any case, to the extent these calculations are relevant to this litigation, they are properly the subject of expert discovery.

**INTERROGATORY NO. 12:**

Describe in detail Your process for negotiating prices for the broadcast rights to live professional football games You sell or have sold, and the factors You consider in that process, including economic modeling, pricing strategies, structure of payment (flat fee up front or by season, license fee or percentage by viewing or carriage, etc.), practices, and policies, specific costs, customer types or attributes, and specific competitors and competing products.

**RESPONSE TO INTERROGATORY NO. 12:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the terms "process for negotiating prices," "pricing strategies,"

1  "practices, and policies," "specific costs," "customer types or attributes," and

2  "specific competitors and competing products" as vague and ambiguous.  The NFL

3  further objects to this interrogatory as overbroad as the NFL does not have a

4  centralized guidance or process for negotiating broadcast rights; the processes and

5  factors considered differ for each negotiation over each agreement with each

6  broadcast partners, and may change constantly throughout the negotiation process.

7  Subject to and without waiver of the foregoing General and Specific

8  Objections, the NFL states that numerous documents have been produced that are

9  responsive to this interrogatory with respect to broadcast agreements and

10  negotiations—for instance, NFL_0494465, NFL_0150063, and NFL_0236002—and

11  are as easily identified by Plaintiffs as they are by the NFL.

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12**

13  The NFL further objects to the extent this interrogatory seeks information from

14  prior to June 17, 2011, the start of the proposed class period.  Subject to and without

15  waiver of the foregoing General and Specific Objections, the NFL reiterates that there

16  is no centralized guidance or process for negotiating prices for broadcast rights; the

17  processes differ for each negotiation over each agreement with each broadcast

18  partner.  The NFL further states that price is one of many factors that are considered

19  by the NFL in its negotiations for the licensing of broadcast rights.  The NFL

20  considers many other factors as part of these negotiations, including the needs and

21  best interests of the NFL, the member Clubs, fans of the NFL and member Clubs,

22  and the NFL's broadcast partners, among others.

23  **INTERROGATORY NO. 13:**

24  Describe in detail Your role in consulting with, advising on, or approving the

25  prices charged by DIRECTV to NFL Sunday Ticket subscribers from January 1, 2011

26  to the present.

27

28

The NFL's Supplemental Objections and Responses to
Plaintiffs' Third Set of Interrogatories to the NFL

**RESPONSE TO INTERROGATORY NO. 13:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the extent this interrogatory suggests that the NFL has the authority to approve prices charged by DIRECTV to NFL Sunday Ticket subscribers. Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that, pursuant to the DIRECTV Sunday Ticket Agreements available at NFL_0000434 and NFL_0000458, DIRECTV has had "the discretion to determine . . . the prices for any and all subscription packages," subject to certain parameters as set forth in the Agreements' "Fees; Games; Packaging" provision, since before January 1, 2011.

**INTERROGATORY NO. 14:**

Describe in detail any and all demands by any party to limit the distribution of live telecasts of out-of-market games, including, but not limited to caps on the number of subscribers or methods of distribution for such telecasts.  Include whether those limitations were put into effect, how those limitations were memorialized, and the time period those limitations were effective.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to this interrogatory as unduly burdensome insofar as it lacks a temporal limitation.  The NFL also objects to the terms "any party" and "limit the distribution" as vague and ambiguous, and "any and all" as unduly burdensome.  The NFL further objects to the term "demands" as vague and ambiguous, and construes that term to refer to demands to third parties separate from the negotiated terms of any network broadcast agreement.

Subject to and without waiver of the foregoing General and Specific Objections, the NFL states the NFL has at times sent cease-and-desist letters to unauthorized showings of out-of-market games, examples of which can be found at NFL_0864258, NFL_0542337, and NFL_0542365, or commenced legal action

17

Case No. 2:15-ml-02668-PSG (JEMx)                    The NFL's Supplemental Objections and Responses to
                                                      Plaintiffs' Third Set of Interrogatories to the NFL

against infringers, as indicated in documents such as NFL_0857540, NFL_0857055, and NFL_0857075.  Apart from actions of this nature, the NFL states that the NFL and its member Clubs have not made any demands to limit the distribution of live telecasts of out-of-market NFL games.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**

