Beth Wilkinson (admitted *pro hac vice*)
Brian Stekloff (admitted *pro hac vice*)
Rakesh Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National
Football League, NFL Enterprises LLC,
and the Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION, | Case No. 2:15-ml-02668-PSG (JEMx) |
| _____ | **DISCOVERY MATTER** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | **JOINT STATUS REPORT ON THE NFL DEFENDANTS' MOTION TO COMPEL COMMERCIAL PLAINTIFFS TO RESPOND TO INTERROGATORY NO. 10** |
| | Magistrate Judge: Hon. John E. McDermott |
| | Discovery Cutoff Date: 8/5/2022 Pretrial Conference Date: 2/9/2024 Trial Date: 2/22/2024 |

Pursuant to the Court's May 9, 2022, Order regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10 ("Order") (ECF No. 472), Plaintiffs and the NFL Defendants respectfully submit this Joint Status Report (the "Report").

## I.   BRIEF SUMMARY OF THE ISSUE

On April 26, 2022, the parties filed a Joint Stipulation Regarding the NFL Defendants' Motion to Compel Commercial Plaintiffs to Respond to Interrogatory No. 10 ("Joint Stipulation") (ECF No. 462), in which the NFL Defendants sought an order compelling Commercial Plaintiffs to respond to an Interrogatory that asked the Commercial Plaintiffs to "[i]dentify the approximate amount of revenue generated on each day of the week and identify the day of the week that your establishment generated the most revenue."

On May 9, 2022, the Court issued an Order determining that it "will consider discoverability of the downstream data sought by Interrogatory No. 10 if the burden is not undue," Order at 2, and ordering the parties to "meet and confer on what, if any, revenue data exists and whether it can be feasibly produced." *Id.* at 3.  The parties were ordered to submit a Joint Status Report on or before May 17, 2022. *Id.* The parties met and conferred on May 13, 2022, but no consensus or agreement was reached.

### A.   Commercial Plaintiffs' Position

In its May 9, 2022 order, the Court required the parties to meet and confer on the burden associated with responding to the NFL Defendants' Interrogatory No. 10 and instructed the parties to submit a joint status report by May 17, 2022 (if the parties could not resolve the dispute) on "what, if any revenue data exists" in Commercial Plaintiffs' custody, control, or possession that could answer the interrogatory and whether Commercial Plaintiffs can feasibly produce it.

Mindful of the Court's order, Plaintiffs re-confirmed that both Commercial Plaintiffs have no data or documents in their possession, custody, or control that

record revenues on a daily basis during the relevant period or otherwise permit calculations to determine revenues on a daily basis. The attached supplemental declarations of Jason Baker and Eugene Lennon detail further that Mucky Duck maintains only its annual tax records from 2011 to the present (and *monthly* revenue tallies from 2010 to the present) and Gael Pub has only its annual tax records from 2010 to 2019. As a result, Gael Pub and Mucky Duck cannot, as the NFL Defendants ask it to do, "[i]dentify the approximate amount of revenue generated on each day of the week" for the last eleven years or "the day of the week that your establishment generated the most revenue." Moreover, monthly and annual data provide nothing relevant to whether the Commercial Plaintiffs' establishments experience greater revenue on Sundays during football season compared to other days of the week. The burden associated with responding to the NFL Defendants' Interrogatory No. 10 is insurmountable.

Plaintiffs met and conferred with the NFL Defendants and explained all of this on Friday, May 13, 2022, consistent with the declarations previously submitted to the Court, and proposed two compromises in an effort to resolve this dispute: first, notwithstanding Plaintiffs' continuing concerns about downstream discovery and relevance, the NFL Defendants could probe the highest-grossing day of the week in Commercial Plaintiffs' future depositions (and, for that matter, ask questions about daily revenues), and Commercial Plaintiffs will answer to the best of their recollection. Second, Commercial Plaintiffs offered to amend their interrogatory responses, in light of the Court's order, to reflect their best recollection of the highest-grossing day(s) of the week during the NFL season while noting their inability to answer with precision. To the extent that the NFL Defendants want to know the answer outside of the NFL season, Commercial Plaintiffs could also address that too in their substantive response (that is, *e.g.*, what factors tended to drive business on different days of the week outside of the NFL season).[1]

