Beth Wilkinson (admitted *pro hac vice*)
Brian Stekloff (admitted *pro hac vice*)
Rakesh Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National*
*Football League, NFL Enterprises LLC,*
*and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION, | Case No. 2:15-ml-02668-PSG (JEMx) |
| _____ | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | **JOINT STATUS REPORT REGARDING THE COURT'S MAY 31 ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THE NFL** |
| | Magistrate Judge: Hon. John E. McDermott |

i

Case No. 2:15-ml-02668-PSG (JEMx)

Joint Status Report Regarding the Court's May 31 Order on Plaintiffs' Motion to Compel Production of Documents by the NFL.

Pursuant to the Court's May 31, 2022 Order, Dkt. 485, the NFL and Plaintiffs submit the following Joint Status Report regarding the review of the documents from *United States Football League v. Nat'l Football League*, Case No. 84 Civ. 7484 (S.D.N.Y.).

1. On May 17, 2022, the parties filed a joint stipulation regarding Plaintiffs' motion to compel the production of documents from prior litigations involving the NFL. Dkt. 476-1. On May 31, 2022, the Court granted in part and denied in part Plaintiffs' motion, Dkt. 485 at 1, and ordered the NFL to review boxes of hard copy documents in the possession of the NFL's former counsel that potentially contain trial transcripts, deposition transcripts of NFL employees, and expert reports from *USFL* "for the limited purpose of ascertaining whether the documents indicate they are subject to the Protective Order." *Id.* at 2. The Court also ordered that the following steps be taken within 15 days of the order: (i) the NFL provide a declaration indicating whether and how many, if any, of the documents have been marked subject to the Protective Order; and (ii) the parties meet and confer on the propriety of producing those documents that are not explicitly marked as subject to the Protective Order. *Id.*

2. On June 15, 2022, the parties filed a Joint Status Report updating the Court on the status of the review and requesting an additional week to comply with the Court's May 31 Order. *See* Dkt. 508.

3. Subsequently, the NFL has completed its review of the documents in question. A meet and confer between the parties was held on Friday, June 17 to discuss the propriety of producing responsive documents that did not contain confidentiality markings.

**The NFL's Position**

4. The documents collected from the NFL's prior counsel consist of internal files of the NFL's law firm from the *USFL* litigation that proceeded to trial

1

nearly 35 years ago.  Based on the NFL's review, the NFL determined that only a minority of the collected documents were trial transcripts, deposition transcripts of NFL employees, or experts reports from *USFL*, and thus even potentially responsive to Plaintiffs' request.  Decl. of Jeremy S. Barber (Barber Decl.) ¶ 5.  The remainder included an assortment of non-responsive documents, privileged documents, and/or documents containing attorney work product.  Of those documents that were potentially responsive and not privileged and/or attorney work product, some included explicit confidentiality markings.  *Id.*  Based on the NFL's review, the NFL has agreed to produce the following documents located in the collected materials: approximately 15 days of trial transcripts, the pages from one deposition of an NFL employee that are not marked confidential, and approximately 15 documents that include deposition exhibit stickers and are not marked confidential.  Further detail on each of the categories of documents sought by Plaintiffs are below.

5.    ***Trial Transcripts***:  The collected materials included approximately 15 transcripts from the trial in *USFL*.  *See* Barber Decl. ¶ 5(a).  None of those transcripts include confidentiality markings.  However, at least six of the transcripts contain redactions made by hand with black marker that appear to redact side bar conversations.  The NFL has not been able to ascertain whether those redactions were implemented because of the operative Protective Order in the case or were otherwise Court-ordered.  *See id.*

6.    The NFL has agreed to produce the *USFL* trial transcripts located in the collected materials, with redactions where present.

7.    ***Expert Reports***:  The collected materials include a few documents that appear to be expert reports of the NFL experts, all of which are either explicitly marked confidential and/or are drafts.  *See* Barber Decl. ¶ 5(b).  Given the confidential and/or draft status of these documents, the NFL will not produce them.  *See, e.g.,* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation or for

2

trial by or for another party or its representative.").  Plaintiffs do not oppose the withholding of these materials.

