# EXHIBIT 1

O'Melveny

April 8, 2022

**VIA EMAIL**
**HIGHLY CONFIDENTIAL**

Farhad Mirzadeh
Hausfeld
888 16th Street, N.W.
Suite 300
Washington, DC 20006
fmirzadeh@hausfeld.com

Re:  *In re National Football League's Sunday Ticket Antitrust Litigation,*
     **Case No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal.)**

Dear Farhad,

    We write on behalf of DIRECTV, LLC and DIRECTV Holdings, LLC (collectively, "DIRECTV") in response to Plaintiffs' March 22, 2022 letter challenging our privilege claims over documents listed on our February 18, 2022 privilege log.

    Of the almost half million documents third-party DIRECTV identified as responsive to Plaintiffs' document requests—drawing from a time period including multiple mergers, a corporate divestment, and the above-captioned litigation—DIRECTV asserted privilege over only 6 percent of them, totaling approximately 30,000 entries. Your 9-page letter purports to challenge *every entry* on DIRECTV's privilege log and demands a new, significantly restructured privilege log within a mere two weeks of your letter. Not only is such a timeline arbitrary, but your challenges have little merit.

    More problematically, your lengthy letter contains very little specificity: you refer to only 51 entries out of the 30,000-entry log. DIRECTV addresses in this letter all of the entries you identified. And we will serve an affiliation list as described in more detail below. DIRECTV will also amend its log to correct some of the scrivener-type mistakes Plaintiffs identified, and we will re-confirm certain privilege claims based on Plaintiffs' comments. DIRECTV is targeting to complete that work by April 30.

    DIRECTV is willing to meet and confer with Plaintiffs about any questions raised by our letter and/or on a reasonable number of documents Plaintiffs identify using the above-mentioned affiliation list and the other detail DIRECTV already provides on its log. But this must be done on a document-by-document basis, as the law requires. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 631 (D. Nev. 2013) (noting that attorney-client privilege will require analysis on a "document-by-document basis"); *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 245 (N.D.

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

Kopczzynski  Exhibit 1
Page 5

Cal. 2015) (the challenging party must "specifically explain why it should have access to each document").[1]  Simply challenging tens of thousands of entries categorically, as Plaintiffs have done with most of their letter, is counterproductive and unworkable.

I. **Key Individuals Listed on Privilege Log**

Plaintiffs demand a list of individuals on DIRECTV's privilege log, their position, and the dates they held the positions.  For outside counsel, Plaintiffs demand DIRECTV identify the firm the attorney is associated with.  DIRECTV has no duty to provide information about the tenures, roles, and law firm affiliation of the individuals identified beyond what is written on the privilege log, as the titles of these individuals already provided make clear that they served in a legal role ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The name of the law firm ▮▮▮▮ worked for is not informative.  Similarly, an in-house counsel's specific title is also irrelevant.  Regardless, to the extent Plaintiffs want to know these details, a simple internet search would show Plaintiffs that, *e.g.*, ▮▮▮▮▮▮▮▮▮ held the titles of ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at DIRECTV during the relevant period.  Plaintiffs have demonstrated in their letter that they are capable of performing such research (identifying some of the scrivener-type mistakes described immediately below).

As justification for Plaintiffs' unreasonable demand, Plaintiffs selectively describe what are obviously minor, typographical-type errors in an effort to unfairly mischaracterize DIRECTV's entire privilege log.  For example, Plaintiffs complain that they cannot figure out in-house counsel ▮▮▮▮▮▮▮▮ affiliation because he is listed as outside counsel in an entry.  Plaintiffs leave out that he is referred to as in-house counsel in more than **2,300 other entries**.  And a quick search of DIRECTV's production[2] and/or an internet search confirms that is the correct description.[3]  A simple and obvious human error on the privilege log is not a reason to require DIRECTV to open up the personnel files of hundreds of DIRECTV employees and attempt to chart for Plaintiffs those employees' careers across a 10-year period.

The same is true for Plaintiffs' supposed confusion about certain alternate spellings of names.  While ▮▮▮▮▮▮▮▮▮▮ appears in **1739** entries, and ▮▮▮▮▮▮▮▮▮▮ only appears in 2 entries, Plaintiffs' claim they cannot figure out if they are the same person or two different

---

[1] *See also Webb v. CBS Broad., Inc.*, No. 08C6241, 2011 WL 111615, at *9 (N.D. Ill. Jan. 13, 2011) ("Privileges must be addressed on a document-by-document and question-by-question basis.  The Webbs do not identify in their submissions any particular entries on CBS's privilege log or any particular deposition questions as to which they challenge CBS's assertion of privilege.  Therefore, it is impossible for the court to address whether any assertion of privilege was justified or not.") (citation omitted); *S.G.D. Eng'g, Ltd. v. Lockheed Martin Corp.*, 2013 WL 2297175, at *6 (D. Ariz. May 24, 2013) (finding that a party's challenge to a privilege log was "unacceptable" when it failed to "to provide a document-by-document list of objections…as well as the privilege descriptions to which it had no objection.").

