# EXHIBIT 6

# To the Declaration of Ian Gore

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**In the Matter Of:**

*NFL Sunday Ticket Antitrust Litigation*

---

*BRIAN ROLAPP*

*May 18, 2022*

---



**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

```
 1              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
 2

 3        Civil Action No. 2:15-ml-02668-PSG(JEMx)

 4

 5

 6  IN RE: NATIONAL FOOTBALL
    LEAGUE'S "SUNDAY TICKET"
 7  ANTITRUST LITIGATION

 8
         _____/
 9

10

11

12                   DEPOSITION OF
                    BRIAN ROLAPP
13

14

15              Wednesday, May 18, 2022
               9:03 a.m. - 3:22 p.m.
16

17                 Remote Location
             Via Zoom Videoconference
18              All Parties Remote

19

20

21

22

23

24        Stenographically Reported By:
               Erica Field, FPR
25
```

2

1    APPEARANCES:

2

3    On behalf of the Plaintiff:
         LANGER GROGAN & DIVER
4        1717 Arch Street
         Suite 4130
5        Philadelphia, Pennsylvania 19103
         (215) 320-5660
6        BY: PETER LECKMAN, ESQUIRE
             KEVIN TRAINER, ESQUIRE
7        pleckman@langergrogan.com
         ktrainer@langergrogan.com

8

9    On behalf of the Defendant:
         WILKINSON STEKLOFF
10       2001 M Street NW
         10th Floor
11       Washington, DC 20036
         (202) 847-4000
12       BY: RAKESH KILARU, ESQUIRE
         rkilaru@wilkinsonstekloff.com

13

14

15   ALSO PRESENT:
         Kim Ferrari, Paralegal, Langer Grogan
16       Derek Ludwin, Covington & Burling
         Delores DiBella, NFL

17

18   VIDEOGRAPHER:
         Bryan Beltran

19

20

21

22

23

24

25

3

1                    INDEX OF PROCEEDINGS

2    WITNESS                                      PAGE
     BRIAN ROLAPP                                    5
3    DIRECT EXAMINATION BY MR. LECKMAN               5
     CROSS-EXAMINATION BY MR. KILARU               254
4    REDIRECT EXAMINATION BY MR. LECKMAN           268
     CERTIFICATE OF REPORTER                       276

5

6

7

8                         EXHIBITS
     EXHIBIT            DESCRIPTION             PAGE
9    Exhibit 1    LinkedIn Page                   11
     Exhibit 2    NFL_1089663                     23
10   Exhibit 3    The Jockey Club Article         43
     Exhibit 4    NFL_0511106                     65
11   Exhibit 5    NFL_0244331                     66
     Exhibit 6    NFL_0513393                     76
12   Exhibit 7    NFL_0012383                     78
     Exhibit 8    NFL'S Digital Chief: Football   85
13                is the Only Sure Bet
     Exhibit 9    NFL_0090791                    131
14   Exhibit 10   NFL_1105761                    137
     Exhibit 11   NFL_0055732                    148
15   Exhibit 12   NFL_0609532                    161
     Exhibit 13   NFL_00335468                   190
16   Exhibit 14   NFL_1089631                    217
     Exhibit 15   NFL_0864442                    226
17   Exhibit 16   NFL_1221708                    233
     Exhibit 17   NFL_1215804                    238
18   Exhibit 18   NFL_1216326                    241
     Exhibit 19   NFL_1199512                    244
19   Exhibit 20   Cached Version of DAZN's Sale  252
                  of NFL Game Pass
20   Exhibit 21   NFL_1137717                    256

21

22

23

24

25

4

1    Thereupon,

2    the proceedings began at 9:03 a.m.:

3           THE VIDEOGRAPHER:  We are on the

4        record on May 18, 2022, at

5        approximately 9:03 a.m. Eastern Time

6        for the remote video deposition of

7        Mr. Brian Rolapp in the matter of In

8        Re:  National Football League Sunday

9        Ticket Antitrust Litigation.

10          My name is Bryan Beltran, and I

11       am the videographer.

12          Will counsel please introduce

13       themselves for the record beginning

14       with the party noticing this

15       proceeding.

16          MR. LECKMAN:  Peter Leckman from

17       Langer Grogan & Diver.  With me also

18       is Kevin Trainer, another attorney

19       from our office, and Kim Ferrari, a

20       paralegal from the office.

21          MR. KILARU:  And this is Rakesh

22       Kilaru on behalf of defendants from

23       Wilkinson Stekloff.  With me in the

24       room is Max Warren also from Wilkinson

25       Stekloff, Derek Ludwin from Covington

5

1            & Burling, and Delores DiBella from

2            the NFL, and I also have Caroline Li

3            from Wilkinson Stekloff joining via

4            Zoom.

5                  THE VIDEOGRAPHER:  Thank you.

6            Will the court reporter please swear

7            in the witness.

