Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668−PSG (JEMx) |
| | **MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF SARAH BUTLER** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge:  Hon. Philip S. Gutierrez |
| | Date: January 13, 2023 |
| | Time: 1:30 p.m. |
| | Courtroom: |
| | First Street Courthouse |
| | 350 West 1st Street |
| | Courtroom 6A |
| | Los Angeles, CA 90012 |

1

2

## **TABLE OF CONTENTS**

3   TABLE OF AUTHORITIES ........................................................................................ ii

4   PRELIMINARY STATEMENT ................................................................................. 1

5   BACKGROUND ........................................................................................................ 2

6   LEGAL STANDARD ................................................................................................. 6

7   ARGUMENT .............................................................................................................. 7

8   I.   The Butler Survey Is Irrelevant Because It Focuses On The Wrong Population

9        And Asks The Wrong Questions ....................................................................... 7

10  II.  Serious Design Flaws Require The Exclusion Of Ms. Butler's Survey. .......... 10

11       A.   Wave 1 And Wave 2 Are Unique, Small Surveys That Cannot Be

12            Properly Combined. ................................................................................. 10

13       B.   Ms. Butler's Survey Does Not Have Any Measurements Of Precision. ... 11

14  III. Ms. Butler's Survey Is Full Of Irrational Results. ............................................ 12

15  CONCLUSION ......................................................................................................... 16

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                      <u>Page(s)</u>

3  *Daubert v. Merrell Dow Pharm., Inc.*,

4        509 U.S. 579 (1993)..................................................................................7

5  *Elliot v. Google Inc.*,

6        45 F. Supp. 3d 1156 (D. Ariz. 2014) ....................................................12

7  *Ellis v. Costco Wholesale Corp.*,

8        657 F.3d 970 (9th Cir. 2011) ...................................................................6

9  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,

10       618 F.3d 1025 (9th Cir.  2010) ..........................................................6, 10

11 *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,

12       2017 WL 2559615 (C.D. Cal. June 7, 2017).........................................6

13 *In re ConAgra Foods, Inc.*,

14       302 F.R.D.  537 (C.D. Cal. 2014)...........................................................6

15 *In re: Autozone, Inc.*,

16       2016 WL 4208200 (N.D. Cal. Aug. 10, 2016).......................................7

17 *M2 Software, Inc. v. Madacy Ent.*,

18       421 F.3d 1073 (9th Cir. 2005) ...........................................................7, 10

19 *Malletier v. Dooney & Bourke, Inc.*,

20       525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................8

21 *Marksman Sec. Corp. v. P.G. Sec., Inc.*,

22       2021 WL 8972429 (S.D. Fla. Dec. 15, 2021).........................................9

23 *Navarro v. Procter & Gamble Co.*,

24       2021 WL 868586 (S.D. Ohio Mar. 8, 2021) .....................................12, 13, 15, 16

25 *Oracle Am., Inc. v. Google, Inc.*,

26       2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ......................................13

27 *Parallel Networks Licensing, LLC v. Microsoft Corp.*,

28       777 Fed. App'x 4895 (Fed. Cir) .............................................................7

*Primiano v. Cook,*

   598 F.3d 558 (9th Cir. 2010) ....................................................................................7

*Reinsdorf v. Skechers U.S.A.,*

   922 F. Supp. 2d 866 (C.D. Cal. 2013)..............................................................7, 10

*Weaver v. Champion Petfoods USA, Inc.,*

   2019 WL 7370374 (E.D. Wis. Dec. 31, 2019) ........................................................9

**<u>Rules</u>**

Federal Rule of Evidence 702 ........................................................................................6

**Case No. 2:15-ml-02668-PSG (JEMx)**

**Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler**

## **PRELIMINARY STATEMENT**

Ms. Sarah Butler, Plaintiffs' survey expert, plays a limited role in this case. Plaintiffs are claiming that so-called out-of-market NFL games should have been more broadly available.  They asked Ms. Butler to conduct a survey to help support that theory.  Ms. Butler ultimately analyzed survey responses from 975 individuals in an attempt to determine their interest in five different hypothetical packages of out-of-market games.  Those hypothetical packages, and the prices at which they were offered, were invented by Ms. Butler.  Those packages did not include Sunday Ticket—the sports package of all out-of-market Sunday afternoon NFL games that is the subject of this case.  At her deposition, Ms. Butler made clear that her survey results were not intended to be generalized to a larger population.

