Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>———————————————<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF J. DOUGLAS ZONA**<br><br>Judge: Hon. Philip S. Gutierrez<br><br>Date: January 13, 2023<br>Time: 1:30 p.m.<br>Courtroom:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

BACKGROUND ..................................................................................................2

I. Dr. Zona's Assignment .................................................................................3

II. Dr. Zona's Models .......................................................................................4

   A. The Viewership and Transactional ("V&T") Model......................................4

   B. The Conjoint Model...................................................................................5

   C. The Basic Tier Model ...............................................................................7

LEGAL STANDARD ..........................................................................................8

ARGUMENT........................................................................................................8

I. The V&T Model Generates Absurd Results And Involves Elementary Errors......8

   A. The V&T Model Reaches Fundamentally Irrational Conclusions About
      Consumer Behavior.................................................................................9

   B. The V&T Model Suffers From The Fundamental Error Of Perfect
      Collinearity. ..........................................................................................11

   C. The V&T Model Improperly Assumes Away Important Distinctions
      Among Sunday Ticket Viewers. ............................................................14

   D. The V&T's Treatment Of Residential Versus Commercial Data
      Is Incoherent. ........................................................................................16

II. Dr. Zona Improperly Manipulates Marginal Cost Throughout His Models........18

III. The Conjoint Model Uses Unreliable Inputs In An Unreliable Manner ...........22

IV. Dr. Zona's Basic Tier Model Is Incomplete And Speculative ..........................23

CONCLUSION...................................................................................................25

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999) ......................................................................... 8

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
    135 F. Supp. 2d 1031 (N.D. Cal. 2001) .......................................................... 19

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) .......................................................................... 14

*Bakst v. Cmty. Mem'l Health Sys., Inc.*,
    2011 WL 13214315 (C.D. Cal. 2011) ............................................................ 20

*Brighton Collectibles, Inc. v. RK Exas Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...................................................23, 25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ...........................................................................8, 11, 23

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
    773 F.2d 1506 (9th Cir. 1985) ......................................................................... 9

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600 (9th Cir. 2002) ......................................................................... 9

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ......................................................................... 8

*Guidroz-Brault v. Missouri Pac. R. Co.*,
    254 F.3d 825 (9th Cir. 2001) ......................................................................... 16

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
    2017 WL 2559615 (C.D. Cal. June 7, 2017)................................................... 8

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007)...............................................2, 11, 17, 18

ii

Case No. 2:15-ml-02668-PSG (JEMx)                    Memorandum in Support of the NFL Defendants'
                                                     Motion to Exclude the Opinions of J. Douglas Zona

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab.*
*Litig. (No II) MDL, 2502*, 892 F.3d 624 (4th Cir. 2018) .................................... 18, 21

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966 (C.D. Cal. 2012) ........................................................passim

*In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018) ................................................... 17

*In re Omeprazole Patent Litig.*,
    490 F. Supp. 2d 381 (S.D.N.Y. 2007) .................................................. 23

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ..................................................................... 14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ............................................................ 1, 3

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................ 23

*Laumann v. Nat'l Hockey League*,
    105 F. Supp. 3d 384 (S.D.N.Y. 2015) ..................................................... 9

*Laumann v. Nat'l Hockey League*,
    117 F. Supp. 3d 299 (S.D.N.Y. 2015) ...........................................passim

*Murphy Tugboat Co. v. Crowley*,
    658 F.2d 1256 (9th Cir. 1981) ................................................................ 9

*R.F.M.A.S., Inc. v. So*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010) ................................................... 11

*Rearden LLC v. Walt Disney Co.*,
    2021 WL 6882227 (N.D. Cal. July 12, 2021) ...................................... 22

*Rovid v. Graco Children's Prod. Inc.*,
    2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ...................................... 23

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
    2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ........................................... 8

iii

*Werdebaugh v. Blue Diamond Growers*,

   2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ................................................ 12, 14

*Wright v. United States*,

   2008 WL 820557 (D. Ariz. 2008) ....................................................................... 20

**<u>Rules</u>**

Federal Rule of Evidence 702 ............................................................................ 8, 11

## PRELIMINARY STATEMENT

Plaintiffs' central claim is that they paid too much for Sunday Ticket because it was the only way to access out of market NFL games.  In order to obtain certification of their proposed classes, they need to put forth a model capable of demonstrating that injury class-wide with common proof.  Plaintiffs have presented economic models from Dr. J. Douglas Zona to try to meet this requirement.  At the most basic level, Dr. Zona used some of the data and documents in this case, as well as statistical software, to simulate alternate realities where Sunday Ticket is more broadly available.  His models then simulate prices for Sunday Ticket in these hypothetical worlds.  Dr. Zona's models purport to show that Sunday Ticket would have been cheaper for every class member absent the agreements being challenged. These types of economic models are essential in antitrust class actions because they are the only way to establish proof of injury to each class member without evaluating each class member individually.  *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification.").

Dr. Zona's models are unreliable and thus inadmissible.  The expert report of Dr. Ali Yurukoglu explains in detail the many flaws with Dr. Zona's approach.  *See* Kilaru Decl. Ex. 1 (Expert Report of Ali Yurukoglu) ("Yurukoglu Report").  Here, we address the central flaws that require exclusion under Rule 702.

*First*, Dr. Zona's primary model yields results that "make[] no sense." *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 318 (S.D.N.Y. 2015).  That model simulates lower prices for Sunday Ticket in a hypothetical world where it is distributed on other platforms besides DirecTV.  Dr. Zona's price simulations are based on his model's predictions of what consumers want.  And Dr. Zona's model suggests that consumers would prefer to *pay more* to *get less*.  It predicts that fans would prefer to *pay* for a package of their favorite club's games rather than get those

1    same games, and several more, *for free*.  Those results are "so far removed from
2    actual viewer preferences and tastes" as to require exclusion.  *Id.*

3         In addition to these nonsensical results, the model is riddled with elementary
4    mistakes.  As Dr. Yurukoglu explains, ███████████████████████████████
5    ████████████████  described further below.  The critical point for this motion is
6    that the error is universally acknowledged as a mistake in Economics and Statistics
7    101 textbooks, as well as sources endorsed by Dr. Zona.  This methodological flaw
8    is one of several laid out below that require exclusion of this model.

