1   Beth A. Wilkinson (admitted *pro hac vice*)
    Brian L. Stekloff (admitted *pro hac vice*)
2   Rakesh N. Kilaru (admitted *pro hac vice*)
    Jeremy S. Barber (admitted *pro hac vice*)
3   **WILKINSON STEKLOFF LLP**
    2001 M Street NW, 10th Floor
4   Washington, DC 20036
    Telephone: (202) 847-4000
5   Facsimile: (202) 847-4005
    bwilkinson@wilkinsonstekloff.com
6   bstekloff@wilkinsonstekloff.com
    rkilaru@wilkinsonstekloff.com
7   jbarber@wilkinsonstekloff.com

8   *Counsel for Defendants National Football*
    *League, NFL Enterprises LLC, and the*
9   *Individual NFL Clubs*

10  [Additional Counsel Listed on Signature
    Pages]

11

12                  **UNITED STATES DISTRICT COURT**

13

14                  **CENTRAL DISTRICT OF CALIFORNIA**

15

16  IN RE: NATIONAL FOOTBALL          Case No.  2:15-ml-02668-PSG (JEMx)
    LEAGUE'S "SUNDAY TICKET"
17  ANTITRUST LITIGATION              **NFL DEFENDANTS'**
                                      **MEMORANDUM IN OPPOSITION**
18  _____       **TO PLAINTIFFS' MOTION FOR**
                                      **CLASS CERTIFICATION**
19
    THIS DOCUMENT RELATES TO          Judge: Hon. Philip S. Gutierrez
20  ALL ACTIONS
                                      Date: January 13, 2023
21                                    Time: 1:30 p.m.
                                      Courtroom:
22                                         First Street Courthouse
23                                         350 West 1st Street
                                           Courtroom 6A
24                                         Los Angeles, CA 90012
25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................ 3

I.    The Existing Broadcast Structure Of NFL Games ............................. 3

II.   Plaintiffs' Claims And Proposed Classes ..................................... 5

III.  Plaintiffs' Support For Certification. ........................................ 6

LEGAL STANDARD ..................................................................... 9

ARGUMENT ............................................................................... 10

I.    The Court Should Reject Plaintiffs' Gerrymandered Class. ............... 10

II.   Plaintiffs' Damages Classes Cannot Be Certified Under Rule 23(b)(3) ........ 12

     A.    Plaintiffs Have Not Offered An Admissible Economic Model. .......... 13

     B.    Even if Plaintiffs' Models Were Admissible, Plaintiffs Still
          Could Not Prove Injury Through Common Evidence. ....................... 14

     C.    Plaintiffs' Cannot Prove Damages Through Valid, Class-Wide
          Evidence. .............................................................................. 20

     D.    Plaintiffs Cannot Satisfy Rule 23(b)(3)'s Superiority Requirement. .. 21

III.  Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements of Commonality,
     Typicality, or Adequacy. ........................................................ 22

IV.  Certification of the Commercial Class Is Improper Because Plaintiffs
     Do Not Even Try To Satisfy Rule 23. ....................................... 23

V.    Certification Under Rule 23(b)(2) Is Improper. ............................ 24

CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................23

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999)........................................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................12

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) .......................................................................................19

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)...........................................................................24

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003)..........................................................................23

*Bowerman v. Field Asset Servs., Inc.*,
    39 F.4th 652 (9th Cir. 2022)...........................................................................21

*Comcast v. Behrend*,
    569 U.S. 27 (2013) ............................................................................13, 20, 21

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977) .......................................................................................22

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .................................................................................10, 22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .........................................................................................9

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992).........................................................................23

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) .....................................................................passim

NFL DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ..........................................................14

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) .....................................................................14

*In re High-Tech Emp. Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. 2013) .....................................................................12

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)...............................................................10, 12, 13

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    2014 WL 6601941 (D. Del. 2014) ....................................................................19

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    957 F.3d 184 (3d Cir. 2020)..............................................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig. (Rail Freight I)*,
    725 F.3d 244 (D.C. Cir. 2013) ...............................................................1, 12, 13

*In re Rail Freight Fuel Surcharge Antitrust Litig. (Rail Freight II)*,
    934 F.3d 619 (D.C. Cir. 2019) ................................................................passim

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005).........................................................................24

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975)............................................................................12

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)..............................................................................12

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    791 F.2d 1356 (9th Cir. 1986).........................................................................19

*Lara v. First Nat'l Ins. Co. of Am.*,
    25 F.4th 1134 (9th Cir. 2022)....................................................................13, 22

*Laumann v. National Hockey League*,
    117 F. Supp. 3d 299 (S.D.N.Y. 2015)..............................................................13

iii

NFL DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

    475 U.S. 574 (1986) ........................................................................19

*Ohio v. Am. Express Co.*,

    138 S. Ct. 2274 (2018) ...................................................................10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022)........................................10, 12, 13, 20

*Pickett v. Iowa Beef Processors*,

    209 F.3d 1276 (11th Cir. 2000).......................................................23

*Rebel Oil Co. v. Atl. Richfield Co.*,

    51 F.3d 1421 (9th Cir. 1995)...........................................................21

*Senne v. Kansas City Royals Baseball Corp.*,

    934 F.3d 918 (9th Cir. 2019)...........................................................25

*Smith v. Univ. of Wash. L. Sch.*,

    233 F.3d 1188 (9th Cir. 2000).........................................................25

*Steering Comm. v. Exxon Mobil Corp.*,

    461 F.3d 598 (5th Cir. 2006)...........................................................21

*Thorn v. Jefferson-Pilot Life Ins. Co.*,

    445 F.3d 311 (4th Cir. 2006)...........................................................25

*TransUnion LLC v. Ramirez*,

    141 S. Ct. 2190 (2021) ...................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,

    577 U.S. 442 (2016) .......................................................................18

*Valley Drug*,

    350 F.3d 1181 (11th Cir. 2003) .....................................................23

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ...........................................................9, 22, 25

*Wang v. Chinese Daily News, Inc.*,

    737 F.3d 538 (9th Cir. 2013)....................................................10, 12

iv

*Ward v. Apple Inc.*,

 2018 WL 934544 (N.D. Cal. 2018) ................................................................. 13

<u>Statutes</u>

15 U.S.C. § 1291 ........................................................................................... 3, 4

<u>Rules</u>

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................. 21

Fed. R. Civ. P. 23(c)(1)(B) .............................................................................. 10

Rule 23 .................................................................................................. passim

**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# INTRODUCTION

Plaintiffs framed this case as an antitrust challenge to NFL Sunday Ticket. That product, created by the NFL and distributed exclusively by DirecTV, supplements the NFL's extensive offerings on free television by allowing football fans across the country to watch every Sunday afternoon NFL game. But Plaintiffs' motion for class certification makes clear that their ambitions are much broader. They seek to upend the NFL's entire media model, which allows every person in America to receive up to five football games for free every Sunday, through contracts Congress has exempted from antitrust scrutiny. Plaintiffs' far-reaching legal theory cannot be coherently evaluated on a class-wide basis, for several reasons.

