```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (WESTERN DIVISION - LOS ANGELES)




IN RE:                          ) CASE NO: 2:15-ml-02668-PSG-JEM
                                )
                                )          CIVIL
NATIONAL FOOTBALL LEAGUES       )
SUNDAY TICKET ANTITRUST         )    Los Angeles, California
LITIGATION                      )
                                )    Tuesday, November 29, 2022
                                )
_____)    (9:59 a.m. to 11:00 a.m.)



                          HEARING RE:

            MOTION TO COMPEL PRODUCTION OF DOCUMENTS
                          [DKT.NO.665]



             BEFORE THE HONORABLE JOHN E. MCDERMOTT,
                 UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart; Zoom


Courtroom Deputy:         C. Howard


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

**<u>APPEARANCES FOR</u>:**


Plaintiffs:                    FARHAD MIRZADEH, ESQ.
                               Hausfeld
                               888 16th Street NW
                               Suite 300
                               Washington, DC 20006

DirecTV:                       JEFFREY A.N. KOPCZYNSKI, ESQ.
                               O'Melveny & Myers
                               7 Times Square
                               New York, NY 10036

1    <u>**Los Angeles, California; Tuesday, November 29, 2022; 9:59 a.m.**</u>

2    <u>**(Appearances via Zoom)**</u>

3    **(Call to Order)**

4    **THE CLERK:**  Please come to order.  This court is now

5    in session, the Honorable John E. McDermott, United States

6    Magistrate Judge, presiding.

7    Calling Case 15-ML-2668-PSG-JEMx, *In Re: National*

8    *Football League Sunday Ticket Antitrust Litigation*.

9    Counsel, please make your appearances for the record

10   beginning with Plaintiff.

11   **MR. MIRZADEH:**  Good morning, Farhad Mirzadeh with the

12   law firm Hausfeld for the Plaintiffs.

13   **MR. KOPCZYNSKI:**  Good morning, Your Honor.  This is

14   Jeffrey Kopczynski from O'Melveny and Meyers on behalf of

15   DirecTV.

16   **THE COURT:**  Okay.  We're here to talk about

17   Plaintiffs' motion to compel documents listed on the privilege

18   log.  We'll start by -- I'm going to start by allowing both

19   sides to make any comments they want to make realizing that

20   I've already read all the papers and you don't need to repeat

21   things.

22   So with that, does anybody have anything they wish to

23   add?  Plaintiffs?

24   **MR. MIRZADEH:**  Good morning, Your Honor.  I don't

25   want to take up too much more time.  I just want to crystalize

4

1   the issue and point out that at every turn in the briefing

2   cycle, DirecTV has determined that certain documents on their

3   privilege log were not privileged and then de-designated them.

4          I think on the first turn, we included 17 examples in

5   our portion of the joint stip and DirecTV conceded that six of

6   those were not privileged, a little over 30 percent.

7          In the second turn, in their application for leave to

8   file a supplemental memorandum, they discussed six documents

9   and out of those six, they conceded that two of them are not

10  privileged, another -- close to 30 percent of the documents

11  that they are discussing which are not privileged.

12         They -- at that high rate of documents coming off

13  their privilege log, I think there's significant concern from

14  our end that they took a broad-stroke approach to their

15  privilege log and I think that animates a lot of our concern

16  about what is in their privilege log.  So if there's anything

17  else I can clarify or discuss, I'd be happy to but I'll just

18  end with that note.

19         **THE COURT:**  All right, thank you.

20         DirecTV?

21         **MR. KOPCZYNSKI:**  Your Honor, thank you for the

22  opportunity to provide a little more color.  I will address

23  that specific issue in a moment but one of the things I wanted

24  to talk about as a preliminary matter or -- well, actually,

25  there are a couple things I wanted to mention just as a

1  preliminary matter.

2          And then I'd also like the opportunity, Your Honor,

3  with your permission to show you what is Exhibit 6, which is

4  our privilege log, and walk you through by way of a screen-

5  share how to read that log and to illustrate using examples

6  both from Exhibit 6 and any other examples the Court would like

7  to look at, exactly how much exhaustive detail is actually on

8  the log because I think for someone who's not familiar per se

9  with our exact log or just how these dynamic logs are

10  presented, it may appear at first glance that there's not much

11  information there.

12          But I can assure that most, if not all, the

13  information that Plaintiffs are suggesting is not there is,

14  indeed, there on the log.  It's just not currently formatted in

15  a way for the Court that that might be apparent from the

16  documents submitted.

17          But with that said, the other component I wanted to

18  start with and to provide just a little more color on for the

19  Court is in response to this narrative that Plaintiffs are

20  suggesting, including the narrative that Mr. Mirzadeh just

21  mentioned that somehow DirecTV has not worked hard enough on

22  this log, has not put in enough time, that the log is simply

23  thrown together, that we overreached on our claims.

24          Nothing could be further from the truth on this log,

25  Your Honor.  And I want to remind the Court both in the context

1  of this privileged log and more broadly in the litigation

2  because it's been nearly 18 months before DirecTV has appeared

3  before the Court and that's because DirecTV is now a third

4  party to this litigation.

5        We were let out on a motion-to-compel arbitration

6  last April and Plaintiffs have stipulated that DirecTV would be

7  treated under Rule 45 as a third party to this litigation in

8  discovery going forward.  But despite that status as a third

9  party, DirecTV has expended tremendous resources to participate

10  in the discovery process and provide Plaintiffs and the NFL,

11  notably, at any turn all of the materials they've asked us to

12  provide.

13        And that has included nearly half a million documents

14  from DirecTV's and previously AT&T's files.  We produced nearly

15  a petabyte of structured data which I can attest to, being one

16  of our senior leaders of our discovery team at O'Melveny, is

17  one of the largest productions of data our firm has ever

18  handled for any client in the history of our firm.  So an

19  enormous amount of data, a data-center size worth of data we've

20  produced.

21        We've answered hundreds of questions about that data

22  and we've been subjected to more than a dozen depositions

23  including a long list of 30(b)(6) topics but the reason I give

24  you that context is because all of that activity was occurring

25  at the same time Plaintiffs were asking us questions about the

 1   privilege log.

 2           And we not only handled all of that other discovery

 3   and did so admirably and successfully and now that process is

 4   by and large completed, but at the same time, we were working

 5   on all of these other sort of one-off projects and myriad of

 6   questions and unfocused challenges, as we would characterize

 7   them, that came in from the Plaintiffs regarding our privilege

 8   log.

 9           We were having nearly weekly meetings with the

10   Plaintiffs about all of these different discovery issues.

11   Routinely, the only topics that would come up would be

12   depositions, would become the scope of the data, the questions,

13   the long lists, Your Honor, dozens of pages of questions that

14   we received about the structured data we provided.  That was

15   Plaintiffs' focus during all of those meetings.

16           Plaintiffs had every opportunity across all of this

17   period to ask us any questions about the status of our

18   privilege log efforts, about the affiliation lists that they

19   complain about in their briefing, about the -- any particular

20   entries that they didn't avail themselves of those

21   opportunities.  In fact, often when we would have those

22   discussions with the lead negotiators -- and I was on all of

23   these calls, Your Honor -- we would affirmatively update them

24   on the status of it.

25           But as far as we could tell, that may not have made

1    it back to Mr. Mirzadeh and others who were working on the

2    privilege efforts, when we would receive emails from them, for

3    example, asking us about the status of something that we had

4    discussed on a call with their colleagues just a few weeks

5    before.

6            So I tell you all that, Your Honor, simply to dispel

7    this myth that DirecTV has sort of sat in a high castle and not

8    engaged with Plaintiffs on these topics and not been responsive

9    to them and not put forth a reasoned effort.

10           As to our log itself, Your Honor, this log is the

11   result of more than 13 hours -- 13,000 hours -- apologies.

12   It's hard to even say it out loud.  This log is a result of

13   more than 13,000 hours of attorney time spent generating it.

14   That was comprised of a team of more than 60 attorneys who

15   spent nearly two months working on it when you look at sort of

16   start to finish.

17           We personally trained every single one of those

18   attorneys.  Those attorneys were familiar with the case.  Most

19   of them had worked on the responsiveness review earlier in the

20   period.  They were well-trained on both the issues in the case

21   and the privilege challenges.  We had robust QC processes built

22   into that which are not even included in that 13,000-hour

23   figure.

24           And so when Plaintiffs suggest that we simply cobbled

25   something together, I also want to emphasize that that is not

1    the case.  We looked at every single document on our log and we

2    custom-drafted by hand every single entry that's on that log.

3    This is not a simple metadata log.  Often litigants find that

4    as a more convenient method to provide an explanation of what

5    they're privileging.

6          We did not take that approach.  We actually took an

7    approach where attorneys looked at individual documents.  They

8    confirmed details such as the "from" and the "to" and the

9    "dates."  They then drafted a custom description for each and

10   every single one of those log entries.

11         Now, it's true that some of those entries were

12   grouped in a way by the formulate nature of the subject matter

13   and we'll talk about those to the extent the Court would like

14   to hear about that for convenience purposes alone because, as I

15   said, we had half a million documents to begin with.

16         On Plaintiffs' schedule, we had only a very limited

17   period of time from the completion of our production to the

18   required date Plaintiffs needed the privilege log which was

19   only three weeks, Your Honor, from the date we made our final

20   production in late January of 2021 -- or sorry, 2022 to the

21   date Plaintiffs demanded they have a log was only a three-week

22   period.

23         And so we accomplished all of that and we did it with

24   very little gripe.  We stipulated to it with the Plaintiffs in

25   the fall.  That was by their request.  It was on their

