Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO ALL ACTIONS

Case No.: 2:15-ml-02668-PSG (JEMx)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF MARK A. ISRAEL**

JUDGE: Hon. Philip S. Gutierrez
DATE: January 27, 2023
TIME: 1:30 p.m.
COURTROOM:
First Street Courthouse
350 West 1st Street
Courtroom 6A
Los Angeles, CA 90012

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 1
LEGAL STANDARD .......... 2
ARGUMENT .......... 3
I. Dr. Israel's Application of His "Completeness Principle" Improperly Introduces Speculation and Irrelevancies to the But-For World Analysis .......... 3
II. Dr. Israel's Complementary Product Theory Is Not Only Unsupported, It Is Incoherent and Inconsistent .......... 11
III. Dr. Israel's Opinions Concerning *Other* Markets Are Irrelevant .......... 13
CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ........ 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ........ 14

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ........ 4

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........ 2

*In re Disposable Contact Lens Antitrust Litig.*,
329 F.R.D. 336 (M.D. Fla. 2018) ........ 8

*Dobrosky v. Arthur J. Gallagher Service Co., LLC*,
No. EDCV 13-0646, 2014 WL 10988092 (C.D. Cal. July 30, 2014) ........ 3

*In re Elec. Books Antitrust Litig.*,
No. 11 MD 2293, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ........ 5

*In re Elec. Books Antitrust Litig.*,
Nos. 11 MD 2293, 12 Civ. 3394, 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ........ 5

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 2

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ........ 4

*Laumann v. Nat'l Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015) ........ 6

*NCAA v. Bd. of Regents of Univ. of Oklahoma*,
468 U.S. 85 (1984) ........ 7

*In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019), *cert denied sub nom. NFL v. Ninth Inning, Inc.*, 141 S. Ct 56 (2020)....................3, 10, 13

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)....................3, 6, 8

*Roxul USA, Inc. v. Armstrong World Indus., Inc.*, No. 17-1258, 2019 WL 1101385 (D. Del. Mar. 8, 2019)....................5

*Sullivan v. Nat'l Football League*, 34 F.3d 1091 (1st Cir. 1994)....................14

*Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045 (C.D. Cal. 2020)....................2

*United States v. Topco Assocs.*, 405 U.S. 596 (1972)....................14

**Other Authorities**

Fed. R. Evid. 702....................1

## INTRODUCTION

The NFL[1] has proffered the opinions of Dr. Mark A. Israel[2] to support the argument that class certification is not appropriate in this action because individualized determinations are required to determine antitrust injury and damages for class members. However, the touchstone attribute for admission of expert testimony is that it should "help the trier of fact," *see* Fed. R. Evid. 702, and Dr. Israel's opinions are demonstrably *unhelpful* for their professed purpose. Many of Dr. Israel's opinions are irrelevant, unsupported and unreliable, or simply wrong as a matter of law or fact—as well as untethered to the governing Ninth Circuit decision in this case—and they should properly be excluded from consideration. Moreover, because those opinions constitute fundamental premises underlying all of Dr. Israel's conclusions and otherwise so permeate his analysis, this Court properly should disregard the Israel Report entirely.

## BACKGROUND

Dr. Israel's opinions are expressly intended to address whether [REDACTED] *See* Israel Report ¶ 6. [REDACTED]

In order to demonstrate that class certification is inappropriate, Dr. Israel contends that Plaintiffs' methods to demonstrate class-wide injury from the

[1] Throughout this brief, Plaintiffs use "NFL" to refer to the NFL Defendants.

[2] *See generally* Declaration of Scott Martin in Support of Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel ("Martin Decl.") Ex. 1 (Expert Report of Mark A. Israel, Ph.D.) ("Israel Report").

challenged conduct and to quantify damages must satisfy a



¶¶ 15-19.

**LEGAL STANDARD**

Consistent with *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), a court must ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand" before it can be considered by the trier of fact under Federal Rule of Evidence 702. The *Daubert* standard applies to the reliability and relevance of expert testimony offered in the class certification context. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). "In determining the reliability of proffered expert testimony, the district court's task 'is to analyze not what the experts say, but what basis they have for saying it.'" *Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1049 (C.D. Cal. 2020) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir.

