Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (JEMx) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY NFL EXPERT DR. ALI YURUKOGLU**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: January 27, 2023<br>TIME: 1:30 p.m.<br>COURTROOM:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

1

## **<u>TABLE OF CONTENTS</u>**

2  INTRODUCTION .................................................................................................. 1

3  BACKGROUND .................................................................................................... 2

4       I.    Dr. Yurukoglu's Confidential Consulting Role In The

5            *Laumann* And *Garber* Cases. ................................................ 2

6       II.   Dr. Yurukoglu's Involvement In—And The Relevance of
          *Laumann* To—The Present Case. ........................................... 4

7  LEGAL STANDARD ............................................................................................ 6

8  ARGUMENT .......................................................................................................... 7

9       I.    A Confidential Relationship Existed With Dr. Yurukoglu In
          The *Laumann* Case ................................................................... 7

10
11       II.   Confidential Information Was Disclosed to Dr. Yurukoglu
          That Is Relevant to This Case. ................................................ 10

12       III.  Policy Considerations Support Dr. Yurukoglu's
          Disqualification. ...................................................................... 12

13
14       IV.  The Court Should Compel the Production of
          Communications Between Dr. Yurkoglu and the NFL. ..................... 15

15  CONCLUSION ..................................................................................................... 16

16

17

18

19

20

21

22

23

24

25

26

27

28

11125869v1/014918

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alien Tech Corp. v. Intermec, Inc.*,
2007 WL 4261972 (D.N.D. Nov. 30, 2017)........................................12

*Bell N. Research, LLC v. ZTE Corp.*,
2019 WL 1590472 (S.D. Cal. Apr. 12, 2019) ...............................*passim*

*Broadcom Corp. v. Emulex Corp.*,
2010 WL 11465478 (C.D. Cal. Apr. 5, 2010)...............................*passim*

*Calendar Research LLC v. StubHub, Inc.*,
2017 WL 10378337 (C.D. Cal. Sept. 22, 2017)..........................8, 12

*Campbell Indus. v. M/V Gemini*,
619 F.2d 24 (9th Cir. 1980)..................................................6, 15

*Cordy v. Sherwin-Williams Co.*,
156 F.R.D. 575 (D.N.J. 1994) ......................................................16

*Erickson v. Newmar Corp.*,
87 F.3d 298 (9th Cir. 1996).....................................................1, 16

*Garber v. Office of the Commissioner of Baseball*,
No. 1:12-cv-03704-VEC (S.D.N.Y.).............................................2

*Godby v. U.S. Dist. Ct. for Dist. of Ariz.*,
229 F.3d 1157, 2000 WL 975184 (9th Cir. 2000)..........................15

*Grant Heilman Photography, Inc. v. McGraw-Hill Global Education Holdings, LLC*,
2018 WL 2065060 (E.D. Pa. 2018) ..............................................16

*Hobley v. Burge*,
433 F.3d 946 (7th Cir. 2006) ........................................................9

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019)......................................................4

*Kane v. Chobani, Inc.*,
2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ................................16

*Koch Refining Co. v. Jennifer L. Boudreau M/V*,
85 F.3d 1178 (5th Cir. 1996) ...............................................7, 9, 10

*Laumann v. Nat'l Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015)........................................2, 3

*Laumann v. Nat'l Hockey League*,
907 F. Supp. 2d 465 (S.D.N.Y. 2012) ..........................................2

iii

*Laumann v. Nat'l Hockey League*,
  No. 1:12-cv-01817-SAS, Dkt. No. 113 (S.D.N.Y. Jan. 28, 2013) ....................... 3

*Laumann v. Nat'l Hockey League*,
  No. 1:12-cv-01817-SAS, Dkt. No. 298 (S.D.N.Y. Jan. 14, 2015) ....................... 4

*Laumann v. Nat'l Hockey League*,
  No. 1:12-cv-01817-SAS, Dkt. No. 379 (S.D.N.Y. Sept. 1, 2015) ....................... 2

*Lexington Luminance LLC v. Feit Elec. Co.*,
  2020 WL 10052401 (C.D. Cal. June 12, 2020) ....................... 9

*M&T Bank v. Worldwide Supply LLC*,
  2022 WL 16743689 (D.N.J. June 28, 2022) ....................... 14

*Marvin Lumber & Cedar Co. v. Norton Co.*,
  113 F.R.D. 588 (D. Minn. 1986) ....................... 7

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
  2018 WL 6137633 (C.D. Cal. Apr. 23, 2018) ....................... 9

*Nijjar v. General Star Indemnity Co.*,
  2014 WL 271630 (C.D. Cal. Jan. 23, 2014) ....................... 14

*Nike, Inc. v. Adidas Am. Inc.*,
  2006 WL 5111106 (E.D. Tex. Sept. 29, 2006) ....................... 9

*Pellerin v. Honeywell Int'l Inc.*,
  2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ....................... 14

