Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (JEMx) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **DECLARATION OF EDWARD DIVER IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY NFL EXPERT DR. ALI YURUKOGLU**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: January 27, 2023<br>TIME: 1:30 p.m.<br>COURTROOM:<br>　　First Street Courthouse<br>　　350 West 1st Street<br>　　Courtroom 6A<br>　　Los Angeles, CA 90012 |

I, Edward Diver, hereby declare:

I am a partner in the law firm Langer Grogan & Diver P.C. and am admitted *pro hac vice* to practice before the United States District Court for the Central District of California in this action. I submit this declaration in support of Plaintiffs' Motion to Disqualify NFL Expert Dr. Ali Yurukoglu. I am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

1. I served as lead counsel in two class action antitrust cases in the U.S. District Court for the Southern District of New York against the National Hockey League and Major League Baseball: *Laumann v. National Hockey League*, No. 1:12-cv-01817-SAS (S.D.N.Y.); and *Garber v. Office of the Commissioner of Baseball*, No. 1:12-cv-03704-VEC (S.D.N.Y.). Those cases were consolidated, and I refer to them hereafter as "*Laumann.*" Howard Langer of our firm, who was also one of the lead attorneys in those cases, has also been appointed co-lead counsel for Plaintiffs in this action.

2. Langer Grogan & Diver retained Dr. Ali Yurukoglu as a consulting expert for *Laumann* in May 2012, only a few weeks after the complaint in *Laumann* was filed and shortly before the complaint in *Garber* was filed. Langer Grogan & Diver agreed to compensate Dr. Yurukoglu at $600 per hour for his services in *Laumann.* Attached hereto as Exhibit 1 is a true and correct copy of Langer Grogan & Diver's retention agreement with Dr. Yurukoglu.

3. Upon the retention of a consulting expert in any case, it is Langer Grogan & Diver's practice to advise the expert that their work should be kept confidential. I have no reason to believe that did not happen when Dr. Yurukoglu was retained in *Laumann*.

4. After the motion to dismiss in *Laumann* was denied, discovery commenced. Around that time, I and the other economists retained by my firm conferred with Dr. Yurukoglu on the data that would be necessary to support

2

1. Plaintiffs' economic modeling and on its basic design. I shared my ideas regarding these basic strategic decisions with Dr. Yurukoglu and sought Dr. Yurukoglu's feedback and additional ideas regarding them.

5. When the data began to be produced in *Laumann* in 2013, Dr. Yurukoglu also signed onto the protective order in *Laumann*. Attached hereto as Exhibit 2 are true and correct copies of Dr. Yurukoglu's signed agreements to comply with the protective order in *Laumann*.

6. Over the course of his consulting work in *Laumann*, Dr. Yurukoglu was a regular participant on calls addressing economic modeling issues and strategies throughout the period leading up to the class certification hearing. I was on several of those calls, as were other attorneys from Langer Grogan & Diver. During those discussions, I and other attorneys from our firm shared our thoughts regarding the economic modeling, the strengths and weaknesses of the defendants' arguments, and litigation strategy. Dr. Yurukoglu also assisted in coding portions of the plaintiffs' damages models in *Laumann*. In sum, Dr. Yurukoglu had repeated contact with Langer Grogan & Diver attorneys and was exposed to their mental processes and strategic decision making.

7. At one point during *Laumann*, plaintiffs' counsel—including Langer Grogan & Diver—elected to switch teams handling the economic modeling for plaintiffs. Despite that change, Dr. Yurukoglu remained a consulting expert for the plaintiffs' team. He was one of only two economists that worked with plaintiffs throughout the entirety of the *Laumann* case.

8. During his work consulting on *Laumann*, Dr. Yurukoglu reviewed all the relevant expert reports as well as the *Daubert* motion seeking to exclude plaintiffs' expert Dr. Roger Noll. Dr. Yurukoglu participated in calls with me and other attorneys from Langer Grogan & Diver on how to respond to the *Daubert* motion and the arguments made by the defendants' experts.

9. During the *Laumann* case, I deposed the defendants' expert Dr. Ariel Pakes, a noted expert in econometric modelling, and dissertation advisor to Dr. Yurukoglu. In preparing for that deposition, I had a call with Dr. Yurukoglu to discuss my deposition outline and strategy.

10. Dr. Yurukoglu billed Langer Grogan & Diver $37,950 for his work on *Laumann*. Attached hereto as Exhibits 3 to 8 are true and correct copies of Dr. Yurukoglu's invoices for his work in *Laumann*. These invoices cover work from April 2012 to November 2014, reflecting the fact that Dr. Yurukoglu worked on *Laumann* for over two and a half years. The invoices further confirm that Dr. Yurukoglu was involved in "[o]utlining empirical strategy", "[d]ata request[s]", reviewing expert reports, and coding for plaintiffs' economic model. The invoices also confirm that Dr. Yurukoglu participated in multiple calls related to the *Laumann* case.

11. I also have access to correspondence with Dr. Yurukoglu during his consultation on *Laumann*. I believe statements were made in that correspondence and oral conversations that could be useful in cross-examining Dr. Yurukoglu on his opinions in this case. However, because that information is confidential and reflects attorney work product, I would not be able to do so without compromising the confidentiality of that information.

12. I have reviewed the deposition transcripts and interrogatory responses from the *Laumann* matter and can confirm that at least one of the named plaintiffs in that litigation, Vincent Birbiglia, is a class member in this matter as he purchased NFL Sunday Ticket from DirecTV during the class period.

13. On November 18, 2022, I deposed Dr. Yurukoglu regarding his opinions in this case. Attached hereto as Exhibit 9 is a true and correct copy of excerpts from the transcript of that deposition with redactions that were agreed to by the NFL applied.

14. Attached hereto as Exhibit 10 is a true and correct copy of transcript excerpts from the deposition of Jason Baker, dated July 15, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed December 2, 2022, in Philadelphia, Pennsylvania.

                                    */s/ Edward Diver*
                                      Edward Diver