# EXHIBIT 9
# to
# Declaration of
# Edward Diver

1                IN THE UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3     - - - - - - - - - - - - - -+
                                  |
4     IN RE: NATIONAL FOOTBALL    |
                                  |
5     LEAGUE SUNDAY TICKET        |    Case Number:
                                  |
6     ANTITRUST LITIGATION        |    ML 15-02668-PSG
                                  |    (JEMx)
7                                 |
                                  |
8     - - - - - - - - - - - - - -+
9

10

11

12     ████████████████████████

13                 Video Deposition of

14               Ali Yurukoglu, Ph.D.

15              Friday, November 18, 2022

16                    9:03 a.m.

17

18

19

20

21

22

23     Job No. 871716

24     Reported by:  Laurie Donovan, RPR, CRR, CLR

25

2

```
 1
 2
 3
 4
 5
 6                    November 18, 2022
 7                    9:03 a.m.
 8
 9        ███████████████    video Deposition of
10   Ali Yurukoglu, Ph.D., held in person, with
11   the witness and all parties participating in
12   person, pursuant to the Rules of the United
13   States District Court in the Central District
14   of California, subject to such stipulations
15   as may be recited herein or attached hereto,
16   before Laurie Donovan, a Registered
17   Professional Reporter and notary public of
18   the District of Columbia, who officiated in
19   administering the oath to the witness.
20
21
22
23
24
25
```

3

```
1              A P P E A R A N C E S
2    ON BEHALF OF THE PLAINTIFF:
3           Langer, Grogan & Diver, P.C.
4           1717 Arch Street
5           Suite 4020
6           Philadelphia, Pennsylvania 19103
7           (215)320-5660
8           By:  Edward (Ned) Diver, Esq.
9                ndiver@langergrogan.com
10               Kevin Trainer, Esq.
11               ktrainer@langergrogan.com
12   ON BEHALF OF THE DEFENDANT:
13          Wilkinson Stekloff D.C.
14          2001 M Street, NW
15          10th Floor
16          Washington, D.C.  20036
17          (202)847-4000
18          By:  Rakesh Kilaru, Esq.
19               rkilaru@wilkinsonstekloff.com
20               Caroline Li, Esq.
21               cli@wilkinsonstekloff.com
22   ALSO PRESENT:
23          Jason Levin, videographer
24
25
```

4

```
1                    EXAMINATION INDEX

2                                           PAGE

3    EXAMINATION BY MR. DIVER  . . . . . . . . . .   7

4

5

6

7

8

9

10

11                    E X H I B I T S

12   EXHIBIT     DESCRIPTION                    PAGE

13   Exhibit 1   Expert Report of Ali Yurukoglu,

14               Ph.D., November 4, 2022 . . . . .  11

15   Exhibit 2   Article entitled "Price

16               Discrimination and Vertical

17               Relationships in Multichannel

18               Television," dissertation for

19               Doctor of Philosophy for Ali

20               Yurukoglu, May 2009 . . . . . . .  29

21   Exhibit 3   Article entitled "The Welfare

22               Effects of Bundling in

23               Multichannel Television Markets"

24               by Crawford and Yurukoglu . . . .  66

25
```

5

1    (Exhibits continued)

2    EXHIBIT      DESCRIPTION                    PAGE

3    Exhibit 4    Article entitled "The Welfare

4                 Effects of Vertical Integration

5                 in Multichannel Television

6                 Markets" by Crawford, Lee,

7                 Whinston and Yurukoglu  . . . . .  90

8    Exhibit 5    Competitive Impact Statement in

9                 the case of USA, et al, vs.

10                Comcast, et al  . . . . . . . . . 111

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

```
-----------------------------------------------------
              P R O C E E D I N G S
                    9:03 a.m.
-----------------------------------------------------
```

1  -----------------------------------------------------

2               P R O C E E D I N G S

3                     9:03 a.m.

4  -----------------------------------------------------

5               THE VIDEOGRAPHER:  We are now on

6       the record.  My name is Jason Levin.  I'm the

7       videographer retained by Lexitas.  Today's

8       date is November 18, 2022, and the time is

9       approximately 9:03 a.m.

10              This deposition is being held at

11      the offices of Wilkinson Stekloff in

12      Washington, D.C. in the matter of NFL Sunday

13      Ticket Antitrust Litigation.

14              The deponent is Dr. Ali Yurukoglu.

15              Would all counsel please introduce

16      themselves for the record, and then the court

17      reporter, Laurie Donovan, will swear in the

18      witness.

19              MR. DIVER:  Edward Diver, Langer

20      Grogan & Diver, for the plaintiffs.

21              MR. TRAINER:  Kevin Trainer, Langer

22      Grogan & Diver, for plaintiffs.

23              MR. KILARU:  Rakesh Kilaru and

24      Caroline Li from Wilkinson Stekloff for the

25      defense.

