Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668−PSG (JEMx) |
| | **REPLY MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF DANIEL A. RASCHER** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |
| | Judge: Hon. Philip S. Gutierrez |
| | Date: January 27, 2023 |
| | Time: 1:30 p.m. |
| | Courtroom: First Street Courthouse |
| | 350 West 1st Street |
| | Courtroom 6A |
| | Los Angeles, CA 90012 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................ii

INTRODUCTION ................................................................................................. 1

ARGUMENT........................................................................................................2

   I.   Dr. Rascher Does Not Apply A Valid Economic Methodology......................2

   II.  Dr. Rascher's College Football Yardstick Is Not Reliable. .............................6

   III. The Remainder Of Dr. Rascher's Conclusions Should Be Excluded...........11

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Chapman v. Procter & Gamble Distrib., LLC,*
   766 F.3d 1296 (11th Cir. 2014) ........................................................................2

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) .........................................................................7

*Domingo ex rel. Domingo v. T.K.,*
   289 F.3d 600 (9th Cir. 2002) .....................................................................3, 4, 12

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ...................................................................1, 5, 12

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
   145 F. Supp. 3d 573 (D.S.C. 2015) .........................................................1, 5, 6, 11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.,*
   *(NO II) MDL 2502,*
   892 F.3d 624 (4th Cir. 2018) .........................................................................11

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) .........................................................................7

*In re Rubber Chemicals Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) .....................................................................7

*In Re: Zantac (Ranitidine) Prods. Liab. Litig.,*
   2022 WL 17480906 (S.D. Fla. Dec. 6, 2022).......................................................6

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999).................................................................................3, 12

*McDowell v. Brown,*
   392 F.3d 1283 (11th Cir. 2004) ......................................................................1, 3

*Monster Energy Co. v. Vital Pharms., Inc.*
   2022 WL 17218077 (C.D. Cal. Aug. 2, 2022) .....................................................7

*Rearden LLC v. Walt Disney Co.*,

   2021 WL 6882227 (N.D. Cal. July 12, 2021) ......................................................11

*Tawfilis v. Allergan, Inc.*,

   2017 WL 3084275 (C.D. Cal. June 26, 2017)..........................................2, 6, 7, 10

# INTRODUCTION

The problem with Dr. Rascher's work in this case is simple:  He jumped from the complaint to his conclusions.  Plaintiffs' Complaint mentions college football.  Dr. Rascher's reports imagine television channel grids for Sunday afternoon NFL games that look similar to channel grids for college football.  And so, say Plaintiffs and Dr. Rascher, the case is closed.

Rule 702 requires more.  The question is not whether an expert's conclusions fit the allegations in the complaint.  It is whether the expert has applied a rigorous scientific analysis to the facts.  Dr. Rascher fails that test.

Nothing in Plaintiffs' Opposition or Dr. Rascher's Rebuttal Report changes the reality that Dr. Rascher's methods violate Rule 702.  He continues to pile speculation on speculation in reaching conclusions supported by only "the expert's own assertions."  *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004).  He continues to ignore the facts and evidence, creating a clear "analytical gap" between his opinions and the record.  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025–26 (9th Cir. 2022).  And his shifting approach to the fundamental issue of economic injury is impermissibly outcome-driven.  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 145 F. Supp. 3d 573, 587 (D.S.C. 2015).

Plaintiffs cannot salvage Dr. Rascher's conclusions by arguing that he applied the generally-accepted "yardstick methodology" through his college football analogy.  Memorandum in Opposition to the NFL Defendants' Motion to Exclude the Opinions of Daniel A. Rascher, Dkt. 788, at 10 ("Rascher Opp.").  It is not enough for an expert to incant the name of a methodology.  The expert must also reliably apply it.  It is telling that Plaintiffs' primary argument on this front is *not* a reference to Dr. Rascher's analysis, but the misleading suggestion that the Ninth Circuit already blessed Dr. Rascher's chosen yardstick.  This attempted shortcut fails because the Ninth Circuit did nothing of the sort.  The court accepted Plaintiffs' contention that their theory of antitrust injury was sufficiently similar to the theory used in a decades-

1

1    old case involving an outdated broadcast regime for college football.  The court did

2    not reach the fact-specific holding that the two products are comparable in "product,

3    firm, and market," as required under the yardstick method.  *Tawfilis v. Allergan, Inc.*,

4    2017 WL 3084275, at *6 (C.D. Cal. June 26, 2017).

