Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>———————————————<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF MARK A. ISRAEL**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Date: January 27, 2023<br>Time: 1:30 p.m.<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

1

2

# **<u>TABLE OF CONTENTS</u>**

3

4

INTRODUCTION ...................................................................................................1

ARGUMENT..........................................................................................................2

I.      Plaintiffs Do Not Challenge the Relevance or Reliability of the Vast
Majority of Dr. Israel's Report.......................................................................2

II.    Dr. Israel's Opinions Regarding the Incompleteness of Plaintiffs' But-
For Worlds Are Both Reliable and Relevant. ..................................................4

      A.     Dr. Israel demonstrates that Plaintiffs' experts failed to analyze
            many critical features of their but-for worlds. .......................................4

      B.     Plaintiffs fail to demonstrate that any specific analysis offered
            by Dr. Israel is either speculative or irrelevant. ...................................9

III.   Dr. Israel's Opinions Regarding the MVPD Markets Are Relevant and
Reliable..........................................................................................................13

IV.   Dr. Israel's Opinions Regarding the Complementarity of NFL Games
are Relevant and Reliable..............................................................................14

CONCLUSION.....................................................................................................16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017)..........................................................4

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) ............................................................................2, 16

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 5 (S.D.N.Y. 2020)......................................................................5, 8, 13

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ...............................................................................7

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ....................................................................................9

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ................................................................................................7

*City of Tuscaloosa v. Harcros Chems., Inc.*,
  158 F.3d 548 (11th Cir. 1998)................................................................................3

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*,
  80 F. Supp. 3d 1180 (E.D. Wash. 2015) ...........................................................7, 12

*In re Electronic Books Antitrust Litig.*,
  2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) .....................................................12

*In re Lamictal Direct Purchaser Antitrust Litig.*,
  957 F.3d 184 (3d Cir. 2020) ...................................................................................4

*Laumann v. National Hockey League*,
  105 F. Supp. 3d 384 (S.D.N.Y. 2015)...................................................................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................................3, 5

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014)................................................................................2

ii

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .................................................................................. 8

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) ............................................................................. 13

*In re Niaspan Antitrust Litig.*,
   464 F. Supp. 3d 678 (E.D. Pa. 2020)..................................................................... 4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc)........................................................ 2, 3, 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   934 F.3d 619 (D.C. Cir. 2019)............................................................................... 9

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016).............................................................................. 7

*Scripps Health v. nThrive Revenue Sys., LLC*,
   2021 WL 3372835 (S.D. Cal. May 10, 2021) ................................................. 7, 12

*Staley v. Gilead Scis., Inc.*,
   2020 WL 5507555 (N.D. Cal. July 29, 2020) ...................................................... 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009) ........................................................................ 10

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................................................ 13

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018)............................................................................ 8, 10

*Turner v. ThyssenKrupp Materials, N.A.*,
   492 F. Supp. 3d 1045 (C.D. Cal. 2020)............................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ......................................................................................... 4, 8

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003)........................................................................... 13

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   268 F.R.D. 604 (N.D. Cal. 2010) ........................................................................ 10

iii

**Rules and Statutes**

Fed. R. Evid. 702 ........................................................................................ 2

Fed. R. Evid. 703 ........................................................................................ 9

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law ¶ 565a ......................................... 15

1

**INTRODUCTION**

2   Plaintiffs and their experts offer three but-for worlds in which they imagine

3   alternative distribution models for NFL telecasts. Each represents a profound shift

4   from the current distribution model, which each week provides every NFL fan access

5   to free, over-the-air broadcasts of multiple Sunday afternoon games, including all

6   games of their local team(s). Plaintiffs acknowledge that for each of their but-for

7   worlds, they must determine how Sunday afternoon games "would [] likely be

8   offered"—*i.e.*, what products would replace consumers' current options and at what

9   price. *See* Memorandum in Support of the Plaintiffs' Motion to Exclude the Opinions

10  of Mark A. Israel, Dkt. 745-1, at 8 ("Israel Motion"). But their experts fail to do so.

11  Dr. Mark Israel's report highlights these flaws. Dr. Israel analyzed the

12  complexities of Plaintiffs' but-for worlds and the many questions that Plaintiffs'

13  experts left unanswered. His rigorous analyses demonstrate that critical issues in this

14  case—including antitrust impact and damages—cannot be decided for every member

15  of the proposed class using only common methods. ███████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████████████████████

22  Plaintiffs challenge only a narrow portion of Dr. Israel's report. They do not

23  challenge Dr. Israel's credentials. Nor do they dispute his opinions demonstrating

24  the inherently individualized nature of the injury and damages questions in this case.

