Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF SARAH BUTLER**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: January 27, 2023<br>Time: 1:30 p.m.<br>Courtroom:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.   Ms. Butler's Survey Should Be Excluded Because It Does Not Provide Relevant Data For Dr. Zona's Model. ......................................................... 2

        A.   The Survey Did Not Include Sunday Ticket. ................................... 2

        B.   The Survey Was Significantly Overbroad. ...................................... 4

    II.  The Survey's Methodological Flaws Preclude Its Use By Dr. Zona. ............... 6

        A.   Ms. Butler Failed To Include The Standard Errors Necessary For Extrapolation To A Larger Population. ............................................ 6

        B.   Ms. Butler Improperly Conducted Her Survey In Waves. ............... 8

    III. Ms. Butler's Survey Is Unreliable Because She Did Nothing To Control For Or Analyze Irrational Respondents. ......................................................... 10

CONCLUSION ..................................................................................................... 11

i

Case No. 2:15-ml-02668-PSG (JEMx)        Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Bakst v. Community Mem. Health Sys., Inc.*,
   2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ............................................... 1, 2, 4

*Lust By and Through Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ................................................................................ 8, 9

*MacDougall v. American Honda Motor Co.*,
   2021 WL 6101256 (9th Cir. Dec. 21, 2021) .......................................................... 11

*Morales v. Kraft Foods Grp., Inc.*,
   2017 WL 2598556 (C.D. Cal. Jun. 9, 2017) ......................................................... 5, 6

*Navarro v. Procter & Gamble Co.*,
   2021 WL 868586 (S.D. Ohio Mar. 8, 2021) .......................................................... 11

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) .......................................................... 4

*Smith v. Wal-Mart Stores, Inc.*,
   537 F. Supp. 2d 1302 (N.D. Ga. 2008) .................................................................. 6

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
   744 F. Supp. 1259 (S.D.N.Y. 1990) ....................................................................... 6

*Zakaria v. Gerber Prod. Co.*,
   755 F. App'x 623 (9th Cir. 2018) ........................................................................... 9

ii

Case No. 2:15-ml-02668-PSG (JEMx)  Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler

# INTRODUCTION

In our opening brief, we explained why the survey conducted by Ms. Sarah Butler, Plaintiffs' survey expert, is irrelevant, methodologically flawed, and unreliable. Plaintiffs' opposition confirms that the Court need only reach the first of those issues—relevance—to decide this motion.

It is undisputed that Ms. Butler's survey serves only one purpose at this stage—it is an input to one of Plaintiffs' econometric models of injury and damages for classes of residential and commercial Sunday Ticket purchasers. The problem for Plaintiffs is that the survey generated no relevant data for that purpose. As a result, Ms. Butler's testimony does not "speak[] clearly and directly to an issue in dispute in the case." *Bakst v. Community Mem. Health Sys., Inc.*, 2011 WL 13214315, at *18 (C.D. Cal. Mar. 7, 2011).

Indeed, [REDACTED] Kilaru Decl. Ex. 1 (Deposition of Sarah Butler, at 10:2–7) ("Butler Tr."). Because she did not know Dr. Zona planned to use her survey as an input into a damages model, she did not design the survey for that purpose. Case in point: Ms. Butler's survey is being used to calculate damages for *class members* who subscribed to *Sunday Ticket*, so it should have focused on class members and actually asked about Sunday Ticket. It did neither.

While the Court need not move past the issue of relevance, it is important to note that Plaintiffs offer no meaningful response to the methodological flaws and unreliability of Ms. Butler's survey. On methodology, because Plaintiffs are using Ms. Butler's limited survey data to draw conclusions about the class as a whole, she needed to include standard error measurements to allow the Court to assess the validity of those extrapolations. She does not. Moreover, Plaintiffs fail to identify any legal or survey precedent for Ms. Butler's decision to change relevant survey parameters, including her inapt initial pricing, after surveying two-thirds of the

1

Case No. 2:15-ml-02668-PSG (JEMx)   Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler

respondents. As to reliability, Plaintiffs offer no explanation for Ms. Butler's failure to control for and analyze irrational results, which pervaded her survey. Taken alone or together, these flaws require exclusion.

## ARGUMENT

### I. Ms. Butler's Survey Should Be Excluded Because It Does Not Provide Relevant Data for Dr. Zona's Model.

**A. The Survey Did Not Include Sunday Ticket.**

Scientific evidence must be excluded "unless . . . it speaks clearly and directly to an issue in dispute in the case." *Bakst*, 2011 WL 13214315, at *18. It should be self-evident that any survey being used as an input to a damages calculation regarding the Sunday Ticket package should include Sunday Ticket as an option. Yet Ms. Butler's survey did not.

