Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF J. DOUGLAS ZONA**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: January 27, 2023<br>Time: 1:30 p.m.<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.  Plaintiffs Misstate The Legal Standards Governing The Admissibility Of Dr. Zona's Work. .................................................................................................... 2

    II.  Dr. Zona Improperly Applies A Results-Driven Methodology ......................... 3

    III.  Dr. Zona Fails To Remedy The Irrational Outcomes And Errors In His Models. ................................................................................................................ 7

        A.  Dr. Zona's Efforts To Address His Elementary Collinearity Error Produce Results That Are Directly At Odds With Plaintiffs' Case ............ 7

        B.  Dr. Zona's Primary Model Continues To Reach Irrational Conclusions About Consumer Behavior.. ................................................................... 8

    IV.  Dr. Zona's Remaining Models Should Be Excluded ...................................... 10

        A.  The Conjoint Model Takes A Flawed Approach To Flawed Data ........... 10

        B.  Dr. Zona's Other Models Do Not Withstand Scrutiny. ........................... 10

        C.  Dr. Zona's Approach To The Commercial Class Is Indefensible and Undermines His Damages Modeling For Both Classes. .......................... 11

CONCLUSION ................................................................................................................. 12

i

Case No. 2:15-ml-02668-PSG (JEMx)      Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of J. Douglas Zona

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Amorgianos v. National R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) .................................................................... 5, 7, 10

*Cabbat v. Philip Morris USA, Inc.*,
   2014 WL 32172 (D. Haw. Jan. 6, 2014) ............................................................. 3

*Comcast v. Behrend*,
   569 U.S. 27 ................................................................................................. 8, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .............................................................................................. 2

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................................. 6

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Intern., Inc.*,
   2019 WL 3209451 (C.D. Cal. Jun. 10, 2019) ...................................................... 8

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   2017 WL 2559615 (C.D. Cal. June 7, 2017) ........................................................ 2

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ................................................................ 4

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
   145 F. Supp. 3d 573 (D.S.C. 2015) ............................................................. 4, 5, 6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) ................................................................................ 4

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) .......................................................................... 3

*Laumann v. Nat'l Hockey League*,
   117 F. Supp. 3d 299 (S.D.N.Y. 2015) ...................................................... 3, 9, 10

*Lust By and Through Lust v. Merrell Dow Pharms.*,
   89 F.3d 594 (9th Cir. 1996) .................................................................................. 5

ii
Case No. 2:15-ml-02668-PSG (JEMx)                    Reply Memorandum in Support of the NFL Defendants'
                                                     Motion to Exclude the Opinions of J. Douglas Zona

*McDowell v. Brown*,
  392 F.3d 1283 (11th Cir. 2004) ................................................................................... 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ......................................................................................... 2

*Rodas v. Porsche Cars N. Amer.*,
  2016 WL 6033535 (C.D. Cal. Apr. 4, 2016) ................................................................. 8

iii

Case No. 2:15-ml-02668-PSG (JEMx)    Reply Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona

# INTRODUCTION

Over the course of two reports in this case, Dr. Zona, Plaintiffs' econometrics expert, has offered a series of superficially different models. But all are united by the same results-driven reasoning: As long as the model computes a damages figure through some mathematical formula, Dr. Zona claims it is reliable, and Plaintiffs argue any criticisms go to weight.

That is not how the law works. Rule 702 requires an expert to apply reliable methods in a scientifically sound manner. In our opening brief, we explained how Dr. Zona's initial models fail this test. They involve elementary errors that no qualified expert would make, generate the types of absurd results that have led other courts to reject such models at the class certification stage, and depend on a series of ungrounded and unsupportable assumptions.

Plaintiffs' and Dr. Zona's responses to these arguments make their case worse, not better. Plaintiffs try to lower the Rule 702 hurdle to the floor, claiming that Dr. Zona's methodology is permissible because he says he uses the types of tools that other antitrust experts use. Memorandum in Opposition of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona ("Zona Opp."), Dkt. 779, at 3. That is like saying a house is structurally sound because it contains bricks. It does not answer the central critique in Defendants' motion, which is Dr. Zona's failure to apply those tools in a reliable and principled fashion. Plaintiffs also make the extraordinary claim that "the NFL's own economic expert, Dr. Ali Yurukoglu, acknowledges the soundness of Dr. Zona's methodology and, in fact, uses Dr. Zona's models to calculate alternative class-wide Sunday Ticket prices." Zona Opp. at 2. That statement is just wrong: Dr. Yurukoglu deployed Dr. Zona's models solely to demonstrate that they are fundamentally *unsound*, including because the outputs are driven almost entirely by Dr. Zona's cherry-picked inputs.

