Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY NFL EXPERT DR. ALI YURUKOGLU**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: January 27, 2023<br>Time: 1:30 p.m.<br>Courtroom: First Street Courthouse<br>350 West 1ˢᵗ Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

BACKGROUND....................................................................................2

    A.    Dr. Yurukoglu's involvement in the *Laumann* litigation....................2

    B.    Dr. Yurukoglu's involvement in this litigation. ...............................3

LEGAL STANDARD .............................................................................4

ARGUMENT ........................................................................................6

I.    Plaintiffs Cannot Satisfy Any of the Requirements to Exclude an Expert on the Grounds of a Party Conflict. ..............................................6

    A.    Dr. Yurukoglu did not have a prior confidential relationship with any party to this litigation. ................................................6

    B.    Dr. Yurukoglu did not receive any confidential information in *Laumann* that is relevant to his work in this case...........................11

    C.    Policy considerations confirm that exclusion is inappropriate..........13

II.    Plaintiffs Cannot Seek Discovery of Defendants' Privileged Communications.................................................................................15

CONCLUSION ....................................................................................16

i

Case No. 2:15-ml-02668-PSG  (JEMx)        **NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to Disqualify NFL Expert Dr. Ali Yurukoglu**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell N. Research, LLC v. ZTE Corp.*,
    2019 WL 1590472 (S.D. Cal. Apr. 12, 2019) .................................................. 5

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
    2009 WL 249386 (N.D. Ill. Feb. 2, 2009) ...................................................... 12

*BP Amoco Chem. Co. v. Flint Hills Res.*,
    500 F. Supp. 2d 957 (N.D. Ill. 2007) ..................................................... 5, 12

*Calendar Research LLC v. StubHub, Inc.*,
    2017 WL 10378337 (C.D. Cal. Sept. 22, 2017) ............................................. 6

*Chiesi USA, Inc. v. Sandoz, Inc.*,
    2015 WL 13932698 (D.N.J. Mar. 31, 2015) ........................................... 7, 11

*Dahl v. Sec'y of Health & Hum. Servs.*,
    2014 WL 1618158 (Fed. Cl. Apr. 2, 2014) .................................................... 9

*Dyson, Inc. v. Bissell Homecare, Inc.*,
    951 F. Supp. 2d 1009 (N.D. Ill. 2013) ......................................................... 5

*Edward Vacuum LLC v. Hoffman Instrumentation Supply, Inc.*,
    2020 WL 7360682 (D. Ore. Dec. 15, 2020) ................................................. 6

*English Feedlot, Inc. v. Norden Lab., Inc.*,
    833 F. Supp. 1498 (D. Colo. 1993) ........................................................... 14

*Garber v. Office of the Commissioner of Baseball*,
    No. 1:12-cv-03704-VEC (S.D.N.Y.) ....................................................... 2, 3

*Gordon v. Kaleida Health*,
    2013 WL 2250506 (W.D.N.Y. May 21, 2013) ................................. 5, 7, 8, 16

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005) ................................................................ 9

*Harvey v. Jones*,
    2006 WL 1889314 (W.D. Wa. July 7, 2006) ................................................ 7

    **NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to Disqualify NFL Expert Dr. Ali Yurukoglu**

*Hewlett-Packard Co. v. EMC Corp.*,
  330 F. Supp. 2d 1087 (N.D. Cal. 2004) ................................................ *passim*

*Koch Refining Co. v. Jennifer L. Boudreaux MV*,
  85 F.3d 1178 (5th Cir. 1996) .......................................................................... 8

*Laumann v. Nat'l Hockey League*,
  105 F. Supp. 3d 384, (S.D.N.Y. 2015) ..................................................... 3, 10

*Laumann v. Nat'l Hockey League*,
  117 F. Supp. 3d 299 (S.D.N.Y. 2015) ........................................................... 2

*Laumann v. Nat'l Hockey League*,
  No. 1:12-cv-01817-SAS, Dkt. 379 (S.D.N.Y. Sept. 1, 2015) ......................... 3

*Laumann v. National Hockey League*,
  No. 1:12-cv-01817-SAS (S.D.N.Y.) ..................................................... *passim*

*Life Tech. Corp. v. Biosearch Tech., Inc.*,
  2012 WL 1604710 (N.D. Cal. May 7, 2012) ................................................ 12

*In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*,
  148 F. Supp. 3d 1358 (U.S. Jud. Pan. Mult. Lit. 2015) .................................. 3

*In re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*,
  No. 2:15-ml-02668-PSG (C.D. Cal.) .............................................................. 4

*Pellerin v. Honeywell Intern., Inc.*,
  2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ............................................... 5, 6

