# EXHIBIT 4

To the Declaration of

Jeremy S. Barber

# UNREDACTED DOCUMENT FILED PUBLICLY

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 3000

401 UNION STREET

SEATTLE, WASHINGTON 98101-2668

(206) 516-3880

FAX (206) 516-3883

WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 1400 | 32ND FLOOR |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1301 AVENUE OF THE AMERICAS |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | NEW YORK, NEW YORK 10019-6023 |
| (713) 651-9366 | (310) 789-3100 | (212) 336-8330 |

IAN M. GORE
DIRECT DIAL (206) 505-3841

E-MAIL IGORE@SUSMANGODFREY.COM

September 23, 2022

VIA E-MAIL

Jeremy Barber
Wilkinson Stekloff LLP
130 W. 42nd St.
24th Floor
New York, NY 10036

Re:   *In re National Football League's Sunday Ticket Antitrust Litigation*
      Case No. 2:15-ml-02668-PSG-JEMx (C.D. Cal.)

Dear Jeremy:

We disagree with your assertion that Plaintiffs have failed to comply with the expert discovery stipulation. Your reference to *Daubert* in your latest e-mail makes it apparent that the NFL is attempting to manufacture *Daubert* arguments that are without merit and not well-taken. I address the specific issues in your latest e-mail below.

### *Viewership Data*

Your e-mail implies that it was Plaintiffs who chose to host the data on the Databricks platform. Not so. Plaintiffs requested that DIRECTV provide the viewership data in a narrowed form. But given the processing that would be needed to do so, DIRECTV refused and offered to provide the entirety of its viewership "data lake" via Databricks—with the agreement of **both** the NFL and Plaintiffs. The NFL has had that data in Databricks for nearly a year and is the **same** raw data set utilized by Dr. Zona. Moreover, the NFL and Plaintiffs jointly sent questions to DIRECTV over the course of the last year, including questions intended to confirm how to process the viewership data. Those questions indicate that the NFL was able to access and process the viewership data.

September 23, 2022
Page 2

Given DIRECTV's refusal to narrow the viewership data and instead provide the entire data lake, it was replete with information that our experts considered to be irrelevant to their analysis. It therefore became necessary to cull the data down to what Plaintiffs had originally asked DIRECTV to provide in the first instance. Considering the amount of data involved, it took significant processing time to do that—several weeks in fact. Your reference to the processing time taking "weeks" is therefore not an error, but simply the result of DIRECTV providing such a large volume of data to process.

Once that initial data processing was completed, it resulted in the creation of three spreadsheets that narrowed the viewership data to what was needed for our experts' analysis. Those spreadsheets were provided to the NFL. They are named "dma_team_broadcast_[year]_noformats" in Dr. Zona's backup files. *All* of the analysis done by Drs. Zona and Rascher on the viewership data was based on those three spreadsheets. Those spreadsheets render the Azure/Databricks data unnecessary as they are the source for all viewership data that was actually used by our experts. Thus, not only has the NFL had the raw data from DIRECTV for a year, but also the specific spreadsheets utilized to perform our expert's analysis of that data. We have therefore complied with our obligations.

Nevertheless, we are willing to provide additional information—within reason—that is not required under the expert stipulation to assist the NFL in processing the data. Attached is a guide with the setup that was used for the Databricks cluster. We cannot guarantee, however, that the same configuration will work for you given potential differences in hardware and software configurations (memory, etc.). That is a data engineering issue that your experts will need to figure out, just as much as our own experts have had to do. To the extent the NFL has additional, specific, questions on processing the data, let us know.

### *Intermediate Output Files*

Plaintiffs have also complied with the expert discovery stipulation regarding the code run by Dr. Zona. There is no requirement that Plaintiffs provide every intermediate output file. The stipulation requires that we provide sufficient information to "reconstruct" Dr. Zona's analysis. Plaintiffs provided the code utilized by Dr. Zona—which the NFL understandably would want to examine and run itself—that would output the same files that the NFL has asked for. We have therefore provided everything necessary to reconstruct Dr. Zona's analysis. Nothing in the stipulation requires every intermediate output file when we've already given you the very code sufficient to provide the same output. In our experience, it is unusual to provide such intermediate files as the opposing side will want to run the code for itself.

September 23, 2022
Page 3

To the extent the NFL's experts are having issues with running the code, a likely culprit appears to be in setting the correct file directory path for the underlying data. That is not something we can provide given differences between our experts' file directories. Nevertheless, our experts drafted the code in such a way to make this relatively easy for the NFL and its experts such as by placing "[path]" in the code. We also included instructions in the readme file such as "Replace [path] in programs with root filepath of the backup folder" to highlight this issue. As yet another example, the code in the "506 Sports Legend Extraction.py" file in your latest e-mail defines a variable named "path" that is intended to refer to the file location on your expert's computers. The file also included—at the very top of the code—a non-executable comment for your experts to change the "placeholder path" so that the code could execute:

```
#Change [placeholder path] to your local file
location before \Analyses; do not remove the r'

path = r'placeholder path'
```

You previously identified—in thousands of lines of code that were provided by Plaintiffs—a total of three typos that were the result of modifying the code (such as including the "[path]" indication for your experts) in preparation for producing Dr. Zona's materials to you. Once you pointed those out to us, we promptly addressed the issue. Notably, none of those typos were of the kind that would have affected the substance of Dr. Zona's analysis. Your latest e-mail, however, does not mention any difficulties with executing the code.

As a result, we've given you everything necessary to "reconstruct" Dr. Zona's analysis as the expert stipulation requires. As a courtesy, we provided some intermediate data processing files given some of the processing time that would be required. But given that we've provided the recipe for the NFL to create the same output—as the stipulation requires—we cannot be expected to incur the costs of reproducing every single one. The NFL has the means to do the same thing and our obligations are fulfilled.

September 23, 2022
Page 4

To the extent there are specific issues with running the code, we are, of course, willing to assist the NFL in addressing those issues. Your email, however, does not indicate any such issues.

Sincerely,

*/s/ Ian M. Gore*

Ian M. Gore