Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 2:15-ml-02668−PSG (JEMx)<br><br>**MEMORANDUM IN SUPPORT OF THE NFL DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: January 27, 2023<br>Time: 1:30 p.m.<br>Courtroom:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

# PRELIMINARY STATEMENT

One of Plaintiffs' economic experts, Dr. Zona, constructed a series of econometric models designed to support Plaintiffs' motion for class certification. Dr. Zona's primary model involves a series of regressions based on massive data sets produced by DirecTV. As Dr. Zona's initial report makes clear, the final output of this model is the product of a series of intermediate steps, each of which was generated through complex computer coding.

In order to assess the soundness of Dr. Zona's methodology, the NFL Defendants needed to see all of the steps Dr. Zona took from data to results. On January 6, 2021, well before Dr. Zona began his work in this case, the Court entered an order designed to aid the parties in evaluating experts' methodology. That order required the parties to produce specific detailed information within three business days of the service of any expert report or declaration. *See* Stipulated Expert Protocol*, Dkt. 289, at 2 ("Expert Order"). Specifically, Plaintiffs were obligated to produce to the NFL Defendants, among other things, data "sufficient to reconstruct the work, calculations, and/or analyses upon which the expert witness is relying for [his] opinions." *Id.*

The NFL Defendants are filing this motion for sanctions because Plaintiffs failed to comply with the Court's Expert Order in connection with Dr. Zona's report. Those failures caused the NFL Defendants to incur more than $500,000 in expenses that could have been avoided had Plaintiffs fulfilled their obligations.

Plaintiffs' violations of the Expert Order were numerous and material. *First*, Plaintiffs produced a version of Dr. Zona's computer code that was so error-ridden as to make it unusable. ████████████████████████████████████████████████████████████████████████████████████████ Barber Decl. Ex. 1 (Deposition of Dr. J. Douglas Zona, at 251:24–252:7) ("Zona Tr."). The code is the recipe for Dr. Zona's analysis, and without the correct code, it was impossible to produce and evaluate those analyses.

1

*Second*, Plaintiffs initially produced only what equated to the final output files of Dr. Zona's code—in other words, the end results. They refused to produce the intermediate data files that his code generated, which are essential building blocks to those end results. Instead, Plaintiffs insisted that the NFL Defendants recreate those files themselves. But that task proved impossible given the problems with the produced code. It was only after more than a month of demands from the NFL Defendants, and just ten days before Dr. Zona's deposition, that Plaintiffs finally relented and produced all of the intermediate data files.

In total, Plaintiffs' initial production comprised only about 1.1% of Dr. Zona's full backup files. Their failure to produce a working version of the code used by Dr. Zona, along with their insistence that the NFL Defendants use that faulty code to attempt to re-create Dr. Zona's analysis, meant that the NFL Defendants were forced to incur significant and unnecessary expenses of $537,300 to try, in vain, to reproduce Dr. Zona's work prior to his depositions. These expenses would have been avoided had Plaintiffs complied with the Court's Expert Order and produced a working version of Dr. Zona's code or Dr. Zona's intermediate files in a timely fashion—as the NFL Defendants have done with all of their expert reports. The Court should sanction Plaintiffs and award expenses.

## BACKGROUND

On January 6, 2021, the Court approved a jointly stipulated protocol governing production of expert opinions and underlying information. *See* Expert Order. Through this stipulation, the parties agreed to produce, among other things, within three business days of serving any expert report:

> "a. a copy of any document reflecting the facts, data, and other information referred to therein or relied upon by the expert in forming the expert's opinions, including, but not limited to, underlying data, spreadsheets (including formulas therein), computerized regression analysis and/or other underlying reports, programs, computer codes and

schedules **sufficient to reconstruct the work**, calculations, and/or analyses upon which the expert witness is relying for their opinions;

b. exhibits, information, or **data processed or modeled by a computer at the direction of an expert in the course of forming the expert's opinions**; and

c. **all data sets exactly as relied upon by the experts**, and all spreadsheets in the report or exhibits in native format."

*Id*. at 2 (footnote regarding information considered but not relied upon omitted) (emphasis added).

