Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668-PSG (JEMx) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF MARK A. ISRAEL**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: January 27, 2023<br>TIME: 1:30 p.m.<br>COURTROOM:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## **TABLE OF CONTENTS**

Table of Authorities……………………………………………………………..………ii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

    I.    Dr. Israel Substitutes Theoretical Assertions for Fact-Based Analysis. ................................................................................................... 1

    II.    The NFL's Attempts to Defend the Relevance and Reliability of Dr. Israel's Opinions Are Unavailing. ............................................... 6

    III.    Dr. Israel's Varying "Opinions" Concerning Complementarity Are Unreliable, Unhelpful, and Ultimately Nonsensical. ........................... 9

    IV.    Dr. Israel's Opinions Concerning *Other* Markets Are Irrelevant ................................................................................................ 12

Conclusion .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Burrows v. BMW of North America, LLC*, 2018 WL 6314187 (C.D. Cal. 2018) ...... 8

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ....................... 2

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ................................................. 2

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019), *cert. denied sub nom. NFL v. Ninth Inning, Inc.*, 141 S. Ct. 56 (2020) ............................................................................................................... 9

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ........................................................................... 1, 2, 7, 12

**Other Authorities**

A.J. Perez, "Where Does NFL Sunday Ticket Deal Stand? Owners to Get Update," Front Office Sports (Dec. 13, 2022) ................................................. 4

Anthony Crupi, "NFL-Sunday Ticket Talks Threaten to Stretch Into New Year," Yahoo! Sports (Dec. 16, 2022) ............................................................. 4

Emma Roth, "Apple reportedly backs out of NFL Sunday Ticket negotiations," The Verge (Dec. 17, 2022) ............................................................................ 4

Malcolm Owen, "Apple leaves the field in NFL Sunday Ticket Negotiations," AppleInsider (Dec. 17, 2022) ....................................................................... 4

Tim Hardwick, "Apple Reportedly Quits NFL Sunday Ticket Streaming Negotiations," MacRumors (Dec. 19, 2022) ................................................ 5

Tripp Mickle et al., "Why the N.F.L.'s Big Streaming Deal Is Going Into Overtime," NY Times (Nov. 23, 2022) ........................................................ 5

**Rules**

Fed. R. Evid. 702 ....................................................................................................... 1

# INTRODUCTION

Dr. Mark A. Israel's opinions are rooted in speculation, and they fail the fundamental test of being *helpful* as expert testimony, *see* Fed. R. Evid. 702, in determining class certification. In response to Plaintiffs' motion to exclude those opinions, the NFL[1] proffers straw-man arguments and positions that run counter to the Ninth Circuit's governing opinion on class certification, *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc), *cert. denied sub nom. Starkist Co. v. Olean Wholesale Grocery*, ___ U.S. ___, 2022 WL 16909174 (Nov. 14, 2022). In its defense of Dr. Israel, the NFL also fails to come to grips with the Ninth Circuit's controlling decision in this very case.

And Dr. Israel's theoretical arguments are not just untethered to the evidence developed in the case but also are contradicted by the real-world facts. That was underscored by the circumstances of last week's collapse of the NFL's negotiations with Apple for distribution of the Sunday Ticket package in favor of a deal with Google's YouTube TV. According to media reports, the NFL rejected Apple's proposed distribution deal for Sunday Ticket because Apple, unlike DirecTV, would not agree to charge a substantial premium for the Sunday Ticket product. Those circumstances, as described below, demonstrate the common injury suffered by all class members as a consequence of the anticompetitive output restraints challenged in this case.

# ARGUMENT

## I. Dr. Israel Substitutes Theoretical Assertions for Fact-Based Analysis.

The NFL agrees that this Court's task on a *Daubert* motion "is to analyze not what the experts say, but what basis they have for saying it." NFL Defendants' Sealed Memorandum in Opposition to Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel, Dkt. No. 824-1 ("Israel Opp."), at 16 (internal quotations omitted). *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir.

---

[1] Throughout this brief, Plaintiffs use "NFL" to refer to the NFL Defendants.

1

1995). Here, foundational *record facts* run contrary to the fundamental underpinnings of Dr. Israel's opinions. In such circumstances, it is appropriate for the Court to "conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As set forth below, Dr. Israel relies upon an underlying key hypothesis—the unavailability of NFL games on broadcast television in the but-for world—that is not only contrary to the evidence but, even if it were shown to be correct, would not alter the fact that Sunday Ticket subscribers were overcharged, which is a classwide issue.

