| | |
|---|---|
| Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Phone: (310) 789-3100<br>Fax: (310) 789-3150 | Howard Langer (*Pro Hac Vice*)<br>hlanger@langergrogan.com<br>LANGER GROGAN AND DIVER PC<br>1717 Arch Street, Suite 4020<br>Philadelphia, PA 19103<br>Tel: (215) 320-5660<br>Fax: (215) 320-5703 |

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 2:15-ml-02668−PSG (JEMx)<br><br>**DECLARATION OF IAN M. GORE IN OPPOSITION TO THE NFL DEFENDANTS' MOTION FOR SANCTIONS**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: January 27, 2023<br>TIME: 1:30 p.m.<br>COURTROOM: First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

1  I, Ian M. Gore, hereby declare:

2  I am a partner in the law firm Susman Godfrey L.L.P. and am admitted *pro hac vice* to practice before the United States District Court for the Central District of California in this action. *See* Dkt. No. 19. I submit this declaration in opposition to the NFL Defendants' Motion for Sanctions, Dkt. No. 833. I am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

**DIRECTV's Viewership and Transactional Data**

1. During fact discovery, counsel for Plaintiffs, DIRECTV, and the NFL Defendants conferred multiple times to discuss the scope of data that would be produced by DIRECTV in this action. Ultimately, the parties agreed to DIRECTV producing two sets of data generally described as "viewership data" and "transactional data." Given the volume and complexity of the data, including the complex processing needed to locate and produce the data, it took several months to reach an agreement and produce the data. Those efforts are briefly described in regular status reports that were filed with the Court. *See* Dkt. Nos. 327, 329, 332, 344, 348, 349, 350, 351, 361, 375, 401.

2. The scope and volume of the data produced by DIRECTV was large and complex to process. ███████████████████████████████████████████████████████████████████████████████████████████████████████████ Attached hereto as Exhibit 1 is a true and correct copy of an e-mail I received from Jeffrey Kopczynski, counsel for DIRECTV, regarding the production of the viewership data, dated August 22, 2021.

3. ███████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Dkt. No. 375 at ¶ 3. ███

2

1  ██████████████████████████████████████
2  ██████████████████████████████████████

3  During discovery, DIRECTV itself had significant issues in processing the STMS data for production. Attached hereto as Exhibit 2 is a true and correct copy of an e-mail I received from Jeffrey Kopczynski, counsel for DIRECTV, regarding the production of the transactional data, dated October 5, 2021.

4. By the end of December 2021, DIRECTV had produced both the viewership data and transactional data. DIRECTV produced the data to both Plaintiffs and the NFL Defendants at the same time. The NFL Defendants had access to the data just as long as Plaintiffs.

**Plaintiffs' Production of Expert Backup Materials Generally**

5. Pursuant to the Court's scheduling order at the time, Plaintiffs filed their motion for class certification on August 19, 2022. *See* Dkt. No. 628. At that time, Plaintiffs also filed under seal the expert declarations of three experts in support of Plaintiffs' class certification motion: Sarah Butler, Dr. Doug Zona, and Dr. Daniel Rascher. *See* Dkt. No. 630. Pursuant to the Stipulated Expert Protocol in this case, Dkt. No. 289, the backup materials for Plaintiffs' experts needed to be served three business days later: August 24, 2022.

6. On August 24, 2022, I served counsel for the NFL Defendants with the backup materials for Plaintiffs' experts supporting class certification. Attached hereto as Exhibit 3 is a true and correct copy of the e-mail I sent serving those materials, dated August 24, 2022.

7. The expert backup materials produced to the NFL Defendants on August 24, 2022 were extensive. Collectively, the volume of material provided to the NFL Defendants occupied nearly two gigabytes of computer storage, including 700 megabytes related to Dr. Zona's analysis.

8. For Plaintiffs' expert Sarah Butler, the backup materials served on August 24, 2022 to the NFL Defendants included transcripts of focus group

discussions, literature regarding survey methodology, and computer code regarding the design of the conjoint survey supporting her opinions.

