# EXHIBIT 4

# To the Declaration of
# Jeremy S. Barber

Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel Listed in Signature
Page]

*Plaintiffs' Co-Lead Counsel*

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (*Pro Hac Vice*)
pleckman@langergrogan.com
**LANGER GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668−PSG (JEMx) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: April 15, 2022<br>TIME: 1:30 p.m.<br>COURTROOM: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ....................................................................................... 6

III.   ARGUMENT ............................................................................................. 8

    A.   The NFL Defendants' Production Delays Have Prejudiced Plaintiffs'
        Diligent Preparation to Complete Fact Discovery Under the Current
        Schedule. .......................................................................................... 9

    B.   The NFL Defendants Made Material Misrepresentations in Their
        Interrogatory Responses, Creating Unnecessary Delay. ............... 11

    C.   There is No Prejudice to Defendants in Amending the Scheduling
        Order. ............................................................................................. 13

    D.   Proper Development of the Record and Fundamental Fairness Provide
        Good Cause to Extend the Fact Discovery Period. ....................... 14

IV.    CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avila v. Willits Envtl. Remediation Trust*,
   633 F.3d 828 (9th Cir. 2011) ...................................................................................9

*Doe v. City of Newport Beach*,
   SA CV15-00608 JAK, 2016 WL 11757785 (C.D. Cal. Apr. 20, 2016) ....................14

*Goodman v. Los Angeles Police Dep't.*,
   CV 13–5959 GAF (MANx), 2014 WL 12614428 (C.D. Cal., Oct. 31, 2014)............14

*Hunt v. Cty. of Orange*,
   672 F.3d 606 (9th Cir. 2012) ...................................................................................9

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 ........................................................................................................15

*In re Blue Cross Blue Shield Antitrust Litig.*,
   No. 13-cv-20000 (N.D. Ala.).....................................................................................15

*In re Domestic Airline Travel Antitrust Litigation,* Misc. No. 15-1404, 2018 WL
   4441507, *3 (D.D.C. Sept. 13, 2018) ......................................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-2420 (N.D. Cal.).......................................................................................15

*In re Municipal Derivatives Antitrust Litig.*,
   No. 08-cv-2516 (S.D.N.Y.).........................................................................................15

*In re NCAA Student-Athlete Name and Likeness Litig.*,
   No. 09-cv-1967 (N.D. Cal.) ........................................................................................15

*In re Polyurethane Foam Antitrust Litig.*,
   No. 10-md-02196 (N.D. Ohio) ...................................................................................15

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002 (E.D. Pa.).........................................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827 (N.D. Cal.)........................................................................................15

*In re Thalomid and Revlimid Antitrust Litig.,*
     No. 14-cv-6997 (D.N.J.) ...........................................................................15

*Wells Fargo Bank, N.A. v. American Nat. Ins. Co.,*
     No. CV 09-01840 DDP, 2010 WL 3632787 (C.D. Cal. Sept. 13, 2010) ...................14

**Rules**

Fed. R. Civ. P. 16 ...................................................................................8, 9

Fed. R. Civ. P. 16(b)(4) ...............................................................................8

Fed. R. Civ. P. 45 .......................................................................................7

# I.   __INTRODUCTION__

Plaintiffs respectfully submit that an extension to certain interim deadlines in the scheduling order—one, however, that maintains the Court's current dispositive motion deadlines and anticipated trial date—is warranted due to the NFL Defendants' failure to comply with their discovery obligations. For example, the NFL Defendants failed to comply with the Court's prior deadline to substantially complete document productions by October 22, 2021, despite a representation to the Court made on November 19, 2021, that they were in compliance with that deadline. Instead, the NFL Defendants have produced more documents *after* the October 2021 deadline than before, including two massive productions in the past eight weeks. Moreover, the NFL Defendants inaccurately stated in an interrogatory response almost a year ago that they did not maintain certain data regarding NFL fans, their demographics, or viewing habits. But Plaintiffs' review of the NFL's documents showed otherwise, and the NFL has only now agreed to produce that data (which still has yet to be produced). Without an extension, Plaintiffs will be severely prejudiced by having inadequate time to review and analyze the many thousands of new documents produced by the NFL Defendants, identify additional witnesses for deposition, conduct those depositions, and allow their experts sufficient time to analyze the results of discovery in preparing their class certification and merits expert reports. Plaintiffs' proposed extension seeks to cure that prejudice, while also maintaining the Court's current deadlines for summary judgment briefing and the anticipated January 2024 trial date.[1]

