# EXHIBIT 8

## To the Declaration of Jeremy S. Barber

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (WESTERN DIVISION - LOS ANGELES)




IN RE:                          ) CASE NO: 2:15-ML-02668-PSG-JEM
                                )
                                )              CIVIL
NATIONAL FOOTBALL LEAGUES       )
SUNDAY TICKET ANTITRUST         )     Los Angeles, California
LITIGATION                      )
                                )     Tuesday, August 9, 2022
                                )
_____)     (10:04 a.m. to 10:29 a.m.)



                          HEARING RE:

         PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
                  BY NFL DEFENDANTS [DKT.NO.536]


             BEFORE THE HONORABLE JOHN E. MCDERMOTT,
                 UNITED STATES MAGISTRATE JUDGE




APPEARANCES:                 SEE PAGE 2


Court Reporter:              Recorded; CourtSmart


Courtroom Deputy:            S. Lorenzo


Transcribed by:              Exceptional Reporting Services, Inc.
                             P.O. Box 8365
                             Corpus Christi, TX 78468
                             361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

**<u>APPEARANCES FOR</u>:**


Plaintiffs:                 TYLER M. FINN, ESQ.
                            Susman Godfrey, LLP
                            1301 Avenue of the Americas
                            32nd Floor
                            New York, NY 10019
                            212-336-8330

Defendants:                 JEREMY BARBER, ESQ.
                            MAX WARREN, ESQ.
                            Wilkinson Stekloff, LLP
                            11601 Wilshire Blvd.
                            Suite 600
                            Los Angeles, CA 90025
                            424-291-9661

1    **Los Angeles, California; Tuesday, August 9, 2022; 10:04 a.m.**

2                    **(Zoom Videoconference Hearing)**

3                        **(Call to Order)**

4            **THE CLERK:**  Calling Case Number 15-ml-2668, *In re*

5    *National Football League Sunday Ticket Antitrust Litigation.*

6            Counsel, please state your appearances.

7            **MR. BARBER:**  Good morning, Your Honor.  Jeremy Barber

8    on behalf of the NFL Defendants.

9            **MR. FINN:**  Good morning, Your Honor.  Tyler Finn,

10   Susman Godfrey, on behalf of Plaintiffs.

11           **THE COURT:**  Okay.  Do we have Max Warren?

12           **MR. BARBER:**  Max Warren is my colleague.  He's

13   listening but I will be handling the arguments for the NFL

14   Defendants, Your Honor.

15           **THE COURT:**  All right.  Let me begin with you,

16   Mr. Finn.  Do you have anything you want to add to your papers?

17           **MR. FINN:**  Yes, Your Honor.  I think it might help

18   the Court to have a more fulsome explanation of why the

19   documents that are sought, the discovery that is sought is so

20   relevant and so material to the Plaintiffs' case and why the

21   relevance of those -- of that discovery requires under

22   Rule 26(e) that the NFL has a continuing discovery obligation

23   that extends beyond the fact discovery cutoff.

24           I think one issue that was not necessarily clear in

25   the motion and certainly conflated by the NFL in the opposition

4

1   is that this motion concerns two separate albeit related

2   categories of discovery.  The first category is discovery

3   concerning the actual agreement that will be signed that will

4   govern the future of the Sunday Ticket package.  That agreement

5   will govern the rights for out-of-market NFL games beginning in

6   the 2023 NFL season and for years to come.  And media reports

7   indicate, including statements from Commissioner Roger Goodell,

8   this agreement will be signed in the fall, which is to say

9   soon.

10          The second category of discovery concerns the

11  negotiations between the NFL and the multiple bidders for the

12  future rights to these out-of-market games.  These negotiations

13  are ongoing and have been throughout the fact discovery period.

14          It bears mentioning that the NFL now opposes

15  discovery of either category.  First, it refuses to produce

16  additional documents about the negotiations and now in

17  opposition it refuses to produce any discovery about the

18  agreement itself, which is contrary to representations that

19  have been made to Plaintiffs throughout the discovery period.

