Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL DISCOVERY ON THE NEW SUNDAY TICKET AGREEMENT**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: 5/2/2023, 10:00 a.m.<br>Discovery Cutoff Date: 8/5/2022<br>Pretrial-Conference Date: 2/9/2024<br>Trial Date: 2/22/2024 |

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENTS ................................................................. 1

    A.    PLAINTIFFS' PRELIMINARY STATEMENT ................................. 1

    B.    THE NFL DEFENDANTS' PRELIMINARY STATEMENT ............... 3

II.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE ................... 5

III.    PARTIES' CONTENTIONS ..................................................................... 6

    A.    PLAINTIFFS' STATEMENT ............................................................ 6

        1.    Factual and Procedural Background ....................................... 6

        2.    Legal Standard ..................................................................... 13

        3.    The Court Should Compel a Supplemental Production of the Documents Concerning the Negotiations for NFL Sunday Ticket ................................................................................... 14

        4.    Conclusion ........................................................................... 18

    B.    THE NFL DEFENDANTS' STATEMENT ..................................... 19

        1.    Factual and Procedural Background ..................................... 19

        2.    Legal Standard ..................................................................... 25

        3.    The Court Should Deny Plaintiffs' Expansive Request for Additional Discovery .......................................................... 26

            i.    The NFL Defendants' prior productions were not incomplete or incorrect in any material respect. .......................... 26

            ii.    Plaintiffs should not be permitted to impose additional burdensome discovery obligations on the NFL Defendants well after the close of fact discovery. ........................ 30

        4.    Conclusion ........................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allflex USA, Inc. v. Avid Identification Systems, Inc.*,
  2009 WL 8591843 (C.D. Cal. Oct. 30, 2009) ........................................................ 16

*Apple Inc. v. Wi-LAN Inc.*,
  2019 WL 4253833 (S.D. Cal. July 22, 2019) .................................................. 16, 30

*Briggs v. Cnty. of Maricopa*,
  2021 WL 1725553 (D. Ariz. Apr. 30, 2021) ........................................................ 33

*Cheng v. Aim Sports, Inc.*,
  2011 WL 13201907 (C.D. Cal. 2011) .................................................................. 25

*City & Cnty. of San Francisco v. Tutor-Saliba Corp.*,
  218 F.R.D. 219 (N.D. Cal. 2003) ........................................................................ 13

*Epstein v. MCA, Inc.*,
  54 F.3d 1422 (9th Cir. 1995) .............................................................................. 25

*Finalrod IP, LLC v. John Crane, Inc.*,
  2019 WL 2563840 (W.D. Tex. Mar. 22, 2019) ..................................................... 33

*Gamevice, Inc. v. Nintendo Co.*,
  2019 WL 5565942 (N.D. Cal. Oct. 29, 2019) ....................................................... 14

*Hubbard v. Potter*,
  247 F.R.D. 27 (D.D.C. 2008) .............................................................................. 30

*Kendle v. Whig Enterprises, LLC*,
  2016 WL 898569 (S.D. Ohio 2016) ..................................................................... 30

*L.A. Terminals, Inc. v. United Nat. Ins. Co.*,
  340 F.R.D. 390 (C.D. Cal. 2022) ............................................................... 26, 27, 31

*Moriarty v. Am. Gen. Life Ins. Co.*,
  2021 WL 6197289 (S.D. Cal. Dec. 31, 2021) ............................................ 18, 25, 26, 34

*In re Nat. Ass'n of Music Merchants*,
  2011 WL 6372826, 3 (S.D. Cal. Dec. 19, 2011) .................................................... 26

*Pimentel v. City of Stockton*,
  2018 WL 4488548 (E.D. Cal. Sept. 19, 2018) ...................................................... 25

*Safety PPE, LLC v. Skanda Grp. of Indus. LLC, et al. Additional Party Names:
  Nagendra Karri*,
  2023 WL 2370478 (C.D. Cal. Jan. 12, 2023) ............................................ 13, 15, 33

*Terpin v. AT&T, Inc.*,
   2022 WL 3013153 (C.D. Cal. Jun. 13, 2022) .......................................................................... 26

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................................*passim*

Fed. R. Civ. P. 37 ................................................................................................................... 1, 13

iii

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, Plaintiffs and the NFL Defendants submit the following joint stipulation regarding Plaintiffs' Motion to Compel Discovery on the New Sunday Ticket Agreement.

## I.   PRELIMINARY STATEMENTS

### A.   PLAINTIFFS' PRELIMINARY STATEMENT

On January 20, 2022, months before the August 5, 2022 fact discovery cut-off, Plaintiffs served document requests on the NFL, including Request No. 112, which requested: "All presentations, analyses, strategic planning documents, and communications regarding the current negotiations for the rights to Sunday Ticket from January 1, 2021 to the present day (and continuing in nature pursuant to Rule 26(e))."

This request sought documents that are highly relevant to Plaintiffs' claims, which directly concern the negotiation of a new contract for the rights to distribute the Sunday Ticket game package. Yet the NFL refused to produce any new documents responsive to that request. Nor would the NFL agree to supplement its production regarding those negotiations after the new agreement was executed. Plaintiffs accordingly moved the Court for an order requiring the NFL to do so. At the suggestion of the Court, on September 9, 2022, Plaintiffs and the NFL submitted a joint status report stating that the NFL would supplement its responses once a new deal was reached, by providing documents in the possession of three NFL custodians who, according to the NFL, would have all of the relevant documents regarding those negotiations. The Court issued its order based on that joint status report.

In the meanwhile, Plaintiffs moved the Court for an order to allow discovery regarding those negotiations after the discovery cut-off. On August 11, 2022, the Court:

> modifie[d] the scheduling order to allow Plaintiffs to pursue additional discovery relating to the following matters after the August 5, 2022 fact discovery cut-off:
>
> - Document production related to NFL Defendants' ongoing negotiations with third parties for the sale of the future rights to

NFL Sunday Ticket, as well as document and deposition discovery about the new NFL Sunday Ticket agreement once such a deal is finalized[.]

On December 22, 2023, the NFL announced that it had reached a multi-billion-dollar agreement with Google to distribute Sunday Ticket to residential subscribers on YouTube TV until the year 2030. No new deal for commercial subscribers has yet been announced (or made, as far as Plaintiffs know). In the lead up to this new deal,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

On January 13, 2023, the NFL finally produced documents regarding the new deal. The production is shockingly meager in light of the complex nature of negotiations that must have taken place with multiple potential purchasers about a multi-billion-dollar contract. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Plaintiffs

therefore asked that the NFL to agree to produce the following additional documents

████████████████████████████████████████████████████
████████████████████████████████████████████████████

before they take the deposition of the NFL's Rule 30(b)(6) witness: its communications with the five potential purchasers, its internal discussions about the negotiations, and its related communications with CBS and Fox.

The NFL insists that it has fully complied with the Court's order of September 12, 2022, and that no further production will be made, even ███████████████ ██████ The NFL's recalcitrance has necessitated this motion. The NFL's argument that its discovery obligations are limited to the four corners of the order is unsound for at least three reasons. First, neither the order nor the joint status report provided that Plaintiffs' discovery rights regarding those negotiations would be limited to what the order provides. Second, Plaintiffs did not waive the right to seek additional discovery of documents that relate to those negotiations or relinquish their right to require the NFL to comply with its obligations under Rule 26(e). Third, the Court's order allowing discovery to be taken after the cut-off clearly entitles Plaintiff to conduct additional discovery regarding those negotiations.

