Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (JEMx) |
| | **DISCOVERY MATTER** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **JOINT STATUS REPORT REGARDING THE COURT'S APRIL 25 ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THE NFL**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Discovery Cutoff Date: 8/5/2022<br>Pretrial-Conference Date: 2/9/2024<br>Trial Date: 2/22/2024 |

Pursuant to the Court's April 25, 2023 Order, Dkt. 924, the NFL Defendants and Plaintiffs submit the following Joint Status Report regarding an order for the production of documents relating to the new Sunday Ticket agreements and the preceding negotiations.

1.      On April 27, 2023, Plaintiffs sent to the NFL Defendants a revised proposal for a search protocol regarding a supplemental production of documents in response to Request for Production No. 112.

2.      On May 1, 2023, Plaintiffs and the NFL Defendants met and conferred to discuss that proposal. Later that day, the NFL Defendants submitted a counterproposal to Plaintiffs.

3.      On May 4, 2023, Plaintiffs sent to the NFL Defendants a further revised proposal. On May 8, 2023, the NFL Defendants submitted a revised counterproposal. An email chain containing each of the above-cited proposals is attached hereto as Exhibit 1.

4.      The parties further met and conferred on May 8, 2023 regarding the various proposals but were not able to reach an agreement on a search protocol. In particular, the parties reached an impasse about the necessity of including the terms "Sunday Ticket" or "NFLST" in every search string, as well as the proper date range for the collection.  Later that day, Plaintiffs submitted a further revised proposal to the NFL.  The parties have been unable to resolve these issues.

5.      The parties have offered the following proposals for search terms:

**Plaintiffs' Proposed Search Terms:**







**The NFL Defendants' Proposed Search Terms:**

**Plaintiffs' Position**

6.      Plaintiffs propose search terms that are tailored to capture the NFL's communications with and concerning the third parties with which the NFL negotiated for Sunday Ticket, while also minimizing the concerns raised by this Court about yielding large amounts of irrelevant documents. Plaintiffs selected these terms after reviewing the productions made by the NFL and relevant third parties in order to identify key words and phrases that were germane to those specific negotiations. Plaintiffs' proposal pairs these phrases with the names of the known bidders for the residential and commercial rights to Sunday Ticket as an additional means of reducing the potential of yielding irrelevant documents. Plaintiffs also included the last names of NFL personnel known to have communicated with the three selected custodians about these negotiations. Lastly, Plaintiffs included a term of the last names of the third-party individuals that Plaintiffs know were communicating with the NFL about Sunday Ticket. In arriving at this proposal, Plaintiffs endeavored to eliminate generic terms that might sweep in communications unrelated to Sunday Ticket. Considering the limited number of custodians and the limited time frame from which documents will be collected, Plaintiffs' proposal imposes a burden on the NFL that is proportional to the needs of this antitrust case—considering the billions of dollars at stake and the fact that the Court has certified two classes for purposes of litigation of the merits.

7.      Plaintiffs have endeavored to negotiate in good faith with the NFL Defendants. Plaintiffs have made several proposals, each narrower than the one before, in an attempt to reach a negotiated solution. A comparison of the search terms proposed initially in Plaintiffs' motion to compel, *see* Dkt. 914-5 at 3-4 (Finn Decl., Ex. 6), with Plaintiffs' proposal above makes that abundantly clear. Plaintiffs' proposed terms focus on the names of the known bidders for Sunday Ticket, the domain names of those bidders, or reference to either Sunday Ticket ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After the

Court expressed concern that Plaintiffs' proposed terms "contain[ed] phrases as general as 'YT' or 'Google' that would yield thousands of irrelevant documents that the NFL would have to review for responsiveness," Dkt. 924 at 6, Plaintiffs significantly narrowed their proposal. To reduce the number of unresponsive documents, Plaintiffs proposed pairing commonly used terms such as "Google," or ████████ with phrases specific to Sunday Ticket that Plaintiffs identified from prior productions, such as "a la carte" and "out of market" (Sunday Ticket is a package of "out of market" games that previously was unable to be purchased on an "a la carte" basis). During the discussions about that proposal, the NFL Defendants contended that the proposed terms would sweep in too many false positives, but without providing any additional information to support that conclusion. Nevertheless, Plaintiffs further narrowed their proposal, ensuring that a term referring to Sunday Ticket was paired with a name of a third party and vice versa. Finally, Plaintiffs submitted a third proposal that further narrows the search terms by removing potentially generic terms such as "cap", "deal", "fee", "linear", "local", "on-demand", and "virtual." As each of the terms contemplated by the final proposal is specific to Sunday Ticket, the proposal should not yield large amounts of unresponsive documents. For example, there is no reason to believe that either of the three custodians would employ the term "out-of-market" *and* the name of one of the identified bidders in a communication that does not relate to Sunday Ticket. The NFL now claims that the proposed terms are too "complicated," but that complexity reflects Plaintiffs' efforts to capture relevant documents without reliance on "generic" terms.

