# EXHIBIT 15

## To the Declaration of Rakesh N. Kilaru

## REDACTED VERSION OF DOCUMENT FILED PUBLICLY

1

1    UNITED STATES DISTRICT COURT
     CENTRAL DISTRICT OF CALIFORNIA
2

3    Civil Action No. 2:15-ml-02668-PSG(JEMx)

4

5

6    IN RE: NATIONAL FOOTBALL
     LEAGUE'S "SUNDAY TICKET"
7    ANTITRUST LITIGATION

8

     _____/
9

10

11

12              DEPOSITION OF
                 BRIAN ROLAPP
13

14

15           Wednesday, May 18, 2022
             9:03 a.m. - 3:22 p.m.
16

17              Remote Location
             Via Zoom Videoconference
18            All Parties Remote

19

20

21

22

23

24         Stenographically Reported By:
               Erica Field, FPR
25

Case 2:15-ml-02668-PSG-SK   Document 954-7   Filed 07/28/23   Page 3 of 26   Page ID
NFL Sunday Ticket Antitrust Litigation                    #:30217
Brian Rolapp
May 18, 2022

2

```
 1    APPEARANCES:

 2

 3    On behalf of the Plaintiff:
          LANGER GROGAN & DIVER
 4        1717 Arch Street
          Suite 4130
 5        Philadelphia, Pennsylvania 19103
          (215) 320-5660
 6        BY: PETER LECKMAN, ESQUIRE
              KEVIN TRAINER, ESQUIRE
 7        pleckman@langergrogan.com
          ktrainer@langergrogan.com
 8

 9    On behalf of the Defendant:
          WILKINSON STEKLOFF
10        2001 M Street NW
          10th Floor
11        Washington, DC 20036
          (202) 847-4000
12        BY: RAKESH KILARU, ESQUIRE
          rkilaru@wilkinsonstekloff.com
13

14

15    ALSO PRESENT:
          Kim Ferrari, Paralegal, Langer Grogan
16        Derek Ludwin, Covington & Burling
          Delores DiBella, NFL
17

18    VIDEOGRAPHER:
          Bryan Beltran
19

20

21

22

23

24

25
```

Case 2:15-ml-02668-PSG-SK   Document 954-7   Filed 07/28/23   Page 4 of 26   Page ID
#:30218
NFL Sunday Ticket Antitrust Litigation                                         Brian Rolapp
May 18, 2022

24

1    document?

2         A.    I am, yes.

3         Q.    Do you know how this case study

4    came to be?

5         A.    If I remember, the professor at

6    Harvard, Anita Elberse, approached us about

7    wanting to write a case on our mobile digital

8    strategy at the time.

9         Q.    And were you interviewed?

10        A.    Yes.

11        Q.    And do you remember who you were

12   interviewed by?

13        A.    I remember Anita.  That's all I

14   remember.

15        Q.    Got it.

16              And were any drafts exchanged

17   before a final version was agreed on?

18        A.    I'm sure there were, yeah.

19        Q.    Okay.  Have you ever contacted the

20   Harvard Business School and asked them to

21   correct anything in this case study?

22        A.    Not that I remember.

23        Q.    Okay.  So, as you described, this

24   case study discusses the NFL's 2009 decision

25   on how to distribute their content in the

```
 1   mobile space; is that fair?

 2        A.    I believe so, yes.

 3        Q.    If you could turn to Page 1, the

 4   third paragraph begins with:  Because

 5   television rights were at the heart of the

 6   NFL's business model.  The NFL's media

 7   partners, which included the broadcasters,

 8   CBS, Fox, and NBC, cable channel ESPN, and

 9   satellite provider DirecTV collectively paid

10   the NFL over $4 billion annually.  Rolapp

11   knew he would have to consider the impact of

12   a wireless deal on the NFL's overall ability

13   the monetize its content.

14             Do you see that?

15        A.    I do.
```

```
 2        Q.    Sure.

 3        A.    The mobile rights are essentially

 4   in-market games that you can get on the

 5   mobile phone or a tablet, rights that we had

 6   created and reserved for our broadcast

 7   contracts.

 8              And our focus at the time was how

 9   do we create something that was incremental

10   in value added to the fan's experience.  And

11   so if it was incremental to the fan's

12   experience, it would be valuable to the fan,

13   and then at some point it should be valuable

14   to whoever distributes it, by definition.

15              But I think that's how we were

16   thinking about how this could work with our

17   overall media ecosystem and strategy.

18        Q.    And in what way would providing

19   the in-market games through your phone impact

20   the NFL's overall ability to monetize its

21   content?

22              MR. KILARU:  Object to the form.

23        A.    Well, I'm not sure I understand

24   your question entirely.

25
```

