# EXHIBIT 26

## To the Declaration of Rakesh N. Kilaru

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | | Date | February 7, 2023 |
|---|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy Hernandez | | Not Reported |
|---|---|---|
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

| Proceedings (In Chambers): | **Order DENYING all motions to exclude, GRANTING Plaintiffs' motion for class certification, and DENYING Defendants' motion for sanctions.** |
|---|---|

Before the Court are several motions. Plaintiffs, a putative class of DirecTV NFL Sunday Ticket subscribers, filed a motion for class certification. *See* Dkt. # 633 ("*Cert. Mot.*"). NFL Defendants opposed, *see* Dkt. # 707 ("*Cert. Opp.*"), and Plaintiffs replied, *see* Dkt. # 774 ("*Cert. Reply*"). In connection with the motion for class certification, Defendants filed three motions to exclude Plaintiffs' experts. *See* Dkts. # 701, 703, 705. Plaintiffs opposed each motion, *see* Dkts. # 772, 778, 779, and Defendants replied, *see* Dkts. # 822, 825, 829. Plaintiffs also filed two motions to exclude Defendants' experts. *See* Dkts. # 765, 773. Defendants opposed each motion, *see* Dkts. # 824, 828, and Plaintiffs replied, *see* Dkts. # 856, 858. Finally, Defendants filed a motion for sanctions, *see* Dkt. # 853, Plaintiffs opposed, *see* Dkt. # 869, and Defendants replied, *see* Dkt. # 872.

After considering the parties' papers and listening to the arguments made during a several-hour hearing held on February 3, 2023, the Court **DENIES** Plaintiffs' motions to exclude Defendants' experts, **DENIES** Defendants' motions to exclude Plaintiffs' experts, **GRANTS** Plaintiffs' motion for class certification under Rules 23(b)(3) and (b)(2), and **DENIES** Defendants' motion for sanctions.

I.    Background

Previously, in *In re National Football League's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136 (9th Cir. 2019) ("*NFL Sunday Ticket*"), the Ninth Circuit provided a comprehensive tour through the history, allegations, and legal structure underlying this case. The Court will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

therefore not revisit that extensive background here, but rather provide a succinct review of the core theory driving this case.

This is an antitrust matter brought by Plaintiffs against Defendants based on alleged interlocking agreements that work together to suppress competition for the sale of professional football game telecasts in violation of Sections 1 and 2 of the Sherman Act. *See NFL Sunday Ticket*, 933 F.3d at 1149; *see also Cert. Mot.* 2–6. Specifically, acting on behalf of the 32 individual NFL teams, through a pooled-rights agreement, the NFL entered into two licensing agreements: (1) an agreement in which CBS and Fox coordinate to create a single telecast for every Sunday afternoon NFL game and are permitted to broadcast only a limited number of games through free, over-the-air television; and (2) an agreement allowing DirecTV to obtain all of the live telecasts produced by CBS and Fox and bundle them into a subscription package called NFL Sunday Ticket. *See NFL Sunday Ticket*, 933 F.3d at 1149. Football fans who are not Sunday Ticket subscribers can view only a limited number of local games each Sunday afternoon, but Sunday Ticket subscribers can view both local and out-of-market games. *See id.*

The rub is that fans who want to watch out-of-market games must choose either Sunday Ticket or nothing—they cannot, for example, purchase out-of-market games individually or by team. *See id.* This is the basis for Plaintiffs' antitrust action: absent the anticompetitive agreements, the telecasts solely available on Sunday Ticket would be available through other means, which would result in a greater number of telecasts of NFL games that would be more accessible to more viewers at lower prices. *See id.*

The Ninth Circuit's opinion in *NFL Sunday Ticket* reversed this Court's decision granting Defendants' motion to dismiss on Plaintiffs' Sherman Act claims, *see id.* at 1143–44, which then led to Plaintiffs filing this motion for class certification on August 18, 2022. *See Cert. Mot.* Plaintiffs seek to certify two proposed classes: a Commercial and a Residential class comprised of DirecTV commercial and residential subscribers that purchased NFL Sunday Ticket from DirecTV, or its subsidiaries, between 2011 and the date of class certification. *See* Dkt. # 628, 2. On behalf of those classes, Plaintiffs seek damages for the overcharges they paid DirecTV for Sunday Ticket, declaratory relief, and an injunction restraining the NFL Defendants from continuing their anti-competitive conduct. *See Cert. Mot.* 1–2, 6.

II.    Discussion

Plaintiffs seek to certify both the Residential and Commercial classes as damages classes under Rule 23(b)(3) and injunctive classes under 23(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

A.      Class Certification Standards

"Rule 23 provides a procedural mechanism for 'a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.'"  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) ("*Olean*") (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)).

To obtain class certification under Rule 23, plaintiffs must make two showings.  "First, the plaintiffs must establish 'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation."  *Id.* (quoting Fed. R. Civ. P. 23(a)).  "Second, the plaintiffs must show that the class fits into one of three categories [under Fed. R. Civ. P. 23(b)]."  *Id.*

Before certifying a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" for class certification have been met.  *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).  "Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfied each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class certification.'"  *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014)) (cleaned up).  "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Id.* at 665.  In meeting that burden, plaintiffs may use "any admissible evidence."  *Id.*

While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," those "merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* at 667 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), and *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (cleaned up).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Id.* (quoting *Amgen*, 568 U.S. at 466).

B.      Expert Objections

Before addressing the merits of the certification motion, a district court must consider evidentiary objections, including challenges to the admissibility of expert testimony under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Olean*, 31 F.4th at 665; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022).

As construed by the Supreme Court in *Daubert*, Rule 702 requires district courts to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Elosu*, 26 F.4th at 1024 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). "To evaluate reliability, the district court 'must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance.'" *Id.* (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)). "These factors are nonexclusive, and 'the trial court has discretion to decide how to test an expert's reliability based on the particular circumstances of the particular case.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044)) (cleaned up); *see also Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 (explaining that the *Daubert* reliability requirement "is flexible").

"Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Elosu*, 26 F.4th at 1024 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)). The district court is "a gatekeeper, not a fact finder." *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)). "Accordingly, 'the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" *Id.* (quoting *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70) (cleaned up). "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* at 1026.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

The Court will first address Plaintiffs' motions to exclude Defendants' experts, Dr. Mark Israel and Dr. Ali Yurukoglu, and then address Defendants' motions to exclude Plaintiffs' experts, Sarah Butler, Dr. Douglas Zona, and Dr. Daniel Rascher.

