# EXHIBIT 15

# To the Declaration of Rakesh N. Kilaru

## CORRECTED REDACTED VERSION OF DOCUMENT FILED PUBLICLY

1

1                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
2

3          Civil Action No. 2:15-ml-02668-PSG(JEMx)

4

5

6    IN RE: NATIONAL FOOTBALL
     LEAGUE'S "SUNDAY TICKET"
7    ANTITRUST LITIGATION

8

9    _____/

10

11

12                      DEPOSITION OF
                       BRIAN ROLAPP
13

14

15                 Wednesday, May 18, 2022
                  9:03 a.m. - 3:22 p.m.
16

17                    Remote Location
                 Via Zoom Videoconference
18                  All Parties Remote

19

20

21

22

23

24            Stenographically Reported By:
                  Erica Field, FPR
25

2

```
 1    APPEARANCES:

 2


 3    On behalf of the Plaintiff:
           LANGER GROGAN & DIVER
 4         1717 Arch Street
           Suite 4130
 5         Philadelphia, Pennsylvania 19103
           (215) 320-5660
 6         BY: PETER LECKMAN, ESQUIRE
               KEVIN TRAINER, ESQUIRE
 7         pleckman@langergrogan.com
           ktrainer@langergrogan.com
 8


 9    On behalf of the Defendant:
           WILKINSON STEKLOFF
10         2001 M Street NW
           10th Floor
11         Washington, DC 20036
           (202) 847-4000
12         BY: RAKESH KILARU, ESQUIRE
           rkilaru@wilkinsonstekloff.com
13


14


15    ALSO PRESENT:
           Kim Ferrari, Paralegal, Langer Grogan
16         Derek Ludwin, Covington & Burling
           Delores DiBella, NFL
17


18    VIDEOGRAPHER:
           Bryan Beltran
19


20


21


22


23


24


25
```

24

1    document?

2         A.    I am, yes.

3         Q.    Do you know how this case study

4    came to be?

5         A.    If I remember, the professor at

6    Harvard, Anita Elberse, approached us about

7    wanting to write a case on our mobile digital

8    strategy at the time.

9         Q.    And were you interviewed?

10        A.    Yes.

11        Q.    And do you remember who you were

12   interviewed by?

13        A.    I remember Anita.  That's all I

14   remember.

15        Q.    Got it.

16             And were any drafts exchanged

17   before a final version was agreed on?

18        A.    I'm sure there were, yeah.

19        Q.    Okay.  Have you ever contacted the

20   Harvard Business School and asked them to

21   correct anything in this case study?

22        A.    Not that I remember.

23        Q.    Okay.  So, as you described, this

24   case study discusses the NFL's 2009 decision

25   on how to distribute their content in the

NFL Sunday Ticket Antitrust Litigation

Brian Rolapp
May 18, 2022

25

1    mobile space; is that fair?

2        A.    I believe so, yes.

3        Q.    If you could turn to Page 1, the

4    third paragraph begins with:  Because

5    television rights were at the heart of the

6    NFL's business model.  The NFL's media

7    partners, which included the broadcasters,

8    CBS, Fox, and NBC, cable channel ESPN, and

9    satellite provider DirecTV collectively paid

10   the NFL over $4 billion annually.  Rolapp

11   knew he would have to consider the impact of

12   a wireless deal on the NFL's overall ability

13   the monetize its content.

14            Do you see that?

15       A.    I do.

26



25

99

████████████████

█████████████████████████████████

████████████████████████████████████

███████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

███████████████████

```
 9        Q.    Who will carry the over-the-air
10   option?
11        A.    A local station to be determined.
12   That's on a market-by-market basis.
13        Q.    So it won't be Fox or CBS?
14        A.    No.  It's usually -- it could be
15   an ABC affiliate.  It could be a CBS
16   affiliate.  Just really depends on the
17   market.
18        Q.    Most NFL games during the regular
19   season are played on Sunday afternoons,
20   right?
21        A.    Yes.
22        Q.    How many games are played on a
23   given Sunday afternoon during the regular
24   season?
25        A.    I think it varies, but you will
```

100

1    probably have -- I don't know the exact

2    number, but you will probably have 8 to 10 at

3    1:00 and then a handful more at 4:00.  So the

4    math is, you know, if there's not a -- on a

5    typical -- if there's not a Saturday game, if

6    there's just a Monday and a Thursday game,

7    you know, that's those two games there and

8    the remaining games are on Sunday afternoon

9    or Sunday night.

