Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS ON NFL'S SUPPLEMENTAL PRIVILEGE LOG**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Date/Time: 10/24/2023<br>Discovery Cutoff Date: 8/5/2022<br>Pretrial-Conference Date: 2/9/2024<br>Trial Date: 2/22/2024 |

1

# TABLE OF CONTENTS

2

3

4    I.     PRELIMINARY STATEMENTS ......................................................... 1
        A. PLAINTIFFS' PRELIMINARY STATEMENT ................................. 1
5        B. NFL DEFENDANTS' PRELIMINARY STATEMENT ................... 2
6    II.    DISCOVERY REQUESTS AND RESPONSES IN DISPUTE. ......................... 3
7    III.   PARTIES' CONTENTIONS ............................................................... 3
        A. PLAINTIFFS' STATEMENT .......................................................... 3
8        1.  Factual and Procedural Background ................................... 3
9        2.  Legal Standard ..................................................................... 5
        3.  NFL Inappropriately Asserts Privilege Over Several Business-Related
10       Communications and Documents. ......................................... 6
11       4.  In the Alternative, *In Camera* Review of Improperly Withheld Documents
        Is Appropriate. ......................................................................... 16
12       5.  Conclusion............................................................................ 16
        B. NFL'S STATEMENT ..................................................................... 16
13       1.  Factual and Procedural Background ................................. 16
14       2.  Legal Standard ..................................................................... 20
        3.  The NFL Defendants Properly Asserted Privilege Over The Challenged
15       Documents. ............................................................................... 21
16       4.  *In Camera* Review Is Unwarranted And Would Be A Waste Of Judicial
        Resources. ................................................................................ 34
17       5.  Conclusion............................................................................ 35

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*Amphastar Pharms, Inc. v. Aventis Pharma SA*, No. EDCV-09-23, 2013 WL 12136380 (C.D. Cal. Aug. 9, 2013) ................................................................14

*Applied Med. Res. Corp. v. Ethicon, Inc.*, No. CV 03-1329, 2005 WL 6567355 (C.D. Cal. May 23, 2005) ...............................................................................6, 16

*AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614 ......................................31, 33

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005) ..........................................................................................21

*ChromaDex, Inc. v. Elysium Health, Inc.*, No. SA CV 16-02277, 2019 WL 8227385 (C.D. Cal. Dec. 20, 2019) ...........................................................................................14

*Coleman v. Sterling*, 2011 WL 1099793 (S.D. Cal. Mar. 24, 2011) ................23, 31

*Colonies Partners, L.P. v. County of San Bernardino*, No. 5:18-cv-00420, 2020 WL 5846477 (C.D. Cal. Jan. 24, 2020) ...............................................................10, 13

*Cty. of Roseville Employees' Ret. Sys.*, 2022 WL 3083000 ......................27, 28, 30

*Dickson v. Century Park E. Homeowners Ass'n*, 2021 WL 3148878  (C.D. Cal. Mar. 9, 2021) .................................................................................................34, 35

*Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 11420853  (N.D. Cal. Mar. 16, 2018) ....................................................................................................................35

*In re CV Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536 (N.D. Cal. June 16, 2006) ...................................................................................................................passim

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) ......................passim

*In re Grand Jury*, 23 F.4th 1088  (9th Cir. 2021) ....................................................7

*Kintera, Inc.*, 219 F.R.D. at 514 ..............................................................................31

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109 (S.D.N.Y. 2007) ...................................14

*Park v. Cas Enterprises, Inc.*, 2009 WL 10671877  (S.D. Cal. July 31, 2009) .......24

*Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275 (S.D. Cal. 2018)........14

*Rock River Communications, Inc. v. Universal Music Grp, Inc.*, 745 F.3d 343 (9th Cir. 2014); ...............................................................................................................34

*Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2015 WL 4347711 (N.D. Cal. July 15, 2015) ....................................................................21

*United States v. Chevron Corp.*, No. C-94-1885, 1996 WL 264769 (N.D. Cal. Mar. 13, 1996) ..............................................................................................................7, 10

*United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002) ......6

*United States v. City of Hesperia*, No. 5:19-cv-2298, 2021 WL 5034381 (C.D. Cal. June 17, 2021) ...........................................................................................................6

*United States v. Richey*, 632 F.3d 559  (9th Cir. 2011) ..........................................14

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) ..............................................6

*United States v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020) .................5, 15, 20

*Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450, 2022 WL 5240653 (N.D. Cal. Feb. 22, 2022) ..........................................................................................6

**Rules**

Fed. R. Civ. P. 26(b)(5) .............................................................................................5

1       Pursuant to Fed. R. Civ. P. 37 and Local Rule 37-2, Plaintiffs and Defendants

2   National Football League, Inc. and NFL Enterprises LLC (the "NFL") submit the

3   following joint stipulation regarding Plaintiffs' Motion to Compel Production of

4   Documents on the NFL's Supplemental Privilege Log.

5   **I.**   **PRELIMINARY STATEMENTS**

6       **A.**   **PLAINTIFFS' PRELIMINARY STATEMENT**

7       Documents involving the NFL's discussions about a new deal for its NFL

8   Sunday Ticket package are undoubtedly relevant to this litigation. It is why Plaintiffs

9   brought before this Court a dispute about the NFL's meager production, and why this

10   Court ordered that the NFL produce responsive documents regarding the NFL's new

11   Sunday Ticket Agreement. Ex. 3.[1] When the NFL produced its privilege log

12   afterward, though, it was apparent that relevant, non-privileged materials were

13   improperly withheld or redacted to obscure the facts surrounding those negotiations.

14       The NFL's broad and improper privilege assertions are consistent with its

15   general evasiveness in discovery. The NFL similarly insisted that all of its broadcast

16   agreements with the network were so commercially sensitive that they had to redact

17   substantial portions from production and would only permit one Plaintiffs' counsel

18   to review the unredacted network agreement for briefing purposes. Ex. 4. In the end,

19   the NFL ended up producing the majority of the provisions of the network

20   agreements that were the subject of the dispute. *See* Ex. 4 (Dkt. No. 459).

21       This time is no different. The parties met and conferred over approximately 96

22   entries that the Plaintiffs sought to challenge. The NFL re-examined their privilege

23   determinations and updated nearly 75 entries by either downgrading documents from

24   the privilege log or removing redactions. But the NFL continues to withhold

25   documents on questionable bases. For the reasons discussed below, this Court should

26   grant Plaintiffs' motion and order the NFL to produce the documents that have been

27

28   ---
[1] All exhibits cited by Plaintiffs are attached to the Declaration of Farhad Mirzadeh, filed contemporaneously with this joint stipulation.

1    improperly withheld. In the alternative, Plaintiffs request that this Court conduct *in*

2    *camera* review of the documents at issue.

3          **B.    NFL DEFENDANTS' PRELIMINARY STATEMENT**

4          Over the course of this litigation, the NFL Defendants have produced hundreds

5    of thousands of documents, sat for numerous depositions of current and former

6    employees, and continuously worked in good faith to attempt to resolve disputes with

7    Plaintiffs on discovery issues to avoid needlessly burdening the Court.  In short,

8    contrary to Plaintiffs' inaccurate recitation of the history of discovery in this case,

9    the NFL Defendants have made substantial productions and consistently complied

10   with all discovery obligations.[2]   In turn, Plaintiffs have made increasingly more

11   unreasonable and sweeping discovery demands.  This latest privilege dispute is no

12   exception.

