Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION *IN LIMINE* NO. 2 TO EXCLUDE IMPROPER EVIDENCE AND ARGUMENT REGARDING THE RELIEF SOUGHT BY PLAINTIFFS**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: February 7, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

Plaintiffs respectfully request that this Court preclude the NFL Defendants from seeking to introduce evidence or making arguments about the following subject matters pursuant to Federal Rules of Evidence 401, 402, and 403.

### I. This Court Should Prohibit Evidence or Argument Concerning Any Injunctive Relief

Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiffs move *in limine* for an order prohibiting the NFL from referencing or presenting any evidence or argument about the fact that Plaintiffs are seeking or may be entitled to any injunctive relief as authorized by the federal antitrust laws, 15 U.S.C. § 26. It should be noted that the NFL has already agreed to Plaintiffs' motion *in limine* to preclude the introduction of evidence and argument concerning treble damages and attorney fees and costs, which are authorized by the same federal statute that permits injunctive relief, 15 U.S.C. § 15. These statutory provisions—including treble damages, attorney fees, and injunctive relief—work in concert to ensure private enforcement of antitrust laws and deterrence of violations. These Court-ordered statutory remedies lack any relevance to the factual issues to be decided by the jury, and their mention could only contaminate the jury's consideration of the facts that matter here.

The consequences of an antitrust violation are significant, by design of Congress. Under the Clayton Act, a successful antitrust plaintiff "shall . . . have injunctive relief," as appropriate. 15 U.S.C. § 26. Injunctive relief, in addition to other relief available under the Clayton Act (such as treble damages), serves to remediate, punish, and deter economic harm. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969) ("[T]he purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws."); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) ("*Perma Life*") (noting "the usefulness of the private action as a bulwark of antitrust enforcement" and "the purposes of the

antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."), *overruled in part on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

But this Court alone is responsible for determining the appropriateness and scope of injunctive relief after trial. The jury's factfinding role ends once it determines liability and the amount of damages, at which point this Court must, as a matter of law, determine the suitability of injunctive relief. *See, e.g.*, *eBay Inc v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991) ("*Brooks*"); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231, 2007 WL 851868, at *2 (D.D.C. 2007) ("[T]he jury's job in this case will be to determine the number of violations and fix the amount of actual damages, if any. The application of statutory penalties and trebling of damages are mechanical actions for the Court alone.").

Given this division of labor—and the need to protect the scheme mandated by Congress—federal courts invariably shield antitrust juries from learning of the Clayton Act's compulsory remedies. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819 CW (N.D. Cal.), Order on Motions In Limine and for Pre-Trial Preparation, at *6 (Dec. 16, 2010) (Dkt. No. 1206); *United States Football League v. Nat'l Football League*, No. 84-7484, 1986 WL 7012, at *2-3 (S.D.N.Y. June 17, 1986) ("*United States Football League*") (barring the NFL "from referring to the possibility of injunctive relief in front of the jury, since such references would needlessly confuse the issues and unfairly prejudice plaintiffs"). These important safeguards prevent any jury action that might require "consider[ation of] the 'impact' of uncertain injunctive relief." *United States Football League*, 1986 WL 7012, at *2-3.

The Federal Rules of Evidence compel this prohibition. After all, any remedy provided by this Court pursuant to its statutory duties is a question of law and

irrelevant to the issues that the jury needs to address. Fed. R. Evid. 401; *see, e.g.*, *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir. 1974) (discussing that "a district court can sufficiently instruct the jury to determine only actual damages" and that the Clayton's Act statutory remedies "ha[ve] no relevance in determining the amount a plaintiff was injured by the anti-trust violation."); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910, 2012 WL 12832376, at *1 (E.D. Va. Mar. 30, 2012) ("Whether injunctive relief is appropriate should plaintiff prevail, will be determined solely by the Court.").

Even if this Court's statutory consideration of injunctive relief had any probative value for the jury, it would be substantially outweighed by the possibility of prejudice, confusion, and wasting time. Fed. R. Evid. 403. As numerous courts have concluded, there is no reason to inform the jury of the Clayton Act's features other than to sow confusion and invite prejudice, including by improperly seeking to reduce the damages award or by "warning" the jury of the potential implications of injunctive relief, so as to evade liability. *See Brooks*, 938 F.2d at 1052 (describing "[t]he justifiable fear of anti-trust plaintiffs … that the juries will adjust the damage award downward or find no liability, therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff"); *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1370 (10th Cir. 1972) ("[I]n an antitrust case it is not for the jury to fix the amount of the judgment. Its function is completed once it determines the amount of damages. As we view it, therefore, it serves no useful function to communicate this information to the jury and it is potentially harmful, and hence this action of the trial court was error.").

In this District, one court has warned that "reference to the possibility of injunctive relief could distract the jury from its job of determining whether and in what amount damages should be awarded." *Broadcom Corp. v. Emulex Corp.*, No.

