Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' MOTION IN LIMINE NO. 5 TO EXCLUDE CERTAIN OPINIONS OF DANIEL A. RASCHER**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: February 7, 2024<br>Time: 2:30 p.m.<br>Courtroom: First Street Courthouse<br>             350 West 1st Street<br>             Courtroom 6A<br>             Los Angeles, CA 90012 |

# TABLE OF CONTENTS

LEGAL STANDARD ..................................................................................................1

ARGUMENT .............................................................................................................2

I.    Dr. Rasher Has Not Reliably Applied A Viable Methodology To Model The But-For World Absent The Challenged Horizontal Conduct..................................................................................................2

    A.    Dr. Rascher has not identified a reliable benchmark for what would occur in a but-for world without joint telecast licensing. ..........2

    B.    Dr. Rascher's but-for world assumes legally impermissible outcomes. ..................................................................................................4

    C.    Dr. Rascher failed to account for the differences between the NFL and college football when applying his methodology..................6

II.    Dr. Rascher's Opinions Regarding Damages Are Not Reliable. ....................7

III.    Dr. Rascher's Opinions On The Commercial Class Are Not Reliable. ..........9

i

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   2012 WL 2571332 (N.D. Cal. June 30, 2012) ...................................................... 4

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) ............................................................................. 6

*Fosmire v. Progressive Max Ins. Co.*,
   277 F.R.D. 625 (W.D. Wash. 2011) ..................................................................... 8

*In re HIV Antitrust Litig.*,
   656 F. Supp. 3d 963 (N.D. Cal. 2023) .................................................................. 6

*In re Lithium Ion Batteries Antitrust Litig.*,
   2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) .................................................. 1, 7

*In re Live Concert Antitrust Litig.*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) ................................................................. 2

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ........................................................ 3

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ............................................................................. 4

*United Food & Com. Workers Loc. 1776 & Participating Emps.
   Health & Welfare Fund v. Teikoku Pharma USA*,
   296 F. Supp. 3d 1142 (N.D. Cal. 2017) ............................................................... 7

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) .................................................. 7, 8

**Other Authorities**

Fed. R. Evid. 103 ........................................................................................................ 1

Fed. R. Evid. 104 ........................................................................................................ 1

Fed. R. Evid. 702 ............................................................................................... *passim*

ii

Case No. 2:15-ml-02668-PSG (SKx)      NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

The NFL Defendants respectfully move this Court *in limine* to exclude certain testimony of Plaintiffs' primary expert economist, Daniel A. Rascher. At the class certification phase, Defendants explained why the fundamental errors in Dr. Rascher's approach warrant exclusion. Defendants respectfully submit that those errors warrant reevaluation in light of the recent amendments to Rule 702 and the need to protect the jury from inadmissible evidence. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *6 (N.D. Cal. Apr. 12, 2017) ("[A]t the class certification stage, the Court does not make an ultimate determination of the admissibility of an expert's report for purposes of a dispositive motion or trial."). And at a minimum, Defendants seek to preserve their arguments as applied to Dr. Rascher's merits opinions.

Dr. Rascher fails to reliably apply a viable methodology to reach (i) his opinions about the but-for world absent the challenged horizontal conduct, (ii) his opinions about damages, and (iii) his opinions about the commercial class. His testimony on these issues is thus inadmissible. *See* Fed. R. Evid. 103, 104, 702.

## **LEGAL STANDARD**

Under the recently amended Rule 702, an expert witness "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that"—among other requirements—"the expert's opinion *reflects a reliable application of the principles and methods to the facts of the case*." Fed. R. Evid. 702 (emphasis added). The amendments overrule previous "incorrect application[s] of Rules 702 and 104(a)" by "many courts [that] have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 Advisory Committee's Note to the 2023 amendment.

1

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

# ARGUMENT

## I. Dr. Rasher Has Not Reliably Applied A Viable Methodology To Model The But-For World Absent The Challenged Horizontal Conduct.

Dr. Rascher's analysis of the but-for world in the absence of the challenged agreements among the NFL and its member Clubs (the "horizontal" conduct) rests on a purported application of the "yardstick" methodology. Dr. Rascher performs no quantitative economic modeling and, instead, relies entirely on a qualitative analogy to the way a subset of college football telecasts are distributed. *See generally* ECF No. 962-4, Expert Report of Daniel A. Rascher, dated February 17, 2023 ("Rep.") ¶¶ 294–420; ECF No. 962-5, Expert Reply Report of Daniel A. Rascher, dated June 9, 2023 ("Reply Rep.") ¶¶ 409–44.

