Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' MOTION IN LIMINE NO. 6 TO EXCLUDE CERTAIN OPINIONS OF J. DOUGLAS ZONA**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: February 7, 2024<br>Time: 2:30 p.m.<br>Courtroom: First Street Courthouse<br>　　　　　350 West 1st Street<br>　　　　　Courtroom 6A<br>　　　　　Los Angeles, CA 90012 |

**TABLE OF CONTENTS**

LEGAL STANDARD ........................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    Dr. Zona Impermissibly Assumes That The NFL Would Behave In An Economically Irrational Manner In The But-For World. ............................... 2

II.   Dr. Zona's T&V Model Should Be Excluded Because It Fails To Model Demand For Sunday Ticket Reliably. ................................................. 5

III.  The Conjoint Model's Reduction Factors Should Be Excluded Because Their Inputs Are Cherry-Picked To Achieve Plaintiffs' Desired Result. ....... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ............................................................ 5, 8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .................................................................................................. 2

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ................................................................................ 5

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) ................................................................................ 2

*In re Google Play Store Antitrust Litig.*,
   2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) .................................................. 6, 7

*In re HIV Antitrust Litig.*,
   656 F. Supp. 3d 963 (N.D. Cal. 2023) ................................................................... 3

*In re Lithium Ion Batteries Antitrust Litig.*,
   2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ....................................................... 1

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
   341 F. Supp. 3d 213 (S.D.N.Y. 2018) ................................................................ 5, 9

*Murphy Tugboat Co. v. Crowley*
   658 F.2d 1256 (9th Cir. 1981) ............................................................................ 2, 5

*Rearden LLC v. Walt Disney Co.*,
   2021 WL 6882227 (N.D. Cal. July 12, 2021) ........................................................ 8

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
   2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ............................................................ 3

*United Food & Com. Workers Loc. 1776 & Participating Emps.*
   *Health & Welfare Fund v. Teikoku Pharma USA*,
   296 F. Supp. 3d 1142 (N.D. Cal. 2017) ................................................................. 3

**Other Authorities**

Fed. R. Evid. 103 ........................................................................................................ 1

Fed. R. Evid. 104 .................................................................................................. 1, 3

Fed. R. Evid. 702 .............................................................................................. 1, 3, 5

iii

Case No. 2:15-ml-02668-PSG (SKx)     **NFL Defendants' Motion In Limine No. 6 To Exclude Certain Opinions of J. Douglas Zona**

The NFL Defendants respectfully move to exclude the testimony of J. Douglas Zona regarding his economic models pursuant to Federal Rules of Evidence 103, 104, and 702. Dr. Zona puts forth two models that purport to show that Sunday Ticket prices would have been lower if DirecTV had not been the sole distributor. Dr. Zona has substantially revised these two models with each successive report, such that this is Defendants' first chance to challenge the versions he may offer at trial.

As described below, Dr. Zona's latest models, and the conclusions he draws from them, are unreliable and should be excluded. During the class certification stage, Defendants explained why the previous iterations of Dr. Zona's models, and the irrational results generated by those models, warranted exclusion. Defendants respectfully submit that the flaws in Dr. Zona's models warrant re-evaluation in light of the recent amendments to Rule 702. Those amendments make even clearer that Dr. Zona's methodologies are unreliable and should be excluded. *See* Fed. R. Evid. 702 Advisory Committee's Note to the 2023 amendment; *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *6 (N.D. Cal. Apr. 12, 2017). And at a minimum, Defendants seek to preserve their arguments as applied to Dr. Zona's new economic models.

## LEGAL STANDARD

Under the newly amended Federal Rule of Evidence 702, an otherwise qualified expert may testify only "*if the proponent demonstrates to the court that it is more likely than not that*: . . . (b) the testimony is based on sufficient facts or data; . . . and (d) the expert's opinion *reflects a reliable application of the principles and methods to the facts of the case*." Fed. R. Evid. 702 (emphases added). The December 2023 amendments to Rule 702 were designed to remedy "incorrect application[s] of Rules 702 and 104(a)" by "many courts [that] have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 Advisory Committee's Note to the 2023 amendment.

