Case 2:15-ml-02668-PSG-SK   Document 1164   Filed 01/19/24   Page 1 of 12   Page ID
#:43869

Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING RELIEF SOUGHT BY PLAINTIFFS**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: February 7, 2024<br>Time: 2:30 p.m.<br>Courtroom: First Street Courthouse<br>        350 West 1st Street<br>        Courtroom 6A<br>        Los Angeles, CA 90012 |

Plaintiffs' second motion *in limine* ("Mot.") seeks to exclude certain evidence and argument regarding Plaintiffs' requested relief. ECF No. 1102-1. The NFL Defendants do not intend to discuss before the jury potential injunctive relief, nor will they argue that the amount of asserted damages for commercial class members is affected by whether they passed through any asserted overcharges to their customers. As to such arguments, Plaintiffs' motion is unopposed.

But Plaintiffs' motion could be read to sweep more broadly, seeking to limit the NFL Defendants' ability to address certain issues core to this litigation. Such issues include, for example, the reasons why commercial entities subscribe to NFL Sunday Ticket; the satisfaction of class members (including the class representatives) with the quality of Sunday Ticket, as demonstrated by their continuing to subscribe to the service; and the scope of Plaintiffs' damages claims. If the motion is read to request such limitations, those requests should be denied.

### I.     Defendants Should Be Allowed To Present Evidence And Argument About The Impact Of Eliminating The Challenged Conduct.

Plaintiffs move to prevent mention, in the presence of the jury, of "injunctive relief" and the Court's power to grant such relief. Defendants do not intend, and agree that neither side should, offer evidence or argument that explicitly discusses the potential for future injunctive relief. That narrow restriction is consistent with the cases on which Plaintiffs rely.[1]

---

[1] To the extent that Plaintiffs' cited decisions barred parties from mentioning future injunctive relief, those holdings were either exceedingly narrow, *see U.S. Football League v. Nat'l Football League*, 1986 WL 7012, at *2–3 (S.D.N.Y. June 17, 1986) (barring argument that a hypothetical injunction might reduce future damages); *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 2012 WL 12832376, at *1 (E.D. Va. Mar. 30, 2012) (precluding defendant from seeking an advisory opinion from the jury on injunctive relief, but allowing reference to an injunction on cross examination of Plaintiffs' expert); *Comput. Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1530 (D. Co. 1993) (precluding a defendant's attempt to seek input from the jury on the scope of injunctive relief); *Broadcom Corp. v. Emulex Corp.*, 2011 WL 13130705, at *1 (C.D. Cal. Aug. 10, 2011) (excluding reference to an injunction where defendants offered no reason it would be relevant), or provided no reasoning at all, *see Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 2008 WL 5552302, at *1 (continued…)

1

Case No. 2:15-ml-02668-PSG (SKx)          Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude
                                          Evidence And Argument Regarding Relief Sought By Plaintiffs

But Defendants would oppose any constraints on their ability to describe and critique the "but-for" world that in Plaintiffs' view would have occurred—and would occur—in the absence of the challenged conduct. Undisputedly, Plaintiffs' proposed but-for worlds are integral to the antitrust analysis in this case. *See, e.g.*, ECF No. 962-29, Elhauge Rebuttal Rep. ¶ 24 n.5 (antitrust damages are measured by a "but-for" world analysis). Nonetheless, Plaintiffs' motion could be read to contend that simply because a hypothetical injunction might eliminate the challenged conduct, Defendants should be prohibited from discussing Plaintiffs' asserted but-for worlds; if so, Defendants oppose that aspect of Plaintiffs' motion.

