Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668−PSG (SKx) |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO PRECLUDE EVIDENCE AND ARGUMENTS REGARDING BACKGROUND OF THIS LITIGATION** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge: Hon. Philip S. Gutierrez |
| | Date: February 7, 2024 |
| | Time: 2:30 p.m. |
| | Courtroom: First Street Courthouse |
| | 350 West 1st Street |
| | Courtroom 6A |
| | Los Angeles, CA 90012 |

1       Plaintiffs' fourth motion *in limine* ("Mot.") seeks to exclude certain evidence

2    and argument regarding what Plaintiffs characterize as the "background of this

3    litigation." ECF No. 1113-1. The NFL Defendants do not intend to assert that the

4    litigation is "attorney-driven." Nor do Defendants intend to assert that the mere

5    passage of time dictates whether a given practice is anticompetitive. To the extent

6    that Plaintiffs seek to exclude these specific assertions, the motion is unopposed.

7       The NFL Defendants do contend, however, that further limits on their ability

8    to offer evidence relating to Plaintiffs' involvement in this lawsuit or relevant facts

9    about the creation of Sunday Ticket would unfairly curtail and prejudice their ability

10    to defend against Plaintiffs' allegations. Any request for such broader relief

11    accordingly should be denied.

## I.    Evidence And Argument About Plaintiffs' Conduct With Respect To Sunday Ticket Is Relevant.

14       Plaintiffs first seek an order prohibiting evidence and argument "regarding . . .

15    how Plaintiffs became involved in this litigation and their motivation for bringing

16    this lawsuit, Plaintiffs' relationship with their attorneys, and any reference to the

17    litigation as being 'attorney-driven' or motivated by attorneys." Mot. at 2–4, 6.

18    Defendants do not intend to argue that this litigation is "attorney-driven."

19       However, limitations on *arguments* should not bar underlying *evidence* where

20    it is admissible for another purpose. *See* Fed. R. Evid. 105 (contemplating evidence

21    admitted for one purpose despite being inadmissible for another purpose); *see also*

22    *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947, at *6 (C.D. Cal. Jan. 10, 2023)

23    (citations omitted). Much of the evidence that Plaintiffs seek to exclude is relevant to

24    whether Plaintiffs were injured, the reasonableness of the NFL Defendants' conduct,

25    and whether that conduct was procompetitive as opposed to anticompetitive. This

26    includes evidence of the class representatives' (and other class members') repeated

27    subscriptions to Sunday Ticket; evidence of their ongoing satisfaction with the

28

product; and evidence that they continued subscribing to Sunday Ticket even after becoming involved in this litigation and filing their complaints.

*First,* Plaintiffs' actions are relevant to the question of whether they were injured by Defendants' conduct. The class representatives' purchasing behavior, including whether under alternative market conditions they would have used a different product or stopped using Defendants' product altogether, is "concrete[ly] relevant" to the question of antitrust injury. *Staley v. Gilead Scis., Inc.*, 2021 WL 4318404, at *3 (N.D. Cal. July 19, 2021).

*Second*, Plaintiffs' actions are relevant to the question of whether the NFL Defendants engaged in anticompetitive or exclusionary conduct, as well as the procompetitive effects of Defendants' conduct. *See, e.g.*, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991–92 (9th Cir. 2020) (outlining standards for proving Sherman Act Section 1 and Section 2 violations). The challenged conduct must be assessed under the rule of reason, *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006), and "[i]f a plaintiff establishes at step one [of the rule of reason inquiry] that the defendant's restraints impose substantial anticompetitive effects, then the burden shifts back to the defendant to show a procompetitive rationale for the restraints." *Epic Games v. Apple, Inc.*, 67 F.4th 946, 985–86 (9th Cir. 2023), *cert. denied*, — S. Ct. —, 2024 WL 156473, 2024 WL 156474 (S. Ct. Jan. 16, 2024) (cleaned up) (quoting *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021)); *Ohio v. Am. Express Co.* ("*Amex*"), 138 S. Ct. 2274, 2284 (2018) (same); *see also, e.g.*, *Qualcomm*, 969 F.3d at 991 ("Regardless of whether the alleged antitrust violation involves concerted anticompetitive conduct under § 1 or independent anticompetitive conduct under § 2, the three-part burden-shifting test under the rule of reason is essentially the same."). "A procompetitive rationale" includes evidence that the conduct leads to "enhanced consumer appeal." *Epic Games*, 67 F.4th at 986 (citation omitted).

Here, evidence of Plaintiffs' decisions not to cancel and, in some cases, to renew their subscriptions—before and after initiating this lawsuit—is relevant because it demonstrates Sunday Ticket's high consumer appeal, including to avid fans. Evidence that the class representatives and other class members were satisfied with the product similarly tends to show that the product was of a high quality—and product quality is indisputably relevant in a rule of reason case. *See, e.g.*, *Epic Games*, 67 F.4th at 983, 987–88 (product quality is relevant consideration in rule of reason analysis); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2023 WL 4305901, at *36 (N.D. Ill. June 29, 2023) (noting increased product quality as one explanation for increased product pricing).

