Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**MEMORANDUM IN OPPOSITION TO NFL DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCE TO THE PRICING ARRANGEMENTS FOR NFLSUNDAYTICKET.TV**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: February 7, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

The NFL Defendants' motion *in limine* to exclude references to pricing arrangements for the nflsundayticket.TV product (".TV") should be denied because such evidence is indisputably relevant and directly probative of the NFL's claim that they had "no role" in setting Sunday Ticket prices.

The NFL does not dispute that references to the .TV product are relevant. Critically, .TV is the **exact same** Sunday Ticket package of out-of-market games sold to DirecTV satellite subscribers, only in digital version. The only difference was that the .TV product was only available to customers who faced restrictions in their ability to install a satellite dish at their residence or establishment; customers who were able to install a satellite dish were not eligible to receive .TV. Even Plaintiffs' complaint alleges that the conspiracy encompassed this digital product. *See* Second Am. Compl. ¶ 91 (ECF No. 441). It is difficult to imagine evidence more "relevant." *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action.").

The NFL is thus left to argue that the .TV pricing arrangements are ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and thus their introduction would risk confusing the jury. Defs.' Mot. *in Limine* No. 4 (ECF No. 1116-1) at 1. Not so. First, the NFL's assertion that .TV product was ▬▬▬▬▬▬▬▬▬▬ distributed on a different platform from Sunday Ticket" is, at best, misleading. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Ex. 1 (Lawton Dep. 52:17-55:15); Ex. 2 (NFL_0000458 at 476-77). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬, for example, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id* at 468.

Second, this Court is well-familiar with the NFL Defendants' litigation strategy seeking to atomize contracts and limit consideration to their individual "four corners" when, in fact, Plaintiffs assert that the NFL Defendants have

1

1  "conspired and entered a set of agreements with each other . . . that suppress the
2  output of telecasts of out-of-market professional football games" which requires a
3  "holistic look at how the interlocking agreements actually impact competition." *See*
4  Op. Denying NFL Defs.' Mot. for Summary Judgment (ECF No. 1155) at 2, 8
5  (internal quotations omitted). Taken together, the agreements among the NFL
6  Defendants, DirecTV, and the networks (Fox and CBS), worked to suppress the
7  output of game telecasts and function as a market division agreement to allocate
8  customers. *See, e.g.*, Ex. 3 (NFL_0490997 at 998) (███████████████
9  ██████████████████████████████████████).

10    Moreover, the pricing arrangements of an identical product sold to customers
11  through two means of distribution bears directly on the supply, demand, and pricing
12  factors that the conspirators used to control the overall output of game telecasts in
13  furtherance of their conspiracy. ██████████████████████████
14  ████████████████████████████████████████████
15  ████████████████████████████ Ex. 4 (████
16  ████████████████████████████████████████████
17  ████████████████████████████████████████████
18  ████████████████████████████████████████████
19  █████████████████████████; Ex. 5 █████████████
20  ████████████████████████████████████████████
21  ████████████████████████████████████████████
22  ████████████████████████████████████████████
23  ████████████████████████████████████████████
24  ████████████████████████████████████████████
25    Moreover, .TV evidence contradicts the NFL's argument that ████████
26  ████████████████████████. *See* Defs'. Mot. *in Limine* No. 4 (ECF No.
27  1116-1) at 1. Plaintiffs allege that the NFL had a role in setting the pricing of
28  Sunday Ticket in both channels of distribution. The fact that the ██████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████ *See, e.g.*, Pls.' Statement of Genuine Issues and Additional Undisputed Facts (ECF No. 965-3) ¶¶ 245-256 (████████████████████████████████████████████████████).[1]

Finally, the NFL overstates any risk of jury confusion. The central issue for the jury will be to determine whether the defendants "conspired and entered a set of agreements with each other . . . that suppress the output of telecasts of out-of-market professional football games." Op. at 2. The pricing arrangement for identical and similar products will be at the core of the evidence that the jury must weigh and evaluate. *See, e.g., In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661 (7th Cir. 2002) (denying summary judgment and noting that "[t]he charge is of a garden-variety price-fixing conspiracy orchestrated by a firm, ADM, conceded to have fixed prices on related products (lysine and citric acid) during a period overlapping the period of the alleged conspiracy to fix the prices of HFCS."); *United States v. Andreas*, 216 F.3d 64, 665-66 (7th Cir. 2000) ("evidence of the citric-acid conspiracy was relevant . . . and not unfairly prejudicial" because the "lysine and citric-acid conspiracies were closely related parts of a master plan to control prices and product supply through collusion with competitors" and thus, "omit[ting] this evidence would . . . leave an unexplained gap in the narrative of the

---

[1] Furthermore, the exclusion of .TV customers from the class definition has no bearing on the merits of Plaintiffs' claims, and does not otherwise make the conduct irrelevant. Plaintiffs in fact allege that the .TV customers were overcharged, further underscoring the relevance of the pricing arrangement of DirecTV's digital offering. *See, e.g.*, Second Am. Compl. ¶ 91. The NFL's cited cases are inapposite. The discussion on which they rely involved evidence relevant to a "class certification analysis," *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 260 (N.D. Cal. 2016); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 390 (S.D.N.Y. 2016) (same). *See also Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244, 2022 WL 3974752, at *15 (N.D. Cal. Aug. 31, 2022) (denying defendant's motion *in limine* and holding that testimony and evidence about non-class members is relevant).

crime"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 5871243, at *6-7 (N.D. Cal. Oct. 7, 2016) (denying defendants' motion *in limine* and noting that "[e]vidence of misconduct regarding CDTs would therefore be just as relevant and no more likely to mislead, confuse, or cause undue delay as evidence of misconduct regarding CPTs because both are probative of misconduct regarding a conspiracy to fix the price of CRTs."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, Order on Motions *in Limine* & For Pre-Trial Preparation at 9 (ECF No. 1206) (N.D. Cal. Dec. 16, 2010) (denying motion to limit evidence of any of Samsung's conduct related to the DRAM conspiracy).

      For the foregoing reasons, the NFL Defendants' motion to exclude references to pricing authority for nflsundayticket.TV should be denied.

Dated: January 19, 2024            Respectfully submitted,

                         By: /s/ *Marc M. Seltzer*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*