Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**MEMORANDUM IN OPPOSITION TO THE NFL DEFENDANTS' MOTION IN LIMINE NO. 6 TO EXCLUDE CERTAIN OPINIONS OF J. DOUGLAS ZONA**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: February 7, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

Just like the motion this Court denied when it certified the classes in this case, the NFL's second attempt to exclude Dr. Zona's opinions is meritless. Each of Dr. Zona's opinions is based on sufficient facts and data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts of this antitrust case. *See* Fed. R. Evid. 702(a)–(d). The NFL's latest critiques, by contrast, are substantively misguided. Indeed, the NFL never really grapples with Dr. Zona's opinions at all. Across its entire motion, the NFL cites just three paragraphs of Dr. Zona's merits report, and a select few lines from nearly seven hours of deposition testimony.

At most, as this court previously ruled, "[t]he arguments raised by Defendants are best characterized as arguments going to weight, not admissibility." *See* Order Certifying Classes, Dkt. 894, at 11 (denying first NFL motion to exclude Dr. Zona's opinions). The NFL may disagree with Dr. Zona's conclusions, or believe that a world without restraints on competition would not make consumers better off. The NFL is free to present such arguments to the trier of fact.

## I. DR. ZONA'S DECISION TO ASSUME FIXED-FEE LICENSING IN THE BUT-FOR WORLD IS RELIABLE.

The NFL first contends that it would be "economically irrational" to license out-of-market NFL football telecasts using a fixed-fee licensing structure if those telecasts were licensed to multiple distributors. *See* NFL Mot. at 3–4. That claim contradicts sound economic principles, the NFL's own internal analyses, and other real-world evidence.

The NFL suggests that in Dr. Zona's simulations, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

1  Zona fails to account for the different market incentives facing ▓▓▓▓▓▓▓ in
2  simulating his but-for worlds. *See* NFL Mot. at 3. This critique is nearly identical to
3  a critique raised by the NFL against Dr. Rascher at the class certification stage in the
4  NFL's unsuccessful attempt to exclude Dr. Rascher's testimony. *See* Mem. in Supp.
5  of NFL Defs.' Mot. to Exclude the Opinions of Daniel A. Rascher, Dkt. No. 705, at
6  17–18 (Nov. 17, 2022).

  Dr. Zona's decision to incorporate a fixed-fee licensing structure into his modeling properly accounts for all material economic incentives that would exist in the but-for world. To begin, the NFL fails to explain why it thinks the structures of the out-of-market packages of the MLB, NHL, and NBA are good comparators with respect to "practices" or "incentives," but not, as Dr. Rascher suggests in his merits report, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and "all priced less expensively than NFL Sunday Ticket." *See* ECF 962-4, Expert Report of Daniel A. Rascher, dated February 17, 2023 ("Rascher Merits Rpt.") ¶¶ 154–56. The NFL even ignores that consumers can access all out-of-market NHL games by subscribing to ESPN+ for just $11 per month. *See, e.g., id.* ¶ 393 & n.517. Like at the class certification stage, the NFL's arguments are inconsistent. *Compare* Dkt. No. 703-1, at 9 (first motion to exclude Dr. Zona's opinions) ("The opinion in *Laumann* is directly on point.") *with* Dkt. No. 828, at 6, 12 (NFL Opposition to Yurukoglu Disqualification) ("[There are only] vague similarities between *Laumann* and the case before this Court.") *and* Dkt. No. 829, at 3 ("*Laumann* is directly on point.").

