Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' OPPOSITION TO THE NFL DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCE TO PRIOR LAWSUITS NOT INVOLVING EITHER PARTY**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: February 7, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

Like the NFL Defendants' companion Motion *in Limine* No. 3, which would have the jury screened from the entire, directly relevant history of litigation involving the NFL teams' agreement to restrict their competition for broadcasting rights, the NFL Defendants' Motion *in Limine* No. 2 seeks a wholesale exclusion of "trial arguments to the jury and testimony based on" sports broadcasting cases (the so-called "non-NFL cases") relied upon by Plaintiffs' experts "as well as references to the non-NFL cases themselves." Mot. at 1.[1] The NFL Defendants' motion is an end-run attempt to eviscerate these experts' opinions, including in particular by trying to prevent Plaintiffs' sports economist Dr. Daniel Rascher from using his yardstick methodology based on college football—for which *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) is central—to model class-wide injury and damages.[2]

The NFL Defendants' motion also is a red herring. None of Plaintiffs' experts will offer any legal opinion *at all*. To the contrary, their discussion of the subject cases addresses the critically relevant purposes of showing what broadcast offerings are feasible and what the norm can be in the absence of anticompetitive restraints.

---

[1] The "non-NFL cases" identified by the NFL Defendants are *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) ("*NCAA*"); *Garber v. Office of the Commissioner of Baseball*, No. 12-cv-3704, 2016 WL 749950 (S.D.N.Y. Jan. 22, 2016) ("*Garber*"); *Laumann v. National Hockey League*, 907 F. Supp. 2d 465 (S.D.N.Y. 2012); *Madison Square Garden, L.P. v. National Hockey League*, No. 07-cv-8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008); and *Chicago Professional Sports Ltd. Partnership v. National Basketball Association*, 754 F. Supp. 1336 (N.D. Ill. 1991), *aff'd*, 961 F.2d 667 (7th Cir. 1992).

[2] In its order denying summary judgment, this Court noted that it "has already found 'Dr. Rascher's [College Football But-For World] model adequate to produce class-wide proof of impact and damages, especially considering that the Ninth Circuit has already recognized college football as a close analog to this case.'" Order Denying NFL Defendants' Motion for Summary Judgment, ECF No. 1155, at 19 (Jan. 11, 2024) (quoting Class Certification Order at 18) (modifications in original). The NFL Defendants nonetheless also seek to exclude opinions of Dr. Rascher by their Motion *in Limine* No. 5.

The experts' use of these cases (including their findings and the changes that occurred in their wake) as relevant history and factual support for their economic analysis of the effects of lifting broadcast restraints is entirely appropriate and essential for the jury's understanding of Plaintiffs' case. Indeed, it would be strange if Plaintiffs' experts had *not* considered these legal histories, which present valuable natural experiments in analogous situations, in forming their opinions. Such evidence and testimony are in no way prejudicial and would not lead the jury astray from its charge in this case—though their exclusion would be severely prejudicial to Plaintiffs.

## I. *NCAA* and Other "Non-NFL" Cases are Highly Relevant to the Analysis of Plaintiffs' Experts, And Are Not Offered for Legal Arguments

The NFL Defendants' motion as it relates to *NCAA* could hardly be broader: it seeks to exclude "[a]ny discussion of the *NCAA* case offered by Plaintiffs' experts, including references to the facts of *NCAA* and how they compare to the facts of this case." Mot. at 3-4. Simply put, the restraints at issue in *NCAA*, what was found to be anticompetitive and unlawful about those restraints, and what happened to the broadcast market and competition *before and after those restraints were enjoined* is central to Plaintiffs' case on liability, impact, and damages.

For his "yardstick" damages methodology, Dr. Rascher "chose to use the college football market as the yardstick, which the Ninth Circuit has recognized as a close analog in this case." ECF No. 894 (Feb. 7, 2023) (Class Certification Order), at 13 (citation omitted). And in doing so, Dr. Rascher considered the effect of increased competition in the college football market as well as "other important factors about the structural similarities between college and professional football," which provided "a valid basis to use college football as a yardstick." *Id.* The jury's understanding of that methodology turns on understanding the central role of the restraints that were enjoined in *NCAA*. As the Ninth Circuit observed, commentators documented the increased competition and explosive proliferation of televised college football games after conferences and teams became free to sign their own broadcasting deals

following the decision in *NCAA* eliminating the restrictive agreements. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1148 (9th Cir. 2019) (observing that the number of televised college football games grew "exponentially" in the wake of *NCAA*) ("*NFLST*").

