# Exhibit 4 to the Declaration of Samuel Maida

                                                                    1

1
2                   UNITED STATES DISTRICT COURT
3                  CENTRAL DISTRICT OF CALIFORNIA
4
                                      )
5                                     )
                                      ) CASE NO.
6                                     2:15-ml-02668-PSG (JEMx)
    IN RE: NATIONAL FOOTBALL           )
7   LEAGUE'S "SUNDAY TICKET"           )
    ANTITRUST LITIGATION               )
8                                     )PAGES 1 - 255
                                      )
9                                     )
    _____ )
10
11
12
13              DEPOSITION OF EINER ELHAUGE
14                 Thursday, July 6, 2023
15   APPEARING REMOTELY FROM HUNTINGTON BEACH, CALIFORNIA
16
17
18
19
20
21
22
23   STENOGRAPHICALLY REPORTED BY:
     LINDSAY A. STOKER, RPR, CRC
24   CA CSR No. 14373
     Job No.:  2023-902215
25

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 3 of 12   Page ID
In Re - NFL Sunday Antitrust Litigation        #:44898                              Einer Elhauge
                                                                                    July 06, 2023

3

```
 1                    A P P E A R A N C E S
                             --oOo--
 2
      APPEARING ON BEHALF OF THE PLAINTIFF:
 3
      LANGER GROGAN & DIVER, P.C.
 4    BY:  PETER E. LECKMAN, ESQ.
      Three Logan Square
 5    Suite 4130
      Philadelphia, Pennsylvania 19103
 6    Telephone:  (215) 320-0876
      Facsimile:  (215) 320-5703
 7    Email:  Pleckman@langergrogan.com
 8    LANGER GROGAN & DIVER, P.C.
      BY:  HOWARD LANGER, ESQ.
 9    Three Logan Square
      Suite 4130
10    Philadelphia, Pennsylvania 19103
      Telephone:  (215) 320-0876
11    Facsimile:  (215) 320-5703
      Email:  Hlanger@langergrogan.com
12
13    APPEARING ON BEHALF OF THE DEFENDANT:
14    WILKINSON STEKLOFF
      BY:  RAKESH KILARU, ESQ.
15    2001 M Street, NW, 10th Floor
      Washington, D.C.  20036
16    Telephone:  (202) 847-4046
      Facsimile:  (202) 847-4005
17    Email:  Rkilaru@wilkinsonstekloff.com
18    WILKINSON STEKLOFF
      BY:  CAROLINE LI, ESQ.
19    130 W 42nd Street
      24th Floor
20    New York, New York 10036
      Telephone:  (212) 294-8915
21    Email:  Cli@wilkinsonstekloff.com
22    WILKINSON STEKLOFF
      BY:  MAX WARREN, ESQ.
23    2001 M Street, NW
      10th Floor
24    Washington, D.C. 20036
      Telephone:  (202) 847-4008
25    Facsimile:  (202) 847-4005
```

Case 2:15-ml-02668-PSG-SK Document 1192-5 Filed 01/19/24 Page 4 of 12 Page ID #:44899
In Re - NFL Sunday Antitrust Litigation
Einer Elhauge
July 06, 2023

