Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' OPPOSITION TO THE NFL'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE REFERENCE TO PAST LITIGATION AGAINST THE NFL**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: February 7, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

By their Motion in Limine No. 3, the NFL Defendants seek to preclude *any reference* at trial to antitrust litigation brought against the NFL, which forms an essential part of the history of the restraints on NFL telecasts at issue in this case (Mot. at 1, 4)—an unmerited whitewash that would disable the jury from performing its evaluation of the restraints in this case under the rule of reason and from applying the Court's instructions to consider the evidence regarding the NFL Defendants' conduct in its proper context.

Evidence of the prior antitrust litigation against the NFL Defendants involving restraints on competition in the television broadcasts of NFL games is highly relevant for several reasons and meets the requirements under the Federal Rules of Evidence. Fed. R. Evid. 401-03. Prior antitrust litigation involving the NFL Defendants regarding the broadcast arrangements of NFL games is relevant given that (1) the historical backdrop of the NFL Defendants' broadcasting arrangements and the challenges to those arrangements are necessary to the jury's rule of reason analysis; (2) the prior antitrust litigations are admissible under section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), and the doctrine of collateral estoppel; and (3) the prior antitrust litigations are admissible to prove the NFL Defendants' "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The NFL Defendants' motion treats prior antitrust litigation against the NFL Defendants as if the cases arose out of unrelated prior acts and as if Plaintiffs will seek to use them to impugn the character of the NFL Defendants. Nothing could be further from the truth. In fact, the prior antitrust litigation that was brought by the United States Department of Justice ("DOJ") against the NFL is an essential part not just of the history of the restraints at issue in this case but also of the very same common course of conduct arising out of an agreement amongst the teams to restrict competition in the telecasts of NFL games. "To analyze the challenged arrangement between the NFL teams, the NFL, and DirecTV, it is necessary to understand the

1   history of television broadcasting of NFL games." *In re Nat'l Football League's*
2   *Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1144 (9th Cir. 2019) ("*NFLST*"). That
3   history includes the very litigation brought by the DOJ which the Ninth Circuit
4   extensively analyzed. *Id*. at 1144-46 (discussing the history of the DOJ litigation
5   against the NFL Defendants regarding its broadcast agreements after noting that "it
6   is necessary to understand the history of television broadcasting of NFL games.")

7        When the jury evaluates the restraints at issue here under the rule of reason, it
8   must "consider the facts peculiar to the business to which the restraint is applied; its
9   condition before and after the restraint was imposed; the nature of the restraint and
10   its effect, actual or probable. The history of the restraint, the evil believed to exist,
11   the reason for adopting the particular remedy, the purpose or end sought to be
12   attained, are all relevant facts." *Bd. of Trade of City of Chicago v. United States*, 246
13   U.S. 231, 238 (1918). And as discussed *infra*, the agreements at issue in this case find
14   their origin in the very agreements that were the subject of the prior NFL litigation,
15   including in particular *United States v. Nat'l Football League*, 116 F. Supp. 319 (E.D.
16   Pa. 1953) ("*NFL I*"); *United States v. Nat'l Football League*, 196 F. Supp. 445 (E.D.
17   Pa. 1961) ("*NFL II*"); and *Shaw v. Dallas Cowboys Football Club, Ltd.*, No. 97-5184,
18   1998 WL 419765 (E.D. Pa. June 23, 1998), *aff'd*, 172 F.3d 299 (3d Cir. 1999)
19   ("*Shaw*").

20   **I.   The Motion Seeks to Exclude all References to Antitrust Litigation**
21   **Bearing Directly on, and Contradicting, the NFL Defendants' Own**
     **Contentions in this Action**
22
23        The NFL Defendants make the blunderbuss assertion that "[i]nformation about
24   prior lawsuits against the NFL is not relevant to this case." Mot. at 1. Not so. The
     Ninth Circuit recounted such prior lawsuits specifically and at length, placing the
25   related litigation at issue here in proper context with the Sports Broadcasting Act
26   ("SBA") and arrangements for distribution rights for sports telecasts. *See NFLST*,
27   933 F.3d at 1144-48. The NFL Defendants dismiss past litigation in a one-paragraph,
28

purported "illustrative" summary of a few cases discussed by Plaintiffs' expert sports economist Dr. Rascher, *see* Mot. at 1-2.[1] However, the NFL Defendants' rhetoric cannot withstand scrutiny: past NFL cases, including the NFL Defendants' own admissions in them, bear directly on the contentions in this case.

