Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OR ARGUMENT THAT REVENUE SHARING IS ANTICOMPETITIVE**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: May 17, 2024<br>Time: 2:30 p.m.<br>Courtroom: First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

|     |     |
| --- | --- |
| 1   | The NFL Defendants demonstrated in their Motion *in Limine* No. 1, ECF No. |
| 2   | 1105-1 ("Mot."), that this Court should exclude evidence and argument that Section |
| 3   | 10.3 of the NFL Constitution ("Section 10.3") is anticompetitive because Plaintiffs |
| 4   | neglected to timely raise the issue. It was not until their expert reply reports—filed |
| 5   | *seven years* after the operative complaint—that Plaintiffs first challenged as |
| 6   | anticompetitive Section 10.3's equal revenue sharing requirement. This delay denied |
| 7   | the NFL Defendants the opportunity to develop responsive evidence in discovery and |
| 8   | to present responsive opinions in their expert reports. Neither of Plaintiffs' primary |
| 9   | responses overcomes their failure to disclose this theory of liability, so it should be |
| 10  | excluded at trial. |
| 11  | First, Plaintiffs' *ex post* argument that it would have been illogical to challenge |
| 12  | pooling but not revenue sharing—because revenue sharing "is part and parcel of the |
| 13  | agreement to pool rights," ECF No. 1190-1, Pls.' Mem. Opp. Defs.' Mot. *in Limine* |
| 14  | No. 1 ("Opp.") at 1—has already been rejected by their own expert. Dr. Daniel |
| 15  | Rascher acknowledges that ████████████████████████████████ |
| 16  | ████████████████████████████████████████████████████████ |
| 17  | ██████████████████████ ECF No. 774-3, Expert Reply Report of Daniel A. |
| 18  | Rascher in Support of Plaintiffs' Motion for Class Certification, dated December 2, |
| 19  | 2022 ("Rascher Class Cert. Reply Rep.") ¶ 27 n.23 (internal quotation marks |
| 20  | omitted). And because pooling is independent of revenue sharing, it is possible to |
| 21  | challenge the former but not the latter. That is exactly the challenge that Plaintiffs |
| 22  | articulated in their Complaint, through discovery, and in opening merits expert |
| 23  | reports. |
| 24  | Second, Plaintiffs make the strawman argument that Defendants' motion rests |
| 25  | "on the basis that the Plaintiffs have somehow conceded that 100% revenue sharing |
| 26  | should be considered to exist in [the but-for] world[s]." Opp. at 1. From this premise, |
| 27  | they insist that their discussions of partial revenue sharing were not admissions that |
| 28  | Section 10.3 is legal. These arguments miss the point and ignore the law. The |

1

Case No. 2:15-ml-02668-PSG (SKx)        Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
                                         Evidence Or Argument That Revenue Sharing Is Anticompetitive

question is not whether Plaintiffs have *conceded* the legality of any agreement. It is whether they timely *challenged* the legality of Section 10.3's 100% revenue sharing provision, as the Federal Rules of Civil Procedure require. Nothing in their Opposition overcomes the fact that they failed to do so.

### I.     Plaintiffs Do Not Dispute The Governing Law.

The parties agree that the black-letter law requires a plaintiff to timely disclose their claims so that a defendant can properly respond and prepare for trial. The following points are undisputed:

- *First*, an expert's but-for world analysis should eliminate only the challenged conduct with all other economically rational behavior held constant.[1] Mot. at 1 n.1; Opp. at 5 (a but-for world is meant to "isolate the effects of the challenged conduct" (citation omitted)), meaning that revenue sharing should be excluded from the but-for world only if Plaintiffs have appropriately asserted a challenge to Section 10.3.

- *Second*, "a plaintiff must identify . . . the grounds for a claim . . . in the complaint itself," and "a defendant is not deemed to have fair notice of [grounds for a claim] identified elsewhere." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011) (citing Fed. R. Civ. P. 8).

