Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE IMPROPER EVIDENCE AND ARGUMENT REGARDING THE RELIEF SOUGHT BY PLAINTIFFS**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: May 17, 2024<br>TIME: 2:30 p.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………..………………………………………1

ARGUMENT…………………………………………………………………………1

I.    This Court Should Prohibit Evidence or Argument Concerning What Changes May Occur in the Future in the Distribution or Availability of NFL Game Telecasts if the Jury Finds in Favor of Plaintiffs ........................ 1

II.    This Court Should Prohibit Evidence or Argument Concerning Subjective Views of Product Quality (Standing Alone) as a Procompetitive Justification Untethered to the Restraints at Issue Here ........ 5

III.    This Court Should Prohibit Evidence or Argument About "Refunds" When All Parties, This Court, the Model Jury Instructions, And The Clayton Act Speak Of Antitrust "Damages" Or "Overcharges" ..................... 9

IV.    This Court Should Prohibit Evidence or Argument About Any Supposed Failure to Mitigate Damages, Which Is Not a Defense Available to the NFL ...................................................................................... 13

CONCLUSION……………..………………………………………………...15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Airline Ticket Comm'n Antitrust Litig.*,
  918 F. Supp. 283 (D. Minn. 1996) ................................................................ 13, 14

*Albert v. Glob. Tel\*Link*,
  68 F.4th 906 (4th Cir. 2023) ................................................................................ 11

*Braintree Labs., Inc. v. McKesson Corp.*,
  No. 11-80233, 2011 WL 5025096 (N.D. Cal. Oct. 20, 2011) ............................. 7

*Broadcom Corp. v. Emulex Corp.*,
  No. CV 10-03963, 2011 WL 13130705 (C.D. Cal. Aug. 10, 2011) .................... 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, 2016 WL 6216664 (N.D. Cal. Oct. 25, 2016) ......................... 14

*Colo. Civil Rights Com'n v. Wells Fargo Bank and Co.*,
  2011 WL 2610205 (D. Colo. July 1, 2011) ...................................................... 12

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  No. 1:04-cv-3066, 2012 WL 12540321 (N.D. Ga. July 17, 2012) ..................... 8

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023), *cert. denied*, ___ S. Ct. ___, 2024 WL
  156473 (S. Ct. Jan. 16, 2024) ....................................................................... 2, 6

*F.T.C. v. Indiana Fed'n of Dentists*,
  476 U.S. 447 (1986) ........................................................................................... 6

*F.T.C. v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................................. 6

*Fishman v. Est. of Wirtz*,
  807 F.2d 520 (7th Cir. 1986) ........................................................................... 15

*Golf City, Inc. v. Wilson Sporting Goods, Co.*,
  555 F.2d 426 (5th Cir. 1977) ........................................................................... 15

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972) ......................................................................................... 10

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
   No. C 06-01793, 2008 WL 4766824 (N.D. Cal. Oct. 31, 2008).......................11

*JUUL Labs, Inc. v. Chou*,
   No. CV 21-3056, 2023 WL 3886046 (C.D. Cal. June 8, 2023)........................14

*Marcello v. U.S. I.R.S.*,
   No. RDB-08-2796, 2010 WL 9478985 (D. Md. Apr. 21, 2010) ......................12

*Moehrl v. Nat'l Ass'n of Realtors*,
   No. 19-cv-01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)........................12

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019).................................................................10

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
   435 U.S. 679 (1978) ..............................................................................6

*NCAA v. Alston*,
   141 S. Ct. 2141 (2021) ...........................................................................6

*NCAA v. Bd. of Regents of the University of Oklahoma*,
   468 U.S. 85 (1984) ................................................................................6

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   802 F.3d 1049 (9th Cir. 2015)..................................................................6

*South Carolina v. LG Display Co., Ltd.*,
   No. 3:11-cv-00729, 2011 WL 4344074 (D.S.C. Sept. 14, 2011)......................11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-01819, 2010 WL 10086747 (Dec. 16, 2010)..................................14

*Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of Rhode Island*, 311 F. Supp. 3d 468 (D.R.I. 2018)..........................................14

*Taffet v. S. Co.*,
   967 F.2d 1483 (11th Cir. 1992)................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   Nos. M 07-1827, 10-1064, 2012 WL 6000154 (N.D. Cal. Nov. 30, 2012)..........................................................................................14

