REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (SKx) |
| | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED AND FOR LIMITED RELATED DISCOVERY** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE: Hon. Philip S. Gutierrez<br>DATE: April 19, 2024<br>TIME: 1:30 p.m.<br>COURTROOM:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    I.    The NFL's Efforts to Control Sunday Ticket Pricing Since 2002. ....................... 2

    II.    Plaintiffs' Re-Examination of the NFL's Privilege Logs. ......................... 7

ARGUMENT AND AUTHORITIES ................................................................ 9

    I.    Plaintiffs' Motion Is Timely and Appropriately Before this Court........................ 9

        A.    The NFL Defendants Have a Continuing Obligation under Rule 23(e) to Produce Responsive, Non-Privileged Documents......................... 9

        B.    There is Good Cause for Limited Discovery Under Rule 16..................... 9

        C.    The Court Should Consider this Motion in the First Instance. ................. 11

    II.    The Court Should Review Limited, Challenged Documents *In Camera* and/or Order Their Production. ........................................................... 12

        A.    The NFL Improperly Redacted a Later Version of the "███ ██████████" Memorandum. ..................................................... 13

        B.    Documents Claiming Privilege on the Basis of Frank Hawkins—an NFL Business Executive Never Licensed to Practice Law in New York—Should Be Produced. .................................. 15

        C.    The NFL Has Withheld Other Documents Based on Questionable Claims of Privilege............................................................. 20

        D.    The NFL's Supplemental Log Contains Several Deficient Entries That Warrant Waiver of Any Asserted Privilege......................... 23

    III.    There is Good Cause for a Special Master to Oversee the NFL's Re-Review of Its Privilege Log and Compel Limited, Additional Discovery. ................................................................................................. 24

CONCLUSION ................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Target Corp.*,
   281 F.R.D. 314 (N.D. Ill. Mar. 9, 2012)................................................................21

*ActiveRain Corp. v. Move, Inc.*,
   2008 WL 11337643 (C.D. Cal. Dec. 16, 2008) ....................................................23

*Applied Med. Res. Corp. v. Ethicon, Inc.*,
   2005 WL 6567355 (C.D. Cal. May 23, 2005)....................................12, 13, 15

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
   2008 WL 5214330 (N.D. Cal. 2008)....................................................................24

*Boyd v. Meriter Health Servs., Inc.*,
   2011 WL 13209231 (W.D. Wisc. Aug. 23, 2011) ..............................................14

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,
   408 F.3d 1142 (9th Cir. 2005)..............................................................................24

*Chavez v. Cal. Dep't of Corrections & Rehabilitation*,
   2010 WL 11596462 (C.D. Cal. Mar. 19, 2010) ..................................................12

*City of Pomona v. SQM N. Am. Corp.*,
   866 F.3d 1060 (9th Cir. 2017)..............................................................................10

*City of Roseville Emp. Ret. Sys. v. Apple Inc.*,
   2022 WL 3083000 (N.D. Cal. Aug. 3, 2022)......................................................22

*De Paz v. Wells Fargo Bank, N.A.*,
   2020 WL 2404897 (C.D. Cal. Feb. 18, 2020)......................................................10

*Entrata, Inc. v. Yardi Sys., Inc.*,
   2018 WL 4146605 (D. Utah Aug. 30, 2018)........................................................25

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   2018 WL 3868976 (N.D. Cal. Feb. 24, 2018)......................................................12

*Franco-Gonzalez v. Holder*,
   2013 WL 8116823 (C.D. Cal. May 3, 2013)........................................................23

*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021)..............................................................................16

*In re Grand Jury Investigation (U.S. v. The Corporation)*,
   974 F.2d 1068 (9th Cir. 1992) ........................................................................... 12

*Kandypens Inc. v. Puff Corp.*,
   2020 WL 7978226 (C.D. Cal. Dec. 7, 2020) ................................................... 23

*Lifewise Master Funding v. Telebank*,
   206 F.R.D. 298 (D. Utah 2002) ....................................................................... 19

*Multiple Energy Techs., LLC v. Casden*,
   2022 WL 16972482 (C.D. Cal. Nov. 16, 2022) ............................................... 11

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
   131 F. Supp. 2d 458 (S.D.N.Y. 2001) ........................................................ 16, 18

*Neuder v. Battelle Pac. Nw. Nat'l Lab.*,
   194 F.R.D. 289 (D.D.C. 2000) ......................................................................... 14

*NXIVM Corp. v. O'Hara*,
   241 F.R.D. 109 (S.D.N.Y. 2007) ...................................................................... 21

*Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*,
   422 F.3d 72 (2d Cir. 2005) ............................................................................... 12

*RCHFU, LLC v. Marriott Vacations Worldwide Corp.*,
   2018 WL 3055774 (D. Colo. May 23, 2018) ................................................... 14

*Sanner v. Bd. of Trade of City of Chicago*,
   181 F.R.D. 374 (N.D. Ill. 1998) ....................................................................... 22

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
   272 F.R.D. 350 (W.D.N.Y. 2011) ....................................................................... 9

*Trilegiant Corp. v. Sitel Corp.*,
   2012 WL 1883343 (S.D.N.Y. May 22, 2012) .................................................... 9

*U.S. v. Chevron Corp.*,
   1996 WL 264769 (N.D. Cal. Mar. 13, 1996) .................................................. 16

*U.S. v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) .......................................................... 16

*U.S. v. Philip Morris USA, Inc.*,
   2004 WL 5355972 (D.D.C. Feb. 23, 2004) ..................................................... 14

*U.S. v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ............................................................................... 14

*U.S. v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ............................................................................. 14

*Upjohn Co. v. U.S.*,
   449 U.S. 383 (1981) ............................................................................................. 14

*Valassis Commc'ns, Inc. v. News Corp.*,
   2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ..................................................... 22

*Willis v. Vasquez*,
   2012 WL 12882386 (C.D. Cal. June 19, 2012) .................................................... 21

*Wisk Aero LLC v. Archer Aviation Inc.*,
   2022 WL 524065 (N.D. Cal. Feb. 22, 2022) ........................................................ 16

**Rules**

ABA Model Rule of Professional Conduct 5.5 ............................................... 17, 18

Fed. R. Civ. P. 16 .............................................................................................. 9, 11

Fed. R. Civ. P. 23(e) ............................................................................................... 9

Fed. R. Civ. P. 26 .................................................................................................. 11

Fed. R. Civ. P. 26(b)(5) ..................................................................................... 9, 23

Fed. R. Civ. P. 26(e) ............................................................................................... 9

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 9

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 5

Fed. R. Civ. P. 53(a)(1)(C) .................................................................................. 25

Local Rule 37 ........................................................................................................ 12

1

## Other Authorities

2

Joint Report of the New York State Bar Association, Association of
the Bar of the City of New York, and New York County Lawyers'
Association, Proposed Rules for Licensing of In-House Counsel
(Nov. 2010),
https://nysba.org/app/uploads/2020/02/InhouseCounselReportFinal.
pdf.....................................................................................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

After years of litigation, this case is now in its final stages and advancing toward trial this June, where a jury will be tasked with searching for the truth and ensuring that justice is done. Yet several recent and very concerning developments raise the specter that the NFL Defendants have withheld relevant documents as "privileged" without any proper legal grounds to do so.