The NFL further objects to the extent this interrogatory seeks information from prior to June 17, 2011, the start of the proposed class period.  The NFL continues to object to the terms "demands" and "limit the distribution" as vague and ambiguous. The NFL also objects to the term "live telecasts of out-of-market games" as vague and ambiguous, and interprets that term to refer only to live telecasts of full and complete out-of-market games, and to not include, for example, broadcasts of game highlights.  Subject to and without waiver of the foregoing General and Specific Objections, the NFL states that, in negotiations with its network partners CBS and Fox during the proposed class period, CBS and Fox have at times raised the possibility of limiting the distribution of live telecasts of out-of-market games, including limits on the number of subscribers and methods of distribution.  For example, as indicated in documents already produced to Plaintiffs, during the negotiations over the 2021 broadcast agreements between the NFL and CBS and Fox, both networks expressed certain opinions about the NFL's distribution of live telecasts of out-of-market games.  *See, e.g.*, NFL_0332089; NFL_1088736.  To the extent any such limitations were put into effect, they are memorialized in the executed broadcast agreements with the NFL's network partners.  *See, e.g.*, NFL_0458529;  NFL_0377291;  NFL_0989020;  NFL_0458699;  NFL_0419932; NFL_1087476.

**INTERROGATORY NO. 15:**

Identify all distributors in which You have licensed the rights to distribute live professional football telecasts in the United States and other countries from January 1, 2011 to the present; the scope of the license; the rights fee paid by that distributor

to You for each year during that period; the structure of payment (flat fee up front or by season, license fee or percentage by viewing or carriage, etc.); and the price(s) charged by that distributor to its subscribers for each year during that period for access to some or all of the games that that distributor has licensed (e.g., price for a single game; single team; full or partial season).

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the terms "distributors" and "scope of the license" as vague and ambiguous. The NFL further objects the request for information about "price(s) charged by that distributor" as overbroad and inappropriately directed at the NFL to the extent it seeks information about actions taken by third parties. Furthermore, the NFL objects to the request for information about telecasts distributed in other countries as irrelevant to this litigation and not proportional to the needs of this case. The NFL also objects to this interrogatory as compound despite being styled as a single Interrogatory. Because this interrogatory seeks information regarding five topics, each topic "must be considered a separate interrogatory." *See Mailhoit*, 2012 WL 12883970, at *2 (quoting *Willingham*, 226 F.R.D. at 59).

Finally, the NFL objects to this interrogatory as exceeding the number permitted pursuant to Rule 33(a)(1). Under Rule 33(a)(1), a party may "serve on any other party no more than 25 written interrogatories, including all discrete subparts." *See* Fed. R. Civ. P. 33(a)(1). Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were compound despite being styled as a single Interrogatory, and consisted of numerous subparts that should be treated as separate interrogatories under Rule 33(a)(1). *See* The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL

19

1   12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14

2   thus exceeds the number permitted under the Federal Rules of Civil Procedure.

3   **INTERROGATORY NO. 16:**

4        Identify each product "owned and operated" by the NFL Defendants that

5   distributes live professional football telecasts in the United States and other countries

6   from January 1, 2011 to the present, including, but not limited to, NFL Game Pass;

7   the number of telecasts on each such product in each country; the price(s) charged by

8   the NFL for each year during that period for access to some or all of the games

9   available on the product (e.g., price for a single game; single team; full or partial

10  season); and the structure of payment (flat fee up front or by season, license fee or

11  percentage by viewing or carriage, etc.).

12  **RESPONSE TO INTERROGATORY NO. 16:**

13       In addition to its previously stated General Objections, incorporated herein,

14  the NFL objects to this interrogatory as compound despite being styled as a single

15  Interrogatory.  Because this interrogatory seeks information regarding four topics,

16  each topic "must be considered a separate interrogatory."  *See Mailhoit*, 2012 WL

17  12883970, at *2 (quoting *Willingham*, 226 F.R.D. at 59).  The NFL further objects

18  to the terms "product" and "distributes" as vague and ambiguous.  In addition, the

19  NFL objects to the request for information about products in other countries as

20  irrelevant to this litigation and not proportional to the needs of this case.

21  Furthermore, the NFL objects to this interrogatory as overbroad, not relevant to any

22  of Plaintiffs' claims, and thus not proportionate to the needs of the case.

23  Investigation, collection, and review of information relating to "each product 'owned

24  and operated' by the NFL Defendants that distributes live professional football

25  telecasts in the United States and other countries" is unduly burdensome relative to

26  the value of such information to determination of the facts and legal questions at issue

27  in this litigation.