---

[1] In the spirit of that compromise, the attached supplemental declarations of

2

To Plaintiffs' surprise, the NFL Defendants rejected this proposed resolution, instead insisting that the Court's order requires document production of Commercial Plaintiffs' financial records *of any kind*, regardless of whether it might enable an answer to the interrogatory at issue. This slippery slope, untethered to Interrogatory No. 10 (and the NFL Defendants' suggested relevance for its interrogatory), is precisely what Commercial Plaintiffs feared the NFL Defendants intended by seeking downstream discovery in the first place: in effect, a license to rummage through Commercial Plaintiffs' financial information of any sort unrelated to the NFL Defendants' proposals about relevant-market analysis. *See* Joint Stipulation, ECF No. 466 at 9:15-10:12.

Commercial Plaintiffs respectfully submit that the NFL Defendants misunderstand the Court's May 9, 2022, order. This Court evaluated the possibility of limited downstream discovery, in the form of Interrogatory No. 10, on the basis of the NFL Defendants' two relevance arguments. As to its bearing on class certification, the Court explained it "is highly skeptical of NFL Defendants' desire to obtain the data for class certification purposes" in this "antitrust overcharge case that affects all class members." Order at 2. As to its bearing on market definition, the NFL Defendants proposed that "[c]omparison of the amount of revenue earned on Sundays (when out-of-market NFL football games are shown on Sunday Ticket) versus other days of the week (when other entertainment or sports were available for customers on the establishments' televisions) is relevant to determining whether other television programming is substitutable for live NFL telecasts." And given that rationale, the Court "[could not] say that the *requested* data is irrelevant to market definition in determining whether other television programming is substitutable," *id.* at 2, prompting it to evaluate burden, for which it needed more information, including "what, if any revenue data exists," to "consider discoverability of the downstream data sought by Interrogatory No. 10 . . . ." and the possibility of a Rule Eugene Lennon and Jason Baker provide that information here.

33(d) solution.

The NFL Defendants' attempt now, to convert an interrogatory dispute about daily revenues into an altogether different, and much larger, discovery effort aimed at Commercial Plaintiffs' finances, exemplifies the downstream "fishing expeditions" that concerns courts in this circuit and elsewhere. *See, e.g., In re Glumetza Antitrust Litig*., No. 19CV05822WHARMI, 2020 WL 3498067, at *14 (N.D. Cal. June 29, 2020) (collecting cases and emphasizing *Hanover Shoe* and *Illinois Brick* in rejecting discovery into downstream purchase and sales data); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 1533221, at *3 (N.D. Ill. Apr. 27, 2012) (likewise noting "the long-held precedent of proscribing downstream discovery in antitrust litigation"); *Meijer Inc. v. Abbott Laboratories*, 251 F.R.D 431, 434 (N.D. Cal. 2008) (noting the "potential deterrent effect" of permitting fishing expeditions into plaintiffs' downstream data); *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) (reaffirming the "the long-held practice of proscribing discovery of downstream data and financial information"). The NFL Defendants' new project, unrelated to market definition, serves as a reminder of the Supreme Court's warning that diversions into downstream inquiries have the potential to "substantially reduce[]" the effectiveness of antitrust actions (and their desired deterrent effect). *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-94 (1968).

Plaintiffs acknowledge that this Court has determined that "the *requested data*" may be relevant to market definition "in determining whether other television programming is substitutable" Order, ECF No. 472 at 2 (emphasis added). But the requested data do not exist, which is why Plaintiffs have offered to amend their interrogatory responses (and answer deposition questions) to reflect their best recollections. Rule 33(d)(1), which this Court noted might yield a solution, provides the "option to produce business records" only "if the answer to an interrogatory may

4

JOINT STATUS REPORT ON THE NFL DEFENDANTS' MOTION TO COMPEL COMMERCIAL
PLAINTIFFS TO RESPOND TO INTERROGATORY NO. 10
CASE NO.  2:15-ML-02668-PSG (JEMX)

be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information)." Here, there are no business records that might yield an answer to the NFL Defendants' Interrogatory No. 10.