8.   ***Deposition Transcripts of NFL Employees***:  The collected materials included transcripts and excerpts of transcripts of 12 NFL employees and 2 witnesses who appear to be experts retained by the NFL for purposes of the *USFL* litigation. Barber Decl. ¶ 5(c)(i).  The collected materials included full transcripts for 9 of these witnesses.  For 4 of the witnesses, the collected materials only included short excerpts of the deposition testimony, often fewer than 10 pages in length.  The NFL's understanding, based on other documents found in the collected materials, is that these deposition excerpts were prepared by the NFL's prior counsel for deposition designations or as exhibits to pleadings and thus constitute attorney work product. For one witness, the collected materials included a full transcript of one day of deposition testimony for that witness, but only short excerpts of a second day of that witness's deposition testimony.  *See id.*

9.   At least one of the deposition transcripts include an attorney colloquy that makes clear that the *USFL* Protective Order permitted the parties, after receiving transcripts of those depositions, to mark certain testimony as confidential.  *See* Barber Decl. ¶ 5(c)(ii).  Indeed, more than 10 of the total universe of deposition transcripts in the collected materials, including those of non-NFL witnesses, include a sticker on the first page of the transcript that states that "CERTAIN PAGES OF THIS TRANSCRIPT ARE MARKED CONFIDENTIAL," thus confirming that those versions of the deposition transcripts had been reviewed for confidentiality issues.  *Id.*  Subsequent pages in those transcripts that have such a sticker include confidentiality markings on the headers or footers of certain pages.  *Id.*

10.   It is also clear that the NFL's former counsel possessed versions of certain deposition transcripts *before* confidentiality markings were applied.  The collected materials include both marked and unmarked versions of both NFL and non-NFL witness deposition transcripts.  *See* Barber Decl. ¶ 5(c)(ii).  In particular, the collected materials included deposition transcripts with multiple versions of

Case No. 2:15-ml-02668-PSG (JEMx)                    Joint Status Report Regarding the Court's May 31 Order on
Plaintiffs' Motion to Compel Production of Documents by the
NFL.

otherwise identical transcripts, one of which includes the sticker and confidentiality markings discussed above and one of which does not. *Id.* That is not surprising, as it would be expected for the NFL's prior counsel to have received the deposition transcript shortly after the deposition itself and to store it in their files before proceeding to review the documents for confidentiality issues as it appears was permitted by the Protective Order in the case.

11. One of the deposition transcripts of an NFL employee includes the sticker and express confidentiality markings discussed above. Barber Decl. ¶ 5(c)(iii). The collected materials also included unmarked excerpts of this same deposition. Because it is clear that the collected materials include a version of this deposition that has been reviewed for confidentiality issues, the NFL has agreed to produce the unmarked non-confidential pages of that transcript.

12. The NFL does not agree to voluntarily produce any of the other NFL-employee deposition transcripts, or excerpts of those deposition transcripts, given the uncertainty as to whether they contain confidential material subject to the Court's protective order or not. More specifically, the age of the documents make it challenging to determine whether the versions of the remaining deposition transcripts contained in the collected materials are versions that were obtained by the NFL's prior counsel before they were reviewed for confidentiality issues. But the evidence available to the NFL suggests they were. For example, language from other NFL-witness deposition transcripts suggests that certain pages would have been marked confidential. In one transcript, counsel for the NFL makes explicit on the record that he later intended to designate certain pages of testimony as confidential. Yet, those pages in the version of the deposition transcript contained in the collected materials do not have any confidentiality markings. *Id*. There is also substantive testimony in some deposition transcripts about exhibits that the transcript makes clear were marked as confidential, and it would be reasonable to expect that those portions of the transcript would also be marked confidential had a confidentiality review been completed.

4

13.     Further, the excerpts of the deposition transcripts in the collected materials likely constitute attorney work product, another independent reason those documents cannot be produced.  *See, e.g.*, *Madrigal v. Allstate Indemnity Co.*, 2015 WL 12748277, at *4 (C.D. Cal. Nov. 5, 2015); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992).

14.     ***Deposition Exhibits***:  Most of the deposition transcripts located in the collected materials do not have as attachments the exhibits from those depositions. Barber Decl. ¶ 5(d).   However, the collected materials include a number of freestanding documents containing deposition exhibit stickers.   Some of these documents include confidentiality markings and others do not.  Approximately 12 of these freestanding exhibits do not include confidentiality markings.  *See id.*  The NFL has agreed to produce documents with deposition exhibit stickers that relate to an NFL employee's deposition and do not include confidentiality markings.

**Plaintiffs' Position**

15.     The NFL improperly refuses to produce 13 deposition transcripts that are responsive to Plaintiffs' requests even though *none* of those documents has been marked as confidential.  The NFL provides no authority that supports withholding these documents based on an assumption that they *may* be covered by an unidentified protective order.

16.      As the Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003), it follows that the NFL bears the burden of proving the protective order covers the requested documents. The NFL similarly bears the burden of proving the applicability of the work-product doctrine. *See, e.g.*, *Madrigal*, 2015 WL 12748277, at *4.  The NFL has not met either burden.