[2] *See, e.g.*, DIRECTV-ST-02377142 and DIRECTV-ST-02226495, both containing Sam Sadighi's signature line which clearly state that he works in the AT&T Legal Department.

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

O'Melveny

people. Again, at worst, a simple internet search would have resolved this. While we find it difficult to believe Plaintiffs are confused by entries like these, we confirm now that these too are scrivener-type errors. To clear any supposed confusion, DIRECTV will update its privilege log to correct the spelling of the names Plaintiffs identified.

Plaintiffs also claim they found non-attorneys identified as attorneys on DIRECTV's privilege log. In fact, the majority of those listed in Plaintiffs letter are properly listed as attorneys on DIRECTV's log, including:



A smaller set of names are not attorneys, but their work involves regularly seeking or conveying legal advice from attorneys and the Legal Department, including the names below. We'll provide updated entries for those documents.



[4] Bill Ryan, Evan Hunter, David Miller, Stacey Fuller, and Lydia Cancilla are also correctly identified as attorneys on DIRECTV's privilege log, but some entries have misspellings of their names, which we will correct.

O'Melveny

- █████████████████████████

    Another set of names were incorrectly identified as attorneys in a relatively small set of entries, and we are reviewing these documents to confirm privilege, including:



    To the extent we need to clarify an entry on our log referencing these individuals we will do so.  To the extent we decide there is not a valid claim of privilege over these documents we will produce them.  We note that we could not find the information about two individuals listed in your letter, who are not on our privilege log, including Jim Thomas and Rebecca Huntsman.  Please clarify what you are asking with respect to these individuals.

    Despite Plaintiffs' selective characterizations of DIRECTV's privilege log, in an offer of compromise, DIRECTV is willing to take on the burden of drafting an affiliation list with the names and affiliation of each individual listed on the log.  We think this will fully address any concerns Plaintiffs' have.  Please confirm if this will satisfy Plaintiffs' needs.

II.    **Inclusion of Email Addresses in the From, To, CC, and BCC Fields**

    Plaintiffs also claim they need a privilege log that includes the email addresses of every individual listed in the From, To, CC, and BCC fields where the document was withheld or redacted in order to determine the presence of a third-party.  Plaintiffs cite no authority that requires email addresses on a privilege log, and for redacted documents, Plaintiffs can easily examine the face of the documents to determine the presence of third parties because we have not redacted header information reflected in earlier email communications.  And Plaintiffs will be able to use the affiliation list offered above to conduct any analysis they might find useful.

    More generally, Plaintiffs are wrong to assume that privilege is waived merely because a third party is included in a privileged communication.  DIRECTV regularly employs third-party

consultants for various matters including, for example, ▮▮▮▮▮▮▮▮▮▮▮▮, a group that assists DIRECTV with creatives services. Plaintiffs cite an internal email between DIRECTV employees and ▮▮▮▮▮▮▮▮▮▮▮▮ as an instance where a third party broke privilege. But it's well established law that the attorney-client privilege extends to communications between counsel and consultants in the same manner as it protects those between counsel and employees. *See United States v. Graf*, 610 F.3d 1148, 1158–59 (9th Cir. 2010) ("[C]ommunications between an outside consultant and an entity's attorneys are covered by the entity's attorney-client privilege"); *United States ex rel. Strom v. Scios, Inc.*, 2011 U.S. Dist. LEXIS 118018, at *11–12 (N.D. Cal. Oct. 12, 2011) (holding company communications with outside consultant were covered by attorney-client privilege); *see also United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) ("[F]act-finding which pertains to legal advice counts as professional legal services."). Moreover, disclosures to third parties of materials that are protected work product will not waive the protection unless such a disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1121 (9th Cir. 2020).

Plaintiffs also claim that 8,894 documents contain no information in the "FROM" or "TO" fields, but nearly 90% of those entries have "attached to" in the description in order to make plain to Plaintiffs that they are privileged documents that were attached to an email (which is identified by the Family Bates numbers, also provided on the privilege log). The others are loose documents. We assume this resolves Plaintiffs' concern.