8    Whereupon,

9                  BRIAN ROLAPP,

10      having been first duly sworn or affirmed, was

11      examined and testified as follows:

12                  THE WITNESS:  I do.

13                    DIRECT EXAMINATION

14      BY MR. LECKMAN:

15            Q.    Good morning, Mr. Rolapp.

16            A.    Good morning.

17            Q.    Have you ever been deposed before?

18            A.    I have.

19            Q.    How many times?

20            A.    I would say roughly five or six.

21            Q.    And were any of those depositions

22      conducted remotely?

23            A.    No.

24            Q.    It's the first for both of us.

25            A.    Yes.

6

1      Q.    So what have you done to prepare

2   for today's deposition?

3      A.    I met with my attorneys several

4   times.

5      Q.    And how many times would you say?

6      A.    Probably three or four.

7      Q.    Okay.  And how long were those

8   meetings?

9      A.    I would probably say on average

10  two to three hours.

11     Q.    And was there anyone else there

12  besides counsel?

13     A.    No.

14     Q.    No other NFL employees?

15     A.    No NFL employees, no.

16     Q.    Okay.  Did you review any

17  documents during those meetings?

18     A.    I did.

19     Q.    And did you select the documents?

20     A.    No.

21     Q.    Did any of the documents you

22  reviewed refresh your recollection of any

23  facts?

24     A.    Not particularly, no.

25     Q.    And besides counsel, have you

7

1   spoken with anyone within the NFL about this

2   case?

3        A.    No.

4        Q.    Mr. Goodell is the commissioner of

5   the NFL; is that correct?

6        A.    He is.

7        Q.    Have you spoken to Mr. Goodell

8   about this case?

9        A.    I have not.

10        Q.    You haven't spoken with any of the

11   NFL owners about this case?

12        A.    No.

13        Q.    Have you spoken with anyone at

14   DirecTV about the case?

15        A.    No.

16        Q.    Have you spoken with any

17   distributor or potential distributor of the

18   NFL football telecasts about this case?

19        A.    No.

20        Q.    Other than your attorneys, have

21   you spoken with anyone else about this case?

22        A.    No.

23        Q.    Okay.  So I would like to start by

24   asking a little bit about your interest in

25   football.

8

1          Did you play growing up?

2     A.    I did.

3     Q.    You played in high school?

4     A.    I did, yes.

5     Q.    And in college?

6     A.    I did not play in college, no.

7     Q.    Okay.  And were you a fan of

8  professional football as a kid?

9     A.    I was.  I was.  I've always been a

10  fan.

11     Q.    Who did you root for?

12     A.    At the time I cheered for

13  Washington.  It's where I grew up.

14     Q.    And do you have any kids?

15     A.    I do.  I have four.

16     Q.    And do they have any favorite

17  football teams?

18     A.    They do.  A few like the Jets,

19  cheer for the Jets.  A few others cheer for

20  Washington.

21     Q.    And you received your bachelor's

22  degree from BYU in '96; is that correct?

23     A.    That is correct.

24     Q.    Did you have a major?

25     A.    Yes.  I was an English major.

9

```
 1        Q.    And you graduated from Harvard
 2   Business School in 2000?
 3        A.    I did, yes.
 4        Q.    Have you ever had any formal
 5   training in antitrust law?
 6        A.    I have not, no.
 7        Q.    In antitrust economics?
 8        A.    No formal training, no.
 9        Q.    Do you have any advanced economics
10   degrees?
11        A.    I do not.
12        Q.    Do you consider yourself an
13   economist?
14        A.    I do not.
15        Q.    I would like to start with
16   Envelope Number 1, as I've been -- which
17   should be in the box of documents there.
18            MR. KILARU:  Could you give us a
19        minute to just open it up?
20            MR. LECKMAN:  Of course.
21            MR. LUDWIN:  While we're opening
22        the box, can I just ask a question to
23        Erica.  Is it something that you-all
24        are doing that we see Erica on our
25        screen instead of Peter?
```

10

```
 1              MR. KILARU:  It might be on our

 2       end.

 3              MR. LUDWIN:  It might be on our

 4       end.  I'll figure it out.

 5              THE VIDEOGRAPHER:  Yes, it must

 6       be on your end because the witness is

 7       spotlighted.

 8              MR. LECKMAN:  If you hide

 9       non-video participants, that should

10       help.

11              THE VIDEOGRAPHER:  Would you

12       like to go off the record for this?

13              MR. LECKMAN:  Sure.

14              THE VIDEOGRAPHER:  The time is

15       9:09 a.m., and we are going off the

16       record.

17          (A brief recess was held from

18          9:09 a.m. to 9:12 a.m.)

19              THE VIDEOGRAPHER:  The time is

20       9:12 a.m., and we're back on the

21       record.

22   BY MR. LECKMAN:

23       Q.   So I would like to run quickly

24   through your time at the National Football

25   League.  The first exhibit, which should be
```

123

1    out-of-market package, Center Ice, through

2    most television providers; is that right?