Plaintiffs nonetheless rely on Ms. Butler's survey results as the basis for one of their economic models used to predict putative prices in a world where Sunday Ticket is more broadly available.  We address that model, created by Dr. Zona, in our separate motion seeking the exclusion of his testimony.

In this motion, we explain why Ms. Butler's survey is inadmissible under Rule 702.  The expert report of Dr. Nancy Mathiowetz explains the many flaws with Ms. Butler's survey.   Kilaru Decl. Ex. 1 (Expert Report of Nancy A. Mathiowetz) ("Mathiowetz Report").  The Butler survey is irrelevant because it (1) did not contain Sunday Ticket among its offered packages, (2) does not focus on putative class members in the residential class and wholly ignores the commercial class, and (3) was not designed to measure purchasing behavior.  It is methodologically flawed because Ms. Butler changed material aspects of the survey two-thirds of the way through to correct for basic design errors, and it provided no estimates of precision around its results that would allow the Court to evaluate whether it has any broader utility.  And the survey is unreliable, because the results are beset with irrational responses, such as consumers often saying they would like to pay *more* money for *less* content, or would prefer to *pay* for content they currently access for *free*.

1

Because Ms. Butler's survey was flawed from concept to results, the Court should exclude it.

## **BACKGROUND**

Defendants' Class Certification Opposition lays out the factual and procedural background of this case. Dr. Mathiowetz's report describes Ms. Butler's survey, and the flaws with it, in detail. Here, we focus on the features salient to this motion.

**The survey was not designed to answer a question tied to this case.** Ms. Butler designed a survey to evaluate "consumer preferences for different football game viewing packages." Expert Report of Sarah Butler, Dkt. 633-2, ¶ 8 ("Butler Report"); *see also* Kilaru Decl. Ex. 2 (Transcript of Deposition of Sarah Butler 11:12–14) ("Butler Tr.") ███████████████████████████████████████ ████████████████████████████████████████████ ██████████████████. That survey question does not match up with the issues before the Court. Among other things, the survey includes people who do not currently purchase Sunday Ticket (*i.e.*, people who are not in the putative class), and excludes commercial purchasers who are in the class. It also measures whether respondents would prefer, rather than purchase, various different out-of-market packages.

**Ms. Butler misunderstood out-of-market games, a key concept in this case.** This case is about the availability of out-of-market games, *i.e.*, the games that are not available on free broadcast television in a given region. Ms. Butler appears not to understand that concept. As part of the survey, respondents were asked what teams they had a specific interest in. Butler Report at 42, Table 6. Ms. Butler attempted to use this data to gauge which fans were interested in "in and out-of-market *teams*," which she did "by comparing respondents' geographic location to the DMA area of the team(s) whose games they are interested in watching."[1] *Id.* ¶¶ 93–

---

[1] As Ms. Butler defines it, a DMA, or designated marketing area, is a collection of cities/markets assigned to each team. Butler Report ¶ 93. For a list of DMAs that Ms. Butler assigns to each team for purposes of her survey, *see* Kilaru Decl. Ex. 4 (Ex. 4 to Butler Deposition).

2

94 (emphasis added).  But it is undisputed that there is no such thing as an "out-of-market team."  As just explained, out-of-market is a term of art in NFL broadcasting that refers to the *games* that are not broadcast on CBS or Fox in a given location on Sunday afternoon.  Mathiowetz Report ¶ 68.  A fan can live outside of a team's DMA and nevertheless receive all of that team's Sunday afternoon games for free on CBS or Fox.  *See* Butler Tr. 33:22–36:24; Kilaru Decl. Ex. 3 (Ex. 5 to Butler Deposition).  This scenario occurs frequently.  *See* Mathiowetz Report ¶¶ 118–21.

**The Choice exercises did not involve Sunday Ticket.**  A key part of the Butler survey asked respondents to complete a choice exercise, wherein they indicated which of five potential NFL game packages they preferred:

(1) **All Access**, which was described as "[a]ccess to <u>all</u> out of market games for the entire season.  Out-of-market games are those you cannot see on broadcast television in your local market."  Butler Report ¶ 76.