9         *Second*, the results of *all* of Dr. Zona's models are driven by his unprincipled
10   manipulation of a key input—another classic ground for exclusion.  *See, e.g.*, *In re*
11   *Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166,
12   1176 (N.D. Cal. 2007) (expert cannot "cherry-pick[]" inputs supporting his
13   conclusion).  As noted above, each of Dr. Zona's models predicts a lower price for
14   Sunday Ticket that forms the basis for Plaintiffs' damages claims.  One of the
15   essential inputs into these models is what is known as the marginal cost of Sunday
16   Ticket.  That concept, and its importance, are defined further below.  But the
17   important point is that Dr. Zona changes the marginal cost in each of his models
18   without justification, and the different cost numbers he chooses drive virtually all of
19   his conclusions.  Such results-driven modeling is not reliable science.

20        For these reasons, as well as other more discrete challenges set forth below,
21   the Court should exclude Dr. Zona's analysis.

22                              **<u>BACKGROUND</u>**

23        The NFL Defendants' Class Certification Opposition lays out the factual and
24   procedural background of this case.  In this brief, we focus on the background issues
25   most relevant to understanding the flaws with Dr. Zona's work.

26

27

28

1  **I.      Dr. Zona's Assignment.**

2         Plaintiffs asked Dr. Zona to create econometric models to assess injury and

3  damages.  These types of models are commonly deployed in antitrust cases in support

4  of class certification.  *See, e.g.*, *Rail Freight*, 725 F.3d at 252–55.

5         Dr. Zona's first step was to review DirecTV data to determine the total number

6  of class members, and the amount of money they spent on Sunday Ticket.  Expert

7  Report of J. Douglas Zona, Dkt. 633-3, ¶¶ 20–21 ("Zona Report").

8         Dr. Zona then created a series of economic models.  Each is described further

9  below, but there are some common threads worth noting.  All of the models simulate

10 █████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████ *Id.* ¶¶ 70–71, 82, 122–

12 24, 128.  ████████████████████████████████████████████

13 ███████████████████████████████ *Id.*  Specifically, he divides the alternative

14 prices his models generate by the real-world price.  *See id.* ¶¶ 20; Second Errata to

15 Zona Report, Dkt. 663-1.  That percentage essentially reflects the discount a class

16 member would have received in each of Dr. Zona's alternative worlds.  To give a

17 simple example, if Dr. Zona's model generates an alternative price of $100 for

18 Sunday Ticket, and the real-world price is $200, the percentage difference is 50%.

19 That is where Dr. Zona's analysis ends.

20        Plaintiffs' other economist, Dr. Rascher, takes these percentages and uses them

21 to generate an estimate of class-wide damages.  All Dr. Rascher does is basic math:

22 He multiplies Dr. Zona's percentages by Dr. Zona's calculations of the amount of

23 money class members spent on Sunday Ticket.  Expert Report of Daniel A. Rascher,

24 Dkt. 633-4, ¶¶ 9, 281–84 ("Rascher Report").  We address the problems with Dr.

25 Rascher's work in a companion filing.  *See* Memorandum in Support of the NFL

26 Defendants' Motion to Exclude the Opinions of Daniel A. Rascher.

27

28

3

## II.  **Dr. Zona's Models.**

What follows is a brief description of the models Dr. Zona generated.[1]

### A. The Viewership and Transactional ("V&T") Model.

Dr. Zona's first model simulates alternative prices for Sunday Ticket based on some of DirecTV's viewership and transactional data.  Zona Report ¶¶ 38–71.  The model is quite complicated, but Dr. Yurukoglu lays out a detailed understanding of how it works.  *See* Yurukoglu Report ¶¶ 16–17.  Generally speaking, the model involves estimates by Dr. Zona of the following:  (1) the value of NFL game telecasts; (2) the value of the Sunday Ticket package; (3) the value of the DirecTV service; and (4) DirecTV's marginal costs for Sunday Ticket and DirecTV service to consumers— an economic term that describes the incremental costs DirecTV incurs in providing Sunday Ticket and satellite service to one more subscriber.  *See* Zona Report ¶¶ 38, 40–41, 50, 54–55, 65.

Each step of this analysis builds on its predecessors, such that if one step is infirm, everything that follows is too.  Yurukoglu Report ¶ 17.  In conducting each

---

[1] The simplified summary below obscures the extreme difficulties that the NFL Defendants faced in attempting to understand and reconstruct Dr. Zona's work.  Dr. Zona's report offers only his topline conclusions and few of the results he generated along the way.  Recognizing the importance of those intermediate steps, the parties agreed to a protocol, later so-ordered by the Court, under which the party offering an expert would have to produce, among other things, "a copy of any document reflecting the facts, data, and other information" upon which an expert relies, including "but not limited to, underlying data, spreadsheets (including formulas therein), computerized regression analysis and/or other underlying reports, programs, computer codes and schedules *sufficient to reconstruct the work*, calculations, and/or analyses" within three days of serving the expert's report.  *See* Stipulated Expert Protocol, Dkt. 289, at 2 (emphasis added).  Plaintiffs did not comply.  On August 24, 2022, the deadline set by the stipulation, Plaintiffs produced a copy of Dr. Zona's backup files comprising 773MB of information.  This production contained very little of Dr. Zona's work, as well as a code riddled with errors notionally designed to allow Dr. Zona's work to be reproduced.  After weeks of back-and-forth, Plaintiffs finally produced the full suite of Dr. Zona's backup files on September 29, 2022, comprising *68.7GB* of data, as well as workable code.  The NFL Defendants have reserved all rights to seek remedies for Plaintiffs' violation of the expert protocol.