*First*, Plaintiffs ask this Court to certify improper classes. At the merits stage, Plaintiffs would have to prove that the agreements they are challenging cause class-wide antitrust injury in a relevant market. Here, Plaintiffs claim that the relevant market is the market for all NFL telecasts. But they seek to represent only a fraction of Sunday Ticket subscribers composing ███████████████████████. Plaintiffs then propose damages models in which some (but not all) of their gerrymandered class would be benefited by making everyone else in the market pay more. Plaintiffs identify no precedent, and Defendants are aware of none, suggesting that this kind of forced wealth transfer is a valid theory of antitrust class certification. The Court should accordingly reject the proposed class.

*Second*, Plaintiffs' damages classes cannot be certified because fairly resolving their claims requires individualized determinations of injury and damages that defeat Rule 23(b)(3)'s predominance and superiority requirements. Courts in antitrust class actions require a valid economic model supporting certification: "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig. (Rail Freight I)*, 725 F.3d 244, 253 (D.C. Cir. 2013). As explained in Defendants' accompanying motions to exclude Plaintiffs' experts, there is no valid model in this case and thus no basis for certifying the class.

1

Certification is improper even if the experts' testimony were admitted. Plaintiffs posit fundamentally different approaches to distributing NFL games in so-called "but-for worlds" where the media distribution agreements at issue here do not exist. It is impossible to know whether individual class members would be better or worse off under those approaches without evaluating their specific circumstances. Because it would be necessary to hear evidence from "[millions] of class members" to fairly adjudicate the case, Rule 23(b)(3) prohibits certification. *In re Rail Freight Fuel Surcharge Antitrust Litig. (Rail Freight II)*, 934 F.3d 619, 627 (D.C. Cir. 2019) (quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 57–58 (1st Cir. 2018)).

*Third*, Plaintiffs' inability to establish class-wide proof of injury and damages also means that they cannot satisfy Rule 23(a)'s requirements of commonality, typicality, and adequacy. Because there is no common injury, there is no common question that drives the resolution of the litigation, and no typical plaintiff. And the inherent conflict between class members who would be better off and those who would be worse off in Plaintiffs' theoretical but-for worlds means the named plaintiffs cannot fairly represent the class as a whole.

*Fourth*, while Plaintiffs seek to represent separate classes of residential and commercial purchasers, they essentially disregard the commercial class. The two proposed classes feature different consumers with different interests who paid different prices. But every one of Plaintiffs' experts failed to analyze the commercial class with any rigor. Plaintiffs' decision to lump the two classes together, and ignore the commercial class, reveals the slapdash reasoning underlying their models and undercuts their Rule 23 arguments as to both classes.

*Finally*, Plaintiffs cannot obtain certification of an injunctive class under Rule 23(b)(2). The claim for injunctive relief will be moot by the time this case is resolved because the current Sunday Ticket distribution agreement expires at the end of this season. And because the class includes both current and former subscribers, the injunction will not benefit every class member, as required by law.

2

1    The Court should deny the motion for class certification.[1]

2                              **BACKGROUND**

3    **I.      The Existing Broadcast Structure Of NFL Games.**

4           Each year, the NFL and its 32 member clubs jointly produce a series of over

5    250 professional football games culminating in the Super Bowl.  Expert Report of

6    Daniel A. Rascher, Dkt. 633-4, ¶¶ 34, 37–38 ("Rascher Report").  Most regular-

7    season NFL games are played on Sunday afternoons beginning about 1 p.m. and 4

8    p.m. ET.  Israel Report ¶ 49.  Those games are available on free broadcast television

9    (in other words, with just a television and antenna).  *Id.*  A series of business

10   agreements make this possible.  First, all NFL clubs have assigned to the League the

11   right to distribute telecasts of their games.  *Id.* ¶ 144.  Second, the NFL has entered

12   licensing agreements with CBS and Fox granting these networks rights to distribute

13   every Sunday afternoon regular-season game.  Kilaru Decl. Ex. 4 (Transcript of

14   Deposition of Brent Lawton 37:6–12).  As a result of those agreements, consumers

15   get access to every single one of their local club's (or clubs') games for free.  More

16   broadly, every location in the country is guaranteed to have available access to three

17   or four regular season games for free every Sunday afternoon.  Israel Report ¶ 49.

18          These two sets of agreements—(1) between the NFL and the clubs and (2)

19   between the NFL and CBS and Fox—are exempt from antitrust scrutiny.  The Sports

20   Broadcasting Act, 15 U.S.C. § 1291, provides that "[t]he antitrust laws . . . shall not

21   apply to any joint agreement by or among persons in or conducting the organized

22   professional team sport[] of football . . . by which any league of clubs participating

23   in professional football . . . sells or otherwise transfers all or any part of the rights of

---

24   [1] To aid the Court in its evaluation of this opposition (and the accompanying
25   motions to exclude Plaintiffs' experts), the NFL Defendants have submitted three
     expert reports, from Dr. Mark Israel (an economist), *see* Kilaru Decl. Ex. 1 (Expert
26   Report of Mark Israel) ("Israel Report"); Dr. Nancy Mathiowetz (a survey expert),
27   *see* Kilaru Decl. Ex. 2 (Expert Report of Nancy Mathiowetz) ("Mathiowetz Report");
     and Dr. Ali Yurukoglu (an economist), *see* Kilaru Decl. Ex. 3 (Expert Report of Ali)
28   ("Yurukoglu Report").