```
 1   schedule.  We cautioned them that there was a significant
 2   number here and we cautioned them about the structure of the
 3   log, that we would -- they wanted, for example, threading of
 4   entries where we would log each iteration of a document over
 5   time.
 6            And that's why -- as Mr. Farhad was just -- or
 7   Mr. Mirzadeh was just mentioning, we may change our mind on a
 8   document or two but because of the nature of the way the log is
 9   constructed, that one decision, if there were ten emails
10   involved in that thread, would result in a production of ten
11   documents.
12            And when you look at our log of 30,000 entries, some
13   subset of those are actually niche documents.  The rest are
14   simply iterations of the same email thread, for example, or
15   iterations of a different -- changes in a PowerPoint or a Word
16   file.
17            So Plaintiffs had every opportunity to craft or ask
18   for the nature of how this log would look.  There was an ESI
19   stipulation in this case, Your Honor, that calls for none of
20   the specifics that Plaintiffs have asked for.  But nonetheless,
21   we've offered them those details after the fact.  They knew
22   going into it what significant constraints we were going to be
23   under in generating it and yet made no request as to the
24   specificity in any way about how we constructed it.
25            So we constructed a log we believe is defendable,
```

11

1   certainly meets the test under the -- the requirements of the

2   Ninth Circuit of making a prima facie showing of privilege and

3   is, therefore, sufficient.

4          The second theme I want to refute which is present in

5   their briefing and I just don't think is clear to the Court is

6   that there's not enough information on this log and that

7   somehow we're withholding information in some sort of

8   gamesmanship.

9          I want to remind the Court and I know that this has

10  been mentioned many times over the years as we've been both

11  before you and Judge Gonzalez but DirecTV has an interesting

12  history as a corporation.  During the period of this litigation

13  which goes back 30 years, Your Honor, back in the 90s,

14  predating email itself, the discovery period where we collected

15  documents from goes back nearly 30 years.  We've produced

16  documents from 2003, from 2004 and many of those appear on --

17  some of those appear on our privilege log.

18         When you go back that far, Your Honor, for a

19  corporation that had multiple mergers, this very litigation

20  itself spans across the discovery period and you have

21  divestment.  DirecTV has recently been divested from the Time

22  Warner AT&T family.  It can become incredibly difficult to sort

23  of marshal together the type of detail Plaintiffs have asked

24  for.

25         And just one example, which is played out in the

12

1  briefing and also in the attachments to the briefing, is this

2  discussion we had with them about "affiliation lists" and

3  Plaintiffs need to understand every job title of every employee

4  at the company that appears on our privilege log for the

5  history of their term of employment at the company.

6        If we were talking about a couple-month period and a

7  few dozen employees, that might be a feasible undertaking but

8  to undertake that for the nearly 3,500 names on the employee --

9  on the privilege log spanning 30 years was nearly impossible.

10 And we told Plaintiffs as much and ultimately reached a

11 compromise where we identified the entity with which the

12 individual affiliated, so, for example, DirecTV or the NFL or

13 some other entity.

14        But that process alone took several months and

15 Plaintiffs fought us on it the entire way.  So when we say that

16 we don't have some of this information, what we are talking

17 about is that to create it for Plaintiffs requires a manual

18 process.  And that's what we've done.  That affiliation list,

19 Your Honor, was not generated, for example, by simply going to

20 some repository at the company and hitting "export" on

21 something.

22        We had attorneys go through the very documents we

23 provided Plaintiffs using LinkedIn and cobbling that

24 information together for them.  So to suggest that we somehow

25 have gamed this for Plaintiffs is simply untrue.

13

1          We've answered every single one of the questions

2    Plaintiffs have asked us about this log.  We've given them

3    detailed explanations on documents that we have sampled with

4    them.  In fact, that was our suggestion -- was rather than

5    continue to go back and forth with multi-thousand entries of

6    challenges, Plaintiffs notably started by challenging every

7    document on our log, then moved down to somewhere in the 7,000-

8    document range.

9          We suggested, why don't we sample these and we'll --

10   you pick the ones from the categories, any ones you want and we

11   will come on a call and we'll talk those through with you.  We

12   did that with them and perhaps not surprisingly, Plaintiffs

13   dropped their challenges to more than 85 percent of the

14   documents that they were challenging.

15           **THE COURT:**  Now you're repeating what's in your

16   papers.

17           **MR. KOPCZYNSKI:**  Okay.

18           **THE COURT:**  You need to bring this to a close.

19           **MR. KOPCZYNSKI:**  Yeah, that's fine, Your Honor.  I'll

20   move along.  I think what would be most effective, Your Honor,

21   with your permission, would be to show you in response to

22   Plaintiffs' claim that our log doesn't have certain

23   information, show you the exhibit which they purport to claim

24   is our log as amended to add their categories and show you how

25   to read it and show you how to see that all of that information

14

 1   is actually on the log.

 2           I don't think that will take more than a couple

 3   minutes and I think it will be incredibly informative for the

 4   Court to see just the level of detail that is present for each

 5   one of these challenged documents.

 6           **THE COURT:**  You have two minutes.

 7           **MR. KOPCZYNSKI:**  Okay.  I don't think -- I tried when

 8   I first logged in to share my screen and it says the post has

 9   disabled it.  Is there a way for me to do that or is there a

10   way you can enable that for me, Your Honor?

11           **THE COURT:**  Madame Clerk?

12           **THE CLERK:**  I don't see anything on our side, Your

13   Honor.  I don't see anything, Your Honor, that would allow me

14   to do that.

15           **THE COURT:**  You can't?

16           **THE CLERK:**  No.

17           **THE COURT:**  Sorry.

18           **THE CLERK:**  I don't see anything, Your Honor.

19           **THE COURT:**  Okay.

20           **MR. KOPCZYNSKI:**  Was that to me, Your Honor, or --

21   I'm sorry.  I'm not following the sidebar.

22           **THE COURT:**  She says it can't be done, what you're

23   asking.

24           **MR. KOPCZYNSKI:**  I'm sorry.  Say it again.

25           **THE COURT:**  She says she can't do what you're asking.

1        **MR. KOPCZYNSKI:**  Okay.  Well, that's unfortunate.

2   Maybe if I describe it for the Court, the Court will hopefully

3   be able to do this on their own screen and can see the

4   illustration.

5        The way Plaintiffs submitted the Exhibit 6, family

6   members on the log are not associated with each other.  They're

7   not visible in context with each other.  The reality is that if

8   you sort by Priv ID -- you sort the exhibit by a Priv ID,

9   immediately the context of the details that Plaintiffs claim

10  are missing from the log pop right off the page.

11       And what that sorting by Priv ID enables you to do is

12  to see, for example, for attachments Plaintiffs are

13  challenging, the parent email that attached to those documents

14  and included for every single email on our log, the "from," the

15  "to," the "cc," the "bcc," the "date" and the basis or the

16  description of the narrative and source of the privilege.

17  That's there for every single entry, Your Honor.

18       If you casually look at Exhibit 6, that won't be

19  apparent to you just at first glance but it's there.  Why it