1995) ("*Daubert II*")). Here, expert opinions that do not address "issues relevant to class certification" are irrelevant. *See Dobrosky v. Arthur J. Gallagher Service Co., LLC*, No. EDCV 13-0646, 2014 WL 10988092, at *3 (C.D. Cal. July 30, 2014).

## ARGUMENT

### I. Dr. Israel's Application of His "Completeness Principle" Improperly Introduces Speculation and Irrelevancies to the But-For World Analysis

Dr. Israel states that he is [redacted] *Id.* 41:19-42:15. But as discussed below, Dr. Israel's application of his "Completeness Principle" here demands more than the law and common sense would require in any formulation of a but-for world.

The "rigorous analysis" that is to be undertaken by a district court in deciding whether to certify a class "requires judging the *persuasiveness of the evidence* presented for and against certification." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 784 (9th Cir. 2022) (en banc) (emphasis added, internal quotations omitted). Dr. Israel's opinions, however, do not constitute the sort of factual evidence that the Court can evaluate for persuasiveness. Dr. Israel simply hypothesizes all manner of possibilities—many unsupported and unreliable, as well as irrelevant—which he contends that

---

[3] Indeed, [redacted] *See* Israel Report at p. 155. [redacted] *Compare* Israel Dep. 109:11-22 with *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d at 1155.

Plaintiffs' experts should have imagined as conceivable permutations and therefore should have demonstrated their effect (or lack thereof) one by one in order to satisfy Dr. Israel's "Completeness Principle." Plaintiffs bear no such burden.

To illustrate, Dr. Israel claims that Plaintiffs [redacted]

Dr. Israel's assertion is bare of any support—statistical, survey, testimonial, anecdotal or otherwise—and is thus unreliable. When assessing the reliability of a proffered expert's testimony, the Court must "analyze not what the experts say, but what basis they have for saying it." *Daubert II.*, 43 F.3d at 1316. "[N]othing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Of course, Dr. Israel's speculation also ignores common sense. Most people go to sports bars for the social camaraderie, multiplicity of screens and games being shown, food and beverage service, and various other reasons that individuals may frequent such businesses—which readily attract patrons for college football and other sports available on free television, including of course, many people who go to bars to watch the local NFL team play. [redacted]

[redacted]

Dr. Israel's absence of evidence or analysis for such opinions only underscores why such guesswork about hypotheticals should be excluded as unhelpful. In *In re Elec. Books Antitrust Litig.*, Nos. 11 MD 2293, 12 Civ. 3394, 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014), the court excluded certain opinions by defense expert Jonathan Orszag (Dr. Israel's colleague at the Compass Lexecon firm) concerning the but-for world that he contended would have existed in the absence of the alleged conspiracy to fix the prices of e-books. The court noted that Orszag's guesses concerning sales numbers, which were based on assumptions that Apple's iBookstore would not have launched but for the conspiracy and that some percentage of sales would not have occurred, "would not assist the trier of fact." *Id.* at *19. Dr. Israel's bare assumptions here, which lack any quantification, merit the same fate.

Moreover, the fact that Dr. Israel can postulate a potential feature of a hypothetical but-for world does not render it relevant to class certification merely because Plaintiffs' experts did not analyze it—and particularly where Dr. Israel has not done so either. As the *Elec. Books* court observed, in a companion opinion issued the same day and approving class certification, "[i]t is unsurprising that [Plaintiffs' expert] did not develop an opinion about many of the issues that [Defendants contend] are important features of a but-for world. After all, the but-for world does not exist." *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293, 2014 WL 1282293, at *27 (S.D.N.Y. Mar. 28, 2014); *see also Roxul USA, Inc. v. Armstrong World Indus., Inc.*, No. 17-1258, 2019 WL 1101385, at *8 (D. Del. Mar. 8, 2019) (certifying class where defendants asserted that plaintiffs' expert "fail[ed]

---

[4] There is no mention of any [redacted] *See* Israel Report at p. 154.

to identify key features of the 'but-for' world," finding such challenges appropriate for cross-examination).