*Rhodes v. E.I. Du Pont De Nemours & Co.*,
  558 F. Supp. 2d 660 (S.D. W. Va.) ....................... 11, 12

*Shadow Traffic Network v. Superior Court*,
  24 Cal. Rptr. 693 (Ct. App. 1994) ....................... 16

*Stencel v. Fairchild Corp.*,
  174 F. Supp. 2d 1080 (C.D. Cal. 2001) ....................... 7

*Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*,
  2012 WL 3370563 (E.D. Mich. Sept. 6, 2012) ....................... 10, 15

*Veazey v. Hubbard*,
  2008 WL 5188847 (D. Haw. Dec. 11, 2008) ....................... 6, 7, 8

*W.R. Grace & Co. v. Gracecare, Inc.*,
  152 F.R.D. 61 (D. Md. 1993) ....................... 8

**Rules**

Fed. R. Civ. P. 26(b)(4)(D) ....................... 9

**Other Authorities**

*Hour Peddling Mega-Mergers*, <u>ProPublica</u> (Nov. 16, 2016) ....................... 14

iv

**INTRODUCTION**

The NFL improperly retained an expert—Dr. Ali Yurukoglu—who had a previous confidential consulting relationship with Plaintiffs' counsel (and, through them, putative class members) regarding the economic modeling of sports media. As a result of that relationship, Dr. Yurukoglu was exposed to a treasure trove of work-product protected materials regarding litigation strategy and case theories. The relevance of that prior consulting relationship can hardly be denied: the NFL cites to that prior case—often in conjunction with Dr. Yurukoglu's opinions in the instant case—repeatedly throughout its class certification opposition and *Daubert* motions. Dr. Yurukoglu's opinions are therefore clouded by a conflict of interest that undermines the integrity of this litigation. "The Court cannot allow an expert to attempt to divide his loyalties in this way" and should disqualify him as a result. *See Bell N. Research, LLC v. ZTE Corp.*, 2019 WL 1590472, at *7 (S.D. Cal. Apr. 12, 2019) (citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)). Dr. Yurukoglu must be disqualified.

Moreover, Dr. Yurukoglu testified that he had discussed his prior consulting engagement with the NFL's counsel in this case, some of whom also represented the defendants in the case that Dr. Yurukoglu previously consulted on. Despite (or perhaps because of) their awareness of Dr. Yurukoglu's past interactions with Plaintiffs' counsel in a highly relevant case, the NFL's counsel retained him for this case. This retention inevitably resulted in the disclosure of confidential information and attorney work product to the NFL and its lawyers. Thus, the NFL and its counsel have transformed Dr. Yurukoglu into a paid informant for work-product protected materials. As a result, the Court may ultimately need to disqualify the NFL's counsel. To assess whether such a step is warranted, the Court should permit disclosure of all communications between Dr. Yurukoglu and the NFL—and permit a second deposition of Dr. Yurukoglu—to determine the extent to which confidential material was shared or used in advising the NFL's counsel.

**BACKGROUND**

**I.     Dr. Yurukoglu's Confidential Consulting Role In The *Laumann* And
         *Garber* Cases.**

In 2012, one of the lead counsel for Plaintiffs in this matter commenced two class actions in the U.S. District Court for the Southern District of New York against the National Hockey League and Major League Baseball: *Laumann v. National Hockey League*, No. 1:12-cv-01817-SAS (S.D.N.Y.); and *Garber v. Office of the Commissioner of Baseball*, No. 1:12-cv-03704-VEC (S.D.N.Y.).[1] Those cases alleged antitrust violations due to the leagues' restrictions on game broadcasts that, as in the instant case, unreasonably reduced output and raised prices for their out-of-market game packages. The leagues, the teams within the leagues, various regional sports networks, Comcast, and, as here, DIRECTV, were named defendants in the *Laumann* action. *See Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 471-76 (S.D.N.Y. 2012) (summarizing allegations). Howard Langer, Edward Diver, and Peter Leckman of Langer, Grogan & Diver, P.C. ("Langer Grogan & Diver")—who also represent the Plaintiffs in the instant case— represented the plaintiffs in *Laumann*. Howard Langer, who is one of the co-lead counsel for Plaintiffs in the present case, served as lead counsel in *Laumann*. Beth Wilkinson, who represents the NFL in this case, represented Major League Baseball in *Laumann*.

The court in *Laumann* certified an injunctive class on May 14, 2015. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 387-88 (S.D.N.Y. 2015). Soon thereafter, a class settlement was reached and the *Laumann* court granted final approval in September 2015. *See Laumann v. Nat'l Hockey League*, No. 1:12-cv-01817-SAS, Dkt. No. 379 (S.D.N.Y. Sept. 1, 2015).

---

[1]  *Laumann* and *Garber* were consolidated. Plaintiffs hereafter refer to the consolidated action as "*Laumann*."