7

```
1                    *  *  *  *  *
2    Whereupon,
3              ALI YURUKOGLU, Ph.D.,
4       having been first duly sworn, testified
5       upon his oath as follows:
6          EXAMINATION BY COUNSEL FOR PLAINTIFFS
7    BY MR. DIVER:
8       Q    Good morning, Dr. Yurukoglu.
9       A    Good morning.
10      Q    My first question is:  Have you been
11   deposed before?
12      A    No.
13      Q    No?  This is your first time.  Okay, so
14   you'll get the full spiel.
15           A couple things.  One is that it's
16   important that we make a nice clean record, so
17   your responses should be spoken and clear, as
18   should mine.
19           It's important that we not speak at the
20   same time as much as possible.  It's somewhat
21   inevitable, but we should try to keep in mind that
22   that's an important part of what we're doing
23   today.
24           I am known to speak quietly sometimes,
25   so if you don't hear something clearly that I've
```

16



19          Let's see.  Then I was hired by Langer

20   Grogan in MLB, NHL litigation about how to market

21   packages.

22          Q    And who did you represent in that

23   case -- or who did Langer Grogan represent?

24          A    Plaintiffs.

25



18



BY MR. DIVER:

     Q   Now, you understand that this case is

19

1    about out-of-market television packages in

2    professional sports?

3         A    Yes.

4         Q    And your representation in the MLB case

5    was about out-of-market television packages in

6    professional sports?

7         A    My representation?

8         Q    Your, your consultation.

9         A    Correct.

10        Q    And you don't think that's as relevant

11   as the other consultations you've listed?

12                   MR. KILARU:  Object to the form.

13                   THE WITNESS:  No, I think it's

14        relevant, yeah.  If I could rephrase this, I

15        would say media businesses and a law firm,

16        other law firms, so it wasn't that I was

17        avoiding that.

18   BY MR. DIVER:

19        Q    Now, in that case, what kind of advice

20   did you give?

21        A    It was advice related to economic

22   models.

23        Q    Did you advise on decisions about what

24   data was needed?

25        A    Data was -- okay.  So I need to remember

20

1    that, because it's been a while, and I should

2    mention this is before -- this is around --

3    correct me if I'm wrong -- 2014/2015, correct?

4         Q    That sounds correct, yeah.

5         A    So this is before I had tenure, and I

6    wanted -- I wasn't -- I was trying to -- any

7    consulting I did I was trying do in a very limited

8    role, because more focused on research.

9              If I remember correctly, a lot of the

10   data -- and I was also fairly new to this world.

11   A lot of the data requests in discovery was sort

12   of done by the time I was spending any meaningful

13   time.

14             That's my recollection.

15        Q    And did you advise them on model design?

16        A    It's -- in a broad way, "model design"

17   is a very broad way of putting it.  I think it's

18   fair to say at a high level on economic modeling,

19   yes.

20        Q    And did you advise them on how to

21   respond to defendants' challenges?

22        A    Again, I have to remember back exactly

23   how this went.  I think by the point -- by the

24   time we got to -- by the time the case got to

25   defendants' challenges, I was playing a very

21

1    limited role.  I remember looking at the

2    depositions of some of the defendants, but not --

3    I don't actually remember analyzing them for the

4    counsel.

5        Q    Do you recall preparing attorneys for

6    depositions of defendants' experts?

7        A    I don't -- actually, I don't remember

8    the calls.  It may have happened.  I'd have to

9    check my records.  Maybe I have it in my, my

10   billing records.  It doesn't -- the memory doesn't

11   pop up in my head.

12       Q    Do you recall who the defendants were in

13   that case?

14       A    There were a lot of them, so I think, I

15   think I recall some of them.

16       Q    Which ones do you recall?

17       A    I think the -- a bunch of MVPDs.  I

18   think there were RSNs, regional sports networks.

19   I think the leagues and the teams as well, maybe.

20   I remember like it wasn't exactly every team.

21       Q    Do you remember which MVPDs it was?

22       A    I thought -- I don't remember the exact

23   list.

24       Q    Do you remember that DirecTV was a

25   defendant?

22

```
 1              MR. KILARU:  Object to the form.
 2              THE WITNESS:  You know, I actually
 3        don't -- like I said, I don't remember the
 4        list.  I remember it being the larger MVPD,
 5        so DirecTV being one of the larger ones, it
 6        would be a good bet.
 7   BY MR. DIVER:
 8        Q    Do you remember that the class in that
 9   case included DirecTV subscribers?
10              MR. KILARU:  Object to the form.
11              THE WITNESS:  Again, I mean I
12        wouldn't have -- I wouldn't be able to say.
13        I wouldn't have bet my, my life on it, but it
14        seems like a pretty good bet, based on the
15        case.
16   BY MR. DIVER:
17        Q    And you understand that this case
18   involves DirecTV subscribers as plaintiffs?
19        A    Yes.
20        Q    Now, did you sign a protective order in
21   that case?
22        A    I, I don't remember.  I believe so.
23        Q    Did you receive confidential information
24   in that case?
25        A    Yes.
```

23

1      Q    Did you have confidential communications

2   with counsel for plaintiffs?