5        Dr. Rascher's actual "yardstick" analysis does not come close to meeting that

6    test.  Plaintiffs cite cases where an expert compared a product to the *identical product*

7    in a different geographic market.  Dr. Rascher is comparing two *fundamentally*

8    *different products*.  As we previously explained, those differences would result in

9    harm to many class members in a but-for world modeled off college football.  *See*

10    NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class

11    Certification, Dkt. 688-1, §§ I, II.B ("Class Cert Opp.").  Dr. Rascher seems to admit

12    this point by changing his yardstick to an amorphous subset of "top" college football

13    games.  This results-driven shift is a classic basis for exclusion under *Daubert*.

14        Ultimately, Plaintiffs' own words doom Dr. Rascher.  They applaud him for

15    offering methods that "can be employed flexibly no matter what the facts are

16    ultimately determined to be."  Rascher Opp. at 23.  That is in reality an admission

17    that Dr. Rascher's conclusions stem from a results-driven analysis with no grounding

18    in the record.  The court should exclude his testimony.

19                                **ARGUMENT**

20    **I.**      **Dr. Rascher Does Not Apply A Valid Economic Methodology.**

21        Neither Plaintiffs' Opposition nor Dr. Rascher's Rebuttal Report have cured

22    the pervasive methodological flaws in Dr. Rascher's analysis.  While these flaws

23    apply to all of Dr. Rascher's conclusions, he focuses almost all of his attention on the

24    College Football But-For World, so we do the same.

25        **Unsupported speculation.**  In assessing an expert's methodology, the court

26    "must determine whether the evidence is genuinely scientific, as distinct from being

27    unscientific speculation by a genuine scientist."  *Chapman v. Procter & Gamble*

28    *Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014).  ████████████████

2

1  ████████████████████████████████████████████████████████

2  ████████████.  *See* Reply Report of Daniel A. Rascher, Dkt. 774-03, Exs. 1, 2

3  ("Rascher Reply Report").  Putting it in Plaintiffs' phrasing, "a list of unexamined

4  'What if?' [charts] fails the most basic standards of Rule 702."  *See* Memorandum in

5  Support of Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel, Dkt. 773,

6  at 8 ("Israel Mot.").  Dr. Rascher's opinions need to be supported by valid *scientific*

7  *reasoning*, rather than just say-so, to be admissible.  *Kumho Tire Co., Ltd. v.*

8  *Carmichael*, 526 U.S. 137, 157 (1999); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d

9  600, 607 (9th Cir. 2002); *McDowell*, 392 F.3d at 1300.

10  That is where Dr. Rascher falls short.  His primary damages model, where ████

11  ██████████████████████████████████████████████, contemplates a

12  radically different universe than the one we live in.  Rascher Reply Report ¶¶ 50, 53.

13  As Dr. Rascher has admitted, ███████████████████████████████

14  ████████████████████████████████████████████, Kilaru Decl. Ex. 1

15  (Deposition of Dr. Daniel A. Rascher, at 96:14–97:17; 99:9–100:3; 211:7–212:20)

16  ("Rascher Tr."), and assess the interests, location, avidity, and price sensitivity of

17  their fans.  *See* Memorandum in Support of the NFL Defendants' Motion to Exclude

18  the Opinions of Daniel A. Rascher, Dkt. 705-1, at 13 ("Rascher Mot.").  The

19  distributors, in turn, would have to evaluate what Club rights they would want to buy

20  and at what price.  *Id.* at 13–14.

21  Dr. Rascher continues to ignore these factors.  Instead, he simply doubles down

22  on his conclusion, asserting (without support) that ████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████.  Rascher Reply Report

25  Exhibits 1, 2.  It is therefore odd that Dr. Rascher criticizes what he calls Dr. Israel's

26  opinion that careful top-down management ensures efficiency, *id.* ¶ 131.  His own

27  opinions amount to top-down speculation.