25  Nor do they challenge his opinions on the unreliability of their experts' methods. As

26  we explain below, the minor challenges that Plaintiffs do raise are meritless.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ARGUMENT**

Federal Rule of Evidence 702 requires that "[e]xpert testimony . . . be both relevant and reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (alterations in original).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry"—here, whether Plaintiffs can show by a preponderance of the evidence that Rule 23's requirements for class certification are met. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013); *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc). Similarly, expert testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car*, 738 F.3d at 969.

In short, Dr. Israel's opinions are subject to—and meet—the same standard to which Defendants seek to hold the opinions of Plaintiffs' experts. *See* Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Daniel A. Rascher, Dkt. 684-1, at 1, 8; Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona, Dkt. 680-1, at 1, 8; Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Sarah Butler, Dkt. 676-1, at 1, 6-7.

## I.     **Plaintiffs Do Not Challenge the Relevance or Reliability of the Vast Majority of Dr. Israel's Report.**

Dr. Israel's report demonstrates that the transformations contemplated in Plaintiffs' but-for worlds would ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ He further explains how these transformations would have widely varying effects on different members of the proposed class, with the result that Plaintiffs cannot use common evidence to resolve

2

two key elements of their claims—antitrust injury and damages.  *See id.*; *see also Olean*, 31 F.4th at 665-66.

Applying his unquestioned expertise, Dr. Israel shows that Plaintiffs fail in three distinct ways to establish that they can prove antitrust injury and damages through common methods.  First, Plaintiffs' methods are unreliable for the reasons addressed in Defendants' expert reports and *Daubert* motions.  *E.g.*, Israel Report ¶¶ 118-125; NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Dkt. 688-1, at 13-14 ("Class Cert. Opp.").  Second, Plaintiffs fail to recognize that identifying the many *uninjured* members of the proposed class would require individual analysis.  *E.g.*, Israel Report ¶¶ 75-77, 111-113, 130; Class Cert. Opp. at 14-17.  Third, Plaintiffs' experts fail to consider critical aspects of the but-for world, including key differences among class members that affect whether they suffered antitrust injury and damages.  *E.g.*, Israel Report ¶¶ 195-210, 227, 247; Class Cert. Opp. at 15-18.

Plaintiffs do not challenge Dr. Israel's opinions as to the first and second of these points, which relate to the application of Dr. Israel's "Reliability" and "Commonality" Principles.  As detailed in the NFL Defendants' Opposition to Plaintiffs' Motion for Class Certification, these issues alone bar certification of any class.  Class Cert. Opp. at 13-20.

Instead, Plaintiffs offer marginal and meritless critiques of three of Dr. Israel's opinions regarding (i) the incompleteness of Plaintiffs' but-for worlds; (ii) competition in MVPD markets in those but-for worlds; and (iii) complementarities between NFL games.  Plaintiffs' critiques say nothing at all about the overwhelming majority of Dr. Israel's opinions—and thus offer no basis for them to be excluded.  *See, e.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564 (11th Cir. 1998) ("[T]he district court abused its discretion in excluding admissible portions of [an expert's] testimony by ruling that [his] testimony in its entirety was inadmissible."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*,

3

1    299 F. Supp. 3d 430, 469 (S.D.N.Y. 2018) ("[W]e also disaggregate an expert's

2    opinions before assessing their [admissibility]."); *see also, e.g.*, *In re 5-Hour Energy*

3    *Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *4 (C.D. Cal. June 7, 2017)

4    (Gutierrez, J.) (addressing *Daubert* challenge on opinion-by-opinion basis).

5    **II.    Dr. Israel's Opinions Regarding the Incompleteness of Plaintiffs' But-**

6    **For Worlds Are Both Reliable and Relevant.**

7    Plaintiffs assert two challenges to Dr. Israel's incompleteness analysis.  First,

8    they contend that such analysis is not a necessary part of an expert opinion.  They

9    also claim that certain elements of Dr. Israel's analysis are speculative.  They are

10   wrong on both counts.