Contrary to Plaintiffs' suggestions, the "All Access" package was not "intended to mimic NFL Sunday Ticket Basic and was priced accordingly." Plaintiffs' Memo. in Opp. to NFL Defendants' Motion to Exclude the Opinion of Sarah Butler, Dkt. 739, at 4–5 ("Butler Opp."). In disputing this basic point, Plaintiffs omit key testimony from Ms. Butler's deposition. *See generally* Butler Tr. 119:16–124:10. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ *Id.* at 120:2–19 (emphasis added).

Ms. Butler offered no persuasive explanation for her failure to replicate real world features of Sunday Ticket in her survey. ██████████████████

███████████████████████████████████████████

██████████████████████████████████ *Id.* at 121:6–19. But there is no reason why the presence of other hypothetical offerings should result in the exclusion of the product that is actually at issue in this case.

The facts also belie Plaintiffs' argument that All Access and All Access Plus

2

Case No. 2:15-ml-02668-PSG (JEMx)     Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler

1  actually are stand-ins for Sunday Ticket and Sunday Ticket MAX.  While Sunday
2  Ticket is limited to games within the two Sunday afternoon time slots, All Access
3  includes all games not available on local broadcast television, including Thursday
4  and Monday nights.  Plaintiffs claim that this distinction is a "nitpick[]" and
5  "minutiae," Butler Opp. at 13, but it is not; it means that the All Access package in
6  Ms. Butler's survey includes twice as many game windows as Sunday Ticket.
7  Similarly, all versions of Sunday Ticket allow consumers to toggle between games.
8  Limiting that feature to only the higher-priced All Access Plus package, as Ms. Butler
9  has done in her survey, *see, e.g.*, NFL Defendants' Motion to Exclude the Opinions
10 of Sarah Butler, Dkt. 676-1, at 8 ("Butler Mot."), inherently changes the relevant
11 products and how survey respondents would perceive them.  Finally, despite
12 Plaintiffs' insistence otherwise, Butler Opp. at 5, ███████████████████
13 ████████████████████████████████████████████████████
14 █████████████████████████ *See* Butler Tr. 139:4–11.

15      Plaintiffs also miss the mark in arguing that the lack of confusion among
16 respondents about the relationship between All Access and Sunday Ticket makes up
17 for Ms. Butler's error.  *See* Butler Opp. at 13.  Both the pre-tests and the survey
18 required respondents to read an incredibly dense page of package descriptions.
19 Butler Mot. at 15.  ████████████████████████████████████
20 ████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████
22 ████  *See* Expert Report of Dr. Nancy A. Mathiowetz, Dkt. 676-2, ¶¶ 80–81
23 ("Mathiowetz Report").  ██████████████████████████████████
24 ████████████████████████  *See* Kilaru Decl. Ex. 2 (Deposition of Dr.
25 Nancy Mathiowetz, at 110:2–22) ("Mathiowetz Tr.") ██████████████████
26 ████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████

3

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id*. Plaintiffs' statement that no survey respondents indicated confusion obscures that the survey did not give them an opportunity to do so.

Because Ms. Butler's survey intentionally did not include the product for which her survey is being used to calculate damages, the survey is not relevant, and should be excluded. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *12 (C.D. Cal. Dec. 9, 2013) (excluding a survey for lack of relevance).

**B. Ms. Butler's Survey was Significantly Overbroad.**

Ms. Butler's survey is also irrelevant because it is being used as an input to calculate damages for class members, but sweeps in a far broader pool of respondents. *See Bakst*, 2011 WL 13214315, at *18 ("fit" requires that the evidence be relevant enough to assist the fact-finder "in resolving the issues before" it).

It is clear that class members constitute less—maybe much less—than half of the survey population. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Rebuttal Declaration of Sarah Butler, Dkt. 774-1, ¶ 16 ("Butler Rebuttal"). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id*. As a result, fewer than half of Ms. Butler's respondents had ever subscribed to Sunday Ticket. Butler Opp. at 12. And Ms. Butler did nothing to try to determine whether those subscribers had paid for Sunday Ticket (as opposed to receiving it for free) or subscribed to Sunday Ticket within the class period—key metrics for determining whether those subscribers are within the class definition. Yet Dr. Zona and Dr. Rascher still use Ms. Butler's data to attempt to measure damages for the putative classes.