For his part, Dr. Zona has produced a series of new econometric models, but these models fail to cure his initial mistakes, and instead come with new problems.

1

We address those flaws in detail below, but one highlights the overarching problem. Initially, Dr. Zona claimed that his primary model (which the parties have referred to as the Viewership and Transaction Model, or V&T Model for short) is reliable because it accurately simulates the real-world price and demand for Sunday Ticket. Now, after overhauling the model in an attempt to correct for the many errors we identified, Dr. Zona claims that the model is reliable because it does *not* accurately simulate the real-world price and demand for Sunday Ticket. The coin cannot always come up heads. The Court should exclude his testimony.

## ARGUMENT

### I. Plaintiffs Misstate The Legal Standards Governing The Admissibility Of Dr. Zona's Work.

Before addressing the substance of Dr. Zona's new analysis, it is important to rebut three fundamental misstatements of law and fact in Plaintiffs' briefs:

**Dr. Zona must put forth both reliable *and* class-wide methodology.** Plaintiffs repeatedly suggest that the only relevant question at the class certification stage is "whether the expert's methodology 'is capable of resolving a common issue central to the plaintiffs' claims.'" Zona Opp. at 8 (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022)). That is an essential part of the inquiry, but it is not the only one. The Court must also "make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *3 (C.D. Cal. June 7, 2017) (Gutierrez, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)). A fundamentally unreliable method is inadmissible even if it spits out a class-wide result.

**Plaintiffs and Dr. Zona cannot promise to fix their models later.** Plaintiffs wrongly suggest that they can fix any problems with their current models at the merits stage. *See, e.g.*, Zona Opp. at 6–7 n.3 (Dr. Zona's "current modeling, in other words, does not purport to be the final version that he will use to estimate damages at trial.").

2

At the class certification stage, the court must rigorously analyze the actual model Plaintiffs have produced. "[W]here an expert's model is the basis for a plaintiff's claim of classwide impact and causation, a court is obliged to rigorously examine the soundness of *that model* at the class certification stage." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 554–55 (S.D.N.Y. 2021) (emphasis added). The Court cannot accept speculation about how the flaws in the model might be corrected later in the case. *See id.*; *see also Cabbat v. Philip Morris USA, Inc.*, 2014 WL 32172, at *12 (D. Haw. Jan. 6, 2014) (rejecting class certification where counsel offered "bare representations" about the damages methodology "[w]ithout any specifics regarding how damages would be calculated").

**The Court can scrutinize the results of Dr. Zona's models in evaluating their reliability.** Plaintiffs suggest that it is "extra" and "unnecessary" for Dr. Zona to reveal to the court the "class but-for prices under various competitive scenarios." Zona Opp. at 2. Plaintiffs have no choice but to make this argument because the outputs of Dr. Zona's analysis are disqualifying. *See* Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona ("Zona Mot."), Dkt. 703-1, at 9–11 (describing irrational results); *infra* at 7–10 (same). The argument is wrong: The Court can and should scrutinize what Dr. Zona's models say to the extent the results shed light on the reliability of his work.

*Laumann* is directly on point. There, the plaintiffs presented an economic model at the class certification stage that yielded absurd results. *See Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 318 (S.D.N.Y. 2015). The court rejected the expert's methods under Rule 702 in part because of those absurdities. *Id.* The court did not suggest—and Plaintiffs cite no authority holding—that the model's results cannot be part of the evaluation at the class certification stage.

II. **Dr. Zona Improperly Applies A Results-Driven Methodology.**

An expert's methodology cannot be driven by the results the expert hopes to reach. As one court explained, it is improper for an expert's "methodology and

3

selection of relevant evidence [to] change[] based on the results they produced," and an expert cannot "ignore and exclude from his report his own analysis that did not support his ultimate opinions." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 145 F. Supp. 3d 573, 594 (D.S.C. 2015), *aff'd*, 892 F.3d 624 (4th Cir. 2018). Nor can an expert "form[] an opinion first, s[eek] statistical evidence that would support his opinion and ignore[] his own analyses and methods that produced contrary results." *Id.*; *see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007). Dr. Zona commits this cardinal error several times over.