*Perfect 10, Inc. v. Giganews, Inc.*,
  2014 WL 10894452 (C.D. Cal. Oct. 31, 2014) .......................................... 4, 6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  965 F. Supp. 2d 104 (D.C. Cir. 2013) .......................................................... 10

*Rhodes v. E.I. Du Pont De Nemours & Co.*,
  558 F. Supp. 2d 660 (S.D. W. Va. 2008) ................................................ 11, 12

*Sharp v. Next Entm't Inc.*,
  163 Cal. App. 4th 410 (2008) ....................................................................... 10

*Tauric v. Rosas*,
  2011 WL 2671517 (E.D. Cal. July 6, 2011) ................................................. 10

iii

*Veazey v. Hubbard*,
   2008 WL 5188847 (D. Haw. Dec. 11, 2008) ................................................. 12

*W.R. Grace & Co. v. Gracecare, Inc.*,
   152 F.R.D. 61 (D. Md. 1993) ....................................................................... 12

**Other Authorities**

Crawford, G., & Yurukoglu, A., *The Welfare Effects of Bundling in
   Multichannel Television Markets* 102 .......................................................... 2

Model Rules of Prof'l Conduct 1.7 cmt. 25 .................................................... 10

Party, Black's Law Dictionary (11th ed. 2019) ............................................... 7

# INTRODUCTION

Professor Ali Yurukoglu's report demonstrated multiple disqualifying flaws in Plaintiffs' efforts to model, on a class-wide basis, impact and damages allegedly caused by the agreements challenged in this case. Plaintiffs seek to exclude Dr. Yurukoglu's testimony because, five years ago, he consulted with Plaintiffs' counsel in a case involving different plaintiffs, different sports, different defendants, different challenged distribution arrangements, and different econometric modeling approaches. The motion is meritless.

The bar to disqualify an expert over a putative conflict of interest is high; disqualification is "rare" and appropriate only in an "extreme" case. Plaintiffs come nowhere near meeting this standard, which requires at a minimum (i) that the expert have had a confidential relationship with a *party* to a litigation, and (ii) that the party have provided the expert with confidential information relevant to the current case.

Plaintiffs do not—and cannot—contend that Dr. Yurukoglu has ever had access to confidential information of any of the *parties* (*i.e.*, the four named Plaintiffs) in this case. Nor can they explain the relevance of Dr. Yurukoglu's previously consulting with Plaintiffs' counsel in a prior case that ███████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ That is especially true in light of Plaintiffs' having taken pains throughout their class submissions to distinguish their model from the one at issue in *Laumann*, the prior case.

Unable to satisfy the relevant requirements, Plaintiffs seek to modify and expand the expert-disqualification doctrine to apply whenever an expert has worked with a given *attorney*, and to do so based on only the vaguest criteria for relatedness between cases. That expansion is unsupported by precedent or policy, and Plaintiffs' motion should be denied.

1

**BACKGROUND**

**A.     Dr. Yurukoglu's involvement in the *Laumann* litigation.**

A decade ago, in 2012, the National Hockey League ("NHL"), NHL teams, Major League Baseball ("MLB"), MLB clubs, certain regional sports networks, Comcast, and DirecTV were sued in two consolidated cases, *Laumann* and *Garber*. The named plaintiffs in the litigation were individuals that are not involved in this case.[1] Those plaintiffs alleged that the NHL and MLB had entered into agreements with regional sports networks and distributors that reduced viewing opportunities and inflated prices of NHL and MLB games, respectively.  *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 302 (S.D.N.Y. 2015).

The *Laumann* plaintiffs retained Dr. Yurukoglu as a consulting expert to address economic modeling issues related to class certification.  Diver Decl. ¶ 6. Before his involvement in the *Laumann* litigation, Dr. Yurukoglu had conducted path-breaking, quantitative economic research on the welfare effect of bundling in MVPD markets.  *See* Crawford, G., & Yurukoglu, A., *The Welfare Effects of Bundling in Multichannel Television Markets* 102 AMERICAN ECONOMIC REVIEW 643 (2012).  Dr. Yurukoglu's paper is a leading contribution in the field, and Plaintiffs' expert, Dr. Rascher, cited the paper in his opening report on this topic before knowing that Dr. Yurukoglu would be serving as an expert in this case.  Expert Report of Dr. Daniel A. Rascher, Dkt. 630-4, ¶ 98 n.112.