On August 19, 2022, Plaintiffs filed and served the expert reports of Dr. Zona, Dr. Rascher, and Ms. Sarah Butler to support their motion for class certification. *See* Dkt. 633. Plaintiffs attempted to produce backup files in connection with these reports three business days later, on August 24, 2022. The backup files for Dr. Zona's report did not, however, contain all the necessary data Dr. Zona used in forming his opinions, nor were they sufficient to reconstruct his work. Barber Decl. ¶ 4. Rather, Plaintiffs provided an unusable code and omitted all intermediate data used by Dr. Zona in reaching in his opinions. *Id*. ¶ 2. As an illustration, of Dr. Zona's total backup of 68.7 *gigabytes* of data, Plaintiffs initially only produced 773 *megabytes* of data. *Id*. ¶ 4.

Given the complexity of the issues in this case, the experts retained by NFL Defendants, as well as their staff at Compass Lexecon, immediately began attempting to recreate Dr. Zona's calculations from the limited data Plaintiffs provided. Barber Declaration of Michael Sabor, at ¶ 8 (Sabor Decl.). To attempt to run Dr. Zona's code, Compass Lexecon made use of the Microsoft Azure platform—a public cloud computing vendor used by experts to perform complex computations that cannot be done locally without expending millions of dollars. *Id*. ¶ 9–12. The Microsoft Azure platform is used by all experts in this case.

It quickly became clear that Dr. Zona's code was insufficient—a problem

because, by Plaintiffs' own admission, "some of [Dr. Zona's] code takes days—if not weeks—to run." Barber Decl. Ex. 2 (Letter from Ian Gore to Jeremy Barber, October 6, 2022, at 2). Despite diligent efforts to run Dr. Zona's data, Compass Lexecon was never able to replicate the calculations. Sabor Decl. ¶ 29. ████

████

████

Zona Tr. 251:24–252:7.

      On September 7, 2022, after several failed initial attempts to run the code, the NFL Defendants requested "the products of Dr. Zona's data build, or everything that lands in his folder 'Analyses\Data\Intermediate,'" so that they could attempt to use those files to recreate Dr. Zona's work. *See* Barber Decl. Ex. 3 (9/7/2022 J. Barber Email to I. Gore). In essence, the NFL Defendants requested to see the results of intermediate steps in Dr. Zona's analysis to allow them to evaluate the final outputs of his models and the conclusions he ultimately reached. Plaintiffs refused. On September 9, 2022, Plaintiffs responded that the materials that the NFL Defendants requested were "output files from the programs that [Plaintiffs] already provided in Dr. Zona's backup materials," and that Dr. Zona *had not maintained those files*. Plaintiffs claimed that the NFL Defendants' experts could reproduce the intermediate output files just as easily as Dr. Zona could. *See* Barber Decl. Ex. 3 (9/9/2022 I. Gore Email to J. Barber). That was incorrect.

      Over the following weeks, the NFL Defendants continued to catalogue various errors that prohibited the code from running properly and continued to ask Plaintiffs to either "reproduce the backup materials and code without typos and errors or provide access to the intermediate datasets." *See* Barber Decl. Ex. 3; (9/14/2022 J. Barber Email to I. Gore). On September 15, Plaintiffs agreed to provide the previously requested intermediate datasets, *see* Barber Decl. Ex. 3 (9/15/2022 I. Gore Email to J. Barber), but produced only 12 additional files, totaling 580 MB of data, that did not contain the level of detail necessary to recreate Dr. Zona's analysis or

provide sufficient insight into the particular methods undertaken at each intermediate step. *See* Barber Decl. Ex. 3 (9/19/2022 I. Gore Email to J. Barber; 9/21/2022 J. Barber Email to I. Gore).

In further communications, the NFL Defendants continued to detail the code's failings and explained that "Dr. Zona's code is incapable of completing without error in a single pass start-to-finish." *Id*. Plaintiffs again refused to produce the complete set of intermediate data files on September 23, claiming, incorrectly, that they had "provided everything necessary to reconstruct Dr. Zona's analysis" via the code that Dr. Zona used. *See* Barber Decl. Ex. 4 (Letter from Ian Gore to Jeremy Barber, September 23, 2022, at 2).

The following week, however, Plaintiffs changed course. On September 28, Plaintiffs offered to "look into [] and help resolve" any further specific issues with respect to Dr. Zona's code or output. *See* Barber Decl. Ex. 3 (9/28/2022 I. Gore Email to J. Barber). In response, the NFL Defendants detailed further typographical errors in the produced code. *See* Barber Decl. Ex. 3 (9/28/2022 J. Barber Email to I. Gore). As the NFL Defendants made clear to Plaintiffs, even after fixing these typographical errors, reconstructing Dr. Zona's analyses remained impossible because of fundamental errors with the code, such as its failure to define certain terms and other platform issues. *Id*.