Specifically, the NFL argues that Dr. Israel "demonstrates that the transformations contemplated in Plaintiffs' but-for worlds would [REDACTED] and "widely varying effects on different members of the proposed class." Israel Opp. at 2-3. As a threshold matter, any such variation in effects would have no bearing on class certification under *Olean*. The record in this case demonstrates overwhelming common questions concerning the nature of the defendants' scheme, their execution of it, the contractual arrangements, and the antitrust injury suffered by class members, to name just a few. The *en banc* holding in *Olean* made clear that certification of a class is appropriate notwithstanding individualized questions, including entitlement to damages and the presence of uninjured class members, "so long as such questions do not predominate over the common questions." *See Olean*, 31 F.4th at 668-69. In *Olean*, the court was presented with precisely the kinds of argument leveled by the NFL here—that variances of effects on class members preclude certification. The *Olean* court said just the opposite, rejecting any categorical argument that differences among class members due to a regression model's "averaging assumptions" posed a bar to certification. *Id.* at 677.

Moreover, the underlying key hypothesis in the Israel Report[2]—that if the current NFL system changes such that "███████████████████████████████████████████████████████████████████████████████████████████████████████," see Israel Report ¶ 74—is pure fantasy that is belied by the record, which makes clear that "by far NFL football is the most popular content on television." *See, e.g.,* Supplemental Declaration of Scott Martin in Support of Plaintiffs' Motion to Exclude the Opinions of Mark A. Israel ("Martin Supp. Decl.") Ex. 1 (Deposition of Brian Rolapp) ("Rolapp Dep.") 85:16-87:7. Indeed, New England Patriots owner and chair of the NFL's media committee Robert Kraft acknowledged (in testimony upon which Dr. Israel did not rely) that ███████████████████████████████████████████████████████████████████████████████████. Martin Supp. Decl. Ex. 2 (Deposition of Robert Kraft) ("Kraft Dep.") 39:13-40:2.[3]

Simply put, Dr. Israel cannot seriously contend that correcting the NFL's anticompetitive output restraints would put over-the-air NFL local broadcasts in danger of extinction. What the restraints have accomplished, however, is maintaining the NFL's monopoly rents. As Mr. Kraft testified, ██████████████████████████████████████████████████████████████████████████████████. In other words, there would still be over-the-air broadcasts, but the NFL might not reap the same profits from the networks.

---

[2] The Expert Report of Mark A. Israel, Ph.D. ("Israel Report") was annexed as Exhibit 1 to the Declaration of Scott Martin in support of this motion. *See* Dkt. 745-2.

[3] Dr. Israel's report indicates that ████████████████████████████████████████████████████. *See* Israel Report App. B, at 154.

3

Press reports last week laid bare the classwide injury caused by the NFL's protection of these broadcast network "partners" and the NFL's insistence on a premium price for Sunday Ticket—in real life, not in theory—when Apple bowed out of the bidding for the next Sunday Ticket contract. Although Defendants have not yet produced the new YouTube TV agreement or documents related to Apple's withdrawal,[4] it has been widely reported that Apple wanted to offer Sunday Ticket at a substantially lower price. Specifically, Apple is said to have exited the bidding for Sunday Ticket rights at least in part because it desired to include the Sunday Ticket games on its streaming service, Apple TV Plus (which currently costs $6.99 per month) at no additional charge.[5]

According to the reporting, Apple's price and broad access plan[6] represented a "far too magnanimous gesture for the NFL,"[7] and the NFL "reportedly considered

---

[4] On December 27, 2022, Plaintiffs requested that the NFL produce, at minimum, the YouTube TV agreement itself so that it could be considered by the Court in the current round of briefing. Martin Supp. Decl. Ex. 3. The NFL declined to do so or even to meet-and-confer concerning the matter until next week. Martin Supp. Decl. Ex. 4.

[5] *See, e.g.*, Anthony Crupi, "NFL-Sunday Ticket Talks Threaten to Stretch Into New Year," Yahoo! Sports (Dec. 16, 2022), *available at*: https://sports.yahoo.com/nfl-apple-sunday-ticket-talks-105500794.html?src=rss&guccounter=1; Malcolm Owen, "Apple leaves the field in NFL Sunday Ticket Negotiations," AppleInsider (Dec. 17, 2022), *available at*: https://appleinsider.com/articles/22/12/17/apple-leaves-the-field-in-nfl-sunday-ticket-negotiations; A.J. Perez, "Where Does NFL Sunday Ticket Deal Stand? Owners to Get Update," Front Office Sports (Dec. 13, 2022), *available at*: https://frontofficesports.com/nfl-sunday-ticket-negotiations/ (discussing concerns by NFL's TV partners over Apple's alleged plan to sell Sunday Ticket at a low price); Emma Roth, "Apple reportedly backs out of NFL Sunday Ticket negotiations," The Verge (Dec. 17, 2022), *available at*: https://www.theverge.com/2022/12/17/23513966/apple-nfl-sunday-ticket-negotiations-exit.