9. For Plaintiffs' expert Dr. Dan Rascher, the backup materials served on August 24, 2022 to the NFL Defendants included Excel spreadsheets showing the calculations used for the appendices and exhibits in his expert report, PDF copies of the exhibits and appendices, copies of the sources of information used to support his opinions, data files supporting his analyses, and copies of the economic literature he relied upon. Moreover, where information was found elsewhere, the backup material served by Plaintiffs included text files indicating to the NFL where such information could be found. For example, one "Read_Me" file stated: For sources, please see Paragraphs 282-284 of the Rascher Report, Sections 4.1-4.4 of the Zona Report, and Exhibits 4-9 of the Zona Report." Another "Read_Me" file stated: "Underlying data is supported by the Zona Production at Analyses/Data/Intermediate/Datasets/viewership/Data for Rascher Exhibit 8.csv." In addition, the files were organized in various folders with references to specific exhibits, appendices, and footnotes in Dr. Rascher's report. That organization and the "Read_Me" files were intended to make it easier to locate the specific materials supporting each of Dr. Rascher's opinions.

10. For Plaintiffs' expert Dr. Douglas Zona, the backup materials served on August 24, 2022 to the NFL Defendants included the data used for his econometric modeling (other than the transactional and viewership data that the NFL already had in its possession for at least eight months at that time), sources cited in support of his analysis, and extensive computer code used to support his analysis.

11. The computer code covered thousands of lines of computer code and further included helpful comments and instructions for the NFL and its experts to recreate Dr. Zona's analysis. For example, a text file named "2. Key Process and ZIP File Creation in Azure" described the process to support creation of Dr. Zona's ZIP code files, the fact that two redundant files would be produced, and the pre-

requisites necessary to run that code, including specific settings that needed to be set for the data to process:

```
Pre-Requisites
==============
1. Databricks environment running on Azure as backbone (may also run on AWS or
   Google).
2. Azure DataLake for storing raw data as a BLOB.
3. .IPYNB file (produced, along with duplicate text version for easy viewing
   of code syntax).
4. Create DataBricks cluster with minimum 1 Master node and 2 Worker nodes.
```

12. Other "read me" files provided with Dr. Zona's code included similar instructions to assist in recreating his analysis. For example, one such file indicated that the NFL and its experts needed to replace the text "[path]" in the code with the root filepath of the system running the code (because the file directories on the computers used by Dr. Zona and his team may differ from the computer systems utilized by the NFL and its experts) and that the programs needed to run sequentially. Another directed the NFL and its experts to "Run SAS programs first." Again, the point of such instructions was to assist the NFL and its experts to recreate Dr. Zona's analysis.

13. Once the expert reports for Dr. Rascher and Dr. Zona were completed and Plaintiffs' motion for class certification filed on August 19, 2022, attention was made to preparing the backup materials supporting their analysis by the Court's deadline of August 24, 2022. For the materials associated with Dr. Rascher and Dr. Zona, a team of at least nine people billed over 160 hours to compile and prepare those backup materials. That work was billed at Plaintiffs' expense. That preparation included time spent preparing the computer code for the NFL and its experts. For example, file directories that were specific to the computer systems used by Dr. Zona and his team needed to be changed to a placeholder "[path]" for the NFL experts to change, along with the instructions provided to assist the NFL's experts to recreate Dr. Zona's analysis.

14. As I understand it, some portions of Dr. Zona's code can take several days to fully run. This is not because of anything unique to Dr. Zona's

programming, but rather because of the sheer volume of data produced by DIRECTV that had to be processed to create Dr. Zona's results. Given the amount of time needed to run the portions of code related to the data produced by DIRECTV, it was impossible to fully re-test the code after the changes made to prepare the code for the NFL were made in the timeframe permitted under the expert discovery order.

**Dr. Zona's Backup Materials**

15. The first time the NFL indicated any potential issue with the backup materials for Dr. Zona was on September 7, 2022—two weeks after those materials were produced by Plaintiffs on August 24, 2022. Attached hereto as Exhibit 4 is a true and correct copy of the e-mail I received from Mr. Barber on September 7, 2022. In pertinent part, Mr. Barber's email never mentioned any issues with running the code provided by Dr. Zona, delays in processing time, or anything of the sort. Instead, Mr. Barber asked Plaintiffs to provide the intermediate output files that are created by Dr. Zona's code. As a result, Plaintiffs had no notice at that time of any issues with Dr. Zona's computer code.