---

[1] Plaintiffs have noticed this motion for April 15, 2022, the first available motion hearing date on the Court's calendar. Given that fact discovery is currently scheduled to conclude

Under the Court's initial scheduling order, the NFL Defendants were required to substantially complete their document productions in response to Plaintiffs' first set of document requests by October 22, 2021. On November 19, 2021, when the parties jointly sought a modest extension of the fact discovery cutoff and class certification briefing schedule in order to provide adequate time to review DIRECTV's forthcoming document productions, the NFL Defendants confirmed that they had substantially completed their document productions by the October 2021 deadline. *See* Dkt. No. 362 at 2 (representing that they had "substantially completed their document productions" "in compliance with the Court's scheduling order"). On December 31, 2021, the NFL Defendants produced 311,187 pages of documents. And then, on January 31, 2021, less than three weeks ago, the NFL Defendants produced an additional 252,148 pages of documents. Together, these late productions amounted to a larger volume of documents than the NFL Defendants had produced before the October 22, 2021 deadline.

In addition to the NFL Defendants' delayed production of more than half a million pages of documents well after the Court's substantial-completion deadline, the NFL Defendants' belated agreement to make available data in their possession regarding NFL Sunday Ticket subscribers and other NFL fans also merits an extension to avoid prejudicing

---

on May 15, 2022, though, Plaintiffs anticipate filing a separate *ex parte* application to advance the date of the hearing of this motion to March 18, 2022. Given the filing date of this motion, March 18 would be the normal timing for a hearing under the Local Rules. Thus, advancing the hearing date will not prejudice the NFL Defendants because they would have the normal time under the Local Rules to respond. Plaintiffs anticipate filing their *ex parte* application on February 22, 2022, pursuant to their discussions with the NFL Defendants.

2

Plaintiffs. The NFL Defendants have yet to make that data available to Plaintiffs. Given the importance of data regarding NFL fan viewing habits and demographics to Plaintiffs' claims in this case, Plaintiffs' *very first* interrogatory—served over a year ago on January 25, 2021—asked the NFL to describe "all categories of information in your possession, custody, or control that reflects or is or can be associated with individual consumers or viewers of live NFL football telecasts . . ." Leckman Decl. ¶ 10. The purpose of that interrogatory—and why it was the first interrogatory served by Plaintiffs—was to identify sources of consumer data relevant to Plaintiffs' claims and the types of data maintained by the NFL Defendants, allow Plaintiffs an opportunity to confer with their experts regarding what information in that database should be sought, and craft appropriate document requests. Plaintiffs served that interrogatory early in discovery in order to ensure their experts had sufficient time to review and analyze that data and take it into account in their analysis of the market for professional football telecasts.

The NFL responded by stating that it while it maintained a "Fan Centric Marketing database," that database "does not track personal identifying or other demographic information relating to individual viewers of live NFL football telecasts." Leckman Decl. ¶ 11. Plaintiffs took the NFL at its word, but recent discovery has revealed that the NFL's Fan Database does indeed track personal identifying and demographic information of individuals who have purchased the NFL Sunday Ticket package—a package which consists entirely of "live NFL football telecasts." The NFL attempted to excuse their misleading interrogatory response by claiming that just because someone subscribes to

NFL Sunday Ticket does not mean that they actually viewed any football telecasts. Leaving aside that purported "justification" for their answer, namely, that it was possible that someone would spend hundreds of dollars on that subscription service and never watch any games, Plaintiffs' interrogatory requested information regarding individual "*consumers* or *viewers*." Even if an individual never watched NFL Sunday Ticket games, they still bought the package and was, therefore, a buyer—or "consumer"—of live NFL football telecasts.