20          Also, the NFL's opposition and its conflation of

21  these two categories downplays the materiality of the discovery

22  sought.  I think properly understood the materiality of the

23  discovery the Plaintiffs seek in this motion cannot seriously

24  be questioned.  That's why the NFL did not raise a relevance

25  objection until it opposed this Motion to Compel.  That's why

1    the NFL has already produced documents about these

2    negotiations.  That production was completed in May of this

3    year.  I think if the NFL truly considered this discovery to be

4    irrelevant the parties would have been before this Court months

5    ago.

6              Now, the NFL's failure to raise a timely relevance

7    objection means they have waived any such argument.  And I

8    would like to emphasize that Plaintiffs raised the waiver issue

9    in their motion, the NFL's opposition had nothing to say about

10   it.

11             But putting waiver aside, Plaintiffs have made clear

12   why this discovery is material to their case.  As you know,

13   Your Honor, the agreement between the NFL and DirecTV for the

14   exclusive broadcasting of out-of-market games is the

15   centerpiece of Plaintiffs' antitrust case and it logically

16   follows that the new agreement and negotiations leading up to

17   that agreement will touch on multiple issues that are at the

18   heart of this case and that are hotly disputed by the parties.

19             Now, cutting off discovery of these documents in

20   April of this year, which is the date of the most -- NFL's most

21   recent document production, renders the NFL's responses

22   materially incomplete within the Rule of 26(e).  And that is

23   true with respect to numerous issues and I'll briefly describe

24   them.

25             The first one is equitable relief.  The Plaintiffs

6

1    seek injunctive relief in this case.  Many of the class members

2    are current subscribers to Sunday Ticket who will be affected

3    by the terms of the new agreement and thus the terms of the new

4    agreement will determine the proper scope of that relief.

5         The second issue is price.  Discovery of the new

6    agreement will provide information about what the future retail

7    pricing for Sunday Ticket will look like.  And the discovery

8    that has already been produced in this case, including

9    deposition testimony, indicates that retail price is one of the

10   key issues that the NFL has been discussing with future bidders

11   and potential parties.  And the retail price is central to this

12   litigation because at bottom this is an overcharge case.

13        In addition, the NFL has tried to justify the high

14   price of Sunday Ticket by claiming that it is necessary to

15   limit distribution of out-of-market games which protects the

16   broadcast networks over-the-air supposedly free broadcast of

17   local games.  And because of that the NFL's conduct with

18   respect to future pricing will prove whether its procompetitive

19   justification is legitimate or merely just a litigation

20   defense.

21        Secondly with respect to price, the NFL's role in

22   setting the price for Sunday Ticket is hotly disputed in this

23   case.  The League's witnesses have testified that DirecTV has

24   complete discretion over pricing, that the NFL plays no role,

25   while document discovery indicates otherwise.  And so the NFL's

7

1    negotiation over retail pricing to the extent to which they

2    want to control that retail pricing is relevant to that

3    dispute, which is material to Plaintiffs' claims because of the

4    Illinois (indisc.) direct purchaser.

5          The other issues that I would emphasize are

6    exclusivity.  It's possible that the NFL will decide to offer

7    Sunday Ticket in a nonexclusive manner, which will contradict

8    its procompetitive justification that exclusivity is somehow

9    necessary to promote investment in the product and again to

10   protect the networks' broadcast of the game.

11         More generally, though, discovery of the negotiations

12   provides valuable insight into what the NFL's true motivations

13   are for the restraints that are kept.  Both the agreement and

14   the negotiations will shed light on the viability of less

15   restrictive alternatives than the current arrangement that

16   could have been available during the damages period.