By this motion, Plaintiffs seek an order requiring the NFL to produce documents called for by Document Request No. 112, ██████████████ ████████████

## B.    THE NFL DEFENDANTS' PRELIMINARY STATEMENT

Fact discovery in this case was set to close on August 5, 2022. But nine months ago, Plaintiffs represented to this Court that they sought limited discovery beyond that deadline regarding the new distribution deals for the NFL Sunday Ticket package. During a hearing before this Court on that precise issue, Plaintiffs affirmed that they were seeking discovery from just the three key decision-makers in the negotiations, using a specific search term. They agreed to that approach despite extensive prior discovery into the other people involved in these and other past negotiations involving NFL media rights. The Court agreed to that limited proposal, and Plaintiffs do not dispute that the NFL Defendants have fully complied with their obligations under it by producing both the new Sunday Ticket agreement itself, and

hundreds of documents concerning the underlying negotiations with Google and other potential partners.

That should be the end of the matter. But now—months after the end of fact discovery and after merits expert reports have already been served—Plaintiffs seek far more. Specifically, Plaintiffs ask for a wide-ranging custodial search from additional individuals. They provide no valid basis for that extraordinary request. Ultimately, Plaintiffs rely on just three points: (1) the allegedly low volume of documents produced in connection with the new Sunday Ticket agreement, (2) that individuals other than the three original custodians were involved in the negotiations, and (3) claims about the negotiations made in unverified public reporting.

As to the first, the number of produced documents is greater than Plaintiffs suggest and is in line with the number of documents produced regarding earlier Sunday Ticket negotiations. In any event, as evident from the produced documents, much of the negotiations were handled in person or telephonically, as would be expected in connection with a deal of this magnitude. Plaintiffs will have the opportunity to question a witness about those negotiations at a forthcoming deposition.

Second, the fact that more than three people at the NFL were involved in negotiations surrounding a multi-billion-dollar agreement is no new revelation. Critically, Plaintiffs have long known that others would participate in, but not exercise decisional authority over, the Sunday Ticket negotiations—including from deposition testimony they elicited before first asking this Court to extend discovery in the first place. The key point is that today, as then, the three custodians Plaintiffs already agreed upon remain the key decision-makers for the NFL's media deals, and were involved in all critical discussions internally and externally concerning the new Sunday Ticket agreement. Discovery involving new custodians would add nothing material to the record.

Finally, the fact that Plaintiffs rely on unverified public reporting to support their claims in fact confirms why additional discovery is not warranted. ████ ███████████████████████████████████████ ████████████████████████████████████ The fact that Plaintiffs ignore those documents in their motion, and do not mention them in any of their recently-filed expert reports, confirms that this is an unwarranted fishing expedition rather than an appropriate invocation of Rule 26.

Ultimately, Plaintiffs' recent dissatisfaction with the deal they struck and that this Court approved does not justify extending discovery still further, into the eighth year of this litigation. The NFL Defendants have timely produced ████████ ████████████████████████████████████████████ ████████████ They will soon make a further production of documents regarding negotiations concerning the commercial Sunday Ticket deal. And they will also make available a Rule 30(b)(6) witness for a deposition, as the parties and Court agreed. Nothing more should be required.

## II.   DISCOVERY REQUESTS AND RESPONSES IN DISPUTE

Pursuant to Local Rule 37-2.1, the discovery request at issue and the NFL Defendants' response to that request are copied verbatim below.

## REQUEST FOR PRODUCTION NO. 112:

All presentations, analyses, strategic planning documents, and communications regarding the current negotiations for the rights to Sunday Ticket from January 1, 2021 to the present day (and continuing in nature pursuant to Rule 26(e)).

## RESPONSE TO REQUEST NO. 112:

In addition to their previously stated General Objections, incorporated herein, the NFL specifically objects to this request as (a) overbroad and unduly burdensome in its request for "[a]ll presentations, analyses, strategic planning documents, and communications" regarding negotiations for the rights to the NFL Sunday Ticket

package; (b) seeking production of information that is protected from disclosure by attorney-client privilege; (c) seeking production of documents that include highly confidential and sensitive business and proprietary information; (d) duplicative of Request Nos. 7, 10, 51, and 74; and (e) seeking production of documents post-dating the previously agreed-upon end date of production.

Subject to the foregoing General and Specific Objections, the NFL states that it will conduct a reasonable search, using the agreed-upon search terms on only the previously collected files of the agreed-upon League custodians, for non-privileged documents and communications that relate to negotiations concerning the licensing and carriage of the NFL Sunday Ticket package, and will produce such documents to the extent they have not already been produced.

## III.   PARTIES' CONTENTIONS

### A.   PLAINTIFFS' STATEMENT

#### 1.   Factual and Procedural Background

This antitrust case—brought pursuant to Sections 1 and 2 of the Sherman Act—revolves around a series of interlocking agreements among and between the NFL, its 32 member Clubs, and DirecTV. *See* Second Consolidated Amended Complaint ("Compl."), Dkt. No. 441 ¶¶ 1-13. These agreements work two different, but symbiotic, restraints: they prohibit all distributors other than DirecTV from offering telecasts of out-of-market Sunday afternoon NFL games, and they bar the Clubs from separately licensing their own broadcast rights. *Id.* ¶ 11. Together these restraints ensure that consumers who wish to watch the majority of regular season Sunday afternoon NFL games, or any out-of-market NFL game, have only one option available to them—subscribing to DirecTV's "NFL Sunday Ticket" package. *Id.* ¶ 8. This purposeful restraint on competition results in supracompetitive prices for NFL

Sunday Ticket, drastically fewer games available to all consumers, and reduced innovation in broadcasting of live NFL games. *Id.* ¶¶ 10-12, 19.

In January 2022, Plaintiffs propounded a discovery request about the then-ongoing negotiations in order to obtain evidence on the restrictions that the NFL continues to impose on the Sunday Ticket package and on the extent to which the NFL was willing to deviate from the restrictions in its agreement with DirecTV, which Plaintiffs challenge in this litigation.

The NFL's initial response was to refuse to collect any new documents, and to limit its search to files that had been collected months earlier from a narrow group of agreed-upon custodians. Given the ongoing nature of those negotiations, Plaintiffs declined to limit the search in that manner and served the NFL with a joint stipulation for a motion to compel. *See* Dkt. 538-1 at 8 (Sealed Joint Stipulation for Motion to Compel). Instead of opposing the motion, the NFL agreed to conduct an additional collection of documents. *Id.* On April 4, 2022, the parties agreed that the NFL would collect documents through that date from three custodians: ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finn Decl. ¶ 6. The parties also agreed to a narrow set of search terms that Plaintiffs proposed based on their limited knowledge of the negotiations at the time. *Id.* ¶ 7. The NFL produced responsive documents on May 7, 2022, as part of a larger production of 2,237 documents. *Id.* ¶ 8.