8. The NFL contends that all of the search terms must include "Sunday Ticket" or its common abbreviation "NFLST." But as Plaintiffs have consistently pointed out to the NFL, not all relevant communications expressly state "Sunday Ticket" or "NFLST." ████████████████████ ████████—which include communications with the NFL and therefore should be in the NFL's possession, custody, or control—exemplify why the NFL's limitation

to only documents including "Sunday Ticket" or "NFLST" is too restrictive. Examples of relevant documents that do not use either of those terms are attached here as Exhibits 2-5. Exhibit 2, for example,



*See* Exs. 3-4. Lastly, Exhibit 5, an email concerning the pricing of Sunday Ticket uses only the term "ST."[1]

And the NFL itself has produced emails that refer to Sunday Ticket only in the attachment (and hence were picked up by the deficient search term).

---

[1] The NFL Defendants maintain that the term "ST" would sweep in all words that contain this combination of letters, such as last. Plaintiffs responded by modifying that particular term to " ST ", *i.e.*, with a space on each side of the word. Nevertheless, the NFL has refused to include that term.

[2]

Denial of that fact is nothing short of an effort to hide relevant documents from Plaintiffs and the trier of fact. Plaintiffs are not required to prove exactly what documents exist. Such a requirement would

████████████████████████████████████████████████████████

██████████████████ Although Plaintiffs have raised the concern about the inadequacy of the ("Sunday Ticket" or "NFLST") term on numerous occasions, the NFL Defendants refuse to budge from their position. And they do not even attempt to engage with this issue—the key disagreement between the parties—in their portion of the joint status report.

9.      Indeed, the NFL Defendants have refused to engage in any meaningful compromise over the search protocol. Their counterproposal barely deviates from the position they took before this motion was filed—a combination of domain names with the term "Sunday Ticket." Their intransigence ignores the Court's conclusion that "the problem is the search term that was ***plainly inadequate*** to capture all or most communications regarding Sunday Ticket negotiations." Dkt. 924 at 7 (emphasis added). The NFL Defendants insist on the necessity of their terms but have not reviewed documents collected from the three custodians at issue to determine whether Plaintiffs' proposed terms (or any other terms) are used in responsive documents. They have similarly refused to identify any specific terms proposed by Plaintiffs that are driving the alleged burden of implementing the protocol. Nor have they provided Plaintiffs with any estimate of the number of documents. The NFL Defendants nonetheless insist that implementing the proposed protocol imposes a burden that is not proportional to the needs of the case.

10.      The NFL Defendants once again overstate the burden associated with Plaintiffs' request. Plaintiffs seek documents from only three individuals over a period spanning less than two years. The limited nature of the search casts further doubts on the claim that the proposed terms would yield thousands of unresponsive documents. Neither Plaintiffs nor this Court have any basis to assess the veracity of those claims of burden because the NFL Defendants refuse to provide any information on the quantity of documents produced by each proposed search string.

impose an impossible standard that is inconsistent with the Federal Rules of Civil Procedure.

This information is evidently available to the NFL Defendants. And they used this informational asymmetry to their advantage during the negotiation process by citing to their document vendor's estimate of the time it will take to conduct a first-level review. Until the drafting of this joint status report, the NFL Defendants refused to provide Plaintiffs with any context about how their vendors arrived at that estimate or identify which search terms are driving it.[3] Consequently, the Court should not credit their claims of burden. *See Cty. of Cook v. Bank of Am. Corp.*, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) (granting motion to compel and concluding that "the burden position taken by the [producing party] is without any factual support" because it produced no representative sampling or comparison of proposed searches); *L-3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) ("If confronted with a search term they believe is overly burdensome, Defendants have an obligation not just to assert their objection but explain the grounds for the objection and to point to evidence supporting it."). "[C]ounsel may not use his superior information as to the location or nature of responsive documents to thwart good faith discovery requests by refusing to engage cooperatively to identify ... the search terms likely to produce responsive documents." *Id.* (internal quotation marks omitted). Moreover, the NFL's claim of the time it would take to review documents has nothing to do with the separate question of whether those documents are irrelevant to the issue at hand. Instead, it clearly could mean that there are significant numbers of ***responsive*** documents that the NFL has kept obscured from discovery in this case and should be produced.