NFL Sunday Ticket Antitrust Litigation

Brian Rolapp
May 18, 2022

99

```
 9      Q.    Who will carry the over-the-air
10   option?
11      A.    A local station to be determined.
12   That's on a market-by-market basis.
13      Q.    So it won't be Fox or CBS?
14      A.    No.  It's usually -- it could be
15   an ABC affiliate.  It could be a CBS
16   affiliate.  Just really depends on the
17   market.
18      Q.    Most NFL games during the regular
19   season are played on Sunday afternoons,
20   right?
21      A.    Yes.
22      Q.    How many games are played on a
23   given Sunday afternoon during the regular
24   season?
25      A.    I think it varies, but you will
```

1   probably have -- I don't know the exact

2   number, but you will probably have 8 to 10 at

3   1:00 and then a handful more at 4:00.  So the

4   math is, you know, if there's not a -- on a

5   typical -- if there's not a Saturday game, if

6   there's just a Monday and a Thursday game,

7   you know, that's those two games there and

8   the remaining games are on Sunday afternoon

9   or Sunday night.

10      Q.   And CBS and Fox, I think you

11  testified earlier, produce those games on

12  Sunday afternoons?

13      A.    Correct.

14      Q.   And what does over the air mean in

15  the context of NFL football telecasts?

16      A.   I think it means whenever a game

17  is broadcast on a broadcast network, CBS,

18  Fox, NBC, that that is available free -- on

19  broadcast Spectrum, it should be free in the

20  market.  So all you need is an antenna to

21  pick that up.

22      Q.   And when you say in-market, what

23  is your understanding of what that refers to?

24      A.    It refers to the -- where that

25  game is telecast, which at a minimum is the

101

1    local market of a participating team, and

2    more often than not, it's broader than that.

3    It's other markets buy that game.

4         Q.    So in-market is not necessarily

5    the same as the playing team's markets?

6         A.    Not necessarily.  Depending on

7    where you live and what the situation is.

8    But at a minimum it is.

9         Q.    Basically in-market means wherever

10   the games are carried over the air in a

11   particular DMA?

12        A.    Yes, but in all situations it's

13   always carried over-the-air in the home

14   market of the participating clubs in that

15   game.

16        Q.    What does out of market mean?

17        A.    Out of market is everything else.

18   So it's all the other markets that aren't

19   carrying that game on free over-the-air

20   television.

21        Q.    Got it.

22             In any given DMA on any Sunday

23   afternoon -- I think we went over this

24   earlier -- you testified just to get the

25   record straight, that there's typically two

102

```
1    games played in one of the windows and a
2    single game aired in the other window; is
3    that right?
4        A.    Yeah, there are -- just to be
5    clear, yes, there is a double-header network
6    and a single-header network.  So you will get
7    one game at 1:00, and you will get up to two
8    games at 4:00 in any particular market.  So
9    you will get three games on Sunday afternoon
10   at a minimum.  Sometimes we do more than
11   that.  Sometimes we do a double-double header
12   and you get a fourth game, and then you get
13   your national game obviously throughout the
14   rest of the week.
15       Q.    Got it.
16            You mentioned the double-double
17   headers.  Did that start last season?
18       A.    No.  I think we increased it last
19   season.  So it's been -- I don't know how
20   long it's been.  It's been in existence for
21   some time, and then we actually added more
22   weeks where that happens.  So there's more
23   weeks that each market gets four games, and
24   that would be the norm going forward.  It
25   will be more double headers than previously.
```

Brian Rolapp
May 18, 2022

120

```
1        Q.    It's not available on Fubu TV?

2        A.    No.

3        Q.    So it's fair to say that the only

4   way to watch those telecasts carried on

5   Sunday Ticket is to be a subscriber to

6   DirecTV?

7        A.    Correct.
```

1    BY MR. LECKMAN:

11    Q.    Are you familiar with how other

12    professional leagues distribute their

13    out-of-market packages?

14    A.    In broad terms, yes.

15    Q.    Do you know if consumers can

16    subscribe to Major League Baseballs

17    out-of-market package through DirecTV?

18    A.    Yes, they can.

19    Q.    Comcast?

20    A.    I believe so.

21    Q.    Cox?

22    A.    I believe so.  I'm not certain,

23    but I believe so.