        *i.*     *Dr. Mark Israel*

Dr. Mark Israel is an economist and Senior Managing Director at Compass Lexecon, an economic consulting firm. *See Expert Report of Mark A. Israel*, Dkt. # 773-1 ("*Israel Report*"), ¶¶ 1–2. He specializes in the economics of industrial organization, which is the study of competition in imperfectly competitive markets, including the study of antitrust and regulatory issues, as well as applied econometrics. *See id.* ¶ 2. Dr. Israel has also taught, published, and submitted expert reports in those areas. *See id.* ¶¶ 2–4.

Defendants have enlisted Dr. Israel as a rebuttal expert to explain, in part, that class certification is not appropriate because of the many individualized determinations that will be required. *See* Dkt. # 824-1, 1:11–26. Specifically, Dr. Israel opines that the models proposed by Plaintiffs for determining antitrust impact and damages on a class-wide basis fail, in part, because they do not account for various factors, such as the individual circumstances of class members. *See id.*

Plaintiffs seek to exclude Dr. Israel's report and opinions because they claim his opinions are so irrelevant, unsupported, and wrong, that they infect his entire analysis. *See* Dkt. # 773, 1:2–13.

The Court, however, finds that Dr. Israel's opinions are sufficiently reliable and relevant to be admissible. Much of what Plaintiffs take issue with are isolated opinions, and Dr. Israel does rely on adequate sources and his economic experience in crafting his report. In the Court's view, Plaintiffs' brief mainly advances an argument that Dr. Israel's credibility and conclusions are questionable, rather than an argument that Dr. Israel is espousing unreliable nonsense opinions. *See Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). The Court thus **DENIES** Plaintiffs' motion to exclude the opinions of Dr. Israel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | | Date | February 7, 2023 |
|---|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | | |

    *ii.*    *Dr. Ali Yurukoglu*

    Plaintiffs are seeking to disqualify Dr. Ali Yurukoglu from this case because of his previous confidential consulting relationship with Plaintiffs' counsel regarding the economic modeling of sports media. *See* Dkt. # 765-1, 1:2–28. Specifically, Plaintiffs note that their co-lead counsel, Langer, Grogan & Diver, P.C., who was also counsel for the plaintiffs in *Laumann v. National Hockey League*, 907 F. Supp. 2d 465 (S.D.N.Y. 2012) (an antitrust class-action case involving NHL, MLB, and DirecTV), retained Dr. Yurukoglu in connection with *Laumann* and disclosed to him confidential information relevant to this case. *See* Dkt. # 765-1, 2–4. That confidential information included attorney thoughts regarding the data to request, the appropriate models to create in support of the plaintiffs' case, the strengths and weaknesses of the defendants' *Daubert* motions, and the strategies for deposing the defendants' experts. *See id.* 11:3–11. And so now, Plaintiffs argue, Defendants and their counsel have inappropriately "transformed Dr. Yurukoglu into a paid informant for work-product protected materials." *Id.* 1:23–24.

    It is well-known that "[f]ederal courts have inherent authority to disqualify expert witnesses to protect the integrity of the adversarial process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Calendar Rsch. LLC v. StubHub, Inc.*, CV 17-04062 SVW SS, 2017 WL 10378337, at *1 (C.D. Cal. Sept. 22, 2017) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Generally, district courts use two tests for expert disqualification: "a bright-line test, which requires disqualification when the expert 'switches sides' in the same dispute, and a multi-factor test requiring disqualification when the expert obtains confidential information relating to the present dispute in the course of a confidential relationship with the party seeking disqualification." *Id.*

    Under the multi-factor test, courts disqualify experts when "(1) the party seeking disqualification disclosed confidential or privileged information to the expert (2) as part of what is reasonably believed was a confidential relationship." *Id.* at *2. But courts should also consider "issues of fundamental fairness, such as potential harm to the parties' litigating positions and policy concerns, including respect for existing privileges and confidentiality agreements." *Calender Rsch. LLC*, 2017 WL 10378337, at *2; *see also Bell N. Rsch., LLC v. ZTE Corp.*, CV 18-1786 CAB (BLM), 2019 WL 1590472, at *3 (S.D. Cal. Apr. 12, 2019). Disqualification "is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Bell N. Rsch., LLC*, 2019 WL 1590472, at *3 (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

Here, the Court does not find that the situation warrants the drastic measure of disqualification. There is no basis to conclude that Dr. Yurukoglu obtained confidential information from Plaintiffs in this case or in any other case. Rather, Dr. Yurukoglu worked with Plaintiffs' counsel several years ago in a different case involving different sports, parties, and circumstances. *See* Dkt. # 828-1, 1:4–8. And while some of counsels' general thoughts or impressions about strategy involving econometric models in antitrust class-action litigation may have been previously disclosed to Dr. Yurukoglu, the Court does not find that to be a sufficient basis for disqualification here. Further, the Court finds that Defendants would now suffer prejudice if Dr. Yurukoglu, who is an expert for Defendants in opposing this class certification motion, is disqualified. The Court thus **DENIES** Plaintiffs' motion to disqualify Dr. Yurukoglu.

      *iii.*    *Sarah Butler*

Sarah Butler is a Managing Director at NERA Economic Consulting, where she is the Chair of the Survey and Sampling Practice and a member of the Intellectual Property, Products Liability, Antitrust, and Labor Practices. *See Declaration of Sarah Butler*, Dkt. # 633-2 ("*Butler Report*"), ¶ 1. She has extensive experience in designing and conducting consumer surveys. *See id.* ¶¶ 1–5.

To support Plaintiffs' class certification motion, Butler designed and implemented a conjoint survey of 975 qualified respondents to understand the viewing habits and preferences of consumers interested in NFL football games. *See* Dkt. # 772, 1–9; *Butler Report*, ¶¶ 8, 110. Specifically, her survey sought to evaluate consumer preferences for different football game viewing packages at various price points, including access to all out-of-market games, access to a single team's games, or access to a single game, and examine the extent to which viewers would switch away from, or subscribe to, DirecTV for access to their preferred football viewing package. *See* Dkt. # 772, 1:14–21. From the survey results, Butler makes two main conclusions: a substantial number of consumers would prefer package options beyond the current Sunday Ticket offering; and consumers who are not current DirecTV subscribers would generally be unwilling to switch to DirecTV to access their preferred NFL content. *See id.* 1–2; *Butler Report*, ¶ 110.