10       Q.    And CBS and Fox, I think you

11   testified earlier, produce those games on

12   Sunday afternoons?

13       A.    Correct.

14       Q.    And what does over the air mean in

15   the context of NFL football telecasts?

16       A.    I think it means whenever a game

17   is broadcast on a broadcast network, CBS,

18   Fox, NBC, that that is available free -- on

19   broadcast Spectrum, it should be free in the

20   market.  So all you need is an antenna to

21   pick that up.

22       Q.    And when you say in-market, what

23   is your understanding of what that refers to?

24       A.    It refers to the -- where that

25   game is telecast, which at a minimum is the

 1   local market of a participating team, and

 2   more often than not, it's broader than that.

 3   It's other markets buy that game.

 4       Q.   So in-market is not necessarily

 5   the same as the playing team's markets?

 6       A.   Not necessarily.  Depending on

 7   where you live and what the situation is.

 8   But at a minimum it is.

 9       Q.   Basically in-market means wherever

10   the games are carried over the air in a

11   particular DMA?

12       A.   Yes, but in all situations it's

13   always carried over-the-air in the home

14   market of the participating clubs in that

15   game.

16       Q.   What does out of market mean?

17       A.   Out of market is everything else.

18   So it's all the other markets that aren't

19   carrying that game on free over-the-air

20   television.

21       Q.   Got it.

22           In any given DMA on any Sunday

23   afternoon -- I think we went over this

24   earlier -- you testified just to get the

25   record straight, that there's typically two

102

1   games played in one of the windows and a

2   single game aired in the other window; is

3   that right?

4        A.    Yeah, there are -- just to be

5   clear, yes, there is a double-header network

6   and a single-header network.  So you will get

7   one game at 1:00, and you will get up to two

8   games at 4:00 in any particular market.  So

9   you will get three games on Sunday afternoon

10  at a minimum.  Sometimes we do more than

11  that.  Sometimes we do a double-double header

12  and you get a fourth game, and then you get

13  your national game obviously throughout the

14  rest of the week.

15       Q.    Got it.

16             You mentioned the double-double

17  headers.  Did that start last season?

18       A.    No.  I think we increased it last

19  season.  So it's been -- I don't know how

20  long it's been.  It's been in existence for

21  some time, and then we actually added more

22  weeks where that happens.  So there's more

23  weeks that each market gets four games, and

24  that would be the norm going forward.  It

25  will be more double headers than previously.

120

1          Q.    It's not available on Fubu TV?

2          A.    No.

3          Q.    So it's fair to say that the only

4     way to watch those telecasts carried on

5     Sunday Ticket is to be a subscriber to

6     DirecTV?

7          A.    Correct.

Case 2:15-ml-02668-PSG-SK   Document 960   Filed 07/31/23   Page 12 of 26   Page ID
#:33220
NFL Sunday Ticket Antitrust Litigation

Brian Rolapp
May 18, 2022

121

1    BY MR. LECKMAN:

11        Q.    Are you familiar with how other

12   professional leagues distribute their

13   out-of-market packages?

14        A.    In broad terms, yes.

15        Q.    Do you know if consumers can

16   subscribe to Major League Baseballs

17   out-of-market package through DirecTV?

18        A.    Yes, they can.

19        Q.    Comcast?

20        A.    I believe so.

21        Q.    Cox?

22        A.    I believe so.  I'm not certain,

23   but I believe so.

24        Q.    Dish?

25        A.    I believe so.

122

1        Q.    Are you aware that consumers can

2    also buy it through Amazon Prime?

3        A.    Yes.

4        Q.    And YouTube TV?

5        A.    Yes.

6        Q.    And you can also buy Major League

7    Baseball's Internet package, MLB.TV, directly

8    from the league, right?

9        A.    That's correct.

10       Q.    And are you aware you can buy a

11   single team set of games through MLB.TV?

12       A.    I was not aware of that, but that

13   doesn't surprise me.

14       Q.    How about the NBA's out-of-market

15   package?  Do you have to be a DirecTV

16   subscriber to get the out-of-market package

17   -- or out-of-market games carried on the

18   NBA's package?

19       A.    I think DirecTV is one of the

20   places you can get it.