13          When Plaintiffs first sent the NFL Defendant a draft of the present Joint

14   Stipulation on August 25, 2023, that draft motion raised challenges to 96 entries in

15   the NFL Defendants' recent privilege log, despite that fact that Plaintiffs had never

16   previously raised any specific concerns about, or sought to meet and confer about,

17   any of those entries.  The NFL Defendants were able to convince Plaintiffs to meet

18   and confer on the contested entries, and the parties thereafter met for several hours

19   over several weeks, discussing each of Plaintiffs' concerns.   As Plaintiffs

20   acknowledge, the NFL conducted a careful re-review of its prior privilege

21   determinations, ultimately narrowing its privilege calls on 75 of the 96 contested

22   entries.  The NFL Defendants' decision to downgrade a significant number of entries

23

24   [2] For example, Plaintiffs cite Mirzadeh Ex. 3 (Dkt. 938) in an attempt to support their claim that
     the Court ordered that the NFL produce responsive documents about the NFL's new Sunday Ticket
25   agreement because its prior productions were "meager."  *Supra*, at 1.  But that order was entered
     only to memorialize the parties' agreement following an earlier Court ruling that rejected Plaintiffs'
26   insistence on "overbroad" search terms and an overly expansive, and disproportionate date range
     to be applied to documents collected from three NFL custodians related to the new Sunday Ticket
27   agreement.  *See* Barber Ex. 1 (Dkt. 924).  Plaintiffs are also incorrect when they state above, *supra*
     at 1, that the NFL "insisted" on redactions or limited the access to certain network broadcast
28   agreements.  Rather, the third-party networks involved in those agreements sought the redactions
     at-issue, to protect what they viewed to be their highly sensitive business information, pursuant to
     a stipulation agreed to by the Plaintiffs.

and to narrow the scope of redactions in many others reflects a good-faith effort to tailor privilege calls narrowly to those materials and communications at the core of the attorney-client privilege.

Despite the NFL Defendants' considerable efforts at compromise, Plaintiffs still filed the present motion challenging the privilege calls on over 20 entries.  Each of those entries has now been reviewed, extensively discussed with Plaintiffs, and carefully re-reviewed again for privilege.  The privilege calls on each contested entry are as narrow as possible to accommodate Plaintiffs' concerns while still properly protecting the NFL Defendants' privileged materials.  But Plaintiffs apparently will be satisfied by nothing short of a wholesale waiver of the NFL Defendants' attorney-client privilege.  That is not what the law requires.

The Court should deny Plaintiffs' motion.

## II.     DISCOVERY REQUESTS AND RESPONSES IN DISPUTE.

The present dispute is not related to the scope of any particular discovery request. Rather, this dispute relates to documents responsive to Plaintiffs' discovery requests that Plaintiffs assert have been improperly withheld as attorney-client privileged in the NFL's supplemental privilege log.

## III.    PARTIES' CONTENTIONS

### A.      PLAINTIFFS' STATEMENT

#### 1.  Factual and Procedural Background

Following the production of documents regarding the NFL's new deal with Google for the rights to distribute NFL Sunday Ticket, the NFL produced a supplemental privilege log on July 12, 2023 rife with deficiencies. Ex. 5. The privilege log lacked, for example, sufficient information to assess the NFL's privilege claims, lacked information about attorney involvement in certain documents, and failed to include any information about certain withheld attachments. Plaintiffs sent a Local Rule 37-1 letter detailing these deficiencies and requesting a meet and confer with the NFL. Ex. 6.

Following the meet and confer, the NFL stated that it "conducted a careful additional review of the documents highlighted in Plaintiffs' recent letter" and that it would withdraw its assertion of privilege over "approximately 15 documents." Ex. 7 (Aug. 11 email from M. Warren). The NFL further clarified that it would serve an amended privilege log correcting 75 entries where attachment filenames were missing. *Id.*

In advance of the NFL's service of an amended privilege log, Plaintiffs' counsel requested setting a date for meet and confer to continue discussing the privilege log entries in dispute. NFL Counsel stated "[i]t is not clear to me that additional meet and confer is necessary." *Id.* (Aug. 16 email from M. Warren). The NFL proceeded to produce its amended privilege log and production on August 18. *Id.*

After reviewing the NFL's production and amended privilege log, Plaintiffs served their portion of a joint stipulation on the NFL defendants on August 25. However, despite its prior statement that none were necessary, the NFL requested additional meet and confers to go over the entries in dispute and asked Plaintiffs to table the joint stipulation process until the parties further conferred on the NFL's privilege log entries. Mirzadeh Decl. ¶¶ 11-12; Ex. 8. The parties proceeded to meet and confer on four occasions, totaling multiple hours, to discuss the disputed entries. On September 7, the NFL agreed to downgrade or produce 75 of the 96 entries that were discussed in these meetings. Ex. 9. Despite earlier claiming that it had done a "careful additional review" of its privilege log, the NFL's decision to downgrade or produce such a higher number of the disputed entries is a clear sign that the NFL's assertions of privilege had been overly broad and meritless.

On September 13, the NFL produced an amended privilege log and a production of over 100 documents reflecting the NFL's updated privilege determinations. Ex. 10. The NFL's production fell into the following three categories: documents that were produced in full, documents that were previously

withheld but now produced with redactions, and documents that were previously produced with redactions but now updated to contain fewer redactions.

After review of the NFL's September 13 production, Plaintiffs discovered multiple examples of documents that the NFL had indicated it would produce yet did not, or documents that had been removed from the privilege log but did not appear in the production. The NFL chalked it up to a "miscommunication" with their vendor and proceeded to produce additional documents on September 21, along with a second amended privilege log on September 20. *See* Exs. 11 & 12.

The NFL's careless application of privilege and approach to their privilege log should give this Court serious concern. Plaintiffs have narrowed their challenges to a few entries where the NFL's claims of privilege are suspect at best. Plaintiffs request that this Court compel the NFL to produce the documents specified in the order. In the alternative, Plaintiffs respectfully submit that the Court engage in *in camera* review of the documents and decide whether the documents are properly withheld.

## 2. Legal Standard

Federal Rule of Civil Procedure 26(b)(5) requires a party asserting a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

To withhold a document for attorney-client privilege, the NFL must satisfy an eight-part test: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be

waived." *Id.* (citing *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). But "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed" and "the party asserting [it] bears the burden of proving each essential element." *United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009).

### 3. NFL Inappropriately Asserts Privilege Over Several Business-Related Communications and Documents.

As described below, the NFL has improperly withheld over 30 business-related documents that are not privileged.