2011 WL 13130705, at *1 (C.D. Cal. Aug. 10, 2011).[1] Indeed, the NFL has previously been barred in an antitrust case "from referring to the possibility of injunctive relief in front of the jury, since such references would needlessly confuse the issues and unfairly prejudice plaintiffs." *United States Football League*, 1986 WL 7012, at *2-3 ("[An] antitrust jury forced to consider the 'impact' of uncertain injunctive relief … could become hopelessly confused. For example, in the instant case, neither plaintiffs nor defendants can predict with certainty what injunctive relief, if any, this Court may eventually grant to the USFL.").

Plaintiffs' statutory entitlement to any injunction is simply irrelevant to the jury's task of determining liability, and if there were some relevance, the possibility of unfair prejudice, confusion of the issues, and jury misdirection is far too great. Under these circumstances, this Court should prohibit any mention of such relief available to Plaintiffs.

## II. This Court Should Prohibit Evidence or Argument Concerning Any Financial Benefit or "Pass on" of Any Overcharge, Any Supposed Failure to Mitigate Damages, and Any Supposed Fault from Plaintiffs' Consumer Choices

Furthermore, the NFL should be prevented, under Federal Rules of Evidence 401, 402, and 403, from presenting any irrelevant evidence or argument casting blame on Plaintiffs for their consumer choices, suggesting that the Plaintiffs failed to mitigate damages, or highlighting Plaintiffs' downstream activities. Those are not viable defenses to an antitrust violation, and they have no place at trial here. More broadly, no one disputes that out-of-market televised NFL games are popular and

---

[1] For the same reasons, federal courts nationwide have barred defendants from referring to potential future injunctive relief in the presence of the jury. *See Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, No. 05-cv-1887, 2009 WL 3754170, at *5 (D. N.J. Nov. 5, 2009); *Verizon Servs., Corp. v. Cox Fibernet Virginia, Inc.*, No. Civ. A. 1:08-cv-0157, 2008 WL 5552302, at *1 (E.D. Va. Sept. 12, 2008); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del. 2005); *Richards Mfg. Co. v. Thomas & Betts Corp.*, No. Civ. 01-4677, 2005 WL 6043427, at *1 (D.N.J. Oct. 31, 2005); *Arthrocare Corp. v. Smith & Nephew, Inc.*, No. Civ.A. 01-504, 2003 WL 1905636, at *1 (D. Del. Apr. 14, 2003); *Computer Assocs. Int'l, Inc. v. American Fundware, Inc.*, 831 F. Supp. 1516, 1530 (D. Co. 1993).

enjoyable (like numerous other valued products and services marred by anticompetitive conduct), but Plaintiffs, as consumers, deserve the protection of the antitrust laws no less. This trial concerns the NFL's conduct; *Plaintiffs' conduct* is largely beside the point.

Federal antitrust courts regularly prohibit evidence and argument impugning plaintiffs' decision-making as consumers or highlighting any "pass on" of the overcharge because those avenues lack relevance and can only cause prejudice and confusion. So, for example, courts in the Ninth Circuit recognize that an antitrust plaintiff can recover the full measure of damages even if it passed through some of those excessive costs to customers. *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980); *Costco Wholesale Corp. v. AU Optronics Corp.*, No. C13-1207, 2014 WL 4674390, at *3 (W.D. Wash. Sept. 17, 2014) ("there is no need to consider burdening the jury with otherwise irrelevant pass-through evidence"); *see In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, No. 15-ML-02668 PSG (JEMx), 2022 WL 1766927, at *1 (C.D. Cal. May 9, 2022) (recognizing the unavailability of a pass-through defense and noting that "the NFL Defendants are not asserting a pass-through defense" in this litigation).

These decisions are rooted in the Supreme Court's holding, some fifty years ago, that antitrust defendants who overcharge their customers are "not entitled to assert a passing-on defense." *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 490 n.8, 494 (1968) (it is "irrelevant that the plaintiff may have passed on the burden of the overcharge" to its own customers.); *see In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7800819, at *8 (N.D. Cal. Nov. 15, 2016) ("If the evidence is irrelevant or prohibited by *Hanover Shoe*, it should be excluded.").

For similar reasons, any actual or perceived downstream benefits for the Plaintiffs, such as increased profits, are irrelevant and the introduction of such evidence can be prejudicial. *Braintree Labs., Inc. v. McKesson Corp.*, No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("[A] plaintiffs alleged benefit

from a defendant's anti-competitive behavior ... is not relevant to whether the plaintiff [direct purchaser] suffered a cognizable antitrust injury.... [T]he relevant question is whether the plaintiff paid an overcharge."); *In re Urethane Antitrust Litig.*, No. 2:08-5169, 2015 WL 9294670, at *2 (D.N.J. Dec. 21, 2015) ("[T]he probative value of the proffered [downstream] evidence is low. The risk of prejudice, on the other hand, is high."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540321, at *2 (N.D. Ga. July 17, 2012) (granting plaintiffs' motion in limine to exclude plaintiffs' financial information and noting that "[u]nder *Hanover Shoe* and its progeny, plaintiffs' financial information is irrelevant to any issue in this case").