Because some games played by top college teams are telecast on broadcast television or on networks available with a basic cable subscription, Dr. Rascher opines that ▉▉▉ if the challenged horizontal agreements were removed. ECF No. 962-4, Rep. ¶¶ 367–72. Based on that opinion, Dr. Rascher asserts that ▉▉▉—*i.e.*, that access to telecasts that are equivalent to the Sunday Ticket product would be ▉▉▉. *Id.* ¶¶ 320, 377. But relying on a ▉▉▉ fails to reflect "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

### A. Dr. Rascher has not identified a reliable benchmark for what would occur in a but-for world without joint telecast licensing.

While use of a yardstick to estimate antitrust damages can be a viable methodology in some contexts, Plaintiffs bear the burden to prove that Dr. Rascher's analysis "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also, e.g.*, *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 975–76 (C.D. Cal. 2012). Dr. Rascher's yardstick fails

2

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

1  this test.

2  To be admissible, a yardstick must "compare[] the outcome of interest in the
3  affected market to the same outcome in an unaffected benchmark market." *In re*
4  *Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *8
5  n.3 (C.D. Cal. Feb. 7, 2023). Because the "outcome of interest" here is a world
6  without joint telecast licensing at the league level, Dr. Rascher must compare the
7  NFL to a yardstick market in which telecasting rights are not licensed at the league
8  level. College football cannot serve as this yardstick because college football teams
9  do license their telecast rights at the league level.

10  Dr. Rascher confirms that, in college football, each "conference" is in fact a
11  sports league. ECF No. 962-4, Rep. ¶ 37 n.16; *see also* ECF No. 962-10, Expert
12  Report of B. Douglas Bernheim ("Bernheim Rep.") ¶¶ 267–68. Dr. Rascher also
13  confirms that the college conferences collectively license the game telecasting
14  rights for their respective teams. *See* ECF No. 962-5, Reply Rep. ¶ 420; ECF No.
15  962-4, Rep. ¶ 162; Pastan Decl. Ex. 4, Rascher 6/28/23 Dep. Tr. 146:3–9. Those
16  facts are dispositive and fatal to Dr. Rascher's yardstick methodology. Analyzing
17  college conferences cannot explain what would happen in a world where leagues *do*
18  *not* license telecasting rights jointly because college football conferences *do* license
19  their telecast rights jointly.

20  Both of the college football leagues at the heart of Dr. Rascher's yardstick—
21  the SEC and the Big Ten—illustrate this point. As Dr. Rascher concedes, both
22  conferences jointly license the broadcast rights for the games within those
23  conferences, *see* ECF No. 962-4, Rep. ¶ 324, and Big Ten commissioner Kevin
24  Warren ████████████████████████████████████████," *id.*
25  ¶ 332.

26  Confronted with this fatal flaw, *see* ECF No. 962-10, Bernheim Rep. ¶¶ 261–
27  72, Dr. Rascher conceded that the real-world conduct of college football
28  conferences is analogous "████████████████████████████████████

3

|   |   |
|---|---|
| 1 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," ECF No. 962-5, Reply Rep. ¶ 423 |
| 2 | (emphasis in original). Dr. Rascher therefore ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 3 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 4 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. |

      Dr. Rascher's citations to the practices of other major sports leagues likewise provide no support for his asserted but-for world. Dr. Rascher ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," but he nevertheless argues that these leagues demonstrate the "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" ECF No. 962-5, Reply Rep. ¶ 434. Even if that were correct (and it is not, *see* ECF No. 962-10, Bernheim Rep. ¶ 273), any ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ could not support the conclusion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, since in neither of those leagues are out-of-market games broadcast through ▓▓ ▓▓▓▓, *see id.* ¶¶ 102–03, 115.

      In sum, Dr. Rascher is unable to identify any benchmark to support his opinion ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. This renders his opinions regarding the but-for world absent the challenged horizontal conduct inadmissible under Rule 702.