# ARGUMENT

## I. Dr. Zona Impermissibly Assumes That The NFL Would Behave In An Economically Irrational Manner In The But-For World.

In a clear violation of Ninth Circuit precedent, Dr. Zona has failed to "presume the existence of rational economic behavior" by the NFL in his models of the but-for world. *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985). ▌

▌

▌ ECF No. 962-34, Expert Merits Report of J. Douglas Zona ("Rep.") ¶ 8. In modeling these but-for worlds, Dr. Zona purports to "show what the competitive prices would have been if there had been no antitrust violations." *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013). But his modeling fails to account for the NFL's "rational economic" incentive to maximize its own profits. *Dolphin Tours*, 773 F.2d at 1511.

Binding precedent requires that Dr. Zona's calculations of those "competitive prices" reflect economic reality. In *Murphy Tugboat Co. v. Crowley*, for example, the Ninth Circuit overturned a damages award in an antitrust trial because the plaintiff's economist had failed to account for the fact that the defendant would have cut its prices if a new competitor had entered the market. 658 F.2d 1256, 1262 (9th Cir. 1981). The Ninth Circuit reasoned that "[i]n a hypothetical economic construction, . . . economic rationality must be assumed for all competitors, absent the strongest evidence of chronic irrationality." *Id.* And because the plaintiff's expert had "indulge[d] in the assumption that a competitor would follow a course of behavior other than that which it believed would maximize its profits," *id.*, the jury's damages award based on that expert's work was nothing more than "unguided speculation," *id.* at 1263.

District courts in this Circuit continue to reiterate and apply this principle in the Rule 702 context.[1] And following the recent amendments to Rule 702, exclusion of opinions—like Dr. Zona's—that are based on economically irrational assumptions is even more compelled. *See* Fed. R. Evid. 702 Advisory Committee Note to the 2023 amendment ("[M]any courts have held that the critical question[] of the sufficiency of an expert's basis . . . [is a] question[] of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).").

Plaintiffs have not met their burden to show that Dr. Zona's testimony rests on rational economic assumptions about Defendants' behavior. *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007) ("The party offering the expert bears the burden of establishing that Rule 702 is satisfied."). Under the NFL's agreement with DirecTV during the class period, the NFL granted DirecTV exclusive distribution rights for Sunday Ticket and charged DirecTV a single lump-sum annual fee for those rights (referred to below as a "fixed-fee approach" for short). Pastan Decl. Ex. 7, Expert Report of Ali Yurukoglu, dated April 28, 2023 ("Yurukoglu Rep.") ¶¶ 35–39. This licensing arrangement was economically rational in the context of a *single* distributor. *See id.* ███

███

███

███

███

███

---

[1] *See, e.g., United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1179–80 (N.D. Cal. 2017) (holding that "in the experts' competing testimony about the but-for world, only opinions that are economically rational may be provided," and excluding expert testimony that did not meet this standard); *In re HIV Antitrust Litig.*, 656 F. Supp. 3d 963, 1006 (N.D. Cal. 2023) (internal citation and quotation marks omitted) ("Antitrust cases presume the existence of rational economic behavior in the hypothetical free market.").

|   |   |
|---|---|
| 1 | |
| 2 | |
| 3 | ECF No. 962-4, |
| 4 | Expert Report of Daniel A. Rascher, dated February 17, 2023 ("Rascher Rep.") |
| 5 | ¶ 418; Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 36; ECF No. 962-10, Expert Report of |
| 6 | B. Douglas Bernheim ("Bernheim Rep.") ¶ 330. |
| 7 | |
| 8 | |
| 9 | |
| 10 | *See* ECF No. 962-10, Bernheim Rep. ¶¶ 45–46; Pastan Decl. Ex. 7, |
| 11 | Yurukoglu Rep. ¶¶ 25, 36. |
| 12 | |
| 13 | |
| 14 | *See* Pastan Decl. Ex. 7, Yurukoglu Rep. |
| 15 | ¶¶ 35–41. |
| 16 | Yet in the face of this real-world behavior, Dr. Zona does not even consider |
| 17 | the possibility that the NFL might shift to a per-subscriber approach if it were to |
| 18 | license Sunday Ticket to multiple distributors like other sports leagues. *See* ECF No. |
| 19 | 962-34, Rep. ¶ 67 ( |
| 20 | |
| 21 | ); Pastan Decl. Ex. |
| 22 | 8, Zona 6/23/23 Dep. Tr. 357:8–17( |
| 23 | |
| 24 | |
| 25 | ). The result is that Dr. Zona assumes—without |
| 26 | analysis—that in the but-for world, the NFL would |
| 27 | in using an economically irrational fixed-fee approach with multiple |
| 28 | distributors. |