Comparing the actual world to a but-for world absent the challenged conduct would be central to trial in this action. Plaintiffs' claims are subject to the rule of reason analysis. ECF No. 1155, Order Denying Defs.' Mot. Summ. J. at 3; *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 & n.5 (9th Cir. 2019). Plaintiffs must first prove that the challenged conduct had a substantial anticompetitive effect when compared to a but-for world in which the restraints did not exist. *See, e.g.*, *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023), *cert. denied*, — S. Ct. —, 2024 WL 156473, 2024 WL 156474 (S. Ct. Jan. 16, 2024). If Plaintiffs meet that initial burden, the rule of reason permits Defendants to offer procompetitive rationales for the challenged restrictions. *Id.* at 985–86. Plaintiffs then bear the burden to show that the procompetitive efficiencies could be reasonably

---

(E.D. Va. Sept. 12, 2008); *Richards Mfg. Co. v. Thomas & Betts Corp.*, 2005 WL 6043427, at *1 (D.N.J. Oct. 31, 2005); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 2003 WL 1905636, at *1 (D. Del. Apr. 14, 2003). Moreover, many of Plaintiffs' cited cases do not address future injunctive relief at all. *See Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, 2009 WL 3754170, at *5 (D.N.J. Nov. 5, 2009) (prohibiting discussion of an existing preliminary injunction); *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del. 2005) (motion to reconsider a prior injunction); *Brooks v. Cook*, 938 F.2d 1048, 1052–53 (9th Cir. 1991) (addressing only treble damages); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (same); *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1242–43 (5th Cir. 1974) (same); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007) (same); *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1370 (10th Cir. 1972) (same).

2

Case No. 2:15-ml-02668-PSG (SKx)  Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

achieved through substantially less restrictive means without significantly increased costs. *Id.* at 990. These inquiries require a comparison between the actual world and the potential but-for world absent the challenged conduct, including discussion of the harms to competition and to consumers that would arise from the removal of the challenged restraints.

Similarly, Plaintiffs must perform a "but-for" world comparison in order to prove antitrust impact and damages. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (antitrust damages are determined by "comparing to that [but-for] baseline what the actual prices were during the charged period"); *see also* 3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 395 (Wolters Kluwer eds., 4th ed. 2022) (noting that the but-for world comparison "received early approval from the Supreme Court" as the measure of damages in antitrust cases).

Discussion of the hypothetical world absent the challenged restraints is therefore necessary not only to the liability analysis but also for Defendants to rebut claims of damages and antitrust injury on Plaintiffs' own terms. *Compare, e.g.*, ECF No. 962-4, Rascher Rep. ¶¶ 29–33, *with, e.g.*, ECF No. 962-10, Bernheim Rep. ¶¶ 23–26; *see also Amdocs*, 2012 WL 12832376, at *1 (granting limitation on discussion of injunctive relief but providing that the "ruling in no respect limits defendant's ability to cross-examine plaintiff's damages expert"; "[i]f reference to injunctive relief is relevant to that cross-examination, it will be permitted"). Plaintiffs likewise have not identified any unfair prejudice that would arise from a discussion of their but-for worlds, as distinguished from the prejudice they assert would arise from explicit discussion of injunctive relief.

Defendants thus do not oppose a narrow prohibition on discussion of whether the Court might enter an injunction and any speculation as to what such an injunction might do. But if the Court's ruling were to go beyond such narrow relief, it would infringe upon the NFL Defendants' ability to present a full defense to claims of

3

Case No. 2:15-ml-02668-PSG (SKx)     Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

anticompetitive effects, injury, and damages, each of which depends critically on a comparison of the actual world to a but-for world without the challenged restraints.

## II. Defendants Should Be Permitted To Present Evidence That Sunday Ticket Was A High Quality, High-Demand Product.

Plaintiffs' motion separately seeks to bar a vague category of evidence or argument "concerning any financial benefit or 'pass on' of any overcharge, any supposed failure to mitigate damages, and any supposed fault from Plaintiffs' consumer choices." Mot. at 4. Defendants will not argue that Plaintiffs' damages should be reduced to the extent that they increased their prices or made additional sales to consumers. But relief beyond those narrow confines is not justified. The parties will need to address at trial the fact that commercial entities subscribed to NFL Sunday Ticket for commercial benefits such as increased sales. That is the entire basis of demand for that commercial product. Nor should there be any limits on evidence regarding class members' or class representatives' purchasing history for Sunday Ticket, as that evidence addresses issues at the core of this case, including how much Plaintiffs actually paid for the product, as well as its quality and value. Consideration of these factors is essential to the rule of reason analysis, regardless of whether such consideration might be inadmissible for some other purpose. *See Epic Games*, 67 F.4th at 987 (product quality as a required consideration in the rule of reason analysis); *id.* at 974, 998 (requiring identical rule of reason inquiries for a plaintiff's claims under both Section 1 and Section 2 of the Sherman Act); *see also* Fed. R. Evid. 105 (contemplating evidence admitted for one purpose despite being inadmissible for another purpose); *see also United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that [evidence] admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible[.]").