*Third*, evidence of Plaintiffs' conduct is relevant to whether Defendants' contracting strategy was reasonable. That Plaintiffs were not disgruntled customers who believed that Sunday Ticket was overpriced before filing the lawsuit suggests (i) that they valued the product and (ii) that Sunday Ticket provides avid fans with access to a high-quality product that they want to watch. Indeed, for the commercial class representatives, such evidence of Plaintiffs' actions demonstrates that Defendants' contracting strategy allowed commercial customers to profit from their subscriptions to Sunday Ticket. The NFL Defendants should be permitted to rely on such evidence to demonstrate procompetitive benefits, such as increased or sustained product quality, increased product innovation, and maximization of fan reach and access. *See Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 583 (N.D. Ill. 2005) (putative class representative's continued purchase of the challenged product did not disqualify her as a class representative but "certainly appear[s] to weaken [her] case"). The evidence is also relevant to rebut Plaintiffs' allegations that Defendants' contracting strategy was unreasonable and led to supra-competitive pricing. When viewed in light of the many options available to viewers of NFL game broadcasts, Plaintiffs' actions support Defendants' position that the distribution of Sunday Ticket was reasonable.

The result is no different under Rule 403, which permits exclusion of relevant evidence only "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Far from "distract[ing]" the jury "from the key issues in the case," and encouraging the jury to "decide the case on improper grounds," *see* Mot. at 3 (quoting *In re Urethane Antitrust Litig.*, 2016 WL 475339, at *7 (D.N.J. Feb. 8, 2016)), Defendants seek to introduce evidence of Plaintiffs' history of purchasing Sunday Ticket only for the purpose of refuting the elements of Plaintiffs' antitrust claims. Plaintiffs do not identify any substantial risk of prejudice associated with this evidence. *See Munoz v. PHH Mortg. Corp.*, 2022 WL 138670, at *2 (E.D. Cal. Jan. 14, 2022) (denying motion *in limine* where the moving party failed to offer "specific reasons why the jury will be confused"). But even if Plaintiffs could carry their burden to establish a risk of prejudice, any potential prejudice does not substantially outweigh the importance of ensuring that Defendants are able to rely upon relevant evidence to defend against Plaintiffs' claims or the probative value of that evidence. Thus, to the extent that Plaintiffs seek to preclude Defendants from presenting this evidence, that request should be denied.

## II. Evidence And Argument Regarding The History Of The Challenged Conduct Is Relevant.

Plaintiffs also seek an order prohibiting evidence and argument "that the challenged conduct is longstanding, or went unchallenged until recently, to imply legality." Mot. at 4–6. Defendants do not intend to assert that the mere passage of time dictates whether or not a given practice is anticompetitive.[1] But any broader

---

[1] Contrary to Plaintiffs' suggestion, *see* Mot. at 4 n.1, the restraints challenged here have not been challenged before in any litigation. *Shaw v. Dallas Cowboys Football Club, Ltd.*, 1998 WL 419765 (E.D. Pa. June 23, 1998), *aff'd*, 172 F.3d 299 (3d Cir. 1999), addressed a now decades-old agency agreement between DirecTV and the NFL that was fundamentally different from the licensing agreements challenged here.

4

relief would not be appropriate, including any ruling that might prevent Defendants from explaining the procompetitive rationales and effects of the challenged conduct, or from asserting their well-pleaded defenses under the statute of limitations and doctrine of laches. *See* ECF No. 442, Answer to Am. Compl. at 28, 30.

**Evidence of Sunday Ticket's procompetitive rationales and Plaintiffs' purchases.** The jury should be permitted to hear and consider evidence regarding the relevant history of the challenged conduct, including the timing of the agreements and Plaintiffs' conduct before and after filing this lawsuit. The rule of reason requires "'the factfinder [to] weigh[] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition' . . . includ[ing] 'specific information about the relevant business' and 'the restraint's history, nature, and effect.'" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (citations omitted).

Under this standard, evidence about the procompetitive rationales and effects of the challenged conduct relating to Sunday Ticket, when the lawsuit was brought, and customer satisfaction both before and after the lawsuit was filed, are each relevant to the disposition of Plaintiffs' antitrust claims. This includes evidence elicited by Defendants on cross examination regarding whether the class representatives' level of satisfaction with the product motivated them to bring the lawsuit. Similarly, evidence of the popularity of Sunday Ticket and customer satisfaction with the product (including after the litigation was initiated) is relevant to rebut Plaintiffs' claims that Sunday Ticket was priced supra-competitively and without regard to consumer demand for NFL telecasts. *See, e.g.*, *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 975 (C.D. Cal. 2012) ("Common sense dictates that a more popular [product] typically will command higher . . . prices than a less popular [product].").