  The NFL's citation to *Murphy Tugboat* is similarly off point. The NFL cites *Murphy Tugboat* because there the Ninth Circuit "*overturned* a damages award in an antitrust trial because the plaintiff's economist had *failed* to account for the fact that the defendant would have cut its prices if a new competitor had entered the market." NFL Mot. at 2 (citing 658 F.2d 1256, 1262) (emphases added). That holding cuts

squarely *against* the NFL. Throughout this case, the NFL's economists have ignored the basic law of supply and demand. Instead, it is Plaintiffs—including through Dr. Zona—who have marshalled significant economic and real-world evidence that reliably demonstrates that making additional out-of-market football telecasts available—in various packages and through various media—would benefit consumers through greater choice and lower prices. *See Murphy Tugboat*, 658 F.2d at 1262 (concluding that prices for extant product "would have [been] cut … if a new competitor had entered the market").

While the MLB, NHL, and NBA have had multi-distributor out-of-market licensing arrangements that have included per-subscriber fee arrangements, these arrangements vary widely and have changed over time. *See* Rascher Merits Rpt., ¶¶ 415–18 (██████████████████████████████████████████████████████████████████████). In any event, there are good reasons why Dr. Zona did not implement such a hypothetical licensing structure here. And he certainly was not required to do so to satisfy any economic rule. Each of the NFL's current broadcast agreements is ██████████, and Dr. Zona's decision to maintain that assumption in his modeling makes his but-for-world analyses more precise. Further, in Canada, Sunday Ticket is distributed non-exclusively, *see, e.g.*, Rascher Merits Rpt., ¶¶ 105, 382–84, yet the NFL does not ████████████████████████.

More generally, fixed-fee licensing structures have significant operational benefits. They provide certainty and limit downside by guaranteeing a consistent revenue stream. They can also better align the incentives of the contracting parties. For example, an internal 2016 NFL presentation shows ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3

## II. DR. ZONA RELIABLY MODELS DEMAND IN HIS TRANSACTION & VIEWERSHIP MODEL.

The NFL next claims that "Dr. Zona's model fails to account for the viewing preferences of individual fans," and that Dr. Zona "did not allow for any differences among individual households within each [Designated Marketing Area (DMA)]." NFL Mot. at 5–6.

This is simply incorrect. Dr. Zona designed his Transaction & Viewership Model to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. It is true that, at the first step of his model, Dr. Zona estimates demand for Sunday Ticket at the DMA level. To produce that estimate, however, Dr. Zona uses ▉▉▉▉▉▉▉▉▉▉

---

[1] The NFL also claims that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." NFL Mot. at 5. That prediction is the result of the series of unjustified assumptions arbitrarily imposed on Dr. Zona's model by Prof. Yurukoglu, including that the NFL would be the sole licensor of out-of-market football telecasts or that the new licensors (be they teams, networks, or some combination thereof) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. In any case, Dr. Zona's model accommodates either a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. As the NFL's citation to Dr. Zona's report makes clear, Dr. Zona's model handles ▉▉▉▉▉▉▉▉▉ as marginal costs, see NFL Mot. at 4 (citing as basis for critique Zona ¶ 67, in his section concerning calculation of marginal cost), ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. See Trainer Decl. Ex. 4, Zona 6/23/23 Dep. Tr. 323:2–8 ("Q. … [D]o you make any assumptions about the licensing structure that the NFL would use with DirecTV in the but-for world? A. I assume that the cost -- yes. I assume that the cost structure would continue as it has. In other words, the marginal cost to DirecTV would continue to be as it has been."). This is just the kind of question about what the but-for world would look like that is appropriate for resolution by the jury and does not bear on the reliability of Dr. Zona's methodology.

4

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ████████████████████████████████████. What results, then, is not a single set of preferences—or the prohibition on individual preferences—but a *distribution* of preferences within a DMA, populated by the relative likelihood that a viewer in the DMA would prefer one game over another.[2]

The NFL's hypothetical concerning the Rams, Chargers, and Cowboys games is thus misleading. The NFL says that Dr. Zona's model predicts that, "███████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████" NFL Mot. at 6. (emphases the NFL's). This statement distorts what Dr. Zona's model is designed to do. Dr. Zona's model predicts what *proportion* of consumers within a DMA will choose to switch to the Chargers game, and what *proportion* will switch to the other available games. It does *not* in any way assume that every individual in the DMA has the same tastes or will take the same action if presented with a new slate of games.