Indeed, the NFL's own expert witness (and former CBS Executive Vice President) Neal Pilson confirmed as much in testimony before Congress in the summer of 1984, in which he provided new scheduling data to confirm "that in 1984 more college football games will be available, and more viewers will watch college football, than ever before in the history of the sport." Maida Decl., Ex. 1 (Exhibit 5 of the Deposition of Neal Pilson, Hearing before the Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce) at 129, 132 ("[I]t is clear to us that the result of the Supreme Court's decision will be a more freely competitive market which will better serve the American television viewer. That viewer will be offered a greater and more diverse sample of college football games than he has ever been offered before."). The Ninth Circuit similarly emphasized the relevance of the NCAA's history in this litigation. *See NFLST*, 933 F.3d at 1146-47 (noting that "[l]ike the NFL, the NCAA had a long-standing restriction on televising team games" and recounting that history). "Just as the University of Oklahoma[, the University of Georgia, and, *e.g.*, Notre Dame] w[ere] forbidden from increasing the number of telecasts made of its games, so too are the Seattle Seahawks forbidden from selling their telecast rights independently from the NFL." *Id.* at 1151.

Now, the NFL Defendants seek to gut the relevance of Dr. Rascher's college football model by untethering it from the *NCAA* decision that explains historically how the changes were precipitated and serves as the inflection point for the economic analysis of their effects. Dr. Rascher's reference to *NCAA* for those purposes is essential for the jury's clear understanding and entirely appropriate. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1056 (9th Cir. 2008) (striking "only those portions of the report that discuss the law and its application.");

*Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197, 2016 WL 4560071, at *9 (N.D. Cal. Aug. 22, 2016) (allowing introduction of a prior lawsuit given its relevance to damages, the relationship and history between the parties, and defendant's defense); *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16-cv-489, 2019 WL 3307850, at *7 (W.D. Va. July 22, 2019) (denying plaintiffs' motion *in limine* to the extent defendant's references to prior litigation are "for the purpose of providing some history and context as to the present dispute"), *order clarified*, No. 7:16-cv-489, 2019 WL 4197221 (W.D. Va. Sept. 4, 2019).

The authorities relied upon by the NFL Defendants—including cases involving witnesses who offered purely legal opinions and conclusions on the ultimate legal issues in dispute—are inapposite here.[3] Neither Dr. Rascher nor any of Plaintiffs' experts will invade the role of the Court or the jury. Even those portions of Plaintiffs' expert reports that the NFL Defendants cherry-picked as purportedly inappropriate, *see* Mot. at 2-3, are discussions that are factual or historical in nature, and are offered to support the experts' opinions or to rebut the NFL Defendants' own expert opinions regarding the "non-NFL" cases. *See* ECF No. 962-4, Expert Report

---

[3] *See KB Home v. Illinois Union Ins. Co.*, No. 8:20-cv-00278, 2023 WL 3432139, at *4 (C.D. Cal. Mar. 28, 2023) (exclusion of expert's testimony that was an "expositions of legal principles and rules, interpretation of the Policy, and conclusions as to ultimate legal issues in dispute—*i.e.*, whether coverage existed under the Policy and whether IUIC breached its duties to KB Home."); *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 902 (N.D. Cal. 2022) (excluding expert's opinions because they were "bald legal conclusions" and most of her report was an "overview of how various aspects of copyright law work"); *Relevant Grp., LLC v. Nourmand*, No. CV 19-05019, 2022 WL 18356631, at *2 (C.D. Cal. Dec. 9, 2022) (excluding expert's testimony that a settlement was "purely extortionate" and the defendant's lawsuits were "without regard to the merits" where the ultimate issue was whether the sham petitioning exception applied); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 680 (N.D. Cal. 2021) (excluding the opinions of a lay witness regarding compliance with AAFCO and FDA regulations given that they are legal conclusions, but allowing the witness to "state the facts underlying his view on compliance").

of Daniel A. Rascher, dated February 17, 2023 ("Rascher Rep.") ¶¶ 157–61 (factual and historical discussion supporting his opinion regarding anticompetitive effects), 29, 93 n.105, 326–29 (factual comparison to college football for yardstick analysis of damages and anticompetitive effects), 182-84, 202 (factual support for opinion on market definition and damages); ECF No. 962-5, Expert Reply Report of Daniel A. Rascher, dated June 9, 2023 ("Rascher Reply Rep.") ¶¶ 396–400 (support for his opinion regarding less restrictive alternatives); ECF No. 962-30, Expert Rebuttal Report of Leonard DeLuca, dated June 8, 2023 ("DeLuca Rebuttal Rep.") ¶¶ 4, 38 n.38, 49–53, 75, 82 n.97, 83 (discussion regarding factual, historical, and business issues of college football, and rebuttal of NFL Defendants' expert opinions); ECF No. 962-29, Expert Rebuttal Report of Einer Elhauge, dated June 9, 2023 ("Elhauge Rebuttal Rep.") ¶ 24 (rebutting opinion of the NFL Defendants' expert, Prof. Bernheim, regarding the *NCAA* decision and college football).