4

1  COVINGTON & BURLING LLP
   BY:  DEREK LUDWIN, ESQ.
2  850 10th St NW
   Washington, D.C. 20001
3  Telephone:  (202) 662-5429
   Email:  Dludwin@cov.com
4
5  APPEARANCES CONTINUED:
6  VIA REMOTE REALTIME CONNECTION:
   Juan Carlos Gozzi, Bates & White
7
   VIDEOGRAPHER:
8  Betsy Gomez, Lexitas Legal
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
                                                          5
 1                              INDEX
 2   WITNESS:   EINER ELHAUGE
 3                                                      PAGE
 4   EXAMINATION BY MR. KILARU                             7
 5
 6
                               EXHIBITS
 7
 8   NUMBER                  DESCRIPTION                PAGE
 9   EXHIBIT 1     Rebuttal Expert Report of Professor    7
                   Einer Elhauge
10                 June 9, 2023
11   EXHIBIT 2     NATIONAL COLLEGIATE ATHLETIC         166
                   ASSOCIATION v. BOARD OF REGENTS OF
12                 the UNIVERSITY OF OKLAHOMA and
                   University of Georgia Athletic
13                 Association
14   EXHIBIT 3     Expert Report Of B. Douglas Bernheim,  191
                   Ph. D.
15                 April 28, 2023
16
17
18
19
20
21
22
23
24
25
```

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 6 of 12   Page ID
#:44901
In Re - NFL Sunday Antitrust Litigation
Einer Elhauge
July 06, 2023

19

```
07:21:44  1   offer if Professor Bernheim didn't testify?
07:21:53  2        MR. LECKMAN:  Objection.  Form.
07:21:54  3        THE WITNESS:  I think that sounded more of a
07:21:58  4   legal question, but -- so I don't -- I don't want to
07:22:00  5   offer any legal opinions on whether there is
07:22:02  6   anything there.  But, in my mind, it's all this
07:22:08  7   rebuttal of Professor Bernheim.
07:22:11  8   BY MR. KILARU:
07:22:12  9        Q.  Which expert reports did you review when
07:22:14 10   you were forming your -- when you were preparing
07:22:18 11   your report?
07:22:18 12        A.  I -- I looked at the report of Professor
07:22:23 13   Bernheim mostly, and I also looked at the report of
07:22:35 14   Mr. Pilson and -- and Lotz.  And then I -- I looked
07:22:44 15   more quickly at the other defense expert reports and
07:22:50 16   plaintiff expert reports just to see whether they
07:22:52 17   had anything relevant to the rebuttal of Professor
07:22:56 18   Bernheim.
07:22:57 19        Q.  So did you re- -- did you review
07:23:00 20   Dr. Rascher's report for the plaintiffs?
07:23:01 21        A.  I did, yes.  I did read that mainly after I
07:23:10 22   drafted my report, yes, but -- in preparing my
07:23:13 23   report.  I prepared my report just really just in
07:23:16 24   rebuttal to Professor Bernheim; so probably
07:23:19 25   95 percent of it was drafted before I looked at the
```

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 7 of 12   Page ID
                                      #:44902
In Re - NFL Sunday Antitrust Litigation

Einer Elhauge
July 06, 2023

39

```
07:46:44  1   BY MR. KILARU:
07:46:44  2        Q.   SBA is what I meant to say.
07:46:45  3        A.   What did you -- I'm sorry.  You cut out
07:46:47  4   there.
07:46:47  5        Q.   I'll start again.
07:46:47  6        Do you have an understanding of whether the
07:46:49  7   agreement between the -- between CBS and the NFL to
07:46:50  8   broadcast NFL games on Sunday afternoon is subject
07:46:53  9   to the SBA?
07:46:55 10        MR. LECKMAN:  Objection to form.
07:46:56 11        THE WITNESS:  Well, at least some aspect of it
07:47:01 12   is, but I'm not opining on the scope of the SBA
07:47:07 13   because that's a legal question.
07:47:08 14   BY MR. KILARU:
07:47:08 15        Q.   Well, what aspect of it -- in -- in terms
07:47:10 16   of the analysis you did in this case, what aspect of
07:47:12 17   that contract did you understand to be within the
07:47:15 18   SBA?
07:47:16 19        MR. LECKMAN:  Objection to form.
07:47:17 20        THE WITNESS:  Well, the SBA, it seems to me does
07:47:23 21   exempt some pooling of over-the-air telecast rights.
07:47:31 22   BY MR. KILARU:
07:47:31 23        Q.   Okay.  Do you know what over-the-air
07:47:36 24   telecast rights it exempts?
07:47:37 25        A.   That's a legal question, and I don't want
```

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 8 of 12   Page ID
 #:44903
In Re - NFL Sunday Antitrust Litigation
Einer Elhauge
July 06, 2023

40