Specifically, a central argument by the NFL Defendants is that the teams did not agree and could not have agreed to restrain competition among them for telecast rights. *See* ECF No. 954-1 (Jul. 28, 2023) (Memorandum in Support of the NFL Defendants' Motion for Summary Judgment), at 10:16-18 ("Plaintiffs have identified no other agreement in which the clubs and NFL pool their telecast rights, and none exists. An attack on pooling is nothing more than an attack on SBA-protected contracts."); ECF. No. 984 (Sep. 29, 2023) (Reply Memorandum in Support of the NFL Defendants' Motion for Summary Judgment), at 5:11–12 ("There is accordingly no potentially unlawful horizontal "pooling" conduct among the NFL clubs for Plaintiffs to challenge.").Of course, competition did previously exist among them: "In the 1950s, the right to telecast NFL games was 'controlled by individual teams,' which independently licensed the telecasts of their games to television networks." *NFLST*, 933 F.3d at 1144. That competition was restrained by *agreement*, namely the teams' amendment of Article X of the NFL bylaws, as recounted plainly in *NFL I*: "The government has filed this action seeking an injunction against the provisions of Article X …. The by-laws have been agreed to by all the League members and are binding upon all of them. They clearly constitute a contract within the meaning of the word as it is used in the Sherman Act." *NFL I*, 116 F. Supp. at 319.

And that very same Article X, which remains virtually unchanged to this day, grants the NFL Commissioner control over the telecast rights at issue in this case and

---

[1] Tellingly, the NFL Defendants' sole reference to the Government cases (*NFL I* and *NFL* II) in their motion is an acknowledgement that *NFL II* is relevant "to the development of the NFL's broadcasting arrangement more than a half-century ago." Mot. at 2.

sets forth agreed restraints including, *inter alia*, that "[a]ny contract entered into by any club for telecasting or broadcasting its games … must be approved in writing by the Commissioner in advance of such telecast or broadcast" and that "[n]o club shall cause or permit a game in which it is engaged to be telecast into any area included within the home territory of any other club on the day that such other club is engaged in playing a game at home." ECF No. 954-4 (July 28, 2023) (Constitution and Bylaws of the National Football League), at 48, 51. Moreover, it expressly provides that "[a]ll provisions of Article X are intended to conform to and are subject to the Final Judgment [in *NFL I*]." *Id.* at 53. Yet the NFL Defendants seek to keep this directly pertinent, critical history and these glaring contradictions of their arguments about "no agreement" from the jury's consideration.

No less remarkable is the NFL Defendants' motion as applied to *NFL II*. *NFL II* arose from a petition filed by the NFL to implement a new television contract with CBS which pooled and sold the member teams' collective television rights as a single package. *See NFL II*, 196 F. Supp. at 447. The court's discussion, based on the teams' admitted arrangements, removes any doubt that the NFL Defendants can compete over broadcast rights and that the rights are not "naturally owned" by the League:

> *Defendants concede* that the 1961 NFL-CBS contract marks a basic change in National Football League television policy. Prior to this contract each member club individually negotiated and sold the television rights to its games to sponsors or telecasters with whom it could make satisfactory contracts. The NFL-CBS contract sharply departs from this practice. *It is implicit in the 1961 contract that the member clubs have agreed among themselves and with the League* that each club will not sell its television rights separate and apart from those of the other clubs, but that each club will pool its television rights with those of all of the other clubs, and that only the resulting package of pooled television rights will be sold to a purchaser. The clubs authorized

4

the Commissioner of the League to sell this package of pooled television rights, and under the provisions of the 1961 contract with CBS he sold it. *Thus, by agreement, the member clubs of the League have eliminated competition among themselves in the sale of television rights to their games*.

*NFL II*, 196 F. Supp. at 446-47 (emphasis added). The jury is entitled to consider this history and the teams' actions and admissions in these prior cases in its determination of the facts in dispute, to which it will apply the rule of reason as instructed by this Court.