---

[1] To the extent Plaintiffs assert that *any* anticompetitive conduct can be removed from the but-for world, regardless of whether it is at issue in the lawsuit, case law across the country makes clear that when courts say a but-for world is one "free of antitrust violations," they mean free of the antitrust violations actually challenged in the complaint. *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *23 (N.D. Cal. Dec. 21, 2010); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 165 (C.D. Cal. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005) (defining "a but-for market" as one "free of the restraints and conduct alleged to be anticompetitive"); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 6690351, at *5 (E.D. Va. Aug. 17, 2021), *aff'd*, 566 F. Supp. 3d 509 (E.D. Va. 2021); *Peters v. Aetna Inc.*, 2019 WL 1429607, at *6 (W.D.N.C. Mar. 29, 2019); *see also* Model Jury Instrs. in Civ. Antitrust Cases, Ch. 6 – Causation and Damages, Instr. 4: Causation and Disaggregation (tying damages to "defendant's *alleged* antitrust violation" (Am. Bar Ass'n Antitrust L. Section 2016) (emphasis added)).

2

Case No. 2:15-ml-02668-PSG (SKx)                        Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
                                                        Evidence Or Argument That Revenue Sharing Is Anticompetitive

- *Third*, the discovery rules govern the introduction of new claims. In particular, expert rebuttal cannot be used to raise new claims, *see* Fed. R. Civ. P. 26(a)(2)(D)(ii), and parties have an affirmative duty to update materially incomplete interrogatory responses when new claims are raised, *see* Fed. R. Civ. P. 26(e)(1)(A).

As a result of these rules, the question is not, as Plaintiffs suggest, whether they *conceded* the legality of any particular agreement. The question is whether they timely *challenged* it as required by Rules 8, 26(e), and 26(a). They did not, and their omission prevented Defendants from responding to a revenue-sharing challenge.

## II. Plaintiffs Failed To Timely Challenge 100% Revenue Sharing.

Plaintiffs' Opposition fails to address the relevant question of whether they included Section 10.3's 100% revenue sharing agreement as part of the challenged conduct in this suit. The answer is no. Plaintiffs cannot point to a single place prior to expert reply reports where they affirmatively asserted that Section 10.3's revenue sharing agreement is anticompetitive.

**Plaintiffs violated Rule 26(a).** Plaintiffs' treatment of revenue sharing during the course of expert discovery proves that they did not assert a timely challenge to Section 10.3. Rule 26(a) limits expert rebuttal testimony to that which contradicts or rebuts expert testimony already in the record, *see* Fed. R. Civ. P. 26(a)(2)(D)(ii), in turn prohibiting the introduction of a new theory of liability through expert rebuttal reports, *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016); *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *4 (C.D. Cal. May 7, 2010). Plaintiffs violated this rule when they argued for the first time through the Rascher and Elhauge rebuttal reports that 100% revenue sharing is anticompetitive. Plaintiffs' Opposition concedes this violation of Rule 26(a) by failing to respond to it in any way. *See Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1277 & n.4 (N.D. Cal. 2014) (unanswered arguments are deemed conceded).

3

Case No. 2:15-ml-02668-PSG (SKx)    Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude Evidence Or Argument That Revenue Sharing Is Anticompetitive