*In re Title Ins. Antitrust Cases*,
   702 F. Supp. 2d 840 ............................................................................12

*U.S. Football League v. Nat'l Football League*,
　No. 84-7484, 1986 WL 7012 (S.D.N.Y. June 17, 1986) ....................................4

*In re Urethane Antitrust Litig.*,
　No. 2:08-5169, 2015 WL 9294670 (D.N.J. Dec. 21, 2015)................................7

*Util. Choice, L.P. v. TXU Corp.*,
　2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) ....................................................12

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
　715 F.3d 716 (9th Cir. 2013) ....................................................................11, 12

**Statutes**

15 U.S.C. § 15.................................................................................................11

15 U.S.C. § 26...................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23(a) .........................................................................................8

John M. Newman, *Procompetitive Justifications in Antitrust Law*,
　94 Ind. L.J. 501 (2019) ....................................................................................8

Phillip Areeda, *The Rule of Reason – a Catechism on Competition*,
　55 Antitrust L.J. 571 (1986) ............................................................................8

# INTRODUCTION

In response to Plaintiffs' second motion *in limine*, the NFL Defendants now concede that this Court should ban any mention of (1) injunctive relief; (2) the "pass on" of overcharges; (3) damages mitigation; or (4) any supposed fault from class members' decision to subscribe to Sunday Ticket. As to those safeguards at trial, there is consensus. But the NFL Defendants also confirm that, if permitted, they will try to offer other irrelevant and prejudicial evidence, argument, and terminology— ranging from using the loaded term "refunds" in describing antitrust damages to arguments about the "impact of eliminating the challenged conduct" *in the future* to arguments about subjective perceptions of product quality in the rule of reason analysis. This Court should not permit it.

# ARGUMENT

## I.   This Court Should Prohibit Evidence or Argument Concerning What Changes May Occur in the Future in the Distribution or Availability of NFL Game Telecasts if the Jury Finds in Favor of Plaintiffs.

The NFL Defendants *agree* that this Court should bar any reference to the fact that Plaintiffs are seeking and may be entitled to permanent injunctive relief under the federal antitrust laws. The NFL Defendants effectively acknowledge, as Plaintiffs observed in their opening brief, that "there is no reason to inform the jury of the Clayton Act's features other than to sow confusion and invite prejudice, including by . . . 'warning' the jury of the potential implications of injunctive relief, so as to evade liability." Mot. at 3. Even in their own words, the NFL Defendants embrace a "prohibition on discussion of whether the Court might enter an injunction and any speculation as to what such an injunction might do." Opp'n at 3. *Something* remains of their opposition to Plaintiffs' Motion *in Limine* #2, however, which only underscores the need for these protections.

The NFL Defendants' only residual ground for opposition—to preserve the ability to address "the scope of Plaintiffs' damages claims" and the "'but-for' world

that in Plaintiffs' view would have occurred," Opp'n at 1-2—is a decoy. Plaintiffs have never suggested a trial without mention of the *historical* "but-for world absent the challenged conduct." *Id*. at 3. That will unquestionably be a focus of expert testimony. And what Defendants charitably refer to as a "discussion of the harms to competition and to consumers that would arise from the removal of the challenged restraints" is merely an articulation of their burden of proof at trial to prove any pro-competitive justifications for the restraints at issue (and their magnitude), subject to balancing against the anticompetitive harms caused by those restraints. *Id*. at 2-3 ("the rule of reason permits Defendants to offer procompetitive rationales for the challenged restrictions"). The NFL Defendants' recitation of the rule of reason as somehow considering *harms* to competition from the *removal* of the restraints has it backwards. *Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 985-86 (9th Cir. 2023) ("*Epic Games*"), *cert. denied*, ___ S. Ct. ___, 2024 WL 156473 (S. Ct. Jan. 16, 2024).

Lurking amid this confusion is a real threat, however. In various places, the NFL Defendants hint that they might still try to suggest that the jury should speculate about forward-looking changes—Plaintiffs' only concern here—without doing so "explicitly." Opp'n at 1-4. Why else include that qualifier when reporting that "Defendants do not intend, and agree that neither side should, offer evidence or argument that ***explicitly*** discusses the potential for future injunctive relief"? *Id*. at 1 (emphasis added). Indeed, the NFL Defendants welcome only a "narrow restriction" while opposing "any constraints on their ability to describe and critique the "but-for" world that in Plaintiffs' view ***would have occurred***," *i.e.*, in the future, "in the absence of the challenged conduct." *Id*. at 2 (emphasis added). Elsewhere, the NFL Defendants even hold open the possibility of explicitly mentioning injunctive relief when cross-examining Plaintiffs' economic expert. *Id*. at 3 (flagging possibility of "reference to injunctive relief" in cross-examining Plaintiffs' expert Dr. Rascher).