*First*, after finding two needle-in-a-haystack documents in the course of Plaintiffs' trial preparation relating to the NFL's control over the pricing of Sunday Ticket charged to DirecTV subscribers, Plaintiffs challenged approximately 40 apparently-related entries on the NFL's privilege logs. In response, the NFL Defendants did not suggest this request was untimely. Instead, on January 26, 2024, the NFL belatedly produced **two-thirds** of the challenged documents.

*Second*, Plaintiffs conducted an investigation into Frank Hawkins, a lawyer and businessman employed by the NFL, and whose role the NFL used to justify withholding several documents as "privileged." Plaintiffs discovered that although Mr. Hawkins was licensed to practice law in Washington, D.C., (1) he moved to New York around 2000 to work from the NFL's headquarters there; (2) he did not become licensed to practice law in New York between 2000 and 2008, when he left the NFL to work as a consultant; and (3) he used a different job title than the one the NFL listed with its privilege log (presumably because his actual title makes clear he functioned in a business role rather than inappropriately engaging in the unauthorized practice of law):

| Hawkins Title on NFL's List of Counsel | Hawkins Actual Title |
|---|---|
| "Senior Vice President, ***Legal and*** Business Affairs." | "Senior Vice President, Business Affairs." |

*Compare* Ex. 1 (list of counsel) *with* Ex. 2 at 5 (NFL initial disclosures).[1]

---

[1] All exhibits are attached to the accompanying declaration of Ian M. Gore. For the Court's convenience, the pincites to documents produced in discovery refer to the last three digits of the document's Bates number.

*Third*, given these issues, Plaintiffs requested that the NFL Defendants review 690 questionable privilege log entries (out of approximately 7,500 total entries). Many of these privilege assertions were supposedly justified by the presence of Mr. Hawkins, others appeared to relate to unprivileged business matters, and still others had plainly inadequate descriptions. *See generally* Ex. 3. Again, the NFL Defendants did not suggest that such a request was improper or untimely. Instead, yet again, they belatedly produced over 750 documents related to 394 of the challenged entries.

The NFL's late production of such a massive number of documents demonstrates that it broadly claimed privilege in a broad and unjustified manner, thereby shielding relevant documents from discovery. And a majority of the belatedly-produced documents were not plausibly privileged on their face, including (1) communications with third-parties; (2) discussions of ordinary business issues; (3) agreements among the team owners, and more. This improper withholding has unfairly disadvantaged Plaintiffs in their trial preparation efforts.

But it is not too late to address this problem and ensure that the NFL cannot profit from hiding behind meritless claims of privilege. Trial is in June and the jury should decide the case on the merits based on the facts—not based on a version of the facts distorted by the NFL's improper assertions of privilege. Plaintiffs, therefore, respectfully move to reopen discovery in a limited fashion to ensure the production of any more improperly withheld documents and, only if necessary, take limited trial depositions regarding such documents. Plaintiffs further propose that the Magistrate Judge assigned to this case shepherd this process to completion on an expedited basis before trial and to limit any burden on this Court.

## BACKGROUND

### I.    The NFL's Efforts to Control Sunday Ticket Pricing Since 2002.

Whether the NFL and its member teams with DirecTV to limit the output of game broadcasts and artificially inflate the prices charged to class members for

Sunday Ticket is a central issue in this case. Direct evidence of price fixing plainly supports Plaintiffs' claims in this case and also directly bears on the NFL's arguments and contentions to the contrary. Multiple NFL witnesses denied that the NFL played any role in setting the price paid by DirecTV subscribers and echoed a common refrain: "██████████████████████████████." Ex. 4 (NFL 30(b)(6) (Schroeder) Dep.) at 50:8-13; *see also, e.g.*, Ex. 5 (Lawton Dep.) at 213:4-10. At summary judgment the NFL even claimed that "[t]he record contains *no evidence* of the NFL providing *any* direction to DirecTV or *any* form of control as to price." Dkt. No. 954-1 at 23 (emphasis added). The improperly-withheld documents appear, in part, to bear directly on the veracity of this claim.

From the 1990s through 2002, the NFL's contract with DirecTV was styled as ███████████████████████████████████████████████████████████████████████████████. Ex. 6 at -344. On December 6, 2002, however, the NFL and DirecTV signed a new term sheet that purported to change their ████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Ex. 7 at -417. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ The question is not rhetorical: the NFL's documents reflect an openness to ████████████████. *See* Ex. 8 at -301 (discussing ██████████████████████).

In preparing for the trial then set for February 2024, Plaintiffs identified for the first time in the NFL's 1.2-million-page production[2] a smoking-gun document on this very subject. Finding this document was a lucky break, like finding a needle in a haystack: there appears to be only one copy of it anywhere in the NFL's

---

[2] This figure doesn't account for the fact that DirecTV also produced over 3.4 million pages of documents, or the productions of other third parties, in this case.

productions and no other communications about it. The limited metadata provided does not link the document to any particular person—the listed custodian is "Hard Copy" and no author is identified. Nor does the document have any date metadata that would make it searchable by time period. Gore Decl. ¶ 15.

From context, the document appears to date from late 2001—just a year before the new term sheet purportedly ███████████████████████████████. It appears to have been written in reaction to the contemporaneous announcement that DirecTV's parent company (Hughes) intended to merge with competitor DISH's parent company (EchoStar). In part, the memo addresses the question of ███████████████████████████████████████████. The answer is astonishing, with the NFL unequivocally stating that ████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████:

Ex. 9 at -787 (highlighting and emphasis added).