28

1    Finally, the NFL objects to this interrogatory as exceeding the number
2  permitted pursuant to Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any
3  other party no more than 25 written interrogatories, including all discrete subparts."
4  *See* Fed. R. Civ. P. 33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory
5  No. 2, were compound despite being styled as a single Interrogatory, and consisted
6  of numerous subparts that should be treated as separate interrogatories under Rule
7  33(a)(1).  *See* The NFL's Supplemental Objections and Responses to Plaintiffs'
8  Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs'
9  Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of
10  the interrogatory that precedes it,' each topic 'must be considered a separate
11  interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL
12  12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14
13  thus exceeds the number permitted under the Federal Rules of Civil Procedure.

14  **INTERROGATORY NO. 17:**

15    Identify each source of revenue to the NFL's Clubs from January 1, 2011 to
16  the present; whether that form of revenue is shared among the Clubs and the NFL
17  Defendants; and, if it is shared, the degree to which it is shared, including the
18  percentage of revenue that is retained by Clubs or by the League and the percentage
19  that is shared, with what percentage going to which Club (or a formulaic description
20  with which it is possible to calculate such percentages).

21  **RESPONSE TO INTERROGATORY NO. 17:**

22    In addition to its previously stated General Objections, incorporated herein,
23  the NFL objects to this interrogatory as exceeding the number permitted pursuant to
24  Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any other party no more
25  than 25 written interrogatories, including all discrete subparts."  *See* Fed. R. Civ. P.
26  33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were
27  compound despite being styled as a single Interrogatory, and consisted of numerous
28  subparts that should be treated as separate interrogatories under Rule 33(a)(1).  *See*

The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL 12883970, at *2)).   Every interrogatory following Plaintiffs' Interrogatory No. 14 thus exceeds the number permitted under the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 18:

Describe in detail the costs that would be borne by You if the Clubs could: (a) license live telecasts or live telecast retransmissions of regular season games separate from the NFL Defendants; (b) launch, operate, or participate in the launch or operation of, a Club-dedicated Network; or (c) acquire or hold an equity or quasi-equity interest in a Club-equity Network.

## RESPONSE TO INTERROGATORY NO. 18:

In addition to its previously stated General Objections, incorporated herein, the NFL objects to this interrogatory as compound despite being styled as a single Interrogatory.  Because this interrogatory seeks information regarding three topics, each topic "must be considered a separate interrogatory."  *See Mailhoit*, 2012 WL 12883970, at *2 (quoting *Willingham*, 226 F.R.D. at 59).   The NFL further objects to the term "costs that would be borne" as ambiguous.

Furthermore, the NFL objects to this interrogatory to the extent it requests the NFL to speculate about a hypothetical situation in an undefined timeframe.  Such an inquiry is overbroad and not relevant to any of Plaintiffs' claims.  Further, speculation about costs in any such hypothetical would be unduly burdensome relative to the value of such information to determination of the facts and legal questions at issue in this litigation, particularly as there are numerous factors that would affect any such costs and the NFL is unable to speculate about those factors or resulting costs with any degree of certainty.  In addition, to the extent this interrogatory challenges

22

Case No. 2:15-ml-02668-PSG (JEMx)                    The NFL's Supplemental Objections and Responses to
                                                     Plaintiffs' Third Set of Interrogatories to the NFL

policies not included in the claims in Plaintiffs' Consolidated Amended Complaint—
*i.e.*, the Clubs' agreement to refrain from launching, operating, participating in the
launch or operation of, a Club-dedicated Network, or acquiring or holding an equity
or quasi-equity interest in, a Club-equity Network—such a challenge is beyond the
scope of this litigation.