In any event, even if the particular data sought by Interrogatory No. 10 existed, it would, at most, tell the story of customer experiences at two commercial establishments among thousands in the class, a limited snapshot of any "substitutability." *See In re: Pool Products Distribution Market Antitrust Litig.*, Case No. 2:12-md-02328-SSV-JCW, Pretrial Order No. 15 (Dkt. No. 174) (E.D. La. Nov. 6, 2012) (rejecting downstream discovery as not germane to market definition purposes and noting the class representatives "are only seven of out of hundreds of Pool Products dealers").

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

In the face of this detailed information and Commercial Plaintiffs' offer of compromise, the NFL Defendants pivot instead to requests for production about broader financial information, an altogether different front in their efforts at downstream discovery that has *never* been briefed before this Court and is, as the NFL Defendants appear to concede, not "the subject of the present dispute." The NFL Defendants largely abandon their earlier relevance arguments about substitutability—and Interrogatory No. 10's focus on daily information—in questioning the burden of producing aggregate financial data that cannot answer the question at hand.[2] Plaintiffs respectfully submit that the NFL cannot convert their motion to compel a particular interrogatory response into a motion to compel differing document productions outside of the process mandated by the Local Rules. Order at 3 (emphasizing adherence to Local Rules 37-2.2 and 37-2.3). This is all the

---

[2] Using aggregate revenue information as "a foundation to probe the extent of daily revenue information," as the NFL Defendants now propose, is a far cry from the actual Interrogatory No. 10 and camouflage for insisting now on all revenue information, notwithstanding the parties' previous negotiations on this very issue.

more true given the NFL Defendants' mistaken views of a complex negotiation and meet-and-confer process that spanned six months and included numerous agreements and compromises that have nothing to do with the present dispute. Commercial Plaintiffs never agreed to produce all downstream financial data, as the NFL Defendants' own exhibits demonstrate.  On the contrary, Commercial Plaintiffs objected to the relevance of downstream requests, Ex. B. ("Commercial Plaintiffs further object to this Request because it calls for information and documents that are not relevant to claims or defenses in this action"); wrote a letter specifically citing objections to burden, relevance, and proportionality concerning the production of financial documents, *see* Mirzadeh Decl., Ex. 1 (October 21, 2021 Letter from Scott Martin to Roxana Guidero); and, met and conferred with the NFL Defendants and worked out a middle ground: "As specifically discussed with respect to Requests seeking financial information (tax filings, register receipts, etc.) of the Commercial Plaintiffs, and without waiver of objections," Commercial Plaintiffs merely "agree[d] to provide a year-by-year summary of profits/losses," Ex. C, which Gael Pub has completed and Mucky Duck will provide to the NFL Defendants shortly (candidly, all parties seem to have forgotten about that particular outstanding task amid dozens of concurrent discovery efforts). NFL Defendants are merely attempting to re-open previous negotiations and *resolution* of downstream objections.

The NFL Defendants also mischaracterize the parties' meet and confer and attempts to reach resolution.  Plaintiffs engaged meaningfully with the question of whether any revenue data exists that might answer Interrogatory No. 10 (and associated burden)—and explained there is none, only aggregate information at the annual and monthly level unresponsive to Interrogatory No. 10.  Despite an hour-long conversation; Plaintiffs' encouragement of resolution and compromise, especially given the Court's admonition against bickering (Order at 3); and detailed additional information Plaintiffs provided the very next business day, the NFL

Defendants are still not satisfied with the Commercial Plaintiffs' answers about their ability to answer Interrogatory No. 10. But there can be no more concrete explanation of Commercial Plaintiffs' inability to respond to Interrogatory No. 10 as written.

Commercial Plaintiffs also detailed their compromise proposal above, which would enable at least a partial response to the interrogatory. In doing so, Plaintiffs flagged their continuing concerns about downstream discovery but recognized too that the Court "cannot say that the *requested* data is irrelevant to market definition in determining whether other television programming is substitutable." Order at 2 (emphasis added). The NFL Defendants now scoff at this compromise, but they cannot explain how Commercial Plaintiffs could ever provide "information about the extent of the disparity in revenue generated on the different days of the week, both during and outside the NFL regular season" or the "impact of the seasons of other sports leagues on Commercial Plaintiffs' revenue." The NFL Defendants ask for the impossible. Notably, too, the NFL Defendants never budged toward compromise or suggested a solution, instead now demanding all revenue data in any form (however unresponsive to Interrogatory No. 10 and notwithstanding the negotiations on production of such information) *and* a complete substantive response to Interrogatory No. 10—however impossible—as they do again here.