17.     The circumstantial evidence provided by the NFL does not support its assumption that the 13 deposition transcripts (which bear no confidentiality markings) may have been marked as confidential at a later date.  In fact, the evidence

presented by the NFL suggests that the documents it located *were* subject to a confidentiality review.

18. <u>First</u>, that more than 10 of the located deposition transcripts contain confidentiality designations suggests that all of the transcripts were subject to a confidentiality review. The NFL admits that it has located more than 10 deposition transcripts that are expressly marked as confidential: one which concerns the deposition of an NFL employee and the remainder which concern depositions of non-NFL employees.  The presence of those confidential-designated files mitigates against any "uncertainty" as to whether the remaining transcripts contain confidential material, as does the NFL's location of redacted trial transcripts and confidential-designated expert reports.

19. <u>Second</u>, the NFL's concern about multiple versions of the same transcript does not, as it asserts, create any uncertainty as to the transcripts of NFL witnesses. The existence of multiple transcripts suggests only that the parties followed a procedure by which counsel representing the witness conducted a confidentiality review, marked the transcript as confidential, and then sent opposing counsel a copy of the designated transcript. The counsel who took the deposition would thus possess two copies of a given transcript, while counsel for the witness would have only the one that they marked confidential. Because it is likely that the *NFL's* former counsel conducted the confidentiality review of *NFL witnesses,* there is no reason to believe that counsel would have followed the strange procedure suggested by the NFL—storing a clean deposition transcript in their files, subsequently conducting a confidentiality review on a separate transcript. Nor is there any reason that *only* the confidential-designated version would go missing— on *13 separate occasions*.  The NFL's assertion that the collected materials included both marked and unmarked versions of the *one* deposition that was marked as confidential does not change the analysis. The NFL represented that the unmarked "version" of that particular transcript consists only of *excerpts* of that deposition with an apparently unmarked cover page.  This demonstrates only that the NFL's

former counsel excerpted certain non-confidential portions of one transcript with a cover page that correctly indicates the lack of confidential material contained therein.  By contrast, *all* of the complete versions of otherwise identical transcripts concerned depositions of *non-NFL employees*.

20.   <u>Third</u>, former counsel's possession of a deposition transcript of an NFL employee which *was* designated as confidential indicates that the versions located by the NFL were all subject to a confidentiality review. The existence of the designated transcript creates a presumption that the remainder of the transcripts of NFL witnesses were also reviewed. There is simply no reason to assume that a confidentiality review was not completed with respect to the other transcripts.  The only support that the NFL provides for that assertion is a colloquy in *a single transcript* in which counsel states that he later intended to designate certain pages as confidential. The remaining 12 transcripts apparently contained no such indication and there is no reason to assume that they were ever so designated.  The same is true about the existence of substantive testimony about exhibits marked as confidential *in some* deposition transcripts. Not all testimony that touches on confidential documents is designated as confidential.  Absent some other evidence that the documents located are out-of-date, the Court cannot assume that those transcripts were later designated as confidential.

21.   <u>Lastly</u>, the Court should reject the NFL's refusal to produce the excerpts of deposition transcripts.  The NFL proffers no evidence to suggest that these excerpts were prepared as deposition designations or exhibits to pleadings. Nor does it provide any authority for the proposition that deposition excerpts constitute work product.  Neither of the cases cited by the NFL suggest otherwise. One involved types of documents clearly covered by the work-product doctrine, *Holmgren*, 976 F.2d at 576 ("handwritten memoranda drafted during the litigation"), and the other is inapposite, *Madrigal*, 2015 WL 12748277, at *4 (ruling on propriety of work-product objections raised during a deposition).

7

Case No. 2:15-ml-02668-PSG (JEMx)                    Joint Status Report Regarding the Court's May 31 Order on
                                                      Plaintiffs' Motion to Compel Production of Documents by the
                                                      NFL.

22.   Because the NFL has not met its burden of establishing that the protective order or the work-product doctrine bars disclosure, the Court should compel the production of the 13 transcripts of depositions of NFL employees.

Dated:  June 22, 2022

By: */s/ Jeremy S. Barber*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

By: */s/ Tyler Finn*
MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067

8

Tel: (310) 789-3100
Fax: (310) 789-3150
Arun Subramanian (*Pro Hac Vice*)
asubramanian@susmangodfrey.com
William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300

9

Joint Status Report Regarding the Court's May 31 Order on Plaintiffs' Motion to Compel Production of Documents by the NFL.

Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

Case No. 2:15-ml-02668-PSG (JEMx)

Joint Status Report Regarding the Court's May 31 Order on Plaintiffs' Motion to Compel Production of Documents by the NFL.