III. **Email Subject Lines**

Plaintiffs also demand, without citation to any authority, that DIRECTV include email subject lines so that Plaintiffs can assess DIRECTV's privilege claims. Again, DIRECTV has no obligation to provide information beyond what is written on the privilege log, as the descriptions make clear the basis for privilege. Without citing a single example, Plaintiffs vaguely state that "most" of the emails listed on DIRECTV's privilege log include an attorney only in the CC line, calling into question whether the email is privileged at all. Not only is Plaintiffs' claim that "most" of the emails on DIRECTV's log only include an attorney in the CC line wrong, but the entries themselves explain the basis for privilege. The entry for DIRECTV-PRIV-0018371, for example, explains that it was redacted to protect a discussion of "legal advice from in-house counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding draft contract language." Similarly, the entry for DIRECTV-PRIV-0006035 makes clear that the redacted portion of the communication is a discussion of "legal advice from in-house counsel ▮▮▮▮▮▮, Esq., regarding a proposed marketing strategy." If Plaintiffs have specific issues with the description of a reasonable number of entries in which an attorney is copied on the email, please identify them with particularity for DIRECTV to consider.

IV. **Properly Logged Email Strings**

Plaintiffs seek clarity on how DIRECTV logged email strings. Given that legal advice typically appears in the body of an email, DIRECTV has provided the date of the actual email containing the legal advice (i.e., the document that reflects an iteration of the email chain), but has otherwise provided the basis of privilege based on what DIRECTV has redacted. This is

the same as how a party would log any other privileged document. In other words, DIRECTV has properly generated a document-based privilege log, as required under the Federal Rules (i.e., we have logged which document we are redacting, and described the basis for the content redacted). Plaintiffs' request for an amended log that logs the date of the redacted portion in a chain is not only unduly burdensome, but it runs counter to the concept of a document-based privilege log. And importantly, it is not remotely proportional to Plaintiffs' needs given that Plaintiffs can easily review any redacted document, and to the extent the body of an email reflects earlier emails, identify the date the earlier communication was generated.

V.  **Sufficient Details in Privilege Log for Attachments and Loose Documents**

Strangely, Plaintiffs allege that DIRECTV has not distinguished between attachments and loose documents on its privilege log. But DIRECTV provides that information. Not only has DIRECTV stated when a document is attached to an email in our descriptions, we have also provided the Family Bates ranges as well. For example, DIRECTV-PRIV-0017639 is a withheld attachment to an email, as made plain by the entry in the log which describes it as a ███████████████████████████████████████ (emphasis added) That log entry goes on to provide the family beginning Bates and family end bates to provide the precise detail Plaintiffs claim does not exist. Plaintiffs can also easily identify loose documents: if the document's beginning and end Bates numbers mirror the family Bates numbers, the document is a standalone loose file. This is consistent with modern eDiscovery practices and more importantly, sufficient information for Plaintiffs to evaluate DIRECTV's privilege assertions.

Plaintiffs also complain in a footnote that they cannot properly assess privilege because the date field does not distinguish between the date a document was sent and the date a document was created. As a threshold matter, this is yet another vague issue for us to address in the abstract because like with much of Plaintiffs' letter, you are making sweeping, vague statements about a 30,000 entry log and not raising specific entries for us to address. But in any event, speaking generally, DIRECTV logged the date on the face of any privileged document. If Plaintiffs want to know the date a document was sent, to the extent you are evaluating an attachment, you simply have to look at the parent email (which you have, if produced in some form; and if withheld, you can reference the log entry). And thus Plaintiffs *do have* both dates, to the extent they are relevant to the privilege analysis and reasonably known. Finally, we note that Plaintiffs' citation to *Urban 8 Fox Lake Corp.*, where Defendants' log provided no dates, even after a Court order, is irrelevant to the issue of sent date versus creation date and we're unclear why you've cited it. *See Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020).

Plaintiffs are also wrong to suggest that attachments to privileged emails are categorically not privileged. Attachments to privileged communications are privileged where they independently satisfy the criteria for attorney-client privilege or work product protection. *O'Connor v. Boeing N. Am.*, Inc., 185 F.R.D. 272, 280 (C.D. Cal. 1999); *see AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, at *11 (N.D. Cal. Apr. 18, 2003). In view of this, and given DIRECTV's detailed descriptions on the privilege log, DIRECTV does not believe it is necessary to provide further clarification as to any entries identified in this category, but if

Plaintiffs have *specific* questions about any particular entry, DIRECTV will attempt to answer them.

VI. **Entries That Contain Third Parties or "Legal Department" in the "To" or "From"**

Plaintiffs claim that certain communications with third parties have been improperly withheld. DIRECTV will examine those specific entries to determine if they have been properly withheld or redacted, but as mentioned above, disclosures to third parties of materials that relate to legal advice or are protected work product will not waive the protection unless such a disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Sanmina Corp.*, 968 F.3d at 1121. And as identified on our log, at least some of those that you identify have been withheld based on the common interest privilege, which protects privileged communications and work product shared with third parties having common legal interests. *See Regents of the Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018) ("Parties may have both common commercial and legal interests, such as when the parties are discussing a merger or negotiating for a [] license."); *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-CV-2088, 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012) (holding that potential merging parties had common legal and commercial interests, and such overlap did not "negate the effect of the legal interest in establishing a community of interest").