3         A.    I would believe so, yes.

4         Q.    I read somewhere you're a Caps

5    fan; is that right?

6         A.    Yes, I am.  Yes.  I say that --

7    no, I say that with enthusiasm -- more

8    enthusiasm than I expressed.

9         Q.    And you live in Connecticut?

10        A.    I do.

11        Q.    So you're a displaced Caps fan?

12        A.    I am.

13        Q.    Have you ever subscribed to the

14   NHL's out-of-market package?

15        A.    I have not.

16        Q.    Okay.  Nowadays do you know that

17   you can get all of the NHL's out-of-market

18   games by subscribing to ESPN Plus?

19        A.    I did not know that.

20        Q.    Do you subscribe to ESPN Plus?

21        A.    I do not.

22        Q.    Do you know how much it costs a

23   month?

24        A.    Oh, geez, I think it's roughly --

25   I don't know offhand.  I think it's 10 to 12

124

1   bucks.   I could be wrong, but somewhere

2   around there.

3        Q.    Yeah.   I will represent to you

4   that, as far as I know, it's $6.99.

5        A.    Okay.   Well, maybe they're

6   overcharging me.

7        Q.    And for that $6.99 or 10 or $12,

8   an ESPN Plus subscriber gets not just all of

9   the NHL's out-of-market games, but also all

10  of the other programming carried on ESPN

11  Plus; is that right?

12       A.    Yes, I believe that's right.

13       Q.    And are you aware that ESPN Plus

14  includes live soccer, baseball, boxing, mixed

15  martial arts, golf, tennis, cricket, and

16  lacrosse?

17       A.    That sounds right.   I haven't

18  watched the majority of the sports, but that

19  sounds right.

20        ██████████████████████████████

   ████████████████████████████████████████

   ████████████████████████████

   ████████████████████████████████████

   ██████████████████████████████████

   ████████████████████████████████████





127





129

1





131

1



135

1





137

1



156

1



157



158

1



159



9        Q.    Okay.  I would like to get -- I

10   think we have covered most of this

11   terminology, but just in case we haven't,

12   what does "over the top" mean in the context

13   of media distribution?

14        A.    It depends on the use of it, but,

15   in general, over the top means digital only

16   distribution.  So bypassing broadcast or paid

17   TV altogether.

18        Q.    And over the top is sometimes

19   shortened OTT?

20        A.    Yes.

21        Q.    And what does "direct to consumer"

22   mean in the context of media distribution?

23        A.    I think what that traditionally

24   means -- it's not the same in each case, but

25   would mean that bypassing traditional

160

```
 1   distribution and going direct to consumer.

 2   That could be someone like us, a league,

 3   going direct to consumer, the right to the

 4   market and distribute this to fans.

 5            It could mean broadcast networks

 6   and media companies bypassing the paid TV

 7   ecosystem.  It means different things in

 8   different situations, but as a general

 9   matter, it's distributing usually leveraging

10   digital, almost always leveraging digital,

11   direct to the consumer.

12   Q.    And direct to consumer is

13   sometimes shortened DTC?

14   A.    Yes.

15   Q.    Are you aware that the NFL has

16   commissioned studies to assess the market for

17   direct to consumer Sunday Ticket offering?

18   A.    Yes, it doesn't surprise me.

19
```





163

1







166

1



276

1            CERTIFICATE OF REPORTER

2

3    UNITED STATES DISTRICT COURT )

4

5

6       I, ERICA FIELD, Stenographic Reporter,

7    certify that I was authorized to and did

8    stenographically report the deposition of

9    BRIAN ROLAPP, pages 1 through 275; that a

10   review of the transcript was not requested;

11   and that the transcript is a true and

12   complete record of my stenographic notes.

13      I further certify that I am not a

14   relative, employee, attorney, or counsel of

15   any of the parties, nor am I a relative or

16   employee of any of the parties' attorney or

17   counsel connected with the action, nor am I

18   financially interested in the action.

19

20      DATED this 19th day of May, 2022.

21

22   _____

     Erica Field

23

24

25