(2) **All Access Plus**, which not only provides the same content as All Access, but also grants the ability to watch eight live games at once, the ability to toggle back and forth between games, and the ability to access highlights on demand.  *Id.*

(3) **Team Access Preferred**, a single-team offering that allows access to the out-of-market games of whichever team the respondent wants.  *Id.*

(4) **Team Access Available**, a single-team offering that grants access to the out-of-market games of a random team selected by a survey algorithm.  *Id.*

(5) **Game Access**, which provides access to any single game the respondent selected.  *Id.*

At her deposition, Ms. Butler acknowledged that the ▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3



Butler Tr. 119:16–121:19, 122:3–123:14.   As one example, the description of the All Access package could be read to suggest Thursday Night and Monday Night Football games were included, alongside Sunday afternoon out-of-market games.   The real Sunday Ticket package, however, is limited to Sunday afternoon out-of-market games.   Additionally,

*Id.* at 124:3–10.

**Ms. Butler created unrealistic prices for each package.**

*Id.* at 161:4–7.

*Id.* at 139:20–142:21.   At her deposition,

*id.* at 137:23–138:7,

*Id.* at 139:4–11.

*Id.* at 139:12-19, 141:4–8.

*Id.* at 142:13–25.   At her deposition,

*Id.* at 142:13–143:6.

*Id.* at 145:15–147:20.

The pricing for individual games proved even more complicated.   Ms. Butler initially set single game prices at a range of $4.89 to $9.99.   *See* Butler Report at 33, Fig. 3.   In nearly all circumstances using this price range, it would be irrational to purchase a team package, because a respondent could get exactly the same content

4

1    for less by buying each game standing alone. *See* Butler Tr. 152:4–11, 188:22–189:6

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████     ██████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████ *Id*. at 152:12–155:15.

6         **More than halfway through, Ms. Butler made material changes to the**

7    **survey.** ████████████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ██████ Butler Report ¶ 79.

10        •   ████████████████████████████████████████████████████

11            ████████ Butler Tr. 150:13–23. ████████████████████████

12            ████████████████████████████████████████████████████████

13            ████████████████████████████████████████████████████████

14            ████████████████ *Id*.   Yet there is no dispute that documents containing

15            similar prices were available to Plaintiffs before the survey was initially

16            deployed.

17        •   ████████████████████████████████████████████████████████

18            ████████████████████████████████████████████████████████

19            ████████████████████████ Mathiowetz Report ¶ 59. ████████

20            ████████████████████████████████████████████████████████

21            ████████████████

22        •   ████████████████████████████████████████████████████████

23            ████████████ *Id*.

24        **Ms. Butler provided no measure of precision for her survey statistics.**   In

25    total, 975 respondents completed the Butler survey and were not excluded by Ms.

26    Butler.  Butler Report ¶ 66.  Based on these 975 responses, Ms. Butler concluded that

27    "[c]onsumers have a range of preferences for NFL package and game viewing

28    options, including numerous options currently unavailable."  *Id*. ¶ 10(a).   She



5

1   presented the results from both Wave 1 and Wave 2, combined and broken down by

2   Wave in some circumstances.  *Id.* at 45–47, Tables 7, 8, & 9.  And, because the results

3   of Wave 1 did not mirror the gender ratio of NFL fans, Ms. Butler weighted those

4   results and presented both the weighted and unweighted findings.  *Id.* Exs. J & K;

5   Butler Tr. 103:5–25.

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████ *See*

8   *id.* at 206:2–7, 238:4–240:14.

9       To understand the ramifications of this decision, it is important to note that

10  another of Plaintiffs' experts, Dr. Douglas Zona, uses all of the unweighted data from

11  the Butler survey in a model designed to predict pricing and purchasing behavior for

12  the proposed classes.  *See* Expert Report of J. Douglas Zona, Dkt. 633-3, ¶¶ 83–84

13  ("Zona Report").