4

1   of these analyses, ███████████████████████████████████████

2   ████████████████████████████████████████████████   Yurukoglu

3   Report ¶ 95.

4   　　　The upshot of all these analyses was a predicted marginal cost for Sunday

5   Ticket of ██████   Zona Report ¶ 65 n.48.  Using that number as an essential input,

6   Dr. Zona attempted to simulate the real-world prices and the number of subscriptions

7   to Sunday Ticket in 2018.  Zona Report at 38, Ex. 17.  Because his model closely

8   matched real-world outcomes in that year, Dr. Zona claims that his model makes

9   valid and reliable predictions.  *See id.* ¶¶ 41, 69; Kilaru Decl. Ex. 2 (Transcript of

10  Deposition of J. Douglas Zona 129:4–15, 136:5–9) ("Zona Tr.").

11  　　　Dr. Zona then simulated prices in three different scenarios: (1) where two

12  distributors sell Sunday Ticket; (2) where four distributors sell Sunday Ticket; and

13  (3) where two distributors sell Sunday Ticket and three clubs sell packages of just

14  their games (the Dallas Cowboys, Pittsburgh Steelers, and New England Patriots).

15  Zona Report ¶¶ 70–71.  In performing these simulations, Dr. Zona curiously divided

16  the marginal cost predicted by his model by ███—a decision discussed in further

17  detail below.  *See infra* at 18–20.  Ultimately, Dr. Zona's model yielded ████████

18  ████████████████████████   for the three scenarios above.  Zona Report

19  ¶¶ 70–71; *see also id.* at 39, Ex. 18.

20  　　　Dr. Rascher uses the first of these percentages to calculate damages in the

21  "Non-Exclusivity But-For World," described further in his report and the NFL

22  Defendants' concurrently filed opposition to class certification.  Rascher Report

23  ¶ 284; *see* NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion for

24  Class Certification ("Class Certification Opposition"), at 9.

25  　　　**B. The Conjoint Model.**

26  　　　Dr. Zona next conducted a price simulation based on the results of the survey

27  performed by Plaintiff's survey expert, Sarah Butler.  That survey assessed consumer

28  preferences for hypothetical packages of out-of-market games.  Zona Report ¶¶ 83–

5

124.  The flaws in Ms. Butler's survey are laid out in the expert report of Dr. Nancy Mathiowetz, as well as our Rule 702 motion to exclude the survey.  *See* Kilaru Decl. Ex. 3 (Expert Report of Nancy A. Mathiowetz) ("Mathiowetz Report"); Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Sarah Butler ("Butler Motion").

Four features of the survey are important to highlight here:

- The survey ███████████████████████████.  *See* Butler Motion at 8.

- The survey ███████████████████████████.  *See* Butler Motion at 9.

- The survey was split into two "waves," ███████████████████ ███████████████████████  *See* Butler Motion at 10–11; Zona Report ¶ 84.

- The survey featured a significant volume of irrational results, *see* Butler Motion at 12–16; Zona Report ¶ 84.

Dr. Zona did nothing to account for these issues.  *See* Yurukoglu Report ¶ 72.

In building this model, Dr. Zona used a quite different marginal cost—████.  Zona Report ¶ 117 n.65.  Dr. Zona created this marginal cost by cherry-picking numbers out of a massive spreadsheet, *see id.* ¶ 117 n.65 (citing NFL_0537793), ████████████████████████████████████████████[2] Zona Tr. 159:2–8, 17–160:3; *see also* Kilaru Decl. Ex. 4 (NFL_0537793).

---

[2] When confronted with this document at his deposition, Dr. Zona had no recollection of this spreadsheet, much less how he derived the marginal cost of ████ from it.  Zona Tr. 157:13–21 ████████████████████████████████████ ██████████████████████████████████████████

1   This model generates a ██████████████████  Zona Report ¶ 122.  Dr.

2   Rascher also uses this percentage as part of his damages calculation for the Non-

3   Exclusivity But-For World.  Rascher Report ¶ 284.[3]

4   **C. The Basic Tier Model.**

5   Dr. Zona's last model is not the product of econometric or statistical analysis.

6   Instead, ████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████  Zona Report ¶ 73; Zona Tr. 23:23–26:8.  ███████████████████

9   ████████████████████████████████████████████████████████

10  ███████████████████████  *See id.* at 25:11–26:3.

11  In this model, Dr. Zona set out to simulate what DirecTV would do ████████

12  ███████████████████████████████████  Zona Report ¶¶ 72–82.  Dr. Zona

13  claims that DirecTV would make just as much money by providing Sunday Ticket to

14  all subscribers and increasing the cost of their satellite service.  *Id.* ¶ 82.  Based on

15  some simple math (dividing the yearly Sunday Ticket rights fee by the number of

16  DirecTV subscribers), and an assumption that the marginal cost of distributing

17  Sunday Ticket is ██████, Dr. Zona concluded that DirecTV █████████████████

18  ████████████████████████████████████████████████████████

19  *Id.* ¶¶ 78–82.  A key input to this model is Dr. Zona's conclusion ██████████████

20  ████████████████████████████████████████████████████████

21  ██████████████████  *Id.* ¶ 81.  This model, if it can be called that, ████████████

22  ██████████████████  Zona Report ¶ 82; Zona Tr. 80:21–81:11.

23

24

_____

25   [3] Dr. Zona also produced a model based on results from an NFL-produced

26  ████████████████████████████  After both experts were deposed and the flaws underlying

27  this model became clear, Dr. Rascher omitted this model from his damages

28  calculation, which increased Plaintiffs' claimed damages.  *See* Clarification of and

Addendum to Rascher Report, Dkt. 663-2, ¶¶ 8–9 ("Rascher Addendum").