such league's member clubs in the sponsored telecasting of the games of football . . . ."  Because the agreements described above are "joint agreement[s] by or among [the NFL clubs] . . . by which [the NFL] . . . sells or otherwise transfers all or any part of the rights of such league's member clubs in the sponsored telecasting of the games of football," they are covered by the SBA.  *See id.*

To provide fans throughout the country with the opportunity to access even more live Sunday afternoon telecasts, ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████  *See* Kilaru Decl. Ex. 5 (Transcript of Deposition of Frank Hawkins 171:6–25); Kilaru Decl. Ex. 6 (Transcript of Deposition of Paul Tagliabue 80:4–6).  In this arrangement, the NFL licenses to DirectTV the right to distribute the copyrighted broadcast "feeds" from the Sunday afternoon games produced by CBS and Fox to consumers.  Kilaru Decl. Ex. 7 (Transcript of Deposition of Brian Rolapp 100:10–13). ██████████████████████████████████████████████████ ██████  Kilaru Decl. Ex. 8 (Transcript of Deposition of Chris Lauricella 15:22–16:5) ("Lauricella Tr.").  ██████████████████████████████████ ████████████████████████████.  Kilaru Decl. Ex. 9 (Transcript of Deposition of Steve Bornstein 244:17–25) ("Bornstein Tr.").  Sunday Ticket is also available to commercial establishments that cater to fans who want to be able to see every Sunday afternoon NFL game.  Kilaru Decl. Ex. 10 (Transcript of Mucky Duck 30(b)(6) Deposition Witness Jason Baker 33:23–34).

Sunday Ticket pricing varies from subscriber to subscriber.  Most consumers get Sunday Ticket as an add-on to a satellite subscription, but some consumers are eligible to buy a standalone streaming version of Sunday Ticket.  Rascher Report ¶ 262.  ██████████████████████████████████████████████ ████████████████████████████████████████████████████████.  Kilaru Decl. Ex. 11 (Transcript of DirecTV 30(b)(6) Deposition Witness James Dyckes 29:7–33:10) ("Dyckes 30(b)(6) Tr.").

4

1     For example, ███████████████████████████████████████

2 ████████████████████████████████████████. *Id.* at 30:6–16.  Other

3 customers, including named residential plaintiffs, ███████████████████

4 ████████████████████████████████████. Kilaru Decl. Ex. 12 (Transcript

5 of Deposition of Jonathan Frantz 102:16–103:18) ("Frantz Tr."); Dyckes 30(b)(6) Tr.

6 32:12–33:10.  On the commercial side, █████████████████████████████████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████

9     The NFL's distribution arrangements have made it the most widely watched

10 sport in America.  Rascher Report ¶ 118. █████████████████████████████████

11 ██████████████████████████████████████████. Bornstein

12 Tr. 235:19–237:16.  It is undisputed that the NFL has the █████████████████

13 █████████████████████████████████████████████ *Id.*



## II.    Plaintiffs' Claims And Proposed Classes.

15     Plaintiffs here challenge (1) the agreements between the clubs and the NFL,

16 (2) the agreements between the NFL and CBS/Fox, and (3) the agreements between

17 the NFL and DirecTV for Sunday Ticket—even though the first two sets of

18 agreements are largely exempt from antitrust scrutiny and ensure the broad

19 availability of NFL games for free.  Plaintiffs claim all three agreements operate in

20 concert to inflate the price of Sunday Ticket and make it less accessible to consumers.

21     Plaintiffs seek to represent two classes: "residential subscribers to DirecTV

22 that purchased the NFL Sunday Ticket package since June 17, 2011" and

23 "commercial subscribers that bought the package during the same period."

24 Memorandum In Support Of Plaintiffs' Motion for Class Certification, Dkt. 633-1,

25 at 1 ("Memo ISO Class Certification").  The class definitions exclude Sunday Ticket

26 subscribers who did not also obtain satellite service (i.e., subscribers to the standalone

27 streaming versions of Sunday Ticket), as well as anyone who received Sunday Ticket

28 without ever paying for it, as part of a promotion by DirecTV.  *Id.* at 1 n.1, 16 n.24.

5

**III.    Plaintiffs' Support For Certification.**

_Plaintiffs' expert witnesses._   Plaintiffs' motion for class certification depends on the testimony of three expert witnesses.   The first is Dr. J. Douglas Zona, an economist.   Dr. Zona used data produced by DirecTV to calculate the amount of money that class members spent on Sunday Ticket.   Expert Report of J. Douglas Zona, Dkt. 633-3 ¶¶ 29–30 ("Zona Report").   He then prepared a series of economic models that attempt to predict the prices that class members would have paid absent Defendants' alleged violation of the antitrust laws. _See generally id_. ¶¶ 67–83.

One of Dr. Zona's models is based on a survey conducted by Ms. Sarah Butler, Plaintiffs' second expert.   _Id_. ¶¶ 83–84.   Ms. Butler surveyed 975 consumers to determine their preferences among a series of hypothetical alternative packages of "out-of-market" football games.   Expert Report of Sarah Butler, Dkt. 633-2 ¶¶ 8, 66 ("Butler Report"); Kilaru Decl. Ex. 13 (Transcript of Deposition of Sarah Butler 119:22–121:19).   Ms. Butler invented these packages, which do not include Sunday Ticket itself. _Id._ at 119:16–121:19, 122:3–123:14.   ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Mathiowetz Report ¶ 33.

Plaintiffs' third expert is Dr. Daniel Rascher, another economist.   Dr. Rascher opines that every issue in this case can be resolved by class-wide proof, including the critical issues of antitrust injury and damages.   Rascher Report ¶ 13.   The way Dr. Rascher claims to meet that standard is by setting out three different "but-for worlds" (described below) in which certain of the agreements challenged here are prohibited. _See id._ ¶¶ 28–29.   Dr. Rascher asserts that in each of these worlds, every single class member would be better off.   _Id_. ¶ 226.   He then claims ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████  _See_ Kilaru Decl. Ex. 14 (Transcript of Deposition of Daniel A. Rascher

6

56:19–57:10, 66:12–67:8) ("Rascher Tr."). He calls each percentage discount a "reduction factor." Rascher Report ¶ 9.