20  was not sorted in that method for the Court I don't know but

21  when you do it that way, they'll jump right off the page.

22       **THE COURT:**  Have you sorted it that way for the

23  Plaintiffs?

24       **MR. KOPCZYNSKI:**  Yes, we -- Your Honor, we have

25  explained to them at length how to read the log.  We had an

1   entire call about it.  They asked questions about it very early

2   in the process and then we walked them through how to read the

3   log and that's one of the reasons we're, frankly, mystified as

4   to why so many of these challenges still exist on these

5   documents as to insufficiency of the privileged because -- or

6   of the log -- I apologize -- because the detail is there, Your

7   Honor.

8          And if I could show you on the screen, I would and

9   it's disappointing that I can't.  One of the documents I would

10  point the Court to to illustrate this issue was one I was going

11  to be prepared to talk about which is on just the first few

12  rows of the log when it's sorted by a Priv ID and that is the

13  document family that includes Priv ID 30.

14          In that Priv ID, there are three attachments that

15  Plaintiffs have challenged as having insufficient information

16  to ascertain the privilege based on our privilege log.  The

17  parent email for that family, which is on our log, clearly

18  describes the "from," "to," "cc" and "bcc" includes two outside

19  counsel lawyers from DirecTV from the law firm of Gibson and

20  Dunn.

21          It includes one in-house lawyer for DirecTV at the

22  time and it describes in the "privilege basis" field the exact

23  nature of the conversation that occurred, that there was a

24  back-and-forth exchange of legal advice and request for legal

25  advice about a draft term agreement they were working on,

1    notably, unconnected to the Sunday Ticket product, it was for

2    the NFL product.

3          But in any event, all of that is made clear.  If you

4    look at the "attachment" field and the "subject line" field of

5    the email columns for that email, you can also see that those

6    subject matters are made perfectly clear.  The attachments that

7    follow in that family are then listed immediately following

8    that parent email and provide that same type of context.

9          In fact, they say in the privilege basis that they

10   are attached to an email and contain the legal advice of the

11   two outside counsel lawyers.  I will represent to the Court

12   that those are outside counsel comments and markups of those

13   agreements made by the law firm of Gibson and Dunn and prepared

14   for DirecTV.  The description perfectly matches those

15   documents.  I've looked at them myself, not only before today

16   but also in preparation for today's hearing and we were

17   prepared to walk those through with the Court.

18         If you look at that family of documents, you will see

19   in plain sight that all of the detail Plaintiffs need to

20   evaluate the privilege on not only those three attachments but

21   also the parent email are clearly on our log.

22         The additional data point that's on the log, which

23   Plaintiffs do not note in their briefing, is that we list the

24   family Bates range for that family overall.  We actually

25   produced some of the attachments in that family to Plaintiffs

18

1    and those documents are in the production.  Plaintiffs can go

2    look at them and see them for themselves and see the additional

3    context those provide to them.

4            If you go do that, Your Honor, you will see that one

5    of the attachments we produced was the actual draft agreement

6    that was exchanged with the NFL.  We did not claim privilege

7    over that document.  It's not privileged.  It's been exchanged

8    with the NFL in a negotiation of terms.  That's an adversarial

9    position between the parties separate and apart from the common

10   interest we would mention in a minute.

11           And so when you look at that in context, Your Honor,

12   we simply don't see how anyone can conclude they don't have

13   enough detail about the documents to understand whether or not

14   we've made a prima facie showing of privilege as the law

15   requires.

16           And that, Your Honor, could be done for nearly any

17   document on the log and I was prepared to just have you or

18   Mr. Mirzadeh pick a row and we could do that exercise for the

19   Court and show exactly the level of detail that's there for

20   every single document.

21           **THE COURT:**  That's an exercise that you should have

22   undertaken with the Plaintiffs, not involving the Court.

23           **MR. MIRZADEH:**  Your Honor --

24           **MR. KOPCZYNSKI:**  Absolutely, Your Honor, and we've

25   been making that well-known to Plaintiffs.  We believed that

1    from day one that that's the type of exercise we should have

2    been doing with Plaintiffs but they have resisted that

3    undertaking with us for who knows what until, honestly, Your

4    Honor, in August when we had a meet-and-confer that was

5    arguably, in our opinion, very productive.

6          We exchanged the emails with Plaintiffs.  They

7    actually said that in an email back that it was a productive

8    conversation.  We expected to hear more from them but we

9    didn't.  Seven weeks went by of silence and then we received

10    this motion somewhat out of the blue, frankly, just moving to

11    challenge the remaining 1,800 documents.

12          **THE COURT:**  How many of the 1,800 --

13          **MR. MIRZADEH:**  Your Honor --

14          **THE COURT:**  -- documents did you actually have a

15    meet-and-confer about?

16          **MR. KOPCZYNSKI:**  So Plaintiffs sent us initially a

17    list of 30 -- all 30,000 on a log -- or roughly, something like

18    29,000-something.  They then came back with a "reduced" list

19    which depending on how you count because there was overlap with

20    somewhere between 7 and 8,000.  And most recently they sent us

21    a list of I think it was 2,400.

22          This submission to your Court -- to the Court, your

23    Honor, is around 1,800 documents.  Of those, I think in the

24    sampling discussion, we discussed maybe only 50 or 60 before we

25    ran out of time on that initial call.  We have affirmatively

1   volunteered information about other documents over the course

2   of the other meet-and-confers in an attempt to try to focus the

3   discussions, for example, explaining that many of the documents

4   Plaintiffs were complaining about related to legal disclaimers

5   in a mobile app that the DirecTV group was developing and what

6   needed to be shown to the consumers and how that really had

7   zero to do with anything in this case.

8           So we discussed some of those and I can't quantify

9   all of those but if you think of just sort of substantively

10  what documents we've talked about in the context of what led to

11  this immediate challenge, it's only a few dozen, Your Honor.

12          **MR. MIRZADEH:**  Your Honor, may I say a few things?

13          **THE COURT:**  Hold on for a minute.

14          **MR. MIRZADEH:**  Yes, sir -- yes, Your Honor.

15          **THE COURT:**  Mr. Mirzadeh, you tried to break in

16  before.  What do you want us to know?

17          **MR. MIRZADEH:**  Oh.  Yes, Your Honor.  I just -- there

18  was a lot there and I just want to go back to just a couple

19  questions that you asked, right, and a pointed answer regarding

20  the structure of the privileged log.  You asked if DirecTV had

21  provided the privilege log that was in Privilege ID order,

22  right, showing the parent and the parent email and the

23  attachments all together.

24          The answer is, "No."  That's the answer, is that the

25  way the numbering system worked, the privilege ID numbers were

1   not in sequential order.  And, in fact, when we manually turned

2   it into sequential order, it messed up the entire Excel to the

3   point to where -- I know DirecTV brought this up in their

4   briefing where we sent them a privilege log where nothing

5   matched up.  The challenges were all different.

6           It's because we manually went through and tried to