In addition to being unsupported, unreliable, and irrelevant to consideration of Plaintiffs' but-for world, Dr. Israel's speculation concerning the commercial establishments here is irrelevant to class certification on other grounds as well. Regardless of whether Dr. Israel can imagine, in a marketplace without the subject restraints, that there may be sports bars which may lose revenues because certain customers could watch games available on cable television at home, that does not change the gravamen of Plaintiffs' allegations that the commercial class members were *overcharged* for the Sunday Ticket product that they purchased. Indeed, "if the fact that illegal restraints operate to the economic advantage of certain class members were enough to defeat certification, the efficacy of classwide antitrust suits—and the deterrence function they serve—would wither." *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 400 (S.D.N.Y. 2015). Simply put, that is not a cognizable consideration under the antitrust laws, and so it is irrelevant to the factfinder.

Dr. Israel also speculates



Dr. Israel's speculative "opinion" concerning competitive balance is thus unreliable and unhelpful—and it is also irrelevant. Regardless of whether the NFL may wish to assert competitive balance as a procompetitive justification for its conduct at the merits stage, [REDACTED] does not require individualized analysis where class members simply claim that they were overcharged for the Sunday Ticket product they purchased.

Moreover, showing the importance and effect of competitive balance is the burden of Defendants here, not of Plaintiffs. It is a classic purported procompetitive justification, which the league is entitled to proffer once the Plaintiffs have shown either that the restraints at issue are naked restraints on competition, as in *NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85 (1984), or once Plaintiffs have shown anticompetitive effects under the rule of reason. *Id.* at 119-20 (finding that the NCAA had not met its burden of establishing the procompetitive effect on competitive balance from restraining availability of telecasts). There is no requirement that Dr. Rascher disprove *Defendants*' case now (or at any point in the litigation). Nor is Dr. Rascher's class certification opinion unreliable for failing to address such arguments in the context of a report with the limited purpose of showing that Plaintiffs can meet their burden with respect to impact and damages with methodologies common to the class. If Dr. Israel had actually conducted some analysis that showed a benefit to (economic) competition as a result of the challenged conduct's effect on competitive balance, then perhaps Dr. Rascher would have reason to address it in reply. But since Dr. Israel has not done so, his speculations are entirely irrelevant to the task at hand.

Such examples illustrate the overreach of [REDACTED] which would seek to have Plaintiffs' experts analyze

any possible contrary effect, even those that are Defendants' burden. [REDACTED] If these questions are relevant at all, it is not on this motion in this case. The damages issue here is based on a traditional overcharge theory. That is, each class member purchased a certain product—a package that gave them access to all Sunday afternoon games on DirecTV— and the task is to determine what the price of that same access to all those games would have been in a world without the restraints at issue. That requires determining how those games would be likely be offered, which requires an assessment of what purchases would be made market-wide, but it does not require the assessment of individual and hypothetical purchases by any particular class member for the class to be certified. *See Olean*, 31 F.4th at 668-69 (the district court's determination is whether the common question predominates, and certification is not precluded even if plaintiffs may have to prove individual damages at trial); *see generally In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 420-21 (M.D. Fla. 2018) (collecting cases). The only purchases by individual class members that matter to damages are the purchases they *actually made* in order to provide a base for calculating the overcharge.

Thus, even if Dr. Israel had a basis for these suppositions, they would be legally irrelevant to the Court's consideration of the *evidence* and Plaintiffs' methodology. And they are doubly incapable of assisting the trier of fact because they are without basis, as Dr. Israel repeatedly admits. Simply put, a list of unexamined "What if?" questions fails the most basic standards of Rule 702.