11125869v1/014918

In May 2012, shortly after the commencement of the *Laumann* action, Langer Grogan & Diver retained Dr. Yurukoglu as a consulting expert and agreed to compensate him at $600 per hour for his time. *See* Diver Decl. ¶ 2, Ex. 1. Upon his retention, Langer Grogan & Diver further explained to Dr. Yurukoglu—as is its practice any time it retains an expert—that his work would require confidentiality. *See id.* ¶ 3.

From the very beginning, Dr. Yurukoglu was involved—in consultation with Langer Grogan & Diver—in legal strategy decisions in *Laumann*. Attorneys at Langer Grogan & Diver shared their mental processes with Dr. Yurukoglu on what data to request and how to structure an appropriate economic model for the case, and asked Dr. Yurukoglu for his input on those critical decisions. *See id.* ¶¶ 4-10. When the data came in, Dr. Yurukoglu signed onto the protective order in *Laumann*, further acknowledging the need to maintain confidentiality. *See id.* ¶ 5, Ex. 2. The protective order in *Laumann* continues to be in effect today. *See* Protective Order, *Laumann v. Nat'l Hockey League*, No. 1:12-cv-01817-SAS, Dkt. No. 113 at ¶ 19 (S.D.N.Y. Jan. 28, 2013) ("The termination of this action shall not relieve counsel or other persons obligated hereunder from their responsibility to maintain the confidentiality of Restricted Information pursuant to this Order[.]").

Dr. Yurukoglu was a regular participant in calls addressing economic modeling issues and strategies throughout the period leading up to the class certification hearing in which attorneys from Langer Grogan & Diver also participated and shared their ideas. *See* Diver Decl. ¶¶ 4-6. Dr. Yurukoglu coded certain portions of the Plaintiffs' damages model. *See id.* ¶ 6. In fact, when the plaintiffs in *Laumann* changed economists, Dr. Yurukoglu—as a consulting expert—remained. *See id.* ¶ 7.[2]

_____

[2] The model Dr. Yurukoglu helped design was ultimately excluded by the Court in *Laumann*. *See Laumann*, 105 F. Supp. 3d at 387-88. The damages models Plaintiffs have presented here are of a different type than those proffered in *Laumann*. They

Dr. Yurukoglu also reviewed all of the relevant expert reports in *Laumann*, as well as the *Daubert* motion seeking to exclude plaintiffs' expert Roger Noll. He participated in calls with attorneys from Langer Grogan & Diver on how to respond to the *Daubert* motion and the arguments made by the defendants' experts. *See id.* ¶ 8. Moreover, Dr. Yurukoglu participated in a strategy call to prepare a Langer Grogan & Diver attorney to depose the defendants' key economic modeling expert. *See id.* ¶ 9.

In sum, Dr. Yurukoglu consulted in the *Laumann* action for over two years and billed Langer Grogan & Diver nearly $40,000 for his time on the case. *See id.* ¶ 10, Ex. 3-8. Over that time, Dr. Yurukoglu had repeated contact with Langer Grogan & Diver attorneys and was exposed to their mental processes and strategic decision making. *See id.* ¶¶ 4-10.[3]

## II. Dr. Yurukoglu's Involvement In—And The Relevance of *Laumann* To—The Present Case.

Much like the allegations in *Laumann*, the Plaintiffs allege that the NFL, its member clubs, and DIRECTV entered into an interlocking web of agreements that unreasonably constrain the number of game broadcasts available to viewers and increases the price for its out-of-market package named NFL Sunday Ticket. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1143-49

also address the court's concern in *Laumann* that the data did not adequately account for a broad-enough spectrum of consumers by including all DirecTV subscribers and also conducting a survey including non-DirecTV consumers. *See* Expert Report of J. Douglas Zona, Dkt. No. 633-3. Plaintiffs have also offered a yardstick model—Dr. Rascher's "College Football But-For World"—that is not reliant on econometric modeling. *See* Expert Report of Daniel A. Rascher, Dkt. No. 633-4.

[3] Dr. Yurukoglu's involvement in *Laumann* was public and certainly known to the defendants in that case. *See* Reply Decl. of Roger G. Noll, *Laumann v. Nat'l Hockey League*, No. 1:12-cv-01817-SAS, Dkt. No. 298 at 2 (S.D.N.Y. Jan. 14, 2015). Given that counsel for the NFL in this case also represented defendants in *Laumann*, it would appear that the NFL retained Dr. Yurukoglu precisely because of his work in *Laumann*.

4

(9th Cir. 2019). Plaintiffs filed a motion for class certification on August 19, 2022. *See* Dkt. No. 628.

On November 4, 2022, the NFL filed its opposition to class certification as well as three *Daubert* motions to exclude the opinions of each of Plaintiffs' expert witnesses. *See* Dkt. Nos. 674, 678, 682, 686. That was the first time the NFL disclosed its experts in this case and, therefore, was the first time Plaintiffs— including their attorneys at Langer Grogan & Diver—learned that the NFL intended to offer the opinions of Dr. Yurukoglu. The NFL especially relies on Dr. Yurukoglu's opinions in contesting the economic models proffered by Plaintiffs' expert Dr. Douglas Zona. Not only does the NFL's *Daubert* motion against Dr. Zona rely extensively on Dr. Yurukoglu's analysis, but it also cites *Laumann* repeatedly (despite Plaintiffs offering different models in this case). *See generally* Dkt. No. 678-1 (unredacted version). Similarly, the NFL's opposition to class certification cites to both the *Laumann* case and Dr. Yurukoglu's opinions *in the same paragraph*. *See* Dkt. No. 686 at 13 (redacted version).