3      A    Yes.

4      Q    Did you reach out at any time to counsel

5   in that case for permission to assist defendants

6   in a case that's similar to this case?

7      A    No.

8      Q    Did you discuss your prior engagement

9   with defendants' counsel in this case?

10     A    Yes.

11     Q    Did you discuss that you had

12  confidential communications with the lawyers in

13  that case?

14              MR. KILARU:  Object to the extent

15        this is asking for questions about

16        communications with counsel.  Those are

17        shielded by the protective order.

18              You don't have to answer the

19        question.

20  BY MR. DIVER:

21     Q    Did you discuss that you had

22  confidential communications with other economists

23  in that case?

24              MR. KILARU:  Same objection.  You

25        don't have to answer.

24

BY MR. DIVER:

     Q    How much money did you bill in that
case; do you recall?

     A    I'd have to check my records.  Do you
want me to estimate or not?

     Q    Yes, please.

     A    I would estimate between $30,000 and
$40,000.

     Q    Okay.  Did you discuss --

     A    Over, over a few -- two years or so.

     Q    Did you discuss with counsel the, the
likelihood that many of the same class members in
that case are class members, potential class
members in this case?

               MR. KILARU:  Object on the grounds
          of protective order and to the form
          generally.

                    You don't have to answer that.

BY MR. DIVER:

     Q    Did you discuss obtaining any legal
opinion concerning whether you might have a
conflict in this case?

               MR. KILARU:  Are you asking him if
          he discussed with counsel?

               MR. DIVER:  Yes.

25

1                    MR. KILARU:  Same objection.  You

2        don't have to answer.

3    BY MR. DIVER:

4        Q    Did you obtain any legal opinion

5    concerning whether you might have a conflict?

6        A    Obtain legal opinion, does that mean --

7    I just want to make sure I've got all the terms

8    properly -- you mean did I hire a lawyer to --

9        Q    Did you or someone on your behalf hire a

10   lawyer to?

11       A    No.

12       Q    Is it your understanding that the

13   defendants hired you because of your role in the

14   prior case?

15                   MR. KILARU:  Object to the form.

16       Calls for speculation.

17   BY MR. DIVER:

18       Q    You can answer.

19       A    That's not my understanding.

20       Q    Is it your understanding that it played

21   any role at all?

22                   MR. KILARU:  Object to the form.

23                   THE WITNESS:  Is it my

24       understanding?  I mean I haven't -- the -- I

25       wouldn't be surprised if it had some role

26

1          just as relevant experience.

2     BY MR. DIVER:

3          Q     All right.  Let's move off of that topic

4     for a second.

5               What is your expertise as an economist?

6          A     Okay.  So my field is called industrial

7     organization.  There are various subfields of

8     economics.  There's macro-economics.  There's

9     labor economics.  Our field has this old-fashioned

10    name called industrial organization.

11         Q     And what is that?

12         A     I define it as the analysis of

13    competition.

14         Q     And how does that differ from macro and

15    micro, for instance, which also I assume involve

16    the analysis of competition?

17         A     Well, so it's a subfield of micro, so

18    you think there's economics, there's macro and

19    microeconomics.  Then under microeconomics, one of

20    the buckets would be industrial organization.  You

21    wouldn't actually call it part of macro.  I

22    wouldn't say macro studies the competition

23    specifically.

24         Q     Are you an expert or -- you used the

25    term "field."  Would you consider yourself to be

168

1

2

3

4

5     CERTIFICATE OF SHORTHAND REPORTER -- NOTARY PUBLIC

6              I, Laurie Donovan, Registered
         Professional Reporter, Certified Realtime
7        Reporter, and notary public for the District
         of Columbia, the officer before whom the
8        foregoing deposition was taken, do hereby
         certify that the foregoing transcript is a
9        true and correct record of the testimony
         given; that said testimony was taken by me
10       stenographically and thereafter reduced to
         typewriting under my supervision; and that I
11       am neither counsel for, related to, nor
         employed by any of the parties to this case
12       and have no interest, financial or otherwise,
         in its outcome.

13              IN WITNESS WHEREOF, I have hereunto
14       set my hand and affixed my notarial seal this
         20th day of November, 2022.

15

16       My commission expires:  July 14, 2025

17

18

19       _____

20       LAURIE DONOVAN
         NOTARY PUBLIC IN AND FOR
21       THE DISTRICT OF COLUMBIA

22

23

24

25