28

3

1    Dr. Rascher's response to critiques of his methodology highlights the problem.

2   Defendants' class certification brief identified many ways that Dr. Rascher's

3   hypothesis could harm consumers, including by █████████████████████████

4   ██████████████████████████████████.  Class Cert Opp. at 7–8.  Dr. Rascher

5   responds with ████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████████

7   █████████████████████████████████████████████████████████████████████

8   ████████████████████████  *See* Rascher Reply Report ¶¶ 53, 169.[1]  This pivot is part of

9   a theme:  Time after time in his reply report, Dr. Rascher references things that

10  █████████████████████████████████████████████████████████████████████

11  ████████████████████████████████.  *See id.* ¶ 119 (████████████████████

12  ███████████████████████); ¶ 120 (████████████████████████████); ¶ 145

13  (███████████████████████████████).  The answer to critiques of speculation

14  and say-so cannot be more speculation and say-so.  *See Domingo*, 289 F.3d at 607.

15      **Disregard for the factual record.**  Plaintiffs misrepresent the issue regarding

16  Dr. Rascher's consideration of the facts.  Defendants are not quibbling "with Dr.

17  Rascher's assumptions or factual foundations," Rascher Opp. at 8—we are showing

18  that Dr. Rascher does not appear to have considered the facts at all.  Plaintiffs' limited

19  efforts to suggest otherwise find no support in Dr. Rascher's work:

---

[1] Dr. Rascher's creation is also unprecedented and illogical.  He does not identify any distribution model with multiple independent broadcasts of the same sporting event (besides MLB and NBA, which Plaintiffs claim is not an appropriate benchmark, Rascher Opp. at 19).  His proposal also makes no sense, because the ████████████████████      Rascher Reply Report ¶ 53.  Dr. Rascher seems to suggest networks would purchase individual Clubs' out-of-market rights with almost no advance notice of where (if at all) they could distribute the games in a given week.  That suggestion refutes itself.

4

1    • Plaintiffs claim Dr. Rascher "account[s] for the SBA in developing the
2      college football but-for world," *id*. at 15, but he does not address the SBA
3      in his Reply Report;
4    • Plaintiffs assert "████████████████████████████████████
5      ████████████████████████████████████████████████████████" *id*. at
6      17, but that testimony does not appear in either of his reports;
7    • Plaintiffs claim Dr. Rascher "considered *and rejected*" ████████████
8      ████████████████████████████████████████████████████████,
9      *id*. at 18, but Dr. Rascher does not cite it anywhere in his report.[2]

10   There remains "simply too great an analytical gap between the data and the opinion
11   proffered," *Elosu*, 26 F.4th at 1026, requiring exclusion.

12   **Outcome-driven approach to economic injury.** Dr. Rascher also offers a
13   shifting and unprincipled understanding of economic injury, suggesting a results-
14   oriented analysis. *Lipitor*, 145 F. Supp. at 594.

15   Dr. Rascher begins with a flawed conception of economic injury. He suggests
16   ████████████████████████████████████████████████████████████
17   ████████████████████████████████████████████████. Rascher Reply
18   Report ¶ 157; *see* Rascher Opp. at 10. But Plaintiffs purport to represent *people*, not
19   purchase-years of Sunday Ticket. There is ████████████████████████
20   ████████████████████████████████████████. *See, e.g.*, Expert
21   Report of Mark A. Israel, Dkt. 688-2, ¶¶ 26, 29, 137–140 ("Israel Report").

22   Plaintiffs appear to agree. In critiquing Dr. Israel, Plaintiffs define the relevant
23   economic task as "determin[ing] what the price of that same access to all those games
24

25   _____
      [2] One piece of evidence Plaintiffs and Dr. Rascher do cite is a ████████████
26   ████████████████████████████████. Rascher Opp. at 17–18 (citing
      ████████). Far from confirming an analogy to college football, this
27   ████████████████████████████████████████████. Declaration Of
28   Edward Diver in Support of Plaintiffs' Opposition to the NFL Defendants' Motion
      to Exclude the Opinions of Daniel A. Rascher, Dkt. 761-1, Ex. 3.

                                          5

would have been in a world without the restraints at issue." Israel Mot. at 8. They add that it is necessary to "determine[e] how those games would be likely be offered, which requires an assessment of what purchases would be made market-wide." *Id.* Those determinations cannot be made without a "model of each class member's individual but-for choices," which Plaintiffs admit Dr. Rascher has not created. Rascher Opp. at 10. As we have demonstrated, under this standard, many consumers would be worse off in the college football but-for world depending on their tastes and preferences. *See* Class Cert Opp. at 7–8.