11   **A.    Dr. Israel demonstrates that Plaintiffs' experts failed to analyze**

12   **many critical features of their but-for worlds.**

13   Plaintiffs' primary *Daubert* argument is that Dr. Israel was wrong in asserting

14   that a reliable but-for world must account for changes materially affecting class

15   members, ██████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ██████████████████████████████████████   Plaintiffs assert that this

18   "Completeness Principle" "demands more than the law" requires.  Israel Motion at 3.

19   That assertion ignores Plaintiffs' burden under Rule 23 to demonstrate that

20   common questions (those where "the same evidence will suffice for each member")

21   predominate over individual questions (those where the "evidence . . . varies from

22   member to member").  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

23   Carrying that burden requires assessment of "what each [market participant] would

24   or would not have possibly done in the but-for world."  *In re Lamictal Direct*

25   *Purchaser Antitrust Litig.*, 957 F.3d 184, 193 (3d Cir. 2020) (vacating certification

26   where district court "refused" to conduct that "rigorous analysis"); *see also, e.g.*, *In*

27   *re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 716 (E.D. Pa. 2020) (requiring

28

1   "assess[ment] [of] whether a purchaser *would have* purchased [an alternative

2   product] had that option been available" in the but-for world).

3       In *LIBOR*, for example, the district court excluded expert testimony that

4   "fail[ed] to account for certain significant aspects of the but-for world" (what

5   Plaintiffs did here) and accepted expert testimony identifying these deficiencies

6   (what Dr. Israel did here). *See* 299 F. Supp. 3d at 558-60. Indeed, the *LIBOR* court

7   emphasized that "[t]he but-for world . . . must be constructed in a reasonable way

8   such that a reasonable approximation . . . may be made"; "[a]n oversimplification

9   that fails to consider important aspects of the but-for world" does not carry that

10  burden. *Id.* at 560.

11      Consistent with these precedents, Dr. Israel's Completeness Principle

12  recognizes ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████    Those opinions, far from being irrelevant, are at the heart of the class

18  certification inquiry and are "quintessential class certification rebuttal testimony." *In*

19  *re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 32 (S.D.N.Y. 2020). Courts

20  routinely deny *Daubert* motions directed at expert opinions concluding that injury

21  cannot be assessed without individualized inquiry. *See id.* at 32-33 (collecting cases).

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ██████████████████████████████████    That work is particularly important here

26  because this is not a case where the same product set would be available in the but-

27  for world at a different price. Rascher Report ¶¶ 28-29, 104.

28

Plaintiffs envision worlds in which the entire distribution model for NFL telecasts would be fundamentally reorganized, resulting in a different set of potential product options available to consumers. ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ "determining how those games would [] likely be offered" in the but-for world by the myriad existing and potential distribution partners, including "what the price of . . . access" would be and how quality would be affected. Israel Motion at 8.

That determination is a necessary predicate to assessing how an individual class member would be affected in the but-for world, *i.e.*, in assessing what resulting options would be available to that class member, at what quality, for what price, and ultimately determining what choices the class member would have made. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

Plaintiffs are thus wrong in asserting that analyzing injury and damages "does not require the assessment of individual and hypothetical purchases by any particular class member." Israel Motion at 8. Without determining what, exactly, she would have purchased in the but-for world, there can be no comparison between how much a class member actually paid for access to a high-quality package of all Sunday afternoon games and how much she would have paid and what quality she would have received in the but-for world. That is the core question of antitrust injury. *See, e.g.*, *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999) ("There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct."); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 336-37 (1990) (plaintiff suffered no antitrust injury because it "was *benefited* rather than harmed" if its allegations were true). Notwithstanding their arguments about Dr. Israel, Plaintiffs ultimately acknowledge this point, stating that a core aspect of the assessment of injury and damages in this case would be "to determine what the price of . . . access to *all [Sunday afternoon] games* would have been in a world without the restraints at issue," including "determining how those games would [] likely be offered." Israel Motion at 8 (emphasis added).

Plaintiffs also miss the mark in criticizing Dr. Israel for not opining on the precise contours of the but-for world. *See* Israel Motion at 8-10. Plaintiffs bear the burden under Rule 23 of proving that common questions predominate, and Dr. Israel—as a rebuttal expert—"need not develop alternative, affirmative opinions in order to adequately rebut the evidence presented by Plaintiffs—that is not Defendants' burden." *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1215 (E.D. Wash. 2015); *see also, e.g.*, *Scripps Health v. nThrive Revenue Sys., LLC*, 2021 WL 3372835, at *7 (S.D. Cal. May 10, 2021) ("[Plaintiff] has failed to provide the Court with any authority holding that in order for a rebuttal expert to criticize another expert's analysis/calculations that rebuttal expert must present his own separate analysis/calculations."); *Scott v. Chipotle*

7

Case No. 2:15-ml-02668-PSG (JEMx)    NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel

*Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("When offering expert testimony, the defendant has no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts." (citation omitted)).