Plaintiffs' arguments about ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id*. at 14; Butler Rebuttal ¶¶ 17, 36–48. ▉▉▉▉

1   ██████████████████████████████████████████████████████

2   ████████████████████████████████████████  Those are not the

3   purposes for which Ms. Butler's survey is being used.  Dr. Zona's analysis based on

4   the survey looks only at what *class members* would have purchased in a but-for world

5   based on the survey.

6       Plaintiffs' citation to *Morales v. Kraft Foods Grp., Inc.*, 2017 WL 2598556

7   (C.D. Cal. Jun. 9, 2017), does nothing to shore up their position on the mismatch

8   between the survey and the putative class.[1]  Plaintiffs quote the case for the

9   proposition that "there is no requirement that the universe of those surveyed overlap

10  entirely with the class." 2017 WL 2598556, at *13.  But the degree of the mismatch

11  matters under the law.  In *Morales*, the mismatch was not fatal because there was no

12  reason to think the survey population was different from the target population.  The

13  survey population consisted of individuals who had purchased Kraft pre-shredded

14  cheese in the last six months. *Id*. at *11.  The party challenging the survey argued

15  the survey should have been limited to those who had bought Kraft fat-free natural

16  shredded cheese (the product at issue). *Id*.  The Court rejected this argument because

17  there was no support for the claim that there were material differences between

18  purchasers of the product at issue and purchasers of other kinds of Kraft shredded

19  cheese. *Id*. at 13.

20      Here, however, ████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ██████████████████████████████████████████████  Butler Tr.

---

[1] Ms. Butler failed to include *any* commercial class members in the survey. Butler Opp. at 15.  Plaintiffs' attempted explanation is that Ms. Butler's survey population is appropriate for measuring the purchasing behavior of commercial subscribers because it contained some NFL fans who sometimes watch football games at bars. *Id.*  Plaintiffs offer no explanation for how the viewing behavior of residential customers sheds light on the purchasing behavior of commercial customers.

5

Case No. 2:15-ml-02668-PSG (JEMx)          Reply Memorandum in Support of the NFL Defendants'
                                            Motion to Exclude the Opinions of Sarah Butler

1 | 12:12–22.  That group is significantly broader and distinct from the proposed class of residential and commercial DirecTV satellite subscribers that purchased the NFL Sunday Ticket package.

The relevant analogy here is not *Morales*, but *Smith v. Wal-Mart Stores, Inc.* (cited in *Morales*), where a survey was excluded in part because the survey population was considered "significantly overbroad." 537 F. Supp. 2d 1302, 1325 (N.D. Ga. 2008). *Smith* was a case about purchasers of satirical t-shirts at Wal-Mart, but the survey population consisted of respondents over age 13 who had purchased, or were considering purchasing, "bumper stickers, t-shirts or coffee mugs with words, symbols or designs on them." *Id*. at 1325–26 (noting that a survey respondent "who clearly falls within [the] survey universe may nevertheless have no potential to purchase" the relevant products); *see also Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1272–73 (S.D.N.Y. 1990) (finding a population universe overbroad because it "did not limit the universe to consumers who had purchased a *diet* frozen entree . . . or who had tried to lose weight through diet as opposed to exercise; therefore, some of the respondents may not have been in the market for diet food of any kind….") (emphasis in original).  Like in these cases, Ms. Butler's survey population was significantly overbroad and the Court should exclude it.

## II. Ms. Butler's Survey's Flaws Preclude Its Use By Dr. Zona.

**A. Ms. Butler Failed to Include the Standard Errors Necessary for Extrapolation to a Larger Population.**

████████████████████████████████████████

████████████████████████████████████████

*See* Mathiowetz Report ¶¶ 10, 62–63.  ████████████████████

████████████████████████████████████████

████████████████████████████ *Id.* ¶ 25.  And the need for standard errors is illustrated ████████████████████

████████████████████████ As previously described, ██████

6

|   |   |
|---|---|
| 1 | ▓▓▓▓▓▓▓▓▓▓ |
| 2 | ▓▓▓▓▓▓ *See* Butler Mot. at 12. |

Plaintiffs' attempt to ground this shortcoming in statistical literature falls short. Butler Opp. at 20. Plaintiffs initially appeal to guidance from the American Association for Public Opinion Research (AAPOR), but they misread it. The AAPOR guidance provides very specific exceptions to the requirement that surveys have standard errors. Specifically, the AAPOR guidance says the following:

> "For *some* surveys (e.g., exploratory, internal research) estimating precision may not be important to the research goals. For other surveys precision measures may be relevant, but the researcher may not have the statistical resources to compute them."

AAPOR Guidance at 3 (emphasis added). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mathiowetz Tr. 211:12–214:10. Plaintiffs do not (and cannot) challenge this fact.