A. The most notable example involves a stark pivot from his opening report to his reply report. Initially, Dr. Zona claimed his V&T Model was reliable because it accurately simulated real-world prices and demand for Sunday Ticket. Expert Report of J. Douglas Zona ("Zona Report"), Dkt. 633-3, ¶ 41 (model's accuracy was confirmed by "verifying that the predicted quantities of [Sunday Ticket] subscriptions at actual prices deviate from actual quantities only by a small percentage"). To drive the point home, he included a chart showing that his model accurately predicts "Sunday Ticket 2018 prices and subscriptions." *Id.* ¶ 69, Ex. 17 (comparing real-world price of ▮▮▮ to simulated price of ▮▮▮). These assertions make intuitive sense: A model that cannot predict the real world cannot be trusted to simulate alternatives. To use a simple analogy, it would be hard to take seriously a model regarding iPhone prices that simulated a real-world price of $1.

Now, Dr. Zona has taken exactly the opposite position. As a result of his attempts to address our critiques, *none* of his models accurately predicts the real-world price of Sunday Ticket (roughly $294). His models' predictions range from ▮▮▮ to ▮▮▮ (V&T Model, *see* Errata to Expert Reply Report of J. Douglas Zona ("Zona Reply Report Errata"), Dkt. 786-1, ¶ 4); to ▮▮▮ (Conjoint Model, *see* Expert Reply Report of J. Douglas Zona ("Zona Reply Report"), Dkt. 779-2, ¶ 63). Evaluated through Dr. Zona's earlier lens, these results—which deviate from

4

the real world by far more than "a small percentage," Zona Report ¶ 41—should be disqualifying. Instead, he claims these results are *good*, because they confirm that Defendants are artificially inflating the price of Sunday Ticket. Zona Reply Report ¶ 58; Zona Opp. at 21 (claiming that this distinction "confirm[s] a core allegation").

Both of these things cannot be true. Dr. Zona's model cannot be reliable and confirmatory of Plaintiffs' allegations on August 19 because it predicts real-world prices, yet also reliable and confirmatory of those allegations on December 2 because it does *not* predict real-world prices. This type of methodological flip-flop is indefensible under *Daubert* because it proves the results are driving the methods, not other way around. *Lipitor*, 145 F. Supp. 3d at 594; *see also Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (rejecting expert who "failed to apply his own methodology reliably").

Dr. Zona's new conclusion—that his models' inability to predict real-world prices actually proves Plaintiffs' case—is also methodologically flawed on its own. Both Plaintiffs and Dr. Zona assume that the difference between the real-world Sunday Ticket price and the much lower prices simulated by his model stems from the antitrust conspiracy alleged in this case. But as Dr. Yurukoglu explained, that is not the only possible explanation. The other explanation, with much more support in the record, is that Dr. Zona has created bad models. *See* Expert Report of Ali Yurukoglu ("Yurukoglu Report"), Dkt. 703-2, ¶¶ 16–93. It is Plaintiffs who "do[] not analyze" the possible explanations for their model's outputs, Zona Opp. at 3, and it is Plaintiffs who have the burden to do so. *Lust By and Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996).

B. Dr. Zona's treatment of marginal cost also reflects a results-driven approach. Dr. Zona and Dr. Rascher both agree that marginal cost is an important input to a model, and that there is one marginal cost for distributing Sunday Ticket. *See* Zona Report ¶ 64; Kilaru Decl. Ex. 2 (Rascher Tr. 132:23–133:3); Zona Reply Report ¶ 54. But as we explained in our opening brief, Dr. Zona changes the marginal

5

Case No. 2:15-ml-02668-PSG (JEMx)                    Reply Memorandum in Support of the NFL Defendants'
                                                      Motion to Exclude the Opinions of J. Douglas Zona

cost number in each of his models, from ▉ all the way down to ▉, and this manipulation is what drives most if not all of the damages in each model. Zona Mot. at 18–22. These results are proof that Dr. Zona is "select[ing] relevant evidence . . . based on the results [it] produce[s]." *Lipitor*, 145 F. Supp. 3d at 594.

Plaintiffs provide no adequate response. Much of their opposition is devoted to suggesting that three of the numbers Dr. Zona used—▉▉▉▉▉▉▉▉▉, might be appropriate estimates. *See* Zona Opp. at 18–23. But that sidesteps the central problem: Dr. Zona offers no explanation for why he shifts numbers *between* models, other than because of the results they generate. Yurukoglu Report ¶¶ 63–64, 70.