In the *Laumann* litigation, Plaintiffs purported to try to base their impact and damages analysis on the model presented in Dr. Yurukoglu's paper, and Plaintiffs assert that Dr. Yurukoglu assisted in coding portions of the *Laumann* plaintiffs' model.  *See* Diver Decl. ¶ 6; *Laumann*, 117 F. Supp. 3d at 304.  The model presented

---

[1] The named plaintiffs in *Laumann* were Thomas Laumann, Robert Silver, Garrett Traub, David Dillon, Marc Lerner, and Derek Rasmussen, and the named plaintiffs in *Garber* were Fernanda Garber, Marc Lerner, Derek Rasmussen, Robert Silver, Garrett Traub, and Vincent Birbiglia.  *See Laumann v. National Hockey League*, No. 1:12-cv-01817-SAS (S.D.N.Y.); *Garber v. Office of the Commissioner of Baseball*, No. 1:12-cv-03704-VEC (S.D.N.Y.).

2

by the *Laumann* plaintiffs attempted to measure the extent of the defendants' alleged overcharges compared to a but-for world in which the alleged antitrust constraints— *i.e.*, the territorial restraints on individual team agreements with regional sports networks and distributors—were removed.  *Laumann*, 117 F. Supp. 3d at 303.

In May 2015, the *Laumann* district court deemed the plaintiffs' damages model inadmissible, and accordingly denied certification of the proposed damages classes. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 398–99 (S.D.N.Y. 2015). The court certified an injunctive class.  *See id.* at 387–88.  The parties then reached a class settlement, which the court approved in September 2015.  *See Laumann v. Nat'l Hockey League*, No. 1:12-cv-01817-SAS, Dkt. 379 (S.D.N.Y. Sept. 1, 2015).

## B.    Dr. Yurukoglu's involvement in this litigation.

Plaintiffs filed this case in 2015.  This case involves the NFL and not the NHL or MLB.  It involves football, not hockey or baseball.  And it challenges agreements between the NFL and DirecTV, and not arrangements that involve individual hockey or baseball teams and regional sports networks.  In fact, regional sports networks—a central feature of the telecast arrangements at issue in *Laumann*—play no role in the current telecasting of NFL games.

This case also does not involve the same plaintiffs.  The named Plaintiffs in this case are two individuals (Gary Lippincott, Jr. and Michael Holinko) and two corporate entities (Ninth Inning Inc., dba The Mucky Duck, and 1465 Third Avenue Restaurant Corp., dba Gael Pub).  *See* Second Consolidated Amended Complaint, Dkt. 441.  None of these named plaintiffs overlap with the named plaintiffs in *Laumann*.[2]

---

[2] There were a number of complaints filed at the outset of the case, which were transferred to the Central District of California by the Joint Panel on Multidistrict Litigation on December 8, 2015.  *In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 148 F. Supp. 3d 1358 (U.S. Jud. Pan. Mult. Lit. 2015).  There is also no overlap between the various named plaintiffs in those complaints and the named plaintiffs in *Laumann*.  *Compare Laumann v. National Hockey League*, No. 1:12-cv-01817-SAS (S.D.N.Y.) *and Garber v. Office of the Commissioner of Baseball*, No.

1   To support their motion for class certification, Plaintiffs retained an

2   econometric expert (Dr. J. Douglas Zona), as well as a survey expert (Sarah Butler)

3   and an economist (Dr. Daniel A. Rascher). *See* Memorandum of Law In Support of

4   Plaintiffs' Motion to Certify Class, Dkt. 633-1. Plaintiffs' experts proffered damages

5   models that simulate alternative prices for the residential Sunday Ticket package in

6   three different but-for worlds. Plaintiffs concede that their economic damages

7   models here are not based on the model that Dr. Yurukoglu developed as part of his

8   academic research, and are instead "of a different type" than that advanced by the

9   plaintiffs in *Laumann*. *See* Plaintiffs' Motion to Disqualify Dr. Ali Yurukoglu, Dkt.

10  765-1 ("Yurukoglu Motion"), at 3 n.2.

11  The NFL Defendants retained Dr. Yurukoglu, as well as Dr. Mark Israel and

12  Dr. Nancy Mathiowetz, in support of their opposition to class certification. *See*

13  Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Dkt.

14  688-1 at 3. The NFL Defendants engaged Dr. Yurukoglu ████████████████

15  ███████████████████████████████████████████████████████████

16  ██████████████████████████ The NFL Defendants asked Dr. Yurukoglu

17  to ██████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████ █

20  ███████████████████████████████████████████████████████████

21  ████████████

22  <u>**LEGAL STANDARD**</u>

23  Courts "reserve the power to disqualify an expert for rare or extreme cases."

24  *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31,

25  2014) (disqualifying plaintiff's expert due to his direct financial stake in the

26  litigation). Disqualification of an expert based on a conflict of interest "is a 'drastic

27  _____

28  1:12-cv-03704-VEC (S.D.N.Y.), *with In re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, No. 2:15-ml-02668-PSG (C.D. Cal.).