The next day (September 29)—and now more than a month after the deadline set by the Court's Expert Order-—Plaintiffs finally agreed to produce a new version of the code to remedy the errors the NFL Defendants had identified and to produce the full set of intermediate files the NFL Defendants had been requesting. *See* Barber Decl. Ex. 3 (9/29/2022 I. Gore Email to J. Barber). Later that day, Plaintiffs produced 68.7 GB of backup files required to fully recreate and verify the analysis underlying Dr. Zona's expert report. *Id*. ¶ 4. These backup files were nearly 90 times larger than those Plaintiffs had initially produced to the NFL Defendants, and they were produced for the first time two weeks before Dr. Zona's deposition. *Id*.

5

    Over the coming days, Plaintiffs also produced two different updated versions of Dr. Zona's code, each correcting more errors. *Id.* ¶ 5. The final version was served on October 3, 2022, in the midst of Dr. Rascher's deposition and only ten days before Dr. Zona's deposition. *Id.* Compass Lexecon, however, remained unable to execute Dr. Zona's code and relied solely on the recently produced intermediate files to attempt to reproduce Dr. Zona's work. Sabor Decl. ¶ 29.

    During this time, Compass Lexecon had to deploy a four-person team of experts who spent over 440 hours in August and September trying to recreate Dr. Zona's analysis with the little, error-ridden information to which they had access. Sabor Decl. ¶¶ 40–42. It was only through these efforts that the experts were able to continue to identify the issues in the produced files that eventually persuaded Plaintiffs to produce the remaining 98.9% of Dr. Zona's backup. In doing so, the NFL Defendants incurred, as a conservative estimate, labor costs from Compass Lexecon of $238,600 and machine costs of $298,700 to run the Microsoft Azure platform. *Id.* ¶¶ 37, 42. In total, the NFL Defendants conservatively incurred costs of at least $537,300 through their experts' attempts to verify and reconstruct the work underlying Dr. Zona's report, *id.* ¶ 43, all of which would have been avoided had Plaintiffs complied with the Court's Expert Order.

## **LEGAL STANDARD**

    "District courts have inherent power to impose sanctions to manage their cases and courtrooms effectively, ensure the orderly administration of justice, and to enforce compliance with their orders." *Smith v. Premiere Valet Servs.,* 2021 WL 6425552, at *1 (C.D. Cal. Sept. 16, 2021). As such, "[o]n motion or on its own, the court may issue any just orders . . . if a party or its attorney fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Any party "that fails to comply with a [pretrial] order is subject to the sanctions available to a court to enforce its orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." *Archie v. Pop Warner Little Scholars*, 2019 WL 13020480, at *2 (C.D. Cal. Oct. 10, 2019) (PSG).

Rule 37, in turn, "contemplates stricter adherence to discovery requirements," and thus acts as a "'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material.'" *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note [](1993)). Under this rule, sanctions must "bear[] a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-09 (1982)).

**A. Sanctions Are Appropriate Given Plaintiffs' Violation Of The Court's Expert Order.**

Plaintiffs violated the Court's Expert Order when they failed to produce a working code and the full set of Dr. Zona's backup materials. Under the Expert Order, Plaintiffs were obligated to produce within three business days of filing Dr. Zona's report, "a copy of" any "computer codes and schedules sufficient to reconstruct the work, calculations, and/or analyses upon which [Dr. Zona] is relying for [his] opinions," and all "data processed or modeled by a computer at the direction of an expert in the course of forming the expert's opinions." Expert Order at 2. Yet for more than a month after filing Dr. Zona's report, Plaintiffs refused to produce files that were necessary to reconstruct his analysis. Indeed, Plaintiffs initially produced only 773 *megabytes* of the more than 68.7 *gigabytes* of data Dr. Zona had generated and relied on when conducting his analysis.[1]

This failure to comply with the Court's order makes Plaintiffs' "subject to the sanctions available to a court to enforce its orders, including those authorized

---

[1] Plaintiffs admitted that their failure to initially produce Dr. Zona's intermediate files was because they "did not maintain copies of those files," Barber Decl. Ex. 3 (9/9/2022 I. Gore Email to J. Barber); ████████

7

by Rule 37(b)(2)(A)(ii)-(vii)." *Archie*, 2019 WL 13020480, at *2; *Navellier*, 262 F.3d at 947 (Sanctions are available under Rule 37(b)(2) for failure to obey orders "as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct."). Here, it is undisputed that Plaintiffs' failure to produce Dr. Zona's files bears a reasonable relationship to Dr. Zona's expert opinion and the evaluation of its methodological soundness. The Court should order Plaintiffs to pay for the NFL Defendants' reasonable expenses caused by this violation. *See* Fed. R. Civ. P. 37(b)(2)(C).