[6] [redacted] *See* Kraft

4

that price point too low, given it needs to 'protect the interests' of CBS and Fox, its Sunday afternoon broadcast partners."[8] In short, every Sunday Ticket subscriber was deprived of the opportunity of a lower-cost Sunday Ticket (an outlay of less than $84 per year for individuals to become Apple TV Plus subscribers, and no cost at all for those who already are) as a consequence of the challenged restraints.

To offer helpful testimony in the face of such clear facts, Dr. Israel must, at a bare minimum, conduct *some* analysis or find support in the sports-broadcasting literature for his opinions. He did neither, as evidenced by his conclusory comments concerning NFL games on broadcast television. *See, e.g.*, Martin Supp. Decl. Ex. 5 (Deposition of Mark Israel) ("Israel Dep.") 108:14-18 ███████ ███████ ███████. Dr. Israel is not a sports economist, he has not done any empirical analysis, and he has not studied the literature. His conclusions are incorrect, but more to the point, they are without basis.

In this regard, the NFL misstates Plaintiffs' position regarding Dr. Israel's qualifications to provide expert testimony here. *See* Israel Opp. at 1. Because he

---

Dep. 49:9-51:7. In other words, the NFL preferred reduced Sunday Ticket output and consequential higher prices.

[7] *See* Crupi, *supra* n. 5.

[8] *See* Tim Hardwick, "Apple Reportedly Quits NFL Sunday Ticket Streaming Negotiations," MacRumors (Dec. 19, 2022), *available at*: https://www.macrumors.com/2022/12/19/apple-quits-nfl-sunday-ticket-negotiations/.

This breakdown occurred notwithstanding that Apple reportedly was involved in negotiations at a level sought by the NFL ($2.5 billion or more annually) that was substantially more than the $1.5 billion DirecTV pays for the Sunday Ticket rights. *See* Tripp Mickle et al., "Why the N.F.L.'s Big Streaming Deal Is Going Into Overtime," NY Times (Nov. 23, 2022), *available at*: https://www.nytimes.com/2022/11/23/business/nfl-sunday-ticket-streaming.html.

lacks experience in the particular field, his ability to offer relevant expert testimony requires that he applies the tools of economics and industrial organization that he would be qualified to employ generally. But to be helpful, he must actually do so. He has the economic *credentials* to be an expert, but those credentials are irrelevant when he has resorted to ungrounded speculation and claims instead that it is enough for him to point out possible, wholly theoretical permutations of the but-for world.

## II. The NFL's Attempts to Defend the Relevance and Reliability of Dr. Israel's Opinions Are Unavailing.

The NFL devotes the majority of its argument to defending Dr. Israel's application of his so-called "Completeness Principle" to criticize Plaintiffs' but-for worlds. *See* Israel Opp. at 4-13. However, much of that argument is premised upon the NFL knocking down imaginary straw men.

Contrary to the NFL's suggestion, Plaintiffs have not argued that Dr. Israel must present a model or "proffer his own affirmative conclusions as to the components of a but-for world." *See* Israel Opp. at 7-8. However, the Court is entitled to demand that Dr. Israel offer *some* basis for proposing features that he hypothesizes *could* arise in a but-for world—particularly if such conditions are contrary to the NFL's testimony and real-world evidence.

Plaintiffs also do not ignore, as the NFL claims (Israel Opp. at 4), a burden to demonstrate that common questions predominate. On the contrary, this is an easy case for certification where common issues plainly predominate over any individual ones. The central issue in Plaintiffs' claims, which was recognized as stating a valid theory of antitrust violation by the Ninth Circuit—namely the NFL's anticompetitive scheme to restrict output and thereby keep prices to class members artificially high—is just one of many critical facts demonstrated entirely through common classwide proof. The NFL fails to come to grips with the fact that the claim here is based on an overcharge for class members' access to Sunday afternoon NFL games on DirecTV—a single product sold pursuant to uniform price

1 schedules—versus "the price of that same access to all those games" without the anticompetitive restraints at issue. See Plaintiffs' Sealed Mem. in Support of Motion to Exclude the Opinions of Mark A. Israel, Dkt. No. 773 ("Israel Motion") at 8. Just to give one late-breaking example, that overcharge for all class members is reflected in Apple's willingness to offer the Sunday Ticket games to consumers at a substantially lower price. This is precisely the kind of common, classwide proof upon which Plaintiffs' claims are based.