16. Intermediate data files, in this context, are data files that are created by Dr. Zona's programs as they process the data. Those intermediate files are then used by later steps in the code to create Dr. Zona's final output. Indeed, the backup materials served by Plaintiffs on August 24, 2022 had an "Intermediate" folder set up to hold those intermediate output files as Dr. Zona's code ran. A "read_me" file in that folder indicated as much to the NFL and its experts when it was produced by Plaintiffs. It read: "This directory will populate as programs are run sequentially."

17. Given that Plaintiffs had served the data utilized by Dr. Zona's analysis (absent the viewership and transactional data produced by DIRECTV, which the NFL had for several months at that point in time), the program code to process the data, and the final outputs of the analysis, it was unnecessary to serve the intermediate output files. As the NFL ran the code, those intermediate files would necessarily be created. They were therefore unnecessary to reconstruct Dr.

6

Zona's analysis pursuant to the expert discovery order and not produced. Given that the NFL's request for the intermediate output files was unnecessary, would be burdensome to produce given their size, the fact that the NFL and its experts would understandably want to run the code for itself (and therefore create the same intermediate files), and the fact that the NFL's request never mentioned any issues with the operation of Dr. Zona's programming, Plaintiffs declined to provide them. My response to Mr. Barber is reflected in Exhibit 5 to this declaration.

18. It wasn't until five days later, on September 14, 2022, that I heard from the NFL about these issues again. At that time, Mr. Barber indicated—for the first time since producing Dr. Zona's backup materials three weeks prior—that there were problems encountered in running Dr. Zona's code. In addition, Mr. Barber's e-mail never mentioned anything about significant expert or machine processing time being spent by the NFL to address the issues in Dr. Zona's code. Attached hereto as Exhibit 6 is a true and correct copy of the e-mail I received from Mr. Barber regarding these issues on September 14, 2022.

19. Once we learned then that there were issues with Dr. Zona's code, Plaintiffs acted promptly to address the issue with Dr. Zona to review the apparent issues, correct the code where necessary, and produce several intermediate output files. Given the complexity of the code and the volume of data, it took five days to investigate the issues raised by the NFL and prepare supplemental materials. It is my understanding that it was not feasible to reproduce every step of the analysis in a short time frame. However, it was possible to provide a modest number of intermediate files that were feasible to verify or could be recreated in a timely fashion.

20. On September 19, 2022, Plaintiffs produced a supplemental version of Dr. Zona's backup materials, including updated code and the requested intermediate data files. Attached hereto as Exhibit 7 is a true and correct copy of the e-mail I sent to Mr. Barber on September 19, 2022 to inform him of the production. On September 21, 2022, I received another e-mail from Mr. Barber regarding

additional issues with the computer code provided by Dr. Zona and requesting additional files and further information on the configuration used in Databricks, a cloud environment used to host the DIRECTV data. Attached hereto as Exhibit 8 is a true and correct copy of the e-mail I received from Mr. Barber on September 21, 2022. This was the first time the NFL raised any issues with the Databricks configuration settings to Plaintiffs, and was surprising in light of the fact that the data was produced by DIRECTV several months prior in the Databricks environment. Given that the NFL had access to that data for some time, there was no prior indication that the NFL had issues processing the data in that environment. This e-mail was also the first time the NFL indicated anything about the resources being used to correct the few errors in Dr. Zona's code after nearly a month of having originally produced it.

21. In less than 48 hours, I responded with the Databricks configuration. Attached hereto as Exhibit 9 is a true and correct copy of the e-mail I sent to Mr. Barber on September 23, 2022.

22. In addition to providing the Databricks configuration, I sent a letter to the NFL regarding the issues it was raising regarding Plaintiffs' adherence to the expert discovery stipulation. Attached hereto as Exhibit 10 is a true and correct copy of the letter attached to the e-mail in Exhibit 9, also dated September 23, 2022. In the letter, I pushed back on the NFL's implied argument that the Databricks issues it was encountering were the product of Plaintiffs' conduct. Contrary to what the NFL implied, Plaintiffs did not choose to host the data on that platform. Instead, DIRECTV—after being asked to cull its viewership data to a narrow set requested by Plaintiffs in order to minimize the burden and expense of data processing—opted to produce its entire "data lake" of all viewership data via Databricks. That was done with the agreement of **both** the Plaintiffs and the NFL. And given the differences in hardware and software configurations used for the Databricks cluster, Plaintiffs could not guarantee that the configuration information that the NFL was requesting would work. Plaintiffs incurred significant expense for

8

its experts to handle the data engineering issues necessary to make use of DIRECTV's data in the Databricks environment. Since the NFL had the same data for nearly a year at that point in time, it was reasonable to assume the NFL had been doing the same, especially when both parties had engaged in a series of informal interrogatories to DIRECTV on how to process and use the data.