For all these reasons, which were unanticipated by Plaintiffs in both the original schedule and in the parties' joint request for an extension, it would be unreasonable and unfair to require Plaintiffs to complete all fact discovery, including the review and analysis of the documents that have now been belatedly produced, identify witnesses for deposition, complete those depositions, and permit Plaintiffs' experts sufficient time to review and analyze the results of that discovery to prepare their class certification and merits expert reports under the current schedule.[2] Plaintiffs have at all times diligently pursued discovery—including pursuing discovery from the NFL Defendants, issuing no fewer than 15 third-party subpoenas, filing three motions to compel, and even obtaining letters rogatory, as well as devoting substantial attorney resources to document review and factual analysis—all to maintain the current schedule.

Plaintiffs move for this adjustment to the schedule only after careful consideration

---

[2] Plaintiffs also wish to inform the Court that one of the named Plaintiffs, Michael Holinko, untimely passed away in January 2022. Plaintiffs will be seeking leave to add a new plaintiff if Defendants do not stipulate to that addition. The addition of a new plaintiff may also impact the current discovery schedule. However, the NFL Defendants' failure to comply with their discovery obligations warrants an extension standing alone.

of alternatives and discussions with counsel for the NFL Defendants to try reaching an agreement. *See* Martin Decl. ¶¶ 2-4. Plaintiffs met and conferred with the NFL Defendants on several occasions but, unfortunately, an agreement could not be reached, and this motion became necessary. Plaintiffs seek a modification to the current schedule as outlined below:

| Event | Current | Proposed |
|---|---|---|
| Fact Discovery Deadline | 5/15/22 | 8/5/22 |
| Class Certification Motion (and accompanying expert reports) | 6/5/22 | 8/19/22 |
| Opposition to Class Certification (and accompanying expert reports) | 8/19/22 | 11/4/22 |
| Reply Brief on Class Certification (and accompanying expert reports) | 9/19/22 | 12/2/22 |
| Class Certification Hearing | 10/17/22 | To Be Set By Court |
| Opening Merits Expert Reports | 11/4/22 | 12/9/22 |
| Responsive Merits Expert Reports | 1/18/23 | 2/17/23 |
| Rebuttal Merits Expert Reports | 3/6/23 | 3/31/23 |
| Expert Discovery Deadline | 4/5/23 | 4/28/23 |
| Summary Judgment Motions | 5/22/23 | No Change |
| Summary Judgment Oppositions | 7/21/23 | No Change |
| Summary Judgment Reply Briefs | 8/21/23 | No Change |
| Summary Judgment Hearing Date | 10/9/23 | No Change |
| Final Pretrial Conference | 2/5/24 | No Change |
| Trial | 2/20/24 | No Change |

As shown in the table above, Plaintiffs' proposed extension does ***not*** propose any changes to the Court's summary judgment briefing schedule, final pretrial conference date, or the anticipated commencement of trial. Moreover, the proposed new dates for class certification briefing and the submission of expert merits reports provide the NFL

Defendants with approximately the same amount of time as under the current schedule to respond to Plaintiffs' class certification motion and expert reports.

## II.   **BACKGROUND**

On January 12, 2021, the Court held a status conference to discuss scheduling matters for this action. Dkt. No. 294. The Court entered a scheduling order the same day, and the parties commenced discovery. Within three weeks of the status conference, Plaintiffs timely served document requests and interrogatories on the NFL Defendants and on DIRECTV. Specifically, on January 22, 2021, Plaintiffs served the NFL Defendants with a first set of requests for production of documents and asked for 104 categories of documents. Leckman Decl. ¶ 1. Plaintiffs soon thereafter also served more than 15 subpoenas on third parties seeking documents relevant to Plaintiffs' antitrust claims. Leckman Decl. ¶ 3. In its scheduling order, the Court ordered the parties to substantially complete their document productions (for document requests served by January 22, 2021) by October 22, 2021. *See* Dkt. No. 294.