17         Now, the NFL claims that this new agreement somehow

18   has no bearing on the past because in a vague formulation that

19   consumer preferences and the media landscapes have changed

20   since the last agreement.  But Plaintiffs would like to

21   emphasize the NFL provides no support for that argument and it

22   is baseless.  Plaintiffs dispute that media landscapes have

23   changed so dramatically such that an agreement governing terms

24   starting in 2023 will encompass factors, aspects, and packages

25   that would have been impossible in 2014.  That is simply not

1   true.  The NFL should not be able to sever any relationship

2   between past conduct and future conduct.

3          And lastly, I would say for the same reasons that

4   these documents are relevant and material are the same reasons

5   why Rule 26(e) requires the NFL to provide this discovery even

6   though under the circumstances that production will occur after

7   the deadline for fact discovery.

8          The NFL's response to Request 112, which underlies

9   this motion, was demonstratively incomplete.  That request

10  specifically requested rolling production on the negotiations

11  and Plaintiffs drafted that request in such a manner because

12  they knew that Sunday Ticket negotiations were ongoing

13  throughout the discovery period, were dynamic and would change.

14  Therefore, the responses are materially incomplete and

15  Rule 26(e) requires supplementation.  That is also true if you

16  accept the authorities that the NFL cites in its opposition,

17  which would require Plaintiffs to show that the requested

18  material will substantially affect Plaintiffs' trial strategy.

19          And with respect to the final terms of the new

20  agreement, they are inherently material.  In the short term,

21  this discovery will affect Plaintiffs' drafting of merit expert

22  reports which are due in January because we'll have to rebut

23  some of the procompetitive justifications that I just

24  mentioned, as well as discussing whether these restraints in

25  fact restrain competition.

9

1          The continuing (indisc.) of discovery at bottom is

2   justified by the unique circumstances here.  We have the

3   principal antitrust Defendant who during the period of fact

4   discovery was negotiating the very agreement the Plaintiffs

5   challenge violates the Sherman Act.  Because of that, the

6   collection of documents made before that agreement is signed

7   would inherently be incomplete and the NFL is required to

8   supplement its production.

9          And I'll end by saying that Plaintiffs request is

10  bounded in both scope and time and many of the authorities that

11  the NFL cites in its opposition express concerns about

12  extending the discovery deadline without any boundary

13  whatsoever or unnecessarily delaying trial or a continuous

14  production of documents that are being continually produced.

15  That is not the case here.  Plaintiffs seek two productions and

16  one deposition.  The end date of this discovery will be

17  determined by the signing of a new agreement, which is a

18  definitive date which Plaintiffs expect to be in the fall of

19  2022, and Plaintiffs have no interest in delaying any deadlines

20  in this case.

21          **THE COURT:**  Thank you, Mr. Finn.  A couple of

22  questions.  Do I understand correctly that what you are

23  proposing is three custodial searches?

24          **MR. FINN:**  The Plaintiffs proposal only calls for two

25  custodial searches.

10

1        **THE COURT:**  Okay.

2        **MR. FINN:**  Which is one as soon as possible, and the

3   second would be conducted after the agreement is signed.

4        **THE COURT:**  I'm talking about the number of people

5   that the NFL would have to have searched their records for, not

6   the fifteen and fifteen arrangement.

7        **MR. FINN:**  That's right, Your Honor.  In the past

8   Plaintiffs and the NFL have agreed to search the custodians

9   of -- three NFL custodians under agreed upon search terms and

10  Plaintiffs would agree to having that protocol govern the scope

11  of any future productions as well.

12       **THE COURT:**  The NFL Defendants have presented a

13  compromise proposal which would involve supplementing their

14  productions with a small number of identified documents now and

15  doing a limited noncustodial production after any agreement is

16  ultimately signed.  What's insufficient about that for your

17  purposes?