On June 15, 2022, Plaintiffs asked the NFL to supplement its production of documents responsive to RFP 112 given the continuing nature of the negotiations. Dkt. 538-1 at 8. The parties were unable to reach agreement on a production and Plaintiffs moved to compel on July 12, 2022. Dkt. 536 (Notice of Motion to Compel). This Court held a hearing on that motion on August 9, 2022, during which the Court

expressed its intent to grant the motion and ordered the parties "to meet and confer on an order for the production of documents relating to current negotiations and any ultimate agreement about the future rights to NFL Sunday Ticket." Dkt. 599. In the ensuing meet-and-confer process, the parties agreed that the search protocol devised in April 2022 would govern the scope of the future production. *See* Dkt. 643 at 2 (Joint Status Report Regarding the Court's August 9 Order on Plaintiffs' Motion to Compel Production of Documents by the NFL). Plaintiffs agreed to replicate the earlier protocol in reliance on the NFL's representations that it accounted for all relevant custodians, ███████████████████████████████████████ ████████████████████████████████ would be party to all relevant documents. *See* Finn Decl. ¶ 6.

Meanwhile, on July 15, 2022, Plaintiffs moved the Court pursuant to Rule 16 to take limited discovery after the August 5, 2022 fact-discovery deadline. As relevant here, Plaintiffs sought leave to "conduct discovery from the NFL Defendants and the new third-party rightsholder after an agreement is finally reached," Dkt. 547-1 at 2, arguing that "[t]he discussions between the NFL and [the] potential [purchasers of the rights to Sunday Ticket], as well as the NFL's internal analyses of those discussions, are fundamental to Plaintiffs' case," *id.* at 10. On August 11, 2022, before the motion to compel was decided, the Court granted Plaintiffs' Rule 16 motion in full. Dkt. 607. That order gave Plaintiffs additional time to pursue, as relevant here: "Document production related to NFL Defendants' ongoing negotiations with third parties for the sale of the future rights to NFL Sunday Ticket, as well as document and deposition discovery about the new NFL Sunday Ticket agreement once such a deal is finalized." *Id.* at 4. That Order imposed no limitation on the scope of that discovery.

As to the motion to compel, this Court entered the parties' proposed order on September 12, 2022, which required the NFL to produce documents responsive to RFP 112 "dating from April 4, 2022 to the date on which an agreement is reached

collected from the custodians agreed-upon by the parties using the electronic search terms agreed-upon by the parties," Dkt. 645 at 2. The Order obligated the NFL to make a production within 45 days of reaching agreement for the future rights to Sunday Ticket, and to make a corporate representative available to provide testimony on those same negotiations. *Id.*

Subsequent developments revealed the deficiencies of the prior collection protocol. Plaintiffs promptly raised these issues to the NFL in a November 4, 2022 letter sent in response ███████████████████████████████████████ ████████████ Finn Decl. Ex. 3[2] (November 4 letter). ███████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ This was surprising because all of the new documents were in the League's custody and responsive to RFP 112. Plaintiffs explained to the NFL that these communications were likely omitted because the NFL had failed to collect documents from ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████ *Id.* ¶ 10. Plaintiffs agreed to revisit the issue of custodians when they discussed the scope of the next production. *Id.*

Throughout November and December 2022, media outlets published stories regarding the Sunday Ticket negotiations. ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[2] All exhibits cited by Plaintiffs are attached to the Declaration of Tyler Finn ("Finn Decl.") filed alongside this joint stipulation.



On December 22, 2022, the NFL publicly announced that it had reached an agreement with Google, granting YouTube the rights to distribute Sunday Ticket to residential subscribers from the 2023 season onward (Plaintiffs understand a deal for commercial subscribers remains ongoing). Soon thereafter, Plaintiffs wrote to the NFL to request that it immediately produce the executed agreement and supporting documents. Finn Decl. Ex. 4 (December 27 letter). The NFL refused, opting instead to produce the agreement as part of the court-ordered production, which it intended

[4] Mike Florio, "Report: YouTube to pay $2.5 billion per year for Sunday Ticket," NBC Sports (December 21, 2022), https://profootballtalk.nbcsports.com/2022/12/21/report-youtube-to-pay-2-5-billion-per-year-for-sunday-ticket/.

to complete by January 13. *Id.* ¶ 13. In that same letter, Plaintiffs proposed a meet-and-confer to discuss the document-collection protocol for that production. *See id.*, Ex. 4. Plaintiffs requested that the NFL search the relevant custodians for the names of the bidders that were reportedly vying for residential Sunday Ticket rights: ███████████████████████████████████████████████ *Id.* ¶ 14. The NFL refused to deviate from the April 2022 search protocol despite Plaintiffs' concerns that the previously agreed terms would fail to capture numerous responsive documents. *Id.*

On January 13, 2023, the NFL produced documents as required by the September 12 Order. *Id.* ¶ 15. That production comprised only ███ documents, far fewer than would be expected for an eight-month negotiation process with multiple parties over a billion-dollar deal. The number drops to ███ when duplicates are discounted. *Id.* Plaintiffs promptly raised the issue in a letter dated January 18, 2023. *Id.* Ex. 5 (January 18 letter). That letter outlined specific categories of documents that were missing from the production, namely written communications with any third parties other than Google (and communications with Google predating December 2022). ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ In response to Plaintiffs' letter, the NFL's counsel represented that the NFL had not withheld any responsive documents and that he understood, based on a high-level understanding of the negotiation process, that the production included all relevant communications. *Id.* ¶ 19.

Plaintiffs were skeptical about that representation. On January 31, 2023, Plaintiffs again wrote to the NFL to reiterate their concerns that "the NFL's



1   production of January 13 contains far fewer documents than can reasonably be

2   expected for an 8-month period of negotiation over rights worth billions of dollars."

3   Finn Decl. Ex. 6 (January 31 Letter). The letter again identified specific types of

4   documents omitted from the production.

5

6

7

8

9

10

11   *Id.* Plaintiffs proposed that the NFL run a new

12   set of search terms, formulated by Plaintiffs based on their review of the produced

13   documents concerning the negotiations. These search terms are properly limited to

14   the specific counterparties with whom the NFL was negotiating for the rights to

15   Sunday Ticket. Plaintiffs also proposed that the NFL collect documents from

16   additional custodians with active involvement in the day-to-day negotiations,

17

18

19   *Id.* ¶ 17. When the parties met-and-

20   conferred on February 15, the NFL declined to provide a response to Plaintiffs'

21   proposal. *Id.* ¶ 21. Instead, counsel for the NFL insisted that the NFL needed more

22   specific information about the types of documents omitted. *Id.*

23        On February 21, Plaintiffs wrote the NFL to highlight for a third time the types

24   of documents missing from the production. *Id.* Ex. 7 (February 2023 Email

25   Correspondence). In order to capture those documents, Plaintiffs proposed a

26   compromise in which the NFL would run the search terms outlined in Plaintiffs' letter

27   of January 31 on the files of the individuals who were involved in the negotiations—

28

which Plaintiffs understand to be six people. *Id.* Receiving no response to that proposal, Plaintiffs followed up by email on February 28. *Id.*

The parties conferred again on March 3. Although the NFL offered to run some additional search terms on the documents it had already collected, it refused to collect any new documents, ███████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 23.

### 2.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 37(a), a party may move for an order compelling disclosure or discovery, so long as it certifies that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Rule 37 specifically permits a motion to compel where "a party fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

Rule 26(e) imposes on parties a continuing obligation to supplement their responses to requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). "Information is 'incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Safety PPE, LLC v. Skanda Grp. of Indus. LLC, et al. Additional Party Names: Nagendra Karri*, 2023 WL 2370478, at *2 (C.D. Cal. Jan. 12, 2023). In effect, Rule 26(e) operates as the "functional equivalent of a Standing Request for Production under Rule 34." *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003) (internal quotation marks omitted). Given the continuing nature of the obligation, a motion to enforce Rule 26(e)'s supplementation

requirement may be brought after the close of discovery. *See Gamevice, Inc. v. Nintendo Co.*, 2019 WL 5565942, at *3 (N.D. Cal. Oct. 29, 2019).