---

[3] The declaration of Danielle Garvey is the first instance in which the NFL Defendants have provided Plaintiffs with any context for their claims of burden, beyond an unexplained estimate of the amount of time it would take to perform a first-level review.  Even the declaration omits facts that are material to an assessment of the burden associated with Plaintiffs' proposal.  First, it fails to connect the alleged burden with any specific search terms, hampering the ability to  formulate a narrowed proposal.  Second, it makes no claims about the number of documents or review-hours required by the NFL's proposed search terms, which in turn prevents any meaningful comparison of the burden associated with the two proposals.

11.     Any burden associated with Plaintiffs' proposal is proportional to the needs of this case. This is true even if one accepts the NFL Defendants' unexplained estimate that Plaintiffs' (since-narrowed) proposal would require six weeks of review. Each of the proportionality factors outlined in Rule 26(b)(1) counsel in favor of production in this case, considering the billions of dollars in controversy, the NFL Defendants' privileged access to the relevant information, the resources of the NFL Defendants, and the importance of discovery in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1). As to the last factor, this Court has ruled on two separate occasions that the documents sought by RFP 112 are material to Plaintiffs' case. When considered in the context of this billion-dollar litigation in which a class has already been certified, the likely benefit of Plaintiffs' requested discovery outweighs the associated burden and expense.

12.     Lastly, the parties disagree on the date range of the supplemental production. In light of the Court's ruling that the search term was "plainly inadequate," Plaintiffs seek a supplemental search of documents dating back to May 2021—when the prior, inadequate search terms were first employed. If the search term was inadequate for the latest production, it was also inadequate for the former production. The NFL Defendants nonetheless insist that the new search terms should be applied only to the documents collected from April 2022 to the present, because Plaintiffs objected to the January 27, 2023 production but not to the prior May 7, 2022 production. That argument misses the point. Rule 26(e) entitles Plaintiffs to a supplementation whenever a document production is incomplete in some material respect. That incompleteness applies equally to both date ranges.

**NFL Defendants' Position**

13.     As the Court is well aware, over the past weeks the parties have been meeting and conferring in an attempt to reach agreement on the search terms to be used for a supplemental production of documents in response to Plaintiffs' Request for Production No. 112, which seeks documents relating to the negotiations for the recently executed Sunday Ticket agreements.  The NFL Defendants had hoped to

avoid burdening the Court with this issue, but Plaintiffs have insisted on search terms unrelated to Sunday Ticket that will, by design, sweep in an unacceptable number of non-responsive, irrelevant documents.   Plaintiffs' proposed search terms are overbroad and would impose undue burdens that are not proportionate to the needs of the case.  Plaintiffs have also insisted that the NFL Defendants search documents dating back well before Plaintiffs' recent concerns were raised, only exacerbating the burden to the NFL Defendants.

14.   Application of Plaintiffs' proposal is estimated to require approximately 1,700 person-hours for first-level review alone.   Barber Ex. A (Declaration of Danielle Garvey, Esq., in Support of Defendants' Position for the Joint Status Report, at 2).   This is far from the "modest relief" Plaintiffs claim they were seeking when asking for additional discovery months after the close of fact discovery.  *See* Barber Ex. B (Dkt. 555-1), at 1 (requesting the Court to "grant the modest relief"); *id*. at 2 ("Plaintiffs request permission to take limited document and deposition discovery about the new agreement after August 5."); *id*. at 13 ("Plaintiffs' request for supplementary document productions in this area is modest and bounded.").

15.   The NFL Defendants have, on the other hand, proposed search terms that are designed to address Plaintiffs' stated concerns and are focused on those time periods during which Plaintiffs raised concerns about the scope of the NFL Defendants' productions.   The Court should adopt the NFL Defendants' proposed search terms.

16.   Plaintiffs' most-recent search term proposal includes 11 different complicated and overly broad strings of search terms.[4]   A review of these proposed

---

[4]  Plaintiffs insist that the NFL Defendants use "ST" as one of the terms in 10 of the 11 lengthy search phrases they propose and claim above that adding a space on each side of the word would not prevent thousands of non-responsive documents from being swept into the search.   The search logic of the document database ignores punctuation and as such the use of ST as a search term would capture any document that references the abbreviation for the word street—a term used very frequently in an email sender or recipient's address or signature block.   That term, even with



search terms makes clear that they are not designed to focus on the actual topic of RFP No. 112—the negotiations for the new rights to Sunday Ticket.  Instead, they are designed to capture nearly all internal NFL communications that merely mention the names of a wide array of third parties, some of whom did not even bid on the Sunday Ticket rights and others of whom have relationships with the NFL that have nothing to do with Sunday Ticket.

And both have independent relationships with the NFL unrelated to NFL Sunday Ticket such that it would be expected that Plaintiffs' search term would capture an excessive number of non-responsive documents.[5]

spaces, would also capture every use of the word St. Louis, which is the former home of the Los Angeles Rams.