24    Q.    Dish?

25    A.    I believe so.

122

```
 1        Q.    Are you aware that consumers can
 2   also buy it through Amazon Prime?
 3        A.    Yes.
 4        Q.    And YouTube TV?
 5        A.    Yes.
 6        Q.    And you can also buy Major League
 7   Baseball's Internet package, MLB.TV, directly
 8   from the league, right?
 9        A.    That's correct.
10        Q.    And are you aware you can buy a
11   single team set of games through MLB.TV?
12        A.    I was not aware of that, but that
13   doesn't surprise me.
14        Q.    How about the NBA's out-of-market
15   package?  Do you have to be a DirecTV
16   subscriber to get the out-of-market package
17   -- or out-of-market games carried on the
18   NBA's package?
19        A.    I think DirecTV is one of the
20   places you can get it.
21        Q.    But you can also get it from the
22   other sources that we talked about for Major
23   League Baseball?
24        A.    I believe that's the case.
25        Q.    For the NHL, you can buy the
```

257



```
24        Q.    Okay.  Move on from this.
25              Next one I would like to turn your
```

Case 2:15-ml-02668-PSG-SK   Document 954-7   Filed 07/28/23   Page 15 of 26   Page ID
#:30229

NFL Sunday Ticket Antitrust Litigation

Brian Rolapp
May 18, 2022

258

1   attention to what was marked as Exhibit 3.

2   This was the interview in The Jockey Club.

3           Do you recall discussing this?

4       A.    I do.

5       Q.    And I just wanted to turn your

6   attention to Page 4 of 9 to a portion that I

7   don't believe was covered before.

8           Do you see the second full

9   paragraph on the page, and it reads:  Finally

10  working collectively for commercial purposes

11  national revenue.

12      A.    Yes.

13      Q.    (Reading:)  The league, 32 teams,

14  have contributed certain rights to the

15  national level, including media and

16  television and sponsorship in order to

17  generate better revenues for everybody.  Most

18  importantly, those are all equally shared.

19  So in our view the goal is to have

20  competitive healthy franchises, every single

21  one.  If a team wins, it will be based on the

22  shrewd allocation of those resources, not

23  because of a lack of them.

24          Do you see that?

25      A.    I do.

259

1      Q.    Based on your experience of the

2   league, what role -- what is the relationship

3   between pooled media rights and competitive

4   healthy franchises?

5      A.    I think it's very important, based

6   on my experience, where we have an entire

7   model where collective revenue, equally

8   shared revenue, a collective bargaining

9   agreement that fixes a salary cap essentially

10  creates a system where all teams are equally

11  competitive on the field, and because of

12  that, a team is going to win the Super Bowl,

13  not because of the size of their market or

14  their ability to generate disproportionate

15  economic resources.  It's going to be because

16  they allocated their portion of player costs

17  more effectively than their opponent.

18          That all to me, at the end of the

19  day, results in a highly competitive league,

20  the most competitive league in the world in

21  my opinion, where on any given year each team

22  has almost -- almost, not entirely, but

23  certainly almost equal probability of winning

24  the Super Bowl.

25          And the competitive parity that is

Brian Rolapp
May 18, 2022

260

```
1   created is one reason why the sport is so

2   popular as it is and the product is so good

3   and that we've created a national sport, not

4   a local sport, which I would argue many of

5   the other sports are.

6        Q.    We can move on from that exhibit

7   now.
```

Case 2:15-ml-02668-PSG-SK   Document 954-7   Filed 07/28/23   Page 18 of 26   Page ID
#:30232

NFL Sunday Ticket Antitrust Litigation

Brian Rolapp
May 18, 2022

261

███████████████████████████████

███████████████████████████

██████████████████████████████

████████████████████████████████

```
 5              But when the clubs are left to
 6    their own devices to do that, the quality
 7    certainly pales in comparison of the
 8    production value of those games versus the
 9    national games you will see on any given
10    Sunday, Monday, or Thursday.
11         Q.   Can I turn you now to Exhibit 10.
12    I believe it's the next one up.
13              Do you remember discussing this
14    document that was a deck, I believe, prepared
15    by McKinsey?
16         A.   I do, yes.
17         Q.   Could you turn to Page 9 of that
18    deck?
19              I don't believe this was discussed
20    earlier, but do you see on the bottom right
21    there's a star around a field and the field
22    says:  We haven't yet factored in the loss of
23    value from broadcast partners?
24         A.   I do see that, yes.
25         Q.   Why would that be relevant, the
```