Defendants do not challenge Butler's qualifications, but rather put forth a competing expert report by Dr. Nancy Mathiowetz to raise several objections relating to the relevance and reliability of Butler's survey. *See* Dkt. # 701-1, 1:16–28; *Expert Report of Nancy Mathiowetz*, Dkt. # 701-2. Defendants' most salient objections are that the survey is irrelevant because it did not contain Sunday Ticket as an offered package, flawed because Butler changed aspects of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

survey partway through the survey and provided no estimates of precision around the results, and unreliable because it is plagued with irrational responses, such as consumers saying they would pay more for less. *See* Dkt. # 701-1, 1:16–28.

The Ninth Circuit has "long held that survey evidence should be admitted 'as long as it is conducted according to accepted principles and is relevant.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)) (cleaned up). The court has also "made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Id.* (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (holding that "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility").

After reviewing the expert reports and the parties' arguments, the Court is satisfied that Butler's survey meets both aspects of the test. Her survey is relevant because its results, showing consumer preferences for NFL game-viewing, are used as input for one of the models produced by Plaintiffs' expert, Dr. Douglas Zona, to calculate a reduction in market prices in a world without Defendants' anticompetitive conduct. *See* Dkt. # 772, 12:19–20. The Court is further satisfied that the survey hued to accepted principles in designing and implementing surveys. *See, e.g., id.* 2; *Butler Report*, ¶ 63 (explaining, for example, that she referenced the *Reference Guide on Survey Research* and the *Manual for Complex Litigation* in designing her research and survey). For example, Butler took appropriate preliminary steps, including reviewing data and surveys about NFL viewing habits, conducting a series of preliminary focus groups, and creating a series of pre-test interviews to evaluate the survey instrument and procedures. *See* Dkt. # 772, 2:15–21; *Butler Report*, ¶¶ 16–83.

Butler also claims to have mirrored the Sunday Ticket package with her All Access and All Access Plus viewing packages, *see* Dkt. # 772, 12–14, and adjusted aspects of her survey partway through based on new data produced by Defendants, *see id.* 17:7–25, which she explains is an acceptable practice, *Rebuttal Declaration of Sarah Butler*, Dkt. # 772-4 ("*Butler Rebuttal Report*"), ¶ 54. Further, the Court is not convinced that standard-error calculations are required for this type of survey; Plaintiffs point to the *Reference Guide on Survey Research* that indicates there is no firm demand for such calculations in a survey like Butler's. *See* Dkt. # 772, 20:1–21. Finally, although respondents made irrational choices 16.5% of the time, *see Butler Rebuttal*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

*Report*, ¶¶ 109–10, that irrationality does not so pervade the survey as to morph the issue from one of weight to one of admissibility.

In short, the Court finds that Defendants' arguments most appropriately go to the persuasiveness of the survey, not its admissibility. The Court thus **DENIES** Defendants' motion to exclude the opinions of Sarah Butler.

> iv. *Dr. Douglas Zona*

Dr. Douglas Zona is an applied economist specializing in the application of economics and econometrics to issues that arise in the context of litigation. *See Expert Report of Douglas Zona*, Dkt. # 633-3 ("*Zona Report*"), ¶ 6. He has published articles in which he has applied economic theory and statistical econometric tools in the areas of antitrust economics and industrial organization and has testified in court regarding antitrust issues. *See id.* ¶¶ 6–7.

To support the class certification motion, Dr. Zona has produced a report detailing his econometric models for showing that all class members were overcharged for Sunday Ticket. *See* Dkt. # 779, 1–2; *see generally Zona Report*. His two main models are: the Transaction and Viewership Model and the Conjoint Model. *See* Dkt. # 779, 4–6. The Transaction and Viewership Model measures the amount that Sunday Ticket's prices to class members would fall after the entry of additional providers of out-of-market NFL football game telecasts. *See id.* 8:24–26. Using data of Sunday Ticket subscribers, Dr. Zona models consumer preferences for various alternative packages of NFL games, including: the games available on free, sponsored broadcast television; the Sunday Ticket package as it currently exists; and three simulated single-team packages comprising all games played by the Dallas Cowboys, Pittsburgh Steelers, and New England Patriots. *See id.* 9:1–5; *Zona Report*, ¶¶ 70–71. He then uses his modeling of those preferences to estimate prices that would be charged under various competitive scenarios. *See* Dkt. # 779, 5–6; *Zona Report*, ¶¶ 70–71. His model shows significant price discounts of 44.6% to 53.4%. *See* Dkt. # 779, 6:7–12; *Zona Report*, ¶¶ 70–71. For the Conjoint Model, Dr. Zona uses Butler's survey data to evaluate and estimate consumer demand for Sunday Ticket and simulate prices of out-of-market packages that would likely exist in a world without Defendants' anticompetitive restraints. *See* Dkt. # 779, 5–7; *Zona Report*, ¶¶ 83–124. His model shows a price reduction of 18.9%. *See Zona Report*, ¶ 122.

Defendants do not challenge Dr. Zona's credentials; rather, using the opinions of their own expert, Dr. Ali Yurukoglu, *see Expert Report of Ali Yurukoglu*, Dkt. # 703-2 ("*Yurukoglu*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

*Report*"), Defendants raise myriad objections to Dr. Zona's model. Four arguments, however, appear to be the main attacks on the reliability of Dr. Zona's models.

First, Defendants argue that Dr. Zona's Transaction and Viewership model produces nonsensical results. Specifically, Defendants claim that with the single-team simulations, Dr. Zona's model predicts that consumers want to pay more for less. *See* Dkt. # 703-1, 1:21–26. For example, the model concludes that consumers in Dallas would prefer to pay for a package consisting of only Cowboys games, rather than get all of those games, as well as two others, for free every Sunday. *See id.* 10:12–17. Second, Defendants argue that Dr. Zona's model suffers from "perfect collinearity."[1] *See id.* 2:3–8. In the simplest form, Dr. Yurukoglu argues that in Dr. Zona's model, prices are perfectly correlated with the year fixed effect variable itself, meaning that knowing the year for a data point means that you automatically also know the price, and vice versa. *See id.* 13:5–13. Third, Defendants attack both of Dr. Zona's models as being supplied with cherry-picked marginal cost data.[2] *See id.* 18–22. And fourth, Defendants argue that the Conjoint Model is unreliable because it uses Butler's data, which is also unsound. *See id.* 22–25.