21       Q.    But you can also get it from the

22   other sources that we talked about for Major

23   League Baseball?

24       A.    I believe that's the case.

25       Q.    For the NHL, you can buy the



24       Q.    Okay.  Move on from this.

25             Next one I would like to turn your

258

```
1   attention to what was marked as Exhibit 3.

2   This was the interview in The Jockey Club.

3           Do you recall discussing this?

4       A.   I do.

5       Q.   And I just wanted to turn your

6   attention to Page 4 of 9 to a portion that I

7   don't believe was covered before.

8           Do you see the second full

9   paragraph on the page, and it reads:  Finally

10  working collectively for commercial purposes

11  national revenue.

12      A.   Yes.

13      Q.   (Reading:)  The league, 32 teams,

14  have contributed certain rights to the

15  national level, including media and

16  television and sponsorship in order to

17  generate better revenues for everybody.  Most

18  importantly, those are all equally shared.

19  So in our view the goal is to have

20  competitive healthy franchises, every single

21  one.  If a team wins, it will be based on the

22  shrewd allocation of those resources, not

23  because of a lack of them.

24          Do you see that?

25      A.   I do.
```

259

1      Q.    Based on your experience of the

2   league, what role -- what is the relationship

3   between pooled media rights and competitive

4   healthy franchises?

5      A.    I think it's very important, based

6   on my experience, where we have an entire

7   model where collective revenue, equally

8   shared revenue, a collective bargaining

9   agreement that fixes a salary cap essentially

10   creates a system where all teams are equally

11   competitive on the field, and because of

12   that, a team is going to win the Super Bowl,

13   not because of the size of their market or

14   their ability to generate disproportionate

15   economic resources.  It's going to be because

16   they allocated their portion of player costs

17   more effectively than their opponent.

18           That all to me, at the end of the

19   day, results in a highly competitive league,

20   the most competitive league in the world in

21   my opinion, where on any given year each team

22   has almost -- almost, not entirely, but

23   certainly almost equal probability of winning

24   the Super Bowl.

25           And the competitive parity that is

260

1    created is one reason why the sport is so

2    popular as it is and the product is so good

3    and that we've created a national sport, not

4    a local sport, which I would argue many of

5    the other sports are.

6        Q.    We can move on from that exhibit

7    now.

Case 2:15-ml-02668-PSG-SK   Document 960   Filed 07/31/23   Page 18 of 26   Page ID
#:33226
NFL Sunday Ticket Antitrust Litigation
Brian Rolapp
May 18, 2022

261



276

```
 1              CERTIFICATE OF REPORTER

 2

 3   UNITED STATES DISTRICT COURT )

 4

 5

 6       I, ERICA FIELD, Stenographic Reporter,

 7   certify that I was authorized to and did

 8   stenographically report the deposition of

 9   BRIAN ROLAPP, pages 1 through 275; that a

10   review of the transcript was not requested;

11   and that the transcript is a true and

12   complete record of my stenographic notes.

13       I further certify that I am not a

14   relative, employee, attorney, or counsel of

15   any of the parties, nor am I a relative or

16   employee of any of the parties' attorney or

17   counsel connected with the action, nor am I

18   financially interested in the action.

19

20       DATED this 19th day of May, 2022.

21

22   _____

23   Erica Field

24

25
```

1   Beth A. Wilkinson (admitted *pro hac vice*)
    Brian L. Stekloff (admitted *pro hac vice*)
2   Rakesh N. Kilaru (admitted *pro hac vice*)
    Jeremy S. Barber (admitted *pro hac vice*)
3   **WILKINSON STEKLOFF LLP**
    2001 M Street NW, 10th Floor
4   Washington, DC 20036
    Telephone: (202) 847-4000
5   Facsimile: (202) 847-4005
    bwilkinson@wilkinsonstekloff.com
6   bstekloff@wilkinsonstekloff.com
    rkilaru@wilkinsonstekloff.com
7   jbarber@wilkinsonstekloff.com

8   *Counsel for Defendants National Football*
    *League, NFL Enterprises LLC, and the*
9   *Individual NFL Clubs*

10  [Additional Counsel Listed on Signature
    Pages]
11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14
    IN RE: NATIONAL FOOTBALL          ) Case No. 2:15-ml-02668−PSG (JEMx)
15  LEAGUE'S "SUNDAY TICKET"          )
    ANTITRUST LITIGATION              ) **CORRECTIONS TO THE**
16                                    ) **DEPOSITION TRANSCRIPT OF**
    _____       ) **BRIAN ROLAPP**
17                                    )
    THIS DOCUMENT RELATES TO:         )
18  ALL ACTIONS                       ) Judge:  Hon. Philip S. Gutierrez
19                                    )
                                      ) Deposition Date: May 18, 2022
20                                    ) Final Transcript Received: May 22,
                                      ) 2022
21                                    )
22  _____       )