The mere fact that "an attorney" is "one of several recipients" is not sufficient to distinguish the documents withheld from "ordinary business communication[s], to which the privilege does not apply." *Applied Med. Res. Corp. v. Ethicon, Inc.*, No. SACV 03-1329-, 2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002) ("The mere fact that outside counsel was copied with the e-mail will not shield communications not made for the purpose of securing legal advice."). Furthermore, simply because a document may be attached to an allegedly privileged email, that attachment does not become privileged by association. *United States v. City of Hesperia*, No. 5:19-cv-2298, 2021 WL 5034381, at *6 (C.D. Cal. June 17, 2021) (concluding that "attachments to privileged emails are not themselves privileged simply by association") (citing *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)).

Where documents involve in-house counsel, the NFL has a higher burden of establishing privilege given that in-house counsel may have a dual-purpose role, providing business and legal advice. *See Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450, 2022 WL 524065, at *4 n.3 (N.D. Cal. Feb. 22, 2022) ("As in-house counsel, Bibbes's communications may include 'dual-purpose communications,' involving 'both legal and non-legal analyses.'") (citing *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021)); *United States v. Chevron Corp.*, No. C-94-1885, 1996

1  WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) (noting a company must "make a clear

2  showing that in-house counsel's advice was given in a professional legal capacity").

3      The Ninth Circuit adopted a "primary purpose" test to determine whether dual-

4  purpose communications should be protected by attorney-client privilege. *See In re*

5  *Grand Jury*, 23 F.4th 1088, 1092-94 (9th Cir. 2021). In other words, if the "primary

6  purpose" of a communication is for business purposes, that document should not be

7  withheld. And for good reason: such a rule avoids "perverse incentives for companies

8  to add layers of lawyers to every business decision in hopes of insulating themselves

9  from scrutiny in any future litigation." *See id.* at 1093-94.

10     Contrary to this well-established precedent, the NFL has failed to satisfy its

11  burden of demonstrating that the withheld documents are privileged. Much of the

12  parties' hours-long meet and confers over the challenged entries centered around

13  whether a document's "primary purpose" was to provide business or legal advice. In

14  the NFL's latest privilege log, however, the NFL amended many of its descriptions

15  over documents it continues to withhold but does not once indicate when the primary

16  purpose of an allegedly dual-purpose communication was to seek or obtain legal

17  advice.

18     As such, various written communications and attachments are improperly

19  withheld by the NFL.

20     <u>Reference No. 7</u>

21  

22  

23  ▉. A copy of the cover email and redacted version of the document are

24  available as Exhibit 13. 

25  

26  [3]

27  

28

1

2

3 *See id.*

4

5

6 ████ Similarly, it is unclear how, if the entire rest of the discussion was

7 involving business matters, how the "internal follow ups" would be privileged.

8 Nothing suggests that these notes were created or distributed for legal advice—

9

10 *See* Ex. 13. Moreover, nothing on the NFL's privilege log or in the parties' meet and

11 confers indicates that

12

13

14 For those reasons, the NFL should produce the attachment in full.

15 <u>Reference No. 16</u>

16 Similarly, Reference No. 16 is a redacted email chain titled

17

18

19

20

21 Ex. 14. The NFL redacted the email chain

22 but produced the attachment. *Id*.

23 As mentioned earlier,

24

25

26

27

28

1  ██████████████████████████████████████████████████████

2  ███████████████████████████████████████

3   ██████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████

5  ██████████████████████. *Id*. Thus, it is unlikely that the entirety of the redacted

6  portions of the email chain are appropriately withheld from production and thus

7  should be produced.

8      Reference Nos. 32-34, 47, 53

9      Reference Nos. 32-34 contain ███████████████████████████

10  ████████████████████ *See* Ex. 12 at Ref. Nos. 32-34. ███████████

11  ██████████████████████████████████████████████████████

12  █████████████████ *See* Ex. 12 at Ref. No. 47, 53. ████████████

13  ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  ██████████████████████████████

17      As demonstrated by the cover email for Reference No. 34, ████████

18  ██████████████████████████████████████████████████████

19  ████████████████████████ Ex. 15. The documents have a clear business purpose—

20  to provide these executives with updates on a potential business arrangement—███

21  ██████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████

23  ███████ *Id*. As such, the document is unlikely to be privileged as it is for business

24  purposes.

25      The NFL justifies its assertion of privilege over this document by stating that

26  it was "created at the direction of legal counsel." Ex. 12 at Ref. Nos. 32-34. If the

27  NFL's description is to be credited then, at best, these documents should be withheld

28  as work product, not because it is an attorney-client communication as noted in the

1  NFL's own privilege log. *See* Ex. 12 at Ref. Nos. 32-34; *In re Grand Jury Subpoena*

2  *(Torf),* 357 F.3d at 900, 907 (9th Cir. 2004) (documents created at the direction of

3  counsel in anticipation of litigation can be subject to work product doctrine).

4      But even if the Court were to evaluate a possible work-product claim, the

5  NFL's assertion of privilege would still fail. The work-product doctrine only protects

6  documents "obtained and prepared by an attorney or the attorney's agent in

7  anticipation of litigation or in preparation for trial[.]" *Colonies Partners, L.P. v.*

8  *County of San Bernardino*, No. 5:18-cv-00420, 2020 WL 5846477, at *2 (C.D. Cal.

9  Jan. 24, 2020) (citing Fed. R. Civ. P. 26(b)(3)). "In circumstances 'where a document

10 serves a dual purpose, that is, where it was not prepared exclusively for litigation,'

11 the document may be considered 'work product' if, after the court considers the

12 'totality of the circumstances,' it can be fairly said that the document 'was created

13 because of anticipated litigation' and 'would not have been created in substantially

14 similar form but for the prospect of litigation.'" *Colonies Partners, L.P.*, 2020 WL

15 5846477, at *3 (quoting *U.S. v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011)).

16 ████████████████████████████

17 ████████████████████████████

18 ████████████████████████████

19 ████████████████████████████

20 ████████████████████. Even if one were to credit the NFL's

21 clarification that an attorney was revising the document, the NFL has not made "a

22 clear showing" that the purported communication made by the in-house counsel was

23 in their professional legal capacity, for the primary purpose of providing legal advice.

24 *See Chevron Corp.*, 1996 WL 264769, at *4. In other words, the NFL's in-house

25 counsel could have been providing revisions to the document without imparting legal

26 advice. ██████████████████████

27 ████████████████████████████

28      For the reasons above, documents withheld in References Nos. 32-34, 47, and

1   53 should be produced.

2         Reference No. 56

3       Reference No. 56 contains a document titled ███████████████

4 ███████████████████████ The NFL produced the cover email and one attachment,

5 but they continue to withhold the attachment at issue. *See* Ex. 16. ████████████

6 ████████████████████████████████████████████████████████

7 ███████████████████

8 ███████████████████████████████████████████████████████

9 ██████████████████████████████████████ After reviewing the later

10 iteration, it is difficult to understand how the NFL can withhold the entirety of the

11 version in Reference No. 56. █████████████████████████████████

12 ████████████████████████████████████. *Id.*

13       To the extent that the withheld version may have "requests for legal advice,"

14 those can be redacted out in favor of producing the rest of the document.

15         Reference No. 70

16       Reference No. 70 contains ████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ███████████ Ex. 18.

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ██████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████

1  ██████████      The NFL has not made a showing that the purported communication

2  was made by or to an in-house counsel, or that the primary purpose of the document

3  was to obtain or provide legal advice. Nowhere on the privilege log, for example,

4  does an attorney respond to this email or provide a draft version of this email with

5  their supposed legal advice.