    Relatedly, arguments concerning a duty to mitigate are disfavored in cases where plaintiffs are seeking to recoup overcharges for products sold at supracompetitive prices. *See In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) (denying mitigation defense when plaintiffs sought overcharge damages caused by buyer cartel); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 6216664, at *11 (N.D. Cal. Oct. 25, 2016) ("Defendants are precluded from presenting evidence or argument suggesting the DAPs mitigated, or could have mitigated, their damages by increasing the prices they charged their customers."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827, 10-1064, 2012 WL 6000154, at *3 (N.D. Cal. Nov. 30, 2012) ("the Court declines to hold that defendants may assert mitigation as a defense to Dell's horizontal price-fixing claim"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 10086747, at *2 (Dec. 16, 2010) (granting unopposed motion in limine to exclude "arguments or evidence that Plaintiffs failed to mitigate damages.").

    Notions of unclean hands and comparative fault also have no bearing here. The Supreme Court has instructed that "the doctrine of *in pari delicto*, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust

action." *Perma Life*, 392 U.S. at 140; *THI-Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 995 (9th Cir. 1980) ("The Supreme Court has determined that the common law defense of *in pari delicto* has no place in federal antitrust litigation"); *see Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 214 (1951); *Purex Corp., Ltd. v. Gen. Foods Corp.*, 318 F. Supp. 322, 323 (C.D. Cal. 1970) (recognizing that the Supreme Court has "abolished the defense of 'unclean hands' in private antitrust suits"). As a result, casting blame on antitrust plaintiffs (in any form) for *defendants'* actions is inappropriate at trial.

In the absence of a cognizable defense, any evidence of this type lacks probative value and would only introduce prejudice and confusion. Plaintiffs' downstream commercial activities, their consumer choices, and any supposed failure to mitigate damages are immaterial to the NFL's liability and the amount of damages. But if this information were permitted at trial, the jury would understandably be misled and confused into believing it plays a role in factfinding determinations. For these reasons, this Court should bar any evidence or argument concerning downstream "pass on" of damages, any supposed failure to mitigate damages, or any supposed fault from Plaintiffs' consumer choices. For the sake of clarity, this should include any suggestion that Plaintiffs are improperly seeking a "refund" for a product they enjoyed, which implies something untoward when the opposite is true: Congress has strongly encouraged private plaintiffs to seek the return of antitrust overcharges for any product, no matter its merits.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion *in limine* to preclude the NFL Defendants from presenting any evidence or argument concerning the prospect of injunctive relief, downstream "pass on" of overcharges, or any failure to mitigate damages or notion of supposed fault from Plaintiffs' consumer choices.

| | | |
|---|---|---|
| 1 | Dated: January 5, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By: /s/ *Marc M. Seltzer* |
| 4 | | Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com |
| 5 | | Kalpana Srinivasan (237460)<br>ksrinivasan@susmangodfrey.com |
| 6 | | Amanda Bonn (270891)<br>abonn@susmangodfrey.com |
| 7 | | SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400 |
| 8 | | Los Angeles, CA 90067<br>Tel: (310) 789-3100 |
| 9 | | Fax: (310) 789-3150 |
| 10 | | William C. Carmody (*Pro Hac Vice*)<br>bcarmody@susmangodfrey.com |
| 11 | | Seth Ard (*Pro Hac Vice*)<br>sard@susmangodfrey.com |
| 12 | | Tyler Finn (*Pro Hac Vice*)<br>tfinn@susmangodfrey.com |
| 13 | | SUSMAN GODFREY L.L.P<br>1301 Avenue of the Americas, 32nd Fl. |
| 14 | | New York, NY 10019<br>Tel: (212) 336-8330 |
| 15 | | Fax: (212) 336-8340 |
| 16 | | Ian M. Gore (*Pro Hac Vice*)<br>igore@susmangodfrey.com |
| 17 | | SUSMAN GODFREY L.L.P.<br>401 Union Street, Suite 3000 |
| 18 | | Seattle, WA 98101<br>Tel: (206) 505-3841 |
| 19 | | Fax: (206) 516-3883 |
| 20 | | Scott Martin (*Pro Hac Vice*)<br>smartin@hausfeld.com |
| 21 | | HAUSFELD LLP<br>33 Whitehall Street, 14th Floor |
| 22 | | New York, NY 10004<br>Tel: (646) 357-1100 |
| 23 | | Fax: (212) 202-4322 |
| 24 | | Christopher L. Lebsock (184546)<br>clebsock@hausfeld.com |
| 25 | | Samuel Maida (333835)<br>smaida@hausfeld.com |
| 26 | | HAUSFELD LLP<br>600 Montgomery St., Suite 3200 |
| 27 | | San Francisco, CA 94111<br>Tel: (415) 633-1908 |
| 28 | | Fax: (415) 633-4980 |

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*