      **B.    Dr. Rascher's but-for world assumes legally impermissible outcomes.**

      Dr. Rascher's testimony that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ also must be excluded because it is premised on a legally impossible outcome. *See, e.g., Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1063 (9th Cir. 2008) ("[A] party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury, even if the evidence might have been relevant in some conceivable manner."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 2571332, at *7 (N.D. Cal. June 30, 2012) (excluding expert

4

Case No. 2:15-ml-02668-PSG (SKx)        NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of
Daniel A. Rascher

1  testimony that was "contrary to law, and therefore w[ould] not assist the trier of
2  fact").

3       Dr. Rascher opines that in a but-for world ████████████████████
4  ████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████. *See, e.g.*, ECF No. 962-4,
7  Rep. ¶¶ 367 (assuming in at least one but-for world that "████████████████
8  ███████████████████████████████████), 374 (noting that in another
9  but-for world, ████████████████████████████████████████████████████████
10 ███████). But the law does not permit ████████████████████████████████, for
11 multiple reasons.

12      *First*, as both Plaintiffs and Dr. Rascher concede, individual NFL Clubs do
13 not own the unilateral rights to any game telecast because "both the home and
14 visiting teams would have to give 'consent' to telecast a game between those two
15 teams." ECF No. 986-2, NFL Defs.' Resp. to Pls.' Stmt. of Genuine Disputes
16 ("SUF") ¶ 22.

17      *Second*, and as Plaintiffs also have admitted, game telecasts display the
18 intellectual property of both competing teams and the NFL itself (such as the NFL
19 shield and game highlights), which means that ██████████████████████████
20 ████████████████████████████████████████████████████████████████████████
21 ████████████████████████████████. *Id.* ¶ 17; ECF No. 962-10, Bernheim Rep. ¶ 39.

22      In these ways, ████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████████
25 ██████████. ECF No. 962-10, Bernheim Rep. ¶¶ 39, 265. Notre Dame—and the six
26 other independent FBS schools—██████████████████████████████████████████
27 ████████████████████████████████ are instead an example of teams that choose
28 not to participate in any league in the first place. *Id.* ¶ 265; *see also id.* ¶ 139 &

5

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

1  n.377. Moreover, the need for both competing teams in a game to agree to the
2  relevant telecast licenses is confirmed by the fact that Notre Dame cannot alone
3  license the telecast rights for all of its games; it instead must negotiate bilateral
4  deals with opponents—typically through their conferences—that allow it to license
5  the telecast rights for its home games (and not its away games). *See id.* ¶ 135; ECF
6  No. 956-14, Expert Report of Neal H. Pilson, dated April 28, 2023 ("Pilson Rep.")
7  ¶ 97.
8  Given these undisputed facts, Dr. Rascher should not be permitted to testify
9  about a but-for world that relies on the incorrect legal premise ▌
10 ▌

### C. Dr. Rascher failed to account for the differences between the NFL and college football when applying his methodology.

13 The two versions of Dr. Rascher's but-for world—▌
14 ▌—each reflect
15 additional flaws that demonstrate that he has not reliably applied a yardstick
16 methodology.
17 *First*, Dr. Rascher's ▌
18 ▌, ECF No. 962-4,
19 Rep. ¶ 367, Ex. 14; ECF No. 962-5, Reply Rep. ¶ 416, cannot satisfy the
20 requirement that a but-for world must "presume the existence of rational economic
21 behavior in the hypothetical free market." *Dolphin Tours, Inc. v. Pacifico Creative*
22 *Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985); *see also, e.g.*, *In re HIV Antitrust*
23 *Litig.*, 656 F. Supp. 3d 963, 1006 (N.D. Cal. 2023).
24 Plaintiffs' experts have conceded that in the but-for world, the NFL and its
25 Clubs would not only be ▌ to enter into the SBA-protected agreements
26 with CBS and FOX, but would have ▌ to do so. ECF No. 962-29,
27 Expert Rebuttal Report of Einer Elhauge, dated June 9, 2023 ("Elhauge Rebuttal
28 Rep.") ¶ 55; ECF No. 962-5, Reply Rep. ¶ 430 ("▌

6

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

██████████████████████████████████████; *accord* Pastan Decl. Ex. 4, Rascher 6/28/23 Dep. Tr. 84:16–85:2, 182:11–12 ("████████ ██████████████████████████████████████). Because Plaintiffs' experts agree that the NFL would have ████████████████████ to enter into SBA-protected agreements in the but-for world, the Court should exercise its gatekeeping responsibility under Rule 702 to prevent Dr. Rascher from arguing otherwise to the jury. *See, e.g.*, *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1179 (N.D. Cal. 2017).