1  His model should thus be excluded because Plaintiffs cannot meet their burden
2  to establish under Rule 702 that Dr. Zona's analysis is based on the assumption that
3  the NFL will act rationally in the but-for world. *See, e.g.*, *Murphy Tugboat*, 658 F.2d
4  at 1262; *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056–57
5  (8th Cir. 2000) (district court should have excluded expert's opinion because it "did
6  not incorporate all aspects of the economic reality of the [relevant] market").

7  The economic irrationality of Dr. Zona's unquestioning fixed-fee assumption
8  is all the more glaring because his *own model* shows that ███████████████
9  ███████████████████████████████████████████████ *See* Pastan Decl.
10 Ex. 7, Yurukoglu Rep. ¶¶ 43–47 & Fig. 8 (███████████████████████
11 ███████████████████████████████████████████████████████████
12 ███████████████████████████████). His failure to consider
13 whether the NFL would switch to a per-subscriber approach in the but-for world thus
14 reflects a results-driven, "cherry-picking approach" to the assumptions on which his
15 model is based, which "is at odds with principles of sound science." *In re Mirena Ius*
16 *Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 296
17 (S.D.N.Y. 2018); *see also In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab.*
18 *Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (similar).

19
20 **II.   Dr. Zona's T&V Model Should Be Excluded Because It Fails To Model Demand For Sunday Ticket Reliably.**

21 Dr. Zona's main model—the Transaction and Viewership or "T&V" model—
22 is designed to █████████████████████████████████████████
23 ███████████████████████████████████████████████████. ECF No. 962-
24 34, Rep. ¶ 8; Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 12. Although Dr. Zona has
25 updated this model since the class certification stage, it still contains unreasonable
26 assumptions and generates irrational outcomes.

27 One of these errors in particular is fatal to Dr. Zona's model under both the
28 revised Rule 702 and recent case law from this circuit: Dr. Zona's model ███

5

1  ████████████████████████████████████████ Dr. Zona used a logit model
2  to analyze ██████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████████████
4  ██████████████████████████████████. *See* Pastan Decl. Ex. 8, Zona 6/23/23 Dep.
5  Tr. 453:17–24; Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 69. Dr. Zona admitted at
6  deposition, however, that individuals' viewing preferences vary within ██████, *see*
7  Pastan Decl. Ex. 6, Zona 10/13/22 Dep. Tr. 219:13–15, and Dr. Yurukoglu
8  demonstrated how significantly those preferences vary, Pastan Decl. Ex. 7,
9  Yurukoglu Rep. ¶¶ 69–73 & Figs. 12–13.

   Instead of accounting for differing viewing preferences among fans, Dr.
11 Zona's ████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████████
13 ████████████████████████████████████ Pastan Decl. Ex. 7, Yurukoglu Rep.
14 ¶ 71. For example, consider a Sunday on which the Rams, Chargers, and Cowboys
15 each are playing games available on television in Los Angeles. Dr. Zona's model
16 ███████████████████████████████████████████████████████████████
17 ███████████████████████████████████████████████████████████████
18 ███████████████████████████████████████████████████████████████
19 ██████████████████████████████ *Id.* ¶ 71 & Fig. 12.