Finally, Plaintiffs attempt to limit Defendants' ability to use clear language to describe Plaintiffs' damages claims to the jury, asking the Court to bar use of the

4

Case No. 2:15-ml-02668-PSG (SKx)   Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude
Evidence And Argument Regarding Relief Sought By Plaintiffs

term "refund." Mot. at 7. But Plaintiffs offer no legal basis for prohibiting the use of a common-sense, accessible lay description of the issues to the jury.

Because Plaintiffs fail to contest the relevance or establish any unfair prejudice that might arise from the introduction of any of the following categories of evidence, this portion of their motion should be denied.

**Commercial use evidence.** Defendants should be allowed to elicit evidence that the commercial class used Sunday Ticket to attract and retain customers, and earn more money. It is uncontroverted that this was why commercial class members bought Sunday Ticket. *See, e.g.*, ECF No. 1153-3, Rascher 6/28/23 Dep. Tr. 247:23–248:8 (Plaintiffs' expert conceding commercial entities purchased Sunday Ticket to attract customers); Pastan Decl. Ex. 1, Gael Pub 30(b)(6) Dep. Tr. 56:22–57:11, 81:13–86:16 (commercial class representative affirming Sunday Ticket attracted customers and increased bar's revenue); Pastan Decl. Ex. 2, Mucky Duck 30(b)(6) Dep. Tr. 61:8–62:8, 66:9–14 (same).

Evidence addressing Sunday Ticket's effect on increasing sales and profits for commercial subscribers is therefore a critical measure of its quality as a product, and product quality is indisputably relevant to the reasonableness and procompetitive effects of Defendants conduct that is analyzed under the rule of reason. *See Epic Games*, 67 F.4th at 987 (product quality is required consideration in rule of reason analysis); *In re Dealer Mgmt. Sys. Antitrust Litig.*, — F. Supp. 3d —, 2023 WL 4305901, at *36 (N.D. Ill. June 29, 2023) (citing increased quality of product as one explanation for increased product pricing); *Cmty. Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146, 1161 (W.D. Ark. 1995) (excluding expert testimony that fails to consider the possibility that a high product price could be driven by high product quality), *aff'd sub nom. Cmty. Publishers, Inc. v. DR Partners*, 139 F.3d 1180 (8th Cir. 1998); The Hon. Douglas H. Ginsburg, *Balancing Unquantified Harms and Benefits in Antitrust Cases Under the Consumer Welfare Standard*, 2019 Colum.

5

Case No. 2:15-ml-02668-PSG (SKx)     Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

Bus. L. Rev. 824, 827 (2019) (non-price considerations are essential to evaluating conduct under antitrust consumer welfare standard).

Evidence of NFL Sunday Ticket's popularity with patrons serves the additional purpose of informing consumer demand for the product and consumer choice for viewing out-of-market games. ECF No. 1153-6, Yurukoglu Rep. ¶¶ 96–97. Consumer demand—as measured by Sunday Ticket's popularity—is one piece of evidence rebutting Plaintiffs' claims that the product was subject to supra-competitive prices; it is entirely reasonable for a high-demand product that generates profits for commercial class members to be priced as a premium product. As one court in this District has explained, "[c]ommon sense dictates that a more popular [product] typically will command higher . . . prices than a less popular [product]." *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 975 (C.D. Cal. 2012) (excluding expert testimony that failed to account for this "common sense"). And increased bar attendance showcases one way that many consumers opted to view out-of-market games rather than buying Sunday Ticket—that is, it reflects consumer choice. These considerations are relevant to any attempt to balance the challenged agreements' procompetitive benefits (like high product quality) and their alleged impacts on consumer choice, as required for claims under both Section 1 and Section 2. *See Epic Games*, 67 F.4th at 974, 998.