For example, Defendants contend that appealing to avid fans was one of the motivations for the challenged strategy to distribute Sunday Ticket through DirecTV.

5

Case No. 2:15-ml-02668-PSG (SKx)                    Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 4 To Preclude Evidence And Arguments Regarding Background Of This Litigation

Evidence of this rationale, including how customers responded to the distribution strategy over time, is therefore relevant to assessing the reasonableness of the restraint and whether Defendants' alleged anticompetitive conduct had procompetitive justifications. *See Epic Games*, 67 F.4th at 987 (Apple's goal of "tapping into consumer demand," established in part through evidence of consumer surveys, was a "plainly procompetitive rationale[]."); *Qualcomm*, 969 F.3d at 991 ("'If the monopolist asserts a procompetitive justification . . . , for example, greater efficiency *or enhanced consumer appeal*—then the burden shifts back to the plaintiff to rebut that claim.'" (emphasis added) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001)).

Defendants have a right to introduce such evidence relevant to the competitive effects analysis. *See, e.g.*, *Armor Corr. Health Servs., Inc. v. Teal*, 2022 WL 18458135, at *5–6 (S.D. Fla. Jan. 7, 2022) (declining to grant plaintiff's motion *in limine* to exclude rebuttal evidence that defendant "[wa]s entitled to present" to refute plaintiff's theory of liability where plaintiff did not "demonstrate[] that this evidence is clearly inadmissible on all potential grounds"); *Beebe v. NutriBullet, LLC*, 2022 WL 3368564, at *1 (C.D. Cal. Aug. 16, 2022) ("[N]othing in this Order shall prevent Defendants from presenting evidence pertaining to" plaintiff's theory of liability.); *cf. United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994) ("In general, a defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." (cleaned up)).

**Evidence relevant to Defendants' defenses.** Defendants also oppose Plaintiffs' request to the extent that it seeks to limit Defendants' ability to assert their well-pleaded defenses under the statute of limitations and doctrine of laches. Plaintiffs' motion includes argument suggesting that the statute of limitations does not apply to their claims in light of the "continuing violation doctrine." Mot. at 5–6.

Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 4 To Preclude Evidence And Arguments Regarding Background Of This Litigation

Those arguments are not properly the subject of a motion *in limine* and, in any event, are both legally incorrect and factually unsupported.[2]

To the extent that Plaintiffs seek to use this motion to limit Defendants' ability to assert their defenses under the statute of limitations or doctrine of laches, a motion *in limine* is not the appropriate vehicle. *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997) ("If [plaintiff] wanted to preclude [defendant] from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion *in limine* on the eve of trial, but should instead have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56."); *see also Pavo Sols. LLC v. Kingston Tech. Co.*, 2020 WL 1049911, at *1 (C.D. Cal. Feb. 18, 2020) (cleaned up) ("allowing a party to litigate matters" in a motion *in limine* "that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of [those crucial] procedural protections that attach at summary judgment").

Defendants seek to introduce the challenged evidence only for the purposes of refuting the elements of Plaintiffs' antitrust claims and presenting their affirmative defenses. As with Plaintiffs' purchasing history, Plaintiffs have failed to carry their burden to identify any substantial risk of prejudice associated with presenting this evidence, and any potential prejudice does not substantially outweigh the importance

---

[2] Plaintiffs are incorrect to suggest that the continuing violation doctrine applies here, and in any event, Plaintiffs have adduced no evidence to support that limited exception to the accrual rule. *See, e.g.*, *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982) ("[T]he mere fact that defendants receive a benefit today as a result of a contract [that itself violated the Sherman Act] is not enough to restart the statute of limitations."); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 884 (N.D. Cal. 2015) ("Merely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act."); *SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023) ("[P]ermitting new unchanged . . . agreements to establish continuing violations would vitiate the purpose of the statute of limitations.").

7

Case No. 2:15-ml-02668-PSG (SKx)     Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 4 To Preclude Evidence And Arguments Regarding Background Of This Litigation

of ensuring that Defendants are able to defend against Plaintiffs' claims or the probative value of that evidence.

#     #     #     #     #

Defendants therefore submit that the following restrictions should apply to both sides, but maintain that further relief is inappropriate:

1.  No party shall assert that this litigation is—or is not—"attorney-driven"; and

2.  No party shall assert that the mere passage of time dictates whether or not a given practice is anticompetitive.

Defendants also respectfully request confirmation that nothing in the Court's order affects Defendants' ability to assert their well-pleaded affirmative defenses, including under the statute of limitations and doctrine of laches.

Dated: January 19, 2024

Respectfully submitted,

/s/ *Beth A. Wilkinson*

Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**Defendants' Opposition To Plaintiffs' Motion *In Limine* No. 4 To Preclude Evidence And Arguments Regarding Background Of This Litigation**