In fact, nowhere in his report does Dr. Zona make claims about particular individual consumers or what they would do if they had access to different NFL games. Instead, to use the NFL's example, Dr. Zona's model predicts what all Los Angeles Rams viewers are likely to do if a Rams telecast went away. The NFL mistakes Dr. Zona's choice to employ a distributional approach as an omission of an individual one, and then misleadingly suggests that Dr. Zona's model is constructed with individuals with identical preferences.

---

[2] Nor is it necessary to do so to measure what the difference in price would be to all viewers in a DMA.

5

The NFL's reliance on *Google Play* also is inappropriate. For one, Dr. Zona does not employ a "logit model" of the type apparently at issue in *Google Play*. Rather, he employs a *nested*-logit model. *See* Dkt. 1130, Ex. 2, Expert Reply Report of J. Douglas Zona, ¶ 11. Importantly, Dr. Zona's nested-logit model is not subject to the same type of independence of irrelevant alternatives ("IIA") property that led Judge Donato to exclude the economist's testimony in *Google Play*. Indeed, econometricians developed the nested-logit model in large part to lessen the effect of the IIA property. *See e.g.*, Moshe Ben-Akiva and Steven R. Lerman, Discrete Choice Analysis 286 (1985) ("Two general approaches have been developed to cope with this problem. … The first approach is called the nested logit model.").

Further, the real-world economics at issue in *Google Play* do not apply to Dr. Zona's model. In *Google Play*, the problem with the expert's model was that the model "[did] not provide any boundaries on substitution in broad categories [of products] that contain many unlike products." *Google Play*, 2023 WL 5532128, at *7. The court noted that the expert's model, for example, "assume[d] that if Rosetta Stone raised its price and some customers substituted away," a botany app called Picture-This-Plant-Identifier "would capture a larger percentage of these switching customers than Duolingo"—a language app similar to Rosetta Stone—"simply because Picture-This-Plant-Identifier has a larger category share than Duolingo." *Id.* at *6. The expert confirmed that his model made such a prediction. *Id.* Here, unlike *Google Play*, not only has Dr. Zona constructed his nested-logit model to avoid mis-substitution, but the universe of alternative products to which any one consumer can switch is limited to a select few football games broadcast on Sunday afternoons, and the NFL makes no attempt to suggest that any substitutability among those games in Dr. Zona's model is inappropriate.

III. **DR. ZONA APPROPRIATELY COMPARES ACTUAL AND BUT-FOR WORLD PRICES IN HIS CONJOINT MODEL.**

The NFL finally claims that Dr. Zona impermissibly "█████████████████████████████████████████████████████████████████████████████████." NFL Mot. at 8. The NFL's criticism is misguided. In his Conjoint Model, Dr. Zona concludes that the market price for Sunday Ticket in a world with one additional Sunday Ticket competitor would have been $█████, *see* ECF 962-34, Expert Merits Report of J. Douglas Zona, Ex. 20, in line with the prices for out-of-market game packages sold by other major American sports leagues. Dr. Zona then compares that price to $295.00—the approximate retail price at which the Sunday Ticket package was sold during the class period—to assess the effect that competition would have had on the price of the Sunday Ticket in a world without the challenged restraints.

In its motion, the NFL does not challenge the reliability of Dr. Zona's profit-maximizing price calculations. Nor does it challenge the reliability of the data on which Dr. Zona's calculations relied (the results of Sarah Butler's survey). Instead, the NFL complains that Dr. Zona should have compared $█████ (the profit-maximizing price of Sunday Ticket with one competitor) not to $295.00 (the retail price of Sunday Ticket without any competitors) but to $█████, a different price derived in a different model using different data.