And for the avoidance of doubt, Plaintiffs' experts have expressly stated that they are *not* offering any legal opinions and specifically declined to do so when asked in deposition questions that invited such conclusions.[4]

## II. The "Non-NFL" Cases are Intrinsically Relevant to Plaintiffs' Expert Analyses, Substantially Outweighing Any Purported Prejudice

The NFL Defendants argue that reference to the "non-NFL" cases would be irrelevant and prejudicial because they "address[] a different broadcasting arrangement, by a different entity, in a different market." Mot. at 4. That is hardly

---

[4] *See, e.g.*, Maida Decl., Ex. 2 (Rascher Dep.) at 108:7-16 ("this may be a legal question for you and other lawyers and the Court"); 139:14-140:7 ("I don't want to say legally, you know, who owns the right"); Ex. 3 (DeLuca Dep.) at 60:10-21 ("I hope you're not asking me here for a legal opinion"); Ex. 4 (Elhauge Dep.) at 62:5-6 ("Sorry. I'm not opining on any questions of law."); *id.* at 39:12-13 ("I'm not opining on the scope of the SBA because that's a legal question."); *id.* at 39:25-40:1 ("That's a legal question, and I don't want to give an opinion on legal issues."); *id.* at 19:4-5 ("I don't want to offer any legal opinions"); *id.* at 113:2-4 ("the scope of the SBA … is a legal issue on which, you know, I am not opining on that."); *id.* at 142:19-20 ("I am … not offering any opinions on legal topics.").

surprising, since the NFL Defendants' broadcast restraints remain in place; those accusations could be leveled against virtually *any* yardstick analysis and in truth are really an attack on antitrust economics altogether. Dr. Rascher's yardstick analysis relies upon college football because competition among teams and conferences changed, and indeed grew exponentially, after *those* restraints were lifted following *NCAA*. *See NFLST*, 933 F.3d at 1148.

Likewise, the *Garber* (MLB) and *Laumann* (NHL) cases illustrate, within professional sports leagues, the economic consequences of restraints imposed by horizontal agreements among teams. And the cases are relevant in particular to show economically whether separate team telecasts in professional sports are feasible, and in fact, the default norm absent such an agreement. Those principles go directly to the NFL Defendants' arguments here claiming to the contrary.[5] Were that not enough, the Ninth Circuit also agreed that the National Hockey League and Major League Baseball are "comparable sports leagues," in which "'each team owns the initial right to control telecasts of its home games.'" *Id*. at 1154 (quoting *Laumann v. NHL*, 907 F. Supp. 2d 465, 473, 485 (S.D.N.Y. 2012) and citing *New Boston Television, Inc. v. ESPN*, No. 81-1010, 1981 WL 1374, at *1 (D. Mass. Aug. 3, 1981) ("The copyright of the teleplays of all Red Sox games is owned by the Red Sox.")). And the NFL Defendants' own economic expert, Dr. B. Douglas Bernheim, repeatedly cites to *Laumann* in his own expert report to provide "industry background" on game telecasting in other professional sports. *See* ECF No. 956-10, Expert Report of Douglas Bernheim, dated April 28, 2023, ¶¶ 112-124.

---

[5] The NFL Defendants' assertion that mention of *Garber* would devolve into a "mini-trial" to "explain the differences between the legal and factual points at issue in that case" is a canard. While there may be some additional questioning for the limited purposes for which the case would be discussed, the "non-NFL" cases have not been invoked to disprove the procompetitive justifications proffered by the NFL Defendants in this case, the purported distinctions raised by the NFL Defendants. *See* Mot. at 5.

Finally, even if the Court harbored a concern that the mere introduction of these highly relevant cases would "lead the jury astray," Mot. at 4, that could be addressed with an appropriate instruction. Courts are mindful that a jury is presumed to take its role seriously and to carry out its fact-finding mission competently and thoroughly. *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (jurors are "conscious of the gravity of their task" and pay close attention and carefully follow a judge's instructions). *See United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004) ("Any danger that the jury would have given undue weight to the state court judgment could have been dealt with by a cautionary instruction."); *Twentieth Century Fox Film Corp. v. Brookside Theatre Corp.*, 194 F.2d 846, 853 (8th Cir. 1952) (no error in portions of the final decree and factual findings and conclusions of law from a previous decision being read into the record, where the trial court instructed that the jury could not base its decision simply on the prior outcome).

### III.  Conclusion

For the foregoing reasons, the NFL Defendants' motion should be denied.

Dated: January 19, 2024

Respectfully submitted,

By: */s/ Sathya S. Gosselin*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com

SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO THE NFL'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCE TO PRIOR LAWSUITS NOT INVOLVING EITHER PARTY