```
07:47:43  1   to give an opinion on legal issues.
07:47:45  2       Q.   Well, you said earlier that you understand
07:47:48  3   that the plaintiffs are challenging the current
07:47:51  4   distribution of in-market NFL games to the extent it
07:47:55  5   is not exempted from the SBA; so I'm trying to
07:47:58  6   understand what you mean when you say that.
07:48:01  7       A.   I mean that they are challenging the
07:48:03  8   pooling, but they also acknowledge, it seems to me,
07:48:08  9   in their filings that there is an SBA exemption.
07:48:15 10   So -- and they are not challenging the existence of
07:48:19 11   the SBA.
07:48:21 12       So I think they are challenging pooling to the
07:48:24 13   extent that it is not exempted by the SBA.  And what
07:48:26 14   the scope of the SBA is, is a legal question to be
07:48:29 15   resolved by you guys in briefing to the court, it
07:48:33 16   seems to me.
07:48:34 17       Q.   In doing your economic analysis, was it
07:48:37 18   relevant to know what the scope of the SBA is so you
07:48:42 19   could figure out what conduct is actually being
07:48:45 20   challenged?
07:48:45 21       MR. LECKMAN:  Objection to form.
07:48:46 22       THE WITNESS:  It was relevant to consider
07:48:48 23   various understandings of what the scope might be in
07:48:50 24   terms of rebutting Professor Bernheim's analysis.  I
07:48:54 25   think his analysis rests on -- at -- at points on
```

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 9 of 12   Page ID
In Re - NFL Sunday Antitrust Litigation   #:44904
Einer Elhauge
July 06, 2023

62

```
08:27:48  1      Q.   So is it your view that 100 percent revenue
08:27:53  2   sharing would be unlawful in the -- in the but-for
08:27:56  3   world?
08:27:59  4      MR. LECKMAN:  Objection to form.
08:28:01  5      THE WITNESS:  Sorry.  I'm not opining on any
08:28:05  6   questions of law.  I'm saying that it's been
08:28:09  7   challenged and that if -- and both Professor
08:28:16  8   Bernheim and I agree that the anticompetitive
08:28:18  9   effects of 100 percent revenue sharing are the same.
08:28:22 10   I mean, maybe there's a dispute about whether they
08:28:24 11   suffice to be unlawful or not, but we both agree
08:28:28 12   that it is the same as -- the effective 100 percent
08:28:31 13   revenue-sharing effect on restraining telecasts
08:28:36 14   licensing is the same as the collective licensing
08:28:40 15   itself or the pooling itself.
08:28:43 16   BY MR. KILARU:
08:28:43 17      Q.   So you agree -- you agree with that
08:28:47 18   opinion, I guess, is a good way to put it -- you
08:28:50 19   agree with the opinion that the 100 percent revenue
08:28:52 20   sharing of telecasts is the same as pooling rights
08:28:56 21   for purposes of broadcast distribution?
08:29:00 22      A.   It has the same effects.
08:29:04 23      Q.   Okay.  So, if there were a world where the
08:29:06 24   NFL teams did not pool their rights or broadcasts
08:29:12 25   and if the rights were not assigned exclusively but
```

Case 2:15-ml-02668-PSG-SK   Document 1192-5   Filed 01/19/24   Page 10 of 12   Page ID
In Re - NFL Sunday Antitrust Litigation   #:44905                                Einer Elhauge
                                                                                 July 06, 2023

113