Moreover, section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), "makes final judgments or decrees resulting from civil or criminal proceedings brought by the United States prima facie evidence in any action under federal law brought by a private party against the same defendant." *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868-69 (9th Cir. 1978). Plaintiffs here properly should be entitled to introduce into evidence specific findings of fact and conclusions of law made in *NFL I* and *NFL II*, *at minimum*, as prima facie evidence that the NFL teams could, and did, compete with each other over telecast rights and supporting Plaintiffs' position that the teams have agreed among themselves to restrict their ability to compete in the market for professional football telecasts, as well as showing those agreements are anticompetitive and unlawful. *See*, *e.g.*, *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 & 570-71 (1951) (prior judgment could be introduced "to establish prima facie all matters of fact and law necessarily decided" in the prior case, including "prima facie evidence of the general conspiracy for the purpose of monopolizing the financing of General Motors cars and also of its effectuation"); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 226 (9th Cir. 1964) (plaintiff was entitled under section 5(a) to introduce as prima facie evidence the specific conclusions and findings in prior case tried to a court). That is consistent with the intent of Congress in enacting the original version of the statute, namely "to

minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions." *Pool Water Prod. v. Olin Corp.*, 258 F.3d 1024, 1030-31 (9th Cir. 2001).

Indeed, these findings of fact and conclusions of law not only are admissible as prima facie evidence under section 5(a) of the Clayton Act, but also should be binding against the NFL Defendants under the doctrine of collateral estoppel. *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 570-71 (1951); *Gottesman v. GM*, 414 F.2d 956, 963-64 (2d Cir. 1969).[2]

Following and in response to *NFL II*, the NFL affirmatively sought Congressional relief for its actions: the League lobbied for and obtained limited immunity from the antitrust laws, which immunity was enacted in the SBA, in order to pool television rights and sell them as a single package. *See NFLST*, 933 F.3d at 1146. This exemption was tailored to "sponsored telecasts" or *free, over-the-air broadcasts* of professional sports. *Id.* And in their testimony to Congress at the time, NFL witnesses conceded that the SBA was *necessary* to avoid an antitrust violation for their pooling arrangement, with then-Commissioner Pete Rozelle expressing "complete support" of the "limited-purpose bill" and stating that the bill's passage "would solve our immediate problems and allow [the teams] to enter into a single network agreement starting with the 1962 season." *Telecasting of Professional Sports Contests Hearing on H.R. 8757 Before the Antitrust Subcomm.*, 87th Cong. 1st Sess. at 41 (1961) (statement of Pete Rozelle, NFL Commissioner).

Notwithstanding the limited nature of that immunity, the teams agreed to pool their rights in connection with *paid* telecasts. They did so in a cable deal with ESPN in 1987, and beginning in 1994, they did so by affording DirecTV an exclusive right to out-of-market games in the Sunday Ticket package. To the extent that the NFL Defendants may seek to argue that their conduct is protected under the SBA,

---

[2] Section 5(a) of the Clayton Act was enacted at a time when collateral estoppel required mutuality of parties in the cases, which is no longer necessary. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 348-50 (1971).

1  Plaintiffs should be permitted to introduce this history in the context of the same

2  contractual pooling arrangement for the Sunday Ticket package having been

3  challenged by private plaintiffs in *Shaw*. In *Shaw*, as in every case that has addressed

4  the issue, the court rejected the NFL's claim that the SBA extended to cable or

5  satellite television services, as opposed to those provided free to the general public.

6  *Shaw*, 172 F.3d at 303; *see NFLST*, 933 F.3d at 1147-48. The NFL Defendants should

7  not be permitted to mislead the jury, including as to their knowledge and intent in

8  continuing their non-immunized Sunday Ticket pooling arrangement, by making an

9  argument explicitly rejected in *Shaw*.[3]

10      The relevance of this timeline to the jury's understanding of the restraints here

11  is beyond dispute. The jury should not be left to wonder, or worse be misled, as to

12  whether the NFL teams *can* compete, when in fact the litigation history demonstrates

13  that they *have* competed in the past with respect to broadcast rights. Similarly, the

14  jury should understand that it is only through an act of Congress that the teams are

15  permitted to restrain competition among themselves by pooling their rights, but it has

16  been made clear to the NFL Defendants that is only for over-the-air broadcasts, and

17  specifically *not* the paid broadcasts here. Though *Shaw* was not a Government action,

18  the NFL Defendants should not be permitted to hide it from the jury's view. *See* Fed.

19  R. Evid. 404(b)(2) (evidence of prior acts relevant to prove, *inter alia*, "motive,

20  opportunity, intent, preparation, plan … [and] knowledge"); *United States v.*

21  *Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982) (Rule 404(b)(2) is "one of inclusion

22  that admits evidence of other crimes or acts relevant to an issue in the trial, except

23  where it tends to prove only … disposition").