1   Even setting aside Plaintiffs' concession, their expert opening merits reports
2   make plain that Plaintiffs did not assert any challenge to Section 10.3. Most notably,
3   Dr. Rascher defined the ▬▬▬▬▬▬▬▬▬▬ that were part of the ▬▬▬▬
4   ▬▬▬▬ without any discussion of Section 10.3 or 100% revenue sharing, referring
5   only to the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
6   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ECF No. 962-4, Expert Report
7   of Daniel A. Rascher, dated February 17, 2023 ("Rascher Rep.") ¶¶ 57–58.[2]
8   Attempting to avoid this conclusion, Plaintiffs assert that a "challeng[e to] the
9   pooling rights arrangement . . . *obviously*[] includes a challenge to 100% revenue
10  sharing." Opp. at 5 (emphasis added). But their own expert Dr. Rascher disagrees. In
11  his class certification reply report, he asserted that ▬▬▬▬▬▬▬▬▬▬▬▬
12  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ECF No. 774-3, Rascher Class
14  Cert. Reply Rep. ¶ 27 n.23 (internal quotation marks omitted). He concluded that,
15  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." *Id.* In
16  other words, despite Plaintiffs' newfound contention that the two agreements are
17  "part and parcel" of one another and cannot be separated, Plaintiffs' own expert
18  asserted otherwise. While Plaintiffs may now recognize that a failure to challenge
19  revenue sharing leaves their arguments vulnerable to a formidable economic critique,
20  *see* ECF No. 962-29, Rebuttal Expert Report of Einer Elhauge, dated June 9, 2023
21  ("Elhauge Rebuttal Rep.") ¶ 26, that economic weakness in their case provides no
22  justification for asserting a new challenge to Section 10.3 for the first time at the reply
23  report stage, *see Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011).

---

[2] *See also* Opp. at 5–6 (quoting ECF No. 962-4, Rascher Rep. ¶ 57 as stating that "The NFL teams have agreed among themselves to pool all of their game telecast rights . . . *[t]his conduct* eliminates competition among horizontal competitors" (emphasis added)). Dr. Rascher's ability to define the challenged "Teams-NFL Agreements" without reference to revenue sharing (100% or otherwise) cannot be reconciled with Plaintiffs' new assertion that revenue sharing is "part and parcel" of the agreement to pool telecast rights. *See* Opp. at 1.

4

Case No. 2:15-ml-02668-PSG (SKx)            Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
                                             Evidence Or Argument That Revenue Sharing Is Anticompetitive

1    The NFL Constitution confirms that revenue sharing and pooling are
2  independent concepts. Section 10.3 provides for equal revenue sharing for "all
3  regular season (and preseason network) television income," ECF No. 954-4, NFL
4  Const. & Bylaws § 10.3, even though the Constitution explicitly contemplates that
5  licensing rights could be exercised under some circumstances through agreement by
6  individual clubs with the consent of the League, *id.* § 10.2. Similarly, Dr. Rascher
7  has opined that in a but-for world in which telecasts are licensed separately, ▌
8  ▌ ECF No. 962-4, Rascher Rep. ¶ 273; *see*
9  *also, e.g.*, ECF No. 1130-1, Resid. Pls.' Resp. Defs.' Interrog. No. 24 (similar),
10 confirming that there is no inviolate rule that revenues are shared—or not—based on
11 whether rights are licensed jointly.

12   Plaintiffs' briefing before this Court likewise reflects that, throughout
13 discovery, Plaintiffs challenged pooling but not revenue sharing. At summary
14 judgment, Defendants pointed out that any challenge to Section 10.3 was raised for
15 the first time in Plaintiffs' expert rebuttal reports. *See* ECF No. 962-1, Mem. Supp.
16 Defs.' Mot. Summ. J. at 2. In response, Plaintiffs' only citations to support their
17 challenge to the revenue sharing agreement were, unsurprisingly, to the Elhauge and
18 Rascher rebuttal reports. *See* ECF No. 966-1, Pls.' Mem. Opp. Defs.' Mot. Summ. J.
19 at 12.