This Court should eliminate these possibilities, which present the same hazards that Plaintiffs raised in their opening brief. None of the cases cited by either party

endorses the distinction that the opposition raises, nor have the NFL Defendants explained why *implicit* discussion of injunctive relief and forward-looking changes, in whatever form, would not likewise prejudice Plaintiffs and cause juror confusion. *Id*. at 3 (recasting Plaintiffs' prejudice concerns incorrectly as arising only "from explicit discussion of injunctive relief"). The opposition sidesteps the fact that every federal court nationwide to consider the issue (that Plaintiffs could find) has barred the defendant from referring to injunctive relief in the presence of the jury *in any form*. *See* Mot. at 1-4 n.4. And instead of furnishing additional authorities that might support their position, the NFL Defendants insist, without elaboration, that those holdings were "exceedingly narrow" or lacked sufficient reasoning, which misses the point and is inaccurate in any event. Opp'n at 1 n.1; *see* Mot. at 1-4.

The NFL Defendants hang their hat on the preservation in *Amdocs* of "defendant's ability to cross-examine the [plaintiffs'] damages expert," including by "reference to injunctive relief *i[f] relevant to that cross-examination*." *Id.* at 1 (emphasis added). But here, unlike in *Amdocs*, the NFL Defendants have not even attempted to show that injunctive relief might be relevant to any cross-examination of Plaintiffs' experts. On the contrary, the portions of Dr. Rascher's and Dr. Bernheim's reports identified by the NFL Defendants concern only Dr. Rascher's *retrospective* damages analysis and historical but-for worlds. *See infra* at 4-5.

To be sure, Plaintiffs take no issue with either party addressing "Plaintiffs' asserted but-for worlds" at trial (or for that matter the NFL Defendants' "full defense to claims of anticompetitive effects, injury, and damages" Opp'n at 3-4)—but those "but-for worlds" are strictly retrospective, illustrating what a world absent the anticompetitive conduct would have looked like between June 17, 2011 and February 7, 2023. *See* Order Granting Plaintiffs' Motion for Class Certification, ECF No. 894, at 11-13 (detailing Dr. Rascher's three but-for worlds). There is no place at trial for jury argument about the implications of those but-for worlds *for the future*, which would—in the words of the last federal court to consider the NFL Defendants'

3

position—"needlessly confuse the issues and unfairly prejudice plaintiffs" by requiring "consider[ation] of the 'impact' of uncertain injunctive relief." *U.S. Football League v. Nat'l Football League*, No. 84-7484, 1986 WL 7012, at *2-3 (S.D.N.Y. June 17, 1986) (prohibiting the NFL Defendants "from referring to the *possibility* of injunctive relief" without distinguishing between explicit and implicit references); *see Broadcom Corp. v. Emulex Corp.*, No. CV 10-03963, 2011 WL 13130705, at *1 (C.D. Cal. Aug. 10, 2011) ("[R]eference to the *possibility* of injunctive relief could distract the jury from its job of determining whether and in what amount damages should be awarded.") (emphasis added).  This Court alone will determine whether injunctive relief is appropriate and, if so, the scope of that injunctive relief. 15 U.S.C. § 26.

Given the NFL Defendants' ambiguous responses to date and the possibility of subterfuge at trial, Plaintiffs request an unmistakable ruling that the NFL Defendants cannot evade through creativity. This Court should make clear that the NFL Defendants cannot argue or offer any evidence suggesting that a verdict for Plaintiffs would in any way alter the current broadcast arrangements, cause over-the-air broadcasts to disappear, or disrupt the fabric of professional football in the United States. Those arguments are inherently speculative, would perforce take whatever injunctive relief the Court might order into account, and are legally and factually inaccurate: a jury verdict for Plaintiffs would result only in an award of damages determined by the jury, even if it would also invite this Court's consideration of additional relief. Such arguments would also encourage the jury to speculate on how the NFL's current agreements with broadcast networks might change, and what such a world should look like in the future. The jury is only to assess past conduct and determine damages for harm inflicted as a result of that past conduct.