Consistent with that theme, the NFL made clear to DirecTV, as well as other potential Sunday Ticket counterparties with whom it was negotiating in fall 2002,

1   that ███████████████████████████. On October 17, 2002—less

2   than two months before the December 2002 binding term sheet that ████████

3   ████████████████—the NFL sent letters to both DirecTV and

4   EchoStar.[3] The NFL's letter to DirecTV noted that ████████████████

5   ████████████████████████████████████████

6   ██████████. Ex. 10 at -733. The NFL further insisted that it wanted ████████

7   ████████████████████████. *Id.* at -734. On the same day, the

8   NFL wrote EchoStar to inform it ████████████████████

9   ████████████████████████████████████████

10  ████████████. Ex. 11 at -108.

11      DirecTV and other bidders indicated their willingness to abide by ████████

12  ████████████. On November 1, 2002, DirecTV sent the NFL a draft term sheet

13  to ████████████████████████████████. *See*

14  *generally* Ex. 12. The term sheet stated that ████████████████████

15  ████████████████████████. *Id.* at -096. EchoStar

16  submitted a bid agreeing to ████████████████████████

17  ████████████████████████████. Ex. 13 at

18  -712. A third bidder agreed to ████████████████████

19  ████████████████. Ex. 14 at -209. With every possible distributor

20  agreeing, the NFL had what it wanted: ████████████████████

21  ████████████████████████████████████████

22  ████████████████. When the NFL's corporate representative was

23  asked during a Rule 30(b)(6) deposition why this complete about face occurred, his

24  testimony was: "████████████." Ex. 4 at 40:4-12.

25      Despite the December 2002 term sheet purporting to ████████████████

26  ████████████████████████████████████—

27  contractual language notwithstanding. As the NFL and DirecTV were negotiating a

28

---

[3] The EchoStar (DISH) and Hughes (DirecTV) merger had not gone through at this time.



1  long-form agreement, DirecTV complained to Hawkins that the NFL was

2  attempting to ██████████████████████████████████████████████████

3  ████████████████████████████ Ex. ██ at -133.

4      In 2004—having apparently failed to finalize a long-form agreement for the

5  earlier period—the NFL and DirecTV began negotiating a new contract for the

6  2006-2010 seasons. And that is when the second smoking-gun document Plaintiffs

7  unearthed for the first time in preparing for trial was written—a June 10, 2004 draft

8  memo titled "████████████████████████":

9
10
11
12  ████████████████████████████████████████████
13
14
15
16

17  Ex. 16 at -555 (highlighting added).

18      This memo was initially drafted by non-lawyer Seth Rabinowitz and directed

19  to senior NFL executives, none of whom were the NFL's lawyers. The memo goes

20  on to describe ████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████. *Id.* (emphasis added).

24      The final version of this memo has not been produced, and the NFL appears

25  to still be improperly withholding further communications about this memo.

26  Eventually the NFL produced a version of this memorandum dated June 17, 2004—

27  a week later—but redacted nearly all of its content. *See generally* Ex. 17.

28

## II.     Plaintiffs' Re-Examination of the NFL's Privilege Logs.

After finding these smoking-gun documents, Plaintiffs looked for other documents from these time periods on the NFL's privilege logs. Many of the entries from that period appeared to claim privilege based solely on the involvement of Frank Hawkins. This caused Plaintiffs to conduct a further investigation regarding Mr. Hawkins, which revealed that (1) Hawkins was licensed to practice law in Washington, D.C., but moved to New York in 2000 to work for the NFL; (2) Hawkins remained at the NFL until 2008 with a purely business-related job title (which the NFL Defendants apparently revised for purposes of their privilege log); and (3) Hawkins did not become licensed to practice law in New York, nor did he register as in-house counsel. *See* Gore Decl. ¶¶ 2-4; Shvetsova Decl. ¶ 3.

On January 16, 2024, immediately upon discovering these facts, Plaintiffs brought them to the NFL's attention. Plaintiffs identified, based on a review of the NFL's privilege logs focused on key time periods and in light of the looming trial date, 38 targeted entries and additional documents that should be produced. *See generally* Ex. 18. The parties conferred on January 19, 2024, and agreed, amongst other things, to an expedited briefing schedule on these issues. *See* Dkt. No. 1194. With the trial date being moved to June 2024, the parties agreed to confer further.

During the January 19, 2024, meet and confer, the NFL agreed to produce the majority of the documents requested by Plaintiffs and to serve revised privilege logs. Martin Decl. ¶ 3. The NFL's agreement to produce approximately ***two-thirds*** of the requested documents from its privilege logs demonstrates the haphazard way in which the NFL has asserted privilege. That is especially so when so many of the documents produced were not privileged on their face—***they weren't even close calls***. *See, e.g.*, Ex. 19 (██████████████████████████); Ex. 20 (██████████████████████); Ex. 21 (██████████████████████████).

7

Given that so many documents raised by Plaintiffs on the NFL's privilege logs should never have been there in the first place, Plaintiffs went on to re-examine the entirety of the NFL's revised privilege logs. Altogether, the revised initial and supplemental privilege logs contain 7,522 entries over the span of 468 pages. *See generally* Ex. 22, 23. From that review, Plaintiffs identified several hundred additional entries that did not appear to be privileged or lacked sufficient information to ascertain the claim of privilege. *See* Ex. 3.

The parties conferred again on February 14, 2024, during which the NFL asked for additional time to review the entries Plaintiffs challenged. Shortly thereafter, the NFL responded regarding certain entries identified by Plaintiffs regarding Mr. Hawkins, *see generally* Ex. 24, followed by a production of 47 documents. *See* Ex. 25; Gore Decl. ¶ 5. On March 1, 2024, the NFL made a production of 581 documents along with yet another set of amended privilege logs. *See* Ex. 26; 27; 28; Gore Decl. ¶ 5. And on March 8, 2024, the NFL produced an additional 85 documents off its privilege logs. *See* Ex. 29; Gore Decl. ¶ 5. Altogether, the NFL removed more than *750 documents* from its privilege logs—an astounding error rate that reflects the overly broad way it has asserted privilege in this action. The NFL's additional document productions confirmed again that many of the documents were never arguably privileged to begin with.

For example, as the court well knows, one of the NFL's primary "procompetitive justifications" for its conduct is the promotion of "competitive balance." Yet the NFL withheld as privileged an email discussing ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████" Ex. 30. Not only is no legal advice requested or shown *at all* in that communication, but it also directly undermines the NFL's procompetitive justification argument.