Finally, the NFL objects to this interrogatory as exceeding the number
permitted pursuant to Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any
other party no more than 25 written interrogatories, including all discrete subparts."
*See* Fed. R. Civ. P. 33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory
No. 2, were compound despite being styled as a single Interrogatory, and consisted
of numerous subparts that should be treated as separate interrogatories under Rule
33(a)(1).  *See* The NFL's Supplemental Objections and Responses to Plaintiffs'
Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs'
Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of
the interrogatory that precedes it,' each topic 'must be considered a separate
interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL
12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14
thus exceeds the number permitted under the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 19:**

Describe in detail the costs that would be borne by You if NFL Sunday Ticket
were licensed on a non-exclusive basis in the United States.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to its previously stated General Objections, incorporated herein,
the NFL objects to the terms "costs that would be borne" as vague and ambiguous,
and "on a non-exclusive basis" as vague, ambiguous, and overly burdensome in that
there are infinite alternative licensing structures that could arise if the NFL Sunday
Ticket package were licensed "on a non-exclusive basis."  Plaintiffs have not
identified what those licensing structures would look like in this hypothetical, and

23

regardless, the NFL objects to the request to speculate about a hypothetical situation in an undefined timeframe.   Such an inquiry is overbroad and not relevant to any of Plaintiffs' claims.  Further, speculation about costs in any such hypothetical would be unduly burdensome relative to the value of such information to determination of the facts and legal questions at issue in this litigation, particularly as there are numerous factors that would affect any such costs and the NFL is unable to speculate about those factors or resulting costs with any degree of certainty.

Finally, the NFL objects to this interrogatory as exceeding the number permitted pursuant to Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any other party no more than 25 written interrogatories, including all discrete subparts." *See* Fed. R. Civ. P. 33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were compound despite being styled as a single Interrogatory, and consisted of numerous subparts that should be treated as separate interrogatories under Rule 33(a)(1).  *See* The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL 12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14 thus exceeds the number permitted under the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 20:

Describe in detail the costs that would be borne by You if You chose to license within the United States to DIRECTV as smaller packages of telecasts, including, but not limited to, for each conference or specific Club, rather than on a league-wide basis.

## RESPONSE TO INTERROGATORY NO. 20:

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the term "costs that would be borne" as vague and ambiguous.

24

Case No. 2:15-ml-02668-PSG (JEMx)                    The NFL's Supplemental Objections and Responses to
Plaintiffs' Third Set of Interrogatories to the NFL

The NFL further objects to the phrase "if You chose to license within the United States to DIRECTV as smaller packages of telecasts" as vague, ambiguous, and overly burdensome in that Plaintiffs fail to specify what the NFL is licensing as smaller packages of telecasts in this hypothetical. Furthermore, the NFL objects to this interrogatory to the extent it requests the NFL to speculate about a hypothetical situation in an undefined timeframe. Such an inquiry is overbroad and not relevant to any of Plaintiffs' claims. Further, speculation about costs in any such hypothetical would be unduly burdensome relative to the value of such information to determination of the facts and legal questions at issue in this litigation, particularly as there are numerous factors that would affect any such costs and the NFL is unable to speculate about those factors or resulting costs with any degree of certainty.

Finally, the NFL objects to this interrogatory as exceeding the number permitted pursuant to Rule 33(a)(1). Under Rule 33(a)(1), a party may "serve on any other party no more than 25 written interrogatories, including all discrete subparts." *See* Fed. R. Civ. P. 33(a)(1). Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were compound despite being styled as a single Interrogatory, and consisted of numerous subparts that should be treated as separate interrogatories under Rule 33(a)(1). *See* The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL 12883970, at *2)). Every interrogatory following Plaintiffs' Interrogatory No. 14 thus exceeds the number permitted under the Federal Rules of Civil Procedure.

**<u>INTERROGATORY NO. 21:</u>**

Identify each specific provision in the NFL Constitution, the NFL's bylaws, or any other agreement or contract in which the NFL's Clubs: (a) pool or transfer their rights to license television broadcasts of regular season NFL games to the NFL

Defendants; (b) are permitted to license television broadcasts of pre-season NFL games; (c) are permitted to license radio broadcasts of NFL games; (d) are restricted from licensing live television broadcasts or live telecasts retransmissions of regular season NFL games separate from the NFL Defendants; (e) agree to share the revenue earned by the NFL Defendants in licensing television broadcasts of regular season NFL games; (f) are permitted to use the intellectual property of the NFL Defendants or other Clubs in non-game programming; (g) are restricted from launching, operating, or participating in the launch or operation of, a Club-dedicated Network; and (h) are restricted from acquiring or holding an equity or quasi-equity interest in a Club-equity Network.

**RESPONSE TO INTERROGATORY NO. 21:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to this interrogatory as compound despite being styled as a single Interrogatory. Because this interrogatory seeks information regarding eight topics, each topic "must be considered a separate interrogatory." *See Mailhoit*, 2012 WL 12883970, at *2 (quoting *Willingham*, 226 F.R.D. at 59).