To the extent that the NFL Defendants rehash the parties' differing understandings of the Court's order, Plaintiffs have addressed that disagreement above. Plaintiffs have investigated at length the option of responding to Interrogatory No. 10 via Rule 33(d) and determined that it is not feasible.

**B. The NFL Defendants' Position**

More than a year ago, the NFL Defendants served two document requests on Commercial Plaintiffs seeking relevant financial information, including revenue records. *See* NFL Defendants' First Set of Requests for the Production of Documents, Request Nos. 19–20. [Ex. A.]. Commercial Plaintiffs did not make any

7

downstream discovery objections; rather, they agreed to search for and produce documents responsive to those requests. *See* Commercial Plaintiffs' Responses to NFL Defendants First Set of Requests for the Production of Documents, Response to Request No. 19 [Ex. B] ("Commercial Plaintiffs will produce documents responsive to this Request to the extent that they exist, have not previously been produced, and are located during a reasonable search for documents."). However, Commercial Plaintiffs later represented (inaccurately, it seems) that they did not possess much, if any, responsive revenue documents.[3]   Rather than challenge that representation, despite the NFL Defendants' skepticism—skepticism that this Court also shares, Order at 3—the NFL Defendants served Interrogatory No. 10, which sought to have Plaintiffs "[i]dentify the approximate amount of revenue generated on each day of the week and identify the day of the week that your establishment generated the most revenue" in a written response. (Dkt. 462-3, p. 8).  Commercial Plaintiffs' refusal to respond to that Interrogatory in a meaningful way is the subject of the present dispute.

Consistent with the Court's May 9, 2022 Order, the parties met and conferred for more than an hour on May 13, 2022.   During that conference, the NFL Defendants received confirmation that, despite previous representations made by Commercial Plaintiffs on October 29, 2021 that they had produced "any responsive, non-privileged documents that were located" in response to the NFL Defendants'

---

[3]  Commercial Plaintiffs agreed to produce a year-by-year summary of their profits/losses during the class period.   Gael Pub produced a single one-page document that lists what appears to be its total profit/loss amount per year between 2011 and 2019.  The document is divided into two columns and simply includes the year on the left-hand column and the total profit/loss value in the right-hand column. Mucky Duck did not produce any responsive financial information.  Such a limited production was predicated on the NFL Defendants' understanding that there were no additional responsive documents.  Mucky Duck also claims it "had no reason to" and "had no interest in" maintaining "financial records by daily revenue," *see* Baker Decl. ¶ 9.   Whether or not that is true, given that Mucky Duck is an ongoing business and has been aware of the NFL Defendants' document requests since March 31, 2021, it would have been incumbent on Mucky Duck to preserve this information from that date to present. Moreover, given that both Commercial Plaintiffs are litigants that filed suit in a complex antitrust litigation, the expectation would be that they would preserve such financial documents given their probable relevance.

document requests, *see* Email from S. Martin to R. Guidero, dated Oct. 29, 2021 [Ex. C.], Commercial Plaintiffs actually do possess revenue information responsive to the NFL Defendants' multiple discovery requests.[4]   In fact, the NFL Defendants have now further learned through this new declaration of Eugene Lennon that Gael Pub kept "weekly or monthly [financial tally records] for accounting purposes." Lennon Decl. ¶ 9.   Whatever remains of these records, as well as the tax records identified in Mr. Lennon's declaration, *id.* ¶ 7, are relevant not only to Interrogatory No. 10, but also to the NFL Defendants' prior discovery requests that may have obviated the need for Interrogatory No. 10.

Nevertheless, Commercial Plaintiffs took (and continue to take) the position that they were (and are) not required to produce these records, citing continued concerns about downstream discovery.   However, this Court has already largely resolved those substantive objections.   *See* Order at 2 (noting that the Court made clear that it "cannot say that the requested data is irrelevant to market definition in determining whether other television programming is substitutable" and that it "will consider discoverability of the downstream data sought by Interrogatory No. 10 if the burden is not undue.").   In fact, this Court has explicitly demanded an explanation as to "why [Mucky Duck] cannot produce whatever revenue data is in its custody, control, or possession." *See* Order at 4.