Moreover, Plaintiffs claim that there are over 20,000 entries in which no attorney was present in either the "from" or "to" fields. We do not understand how Plaintiffs arrived at this number, which is wrong on its face. But beyond that, DIRECTV provided attorney names for the vast majority of its logged documents, and for some entries, DIRECTV identified the relevant legal department.

Plaintiffs also claim that none of the entries where an attorney is CC'd on an email are likely privileged. While DIRECTV certainly agrees with the general proposition that merely CC'ing an attorney does not create privilege without more, DIRECTV has not designated a document privileged merely because an attorney was CC'd. Instead, as with any other document in which an attorney was in the "To" or "From" lines, or perhaps not included in the communication at all, DIRECTV asserted privilege over documents where the elements of attorney-client privilege or work product protection are satisfied. *In re Grand Jury*, 2021 U.S. App. LEXIS 39178, at *8 (9th Cir. Jan. 27, 2022); *see also United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (holding that the attorney-client privilege protects confidential communications between attorneys and clients which are made for the purpose of giving or receiving legal advice).

If there are particular entries Plaintiffs have concerns over we are more than willing to discuss them. But simply stating broadly that no email including an attorney in the CC line can be privileged is, as with much of Plaintiffs letter, unproductive and improper. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. at 631.

VII. **Descriptions in the "Privileged Basis" Field Are Adequate**

Plaintiffs claim they have yet to identify even a single description in the "privilege basis" that is facially sufficient. But as Plaintiffs acknowledge, these entries make clear that the withheld or redacted document contains legal advice or work product regarding a specific subject-matter; each entry explains why the document satisfies the required elements of the relevant protection. If Plaintiffs require additional detail to assess the nature of the asserted privilege, please explain what additional detail is required, why that information is required, and as to which specific entries. *See Hellmann-Blumberg v. Univ. of the Pac.*, 2013 WL 4407267, at *5 (E.D. Cal. Aug. 15, 2013) (denying motion to compel where plaintiffs had a "broad" and "unfocused challenge" to a privilege log).

VIII. **Sufficient Descriptions for Documents Not Containing an Attorney in the Description**

DIRECTV disagrees that "Legal Department" is an insufficient identifier for establishing privilege. Corporate employees routinely refer to in-house attorneys as "Legal," and that is a sufficient basis for asserting privilege. *Kennis v. Metro. W. Asset Mgmt.*, 2018 U.S. Dist. LEXIS 223641, at *21 (C.D. Cal. June 11, 2018) (holding documents on privilege log did not fail because they refer to party's "legal department" as the source or recipient). DIRECTV uses that nomenclature to describe its lawyers and law department, and that is perfectly reasonable.

To resolve any confusion about the specific entries that Plaintiffs referenced on this point, HBO and DIRECTV were both subsidiaries of AT&T. They shared common attorneys and legal purpose, and so DIRECTV's assertion of attorney-client privilege between the affiliated companies is valid. *See Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1493, n.6 (9th Cir. 1989) ("[C]ommunications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel" are privileged); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 U.S. Dist. LEXIS 73848, at *25–26 (N.D. Cal. May 1, 2019) (Finding communications with affiliates were covered by common interest privilege because they were part of a "community of interests."). DIRECTV will examine Plaintiffs challenge to DIRECTV-PRIV-0017082, but to be clear, Sony Legal does not function as in-house counsel (that was most likely a typo). But as described in more detail above, Sony Legal may in certain instances have a common interest with DIRECTV. *See Regents of the Univ. of Cal.*, 326 F.R.D. at 279 ("Parties may have both common commercial and legal interests, such as when the parties are discussing a merger or negotiating for a [] license.").

IX. **Common Interest**

Without pointing to any specific entry, Plaintiffs complain that DIRECTV's descriptions in the privilege basis field do not provide Plaintiffs with enough information to evaluate the common interest privilege claim. As discussed above, we are providing you with an affiliation list which will help you evaluate each privilege claim, including those withheld on the basis of

O'Melveny

common interest privilege. If after reviewing our affiliation list Plaintiffs have questions about particular entries, DIRECTV will consider them.

X. **Other**

Plaintiffs ask us to produce a handful of documents that were logged as redacted but never produced. We will review those documents and either produce the redacted versions or update the privilege log if they were in fact withheld in full.

\* \* \*

Please let us know if you have any questions.

Very truly yours,

*/s/ Jeffrey A. N. Kopczynski*

Jeffrey A. N. Kopczynski
*for* O'Melveny & Myers