14                    **<u>LEGAL STANDARD</u>**

15      Under Federal Rule of Evidence 702, the district court must "mak[e] a

16  preliminary determination that [an] expert's testimony is reliable" before admitting

17  that testimony.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

18  In the class certification context, "[t]he Ninth Circuit has approved of a rigorous

19  application of [the *Daubert* standard]."  *In re 5-Hour Energy Mktg. & Sales Pracs.*

20  *Litig.*, 2017 WL 2559615, at *3 (C.D. Cal. June 7, 2017) (citing *Ellis*, 657 F.3d at

21  982); *accord In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 548 (C.D. Cal. 2014).

22  Where an expert's proffered opinions fail to satisfy these requirements, the Court

23  "must act as a 'gatekeeper' to exclude" those opinions.  *Ellis*, 657 F.3d at 982.

24      In the Ninth Circuit, survey evidence should be excluded when it is not

25  "conducted according to accepted principles [or is not] relevant."  *Fortune Dynamic,*

26  *Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir.

27  2010) (citation omitted).  The proponent of the survey bears the burden to "show that

28  the survey was conducted in accordance with generally accepted survey principles

6

1   and that the results were used in a statistically correct manner." *M2 Software, Inc. v.*
2   *Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005).

3       To make this determination, a court must "determine whether a preponderance
4   of the evidence establishes that the reasoning or methodology underlying expert
5   testimony is scientifically valid." *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866,
6   878 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,
7   593 (1993)).  When the survey's inadequacies are so pervasive that they undermine
8   the scientific basis for the survey, they "speak not merely to the weight that should
9   be accorded to the survey, but rather to the fundamental reliability of [the expert's]
10   approach." *Id.*

11                                    **ARGUMENT**

12   **I.    The Butler Survey Is Irrelevant Because It Focuses On The Wrong**
13          **Population And Asks The Wrong Questions.**

14       Ms. Butler's survey is an input to one of the economic models Plaintiffs use to
15   estimate class-wide damages in a but-for world where Sunday Ticket is available
16   through other distributors besides DirecTV.  *See generally* Zona Report ¶¶ 83–124.
17   But Ms. Butler's survey was not designed to evaluate how class members would
18   respond to this scenario.  The Butler survey is thus irrelevant because it does not fit
19   with Plaintiffs' theories of the case.  *See Primiano v. Cook,* 598 F.3d 558, 564–65
20   (9th Cir. 2010) (courts must ensure that expert testimony "is relevant to the task at
21   hand," which involves an inquiry into whether "the knowledge underlying it has a
22   valid connection to the pertinent inquiry"); *In re: Autozone, Inc.*, 2016 WL 4208200,
23   at *16 (N.D. Cal. Aug. 10, 2016) ("[E]vidence should be excluded as irrelevant if it
24   does not 'fit' the issue to be decided" (citing *Daubert*)); *see also Parallel Networks
25   Licensing, LLC v. Microsoft Corp.,* 777 Fed. App'x 489, 493 & n. 5 (Fed. Cir. 2019)
26   (affirming the district court's finding that survey evidence was irrelevant, did not
27   "bridge the gap between the survey results and [plaintiff's claim] and "[t]he lack of
28   fit between the survey and the asserted claims is, in and of itself, sufficient to exclude

1   the survey as unreliable and prejudicial under *Daubert*"); *Malletier v. Dooney &*

2   *Bourke, Inc.*, 525 F. Supp. 2d 558, 572–73 (S.D.N.Y. 2007) (discussing "a number

3   of flaws" in a study, "[c]hief among [them] . . . a lack of fit between the basic premise

4   of the study . . . [and the party's] oft-expressed position in this litigation.'").

5          *First*, the Butler survey does not include Sunday Ticket. █████████████

6   █████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████ *See* Mathiowetz Report ¶

8   66.  For example, ████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████████████

10  ███████████████████████████████████████ Butler Tr. 122:3–7.