Dr. Rascher uses this reduction factor to calculate damages in the "Non-Pooling But-For World," described further in his report and the NFL Defendants' class certification opposition.   Rascher Report ¶ 283; *see* Class Certification Opposition at 8–9.

## LEGAL STANDARD

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court must "mak[e] a preliminary determination that [an] expert's testimony is reliable" before admitting that testimony.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). In the class certification context, "[t]he Ninth Circuit has approved of a rigorous application of [the *Daubert* standard]" and the Court "must consider . . . evidentiary objections to Plaintiffs' experts" before "addressing the merits of the certification motion."  *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *3 (C.D. Cal. June 7, 2017) (Gutierrez, J.) (citing *Ellis*, 657 F.3d at 982).

To be considered reliable under Rule 702, an expert must rely on sufficient facts or data, provide testimony based on reliable principles and methods, and reliably apply those principles and methods to the facts of the case.  Fed. R. Evid. 702(b)–(d).  "The party offering the expert bears the burden of establishing that Rule 702 is satisfied."  *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2007 WL 935703, at *3 (S.D. Cal. Mar. 7, 2007) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)).  Where a party fails to establish that an expert's proffered opinions satisfy these requirements, the court "must act as a 'gatekeeper' to exclude" those opinions.  *Ellis*, 657 F.3d at 982.

## ARGUMENT

### I.   The V&T Model Generates Absurd Results And Involves Elementary Errors.

The V&T Model yields nonsensical results, involves textbook economic and statistical errors, rests on implausible assumptions, and uses data in unprincipled

8

ways.   The model is not "grounded in the methods of science" and should be
excluded.  *See Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).

### A.   The V&T Model Reaches Fundamentally Irrational Conclusions About Consumer Behavior.

The clearest sign that there are problems with the V&T Model—which ███
████████████████████ that Dr. Rascher uses in calculating damages in the
Non-Exclusivity But-For World, *see* Zona Report ¶ 70, Rascher Report ¶ 284—are
the absurd predictions it makes about consumer preferences.

A basic tenet of economics is that consumers behave rationally.  *See Dolphin
Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985)
(parties "must presume the existence of rational economic behavior in the
hypothetical free market"); *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1262
(9th Cir. 1981) ("[E]conomic rationality must be assumed for all competitors, absent
the strongest evidence of chronic irrationality.").  A model that suggests otherwise
cannot be trusted.

The opinion in *Laumann* is directly on point.  *Laumann* was a similar antitrust
case in which some of the same Plaintiffs' attorneys here raised a sweeping challenge
to the distribution of out-of-market games in professional hockey and baseball.
Seeking class certification, the plaintiffs offered an economic model concluding that
fans interested in watching one team's games were most likely to purchase a package
of many teams' games, while fans interested in watching many teams' games were
more likely to purchase a single team's games.  117 F. Supp. 3d at 310.  The court
found that these "results make[] no sense[] [because] the more teams a fan is
interested in watching, the more likely he would be to buy a package of the telecasts
of all teams instead of the telecasts of only one team."  *Id.* at 318.  In light of these
inexplicable predictions, the *Laumann* court excluded the model, *id.* at 314–16, and
declined to certify the damages class, *Laumann v. Nat'l Hockey League*, 105 F. Supp.
3d 384, 398–99 (S.D.N.Y. 2015).

9

1   The same result should follow here.  A key input into the V&T Model is Dr.

2   Zona's simulation of consumer preferences for various packages of NFL games,

3   including the games available on free broadcast television, the Sunday Ticket

4   package as it currently exists, and three simulated single-team packages comprising

5   all games played by the Dallas Cowboys, Pittsburgh Steelers, and New England

6   Patriots.  Zona Report ¶¶ 70–71.  Dr. Zona uses those simulated preferences to

7   simulate prices for those packages, and the simulated prices are in turn the linchpin

8   of the price reductions he generates.  *See id.*; Rascher Report ¶ 284 (using those price

9   reductions to calculate class-wide damages).

10   In assessing demand for these packages, Dr. Zona's model illogically predicts

11   that consumers want to pay *more* for *less*:



- ███████████████████████████████████
  ███████████████████████████████████
  ████████████████████████████████ Zona Tr. 172:12–16
  ███████████████████████████████████
  ███████████████████████████████████
  ██████████████████████████ Yurukoglu Report ¶ 44.

- ███████████████████████████████████
  ███████████████████████████████████
  █████████, *see* Zona Tr. 176:14–18 ████████
  ███████████████████████████████████
  ███████████████████████████████████
  ████ 173:24–174:3 ██████████████████████
  ███████████████████████████████████
  ███████████████████████████████████
  ███████████████████████ Yurukoglu Report ¶ 44.

- Perhaps more outlandishly, ██████████████
  ███████████████████████████████████

**Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of J. Douglas Zona**

███████████████████████████████████████████

████████████████████████ Zona Tr. 175:15–20 ████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ Yurukoglu Report ¶ 45.

These irrational predictions defy both common sense and economic principles and should be excluded under Rule 702.

In fact, this case presents an even clearer case for exclusion than *Laumann*. There, the expert proffering the model offered an explanation for why the results were "economically sensible"; the court, however, concluded that the explanation was not supported by "real world data."  117 F. Supp. 3d at 318.  Here, by contrast, Dr. Zona *has no plausible explanation*. ██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ Zona Tr. 173:24–174:8.

As in *Laumann*, Dr. Zona has no "real world data" supporting this view—just speculation.  117 F. Supp. 3d at 318; *see also R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) ("Expert testimony that is merely 'subjective belief or unsupported speculation' should be excluded." (quoting *Daubert*, 509 U.S. at 590)).  But unlike in *Laumann*, this explanation does not make any economic sense.  The model can be excluded on this ground alone.