Despite being an economist, Dr. Rascher does no economic modeling to support his claims. Instead, he bases these but-for worlds on his own review of a limited portion of the evidence in this case, his views on economic theory, and uncritical use of numbers from Dr. Zona's expert report.

<u>Plaintiffs' but-for worlds.</u> Dr. Rascher's three but-for worlds are the foundation of Plaintiffs' effort to obtain class certification. Each reflects significant assumptions about how the NFL, its member clubs, broadcasters, other media providers, and consumers would act absent some or all of the challenged conduct.

*The College Football But-For World.* ███████████████████

████████████████████, *see generally* Rascher Tr. 169:24–171:22, but on Dr. Rascher's analogy to the way college football telecasts are distributed in America. Dr. Rascher posits that absent the agreements challenged in this case, either ████████████████████████████████████████

████████████████████████████. *Id*. at 178:22–179:16. Dr. Rascher opines that the ██████████████████████████████████████████

██████████████████████████████████. *Id*. at 167:15–22. At his deposition, ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████ *Id*. at 26:15–37:20; *see* Rascher Report App'x B.

Dr. Rascher also clarified that in this but-for world, each ███████████

███████████████████████████████. Rascher Tr. 193:9–14, 202:14–17. Today, if the Los Angeles Rams played the Seattle Seahawks, a full telecast of that game would be available for free on Fox in Los Angeles, Seattle, and any other areas where Fox chooses to distribute it, and otherwise available on Sunday Ticket.

7

1  *See id.* at 205:20–23.  In this but-for world, the Rams-Seahawks game would be

2  available ████████████████████████████████████.  *Id.* 95:3–97:17,

3  105:2–10. ████████████████████████████████████████████████

4  ████████████████████████████.  *Id.*  As a result, ██████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████  *Id.* at 223:6–11. ████████████

8  ████████████████████████████████████████████████████████████

9  ██████████████████████  *Id.* at 202:6–9.

10      Ultimately, Dr. Rascher concludes that *all* amounts paid by class members for

11  Sunday Ticket (█████████) constitute an overcharge in this but-for world, because

12  he asserts that all Sunday afternoon football games would have been available for no

13  additional fee as part of the basic cable package class members purchased from

14  DirecTV.  Rascher Report ¶ 286.  To make his model more "conservative," Dr.

15  Rascher factors in an adjustment to the cost of a basic cable subscription.  *Id.* ¶ 261.

16  ████████████████████████████████████████████████████████████

17  ████████████," Rascher Tr. 80:10, Dr. Rascher predicts that ████████████

18  ████████████████.  Rascher Report ¶ 261.  He arrives at that conclusion by

19  simply dividing the current yearly rights fee for Sunday Ticket by the number of

20  cable and satellite subscribers in America.  *Id.*  Dr. Rascher thus predicts that every

21  consumer would have paid █████████ for Sunday Ticket in this but-for world,

22  yielding overall damages of █████████ (pre-trebling).  *Id.*  As applied to the

23  residential named Plaintiffs, this methodology suggests they would have paid █

24  (Frantz) and █████ (Lippincott) for access to a large quantity of what Dr. Rascher called

25  ████████████████████  Rascher Tr. 56:23–57:6 (Frantz), 59:18–24 (Lippincott).

26      *The Non-Pooling But-For World.*  Plaintiffs' second but-for world is one in

27  which each NFL club would distribute games directly to consumers, and each club

28  may also individually license to DirecTV the exclusive rights to bundle its games

8

NFL DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

with other games.  One of Dr. Zona's models suggests that in this world, DirecTV would respond to competition from individual clubs by providing the bundle to every satellite subscriber—even those with no interest in it—and increasing subscriber fees for everyone by ███████.  Zona Report ¶ 81.  Dr. Zona thus concludes that all class members would have received a discount of ████ in this scenario (the difference between the list price for residential Sunday Ticket and ███).  *Id.* ¶ 82.  Dr. Rascher's damages calculation for this world relies entirely on Dr. Zona's work.  He simply multiplies class members' total purchases of Sunday Ticket by ████ to generate damages of ██████ (pre-trebling).  Rascher Report ¶ 283.

*The Non-Exclusive But-For World.*  In this final but-for world, Plaintiffs imagine that the NFL would make Sunday Ticket, and potentially some narrower packages of games, available to multiple different distributors.  *Id.* ¶ 31.  This but-for world stems from an analogy to the way out-of-market games are distributed by Major League Baseball and the National Basketball Association—████████ ████████████████████████████████████████████ ███████████████████████████████████████████.  Israel Report ¶¶ 202, 245–46.  Here too, Dr. Rascher's damages calculation is entirely dependent on Dr. Zona's work.  He averages together reduction factors generated by several of Dr. Zona's models, concluding that all class members would receive a ██████████  *See* Clarification of and Addendum to Rascher Report, Dkt. 663-2, ¶ 16.  He then multiplies class members' total purchases of Sunday Ticket by that percentage, yielding damages of ██████ (pre-trebling).  *Id.*

## LEGAL STANDARD

A "party seeking class certification must affirmatively demonstrate his compliance" with Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  Plaintiffs must establish that proof by a preponderance of

9

NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

the evidence.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc), *petition for cert. filed sub. nom.*, *StarKist Co. v. Olean Wholesale Grocery Cooperative, Inc.*, No. 22-131 (Aug. 10, 2022).  The district court must undertake "a rigorous analysis" before certifying a class.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  In assessing whether Plaintiffs have carried their burden, the Court must resolve "all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).

## ARGUMENT

### I.      The Court Should Reject Plaintiffs' Gerrymandered Class.

Before certifying a class, the Court "must define the class."  Fed. R. Civ. P. 23(c)(1)(B).  It is Plaintiffs' burden to propose a class definition and show that Rule 23's requirements are satisfied, but courts retain inherent authority to police the class definition. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013).

Plaintiffs' class certification motion fails because their proposed classes are fundamentally inconsistent with their theory of antitrust liability.  Plaintiffs identify the relevant product market in this case as "live video presentations of regular season NFL games."  Rascher Report ¶ 130 n.152.  ██████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ *See* Rascher Tr. 75:6–11 (████████████████████ ████████████████████████████████████████████).  To prevail on their antitrust claim, Plaintiffs must prove injury to competition in this market. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (under rule of reason framework, "plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that *harms consumers in the relevant market*") (emphasis added).