7   put everything in sequential order.  So we kept everything as

8   it was given to us.  And with that said, I understand

9   Mr. Kopczynski's point and I don't want to say we endeavored to

10  look at the email attachment and the -- or the emails and the

11  attachments together even though they may have been spread

12  apart in the Excel document.

13          But there are a whole host of issues with that for

14  independent reasons.  The attachments don't have sufficient

15  information.  That's our point.  They don't describe who the

16  author of the attachment is, who the attachment was sent to,

17  right.  Just because it may be attached to an email that's

18  privileged doesn't necessarily confer privilege over that

19  attachment themselves.

20          And I'm happy to walk through an example where there

21  is an email that they withhold and they withhold the attachment

22  as well but for some reason, the attachment post-dates the date

23  of the email, right.  The email was sent on 3/6/2014.  The

24  attachment is on 3/7/2014.  We don't know who the author is.

25  They just say it's a confidential draft presentation sent for

1   the purpose of obtaining legal advice and the file name is

2   image001.png.  I mean, that's the kind of information we're

3   working with in regard to those attachments.

4           **THE COURT:**  Okay, thank you.

5           Let's go back to DirecTV.

6           **MR. KOPCZYNSKI:**  Yes, Your Honor.  So a couple of

7   points.  Let me address the attachment issue and the hard

8   copies in particular.  But first -- well, let me start there

9   and then I want to address two other points that are critically

10  important in my opinion that the Court understand and that

11  differ from what's in the papers.

12          On the attachment point, Your Honor, with hard-copy

13  documents, it's always very complicated to figure out the exact

14  story of what's happening with documents.  And what

15  Mr. Mirzadeh just described sounds to me like a hard-copy

16  document where we -- the file name is, like, a png or a pdf

17  file or something like that.

18          Those were hard copies mostly collected from the

19  legal files of attorneys at DirecTV.  For better or worse, they

20  had the most records to collect on these issues and so we were

21  forced to go to them to collect potentially responsive

22  materials.  In the example Mr. Mirzadeh just gave, this is a

23  prime example of the type of document we'd be happy to discuss

24  with them.

25          The fact that it post-dates the email does sound a

1    little odd but I feel very confident in the process that

2    created the log to reflect that and my strong suspicion would

3    be is that the attachment was probably dated for the date of a

4    presentation that was intended to be given and that's the kind

5    of date we would put on there, meaning if an attachment had a

6    date on the face of the document, we would give that date to

7    Plaintiffs.

8          We wouldn't know with specifics exactly what day a

9    hard-copy document might have been created.  Right.  It could

10   have been created on a Tuesday, maybe a Friday.  We don't know.

11   So we don't guess but where there was a date present on the

12   front of that document, we certainly wouldn't withhold that

13   information.  And what likely happened there was there's a

14   printout of some email and that hard-copy document had a date

15   that post-dated the date of the email and we gave Plaintiffs

16   both of those dates.

17         They're, like, proving the point of what we're trying

18   to say, Your Honor, is that we've given all of this

19   information.  There may be some confusing conflict in certain

20   documents that are presented on the log.  We can't say that our

21   log is perfect or easily understandable at first glance but

22   those are the exact discussions we've been trying to have with

23   Plaintiffs for months.

24         And, instead, what we've been doing is talking about

25   how they need this list of whether attorneys were senior legal

 1   counselors or assistant general counsels and running around on

 2   all kinds of topics which in my opinion, having done this for

 3   15 years, probably has very little to do with any analysis that

 4   would actually need to be conducted here and the time would

 5   have been better spent actually having discussions about

 6   tangible, specific documents in an effort to narrow the list.

 7          I want to make just two other quick points.

 8   Mr. Mirzadeh mentioned at the beginning about turnovers and our

 9   change of decisions.  Your Honor, that does not suggest any

10   nefarious outcome here.  The reality is we've turned over or

11   changed our mind or identified mistakes on less than 1 percent

12   of the documents on our log.  We have analyzed or re-analyzed

13   thousands of documents as part of this meet-and-confer process.

14          We've discussed directly with Plaintiffs only that

15   small handful of a few dozen but in all of the other exercises,

16   generating the affiliation list, confirming the titles of

17   certain attorneys they sent us -- they sent us long letters

18   where I had associates working on them for hours and weeks on

19   end trying to confirm details.

20          We re-looked at literally thousands and thousands of

21   documents on our log and out of all of that, we've only changed

22   our mind on less than 1 percent of the unique documents on the

23   log.  The fact that we're changing our mind on documents as

24   part of this briefing demonstrates nothing more than our good

25   faith and honesty about what's happening here.

1           The fact that it's happening during the briefing

2    process is no -- is only occurring because Plaintiffs have not

3    had these discussions with us before we came before Your Honor.

4    We're effectively having the meet-and-confer process here in

5    the light of the Court and when Plaintiffs raise an

6    inconsistency, we immediately say, oh, yeah, you're right.

7    That was a close privilege call.  I could see it both ways but

8    in an abundance of caution and to be conservative, we'll give

9    you a copy of that document.  We're not going to fight you

10   about documents that aren't truly privileged.

11          But that's a very small minutia of the number of

12   documents overall on our log.  We can say that confidently

13   based on the statistics we've generated in all of the workflow

14   that we've been conducting.

15          Finally, Your Honor, you asked me if there was

16   anything else I wanted to add for the record outside of what's

17   in the briefing and I want to make one point abundantly clear

18   which I think could have been made more forcefully in our

19   briefly but for various reasons wasn't.  And that is that in

20   the Ninth Circuit, there is no litigation requirement for the

21   common interest privilege to apply.

22          Plaintiffs' briefing quotes selectively some language

23   from a couple of cases, the *Thunder Studios* -- hang on.  Let

24   me refresh myself on exactly which case it is.  They cite to a

25   couple of cases that hold -- seemingly in Plaintiffs'

1  characterization holds to the proposition that parties can only

2  assert the common-interest privilege in the Ninth Circuit if

3  there's a litigation pending or reasonably anticipated.

4           But that is not the standard, Your Honor.  In fact,

5  in that exact case, if you continue reading just a sentence or

6  two, you will see that the Court -- Judge Segal said

7  specifically that, indeed, there is no litigation requirement.

8  Litigation context can be one of the scenarios in which the

9  common interest applies but common interest can also be

10 asserted in the context of mergers, in the context of licensing

11 agreements and so forth and so on.  And he refers to Ninth

12 Circuit's opinions backing that decision up.

13          That is the exact scenario we are asserting the

14 common interest under here, Your Honor.  As I mentioned at the

15 top, DirecTV has gone through mergers.  They have gone through

16 divestments.  They have gone through licensing not only with