And the examples of Dr. Israel's speculation and statements devoid of support (and in numerous instances, irrelevant to class certification as well) are legion throughout his report, including, *inter alia*, his opinions that:

- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]



- 
- 
- 

Such speculative statements, among others, permeate Dr. Israel's report, and they demonstrate how unmoored his bare opinions are from this case. For example, the Ninth Circuit held that the set of interlocking agreements at the heart of this action "is the exact type of arrangement . . . that the Supreme Court held caused an injury to competition in the context of college football." *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d at 1151 (internal quotations omitted). Notwithstanding this fact, Dr. Israel states in his report that

As noted above, Dr. Israel  It is possible, of course, that had he studied the issue, perhaps he could have reasonably come to a contrary conclusion concerning the NCAA. However, he did not.



[redacted] As for his "opinion" concerning Plaintiffs' expert's college football yardstick, [redacted] When asked why he did not think that greater popularity would logically drive greater television coverage, not less, [redacted] In short, on this basic issue for class certification here, Dr. Israel had no basis whatsoever for disagreeing with the Ninth Circuit.

## II. Dr. Israel's Complementary Product Theory Is Not Only Unsupported, It Is Incoherent and Inconsistent

There is another problem with Dr. Israel's opinion that [redacted]

[redacted]

But if that were true, the league and its current media partners would want *more* distribution of the games, not less. Their claimed need for exclusivity would be replaced with a desire for an open market designed to maximize the supposed benefits of this (erroneously claimed) complementarity. For example, more distribution of the Sunday Ticket games would increase demand for the non-Sunday Ticket games. But as discussed below, the NFL's long-held position, in this litigation and otherwise, is that Sunday Ticket is intentionally limited in distribution to protect the networks from competition, which is entirely at odds with the claim that these products are complements.

Indeed, in 2007, the league made a presentation to the FCC in which it embraced the fact that DirecTV's exclusivity reduced access to the games, in order to protect the networks:

[redacted]

Martin Decl. Ex. 3 (NFL_1060058 at NFL_1060081).

Commissioner Goodell confirmed that is still the view of the NFL: [redacted]



[redacted] Indeed, that has been a consistent theme of the NFL's defense in this case. [redacted] But this core policy of the NFL is built on the assumption that the games are substitutes, not complements; otherwise, this decades-long policy would have been for naught. Thus, Dr. Israel's position is not only contrary to common sense and inconsistent with the economic literature, it is nonsensical in light of the NFL's long-held, and consistent, position in this case.[5]

## III. Dr. Israel's Opinions Concerning *Other* Markets Are Irrelevant

Dr. Israel also insists that [redacted] He then asserts that [redacted] Even assuming, *arguendo*, that there were merit to [redacted] for purposes of class certification is misguided and irrelevant.

---

5 [redacted]

First, it does not necessarily follow from Dr. Israel's assumption of a weakened DirecTV that *competition* would suffer. [REDACTED] Of course, weakened competitors also can "up their game" with price wars or other maverick actions. Or, if such competitors are inefficient or ineffective, other competitors in the marketplace may compete harder to obtain their customers. Regardless, contrary to Dr. Israel's concern, it is long-settled that the antitrust laws were enacted for the protection of *competition*, not individual competitors such as DirecTV. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

Moreover, whether the NFL can assert the existence of procompetitive justifications in *another* market as part of a rule of reason argument on the merits might be a question for another day—though it bears mention that the Supreme Court has held that "[i]f a decision is to be made to sacrifice competition in one portion of the economy for greater competition in another portion, this . . . is a decision that must be made by Congress and not by private forces or by the courts." *United States v. Topco Assocs.*, 405 U.S. 596, 612 (1972); *see also Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1112 (1st Cir. 1994) (suggesting that it is "improper to validate a practice that is decidedly in restraint of trade simply because the practice produces some unrelated benefits to competition in another market"). But in any event, any such arguments are irrelevant to the class certification determination of whether a common methodology can be used to show impact and damages to class members resulting from the NFL's anticompetitive conduct in the relevant market put at issue by Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Dr. Israel from consideration in connection with Plaintiffs' Motion for Class Certification.

Dated: December 2, 2022 Respectfully submitted,

By: */s/ Marc M. Seltzer*
Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Arun Subramanian (*Pro Hac Vice*)
asubramanian@susmangodfrey.com
William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004

Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*