Plaintiffs deposed Dr. Yurukoglu on November 18, 2022. During his deposition, Dr. Yurukoglu admitted that he was hired by Langer Grogan & Diver and consulted on economic modeling in *Laumann*. *See* Depo. Tr., Diver Decl. Ex. 9, at 16.19-16.24, 18.25-19.9, 20.15-20.19. And while Dr. Yurukoglu claimed he could not recall whether he assisted Langer Grogan & Diver in formulating data requests, responding to defendants' challenges, or preparing the attorneys to depose the defendants' experts, he did not deny involvement in the tasks that Langer Grogan & Diver claims he participated in. *See id.* at 19.23-20.14, 20.20-21.11; *see also* Diver Decl. ¶¶ 4-9. In fact, Dr. Yurukoglu's invoices to Langer Grogan & Diver in *Laumann* indicate he *was* involved in those tasks. *See* Diver Decl. ¶ 10, Ex. 3-8. In any event, Dr. Yurukoglu acknowledged that he was privy to confidential information and participated in confidential communications with Langer Grogan & Diver as part of his work on the *Laumann* case:

1    Q:    Did you receive confidential information in that case?

2    A:    Yes.

3    Q:    Did you have confidential communications with counsel for plaintiffs?

4    A:    Yes.

5    *See* Diver Decl. Ex. 9 at 22.23-23.3.

6    Dr. Yurukoglu went on to admit that he had discussed his prior engagement

7    in the *Laumann* case with the NFL's counsel in this case, *see id.* at 23.8-23.10,

8    some of whom were also involved in the *Laumann* case. Beyond that, though, the

9    NFL's counsel instructed Dr. Yurukoglu not to answer any further questions

10   regarding his communications with the NFL or its counsel, including the extent to

11   which he discussed his prior work on *Laumann* with them. *See id.* at 23.11-23.25,

12   24.11-25.2.

13   At his deposition, Dr. Yurukoglu confirmed that he billed Langer Grogan &

14   Diver between $30,000 and $40,000 for his work on *Laumann*, and confirmed that

15   his work on the case was over the span of multiple years. *See id.* at 24.2-24.10.

16   ## LEGAL STANDARD

17   "A district court is vested with broad discretion to make discovery and

18   evidentiary rulings conducive to the conduct of a fair and orderly trial," which

19   includes the power to exclude expert witnesses. *Campbell Indus. v. M/V Gemini*,

20   619 F.2d 24, 27 (9th Cir. 1980). "The Ninth Circuit has not established a bright line

21   rule for analyzing whether an expert witness should be excluded, but several district

22   courts have held that disqualification is warranted based on a prior relationship with

23   an adversary if (1) the adversary had a confidential relationship with the expert and

24   (2) the adversary disclosed confidential information to the expert that is relevant to

25   the current litigation." *Bell*, 2019 WL 1590472, at *3 (quotation marks omitted);

26   *see also Broadcom Corp. v. Emulex Corp.*, 2010 WL 11465478, at *1 (C.D. Cal.

27   Apr. 5, 2010); *Veazey v. Hubbard*, 2008 WL 5188847, at *4-5 (D. Haw. Dec. 11,

28   2008). Notably, the standard does ***not*** require showing actual disclosure of

6

confidential information; the potential for such disclosure is sufficient. *See Bell*, 2019 WL 1590472, at *7 (collecting cases regarding risk of disclosure); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 591 (D. Minn. 1986) ("The rules governing disqualification are designed to protect against the potential breach of such confidences, even without any predicate showing of actual breach."). "Courts should also consider prejudice to both parties and whether disqualification would promote the integrity of the legal process." *Broadcom*, 2010 WL 11465478, at *1. The party seeking disqualification bears the burden of proof. *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001).

## ARGUMENT

### I.   A Confidential Relationship Existed With Dr. Yurukoglu In The *Laumann* Case.

A moving party "must prove that it was objectively reasonable for it to believe that a confidential relationship existed." *Id.* "The primary reason courts look for a confidential relationship is to determine whether it was reasonable to divulge confidential information to the party to be disqualified." *Broadcom*, 2010 WL 11465478, at *2. While relevant to the analysis, "the existence (or absence) of a contract between the parties is not determinative." *Stencel*, 174 F. Supp. 2d at 1083. In fact, "[t]he party seeking disqualification need not show that it actually retained the expert." *See Veazey*, 2008 WL 5188847, at *5. The focus is on whether it was reasonable for Langer Grogan & Diver to expect that its communications with Dr. Yurukoglu would be confidential. *See id.* In making this determination, courts look to a variety of considerations, including: whether the relationship was long standing or just a single interaction; whether the expert was retained; whether the expert was paid a fee; whether the expert will be called as a witness in the present case; and whether work product was discussed with the expert. *See Veazey*, 2008 WL 5188847, at *5; *see also Stencel*, 174 F. Supp. 2d at 1083; *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1182 (5th Cir. 1996).