Dr. Rascher's apparent response to this point is disqualifying: He acknowledges that some class members may pay more in his but-for world to ensure access to specific games (or all games), but says those overpayments do not matter because the class members would be getting more football and thus more quality. Pause on what that means: In the same report, Dr. Rascher is claiming ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Rascher Reply Report ¶ 49. In short, lower prices from the NFL are good, but so are higher prices from an MVPD. This type of heads-I-win, tails-you-lose analysis cannot satisfy *Daubert*. *See Lipitor*, 145 F. Supp. at 594; *In Re: Zantac (Ranitidine) Products Liability Litigation*, 2022 WL 17480906, at *57 (S.D. Fla. Dec. 6, 2022).

## II.   Dr. Rascher's College Football Yardstick Is Not Reliable.

Saying that an expert has applied the yardstick method does not make it so. The court must consider "product, firm, and market comparability" in assessing the use of the yardstick. *Tawfilis*, 2017 WL 3084275, at *6.

A. Plaintiffs' first attempt to clear this hurdle does not involve Dr. Rascher's work at all. They instead claim that the Ninth Circuit "effectively adopted college

6

Case No. 2:15-ml-02668-PSG (JEMx)                     Reply Memorandum in Support of the NFL Defendants'
                                                       Motion to Exclude the Opinions of Daniel A. Rascher

football as an acceptable benchmark" when assessing the motion to dismiss.  Rascher Opp. at 2.  That argument misrepresents Plaintiffs' complaint and the Ninth Circuit's holding.  The Ninth Circuit concluded that Plaintiffs alleged a similar *type* of injury as an earlier college football case.  *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019) ("Because the complaint alleges that the interlocking agreements in this case involve the same sorts of restrictions that *NCAA* concluded constituted an injury to competition, we likewise conclude that the complaint plausibly alleges an injury to competition.").  Notably, that college football case involved an outdated broadcasting regime where "[a] team could appear on television only twice during a season," *id.* at 1146, which bears no resemblance to college football today, let alone NFL football.  The Ninth Circuit did not assess whether college football today is comparable to the NFL.  It is telling that Plaintiffs provide no citation for their assertion that the Ninth Circuit "recognizes major college football as providing an ideal natural benchmark against which Plaintiffs could test their legal claims."  Rascher Opp. at 12 (citing nothing).  None exists.

B.  Plaintiffs' defense of Dr. Rascher's yardstick likewise fails.  The cases they cite upholding the use of the yardstick method involved a comparison to *the same product* with different geography.  *See Tawfilis*, 2017 WL 3084275, at *5; *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 354 (N.D. Cal. 2005).[3]  As the NFL has already explained, *see* Rascher Mot. at 11–12, Dr. Rascher is comparing two fundamentally different products, rendering the methodology inapposite.

---

[3] Plaintiffs' other authorities do not support the more freewheeling yardstick method Dr. Rascher applies here.  In *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985), the expert did not use a yardstick.  And in *Monster Energy Co. v. Vital Pharms., Inc.*, the court determined that the yardstick analysis was admissible, but would not have been sufficient for an antitrust case because the expert had failed to conduct a "before and after" comparison or compare "sales performance with that of a comparable business."  2022 WL 17218077, at *19 (C.D. Cal. Aug. 2, 2022).

7

Case No. 2:15-ml-02668-PSG (JEMx)                Reply Memorandum in Support of the NFL Defendants'
                                                 Motion to Exclude the Opinions of Daniel A. Rascher

1    *First*, the █████████████████████████████████████████████████

2    █████.   Expert Report of Daniel A. Rascher, Dkt. 633-4, ¶¶ 247–48 ("Rascher

3    Report").  Plaintiffs claim, without citation, that this means "that NFL content is even

4    more likely to be on over-the-air networks."   Rascher Opp. at 15.   But Plaintiffs

5    ignore Dr. Rascher's admissions of ██████████████████████████████████████

6    ████████████████, Deposition of Daniel A. Rascher 172:23–174:22, and that

7    ████████████████████████████████████████████████, *id.* at

8    173:1–15.   As Dr. Rascher notes, ████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████.  Rascher Reply Report ¶ 58.  Real world examples

12   thus belie the claim that college football is a reasonable proxy for the but-for world.