Accordingly, Dr. Israel detailed the numerous aspects of the but-for world that Plaintiffs failed to analyze and explained why any analysis of those aspects requires individual inquiry.  As a rebuttal expert, Dr. Israel need address only how these omissions undermine Plaintiffs' conclusions, rather than proffer his own affirmative conclusions as to the components of a but-for world.

Moreover, it is beyond dispute that, in an individual trial brought by a single member of the proposed class, the NFL Defendants would be entitled to assert defenses to the plaintiff's claim based on how she benefitted from the real world and how she would be harmed in the but-for world.  *See* Class Cert. Opp. at 18-19.  The NFL Defendants must be permitted the same right to raise these individual challenges in this putative class action; a class action cannot give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." *Tyson Foods*, 577 U.S. at 458.  Dr. Israel's opinions bear directly on these individual challenges.

Dr. Israel's opinions about the incompleteness of plaintiffs' analyses confirm and detail the many viable, individualized defenses that the NFL defendants would be entitled to raise at trial.  Those opinions are directly relevant to the question of whether individual inquiries as to injury and damages will predominate over any common issues at trial—even if Plaintiffs seek to rely solely on common evidence in their case-in-chief.  *See, e.g.*, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) ("Defenses that must be litigated on an individual basis can defeat class certification."); *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[C]ourts must consider potential defenses in assessing the predominance requirement."); *Aluminum*, 336 F.R.D. at 50 (denying certification where "defendants would have a right to present individualized evidence that these

8

NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel

1  statements [of classwide injury] are untrue for large numbers of individual purchases

2  and purchasers").

3      Finally, there is no merit to Plaintiffs' suggestion that the defenses supported

4  in part by Dr. Israel's analyses are too "speculative" to be considered in the class

5  certification analysis.  Defendants are entitled to raise any defense to a plaintiffs'

6  claim of injury that is "plausible" or "colorable."  *In re Rail Freight Fuel Surcharge*

7  *Antitrust Litig.*, 934 F.3d 619, 624-25 (D.C. Cir. 2019); *In re Asacol Antitrust Litig.*,

8  907 F.3d 42, 55 (1st Cir. 2018).  The individualized issues that Dr. Israel identified

9  plainly satisfy that standard, *see* Class Cert. Opp. at 14-17, particularly in light of

10  their experts' concessions ███████████████████████████████████████

11  ███████████████████████████████████████████████████████

12  ██████████████████████

### B.  Plaintiffs fail to demonstrate that any specific analysis offered by Dr. Israel is either speculative or irrelevant.

15      Plaintiffs' three specific challenges to Dr. Israel's application of the

16  Completeness Principle have no merit.

17      *First*, Plaintiffs challenge Dr. Israel's conclusion that in their but-for world,

18  ███████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████

22  ██████████████████████

23      As a threshold matter, that challenge is wrong as a matter of law.  Experts are

24  permitted to base their opinions on otherwise inadmissible evidence.  *See* Fed. R.

25  Evid. 703 (facts or data on which an expert relies "need not be admissible for the

26  [expert] opinion to be admitted").  ███████████████████████████

27  ███████████████████████████████████████

28

1 ███████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ██████████████████████████████████ *see also, e.g.*, *In re Static*

5 *Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 616 (N.D. Cal.

6 2009) (admitting expert opinion "solidly grounded in the academic literature").

7 ████████████████████████████████████████

8 ████████████████████████████████████████

9 ████████████

10    Plaintiffs also claim that Dr. Israel's competitive balance opinions are

11 irrelevant at the class certification stage because they pertain to a procompetitive

12 justification on the merits, Israel Motion at 7, but that argument "is directly at odds

13 with the way the Ninth Circuit has interpreted Rule 23(b)(3)." *In re Wells Fargo*

14 *Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (rejecting

15 argument that "plaintiff is somehow freed from meeting the predominance

16 requirement with respect to [] defenses" that "defendant, at trial, has the burden of

17 proving").  As the *Wells Fargo* court explained, "[t]he important inquiry is not

18 whether common issues predominate with respect to plaintiff's prima facie case, but

19 rather will common issues predominate *in the entire litigation.*"  *Id.* (emphasis

20 added); *see also True Health*, 896 F.3d at 931 ("Defenses that must be litigated on

21 an individual basis can defeat class certification.").[1]

22    Dr. Israel's opinions regarding competitive balance, and its impact on quality,

23 are directly relevant to the question of injury and damages. ████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26

27    [1] Plaintiffs also criticize Dr. Israel for failing to model the effects of

28 competitive balance, Israel Motion at 7, but that critique again fails to grasp Dr. Israel's role as a rebuttal expert at the class certification stage. *See supra* at 7.