Plaintiffs likewise gain no support from the Reference Guide on Survey Research by Dr. Shari Diamond. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 219:17–221:1; AAPOR Guidance at 1.

Last, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Butler Rebuttal ¶¶ 55–57. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Mathiowetz Report Exhibit D. But the relevant point is that Ms. Butler cannot shift the burden in this fashion. "It is the proponent of the expert who has the burden of proving admissibility." *Lust By and Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d

7

Case No. 2:15-ml-02668-PSG (JEMx)　　　　　Reply Memorandum in Support of the NFL Defendants'
　　　　　　　　　　　　　　　　　　　　Motion to Exclude the Opinions of Sarah Butler

1  594, 598 (9th Cir. 1996). ▮

2  ▮

3  ▮ See Mathiowetz Tr. 211:12–212:10

4  ▮

5  ▮

6  ▮

### B. Ms. Butler Improperly Conducted her Survey in Waves.

Ms. Butler's survey also involved the unprecedented step of changing meaningful survey parameters two-thirds of the way throughout. Plaintiffs offer no justification for this unorthodox maneuver.

Plaintiffs' suggestion that there were not meaningful differences between the two waves blinks reality. ▮ Butler Mot. at 11; Mathiowetz Report Table 1.[2] ▮ Butler Rebuttal ¶ 45 ▮ Mathiowetz Report ¶ 46 ▮ See Butler Tr. 102:13–105:4.

Moreover, the prices materially shifted between the waves. Butler Mot. at 4–5. For a survey where respondents are asked to choose between different packages based on price, the inclusion of unrealistic prices for certain packages will cause dramatic differences in respondent choices. In Wave 1, Ms. Butler set the prices for the single game package unrealistically low. Butler Mot. at 4–5. As a result, it was

---

[2] ▮ See, e.g., Mathiowetz Report ¶¶ 97, 99, 103–04.

8

almost always irrational for a survey participant to purchase the single team package, as they could get the exact same content for less by purchasing games individually. *Id*. While Plaintiffs claim that there was only "hypothetical" overlap between the two lowest single game prices and Team Access pricing, and no overlap elsewhere, Butler Opp. at 7, the survey itself says otherwise. ██████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ *See* Mathiowetz Report ¶¶ 52, 97. *See Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624–25 (9th Cir. 2018) (explaining that "conjoint analysis [must] reflect market realities and prices for [the relevant] products.")

The upshot of these differences was to create two different surveys that Ms. Butler—and then Dr. Zona—have attempted to mash together. Plaintiffs identify *no precedent*, in either case law or statistical literature, for conducting a survey in this fashion, and uncritically pooling together two fundamentally different sets of results in a damages model. *Lust*, 89 F.3d at 598 (the party offering expert testimony has the burden of proving admissibility).

The few arguments Plaintiffs offer in response fail to persuade.

*First*, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ Butler Opp. at 17. The fault lies with Plaintiffs: ████ ████████████████████████████████████████████████████ Declaration of Sarah Butler, Dkt. 633-2, ¶ 79 n.90, ██████████████████████████████ ████████████████████████████████████████ *See* Butler Mot. at 5. More importantly, Ms. Butler should not have needed documents to spot a problem of basic arithmetic.

*Second*, ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████ Butler Opp. at 19. As an initial matter, a valid critique is a valid critique,

9

Case No. 2:15-ml-02668-PSG (JEMx)　　　　Reply Memorandum in Support of the NFL Defendants'
　　　　　　　　　　　　　　　　　　　　　Motion to Exclude the Opinions of Sarah Butler

regardless of who offers it. But more importantly, Dr. Mathiowetz has enjoyed an over 40-year career in statistical design and is widely published within the field. *See* Mathiowetz Report ¶¶ 1–4, Exhibit A. ▮

▮ *See* Mathiowetz Tr. 15:20–22:11. Litigation is only part of her broader expertise. She is well qualified to opine on this elementary design flaw.

*Last*, ▮

▮ Butler Opp. at 19. Plaintiffs are simply wrong. ▮

▮ Mathiowetz Report ¶ 63. ▮

▮ Mathiowetz Report ¶¶ 62–63, 134 (emphasis added). Dr. Zona did not take this step initially, and he curiously continues to avoid doing so: ▮

▮ Expert Reply Report of J. Douglas Zona, Dkt. 774-2, ¶¶ 65–66. That omission speaks volumes, because Wave 2 (in fact, a subset of it), is the only population of conceivable relevance to this case.