Plaintiffs also fail to offer reasoned justifications for those marginal cost figures. Plaintiffs say it was reasonable for Dr. Zona to manipulate his model-generated marginal cost of ▉ down to ▉ because ▉ looks too high. *See* Zona Opp. at 19. But Defendants and Dr. Yurukoglu showed that there was no principled basis for dividing the model-generated number by ▉ (a wholly invented number), *see* Zona Mot. at 18–20; Yurukoglu Report ¶¶ 55–58, and neither Plaintiffs nor Dr. Zona offers any response, *see* Zona Opp. at 16–23; Zona Reply Report ¶¶ 54–61.

Similarly, Plaintiffs say that the ▉▉▉ marginal cost comes from Defendants' "own modeling and cost estimations," Zona Opp. at 21, but that is just speculation about a 42-page spreadsheet. Contrary to Plaintiffs' suggestion, *see id.*, they developed no evidence of who created the spreadsheet or for what purpose, or where the data came from, among other questions. *Id.* at 20–21. Further, the "number of tabs in [the] modeling spreadsheet" are relevant, *id.* at 21, because they illustrate that Dr. Zona cherry-picked a number, with no context for the number itself or the document in which it is situated. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony inadmissible when "there is simply too great an analytical gap between the data and the opinion proffered").

Unable to defend Dr. Zona's specific numbers, or his vacillation between them, Plaintiffs resort to the curious argument that any marginal cost number above

6

Case No. 2:15-ml-02668-PSG (JEMx)    Reply Memorandum in Support of the NFL Defendants'
                                      Motion to Exclude the Opinions of J. Douglas Zona

zero is conservative because it "inflates the estimated prices that would have prevailed but for the anticompetitive conduct, thus reducing the estimated damages." Zona Opp. at 20. Leaving aside that using a marginal cost of ▇ in Dr. Zona's models throws them farther out of touch with reality, *see* Yurukoglu Report ¶ 62, Plaintiffs identify no authority for the proposition that a court should admit "junk science" because it is allegedly conservative. *Amorgianos*, 303 F.3d at 267.

### III. Dr. Zona Fails To Remedy The Irrational Outcomes And Errors In His Models.

#### A. Dr. Zona's Efforts To Address His Elementary Collinearity Error Produce Results That Are Directly At Odds With Plaintiffs' Case.

sPlaintiffs and Dr. Zona do not dispute that perfect collinearity is a significant methodological flaw. Dr. Zona's initial V&T Model thus must be excluded. While Plaintiffs and Dr. Zona suggest that his model did not suffer from this elementary flaw, Zona Opp. at 11–12, their actions suggest otherwise: Plaintiffs have not moved to exclude Dr. Yurukoglu's opinions on the merits, and Dr. Zona has created a new model trying to address the flaw.[1] His fix plugs one hole but opens others.

As an initial matter, the fix in Dr. Zona's new model is methodologically unsound. Defendants previously explained that the collinearity problem pervades Dr. Zona's models of demand for both Sunday Ticket and DirecTV—both of which are essential inputs to his overall conclusions. Zona Mot. at 11–14. Plaintiffs claim

---

[1] Plaintiffs and Dr. Zona's efforts to dispute the collinearity problem are meritless. Dr. Yurukoglu has already explained that Dr. Zona's error was much more than a "standard, default function of a computer-software program," Zona Opp. at 12. As Dr. Zona has admitted, his regressions did not just "drop the indicator variable for a single year (2018)," *id.* at 11, but rather ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Zona Tr. 101:16–19, 107:5–108:13; Yurukoglu Report ¶ 34. That is proof that the model Dr. Zona was trying to run, which dropped just 2018 variables, *was* "mathematically impossible to run." Zona Opp. at 11. "The fact that Dr. Zona [was] able to generate results," *id.*, does not change anything either, because the outputs of the regression were unreliable and, in some cases, directly undermined Dr. Zona's conclusions. *See* Yurukoglu Report ¶¶ 32–37.