4

measure which courts should hesitate to impose except when absolutely necessary.'" *BP Amoco Chem. Co. v. Flint Hills Res.*, 500 F. Supp. 2d 957, 960 (N.D. Ill. 2007) (quoting *Commonwealth Ins. Co. v. Stone Container*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001)).

Applying this stringent standard, courts consider potential disqualification of an expert only where (i) "the *party* claiming a conflict reasonably [could] conclude it had a confidential relationship with the expert" and (ii) "*that party* disclose[d] any confidential or privileged information to the expert." *Pellerin v. Honeywell Intern., Inc.*, 2012 WL 112539, at *2 (S.D. Cal. Jan. 12, 2012) (emphasis added). The information disclosed by the party to the expert in the course of the prior, confidential relationship must also be "relevant to the current litigation." *Bell N. Research, LLC v. ZTE Corp.*, 2019 WL 1590472, at *3 (S.D. Cal. Apr. 12, 2019).

In short, disqualification is justified only where necessary "to avoid the risk of prejudice from possible disclosure and use of confidential client communications." *Gordon v. Kaleida Health*, 2013 WL 2250506, at *6 (W.D.N.Y. May 21, 2013). The expert-disqualification doctrine exists to protect against "the fundamental unfairness that would arise if 'an expert hired by a party, who at that party's expense obtains specific knowledge and expertise in the issues involved in the litigation, [were permitted] to then be hired by the opposing party and allow the opposing party to reap the benefits of that work.'" *Id.* (citing *Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F. Supp. 334, 336 (N.D. Ill. 1990)).

"[T]he Court also should consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process," *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004), and should bear in mind that the moving party bears a significant burden in showing that an expert should be excluded based on a conflict of interest, *see Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1022–23 (N.D. Ill. 2013) (collecting authorities).

## ARGUMENT

**I.     Plaintiffs Cannot Satisfy Any of the Requirements to Exclude an Expert
on the Grounds of a Party Conflict.**

Plaintiffs cannot meet *any* of the elements of the stringent disqualification test. This is not the "extreme" case in which an expert attempts to testify against the interests of a party (i) with whom the expert had a prior, confidential relationship (ii) through which the expert obtained confidential information about the party that is relevant to the expert's current assignment. *Perfect 10*, 2014 WL 10894452, at *4. To the contrary, Dr. Yurukoglu had no prior relationship at all with the Plaintiffs in this case, and the putative model here is fundamentally different from the one in *Laumann*.

Plaintiffs do not attempt to satisfy the established elements of the expert-exclusion doctrine. Instead, Plaintiffs seek to expand the doctrine to cover situations in which an expert had a prior "consulting relationship with Plaintiffs' *counsel*" in a different litigation. *See* Yurukoglu Motion at 1 (emphasis added). That effort is not supported by precedent, and it runs counter to the rationale for disqualification.

**A.     Dr. Yurukoglu did not have a prior confidential relationship with
any party to this litigation.**

To obtain disqualification, Plaintiffs must show that Dr. Yurukoglu had a prior confidential relationship with a *party* to the present case. *See Pellerin*, 2012 WL 112539, at *2. That is because the power to disqualify exists to protect the confidential information of "parties." *See, e.g.*, *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378337, at *1 (C.D. Cal. Sept. 22, 2017) (disqualification may be appropriate "when the expert obtains confidential information relating to the present dispute in the course of a confidential relationship with the *party* seeking disqualification" (emphasis added)); *Edward Vacuum LLC v. Hoffman Instrumentation Supply, Inc.*, 2020 WL 7360682, at *6 (D. Ore. Dec. 15, 2020) (test is "(1) whether it was objectively reasonable for the moving *party* to conclude that a

6

Case No. 2:15-ml-02668-PSG (JEMx)                    NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to
                                                     Disqualify NFL Expert Dr. Ali Yurukoglu

confidential relationship existed between client and expert; and (2) whether the moving *party* disclosed confidential or privileged information to the expert" (emphasis added)); *Harvey v. Jones*, 2006 WL 1889314, at *1 (W.D. Wa. July 7, 2006) (test requires that "the moving party possessed an objectively reasonable basis to believe that a confidential relationship existed between *that party* and the expert witness" (emphasis added)).