To avoid sanctions, Plaintiffs bear the burden to show that their violation of the Court's Expert Order was substantially justified or harmless. *See, e.g.*, *Torres*, 548 F.3d at 1213 (citing *Yeti by Molly, Ltd.*, 259 F.3d at 1107). Plaintiffs cannot meet this burden.

*First,* Plaintiffs' actions were not justified, let alone substantially justified. Plaintiffs previously defended their actions by claiming that they were not obligated to produce Dr. Zona's intermediate datafiles because his calculations could be recreated by the NFL Defendants as easily as by Plaintiffs. Barber Decl. Ex. 3 (9/9/2022 I. Gore Email to J. Barber); Ex. 4 (Letter from Ian Gore to Jeremy Barber, September 23, 2022, at 2). That position is inconsistent with the Court's Expert Order, which required Plaintiffs to produce "*all* data sets exactly as relied upon by the experts," "data processed or modeled by a computer at the direction of any expert in the court of forming the expert's opinions," and "data . . . sufficient to reconstruct" Dr. Zona's work. Expert Order at 2. That position is also wrong, because the NFL Defendants were unable to recreate Dr. Zona's analysis due to the sheer amount of typos and omissions within the produced code.

*Second,* the NFL Defendants were harmed because they were forced to expend unnecessary time and resources trying to recreate Dr. Zona's analysis, all of which could have been avoided had Plaintiffs complied with their obligations under the Court's Expert Order. *See* Sabor Decl. ¶¶ 32–35. █████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zona Tr. 237:25–238:7. The relevant question is not whether the NFL Defendants were able to show the problems in Dr. Zona's testimony, but whether they timely received the required materials to be able to do so without incurring unnecessary costs. Given that Dr. Zona's code still does not work, the possibility remains that there are other methodological errors that we were prevented from identifying.

The NFL Defendants request for costs is reasonable and just under the circumstances. Plaintiffs' failure to produce the data they were required to under the Court's Expert Order caused the NFL to incur two separate set of unnecessary costs. First, as outlined in detail in the attached Sabor Declaration, the NFL Defendants incurred substantial costs associated with the use of Microsoft Azure's cloud computing services. *Id.* ¶ 33. As Plaintiffs acknowledge, Dr. Zona's code and data has a great deal of "complexity and magnitude." Barber Decl. Ex. 2 (Letter from Ian Gore to Jeremy Barber, October 6, 2022, at 3). Such complexity renders cloud computation both reasonable and necessary—as evidenced by the fact that Plaintiffs used it themselves. Sabor Decl. ¶¶ 22–26. In total, the NFL Defendants incurred cloud computing costs of more than $298,700 in trying, in vain, to run Dr. Zona's faulty code. *Id.* ¶ 36.

*Third*, the NFL Defendants incurred unnecessary expenses associated with the time spent by Compass Lexecon in trying to recreate Dr. Zona's analysis. Given the absence of a functional code or a full set of backup materials, Compass Lexecon was forced to have four employees expend over 440 hours in unnecessary work solely to attempt to recreate Dr. Zona's analysis. Sabor Decl. ¶ 41. The total costs associated with these efforts results in $238,600 in invoices to the NFL Defendants for work that was avoidable had Plaintiffs' complied with the Court's Expert Order. *Id*. And, as spelled out in the Sabor Declaration, the scope of this work was reasonable given its complexity, the field of expertise of those involved, and their

qualifications. *See, e.g.*, *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 645 (E.D.N.Y. 1997) (citations omitted) (laying out factors that courts may consider when determining reasonable rates).

Taken together, the NFL Defendants incurred, as a conservative number, $537,300 in expenses dedicated solely to the issue of recreating Dr. Zona's analysis, Sabor Decl. ¶ 42, expenses that would have been entirely avoided had Plaintiffs complied with the Court's Expert Order.

## **CONCLUSION**

For these reasons, the Court should grant the NFL Defendants' motion for sanctions and award the NFL Defendants $537,300 to compensate them for the expenses related to Plaintiffs' violation of the Court's Expert Order.

Dated: December 27, 2022

Respectfully submitted.

/s/ *Rakesh N. Kilaru*
Rakesh N. Kilaru (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*