Dr. Israel's conjecture ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As the Ninth Circuit has made clear, classes may be certified even where plaintiffs have to prove individualized damages at trial and where the class potentially includes more than a de minimis number of uninjured class members (even though no class members were benefited or left uninjured by the output restraints and overcharge here). See Olean, 31 F.4th at 669.

The NFL also seeks to rebut three specific challenges to Dr. Israel's application of his "Completeness Principle." The NFL mischaracterizes each in turn, and their rejoinders lack merit.

*First*, in defending Dr. Israel's opinions concerning on-field game quality and competitive balance in the but-for world, the NFL asserts that experts are permitted to base their opinions on otherwise inadmissible evidence under Federal Rule of Evidence 703. Israel Opp. at 9. Plaintiffs did not argue otherwise. While Plaintiffs did note the inadmissibility of an ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2  ▓▓▓▓▓. Israel Motion at 6 (emphasis added).

Tellingly, the NFL does not dispute Dr. Israel's clear testimony that, among other things, he has never performed any study or analysis of the effects of competitive balance, means of achieving competitive balance, or effects of revenue sharing on competitive balance. *See* Israel Motion at 6. Plaintiffs understand that Dr. Israel is not a recognized sports economist like Dr. Rascher, but that makes the foundation for his opinion more important, not less. An expert's "opinion" is properly excluded under *Daubert* as unreliable where it is merely a vehicle for parroting the literature and views of others without the benefit of any relevant personal knowledge or experience. *See, e.g., Burrows v. BMW of North America, LLC*, 2018 WL 6314187, at *2 (C.D. Cal. 2018) (expert's opinion that alleged engine problems were recurring conditions was based on magazine articles and internet searches). Dr. Israel's "opinion" is unreliable and unhelpful as to the straightforward question of whether subscribers were overcharged for the Sunday Ticket product that they purchased.

*Second*, the NFL seeks to resuscitate Dr. Israel's naked assertion that ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Israel Report ¶ 26, by citing to his later reference to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see* Israel Report ¶ 153. Dr. Israel's business-plan speculation is irrelevant to whether the restraints at issue imposed an *overcharge* on the Commercial Plaintiffs for the Sunday Ticket product that they purchased, and it is inconsistent with the directly analogous experience of sports bars that thrive showing college football games on Saturdays (games which also could be viewed by patrons at home, which the NFL does not attempt to confront). Regardless, ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

|   |   |
|---|---|
| 1 | ███████████████████████████████████████ |
| 2 | ████████████████████████ Israel Dep at 94:20-95:4. |

3  *Third*, the NFL offers legal arguments concerning the contents of the Ninth
4  Circuit's governing opinion in *In re Nat'l Football League's Sunday Ticket*
5  *Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019), *cert. denied sub nom. NFL v. Ninth*
6  *Inning, Inc.*, 141 S. Ct. 56 (2020). What the NFL does not dispute is that Dr. Israel
7  ███████████████████████████████████████
8  ███████████████████████████████████████
9  ███████████████████████████████████. *See*
10 Israel Motion at 10-11. It is not surprising ████████████████████
11 ████████████████, because it is deadly to his opposition to class
12 certification. The Ninth Circuit's opinion sustained Plaintiffs' claims, and its
13 analysis demonstrates why these claims present common, classwide questions from
14 start to finish: the Court of Appeals recognized that injury to competition, the
15 agreed-upon restrictions on output, standing, and abuse of monopoly power all turn
16 on questions concerning the defendants' conduct and the contractual arrangements
17 at issue in this case, which present issues applicable classwide.