23. I also pointed out in my letter that the data actually utilized by Dr. Zona *had* been produced by Plaintiffs. There was no need to go through the process of running the Databricks code because it culled the massive data provided by DIRECTV into three spreadsheets, which inform that portion of Dr. Zona's analysis. Those spreadsheets were provided to the NFL on September 19. Regarding additional intermediate output files, the NFL still had not provided us with any further details on running the code to necessitate the burden or re-creating them and producing them.

24. For several days, I did not hear anything back from the NFL. Rather than assume all of the issues were fixed, I followed up on my correspondence to inquire if there were any other issues the NFL was having so that Plaintiffs could proactively assist in resolving them. On September 28, 2022, I wrote the following to Mr. Barber:

> I'm following up on our correspondence last week regarding Dr. Zona's backup materials. With regard to the viewership data, please let us know if there are any issues with the data in light of the Databricks configuration that was provided and the three spreadsheets that were ultimately utilized for our experts' analysis.
>
> As to the other data, you have not identified any specific issues with running Dr. Zona's code other than the three typos that we addressed. If the NFL is having problems with the code or output, please let us know the specific issues so that we can look into it and help resolve it.

9

Attached hereto as Exhibit 11 is a true and correct copy of the e-mail I sent to Mr. Barber on September 28, 2022.

25. The NFL responded later that day, informing Plaintiffs for the first time of the specific issues it was continuing to have in running Dr. Zona's cloud-computing code. I received an e-mail from Mr. Barber that day specifying the locations in the code where the errors were encountered and asking for a specific set of intermediate output files. Attached hereto as Exhibit 12 is a true and correct copy of the e-mail I received that day from Mr. Barber.

26. I promptly responded to Mr. Barber that day, notifying him that Plaintiffs were "looking into the issues you've identified and plan to provide some, if not all, of the files you requested [by the following day]." I also informed him that because the data processing can take some time, I would send an update the following day. Attached hereto as Exhibit 13 is a true and correct copy of my e-mail to Mr. Barber on September 28, 2022.

27. Over the following days, I sent several e-mails to the NFL providing them with updated versions of the code, additional intermediate output files, and flagging additional issues that were never raised by the NFL. Attached hereto as Exhibits 14, 15, and 16 are true and correct copies of the e-mails I sent to Mr. Barber reflecting Plaintiffs' work to resolve the issues raised for the first time in Mr. Barber's September 28, 2022 e-mail (Exhibit 12).

28. After providing this additional information, no further issues were raised regarding Dr. Zona's original backup files and Plaintiffs considered the issue resolved.

**Other Pertinent Facts**

29. Throughout the month of September 2022, the parties were also discussing the schedule for the NFL's depositions of Plaintiffs' experts. In addition, the parties discussed a stipulation to address the class certification briefing schedule in light of the parties' anticipated *Daubert* motions on class certification. Attached hereto as Exhibit 17 is a true and correct copy of several e-mails in which the

*Daubert* and class certification briefing schedules were being discussed throughout that month. An agreement was reached, and a stipulation filed, on September 27, 2022. *See* Dkt. No. 649.

30. At no point during those discussions did the NFL ever actually request a delay in its response to the class certification motion as a result of the issues it raised with the expert backup materials. Nor did the NFL ever request a delay to the agreed-upon deposition dates as a result of those issues.

31. On November 11, 2022, the NFL informed Plaintiffs of their intention to move for sanctions and the parties met and conferred on November 16, 2022 regarding this motion. The NFL then waited over a month to file its motion, doing so in the middle of the week between the Christmas and New Year holidays without any prior notice of when it was actually going to file its motion.

32. On November 18, 2022, the NFL and NFL Enterprises LLC filed a complaint the Supreme Court of the State of New York, New York County against U.S. Specialty Insurance Company, Freedom Specialty Insurance Company, Starr Indemnity & Liability Company, Ironshore Indemnity Inc., and Everest National Insurance Company. Attached hereto as Exhibit 18 is a true and correct copy of that complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed January 6, 2023, in Seattle, Washington.

                                         */s/ Ian M. Gore*
                                         Ian M. Gore