On November 19, 2021, Plaintiffs and the NFL Defendants filed a Joint Stipulation Regarding Modifications to the Scheduling Order (the "Joint Stipulation"). Dkt. No. 362. Part of the reasoning behind the requested extension was to afford time for DIRECTV to complete its data and document productions, and provide time for Plaintiffs to review the substantial volume of documents prior to taking depositions. Dkt. No. 362-2 ¶ 5. In the Joint Stipulation, the NFL Defendants represented that their discovery productions in response to *all* of Plaintiffs' document requests were substantially complete and that they

were in compliance with the Court's scheduling order. Dkt. No. 362. At that point, the NFL Defendants had produced "more than 500,000 pages in response to Plaintiffs' discovery requests." *Id*. More precisely, the NFL Defendants had produced 513,398 pages of materials by the October 2021 deadline. Leckman Decl. ¶ 6. In reliance on the representations made by the NFL Defendants and the agreed-upon extension of time for conducting fact discovery, Plaintiffs agreed "not to serve any Requests for Production, Interrogatories, or Requests for Admission on the NFL Defendants, or any subpoenas on third parties, after February 22, 2022." Dkt. No. 362.[3]

Both before and since the filing of the Joint Stipulation, Plaintiffs have diligently worked to review the productions made by the NFL Defendants, as well as those made by third parties in response to Rule 45 subpoenas, and pursued deficiencies, including multiple meet-and-confer sessions with the NFL Defendants to resolve such issues. Leckman Decl. ¶ 4. On three occasions, Plaintiffs have had to seek this Court's assistance to compel production of responsive documents that NFL Defendants and third parties refused to produce. *See, e.g.*, ECF Nos. 330, 367, 377. The Court has granted two of those motions, *see* ECF Nos. 346, 403, and the third is pending, *see* ECF No. 393.

What Plaintiffs had no reason to anticipate, and their diligence could not address, however, was that following the Joint Stipulation, the NFL Defendants would continue to

---

[3] By this motion, Plaintiffs do not intend to change that agreement and are not seeking the ability to propound further written discovery requests after February 22, 2022. Rather, this motion is intended only to provide sufficient time for Plaintiffs to review and analyze the NFL Defendants' late document productions, identify witnesses for deposition, and afford their experts sufficient time to analyze the results of discovery to prepare their expert reports on class certification and the merits.

make massive productions of documents—not dozens, hundreds, or even a few thousand pages of "trailing" documents, but productions totaling over half a million pages (592,161 pages to be exact)—in response to Plaintiffs' requests for production *after* the October 2021 substantial completion deadline. Leckman Decl. ¶ 8. This represents more pages of material than the NFL produced before the Court's substantial completion deadline. As described above, Plaintiffs further learned that over a year after they served the relevant interrogatory the NFL Defendants maintained a database containing key information that the NFL had previously claimed did not exist. Leckman Decl. ¶ 13.

In consideration of these unanticipated discovery developments, Plaintiffs met and conferred with the NFL Defendants in order to seek an agreed modification to the current schedule for conducting fact discovery, class certification motion practice, and expert deadlines. Unfortunately, those discussions ended in an impasse, requiring Plaintiffs to file this motion. Martin Decl. ¶ 2. For the reasons set forth herein, Plaintiffs seek a modification to the schedule to ensure adequate time to review and analyze the NFL's documents, identify witnesses to be deposed, and conduct those deposition. In addition, this additional time will be required by Plaintiffs' experts to prepare their reports in support of Plaintiffs' motion for class certification and on the merits of Plaintiffs' claims.

## III.   **ARGUMENT**

Once a scheduling order has been issued, Rule 16 allows "[a] schedule [to] be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "District courts have 'broad discretion to manage discovery and to control the course of

litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. Cty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (*quoting Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).

For two reasons, Plaintiffs have shown good cause here. *First*, in the parties' November 19, 2021 joint submission, the NFL Defendants inaccurately claimed to Plaintiffs and the Court that they had substantially completed their productions in compliance with the Court's October 22, 2021 deadline. Indeed, the NFL Defendants have produced *more* pages *after* that deadline than they did beforehand. *Second*, documents produced in discovery have revealed that the NFL Defendants' response to Plaintiffs' first interrogatory regarding its fan database was inaccurate. Even under the NFL's strained construction—that somehow Plaintiffs had only asked about viewership when in fact they asked about "consumers or viewers" —that response was incomplete and misleading.

A modification to the schedule avoids prejudice by allowing Plaintiffs sufficient time to review and analyze the documents produced by the NFL Defendants, identify witnesses for deposition, conduct those deposition, and enable Plaintiffs' experts time to prepare their reports, both for class certification and merits purposes.