18       **MR. FINN:**  Well, for our purposes it's the value of

19  the custodial documents and the documents concerning the

20  communications and the negotiations of the NFL with its former

21  bidders and I think fundamentally what at least the second part

22  of that proposal does not include is the rejected proposals

23  that would have been made by bidders that the NFL deemed

24  insufficient.  And the reasons why the NFL deemed those

25  proposals to be insufficient or not tailored to their needs are

1  important for Plaintiffs to understand what is in fact

2  motivating these restraints and what are the limits on the out-

3  of-market package, which again turn on the veracity of their

4  procompetitive justification.

5        **THE COURT:**  Okay, thank you.

6        Mr. Barber, your turn.

7        **MR. BARBER:**  Thank you, Your Honor.

8        I want to start off by clarifying one of the opening

9  assumptions that Mr. Finn made in his argument and I think goes

10  to your last question, Your Honor.  The NFL has never said and

11  is not taking the position that we will make no -- provide no

12  discovery regarding the future deal with regard to Sunday

13  Ticket.  What I have told Mr. Finn going back many, many months

14  is that our view is that any such discovery should be discussed

15  after a deal is announced and it should be limited, given the

16  fact it will be after the end of fact discovery and given the

17  fact that custodial collections and productions at that point

18  would be unduly burdensome.

19        What we are opposing is the present motion, which is

20  much more onerous than even Mr. Finn's last offer to the NFL.

21  What they are seeking is two burdensome custodial collections

22  with incredibly short timeframes, 15 day turnarounds, an

23  additional deposition, and we don't think -- we think and we

24  would ask Your Honor to deny that motion for a number of

25  reasons.

1          First, it's untimely.  Judge -- Chief Judge Gutierrez

2    has made clear there is a fact discovery deadline that has now

3    passed of August 5th.  In his Order he made clear that is the

4    date by which all discovery is to be completed and that any

5    discovery motions need to be filed well enough in advance of

6    that that they could be resolved before the end of fact

7    discovery.  Plaintiffs did not comply with that.  That is basis

8    enough to deny their motion.

9          With regard to the merits, though, assuming the Court

10   is interested, what we are opposing is Plaintiffs -- Plaintiffs

11   are at bottom unhappy with the compromise that we have offered.

12   They want more.  And we oppose that for very reasonable

13   reasons.  First, the -- it's unnecessary.  It is unnecessary

14   for a number of reasons.  One is it's burdensome.  These

15   collections and productions that they are seeking, the first of

16   which would have to be made in the course of the negotiations,

17   which are highly commercially sensitive, and our view is that

18   producing documents in the midst of that negotiation is not

19   helpful and is -- you know, is reason enough to deny that.

20         Moreover, and I think more to the point, there would

21   be no prejudice whatsoever to the Plaintiffs if we were to wait

22   until after any deal is announced.  Fact discovery has ended.

23   All discovery, all depositions of the NFL that current

24   employees of the NFL have been completed, including a 30(b)(6)

25   deposition less than two weeks ago which included a topic on

13

```
 1   the current negotiations.  So Plaintiffs were able to ask all
 2   of the questions that they wished to ask to get all of the
 3   information they felt they needed and the witness, I don't
 4   think Mr. Finn will dispute, answered all of the questions on
 5   that topic.
 6           At this point Plaintiffs' motion for class
 7   certification is due in less than two weeks.  They have the
 8   information they need for that motion.  The next relevant
 9   deadline, as Mr. Finn indicated, is January 6th, which is the
10   deadline for merit expert reports.  As Mr. Finn indicated, all
11   the public accounts are that a new -- any new deal will be
12   announced in the fall such that to the extent once the deal is
13   announced the NFL will make -- has agreed that it would make a
14   noncustodial production to give Mr. Finn the information that
15   he thinks he's entitled to.  We have never said that we would
16   not give discovery related to other bidders, we have just said
17   that we'll negotiate it at the time and Mr. Finn chose to go
18   ahead and file this motion, nonetheless.  At that point
19   Mr. Finn and I and perhaps the NFL Defendants can have
20   appropriate meet and confers after the deal has been announced
21   to outline the appropriate scope.  The NFL's view is that it
22   should not be non -- that it should not be a custodial
23   production given the additional burdens that that involves, but
24   we are willing to negotiate in good faith to give relevant
25   discovery to Mr. Finn.  And they will have -- unless there's
```

14

1   some dramatic change in the timelines, they will have that well

2   before the deadline for their merit expert reports.  To the

3   extent that the circumstances change and a deal is not

4   announced before January 6th, that of course -- you know, the

5   parties can discuss what the proper recourse at that time is.