### 3.    The Court Should Compel a Supplemental Production of the Documents Concerning the Negotiations for NFL Sunday Ticket

The NFL premises its refusal to collect additional documents on the erroneous position that the September 12 Order sets the ceiling for its obligations to produce discovery on the Sunday-Ticket negotiations.[5] In fact, it sets the floor. The Order, by its own terms, governs only the one production that the NFL was required to complete within 45 days of the execution of the New Sunday Ticket agreement. *See* Dkt. 645 at 2 ("*This* production shall comprise documents … collected by the custodians agreed-upon by the parties using the electronic search terms agreed-upon by the parties.). The Order does limit Plaintiffs' discovery rights in any way. Nor does it purport to foreclose Plaintiffs' ability to make the kind of reasonable follow-up requested in this motion, or to request additional discovery based on their legitimate need for evidence about events that had not taken place when the protocol was agreed. In short, an order granting *Plaintiffs'* motion to compel cannot be read to diminish the *NFL's* obligations to provide complete responses to a validly served discovery request. Plaintiff's motion to compel did not preclude additional discovery from the NFL, much less from third parties.

The NFL's position is also inconsistent with this Court's order allowing post-deadline discovery on this very subject—in terms that were not limited by the protocol agreed to in conjunction with the September 12 Order. *See* Dkt. 607. Plaintiffs' Rule 16 motion seeking leave to take additional discovery was in no way limited by the then-pending motion to compel a production by the NFL. To the contrary, Plaintiffs' expressly requested leave to take "discovery from the NFL Defendants and the new third-party rightsholder *after an agreement is finally*

---

[5] Plaintiffs, of course, have no way to verify that the NFL *did* comply with the search protocol and produced all documents that were responsive to that protocol.

*reached*." Dkt. 547-1 at 2 (emphasis added). Consistent with that request, the scheduling order entitles Plaintiffs to serve on the NFL *additional* document requests on the Sunday Ticket negotiations, which would not be subject to the April 2022 protocol. In this case, promulgating additional requests for production would be unnecessary as each of the categories of documents requested in this motion is unquestionably responsive to RFP 112.

The NFL's position also contradicts its continuing obligations under Rule 26(e), which are not governed by the September 12 Order. To the contrary, RFP 112 entitles Plaintiffs to the documents requested in this motion independent of any prior discovery order. The omission of communications between the NFL and the third parties bidding for Sunday Ticket renders the NFL's response to RFP 112 incomplete. Such communications are plainly responsive to the request for "communications regarding the current negotiations for the rights to Sunday Ticket from January 1, 2021 to the present day (and continuing in nature pursuant to Rule 26(e))." The same is true of the NFL's internal discussions concerning those same negotiations and its communications with ██████████ regarding the same—additional categories of documents that were omitted from the production. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██

The missing documents are also material. The additional information gleaned from these communications—namely the reasons why the negotiations broke down with each of the bidders—will substantially affect Plaintiffs' approach to the pending 30(b)(6) deposition of an NFL witness on this very topic. Plaintiffs need these documents in order to effectively question, and adduce facts from, that NFL witness. The omitted documents are also likely to affect Plaintiffs' presentation of evidence

at trial and summary judgment. ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Discovery of the NFL's communications with the other bidders for Sunday Ticket will likewise shed light on the NFL's requirements as to the consumer price of that package and the anticompetitive effect of those requirements.

The NFL's duty to supplement the identified gaps in its document productions "does not depend on repeated requests by an adversary for updated information." *Allflex USA, Inc. v. Avid Identification Systems, Inc.*, 2009 WL 8591843, at *4 (C.D. Cal. Oct. 30, 2009). That continuing obligation is triggered whenever, as here, new information comes to light that is responsive to properly propounded discovery requests. In *Apple Inc. v. Wi-LAN Inc.*, 2019 WL 4253833, at *3 (S.D. Cal. July 22, 2019), the court granted a Rule 26(e) motion to compel production of a settlement agreement that was signed a year after the cutoff for fact discovery because that agreement was directly responsive to several requests for production previously propounded on Apple. The court similarly found that Apple was "under an ongoing duty to supplement its responses" by providing information about internal testing that Apple had conducted *after* it had responded to requests for production on that subject. *Id.* at *7. The same principle applies here. Rule 26(e) obligated the NFL to supplement its document production as the negotiations continued, even when those negotiations proceeded past the fact discovery cutoff. A prior order granting a motion to compel does not absolve the NFL of that obligation.

The NFL was also obligated to supplement its initial disclosures ████████ ███████████████████████████████████████████ Had the NFL made that disclosure or ████████████████████████ Plaintiffs would have insisted that he be included among the custodians in the production that this Court ordered on September 12, 2022. Plaintiffs were acting on incomplete information. Yet the NFL

erroneously insists that the search protocol to which Plaintiffs agreed to resolve that motion to compel constitutes the upper limit to its discovery obligations.

That protocol was based on two premises that have since proven to be false. First, Plaintiffs agreed to that protocol based on representations from the NFL that the three named individuals—███████████████████████ would be custodians of all relevant documents concerning the negotiations. That representation was false.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Second, Plaintiffs labored under the mistaken belief that the proposed generic search term—("Sunday Ticket" OR NFLST) wi10 (contract OR terms OR agree* OR bid OR rights OR RFP)—would adequately capture all the relevant documents. ████████████████████████████

████████████████████████████████████████████████████████

████████████ Now that Plaintiffs have information sufficient to identify the major potential purchasers of Sunday Ticket, they are able to suggest specific search terms (the names of the bidders) to supplement the previously agreed-upon generic term. Plaintiffs raised both of these issues with the NFL as soon as they became aware of them. And they did so before the NFL completed the production required by the Court order, so as to avoid burdening the NFL with making multiple productions. Yet the NFL brushed aside the evidence of the search protocol's inadequacy and refuses to deviate from that protocol.

The NFL has rejected Plaintiffs' proposal for a modest additional collection of documents—from three additional custodians, using search terms (for all of the proposed custodians) intended to capture communications with and concerning five specific third parties: ████████████████████████ That proposal is designed specifically to capture documents responsive to the RFP to which this Court compelled production and is based on information that was not available to Plaintiffs

at the time of the September 12 Order. The discovery sought by Plaintiffs is bounded—spanning negotiations with a discrete number of parties over a limited time period that has since concluded. Granting the relief sought by Plaintiffs thus presents no danger of creating "never-ending discovery obligations or continuous rolling discovery." *Moriarty v. Am. Gen. Life Ins. Co.*, 2021 WL 6197289, at *4 (S.D. Cal. Dec. 31, 2021) (denying motion to compel based on boundless nature of discovery sought).