18.     The burden is further increased by the fact that Plaintiffs ultimately seek to apply around 900 pairs of terms as independent search criteria, many of which rely on common business terms.  For example, application of broad terms such as "pric*" or "rights" in connection with the names of the NFL's business partners is certain to sweep in large numbers of nonresponsive documents.  These problems are further exacerbated by Plaintiffs' proposal to use as independent search terms a range of common surnames, including

19.     Plaintiffs further suggest above that

20.     Similarly, Plaintiffs demand that the NFL Defendants search documents dating back to May 2021.  This expansion defies both Plaintiffs' actual request as well as the Court's order regarding continuing production of documents related to Sunday Ticket negotiations.  Barber Ex. D (January 31, 2023 Letter from T. Finn to J. Barber, at 2) (requesting supplemental production of documents related to current negotiations for Sunday Ticket "from the timeframe of April through December 2022."); Dkt. 645 at 2 ("This production shall comprise documents dating from April 4, 2022 to the date on which an agreement is reached collected from the custodians agreed-upon by the parties using the electronic search terms agreed-upon by the parties.").

21.     Because of the overbreadth of Plaintiffs' proposal, the NFL Defendants estimate that a first level review of documents that hit on Plaintiffs' proposed search terms would take a team of reviewers working full-time approximately six to nine weeks to complete.  Barber Ex. A (Declaration of Danielle Garvey, Esq., in Support of Defendants' Position for the Joint Status Report, at 3).  And it would take additional time for "all of the other tasks related to preparing production: second-level quality control review; production staging; application of redactions and/or slipsheets where appropriate; and privilege logging." *Id*.

22.     Plaintiffs attempt to justify this significant burden by arguing, without basis, that the burden "could mean that there are significant numbers of responsive documents that the NFL has kept obscured in this case and should be produced." *See supra* at 9.  To the contrary, as the NFL Defendants have explained on multiple occasions, it does not expect that there are a significant number of unproduced documents related to the recent negotiations.  And any argument that speculates that there "could" be responsive documents is without merit; Plaintiffs do not have the right to "[d]iscovery to pursue a suspicion or hunch." *Prasad v. George Washington University*, 323 F.R.D. 88, 94 (D.D.C. 2017).

23.     Because Plaintiffs have not "fashioned a set of search terms reasonably calculated to retrieve the information responsive to [their] requests," their proposal

should be rejected.  *See id.* at 93; *see also Curtis v. Alcoa*,  2008 WL 11342561, at *3 (E.D. Tenn. Mar. 25, 2008) ("the Court further finds that an electronic search using the terms 'vest', 'handshake', and '175%' is reasonably calculated to lead to the discovery of admissible evidence, but, because of the likelihood that the term will be used in association with matters outside the scope of the instant litigation, that any electronic search using these terms must be limited by the use of additional search terms.").

24.    The NFL Defendants, on the other hand, have proposed search terms that are reasonably designed to retrieve information responsive to Plaintiffs' RFP No. 112.  Specifically, the NFL Defendants have proposed the following two search terms:



25.    These searches would capture all communications with the parties who negotiated for the current residential or commercial NFL Sunday Ticket rights that reference Sunday Ticket, as well as all internal NFL communications that reference Sunday Ticket within 20 words of the names of any of those parties.  These are precisely the types of communications Plaintiffs claim, based on unsupported accusations, are missing from the NFL Defendants' recent productions.  *See, e.g.*, Barber Ex. D (January 31, 2023 Letter from T. Finn to J. Barber, at 1) (arguing that the NFL Defendants' previous production "includes hardly any communications between the NFL and the various third parties who sought the rights to broadcast NFL Sunday Ticket."); Dkt. 914-01 (April 4, 2023 Joint Stipulation for Motion to Compel), at 12 (explaining that terms would be "properly limited to specific counterparties with whom the NFL was negotiating for the rights to Sunday Ticket.").

26.    The NFL Defendants would run these terms for the time frame from April 1, 2022, through the date the recent agreements were executed, the exact date

range Plaintiffs identified in their January letter, Barber Ex. C (January 31, 2023 Letter from T. Finn to J. Barber, at 2), and referenced in the Court's order on this topic.   Dkt. 645 at 2 (ordering productions responsive to RFP No. 112 "dating from April 4, 2022 to the date on which an agreement is reached.").

27.    The Court should adopt the NFL Defendants' proposed search terms, which are appropriately designed to focus on the requested information, while avoiding the unnecessary burdens that Plaintiffs' proposal would impose.

Dated: May 9, 2023                    Respectfully submitted,

By: */s/ Tyler Finn*
Tyler Finn

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366

16

Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

By: */s/ Jeremy S. Barber*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com

17

bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*