276

```
1              CERTIFICATE OF REPORTER

2

3   UNITED STATES DISTRICT COURT )

4

5

6      I, ERICA FIELD, Stenographic Reporter,

7   certify that I was authorized to and did

8   stenographically report the deposition of

9   BRIAN ROLAPP, pages 1 through 275; that a

10  review of the transcript was not requested;

11  and that the transcript is a true and

12  complete record of my stenographic notes.

13     I further certify that I am not a

14  relative, employee, attorney, or counsel of

15  any of the parties, nor am I a relative or

16  employee of any of the parties' attorney or

17  counsel connected with the action, nor am I

18  financially interested in the action.

19

20     DATED this 19th day of May, 2022.

21

22  _____
    Erica Field

23

24

25
```

Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | ) Case No. 2:15-ml-02668−PSG (JEMx) |
| | ) |
| | ) **CORRECTIONS TO THE** |
| | ) **DEPOSITION TRANSCRIPT OF** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) **BRIAN ROLAPP** |
| | ) |
| | ) Judge:  Hon. Philip S. Gutierrez |
| | ) |
| | ) Deposition Date: May 18, 2022 |
| | ) Final Transcript Received: May 22, |
| | ) 2022 |

1      Defendants National Football League, NFL Enterprises, LLC, and the NFL

2    member Clubs (the "NFL Defendants"), by and through their attorneys, provide the

3    errata sheet to the deposition testimony of Brian Rolapp, attached hereto as "Exhibit

4    A."

5

6    Dated:   September 6, 2022            /s/ *Beth A. Wilkinson*

7                                         Beth A. Wilkinson (admitted *pro hac vice*)
                                          Brian L. Stekloff (admitted *pro hac vice*)
8                                         Rakesh N. Kilaru (admitted *pro hac vice*)
                                          Jeremy S. Barber (admitted *pro hac vice*)
9                                         **WILKINSON STEKLOFF LLP**
10                                        2001 M Street NW, 10th Floor
                                          Washington, DC 20036
11                                        Telephone: (202) 847-4000
                                          Facsimile: (202) 847-4005
12                                        bwilkinson@wilkinsonstekloff.com
                                          bstekloff@wilkinsonstekloff.com
13                                        rkilaru@wilkinsonstekloff.com
                                          jbarber@wilkinsonstekloff.com
14

15                                        Neema T. Sahni (Bar No. 274240)
16                                        **COVINGTON & BURLING LLP**
                                          1999 Avenue of the Stars
17                                        Suite 1500
                                          Los Angeles, CA 90067-6045
18                                        Telephone: (424) 332-4800
                                          Facsimile: (424) 332-4749
19                                        nsahni@cov.com

20                                        Gregg H. Levy (admitted *pro hac vice*)
21                                        Derek Ludwin (admitted *pro hac vice*)
                                          **COVINGTON & BURLING LLP**
22                                        One CityCenter
                                          850 Tenth Street NW
23                                        Washington, DC 20001
                                          Telephone: (202) 662-6000
24                                        Facsimile: (202) 662-6291
                                          glevy@cov.com
25                                        dludwin@cov.com

26
                                          *Counsel for Defendants National Football*
27                                        *League, NFL Enterprises LLC, and the*
                                          *Individual NFL Clubs*
28