After reviewing the reports and the parties' arguments, the Court rejects Defendants' arguments and finds that Dr. Zona's model and opinions are sufficiently reliable to be considered. Most significantly, the Court finds Dr. Zona has explained-away Defendants' main attacks. For example, in his rebuttal report, Dr. Zona explains that the illogical results regarding the single-team simulations were the result of a minor coding error that has since been corrected. *See* Dkt. # 779, 9:12–22; *Expert Reply Report of Douglas* Zona, Dkt. # 779-2 ("*Zona Rebuttal Report*"), ¶¶ 12–16. Dr. Zona also explains that Defendants' concerns about "perfect collinearity" are based on a fundamental misunderstanding of the default features of the computer-software used by Dr. Zona. *See* Dkt. # 779, 11:19–25; *Zona Rebuttal Report*, ¶¶ 38–43. Plaintiffs have adequately detailed that Dr. Zona's conservative approach to marginal cost, while possibly unpersuasive on the merits, is grounded and reliable. *See* Dkt. # 779, 16–23.

---

[1] As Defendants explain, "perfect collinearity" is a critique of regression analysis and defines a defective situation where two of the explanatory variables always move in the same proportion to each other and one cannot increase without the other also increasing. *See* Dkt. # 703-1, 12:8–13.

[2] As Defendants and Dr. Yurukoglu explain, "marginal cost" is the price of supplying an additional unit of a product. *See* Dkt. # 703-1, 18:8; *Yurukoglu Report*, ¶ 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

And finally, because the Court admits Butler's report and data, there is no basis for excluding the Conjoint Model due to its reliance on Butler's data.

The arguments raised by Defendants are best characterized as arguments going to weight, not admissibility. Defendants may have valid arguments that Dr. Zona's conclusions are weak or wrong, but that is not the task of a *Daubert* motion. The Court thus **DENIES** Defendants' motion to exclude the opinions of Dr. Zona.

v.     <em>Dr. Daniel Rascher</em>

Dr. Daniel Rascher is a graduate Professor teaching courses in sport economics and finance and applied research methods. *See Expert Report of Daniel Rascher*, Dkt. # 633-4 ("*Rascher Report*"), ¶ 1. He also is a partner of OSKR, LLC, an economic consulting firm specializing in applying economic analysis to complex legal issues, and President of SportsEconomics, LLC, an economic, finance, and marketing research consulting firm focused on the sports industry. *Id.* Dr. Rascher has published numerous works in the field of sports economics and finance and has worked on many consulting projects within the field. *Id.* ¶ 2.

To support Plaintiffs' burden of showing that class-wide proof of antitrust impact and damages is available, Dr. Rascher has produced and analyzed three but-for worlds, representing different competitive situations that might result absent Defendants' alleged anticompetitive conduct: the College Football But-For World, the Non-Exclusivity But-For World, and the No-Pooling But-For World. *See* Dkt. # 778, 3–5; *Rascher Report*, ¶¶ 247–86.

The College Football But-For World is a world in which the individual teams are allowed to act freely, without facing any of the challenged restraints. *See id.* 3:10–18; *Rascher Report*, ¶¶ 247–55. Dr. Rascher bases this world off of college football because it offers an example of a competitive world post strike-down of an anticompetitive practice similar to the one alleged here. *See* Dkt. # 778, 3:10–18; *Rascher Report*, ¶¶ 247–55. With this model, Dr. Rascher concludes that NFL games would be available on broadcast television channels or certain sports cable channels that are available on basic cable packages. And so because class members would have gotten all of the content in Sunday Ticket as part of their basic television package, Dr. Rascher estimates damages as the amount paid by each class member for Sunday Ticket. That figure comes out to $6.1 billion. *See, e.g.*, *Rascher Report*, ¶¶ 281–86. The Non-Exclusivity But-For World models a world in which the NFL teams are permitted to pool their telecast rights in the NFL as they currently do, but the NFL is prevented from selling Sunday Ticket exclusively to any distributor, as it does now with DirecTV. This world is similar to how out-of-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

market games are distributed in professional basketball and baseball, and it uses some of the figures produced by Dr. Zona's models to estimate damages. *See* Dkt. # 778, 3:19–26; *Rascher Report*, ¶ 284. And finally, the No-Pooling But-For World offers a world in which the NFL is permitted to sell a package of out-of-market games to a single distributor, but is prevented from limiting the teams from independently competing with the league's bundle. With this world, Dr. Rascher also uses figures produced by Dr. Zona's models to estimate damages. *See* Dkt. # 778, 4:1–7; *Rascher Report*, ¶ 283.

Defendants take issue only with the reliability of Dr. Rascher's models. *See* Dkt. # 705-1, 1–2. With the aid of their own expert, Dr. Mark Israel, *see Israel Report*, Defendants attack each of Dr. Rascher's but-for models as unreliable and inadmissible.

As for the College Football But-For World, Defendants argue that Dr. Rascher makes improper assumptions. For example, Defendants contest Dr. Rascher's use of college football as a "yardstick"[1] to calculate damages because Dr. Rascher is simply speculating that college football is comparable to the NFL, without meaningfully considering differences between the NFL and college football television distribution. *See* Dkt. # 705-1, 11–12. Defendants also claim that Dr. Rascher relies on improper assumptions in constructing the Non-Exclusivity But-For World, including that Sunday Ticket would still consist of CBS and Fox broadcast feeds and that NFL's Sunday Ticket contract terms would not change. *See id.* 16–17. And finally, Defendants argue that improper assumptions pervade the No Pooling But-For World. For example, Defendants claim that Dr. Rascher speculates, without supporting facts, that clubs would make their game broadcasts available to DirecTV for a bundle and that DirecTV would place the bundle on one of its basic tiers. *See id.* 18–19.

Defendants also critique Dr Rascher's damages calculations as not being the product of rigorous analysis. They essentially argue that Dr. Rascher performed basic math for calculating damages and plugging-in certain numbers generated by Dr. Zona without independent verification. *See id.* 20–21. Further, Defendants argue that Dr. Rascher's application of Dr. Zona's reduction factors are similarly flawed because they involve implausible assumptions. Dr. Rascher multiplies every class member's purchases by a uniform percentage reduction, which Defendants claim leads to absurd results where consumers would have gotten Sunday Ticket for a very low price, and does not factor in the diverse circumstances of class members (i.e., a

---

[1] The "yardstick" methodology compares the outcome of interest in the affected market to the same outcome in an unaffected benchmark market. *See Rascher Report*, ¶¶ 234–55; Dkt. # 778, 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

consumer in Chicago and a bar in Nebraska would have their prices reduced by the exact same amount). *See id.* 21. Finally, Defendants argue that Dr. Rascher treats the two classes the same, without acknowledging differences such as pricing strategies and purchasing behavior. *See id.* 22.