23

24

25

26

27

28

1    Defendants National Football League, NFL Enterprises, LLC, and the NFL

2  member Clubs (the "NFL Defendants"), by and through their attorneys, provide the

3  errata sheet to the deposition testimony of Brian Rolapp, attached hereto as "Exhibit

4  A."

5

6  Dated:   September 6, 2022          /s/ *Beth A. Wilkinson*
                                        Beth A. Wilkinson (admitted *pro hac vice*)
7                                       Brian L. Stekloff (admitted *pro hac vice*)
                                        Rakesh N. Kilaru (admitted *pro hac vice*)
8                                       Jeremy S. Barber (admitted *pro hac vice*)
9                                       **WILKINSON STEKLOFF LLP**
                                        2001 M Street NW, 10th Floor
10                                      Washington, DC 20036
                                        Telephone: (202) 847-4000
11                                      Facsimile: (202) 847-4005
                                        bwilkinson@wilkinsonstekloff.com
12                                      bstekloff@wilkinsonstekloff.com
                                        rkilaru@wilkinsonstekloff.com
13                                      jbarber@wilkinsonstekloff.com

14

15                                      Neema T. Sahni (Bar No. 274240)
                                        **COVINGTON & BURLING LLP**
16                                      1999 Avenue of the Stars
                                        Suite 1500
17                                      Los Angeles, CA 90067-6045
                                        Telephone: (424) 332-4800
18                                      Facsimile: (424) 332-4749
                                        nsahni@cov.com
19

20                                      Gregg H. Levy (admitted *pro hac vice*)
                                        Derek Ludwin (admitted *pro hac vice*)
21                                      **COVINGTON & BURLING LLP**
                                        One CityCenter
22                                      850 Tenth Street NW
                                        Washington, DC 20001
23                                      Telephone: (202) 662-6000
                                        Facsimile: (202) 662-6291
24                                      glevy@cov.com
                                        dludwin@cov.com
25

26                                      *Counsel for Defendants National Football*
                                        *League, NFL Enterprises LLC, and the*
27                                      *Individual NFL Clubs*

28

## Exhibit A

### Errata Sheet to the Deposition Testimony of Brian Rolapp – May 18, 2022

| Page | Line | Original Text | Correction | Reason |
|------|------|---------------|------------|--------|
| 5 | 1 | Delores | Dolores | Typographic error |
| 23 | 8, 16, 17 | Hanna | Hannah | Typographic error |
| ███ | ██ | ███ | ██ | ███ |
| ██ | ██ | █ | █ | ███ |
| ██ | ██ | ██ | ██ | ███ |
| ██ | ██ | ███ | ███ | ███ |
| ██ | ██ | ████████ | ████████ | ███ |
| ██ | ██ | █████ | █ | ███ |
| ██ | █ | ██████ | █ | ████ |
| ██ | █ | ████ | █ | ███ |
| ██ | ██ | █████ | ████ | error |
| ██ | ██ | ██ | █ | ███ |
| ██ | █ | ██ | ██ | ███ |
| ██ | ██ | ██ | ██ | ███ |
| ██ | █ | █████ | ██████ | ███ |
| ██ | ██ | ███████ | █████ | ███ |
| ██ | ██ | ██ | ███ | ███ |
| 85 | 21 | 2005 | 2015 | Clarify the record |

| Page | Line | Original Text | Correction | Reason |
|---|---|---|---|---|
| 89 | 10 | to | through | Transcription error |
| 93 | 12 | broadcast network on NFL Network and then on | broadcast network, on NFL Network, and then on | Typographical error |
| 93 | 18 | they're | there are | Transcription error |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |



| Page | | | ext | | n | | Reason |
|---|---|---|---|---|---|---|---|
| ░ | | ░ | ▆▆▆ | | ▆▆▆ | | ▆▆ |
| ░ | ░ | | ▆▆▆▆▆▆ | | ▆▆▆▆▆ | | ▆▆ |
| ░ | ░ | | ▆▆▆▆ | | ▆▆ | | error |
| ░ | ░ | | ▆▆▆ | | ▆▆ | | ▆▆ |
| ░ | ░ | | ▆▆ | | ▆ | | ▆▆ |
| ░ | ░ | | ▆▆▆▆▆ | | ▆▆▆▆ | | ▆▆ |
| ░ | ░ | | ▆ | | ▆ | | ▆▆ |
| ░ | ░ | | ▆▆ | | ▆▆ | | ▆▆ |
| ░ | ░ | | ▆▆ | | ▆▆ | | ▆▆ |
| ░ | ░ | | ▆ | | ▆▆ | | ▆▆ |
| ░ | ░ | | ▆ | | ▆ | | ▆▆ |
| ░ | ░ | | ▆ | | ▆ | | ▆▆ |
| ░ | ░ | | ▆▆▆ | | ▆▆▆ | | ▆▆ |
| ░ | ░ | | ▆▆ | | ▆ | | ▆▆ |

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 8/24/22        By: _____
                            Brian Rolapp

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I, Jeremy S. Barber, attorney at Wilkinson Stekloff LLP, hereby certify that, |
| 3 | on September 6, 2022, I caused the foregoing Errata Sheet to the Deposition |
| 4 | Transcript of Brian Rolapp to be served via email delivery on the following |
| 5 | counsel: |
| 6 | |
| 7 | MARC M. SELTZER (54534)<br>mseltzer@susmangodfrey.com |
| 8 | **SUSMAN GODFREY L.L.P.**<br>1900 Avenue of the Stars, 14th Floor |
| 9 | Los Angeles, CA 90067<br>Tel: (310) 789-3100<br>Fax: (310) 789-3150 |
| 10 | |
| 11 | SCOTT MARTIN<br>smartin@hausfeld.com |
| 12 | IRVING SCHER<br>ischer@hausfeld.com |
| 13 | **HAUSFELD LLP**<br>33 Whitehall Street, 14th Floor |
| 14 | New York, NY 10004<br>Tel: (646) 357-1100 |
| 15 | Fax: (212) 202-4322 |
| 16 | HOWARD LANGER<br>hlanger@langergrogan.com |
| 17 | EDWARD DIVER<br>ndiver@langergrogan.com |
| 18 | PETER LECKMAN<br>pleckman@langergrogan.com |
| 19 | **LANGER GROGAN AND DIVER PC**<br>1717 Arch Street, Suite 4130 |
| 20 | Philadelphia, PA 19103<br>Tel: (215) 320-5660 |
| 21 | Fax: (215) 320-5703 |
| 22 | ARUN SUBRAMANIAN<br>asubramanian@susmangodfrey.com |
| 23 | WILLIAM CHRISTOPHER CARMODY<br>bcarmody@susmangodfrey.com |
| 24 | SETH ARD<br>sard@susmangodfrey.com |
| 25 | TYLER FINN<br>tfinn@susmangodfrey.com |
| 26 | **SUSMAN GODFREY LLP**<br>1301 Avenue of the Americas, 32nd FL. |
| 27 | New York, NY 10019<br>Tel: (212) 336-8330/ Fax: (212) 336- |
| 28 | 8340 |

5

1  IAN M. GORE
   igore@susmangodfrey.com
2  **SUSMAN GODFREY LLP**
   1201 Third Avenue, Suite 3800
3  Seattle, WA 98101
   Tel: (206) 505-3841/Fax: (206) 516-3883
4
   MICHAEL D. HAUSFELD
5  mhausfeld@hausfeld.com
   Farhad Mirzadeh
6  fmirzadeh@hausfeld.com
   **HAUSFELD LLP**
7  1700 K. Street NW, Suite 650
   Washington, DC 20006
8  Tel: (202) 540-7200/Fax: (202) 540-7201

9  MICHAEL P. LEHMANN
   mlehmann@hausfeld.com
10 BONNY E. SWEENY
   bsweeney@hausfeld.com
11 CHRISTOPHER L. LEBSOCK
   clebsock@hausfeld.com
12 **HAUSFELD LLP**
   600 Montgomery St., Suite 3200
13 San Francisco, CA 94111
   Tel: (415) 633-1908/Fax: (415) 358-4980
14
15 *Co-Lead Plaintiffs' Counsel*

16 Executed on September 6, 2022.

17

18                                    By: */s/ Jeremy S. Barber*
                                          _____
19                                        Jeremy S. Barber

20

21

22

23

24

25

26

27

28