6      As such, it appears that the redacted portion of this attachment has been

7  improperly withheld and should be produced by the NFL.

8      Reference No. 133[4]

9      Reference No. 133 is an ███████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ███████

13     Similar to Reference No. 70, ████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████.   As such, the email and

23 attachments should be produced in full.

24     Reference Nos. 204[5]

25

[4] This reference number is similar to Reference Nos. 110-112, 128-130, and 132. To the extent that
26 the NFL is ordered to produce the attachments in Reference No. 133, Plaintiffs request that the
NFL produce the same or similar attachments to the extent the NFL has the same bases for
27 withholding the other versions of this document.

[5] This reference number is similar or identical to Reference Nos. 199-200, 204-211. To the extent
28 that the NFL is ordered to produce the email and attachments in Reference No. 204, Plaintiffs

1    Reference No. 204 and related entries all contain ████████████

2    ██████████████████████████████████████████ As

3    described herein, the document is most likely about ███████████████

4    ███████████████████████

5    The cover email clearly indicates that the draft version incorporates edits from

6    ██████████████████████████████████████████████

7    ██████████████████████████████████████████████

8    █████████████████████████████. There is no suggestion that there is any

9    attorney advice being requested or provided in the attachment.

10   To the extent that the NFL claims that the document is made at the direction

11   of an attorney, then it has not made the requisite showing that the document is

12   properly withheld as attorney work product. In addition to not including attorney

13   work product as a basis for withholding the document, the NFL does not meet the

14   high burden of explaining how this document was created because of or in

15   anticipation of litigation. *Colonies Partners, L.P.* 2020 WL 5846477, at *3.

16   Furthermore, the document has a clear business purpose. █████████████

17   ██████████████████████████████████████████████

18   ██████████████████████████████████████████████

19   ██████████████████████████████████████████████

20   ██████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ████████████

23   The draft document, which does not appear to be sent to an attorney nor

24   contains attorney advice, should be produced.

25   <u>Reference No. 212</u>

26   Reference No. 212 is a withheld document attached to the email ████████

27   

28   request that the NFL produce the same or similar attachments to the extent the NFL has the same
     bases for withholding the other versions of this document.

1  ███████████████████████████████████████████████████

2  Ex. 22.

3  ███████████████████████████████████████████████████

4  ███████████████████████████. *Amphastar Pharms, Inc. v. Aventis*

5  *Pharma SA*, No. EDCV-09-23, 2013 WL 12136380, at *4 (C.D. Cal. Aug. 9, 2013)

6  ("Generally, disclosure of otherwise privileged communication to a third party

7  waives the attorney client privilege and/or the attorney work product privilege."); s*ee*

8  *also Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018)

9  ("Attorney-client communications 'made in the presence of, or shared with, third-

10 parties destroys the confidentiality of the communications and the privilege

11 protection that is dependent upon that confidentiality.'") (quoting *Nidec Corp. v.*

12 *Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *NXIVM Corp. v. O'Hara*,

13 241 F.R.D. 109, 141 (S.D.N.Y. 2007) ("[T]he extension of the privilege to non-

14 lawyer's communication is to be narrowly construed.").

15      On some occasions, the attorney-client privilege may extend to

16 communications with a third party that assists a lawyer in providing legal advice to

17 a client. *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The

18 attorney-client privilege may extend to communications with third parties who have

19 been engaged to assist the attorney in providing legal advice"). However, "[t]he

20 privilege does not apply if the attorney's ability to represent the client is merely

21 improved; instead, 'the involvement of the third party must be nearly indispensable

22 or serve some specialized purpose in facilitating the attorney-client

23 communications.'" *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SA CV 16-02277,

24 2019 WL 8227385, *3 (C.D. Cal. Dec. 20, 2019) (citing *Cavallaro v. United States*,

25 284 F.3d 236, 247-49 (1st Cir. 2002)). Even if Goldman Sachs is acting as an agent

26 of the NFL, "'[i]f the advice sought is not legal advice . . . then the privilege does not

27 exist.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (quoting

28 *Richey*, 632 F.3d at 566).

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████ It is difficult

12 to see how the NFL can credibly claim privilege over this document and, as such, it

13 should be produced.

14       <u>Reference Nos. 214, 217, 219</u>

15      These entries have all been withheld entirely, despite the NFL counsel's email

16 of September 7 indicating that these entries would be downgraded from the privilege

17 log. *See* Ex. 9. ███████████████████████████████████

18 ████████████████████████████████ Even though the NFL claims

19 these entries are "requesting legal advice," ██████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28 ██████████████████████████████████████ lacks

the hallmarks of a privileged communication and the document should be produced.

### 4. In the Alternative, *In Camera* Review of Improperly Withheld Documents Is Appropriate.

The Ninth Circuit requires a two-step analysis for deciding whether *in camera* review is appropriate. "First, there must be a 'factual basis adequate to support a good faith belief by a reasonable person' that the communications are not privileged." *Applied Med. Resources. Corp. v. Ethicon, Inc.*, No. CV-03-1329, 2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005) (quoting *In re Grand Jury Investigation* (*United States v. The Corporation*), 974 F.2d 1068, 1074 (9th Cir.1992)). The threshold for the first part of this inquiry "is minimal." *Applied Med. Resources Corp.*, 2005 WL 6567355, at *2. After meeting the first threshold, the "court has discretion to conduct an *in camera* review, considering the amount of material, the material's relevance, and the likelihood that review will reveal whether the documents are privileged." *Id.*

In this matter, the parties have conferred over each entry in dispute, and have whittled their disagreement to a handful of documents. Plaintiffs have itemized each entry in dispute and explained their reasonable bases for why the NFL's assertions of privilege are wrong or, at best, suspect. Furthermore, the documents are highly relevant and bear on several important issues concerning the discussions between the NFL and prospective partners about the distribution of NFL Sunday Ticket.

### 5. Conclusion.

For all of the reasons above, Plaintiffs respectfully request that this Court compel the production of non-privileged documents that the NFL has improperly withheld or, in the alternative, conduct an *in camera* review of the challenged documents.

## B.   NFL'S STATEMENT

### 1. Factual and Procedural Background

Plaintiffs' latest motion should be viewed in the broader context of the NFL

Defendants' entire production effort.  Throughout this litigation, the NFL Defendants have promptly complied with their discovery obligations and sought compromises to resolve any discovery disputes outside of Court. Yet, at every turn, Plaintiffs have asked for more—more productions, broader search terms, more documents, and more depositions.  Plaintiffs' most recent motion to compel is a continuation on that theme: unappeased by the NFL Defendants' modifications to 75 of the 96 contested entries in the privilege log, Plaintiffs continue to insist that more ought to be revealed.