    *Second*, assuming—as Plaintiffs' experts concede—that the NFL would enter into the SBA-protected agreements in the but-for world, Dr. Rascher has not identified any appropriate yardstick for what would happen in such a but-for world. Both parties' experts agree (i) that the SBA's protections would affect the NFL's licensing practices in the but-for world, and (ii) that the SBA cannot similarly affect college football's licensing practices in the real world (because the SBA does not apply to college football). Once this distinction is conceded, Dr. Rascher himself recognizes that the burden then falls on him to "control[] for" this difference between the two markets. ECF No. 962-4, Rep. ¶ 306. He has not even attempted to do so.

## II. Dr. Rascher's Opinions Regarding Damages Are Not Reliable.

    Dr. Rascher's damages calculations should separately be excluded because he continues to offer the type of "grade-school arithmetic," unsupported by reliable economic analysis, that courts have rejected at the merits stage. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017); *see also Lithium Ion*, 2017 WL 1391491, at *6.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

7

Case No. 2:15-ml-02668-PSG (SKx)      NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

1  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is not the stuff of admissible expert testimony. *See Waymo*, 2017 WL 6887043, at *5 (striking expert who "simply multipl[ied] the units of time espoused by [another expert] with dollar amounts lifted" from a separate slide); *id.* ("Straightforward application of grade-school arithmetic to uncomplicated numbers is well within the ken of the average juror."). To the contrary, the underlying purpose of Rule 702 is to prevent such improper efforts to influence the jury by dazzling them with the testimony of a purported "expert" whose "only contribution would be to pile on a misleading facade of expertise." *Id.*

Dr. Rascher's opinions also fail Rule 702 by simply parroting numbers generated by another expert, without testing the underlying assumptions or even analyzing whether the purported model is designed to apply to the relevant but-for world. In fact, Dr. Rascher admitted he neither questioned the assumptions underlying Dr. Zona's analyses nor independently verified Dr. Zona's regressions. Pastan Decl. Ex. 5, Rascher 10/3/22 Dep. Tr. 44:7–10, 45:19–47:5; *see Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011) (excluding damages model when expert relied on another expert's opinion without testing the "underlying data to ensure its reliability"); *Waymo*, 2017 WL 6887043, at *5 (striking expert who "essentially parroted" another expert).

For example, Dr. Rascher relied on Dr. Zona's model to calculate damages in a but-for world in which ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, but Dr. Zona testified that he did not know whether his model was even appropriate for that scenario. Pastan Decl. Ex. 8, Zona 6/23/23 Dep. Tr. 288:15–289:17. Indeed, Dr. Rascher took no steps to ensure the reliability of Dr. Zona's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, ECF No. 962-4, Rep. ¶¶ 415–18; ECF

8

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

No. 962-5, Reply Rep. ¶ 441, even though Dr. Rascher cannot contest that continuing this licensing structure would be against the NFL's economic interests, *see* ECF No. 962-5, Reply Rep. ¶ 441; Pastan Decl. Ex. 7, Expert Report of Ali Yurukoglu, dated April 28, 2023 ("Yurukoglu Rep.") ¶¶ 35–42; ECF No. 962-10, Bernheim Rep. ¶¶ 326–30.

Dr. Rascher's use of basic mathematics without undertaking the necessary analysis to determine whether his calculations reflect a reliable application of any economic methodology to the facts of this case warrant exclusion of his damages figures.

### III. Dr. Rascher's Opinions On The Commercial Class Are Not Reliable.

Consistent with Plaintiffs' decision to seek certification of two separate classes, Dr. Rascher agrees that there are key distinctions between residential and commercial subscribers. Pastan Decl. Ex. 4, Rascher 6/28/23 Dep. Tr. 247:13–248:8. But Dr. Rascher ███████████████████████████████████████████████████████████████████████████████████████████████ ECF No. 962-4, Rep. ¶ 150. That conclusory assertion is not correct, and renders Dr. Rascher's opinions about the commercial class unreliable.