20  This property of Dr. Zona's logit model is what is known as the "independent
21 of irrelevant alternatives," or "IIA," property. Pastan Decl. Ex. 7, Yurukoglu Rep.
22 ¶ 71. This is the precise error that recently led Judge Donato to exclude the testimony
23 of plaintiffs' economic expert in the *Google Play* litigation. *In re Google Play Store*
24 *Antitrust Litig.*, 2023 WL 5532128, at *6 (N.D. Cal. Aug. 28, 2023). The use of a
25 model with the IIA property is permissible only in certain circumstances. As Judge
26 Donato explained, such a model is sufficiently reliable to be admitted into evidence
27 only in situations in which consumer substitution follows a particular pattern; the
28 model only works where "the consumer will necessarily switch to a different

1   [product] in the same category, based purely on the popularity of those other
2   [products]." *Id.* at *8. If this assumption does not correspond with real-world
3   preferences, then "imposing" this restriction of "proportionate substitution through
4   the logit model can lead to unrealistic forecasts." *Id.* (quoting an economic treatise).

5   Dr. Zona has acknowledged that it is problematic to use a logit model (the type
6   of model he used) where the IIA condition is not satisfied. Pastan Decl. Ex. 7,
7   Yurukoglu Rep. ¶ 71 & n.83 (quoting Dr. Zona's academic work that the IIA property
8   "restrict[s] unduly the pattern of consumer preferences" and "has been tested and
9   rejected numerous times in the discrete choice literature"). Dr. Zona cannot now
10  ignore his own published work. For the IIA condition to be satisfied, "all ▮▮▮▮ in
11  a given ▮▮▮▮ must be substitutes for each other, and must be substitutes in
12  proportion to their share" ▮▮▮▮▮▮▮▮▮▮▮▮ *Google Play*, 2023
13  WL 5532128, at *6. Dr. Yurukoglu ▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  Pastan Decl. Ex. 7, Yurukoglu Rep. ¶¶ 71–73.

16  Because this IIA condition is not satisfied in the market for out-of-market NFL
17  games, the case law, the relevant economic treatise, and Dr. Zona's own admissions
18  confirm that the logit model is unreliable and should be excluded. *See Google Play*,
19  2023 WL 5532128, at *8 (internal quotations and citation omitted) ("[T]astes that
20  vary systematically with respect to observed variables can be incorporated in logit
21  models, while tastes that vary with unobserved variables or purely randomly cannot
22  be handled. . . . [I]f taste variation is at least partly random, logit is a
23  misspecification."); Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 71 & n.82 (explaining this
24  error and citing the same academic treatise relied upon in the *Google Play* decision);
25  *id.* ¶¶ 71–73 (explaining why Dr. Zona's model is mis-specified).

26  This is just one example of many that pervades Dr. Zona's work. His models
27  incorporate unjustified assumptions and modeling limitations, and also involve
28  customers engaging in fundamentally irrational behavior, ▮▮▮▮▮▮▮▮▮

*See, e.g.*, Pastan Decl. Ex. 7, Yurukoglu Rep. ¶¶ 80–82, 90–92; *see also* ECF No. 680-1, ▮▮▮▮▮ ▮▮▮▮ These outcomes warrant exclusion.

### III. The Conjoint Model's Reduction Factors Should Be Excluded Because Their Inputs Are Cherry-Picked To Achieve Plaintiffs' Desired Result.

Dr. Zona's second model—the Conjoint model—is also unreliable for a number of reasons. *See* ECF No. 680-1 ▮▮▮▮▮▮▮▮▮▮▮▮▮ The most glaring flaw is the impermissibly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (what he calls reduction factors). Cherry-picking inputs to generate favorable results is a classic ground for exclusion of expert testimony. *E.g.*, *Rearden LLC v. Walt Disney Co.*, 2021 WL 6882227, at *7 (N.D. Cal. July 12, 2021) (rejecting expert testimony where expert "focus[ed] only on the data that supports the hypothesis and ignore[d] the data that undermines it"); *In re Bextra*, 524 F. Supp. 2d at 1176 (excluding opinion because expert "first identif[ied] his conclusion . . . and then cherry-pick[ed] observational studies that support[ed] his conclusion and reject[ed] or ignor[ed] the great weight of the evidence that contradict[ed] his conclusion"). Dr. Zona's Conjoint model's reduction factors should be rejected on this basis.