Defendants are thus entitled to offer evidence of the successful use of Sunday Ticket by the commercial class. This evidence will not be used to assert a "pass-through" defense, meaning that the NFL Defendants will not argue that the commercial benefits that Plaintiffs received should be deducted from any damages that they can prove. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 321 (9th Cir. 2017) (explaining the holding in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968)). But even if there were the potential for unfair prejudice from this evidence—and Plaintiffs fail to demonstrate how such prejudice would arise—it would not substantially outweigh Defendants' need to address the reasons

6

Case No. 2:15-ml-02668-PSG (SKx)     Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

why commercial entities subscribe to Sunday Ticket, the quality of that product (demonstrated by, *e.g.*, the additional customers it attracts), and the increased reach of NFL football games that results from commercial use of the Sunday Ticket product. These facts demonstrate the reasonableness and procompetitive benefits of the existing Sunday Ticket arrangements and support a "common sense" justification for Sunday Ticket's pricing: purchaser demand.

**Consumer choice evidence.** Similar considerations confirm the admissibility of evidence that class members, including the class representatives, repeatedly purchased the Sunday Ticket product—even after alleging in litigation that it was overpriced. Plaintiffs assert broadly that the actions of class representatives and other consumers are "beside the point" and should be excluded as irrelevant. Mot. at 5. This is mistaken. Consumers' behavior is critical evidence of Sunday Ticket's quality and demonstrates both the reasonableness of, and procompetitive justifications for, Defendants' conduct. Defendants will present evidence that the challenged restraints improve quality in multiple ways, including by incentivizing investment in game telecasts through video production, technological advancement, and superior game commentary. This investment makes the compilation of national telecasts in Sunday Ticket a high-quality product, as demonstrated by (among other things) customers— including class representatives—who repeatedly resubscribed to Sunday Ticket. None of this evidence suggests any "blame" to be attributed to Plaintiffs, or any other potential source of improper prejudice. Rather, this evidence demonstrates product quality from a consumer perspective, and thus is relevant to Plaintiffs' claims under both Section 1 and Section 2. *See Epic Games*, 67 F.4th at 974, 998.

Moreover, Plaintiffs put Sunday Ticket's product quality at issue in their own questioning. During depositions, Plaintiffs repeatedly questioned Defendants' witnesses regarding the quality of the Sunday Ticket product, addressing issues such as purported lack of innovation. *See, e.g.*, Pastan Decl. Ex. 3, Dyckes Dep. Tr. 998:7– 99:15; *id.* Ex. 4, Jones, L. Dep. Tr. 28:12–29:2; *id.* Ex. 5, Lawton Dep. Tr. 147:4–

7

Case No. 2:15-ml-02668-PSG (SKx)   Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

<mark>
</mark>
<mark>
</mark>

148:4. Evidence that class members—including named plaintiffs—continued to subscribe to Sunday Ticket, even after alleging they were overpaying for it, strongly suggests that the product is high quality and was reasonably priced. *See* ECF No. 1000-20, Lippincott Dep. Tr. 44:18–46:13. Such evidence also rebuts any claims of lack of innovation and should be admitted. *See Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 6049912, at *7 (N.D. Ill. Sept. 15, 2023) (allegations of particular anticompetitive effect opens the door to rebuttal evidence of procompetitive benefits of same restraint).

Because evidence about commercial use and consumer choice are relevant to the quality of and demand for the Sunday Ticket product, and no unfair prejudice would arise from this evidence, it should be admitted at trial.

**Discussion of proposed relief.** Plaintiffs finally assert—in the last sentence of their motion and without any legal citations—that Defendants should be barred from noting that Plaintiffs' claims of up to 100 percent overcharges amount to a request for a "refund." Mot. at 7. This request is baseless.