The NFL's argument is demonstrably flawed. First, $█████ is not a retail price or a profit-maximizing price but t██████████████████████████████████████████████████████. Moreover, that price is not even derived using Conjoint Model data; instead, it is based on the vast amounts of ████████████████████ that Dr. Zona analyzed in his Transaction & Viewership Model. Finally, as an average price, $█████ includes all sorts of corporate promotions that do not exist in the survey data—and thus do not exist in Dr. Zona's Conjoint Model—including discounts, early cancellations, early terminations, free trials, employee referrals, and many other

1  such promotions. Sunday Ticket was never sold for $▮▮▮▮, and no consumer
2  actually paid that price, except by coincidence. The NFL is not comparing like with
3  like—the two models approach the question of price differently.
4     A review of Sarah Butler's expert report reveals the root of the NFL's mistake.
5  In her survey, Ms. Butler presented respondents with a "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Trainer Decl. Ex. 2, Expert Report of Sarah Butler, dated
9  February 17, 2023 ("Butler Merits Rpt.") ¶ 103. The choice exercise also presented
10 survey respondents with "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" for each such package. As Ms.
11 Butler makes clear, those prices "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," which was informed by her "▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* ¶ 113. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Zona's comparison of
18 $158.50 to $295.00 to assess the effect of competition in his Conjoint Model thus is
19 appropriate.
20    Even internal pricing surveys commissioned by the NFL ▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28

1 [REDACTED]

2 [REDACTED]

3 [REDACTED]

4 [REDACTED] Ms. Butler discusses these and other surveys and their pricing methodology

5 extensively in her report. *See* Butler Merits Rpt., Sec. V.A, ¶¶ 19–45.

6     The NFL also claims that the prices Dr. Zona calculates in his Conjoint Model

7 are "net prices," *see* Mot. at 7–8, and cites his deposition testimony for support.

8 Again, the NFL's claim is misguided. Dr. Zona does not say that the prices he

9 calculates in his Conjoint Model are net prices but the opposite. As discussed, Ms.

10 Butler excludes discounts and other promotions from her survey, and Dr. Zona

11 therefore excludes them from his calculations. Moreover, while survey respondents

12 included some DirecTV or Sunday Ticket subscribers, "[REDACTED]

13 [REDACTED]

14 [REDACTED]

15 [REDACTED]."

16 Butler Merits Rpt., ¶ 103. In other words, survey respondents were never told that

17 their willingness to pay a certain price for a certain NFL telecast package would later

18 be discounted by some set of discounts. Indeed, the majority of survey respondents

19 were not Sunday Ticket subscribers, and the majority of those who were Sunday

20 Ticket subscribers reported paying either $293.96 or $395.99. Butler Merits Rpt.,

21 Tables 7, 8. So, even if a survey respondent was aware of DirecTV's promotional

22 regime, the majority reported paying at least the price that Dr. Zona used as a

23 benchmark.

24     In short, Dr. Zona compares prices differently *across* his models but

25 consistently *within* them. In the Conjoint Model, Dr. Zona models demand for out-

26 of-market football telecasts using survey data that was based on Sunday Ticket list

27 prices. Dr. Zona's Conjoint Model simulations thus compared the resulting

28

competitive prices to those list prices. In the Transaction & Viewership Model, by contrast, Dr. Zona models demand for out-of-market football telecasts using transactions data based upon prices consumers actually paid. In that model, price simulations assume that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Both models compute price changes in a but-for world with added competition, and both models employ consistent principles to do so.

*****

In short, the NFL Defendants have not shown that any of Dr. Zona's opinions do not meet Rule 702's test for reliability. All of the NFL Defendants' critiques are, at most, fodder for cross-examination for the jury's consideration, not grounds for exclusion.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that the NFL Defendants' Motion in Limine No. 6 to Exclude Certain Opinions of J. Douglas Zona should be denied.

Dated: January 19, 2024

Respectfully submitted,

By: /s/ *Marc M. Seltzer*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com

Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020

Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*