```
10:14:21  1   all out-of-market games.  And the extent to which
10:14:23  2   they could offer in-market games would turn on the
10:14:27  3   scope of the SBA, which is a legal issue on which,
10:14:33  4   you know, I am not opining on that.  I am just
10:14:36  5   opining that Professor Bernheim's analysis is
10:14:42  6   incorrect for just assuming that they could blackout
10:14:44  7   all in-market games.
10:14:47  8        Q.   Assume for a minute that it is just all
10:14:49  9   out-of-market games, just for purpose of the
10:14:51 10   question, do you -- in your analysis, do you have an
10:14:54 11   understanding of whether they would know whether the
10:14:57 12   potential purchaser, let's call it, ABC/ESPN, would
10:15:01 13   know which games they're going to be able to show in
10:15:04 14   which parts of the country and in which weeks?
10:15:07 15        A.   I think that would vary depending upon when
10:15:11 16   the -- the in-market selection that's made by the
10:15:17 17   NFL.  You know, if it proved to be a problem in the
10:15:23 18   but-for world, I think you could have the NFL's --
10:15:28 19   you know, agreement with the NFL and the teams that
10:15:31 20   they would want to specify that in a way that
10:15:34 21   enables the -- the marketing of these single-team
10:15:39 22   packages.
10:15:41 23        But, you know, as Professor Rascher says,
10:15:44 24   college football deals with this kind of uncertainty
10:15:47 25   all the time; so whichever way they chose to solve
```

142

| | | |
|---|---|---|
| 10:48:12 | 1 | A. It would just be less restrictive. If the |
| 10:48:17 | 2 | -- if the point is to equalize these things rather |
| 10:48:23 | 3 | than going beyond that in order -- in sort of |
| 10:48:27 | 4 | creating this monopoly power and monopoly profits in |
| 10:48:30 | 5 | the hope that that sort of trickles down to more |
| 10:48:34 | 6 | quality, it would be less restrictive to just have |
| 10:48:36 | 7 | an agreement about coaching staff, scouting, and |
| 10:48:39 | 8 | training facilities. |
| 10:48:40 | 9 | Q. I wasn't asking -- |
| 10:48:40 | 10 | MR. LECKMAN: Object -- sorry, just to interrupt |
| 10:48:42 | 11 | you for a second. Just object to form to that |
| 10:48:44 | 12 | earlier question. |
| 10:48:45 | 13 | BY MR. KILARU: |
| 10:48:45 | 14 | Q. Okay. I wasn't asking you if it was less |
| 10:48:49 | 15 | restrictive. I'm asking you if you think it would |
| 10:48:52 | 16 | be lawful to have a cap on coach salaries? |
| 10:48:56 | 17 | MR. LECKMAN: Objection to form. Calls for a |
| 10:48:57 | 18 | legal conclusion. |
| 10:48:58 | 19 | THE WITNESS: I -- I am offering -- not offering |
| 10:48:59 | 20 | any opinions on legal topics. |
| 10:49:00 | 21 | BY MR. KILARU: |
| 10:49:01 | 22 | Q. Is it your opinion that it would be |
| 10:49:03 | 23 | procompetitive to have a cap on coach salaries? |
| 10:49:07 | 24 | Would you offer that opinion in a subsequent case |
| 10:49:10 | 25 | where coaches were suing about a salary cap on -- a |

255

```
 1   STATE OF CALIFORNIA      )
 2                            )   ss.
 3   COUNTY OF ORANGE         )
 4
 5              I, LINDSAY STOKER, Certified Shorthand
 6   Reporter qualified in and for the State of California,
 7   do hereby certify:
 8              That the foregoing transcript is a true and
 9   correct transcription of my original stenographic notes;
10              I further certify that I am neither attorney
11   or counsel for, nor related to or employed by any of the
12   parties to the action in which this proceeding was
13   taken; and, furthermore, that I am not a relative or
14   employee of any attorney or counsel employed by the
15   parties hereto or financially interested in the action.
16              IN WITNESS WHEREOF, I have hereunto set my
17   hand this 10th day of July, 2023.
18                       [signature: Lindsay Stoker]
19
                         LINDSAY STOKER
20                       CSR 14373
21
22
23
24
25
```