24  ───────────

25  [3] Of course, it was also clear to the NFL from the Supreme Court's decision in *NCAA*

26  *v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984) ("*NCAA*"), that
    such a non-immunized horizontal restraint on competition for television rights

27  offered to broadcasters would run afoul of Section 1 of the Sherman Act, 15 U.S.C.
    § 1. *See NFLST*, 933 F.3d at 1146-47. Through its Motion in Limine No. 2, the NFL

28  also seeks to preclude, *inter alia*, *any reference* at trial to *NCAA*.

The NFL Defendants' motion would leave the jury in the dark on these issues, and expunging these key litigations from the trial would put the Court's instructions to the jury in a historical, and in large measure factual, vacuum. *See Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16-cv-489, 2019 WL 3307850, at *7 (W.D. Va. July 22, 2019) (motion in limine denied where prior litigation was relevant "for the purpose of providing some history and context as to the present dispute"), *order clarified*, No. 7:16-cv-489, 2019 WL 4197221 (W.D. Va. Sept. 4, 2019).

## II. The Relevance of the Prior NFL Cases Far Outweighs Any Risk of Prejudice, And Indeed Plaintiffs Would Be Prejudiced by Their Exclusion

As the Ninth Circuit has explained, the rule of reason analysis involves examination of "the *facts peculiar to the business, the history of the restraint, and the reasons why it was imposed*, to determine the effect on competition in the relevant product market." *NFLST*, 933 F.3d at 1150 (citation and internal quotation marks omitted; emphasis added). The NFL Defendants' past litigation concerning the evolution of broadcasting restraints, as discussed *supra*, thus fits squarely within the four corners of the jury's essential examination *in this action*. And the NFL Defendants' implication that Plaintiffs are seeking only to introduce the prior bad acts to "import the whole verdict of liability," *see* Mot. at 2-3, has no place here.

Additionally, the NFL Defendants' arguments of purported prejudice cannot sustain the sweeping exclusion order they seek against any mention of such relevant evidence. *See, e.g.*, *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-cv-655, 2008 WL 1745586, at *1-2 (W.D. Mich. Apr. 11, 2008) (pretrial blanket exclusion of prior litigation history inappropriate, and plaintiff failed to identify specific evidence or testimony that should be excluded). The NFL Defendants simply presume that the jury would afford "undue weight to the outcome" of past decisions involving the NFL. Mot. at 2. However, even if there were prior litigation or an issue where the Court may perceive such a concern, it could be addressed with a cautionary instruction. *United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004). Plaintiffs

presume that the jurors will be "conscious of the gravity of their task" and pay close attention to the Court's instructions. *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Plaintiffs are also confident that the Court will ensure the jury does not endure any mini-trials of past litigation, which Plaintiffs have no intention of initiating, while affording the NFL the opportunity to introduce any appropriately relevant contextual evidence.[4] *See* Mot. at 3.

Finally, the NFL Defendants' argument, which rings hollow insofar as it would muzzle Plaintiffs and blindfold the jury to facts and context bearing directly on Plaintiffs' claims, is also a cynical one. Plaintiffs would be severely prejudiced by not being able to present this history and the findings against the NFL Defendants, and the NFL Defendants should not be permitted to argue to the jury that the teams cannot independently market the rights to their telecasts without being confronted with the findings of fact that they could, and did, compete with each other in the litigation they lost with the DOJ.

**III.        Conclusion**

For the foregoing reasons, it is respectfully submitted that the NFL Defendants' motion to exclude reference to past antitrust litigation against the NFL should be denied.

Dated: January 19, 2024                    Respectfully submitted,


By: */s/ Sathya S. Gosselin*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)

---

[4] Unlike the prior patent infringement litigation at issue in *Grace v. Apple, Inc.*, No. 17-cv-00551, 2020 WL 227404 (N.D. Cal. Jan. 15, 2020), *see* Mot. at 3, Plaintiffs' references to the prior antitrust litigation against the NFL Defendants will be straightforward and will not rely on any case that is pending appeal.

abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)

10

1  hlanger@langergrogan.com
   Edward Diver (*Pro Hac Vice*)
2  ndiver@langergrogan.com
   Peter Leckman (235721)
3  pleckman@langergrogan.com
   Kevin Trainer (*Pro Hac Vice*)
4  ktrainer@langergrogan.com
   LANGER GROGAN AND DIVER PC
5  1717 Arch Street, Suite 4020
   Philadelphia, PA 19103
6  Tel: (215) 320-5660
   Fax: (215) 320-5703
7
   *Plaintiffs' Co-Lead Counsel*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO THE NFL'S MOTION IN LIMINE NO. 3 TO EXCLUDE REFERENCE TO PAST LITIGATION AGAINST THE NFL