20   **Plaintiffs violated Rule 8.** Plaintiffs do not contest that Rule 8 requires a
21 plaintiff to state all grounds for relief in the complaint in order to give defendants fair
22 notice of the claims against them. And yet, from their 163-paragraph Complaint,
23 Plaintiffs cannot identify any allegation that Section 10.3 is anticompetitive. Instead,
24 they point to only a single sentence that even mentions the existence of the revenue
25 sharing agreement embodied in Section 10.3. *See* Opp. at 1, 3–4. That allegation was
26 that "the NFL's 32 member Teams have given the league authority to negotiate
27 pooled rights television deals on their behalf, in exchange for an equal share of the
28 resulting revenues." ECF No. 441, Compl. ¶ 81. But that is nothing more than an

5

Case No. 2:15-ml-02668-PSG (SKx)    Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
Evidence Or Argument That Revenue Sharing Is Anticompetitive

allegation that the NFL's revenue sharing agreement existed, not that it was anticompetitive.

Elsewhere in their Complaint, Plaintiffs specify which agreements they challenge. *E.g.*, ECF No. 441, Compl. ¶¶ 4–9, 46(a), 99. Each time, revenue sharing is conspicuously absent. Plaintiffs also never mention 100% revenue sharing in their claims for relief, *see id.* ¶¶ 155–63—a point they completely ignore in the Opposition.

Implicitly acknowledging this absence of any challenge to 100% revenue sharing, Plaintiffs pivot to the argument—based off of the same single sentence from paragraph 81 of their Complaint—that it should have been "obvious" that any challenge to pooling necessarily included a challenge to 100% revenue sharing. Opp. at 1, 4, 5. That is not correct. The Complaint details a range of facts and agreements about the NFL and its broadcasts, and Plaintiffs do not purport to challenge every aspect of the NFL's business arrangements simply because they are all mentioned. *See, e.g.*, Compl. ¶ 83 (licensing fee terms of the NFL's contracts for over-the-air broadcasts, which Plaintiffs are not challenging); ¶ 84 (start times for NFL games); *id.* ¶ 92 (team ratification process). Indeed, Plaintiffs do not even challenge all of the pooling agreement alleged in ¶ 81, but instead limit their challenge only to the pooling of out-of-market rights. Nothing in the Complaint suggests that the mere mention of equal revenue sharing implies a legal challenge. (And, of course, Plaintiffs' expert explicitly disclaimed any "obvious" conclusion that their claim necessarily embodied a challenge to revenue sharing by taking exactly the opposite position. *See supra* at 4.)

The Ninth Circuit reinforced this view. In summarizing Plaintiffs' claims, the appellate panel did not include the 100% revenue sharing agreement as part of the challenged conduct. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019); *see also In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2017 WL 3084276, at *1 (C.D. Cal. June 30, 2017).

6

Case No. 2:15-ml-02668-PSG (SKx)    Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
Evidence Or Argument That Revenue Sharing Is Anticompetitive

In sum, no reasonable reading of the Complaint would put a defendant on notice that the NFL's 100% revenue sharing arrangement was part of the challenged conduct. This omission violates Rule 8's pleading requirements, and Plaintiffs should not be able to proceed to trial with this last-minute theory. *Oliver*, 654 F.3d at 909.

**Plaintiffs violated Rule 26(e).** Plaintiffs also failed to disclose this challenge during fact discovery. Defendants' Interrogatory 24 asked "whether . . . [in Plaintiffs' but-for worlds], individual clubs would share revenue from their broadcasting feeds with other clubs . . . and . . . how that revenue sharing process would operate." ECF No. 1130-1, Resid. Pls.' Resp. Defs.' Interrog. No. 24. If Plaintiffs were, in fact, asserting a challenge to Section 10.3, then any complete response would have required Plaintiffs to disclose that the challenged form of revenue sharing would be eliminated. *See Heredia v. Sunrise Senior Living LLC*, 2020 WL 12584277, at *7 (C.D. Cal. July 20, 2020) (party must disclose material facts prior to expert discovery in response to interrogatory, even where request may call for expert discussion). But Plaintiffs did not do so. They instead responded that "anticompetitive restraints are unnecessary to equalize revenue among the [NFL] clubs. . . . Direct revenue sharing could achieve the same aim without any of these restraints and consequent harm to consumers." *See* ECF No. 1130-1, Resid. Pls.' Resp. Defs.' Interrog. No. 24.