Consider an extreme example. One of the NFL Defendants' experts, Dr. Douglas Bernheim, opines that the restraints are, and were, essential to fostering competitive balance (which, he reasons, increases output) and maintaining

4

investment in player salaries. Plaintiffs and their experts disagree, of course, with considerable supporting evidence, but that is beside the point for purposes of this motion *in limine*. The prejudice to Plaintiffs would be enormous if the NFL Defendants could argue to the jury, incorrectly, that a liability determination would harm *NFL players* down the road. This Court can prevent any such misdirection with clear guidance now.

**II.   This Court Should Prohibit Evidence or Argument Concerning Subjective Views of Product Quality (Standing Alone) as a Procompetitive Justification Untethered to the Restraints at Issue Here.**

The NFL Defendants' approach is also apparent in their opposition to any ban on evidence or argument "concerning any financial benefit or 'pass on' of any overcharge, any supposed failure to mitigate damages, and any supposed fault from Plaintiffs' consumer choices. Opp'n at 4. They call Plaintiffs' request "vague," but the supporting caselaw is legion, as Plaintiffs detailed in their opening brief and to which the NFL Defendants have not responded.[1] Instead, the NFL Defendants grant that they cannot "argue [at trial] that Plaintiffs' damages should be reduced to the extent that they increased their prices or made additional sales to consumers," but that is of course only a fraction of what Plaintiffs seek by their Motion *in Limine* No. 2. Opp'n at 4 (suggesting "relief beyond those narrow confines is not justified").

The crux of the NFL Defendants' remaining opposition is that class members' purchasing history for Sunday Ticket, "including how much Plaintiffs actually paid for the product, as well as its quality and value" is "essential to the rule of reason

---

[1] The NFL Defendants commit not to attribute "blame" to Plaintiffs' consumer choices or to suggest a "pass on" of any overcharge, confirming again those portions of Plaintiffs' Motion *in Limine* No. 2 that are agreed among the parties. Opp'n at 4 ("Defendants will not argue that Plaintiffs' damages should be reduced to the extent that they increased their prices or made additional sales to consumers."), *id.* at 6 ("This evidence will not be used to assert a 'pass-through' defense, meaning that the NFL Defendants will not argue that the commercial benefits that Plaintiffs received should be deducted from any damages that they can prove."), *id.* at 7 ("None of this evidence suggests any 'blame' to be attributed to Plaintiffs, or any other potential source of improper prejudice.").

analysis," which is not quite right. Opp'n at 4. The rule of reason concerns the anticompetitive and procompetitive aspects of a given restraint and asks whether *the restraint* harmed competition (and to what extent) and, if so, whether *the restraint* benefitted competition (and to what extent) in the absence of a less restrictive alternative. *Epic Games*, 67 F.4th at 987. In the words of the Supreme Court, the "essential inquiry" is "whether or not the challenged restraint enhances competition." *NCAA v. Bd. of Regents of the University of Oklahoma*, 468 U.S. 85, 104 (1984).

But for nearly 50 years, the Supreme Court has held that "product quality" is not an independent procompetitive justification in and of itself (*i.e.*, when untethered to the restraint). *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 463 (1986) (rejecting as illegitimate "noncompetitive quality-of-service justifications"); *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 685, 694-95 (1978) ("quality of engineering" could not justify a ban on competitive bidding because it is "th[e] restraint that must be justified under the Rule of Reason"). Rather, to the extent a defendant asserts product quality as a procompetitive effect, the rule of reason examines whether, by imposing the restraint, the defendant has materially improved product quality. *NCAA v. Alston*, 141 S. Ct. 2141, 2152 (2021) (discussing the lack of support for the NCAA's argument that its "compensation restrictions play a role in consumer demand"); *Epic Games*, 67 F.4th at 987 (asking whether the defendant has "tapp[ed] into consumer demand and different[iated] its products from those of its competitors" by the restraint); *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) ("If the monopolist asserts a procompetitive justification—a nonpretextual claim that **its conduct** is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal—then the burden shifts back to the plaintiff to rebut that claim.") (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001)) (emphasis added); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1072 (9th Cir. 2015) (same).