**ARGUMENT AND AUTHORITIES**

I. **Plaintiffs' Motion Is Timely and Appropriately Before this Court.**

    A. **The NFL Defendants Have a Continuing Obligation under Rule 23(e) to Produce Responsive, Non-Privileged Documents.**

While discovery has closed, Rule 26(e) imposes a continuing obligation to supplement discovery responses, including privilege logs required by Rule 26(b)(5), "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . ." Fed. R. Civ. P. 26(e)(1)(A); *see also* Fed. R. Civ. P. 26(b)(5). "This duty obliges the entity responding to discovery to turn over improperly withheld materials without an additional request from the propounding party." *Trilegiant Corp. v. Sitel Corp.*, 2012 WL 1883343, at *4 (S.D.N.Y. May 22, 2012). "The duty to supplement continues even after the discovery period has closed." *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) (holding motion "is not untimely because the duty to supplement continues even following the close of discovery"). The NFL Defendants are therefore under a continuing obligation to ensure the accuracy of their privilege logs and release non-privileged documents.

    B. **There is Good Cause for Limited Discovery Under Rule 16.**

Alternatively, and in addition to Plaintiffs' motion seeking *in camera* review and production of approximately 300 challenged documents, *see* Section II *infra*, Plaintiffs seek to reopen discovery under Rule 16 for the limited purpose of (a) designating the Magistrate Judge assigned to this case to conduct an *in camera* review and (b) allowing Plaintiffs to take a small number of trial depositions, as may be necessary based on all documents released from the NFL Defendants' privilege logs. Under Rule 16, the Court should consider the following factors:

1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by

the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted). "While no one factor is necessarily dispositive, the Ninth Circuit has instructed that the primary focus should be on whether the party seeking to reopen discovery has acted diligently." *De Paz v. Wells Fargo Bank, N.A.*, 2020 WL 2404897, at *2 (C.D. Cal. Feb. 18, 2020). Plaintiffs respectfully submit that these factors weigh in favor of granting Plaintiffs' motion.

*First*, Plaintiffs exercised diligence in bringing the issues in this motion to the Court's attention. Plaintiffs diligently pursued discovery, including pursuing 120 requests for production of documents, numerous third-party subpoenas, several motions to compel (including motions regarding the NFL's privilege logs), and more than 30 depositions. *See* Gore Decl. ¶ 6. Plaintiffs have also been diligent in reviewing the millions of pages of documents produced in this case. However, in conducting further reviews in preparation for trial in January, Plaintiffs came across the documents described above ███████████████████ that were difficult to locate given the lack of metadata. While Plaintiffs previously relied on the NFL's representations—including those regarding Mr. Hawkins' role as an attorney for the NFL—that reliance was shown to be misplaced as Plaintiffs discovered these documents and examined his role more closely. Plaintiffs' subsequent investigation and the NFL's response to Plaintiffs' privilege challenges over the past several weeks has revealed that:

- Mr. Hawkins was not licensed to practice in New York, where he worked at the NFL's Manhattan headquarters between approximately 2000 and 2008;

- The title the NFL Defendants ascribed to Mr. Hawkins in connection with their privilege log, "Senior Vice President of Legal & Business Affairs" was not his actual title; instead, it was simply "Senior Vice President of Business Affairs"; and

- The NFL had a troublingly high error rate on the privilege log entries Plaintiffs challenged, (a) a ***66% reversal rate*** as to the first tranche of approximately 40 documents and (b) a ***57% reversal rate*** as to the next several hundred documents Plaintiffs challenged.

*See* Section II *infra*.

10

*Second*, there is a high likelihood that the requested discovery will lead to relevant evidence. Already, a number of highly-relevant documents have been revealed in the 750 or so that the NFL Defendants have produced since January. And, as described below, it is clear the NFL is continuing to withhold documents on relevant subjects on highly questionable claims of privilege.

*Third*, the NFL Defendants will not be prejudiced. Their privilege log of approximately 7,500 documents is a small fraction of the documents that have already been produced in this case. Production of documents from the log will not delay the trial date or hinder the NFL Defendants' ability to prepare for trial, as these are their *own* documents and they have control of the witnesses with knowledge of such documents. *Multiple Energy Techs., LLC v. Casden*, 2022 WL 16972482, at *4 (C.D. Cal. Nov. 16, 2022) (finding no prejudice where discovery would not force "major alterations in trial tactics and strategy" nor delay the trial). To the extent there is any prejudice, however, it is of the NFL Defendants' own making in erroneously withholding non-privileged documents.

*Finally*, the remaining factors favor granting Plaintiffs' motion. The goal of the trial is to enable the trier of fact to learn the truth so that justice may be done. This discovery relates to central issues in this case. Indeed, the NFL itself has re-directed examinations of multiple witnesses by asking them ███████████ ███████████████████████████████████████. The NFL has plainly been concerned about this issue for some time. The parties, the Court, and the jury should not be deprived of significant evidence based on the NFL's refusal to comply with Rule 26 by improperly concealing non-privileged documents.

## C.   The Court Should Consider this Motion in the First Instance.

During the parties' meet-and-confer, the NFL Defendants questioned why this motion was being filed before this Court rather than the Magistrate Judge. Plaintiffs respectfully submit that the motion is properly before this Court for multiple reasons. *First*, the issues in this motion implicate Rule 16, which

11

necessitates a decision by this Court. And, if the Plaintiffs did so, the NFL might argue, as they have in the past, that the Magistrate Judge lacks the authority to allow this discovery in light of the discovery cut-off. *Second*, the Court indicated its openness to addressing these issues at the January 23, 2024 status conference. *See* Dkt. No. 1216, Hearing Tr. at 8-9. *Third*, given the efficiencies gained by deciding all pertinent issues at one time and the approaching trial date, Plaintiffs request that, to the extent if at all necessary, the Court waive compliance with Local Rule 37 and the Court's delegation of discovery issues to the Magistrate Judge. *See Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005) ("[A] district court has inherent authority to waive its local rules[.]"); *Chavez v. Cal. Dep't of Corrections & Rehabilitation*, 2010 WL 11596462, at *1 n.1 (C.D. Cal. Mar. 19, 2010) (citing *Phoenix*).