The NFL further objects to the terms "any other agreement," "permitted to," "restricted from," and "separate from the NFL Defendants" as vague and ambiguous. In addition, the NFL objects to the extent the request to "[i]dentify each specific provision" about the conjunctive list of eight topics assumes the existence of provisions about each of those topics in each of the NFL Constitution, the NFL's bylaws, and any other agreement or contract. Furthermore, the request for information in "any other agreement or contract" without a temporal limit as unduly burdensome, and the request for information on preseason telecasts is irrelevant to Plaintiffs' claims, not proportionate to the needs of the case, and unduly burdensome relative to the value of such information in this litigation. The NFL also objects to this interrogatory to the extent it seeks information about documents in the Plaintiffs' possession, and thus is equally available to Plaintiffs.

Finally, the NFL objects to this interrogatory as exceeding the number permitted pursuant to Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any other party no more than 25 written interrogatories, including all discrete subparts."  *See* Fed. R. Civ. P. 33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were compound despite being styled as a single Interrogatory, and consisted of numerous subparts that should be treated as separate interrogatories under Rule 33(a)(1).  *See* The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL 12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14 thus exceeds the number permitted under the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 22:**

Identify every study or survey conducted or commissioned by You to examine the retail-level pricing or viewership of any product that contains or service that distributes telecasts of live NFL football games in the United States or any other country.

**RESPONSE TO INTERROGATORY NO. 22:**

In addition to its previously stated General Objections, incorporated herein, the NFL objects to the terms "study or survey," "conducted or commissioned," "examine," "retail-level pricing," and "viewership" as vague and ambiguous.  The NFL further objects to the term "any product that contains or service that distributes" as vague, ambiguous, and unduly burdensome.  To the extent this interrogatory requests information about telecasts in other countries, such a request is as irrelevant to this litigation and not proportional to the needs of this case.  To the extent this interrogatory requests information without a temporal limitation, such a request is unduly burdensome.

27

Case No. 2:15-ml-02668-PSG (JEMx)          The NFL's Supplemental Objections and Responses to
                                           Plaintiffs' Third Set of Interrogatories to the NFL

Finally, the NFL objects to this interrogatory as exceeding the number permitted pursuant to Rule 33(a)(1).  Under Rule 33(a)(1), a party may "serve on any other party no more than 25 written interrogatories, including all discrete subparts." *See* Fed. R. Civ. P. 33(a)(1).  Prior interrogatories, including Plaintiffs' Interrogatory No. 2, were compound despite being styled as a single Interrogatory, and consisted of numerous subparts that should be treated as separate interrogatories under Rule 33(a)(1).  *See* The NFL's Supplemental Objections and Responses to Plaintiffs' Interrogatory No. 2, at 3 n.1 ("Because each of the nine topics [in Plaintiffs' Interrogatory No. 2] is 'separate and distinct from the inquiry made by the portion of the interrogatory that precedes it,' each topic 'must be considered a separate interrogatory no matter how it is designated.'" (*quoting Mailhoit*, 2012 WL 12883970, at *2)).  Every interrogatory following Plaintiffs' Interrogatory No. 14 thus exceeds the number permitted under the Federal Rules of Civil Procedure.

Dated:  April 29, 2022                    Respectfully submitted,

/s/ *Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

29

# VERIFICATION

I, Dolores DiBella, declare as follows:

I am the Vice President of Legal Affairs at the National Football League and
am authorized to sign this verification for and on behalf of the NFL. I have read the
NFL's Objections and Responses to Plaintiffs' Third Set of Interrogatories to the
NFL and know the contents thereof. I am informed and believe that the matters stated
in the Responses are true.

I declare under penalty of perjury of the laws of the United States of America
that the foregoing is true and correct to the best of my knowledge.

Dated: April 28, 2022

Dolores DiBella

# CERTIFICATE OF SERVICE

I, Jeremy S. Barber, attorney at Wilkinson Stekloff LLP, hereby certify that, on April 29, 2022, I caused the foregoing NFL's Objections and Responses to Plaintiffs' Third Set of Interrogatories to the NFL to be served via email delivery on the following counsel:

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Howard I. Langer
LANGER, GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
hlanger@langergrogan.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

*Co-Lead Plaintiffs' Counsel*

Executed on April 29, 2022.

By: /s/ Jeremy S. Barber
Jeremy S. Barber