---

[4] While the present dispute over Commercial Plaintiffs' revenue data arose in the context of Interrogatory No. 10, this dispute in fact implicates long sought-after revenue data.   The Interrogatory dispute is therefore inextricably linked to Commercial Plaintiffs' misrepresentation and failure to produce documents responsive to the NFL Defendants' existing document requests.   It is for this reason that no meet and confer specifically addressing the revenue documents that Commercial Plaintiffs acknowledge they possess is necessary.   The NFL Defendants fulfilled its obligation under Local Rule 37 when it initially reached out to Plaintiffs to discuss their deficient responses and objections to the NFL Defendants First Set of Requests for Production of Documents.   Moreover, any meet and confer would be futile because Commercial Plaintiffs have fervently maintained that they will not produce revenue records in their possession. *See Gayler v. High Desert State Prison*, 2020 WL 1149894, at * 1 n.2 (D. Nev. Mar. 9, 2020) ("Futility is a recognized basis, under some circumstances, to excuse a failure to meet and confer.").

9

During the parties' conference, when pressed, Commercial Plaintiffs refused to explain with any detail what type of revenue records are in their possession, the time period covered, and why those records had not previously been produced. They now improperly claim in this Joint Statement that they did elaborate on the extent of the records in their possession. This is incorrect. Commercial Plaintiffs merely acknowledged that "piecemeal" revenue records exist, in "aggregated form," without explaining what that meant. Because Commercial Plaintiffs were not willing to provide meaningful context about the revenue information in their possession, the parties were unable to engage in a worthwhile discussion about the burdens involved in production of that information. Had Commercial Plaintiffs provided the necessary insight into the revenue records in their possession, the NFL Defendants would have been better placed to engage with Commercial Plaintiffs' unsupported claims that responding to Interrogatory No. 10 is unduly burdensome, as ordered by this Court.

It bears mentioning that the NFL Defendants continue to be skeptical of Mucky Duck's claim that they are not in possession of records that would detail daily revenue, especially in light of the fact that the bar is still in operation and needs to maintain inventory, pay employees, protect itself against misappropriation of funds, etc. Nonetheless, even the weekly, monthly, and annual records that Mucky Duck and Gael Pub now acknowledge they possess, are relevant to both Interrogatory No. 10 and market definition more generally.

*First*, with regard to Interrogatory No. 10, the NFL Defendants would use Commercial Plaintiffs' existing revenue records, in a deposition or otherwise, as a foundation to probe the extent of daily revenue information. Put another way, if NFL Defendants know the extent of Commercial Plaintiffs' weekly or monthly revenue, they can use that to question the employees of the Commercial Plaintiffs as to what percentage of that revenue was generally allotted on each day of the week, giving the NFL Defendants a sense as to the comparative amounts incurred when

live NFL games are broadcast and when they are not.  Such deposition testimony would be far more valuable than Plaintiffs' suggestion that the NFL Defendants blindly asking deposition questions targeted at revenue without any responsive documents in their possession.  *Second*, the data is independently relevant to market definition, as it allows the NFL Defendants to evaluate Commercial Plaintiffs' comparative financial success at a weekly, monthly, and annual level during and outside of the NFL regular season, which is relevant to the substitutability of live NFL telecasts for market definition purposes.

Rather than provide the relevant revenue documentation that the NFL Defendants have long sought, Commercial Plaintiffs instead offered only to answer a pared-down version of Interrogatory No. 10 at the May 13 conference.  Specifically, Commercial Plaintiffs offered to address *only* whether, during the NFL regular season, Commercial Plaintiffs generated the most revenue on Sundays—a question they now voluntarily answer in their respective declarations.  In making this offer, however, Commercial Plaintiffs were clear that any such response would not include the production of the revenue records in their custody, possession, or control, thus insulating them from further meaningful inquiry at a deposition.  This so-called compromise fell far short of what the Interrogatory calls for and what this Court ordered of Commercial Plaintiffs, *i.e.*, to "produce their revenue records 'as is' for the relevant time period, supported by declarations from the partner/proprietor that they have produced all revenue records in their control, custody or possession."[5]  Order at 4.