11  In addition, ██████████████████████████████████████████████████████

12  ████████████████████████████████████████████ *id.* at 124:3–10, a

13  reason why many purchase the Sunday Ticket package.  Indeed, ████████████

14  █████████████████████████████████████████████████████████████████

15  ███████████████ *Id.* at 119:16–121:19 ███████████████████████████

16  █████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████[2]

18         *Second,* the survey population does not match the classes here.  Ms. Butler's

19  survey was addressed to all U.S. residents, age 18 or over, who are interested in

20  watching NFL games.   Butler Report ¶ 64.  ████████████████████████████

21  █████████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████████

23  Butler Tr. 12:12–22.  The proposed class definition, however, is much narrower,

24  limited to residential and commercial DirecTV satellite subscribers "that purchased

25  the NFL Sunday Ticket package since June 17, 2011," with some further restrictions

26

─────────────────────

27  [2] ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████ Butler Tr. 20:11–21:1.

8

1  set forth in Plaintiffs' briefs.  *See* Memorandum in Support of Plaintiffs' Motion for

2  Class Certification, Dkt. 633-1, at 1, 1 n.1 ("Memo. ISO Class Certification").

3       The survey population is both overinclusive and underinclusive.  At most, ███

4  ████████████████████████████████████████████████████████████████████

5  ████████ Mathiowetz Report ¶ 49.[3]  Indeed, █████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████ *Id.* ¶ 115.  On the other hand, ████████████████

9  ███████████████████████████████████████, making it underinclusive.

10  *Id.* ¶ 49; *see, e.g.*, *Weaver v. Champion Petfoods USA, Inc.*, 2019 WL 7370374, at *5

11  (E.D. Wis. Dec. 31, 2019) (excluding a survey with an overbroad population which

12  "did not even attempt to sample the population which would form a class in this case

13  should one be certified"); *Marksman Sec. Corp. v. P.G. Sec., Inc.*, 2021 WL 8972429,

14  at *3 (S.D. Fla. Dec. 15, 2021) (excluding a survey that made no attempt to reach

15  "potential buyers of the services in question," and so was "inadequate to test the

16  'segment of the population whose perceptions and state of mind are relevant to the

17  issues in this case.'" (citation omitted)).

18       *Third,* the Butler survey was never intended to measure purchasing behavior.

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████████████ *See* Butler Tr. 51:5–53:12 ████████████

21

_____

22     [3] As Dr. Mathiowetz notes, ████████████████████████████████

23  ████████ Mathiowetz Report ¶ 33 n.53. ██████████████████████████████

                                            , Butler Report at 40

24  Table 4, ████████████████████████████████████████████████████████

25  ████████████ *See* Memo. ISO Class Certification at 1 n.1; Butler Tr.

114:23–115:13. ██████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████ Butler Report at 40, Table 4; Memo. ISO Class

Certification at 16 n.24. █████████████████████████████████████████████

28

9

1 ███████████████████████████████████████████████████

2 █████████████████████████████████████ And indeed,

3 throughout the survey, respondents were tasked only to choose their preference of

4 the offered packages, not whether they would actually purchase such a package in

5 the real world.  Butler Report ¶ 80 ("You will be asked to choose which of these three

6 packages you most prefer."); *id.* ¶ 81 ("Thinking about the options you see here,

7 which package would you be most likely to select?").  ███████████████

8 ███████████████████████████████████████████████████

9 ███████████████████████████████████ Butler Tr. 53:8–

10 12.

11        In short, because of the disconnect between Ms. Butler's survey and Plaintiffs'

12 asserted claims, Ms. Butler's survey should be excluded.

13 **II.    Serious Design Flaws Require The Exclusion Of Ms. Butler's Survey.**

14        Plaintiffs have the burden of showing that Ms. Butler's survey was "conducted

15 according to accepted principles," *Fortune Dynamic*, 618 F.3d at 1036; *see also M2*

16 *Software*, 421 F.3d at 1087 (same).  The Butler survey does not meet this standard,

17 making it unreliable.  *See* Mathiowetz Report ¶ 13.

18        **A. Wave 1 And Wave 2 Are Unique, Small Surveys That Cannot Be**

19            **Properly Combined.**

20        After surveying two-thirds of her survey population, Ms. Butler changed her

21 survey design, issuing what was effectively a different survey to the last third of

22 respondents.  Ms. Butler has failed to cite any literature or precedent supporting this

23 act of stopping a survey partway through, creating effectively a new survey, and then

24 presenting this flawed data in litigation.  For this reason alone, the Court should

25 exclude the survey.  *See Reinsdorf*, 922 F. Supp. 2d at 878 ("The court must,

26 therefore, determine whether a preponderance of the evidence establishes that the

27 reasoning or methodology underlying expert testimony is scientifically valid. . . .