**B. The V&T Model Suffers From The Fundamental Error Of Perfect Collinearity.**

Separate from these irrational results, the V&T Model contains an elementary methodological flaw—a separate ground for exclusion.  *See Bextra*, 524 F. Supp. 2d at 1176 (rejecting opinions that are "not derived by the scientific method, and [are] not 'good science'").  A little background helps illuminate the error.

11

The V&T Model involves a series of regressions that inform a simulation of alternative prices for Sunday Ticket. *See* Yurukoglu Report ¶ 16. Regression analyses are commonly used by econometricians to isolate the effect of one or more explanatory variables on a dependent variable. *See id.* ¶ 23. ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████ *See id.* ¶ 20.

An early lesson in introductory econometric textbooks is that regression analyses do not work when two of the explanatory variables are perfectly "collinear," meaning the two variables are perfectly correlated. *Id.* ¶ 20. Put another way, when two of the explanatory variables always move in the same proportion to each other, and one cannot increase without the other also increasing, a regression no longer yields valid results. *See id.* ¶¶ 20–21; Daniel L. Rubinfeld, *Reference Guide on Multiple Regression*, Reference Manual on Scientific Evidence 324  5 (3d ed. 2011); James H. Stock and Mark W. Watson, *Introduction to Econometrics* 226–30 (4th ed. 2020).[4] Courts have similarly recognized this elementary principle: "[W]here knowing the value of one variable always predicts the value of the other variable, the variables are 'perfectly collinear,' which renders the regression incapable of separating out the independent effects of each variable." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *11 (N.D. Cal. Dec. 15, 2014) (cleaned up) (finding an expert's damages model insufficient due to the regression's "methodological failure" of including perfectly collinear variables).

As Dr. Yurukoglu explains, ████████████████████████████

████████████████████ Yurukoglu Report ¶¶ 19; *see also id.* ¶¶ 20–37.

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[4] Dr. Rascher acknowledged this basic principle during his deposition as well. *See* Rascher Tr. 246:10–24.

12

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ██████████████████████████████████████         *Id.* ¶ 22.

5       In each regression, Dr. Zona uses a single measure of price for each year:  the

6 Sunday Ticket residential list prices in the Sunday Ticket model, and a price index

7 composed of weighted DirecTV service list prices in the DirecTV model.  Based on

8 these choices, prices are perfectly correlated with the year fixed effect variable itself.

9 In other words, knowing the year for a data point means that you automatically also

10 know the price, and vice versa—as Dr. Zona admits.  *See* Zona Report ¶ 52, n.44.  As

11 a result, Dr. Zona's analyses suffer from perfect collinearity.  This error makes it

12 impossible to reliably measure the effect of price on the demand for the Sunday

13 Ticket package or the DirecTV service respectively, and breaks his model.

14       The failure of this model is easy to demonstrate.  Just as the order of two

15 numbers that are being added together should not impact the resulting sum (7 + 2 =

16 2 + 7), textbooks teach that the order that explanatory variables (like price and year)

17 are included in a regression should not matter.  Gary Smith, Essential Statistics,

18 Regression, and Econometrics, 302–03 (2011).  ██████████████████████

19 ████████████      *See* Zona Tr. 111:5–8 ████████████████████

20 ████████████████████████████████████████████████████████

21 █████████████████████████████████████████████

22       ████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ███████████      *See* Yurukoglu Report ¶¶ 34, 37; *id.* at 27, Fig. 6; *id.* at 30, Fig. 7;

25 Zona Tr. 114:22–115:12; 126:15–25.  ████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 Yurukoglu Report ¶¶ 34, 37; Zona Tr. 110:14–17, 126:9–18, 254:23–25 ████████████

13

Case No. 2:15-ml-02668-PSG (JEMx)                    **Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of J. Douglas Zona**

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ████████████████████████████████████████ Yurukoglu Report

4 ¶¶ 34, 37; Zona Tr. 114:22–116:21, 127:15–25. ████████████

5 ██████████████████████████████████████████████████████

6 ██████████████████████████████████████ Yurukoglu Report ¶¶ 34, 37;

7 Zona Tr. 116:1–21.  This result is completely at odds with Plaintiffs' allegations and

8 Dr. Zona's modeling here, and is a product of collinearity.

9         The price coefficients generated in both of these regressions are essential to

10 the model as a whole, so these flaws undermine the model as a whole, rendering Dr.

11 Zona's price reduction calculations unreliable.  *See Werdebaugh*, 2014 WL 7148923,

12 at *11 ("The Court concludes that the perfect collinearity problem here renders the

13 damages model insufficient . . . because Dr. Capps' model is incapable of isolating

14 the damages attributable to Defendant's alleged wrongdoing[.]").  And because "it is

15 critical that an expert's analysis be reliable at every step," the rest of the model

16 relying on these improper regressions must be excluded as well.  *See Amorgianos v.*

17 *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002); *see also In re Paoli*

18 *R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("*[A]ny* step that renders the

19 analysis unreliable under the *Daubert* factors renders the expert's testimony

20 inadmissible." (emphasis in original)).

21         **C. The V&T Model Improperly Assumes Away Important Distinctions**

22             **Among Sunday Ticket Viewers.**

23         The V&T Model also rests on a series of implausible and unnecessary

24 assumptions that ignore available "data . . . [that] could have enabled [the] model to

25 predict more reliably" the bottom-line results.  *See Laumann*, 117 F. Supp. 3d at 318;

26 *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 981 (C.D. Cal. 2012)

27 (excluding antitrust models that relied on implausible assumptions).  Another key

28 input in Dr. Zona's model is ████████████████████████████████████

14

Case No. 2:15-ml-02668-PSG (JEMx)                    Memorandum in Support of the NFL Defendants'
                                                     Motion to Exclude the Opinions of J. Douglas Zona



██████████████████████████████████████████████████

████████████████████████████ Zona Tr. 86:13–21, 100:5–10; Zona Report ¶¶ 50–53, 59–61. ████████████████████████████████. *See* Yurukoglu Report ¶ 52. ██████████████████████████████████. *See id.* ¶¶ 51–52; Zona Tr. 84:16–19, 86:10–12. ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Yurukoglu Report ¶¶ 49–50; *see* Zona Tr. 221:9–18.