10

Plaintiffs' class definition, and their efforts to show common injury and damages to their proposed class, cannot be reconciled with their eventual burden of showing overall harm to competition in their much broader proposed market.  Their class is much narrower than the group of consumers in their proposed market:  The Sunday Ticket subscribers they seek to represent are ███████████████████ ███████████████████.  *Compare* Zona Report ¶ 28 (███████████████████ ███████) *with* Israel Report ¶ 194 (███████████████████ ███████████████████ ███████████).  And the but-for worlds Plaintiffs propose would make many of those subscribers, ███████████████████████████████, worse off.  The record evidence uniformly establishes that ███████████████████ ███████████████████ ███████████████████.  *See, e.g.*, Kilaru Decl. Ex. 15 (Transcript of Deposition of Fox Witness Larry Jones 46:6–7); Kilaru Decl. Ex. 16 (Transcript of Deposition of CBS Witness Sean McManus 42:24–43:3).  Each of Plaintiffs' but-for worlds disrupts that exclusivity, harming the hundreds of millions of market participants who currently enjoy those high-quality telecasts available for free.  Absent market participants would be worse off in the but-for worlds in other ways, too.  As one example, Plaintiffs' damages model for the Non-Pooling But-For World ███████████████████████████████████.  Rascher Tr. 11:17–25.  That results in ███████████████████████████████████ ███████████.  *See* Zona Report at 14, Ex. 3.

Defendants are aware of no authority (and Plaintiffs cite none) approving class treatment in this extreme circumstance—where Plaintiffs seek certification based on theories that concededly would harm the vast majority of consumers in their proposed relevant market, while seeking to represent a small minority they claim would be better off.   To be clear, because Plaintiffs' approach appears unprecedented,

11

NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   Defendants are also unaware of any authority rejecting such an approach.  But Rule
2   23 "stems from equity practice," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613
3   (1997), and Rule 23(b)(3) classes are appropriate only when certification can avoid
4   "sacrificing procedural fairness or bringing about other undesirable results," Fed. R.
5   Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.  The decision of a
6   court as to whether to certify a Rule 23(b)(3) class "must 'take into account several
7   different interests,'" including the interests of "'the public at large.'"  *Kamm v.*
8   *California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975) (quoting *Katz v. Carte*
9   *Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974)).  And courts have the authority to
10  prevent abuses of the class action device, *see Wang*, 737 F.3d at 546; *Olean*, 31 F.4th
11  at 669 (prohibiting use of a "'fail safe' class that is defined to include only those
12  individuals who were injured by the allegedly unlawful conduct").

13      Accordingly, the Court should reject Plaintiffs' proposed classes.

14  ## II.   Plaintiffs' Damages Classes Cannot Be Certified Under Rule 23(b)(3).

15      To obtain certification of damages classes under Rule 23(b)(3), Plaintiffs must
16  show that "questions of law or fact common to class members predominate over any
17  questions affecting only individual members."  As the Ninth Circuit and others have
18  recognized, the gateway to meeting this burden in an antitrust case is establishing
19  reliable class-wide evidence of antitrust injury and damages.  *Olean*, 31 F.4th at 666;
20  *see also Rail Freight I,* 725 F.3d at 252; *In re High-Tech Emp. Antitrust Litig.*, 289
21  F.R.D. 555, 566 (N.D. Cal. 2013) (collecting cases).

22      Common proof of injury and damages matters because otherwise, a trier of
23  fact would have to evaluate each individual plaintiff.  "In antitrust cases, impact often
24  is critically important for the purpose of evaluating Rule 23(b)(3)'s predominance
25  requirement because it is an element of the claim that may call for individual, as
26  opposed to common, proof."  *Hydrogen Peroxide*, 552 F.3d at 311.  If "figuring out
27  whether each individual putative class member was harmed would involve an inquiry

28

12

specific to that person," common issues do not predominate. *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022).

### A.      Plaintiffs Have Not Offered An Admissible Economic Model.

Establishing class-wide injury and damages through common proof requires a reliable economic model. *Comcast v. Behrend*, 569 U.S. 27, 35 (2013). "No damages model, no predominance, no class certification." *Rail Freight I*, 725 F.3d at 253; *see also Ward v. Apple Inc.*, 2018 WL 934544, at \*3 (N.D. Cal. 2018) ("Absent a data-driven model, plaintiffs have failed to meet their burden under Rule 23.") (cleaned up). In evaluating such models, the court must "'weigh[] conflicting expert testimony' and 'resolv[e] expert disputes,' where necessary to ensure that Rule 23(b)(3)'s requirements are met." *Olean*, 31 F.4th at 666 (quoting *Hydrogen Peroxide*, 552 F.3d at 323–24) (brackets omitted). Such weighing "is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." *Hydrogen Peroxide*, 552 F.3d at 323.

Plaintiffs have not satisfied this requirement. As explained in greater depth in Defendants' Rule 702 motions, none of Plaintiffs' expert testimony is admissible. But the central issue for *this* motion is that Dr. Zona's models are unreliable, and he is the only expert who has tried to generate the kind of quantitative model of the but-for world that is required for certification. Defendants' Rule 702 brief lays out the reasons in full, but the key points are as follows:

- Dr. Zona's model generates ████████████████████ ████████████████ Yurokoglu Report ¶ 44. Specifically, his model ████████████████████████████████████████ ██████████████████████████████. *Id.* In *Laumann v. National Hockey League*, 117 F. Supp. 3d 299 (S.D.N.Y. 2015), the district court excluded a damages model, proffered by some of the Plaintiffs' attorneys here, that generated similarly nonsensical results, *id.* at 319, and denied certification of a damages class. The same result is warranted here.

13

- Dr. Zona's primary model is ███████████████████████████████████████. Yurukoglu Report ¶ 20. Such basic methodological flaws require exclusion under *Daubert*.

- Dr. Zona's models ███████████████████████████████ *id*. ¶¶ 53–64; this type of cherry-picking is a classic ground for exclusion. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007).