17 the NFL but also licensing the DirecTV logo and licensing the

18 Sunday Ticket logo, again, which have nothing to do with this

19 litigation.

20          But all of those documents are in the span of the

21 discovery focus here and so we've asserted common interest over

22 those.  The Common Interest Doctrine protects communications

23 between the NFL and DirecTV if they are collectively

24 negotiating a license of the branding of the Sunday Ticket

25 product to Sony, for example, regarding a video game which is

1    some of the documents Plaintiffs are challenging here today.

2             And so I want to make sure it's very clear to the

3    Court -- and I'm happy to answer questions about it -- that the

4    litigation requirement is not a contingent to asserting common

5    interest.  It is one of the elements that can justify it but

6    it's just one.  There are many different scenarios in which

7    common interest can be applied.

8             **THE COURT:**  All right.  Now the Court's got issues it

9    wants to raise.  So --

10            **MR. KOPCZYNSKI:**  Absolutely, Your Honor.

11            **THE COURT:**  So I'm going to turn to those.

12            Mr. Mirzadeh, in regard --

13            **MR. MIRZADEH:**  Yes, Your Honor.

14            **THE COURT:**  In regard to DirecTV's request to file a

15   supplemental memorandum, it -- DirecTV indicates that there

16   were six documents on the privilege log that were never

17   previously discussed with DirecTV within a specificity and did

18   not raise in their portion of the joint stipulation.

19            I don't see anything in the objections the Plaintiffs

20   filed, or in the supplemental memorandum, that directly

21   contradicts those assertions.

22            You response substantively to each of the documents,

23   and make procedural arguments.  But as to the specific

24   assertion about the six privilege log entries, you don't

25   dispute what DirecTV is saying; that they were never previously

1    discussed with specificity and didn't raise in their portion of

2    the joint stipulation.

3            I realize there are procedural deficiencies in what

4    went forward.  But it's always been the case -- and it usually

5    occurs by way of ex parte applications -- that, if somebody

6    puts something in a reply brief that's brand new, Courts will

7    react by permitting the other party to file a response, which

8    is all that's being requested here.

9            And since the Plaintiffs have filed objections in a

10   supplemental memo, I don't see any prejudice.  So I'm going to

11   allow the -- I'm going to allow the reply to be filed, as long

12   -- along --

13           **MR. MIRZADEH:**  Yes, Your Honor.

14           **THE COURT:**  -- with your objections and supplemental

15   memo.  I also don't even understand why you filed a

16   supplemental memo.

17           I mean, it doesn't really response directly to the

18   six documents that are the basis for the request to file a

19   reply brief.  And I don't know where you get the authority to

20   file a supplemental memorandum.  You already filed one, to

21   which DirecTV makes this assertion that you never discussed

22   this.

23           In fact, the issue of meet-and-confer is going to

24   dominate how the Court views this whole motion.  But I'll get

25   to that in a minute.

 1           In any event, the Court's going to allow the -- allow

 2   DirecTV to file the reply -- or the Court will order that it be

 3   filed.

 4           Now, let me turn to a couple housekeeping issues

 5   before I get to the tough part.  In the joint stipulation, as I

 6   counted up, there is 1,847 privilege log entities -- entries

 7   that are being challenged across five categories.

 8           But since the joint stipulation was filed, there are

 9   at least eight that have been withdrawn by Plaintiffs; eight

10   objections.  And there have been at least seven productions by

11   DirecTV.  But there may have been others, too, that I wasn't

12   particularly -- that I didn't pick up.

13           So what I need the parties to do is to give me a

14   final total of the numbers we're dealing with; both total --

15   both the total and the amount for each of the five categories,

16   P, Q, R, S, T.

17           Can you do that now or is that something you need to

18   do after you go back to your respective offices?

19           **MR. MIRZADEH:**  I may want to just double-check and do

20   that when I get back.

21           **THE COURT:**  All right.  Can you have that to me by

22   the end of the day?

23           I mean, you both --

24           **MR. MIRZADEH:**  Yeah.  So --

25           **THE COURT:**  You need to agree --

1           **MR. MIRZADEH:**  You're asking --

2           **THE COURT:**  You need to get together with DirecTV,

3 Counsel, and agree on it.

4           I want to know what --

5           **MR. MIRZADEH:**  You're asking --

6           **THE COURT:**  I want to know what the exact numbers are

7 -- the exact number of objections are for each of the five

8 categories and the total number.

9           Can you see if you can get together with Defense

10 Counsel here and provide that by the end of the day; if you

11 could?

12           **MR. KOPCZYNSKI:**  Yes, Your Honor.  I think it's --

13           **MR. MIRZADEH:**  Yes, Your Honor.

14           **MR. KOPCZYNSKI:**  One point I'll explain now, in our

15 read of the Plaintiffs challenge, some of the documents overlap

16 on the categories, Your Honor, so that Plaintiffs have

17 challenged it, for example, not only as having insufficient

18 information, but being, you know, and attachment without an

19 attorney, for example.

20           And so that may be the source of some of the -- the

21 shifting numbers there.  But we will work with the Plaintiffs

22 to come up --

23           **THE COURT:**  I want a --

24           **MR. KOPCZYNSKI:**  -- with some sort of agreed to

25 number as to present to the Court.

31

1          **THE COURT:**  I want a final list.

2          **MR. KOPCZYNSKI:**  Absolutely.  Understood.

3          **THE COURT:**  Now, let me talk about Exhibit 6 for a

4   minute.

5          **MR. KOPCZYNSKI:**  Yes, Your Honor.

6          **THE COURT:**  The only places on the system where I

7   could find, where there's a reference to Exhibit 6, is just a

8   blank page.  I don't find anything on the system in any of the

9   pleadings or any of the submissions that actually provides

10  Exhibit 6.

11         I had delivered to me -- I think by Plaintiff -- a

12  big box of documents; two volumes of the privilege log and all

13  five -- a book for each of the five categories showing the

14  privilege log entries being objected to; but nothing

15  electronically.

16         Now, if I'm wrong about that, tell me.  Because it's

17  going to lead into the next question.

18         **MR. MIRZADEH:**  Your Honor, I submitted the Excel

19  document to --

20         **THE COURT:**  I'm asking you --

21         **MR. MIRZADEH:**  -- the clerk --

22         **THE COURT:**  -- whether it's on the system.  That's

23  the question pending.  Is it on the system?  Is there someplace

24  I can --

25         **MR. MIRZADEH:**  But EC --

1          THE COURT:  -- go on the system, ECF, and find

2    Exhibit 6?

3          MR. MIRZADEH:  No, Your Honor.

4          THE COURT:  It's in those documents in the box?

5          MR. MIRZADEH:  Yes, Your Honor.

6          THE COURT:  All right.  Now --

7          MR. MIRZADEH:  And --

8          THE COURT:  -- next question.

9          MR. MIRZADEH:  There was a digital copy as well.

10         THE COURT:  There what?

11         MR. MIRZADEH:  A digital version of the Excel

12   document was also provided via email.

13         THE COURT:  Maybe that's going to help solve the

14   problem.

15         MR. KOPCZYNSKI:  And I would say, Your Honor, I view

16   this as an important issue.

17         The power and the detail of our log is really only

18   visible in the Excel.  And that's why parties today, generally

19   speaking, in every case that I handle -- which is more than 100

20   every single year -- we exchange files in an Excel format