7

Dr. Yurukoglu's substantial involvement in *Laumann* overwhelmingly demonstrates that such an expectation was reasonable. Dr. Yurukoglu was retained by Langer Grogan & Diver to perform services as a consultant in *Laumann* over the span of nearly three years. Langer Grogan & Diver paid Dr. Yurukoglu nearly $40,000 to perform those services. *See* Diver Decl. ¶¶ 4-10, Ex. 3-8, Ex. 9 at 24.2-24.10. Over that period, Langer Grogan & Diver attorneys communicated with Dr. Yurukoglu on several issues, including the deposition of the defendants' expert, the economic modeling for plaintiffs in the case, the data to acquire for that modeling, and how to respond to defendants' *Daubert* motions and expert reports. *See* Diver Decl. ¶¶ 4-9. Dr. Yurukoglu confirmed that he was privy to confidential communications with plaintiffs' counsel in the *Laumann* case. *See* Diver Decl. Ex. 9 at 22.23-23.3. He also signed onto the protective order in the *Laumann* case, which remains in effect today. *See* Diver Decl. Ex. 2. In light of these circumstances, there can be no question that Langer Grogan & Diver expected its communications with Dr. Yurukoglu to be confidential. *See Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378337, at *2-3 (C.D. Cal. Sept. 22, 2017) (finding confidential relationship existed where expert agreed to keep information confidential, interaction between counsel and expert was not limited to a single interaction, and where relationship lasted several months).

Courts have often disqualified experts on far less compelling facts. In *Veazey v. Hubbard*, for example, defendant's counsel in a personal injury case spoke "briefly" about the case in a phone call with a potential expert without any follow-up and without any formal retainer. The court nevertheless held a confidential relationship existed and disqualified the expert. *See Veazey*, 2008 WL 5188847, at *5-6. Similarly, another court disqualified an expert even where the duration of the relationship was minimal and "[n]o confidences at all may have passed." *W.R. Grace & Co. v. Gracecare, Inc.*, 152 F.R.D. 61, 65 (D. Md. 1993).

Dr. Yurukoglu's status as a consulting expert in *Laumann* further confirms that communications between him and Langer Grogan & Diver would be treated as confidential. Contrary to testifying experts, the "facts known or opinions held" by consulting experts are afforded greater protection under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(4)(D); *see also Lexington Luminance LLC v. Feit Elec. Co.*, 2020 WL 10052401, at *8 (C.D. Cal. June 12, 2020) ("Consistent with the rule, the identity and work product of non-testifying experts are not generally discoverable."). Given that courts have found a confidential relationship to exist with testifying experts, it only stands to reason that a confidential relationship is more likely to exist with a non-testifying consultant. *See, e.g.*, *Nike, Inc. v. Adidas Am. Inc.*, 2006 WL 5111106, at *3 (E.D. Tex. Sept. 29, 2006) ("The mere fact that a witness is designated as a testifying witness does not control whether confidential communications were waived.").

To the extent the NFL argues that disqualification requires the party seeking disqualification to be identical to the one that retained the expert in a prior case, that argument is wrong for at least three reasons. First, the caselaw does not require the party to be identical. *See Koch Refining*, 85 F.3d at 1181 (disqualifying expert retained by different party than the one seeking disqualification). Second, the attorneys at Langer Grogan & Diver have an independent interest in privacy and may independently invoke work product protection—even when the client has waived such protection. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("It is well-established that the work-product privilege may be invoked by either the client or the attorney."); *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6137633, at *12 (C.D. Cal. Apr. 23, 2018). Third, a class was certified in *Laumann* and one of the putative class representatives in this action—Mucky Duck—subscribed to both NHL Center Ice and MLB Extra Innings during the relevant class period. *See* Diver Decl. Ex. 10 at 72.8-72.11, 73.12-14; Baker Decl. Ex. 1. Similarly, at least one of the class representatives in *Laumann*, Vincent

Birbiglia, was a Sunday Ticket subscriber and would be a member of the proposed class in this case. *See* Diver Decl. ¶ 12. As a result, there is at least some overlap between the plaintiffs in *Laumann* and in this case.

Dr. Yurukoglu signed a retainer agreement with Langer Grogan & Diver, agreed to abide by a protective order that remains in effect today, conferred with attorneys from Langer Grogan & Diver on litigation strategy over multiple years on the economic modeling of sports media rights (including how to respond to defense arguments and depose defense experts on such modeling), admitted that he was involved in confidential communications with the plaintiffs' lawyers in *Laumann*, and was paid nearly $40,000 to perform that work as a consulting expert. This is not a situation where "the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services." *Koch Refining*, 85 F.3d at 1182 (quotation marks omitted). Instead, the "record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operations, decision-making process, and the like." *Id.* (quotation marks and alteration omitted). As a result, it was reasonable for Langer Grogan & Diver to expect that its communications with Dr. Yurukoglu would be confidential.