13            *Second*, the SBA grants Clubs the statutory right to pool their media rights for

14   distribution  over  free  over-the-air  television.   Rascher Mot. at 12.   This further

15   distinction from college football would affect Club decisions in the but-for world.

16   Dr. Rascher's  failure  to  address  this  difference  in  his  Reply  Report  is  telling.

17   Plaintiffs respond with the puzzling assertion that the SBA's protections of certain

18   types of pooling are "directly related to *more* games appearing on free, over-the-air

19   channels" in the but-for world.  Rascher Opp. at 15 (emphasis in original).  But that

20   observation makes no sense, ████████████████████████████████████████

21   ████████████████████████████.  Rascher Reply Report ¶ 49.

22            *Third*, ████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████.

24   Rascher Mot. at 12.  For decades, every NFL fan has had ████████████████████

25   ████████████████████████████████████████.  *See, e.g.*,

26   Rascher Tr. at 194:23–199:10.  In response, Plaintiffs provide only the misleading

27   _____

28   [4] As with the NFL's other national broadcasts, the games are distributed over free
     OTA broadcast networks in local markets.

8

Case No. 2:15-ml-02668-PSG (JEMx)          Reply Memorandum in Support of the NFL Defendants'
                                           Motion to Exclude the Opinions of Daniel A. Rascher

non-sequitur that "the top-25 college football teams are shown on free over-the-air television approximately as often as any NFL team." Rascher Opp. at 16. That statement is misleading because Plaintiffs are ███████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████. Rascher Reply Report Ex. 4, at 51.[5] Plaintiffs' statement is a non-sequitur because the relevant inquiry is not the availability of some national broadcasts, but whether college football teams have the underlying media distribution priorities to be an appropriate predictor for a but-for world involving NFL Clubs.[6]

Finally, in college football only 5 major conferences negotiate media distribution, whereas the but-for world would involve 32 separate Clubs negotiating. 32 different distributors vying for the same slots will result in a different set of distribution options than 5. *See* Israel Report ¶¶ 158, 178, 199. Indeed, the only situation where around 30 different sports teams negotiate for distribution is MLB and NBA, which Plaintiffs say is *not* an appropriate yardstick. Rascher Opp. at 9.[7]

---

[5] ██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████. *See* Rascher Reply Report, Ex. 4.

[6] Plaintiffs' suggestion that consumers of free games are irrelevant is an incorrect non-sequitur. Rascher Opp. at 16 n.3. Those are consumers of products in Plaintiffs' relevant market, Class Cert Opp. at 10–12, and the availability of free local games is relevant to the many class members who stopped subscribing to Sunday Ticket during the class period.

[7] Another obvious difference is the absence of a bundled offering of Power 5 (or Top 25) college games, presumably because the broadcasts are with distributors with their own streaming services. Dr. Rascher now ██████████████████████████
████████████, Rascher Reply Report ¶ 184, ████████████████████████████████
██████████████████████████████████. Rascher Mot. at 15–16. Either way, ██████
████████████████████████████████████████████. *See id.*

9

Case No. 2:15-ml-02668-PSG (JEMx)                                    Reply Memorandum in Support of the NFL Defendants'
                                                                    Motion to Exclude the Opinions of Daniel A. Rascher

C.  Dr. Rascher and Plaintiffs take different approaches responding to these differences:   While Plaintiffs attempt to paper them over, Dr. Rascher instead *changes the yardstick*.  Initially, his yardstick was "major college" football, which included the entire Power 5 and was not restricted to Top 25 schools.  Rascher Report ¶ 114.

On reply, Dr. Rascher has manipulated his yardstick. ██████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████. Rascher Reply Report ¶ 108.

But he then claims that ████████████████████████████████████

████████████████████. *Id.* ¶ 109 (██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████).