10

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  Addressing quality

differences is thus a required part of *Plaintiffs'* affirmative case, as Plaintiffs bear the

burden of proof as to both injury and damages.  *See Olean*, 31 F.4th at 665-66.  And

in any event, the NFL Defendants plainly are entitled to raise *now* the individualized

questions of injury and damages presented by decreases in quality—especially for

fans of teams that would perennially underperform in the absence of NFL's

competitive balance protections.  ███████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████

        *Second*, Plaintiffs criticize Dr. Israel's opinions  ███████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████  Israel Motion at 4.  This limited *Daubert*

challenge does nothing to undercut Dr. Israel's primary opinion as to the commercial

class, ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████  In any event, this challenge is

both factually and legally flawed.

        As an initial matter, Plaintiffs are wrong in asserting that Dr. Israel's opinions

regarding bar patronage are unsupported and therefore unreliable.  ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

11



Plaintiffs' legal arguments fare no better.  First, they fault Dr. Israel for not himself modeling these effects on the commercial class.  Israel Motion at 5.  But rebuttal experts bear no burden to correct the flaws and omissions in their adversaries' analyses, *see supra* at 7, and this criticism cannot overcome Plaintiffs' own failure to offer a coherent and complete model of their but-for world, *see, e.g.*, *Cmty. Ass'n for Restoration of the Env't*, 80 F. Supp. 3d at 1215; *Scripps Health*, 2021 WL 3372835, at *7.

Plaintiffs' citation to *In re Electronic Books Antitrust Litigation* is likewise misplaced.  *See* Israel Motion at 5.  Plaintiffs cite the case to try to dismiss Dr. Israel's discussion of these effects on the commercial class, but the case addresses a very different issue.  In *Electronic Books*, the court criticized an expert's opinions proceeding from the assumption that Apple would not have launched an e-book store in the absence of a price-fixing conspiracy because that possibility was unrelated to Plaintiffs' allegations.  *See* 2014 WL 1282298, at *18-19 (S.D.N.Y. Mar. 28, 2014).  Here, by contrast, Dr. Israel's opinions are related to Plaintiffs' allegations because they address the likely consequences of the but-for worlds that *Plaintiffs* postulate.

Finally, Plaintiffs suggest that *Laumann v. National Hockey League*, 105 F. Supp. 3d 384, 400 (S.D.N.Y. 2015), supports certifying a class with class members who benefitted from the challenged conduct.  Israel Motion at 6.  That holding related solely to the certification of an injunctive relief class, and thus is not relevant to Plaintiffs' attempt to certify a damages class here.  *See* 105 F. Supp. 3d at 398-99.  Moreover, any suggestion that uninjured class members can be included in a class

action would be simply incorrect: "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Thus, "[a] class cannot be certified . . . when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Consistent with these principles, courts "routinely" admit expert testimony addressing whether proposed class members benefited from the challenged conduct. *Aluminum*, 336 F.R.D. at 33 (collecting cases).

*Third*, Plaintiffs suggest that Dr. Israel's opinions ███████████████

████████████████████████████████████████████████████████████████

███████████████████████ Israel Motion at 10-11. It is not. The issue at the motion-to-dismiss stage was whether Plaintiffs plausibly alleged an injury similar to the one in a decades-old antitrust case involving college football. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1151-52 (9th Cir. 2019). The Ninth Circuit did not address the different and fact-specific question whether college football is an accurate benchmark for a but-for world in this case. For that reason, it was fully appropriate for Dr. Israel ██████████████████████████████

████████████████████████████████████████████ Nor does the history of NCAA football from the 1980s shed any meaningful light on the issues from this case, as many of the relevant features of today's media landscape—including satellite television, modern cable systems, and the internet—were not yet then in existence.