### III. Ms. Butler's Survey Is Unreliable Because She Did Nothing To Control For Or Analyze Irrational Respondents.

Prior to her deposition, Ms. Butler was not aware that her survey was pervaded by irrationality. Every respondent in the survey faced a significant number of irrational choices (such as the option to pay more for less). ▮

▮ *See* Butler Mot. at 12–16; Mathiowetz Report ¶¶ 87–89, 109. ▮ Mathiowetz Tr. 132:22–135:6; 137:3–22 ▮

10

Case No. 2:15-ml-02668-PSG (JEMx)    Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of Sarah Butler

[REDACTED]

Now that Plaintiffs and Ms. Butler are aware of the issue, they attempt to minimize it, emphasizing that only 16.5% of *responses* were irrational, Butler Opp. at 23–24. But the ends do not justify the means. [REDACTED] Mathiowetz Tr. 137:3–22, 166:14–168:15; *see Navarro v. Procter & Gamble Co.*, 2021 WL 868586, at *21 (S.D. Ohio Mar. 8, 2021) (allowing testimony from expert who used a fixed irrational question to identify irrational respondents, and generated far fewer irrational results). Moreover, the ends are significant—16.5% of the inputs into Dr. Zona's survey. But to this day, Ms. Butler has done nothing to analyze these responses, [REDACTED] Butler Tr. 177:23–178:12. [REDACTED] Butler Rebuttal ¶ 111.

The law is not on Plaintiffs' side either. Plaintiffs cite an unpublished Ninth Circuit case that, on their telling, holds that irrational responses go to weight, not admissibility. Butler Opp. at 23 (citing *MacDougall v. American Honda Motor Co.*, 2021 WL 6101256, at *1 (9th Cir. Dec. 21, 2021)). *MacDougall* is unavailing: The Ninth Circuit did not address irrationality and instead reversed the district court decision for its reliance on inappropriate caselaw. *Id.* The case does not undercut the authorities cited in the NFL Defendants' opening motion, which stand for the proposition that a survey is unreliable if it is tainted with irrational respondents and the expert has failed to control for irrationality. *See* Butler Mot. at 12–13. That principle requires exclusion here.

## CONCLUSION

For the foregoing reasons, along with those set forth in the Memorandum in

11

Case No. 2:15-ml-02668-PSG (JEMx)　　　Reply Memorandum in Support of the NFL Defendants'
　　　　　　　　　　　　　　　　　　　Motion to Exclude the Opinions of Sarah Butler

Support of the NFL Defendants' Motion to Exclude the Opinions of Sarah Butler, Dkt. 676-1, Ms. Butler's opinions should be excluded under Rule 702.

12

Case No. 2:15-ml-02668-PSG (JEMx)         Reply Memorandum in Support of the NFL Defendants'
                                         Motion to Exclude the Opinions of Sarah Butler

| | |
|---|---|
| Dated:  December 16, 2022 | Respectfully submitted. |
| | /s/ *Rakesh N. Kilaru* |
| | Rakesh N. Kilaru (admitted *pro hac vice*) |
| | Beth A. Wilkinson (admitted *pro hac vice*) |
| | Brian L. Stekloff (admitted *pro hac vice*) |
| | Jeremy S. Barber (admitted *pro hac vice*) |
| | **WILKINSON STEKLOFF LLP** |
| | 2001 M Street NW, 10th Floor |
| | Washington, DC 20036 |
| | Telephone: (202) 847-4000 |
| | Facsimile: (202) 847-4005 |
| | rkilaru@wilkinsonstekloff.com |
| | bwilkinson@wilkinsonstekloff.com |
| | bstekloff@wilkinsonstekloff.com |
| | jbarber@wilkinsonstekloff.com |
| | |
| | Neema T. Sahni (Bar No. 274240) |
| | **COVINGTON & BURLING LLP** |
| | 1999 Avenue of the Stars |
| | Los Angeles, CA 90067-6045 |
| | Telephone: (424) 332-4800 |
| | Facsimile: (424) 332-4749 |
| | nsahni@cov.com |
| | |
| | Gregg H. Levy (admitted *pro hac vice*) |
| | Derek Ludwin (admitted *pro hac vice*) |
| | John S. Playforth (*pro hac vice* pending) |
| | **COVINGTON & BURLING LLP** |
| | One CityCenter |
| | 850 Tenth Street NW |
| | Washington, DC 20001 |
| | Telephone: (202) 662-6000 |
| | Facsimile: (202) 662-6291 |
| | glevy@cov.com |
| | dludwin@cov.com |
| | jplayforth@cov.com |
| | |
| | *Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs* |

13