7

that Dr. Zona's new model fixes these problems, but it does not. As Dr. Yurukoglu explains, Dr. Zona's new model failed to salvage the prior model's improper regressions, and instead contains even more methodological weaknesses. Kilaru Decl. Ex. 1 (Declaration of Ali Yurukoglu ¶¶ 5–14) ("Yurukoglu Decl.").[2]

Dr. Zona's new V&T Model also undermines Plaintiffs' central allegations. The new model suggests that adding more distributors of Sunday Ticket beyond just DirecTV ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Zona Reply Report Errata ¶ 4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Further, one of Dr. Zona's analyses suggests that adding more distributors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See id. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ These predictions stand in stark contradiction to Plaintiffs' theory of liability in this case, which is that broader distribution of out-of-market games would lower prices. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

### B. Dr. Zona's Primary Model Continues To Reach Irrational Conclusions About Consumer Behavior.

The V&T Model that Dr. Zona initially presented made several irrational conclusions about consumer preferences that are of the type that have led other courts to exclude econometric models at the class certification stage. *See* Zona Mot. at 10–

---

[2] A reply report should directly respond to or address "new unforeseen facts" brought out in the other side's report on the same subject matter, and is not the "proper place for presenting new arguments." *Rodas v. Porsche Cars N. Amer.*, 2016 WL 6033535, at *9 (C.D. Cal. Apr. 4, 2016). In submitting his reply report, Dr. Zona has deployed revised models and analyses that he could have conducted earlier. These new analyses are not properly before the court. *See Hoist Fitness Sys., Inc. v. TuffStuff Fitness Intern., Inc.*, 2019 WL 3209451, at *3 (C.D. Cal. Jun. 10, 2019). Rather than burden the Court with a motion to strike these improper opinions, we asked Dr. Yurukoglu to evaluate these new analyses. He has submitted a short accompanying declaration to aid the Court's consideration of the issues.

8

1 11; Yurukoglu Report ¶ 44; *Laumann*, 117 F. Supp. 3d at 318. Dr. Zona claims he has resolved these admittedly ▮▮▮▮ by attempting to correct an error in his model's code. Zona Reply Report ¶ 12. But problems persist.

First, one central problem with Dr. Zona's initial model was that it suggested consumers would prefer to ▮▮▮▮ *See* Zona Opp. at 9–10; Kilaru Decl. Ex. 3 (Zona Tr. 172:12–16). The new model yields the still absurd result that ▮▮▮▮ *See* Zona Reply Report at 8–10 ▮▮▮▮ No rational consumer would hold the preferences predicted by Dr. Zona's model.

Second, Dr. Zona's new charts—which display the value consumers in certain zip codes get from various packages of NFL football—display new absurdities. Dr. Zona's analysis suggests that ▮▮▮▮ *See* Yurukoglu Decl. ¶ 15; Zona Reply Report at 10. ▮▮▮▮ Zona Reply Report at 8. ▮▮▮▮ *Id.* at 9. These results "make no sense," *Laumann*, 117 F. Supp. 3d at 318, and contradict the substantial record evidence of the popularity of these teams in their home markets. *See, e.g.*, Kilaru Decl. Ex. 4 ▮▮▮▮

Third, Dr. Zona's new calculations of the value of the games in the Sunday Ticket package contain further irrationalities. Dr. Zona's model now suggests that ▮▮▮▮ Yurukoglu Decl. ¶ 17. ▮▮▮▮

1 █████████████████████████████████████████████████████████

2 ████████████████████████████ *Id.* ███████████████████████

3 ██████████████████████████████████████████████████████ *Id.*

Results of this sort are not just irrational, but fundamentally at odds with Plaintiffs' theory that more telecasts are better for fans. *See Comcast*, 569 U.S. at 35 ("[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'").

IV. **Dr. Zona's Remaining Models Should Be Excluded.**

A. **The Conjoint Model Takes A Flawed Approach To Flawed Data.**

Contrary to Plaintiffs' suggestion, the mere fact that they ran a survey does not distinguish their case from *Laumann*. *See* Zona Opp. at 24. The problem in *Laumann* was that the plaintiffs did not have sufficient data, including any consumer survey, to generate a reliable class-wide damages model. 117 F. Supp. 3d at 309. As Defendants explain in the companion reply brief regarding Ms. Butler's opinions, the same is true here, because Plaintiffs' survey is not fit for the purpose for which it is being used. *See* Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of Sarah Butler ("Butler Mot."), Dkt. 701-1, at 1–2.

It is telling how little Dr. Zona does to respond to the survey's flaws. Like Ms. Butler, he does not meaningfully address them or assess how they affect his results. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Zona Reply Report ¶ 65; *see* Butler Mot. at 4–5. ████████████████████████ █ does not reflect a reliable methodology. *See Amorgianos*, 303 F.3d at 267.