None of the Plaintiffs in this case were parties to the *Laumann* litigation. *See supra* at 3. Plaintiffs have made no showing—nor could they—that any of them had *any* relationship with Dr. Yurukoglu, let alone a confidential relationship. That is fatal to this motion. *See, e.g.*, *Chiesi USA, Inc. v. Sandoz, Inc.*, 2015 WL 13932698, at *7 (D.N.J. Mar. 31, 2015) (denying motion to disqualify when expert owes no "duty of confidentiality" to moving party, which is a distinct entity from party engaging the expert in a prior litigation); *Hewlett-Packard*, 330 F. Supp. 2d at 1096 (denying motion for disqualification in part due to lack of confidential relationship between movant and expert).

Plaintiffs attempt to avoid this obvious threshold bar by asking the Court to extend the expert-exclusion rule to cover situations in which the cases share a commonality of *counsel*. But the meaning of the word "party" is well-established: it is "[o]ne by or against whom a lawsuit is brought; . . . a litigant." Party, Black's Law Dictionary (11th ed. 2019). Plaintiffs' attempted expansion of the disqualification standard would unmoor the doctrine from its specific, limited purpose "to avoid the risk of prejudice from possible disclosure and use of confidential client communications." *Gordon*, 2013 WL 2250506, at *6.

Plaintiffs' arguments for ignoring the fundamental requirement that the expert be in a position to misuse a party's confidential information do not withstand scrutiny.

*First*, the only case that Plaintiffs cite for the proposition that commonality of parties is not necessary, Yurukoglu Motion at 9, does not support their argument

1   about commonality of counsel.  *See Koch Refining Co. v. Jennifer L. Boudreaux MV*,

2   85 F.3d 1178, 1181 (5th Cir. 1996).  In *Koch Refining*, the insurer of a sunk barge

3   retained an expert in its insurance dispute with the barge owners.  1993 WL 408348,

4   at *1 (E.D. La. Oct. 6, 1993).  Three years later, the operators of the tugboat that had

5   been towing the barge when it sank retained the same expert in their dispute *with the*

6   *same insurer*, who had by that point aligned its litigation positions with the barge

7   owners and against the tugboat operators following a settlement of its insurance

8   dispute with the barge owners.  *Id.*  After finding that the insurer had provided the

9   expert with confidential information in the initial suit, the court granted the motion

10  to exclude filed by the insurer and the barge owners, preventing the expert from

11  testifying against his prior client (the insurer).  *See id.* at *2–3.

12      The Fifth Circuit affirmed the district court's finding that the insurer had a

13  reasonable expectation of confidentiality with the expert.  In doing so, the court noted

14  that the lawsuit was not the typical case of the expert switching sides.  *See Koch*

15  *Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996).  But

16  contrary to Plaintiffs' suggestion, it was not the identity of the *attorneys* that

17  distinguished the situation in *Koch Refining* from the typical case.  Instead, the

18  unusual feature of *Koch Refining* was that the *party* that had initially retained the

19  expert had "switched sides," moving from litigating against the barge owners to

20  joining the barge owners in litigation against the tugboat operators.  *See id.*  Indeed,

21  the Fifth Circuit's discussion of the disqualification issue repeatedly emphasized the

22  requirement that a confidential relationship exist between an expert and a "party"

23  (*i.e.*, the insurer that had switched sides in the litigation).  *See, e.g.*, *id.* at 1182

24  ("Initially, a court must determine whether the retaining *party* and the expert had a

25  relationship which permitted the retaining *party* reasonably to expect that any

26  communication would be maintained in confidence by the expert." (emphasis added)

27  (internal citations omitted)).

28

NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to
Disqualify NFL Expert Dr. Ali Yurukoglu

*Second*, Plaintiffs contend, without any basis, that an attorney's interest in his work product privilege justifies expansion of the expert exclusion doctrine. But Plaintiffs cite no cases supporting expansion on this ground, and courts have declined to broaden the expert disqualification doctrine based on other privileges. *See Dahl v. Sec'y of Health & Hum. Servs.*, 2014 WL 1618158, at *5 (Fed. Cl. Apr. 2, 2014) (rejecting application of attorney-client privilege in the expert disqualification doctrine). That is for good reason. Work product privilege is a broad category that covers counsel's "mental impressions, conclusions, opinions, or legal theories." *See Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005). Under Plaintiffs' proposed expansion of the disqualification doctrine, an attorney could argue that her work product includes strategy considerations relevant to a large number of only vaguely similar cases. Indeed, an attorney discloses "work product" to an expert in almost any engagement, and the attorney could thereby prevent opposing counsel from engaging a wide variety of experts in any case in which the attorney was involved. It is not surprising that Plaintiffs cannot marshal any support for that position.