18 **III. Dr. Israel's Varying "Opinions" Concerning Complementarity Are**
19 **Unreliable, Unhelpful, and Ultimately Nonsensical.**

20 The NFL's attempt to defend Dr. Israel's "complementary products"
21 argument only adds to their head-spinning inconsistencies. In his report, Dr. Israel
22 stated that the NFL's games ████████████████████████
23 ███████████████████████████████████ Israel Report, at
24 p. 175 n.250. This statement, of course, is inconsistent not only with Plaintiffs'
25 claims, but also with the NFL's long-stated public position, the NFL's litigation
26 position prior to Dr. Israel's report, and much of Dr. Israel's report itself. *See* Israel
27 Motion at 11-13. Indeed, if Dr. Israel's statement were true, ████████████
28 ███████████████████████████████████████

9

1  █████████████████████████████████████
2  █████████████████████████████████████
3  █████████████████████████████████████
4  █████████████████████████████████████
5  █████████████████████████████████████
6  ████████████████████████████████ Israel
7  Report ¶ 169.
8      At his deposition, however, Dr. Israel shifted gears, ███████
9  █████████████████████████████████████
10 ████████████.[9] But his only explanation for why this might be so was in
11 terms of fans watching the games: ████████████████████
12 █████████████████████████████████████
13 ████ Israel Dep. 171:11-14. ████████████████████
14 █████████████████████████████████████
15 ███████████████████████████████████.
16     Like virtually everything in Dr. Israel's report, though, this was based on
17 little more than conjecture.  He admitted that he had not attempted to quantify this
18 effect.  He could only say that, in his opinion, pooling ████████████
19 █████████████████████████████████████
20 Israel Dep. 175:7-8. ████████████████████████
21 ████████████████████████. *Id.* 175:11-15. ████████
22 █████████████████████████████████████
23 ████████████████ *Id.* 98:3-4.  He testified that in order to know, one would
24 █████████████████████████████████████
25 ████ *Id.* 98:6-7.  Despite the resources of the NFL behind him to pay for his time,
26 he was comfortable articulating such a conclusion in the case of NFL football
27 ─────────────────
   [9] ████████████████████████████████████
28 █████████████████████████████████

without such a study and without having studied the extensive academic literature.[10]

In its brief, ███████████████████████████████████████████████████████████████████████████████████████████████████████████. See Israel Opp. at 14-15. Thus, the NFL now appears to fully embrace the position that is inconsistent with the fundamental business model of the NFL and with its litigation position in this case: ███████████████████████████████████████████████████████████████████████████████████████████████████████████ Id. at 15. If that were true, the networks would demand that as many NFL games be televised as widely as possible, there would be no reason for Sunday Ticket, and this case would never have had to be filed.

Apparently recognizing the inconsistency of this view, the NFL has offered its own attempt to walk away from this position: this complementarity would be different in the but-for world of individually licensed telecasts: ███████████████████████████████████████████████████████████████████████████████████████████████████████████ The opinions criticized here by Plaintiffs do not address the issue of ███████████████████████████████████████████████████████████████████████████████████████████████████████████ Israel Opp. at 16 (emphasis supplied by the NFL; citations omitted). That is pure *non sequitur*. The games are the games, and the issue is not a "package as a whole" versus games. Either the telecasts that form Sunday Ticket are complementary products that raise demand and prices for each other, or they are not. They do not suddenly transmogrify into complementary products when they cease to be controlled by a monopolist.

---

[10] Defendants contend that "Plaintiffs say nothing here about Dr. Israel's methodology underlying his complementarity opinions, and so their challenge necessarily fails." Israel Opp. at 16. That is false. Dr. Israel has no methodology to speak of, and to that extent, Plaintiffs challenge his opinions as entirely baseless.

11

## IV. Dr. Israel's Opinions Concerning *Other* Markets Are Irrelevant

Dr. Israel's opinions concerning MVPD markets simply introduce unnecessary complexity, are irrelevant and decidedly unhelpful at the class certification stage in this action, and should not be considered. Contrary to the NFL's argument, ▇▇▇▇ (Israel Opp. at 14), since Plaintiffs' experts, as well as Apple's recent withdrawal from the Sunday Ticket bidding as a result of the NFL's refusal to allow it to charge consumers lower prices, demonstrate the classwide effect of the defendants' contractual arrangements and the fact of an overcharge paid by subscribers to Sunday Ticket. And, as explained by the Ninth Circuit, individualized damages do not preclude class certification where common issues predominate (as is the case with the restraints and resulting overcharge here). *See Olean*, 31 F.4th at 669. Dr. Israel's statement that ▇▇▇▇, *see* Israel Report ¶ 210, is not only irrelevant, but also a conclusory statement that falls short of addressing the long-settled focus of the antitrust laws on *competition*. See Israel Motion at 14.

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Dr. Israel from consideration in connection with Plaintiffs' Motion for Class Certification.

Dated: December 30, 2022

Respectfully submitted,

By: */s/ Marc M. Seltzer*
Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Arun Subramanian (*Pro Hac Vice*)

12

asubramanian@susmangodfrey.com
William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

13

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*