**A.** **The NFL Defendants' Production Delays Have Prejudiced Plaintiffs' Diligent Preparation to Complete Fact Discovery Under the Current Schedule.**

As discussed, Plaintiffs relied upon the NFL Defendants' representations, including in the Joint Stipulation, that their productions were substantially complete as of the Court's October 2021 deadline.  But they were not—not even close. The NFL Defendants produced

311,187 pages of discovery on December 31, 2021, and 252,148 pages on January 31, 2022 (with the fan database discovery yet to come): a total of 592,161 pages of material in response to requests for productions served nearly *one year prior*. That exceeds the 513,398 pages of documents that has been produced by the NFL Defendants' substantial completion deadline. Leckman Decl. ¶ 6.

Even from the limited review of these recently produced materials that has been possible so far, it is clear that they are not only voluminous but also very important for conducting fact witness depositions and the preparation of expert reports. Among the documents included in these belated, massive document productions are, for example, NFL Digital Packaging and Pricing Strategy materials, documents discussing pricing strategy, and documents concerning audience content consumption habits and impact on NFL Sunday Ticket pricing. Leckman Decl. ¶ 9. Such documents are important in analyzing NFL viewership and pricing of football telecasts to enable Plaintiffs' experts to prepare their reports in support of Plaintiffs' motion for class certification and on the merits. These documents all should have been responsive to requests for productions served nearly *one year* before they were ultimately produced to Plaintiffs. Leckman Decl. ¶¶ 2, 9. Additional subscriber demographic data regarding viewers and consumers of live football telecasts have yet to be produced.

To have this massive document production made by the NFL Defendants on the eve of and coinciding with DIRECTV's production of 300,592 documents (representing an additional 2.1 million pages) since December only compounds the prejudice to Plaintiffs if

the current fact discovery and class certification deadlines remain the same.

**B.    The NFL Defendants Made Material Misrepresentations in Their Interrogatory Responses, Creating Unnecessary Delay.**

Over a year ago, on January 25, 2021, Plaintiffs served the NFL Defendants with their first interrogatory which asked them to describe:

> all categories of information in your possession, custody, or control that reflects or is or can be associated with individual consumers or viewers of live NFL football telecasts, including, but not limited to (a) the personal identification of consumers and viewers; (b) the number of such viewers and consumers of NFL telecasts and their demographics; (c) purchases of any product; (d) preferred NFL football teams of consumers or viewers of NFL telecasts; and (e) viewership of other sports programming by consumers or viewers of NFL telecasts.

Leckman Decl. ¶ 11. This plain-English request sought information to permit Plaintiffs' experts to identify sources of data relevant to the market for professional football telecasts and the monetary and non-monetary effects of the NFL Defendants' distribution restraints. *See* Leckman Decl. ¶ 11.

The NFL Defendants responded to that interrogatory on March 10, 2021, stating that they had no database that "track[s] personal identifying or other demographic information relating to individual viewers of live NFL football telecasts." *Id.* The NFL then stated that it maintains "a separate database that includes non-transactional analytical data associated with live NFL telecasts," but again the NFL Defendants stated that the database "does not include personal identification or demographic information for such viewers, nor does it include information related to product purchases, preferred NFL football team, or viewership of other sports programming." *See* Leckman Decl. ¶ 12.

11

During the course of Plaintiffs' review of the NFL Defendants' discovery (including documents produced after the NFL's representation that they had substantially completed their production), Plaintiffs discovered that the NFL Defendants' response was, to say the least, inadequate. Plaintiffs found documents revealing that, contrary to their response, the NFL Defendants do maintain a database associating, among other things, a host of attributes with subscribers to NFL Sunday Ticket. Leckman Decl. ¶ 13.