6           So for all those reasons, Your Honor, the NFL

7   Defendants would request that this Court reject the Motion to

8   Compel that is before Your Honor, at least reject the specific

9   relief sought in the Proposed Order by Plaintiffs in their

10  motion and agree that the NFL Defendants and the Plaintiffs can

11  negotiate in good faith after a deal is announced and make a

12  limited noncustodial production at that time.

13          **THE COURT:**  Well, if I were to grant Plaintiffs'

14  motion, is there anything that you would want to lessen the

15  burden?  Would you like 30 days as opposed to 15 days for the

16  first production, for example?

17          **MR. BARBER:**  Well, I think, Your Honor, we would

18  certainly request three things.  One is that any production be

19  after the negotiations.  We don't think there's any benefit to

20  Plaintiffs to have the production of documents 15 days from now

21  after their class certification motion is filed, or 30 days

22  from now after their class certification motion is filed.  So

23  we would request that there be one production after any deal is

24  announced.

25          Two, we would request that the timeframe for

15

1  production be greatened so it is greater than 15 days because

2  we think that creates -- that timeline creates unnecessary

3  burdens.  To the extent it is a noncustodial production that

4  Your Honor would order, I think a shorter timeframe may be

5  appropriate.  But if it's a custodial production, that

6  increases the burden and the time necessary for review and so

7  we would request that that be extended.

8          And third, we would request the Court deny

9  Plaintiffs' request for an additional deposition on this topic.

10  Plaintiffs and the NFL Defendants negotiated at length the

11  number of depositions that would occur in this case.  We

12  reached an agreement and this -- Plaintiffs never requested in

13  that negotiation to seek a deposition of the NFL after a deal

14  had been announced.  This is the first time that they are

15  requesting that, in violation of the agreement that we reached.

16  Plaintiffs have already deposed a 30(b)(6) witness about the

17  negotiations so they are already well aware of the types of

18  potential agreements that the NFL has considered, which was one

19  of the primary motivating factors that Mr. Finn cited in his

20  argument, and the additional burden of another deposition of an

21  NFL witness is not appropriate in our view.

22          **THE COURT:**  Mr. Finn, I'd like you to respond to the

23  argument about waiting until after the negotiations are

24  concluded.  If you waited you could pick up the material that

25  your first production would provide at that time, but just

16

1    later.  Does that -- is that a problem for you?  Do you need it

2    now?  Is it important for you to get it now as opposed to at

3    the time of the negotiations?  And I'm assuming and what I'm

4    saying is that it would -- well, let me hear your response.

5           **MR. FINN:**  Yes, Your Honor.  I think in context a lot

6    of the requests for having a more immediate production were

7    tailored towards, one, the 30(b)(6) deposition had already

8    occurred; and two, the class certification motion, which will

9    certainly be briefed by us before any relief is ordered in this

10   motion.

11          So in that case Plaintiffs wouldn't necessarily

12   oppose waiting until the negotiations are completed, but the

13   one deadline which is of concern to us, as I mentioned, is the

14   January 6th, 2023, deadline for the submission of expert

15   reports.  If the agreement is in fact reached in the fall, as

16   the media reports indicate, there would be no issue there.  So

17   what Plaintiffs had proposed originally to the NFL as part of a

18   compromise was to set a December 1st cutoff date, regardless of

19   whether the agreement was reached by that point, for production

20   to ensure that Plaintiffs had those documents in order to

21   prepare their expert reports one month later.