Plaintiffs' request also imposes no undue burden on the NFL. The NFL can locate the documents requested by running a limited search of search terms on the files of six custodians who played active roles in the negotiations. The NFL has already collected documents from three such individuals: ███████████████

███████████████████████████████

Although this motion concerns discussions related to a future agreement on Sunday Ticket, those discussions are clearly relevant to issues in this case, including the anticompetitive effect and supracompetitive prices of Sunday Ticket under the challenged agreements with DirecTV, the NFL's role in setting those prices, and the prices that would exist but for the challenged restraints. Moreover, the continuing nature of the challenged restraints makes the new agreement relevant to the issue of injunctive relief, as the Court recently recognized in certifying an injunctive relief class pursuant to Rule 23(b)(2). See Dkt. No. 894 at 21. Given their relevance, the NFL is required to produce the responsive documents that it has omitted from its prior productions: ██████████████████████████████ ████████ its internal discussions of those negotiations, and its communications ██████████ regarding the same. Rule 26 demands that result.

### 4. Conclusion

Based upon the foregoing, Plaintiffs respectfully request that the Court compel the NFL Defendants to produce its communications, both internal and external,

1   concerning the negotiations with ███████████████████████, as well

2   as its communications with ████████ regarding those negotiations.

### B.   THE NFL DEFENDANTS' STATEMENT

Eight months after the close of fact discovery, and seven months after the parties and this Court agreed on the protocol that would govern further productions regarding the negotiations for future Sunday Ticket rights, Plaintiffs ask this Court to permit another, broader fishing expedition.  Plaintiffs do not dispute that the NFL Defendants' prior productions fully complied with the agreed-upon discovery protocol, and fail to justify imposing the burdensome procedures they now seek. Accordingly, their request should be denied.

### 1.  Factual and Procedural Background

On January 12, 2021, the Court set forth the schedule in this case and established a March 22, 2022 deadline for the parties to complete fact discovery. Finn Ex. 1, at 1.  Pursuant to Chief Judge Gutierrez's standing order, this deadline was intended as the "cut-off date . . . by which all discovery is to be completed" in this case.  Declaration of Jeremy S. Barber in Support of the NFL Defendants' Opposition to Plaintiffs' Motion to Compel ("Barber Decl."), Ex. 1, at 2; *see also* Barber Ex. 2 (Dkt. 435), at 2.

After Plaintiffs served their first set of discovery requests, the parties spent months negotiating the proper scope of discovery, including the number of custodians from which the NFL Defendants would collect documents and the search terms that would be used.  Barber Decl. ¶ 4.  In the end, the parties reached an agreement under which the NFL Defendants would collect custodial files from █ ██████████████████████████████ would apply a lengthy set of negotiated search terms.  *Id.*  The extensive negotiations included determination of the end date that would apply to custodial collections; the parties agreed in May 2021 that the

[6] On a separate track, the parties also negotiated the scope of discovery from the NFL Clubs, which increased the total number of custodians by ████

NFL Defendants would make a single collection of documents in response to then-pending requests. *Id.*

The deadline for fact discovery has been postponed twice, on both occasions because Plaintiffs claimed to need more time to review and analyze produced documents prior to conducting fact depositions in this case. *See* Barber Ex. 3 (Dkt. 362), at 3; Barber Ex. 4 (Dkt. 423-1), at 7. On both occasions, Plaintiffs agreed the cutoff date for serving discovery requests would not change as a result of the extension of fact discovery, and that February 22, 2022 would remain that deadline as consistent with the original scheduling order. Barber Decl. ¶¶ 5–6; Barber Ex. 3 (Dkt. 362), at 3; Barber Ex. 4 (Dkt. 423-1), at 7 n.3. Ultimately, the deadline for fact discovery was set for August 5, 2022, around 9 months prior to the hearing date for the instant motion. *See* Barber Ex. 5 (Dkt. 434), at 5.

All told, the Plaintiffs ultimately served 161 different requests for production of documents from the NFL Defendants. Barber Decl. ¶ 8. Prior to the deadline for fact discovery, the NFL Defendants produced ██████████████ ████████████████████ in response to these requests. *Id.* Included in an early set of document requests was a request for documents related to negotiations for the NFL Sunday Ticket package, which covered ongoing negotiations for the future rights to Sunday Ticket as well. *Id.* ¶ 9 (quoting RFP No. 51). In response, the NFL Defendants have produced many documents related to the negotiations for the future rights for Sunday Ticket, ████████████████████████ ████ *Id.*

In order to circumvent the parties' prior agreement that the NFL Defendants would only be obligated to collect documents through May 2021 for most discovery requests, Plaintiffs served a new request on January 20, 2022, yet again seeking production of documents in connection with negotiations for the rights to the Sunday Ticket package. *See id.* ¶ 10 (quoting RFP No. 112). This time, the request was focused solely on documents related to those negotiations from January 1, 2021

onward.  *See id.*  In April 2022, after several weeks of negotiations and meet-and-confers regarding the appropriate scope of discovery in response to that request, Plaintiffs agreed that the NFL Defendants would collect custodial files ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ *See id.* ¶ 11.  During these discussions, Plaintiffs knew others at the NFL would be involved in negotiations, including two of the individuals they now seek to become custodians.  *See id.* ¶¶ 9, 26.  But, Plaintiffs agreed to limit discovery ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 11.  The NFL Defendants agreed to use a search term proposed by Plaintiff without any modification.  *See id.*

In light of upcoming depositions, the NFL Defendants moved quickly and produced numerous documents responsive to RFP No. 112 as part of a ██████ document production on May 7, 2022.  *See id.* ¶ 12.  Plaintiffs raised no concerns with the scope or volume of that production.  *Id.*  In the following months, Plaintiffs conducted ██ depositions of former and current NFL employees, including those involved in negotiations of past and current Sunday Ticket agreements.  *Id.* ¶ 13.  During those depositions, Plaintiffs learned additional information regarding those third parties who had expressed interest in the future rights to the Sunday Ticket package, ████████████████████████████████████████████████

██████████  *See id.*

On June 15, 2022, Plaintiffs made further demands for additional documents regarding the ongoing negotiations for the future rights to Sunday Ticket.  *See id.* ¶ 15.  Specifically, Plaintiffs insisted on numerous additional productions well after the fact discovery deadline, including some in the midst of on-going negotiations. *See id.*  Plaintiffs did not, despite receiving documents reflecting others' involvement

in the then-ongoing negotiations, request additional custodians from whom to collect documents. *See id.* The parties met and conferred several more times on this issue, with the NFL Defendants proposing multiple compromises including the production of a limited set of responsive documents after any new Sunday Ticket agreement was announced. *Id.* Plaintiffs rejected these offers and ultimately filed a motion to compel before this Court. *See id.*

A few days later, Plaintiffs also filed a motion before Chief Judge Gutierrez to modify the scheduling order to permit discovery after the fact discovery deadline "for three discrete purposes," including to "continue taking discovery of ongoing negotiations for the sale of the rights to Sunday Ticket." *See id.* ¶ 16; Barber Ex. 6 (Dkt. 555-1), at 1. In support of this motion, Plaintiffs repeatedly reassured the Court that their requested relief was limited in nature. *See* Barber Ex. 6 (Dkt. 555-1), at 1 (requesting the Court to "grant the modest relief"); *id.* at 2 ("Plaintiffs request permission to take limited document and deposition discovery about the new agreement after August 5."); *id.* at 13 ("Plaintiffs' request for supplementary document productions in this area is modest and bounded.").