1

1

## Exhibit A

2

**Errata Sheet to the Deposition Testimony of Brian Rolapp – May 18, 2022**

3

4

| Page | Line | Original Text | Correction | Reason |
|------|------|---------------|------------|--------|
| 5 | 1 | Delores | Dolores | Typographic error |
| 23 | 8, 16, 17 | Hanna | Hannah | Typographic error |
| 32 | 16 | club's | clubs' | Typographical error |
| 34 | 17 | of | or | Transcription error |
| 36 | 20 | CDA | CBA | Transcription error |
| 38 | 19 | that an | that in an | Transcription error |
| 41 | 17 – 18 | Verizon who has leading market share is | Verizon, who has leading market share, is | Clarify the record |
| 56 | 3 | competitors, but for that, | competitors.  But for that, | Typographical error |
| 64 | 3 | you | we | Transcription error |
| 65 | 24 | connect is | can access | Transcription error |
| 74 | 3, 8, 11 | BCl | BC-1 | Typographical error |
| 75 | 1 | BCl | BC-1 | Typographical error |
| 76 | 19 | EDP | EVP | Transcription error |
| 78 | 4 | promotion | promotion, | Typographical error |
| 79 | 13 | constitution bylaws | Constitution and Bylaws | Transcription error |
| 82 | 17 | event | bent | Transcription error |
| 85 | 21 | 2005 | 2015 | Clarify the record |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| Page | Line | Original Text | Correction | Reason |
|------|------|---------------|------------|--------|
| 89 | 10 | to | through | Transcription error |
| 93 | 12 | broadcast network on NFL Network and then on | broadcast network, on NFL Network, and then on | Typographical error |
| 93 | 18 | they're | there are | Transcription error |
| 97 | 22 | abilities | ability | Transcription error |
| 97 | 24 | will | it'll | Transcription error |
| 97 | 25 | subscription minimum | subscription, at minimum | Transcription error |
| 98 | 22 | consumer | consumers | Transcription error |
| 98 | 24 | football that they want to see it | football, that they want to see it | Typographical error |
| 100 | 19 | Spectrum | spectrum | Typographical error |
| 101 | 3 | buy | by | Typographical error |
| 102 | 11 | double-double header | double double-header | Typographical error |
| 103 | 16 | tend | tends | Transcription error |
| 103 | 17 | double-double header | double double-header | Typographical error |
| 104 | 12 | they | the | Transcription error |
| 104 | 25 | is | has | Transcription error |
| 105 | 25 | starts a | starts with a | Transcription error |
| 123 | 21 | I do not | I do | Transcription error |
| 125 | 13 | if | of | Transcription error |
| 125 | 14 | it's | its | Typographical error |

| Page | Line | Original Text | Correction | Reason |
|------|------|---------------|------------|--------|
| 135 | 1 | Exclusivity | exclusivity | Typographical error |
| 143 | 25 | carrier over the year | carried over the air | Transcription error |
| 144 | 9 | that the whatever | whatever | Transcription error |
| 165 | 1 | detention | attention | Transcription error |
| 186 | 4 | change | chase | Transcription error |
| 186 | 10 | multiple.  It's more | multiples more | Transcription error |
| 189 | 17 | 2023 | 2033 | Transcription error |
| 199 | 7 | catches | that's just | Transcription error |
| 206 | 21 | certain | concern | Transcription error |
| 224 | 9 | 180 | 180 million | Transcription error |
| 247 | 10 | are | aren't | Transcription error |
| 262 | 4 | that | I've | Transcription error |
| 269 | 17 | complimentary | complementary | Typographical error |
| 270 | 2 | of viewer | fewer | Transcription error |

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 8/24/22                    By: _____
                                        Brian Rolapp

1

## CERTIFICATE OF SERVICE

I, Jeremy S. Barber, attorney at Wilkinson Stekloff LLP, hereby certify that, on September 6, 2022, I caused the foregoing Errata Sheet to the Deposition Transcript of Brian Rolapp to be served via email delivery on the following counsel:

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

SCOTT MARTIN
smartin@hausfeld.com
IRVING SCHER
ischer@hausfeld.com
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

HOWARD LANGER
hlanger@langergrogan.com
EDWARD DIVER
ndiver@langergrogan.com
PETER LECKMAN
pleckman@langergrogan.com
**LANGER GROGAN AND DIVER PC**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
TYLER FINN
tfinn@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

5

1  IAN M. GORE
   igore@susmangodfrey.com
2  **SUSMAN GODFREY LLP**
   1201 Third Avenue, Suite 3800
3  Seattle, WA 98101
   Tel: (206) 505-3841/Fax: (206) 516-3883
4
   MICHAEL D. HAUSFELD
5  mhausfeld@hausfeld.com
   Farhad Mirzadeh
6  fmirzadeh@hausfeld.com
   **HAUSFELD LLP**
7  1700 K. Street NW, Suite 650
   Washington, DC 20006
8  Tel: (202) 540-7200/Fax: (202) 540-7201

9  MICHAEL P. LEHMANN
   mlehmann@hausfeld.com
10 BONNY E. SWEENY
   bsweeney@hausfeld.com
11 CHRISTOPHER L. LEBSOCK
   clebsock@hausfeld.com
12 **HAUSFELD LLP**
   600 Montgomery St., Suite 3200
13 San Francisco, CA 94111
   Tel: (415) 633-1908/Fax: (415) 358-4980
14
15 *Co-Lead Plaintiffs' Counsel*

16 Executed on September 6, 2022.
17
18                              By: */s/ Jeremy S. Barber*
19                                  Jeremy S. Barber
20
21
22
23
24
25
26
27
28

6