After reviewing the reports and the parties' arguments, the Court finds that Dr. Rascher's models and conclusions are sufficiently reliable and admissible. Most importantly to the College Football But-For World, Dr. Rascher uses the "yardstick" methodology, which is an accepted methodology in antitrust cases. *See, e.g.*, *Tawfilis v. Allergan, Inc.*, CV 15-00307 JLS (JCG), 2017 WL 3084275, at *6 (C.D. Cal. June 26, 2017). And he chose to use the college football market as the yardstick, which the Ninth Circuit has recognized as a close analog in this case. *See NFL Sunday Ticket*, 933 F.3d at 1151. Specifically, the court in *NFL Sunday Ticket* discussed how the college-football telecast arrangement that was struck down as anticompetitive in *National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) ("*NCAA*") is like the purported anticompetitive arrangement here, and that post-*NCAA*, college football telecasts increased, while costs decreased. *See NFL Sunday Ticket*, 933 F.3d at 1147, 1151. Dr. Rascher considered this and other important factors about the structural similarities between college and professional football and thus has a valid basis to use college football as a yardstick. *See, e.g.*, Dkt. # 778, 13–19 (noting the various factors considered by Dr. Rascher in using college football as a yardstick). The Court is also convinced by Plaintiffs' briefing and Dr. Rascher's rebuttal report that Defendants' other critiques about unsupported assumptions properly go to weight, not admissibility.

As for the damages calculations, the Court does not find that Dr. Rascher's straightforward calculations to approximate damages renders his models and opinions unreliable and inadmissible. His calculations use reasonable methods and inputs, including Dr. Zona's figures, which is enough here. And finally, the Court is satisfied that Dr. Rascher sufficiently evaluates the residential and commercial classes.

In short, considering the parties' arguments and Dr. Rascher's reports, the Court does not find Dr. Rascher's opinions to be the product of "junk science," *Ellis*, 657 F.3d at 982, and thus **DENIES** Defendants' motion to exclude the opinions of Dr. Rascher.

> *vi.* *Expert Conclusions*

It is also important to step back from the minutiae and view the arguments from a higher level. As the Court sees it, the main battle with these exclusion motions is over whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

models produced by Plaintiffs' experts are products of mere speculation or grounded in accepted methodologies. The reasoning of *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, helps to show why Plaintiffs here have reached the admissibility first down with their experts. 738 F.3d 960.

In *Alaska Rent-A-Car, Inc.*, a nationwide rent-a-car chain sought to prove damages stemming from a breach of an exclusivity agreement by producing expert testimony that "address[ed] a hypothetical world that never existed" and extrapolated market projections based on similarly situated rental companies to estimate lost profits. *Id.* at 968. The defendant moved to exclude the expert's opinion as speculative, but the district court denied the *Daubert* challenge, and the Ninth Circuit affirmed, reasoning that the challenges went to weight. *Id.* at 967, 970. The court explained that the defendant did not challenge the expert's general methodology of comparing the unknown to an analogous known experience; it challenged the comparator used, the use of a national rather than local market as a baseline, and the extrapolation from a local market to a state market—all of which, the court said, "go to the weight of the testimony and its credibility, not its admissibility." *Id.* at 970.

Plaintiffs here have produced expert opinions and hypothetical models from Dr. Zona and Dr. Rascher as their main vehicles for showing antitrust impact and damages. And like in *Alaska Rent-A-Car, Inc.*, Defendants' arguments against Dr. Zona and Dr. Rascher—that this-or-that figure and assumption should not have been used—go to weight. Defendants, of course, may "g[ive] the jury good arguments for rejecting the testimony," but this Court is within its discretion to "all[ow] the jury to listen to [Plaintiffs'] expert as well as [Defendants']." *Id.*; *see also Elosu*, 26 F.4th at 1025 (explaining that experts are not necessarily precluded from making projections based on a reliable methodology).

Considering the parties' arguments specifically and more generally, the Court finds that the opinions and models offered by Dr. Israel, Dr. Yurukoglu, Sarah Butler, Dr. Zona, and Dr. Rascher are admissible for consideration in determining whether class certification is appropriate. All expert challenges are thus **DENIED**.

C.    Rule 23(b)(3)

For a class to be certified under Rule 23(b)(3), plaintiffs must, along with satisfying the requirements of Rule 23(a), satisfy two requirements commonly known as "predominance" and "superiority." Fed. R. Civ. P. 23(b)(3). As the 23(b)(3) requirements are the main points of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | | Date | February 7, 2023 |
|---|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | | |

contention between the parties, the Court will first address those requirements before turning to what is required under 23(a).

>    i.    *Predominance*

The predominance component of Rule 23(b)(3) requires a district court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a): the plaintiffs must prove that there are 'questions of law or fact common to class members' that can be determined in one stroke . . . in order to prove that such common questions predominate over individual ones[.]" *Olean*, 31 F.4th at 664. Thus, commonality and predominance may often merge into one analysis. *See id.*

"A common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* at 663 (quoting *Dukes*, 564 U.S. at 350). "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Id.* "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Plaintiffs "must show that the common question relates to a central issue in the plaintiffs' claim," which requires evaluating the elements of the underlying cause of action. *Id.* at 665. A district court must also "make a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Id.* at 666 (citation omitted) (cleaned up). That assessment may require "weighing conflicting expert testimony and resolving expert disputes" and "resolv[ing] disputes about historical facts." *Id.* at 666–67 (cleaned up).

A district court, however, "is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Id.* at 666–67. The rule, therefore, is that "if 'each member could have relied on the plaintiffs' evidence to establish liability if he or she had brought an individual action,' and the evidence 'could have sustained a reasonable jury finding' on the merits of a common question, . . . then a district court may conclude that the plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

have carried their burden of satisfying the Rule 23(b)(3) requirements as to that common question of law or fact." *Id.* at 667 (quoting *Tyson Foods*, 577 U.S. at 455) (cleaned up).

A district court is also limited in that it cannot "decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions." *Id.* at 668. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting *Tyson Foods*, 577 U.S. at 453). "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Id.* (quoting *Halliburton Co.*, 573 U.S. at 276).

When it comes to damages, plaintiffs must show that they are "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp.*, 569 U.S. at 34). And generally, "[t]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* (citation omitted); *see also Olean*, 39 F.4th at 663 (affirming the principle). "At this stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film, Inc.*, 847 F.3d at 1121; *see also Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 663 (9th Cir. 2022).