After Plaintiffs served their first set of discovery requests in January 2021, the parties spent months negotiating the proper scope of discovery. *See* Decl. of Jeremy S. Barber ("Barber Decl."), ¶ 3.  All told, the Plaintiffs ultimately served 161 different requests for production of documents from the NFL Defendants. *Id*. ¶ 4.  Prior to the deadline for fact discovery, the NFL Defendants produced over 139,000 documents spanning more than 1,285,000 pages in response to these requests. *Id*.  The NFL Defendants produced two privilege logs with approximately 1,800 entries related to those productions, and Plaintiffs did not file any motion with the Court claiming that those logs were deficient.[6] *Id.*

On the eve of the deadline for fact discovery, Plaintiffs made further demands for additional documents regarding the then-ongoing negotiations for the future rights to Sunday Ticket. *See id.* ¶¶ 8–9.  These demands were in addition to the production the NFL had made on that topic previously, after extensive negotiations with Plaintiffs on the contours of that production. *See id.* ¶¶ 5–7.  Specifically, Plaintiffs insisted on numerous additional productions well after the fact discovery deadline, including some in the midst of on-going negotiations. *See id.* ¶¶ 8–9.  Plaintiffs ultimately filed a motion to compel on the topic. *See id.* ¶ 9.

In response, Judge McDermott ordered the parties to engage in further meet and confers regarding an appropriate schedule for production of documents related

---

[6] The parties did meet and confer about a few issues related to those privilege logs, but they were able to resolve those issues outside of court. *See* Barber Decl. ¶ 4.

to the new deal. *See id.* ¶ 11.  Ultimately, the parties reached an agreement about the scope of additional discovery related to the new Sunday Ticket deal that involved document productions *after* the agreements were finalized and that were limited to documents from the custodial files of three NFL employees. *See* Barber Decl. ¶ 12. The parties also agreed to a single 30(b)(6) deposition of the NFL on the topic. *See id.* The Court later entered an order endorsing that agreement on September 12, 2023. *See* Barber Decl. ¶ 13.

On December 22, 2022, the NFL and Google announced an agreement granting YouTube TV the right to distribute the residential Sunday Ticket package starting during the 2023 NFL season. *See* Barber Decl. ¶ 14.  In accordance with the parties' agreement and the Court's September 12, 2022 Order, the NFL Defendants collected custodial files from the parties' three agreed-upon custodians and produced responsive documents that hit on the search term agreed upon by the parties. *Id.* ¶ 12–14.  This production was made 23 days earlier than the 45-day deadline imposed by the Court. *See id.* ¶ 14.  Then, on March 28, 2023, the NFL announced that it had reached an agreement for future rights to the commercial Sunday Ticket package. The NFL Defendants again collected documents from the three agreed-upon custodians, reviewed those that hit on the parties' agreed-upon search terms, and produced responsive documents related to the commercial Sunday Ticket agreement on April 20, 2023.

In the midst of all this, on January 31, 2023, Plaintiffs demanded, contrary to the parties' prior agreement and the Court's prior order, that the NFL Defendants also collect custodial files from three additional NFL employees and use, for the first time, extremely overly broad search terms on all collected custodial files dating back to well before the deadline of fact discovery. *See id.* ¶ 15.

After refusing reasonable efforts at compromise, Plaintiffs moved to compel. The Court denied their onerous request to add additional custodians, to use overly broad search terms, and to expand the applicable date range for the production,

18

explaining that "there is no deficiency in the NFL production" and that it was "undisputed that the NFL has complied with the discovery requirements of the September 12, 2022 Order, and Order to which Plaintiffs agreed."  Barber Ex. 1 (Dkt. 924), at 4 (calling Plaintiffs motion a request for a "do-over."); *see also* Barber Decl. ¶ 16.

Following the Court's order, the NFL Defendants diligently applied the final set of search terms and timely produced all responsive documents. *See* Barber Decl. ¶ 17. The NFL Defendants also served a privilege log that detailed the documents that the NFL withheld from that production in light of attorney-client privilege and attorney work product concerns. *See id.*; Mirzadeh Decl. Ex. 5.  Two weeks later, on July 27, 2023, Plaintiffs raised categorical concerns about the NFL's privilege log. *See* Barber Decl. ¶ 18; *see also* Mirzadeh Decl. Ex. 7.  The parties promptly engaged in a meet and confer to attempt to address those concerns.  Following the meet and confer, the NFL took swift action to conduct a careful additional review of the documents identified by Plaintiffs, which led the NFL to downgrade approximately 15 documents and to correct the privilege log for 75 entries where attachment filenames were inadvertently omitted.[7]  Barber Decl. ¶ 18; Mirzadeh Decl. Ex. 7 (Aug. 11 email from M. Warren), at 6.

When Plaintiffs received the NFL Defendants' amended privilege log, they did not raise further concerns about the log, nor did they seek to meet and confer about any specific document withheld on the basis of privilege.  *See* Barber Decl. ¶ 20. Instead, on August 25, 2023, Plaintiffs sent the NFL Defendants a draft of the present Joint Stipulation, which raised new challenges to 96 entries in the NFL Defendants'

---

[7] Plaintiffs selectively quote language from an August 16 email from NFL's counsel and imply that the NFL was unwilling to meet and confer with Plaintiffs.  *Supra*, at 4.  But the full text of that email makes clear that the NFL was willing to meet with Plaintiffs and even offered a proposed time for that meeting: "It is not clear to me that an additional meet and confer is necessary. **If Plaintiffs would like to discuss this further, however, we would be available Wednesday (8/23) after 2p et.**"  Mirzadeh Ex. 7 (Aug. 16, 2023 email from M. Warren), at 3.  Plaintiffs' counsel ignored the proposed meeting time in their response, instead stating that they would "reach out should we have questions." *Id*. at 4; Barber Decl. ¶ 19.

amended privilege log. *See id*. The NFL Defendants immediately sought to meet and confer on the contested entries, in lieu of burdening the Court with another discovery dispute, and the parties thereafter met for several hours over several weeks, discussing each of Plaintiffs' concerns. *See id*.

As Plaintiffs acknowledge, the NFL conducted a careful re-review of its prior privilege determinations, ultimately narrowing its privilege calls on 77 of the 96 contested entries. *See supra*, at 4; Barber Decl. ¶ 21. Following that re-review, on September 13, 2023, the NFL produced an amended privilege log and over 100 documents reflecting the NFL's narrowed privilege determinations. *See* Barber Decl. ¶ 21; Mirzadeh Decl. Ex. 10 (Sept. 13, 2023 Production). The following week, the NFL produced a second amended privilege log and another small set of documents, to account for documents which had been inadvertently omitted from the September 13 production due to a miscommunication with a document vendor. *See* Barber Decl. ¶ 22; Mirzadeh Decl. Exs. 11 & 12.

On September 22, 2023, Plaintiffs served the NFL with their portion of the present Joint Stipulation, challenging the privilege calls on over 20 entries in the NFL's second amended privilege log.

### 2. Legal Standard

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). As the party asserting privilege over documents, the NFL Defendants need only make a "prima facie showing that the privilege protects the information the party intends to withhold." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *see also Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2015 WL 4347711, at *4 n.45 (N.D. Cal. July 15, 2015). The NFL Defendants have made that prima facie showing here by submitting a thorough and appropriately detailed privilege log.