Dr. Rascher fails to account for the critical differences as to both the supply and demand of NFL Sunday Ticket as sold to commercial establishments. On the supply side, ███████████████████████████████████████ and have not been analyzed by Dr. Rascher or Plaintiffs' other experts. Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 98. And on the demand side, the ██████████████████████████████████████████████████████. *Id.* ¶¶ 97–98. Commercial establishments such as bars, for example, purchase Sunday Ticket not because the proprietors are interested in watching the games, but instead because they want to attract more customers and earn more revenue. *Id.*; Pastan Decl. Ex. 4, Rascher

9

Case No. 2:15-ml-02668-PSG (SKx)　　　NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

| | |
|---|---|
| 1 | 6/28/23 Dep. Tr. 247:23–248:4. Thus, while a residential subscriber might be |
| 2 | interested in obtaining a subset of the out-of-market games, commercial subscribers |
| 3 | are more likely to want the option to show every single game in every window. |
| 4 | Pastan Decl. Ex. 5, Rascher 10/3/22 Dep. Tr. 70:5–15. ███████████ |
| 5 | ████████████████████████████████████████████████ |
| 6 | ███████. *Id.* at 69:3–20. |
| 7 |      Dr. Rascher nevertheless takes a reduction factor based solely on residential |
| 8 | subscribers and applies it mechanically to compute more than ███████ in damages |
| 9 | for all types of commercial class members. *See* ECF No. 962-4, Rep. ¶ 419 & Ex. |
| 10 | 19. That approach falls well short of Plaintiffs' burden to demonstrate the reliability |
| 11 | of Dr. Rascher's analysis, and warrants the exclusion of Dr. Rascher's commercial |
| 12 | class damages calculations. |

10

Case No. 2:15-ml-02668-PSG (SKx)      NFL Defendants' Motion In Limine No. 5 To Exclude Certain Opinions Of Daniel A. Rascher

| | | |
|---|---|---|
| 1 | January 5, 2024 | Respectfully submitted, |
| 2 | | /s/ *Beth A. Wilkinson* |
| | | Beth A. Wilkinson (admitted *pro hac vice*) |
| 3 | | Rakesh N. Kilaru (admitted *pro hac vice*) |
| 4 | | Brian L. Stekloff (admitted *pro hac vice*) |
| | | Jeremy S. Barber (admitted *pro hac vice*) |
| 5 | | Max J. Warren (admitted *pro hac vice*) |
| | | **WILKINSON STEKLOFF LLP** |
| 6 | | 2001 M Street NW, 10th Floor |
| | | Washington, DC 20036 |
| 7 | | Telephone: (202) 847-4000 |
| | | Facsimile: (202) 847-4005 |
| 8 | | rkilaru@wilkinsonstekloff.com |
| | | bwilkinson@wilkinsonstekloff.com |
| 9 | | bstekloff@wilkinsonstekloff.com |
| 10 | | jbarber@wilkinsonstekloff.com |
| | | mwarren@wilkinsonstekloff.com |
| 11 | | |
| 12 | | Neema T. Sahni (Bar No. 274240) |
| | | **COVINGTON & BURLING LLP** |
| 13 | | 1999 Avenue of the Stars |
| | | Suite 1500 |
| 14 | | Los Angeles, CA 90067-6045 |
| | | Telephone: (424) 332-4800 |
| 15 | | Facsimile: (424) 332-4749 |
| 16 | | nsahni@cov.com |
| 17 | | Gregg H. Levy (admitted *pro hac vice*) |
| | | Derek Ludwin (admitted *pro hac vice*) |
| 18 | | John S. Playforth (admitted *pro hac vice*) |
| 19 | | **COVINGTON & BURLING LLP** |
| | | One CityCenter |
| 20 | | 850 Tenth Street NW |
| | | Washington, DC 20001 |
| 21 | | Telephone: (202) 662-6000 |
| | | Facsimile: (202) 662-6291 |
| 22 | | glevy@cov.com |
| 23 | | dludwin@cov.com |
| | | jplayforth@cov.com |
| 24 | | |
| 25 | | *Counsel for Defendants National Football League, NFL Enterprises LLC, and the* |
| 26 | | *Individual NFL Clubs* |
| 27 | | |
| 28 | | |

11