To calculate but-for world prices in his Conjoint model, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 962-34, Zona Rep ¶ 93 & Ex. 20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

In the real world, although DirecTV offered Sunday Ticket at a *list price* of $295 per year, Dr. Zona ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 16 n.27. Because Dr. Zona's Conjoint model

1 generates the ███████████████████████████████████████████
2 ████████, see Pastan Decl. Ex. 8, Zona 6/23/23 Dep. Tr. 428:15–429:3, 431:6–17,
3 432:14–20, the only appropriate price comparison would be between (i) the Conjoint
4 model's ██████████████████████████ and (ii) the actual-world ████████
5 ██████████████████████████, Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 56. That
6 appropriate comparison would indicate ████████████ under the Conjoint model—
7 but that is not the comparison that Dr. Zona calculates.

8    That error is even more indefensible given how Dr. Zona treats the same issue
9 in the context of his V&T model. In that separate model, Dr. Zona ████████████
10 ████████████████████████████████████████████████████████████████ Pastan
11 Decl. Ex. 7, Yurukoglu Rep. ¶ 81 & Fig. 15. Dr. Zona offered no explanation for why
12 the same comparison was not appropriate in the Conjoint model, and he otherwise
13 failed even to attempt to justify his comparison to list prices. *See* Pastan Decl. Ex. 2,
14 Expert Reply Report of J. Douglas Zona ("Reply Rep.") ¶¶ 63–64.

15    There is no principled justification for Dr. Zona's decision to use inconsistent
16 measures of real-world prices in calculating reduction factors in his two models.
17 Pastan Decl. Ex. 7, Yurukoglu Rep. ¶ 56. There is, however, a results-driven
18 motivation to do so: as noted above, ████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████████
21 ████████████████████ *Id.* ¶ 56 & Fig. 10. Dr. Zona's use of ████████████████ to
22 calculate his Conjoint model reduction factors thus reflects either an elementary
23 mistake or an impermissible cherry-picking approach that "is at odds with principles
24 of sound science." *In re Mirena Ius*, 341 F. Supp. 3d at 296. In either event, this error
25 warrants exclusion of the conjoint model.

| | | |
|---|---|---|
| 1 | January 5, 2024 | Respectfully submitted, |
| 2 | | /s/ *Beth A. Wilkinson* |
| 3 | | Beth A. Wilkinson (admitted *pro hac vice*)<br>Rakesh N. Kilaru (admitted *pro hac vice*) |
| 4 | | Brian L. Stekloff (admitted *pro hac vice*)<br>Jeremy S. Barber (admitted *pro hac vice*) |
| 5 | | Max J. Warren (admitted *pro hac vice*)<br>**WILKINSON STEKLOFF LLP** |
| 6 | | 2001 M Street NW, 10th Floor<br>Washington, DC 20036 |
| 7 | | Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005 |
| 8 | | rkilaru@wilkinsonstekloff.com<br>bwilkinson@wilkinsonstekloff.com |
| 9 | | bstekloff@wilkinsonstekloff.com |
| 10 | | jbarber@wilkinsonstekloff.com<br>mwarren@wilkinsonstekloff.com |
| 11 | | |
| 12 | | Neema T. Sahni (Bar No. 274240)<br>**COVINGTON & BURLING LLP** |
| 13 | | 1999 Avenue of the Stars<br>Suite 1500 |
| 14 | | Los Angeles, CA 90067-6045 |
| 15 | | Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749 |
| 16 | | nsahni@cov.com |
| 17 | | Gregg H. Levy (admitted *pro hac vice*) |
| 18 | | Derek Ludwin (admitted *pro hac vice*)<br>John S. Playforth (admitted *pro hac vice*) |
| 19 | | **COVINGTON & BURLING LLP**<br>One CityCenter |
| 20 | | 850 Tenth Street NW |
| 21 | | Washington, DC 20001<br>Telephone: (202) 662-6000 |
| 22 | | Facsimile: (202) 662-6291<br>glevy@cov.com |
| 23 | | dludwin@cov.com<br>jplayforth@cov.com |
| 24 | | |
| 25 | | *Counsel for Defendants National Football*<br>*League, NFL Enterprises LLC, and the* |
| 26 | | *Individual NFL Clubs* |
| 27 | | |
| 28 | | |