Defendants should be permitted to use clear, descriptive language to discuss Plaintiffs' damages claim. There is no dispute that Plaintiffs seek to recoup an award in damages based on the amount they allege they "overpaid" for the Sunday Ticket product—up to and including the total price paid by all class members during the class period. ECF No. 962-4, Rascher Rep. ¶ 336 ("[O]vercharge damages are the full payments class members made to purchase Sunday Ticket during the damage period."). A return of money paid by a consumer back to that consumer is, by the literal dictionary term, a "refund." *See, e.g.*, *Refund*, Black's Law Dictionary (11th ed. 2019) ("The return of money to a person who overpaid."). Courts thus routinely use the term "refund" to refer to a damages award equal to the amount by which the plaintiff allegedly overpaid. *See*, *e.g.*, *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (discussing requests for a "full refund" in the context of damages under state antitrust law), *aff'd sub nom. Oneok, Inc. v.*

8

*Learjet, Inc.*, 575 U.S. 373 (2015); *In re Int'l Air Transp. Surcharge Antitrust Litig.*, 2008 WL 4766824, at *1 (N.D. Cal. Oct. 31, 2008) (referring to proceeds from a price-fixing settlement as "refunds"); *Albert v. Glob. Tel*Link*, 68 F.4th 906, 914 (4th Cir. 2023) (defining the requested compensatory damages for a RICO price-fixing scheme as "a refund of the amount [Plaintiffs] wouldn't have paid but for Defendants' fraud"); *Taffet v. S. Co.*, 967 F.2d 1483, 1491 (11th Cir. 1992) (similar); *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *20 (N.D. Ill. Mar. 29, 2023) (discussing damages equal to the overpayment amount as compared to a "*full* refund") (emphasis added); *South Carolina v. LG Display Co., Ltd.*, 2011 WL 4344074, at *6 (D.S.C. Sept. 14, 2011) (recognizing a state's interest in enforcing its own antitrust laws to "refund [ill-gotten gains] to its citizens"), *aff'd sub nom. AU Optronics Corp. v. South Carolina*, 699 F.3d 385 (4th Cir. 2012); *Colo. C.R. Comm'n v. Wells Fargo Bank & Co.*, 2011 WL 2610205, at *4 (D. Colo. July 1, 2011) (referring to damages under state antitrust law as a "refund of overcharges"); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 852 (N.D. Ohio 2010) (damages sought in antitrust suit "would, in essence, . . . force[ defendants] to refund to Plaintiffs the amount allegedly overcharged" (cleaned up)); *Util. Choice, L.P. v. TXU Corp.*, 2005 WL 3307524, at *3 (S.D. Tex. Dec. 6, 2005) (describing the court's power to "refund profits derived from wrongful conduct").

Plaintiffs may be concerned that jurors will find implausible the claim that a highly valuable product would, in a but-for world, be available to all class members at little to no additional cost—that is certainly Defendants' view. But Defendants are entitled to use clear language to describe and rebut Plaintiffs' assertions. Courts should not prevent—and rather should encourage—the use of plain language to describe claims to lay jurors. Plaintiffs also offer no basis on which to suggest that the use of such straightforward, descriptive language is "unduly prejudicial," *William Hablinski Architecture v. Amir Constr., Inc.*, 2005 WL 4658149, at *4 (C.D. Cal. Feb. 27, 2005); *see also Cooper v. Meritor, Inc.*, 2019 WL 1028530, at *9 (N.D.

9

Case No. 2:15-ml-02668-PSG (SKx)                Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude
                                                Evidence And Argument Regarding Relief Sought By Plaintiffs

Miss. Mar. 4, 2019) (where term has a common-sense meaning that would be accessible to the jury, it is less likely to be excluded under Rule 403). Their request for exclusion of this language therefore should be denied.

# # # # #

Defendants therefore submit that the following restrictions should apply to both parties, but maintain that further relief is inappropriate:

1. No party shall discuss the potential for injunctive relief before the jury; and
2. No party shall argue that the quantum of asserted damages for commercial class members is affected by whether they did—or did not—pass through any asserted overcharges to their customers.

10

Case No. 2:15-ml-02668-PSG (SKx)    Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs

Dated: January 19, 2024

Respectfully submitted,

/s/ *Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

11

**Case No. 2:15-ml-02668-PSG (SKx)** — **Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 2 To Exclude Evidence And Argument Regarding Relief Sought By Plaintiffs**