Attempting to deflect from this failing, Plaintiffs insist that "[n]owhere in th[eir] response" to this interrogatory did they "claim that the teams could lawfully share 100% of their independently generated OOM telecast revenue." Opp. at 8. But this again answers the wrong question—the problem is not what they said, but what they did not say. Their failure to identify Section 10.3 as a challenged agreement that would be eliminated in the but-for world left their interrogatory responses incomplete, and left Defendants with no basis to develop a defense to their undisclosed revenue sharing arguments. They can neither explain nor justify this material omission.

7

Case No. 2:15-ml-02668-PSG (SKx)    Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude
Evidence Or Argument That Revenue Sharing Is Anticompetitive

### III. Allowing Plaintiffs To Proceed On This Theory Would Prejudice Defendants.

Allowing Plaintiffs to proceed on this eleventh-hour theory would severely prejudice Defendants, who framed discovery requests, developed expert evidence, and built their case in response to the claims that Plaintiffs *actually made*. Evidence and argument that revenue sharing is anticompetitive must therefore be excluded unless Plaintiffs can prove that their failure to disclose was harmless. *See* Mot. at 5 n.2; *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (for violations of Rule 26, the burden is on the violating party to prove the opposing party was not prejudiced). The Opposition fails to meet this burden.

Plaintiffs' response is a familiar and already rejected refrain—namely, that Defendants were not prejudiced "because the effects of pooling rights and pooling revenues are the same," Opp. at 9, suggesting that any expert opinions accounting for a challenge to revenue sharing would be redundant. This is incorrect. For example, Dr. Bernheim's report includes a detailed explanation of why, as an economic matter, the challenged pooling does not harm competition in light of the unchallenged revenue sharing agreement. ECF No. 962-10, Expert Report of B. Douglas Bernheim, dated April 28, 2023 ("Bernheim Rep.") ¶¶ 255–59. Plaintiffs call this "circular logic" which would "maintain the very harm Plaintiffs seek to remedy." Opp. at 10. But Dr. Bernheim's logic is not circular—it is grounded in the agreements that Plaintiffs challenged in their Complaint and that their experts analyzed in their expert reports. *See* ECF No. 962-4, Rascher Rep. ¶¶ 17, 51–68 (defining the challenged conduct not to include revenue sharing).

While denying any prejudice to Defendants, Plaintiffs seek to capitalize on their own late disclosure. They criticize Dr. Bernheim's analysis of revenue sharing, suggesting that he should have provided more detailed defenses of Section 10.3's procompetitive effects. Their critique gets things backwards. Under the rule of reason analysis, it is only *after* a plaintiff challenges a restraint and proves the restraint "has

8

Case No. 2:15-ml-02668-PSG (SKx)  Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude Evidence Or Argument That Revenue Sharing Is Anticompetitive

1  a substantial anticompetitive effect" that a defendant has any burden to prove
2  procompetitive benefits. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 985–86 (9th
3  Cir. 2023), *cert. denied*, 2024 WL 156473 (U.S. Jan. 16, 2024), 2024 WL 156474
4  (U.S. Jan. 16, 2024) (emphasis added). Plaintiffs never got past the first step—their
5  opening reports neither include revenue sharing within the challenged conduct nor
6  provide any analysis of why revenue sharing is anticompetitive.