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER EVIDENCE AND ARGUMENT REGARDING THE RELIEF SOUGHT BY PLAINTIFFS

As such, the upcoming trial is not about whether class members enjoy watching televised out-of-market NFL games but instead concerns (among other things) whether the restraints at issue have somehow increased product quality. The NFL Defendants acknowledge as much, at least in passing, when they state that they will "present evidence that the ***challenged restraints*** improve quality in multiple ways, including by incentivizing investment in game telecasts through video production, technological advancement, and superior game commentary." Opp'n at 7 (emphasis added). But whether "Sunday Ticket was a high quality, high-demand product," Opp'n at 4, without more, tells us nothing about any supposed procompetitive effects of the NFL Defendants' conduct.

Viewed through this lens, the Defendants may present any evidence that the challenged restraints measurably improved the quality of NFL game telecasts. The Defendants may not, however, prejudice Plaintiffs by extolling the supposed downstream economic benefits of Sunday Ticket to commercial subscribers (or any supposed product satisfaction among residential subscribers) divorced from their arguments that the challenged restraints have improved the quality of all NFL game telecasts. Opp'n at 5 (insisting, for example, that the NFL Defendants "should be allowed to elicit evidence that the commercial class used Sunday Ticket to attract and retain customers, and earn more money"). The case law is very clear on this point, and the NFL Defendants offer no response. Mot. at 5-6; *see, e.g.*, *Braintree Labs., Inc. v. McKesson Corp.*, No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("[A] plaintiff's alleged benefit from a defendant's anti-competitive behavior … is not relevant to whether the plaintiff [direct purchaser] suffered a cognizable antitrust injury. … [T]he relevant question is whether the plaintiff paid an overcharge."); *In re Urethane Antitrust Litig.*, No. 2:08-5169, 2015 WL 9294670, at *2 (D.N.J. Dec. 21, 2015) ("[T]he probative value of the proffered [downstream] evidence is low. The risk of prejudice, on the other hand, is high."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2012 WL 12540321,

at *2 (N.D. Ga. July 17, 2012) (granting plaintiffs' motion *in limine* to exclude plaintiffs' financial information and noting that "[u]nder *Hanover Shoe* and its progeny, plaintiffs' financial information is irrelevant to any issue in this case").

For the same reasons, the NFL Defendants' argument that they should be able to present evidence and argument that class members "repeatedly purchased the Sunday Ticket product—even after alleging in litigation that it was overpriced," Opp'n at 7, is legally irrelevant. Victims of anticompetitive conduct often keep purchasing an "overpriced" product, even after litigation commences, and those continuing purchases do not "demonstrate[] the reasonableness of, and procompetitive justifications for, *Defendants' conduct*." *Id*. (emphasis added).

The NFL Defendants' strategy to "present evidence that Sunday Ticket was a high quality, high-demand product," Opp'n at 4, through the testimony of class representatives has another fatal flaw as well. The class representatives' claims are of course typical of the classes' claims, and the class representatives will continue to fairly and adequately protect the interests of the classes. *See* Fed. R. Civ. P. 23(a). But an individual class member's subjective and anecdotal views about Sunday Ticket product quality, standing alone, cannot be probative of the NFL Defendants' procompetitive justification; for that, they will need to make use of reliable expert analysis, quantitative methods, economics, testimony from qualified witnesses, and/or relevant business records. *See* John M. Newman, *Procompetitive Justifications in Antitrust Law*, 94 Ind. L.J. 501, 502-30 (2019); Phillip Areeda, *The Rule of Reason – a Catechism on Competition*, 55 Antitrust L.J. 571, 578-79 (1986) (emphasizing the "objective" standard used to measure procompetitive justifications). By contrast, the idiosyncratic views of an individual subscriber for product quality would prove nothing and mislead the jury. And the NFL Defendants seem to agree. In other contexts, the NFL Defendants have disparaged the utility of class members' views about Sunday Ticket, even in the aggregate. For example, when challenging the testimony of Plaintiffs' survey expert Sarah Butler, the NFL

Defendants asserted that conclusions drawn from *195* class members "would be unreliable given [the "small sample"] size and subject to large sampling errors." Butler *Daubert* Mot., ECF No. 674, at 11. Plaintiffs disagreed with that assertion, as did this Court (Order Granting Plaintiffs' Motion for Class Certification, ECF No. 894, at 7-9), but the point remains: the NFL Defendants cannot have it both ways now in demanding the views of a lone class member or two about product quality, which could not satisfy their burden of proof in any event.