## II.    The Court Should Review Limited, Challenged Documents *In Camera* and/or Order Their Production.

There remain approximately 300 documents that Plaintiffs believe the NFL Defendants continue to improperly withhold, despite Plaintiffs' challenges since January 2024. Given the significant issues with the NFL's privilege logs to date, *in camera* review is warranted. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 3868976, at *2 (N.D. Cal. Feb. 24, 2018) (ordering process for *in camera* review of 1,000 documents to occur within days of order). As discussed further in Part III below, Plaintiffs further request that the Court order the NFL Defendants to re-review ***all*** remaining entries on their privilege log.

The Ninth Circuit utilizes a two-step analysis for deciding whether *in camera* review is appropriate. "First, there must be a 'factual basis adequate to support a good faith belief by a reasonable person' that the communications are not privileged." *Applied Med. Res. Corp. v. Ethicon, Inc.*, 2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005) (quoting *In re Grand Jury Investigation (U.S. v. The Corporation)*, 974 F.2d 1068, 1074 (9th Cir. 1992)). Second, the "court has

discretion to conduct an *in camera* review, considering the amount of material, the material's relevance, and the likelihood that review will reveal whether the documents are privileged." *Id.* For the reasons below, both requirements are satisfied for these approximately 300 documents.

**A.    The NFL Improperly Redacted a Later Version of the "███████ ████████████████" Memorandum.**

The Sunday Ticket ██████████████ described above, in which the NFL states it wants to █████████████████████████████████," was created on June 10, 2004. Seth Rabinowitz—a ***non-lawyer*** working for the NFL—is the document's author. *See* Gore Decl. ¶ 22. A later version of this ████████ ███ memorandum, dated only one week later, appeared to be on the NFL's initial privilege log at entry 1996 and claimed privilege solely on the basis of Mr. Hawkins' involvement. *See* Ex. 31 at 96 (entry 1996).

After Plaintiffs challenged the privilege claim on this document, the NFL produced it, but heavily redacted it to remove anything of substance. *See generally* Ex. 17. The NFL then changed the basis of its claim: instead of relying solely on Mr. Hawkins' involvement, the NFL now claims the redactions are necessary because the memorandum "██████████████████████████████████ ████████," its outside counsel. *See* Ex. 24 at 2. Evidence surrounding this memorandum and the document itself, however, call into question these redactions.

While the redacted memorandum does refer to a different memorandum ████, it expressly refers the reader to review that other memorandum for additional information about ***one specific topic***. To the extent any legal advice exists, the available context indicates that it was about only one small portion—rather than the entire substance—of the memorandum. Moreover, it shows that any legal advice was carefully written to be contained in a ***separate document*** that the Plaintiffs are not challenging in this motion. For some reason, though, the NFL saw fit to redact everything of substance from the memorandum. There is a good-faith,

13

reasonable basis to conclude the redacted portions of the memorandum are not privileged. In addition, this memorandum is tied to important issues in this case regarding the pricing of Sunday Ticket and its review will reveal whether it is privileged.

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed" and "the party asserting [it] bears the burden of proving each essential element." *U.S. v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)). It is well established that business strategy is not privileged—even when an attorney is involved. *See, e.g., RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055774, at *4 (D. Colo. May 23, 2018) (rejecting privilege claim, including possibility of redactions, over memorandum that was about business strategy, even where it may have contained some legal advice); *U.S. v. Philip Morris USA, Inc.*, 2004 WL 5355972, at *9 (D.D.C. Feb. 23, 2004) (rejecting privilege claim over document authored by outside counsel because it primarily focuses on business considerations); *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 296 (D.D.C. 2000) (rejecting privilege claim over document summarizing business meeting where attorneys provided legal advice).

The unredacted portions of the memorandum demonstrate that its contents— regarding the ███████████████████████████ ████ —are about business strategy. *See Boyd v. Meriter Health Servs., Inc.*, 2011 WL 13209231, at *4-5 (W.D. Wisc. Aug. 23, 2011) (holding that memorandum weighing pros and cons on payout problem, even where it was based on legal advice provided by attorney, was not privileged). Indeed, the NFL makes that very point in another document from the same year: on a ███████████████ ████████████████████████████████████

14



. *See* Ex. 32 at -783 (highlighted).

.[4] *See* Ex. 33 ( ); Ex. 34 ( ).

As a result, *in camera* review is warranted.

**B.** **Documents Claiming Privilege on the Basis of Frank Hawkins—an NFL Business Executive Never Licensed to Practice Law in New York—Should Be Produced.**

The NFL's initial privilege logs contained hundreds of entries asserting privilege solely on the basis that Frank Hawkins was involved. It is true that Mr. Hawkins earned a law degree and was a practicing attorney in the District of Columbia *before* his employment with the NFL. But Plaintiffs' investigation has confirmed that Mr. Hawkins principally served in a business role—not a legal one—while employed by the NFL in New York from 2000 to 2008. In fact, it appears that ***Mr. Hawkins was never licensed or registered to practice law in the state of New York during the time he worked at the NFL's New York headquarters***. The NFL Defendants and Mr. Hawkins are sophisticated parties and it is difficult to believe that they would have knowingly acted together to engage Mr. Hawkins in the unauthorized practice of law.

The mere fact that an attorney is "one of several recipients" is not sufficient to distinguish the documents withheld from "ordinary business communication[s], to which the privilege does not apply." *Applied Med. Res. Corp. v. Ethicon, Inc.*,

---

[4] The NFL's February 19, 2024 letter to Plaintiffs regarding this privilege issue claims that the privilege is based entirely on the fact that it , rather than the involvement of Frank Hawkins. To the extent the NFL changes its tune, however, Plaintiffs' arguments below demonstrate that Hawkins was working principally in a business role, at least by 2004.

2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005); *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002) ("The mere fact that outside counsel was copied with the e-mail will not shield communications not made for the purpose of securing legal advice."). That is especially so where the attorney works in-house. The NFL has a higher burden of establishing privilege in such cases given that in-house counsel may have a dual-purpose role, providing business and legal advice. *See Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 524065, at *4 n.3 (N.D. Cal. Feb. 22, 2022) ("As in-house counsel, Bibbes's communications may include 'dual-purpose communications,' involving 'both legal and non-legal analyses.'") (citing *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021)); *U.S. v. Chevron Corp.*, 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) (noting a company must "make a *clear showing* that in-house counsel's advice was given in a professional legal capacity") (emphasis in original). The Ninth Circuit has adopted a "primary purpose" test to determine whether dual purpose communications should be privileged. *See In re Grand Jury*, 23 F.4th at 1092-94. In other words, if the "primary purpose" of a communication is for business purposes, that document should not be withheld. Such a rule avoids "perverse incentives for companies to add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation." *Id.* at 1093-94.