Further, any claim by Commercial Plaintiffs that it would be unduly burdensome to produce records presently in their possession strains credulity.  Those

---

[5] For example, Plaintiffs' compromise offer would not provide the NFL Defendants with information about the extent of the disparity in revenue generated on the different days of the week, both during and outside the NFL season.  It also would not allow the NFL Defendants to understand the impact of the seasons of other sports leagues on Commercial Plaintiffs' revenue.  All of this information is relevant to market definition.

11

claims are further undermined by the minimal discovery provided to date by Commercial Plaintiffs, particularly compared to the productions made by the NFL Defendants.[6]

In the end, Commercial Plaintiffs have frustrated the discovery process and repeatedly sought to inhibit the disclosure of relevant information sought by the NFL Defendants.  This Court should instruct Commercial Plaintiffs to comply with its existing Court Order and promptly produce the revenue records in their possession and to otherwise provide a substantive response to Interrogatory No. 10 to the extent possible based on the records in their possession.

Dated:  May 17, 2022

By:  /s/ Beth A. Wilkinson

---

[6] Commercial Plaintiffs have, to date, produced only 177 documents consisting of 332 pages in this litigation, whereas the NFL Defendants have produced 135,744 documents consisting of 1,229,567 pages.

|   |   |
|---|---|
| 1 | Beth A. Wilkinson (admitted *pro hac vice*) |
| 2 | Brian L. Stekloff (admitted *pro hac vice*)<br>Rakesh N. Kilaru (admitted *pro hac vice*) |
| 3 | Jeremy S. Barber (admitted *pro hac vice*)<br>**WILKINSON STEKLOFF LLP** |
| 4 | 2001 M Street NW, 10th Floor<br>Washington, DC 20036 |
| 5 | Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005 |
| 6 | bwilkinson@wilkinsonstekloff.com<br>bstekloff@wilkinsonstekloff.com |
| 7 | rkilaru@wilkinsonstekloff.com<br>jbarber@wilkinsonstekloff.com |
| 8 | Neema T. Sahni (Bar No. 274240) |
| 9 | **COVINGTON & BURLING LLP**<br>1999 Avenue of the Stars |
| 10 | Suite 1500<br>Los Angeles, CA 90067-6045 |
| 11 | Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749 |
| 12 | nsahni@cov.com |
| 13 | Gregg H. Levy (admitted *pro hac vice*)<br>Derek Ludwin (admitted *pro hac vice*) |
| 14 | **COVINGTON & BURLING LLP**<br>One CityCenter |
| 15 | 850 Tenth Street NW<br>Washington, DC 20001 |
| 16 | Telephone: (202) 662-6000<br>Facsimile: (202) 662-6291 |
| 17 | glevy@cov.com<br>dludwin@cov.com |
| 18 | *Counsel for Defendants National Football* |
| 19 | *League, NFL Enterprises LLC, and the*<br>*Individual NFL Clubs* |
| 20 | By: */s/ Marc M. Seltzer* |
| 21 | MARC M. SELTZER (54534) |
| 22 | mseltzer@susmangodfrey.com<br>SUSMAN GODFREY L.L.P. |
| 23 | 1900 Avenue of the Stars, 14th Floor<br>Los Angeles, CA 90067 |
| 24 | Tel: (310) 789-3100<br>Fax: (310) 789-3150 |
| 25 | SCOTT MARTIN |
| 26 | smartin@hausfeld.com<br>HAUSFELD LLP |
| 27 | 33 Whitehall Street, 14th Floor<br>New York, NY 10004 |
| 28 | Tel: (646) 357-1100<br>Fax: (212) 202-4322 |

13

JOINT STATUS REPORT ON THE NFL DEFENDANTS' MOTION TO COMPEL COMMERCIAL
PLAINTIFFS TO RESPOND TO INTERROGATORY NO. 10
CASE NO. 2:15-ML-02668-PSG (JEMX)

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
EDWARD DELMAN
edelman@susmangodfrey.com
TYLER FINN
tfinn@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200/Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
lebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908/Fax: (415) 358-4980

*Attorneys for Plaintiffs' Co-Lead Counsel*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

JOINT STATUS REPORT ON THE NFL DEFENDANTS' MOTION TO COMPEL COMMERCIAL
PLAINTIFFS TO RESPOND TO INTERROGATORY NO. 10
CASE NO.  2:15-ML-02668-PSG (JEMX)