28 Unless survey evidence is conducted according to accepted principles, it is not

10

admissible in the first instance." (citation omitted)).

Because of the changes Ms. Butler implemented, there were meaningful differences between the two waves:

- ████████████████████████████████████████████████████

Mathiowetz Report ¶ 59;

- ████████████████████████████████████████ *id.*;

- ████████████████████████████████████████████████████

Butler Report at 33, Fig. 3. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*id.* at 45, Table 7.

████████████████████████████████████████████

████████████████████████████████████████ Mathiowetz Report

¶ 63; *id.* ¶ 58 n.78 █████████████████████████████████████

████████████████████████████████████████████████████

███████ Yet in developing his model, Dr. Zona did not disaggregate data in any way. *See id.* ¶ 63; *see also* Zona Report ¶ 84.

And were Ms. Butler (or Dr. Zona) to focus just on Wave 2, ████████

████████████████████████████████████████████████████

█████████████████████ Mathiowetz Report ¶ 62; *but see supra* p. 9 n.3;

*see also* Butler Tr. 56:2–57:16 ████████████████████████████

█████████ ████████████████████████████████████████████

████████████████████████ Mathiowetz Report ¶ 62.

**B. Ms. Butler's Survey Does Not Have Any Measurements Of Precision.**

Ms. Butler's survey is also flawed because ████████████████████

████████████████████████████████████████████ Mathiowetz

Report ¶¶ 10, 25, 136. ████████████████████████████████

11

1  █████████████████████████████████████████████████████████

2  ███████████████████████   *Id.* ¶ 10.   "An assessment of the precision of sample

3  estimates [is] required to distinguish methods that are acceptable from methods that

4  are not."   *Elliot v. Google Inc.*, 45 F. Supp. 3d 1156, 1167 (D. Ariz. 2014), *aff'd sub*

5  *nom. Elliott v. Google, Inc.*, 860 F.3d 1151 (9th Cir. 2017) (quoting Shari Seidman

6  Diamond, *Reference Guide on Survey Research*, *in* Reference Manual on Scientific

7  Evidence 359, 364 n.16 (Fed. Jud. Ctr., 3d ed. 2011)); *see also* Mathiowetz Report

8  ¶ 25.  Indeed, ████████████████████████████████████████████████████

9  ████████████████████   Mathiowetz Report ¶ 25.  Nonetheless, Ms. Butler included

10  no measures of precision in her report.[4]

11  At her deposition, ████████████████████████████████████████████

12  █████████████████████████████████████████████████████████████

13  ████████████████   Butler Tr. 206:2–7, 238:4–18, 239:23–240:3.  Plaintiffs did

14  just that, however, through Dr. Zona's model.  Zona Report ¶ 84; *see* Memorandum

15  in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas

16  Zona, at 23.  The relevant point for purposes of this motion is that the failure to

17  include any measurement of error or bias requires exclusion.

18  **III.   Ms. Butler's Survey Is Full Of Irrational Results.**

19  "[A] survey might be unreliable if it is so tainted with irrational respondents

20  that it no longer reflects the relevant universe."  *Navarro v. Procter & Gamble Co.*,

21  2021 WL 868586, at *21 (S.D. Ohio Mar. 8, 2021); *see also Oracle Am., Inc. v.*

22  ───────────────────────────────────

23  [4] ██████████████████████   *See* Mathiowetz Report, Ex. D.   █████████

24  ███████████████████████████████████████████████████████████████

25  ███████████████████   As one example, Ms. Butler concludes in her report that

26  "the share of respondents who would cancel their DirecTV subscription increases

27  with the percent increase in subscription price."   Butler Report ¶ 109.  █████████

28  ███████████████████████████████████████████

*Google, Inc.*, 2012 WL 850705, at *11 (N.D. Cal. Mar. 13, 2012) (conjoint analysis unreliable because it led to "irrational results" in which 25% of respondents who preferred or were ambivalent between a smart phone costing $200 and a theoretically identical one costing $100). In *Navarro*, the survey admitted the survey being challenged, but only because: (1) there was only *one* irrational choice set that appeared to respondents; (2) the survey expert removed the 10% of respondents who completed the survey the fastest; and (3) the survey expert inserted an intentional fixed irrational set and removed those respondents who gave irrational responses to that question. 2021 WL 868586, at *21. As explained below, Ms. Butler took none of these steps to control for more rampant irrationality.