At his deposition, ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Zona Tr. 215:22–25, ████████████████████████████████

████████████████████████████████████████████████████

██████████ *id.* at 218:21–219:8, ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Yurukoglu Report at 43, Fig. 12; *see also id.* ¶ 51; Zona Tr. 224:24–226:11.

██████████████████████ Yurukoglu Report ¶ 52.[5]  Such exclusion renders the analysis "hopelessly flawed." *Live Concert*, 863 F. Supp. 2d at 981 (excluding expert opinion where data from a particular year was improperly excluded).

---

[5] ██████████████████████████████████████████████████ Zona Tr. 256:24–257:3. ██████████████████████████████████████████████████████████████████ *Id.* at 255:1–9; *see also* Yurukoglu Report ¶ 51. ██████████████ Zona Tr. 255:10–256:2.

Similarly, ███████████████████████████████████████████

██████████████████████████████ *See* Zona Tr. 219:13–15 ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████ *Id.* at 219:23–220:2 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ ██ ██████████████████████████████████

██████████████████████ Yurukoglu Report ¶ 48.

These assumptions defeat the model's reliability. ██████████████████

████████████████████████████████████████████████████████████

████████████████████ *Id.* ¶¶ 49–50.   These are the kind of unfounded and uncritical

assumptions that courts often reject. *See Laumann*, 117 F. Supp. 3d at 315–16, *Live

Concert*, 863 F. Supp. 2d at 988 (excluding damages model where an expert "looked

for corroborating evidence" to support his assumption "without meaningfully testing

th[e] assumption"); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 830–32

(9th Cir. 2001) (upholding district court's exclusion of expert testimony that was not

sufficiently supported by facts in the record).

**D. The V&T's Treatment Of Residential Versus Commercial Data Is
Incoherent.**

Last, the V&T Model should be rejected because it involves an unprincipled

approach to data selection.

Dr. Zona ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████, Zona  Tr.  52:14–17, ██████████

████████████████████████████████████████████████████████████

16

Case No. 2:15-ml-02668-PSG (JEMx)                    Memorandum in Support of the NFL Defendants'
                                                      Motion to Exclude the Opinions of J. Douglas Zona

1      ████████████████ *id*. at 53:24–54:7, Kilaru Decl. Ex. 5 (Transcript of DirecTV

2      30(b)(6) Deposition Witness Steven Priesand 51:10–19); Kilaru Decl. Ex. 6

3      (DIRECTV-ST-01922432 at -437–46), as well as other factors, Yurukoglu Report

4      ¶ 93. ████████████████████████████████████████████

5      ████████████████████████████████████████████████

6      ████████████████████████ *Id.* ¶¶ 50–52; Kilaru Decl. Ex. 7 (Transcript

7      of DirecTV 30(b)(6) Deposition Witness Jamie Dyckes 30:6–33:7) ("Dyckes

8      30(b)(6) Tr."). ████████████████████████████████████

9      ████████████████████████████████████████████████

10      ████████████████████ *See* Kilaru Decl. Ex. 8 (Transcript of Deposition of

11      Daniel A. Rascher 70:5–22; 72:9–73:4) ("Rascher Tr.").

12          Notwithstanding these differences, ██████████████████████

13      ████████████████████████████████████████ Zona Tr.

14      84:11–19, ██████████████████████████████████████████

15      ████████████████████████ Yurukoglu Report ¶ 95; *see also* Yurukoglu

16      Report at 74, Fig. 25. ████████████████████████████████

17      ████████████████████████████████████ *Id.* ¶ 95. ████████████

18      ████████████████████████████████████████████████

19      ████████████████████████████████████████████████

20      ████ *Id.* But ultimately, he and Dr. Rascher concluded that his price reduction is

21      applicable to *both residential and commercial* consumers. Zona Report ¶ 30;

22      Rascher Report ¶ 281; *see also id.* at 129, Ex. 14. This type of results-driven

23      manipulation of data is inappropriate, and independently invalidates the model.

24      *Bextra*, 524 F. Supp. 2d at 1176; *In re Mirena Ius Levonorgestrel-Related Prod. Liab.*

25      *Litig. (No. II)*, 341 F. Supp. 3d 213, 296 (S.D.N.Y. 2018) (excluding opinion of expert

26      whose "cherry-picking approach is at odds with principles of sound science").

27

28

## II.   Dr. Zona Improperly Manipulates Marginal Cost Throughout His Models.

One of the hallmarks of a reliable methodology is the even-handed treatment of relevant facts and inputs.  In contrast, where an expert cherry-picks data to drive his hypothesis, the resulting opinion is unreliable and must be excluded.  *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018); *Bextra*, 524 F. Supp. 2d at 1176.

The marginal cost, or the price of supplying an additional unit of a product, should turn on the structure of the business itself; it should not change drastically from model to model.  *See* Yurukoglu Report ¶ 53.  But throughout Dr. Zona's various models, he switches back and forth between several marginal cost inputs ranging from ████████ This approach is illogical—the unstated implication is that a single product can incur different marginal costs at a single point in time.  ████ ██████████████████████████████████████████████████████████ ████████████████████████████████. *Id.* ¶ 55.  This treatment of marginal cost is a classic example of improper results-oriented cherry-picking.  *See Lipitor*, 892 F.3d at 634; *Bextra*, 524 F. Supp. 2d at 1176.