Without Dr. Zona, Plaintiffs cannot even purport to establish injury on a class-wide basis. Two of Plaintiffs' but-for worlds necessarily fail, and they have not even tried to show that the remaining one is the most likely to occur. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 193–94 (3d Cir. 2020). Further, Dr. Rascher's testimony supporting that world is independently inadmissible under Rule 702. It is also insufficient, because conclusions based solely on documentary evidence and economic theory standing alone cannot support class certification. *See, e.g.*, *Rail Freight III*, 934 F.3d at 626 (rejecting "documentary evidence" and economic theory as insufficient to prove that all class members "must have been harmed"); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008) (rejecting experts' contention that "'economic theory dictates'" finding of class-wide injury). In sum, no model means no certification.

## B.     Even if Plaintiffs' Models Were Admissible, Plaintiffs Still Could Not Prove Injury Through Common Evidence.

Even if Plaintiffs' models were deemed admissible, Plaintiffs could not carry their burden under Rule 23. Plaintiffs' fundamental problem is that, even under the economic models put forward, it remains impossible to determine whether each individual class member suffered injury without examining facts unique to that individual. *See, e.g.*, *Rail Freight II*, 934 F.3d at 624–27 (rejecting certification where it was necessary to hear evidence specific to "thousands of class members" (citation omitted)); *Asacol*, 907 F.3d at 57–58. That is because numerous class

14

members would actually be worse off in each of Plaintiffs' but-for worlds, and it is impossible to identify them without having individual mini-trials.

In the **College Football But-For World**, the following types of class members would be worse off, and could be identified only through individualized inquiries:

*Consumers who "cut the cord" during the class period*.  One of the core features of this but-for world is that each Sunday afternoon game is available on only one channel, with several games not available on free broadcast television anywhere. As Dr. Rascher admitted at his deposition, ██████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████.  Rascher Tr. 194:3–14.  If that local team's games moved to a cable channel, the class member would have to purchase DirecTV or cable service, with the cheapest DirecTV tier costing $900/year, and cable and other satellite providers potentially costing more (*see* Rascher Report Ex. 3).  This concern is not hypothetical.  This model is built on an analogy to college football, ███████████████████████████████

██████████████████████████████████  Bornstein Tr. 241:19–242:2. ██████████████████████████████████████████████████

████████████████████████████████  *See* Israel Report ¶ 113, Table 7.

*Consumers whose favorite teams' games move to premium cable channels.* Dr. Rascher admitted that in this but-for world, some games might move to channels, like FS2 or CBSSN, that are not available in most basic cable packages.  Rascher Report ¶ 250.  On DirecTV, those channels are not available below the Ultimate service tier, which costs over $1,000 with first-year promotional pricing. ███████

██████████████████████████████████████████████████████

████████████████████████████████████████████.  *See* Israel Report ¶ 111; Rascher Tr. 200:5–11.

*Consumers whose favorite teams' games move to regional sports networks.* Dr. Rascher admitted ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████. *Id.* at 211:24–212:15.  Dr. Rascher claimed that these

networks would ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Lauricella Tr. 57:4–16. █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████. Rascher Tr. 208:7–21; Lauricella Tr. 65–69 (██████████

██████████████████████████████).

    *Consumers forced to switch to a different MVPD provider.*  Dr. Rascher failed

to analyze the impacts to DirecTV of losing Sunday Ticket exclusivity.  But as

Defendants' expert Dr. Mark Israel has shown, ████████████████████████

████████████████████████████. *See* Israel Report ¶ 130.  A class member

in those service areas could have been driven to a more expensive cable provider,

injuring her.  *See* Rascher Report at 49, Ex. 3 (variations in the cost of cable service

in the real world vary up to $480/year, much more than the cost of Sunday Ticket).

    In the **Non-Pooling But-For World**, the following types of class members

would be worse off, and again are identifiable only through individualized inquiries:

    *Customers who want a bundle of all games.*  Many (but not all) class members

subscribed to Sunday Ticket to have access to all NFL games.  As Dr. Rascher

admitted as his deposition, ████████████████████████████████████

██████████████████████████████████████████████████. Rascher Tr.

99:13–15. ████████████████████████████████████████████████

███████████████████████████████████████████████████. *Id.* at 242:18–243:3.

    *Customers who cancelled Sunday Ticket during the class period but kept

DirecTV thereafter.*  In this but-for world, ████████████████████████████

████████████████████████████████████████████████████████

1 █████████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████████

3 ████████████████████   *See* Israel Report ¶ 113, Table 7.

4    In the **Non-Exclusivity But-For World**, the following types of class members

5 would have been worse off, again requiring individual inquiries:

6    *Class members who got Sunday Ticket for free.* ████████████

7 █████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████

9 ███████████   *Id.* ¶ 56.  Dr. Rascher admitted ███████████████████

10 █████████████████████████████████████████████████████████.

11 Rascher Tr. 126:22–127:20. ████████████████████████████████

12 ██████████████████████████████. *See* Israel Report ¶ 111.

13    *Class members who got other discounts.*  Some class members, including the

14 named residential plaintiffs, ██████████████████████████████

15 Frantz Tr. 93:21–94:8.  Dr. Rascher admitted ████████████████████

16 █████████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████████

18 ██████████████████████████████   Rascher Tr. 133:8–17.  More broadly,

19 █████████████████████████████████████████████████████████

20 █████████████████████████████████████████████████████████

21 ████████████████████████████████████████.  *See id.* at 127:4–20, 133:3–

22 134:1; Israel Report ¶¶ 58, 75–77.

23    These  examples  of  unharmed  class  members  are  illustrative,  not  exhaustive,

24 and they are not mutually exclusive.  As Dr. Israel has detailed, ████████████

25 █████████████████████████████████████████████████████████

26 █████████████████████████████████████████████████████████

27 ████████████████████.  *See id.* ¶ 178.

28

            **NFL DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

The need to conduct individualized inquiries would not just be limited to pocketbook injury. 

. *Id.* ¶¶ 153, 163–178, 204–210, 216–217.

. *Id.* ¶¶ 250–256.

Under the Rules Enabling Act and the Constitution, a class action is a procedural device that cannot change substantive rights.  In other words, an individual whose claim would have failed for lack of injury if brought individually cannot recover simply because he or she is a member of a class.  And if a defendant can defeat an individual's claim with proof specific to that individual, the defendant has the same right to do so in a class action.  *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016) (noting that it would violate the Rules Enabling Act to give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"); *Rail Freight II*, 934 F.3d at 625 (denying certification where defendants had due process and Seventh Amendment rights to present all "colorable" defenses at trial and "intend[ed] to contest" injury to numerous class members); *Asacol*, 907 F.3d at 52–53, 58 (similar).