21   because it allows parties to re-sort them as they prefer.

22         THE COURT:  All right.  Here's the problem.  I --

23         MR. KOPCZYNSKI:  And to that point, I'd response to

24   the Plaintiffs --

25         THE COURT:  Here's the problem I'm having.

1            **MR. KOPCZYNSKI:**  -- earlier point about saying they

2   were free to re-sort this in any way.  And if they were having

3   some technical issue with the sorting, they could have simply

4   asked a question.

5            **THE COURT:**  But here's the problem.

6            **MR. KOPCZYNSKI:**  And this all would have resolve it.

7            **THE COURT:**  Here's the problem I have.

8            **MR. KOPCZYNSKI:**  Yeah.

9            **THE COURT:**  The entries on the privilege log -- and

10  the privilege log that I have that's in the box -- came in the

11  box --

12            **MR. KOPCZYNSKI:**  Uh-huh.

13            **THE COURT:**  -- I can't read it.  The print is too

14  small.  That's why I'm trying to figure out whether there's any

15  way electronically I can -- I can access the data.

16            You mentioned this digital version by email.  I'm not

17  sure I've seen that, Mr. Mirzadeh.

18            **MR. MIRZADEH:**  And I apologize for that, Your Honor.

19  And initially I -- that's why we opted to provide or email the

20  Excel version.

21            Because the way -- you know, when you print it all

22  out, and it's in PDF, that it messes everything up; like the

23  text is very small --

24            **THE COURT:**  Well --

25            **MR. MIRZADEH:**  -- the pages get messed up.

1            And so I did email it to the chamber's email address,

2    I believe --

3            THE COURT:  To what?

4            MR. MIRZADEH:  -- on the same date of filing; the

5    Excel version.

6            THE COURT:  Is that something that can be expanded so

7    that I can read it?

8            MR. MIRZADEH:  The Excel version?  Yes, I believe so,

9    by zooming into the document.

10           THE COURT:  But I would have to have the digital

11   version?

12           MR. MIRZADEH:  Yeah.

13           MR. KOPCZYNSKI:  It's what we call a dynamic file,

14   Your Honor.  It's just structured data in an Excel file;

15   meaning you can zoom in on it; you can cut and paste it.  It's

16   a native file.  It's not an image file, like a PDF or a

17   printout.

18           THE COURT:  So I can expand it on my own in --

19           MR. MIRZADEH:  Yes.

20           THE COURT:  -- in order to be able to read it --

21   which I can't right now.

22           MR. KOPCZYNSKI:  Yes.

23           THE COURT:  But I have to find this digit --

24           MR. KOPCZYNSKI:  And I think, Your Honor, if you do

25   find it, what I really want to stress to you is, please do re-

1   sort it by Priv-ID.

2          Because for the issues under dispute here, on this

3   instant motion, the only way to see the level of detail we

4   provided is to sort it by Priv-ID.

5          That will illustrate --

6          **THE COURT:**  Well --

7          **MR. KOPCZYNSKI:**  -- to you immediately --

8          **THE COURT:**  I'm --

9          **MR. KOPCZYNSKI:**  -- the level of detail.

10         **THE COURT:**  Right now my only concern is finding this

11  digital version by email --

12         **MR. KOPCZYNSKI:**  Yes, Your Honor.

13         **THE COURT:**  -- that's been sent to me.  I don't --

14  I've never received it.

15         I don't know who you sent it to, Mr. Mirzadeh.  But

16  you need to provide me with another -- with an electronic

17  version that I can work with -- expand so I can read.

18         Is that something you can do today, Mr. Mirzadeh?

19         **MR. MIRZADEH:**  Yes, Your Honor.  And would you prefer

20  that I email to JEM, underscore, chambers --

21         **THE COURT:**  Yes.

22         **MR. MIRZADEH:**  -- ca -- okay.  I'll do that.

23         **THE COURT:**  All right.

24         **MR. MIRZADEH:**  It'll be the same document that I

25  emailed in conjunction with the filing.  I haven't had an issue

1   with it.  I don't believe Mr. Kopczynski's had an issue with

2   opening up.

3          And I think, once you open it, it allows you to zoom

4   into it and, you know, do what -- what you like with the Excel

5   document itself.  And if there is anything, you know, I could

6   provide further on that, I'd be happy to.

7          **THE COURT:**  You may have to give me some

8   instructions.

9          **MR. MIRZADEH:**  Okay.

10         **THE COURT:**  But I --

11         **MR. KOPCZYNSKI:**  Your Honor, if it would be helpful,

12   I mean, I -- we could either reconvene in a different tool or

13   we could show it on the screen.  Or, you know, barring that, we

14   could come to the courthouse and show it to you on a screen

15   there in your chambers.

16         We're happy to facilitate that however it needs --

17         **THE COURT:**  I would rather --

18         **MR. KOPCZYNSKI:**  -- however it's easiest for you.

19         **THE COURT:**  I would --

20         **MR. KOPCZYNSKI:**  Because we do view this as a very

21   critical part of those -- the 1,100 documents the Plaintiffs

22   have challenged.

23         So I want to make sure you get the full context as

24   you're looking at it.

25         **THE COURT:**  Well, all I am interested in right now is

37

1   getting a digital version that I can expand so that I can read

2   what's on the log entry.

3          **MR. KOPCZYNSKI:**  Understood, Your Honor.

4          **THE COURT:**  And we'll start with Mr. Mirzadeh sending

5   me the digital version by email, to JEM chambers.  And if there

6   is a problem, I'll get back to him, with you on the line as

7   well, Mr. Kopczynski.

8          Now --

9          **MR. KOPCZYNSKI:**  Absolutely.

10         **THE COURT:**  -- let's talk about going forward and the

11   Court's problems with this motion.

12         I don't think I can -- I don't think this motion is

13   ready for ruling in its current setting.

14         Mr. Kopczynski says that there's only been a few

15   dozen of the over-1,800 privilege log entry objections that

16   were actually the subject of a meet-and-confer with any

17   specificity.

18         And I don't see, without that, how I can rule on over

19   1,800 privilege log entities.  I mean, the few examples given

20   can't rep -- that's not a proper -- you don't even assert that

21   they're a sample that's representative of the whole for each

22   categories and overall.

23         I'm not a player in this scenario; I'm an umpire.

24   And that means Plaintiffs have to explain what's wrong with the

25   privilege log entity -- entry.

1            There needs to be an opportunity for meet-and-confer,

2    and then DirecTV gets to response.  And I, as the Judge, make a

3    decision as to who has got the better of the argument.

4            But I'm not in that position.  Because there was no

5    meet-and-confer.  And I don't see any judgment being exercised

6    here to limit the privilege log objections to just those that

7    would really matter to the case; that would be most likely to

8    produce something of value.

9            **MR. MIRZADEH:**  Your Honor, may I say something?

10           **THE COURT:**  Go ahead.

11           **MR. MIRZADEH:**  I think the issue is -- and this has

12    been a source of frustration for Plaintiffs -- is that we've

13    had, you know, many, many meet-and-confers over -- over the

14    privilege log.

15           But, essentially, the burden is being shifted here,

16    right?  Is that the entries are so deficient in information,

17    right, that we would be required to go entry by entry for tens

18    of thousands of entries to determine, you know, for -- on our

19    meet-and-confer for Mr. Kopczynski to go one by one, and say,

20    "Privileged, not privileged, privileged, not privileged."

21           I mean, that's exactly what's happened, right?  I

22    mean, we're on these meet-and-confers, on our most recent one,

23    where we took exemplars of the entries in our challenges.  And,

24    you know, he walked through and explained, "Okay, well, this is

25    privileged, this is not privileged, this is privileged, this is

1   not privileged."