## II.   Confidential Information Was Disclosed to Dr. Yurukoglu That Is Relevant to This Case.

"Confidential information is information which is of either particular significance or that which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Bell*, 2019 WL 1590472, at *5. Such communications involve an attorney's litigation strategy, the relative strengths and weaknesses of arguments in a case, and any other information that would be protected as attorney work product. *See id.* at *5-6; *Broadcom*, 2010 WL 11465478, at *3; *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, 2012 WL 3870563, at *5 (E.D.

Mich. Sept. 6, 2012) (noting that confidential information includes attorney work product).

Dr. Yurukuglo participated in several communications over multiple years with attorneys from Langer Grogan & Diver containing confidential information. Such information included the attorneys' thoughts regarding the data to request, the appropriate models to create in support of the plaintiffs' case in *Laumann*, the relative strengths and weaknesses of the defendants' expert opinions and *Daubert* motions, and strategy to prepare for deposing the defendants' expert. *See* Diver Decl. ¶¶ 4-10. Importantly, Dr. Yurukoglu testified that he participated in confidential communications with the plaintiffs' attorneys in *Laumann*. *See* Diver Decl. Ex. 9 at 22.23-23.3.

There can be no dispute that the confidential information disclosed to Dr. Yurukoglu in *Laumann* is relevant to the issues in the present case. *See Bell*, 2019 WL 1590472, at *7; *Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 667 (S.D. W. Va.) ("The confidential information must be sufficiently related to the instant litigation to merit disqualification."). Both *Laumann* and this case involve antitrust violations stemming from a professional sports league's restrictions on game telecasts. And both involve complex economic modeling associated with sports media rights.

The NFL's *Daubert* motion against Plaintiffs' expert Dr. Zona amply demonstrates the overlap between Dr. Yurukoglu's work in *Laumann* and the issues in this case. Where Dr. Yurukoglu was involved in discussing confidential information related to economic modeling in sports media in *Laumann*, he offers opinions on the ***same topic*** in this case. The NFL's *Daubert* motion relies extensively on Dr. Yurukoglu's analysis and cites to *Laumann* repeatedly throughout. *See generally* Dkt. No. 678-1. Similarly, the NFL's opposition to class certification cites to both the *Laumann* case and Dr. Yurukoglu's opinions in the same paragraph. *See* Dkt. No. 686 at 13. While the models are different between

11

those used in *Laumann* and in this case, the NFL's repeated citation to *Laumann* indicates its view that Dr. Yurokoglu's work in *Laumann* is relevant to his work here. In any event, Dr. Yurukoglu was exposed to attorney work product in *Laumann* regarding the relative strengths and weaknesses of various approaches to model sports media rights that undoubtedly have relevance in this case. It is unquestionable that Dr. Yurukoglu's confidential work in *Laumann* is "sufficiently related to the instant litigation to merit disqualification." *Rhodes*, 558 F. Supp. 2d at 667.

## III. Policy Considerations Support Dr. Yurukoglu's Disqualification.

Given that a confidential relationship existed with Dr. Yurukoglu and he was privy to confidential information relevant to issues in the present case, the Court must balance policy considerations, such as prejudice to the parties and the integrity of the legal system. Those considerations balance in favor of Plaintiffs.

Plaintiffs are clearly prejudiced by the NFL's use of Dr. Yurukoglu in this litigation because of the risk of him disclosing confidential information to the NFL and its counsel in this litigation. The NFL would be able to obtain information that it otherwise would not be able to gain through the normal course of discovery. And while the NFL and Dr. Yurukoglu might claim that he will not disclose confidential information, he still risks unwittingly disclosing that information in his work for the NFL—a risk that the law forecloses. *See Bell*, 2019 WL 1590472, at *7 (collecting cases); *Alien Tech Corp. v. Intermec, Inc.*, 2007 WL 4261972, at *2 (D.N.D. Nov. 30, 2017); *Calendar Research*, 2017 WL 10378337, at *3 ("Even if Dr. Lee does not intend to use work for which she was retained by Calendar Research in her current engagement on StubHub's behalf, inevitably [] her prior knowledge could be 'unwittingly' used on StubHub's behalf."). That is especially the case given the relevance of issues Dr. Yurukoglu worked on in *Laumann* to the claims and defenses in this action and given that some of the NFL's counsel also represented defendants in *Laumann*. In fact, that risk is heightened where Dr. Yurukoglu

12

admitted he has talked to the NFL's counsel about his engagement in *Laumann*. *See* Diver Decl. Ex. 9 at 23.8-23.10.