It is readily apparent why Dr. Rascher has made this move.  Fans of Power 5 schools often must subscribe to premium cable tiers and/or streaming services to access all their team's games—meaning that prices are actually *higher* for many customers of the "yardstick" than for Sunday Ticket.  *See* Class Cert Opp. at 15, 18–19.  That, in turn, leaves many class members worse off in this but-for world, and they cannot be identified without an individualized analysis of their preferences and media access options—a point fatal to Plaintiffs' effort to obtain certification.  *Id.*

For purposes of this motion, however, the moving yardstick dooms Dr. Rascher's methodology.  A vaguely defined set of cherry-picked college football games does not constitute a product, firm, or market in any relevant sense.  *See Tawfilis*, 2017 WL 3084275, at *6.  To say that ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████ is to abuse the concept of a yardstick.  More importantly, Dr. Rascher's manipulation of the yardstick to fit Plaintiffs' theory of damages confirms he is applying a results-driven approach.  Here, *Lipitor* is

instructive.  The court excluded an expert whose "methodology and selection of relevant evidence changed based on the results they produced," and who "chose to ignore and exclude from his report his own analyses that did not support his ultimate opinions."  145 F. Supp. 3d at 594; *see In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig. (NO II) MDL 2502*, 892 F.3d 624, 635 (4th Cir. 2018) (affirming district court decision as "well-reasoned"); *see also Rearden LLC v. Walt Disney Co.*, 2021 WL 6882227, at *7 (N.D. Cal. July 12, 2021) ("An expert who "cherry-pick[s evidence] that support[s] his conclusion and reject[s] or ignore[s] the great weight of the evidence that contradicts his conclusions" should be excluded.).  So too here, requiring exclusion of Dr. Rascher's opinions.

## III.   The Remainder Of Dr. Rascher's Conclusions Should Be Excluded.

**Other but-for worlds.**  Dr. Rascher offers little analysis of his other but-for worlds (No DTV Exclusivity and No Pooling)—presumably because both are based on Dr. Zona's fundamentally flawed methods.  He also offers no justification for relying on econometric models with such elementary errors.  *See generally* Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona, Dkt. 680-1.

Indeed, Dr. Rascher barely mentions . Rascher Reply Report ¶ 175 (                          ). But Dr. Rascher does not identify other examples of similar discounting with other out-of-market packages.                         , Rascher Tr. 126:16–127:20, and now                         . Rascher Reply Report ¶ 174.  Here too, there is an "analytical gap between the [evidence] and the opinion proffered."  *Elosu*, 26 F.4th at 1026.

Dr. Rascher's treatment of the No Pooling but-for world is even more remarkable. He first admitted it was based on a scenario, modeled by Dr. Zona, where DirecTV moves Sunday Ticket to a basic tier. Rascher Report ¶ 30. He now, without explanation, says that ████████████████████████████████████ ████████████████████████████████████████████ Rascher Reply Report ¶ 177, and then ██████████████████████████████████████████ █████. *Compare* Rascher Report ¶ 283 *to* Rascher Reply Report ¶ 179. In short, Dr. Rascher has substituted a model based on bad math for a conclusion based on thin air, ██████████████████████████████████████. The law requires exclusion of such an ungrounded opinion. *Kumho Tire*, 526 U.S. at 157.

**Commercial Class.** Plaintiffs devote one paragraph of their brief to the commercial class, Rascher Opp. at 24–25, and Dr. Rascher mentions ████████ ██████████████████████████████████████████, Rascher Reply Report ¶¶ 57–59. This summary treatment tells the whole story. Unsurprisingly, nothing in those four paragraphs saves Dr. Rascher's methodology. He relies on *assertions* that the commercial class is identical to the residential class, even though the depositions and evidence from Plaintiffs' class representatives reveal significant differences. ████████████████████████████████████████████████████ ███████████████. *See* Rascher Opp. at 25; Rascher Reply Report ¶ 59. But Plaintiffs are the ones with the burden, and Dr. Rascher's ungrounded assertions do not meet it. *Domingo*, 289 F.3d at 607 (unaddressed in Plaintiffs' brief).

## CONCLUSION

For the foregoing reasons, along with those set forth in the Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Daniel A. Rascher, Dkt. 705-1, Dr. Rascher's opinions should be excluded under Rule 702.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  December 16, 2022

Respectfully submitted.

/s/ *Rakesh N. Kilaru*

Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football*
*League, NFL Enterprises LLC, and the*
*Individual NFL Clubs*

13