## III.   Dr. Israel's Opinions Regarding the MVPD Markets Are Relevant and Reliable.

Plaintiffs argue that Dr. Israel's opinions addressing the MVPD markets in Plaintiffs' but-for worlds are not relevant to the class certification inquiry. Israel Motion at 13-14. That is incorrect.

Plaintiffs first contend that Dr. Israel's analysis of MVPD markets is irrelevant ████████████████████████████████████████████████████████████████

13

1   Israel Motion at 13.  That assertion proves Dr. Israel's point: █████████████

2   ███████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████   Analysis

5   of the markets in which class members make their purchases is critical to assessing

6   both injury and damages.  ███████████████  *see supra* at 5-7.

7   Plaintiffs incorrectly argue that Dr. Israel's MVPD opinions improperly

8   address "individual competitors" and not "competition."  Israel Motion at 14.

9   ███████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████

13  ███████████████████████████████  Competition necessarily results from

14  the actions of, and interactions between, competitors, and Dr. Israel's opinions

15  squarely address outcomes for class members in Plaintiffs' but-for worlds.

16  Plaintiffs also argue that Dr. Israel's opinions about MVPDs relate solely to

17  the merits and that focusing on MVPDs is premature at the class certification stage.

18  Israel Motion at 14.  ███████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████  Plaintiffs concede as much, asserting that "the task is to determine

21  what the price of that access to all [Sunday afternoon] games would have been in a

22  world without the restraints at issue," which includes "determining how those games

23  would [] likely be offered," Israel Motion at 8—including through MVPDs, *e.g.*,

24  Rascher Report ¶¶ 31, 46, 88, 104, 175.

25  **IV.   Dr. Israel's Opinions Regarding the Complementarity of NFL Games**

26  **are Relevant and Reliable.**

27  Finally, Plaintiffs dispute Dr. Israel's conclusion that NFL games (like many

28  other products) display both complementarity and substitution, but that unlike other

14

products, NFL games are not "net substitutes." Israel Motion 11-13; ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████

These opinions bear directly on a key question for assessing injury and damages: "determining how [out-of-market NFL] games would [] likely be offered" in the but-for world. Israel Motion at 8. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████ Different clubs may also take different approaches, introducing further individual questions on how clubs' telecasts would be made available to given class member in the but-for world.

Contrary to Plaintiffs' suggestion, Dr. Israel's opinions are fully consistent with both basic economic logic and with the evidence that Dr. Israel cites in his report. As Dr. Israel explains, ███████████████████████████████

████████████████████████████████████████ As a result, watching one NFL game often makes a fan more likely—not less likely—to watch additional game(s), which is the basic definition of an economic complement. *See id.*; *see also Staley v. Gilead Scis., Inc.*, 2020 WL 5507555, at *6 n.3 (N.D. Cal. July 29, 2020) ("[C]omplements are goods that are most efficiently made or used together." (quoting Areeda & Hovenkamp, Antitrust Law ¶ 565a)).

Plaintiffs also ignore a number of the arguments that Dr. Israel advances in support of his conclusion, ████████████████████████████████████████

███████████████████████████████████████████████████████████

████ Those explanations amply support the notion of complementarity between NFL

15

1    games: ███████████████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ██████████████████

5            Similarly, Plaintiffs' assertion that Dr. Israel's opinions are "inconsistent" with

6    certain documentary evidence, Israel Motion at 11, is based on a misreading of

7    Dr. Israel's report. Dr. Israel's opinions ████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ███████████████████████████████████████████  The opinions

12   criticized here by Plaintiffs do not address the issue of ██████████████████

13   ████████████████████████████████████████  that is discussed in

14   the documents that Plaintiffs cite.  Israel Motion at 12-13.

15           Apart from the merits, Plaintiffs' conclusion-centric criticisms are no basis for

16   a *Daubert* motion.  As Plaintiffs acknowledge, the "task 'is to analyze not what the

17   experts say, but what basis they have for saying it.'"  Israel Motion at 2 (quoting

18   *Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1049 (C.D. Cal.

19   2020)).  Plaintiffs say nothing here about Dr. Israel's methodology underlying his

20   complementarity opinions, and so their challenge necessarily fails.  *See, e.g.*, *Alaska*

21   *Rent-A-Car*, 738 F.3d at 969-70.

22                                      **CONCLUSION**

23           Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel should be denied.

24

25

26

27

28

16

Dated:  December 16, 2022

Respectfully submitted.

/s/ *Derek Ludwin*
Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

17