B. **Dr. Zona's Other Models Do Not Withstand Scrutiny.**

In his initial report, Dr. Zona offered two other purported damages models: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *see* Zona Report ¶¶ 125–29, and the Basic Tier Model, which simulated a world in which

10

Case No. 2:15-ml-02668-PSG (JEMx)            Reply Memorandum in Support of the NFL Defendants'
                                             Motion to Exclude the Opinions of J. Douglas Zona

#:26996

1  DirecTV makes Sunday Ticket part of one of its basic tiers of MVPD service rather
2  than selling it as a standalone product, *id.* ¶¶ 72–82. Dr. Zona has all but abandoned
3  these models, precluding them from serving as a basis for certification.

4      To start, Plaintiffs incorrectly suggest that "[t]he NFL does not challenge the
5  NFL Survey model." *See* Zona Opp. at 5. In our opening brief, we explained that
6  we did not address that model in detail because Plaintiffs had all but abandoned it.
7  *See* Zona Mot. at 5 n.1; *see also* Yurukoglu Report at 13. ██████████
8  ██████████████████████████████ *see, e.g.*, Zona Tr. 250:10–11 ████████
9  ██████████████████████████, and Dr. Rascher ████████████
10 ██████████████████████████ *see* Rascher Addendum, Dkt. 663-2, ¶¶ 8–9. There
11 is accordingly no basis for resuscitating it at the eleventh hour.

12     Plaintiffs' effort to minimize the flaws with the Basic Tier Model likewise fail.
13 In response to Defendants' critiques, *see* Zona Mot. at 23–25, Plaintiffs now suggest
14 that Dr. Zona did not offer that approach as a "full damages model[]" but as support
15 for his and Dr. Rascher's other models. *See* Zona Opp. at 5; *id.* at 25 (the Basic Tier
16 model "was never intended to be a complete model of a but-for price"). These
17 statements do not cohere with what Plaintiffs said two months ago—in his opening
18 report, Dr. Zona calculated a class-wide "reduction factor" based on this model, Zona
19 Report ¶¶ 72–82, and Dr. Rascher used that reduction factor to justify a freestanding
20 projection of ████████ in damages, Rascher Report ¶ 283. The fact that Plaintiffs
21 no longer trust this model suggests that the Court should not either.

**C. Dr. Zona's Approach To The Commercial Class Is Indefensible and Undermines His Damages Modeling For Both Classes.**

24     Plaintiffs appear to agree that Dr. Zona did no independent analysis of the
25 commercial class in this case, and improperly mixed and matched data from the
26 Residential and Commercial Classes throughout his analysis. *See* Zona Mot. at 16–
27 17; Yurukoglu Report ¶ 95. Dr. Zona makes no attempt to cure or even address these
28 deficiencies in his reply report. *See* Zona Reply Report ¶¶ 68–71.

Case No. 2:15-ml-02668-PSG (JEMx)    Reply Memorandum in Support of the NFL Defendants'
Motion to Exclude the Opinions of J. Douglas Zona

Plaintiffs' response instead involves a series of unsupported assumptions. They attempt to justify Dr. Zona's failure to consider the commercial class by assuming it is materially similar to the residential class. Zona Opp. at 14–15; *see* Zona Reply Report ¶ 68 ████████████████ ████████████████ ████████████████ (emphasis added)). But they include virtually no citations to the record on this front, because it actually shows the opposite. At their depositions, ████████████ ████████████████ ████████████ Zona Mot. at 16–18 (collecting citations). Moreover, while Defendants have objected to Dr. Zona's decision to cherry-pick a marginal cost number out of a lengthy and anonymous NFL spreadsheet, *see supra* at 6, that same spreadsheet would ████████ ████████████████ ████████ *See* Zona Tr. 247:8–249:7. Plaintiffs cite no authority supporting the use of such broad-ranging assumptions in the face of contrary evidence. *See McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("[E]xpert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions.").

More broadly, even if the commercial class were in fact similar to the residential class, the answer would be for Dr. Zona to consistently use both sets of data throughout his model. His decision to instead blend the data sets where convenient infects his analysis of both the residential and commercial classes, and requires the wholesale exclusion of his work. Zona Mot. at 16–17.

## CONCLUSION

For the foregoing reasons, along with those set forth in the Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona, Dkt. 703-1, Dr. Zona's opinions should be excluded under Rule 702.

12

Case No. 2:15-ml-02668-PSG (JEMx) — Reply Memorandum in Support of the NFL Defendants' Motion to Exclude the Opinions of J. Douglas Zona

Dated: December 16, 2022

Respectfully submitted.

/s/ *Rakesh N. Kilaru*

Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*