*Third,* Plaintiffs' suggestion that the expert exclusion doctrine should apply because one of the class representatives in *Laumann* would be an absent class member if this case were certified, Yurukoglu Motion at 9–10, would prove far too much. Class actions by definition implicate a large number of potential plaintiffs (in many cases, literally millions of individuals). Applying the expert exclusion doctrine to absent class members would result in a vast expansion of disqualification without any basis—experts do not typically have any contact with, or share any particularized confidential information with, absent class members. It is again not surprising that Plaintiffs can cite no case in which the expert exclusion doctrine has been applied to absent class members.

*Fourth*, Plaintiffs contend that one of the named class members in this litigation, Mucky Duck, subscribed to NHL Center Ice and MLB Extra Innings during the class period in *Laumann*. *See* Yurukoglu Motion at 9. But again, there is

no evidence that Dr. Yurukoglu could have obtained any confidential information *from* Mucky Duck during his work on *Laumann* for multiple reasons. As shown by Dr. Yurukoglu's invoices, all of his work was performed prior to class certification, when Mucky Duck had no relationship to that litigation at all. *Compare* Diver Decl. ¶ 10 & Exs. 3–8 (Dr. Yurukoglu's invoices from April 2012 to November 2014), *with Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 387–88 (S.D.N.Y. 2015) (certifying an injunctive class on May 14, 2015). Plaintiffs proffered no evidence that Mucky Duck provided any confidential information in that litigation prior to certification that could somehow have come to the attention of Dr. Yurukoglu. The members of the later-certified injunctive relief class in *Laumann* were not part of the lawsuit during Dr. Yurukoglu's engagement in that case.[3] And that injunctive-relief-only class did not implicate any of the damages modelling issues with which Dr. Yurukoglu was involved. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 387–88 (S.D.N.Y. 2015).

*Finally*, Plaintiffs' reliance on the fact that both *Laumann* and this case involve "economic modeling in sports media," Yurukoglu Motion at 11, illustrates the overbroad results of applying the conflicts doctrine to counsel rather than parties. Given that Dr. Yurukoglu's expertise focuses on economic modeling in the media and MVPD industries and Plaintiffs' counsel's self-described "special[ization] in sports antitrust law, with a particular expertise in professional league television practices,"[4] Plaintiffs in effect seek a ruling that Dr. Yurukoglu is disqualified ever

---

[3] Moreover, members of a proposed class are not clients of an attorney, and not parties to the litigation, before certification. *See* Model Rules of Prof'l Conduct 1.7 cmt.25 ("When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer" for conflict of interest purposes.); *see also Tauric v. Rosas*, 2011 WL 2671517, at *3 (E.D. Cal. July 6, 2011); *Sharp v. Next Entm't Inc.*, 163 Cal. App. 4th 410, 433–34 (2008); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 114–15 (D.C. Cir. 2013).

[4] *See* https://www.langergrogan.com/our-team/edward-diver/.

from testifying in any case in which Plaintiffs' counsel is involved.  Plaintiffs do not identify any precedent for such a sweeping outcome.

In sum, Plaintiffs cannot overcome the basic fact that Dr. Yurukoglu has never had a confidential relationship with any party to this litigation.   Their motion should be denied on this ground alone.  *See Chiesi USA, Inc. v. Sandoz, Inc.*, 2015 WL 13932698, at *7; *Hewlett-Packard*, 330 F. Supp. 2d at 1096.

### B.   Dr. Yurukoglu did not receive any confidential information in *Laumann* that is relevant to his work in this case.

Plaintiffs' motion fails on the additional ground that Dr. Yurukoglu did not obtain any confidential information during the course of the *Laumann* litigation that is relevant to his work in this case.  As noted above, *Laumann* involved challenges related to different sports leagues, pursued by different parties, and involving differing broadcasting arrangements, and Dr. Yurukoglu's limited work in that case addressed only a proposed economic model that Plaintiffs concede is not at issue in this litigation.

For those reasons, this case is far from the extreme situation in which two cases are "so intertwined with respect to their use of experts that for the purpose of expert disqualification, they functionally constitute the same case."  *See Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 670 (S.D. W. Va. 2008) (disqualifying defendant's expert when the two cases at issue shared "the same defendant, the same chemical, the same alleged tortious behavior," the same central scientific issue, and several named plaintiffs who were carved out of the initial class action litigation). None of the factors relevant to the *Rhodes* decision—particularly the effective overlap of named plaintiffs and the challenged conduct—apply here.  Furthermore, Plaintiffs' contention that *Laumann* and this case both "involve antitrust violations stemming from a professional sports league's restrictions on game telecasts," Yurukoglu Motion at 11, comes nowhere close to establishing the kind of nexus that