After Plaintiffs served a Local Rule 37-1 letter regarding the insufficiency of the interrogatory response, on January 21, 2022, Plaintiffs held a meet and confer with counsel for the NFL Defendants. Leckman Decl. ¶ 14. The NFL Defendants maintained that their interrogatory response was accurate because there was no way of knowing whether someone who purchased Sunday Ticket viewed any games. This strains credulity—why would someone buy a package of live NFL football telecasts if they never intended to view a live NFL football telecast—but it is also a non sequitur because Plaintiffs' interrogatory requested information regarding "***consumers*** or viewers" of live NFL football telecasts. Even if an individual decided to buy but then not watch any game available on NFL Sunday Ticket, that person was still a buyer—a consumer—of that product. If Plaintiffs had intended to just ask about viewership, they would not have asked for information about "consumers or viewers." The NFL Defendants, in other words, adopted an unreasonably narrow reading of "viewers," and then completely ignored Plaintiffs' request for information about "consumers."

After it was discovered that the NFL did have data of the sort Plaintiffs sought,

Plaintiffs immediately served a request for the data. Leckman Decl. ¶ 16. In an implicit admission that their interrogatory response was inaccurate, the NFL preemptively agreed to produce the requested portions of the database to Plaintiffs *before* their deadline to respond to the new document request. But this supposed, late "expedition" of production does little to mitigate the prejudice Plaintiffs will suffer if the current interim case deadlines remain in place. If the interrogatory response had been accurate, Plaintiffs would have sought this data nearly a year ago. Plaintiffs' experts would then have had this information and could have sought any necessary clarifications or follow-up requests in a timely manner—not at the very end of fact discovery. This NFL fan data still has not been made available to Plaintiffs.

### C.   <u>There is No Prejudice to Defendants in Amending the Scheduling Order.</u>

Plaintiffs are mindful of this Court's interest in maintaining the scheduling order and ensuring that this case proceeds in an efficient manner. Plaintiffs' proposed modifications allow the schedule to accommodate the problems created by the late productions by the NFL Defendants but leave unchanged any dates related to motions for summary judgment. Plaintiffs' proposal also leaves the Court's anticipated final pretrial conference and trial dates unchanged.

Simply put, there is no prejudice to the NFL Defendants in modifying the schedule; the proposed schedule ensures that NFL Defendants have adequate time to respond to Plaintiffs' class certification motion and their merits expert reports. Plaintiffs are seeking this extension before the fact discovery deadline, not after the close of fact discovery or on

the eve of summary judgment or trial, where a party may be required to alter their developed strategies or disrupt a trial schedule. *Cf. Wells Fargo Bank, N.A. v. American Nat. Ins. Co.*, No. CV 09-01840 DDP (RZx), 2010 WL 3632787, at *2 (C.D. Cal. Sept. 13, 2010) (finding that modification of scheduling order where party is not diligent on the "eve of trial" is prejudicial and "would cause further delay and disrupt efficient management" of the case). The proposed schedule shortens the timeframe for *Plaintiffs* between the close of fact discovery and its class certification motion, but otherwise provides the NFL Defendants with more time to oppose Plaintiffs' class certification brief. The proposed schedule also extends the expert discovery deadlines and provides the NFL Defendants with approximately the same amount of time between the parties' expert reports.

### D. Proper Development of the Record and Fundamental Fairness Provide Good Cause to Extend the Fact Discovery Period.

Proceeding on the current fact discovery schedule would be inconsistent with judicial policies favoring appropriate development of the record. *See Goodman v. Los Angeles Police Dep't.*, CV 13–5959 GAF (MANx), 2014 WL 12614428, at *2 (C.D. Cal., Oct. 31, 2014) (good cause exists to modify scheduling order in order for parties to develop facts that will be useful to the Court in deciding the parties' Motions for Summary Judgment); *Doe v. City of Newport Beach*, SA CV15-00608 JAK (KESx), 2016 WL 11757785, at *7 (C.D. Cal. Apr. 20, 2016) (acknowledging the goals of discovery as "truth-seeking"). This is certainly so in a class action of significance in which Plaintiffs have been diligently pursuing discovery and should be afforded a meaningful opportunity to review it. *In re Domestic Airline Travel Antitrust Litigation*, Misc. No. 15-1404 (CKK), 2018 WL

4441507, *3 (D.D.C. Sept. 13, 2018) (granting plaintiffs motion for an extension of fact

discovery so that Plaintiffs "are afforded 'a meaningful opportunity to review the discovery

they have diligently pursued and for which they secured production.'"). Indeed, in large

multi-district antitrust actions such as this where document productions are often

voluminous and the issues complex, extensions of the fact discovery deadlines are

frequently granted.[4]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court amend the

current scheduling order in the manner requested herein.