22          **THE COURT:**  I'm wondering whether there isn't some

23   value in having the parties continue to meet and confer about

24   this.  Mr. Barber, you've already made two productions in

25   response to Request Number 112 and the request here is for

17

```
 1   April 4th, 2022, onward and at some point I think it's
 2   appropriate for there to be discovery about both the agreement
 3   and about the negotiations with the various parties involved.
 4   The only question is, is how do we get there and is this
 5   something that requires a Court ruling today, now, as opposed
 6   to having the parties spend a little more time sharpening their
 7   pencils and coming up with a proposal that works for everybody.
 8   I don't, frankly, see a great burden on having a deposition.
 9   The fact that the Defendants have already made two productions,
10   sure it makes it -- makes me think that it's not a great
11   problem with having an additional production.
12          So tell me what you want to do, whether you would
13   rather have a ruling from me now or do you want to spend some
14   time seeing if you can craft an agreement that deals with the
15   various considerations here.  There seems to be as much
16   agreement as there is disagreement, so that's why I'm raising
17   the question.  What would you folks want to do?
18          MR. FINN:  Let me begin, Mr. Barber, if you don't
19   mind.  I think there can be an agreement in terms of the scope
20   and timing of the production.  The NFL Defendants and
21   Plaintiffs have worked well in the past on that.  I think the
22   two points of contention, and I think Mr. Barber would agree
23   with me here, are the -- are whether the production will be
24   custodial or noncustodial and the issue of the deposition.  If
25   the Court were to make clear that the production would be
```

18

1    custodial and the deposition would be involved --

2         THE COURT:  I am making -- I would make that clear.

3    I don't see any reason why it shouldn't -- there shouldn't be a

4    custodial production.  With that, is that enough for you to try

5    to work out an agreement?

6         MR. FINN:  From Plaintiffs perspective with those

7    guarantees about a custodial production and a deposition, I

8    believe so.

9         THE COURT:  Mr. Barber?

10        MR. BARBER:  Your Honor --

11        THE COURT:  You want to give it a crack?

12        MR. BARBER:  What we would request, Your Honor, is

13   if -- what you've done in the past with other discovery

14   motions, which I think has been helpful, is to ask the parties

15   to submit -- to meet and confer further, see if they can reach

16   agreement, and then to submit a joint status report updating on

17   the nature of those negotiations.  That has been very

18   successful in the past.

19        The NFL Defendants, Your Honor, I think view the

20   prospects of a custodial production as being much more

21   burdensome than I think the Court does.  I would also note it

22   is clearly after the fact discovery deadline that the Court has

23   imposed and I think that is a factor that should play into

24   this.  That said, I am confident if we work with -- if I can

25   work with Mr. Finn we'll be able to reach an agreement that's

19

1    reasonable to all parties.  We've been able to do that before.

2    And to the extent we can't, the joint status report will tee up

3    those issues and if Your Honor at that point needs to issue an

4    order requiring a custodial production and requiring another

5    deposition, then Your Honor is of course free to do so.

6           I have certainly heard you clear on those positions

7    and so I think that will certainly impact our meet and confer

8    efforts.

9           **THE COURT:**  I think that's the right way to handle

10   this, so we will proceed on that basis.

11          **MR. BARBER:**  Thank you, Your Honor.

12          **THE COURT:**  Meet and confer and then come back to me

13   with a status report indicating what you've been able to

14   accomplish or maybe you don't accomplish and that requires a

15   ruling on my part.  Fair enough?

16      **(Counsel thank the Court)**

17          **THE CLERK:**  Court is adjourned.

18      **(This proceeding was adjourned at 10:29 a.m.)**

19

20

21

22

23

24

25

20

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____              **August 13, 2022**

         **Signed**                                                  **Dated**

*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**