Chief Judge Gutierrez granted Plaintiffs' motion and modified the schedule to allow Plaintiffs to pursue additional fact discovery related to ongoing negotiations for the rights to Sunday Ticket. Barber Decl. ¶ 17; Barber Ex. 7 (Dkt. 607), at 4. In granting this motion, Chief Judge Gutierrez made clear that the Court was "merely extend[ing] the time in which Plaintiffs may *seek* additional discovery related to these matters," and was "not express[ing] any opinion as to the merits of Plaintiffs' pending motion to compel related to the NFL Sunday Ticket negotiations and deal." Barber Ex. 7 (Dkt. 607), at 3 (emphasis added).

By the time of the hearing on Plaintiffs' motion to compel before this Court on August 9, 2022, Plaintiffs had obtained numerous documents about the ongoing negotiations for the future rights to the Sunday Ticket package, and had deposed multiple individuals involved in those negotiations. *See* Barber Decl. ¶¶ 9, 13, 25.

They well knew that multiple individuals at the NFL were party to discussions both internally and with third parties concerning Sunday Ticket rights.  Yet at the hearing, when asked by the Court for confirmation that Plaintiffs were only seeking collection of three custodial files, Plaintiffs' counsel represented as follows:

> In the past Plaintiffs and the NFL have agreed to search the custodians of – three NFL custodians under agreed upon search terms and ***Plaintiffs would agree to having that protocol govern the scope of any future productions as well***.

Barber Ex. 8 (Dkt. 613), at 10:7–11 (emphasis added).  This Court ultimately ordered the parties to engage in further meet and confers and to submit a joint status report indicating whether an agreement on the scope of future productions had been reached.  Barber Decl. ¶ 19; Barber Ex. 9 (Dkt. 599).

During those subsequent meet-and-confer efforts, as memorialized the parties' Joint Status Report filed on September 9, 2022, Plaintiffs explicitly agreed that the NFL Defendants would only be required to produce additional documents "***from the same custodians using the same agreed-upon search terms to which the parties agreed for the NFL's May 7, 2022 production***."  Barber Ex. 10 (Dkt. 643), at 2 (emphasis added).  On September 12, 2022, this Court entered an order endorsing that agreement.  *See* Barber Decl. ¶ 21; Barber Ex. 11 (Dkt. 645), at 2 (requiring the production, within 45 days of any agreement, "compris[ing] documents . . . collected ***from the custodians agreed-upon by the parties using the electronic search terms agreed-upon by the parties***." (emphasis added)).

A few months later, Plaintiffs sent the NFL Defendants a letter identifying what they believed to be deficiencies in the NFL's prior production of documents in response to RFP No. 112 ██████████████████████████████ ████████████████████████  Finn Ex. 3.  Plaintiffs claimed incorrectly that the NFL Defendants had not produced communications ███████████████████████ ████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████    Barber Decl. ¶ 22.  The remaining

3 documents that ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ███████████████████████████████████████. *Id.*  During a meet-and-confer on

6 November 14, 2022, the NFL Defendants explained the many inaccuracies in

7 Plaintiffs' letter and understood Plaintiffs to have dropped the issue.  *Id.*  Plaintiffs'

8 counsel did, however, ████████████████████████████████████████████

9 █████████████████████████████    *Id.*

10      On December 22, 2022, the NFL and Google announced an agreement

11 granting YouTube TV the right to distribute the residential Sunday Ticket package

12 starting during the 2023 NFL season.[7]  *Id.* ¶ 24.  In accordance with the parties'

13 agreement and the Court's September 12, 2022 Order, the NFL Defendants collected

14 custodial files from the parties' three agreed-upon custodians and produced

15 responsive documents that hit on the search term agreed upon by the parties on

16 January 13, 2023.  *Id.*  This production was made 23 days earlier than the 45-day

17 deadline imposed by the Court, and five weeks in advance of the deadline for

18 Plaintiffs' opening merits expert reports.  *See id.*

19      Plaintiffs have since acknowledged on multiple occasions that the NFL

20 Defendants fully complied with this Court's September 12, 2022 Order.  *See id.* ¶ 29.

21 Yet they now seek more, based on unfounded speculation that the NFL Defendants'

22 production was underinclusive.  On January 31, 2023, Plaintiffs demanded that the

23 NFL Defendants collect additional custodial files from three additional NFL

24 employees and use, for the first time, extremely over-inclusive search terms on all

25 

26 [7] On March 28, 2023, the NFL announced that it had reached an agreement for rights
to the commercial Sunday Ticket package.  Barber Decl. ¶ 30.  The NFL Defendants
27 will produce responsive documents concerning the commercial Sunday Ticket
28 agreement within 45 days of that agreement's execution, in accordance with the
parties' prior agreement and the Court's September 2022 order.

collected custodial files that include, for example, ███████████
███████████ *See id.* ¶ 27; Finn Ex. 6, at 5–6.  In the ensuing weeks, the parties
met and conferred on multiple occasions in an attempt to bridge their differences.
Barber Decl. ¶ 29.  The NFL Defendants suggested, for instance, running additional
search terms across the custodial files already collected from ███████████
███████████ *id.*  Plaintiffs squarely rejected that proposal, as
well as any attempt to reach a negotiated resolution of the issue.  *See id.*

## 2.  Legal Standard

The right to obtain discovery under Rule 26 "is not unlimited."  *Epstein v.
MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).  It must have "ultimate and necessary
boundaries."  *Pimentel v. City of Stockton*, 2018 WL 4488548, at *3 (E.D. Cal. Sept.
19, 2018) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).   One such
boundary is that Rule 26 requires requests to be both relevant and proportional to the
case, meaning that discovery "must be narrowly tailored . . . and must not be a fishing
expedition."  *Cheng v. Aim Sports, Inc.*, 2011 WL 13201907, at *2 (C.D. Cal. 2011)
(citing *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D.
Cal. 2010)).

"At all times, the burden rests with the party seeking to compel additional
discovery to bring forth evidence that warrants supplementation."  *Moriarty v. Am.
Gen. Life Ins. Co.*, 2021 WL 6197289, at *4 (S.D. Cal. Dec. 31, 2021) (citing
*Campos-Eibeck v. C R Bard Inc.*, 2020 WL 835305, at *5 (S.D. Cal. Feb. 20, 2020)).
In their request for supplementation under Rule 26(e), Plaintiffs must show: (1) that
the information previously provided was incomplete or incorrect in some material
respect, (2) that additional information has not "been made known to the other part[y]
during the discovery process or in writing," and (3) that the relevance of the
information outweighs the burden involved.  *See* Fed. R. Civ. P. 26(e)(1)(A).
"[I]nformation is 'incomplete or incorrect' in 'some material respect' if there is an
objectively reasonable likelihood that the additional or corrective information could

substantially affect or alter the opposing party's discovery plan or trial preparation."
*L.A. Terminals, Inc. v. United Nat. Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022)
(quoting *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004)).

And where the parties have agreed to a discovery protocol, Plaintiffs must
demonstrate a deficiency in productions to justify imposing additional burdens
through modification of that protocol. *See Terpin v. AT&T, Inc.*, 2022 WL 3013153,
at *6 (C.D. Cal. Jun. 13, 2022) ("In the absence of a demonstrated deficiency, this
Court concludes that Plaintiff" speculation about possible deficiencies in
Defendant's search procedures do not support an order compelling AT&T to produce
discovery based upon new search terms after it has produced a large volume of
documents and largely completed its production."); *In re Nat. Ass'n of Music
Merchants*, 2011 WL 6372826, at *2–3 (S.D. Cal. Dec. 19, 2011) (describing key
word searching as an efficient way to "winnow relevant documents from large
repositories," and explaining that "in light of the transparent discussion among
counsel of the search terminology and subsequent agreement on the search method,
the Court finds it unreasonable for Defendant to re-search documents they have
already searched and produced").