Here, in determining predominance, the Court starts with the underlying causes of action. For Plaintiffs to prevail on the merits of their claims they need to show (1) a violation of antitrust law, (2) antitrust injury or impact flowing from the violation, and (3) measurable damages. *See NFL Sunday Ticket*, 933 F.3d at 1150, 158–59; *Olean*, 31 F.4th at 665. Plaintiffs offer various documents and agreements as well as the expert opinions and reports of Sarah Butler, Dr. Zona, and Dr. Rascher to prove that all three requirements are capable of resolution in one stroke. Defendants, however, offer their experts, Dr. Israel and Dr. Yurukoglu, in rebuttal to show that Plaintiffs' proposed models fail due to individualized inquiries.

After considering the parties' briefs, the expert reports, and the parties' arguments at the hearing, the Court finds that Plaintiffs have proven by a preponderance of the evidence that an antitrust violation, antitrust impact, and damages are common questions capable of being established through a common body of evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

        *a.     Antitrust Violation*

       The agreements in the record offer direct, class-wide evidence of an antitrust violation. *See, e.g.*, *Cert. Mot.* 13 (citing agreements in the record). Indeed, in this case, the Ninth Circuit has already held that Plaintiffs' allegations regarding the interlocking agreements plausibly allege an antitrust violation. *See NFL Sunday Ticket*, 933 F.3d at 1150–52, 1158–59. The agreements will thus be sufficient to determine on a class-wide basis whether there exists an antitrust violation. That is, if the contracts match-up to the allegations, then there will be a violation applicable to the whole class. *See In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (noting that antitrust violations are naturally subject to common proof because "[t]he violation turns on *defendants'* conduct and intent along with the effect on the market, *not* on individual class members").

        *b.     Antitrust Impact and Damages*

       As an initial matter, while the Court is aware of the distinction between a *Daubert* analysis and a 23(b)(3) predominance analysis, *see Ellis*, 657 F.3d at 982–84, the Court's analysis here takes from and is informed by the review of the expert reports and the parties' extensive arguments raised through their *Daubert* challenges, which significantly overlap with their arguments on predominance. With that, the Court finds after its review that the models offered by Plaintiffs' experts are capable of establishing antitrust impact and damages on a class wide basis.

       Dr. Zona has produced two admissible models that are designed to show class wide impact and damages stemming from Defendants' restraints on NFL football telecasts. The Transaction and Viewership Model measures the amount that Sunday Ticket's prices to class members would have fallen after the entry of additional providers of out-of-market telecasts. Specifically, Dr. Zona uses data of Sunday Ticket subscribers to model consumer preferences for various alternative packages of NFL games. He then uses his modeling of those preferences to estimate prices that would be charged under various competitive scenarios. His model shows significant price discounts of 44.6% to 53.4%. *See, e.g.*, *Zona Report*, ¶¶ 70–71; *Cert. Mot.* 16–21. The Conjoint Model, using Butler's survey data, also estimates prices in a competitive environment and shows a price reduction of 18.9%. *See Zona Report* ¶¶ 83–124.

       The Court is satisfied that the models, especially the Transaction and Viewership Model, offers sufficient class-wide proof of antitrust impact. It can be relied on by each member of the class, and as previously discussed, because the Court does not accept Defendants' challenges to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

the models, they are thus capable of sustaining a reasonable jury finding on the merits. *See Olean*, 31 F.4th at 667.

Similarly, Dr. Rascher offers three admissible but-for worlds to show that impact and damages are capable of being proven on a class-wide basis: the College Football But-For World, the Non-Exclusivity But-For World, and the No-Pooling But-For World. *See Rascher Report*, ¶¶ 247–86.

What the Court finds most significant to the inquiry here is Dr. Rascher's College Football But-For World and his use of the college football market as a "yardstick." That simulated world shows that the twelve or so Sunday afternoon out-of-market NFL games currently available only through Sunday Ticket would likely be carried on the same available traditional television networks and basic cable networks that carry college football. *See Cert. Mot.* 19:8–27. And because there are relatively few NFL games compared to the number of college football games shown on Saturdays, all NFL telecasts would be expected to be available for consumers on those networks. *See id.* As a result, Dr. Rascher calculates the supracompetitive overcharge to be, with market-wide adjustments, the amount each class member paid for Sunday Ticket. *See id.*

The Court finds Dr. Rascher's model adequate to produce class-wide proof of impact and damages, especially considering that the Ninth Circuit has already recognized college football as a close analog to this case. *See NFL Sunday Ticket*, 933 F.3d at 1151. Specifically, in *NFL Sunday Ticket*, the court discussed how the college football telecast arrangement that the Supreme Court struck down as anticompetitive in *National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) ("*NCAA*") is like the purported anticompetitive arrangement here, and that post-*NCAA*, college football telecasts increased, while costs decreased. *Id.* at 1147, 1151. That fact that Dr. Rascher uses a comparator that shows market-wide price reductions after similar anticompetitive conduct was ended buttresses the ability of Dr. Rascher's model to provide class-wide proof here.

Defendants' main rebuttal argument is that impact and damages cannot be proven through class-wide evidence because "numerous class members would actually be worse off in each of Plaintiffs' but-for worlds, and it is impossible to identify them without having individual mini-trials." *Cert. Opp.* 14:22–28, 15:1–2. In doing so, Defendants mainly criticize the but-for worlds put forth by Dr. Rascher. *See id.* 15–20. The main thrust of Defendants' position is that the impact and damages inquiries become individualized when considering how some class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

members would face different effects, including harm, by the but-for worlds based on each member's unique preferences. *See id.*

But those critiques do not undermine predominance on these facts because Plaintiffs' admissible models are designed to apply class-wide and account for damages stemming from Defendants' anticompetitive conduct. Even if there were some individual differences with how class members were impacted (i.e., some class members negotiating prices or receiving promotional discounts), the Court is satisfied that the models show that all class members suffered some injury. That is, the baseline price to class members would have been lower absent Defendants' market-wide anticompetitive conduct. Indeed, as the Ninth Circuit has said, "[h]ere, as in *NCAA*, 'an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.'" *NFL Sunday* Ticket, 933 F.3d at 1156 (quoting *Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999)). Further, while Defendants take issue with the possibility of individualized damages, Plaintiffs have offered class-wide methods for calculating damages in the form of applying a uniform reduction to the Sunday Ticket prices that class members paid. *See Cert. Reply* 11:22–25. In *Olean*, the Ninth Circuit approved of a similar damages method: it explained that the plaintiffs' expert provided a "straightforward process of applying the class-wide overcharge to the Tuna Purchasers' net sales records," which "does not give rise to a concern about individualized mini-trials to determine each class member's damage award," and "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *See Olean*, 31 F.4th at 682 n.31 (quoting *Halliburton*, 573 U.S. at 276).