Federal Rule of Civil Procedure 26(b)(5) requires that a party withholding documents describe them "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the [claim]." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (quoting Fed. R. Civ Proc. 26(b)(5)). The Ninth Circuit has endorsed the privilege log as a "means of sufficiently establishing the privilege." *In re Grand Jury Investigation*, 974 F.2d at 1071. The description in a privilege log is sufficient to establish privilege where it contains the following information: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Id.*

Here, the NFL Defendants were timely in providing their privilege log, provided a detailed description for each document, and re-reviewed and amended their log to provide further detail and to further tailor their privilege calls for 75 of the 96 entries challenged by Plaintiffs. Despite the NFL Defendants' good faith efforts to balance Plaintiffs' concerns with their own need to ensure the protection of privileged communications, Plaintiffs continue to demand that the NFL Defendants divulge privileged materials.

Under these circumstances, and for the reasons listed below, Plaintiffs' motion should be denied.

### 3. The NFL Defendants Properly Asserted Privilege Over The Challenged Documents.

The NFL Defendants properly asserted privilege over the following documents that Plaintiffs seek to challenge.

Reference No. 7

1    ▮▮▮▮▮▮▮▮.  The NFL Defendants produced the email communication in full

2    and the attached notes with narrow redactions.  ▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12    ▮▮▮▮▮▮▮▮

13    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14    Contrary to Plaintiffs' suggestion, the notes do not memorialize discussions with any

15    third party. *Supra*, at 8.  Rather ▮▮▮▮▮▮▮▮▮▮▮▮▮

16    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26    ▮▮▮▮▮▮▮▮

27    Other portions of the note are business-oriented and have not been redacted.

28    But the primary purpose of the two redacted sections is plainly legal.  Requests for

1   legal advice and an attorney's advice in response to those requests are at the heartland

2   of what the attorney-client privilege protects.   *See, e.g., In re Grand Jury*

3   *Investigation*, 974 F.2d at 1070 ("The attorney-client privilege protects confidential

4   disclosures made by a client to an attorney in order to obtain legal advice, as well as

5   an attorney's advice in response to such disclosures." (internal citations omitted)).

6   The NFL Defendants' redactions to Reference No. 7 are therefore both necessary and

7   appropriate to preserve attorney-client privilege.

8        The description of Reference No. 7 in the privilege log is sufficient to establish

9   attorney-client privilege.   The description includes the names of in-house attorneys

10  to receive the document (as well as other recipients), the nature of the document

11  ("attachment includes request for legal advice regarding the subject matter conveyed

12  in the email subject line"), the file name, and the date of the document. *See* Mirzadeh

13  Decl. Ex. 12, at 3; *In re Grand Jury Investigation*, 974 F.2d at 1071.   The relevant

14  entry in the log thus makes "a *prima facie* showing that the attorney-client privilege

15  applie[s]" to Reference No. 7. *In re Grand Jury Investigation*, 974 F.2d at 107

16        <u>Reference Nos. 32–34, 47, 53</u>

17        The NFL Defendants properly withheld as privileged Reference Nos. 32–34,

18  47, and 53, ████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ███████████████████████████████   The attachments in question—all preliminary

22  drafts of that presentation—are clearly stamped "confidential attorney-client

23  communication" and "prepared at the direction of counsel." *See, e.g.*, *Coleman v.*

24  *Sterling*, 2011 WL 1099793, at *2 (S.D. Cal. Mar. 24, 2011) (concluding that certain

25  documents were privileged in part because "[e]ach page of the reports is marked with

26  a designation stating 'Confidential Attorney-Client Communication' and the reports

27  are prefaced by a warning regarding confidentiality and duties"). ████████████

28  ████████████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮

4    *Reference Nos. 32–34.*  Reference Nos. 32–34 each involve the same version

5 of the draft presentation, which was prepared at the direction of legal counsel and

6 circulated for the primary purpose of obtaining legal advice.

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See In re*

13 *CV Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at *6 (N.D. Cal. June 16, 2006)

14 (privilege properly invoked over "communications in connection with the giving or

15 obtaining of legal advice and were animated by the need for such advice"). 

16 Moreover, the attached draft deck was prepared at the direction of counsel in the

17 context of obtaining further legal advice on the same subject.  *See Park v. Cas*

18 *Enterprises, Inc.*, 2009 WL 10671877, at *6 (S.D. Cal. July 31, 2009) ("Whether the

19 communications are done for the purpose of seeking advice and/or at the direction of

20 counsel, the privilege attaches.").[9]  Reference No. 32 was therefore properly withheld

21 as privileged.

22    Reference Nos. 33 and 34 each contain a privileged attachment,[10] ▮▮▮▮▮

23

24 ─────────────

[8] Plaintiffs make no argument challenging the privilege call with respect to the cover email associated with Reference No. 32.  *See supra* 9-10.

25 [9] Contrary to Plaintiffs' assertion, *supra*, at 9–10, materials created by non-lawyers at the direction

26 of counsel for the purposes of obtaining legal advice are protected by attorney-client privilege. *See, e.g., Park v. Cas Enterprises, Inc.*, No. 08CV385 DMS (NLS), 2009 WL 10671877, at *6 (S.D.

27 Cal. July 31, 2009) (describing communications made at the direction of counsel as protected by "the attorney-client privilege").

28 [10] Plaintiffs make no argument challenging the privilege call with respect to the cover email associated with Reference No. 33. *See supra*, at 9-10.

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████      For the same reasons as Reference No. 32, Reference Nos. 33 and

6 34 were also properly withheld as privileged.

7       The descriptions of Reference Nos. 32–34 in the privilege log are sufficient to

8 establish attorney-client privilege.  The descriptions for each include the names of

9 in-house attorneys to receive the document (as well as other recipients), the nature of

10 the document, the file name, and the date of the document.  *See* Mirzadeh Decl. Ex.

11 12, at 7–8; *In re Grand Jury Investigation*, 974 F.2d at 1071.  The relevant entry in

12 the log thus makes "a *prima facie* showing that the attorney-client privilege applie[s]"

13 to Reference Nos. 32–34.  *In re Grand Jury Investigation*, 974 F.2d at 1071.

14       *Reference Nos. 47 & 53.* ████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27

28 ───────────────────────
[11] Plaintiffs do not challenge the privilege call with respect to the email communication associated with Reference No. 47.

1 ████████████████████████████████████.

2     Reference Nos. 47 and 53 thus involve a run-of-the-mill request for legal

3 advice from in-house counsel that is protected by the attorney-client privilege. ██

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ███████████████████████████████ Because the primary

11 purpose of the documents in both Reference Nos. 47 and 53 was to obtain legal advice

12 from in-house counsel, those documents were properly withheld as privileged.

13     The descriptions of Reference Nos. 47 and 53 in the privilege log are sufficient

14 to establish attorney-client privilege.  The descriptions for each include the names of

15 in-house attorneys to receive the email communication (as well as other recipients),

16 the nature of the document, the subject line of the email communication, and the date

17 of the email communication.  *See* Mirzadeh Decl. Ex. 12, at 11, 13; *In re Grand Jury*

18 *Investigation*, 974 F.2d at 1071.  The relevant entry in the log thus makes "a *prima*

19 *facie* showing that the attorney-client privilege applie[s]" to Reference Nos. 47 and

20 53.  *In re Grand Jury Investigation*, 974 F.2d at 1071.