7  Finally, Plaintiffs point to Dr. Bernheim's report as proof that he purportedly
8  was aware of a challenge to 100% revenue sharing, and so the NFL was not harmed
9  by any late disclosure. But that misstates Dr. Bernheim's analysis, which is explicit
10  in its understanding that ████████████████████████████████████
11  ████████████████████████████████████████████████████████████
12  ████████████████  ECF No. 962-10, Bernheim Rep. ¶ 259. Although Dr. Bernheim
13  notes that Dr. Rascher "████████████████████████████████████████
14  on revenue sharing, *id.* ¶ 260; *see also id.* ¶ 24, that argument proceeds from the
15  premise that revenue sharing was not challenged. This argument in the alternative
16  provides no support for the conclusion that Defendants were aware of a challenge to
17  revenue sharing that Plaintiffs never articulated. Nor did it provide Dr. Bernheim—
18  or Defendants—with notice that Section 10.3 was being challenged, the details of
19  any such challenge, or the opportunity for an appropriate response. Indeed, Dr.
20  Bernheim explains that it is not possible to respond fully to the "unstated" changes
21  to revenue sharing that Dr. Rascher may (or may not) have in mind. *See id.* ¶¶ 260,
22  353, 360–62, 390–91, 404, 419.

23  Plaintiffs cannot dispute that Defendants are prejudiced by having no
24  opportunity—through fact discovery or expert analysis—to develop and present a
25  rebuttal to Plaintiffs' newly asserted challenge to the NFL's 100% revenue sharing
26  arrangement. In light of this prejudice, Plaintiffs' repeated failure to disclose this
27  challenge mandates exclusion. *See Goodman*, 644 F.3d at 827.
28

9

Case No. 2:15-ml-02668-PSG (SKx)   Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude Evidence Or Argument That Revenue Sharing Is Anticompetitive

| | | |
|---|---|---|
| 1 | Dated: February 9, 2024 | Respectfully submitted, |
| 2 | | /s/ *Beth A. Wilkinson* |
| 3 | | Beth A. Wilkinson (admitted *pro hac vice*) |
| | | Rakesh N. Kilaru (admitted *pro hac vice*) |
| 4 | | Brian L. Stekloff (admitted *pro hac vice*) |
| | | Jeremy S. Barber (admitted *pro hac vice*) |
| 5 | | Max J. Warren (admitted *pro hac vice*) |
| 6 | | **WILKINSON STEKLOFF LLP** |
| | | 2001 M Street NW, 10th Floor |
| 7 | | Washington, DC 20036 |
| | | Telephone: (202) 847-4000 |
| 8 | | Facsimile: (202) 847-4005 |
| | | bwilkinson@wilkinsonstekloff.com |
| 9 | | rkilaru@wilkinsonstekloff.com |
| 10 | | bstekloff@wilkinsonstekloff.com |
| | | jbarber@wilkinsonstekloff.com |
| 11 | | mwarren@wilkinsonstekloff.com |
| 12 | | Neema T. Sahni (Bar No. 274240) |
| 13 | | **COVINGTON & BURLING LLP** |
| | | 1999 Avenue of the Stars |
| 14 | | Suite 1500 |
| | | Los Angeles, CA 90067-6045 |
| 15 | | Telephone: (424) 332-4800 |
| 16 | | Facsimile: (424) 332-4749 |
| | | nsahni@cov.com |
| 17 | | |
| | | Gregg H. Levy (admitted *pro hac vice*) |
| 18 | | Derek Ludwin (admitted *pro hac vice*) |
| | | John S. Playforth (admitted *pro hac vice*) |
| 19 | | **COVINGTON & BURLING LLP** |
| | | One CityCenter |
| 20 | | 850 Tenth Street NW |
| 21 | | Washington, DC 20001 |
| | | Telephone: (202) 662-6000 |
| 22 | | Facsimile: (202) 662-6291 |
| | | glevy@cov.com |
| 23 | | dludwin@cov.com |
| 24 | | jplayforth@cov.com |
| 25 | | *Counsel for Defendants National Football* |
| | | *League, NFL Enterprises LLC, and the* |
| 26 | | *Individual NFL Clubs* |
| 27 | | |
| 28 | | |

10

**Case No. 2:15-ml-02668-PSG (SKx)**   **Defendants' Reply In Support Of Motion *In Limine* No. 1 To Exclude Evidence Or Argument That Revenue Sharing Is Anticompetitive**