III.   **This Court Should Prohibit Evidence or Argument about "Refunds" When All Parties, This Court, the Model Jury Instructions, and the Clayton Act Speak of Antitrust "Damages" or "Overcharges".**

The NFL Defendants also confirm their intention to wield the loaded language of "refunds" before the jury instead of simply "damages" or "overcharges," which is how this Court, the NFL Defendants, and Plaintiffs (and numerous other sources, including the American Bar Association's Model Jury Instructions in Civil Antitrust Cases) have consistently referred to the monetary relief Plaintiffs are seeking. In substituting their preferred terminology, the NFL Defendants contend that "refund" is merely "clear, descriptive language" used to describe "the return of money to a person who overpaid." Opp'n at 8. But "refund" signifies something more in common usage. In everyday parlance, customers are entitled to a refund for a defective product that does not work or sometimes by contract if the consumer is dissatisfied with the product. Oxford Languages defines a refund as "a repayment of a sum of money, ***typically to a dissatisfied customer***," as does the Cambridge Dictionary ("an amount of money that is given back to you, ***especially because you are not happy with a product or service that you have bought***"). *See, e.g.*, https://www.google.com/search?client=firefox-b-1-d&q=refund+definition#ip=1 (emphasis added); https://dictionary.cambridge.org/us/dictionary/english/refund (emphasis added). Neither describes Plaintiffs' efforts to recoup overcharges for anticompetitive conduct here as "private attorneys general" authorized and

9

encouraged by Congress. *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972). Nor should the NFL Defendants be permitted to tarnish Plaintiffs as simply disgruntled customers before the jury.

The absence of "refund" in this litigation to date confirms the prejudice and imprecision associated with that word. Across more than 1,500 pages of expert reports exchanged in this case, spanning ten experts, no expert has ever used the term "refund" to describe the damages sought by Plaintiffs—whereas "damages" and "overcharges" appear over 100 times. This Court's detailed class-certification and summary-judgment decisions likewise never use the word "refund." ECF No. 894 (39 instances of "damage[s]" or "overcharge[s]"); ECF No. 1155 (10 instances of "damage[s]" or "overcharge[s]"). And the same is true of the Ninth Circuit's decision in this case. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1144 (9th Cir. 2019) (8 instances of "damage[s]" or "overcharge[s]"; zero instances of "refund").[2]

Most telling, however, is the absence of "refund" from the American Bar Association's Model Jury Instructions in Civil Antitrust Cases. *See* ABA Model Jury Instructions in Civil Antitrust Cases, ABA Section of Antitrust Law (2016 ed.). And that makes sense: The Clayton Act authorizes private civil suits for treble "damages," which, mechanically speaking, almost never equals a "refund" in the sense of a return of precisely the amount paid (providing yet another reason not to use that word). 15 U.S.C. § 15. Contrast all of that with a handful of times when class members *did* receive a refund related to Sunday Ticket (disconnected from the claims asserted here), as when DirecTV experienced an outage that prevented access to Sunday

---

[2] "Refund" also cannot be found in Plaintiffs' complaint, the NFL Defendants' answer, or either party's recent contentions of fact and law. *See* Sec. Am. Compl. (ECF No. 441), NFL Defendants' Answer to Plaintiffs' Second Consolidated Amended Complaint for Damages and Declaratory and Injunctive Relief (ECF No. 442), Pls.' Mem. of Contentions of Fact and Law (ECF No. 1187), Defs.' Mem. of Contentions of Fact and Law (ECF No. 1185).

Ticket, *see, e.g.,* Frantz Dep. 110:13-25—and you have a recipe for jury confusion. *See* Exhibit 1 to the Declaration of Sathya S. Gosselin.