Mr. Hawkins' role as a business executive at the NFL is shown by his job title: Senior Vice President of ***Business Affairs***. *See* Ex. 35 at -341 (highlighted) (⬛⬛⬛⬛⬛⬛⬛⬛⬛). It appears that Mr. Hawkins, who was hired by the NFL in 1993, was using this title as early as 2000. *See Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 464 (S.D.N.Y. 2001) ("The NFL called one witness, Frank Hawkins, NFL Senior Vice President for business affairs, responsible for the NFL's domestic and international television arrangements."). Even the NFL's own initial disclosures in this case identify his role as "Senior Vice President of Business Affairs" and never mentions any work in a legal capacity. *See*

16

Ex. 2 at 5. And after leaving the NFL to start his own consulting firm in 2008, Mr. Hawkins—in his own words—described his job at the NFL as inherently business in nature. *See generally* Ex. 36 (negotiating contracts, media strategy, etc.).

But when the NFL produced its privilege logs in this case, it gave Mr. Hawkins a new title that neither he nor the NFL have ever seemingly used in referring to Mr. Hawkins: "Senior Vice President, ***Legal and*** Business Affairs." This novel title for Mr. Hawkins appeared when the NFL provided a list of counsel to Plaintiffs in conjunction with their privilege logs. *See* Ex. 1. But, as discussed above, neither Mr. Hawkins' own recitation of his title, nor the NFL's initial disclosures in this case, nor the NFL's use of Mr. Hawkins in other litigation never include that extra "Legal" in his title. Indeed, not a single document in the NFL's productions in this case utilize the phrase "Legal and Business Affairs" in connection with Mr. Hawkins (but do for others such as NFL lawyer Gary Gertzog). The fact that Mr. Hawkins was never registered or licensed to practice law in New York—despite working at the NFL's headquarters in New York for much of his tenure—confirms that his role was at least principally, if not *entirely*, business in nature from at least 2000 and onward.

During the parties' meet-and-confer, the NFL downplayed this fact by pointing out that ABA Model Rule of Professional Conduct 5.5 permits in-house counsel to engage in multijurisdictional practice of law. *See* Ex. 24 at 1 (correspondence to Plaintiffs). That argument, however, ignores two critical facts. *First*, the ABA did not amend Rule 5.5 to include this provision until 2002, well after Mr. Hawkins began working for the NFL in New York.[5] *Second*, New York did not adopt that policy until 2011—years ***after*** Mr. Hawkins no longer worked for

---

[5] *See* Michael J. Sweeney, Ethics Corner: Unauthorized Practice of Law and the Transplanted In-House Counsel, American Bar Association (Mar. 22, 2014), https://www.americanbar.org/groups/business_law/resources/business-law-today/2014-march/ethics-corner-unauthorized-practice-of-law/.

the NFL.[6] Assuming that Mr. Hawkins was not engaged in the unauthorized practice of law in New York, the only reasonable conclusion is that Mr. Hawkins served in a business capacity during that time.

The NFL has also claimed that Mr. Hawkins was a member of the District of Columbia bar and "started" working for the NFL in a D.C. office maintained by the NFL. *See* Ex. 24 at 1. That is of no moment here because it is not the operative time frame. And the NFL cannot dispute that Mr. Hawkins subsequently began working out of New York in or around 2000. Property records Plaintiffs located indicate that Mr. Hawkins moved from the D.C. area to the New York area no later than 2000 and, as discussed above, Mr. Hawkins was using the "Business Affairs" title around the same time. *See* Shvestsova Decl. ¶ 3; *see also Primetime 24 Joint Venture*, 131 F. Supp. 2d at 464. Any privilege log entry claiming privilege based on Mr. Hawkins' involvement from 2000 onwards is, therefore, inherently suspect. Those from before then, though, still implicate Mr. Hawkins' principal role in business strategy rather than legal advice.

The NFL's actions since these issues were raised by Plaintiffs also call into question all entries asserting privilege on the basis of Mr. Hawkins' involvement:

- The NFL initially withheld a document on the basis that it reflected legal advice from Mr. Hawkins. *See* Ex. 31 at 86 (reference number 1786/row 1787). After Plaintiffs challenged this entry, the NFL produced it. *See generally* Ex. 37. A review of the document fails to show any "advice" from Mr. Hawkins—legal, business, or otherwise—and certainly nothing that could arguably be considered legal advice. The same is true for the email, described above, that undermines the NFL's arguments on competitive

---

[6] *See* Joint Report of the New York State Bar Association, Association of the Bar of the City of New York, and New York County Lawyers' Association, Proposed Rules for Licensing of In-House Counsel (Nov. 2010), https://nysba.org/app/uploads/2020/02/InhouseCounselReportFinal.pdf (stating that, as of the report's publication in November 2010, "[o]nly New York and five other states have not adopted either Model Rule 5.5(d)(1) or a registration rule for in-house counsel"); New York State Unified Court System, In-House Counsel Registration, https://ww2.nycourts.gov/attorneys/in-house-counsel/index.shtml (stating that the New York State Court of Appeals adopted Rule 522 permitting registration of in-house counsel that became effective on April 20, 2011).

balance and revenue sharing in this case: no legal advice is sought or provided. *See* Ex. 30.

- Similarly, the NFL withheld a document on the basis that it was a memorandum "from" Frank Hawkins. *See* Ex. 38 at 14 (reference number 461). After Plaintiffs challenged this entry, the NFL produced it. *See generally* Ex. 39. The document shows that there was never a memorandum "from" Hawkins at all; Hawkins never appears in the "from" line of the memorandum or the memoranda attached to it. At most it shows that Hawkins was provided with a courtesy copy.

- Other entries that are still being withheld appear to be business—rather than legal—in nature. ███████████████████████████████████ *See, e.g.*, Ex. 31 at 44 (reference number 915/row 914) (with attachments ████████████████████); 160 (reference number 3303/row 3304) █████████████████████████████████████).