Because of the way Ms. Butler designed her survey,



Mathiowetz Report ¶¶ 87–89.                                                   Indeed,

*Id.* ¶ 109.

*First,*

*Id.* ¶ 92.

*Id.* That is a fundamentally irrational outcome—it amounts to

Butler Tr. 165:15–166:21.

*Second,*

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████████ Mathiowetz Report ¶ 95

3 ████████████████████████████████████ That choice is

4 irrational. ██████████████████████████████████████████████

5 ██████████████████████████████████████████ Butler Tr.

6 119:16–21. ████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████ *Id*. at 172:16–175:14. ██████████████████

9 ████████████████████████████████████████████████ *See id*.

10 *Third*, ██████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████ Mathiowetz Report ¶ 97. ████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████ *Id.* at 45,

16 Table 7.  Again, these respondents effectively said they want to pay more for less.

17     *Fourth*, even using Ms. Butler's incorrect definition of in-market and out-of-

18 market team, *see supra* at 3, ██████████████████████████████

19 ████████████████████ Mathiowetz Report ¶ 101. ████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████ *Id*.  Those choices are irrational in

22 two respects.  First, ████████████████████████████████████████

23 ████████████████████ Second, ██████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████  ██████████████████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████ *Id*. ████████████████████████████████

28 ████████████████████████████████████████████████████████████

     **Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Sarah Butler**



1 ████████████████████████████████████████ Butler Tr. 181:19–182:23.

2 *Fifth*, ██████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████ *See* Mathiowetz Report ¶¶ 106–09. ████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████ Butler Tr.

8 190:3–12.  Yet this was not a one-off issue, ██████████████████

9 ████████████████████████████████████████████████

10 Mathiowetz Report ¶ 108.

11      The speed at which some respondents completed the survey is another source

12 of irrationality.  The survey consisted of 64 unique pages, some of which featured

13 very dense writing (for example, the explanation of the packages is over 300 words).

14 Butler Report Ex. G; Mathiowetz Report ¶ 111.  Despite the length of this survey,

15 ████████████████████████████████████████████████

16 ██████████████████████ Mathiowetz Report ¶¶ 111–12. ████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ██████████████████████████████ Butler Tr. 218:16–219:10.

20      When faced with irrational responses, a survey expert should take steps to

21 ensure they do not undermine the survey itself, including by removing those irrational

22 responses themselves or the data associated with the survey respondents who offered

23 them.  *See Navarro*, 2021 WL 868586, at *21 (survey would be deemed unreliable

24 "where an expert has failed to exclude a significant number of irrational

25 respondents"); Mathiowetz Report ¶ 109.  In *Navarro*, the expert addressed the

26 problem by including an intentional irrational question as a screen, and excluding

27 respondents who took the survey too fast.  2021 WL 868586, at *21.

28      Ms. Butler, by contrast, did nothing.  *See* Mathiowetz Report ¶ 85 ██

███████████████████████; Butler Tr. 218:7–219:17 ████████████████.

██████████████████████████████████████████ *See id.* at

183:6–14 ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████; Mathiowetz Report ¶ 13.  This failure
to consider or control for the irrationality throughout her survey resulted in a flawed
and unreliable survey that must be excluded because it "no longer reflects the relevant
universe."  *Navarro*, 2021 WL 868586, at *21.

\*        \*        \*

Ultimately, Ms. Butler's survey did not answer any relevant questions,
featured a number of significant design flaws, and led to a mass quantity of irrational
responses.  The survey should be excluded.

## **CONCLUSION**

For the foregoing reasons, Ms. Butler's opinions should be excluded from the
Court's consideration of Plaintiffs' motion for class certification.

**Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler**

1    Dated:  November 4, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted.

/s/ *Rakesh N. Kilaru*
Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

17