Starting with the V&T Model, which is based on 2018 DirecTV viewership and residential list Sunday Ticket prices, Dr. Zona calculates a ████████ marginal cost.  Zona Report ¶ 65 n.48l; Yurukoglu Report ¶ 55.  ████████████████ ██████████████████████████████████████ *Id.* ¶ 70.  According to Dr. Zona, the accuracy of this simulation confirms the model's validity.  *See* Zona Report at 38, Ex. 17; *see also id.* ¶ 41 ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████.

In calculating but-for world prices, however, Dr. Zona manipulates the key input of marginal cost.  Rather than use ████████ as the marginal cost, he divides it

by ▮ resulting in his second marginal cost figure of ▮. Zona Report ¶ 65 n.48; Yurukoglu Report ¶ 63. As Dr. Yurukoglu's analysis shows, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *Id.* If Dr. Zona had used ▮▮ throughout, the reduction factors shown in Exhibit 18 of his report— ▮▮ ▮▮▮▮▮▮▮—drop to ▮▮▮▮▮ respectively. *Id.* at 45, Fig. 16.[6]

Dr. Zona offered no plausible explanation for this shift, and none exists as a matter of basic economics. Yurukoglu Report ¶¶ 55–58. ▮▮▮▮ ▮▮▮▮▮▮▮▮ Zona Tr. 140:19–141:3, 142:19–25. ▮▮ ▮▮▮▮▮▮▮ *Id.* at 25:18–26:8, 141:4–142:11. ▮▮▮▮▮ ▮▮▮ *id.* at 24:11–25:1, ▮▮ Dyckes 30(b)(6) Tr. 27:12–22, Kilaru Decl. Ex. 9 (Transcript of NFL 30(b)(6) Deposition Witness Hans Schroeder 50:8–51:19) ("Schroeder 30(b)(6) Tr."). An antitrust damages model that contains "too many assumptions and simplifications that are not supported by real-world evidence," must be excluded. *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041

---

[6] The V&T Model also improperly assumes that ▮▮▮ ▮▮▮▮▮ Zona Tr. 183:6–9, 184:1–3. As Dr. Yurukoglu explains, that assumption is untenable. ▮▮ Yurukoglu Report ¶ 61. ▮▮ *Id.* ▮▮ *Id.*; *see* Dyckes 30(b)(6) Tr. 34:8–20.

19

1   (N.D. Cal. 2001); *see also Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL

2   13214315, at *20 (C.D. Cal. 2011) (excluding damages calculation that was "based

3   on factual assumptions that are entirely unsupported in the record"); *Wright v. United*

4   *States*, 2008 WL 820557, at *8 (D. Ariz. 2008) (excluding testimony that "provided

5   no factual or scientific support" and "fail[ed] to address facts in the record contrary

6   to her opinion").

7       Dr. Zona's other suggestion—███████████████████████

8   ███████████████████—is nonsensical.  Dr. Zona states that the marginal cost

9   should be reduced because █████████████████████████████████████

10  ██████████████████████ Zona Report ¶ 65 n.48. ██████████████

11  █████████████████████████████████████████████████████████

12  ████████████████████████. Zona Tr. 146:19–22, 148:19–22. ███████

13  █████████████████████████████████████████████████████████

14  ███████████████████████████████████████████

15      The problems are not limited to the V&T Model.  Dr. Zona uses a third

16  different marginal cost—████—in the Conjoint Model and Basic Tier Model.  This

17  far lower marginal cost figure comes from one Excel sheet contained in ████████

18  ██████████████████████████ Zona Report ¶ 117 n.64, n.65.  Dr. Zona

19  admitted he has zero context for this document: it was produced in this litigation

20  without any accompanying emails, and no witness was ever asked about this sheet.

21  *See* Schroeder 30(b)(6) Tr. 259:17–266:23 ████████████████[7]████████

22  █████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████████████

24

25      [7] As Dr. Zona admitted, ████████████████████████████████

26  ████████████████████████████ Zona Tr. 247:8–249:7, Yurukoglu Report ¶ 61

27  n.80. ██████████████████████████████████████████████████

28  ████████████████████████████ Zona Tr. 247:8–249:7; Yurukoglu

Report ¶ 61 n.80.

20

Plucking a number out of a document with so many unknowns merits exclusion.  *See
In re Lipitor*, 892 F.3d at 634.[8]

Dr. Zona's expert report thus vacillates between four distinct marginal costs
throughout his analysis: ███████████████████  There is no principled justification
for these shifts, and the problem is not merely a technical one.[9]  Dr. Zona's choice of
marginal cost drives virtually all of the reduction factors he generates:

- ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████  Yurukoglu Report at 52, Fig. 17; Zona Report ¶¶ 41, 69; *see also
id.* at 38, Ex. 17 (verifying his simulation using a marginal cost of $215).

- ████████████████████████████████████████████
████████████████████████████████████████████████
Yurukoglu Report at 49, Fig. 19.

- ████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████  sometimes producing a positive reduction factor.  *Id.*
at 59, Fig. 21.

---

[8] In the ██████████████████████████████████  he used yet a
*fourth* marginal cost of ██████  in his calculations.  Zona Tr. 213:6–8
█████████████████████████████████████████████████████
███████████  Zona Report ¶ 127 n. 75.
[9] Dr. Zona also manipulates marginal cost in other ways.  ███████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████  Zona Tr. 180:20–181:15.
████████████████████████████████████████████████████████
██████████████████████████████████████  . Zona Tr. 205:15–206:2.

21

1     This outcome-driven analysis requires exclusion under *Daubert*. *See Rearden*

2 *LLC v. Walt Disney Co.*, 2021 WL 6882227, at *7 (N.D. Cal. July 12, 2021) (rejecting

3 expert testimony where expert "focus[ed] only on the data that supports the

4 hypothesis and ignore[d] the data that undermines it").

5 **III.**    **The Conjoint Model Uses Unreliable Inputs In An Unreliable Manner.**

6     Dr. Zona's Conjoint Model, which generates the ███████████████ that

7 Dr. Rascher uses in calculating damages in the Non-Exclusivity But-For World, *see*

8 Rascher Addendum ¶ 10, should be excluded because it relies entirely on results from

9 the survey conducted by Ms. Butler.