Imagining how the issues described above play out in a hypothetical individual case underscores why class certification is improper.  In Jane Smith's individual lawsuit, her trial plan would be to present Plaintiffs' generalized model to support the assertion that she was harmed.  Defendants would be entitled to take discovery of a host of issues, including what teams she likes, how much she paid for Sunday Ticket and satellite service, what discounts she received, what purchases she would need to make in the but-for world to access the NFL games she wants, how much more she would have to pay for the football games that she currently watches for free, how her viewing patterns would change, and how much she enjoys the quality

18

of NFL broadcasts and the competitive balance of the league.  If discovery suggested (for example) that Ms. Smith's favorite team would be broadcast on a premium channel that costs more to access than Sunday Ticket, Defendants would have a constitutional right to present that evidence.  To fairly adjudicate the claims of the class, it would be necessary to answer these same questions through evidence from "[millions] of class members." *Rail Freight II*, 934 F.3d at 624–27 (citation omitted).

Plaintiffs cannot avoid these problems by claiming that they need show only a single year's overcharge to establish antitrust standing.  They have asserted an eleven-year class period, and if a class member would have paid more in the but-for world than the real world during that period, that class member has not suffered antitrust injury. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999) ("There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct."); *see also, e.g.*, *Atl. Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 336–37 (1990) (plaintiff suffered no antitrust injury because it "was *benefited* rather than harmed" if its allegations were true) (emphasis in original); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83 (1986) ("Respondents cannot recover antitrust damages" when they "stand to gain" from the alleged conspiracy); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) ("An antitrust plaintiff may recover only to the 'net' extent of its injury . . . ."); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2014 WL 6601941, at *13 (D. Del. 2014) (denying class certification where plaintiffs failed to offer common proof "that any benefits received by certain purchasers as a result of [the challenged conduct] are exceeded by the overcharges"); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In short, even if Plaintiffs could prove that some class members paid higher prices during *part* of the class period, they would need to establish that their alleged injury was not offset by other benefits the same class members received over the entire class period (such as lower prices on their satellite bill at other times).

19

Certification is also improper given the sheer number of uninjured class members.  While *Olean* rejected a per se rule prohibiting class certification where more than a de minimis number of class members are uninjured, 31 F.4th at 669 n.13, it endorsed the results in *Rail Freight* and *Asacol* and held that a "fatally overbroad" class cannot be certified, *id.* at 670 n.14.  More broadly, *Olean*'s bottom-line holding does not apply here, because Defendants here have challenged the expert models at issue under Rule 702, *id.* at 665; "raise[d] individualized questions regarding which [class] members . . . suffered an injury," *id.* at 681; and argued that the complexity of damages inquiries defeats predominance, *id.*; *see infra* 20–21.  Plaintiffs' counsel in *Olean*—also Plaintiffs' counsel here—have admitted that *Olean*'s holding does not mean that Plaintiffs can establish predominance simply by bringing forward purported common proof.  Br. in Opp., *StarKist Co. v. Olean Wholesale Grocery Cooperative, Inc.*, No. 22–131, at 24 (Oct. 11, 2022).  Where, as here, Defendants offer countervailing individualized evidence that is plausible, certification is barred. *See Rail Freight II*, 934 F.3d at 624–25; *Asacol*, 907 F.3d at 55.

For these reasons, Plaintiffs cannot establish antitrust impact on a class-wide basis, defeating certification under Rule 23(b)(3).

### C.   Plaintiffs' Cannot Prove Damages Through Valid, Class-Wide Evidence.

The need for individualized damages determinations independently defeats predominance.  An initial problem is that Plaintiffs' models suffer from a critical conceptual flaw.  Plaintiffs have imagined alternate worlds in which the NFL changes its entire distribution model, including by terminating the agreements protected from antitrust scrutiny by the SBA that ensure the widespread free broadcast of Sunday afternoon games.  *See supra* at 3–4.  By offering these models, plaintiffs contravene *Comcast*, which held that plaintiffs cannot rely on a model that "identifies damages that are not the result of the wrong."  569 U.S. at 37.  A model comparing the real world with a but-for world in which the NFL stops allegedly unlawful conduct and

20

unquestionably lawful conduct—*viz.*, the broadcasts protected by the SBA—cannot identify damages that result from just the unlawful conduct. *See id.*; *see also, e.g.*, *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). This point underscores one of the central inadequacies with Plaintiffs' theories—they would cause many class (and market) members to pay *more*.

Even putting that problem aside, Plaintiffs cannot reliably establish damages with class-wide proof. As the Ninth Circuit recently made clear in a post-*Olean* decision, the need for individualized damages determinations can be a ground for denying certification under Rule 23(b)(3) where damages cannot be ascertained "without excessive difficulty." *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 663 (9th Cir. 2022); *see also, e.g.*, *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) ("[W]here individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class.").

It is impossible to determine damages "without excessive difficulty." *Bowerman*, 39 F.4th at 663. Multiplying Sunday Ticket prices by a uniform discount does not provide an accurate measure of damages. Instead, the Court would have to evaluate the host of complexities described above, in Jane Smith's case, across millions of different class members. *See supra* at 18–19. Under any of Plaintiffs' theories, individualized damages issues would predominate, precluding certification.

**D.    Plaintiffs Cannot Satisfy Rule 23(b)(3)'s Superiority Requirement.**

For similar reasons, Plaintiffs cannot satisfy Rule 23(b)(3)'s requirement that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." One factor critical to the superiority inquiry is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Though plaintiffs recite that "there will be no difficulties in managing this consolidated proceeding as a class action," Memo ISO Class Certification at 22, they offer no argument or reasoning in support of this claim. That omission speaks volumes. "[T]o

21

1    determine whether a class certified for litigation will be manageable, the district court

2    must at the time of certification offer a reasonable and workable plan" for how to

3    address individual issues of inquiry and damages "in a manner that is protective of

4    the defendant's constitutional rights and does not cause individual inquiries to

5    overwhelm common issues." *Asacol*, 907 F.3d at 58.  Certification must be denied

6    where, as here, plaintiffs' models have "plainly not enabled the district court to

7    articulate such a plan." *Id.*; *see also Lara*, 25 F.4th at 1140.