2          And the reason we did that we because there's just so

3   little information for so many of these entries that, absent

4   meeting and conferring over every single one, we just -- we

5   don't know how to pick and choose --

6          **THE COURT:**  But you can't --

7          **MR. MIRZADEH:**  -- what is important and what's not.

8          **THE COURT:**  You can establish that on the basis of a

9   couple of examples.  I mean, most of these five categories, you

10  give one, two, three, maybe -- I mean, I added up a dozen -- is

11  all you had.

12         I can't go from a dozen, where you can make an

13  argument, to 1,800, where you can't, and haven't met and

14  conferred, haven't met -- haven't made an argument or an

15  analysis to inform the Court so it can make a ruling, nor have

16  you had a meet-and-confer, nor has DirecTV been given the

17  opportunity to respond to the analysis that you would provide.

18         So under those circumstances, I don't see how this

19  motion can be ruled on yet.  I'm sort of going back and forth

20  between denying the motion altogether or trying to find a more

21  creative way of addressing the motion that would allow you

22  something of value out of this process.

23         And the only thing that occurs to me -- I've done

24  this a couple of times in other cases over the years -- is for

25  you to identify the most important privilege log entities --

40

1   entries that you object to; the ones that you think might

2   produce something of value that would help your case, and go

3   through the process that I'm talking about.

4           In other words, take 100.  The Court will give -- you

5   pick out the 100 most important -- that are the most important

6   entries to you.  Pick out 100.  Give that 100 to

7   Mr. Kopczynski, have him -- and meet and confer with him and

8   hear his side, and then come to a conclusion about what ought

9   to be produced and what ought not to be produced.

10          My guess is we're going to end up where we are today,

11  but who knows?  And if you can show that 30 percent of that 100

12  -- over 30 would have to be produced, then you would have a

13  much stronger case for continuing.

14          If, on the other hand, you wind up with three, then

15  it's not worth that process to go through and I don't know how

16  we would do it.

17          If I had to do 1,800, it would take me until Easter.

18  And you already passed the discovery deadline.  You're only

19  doing this because Judge Gutierrez authorized you to proceed

20  with the discovery past the discovery cutoff date on this one

21  issue.

22          So we're already getting into the closing stages of

23  the case.  You can't stop the case for six months for me to

24  review and do this in a way it would properly be done.  Which

25  is, you start with the items, give an analysis, meet and

1  confer, give the other side the opportunity to response with an

2  analysis.  And where you don't agree, you submit it to me for

3  resolution.

4          But I can't do the analysis to demonstrate why it's

5  deficient.  That would -- as I said, I'm an umpire; I'm not a

6  player.  If I did that, I would be in an impossible situation

7  with respect to DirecTV.

8          I make an analysis without any help from you -- which

9  is what you're asking me to do -- and DirecTV has to be given

10  the opportunity to respond.

11          But they're responding to something that the Court is

12  asserting; not that you're asserting.  That's an impossible

13  situation and an inappropriate thing for the Court to do.  And

14  I'm not going to do it.

15          But what I will do, having convinced myself of the

16  winning logic of my arguments, is, I'm going to give you one

17  last shot at this.  You pick out the 100 most important entries

18  you want to challenge.  You give that 100 -- that list of the

19  100 to DirecTV; you have a meet-and-confer on the whole 100.

20          And then DirecTV can provide it's analysis for those

21  entries that you wish to continue to challenge for the Court to

22  decide at that point.

23          So how soon can you get 100 entries over to DirecTV's

24  Counsel?

25          **MR. MIRZADEH:**  Your Honor, we'll endeavor to do it as

42

1   soon as possible.  But I do want to go over just a couple

2   technical issues as we compile this list, and the process

3   moving forward.

4         You ask us to pick out the 100 most important

5   documents.  Now, for some of these --

6         **THE COURT:**  Privilege log entries.

7         **MR. MIRZADEH:**  -- documents -- I mean, the

8   information we're given is nothing more than, "We don't know

9   who the author is; we don't know the context; we don't know the

10   subject of the document."  The title of the document is just

11   .0067 DOC PDF, right?

12         And then all there is, is this conclusory description

13   that, you know, "This is a confidential document containing

14   legal advice from DirecTV legal regarding negotiation or

15   terms."

16         **THE COURT:**  Well, you heard Mr. Kopczynski's

17   explanation for some of that.

18         So if you want to include in your 100 items that

19   challenge the sufficiency, then he's going to have to explain

20   it to you in the meet-and-confer.  And if he doesn't do it

21   successfully, you'll challenge it.  And it'll go into the mix

22   here for me to decide whether to go beyond 100.

23         So what we're doing is an initial exercise that will

24   determine whether we continue down the road of additional,

25   beyond the 100 challenges.

43

1          And like I said, if 30 out of 100 end up being

2     produced, that's in your favor.  That warrants further --

3     warrants an extension of the approach.  If you only find -- if

4     the only result is -- only three wind up being good challenges,

5     then we're done.

6          I think that's the only way we can do this.  Because,

7     like I said, asking me to be the advocate is not going to work.

8          **MR. MIRZADEH:**  I understand, Your Honor.  But I do

9     want to clarify that not every document, as Mr. Kopczynski

10    explained, is an attachment to an email.  Some of these are

11    just stand-alone scanned documents.

12         **THE COURT:**  And which --

13         **MR. MIRZADEH:**  Which I understand, you know --

14         **THE COURT:**  You can raise all that with him.

15         **MR. MIRZADEH:**  Okay.

16         **THE COURT:**  Make one of your 100 an example of that.

17         **MR. MIRZADEH:**  Okay.  And then once we go through and

18    we discuss, come back to you with the results of that

19    discussion and --

20         **THE COURT:**  Right.

21         **MR. MIRZADEH:**  -- you know, if there are 30 out of

22    100 that may merit further consideration or are not privileged,

23    we can discuss with you?

24         **THE COURT:**  Right.  I don't see any other

25    alternative.

44

1          **MR. KOPCZYNSKI:**  Yeah.  Your Honor, from DirecTV's

2     perspective, this is an approach honestly that we've encouraged

3     with Plaintiffs for months.  So we're happy and welcome this

4     opportunity.

5          I would say, to the extent you do plan to continue to

6     look at Exhibit 6 -- and I do believe actually if you -- if

7     we're able to show it to you on the screen, this motion very

8     well may die right here in this -- this hearing.

9          But --

10         **THE COURT:**  I want to --

11         **MR. KOPCZYNSKI:**  -- in any event, to the extent --

12         **THE COURT:**  If they send it --

13         **MR. KOPCZYNSKI:**  -- you try to look at it --

14         **THE COURT:**  Hold on.

15         **MR. KOPCZYNSKI:**  -- if you have questions --

16         **THE COURT:**  Hold on.

17         **MR. KOPCZYNSKI:**  -- still do feel free to ask those

18    so that you can understand how it -- how they op -- log

19    operates.

20         **THE COURT:**  I want you to resolve that with

21    Mr. Mirzadeh; not with the Court --

22         **MR. KOPCZYNSKI:**  Yes.

23         **THE COURT:**  -- unless you have to.

24         It starts with the discussion between the two of you.

25    And that hasn't happened with respect to over 1,800 privilege