Plaintiffs are further prejudiced by the limitations they would face in cross-examining Dr. Yurukoglu. Attorneys from Langer Grogan & Diver are privy to confidential information from their work with Dr. Yurukoglu in *Laumann* that could be useful in testing his opinions in this case, such as statements made in e-mail correspondence or oral conversations. *See* Diver Decl. ¶ 11. But how could Plaintiffs' counsel cross-examine Dr. Yurukoglu in this case without likewise relying on confidential information from *Laumann*? In short: they can't. For example, the NFL relies heavily on the exclusion of the model in *Laumann* in opposing class certification and to exclude the opinions of Plaintiffs' expert Dr. Zona. Dr. Yurukoglu's opinions about the merits of the model in *Laumann*, which he helped to create, and of the court's decision to exclude that model, are highly relevant. But Plaintiffs would be hamstrung in their ability to question him on those issues given Langer Grogan & Diver's awareness of what Dr. Yurukoglu has stated about the model in *Laumann* and the court's decision regarding it. The mere fact that Dr. Yurukoglu was involved in that model suggests that his view and that of the *Laumann* court are not fully aligned. But Plaintiffs could not explore that tension without relying on confidential information.

As for the NFL, the need to obtain a new expert is insufficient to show prejudice. *See Bell*, 2019 WL 1590472, at *7 ("BNR has not established how it would be prejudiced by the exclusion beyond the need to obtain a new expert."). There is more than enough time for the NFL to retain a new expert given that trial in this action is scheduled for February 2024—more than a year from now. *See* Dkt. No. 434 at 5; *see also Broadcom*, 2010 WL 11465478, at *4 ("[T]he retention of another expert is unlikely to disrupt the case schedule."). Moreover, expert discovery is far from complete as the case is only at the class certification stage. The case schedule provides time after class certification for merits expert discovery,

11125869v1/014918

with the NFL's expert reports due no earlier than April 2023 and expert discovery closing more than six months from now. *See id.*

Any potential prejudice to the NFL is also minimized given the NFL's awareness of Dr. Yurukoglu's work in *Laumann* and failure to exercise reasonable diligence in clearing the conflict. *Cf. Nijjar v. General Star Indemnity Co.*, 2014 WL 271630, at *2-3 (C.D. Cal. Jan. 23, 2014). The NFL created the situation that it finds itself in: the NFL's counsel was fully aware of Dr. Yurukoglu's role in *Laumann* and should have been aware of the potential conflict of interest. The NFL knew what it was doing in retaining him and proceeded nevertheless. That the NFL may need to find a new expert because of its own failings is hardly prejudicial.

The integrity of the legal process also compels disqualification. If Dr. Yurukoglu remains in this case, he will be operating continuously under the cloud of a conflict of interest that is detrimental to the integrity of the legal process. *See Pellerin v. Honeywell Int'l Inc.*, 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012) ("[T]he human brain does not compartmentalize information in that manner."). Integrity requires holding experts to be held to their confidentiality obligations and disincentivize them from selling their opinions to the highest bidder. *Bell*, 2019 WL 1590472, at *8; *M&T Bank v. Worldwide Supply LLC*, 2022 WL 16743689, at *5 (D.N.J. June 28, 2022). This is especially the case where Dr. Yurukoglu works for an expert consulting firm, Compass Lexecon, known for having "relaxed its conflict of interest rules" such that it has been known to—sometimes without prior notice to the parties in a case—advise both sides in a case. Jesse Eisinger & Justin Elliott, "*These Professors Make More Than a Thousand Bucks an Hour Peddling Mega-Mergers*, ProPublica (Nov. 16, 2016), https://www.propublica.org/article/these-professors-make-more-than-thousand-bucks-hour-peddling-mega-mergers.

While the integrity of the legal process cautions against "unscrupulous attorneys [that] may attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert

14

11125869v1/014918

assistance," this is not that case. *Broadcom*, 2010 WL 11465478, at *5. Langer Grogan & Diver paid Dr. Yurukoglu nearly $40,000 over the course of multiple years to perform services in the *Laumann* case. And there is no evidence that Langer Grogan & Diver retained Dr. Yurukoglu or any other expert in *Laumann* purely to preempt future adversaries from obtaining expert assistance.

Dr. Yurukoglu's involvement here "does not pass the smell test" and is "analogous to an expert switching sides mid-litigation." *Thompson*, 2012 WL 3870563, at *7. Plaintiffs' co-lead counsel in this case have over 100 years combined of experience practicing law and have never encountered an expert that has switched sides in the manner that Dr. Yurukoglu has in this case. Given his confidential work in *Laumann*, he should be disqualified.