11

might support the "drastic" remedy of the exclusion of an expert witness. *BP Amoco Chem. Co.*, 500 F. Supp. 2d at 960.[5]

The vague similarities between *Laumann* and the case before this Court provide no basis on which to find that Dr. Yurukoglu received "specific and unambiguous disclosures that if revealed would prejudice" Plaintiffs. *See Hewlett-Packard.*, 330 F. Supp. 2d at 1094. The cases involve different sports leagues. *Supra* at 3. Those different sports leagues relied on different distribution models for their telecasts. *Id.* The parties differ. *Id.* All other experts in the case differ. *Id.* Courts routinely deny disqualification motions based on far fewer distinguishing factors. *See, e.g.*, *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2009 WL 249386, at *3 (N.D. Ill. Feb. 2, 2009) (denying disqualification where "any litigation strategy shared with [the experts] has been specific to the patents and technology at issue in the [prior] matters"); *see also Life Tech. Corp. v. Biosearch Tech., Inc.*, 2012 WL 1604710, at *7 (N.D. Cal. May 7, 2012) (denying motion to disqualify when plaintiff "fail[ed] to establish that such [confidential] information is relevant to this litigation, which involves different parties, litigating different patents, and claiming different technologies").

These differences are even more stark given Plaintiffs' acknowledgement that Dr. Yurukoglu played a limited role in *Laumann* related to the specific economic modelling issues in that case, Yurukoglu Motion at 3, which Plaintiffs concede ██████

████████████████████████████████████████████████████████

---

[5] Plaintiffs also cannot invoke the less stringent disqualification standards that apply to "attorney-experts," *see W.R. Grace & Co. v. Gracecare, Inc.*, 152 F.R.D. 61, 65 (D. Md. 1993) (disqualifying attorney to serve as expert witness because "the duties of an attorney-expert are greater than the ordinary expert"), or that apply in cases where the expert was retained by a party opponent within the *same case*, *e.g.*, *Veazey v. Hubbard*, 2008 WL 5188847, at *8 (D. Haw. Dec. 11, 2008) (disqualifying expert that "consented in an e-mail to be retained as an expert on behalf of Defendants" but then later accepted retention by plaintiffs in the same case after not receiving defendants' retainer check); *see also Rhodes*, 558 F. Supp. 2d at 666 (different test applies where there is "blatant side-switching by an expert within the same litigation").

12

Case No. 2:15-ml-02668-PSG (JEMx)                    NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to
                                                     Disqualify NFL Expert Dr. Ali Yurukoglu

1 ██████████████████████████; *see also* Yurukoglu Motion at 3 n.2 ("The damages

2 models Plaintiffs have presented here are of a different type than those proffered in

3 *Laumann*."). Moreover, neither Dr. Zona nor his modeling approaches were involved

4 in *Laumann*, and Plaintiffs accordingly do not identify any of Dr. Yurukoglu's work

5 in this case that plausibly could have drawn on any confidential information that he

6 allegedly received during the course of his work in *Laumann*.

7       It makes no difference that the NFL Defendants cited the *Laumann* court's

8 *Daubert* decision here. Defendants' *counsel* cited that decision to demonstrate that

9 Plaintiffs' fail to satisfy the relevant legal standards governing the admissibility of

10 expert evidence. But *Dr. Yurukoglu* did not cite or rely on anything confidential

11 regarding the economic models at issue in *Laumann* for purposes of this case. Nor

12 would he; as Plaintiffs note, this case involve a wholly ████████████

13 ████████████████████████████████████████

14       **C.    Policy considerations confirm that exclusion is inappropriate.**

15       Plaintiffs' inability to demonstrate that Dr. Yurukoglu had a prior confidential

16 relationship with any of the parties in this case or that he received confidential

17 information relevant to this case are both sufficient reasons to deny this motion. *See*

18 *Hewlett-Packard*, 330 F. Supp. 2d at 1092 (noting that if even one of the two factors

19 is absent, "disqualification is likely inappropriate"). But policy considerations weigh

20 further against exclusion of Dr. Yurukoglu's testimony.

21       First, excluding Dr. Yurukoglu's testimony at this stage would be highly

22 prejudicial to the NFL Defendants, who would have no opportunity to retain an

23 alternative expert to support their opposition to class certification. *See Hewlett-*

24 *Packard*, 330 F. Supp. 2d at 1095 ("Thus, the Court may ask not only whether there

25 is the appearance of a conflict of interest, but also whether another expert is available

26 and whether the opposing party will be unduly burdened by having to retain a new

27 expert." (internal quotations omitted)). Plaintiffs respond with the non sequitur that

28 the NFL Defendants would have sufficient time to retain a new expert in advance of

a February 2024 trial. But Dr. Yurukoglu's expert opinions have been submitted in support of the NFL's opposition to the motion for class certification, which will be heard by the Court next month. *See id.* ("Consideration of prejudice is especially appropriate at late stages in the litigation, at which time disqualification is more likely to disrupt the judicial proceedings.").