---

[4] *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio)
(discovery proceeded from April 27, 2011 (ECF No. 112) to February 28, 2014 (ECF
1033)); *In re Thalomid and Revlimid Antitrust Litig.*, No. 14-cv-6997 (D.N.J.) (discovery
proceeded from July 6, 2015 (ECF No. 49) to May 17, 2018 (ECF No. 173)); *In re Air
Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (discovery proceeded from
November 12, 2009 (ECF No. 1030) until December 31, 2013 (ECF No. 1729)); *In re Blue
Cross Blue Shield Antitrust Litig.*, No. 13-cv-20000 (N.D. Ala.) (discovery began in 2014
(ECF No. 229) until December 1, 2017 (ECF No. 1567)); *In re NCAA Student-Athlete
Name and Likeness Litig.*, No. 09-cv-1967 (N.D. Cal.) (discovery proceeded from July 6,
2010 (ECF No. 224) to January 15, 2013 (ECF No. 632)); *In re Processed Egg Prods.
Antitrust Litig.*, No. 08-md-2002 (E.D. Pa.) (negotiations regarding scope and form of
production and discovery protocols began April 21, 2010 during a discovery stay (ECF
320), with discovery and document production later proceeding from April 25, 2012 (ECF
656) to April 30, 2014 (ECF 869)); *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-
2516 (S.D.N.Y.) (discovery began in earnest after a stay was modified on June 14, 2013
(ECF No. 1784) and subsequently lifted on June 25, 2014 (ECF No. 1909), and continued
until August 30, 2015 (ECF No. 1946), with certain depositions continuing until June 15,
2016 (ECF No. 1988)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 (N.D.
Cal.) (limited discovery began after a partial stay was entered on September 25, 2007 (ECF
No. 300), increased after the stay was modified in early 2008 (ECF Nos. 493 & 631) and
continued until May 11, 2011 (ECF No. 1875)); *In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-2420 (N.D. Cal.) (discovery proceeded from July 11, 2014 (ECF No. 475) to
February 1, 2018 (ECF No. 1964)).

Dated: February 18, 2022                    Respectfully submitted,

                                            By:   /s/ Marc M. Seltzer
                                                  Marc M. Seltzer

                                                  Marc M. Seltzer (54534)
                                                  mseltzer@susmangodfrey.com
                                                  SUSMAN GODFREY L.L.P.
                                                  1901 Avenue of the Stars, Suite 950
                                                  Los Angeles, CA 90067
                                                  Tel: (310) 789-3100
                                                  Fax: (310) 789-3150

                                                  Arun Subramanian (*Pro Hac Vice*)
                                                  asubramanian@susmangodfrey.com
                                                  William Christopher Carmody (*Pro Hac Vice*)
                                                  bcarmody@susmangodfrey.com
                                                  Seth Ard (*Pro Hac Vice*)
                                                  sard@susmangodfrey.com
                                                  SUSMAN GODFREY L.L.P
                                                  1301 Avenue of the Americas, 32nd Fl.
                                                  New York, NY 10019
                                                  Tel: (212) 336-8330
                                                  Fax: (212) 336-8340

                                                  Ian M. Gore (*Pro Hac Vice*)
                                                  igore@susmangodfrey.com
                                                  SUSMAN GODFREY L.L.P.
                                                  1201 Third Avenue, Suite 3800
                                                  Seattle, WA 98101
                                                  Tel: (206) 505-3841
                                                  Fax: (206)

                                                  Michael D. Hausfeld (*Pro Hac Vice*)
                                                  mhausfeld@hausfeld.com
                                                  Farhad Mirzadeh (*Pro Hac Vice*)
                                                  fmirzadeh@hausfeld.com
                                                  HAUSFELD LLP
                                                  888 16th Street, N.W., Suite 300
                                                  Washington, DC 20006
                                                  Tel: (202) 540-7200
                                                  Fax: (202) 540-7201

16

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
Peter Leckman (*Pro Hac Vice*)
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*