### 3. The Court Should Deny Plaintiffs' Expansive Request for Additional Discovery

Plaintiffs do not dispute that the NFL Defendants have complied with their
discovery obligations established during the fact discovery period in this case.  They
provide no basis for ordering more.

### i.     The NFL Defendants' prior productions were not incomplete or incorrect in any material respect.

As the party seeking to compel production, Plaintiffs have the burden of
establishing that any additional production is necessary.  *Moriarty*, 2021 WL
6197289, at *4.  They can do so only if they demonstrate that prior productions were
"incomplete or incorrect" in "some material respect"—that is, "there is an objectively

reasonable likelihood that the additional or corrective information could substantially affect or alter [their] discovery plan or trial preparation." *L.A. Terminals, Inc.*, 340 F.R.D. at 396 (quoting *Sender*, 225 F.R.D. at 654). Plaintiffs have failed to establish that the NFL Defendants' prior productions regarding the negotiations for the future rights to the NFL Sunday Ticket package were incomplete or incorrect in any material way.

As an initial matter, it is important to understand the full scope of what has been produced. Plaintiffs complain about the volume of documents produced in response to RFP No. 112, but the ▮▮-document figure they cite vastly understates the number of documents regarding the new Sunday Ticket agreement that the NFL Defendants have produced, including hundreds in earlier productions. To date, Plaintiffs have received information including:

- The agreement itself between the NFL and Google regarding the rights to the residential NFL Sunday Ticket package;
- Proposals from third parties ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regarding the rights for the NFL Sunday Ticket package;
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- Internal discussions within the NFL regarding proposals for the NFL Sunday Ticket package; and
- Analyses conducted by the NFL and third parties regarding the future rights to the NFL Sunday Ticket package.

Barber Decl. ¶ 25.

Nonetheless, Plaintiffs claim that other critical documents are missing from the NFL's productions. But none of their assertions establish that the NFL Defendants' prior productions were incorrect or incomplete in any regard.

*First*, Plaintiffs' surprise at the volume of a production is not a standard by

which to assess the sufficiency of the NFL Defendants' production of documents. And ultimately, regardless of what Plaintiffs say their expectations are *today*, the documents that the NFL Defendants have produced in response to RFP No. 112 reflect the key aspects of the recent negotiations, consistent with what Plaintiffs' proposed search term was intended to cover, and an approach to past productions about which Plaintiffs have never lodged a plausible complaint.

*Second*, Plaintiffs' reliance on the absence of documents reflecting communications with certain third parties is unavailing. The documents they cite to support this claim make clear that the vast majority of key discussions were held in person or by phone, as would be expected for negotiations of this scope.[8]   For example, Plaintiffs complain they did not receive sufficient documents ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Barber Decl. ¶ 26. And of course, Plaintiffs will have an opportunity to ask questions about these discussions at the upcoming 30(b)(6) deposition.

*Third*, while it is undoubtedly true that individuals ██████████████ ████████████████████████████████ may have had direct communications with third parties, Plaintiffs have always known that. *See supra* at 20–21 (describing Plaintiffs' agreement that ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ The produced documents make clear that these three individuals indeed were the key decision-makers in the current negotiations. Barber Decl. ¶ 26. ████████████████████████ ████████████████████████████████████████████████████████████████

---

[8] Numerous documents the NFL Defendants produced consist of communications between the NFL and third parties to schedule phone calls, video calls, or in-person meetings, or internal updates from NFL employees regarding non-email conversations they had with third parties. Barber Decl. ¶ 26.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ███████████████████████████████████ *See id.*

6   *Fourth,* Plaintiffs offer the beside-the-point assertion that the NFL Defendants

7 were obligated to update their initial disclosures in August 2022 when ████████████

8 ████████████████████████████████████████████████████

9 *See supra*, at 16.  Plaintiffs are incorrect.  Under Rule 26(a), parties have a duty to

10 provide disclosures regarding the identity of individuals "likely to have discoverable

11 information . . . that the disclosing party may use to support its claims or defenses."

12 Fed. R. Civ. P. 26(a)(1)(A)(i). ████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ██████████████████████████████████████████████ *See*

17 Barber Decl. ¶ 14.    Moreover, Plaintiffs overstate his importance to the recent

18 negotiations; while he did have direct communications with certain parties who

19 negotiated for the future rights to Sunday Ticket, he consistently communicated with

20 his supervisors at the NFL about those discussions and deferred to their decision-

21 making authority.  *See id.* ¶ 26.  Those communications have been produced.  *See id.*

22   *Finally*, Plaintiffs rely on public reporting about Sunday Ticket negotiations,

23 referencing an ████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 *See supra*, at 9–10, 16.  But it is unclear why Plaintiffs choose to credit unverified,

26 unsourced public reporting ████████████████████████████████

27 ████████████████████████████████████ In particular, documents the

28 NFL Defendants have produced to Plaintiffs suggest numerous reasons, ████████████

1 ███████████████████████████████████████████████

2 Barber Decl. ¶ 26. ███████████████████████████████

3 ██████████████████████████████ *See id.*  Unverified speculation provides no

4 grounds for insisting on further production.  *See Hubbard v. Potter*, 247 F.R.D. 27,

5 29 (D. D.C. 2008) ("Speculation that there is more will not suffice; if theoretical

6 possibility that more documents exist sufficed to justify additional discovery,

7 discovery would never end.");  *Kendle v. Whig Enterprises, LLC*, 2016 WL 898569,

8 at *4 (S.D. Ohio 2016) (denying a motion to compel made "on the basis of a mere

9 suspicion that the producing party possesses additional information").  And as to the

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████ *See* Barber Decl. ¶ 25.

14 The case on which Plaintiffs rely, *Apple Inc. v. Wi-LAN, Inc.*, 2019 WL

15 4253833 (S.D. Cal. July 22, 2019), is instructive.  There, the court compelled

16 production of Apple's new licensing agreement, as well as internal testing

17 documents, only because the moving party pointed to specific material deficiencies

18 in Apple's productions that could be supplemented through limited non-custodial

19 discover that "impose[d] little to no burden on Apple."  *Id*. at *5–6.  Here, in contrast,

20 the NFL Defendants have already produced the relevant agreement, in addition to

21 documents and communications from the key decision-makers behind that

22 agreement.  Without identifying any material deficiencies that render the production

23 incomplete or incorrect in any material respect, Plaintiffs are not entitled to further

24 supplementation.

25       ii.     **Plaintiffs should not be permitted to impose additional**

26 **burdensome discovery obligations on the NFL Defendants well after the close of fact discovery.**

27 Eight months following the close of fact discovery, Plaintiffs seek to impose

28 discovery obligations on the NFL Defendants beyond what the parties and the Court

agreed were appropriate during the fact discovery period.   These requests are unreasonably burdensome.