To be sure, Defendants can argue to a jury that Plaintiffs' models are unpersuasive and do not *in fact* prove class-wide antitrust impact and damages; but that argument elides the inquiry here—whether Plaintiffs' methods and models are *capable* of proving impact and damages on a class-wide basis. *See id.* at 667–68. Here, Plaintiffs' models can do so.

The Court therefore finds that an antitrust violation, antitrust impact, and damages—the critical elements of Plaintiffs' claims—are common questions capable of class-wide proof. And any remaining individual questions are not so significant and pervasive as to predominate over those common questions. The Court thus finds that Plaintiffs have sufficiently proven predominance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | | Date | February 7, 2023 |
|----------|------------------------|---|------|------------------|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | | |

      *ii.*    *Superiority*

      Under the superiority requirement of Rule 23(b)(3), a plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As part of the analysis, Courts are directed to weigh several non-exclusive factors outlined in Rule 23(b)(3): class members' interests in individual actions, the extent and nature of any litigation concerning the controversy, the desirability of concentrating the litigation of the claims in the particular forum, and manageability difficulties. *See id.* (A)–(D); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

      Most important to the superiority inquiry here is the factor considering class members' interests in individual actions. As Plaintiffs point out, class treatment is the only realistic way for class members to obtain relief from Defendants' purported anticompetitive conduct. Simply put, the costs and complexities of prosecuting individual antitrust claims would likely dwarf the damages that residential or commercial class members could individually receive, making it unlikely that Plaintiffs would pursue individual claims. Where, as here, individual damages "are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony," the case "vividly points to the need for class treatment." *Just Film, Inc.*, 847 F.3d at 1123.

      The other factors do not require a contrary finding. This case is already a consolidated multidistrict litigation proceeding, and so there is no competing litigation. And because the Court does not find that individual questions predominate, concerns about manageability difficulties are mitigated. The Court therefore finds that Plaintiffs have proven superiority.

      D.    <u>Rule 23(b)(2)</u>

      The Court will next address the requirements for certifying an injunctive 23(b)(2) class before finally addressing the 23(a) requirements.

      Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970–71 (9th Cir. 2019) (quoting *Dukes*, 564 U.S. at 360). "In other words, Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction." *Id.* (quoting *Dukes*, 564 U.S. at 360).

Class certification under Rule 23(b)(2) is appropriate for both classes, so long as the 23(a) requirements are also satisfied. All class members seek relief from the alleged supracompetitive effects of Defendants' conduct, and so an injunction restraining that conduct will necessarily benefit all class members. As Plaintiffs contend, the challenged conduct restricts the availability of out-of-market games, making those games available only through Sunday Ticket at an inflated price, and absent Defendants' anticompetitive restraints, class members would have more market choices at lower prices. Certifying the classes as injunctive classes under (b)(2) is thus warranted. *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding that the requirements of a (b)(2) class "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

Defendants' arguments in rebuttal are myopic and unconvincing. Defendants claim that "any injunctive relief will be moot by the time this action is resolved, as the NFL's exclusive agreement with DirecTV expires after the current 2022 season" and the remedy is not "indivisible" because "many members of the class are no longer subscribed to Sunday Ticket, including all but one of the named Plaintiffs." *Cert. Opp.* 25:1–18. But the challenged conduct driving this antitrust case remains ongoing, without a commitment from Defendants that it will end. Indeed, at the hearing, the parties acknowledged that, at the end of the 2022–2023 football season, Sunday Ticket will be moving to Google-owned YouTube, behind a subscription paywall. An injunction would thus benefit the entire class because it would alleviate the anticompetitive harm across the board for the football-viewing class members—that is, an injunction would put an end to the alleged restraints on NFL football telecasts that result in inflated market prices.

The Court finds persuasive the reasoning in *Laumann v. National Hockey League*, 105 F. Supp. 3d 384 (S.D.N.Y. 2015) on this issue. There, the defendants argued that because some class members no longer subscribed to the out-of-market game packages for professional baseball and hockey, they had no legal interest in the prospective relief sought by the named plaintiffs and a 23(b)(2) class was improper. *Id.* at 399, 408–09. But the court rejected that argument, reasoning in part that "all class members—including previous subscribers to the [out-of-market packages]—are consumers in the market for baseball and hockey broadcasting," and thus "suffer an ongoing injury in connection with the complained-of restraints—a dearth of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | | Date | February 7, 2023 |
|---|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | | |

choice in the market for baseball and hockey broadcasting." *Id.* at 408–12. Taking *Laumann*'s lead, the Court finds that because Defendants' conduct is likely to continue, albeit with a new home for Sunday Ticket, the entire class is likely to continue to be subjected to Defendants' anticompetitive restraints on telecasts. An injunctive class is therefore appropriate so long as the requirements of Rule 23(a) are satisfied.

    E.    <u>Rule 23(a)</u>

Informed in part by the analysis under 23(b), the 23(a) requirements are readily satisfied.

        *i.*    *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this rule, "[t]here is no specific number of class members required," but "proposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large." *Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022).

Citing Dr. Zona's report, Plaintiffs contend, and Defendants do not dispute, that the residential class includes at least 2,400,000 members, and the proposed commercial class includes at least 48,000 members. *See Cert. Mot.* 8; *Zona Report*, ¶ 28. Dr. Zona arrived at those numbers after sifting through transaction data produced by DirecTV. *See Zona Report*, ¶¶ 22–28, Exhs. 1, 2. The Court is thus satisfied that Plaintiffs have proven numerosity.

        *ii.*    *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Dukes*, 564 U.S. at 359) (cleaned up).

For the reasons already stated in the 23(b)(3) analysis, the Court finds that Plaintiffs have proven commonality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

> ### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative 'aligns with the interests of the class.'" *Just Film*, 847 F.3d at 1116 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The requirement is permissive, such that 'representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Torres*, 835 F.3d at 1141). "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiffs and the other class members claim they uniformly purchased NFL Sunday Ticket packages at supracompetitive prices because of Defendants' restrictions on telecasts. *See Cert. Mot.* 8–9. Defendants do not claim they have unique defenses against the named Plaintiffs, and the fact that some class members may have purchased Sunday Ticket packages at varying price points or under different factual conditions is not sufficient here to undermine typicality. *See Just Film*, 847 F.3d at 1117 (holding that the district court did not err in finding typicality where defendants "allegedly committed the *same* overall course of misconduct against other members of the class"). The Court thus finds that Plaintiffs have proven typicality.