21     <u>Reference No. 56</u>

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28 ████████████████████████████████████████████

1  ███████████████████████████████████████████

2  ███████████    *See In re CV Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at \*4

3  ("In addition to context, the Court factors in the breadth of the recipient list in

4  assessing the centrality of potential legal advice generated by the communication.");

5  *see also Cty. of Roseville Employees' Ret. Sys.*, 2022 WL 3083000, at \*13 ("An

6  implied request for legal advice is sufficient to support attorney-client privilege."

7  (citation omitted)). ███████████████████████████████████

8  ███████████████████████████████████████████

9  ███████████████████████████████████████████

10 ███████████████████████████████████   *In re CV*

11 *Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at \*4 (emphasis omitted).

12 ███████████████████████████████████████████

13 ███████████████████████████████████████████

14 ███████████████████████████████████████████

15 ███████████████████████████████████████████

16 ███████████████████████████████████████████

17 ███████████████████████████████████████████

18 ███████████████████████████████████████████

19 ███████████████████████████████████████████

20 ██████████████████████████████████. Because of this

21 and because the requests for legal advice "so permeate[]" the withheld version of the

22 presentation, the privileged legal material "cannot be discretely separated" from any

23 non-legal material in presentation. *In re CV Therapeutics, Inc. Secs. Litig.*, 2006 WL

24 1699536, at \*4 (quoting *In re Grand Jury Subpoena*, 357 F.3d at 910).   Redaction is

25 thus not workable for this document, and it was therefore properly withheld in full.

26      The description of Reference No. 56 in the privilege log is sufficient to

27 establish attorney-client privilege.   The description includes the names of in-house

28 attorneys to receive the document (as well as other recipients), the nature of the

document (attachment "requests legal advice regarding the subject matter contained in the email subject line and file name of the attachment"), the file name, and the date of the document.  *See* Mirzadeh Decl. Ex. 12, at 14; *In re Grand Jury Investigation*, 974 F.2d at 1071.  The relevant entry in the log thus makes "a *prima facie* showing that the attorney-client privilege applie[s]" to Reference No. 56.  *In re Grand Jury Investigation*, 974 F.2d at 107.

Reference No. 70

Reference No. 70 consists of a cover email and two attachments; the cover email was produced and the attachments (a Word version and a PDF version of the same document) were produced with redactions. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████ *Cty. of Roseville Employees' Ret. Sys.*, 2022 WL 3083000, at *13 (citation omitted). ██████████████████████████████

██████████████████████████████████████████

███████████████████████████. *See In re CV Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at *4 ("In addition to context, the Court factors in the breadth of the recipient list in assessing the centrality of potential legal advice generated by the communication.").

Because the primary purpose of the redacted portions of the attachment is to

1    seek legal advice from the in-house lawyers on the email chain, Reference No. 70

2    was properly redacted to protect attorney-client privilege.

3          The description of Reference No. 70 in the privilege log is sufficient to

4    establish attorney-client privilege.  The description includes the names of in-house

5    attorneys to receive the documents (as well as other recipients), the nature of the

6    redacted documents (attachments "redacted to protect legal advice regarding the

7    subject matter conveyed in the email communication and title of the attachments."),

8    the file names, and the date of the documents.  *See* Mirzadeh Decl. Ex. 12, at 18; *In*

9    *re Grand Jury Investigation*, 974 F.2d at 1071.  The relevant entry in the log thus

10   makes "a *prima facie* showing that the attorney-client privilege applie[s]" to

11   Reference No. 70.  *In re Grand Jury Investigation*, 974 F.2d at 107.

12                    Reference Nos. 110–112, 128–130, 132–133[12]

13         These reference numbers involve the same email chain and the same

14   attachment, ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████  *Cty. of Roseville*

25

26   ─────────────────

27   [12] Plaintiffs' motion focuses only on Reference No. 133, but says that the same reasoning should
     govern the privilege determinations for Reference Nos. 110-112, 128-130, and 132.  Out of an
28   abundance of caution, we discuss all of the Reference Nos. listed in Plaintiffs' motion.

1    *Employees' Ret. Sys*, 2022 WL 3083000, at *13. ███████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████. *See In re CV*

4    *Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at *4 ████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████████████████████████. *In re CV*

12   *Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at *5.

13        Because the primary purpose of the redacted portions of the email chain and

14 attachments is to seek legal advice from the in-house lawyers on the email chain,

15 Reference Nos. 110–112, 128–130, 132–133 were properly redacted to protect

16 attorney-client privilege.

17        The descriptions of Reference Nos. 110–112, 128–130, 132–133 in the

18 privilege log are sufficient to establish attorney-client privilege. The descriptions

19 include the names of in-house attorneys to receive the documents (as well as other

20 recipients), the nature of the documents, the file names of attachments and subject

21 lines of email communications, and the date of the document. *See* Mirzadeh Decl.

22 Ex. 12, at 29-30, 33-35; *In re Grand Jury Investigation*, 974 F.2d at 1071. The

23 relevant entries in the log thus make "a *prima facie* showing that the attorney-client

24 privilege applie[s]" to Reference Nos. 110-112, 128-130, 132-133. *In re Grand Jury*

25 *Investigation*, 974 F.2d at 107.

26        <u>Reference Nos. 199–200, 204–211</u>[13]

27

28    [13] Plaintiffs' motion focuses only on Reference No. 204, but says that the same reasoning should

The NFL Defendants properly withheld as privileged Reference Nos. 199–200 and 204–211, ███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ The attachments in question are stamped "confidential attorney-client communication" and "prepared at the direction of counsel." *See Coleman*, 2011 WL 1099793, at *2 (discussing privilege stamps). ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

*Reference No. 199*: █████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ *See AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (attorney-client privilege protects "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice"); *see also Kintera, Inc.*, 219 F.R.D. at 514 (attorney-client privilege protects "communications between employees [made] for the purpose of transmitting

_____

govern the privilege determinations for Reference Nos. 199–200 and 205–211. *See supra*, at n.5. Out of an abundance of caution, we discuss all of the Reference Nos. listed in Plaintiffs' motion.

1    information to counsel for advice").

2    *Reference No. 200*: ████████████████████████████

3    ████████████████████████████████████████████████

4    █████████████████████████.  The same attachment included in Reference

5    No. 199 is attached to the Zoom invitation.  The text of the invitation states that the

6    purpose of the call is to review the attachment. ███████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████.  *In re CV*

9    *Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at *5; *see also In re Grand Jury*

10    *Investigation*, 974 F.2d at 1070 ("The attorney-client privilege protects confidential

11    disclosures made by a client to an attorney in order to obtain legal advice, as well as

12    an attorney's advice in response to such disclosures." (internal citations omitted)).