Against this, the NFL Defendants muster a handful of opinions, many of which come from outside this circuit or do not concern antitrust, that use the word "refund" in some way. Those few decisions do not make the word "routine[]" when describing antitrust overcharges to a jury. Opp'n at 8. Quite the opposite, none of those authorities concerns motions *in limine*, jury instructions, or the Federal Rules of Evidence. *See, e.g.*, *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) ("*In re W. States Wholesale Nat. Gas*") (appellate review of orders granting summary judgment, dismissal of defendants, and denials of leave to amend while also distinguishing between "a treble damages claim under the Colorado state antitrust statute" and a claim under a different Colorado antitrust statute expressly permitting "refunds" for void contracts); *Albert v. Glob. Tel*Link*, 68 F.4th 906, 908 (4th Cir. 2023) (appellate review of dismissal for failure to plead facts that satisfy RICO's proximate-causation requirement); *Taffet v. S. Co.*, 967 F.2d 1483, 1485 (11th Cir. 1992) (appellate review of dismissal of RICO complaints premised on the filed-rate doctrine, the primary jurisdiction doctrine, the clear statement doctrine, and abstention based upon federalism interests); *South Carolina v. LG Display Co., Ltd.*, No. 3:11-cv-00729, 2011 WL 4344074, at *1 (D.S.C. Sept. 14, 2011) (granting motion to remand to state court for lack of diversity under the Class Action Fairness Act), *appeal granted, order aff'd sub nom. AU Optronics Corp. v. South Carolina*, 699 F.3d 385 (4th Cir. 2012); *In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. C 06-01793, 2008 WL 4766824, at *1 (N.D. Cal. Oct. 31, 2008) (awarding attorneys' fees and costs while also referencing "the unlawful overcharge"); *Colo. Civil Rights Com'n v. Wells Fargo Bank and Co.*, 2011 WL 2610205 (D. Colo. July 1, 2011) (using the term "refund" in reference to another case, in Connecticut, involving various claims by Connecticut for violations of state law); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840 , 897(N.D. Ohio 2010) (the

11

use of the term "refund" was in the context of a rate "refund" in connection with the filed rate doctrine); *Util. Choice, L.P. v. TXU Corp.*, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) (same).

In fact, some of those cases distinguish between refunds and damages. *See, e.g.*, *In re W. States Wholesale Nat. Gas*, 715 F.3d at 738 ("Plaintiffs have been aware of the availability of an actual damages claim under the Colorado antitrust statutes since the inception of the case, but chose to plead under the full refund provision only."); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2023 WL 2683199, at *20 (N.D. Ill. Mar. 29, 2023) (contrasting Plaintiffs' damages "as opposed to a full refund . . . and forgo the more complex task of determining which class members are entitled to a full refund."); *Marcello v. U.S. I.R.S.*, No. RDB-08-2796, 2010 WL 9478985, at *3 (D. Md. Apr. 21, 2010) (a "claim for damages, however, is distinct from a claim for refund and abatement").

Nor do the numbers favor the NFL Defendants' terminology in any event. A search on Westlaw of federal court opinions using the terms "antitrust" and "overcharge" or "overcharges" yields 3,720 results, and the same search using the terms "antitrust" and "damages" reveals over 10,000 results. The NFL Defendants, meanwhile, have found only six antitrust-related cases that use the word "refund"—but never in front of a jury.

The prejudice to Plaintiffs is plain as well. The NFL Defendants hope to raise a straw man at trial by using the language of "refunds" to suggest that a class member was dissatisfied with the product (as opposed to antitrust injury and overcharges, as the Sherman Act envisions) and then eliciting testimony and using deposition designations that describe how class members chose to watch out-of-market NFL telecasts on Sunday Ticket and resubscribed despite the towering price, including because they had no other options. *See* ECF No. 1155 at 10 (emphasizing that Sunday Ticket on DirecTV was the only option for consumers who wished to view out-of-market NFL game telecasts). But *dissatisfaction* with the product or service is not an

element of a Sherman Act claim, nor is there any requirement of discontinuing purchases to pursue antitrust litigation, particularly where the only avenue to watch live, out-of-market games is through Sunday Ticket. If those things were true, companies with high customer satisfaction would be effectively immune from antitrust litigation, as would pharmaceutical companies that manufacture essential medicines, which is certainly not the case.

For all these reasons, the Court should forbid the lexicon of "refunds" at trial. Prejudice is inevitable; the word lacks any independent probative value; and there are more precise terms that this Court and the parties have used throughout this litigation.

## IV.    This Court Should Prohibit Evidence or Argument about Any Supposed Failure to Mitigate Damages, Which Is Not a Defense Available to the NFL.

Deepening the confusion, the NFL Defendants are mum as to Plaintiffs' request to bar evidence or argument related to any supposed failure to mitigate damages. But in their separate contentions of fact and law, the NFL Defendants assert—incorrectly—that "Plaintiffs may not recover damages for any portion of their injuries that they could have avoided through the exercise of reasonable care and prudence." ECF No. 1185 at 12. That misstates the law and the underlying model jury instructions.