- In some cases, the NFL has noted that some documents associated with Hawkins were "marked" privileged and confidential. But simply marking a document as privileged does not make it so; nor does it satisfy the NFL's burden of proving the document is privileged. *See Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 301 (D. Utah 2002) ("[L]abeling a document as privileged does not meet the privilege claimants' burden of establishing the privilege claim."). That is especially so here given Mr. Hawkins' intimate involvement in rendering business—not legal—advice.

In light of the facts above, there is every reason to doubt whether *any* document associated with Mr. Hawkins is privileged. Plaintiffs initially challenged 311 entries on this basis. While some of them have been resolved between the parties, numerous entries remain—including several in the early 2000s as the ████████████████████████████████████████. Due to the numerous problems with the NFL's privilege logs to date, however, the NFL should not be entrusted to be the sole arbiter of distinguishing business strategy from legitimate legal advice. As a result, Plaintiffs request *in camera* review of a narrowed (less than 100) list of entries justified by Hawkins' involvement, both from the NFL Defendants' Initial Log[7] and Supplemental Log.[8]

---

[7] Initial Log: 22, 186, 321, 454, 569, 604, 699, 767, 892, 904, 915, 1065, 1231, 1456, 1857, 1991, 1996, 2075, 2146, 2268, 2358, 2625, 2741, 2814, 2899, 2911, 3303, 3635, 3699, 3839, 3968, 3994, 4239, 4314, 4320, 4825, 5242, 5501, 5538.

[8] Supplemental Log: 115, 139, 224, 234, 254, 273, 318, 320, 327, 345, 349, 391, 392, 445, 463, 475, 504, 554, 652, 660, 722, 728, 778, 787, 802, 831, 843, 857, 969, 973, 1041, 1045, 1062, 1120, 1157, 1238, 1337, 1366, 1456, 1486, 1492, 1511, 1586, 1615, 1618, 1676, 1705, 1731, 1767, 1768, 1775, 1840.

1   Plaintiffs further challenge the NFL's redactions on an email ████████

2   ████████████████████████████████████████████████████████

3   ████. *See* Ex. 40 (NFL_1048883). The email forwards information provided by ████

4   ████████████ that is entirely business in nature.

C.     **The NFL Has Withheld Other Documents Based on Questionable Claims of Privilege.**

Numerous other entries from the NFL's privilege logs, in addition to the documents discussed above, appear dubious. Many do not appear to include attorneys at all and are about business issues. And even those where a lawyer may be present show that the attorney was one of several recipients and never responded in the email chain—suggesting that they involved no request for legal advice, let alone the actual provision of such advice:

*Supplemental Log (Ex. 28) Entry 1370.* This is a memorandum from the important period in 2002 when ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████. In its supplemental privilege log, the NFL described the document as: "████████████████████

████████████████████████████████████████████████████████

████████████████████████." Ex. 38 at 39 (entry 1370).

After Plaintiffs challenged this entry because ████████ never worked for the NFL in any legal capacity, the NFL changed the description to: "████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████." Ex. 28 at 99 (entry 1370). Not only does the entry fail to identify any lawyer's involvement, but it was drastically changed from a memorandum "████████" legal advice to now "████████████████████████" legal advice. The changes made by the

NFL raise serious questions, especially in light of this being a memorandum prepared by a non-attorney to a group of non-attorneys about an obvious business strategy issue ("█████████"). To the extent any attorney was actually involved—which appears doubtful—the NFL also has not shown that the communication's "primary purpose" was legal in nature.

    *Initial Log (Ex. 27) Entries 1846, 1864, 3968, 4239, and 4704*. These emails are to and from various NFL business executives and no lawyers appear in the to/from/cc fields. In addition, subject lines largely appear to reflect business issues or, at a minimum, nothing overtly legal in nature. The NFL's privilege log claims that these communications reflect legal advice from various lawyers, but those lawyers do not appear on the communications. *See Willis v. Vasquez*, 2012 WL 12882386, at *2 (C.D. Cal. June 19, 2012) (overruling privilege objections where "[n]o attorney made or received any of the communications [in the documents]"); *see also NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 141 (S.D.N.Y. 2007) ("[T]he extension of the privilege to non-lawyer's communication is to be narrowly construed."). Moreover, Plaintiffs searched for communications elsewhere on the NFL's privilege log using the same subject lines or attachment filenames and no other entry on the logs reflects the involvement of those attorneys.[9]

    *Initial Log (Ex. 27) Entries 590, 3501, 4653, 4927, 5298, 5443, and 5563*. Most of these entries involve the NFL's recent negotiations with ████████ ████ regarding NFL Sunday Ticket, while entry 5563 reflects discussions with third-party ███ regarding Sunday Ticket. While some in-house counsel are listed, in many cases in the "courtesy copy" field only, the subjects reflect business negotiations. *See, e.g., Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. Mar. 9, 2012) ("[P]rivilege does not apply to an e-mail 'blast' to a group of employees that include an attorney, but where no request for legal advice is made and the input

---

[9] Plaintiffs note that entries 3968 and 4239 are also being challenged on the basis that they were initially claimed privileged solely on the basis of Mr. Hawkins' involvement. *See* Section II.B *supra*.

from the attorney is business-related and not primarily legal in nature."). And while the NFL's privilege logs claim that the communications request or reflect legal advice, not a single entry elsewhere on the NFL's privilege logs in that email chain reflect a responsive email from any of the lawyers listed. It appears the NFL is improperly claiming that the mere presence of some attorneys—in an otherwise large group of recipients—is sufficient to claim privilege. But caselaw makes clear that is not the case. *See City of Roseville Emp. Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022) ("Merely copying in-house counsel on an email exchange does not make a communication privileged.").

*Initial Log (Ex. 27) 792*. This entry appears to refer to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Specifically, it appears to refer to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Again, while some counsel are listed on the email, there is no entry elsewhere showing a response from an attorney or otherwise reflecting that this business communication—reviewing proposed marketing advertisements—involves actual legal advice. Further, the NFL hasn't shown the primary purpose was legal.

*Supplemental Log (Ex. 28) 81*. This entry is a communication between NFL executives, with no lawyers on the communication, discussing ▮▮▮▮▮▮▮▮▮▮▮▮. The NFL's privilege log claims that the communication refers to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." But the simple act of "incorporating" changes from a legal department, without more, does not create a privileged communication. *See Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) (concluding there was no privilege on "business document that already incorporates, but does not provide, legal advice"); *Sanner v. Bd. of Trade of City of Chicago*, 181 F.R.D. 374, 376 (N.D. Ill. 1998) (concluding that notes incorporating legal advice were not privileged). Contracts and term sheets routinely involve lawyers; if "incorporating" legal advice into such

a document were enough to render a document privileged, nearly every contract in existence would be privileged.