10     Ms. Butler's survey is the subject of a separate Rule 702 motion.  Ms. Butler's

11 survey was not relevant or methodologically sound, and generated a whole host of

12 irrational responses that cast serious doubt on its validity.  *See* Butler Motion.  If the

13 survey is excluded, a model based on that survey must be excluded too.

14     But Dr. Zona's conjoint should be excluded even if Ms. Butler's survey clears

15 Rule 702.  In addition to the methodological flaws in the conjoint analysis that Dr.

16 Yurukoglu explains in more detail, *see* Yurukoglu Report ¶¶ 71–84, Dr. Zona's

17 model incorporates the fundamental problems with the survey:

18     •  Dr. Zona built a model predicting pricing and demand for Sunday Ticket

19        from a ████████████████████████████████████████

20        ████████████████████████ Butler Motion at 11–12.

21     •  Dr. Zona ██████████████████████████████████████████

22        █████████████████████████████████████████████████

23        █████████████████████████████████████████████████

24        █████████████████████████████████████████████████

25        █████████████████████████ *See id.* at 14.

26     •  Dr. Zona ████████████████████████████████ *See id.* at 12–16.

27     •  Dr. Zona █████████████████████████████████████████████

28        ███████████████████ *See* Mathiowetz Report ¶¶ 109, 138.

22

Expert evidence fails the "fit" test under *Daubert* if, as here, the "data relied upon by the expert is materially different from the data relevant to the facts of the case." *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381, 401 (S.D.N.Y. 2007). That is particularly so given that the model ████████████████

████████████████████████████ Zona Report ¶ 122 n.67 ████

████████████████████████████████████████████████████

Rascher Addendum ¶ 10; Yurukoglu Report ¶ 74.

## IV.     Dr. Zona's Basic Tier Model Is Incomplete And Speculative.

To be properly admitted pursuant to a court's gatekeeping responsibilities, expert opinion must be "derived by the scientific method" and reflect "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Rovid v. Graco Children's Prod. Inc.*, 2018 WL 5906075, at *3 (N.D. Cal. Nov. 9, 2018) (first quoting *Daubert*, 509 U.S. at 590, and then quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).  Where an expert opinion is devoid of sufficiently rigorous analysis, it must be excluded.  *See Live Concert*, 863 F. Supp. 2d at 973 (excluding antitrust models built more on assumptions than analysis).  Dr. Zona's Basic Tier Model, which yields ████████████████████████████

████     Rascher Report ¶ 283, should be excluded under these principles.

The Basic Tier model does not evince the necessary "intellectual rigor."  To start, the model is based on an implausible premise.  Dr. Zona posits that ████████

████████████████████████████████████████████████████

████████████████████████ but offers no factual support to think this would ever happen. ████████████████████████████████

████████████████ *see* Rascher Tr. 109:3–7, and ████████████████

████████████████████████████████ *Cf.* Kilaru Decl. Ex. 10 (Transcript of Deposition of Alex Kaplan 187:8–19).  A model that rests on an implausible premise that is divorced from real-world facts must be excluded.  *See Brighton Collectibles, Inc. v. RK Exas Leather Mfg.*, 923 F. Supp. 2d 1245, 1255 (S.D. Cal.

23

1  2013) (excluding testimony where the "expert has not grounded his assumption with

2  the real world facts of this case").

3      Further, this model fails to account for the basic economic premise that

4  DirecTV would likely lose subscribers if it raised the price for its basic services,

5  despite Dr. Zona's statement elsewhere that many people would leave DirecTV in

6  response to a small increase in price.  Zona Report ¶¶ 122–24. ████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████ *See id.* ¶ 81; Yurukoglu Report

9  ¶¶ 66–67. ████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ██████████████████████████ *Id.* ¶ 68.

12     Even if Dr. Zona were correct that a ████████████████████

13 █████████████████████, his pricing calculations remain

14 problematic.  All Dr. Zona concludes is that DirecTV would have to increase its

15 service prices by ██████████████████ to recoup the lost revenue from

16 terminating the subscription package. ████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████. Zona Tr. 80:17–81:11. ████

19 ████████████████████████████████████████████████████

20 ████████████ *Id.*  As Dr. Yurukoglu demonstrates, ████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████ Yurukoglu Report ¶¶ 67–69.  That

23 outcome would leave class members much worse off.  *See Live Concert*, 863 F. Supp.

24 2d at 981 (C.D. Cal. 2012) (excluding expert opinion where the defendant's expert

25 demonstrated more likely outcomes absent shortcomings in the model).

26     Finally, Dr. Zona's model suggests DirecTV would have put Sunday Ticket

27 on a basic tier, Zona Report ¶¶ 72–82, but DirecTV currently offers virtually no

28 sports channels on its lowest-cost service tier and instead offers them on the higher-

24

priced Choice tier.  *See* Kilaru Decl. Ex. 11 (DirecTV Pricing Guide); Kilaru Decl. Ex. 12 (DirecTV Channel Guide). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████  Zona Tr. 195:3–15.  But Dr. Zona has done nothing to analyze whether DirecTV would be better (or worse) off by choosing to follow its standard practice of offering sports channels on its Choice tier.

In light of this wholesale failure to ground any of the assumptions underlying this model in real world facts or plausible analysis, this model should be excluded. *See Brighton*, 923 F. Supp. 2d at 1255.

## **CONCLUSION**

For the foregoing reasons, Dr. Zona's opinions should be excluded from the Court's consideration of Plaintiffs' motion for class certification.

Dated:  November 4, 2022                    Respectfully submitted.

/s/ *Rakesh N. Kilaru*
Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045

25

1

2

Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

3

4

5

6

7

8

9

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

10

11

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26