8    **III.    Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements of Commonality,**

9            **Typicality, or Adequacy.**

10    Plaintiffs' deficiencies under Rule 23(b)(3) also preclude them from satisfying

11    the separate requirements in Rule 23(a).  That rule permits certification only where

12    "there are questions of law or fact common to the class," where the Plaintiffs' claims

13    are "typical of the claims . . . of the class," and where the Plaintiffs "will fairly and

14    adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These three

15    requirements "tend to merge" with each other, *Gen. Tel. Co.*, 457 U.S. at 157 n.13,

16    and here all three are absent for related reasons.

17    *Commonality.*  To establish commonality, Plaintiffs must show that common

18    questions will "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*,

19    564 U.S. 338, 350 (2011).   As explained above, Plaintiffs cannot meet that

20    requirement because they cannot show that they suffered the same injury and

21    damages as everyone else in the class.  Under Plaintiffs' theory and models, some

22    class members might be better off, but others—perhaps far more—would likely be

23    worse off, either losing content to which they currently have access or paying higher

24    prices for that content.  That means that class members do not all share "the same

25    interest" and have not all "suffer[ed] the same injury." *E. Tex. Motor Freight Sys.,*

26    *Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

27    *Typicality.*  "The test of typicality is whether other members have the same or

28    similar injury, whether the action is based on conduct which is not unique to the

22

named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and quotation marks omitted). As explained, because class members do not share the "same or similar injury," plaintiffs cannot establish that their claims are typical of those of the class. *Id.*

*Adequacy.* "[A] class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (quoting *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)); *see also Valley Drug*, 350 F.3d at 1193 (a "fundamental conflict" barring certification exists if "some party members claim to have been harmed by the same conduct that benefitted other members of the class"). Class members here do not merely have diverging interests. In many cases, they have *opposing* interests; in the but-for worlds, some class members would be harmed. *See supra* at 10–11.

There are also conflicts between the classes. To give just one example of many, the residential class members may want easier access to out-of-market games, but that access might harm the commercial class members, both by allowing residential consumers to stay home, and allowing rivals to more easily access games that might draw customers. Plaintiffs cannot obtain certification where they do not even try to account for obvious differences among classes. *See, e.g.*, *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003).

## IV.   Certification Of The Commercial Class Is Improper Because Plaintiffs Do Not Even Try To Satisfy Rule 23.

Plaintiffs' failure to meaningfully address the proposed commercial precludes certification of that class and underscores the weakness of their motion as a whole.

Plaintiffs' experts acknowledge that there are material differences between commercial and residential consumers of Sunday Ticket. ██████████

23

1    ███████████████████████████████████.  Rascher Tr. 69:9–20; Kilaru

2    Decl. Ex. 17 (Transcript of DirecTV 30(b)(6) Deposition Witness Steve Priesand

3    37:25–39:7). ████████████████████████████████████████

4    ████████████████████████████████████████████

5    ██████████████████████████████████████.  *Id.* at 69:21–

6    70:22. ████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████  Israel Report ¶ 153; Kilaru Decl.

10   Ex. 18 (Transcript of Gael Pub 30(b)(6) Deposition Witness Eugene Lennon 115:5–

11   15) ("Gael Pub Tr.") (████████████████████████████████

12   ████████████████████████████████████").  That variation means

13   that many members of the proposed commercial class suffered no injury.

14          Plaintiffs account for literally none of these differences.  Dr. Rascher and Dr.

15   Zona base their damages calculations solely on a ████████████████

16   ████████████████████████████████████████████

17   ████████████████████  Yurukoglu Report ¶¶ 92–94.  Nor do they analyze

18   whether broader access to Sunday Ticket would harm the commercial establishments

19   that chose to purchase it in the real world.  In short, Plaintiffs make no serious effort

20   to demonstrate the viability of their proposed commercial class, further undermining

21   the models they seek to apply to both proposed classes.

22   **V.     Certification Under Rule 23(b)(2) Is Improper.**

23          As a fallback alternative to their Rule 23(b)(3) argument, Plaintiffs contend

24   that class certification is appropriate under Rule 23(b)(2) because they seek

25   injunctive relief.  This argument fails for two reasons.[2]

26   ――――――――――――――――――
         [2] Some circuits have held that a class can be certified under Rule 23(b)(2) only
27   if the class claims are "cohesive."  *See, e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116,
     1121 (8th Cir. 2005); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).
28

24

*First*, any injunctive relief will moot by the time this action is resolved, as the NFL's exclusive agreement with DirecTV expires after the current 2022 season. Courts have consistently denied requests to certify classes under Rule 23(b)(2) where the plaintiffs' claim for an injunction is moot. *See, e.g.*, *Smith v. Univ. of Wash. L. Sch.*, 233 F.3d 1188, 1195 (9th Cir. 2000), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 331 (4th Cir. 2006).

*Second*, Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to *each member* of the class." *Wal-Mart*, 564 U.S. at 360 (emphasis added). The key is whether the remedy sought is "indivisible": whether "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal quotation marks omitted). ████████████████████████████████████████████████

████████████████████████████████████. Kilaru Decl. Ex. 19 (Transcript of Deposition of Robert Lippincott 82:4–8); Frantz Tr. 38:12–13; Gael Pub Tr. 23:9–14. For these Plaintiffs, an injunction provides no relief; their claims are premised entirely on allegedly illegal conduct years in the past. Plaintiffs' demand for injunctive relief is thus not "indivisible." *Wal-Mart*, 564 U.S. at 360.

## CONCLUSION

For the reasons stated above, the Defendants respectfully request that Plaintiffs' Motion for Class Certification be denied.

---

The Ninth Circuit, however, has rejected a cohesiveness requirement. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 937 (9th Cir. 2019). Were the Ninth Circuit or the Supreme Court to recognize a cohesiveness requirement, plaintiffs' motion for class certification would also fail on that ground for the same reasons why plaintiffs cannot succeed under Rule 23(b)(3).

25

Dated: November 4, 2022

Respectfully submitted.

By:   */s/ Rakesh N. Kilaru*

Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No.  274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6035
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

**Case No. 2:15-ml-02668-PSG (JEMx)**

**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**