```
 1   log entries.

 2          MR. KOPCZYNSKI:  Yes.  No, Your Honor, you're not

 3   wrong.  I was simply circling back on the comment he had made

 4   before you, I guess, decided this course of action, just so

 5   that you had a complete response from me.  That's all.

 6          We're happy to participate in this process.

 7          THE COURT:  I think it's the --

 8          MR. MIRZADEH:  And we as --

 9          THE COURT:  I think --

10          MR. MIRZADEH:  We, as well, Your Honor.  Although, I

11   would ask if DirecTV is able to offer more information on their

12   privilege log for some of these entries that don't contain, for

13   example, authorship information or, you know, the sender or

14   recipient of an email.  We request that information so we can

15   make a more determined -- more informed decision about the 100

16   that we pick.

17          THE COURT:  I agree.

18          You understand that, Mr. Kopczynski?

19          MR. KOPCZYNSKI:  Yes.  And, Your Honor, as I said at

20   that outset, for any email on our log -- for every email on our

21   log, the sender information, the recipient information, the

22   date, and the description of that document, including the

23   subject line and any file attachment names, to the extent we

24   have them, is on the log.

25          But if there are ones that Plaintiffs are aware of
```

1    that don't, maybe for some technical reason or something else

2    that we just haven't noticed, we're happy to consider that and

3    we'll work with them on that.

4         **THE COURT:**  Well, I encourage the parties to meet and

5    confer immediately and intensely.  Because that's what's

6    holding it up here.  That's the problem.  There was no meet-

7    and-confer with specificity.

8         Mr. Mirzadeh is making the argument that he lacks

9    information.  And you need to provide that information so that

10   he can make an analysis of whether this belongs on his 100

11   list.

12        Are we clear, Mr. Kopczynski?

13        **MR. KOPCZYNSKI:**  Yes, Your Honor.  I mean, that -- I

14   do think we disagree with our position on that.  But we'll work

15   with them again to see how we might either re-explain or better

16   explain what we believe to be the adequate information.

17        **THE COURT:**  All right.

18        **MR. KOPCZYNSKI:**  We're happy to meet and confer with

19   them, you know, immediately; as soon as they're prepared to do

20   so.

21        **THE COURT:**  We need to move this along and bring it

22   to a close.  All right.

23        **MR. KOPCZYNSKI:**  On that point, we definitely agree,

24   Your Honor.

25        **THE COURT:**  Anything else?

47

1          **MR. MIRZADEH:**  Actually, I think we're all in

2    agreement on that.

3          **THE COURT:**  All right.  Anything else?

4          **MR. MIRZADEH:**  So, Your Honor, I just want to make

5    sure that I understand -- I understand the order from the

6    Court.

7          Do you still want us to go through and resolve the

8    counts of the entries, or do you think that's going to change

9    based on our discussion of, you know, the 100 entries?

10          What would you like to see?

11          **THE COURT:**  I want what I asked for.

12          **MR. MIRZADEH:**  Okay.

13          **THE COURT:**  Because we're -- it's going to be the

14   starting place for the discussions you're about to start having

15   with DirecTV.

16          I mean, to the extent you could come back to me and

17   say to me, "Well, they gave us information on 300 items that we

18   no longer challenge, and we're taking those off the list," that

19   would be useful.  And that still leaves you with 100.

20          But I don't see -- you got 1,100 and -- you got 1,172

21   that are in Category T, which are the ones you're claiming

22   don't lack -- that lack sufficient information.

23          Well, I guess that --

24          **MR. MIRZADEH:**  And just to be clear, I think from the

25   majority of those, we're going to ask for more information

1   where they can give it, like the author.

2          And this isn't a situation where they're email

3   attachments.  These are sometimes just scanned documents or

4   scanned emails.  But they don't --

5          **THE COURT:**  All right.

6          **MR. MIRZADEH:**  -- populate the fields for the

7   (indisc.).

8          **THE COURT:**  I'm going to go back to the -- where I

9   originally started what I was thinking about; I don't think is

10  going to work.

11         You need to provide a list of 100 that you care about

12  the most to DirecTV.  That's the order.

13         And then there's going to be meet and -- you know,

14  you need to provide DirecTV with an analysis, and meet and

15  confer, get the responsive analysis from DirecTV.  And if you

16  can't agree to eliminate it as an issue, then it will go on the

17  list for me to decide.

18         Are we clear?

19         **MR. MIRZADEH:**  Yes, Your Honor.

20         So by today, we'll give you an updated Exhibit 6.

21  I'll email that to you, and updated counts.

22         **THE COURT:**  Okay.  We're adjourned.

23         **MR. KOPCZYNSKI:**  Thank you very much, Your Honor, for

24  your time.

25         **MR. MIRZADEH:**  Thank you, Your Honor.

(Proceedings Concluded)


## <u>CERTIFICATION</u>


    I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings in the
above-entitled matter.



_____                    <u>November 30, 2022</u>
        Signed                                              Dated


*TONI HUDSON, TRANSCRIBER*