## IV.   The Court Should Compel the Production of Communications Between Dr. Yurkoglu and the NFL.

Not only is there a substantial risk that Dr. Yurukoglu may share confidential information from his work on *Laumann* with the NFL and its counsel, but the record indicates that such disclosure may have already happened. Dr. Yurukoglu acknowledged at his deposition that he has discussed his prior work on *Laumann* with the NFL's attorneys. *See* Diver Decl. Ex. 9 at 23.8-23.10. When Plaintiffs attempted to follow-up on that admission, the NFL's counsel repeatedly instructed Dr. Yurukoglu not to answer the question. *See id.* at 23.11-23.25, 24.11-25.2. Combined with the NFL's repeated references to both *Laumann* and Dr. Yurukoglu in its *Daubert* motion against Dr. Zona and its opposition to class certification, it appears likely that confidential information has been improperly shared with the NFL and its counsel. In fact, it would appear—especially given that the NFL's counsel appeared in *Laumann*—that Dr. Yurukoglu's retention was aimed at acquiring that information and would constitute serious ethical breaches. *See Campbell*, 619 F.2d at 27 (holding that contact with expert retained by the other side was a "flagrant abuse" of discovery rules); *Godby v. U.S. Dist. Ct. for Dist. of*

*Ariz.*, 229 F.3d 1157, 2000 WL 975184 (9th Cir. 2000); *Erickson v. Newmar Corp.*, 87 F.3d 298, 301-02 (9th Cir. 1996).

While actual disclosure is ***not*** required to disqualify Dr. Yurukoglu from this case, it may necessitate going a step further to disqualify the NFL's counsel as well. *See Kane v. Chobani, Inc.*, 2013 WL 3991107, at *7-15 (N.D. Cal. Aug. 2, 2013); *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 579-85 (D.N.J. 1994); *Grant Heilman Photography, Inc. v. McGraw-Hill Global Education Holdings, LLC*, 2018 WL 2065060, at *13 (E.D. Pa. 2018); *see also Shadow Traffic Network v. Superior Court*, 24 Cal. Rptr. 693, 699-705 (Ct. App. 1994). Under these extraordinary circumstances, the Court should require the NFL to produce all of its communications with Dr. Yurukoglu since the time he was retained. Moreover, the Court should compel the NFL to produce Dr. Yurukoglu for a second deposition limited to his communications with the NFL and its counsel regarding his engagement in the *Laumann* case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court disqualify Dr. Ali Yurukoglu as an expert in this case and, therefore, strike his opinions from the record. The Court should also prohibit the NFL and any of its experts from relying on the work provided by Dr. Yurukoglu. Given the need to examine whether confidential information was actually shared with the NFL and its counsel, the Court should also compel the NFL to produce all of its communications with Dr. Yurukoglu and require the NFL to produce Dr. Yurukoglu for a deposition on the topics raised within this motion.

Dated:  December 2, 2022          Respectfully submitted,

By:   */s/ Edward Diver*
                    Edward Diver

16

11125869v1/014918

| | |
|---|---|
| 1 | Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com |
| 2 | SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400 |
| 3 | Los Angeles, CA 90067<br>Tel: (310) 789-3100 |
| 4 | Fax: (310) 789-3150 |
| 5 | Arun Subramanian (*Pro Hac Vice*) |
| 6 | asubramanian@susmangodfrey.com<br>William C. Carmody (*Pro Hac Vice*) |
| 7 | bcarmody@susmangodfrey.com<br>Seth Ard (*Pro Hac Vice*) |
| 8 | sard@susmangodfrey.com<br>Tyler Finn (*Pro Hac Vice*) |
| 9 | tfinn@susmangodfrey.com<br>SUSMAN GODFREY L.L.P |
| 10 | 1301 Avenue of the Americas, 32nd Fl.<br>New York, NY 10019 |
| 11 | Tel: (212) 336-8330<br>Fax: (212) 336-8340 |
| 12 | Ian M. Gore (*Pro Hac Vice*) |
| 13 | igore@susmangodfrey.com<br>SUSMAN GODFREY L.L.P. |
| 14 | 1201 Third Avenue, Suite 3800<br>Seattle, WA 98101 |
| 15 | Tel: (206) 505-3841<br>Fax: (206) 516-3883 |
| 16 | Scott Martin (*Pro Hac Vice*) |
| 17 | smartin@hausfeld.com<br>HAUSFELD LLP |
| 18 | 33 Whitehall Street, 14th Floor<br>New York, NY 10004 |
| 19 | Tel: (646) 357-1100<br>Fax: (212) 202-4322 |
| 20 | Christopher L. Lebsock (184546) |
| 21 | clebsock@hausfled.com<br>HAUSFELD LLP |
| 22 | 600 Montgomery St., Suite 3200<br>San Francisco, CA 94111 |
| 23 | Tel: (415) 633-1908<br>Fax: (415) 633-4980 |
| 24 | Sathya S. Gosselin (269171)<br>sgosselin@hausfeld.com |
| 25 | Farhad Mirzadeh (*Pro Hac Vice*)<br>fmirzadeh@hausfeld.com |
| 26 | HAUSFELD LLP<br>888 16th Street, N.W., Suite 300 |
| 27 | Washington, DC 20006<br>Tel: (202) 540-7200 |
| 28 | Fax: (202) 540-7201 |

11125869v1/014918

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*