Second, Plaintiffs' desired outcomes implicate the main principle underlying the high standard for disqualification. Dr. Yurukoglu is a highly credentialed expert whose extensive academic work on the econometric issues relevant to televised entertainment qualify him as a suitable expert in cases in which those econometric issues are relevant. Courts have an interest in ensuring that parties can present the testimony of experts with such appropriate expertise, rather than disqualifying any experts that have previously been engaged by opposing counsel. *English Feedlot, Inc. v. Norden Lab., Inc.*, 833 F. Supp. 1498, 1504–05 (D. Colo. 1993) ("The main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling."); *see also id.* at 1505 ("Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party.").

In response, Plaintiffs complain that they might not be able to cross examine Dr. Yurukoglu regarding "the merits of the model in *Laumann*," Yurukoglu Motion at 13, but that is not a relevant consideration. The parties in *this case* are not litigating the merits (or the admissibility) of the model submitted in *Laumann*. And to the extent that Plaintiffs seek to draw out an explanation of how the model in this case differs from the one at issue in *Laumann*, that dispute can be adjudicated wholly on the basis of public information regarding the models.

Finally, Plaintiffs assert that they have never previously "encountered an expert that has switched sides in the manner that Dr. Yurukoglu has." Yurukoglu

14

Motion at 15. But their definition of switching sides is nothing more than providing testimony for a defendant despite previously having had a "consulting relationship with Plaintiffs' counsel." *Id.* at 1. Defendants' counsel, who likewise have more than 100 years of collective experience in antitrust litigation, have never previously encountered any party asserting that such an ordinary occurrence could raise a conflict justifying an expert's exclusion.

## II.   Plaintiffs Cannot Seek Discovery of Defendants' Privileged Communications.

As detailed above, Plaintiffs' motion for exclusion is baseless. Their attempts to cast aspersions on defense counsel in this matter is worse, and their accompanying demand for discovery as to the communications in this case between defense counsel and their own experts based on those unfounded accusations should be rejected.

Plaintiffs assert a range of spurious claims against defense counsel. They claim that defense counsel "transformed Dr. Yurukoglu into a paid informant for work-product protected materials." Yurukoglu Motion at 1. They assert that "Dr. Yurukoglu's retention was aimed at acquiring that information and would constitute serious ethical breaches." *Id.* at 15. Plaintiffs do not offer any facts that would justify their far-fetched accusations, and the reality is far less interesting. As a leading expert in the quantitative modeling of media and MVPD markets, Dr. Yurukoglu is a natural candidate to be an expert in any case involving those markets.

Plaintiffs have no evidence that defense counsel retained Dr. Yurukoglu for any reason other than his expertise in the economics relevant to this case—and, of course, that expertise is available for the Court's review in Dr. Yurukoglu's extensive and detailed econometric critiques of Plaintiffs' model. They likewise have (and have proffered) no evidence that Dr. Yurukoglu in any way breached whatever confidentiality obligations he may have had to Plaintiffs' counsel in *Laumann*. Their unsupported allegations against defense counsel are not well-taken.

15

In that context, there is no basis for Plaintiffs' requested access to a wide swath of communications *from this case* between defense counsel and their experts. That is especially true in light of the stipulation between the parties, endorsed by this Court, that there would be no discovery in this case as to "the content of communications, written or otherwise exchanged, recounted, or memorialized among and between . . . counsel and the expert witness and/or the expert witness's staff and/or supporting firms." Stipulated Expert Order, Dkt. 289, at 3.

In any event, because there exists no conflict of interest in Dr. Yurukoglu's work for the NFL, *see supra* Section I, there is no basis for disqualifying the NFL's counsel, and no reason to require either production of Dr. Yurukoglu's communications or a second deposition, *see Gordon*, 2013 WL 2250506, at *21.

## <u>CONCLUSION</u>

For the reasons stated above, the NFL Defendants respectfully request that Plaintiffs' Motion to Disqualify NFL Expert Dr. Ali Yurukoglu be denied.

16

Dated:  December 16, 2022

Respectfully submitted.

/s/ *Derek Ludwin*

Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

NFL Defendants' Memorandum in Opposition to Plaintiffs' Motion to Disqualify NFL Expert Dr. Ali Yurukoglu