    As an initial matter, it is important to note that Plaintiffs have provided no reason to think these documents are actually important to "[their] discovery plan or trial preparation."  *L.A. Terminals, Inc.*, 340 F.R.D. at 396 (quoting *Sender*, 225 F.R.D. at 654).  Plaintiffs recently served their merits expert reports on February 17, 2023, none of which reference *any* of the hundreds of documents the NFL produced in connection with recent negotiations, apart from the agreement itself.[9]    Barber Decl. ¶ 30.  That is not surprising given that Plaintiffs' complaint attacks the NFL's agreements with *DIRECTV* on behalf of a class of *DIRECTV* subscribers during a class period ending on February 7, 2023, well before the new agreement with Google becomes operative.  The absence of these documents in Plaintiffs' expert reports likewise belies any claim that discovery regarding the new Sunday Ticket deal is necessary because it would reflect options that the NFL could have chosen in the past.  If Plaintiffs wanted to make that argument, they would—but they haven't.  And that is not surprising:  there was a markedly different broadcasting ecosystem in 2014 when the currently operative Sunday Ticket agreement was negotiated.  YouTube TV did not even exist at the time.

    The apparent irrelevance of these documents magnifies the unreasonable burdens Plaintiffs seek to place on the NFL Defendants—burdens that go far beyond anything that has previously been contemplated.

    *First*, Plaintiffs request collection of documents from three new custodians: ███████████████████████████████████   *See supra*, at 17.[10]   They thus

---

[9] The parties also agreed that, if the NFL Defendants made its post-agreement production of documents responsive to RFP No. 112 before January 13, 2023, would be expected to incorporate those into the merits reports without the need for later supplementation.  Barber Ex. 12 (Dkt. 735), at 2.

[10] Plaintiffs' proposed order seeks relief far broader than discussed in the instant joint stipulation.  Plaintiffs' proposed order, as written, would require the NFL to collect and review custodial files from "*all* NFL employees who were party to []

1    request to double the number of custodians whose documents the NFL Defendants

2    must collect and review, despite the reality that these additional individuals whose

3    custodial files they now seek are far less central to the decision-making process than

4    the three custodians who were involved in all critical aspects of the Sunday Ticket

5    negotiations and whose documents have already been produced.  There is no valid

6    basis to suggest that review of custodial files from ████████████████████

7    ████████████████████████████████████████████

8    ████████████████████ and thus this request is not proportional to the needs

9    of this case.

10        *Second*, Plaintiffs request an additional document review process vastly more

11   extensive than the parties' prior agreement.  Their claim that the NFL need only run

12   "a limited search of search terms," *supra* at 18, vastly undersells the burden

13   associated with their requests.  Plaintiffs' newly proposed search terms include

14   phrases as general as ████████████ that will undoubtedly sweep in thousands of

15   patently irrelevant documents that counsel for the NFL must review for

16   responsiveness.  *See* Barber Decl. ¶ 27; Finn Ex. 6, at 5–6.  These search terms would

17   hit on, for instance, all communications with third parties[11] concerning matters

18   unrelated to Sunday Ticket, as well every calendar invitation or Google alert that

19   each custodian received during the relevant time period.  Barber Decl. ¶ 27.  Such a

20   _____

21   communications"   with   third   parties ████     ████      ████████
     ████████████     Proposed Order, at 1.

22   [11] It is also unclear to the NFL Defendants why Plaintiffs request production of
     documents reflecting the NFL's communications with ████████ concerning the

23   Sunday Ticket agreement, or what exact relief they seek with respect to identifying

24   any such documents.  If they request simply that the NFL Defendants include
     communications with ████████ the recent Sunday Ticket agreement as part

25   of their productions responsive to RFP No. 112, those documents would already have

26   been produced if they hit on the agreed-upon search terms.  If Plaintiffs seek a
     separate protocol to specifically capture communications with ████████████

27

28   ████████ they cannot do so for the first time in the instant motion without having
     satisfied the meet-and-confer requirements of Local Rule 37-1.

burden is unnecessary and unwarranted. *See Briggs v. Cnty. of Maricopa*, 2021 WL 1725553, at \*2 (D. Ariz. Apr. 30, 2021) (declining to order additional search terms where "the parties previously agreed to a list of terms").

*Finally*, requesting additional discovery at this juncture in the case presents challenges to both the parties and the Court. Despite receiving the post-agreement production on January 13, 2023, Plaintiffs did not serve the instant motion until less than a month before the NFL Defendants' merits experts reports were due, *see* Finn Ex. 2, at 2. Now, an additional collection and review of documents—particularly using Plaintiffs' over-inclusive proposed search procedures—from three additional custodians would not be completed until after the parties' merits expert reports are fully submitted. To the extent Plaintiffs' experts intend to rely on documents from that future production and supplement their expert reports, they cannot do so without impacting subsequent case deadlines, including for summary judgment and the trial date the Court set over two years ago. In the interest of finality and case management for a case that initiated nearly 8 years ago, discovery must end at some point. *See Finalrod IP, LLC v. John Crane, Inc.*, 2019 WL 2563840, at \*3 (W.D. Tex. Mar. 22, 2019) ("[T]he broad scope of discovery may not be used as a license to engage in an unwieldy, burdensome, and speculative fishing expedition. At some point, the parties must set aside their suspicions and discovery must end.").

Failing to justify their requests for this additional discovery, Plaintiffs take the puzzling position that Chief Judge Gutierrez's modifications to the scheduling order granted Plaintiffs leave to make these requests. *See supra*, at 14–15. But nowhere in Chief Judge Gutierrez's order did he suggest that Plaintiffs may serve *additional* document requests, the deadline for which—pursuant to the Court's original scheduling order and the parties' subsequent agreement—was February 22, 2022, and remained unchanged by subsequent scheduling orders. *See* Barber Decl. ¶¶ 5–6; Barber Ex. 3 (Dkt. 362), at 3; Barber Ex. 4 (Dkt. 423-1), at 7 n.3; Barber Ex. 5 (Dkt. 434); Finn Ex. 2 (Dkt. 886). Indeed, when granting Plaintiffs' request for limited

discovery after the fact discovery deadline—after Plaintiffs' numerous reassurances in their briefing that their requested relief was modest—Chief Judge Gutierrez explicitly declined to express a position as to the merits of any such additional discovery. *See* Barber Ex. 7 (Dkt. 607), at 3–4.

In seeking further documents eight months after the end of fact discovery, it is Plaintiffs' burden to establish that such discovery is warranted, *see Moriarty*, 2021 WL 6197289, at *4, but they have failed to do so. Their instant demands are far more burdensome than what the parties long ago agreed to, and what this Court ordered in September 2022. Without establishing that this expansive relief is appropriate at all, let alone eight months after the fact discovery cutoff, particularly given the damage it threatens to the larger case schedule, Plaintiffs' requested relief must be denied.

### 4. Conclusion

The parties, and the Court, have long agreed on the scope of the NFL Defendants' discovery obligations regarding RFP No. 112, and Plaintiffs have repeatedly reassured the Court that they were not seeking more. The NFL Defendants have fully complied with their discovery obligations and produced responsive documents using the agreed-upon protocol from the key decision-makers in the Sunday Ticket negotiations. Now, though they ask for more, Plaintiffs fail to establish that the NFL's productions were incorrect or incomplete in any material respect. The Court should deny Plaintiffs' request for such expansive relief.

Dated: April 4, 2023                                    Respectfully submitted,

By:   */s/ Marc M. Seltzer*
        Marc M. Seltzer

        Marc M. Seltzer (54534)
        mseltzer@susmangodfrey.com
        SUSMAN GODFREY L.L.P.
        1900 Avenue of the Stars, Suite 1400
        Los Angeles, CA 90067
        Tel: (310) 789-3100
        Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)

ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*


/s/ Jeremy S. Barber
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

36

1

2

3

4

5

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28