> ### iv. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Adequacy also factors in the competency of class counsel. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 607 n.14 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

Again, the named Plaintiffs share a common interest in proving that Defendants' conduct resulted in supracompetitive prices for Sunday Ticket. The Court does not find persuasive Defendants' argument that intra- and inter-class conflicts defeats adequacy. *See Cert. Opp.* 23. The Court does not accept, for example, Defendants' argument that adequacy cannot be found where some class members would benefit from Plaintiffs' but-for worlds, but others would be harmed, and residential class members might want easier access to out-of-market games, while commercial members might not. *See id.* Plaintiffs for both the residential and commercial classes have the same core interest as that of other class members—to seek relief from Defendants' alleged anti-competitive conduct. *See Laumann*, 105 F. Supp. 3d at 400–08 (rejecting the argument that certification is improper where some class members would prefer an antitrust injury to persist, because the argument, in part, "confuses the question of whether a common injury unites the class with the distinct question of whether all class members agree about how best to *respond* to the injury").

Defendants also make an argument that appears to be somewhat tangential to adequacy. They argue that Plaintiffs are seeking a "[g]errymandered [c]lass," and that any benefit to the cherry-picked class could cause harm to a large majority of other consumers in the market. *See Cert. Opp.* 10–11. As the Court sees it, Defendants are essentially arguing that the current model for watching NFL football games should not be destroyed because most of football nation is generally happy with what they've got—a few free Sunday games in exchange for Defendants' ability to place the remaining games behind an exclusive paywall. *See Cert. Opp.* 1, 10–12. But whatever weight Defendants' slippery slope argument holds, it holds little to no weight here, where the inquiry is simply whether a claims-aggregating device is appropriate for adjudicating at once the claims of proposed class members. *See Olean*, 31 F.4th at 663. The Court thus does not find Defendants' argument persuasive, especially considering that they are "unaware of any authority" supporting it. *Cert. Opp.* 12:24–28.

Defendants make no other challenges to adequacy. They do not argue that counsel has a conflict of interest or that either Plaintiffs or their counsel will not vigorously prosecute the action. And for good reason. Plaintiffs' counsel is experienced in the areas of antitrust and class action litigation, and both Plaintiffs and their counsel have litigated this case competently and thoroughly, as evidenced by their previous win on appeal. *See* Dkt. # 628 (declarations detailing the qualifications of counsel); *NFL Sunday Ticket*, 933 F.3d at 1143–59. The Court thus finds that Plaintiffs have proven adequacy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|----------|----------------------|------|------------------|

| Title | In re National Football League's Sunday Ticket Antitrust Litigation |
|-------|---------------------------------------------------------------------|

F.     Class Certification Conclusion

The Court thus **GRANTS** Plaintiffs' motion for class certification under Rules 23(b)(3) and (b)(2) for both the Residential and Commercial classes as follows:

**Commercial Class.**  All DirecTV commercial subscribers that purchased the NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time between June 17, 2011 and the date of the Court's class certification order ("Commercial Class").  The Commercial Class excludes the Defendants and any of their current or former parents, subsidiaries, or affiliates.  The Commercial Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

**Residential Class.**  All DirecTV residential subscribers that purchased the NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time between June 17, 2011 and the date of the Court's class certification Order ("Residential Class").  The Residential Class excludes the Defendants and any of their current or former parents, subsidiaries, or affiliates.  The Residential Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.[1]

Plaintiffs are appointed as class representatives for the proposed classes.

    i.     *Appointment of Class Counsel*

Under Rule 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute.  *See* Fed. R. Civ. P. 23(g).  The class counsel must fairly and adequately represent the interests of the class, and the court must review the

---

[1] As Plaintiffs qualify, the proposed classes include only individuals and commercial entities that paid for NFL Sunday Ticket.  Those who received the product for free as part of DirecTV's program to entice new customers, for example, are not included.  *See Cert. Mot.* 16 n.24.  Plaintiffs also qualify that "subscribers" refers to DirecTV's satellite subscribers.  Purchasers of NFLST.tv streaming service are not DirecTV satellite subscribers and are therefore not part of either class.  *See id.* 1 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|----------|------------------------|------|------------------|

| Title | In re National Football League's Sunday Ticket Antitrust Litigation |
|-------|---------------------------------------------------------------------|

counsel's work in investigating claims, experience in handling class action litigation, and the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(B–C).

For reasons already stated in the Rule 23(a)(4) adequacy analysis, the Court finds that Plaintiffs' counsel is well-suited to act as class counsel. They have vast experience and have litigated this case with vigor and competence. The Court thus appoints Plaintiffs' co-lead counsel as class counsel.

G.     Defendants' Motion for Sanctions

Defendants bring a motion for sanctions, arguing that Plaintiffs violated the Stipulated Expert Protocol Order, Dkt. # 289, by failing to produce a working code and the full set of Dr. Zona's backup materials. *See* Dkt. # 853-1, 7. Defendants ask the Court to award Defendants $537,300 to compensate them for the expenses related to Plaintiffs' violation. *See id.* 10. Plaintiffs argue they did not violate the order and that any issues regarding the complicated software code were the product of inadvertent mistakes that they attempted, in good faith, to resolve. *See* Dkt. # 869-1, 10.

Federal Rules of Civil Procedure 16(f) and 37(b)(2) provide for sanctions against an opposing party that fails to obey a pretrial or discovery order. *See* Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P. 37(b)(2)(A). A district court is authorized to order the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the noncompliance, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2); Fed. R. Civ. P. 37(b)(2)(C). And "[w]hile a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

After reviewing the parties' papers, including email exchanges between counsel, the Court finds that sanctions are not warranted. Plaintiffs initially produced to Defendants what they thought was a working software code. *See* Dkt. # 862-1, 1. And after Defendants told Plaintiffs about issues with running the code, Plaintiffs worked with Defendants to promptly fix the issues. *See, e.g.*, *Declaration of Ian M. Gore in Opposition to the NFL Defendants' Motion for Sanctions*, Dkt. # 869-2, ¶¶ 18–28. Given the highly complex nature of the code at issue, the relatively small number of errors in thousands-of-lines of code, and Plaintiffs' good faith efforts, sanctions are not appropriate here. The Court thus **DENIES** Defendants' motion for sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-2668 PSG (JEMx) | Date | February 7, 2023 |
|---|---|---|---|
| Title | In re National Football League's Sunday Ticket Antitrust Litigation | | |

III.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motions to exclude Defendants' experts, **DENIES** Defendants' motions to exclude Plaintiffs' experts, **GRANTS** Plaintiffs' motion for class certification under Rules 23(b)(3) and (b)(2), and **DENIES** Defendants' motion for sanctions.

    **IT IS SO ORDERED.**