13    *Reference Nos. 204–211*: ████████████████████████

14    ████████████████████████████████████████████████

15    ████████████████████████████████████████████████

16    ████████████████████████████████████████████████

17    ████████████████████████████████████████████████

18    ████████████████████████████████████████████████

19    ████████████████████████████████████████████████

20    ████████████████████████████████████████████████

21    ████████████████████████████████████████████████

22    ████████████████████████████████████████████████

23    ████████████████████████████████████████████████

24    ████████████████████████████████████████████████

25    ██████████████████████████████████████████

26    The descriptions of Reference Nos. 199–200 and 204–211 in the privilege log

27    are sufficient to establish attorney-client privilege.  The descriptions include the

28    names of in-house attorneys to receive the documents (as well as other recipients),

the nature of the documents, the file names of attachments and subject lines of email communications, and the date of the document. *See* Mirzadeh Decl. Ex. 12, at 45– 47; *In re Grand Jury Investigation*, 974 F.2d at 1071. The relevant entries in the log thus make "a *prima facie* showing that the attorney-client privilege applie[s]" to Reference Nos. 199–200 and 204–211. *In re Grand Jury Investigation*, 974 F.2d at 107.

Reference Nos. 214, 217, 219

Reference Nos. 214, 217, and 219 all involve the same email chain and are related to the same meeting discussed in Reference Nos. 47 and 53.

That broader context of that meeting makes clear that Reference Nos. 214, 217, and 219 are all "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice." *AT&T Corp. v. Microsoft Corp.*, WL 21212614, at *3. Thus, based on "the context of the communication and content of the document," a "request for legal advice is in fact fairly implied" in the email chain. *In re CV Therapeutics, Inc. Secs. Litig.*, 2006 WL 1699536, at *4 (emphasis omitted). Reference Nos. 214, 217, and 219 were therefore properly withheld.[14]

The descriptions of Reference Nos. 214, 217, and 219 in the privilege log are sufficient to establish attorney-client privilege. The descriptions include the names of in-house attorneys to receive the email communications (as well as other

[14] Although NFL's counsel initially represented during meet-and-confer that the NFL Defendants were considering downgrading Reference Nos. 214, 217, and 219, NFL's counsel at all times reserved all rights to modify their position with respect to different privilege entries. After further review of the documents associated with Reference Nos. 214, 217, and 219, the NFL Defendants determined that they could not waive the attorney-client privilege associated with those documents.

33

recipients), the nature of the email communications, the subject lines of email communications, and the date of the email communications. *See* Mirzadeh Decl. Ex. 12, at 47–48; *In re Grand Jury Investigation*, 974 F.2d at 1071. The relevant entries in the log thus make "a *prima facie* showing that the attorney-client privilege applie[s]" to Reference Nos. 214, 217, and 219. *In re Grand Jury Investigation*, 974 F.2d at 107.

### Reference Nos. 16 & 212

The NFL Defendants produced Reference Nos. 16 and 212 on October 2, 2023. *See* Barber Decl. ¶ 24. The NFL Defendants notified Plaintiffs on September 29, 2023 of its intention to produce both documents, and given that resolution, requested that Plaintiffs remove their discussion of the two entries from this Joint Stipulation. Plaintiffs refused to do so. *See id.*

### 4. *In Camera* Review Is Unwarranted And Would Be A Waste Of Judicial Resources.

"Although in camera review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified." *In re Grand Jury Investigation*, 974 F.2d at 1074. Accordingly, "[s]ome threshold must be met by the party contesting the application of privilege before the court examines the materials." *Id*.

The Ninth Circuit applies a two-step process to determine whether disputed materials should be reviewed in camera. *Id.* at 1074–75. First, the party challenging the privilege must show "a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075. To make that showing, the moving party must rely on nonprivileged information and cannot rely solely on "unfounded suspicion" or "mere speculation." *Rock River Communications, Inc. v. Universal Music Grp, Inc*., 745 F.3d 343, 353 (9th Cir. 2014); *Dickson v. Century Park E. Homeowners Ass'n*, 2021 WL 3148878, at *12 (C.D. Cal. Mar. 9, 2021). If the moving party satisfies this threshold burden, the Court has discretion to order in camera review based on

various factors: "the amount of material [the Court] ha[s] been asked to review, the relevance of the alleged privileged material to the case, and the likelihood that in camera review will reveal evidence to establish the applicability of the [privilege] exception." *Dickinson*, 2021 WL 3148878, at *12.

Plaintiffs cannot make the threshold showing.  Plaintiffs' challenges amount to no more than "unfounded suspicion" and "speculation."  Most of Plaintiffs' objections amount to baseless speculation that the withheld documents must actually have a business (rather than legal) purpose, but that speculation alone does not provide "a factual basis sufficient to support a reasonable, good faith belief" that the underlying material is not privileged.  *In re Grand Jury Investigation*, 974 F.2d at 1074–75.  *In camera* review is thus unwarranted.

Even if the Court were to find that Plaintiffs have satisfied the threshold burden, the Court should not conduct in camera review of the challenged documents. For the reasons explained above, there is "little to no likelihood that an in camera review will reveal evidence to establish the applicability of an exception to the privilege." *Dickson*, 2021 WL 3148878, at *12.  If the Court has concerns about the adequacy of particular descriptions in Defendants' privilege log, the more efficient course of action would be first to require Defendants to amend the privilege log to provide whatever additional detail the Court would find helpful and then to assess based on the amended log whether the "intrusion" of *in camera* review is warranted. *In re Grand Jury Investigation*, 974 F.2d at 1074; *see, e.g.*, *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 11420853, at *4 (N.D. Cal. Mar. 16, 2018) (ordering party to amend its privilege log to provide more detailed descriptions of the bases for asserting privilege).

### 5. Conclusion

The NFL Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated:    October 3, 2023                    Respectfully submitted,

                                    By:    */s/ Farhad Mirzadeh*
                                           Farhad Mirzadeh

                                           Marc M. Seltzer (54534)
                                           mseltzer@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067
                                           Tel: (310) 789-3100
                                           Fax: (310) 789-3150

                                           William C. Carmody (*Pro Hac Vice*)
                                           bcarmody@susmangodfrey.com
                                           Seth Ard (*Pro Hac Vice*)
                                           sard@susmangodfrey.com
                                           Tyler Finn (*Pro Hac Vice*)
                                           tfinn@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1301 Avenue of the Americas, 32nd Fl.
                                           New York, NY 10019
                                           Tel: (212) 336-8330
                                           Fax: (212) 336-8340

                                           Ian M. Gore (*Pro Hac Vice*)
                                           igore@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1201 Third Avenue, Suite 3800
                                           Seattle, WA 98101
                                           Tel: (206) 505-3841
                                           Fax: (206) 516-3883

                                           Scott Martin (*Pro Hac Vice*)
                                           smartin@hausfeld.com
                                           HAUSFELD LLP
                                           33 Whitehall Street, 14th Floor
                                           New York, NY 10004
                                           Tel: (646) 357-1100
                                           Fax: (212) 202-4322

                                           Christopher L. Lebsock (184546)
                                           clebsock@hausfeld.com
                                           Samuel Maida (333835)
                                           smaida@hausfeld.com
                                           HAUSFELD LLP
                                           600 Montgomery St., Suite 3200
                                           San Francisco, CA 94111
                                           Tel: (415) 633-1908
                                           Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*


s/ Jeremy S. Barber

Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800

37

Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP** One
CityCenter 850 Tenth Street NW
Washington, DC 20001 Telephone: (202)
662-6000 Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

*All signatories listed, and on whose behalf the filing is submitted, concur in the
filing's content and have authorized the filing.*

38