As Plaintiffs explained in their opening brief, Mot. at 6, antitrust courts do not recognize a duty to mitigate damages arising from horizontal restraints that cause supracompetitive prices. *See In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("*In re Airline Ticket Comm'n*") (denying mitigation defense when plaintiffs sought overcharge damages caused by buyer cartel); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 6216664, at *11 (N.D. Cal. Oct. 25, 2016) ("Defendants are precluded from presenting evidence or argument suggesting the DAPs mitigated, or could have mitigated, their damages by

13

increasing the prices they charged their customers."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827, 10-1064, 2012 WL 6000154, at *3 (N.D. Cal. Nov. 30, 2012) ("*In re TFT-LCD (Flat Panel)*") ("the Court declines to hold that defendants may assert mitigation as a defense to Dell's horizontal price-fixing claim"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 10086747, at *2 (Dec. 16, 2010) (granting unopposed motion *in limine* to exclude "arguments or evidence that Plaintiffs failed to mitigate damages.").

Instead of responding to those authorities, the NFL Defendants lean on the American Bar Association's Model Jury Instruction No. 14 ("Mitigation") but misinterprets its application here. As the notes makes clear, Model Jury Instruction No. 14 is *inapplicable* to horizontal arrangements in which an antitrust plaintiff "could [not] reasonably be expected to mitigate damages by finding another supplier," as with "a victim of horizontal price-fixing [that] does not have this option." Notes to the American Bar Association's Model Jury Instructions in Civil Antitrust Cases, Model Jury Instruction No. 14 (quoting *In re TFT-LCD (Flat Panel)*, 2012 WL 6000154, at *3; *In re Airline Ticket Comm'n*, 918 F. Supp. at 286). Those notes cite the same authorities that Plaintiffs called on in their opening brief—to preclude this evidence or argument.  And, as this Court has recognized, class members that wanted to watch out-of-market NFL telecasts had nowhere else to turn during the class period in any event; it was Sunday Ticket or nothing. ECF No. 1155 at 10.

The NFL Defendants' remaining citations cannot save their arguments either. For example, *JUUL Labs, Inc. v. Chou*, No. CV 21-3056, 2023 WL 3886046, at *14 (C.D. Cal. June 8, 2023)—the NFL Defendants' only case within the Ninth Circuit—was a trademark-infringement suit and discussed the affirmative defense of failure-to-mitigate only in that context. *Fishman v. Est. of Wirtz*, 807 F.2d 520, 556-57 (7th Cir. 1986), dealt with antitrust but was a vertical refusal-to-deal case, where

14

mitigation can be a defense. So too in *Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of Rhode Island*, 311 F. Supp. 3d 468, 511 (D.R.I. 2018), and *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 436 (5th Cir. 1977) ("*Golf City*"), both vertical refusal-to-deal instances in which the plaintiff businesses downstream had opportunities to mitigate their damages by sourcing elsewhere—unlike here. *E.g.*, *Golf City*, 555 F.2d at 436 ("Golf City might have mitigated its damages in either of two ways: (1) It might have purchased 'leaked' pro line equipment from pro shops. (2) It might have attempted to increase its volume of store-line merchandise to compensate for the inability to obtain pro-lines goods.").

As a result, the NFL Defendants are mistaken in suggesting "the law requires an injured party [here] to take all reasonable steps it can to avoid further injury and thereby reduce its loss." ECF No. 1185 at 12. There is no such requirement in this case—or for that matter any steps that class members could have taken short of discontinuing all purchases (which not even the NFL Defendants' preferred authorities propose). Given the absence of any such defense, this Court should not permit the NFL Defendants to confuse the jury and prejudice Plaintiffs by mentioning damages mitigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' second motion *in limine*, including with the clarifications necessitated by the NFL Defendants' responses.

Dated: February 9, 2024                    Respectfully submitted,


                                           By: */s/ Marc M. Seltzer*

                                           Marc M. Seltzer (54534)
                                           mseltzer@susmangodfrey.com
                                           Kalpana Srinivasan (237460)
                                           ksrinivasan@susmangodfrey.com
                                           Amanda Bonn (270891)
                                           abonn@susmangodfrey.com

SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com

16

Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

17