*Improper Redactions*. The NFL produced multiple documents with redactions that also appear improper. In each, NFL or DirecTV executives discuss business issues. And while emails were sent that included counsel, none appear to show any form of response by an attorney reflecting that legal advice was ever the "primary purpose" of the communication. Those documents are shown in Exhibits 41, 42, 43, 44, 45, and 46.

**D.   The NFL's Supplemental Log Contains Several Deficient Entries That Warrant Waiver of Any Asserted Privilege.**

Federal Rule of Civil Procedure 26(b)(5) requires that a privilege log contain sufficient information to enable other parties to assess the privilege claim. Plaintiffs identified to the NFL several entries on the supplemental privilege log missing the most basic information needed to assess the claim on February 2, 2024. *See* Ex. 3 at 7-8, Attachment B. Nevertheless, the NFL has failed to correct the deficiencies.

For example, entry 1642 states *in its entirety*: "███████████████████████████." *See* Ex. 28 at 121 (entry 1642). But who wrote it? When was it written? What lawyer provided the "legal advice"? Who was it sent to? What was its purpose? *See Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013) ("Privilege logs should contain the following information: (1) [t]he general nature of the document, (2) the identity and position of its author; (3) the date it was written, (4) identity and position of recipients, (5) location of the document, and (6) reason document was withheld."); *ActiveRain Corp. v. Move, Inc.*, 2008 WL 11337643, at *2 (C.D. Cal. Dec. 16, 2008). Nor does the NFL explain what "████████████████" means. If that is referring to factual information, that itself is not privileged. *See Kandypens Inc. v. Puff Corp.*, 2020 WL 7978226, at *3 (C.D. Cal. Dec. 7, 2020).

Additional examples include entries 208 and 783 on the supplemental log. Entry 208 states only: "███████████████████████████████████████████████" Ex. 28 at 16 (entry 208). And entry 783 states only the following: "███████████████████████████████████████████████████ ███████████████████." *See* Ex. 28 at 59 (entry 783). Again, the NFL fails to identify the author, who it was sent to, what lawyer was involved, or any other information needed to assess the claim.

These entries are not unique; there are several more suffering from the same deficiencies.[10] Plaintiffs identified these entries to the Defendants weeks ago and the NFL has had more than sufficient time to correct them. But it hasn't. The NFL's failure to do so, therefore, requires a finding that the privilege has been waived and their production should be compelled. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-48 (9th Cir. 2005); *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5214330, at *3 (N.D. Cal. 2008) ("Failure to provide sufficient identification waives the privilege.").

**III.   There is Good Cause for a Special Master to Oversee the NFL's Re-Review of Its Privilege Log and Compel Limited, Additional Discovery.**

Given the NFL's alarmingly high reversal rate as to Plaintiffs' targeted challenges to their privilege logs—and their remaining insistence on asserting privilege over the questionable entries described above—Plaintiffs also submit that there is good cause for the Court to order the NFL to re-review its *entire* privilege logs, which have a total of approximately 7,500 entries.

---

[10]   On this basis, Plaintiffs challenge the following entries in the NFL's supplemental privilege log (Ex. 28): 8, 15, 28, 53, 56, 76, 83, 93, 106, 112, 130, 139, 140, 141, 147, 148, 149, 150, 151, 152, 153, 154, 166, 172, 183, 208, 209, 217, 338, 343, 346, 349, 366, 373, 415, 416, 460, 535, 552, 553, 557, 587, 618, 619, 745, 773, 783, 785, 791, 819, 829, 845, 878, 879, 893, 904, 912, 917, 926, 927, 937, 977, 993, 995, 1081, 1093, 1100, 1117, 1121, 1131, 1132, 1154, 1160, 1162, 1167, 1168, 1235, 1243, 1250, 1258, 1273, 1288, 1295, 1321, 1338, 1341, 1343, 1344, 1356, 1359, 1360, 1391, 1401, 1402, 1428, 1443, 1445, 1579, 1595, 1599, 1601, 1612, 1613, 1640, 1642, 1647, 1648, 1774, 1825, and 1866.

But they should not be permitted to do so without oversight. Plaintiffs respectfully submit that the Court should appoint a special master with the authority to: (1) set deadlines by which the NFL should complete its re-review and release all improperly-withheld non-privileged documents; (2) select any remaining entries to review *in camera* as a quality check to ensure that the NFL does not continue to have such an alarmingly high error rate; (3) review any documents as to which the parties have a remaining dispute *in camera*; and (4) recommend limited, additional discovery to the extent necessary (such as trial depositions if necessitated by belatedly produced documents). *See* Fed. R. Civ. P. 53(a)(1)(C) (permitting appointment of a master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district"); *Entrata, Inc. v. Yardi Sys., Inc.*, 2018 WL 4146605, at *3 (D. Utah Aug. 30, 2018) (appointing special master to conduct *in camera* review).

To the extent the Court concludes that the challenged entries should be produced, Plaintiffs may require a small number of depositions of individuals associated with those entries before trial. As a result, Plaintiffs request the Court permit up to three additional depositions lasting no more than five hours each. Without seeing the documents at this time, Plaintiffs believe depositions may be warranted for Frank Hawkins and potentially others depending on the documents produced (and documents previously produced that provide context to those produced under this motion). That said, Plaintiffs have no wish to take unnecessary depositions at this late date before trial.[11] But it is impossible to know whether or not one or more may be necessary until the contents of the documents are revealed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion so that this case may be tried fully and fairly on the merits.

---

[11]   Indeed, Plaintiffs opted to withdraw their prior motion to take additional depositions regarding the latest round of negotiations for Sunday Ticket rights.

1

2

Dated:  March 22, 2024

3

Respectfully submitted,

By:   */s/ Marc M. Seltzer*
        Marc M. Seltzer

4

5

6

7

8

9

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

10

11

12

13

14

15

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
395 Ninth Avenue, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
Fax: (212) 336-8340

16

17

18

19

20

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

21

22

23

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

24

25

26

27

28

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida  (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

26

1

2

3

4

5

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

6

7

8

9

10

11

12

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

13

*Plaintiffs' Co-Lead Counsel*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28