Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>———————————————<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: April 19, 2024<br>Time: 1:30 p.m.<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

1

## <u>TABLE OF CONTENTS</u>

2    INTRODUCTION ........................................................................................................1

3    BACKGROUND ..........................................................................................................2

4    I.      Discovery Ended Years Ago. ...........................................................................2

5    II.     The Parties Resolved Disputes About the NFL's Privilege Logs in 2022.......3

6    III.    Plaintiffs Obtained Additional Discovery After Fact Discovery Ended,

7            and Resolved All Related Privilege Issues........................................................4

8    IV.     Plaintiffs Waited Nearly Two Years to Raise the Current Privilege Log

9            Challenge and Refused to Properly Meet and Confer Prior to

10           Burdening the Court. ........................................................................................5

11   ARGUMENT ...............................................................................................................7

12   I.      Plaintiffs Lack Good Cause to Re-Open Discovery. .......................................7

13           A.      Plaintiffs Are Not Diligent in Challenging Discovery from 2022.........7

14           B.      The NFL Would Be Prejudiced by Re-Opening Discovery. ...............12

15   II.     Plaintiffs' Various Privilege Challenges Are Unfounded...............................12

16           A.      Legal Advice Provided By Attorney Frank Hawkins Is

17                   Privileged. ..........................................................................................12

18           B.      The NFL Properly Redacted the "████████████████"

19                   Challenged by Plaintiffs......................................................................16

20           C.      The NFL Properly Asserted Privilege Over the Remaining

21                   Challenged Documents. ......................................................................17

22   III.    Plaintiffs' Additional Requested Relief Is Unwarranted. ..............................22

23   CONCLUSION...........................................................................................................24

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Authentec, Inc. v. Atrua Techs., Inc.*,

    2008 WL 5120767 (N.D. Cal. Dec. 4, 2008)................................................25

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,

    326 F.R.D. 176 (N.D. Ill. 2018).....................................................................22

*Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*,

    2014 WL 3014720 (S.D. Cal. July 3, 2014).....................................................7

*Coleman v. Sterling*,

    2011 WL 1099793 (S.D. Cal. March 24, 2011) ...........................................22

*Gucci Am., Inc. v. Guess?, Inc.*,

    2011 WL 9375 (S.D.N.Y. Jan. 3, 2011).........................................................17

*In re CV Therapeutics, Inc. Sec. Litig.*,

    2006 WL 1699536 (N.D. Cal. June 16, 2006) ..............................................21

*In re Grand Jury*,

    23 F.4th 1088 (9th Cir. 2021).........................................................................15

*In re Telescopes Antitrust Litig.*,

    2024 WL 1016070 (N.D. Cal. Feb. 13, 2024)...............................................19

*James v. UMG Recordings, Inc.*,

    2014 WL 555179 (N.D. Cal. Feb. 10, 2014)..................................................16

*Johnson v. Mammoth Recreations, Inc.*,

    975 F.2d 604 (9th Cir. 1992)............................................................................8

*Le Bleu Corp. v. Federal Mfg. LLC*,

    2018 WL 1610699 (E.D. Wis. Apr. 2, 2018)................................................17

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,

    1998 WL 1742589 (E.D.N.C. Sept. 28, 1998)..............................................24

*Oracle Am., Inc. v. Google Inc.*,

    2011 WL 12675492 (N.D. Cal. July 21, 2011)..............................................25

*Pedersen v. Kinder Morgan, Inc.*,

    2023 WL 6441948 (S.D. Tex. Sept. 29, 2023) ................................................19

*Procaps S.A. v. Patheon Inc.*,

    2014 WL 1230737 (S.D. Fla. Mar. 25, 2014) ...................................................9

*Sanner v. Bd. of Trade of Cty. of Chicago*,

    181 F.R.D. 374 (N.D. Ill. 1998) ....................................................................22

*Scott & Stringfellow, LLC v. AIG Com. Equip. Fin., Inc.*,

    2011 WL 1827900 (E.D. Va. May 12, 2011)..................................................17

*Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*,

    190 F. Supp. 3d 419 (M.D. Pa. 2016) ............................................................17

*Stone Brewing Co., LLC v. MillerCoors LLC*,

    2021 WL 4442177 (S.D. Cal. Sep. 28, 2021) .................................................25

*United States v. Louisiana*,

    2015 WL 2453719 (M.D. La. May 22, 2015)..................................................24

*United States v. Nat'l Ass'n of Realtors*,

    242 F.R.D. 491 (N.D. Ill. 2007) ....................................................................23

*Upjohn Co. v. United States*,

    449 U.S. 383 (1981) ......................................................................................23

*Urb. Box Off. Network, Inc. v. Interfase Managers, L.P.*,

    2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006)..................................................20

*Valassis Comms, Inc. v. News Corp.*,

    2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018).................................................22

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*,

    2017 WL 365630 (N.D. Ind. Jan. 25, 2017) .............................................25, 26

*Wright v. Gringo*,

    2021 WL 689924 (S.D. Cal. Feb. 22, 2021) ..................................................13

*Zivkovic v. S. Cal. Edison Co.*,

    302 F.3d 1080 (9th Cir. 2002).........................................................................7

iii

## Rules

Fed. R. Civ. P. 16(b)(4) ........................................................................7

Fed. R. Civ. P. 26(b) ...........................................................................25

Fed. R. Civ. P. 30(a)(2)........................................................................25

## Other Authorities

ABA Comm. on Multijurisdictional Practice Rep. 201B (Aug. 2002) ....................16

ABA Model Rule Prof'l Conduct 5.5(d) (2002) .......................................16

Restatement (Third) of the Law Governing Lawyers (2000)....................16

**NFL Defendants' Memorandum In Opposition To Plaintiffs' Motion To Compel**

## **INTRODUCTION**

Plaintiffs' motion to compel raises an untimely, manufactured, and unnecessary dispute. This Court should reject the extraordinary relief that Plaintiffs now seek and, at most, order the parties to continue to meet and confer on any remaining issues, as they have successfully done on multiple occasions in the past.

As the Court is well aware, the parties have been engaged in discovery for years and the privileged documents at issue were included in privilege logs produced to Plaintiffs nearly two years ago. Despite having years to assess the logs, Plaintiffs raised a challenge to certain entries on these logs on the eve of trial. From the beginning of Plaintiffs' conversations with the NFL regarding these entries, Plaintiffs made their intention clear: rather than seek to resolve the dispute, they looked to bring a motion to compel regarding the NFL's privilege logs. And Plaintiffs have maintained their steadfast commitment to manufacture a dispute for the Court, despite the NFL's good faith efforts to address Plaintiffs' questions and repeated invitations to continue to meet and confer in order to resolve any lingering issues.

Plaintiffs cite, as a purported hook for such relief, two "smoking gun" documents that are anything but, and the NFL's assertion of privilege over documents reflecting legal advice by in-house counsel, Frank Hawkins. Neither justifies any relief, and neither excuses Plaintiffs' lack of diligence in reviewing the NFL's privilege logs years ago or their current refusal to further meet and confer. *First*, the two documents that Plaintiffs characterize as "smoking guns" were produced more than *two years ago*, and Plaintiffs undisputedly could have inquired about them during the numerous depositions of NFL witness well before fact discovery ended. Plaintiffs' failure to do so then does not create an emergency now. Moreover, both documents relate to an old, and fundamentally different, contractual arrangement for the distribution of Sunday Ticket that ended more than two decades ago, long before the class period began, and have no bearing on the agreements Plaintiffs challenge in this case. Far from "smoking," the evidence Plaintiffs now seek to base their case on

relates to contracts that have long been decommissioned from service.  *Second*, Mr. Hawkins served as in-house counsel at the NFL and provided legal advice to the NFL throughout his tenure.  Plaintiffs' arguments about Mr. Hawkins' title or New York residence do not change the clear fact that Mr. Hawkins' employment activities at the NFL regularly involved providing legal counsel, and thus that the documents reflecting Mr. Hawkins' legal advice were properly withheld as privileged.

And Plaintiffs' other requested relief—including unspecified depositions and the appointment of a special master—fares no better.  While the NFL made a good faith effort to resolve the dispute Plaintiffs belatedly raised and produced a number of the requested documents, those documents did not give Plaintiffs any new information.  They were largely versions of other previously produced material that did not have an attorney on copy.  Plaintiffs know this to be true and they tellingly do not request depositions based on the already produced material.  Instead, Plaintiffs' only basis for additional depositions are documents they have yet to see, that the NFL has now several times reviewed and confirmed remains privileged.  Any further depositions at this late stage are unwarranted and would be unduly burdensome.  Plaintiffs' request for a special master to oversee the NFL's re-review of the entirety of its privilege logs is likewise unwarranted. Plaintiffs have not made a particularized showing justifying such a broad re-review of the logs and have not demonstrated why a special master is necessary to oversee the process.

The Court should reject all of Plaintiffs' requested relief.

## **BACKGROUND**

### I.    **Discovery Ended Years Ago.**

The deadline for completing fact discovery was nearly two years ago, on August 5, 2022.  Dkt. 434, at 5.  Throughout this litigation, the NFL produced over 139,000 documents.  Barber Decl. ¶ 5.  Both of the alleged "smoking guns" highlighted in Plaintiffs' motion were included in early productions:  Gore Ex. 16 was produced on December 30, 2021, and Gore Ex. 9 was produced on January 31,

2

2022.  *See* Barber Decl. ¶ 6.  Between May and August 2022, Plaintiffs conducted 15 depositions of current and former NFL employees, including Mr. Hawkins.  *Id.* ¶ 10.  Plaintiffs did not ask any witness—including Mr. Hawkins or the NFL's 30(b)(6) representative—about Gore Ex. 9 or Gore Ex. 16, though they had been produced almost six months prior to those depositions.

**II.      The Parties Resolved Disputes About the NFL's Privilege Logs in 2022.**

The NFL served its first privilege log, containing 5,640 entries, on March 2, 2022.  *Id.* ¶ 7.  Plaintiffs challenged several entries on the NFL's first privilege log on April 5, 2022.  *Id*; Barber Ex. 1.  In the following week, the parties were able to address all of Plaintiffs' concerns through meet-and-confer efforts.  *See id.* ¶ 7.  Plaintiffs raised no further issue with the March 2022 privilege log until the present dispute—almost two years later.

On June 21, 2022, the NFL served a supplemental privilege log encompassing documents from subsequent productions that contained 1,882 entries.  *Id.* ¶ 8.  On July 8, 2022, Plaintiffs raised a challenge to five categories of documents included on the June 2022 privilege log.  *Id.*; Barber Ex. 2.  Given the impending fact discovery deadline, Plaintiffs moved before this Court on July 15, 2022, for permission to complete "*limited* discovery after the August 5 deadline" on three matters, including as to the NFL's privilege logs, due to "circumstances beyond Plaintiffs' control [that] have prevented [them] from meeting the August 5 deadline."  Dkt. 555-1, at 1 (emphasis added).  Plaintiffs represented to this Court that their request for "the modest extension to the discovery schedule" was justified by their diligence in having identified disputes and served Local Rule 37-1 letters shortly after receiving the NFL's privilege logs, including the July 8, 2022 letter.  Dkt. 555-1, at 8.  On August 11, 2022, this Court granted Plaintiffs' motion to take limited discovery after the fact discovery cutoff, including regarding the then-ongoing dispute over the NFL's privilege log.  Dkt. 607, at 4.  The parties then met and conferred and were able to resolve any concerns with the NFL's supplemental privilege log by August 23, 2022.

3

*See* Barber Ex. 3.  Plaintiffs raised no further issues with the June 2022 privilege log until the present motion.

### III.     Plaintiffs Obtained Additional Discovery After Fact Discovery Ended, and Resolved All Related Privilege Issues.

In the summer of 2022, Plaintiffs sought additional discovery before Magistrate Judge McDermott regarding negotiations for the then-future rights to Sunday Ticket.  Ultimately, the parties agreed to limited discovery on the topic, including the production of additional documents and one additional deposition of the NFL.  Plaintiffs later returned to Judge McDermott to seek further document discovery concerning the recent Sunday Ticket agreement from additional custodians.  *See* Dkt. 918-1, at 17.  Judge McDermott denied "reopening expansive general discovery," characterizing "what the Plaintiffs want[ed] [a]s a 'do-over.'" Dkt. 924, at 6.  He instead directed the parties to meet and confer regarding expanded search terms applicable to the document production, *see id.* at 5, 7.  The NFL made their follow-up production on June 16, 2023, and served its accompanying privilege log containing 289 entries on July 12, 2023.  Barber Decl. ¶ 11; Barber Ex. 4.

Plaintiffs initially raised a challenge to nearly 100 entries on this privilege log and the parties subsequently met-and-conferred over several weeks, engaging in a substantive document-by-document discussion.  *Id.* ¶ 12.  After these meet-and-confer efforts, the parties were able to limit their dispute to 31 remaining entries on the privilege log.  *Id.* Plaintiffs filed a discovery motion concerning these entries with Magistrate Judge Kim, who ordered *in camera* review, and, on October 30, 2023, compelled production of documents relating to 7 entries; denied production of documents relating to 2 entries as moot; and denied Plaintiffs' motion as to the remaining 22 entries because "the primary purpose of the redacted or withheld communications reflected in these documents is the seeking or providing of legal advice," thus affirming the NFL's privilege calls for a majority of the documents. Dkt. 1041, at 2.

4

**IV.      Plaintiffs Waited Nearly Two Years to Raise the Current Privilege Log Challenge and Refused to Properly Meet and Confer Prior to Burdening the Court.**

On January 16, 2024—just over a month before trial was, at the time, scheduled to begin—Plaintiffs raised new concerns with 38 entries from the NFL's March 2022 and June 2022 privilege logs. *See* Gore Ex. 18; Barber Decl. ¶ 13. This was the first communication the NFL had received about those logs since the parties had resolved their prior privilege disputes in August 2022. In that correspondence, Plaintiffs also asked questions about Gore Ex. 16 and Gore Ex. 9 for the first time since those documents were produced in December 2021 and January 2022 respectively. *Id.* The NFL promptly responded the next morning to inform Plaintiffs that their requests were untimely, but in good faith, the NFL would review the issues raised, and would be ready to meet and confer later that week.[1] *Id.*

The parties met and conferred on January 19, 2024, and subsequently agreed on a stipulated expedited briefing schedule on these issues in the event they could not reach agreement on those documents. *See* Dkt. 1194. On January 23, 2024, this Court continued trial to start in June 2024. *See* Dkt. 1202. On January 26 and January 29, 2024, the NFL produced a number of at-issue documents and served amendments to their March 2022 and June 2022 privilege logs, updating the descriptions for others. Barber Decl. ¶ 15. Plaintiffs never filed a motion regarding these documents under the stipulated briefing schedule.

_____

[1] Despite Plaintiffs' misstatements to the contrary, the NFL informed Plaintiffs of their position that Plaintiffs' request was untimely in their initial response. *See* Barber Ex. 5 (noting that "that the NFL Defendants first served a privilege log in March 2022, followed by a supplemental log in June 2022. Plaintiffs have therefore been in receipt of the privilege entries identified below for nearly two years and could have (indeed, should have) raised any issues long before yesterday"); *see also* Gore Ex. 24 (February 19, 2024 letter again noting Plaintiffs' untimeliness).

On February 2, 2024, Plaintiffs returned with yet another challenge to the NFL's March 2022 and June 2022 privilege logs, this time challenging 486 entries from the March 2022 and June 2022 logs and alleging that about 200 entries from those logs were deficient, in part on the novel basis that Mr. Hawkins had never been barred or registered as in-house counsel in New York.  *See* Gore Ex. 3; Barber Decl. ¶ 16.  At a meet-and confer on February 14, 2024, the NFL addressed Plaintiffs' concerns about Mr. Hawkins, including confirming that he was barred in the District of Columbia during his employment at the League.  *Id.*  Once more, in good faith, the NFL undertook a time-consuming and diligent review of each document identified by Plaintiffs and, to attempt to resolve the issue without taking up the Court's time, ultimately produced a number of the disputed documents in February and early March 2024, but continued to assert privilege over approximately 200 of the documents Plaintiffs challenged for the first time in 2024.  *Id.* ¶¶ 17–18; *see also* Barber Ex. 6.

On March 18, 2024, almost a month after trial was originally scheduled to begin and four days before filing their motion, Plaintiffs indicated for the first time that they sought appointment of a special master to conduct *in camera* review of privileged documents, and anticipated seeking permission to conduct several additional depositions.  Barber Decl. ¶ 19.  But, despite the NFL's repeated requests for information, Plaintiffs would not provide the NFL with any details as to their contemplated depositions in order to allow the parties to meet and confer on this issue.  On March 22, 2024, Plaintiffs filed the instant motion and revealed for the first time that they instead sought re-review of the NFL's March 2022 and June 2022 privilege logs *in their entirety*, to be overseen by a special master, and were requesting permission to conduct depositions of three *yet-to-be identified* individuals. Dkt. 1267-1.

1

## <u>ARGUMENT</u>

2      Plaintiffs base their eleventh-hour effort to expand fact discovery—a year and

3 a half after its cutoff and a month after trial was originally set to begin—on two

4 decades-old documents produced in December 2021 and January 2022, privilege logs

5 served two years ago, and a meager attempt to pierce attorney-client privilege over

6 legal advice given by the NFL's in-house counsel. None of these rationales justifies

7 *in camera* review of documents described in privilege logs served in March 2022 and

8 June 2022, the appointment of a special master to oversee the process of re-reviewing

9 those years-old privilege logs in their entirety, or additional unspecified depositions

10 in the weeks before trial. Plaintiffs' requests for this relief should be denied.

11 **I.     Plaintiffs Lack Good Cause to Re-Open Discovery.**

12      Federal Rule of Civil Procedure 16 permits modifications to scheduling orders

13 "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The

14 party seeking to continue or extend the deadlines bears the burden of proving good

15 cause." *Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*, 2014

16 WL 3014720, at *2 (S.D. Cal. July 3, 2014) (citing *Zivkovic v. S. Cal. Edison Co.*,

17 302 F.3d 1080, 1087 (9th Cir. 2002)). In evaluating whether good cause has been

18 met, the Court "primarily considers the diligence of the party seeking the

19 amendment," though prejudice to the non-moving party may also be considered. *See*

20 *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that

21 party was not diligent, the inquiry should end." *Id.*

22      **A. Plaintiffs Are Not Diligent in Challenging Discovery from 2022.**

23      The fact that Plaintiffs challenge privilege logs served in 2022 should end the

24 inquiry. After the NFL served its initial privilege log in March 2022, the parties

25 negotiated for weeks over the modifications and challenges to entries on that log.

26 After the NFL served its supplemental privilege log in June 2022, the parties again

27 negotiated over potential downgrades. When Plaintiffs moved before this Court for

28 permission to complete limited discovery after the August 5, 2022 deadline, they

7

represented to this Court that they had been diligent in identifying disputes shortly after receiving the logs, and that any motion concerning the then-ongoing disputes could not be calendared sufficiently before the deadline.   Dkt. 555-1, at 10. Ultimately, all of Plaintiffs' concerns with the supplemental privilege log were resolved by August 23, 2022. without the need for motion practice.  Plaintiffs could have raised all of their present concerns during the summer 2022 discussion, but did not.

Failing to identify any further issue with the March 2022 or June 2022 privilege logs until January 2024—a year and a half after the deadline for fact discovery—constitutes waiver of Plaintiffs' present challenges.  *See Procaps S.A. v. Patheon Inc.*, 2014 WL 1230737, at *2 (S.D. Fla. Mar. 25, 2014) ("[T]here is a presumption that the failure to timely file the discovery motion may constitute a waiver of the relief sought.").  And contrary to Plaintiffs' misrepresentations, *see* Memorandum in Support of Plaintiffs' Motion to Compel ("Mot."), Dkt. 1271-1, at 2, the NFL repeatedly responded that Plaintiffs should not have waited years before bringing these challenges.  *See* Barber Exs. 5 & 24.  Plaintiffs fail to justify their delay.

*First*, the lack of metadata in the hard-copy documents does not excuse their failure to identify the documents Plaintiffs now characterize as a "smoking gun." Many hard-copy documents, including Gore Ex. 16 and Gore Ex. 9, had been produced by the time Plaintiffs twice sought extensions to the fact discovery deadline so they could review produced documents before fact depositions.  And Plaintiffs ultimately used many hard-copy documents as exhibits at the depositions conducted in 2022, demonstrating that Plaintiffs had no problem reviewing other hard-copy documents.  *See, e.g.*, Barber Ex. 7 (Lawton Dep. Ex. 1); Barber Ex. 7 (Tagliabue Dep. Ex. 14); Barber Ex. 9 (Hawkins Dep. Ex. 14).

*Second*, Plaintiffs fail to establish the significance of decades-old documents related to a fundamentally different set of broadcasting agreements than the one they

1    now challenge in this litigation.  Specifically, ████████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████      *See* Barber Ex. 10 (NFL_0000264, at -277 to -278 (§ 3.01)). █

5    ████████████████████████████████████████████████████████████

6    ██████████      Under the new agreement, ████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ██████████      *See* Barber Ex. 11 (NFL_0000415, at -417 (§ 1(b)(ii))).  From 2003

9    onward, including at all times during the class period, it is undisputed that DirecTV

10   always had the contractual right to set the retail price of Sunday Ticket.

11          Thus, even if Plaintiffs were justified in failing to identify concerns with Gore

12   Ex. 9 and Gore Ex. 16—produced in December 2021 and January 2022

13   respectively—until January 2024, both documents simply confirm what Plaintiffs

14   have known since 2016: ████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████      Neither document serves as the smoking gun that Plaintiffs so

17   desperately seek on the eve of trial.  Gore Ex. 9 ████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████      the statement that ███

20   ████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████      is uncontroversial.  Gore

22   Ex. 9, at -787.  Gore Ex. 16 is a ████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████      *Id*. (emphasis added).  The memo goes on to discuss ██

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████      Gore Ex. 16, at -555 (emphasis added).  But the

9



1  NFL's ███████████████████████ has no relevance since the record reflects

2  unambiguously ██████████████████████████████████████████

3  ████████████  The memo opines that ██████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ██████████████████  *Id.*

7      None of this is news to Plaintiffs:  The Sunday Ticket agreements were first

8  produced in 2016, so Plaintiffs have known for many years ███████████████

9  ████████████████████████████████████████████████████

10  ████████████  *See* Barber Ex. 12.  Yet Plaintiffs apparently did not find these facts

11  meaningful to their case, given that they did not mention █████████████ in any of

12  their expert reports or summary judgment briefing.  Nor did Plaintiffs ask any of the

13  15 NFL witnesses—including the NFL 30(b)(6) representative, who was designated

14  to testify about all of the Sunday Ticket agreements and specifically about ████

15  ███████████████████████████████[2]—or 10

16  DirecTV witnesses during fact depositions in summer 2022 about ████████████

17  ████████████████████████████████████████████████.

18  Instead, Plaintiffs asked witnesses at depositions only about █████████████

19  █████████, and all witnesses confronted with the issue confirmed that DirecTV

20  controlled consumer pricing during the entirety of the class period.[3]  It strains

---

22  [2] *See* Barber Ex. 13 (Schroeder (7/28/2022) Ex. 1), at 5 ("2. The provisions of Your

23  contracts with DIRECTV regarding NFL Sunday Ticket and NFL Network from

24  1994 to the present day related to: . . . (c) the change from an agency structure to an

      exclusive licensing structure . . . ."); *see also* Barber Ex. 14 (Schroeder (7/28/2022)

25  Tr. 9:19–11:6).

26  [3] *See, e.g.,* Dkt. 962-26, White Dep. Tr. 53:18–19 ██████████████████

27  ████████████████, *id.* 54:7–8

      ██████████ *id.* 54:24–55:2 █████████

28  ██████████████████████████ Dkt. 962-27, Dyckes 30(b)(6)

   Dep. Tr. 26:22–25

   10

1   credulity that Plaintiffs lacked visibility into the agency period.   Just because
2   Plaintiffs have now, mere weeks from trial, decided that the key to their case lies in
3   the terms of agreements that expired nearly a decade before the class period began
4   and wish they would have developed a more detailed factual record on those
5   agreements, does not mean they are entitled to a belated discovery do-over.

6        *Third*, Plaintiffs claim that the NFL had a "troublingly high error rate on the
7   privilege log entries Plaintiffs challenged," Mot., at 10, but the downgraded
8   documents (a small fraction of the overall entries on the privilege logs) were included
9   on the NFL's privilege logs in good faith because they had reasonable indicia of being
10  privileged communications.   Upon a closer review—and with a liberal eye toward
11  disclosure where possible within the bounds of the privilege—the NFL determined
12  that a number of those documents could be downgraded to narrow the dispute without
13  burdening the Court.   Indeed, when a prior privilege log dispute did reach the Court,
14  Judge Kim sustained the NFL's privilege calls as to the vast majority of contested
15  documents, belying Plaintiffs' current protestations. *See supra*, at 4. And Plaintiffs
16  provide no reason to think that the thus-far *unchallenged* entries among the
17  approximately 7,500 would be reversed based on their hunch that the privilege calls
18  were "questionable."  Mot., at 24.

19
20  ─────────────────────

Dkt. 1000-9, Dyckes Dep. Tr. 123:23–124:1

Dkt. 1000-10, Thun Dep. Tr. 88:10–20

Dkt. 966-
12, Rolapp Dep. Tr. 127:8–11                                   Dkt. 1000-11,
Lawton Dep. Tr. 50:1–4

Dkt. 962-25,
Schroeder 7/28/22 Dep. Tr. 50:12–13
Dkt. 1000-13, Kraft Dep. Tr. 57:3–7

11

And *fourth*, references to Mr. Hawkins on the NFL's privilege logs do not justify re-opening discovery.  As explained *infra* at 12–16, Mr. Hawkins was in-house counsel at the NFL and his provision of legal advice is properly shielded by attorney-client privilege.

### B. The NFL Would Be Prejudiced by Re-Opening Discovery.

Re-opening discovery at this stage compounds the prejudice to the NFL.  By the time this motion is heard, the parties will be less than 7 weeks from trial, working on pretrial obligations, including, but not limited to, pretrial briefing, preparation of witnesses, deposition designations, jury instructions, and conferring on trial exhibits.  Re-opening discovery to any extent—much less requiring up to three additional depositions and re-review of 7,500 privilege log entries—is unreasonably burdensome and prejudicial to the NFL's trial preparation.  *See, e.g.*, *Wright v. Gringo*, 2021 WL 689924, at *3 (S.D. Cal. Feb. 22, 2021) (denying additional deposition requested shortly before the beginning of trial).  Plaintiffs' motion thus lacks good cause and should be denied.

### II.     Plaintiffs' Various Privilege Challenges Are Unfounded.

#### A. Legal Advice Provided By Attorney Frank Hawkins Is Privileged.

In an effort to manufacture a privilege dispute, Plaintiffs assert that Mr. Hawkins, former in-house counsel at the NFL, did not act as a legal advisor in his role at the NFL.  That assertion is entirely unfounded:  Mr. Hawkins' sworn testimony, corroborated by internal NFL documents, makes clear that he provided legal advice throughout his tenure at the NFL.  Moreover, the documents involving Mr. Hawkins that continue to be withheld are those where the primary purpose of the communications is the provision of legal advice, as documented in amended privilege logs produced to Plaintiffs.

Plaintiffs' various assertions about Mr. Hawkins fail to justify any relief.  As Plaintiffs acknowledge, Mr. Hawkins earned a law degree, completed a judicial clerkship, and was a practicing attorney at Covington & Burling in Washington, D.C.

before his employment with the NFL.   *See* Mot., at 15; *see also* Barber Ex. 15 (Hawkins Dep. Tr. 15:3–16:18); Hawkins Decl. ¶ 5.   In 1993, Mr. Hawkins was hired by the NFL to work as in-house counsel at the League's office in D.C. because the NFL "needed a lawyer to set up NFL Sunday Ticket."   Barber Ex. 15 (Hawkins Dep. Tr. 17:8–11).   Although Mr. Hawkins did also perform some business functions, he made clear at his deposition that when he joined the NFL, his job "was more legal" than business.   *Id.* at 18:16–19; *see also* Hawkins Decl. ¶ 8.   At no time did Mr. Hawkins testify that he stopped providing legal counsel while employed at the NFL. Additionally, while employed at the NFL (and after he left the NFL's employ), Mr. Hawkins was an active member of the D.C. bar.   *See* Hawkins Decl. ¶ 3.   Although Mr. Hawkins took inactive status around 2010, he remains in good standing with the District of Columbia bar.   *See id.*

Consistent with Mr. Hawkins' deposition testimony, contemporaneous NFL documents from throughout Mr. Hawkins' tenure confirm that he served as a legal advisor at the NFL,[4] including communications from third parties addressing Mr. Hawkins as "Counsel."[5]   To be sure, over the course of his time at the NFL, Mr. Hawkins sometimes played a business role in addition to his legal one—which Plaintiffs have long known.   *See* Hawkins Dep. Tr. 177:23–178:3.   That is why, when

---

[4] *See, e.g.*, Barber Ex. 16 (NFL_0858191) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Barber Ex. 17 (NFL_0547238) ▮▮▮▮▮ Barber Ex. 18 (NFL_0858149) ▮▮▮▮▮▮▮▮▮▮ *see also* Barber Ex. 19 (NFL_0547592), at -593 (1994 letter signed by Mr. Hawkins identifying himself as "Counsel – Broadcast / Corporate").

[5] *See, e.g.*, Barber Ex. 20 (NFL_0547539) (1995 correspondence addressed to "Mr. Frank Hawkins, Esq., Counsel – Broadcasting / Corporate"); Barber Ex. 21 (NFL_0549003) (1996 correspondence from a DirecTV employee, addressed to "Mr. Frank Hawkins, Counsel"); Barber Ex. 22 (NFL_0549123) (1997 correspondence from DirecTV employee addressed to Mr. Hawkins as "Vice President – ***Law*** Enterprises Broadcast & Finance" (emphasis added)); Barber Ex. 23 (NFL_0549129) (same).

13

Plaintiffs initially raised concerns about some privilege log entries involving Mr. Hawkins, the NFL carefully re-reviewed the 311 entries on its privilege logs involving Mr. Hawkins to determine whether the "primary purpose" of his communications was "to give or receive legal advice, as opposed to business . . . advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (citation omitted); *see* Barber Decl. ¶ 17. In an effort to narrow the dispute with Plaintiffs, the NFL was liberal in its review and ultimately downgraded and produced 177 entries. *See* Barber Decl. ¶ 17. The remaining entries are clear instances of Mr. Hawkins acting primarily in a legal capacity. *See id.*; *see also James v. UMG Recordings, Inc*., 2014 WL 555179, at *1, *3 (N.D. Cal. Feb. 10, 2014) (denying motion to compel where the defendant properly "produced non-privileged communications authored by the attorneys on the log, and invoked attorney-client privilege only for those documents involving legal advice"). Nonetheless, consistent with their intent from the outset of discussions regarding these documents, Plaintiffs unnecessarily filed the instant motion.

Plaintiffs now request *in camera* review of nearly 100 entries involving Mr. Hawkins, all of which predate the class period. Plaintiffs do not identify specific reasons to question the privilege claims with respect to any of the remaining entries— they instead make a general challenge to any entry involving Mr. Hawkins on the theory that he was not really a legal advisor at the NFL, despite the ample record evidence that Mr. Hawkins served as a legal advisor during his tenure at the League.

To support this otherwise unsupportable assertion, Plaintiffs largely rely on the fact that various documents indicate that Mr. Hawkins used the title "SVP, Business Affairs," while the list of counsel that the NFL served to Plaintiffs nearly two years ago and well before Mr. Hawkins' deposition, identifies him with the title "SVP, Legal and Business Affairs." Mot., at 1, 16–17; Gore Ex. 1. Plaintiffs never raised this concern during any of their meet-and-confers with the NFL. *See* Barber Decl. ¶ 16. Had they done so, the NFL would have investigated the discrepancy and

14

clarified that Mr. Hawkins' formal title was "SVP, Business Affairs" (as indicated in the NFL's initial disclosures and as testified by Mr. Hawkins himself at his deposition in this case) and that the use of the longer title on the list of counsel was inadvertent. *See* Hawkins Decl. ¶ 9; Barber Decl. ¶ 16; Barber Ex. 15 (Hawkins Dep. Tr. 178:4–7). The NFL would have also confirmed that, at the NFL, the title of SVP, Business Affairs was given to individuals like Mr. Hawkins, who were in-house transactional lawyers. *See* Hawkins Decl. ¶ 10. But Plaintiffs never raised the matter with the NFL. That is perhaps because Plaintiffs are well aware that the particular title aside, the relevant question is whether Mr. Hawkins was providing legal counsel in his role at the NFL. *See, e.g.*, *Scott & Stringfellow, LLC v. AIG Com. Equip. Fin., Inc.*, 2011 WL 1827900, at *4 (E.D. Va. May 12, 2011) (assessing privilege claims over communications from an employee holding two titles—a "business-oriented role" as Senior Vice President, as well as "a clearly legal role" as General Counsel—and considering whether "the communication is for the purpose of rendering an opinion on law, legal services, or to provide assistance in some legal context"). Both Mr. Hawkins' testimony and corroborating documents all confirm that he was.

Plaintiffs also contend that Mr. Hawkins could not have served as a legal advisor during his later years at the NFL, after he relocated from Washington D.C. to New York, because he was never barred in New York. But he was barred in D.C., *see* Hawkins Decl. ¶ 2, and it has long been accepted that in-house counsel can engage in multijurisdictional practice of law, as reflected in the Restatement (Third) of the Law Governing Lawyers (published in 2000) and the ABA Model Rules.[6] *See*

_____

[6] Even if Mr. Hawkins had been engaged in the unauthorized practice of law while working for the NFL in New York (and Defendants emphasize that he was not), Plaintiffs' argument would still fail because that fact would have no bearing on the validity of the NFL's privilege claims. *See Gucci Am., Inc. v. Guess?, Inc.*, 2011 WL 9375, at *2 (S.D.N.Y. Jan. 3, 2011) ("The purpose of the privilege is to protect the client's communication, and to encourage full and frank disclosure when seeking legal advice, which is why the client holds the privilege and only the client can assert

15

Restatement (Third) of the Law Governing Lawyers (2000) §3, cmt. f ("States have permitted practice within the jurisdiction by inside legal counsel for a corporation or similar organization, even if the lawyer is not locally admitted and even if the lawyer's work consists entirely of in-state activities, when all of the lawyer's work is for the employer-client and does not involve appearance in court." (citation omitted)); ABA Model Rule Prof'l Conduct 5.5(d), cmt. 16 (adopted in 2002); ABA Comm. on Multijurisdictional Practice Rep. 201B, at 10 (Aug. 2002) (explaining that the 2002 amendment "reflects well-accepted contemporary law practice").

**B. The NFL Properly Redacted the ██████████**

**██████ Challenged by Plaintiffs.**

The NFL properly redacted Gore Ex. 17 (the ██████████), which is a draft document that incorporates legal analysis and advice from outside counsel. This document was included in the limited set of documents Plaintiffs raised challenges to in January but did not file a motion on in accordance with the schedule the parties agreed to at that time. *See* Barber Decl. ¶ 14. The redactions to the Pricing Memo are necessary to protect attorney-client communications with outside counsel.[7]  At the bottom of the first page of the draft memo, there is a note ██████ ██████████████████████████████████████████ ██████████████  Gore Ex. 17, at -081 (emphasis added).  As that note makes

---

or waive it. [The client] should not be penalized because its attorney, a member of the bar in two jurisdictions, may not have been 'authorized to practice law' based on his 'inactive' status as a member of the California bar."); *see also Le Bleu Corp. v. Federal Mfg. LLC*, 2018 WL 1610699, at *2 (E.D. Wis. Apr. 2, 2018) ("[O]ther courts have recognized that so long an attorney is licensed to practice law in some jurisdiction, then the client's communications to him will be privileged even if the attorney's advice might technically constitute the unauthorized practice of law in another jurisdiction." (collecting cases)); *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419 (M.D. Pa. 2016) (same).

[7] Indeed, the fact that the NFL produced a redacted version instead of withholding the document in full evinces the NFL's aim to provide as much disclosure as possible, while still safeguarding the attorney-client privilege.

16

clear, the redacted portions of the memo are a truncated version of Covington's legal analysis ██████████████████████████████████████ which is spelled out in greater detail in the undisputedly privileged attachment. And Mr. Hawkins was working on this memorandum at the NFL, further evidence of its legal nature.

Although Plaintiffs argue that pros and cons of the pricing structures are "about business strategy," Mot., at 14, the explicit reference to Covington's work shows that this document was giving and evaluating legal advice. These redactions thus squarely fall within the attorney-client privilege. *See Pedersen v. Kinder Morgan, Inc.*, 2023 WL 6441948, at *3 (S.D. Tex. Sept. 29, 2023) (finding memoranda at issue to be protected by attorney-client privilege as they were prepared in order "to discuss potential legal risks, including future litigation risks").

### C. The NFL Properly Asserted Privilege Over the Remaining Challenged Documents.

The NFL properly withheld the following documents that Plaintiffs challenged in their motion:[8]

<u>Initial Log Reference Nos. 1846, 1864, 3968, 4239, and 4704</u>

Reference Nos. 1846, 1864, 3968, 4239, and 4704 all reflect advice from counsel, including from outside counsel. They are either documents that communicate advice one NFL employee received from counsel to the rest of the relevant team, or documents that forward advice that was directly sent by NFL

---

[8] The NFL responds in this section to the specific entries challenged in Section II.C of Plaintiffs' Motion. *See* Mot., at 20–23. To the extent that Plaintiffs suggest that additional, unidentified entries are deficient, the Court should deny Plaintiffs' challenges for failure to specify the contested documents such that the NFL can properly respond to them. *See In re Telescopes Antitrust Litig.*, 2024 WL 1016070, at *3 (N.D. Cal. Feb. 13, 2024) (denying motion to compel in part because plaintiffs had made the dispute at issue "extraordinarily difficult to resolve" by "challeng[ing] [d]efendants' privilege claims by category" rather than "refer[ring] to specific documents or their corresponding privilege log entries").

17

1  attorneys, including outside counsel.  For example, both Reference Nos. 1846 and

2  4704 communicate legal advice received from NFL attorneys L. Goldsmith and D.

3  Malin. Gore Decl. Ex. 27 at 89, 231 (entries 1846 and 4704).  The other three

4  documents all contain communications from outside counsel.  Reference Nos. 1864

5  and 3968 are emails that forward communications from Covington & Burling

6  attorneys D. Nason and A. Byrnes to other NFL employees. *Id.* at 90, 195 (entries

7  1864 and 3968).  Similarly, Reference No. 4239 forwards an email thread between

8  Mr. Hawkins and A. Byrnes, a Covington attorney, to then-Commissioner Paul

9  Tagliabue.  *Id.* at 208 (entry 4239).

10     Case law is clear that the privilege afforded to these documents does not

11  change merely because, as Plaintiffs assert, "no lawyers appear in the to/from/cc

12  fields."  *See* Mot., at 21.  Courts note that "communications which reflect advice

13  given by counsel to a corporation do not lose their privileged status when they are

14  shared among corporate employees who share responsibility for the subject matter of

15  the communication."  *See, e.g.*, *Urb. Box Off. Network, Inc. v. Interface Managers,*

16  *L.P.*, 2006 WL 1004472, at *3 (S.D.N.Y. Apr. 18, 2006) (citation omitted).

17  Consideration of the entirety of the documents—and not just three discrete fields—

18  shows that they reflect communications from counsel providing legal advice to NFL

19  employees.  This squarely falls within the attorney-client privilege.

20     <u>Initial Log Reference Nos. 590, 3501, 4653, 4927, 5298, 5443, and 5563</u>

21     Reference Nos. 590, 3501, 4653, 4927, 5298, 5443, and 5563 are email

22  communications that include internal NFL counsel.  These emails all request or

23  reflect legal advice from either D. Malin and/or L. Goldsmith.  Six of the emails

24  discuss █████████████████████████████████████████████████

25  ███████████████████████████ and one (Reference No. 5563) discusses ████████

26  ██████████████████████████████████████████ As Plaintiffs cannot

27  dispute, a document that requests or reflects legal advice from counsel is privileged.

28

1    Recognizing that the NFL asserts privilege on proper grounds, Plaintiffs

2    attempt to cast doubt on these log entries by arguing that no other entries in the

3    privilege log "reflect a responsive email from any of the lawyers listed."  Mot., at 22.

4    That is nonsensical.  An attorney can give legal advice "off thread," including in a

5    meeting or on a phone call.  The fact that the privilege log does not show the attorney

6    responded on that particular thread has little bearing on whether the communications

7    sought or provided legal advice on the topic, or whether that legal advice was

8    reflected in subsequent conversations among NFL employees.  Nor did Plaintiffs take

9    the opportunity to further meet-and-confer regarding these documents in order to

10   understand this full context.

11          Initial Log Reference No. 792.

12    Reference No. 792 is an email requesting review of proposed Sunday Ticket

13   advertisements.  Gore Decl. Ex. 27, at 39 (entry 792).  The email was sent to several

14   in-house NFL lawyers asking for ████████████████████████████████

15   ████████████████████████████████████████████  both of which

16   require legal input.  *See In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536,

17   at *3 (N.D. Cal. June 16, 2006) ("The 'primary purpose' test implicates legal advice

18   'if the nonlegal aspects of the consultation are integral to the legal assistance given

19   and the legal assistance is the primary purpose of the consultation.'").  The subject

20   matter, the explicit request for review to the recipients, and inclusion of three in-

21   house lawyers on the communication all show that the "primary purpose" of the

22   communication was to request legal advice.

23          Supplemental Log Reference No. 81

24    Reference No. 81 is an email communication among NFL employees that

25   attaches a ██████████████████████████  As Plaintiffs acknowledge, Mot.,

26   at 22, the proposal reflects changes that came from the NFL's legal department.

27    Plaintiffs incorrectly suggest that Reference No. 81, like other contracts,

28   merely incorporates, rather than conveys, advice from legal counsel.  But they read

19

1  NFL's assertion of privilege too narrowly.  The privilege log entry specifies that the

2  email and its attachments █████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  ███████████  Gore Decl. Ex. 28 at 6 (entry 81).  A simple comparison of an earlier

5  draft of the proposal and this draft would show someone what counsel advised the

6  NFL to do with regards to ███████████████  By contrast, Plaintiffs' example of

7  a term sheet or contract that "incorporates" legal advice would not indicate what the

8  communicated legal advice was on the fact of the document.

9     Indeed, the case law Plaintiffs cite illustrates the line they seek to blur.  *See*

10  *Valassis Comms, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19,

11  2018) ("Exhibit 14 is a business document that already incorporates, *but does not*

12  *provide*, legal advice." (emphasis added)); *Sanner v. Bd. of Trade of Cty. of Chicago*,

13  181 F.R.D. 374, 377 (N.D. Ill. 1998) ("At the threshold here, this court's review of

14  the Weisenborn notes does not disclose any legal advice. Among other things, the

15  notes do not mention anything about attorneys or communications from attorneys.").

16  Courts have also recognized that draft agreements are protected by the attorney-client

17  privilege.  *See, e.g.*, *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326

18  F.R.D. 176, 183 (N.D. Ill. 2018) ("And, so, almost all courts have concluded that the

19  process of drafting and editing, reflecting as it often does both requests for and

20  provision of, legal advice, is protected by the attorney-client privilege." (collecting

21  cases)).  Here, legal counsel provided NFL employees ███████████████████

22  ███████████  with revisions to a draft proposal, which reflect their legal advice.

23  Plaintiffs' challenge is thus unwarranted.

24     <u>Supplemental Log Reference No. 1370.</u>

25     Reference No. 1370 is a 2002 memorandum from Roger Goodell to the NFL's

26  Media Group.  The NFL withheld this document to protect legal advice that is

27  described within the document, which was provided by Mr. Hawkins.  The document

28  was labeled "privileged and confidential," expressly noted that it "reflect[ed] input

20

of counsel." *See, e.g.*, *Coleman v. Sterling*, 2011 WL 1099793, at *2 (S.D. Cal. March 24, 2011).

Plaintiffs argue that the NFL's amendment of the privilege log description for this document justifies its disclosure. *See* Mot., at 20. They are incorrect. The NFL initially took the inclusion of Mr. Hawkins in the memorandum to demonstrate its request for his legal advice. Upon closer review, it appeared that Mr. Hawkins already provided advice that was incorporated into the memo. Far from the "drastic" change Plaintiffs describe, the NFL revised the log entry to reflect its updated understanding. The NFL's careful re-review of these documents—and its subsequent production of many documents—shows it took great care in making privilege determinations. The privileged-and-confidential designation, as well as the legal references contained within the document demonstrate the document's privileged status.

Redactions to Gore Exs. 41, 42, 43, 44, 45, and 46

Plaintiffs' challenge to redactions in six documents also fails. The contents of the documents demonstrate that their primary purpose was to obtain legal advice or share information for the purpose of obtaining legal advice. *See United States v. Nat'l Ass'n of Realtors*, 242 F.R.D. 491, 494 (N.D. Ill. 2007) ("While facts themselves are not protected by the privilege, the communication of facts between an attorney and client are protected if transmitted for the purpose of obtaining legal advice." (citing *Upjohn Co. v. United States,* 449 U.S. 383, 395–96 (1981))). All but two challenged redactions were sent directly to NFL attorneys. And all redacted communications concern legal matters on which NFL counsel is providing ongoing legal advice or is being asked to give legal advice.

Specifically, Gore Exs. 41 and 42 are internal NFL emails discussing ███████ ████████████████████████████████████████████ Likewise, Gore Exs. 43 and 46 were sent directly to NFL attorneys (either L. Goldsmith, D. Malin, or J. Galst) and the redacted emails specifically noted they were being sent for the purpose of

21

providing information to obtain ongoing legal advice.  Gore Ex. 43 also notes this advice was provided in conjunction with outside counsel.  Similarly, Gore Ex. 44 was also directly sent to two NFL attorneys asking for their legal opinion.  Further highlighting the legal purpose of this communication, the email just below it ██████ ███████████████████████████████████████████████████████████ ██████  Gore Ex. 44, at 1.  This indicates that NFL legal counsel was being consulted for a similar, legal purpose.  The same is true of Gore Ex. 45, which also consults two in-house NFL lawyers on a draft ████████████████████████ ████████████  Gore Decl. Ex. 45 at 1–2.  Though the first redacted portion was not sent to NFL lawyers directly, it references the request for legal advice contained in the second redaction.  *See* Gore Ex. 45, at 1.

## III.   Plaintiffs' Additional Requested Relief Is Unwarranted.

Despite insisting throughout their motion that they seek only "limited" discovery, Plaintiffs conclude with three truly extraordinary requests:  (1) a complete "re-review" of the NFL's "*entire* privilege logs," (2) the appointment of a special master, and (3) "up to three additional depositions."  Mot., at 24–25.  None of those sweeping demands is warranted, much less at this late stage in the litigation.

***Re-Review of Privilege Logs.***  There is no basis for wholesale re-review of the NFL's privilege logs.  As an initial matter, and as discussed further *supra*, at 11, Plaintiffs' assertion about a "high reversal rate" is misleading given the small number of downgrades in the context of the 7,500 entry log.  Moreover, federal district courts regularly reject blanket challenges to privilege logs, instead requiring the objecting party to specifically identify the contested documents and to inform the court of the basis for each challenge.  *See, e.g.*, *United States v. Louisiana*, 2015 WL 2453719, at *2 (M.D. La. May 22, 2015) (denying motion to compel where the movant "broadly challenges the entire privilege log" and "ask[ed] the Court to order [the defendant] to revise every entry of its privilege log"); *see also Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 1998 WL 1742589, at *4 (E.D.N.C. Sept. 28, 1998)

1   (rejecting Plaintiffs' "blanket attack on what is apparently Defendants' entire log,

2   which identifies 106 documents").  Plaintiffs' request for a complete re-review of

3   approximately 7,500 entries on the NFL's privilege logs is particularly inapt here,

4   where their motion is untimely and where this Court has already rejected many of

5   Plaintiffs' privilege challenges over the course of this litigation and upheld the NFL's

6   privilege claims as to those specific documents.  *See supra*, at 4.

7       ***Additional Depositions*.**  Plaintiffs also suggest they "*may* require" "up to three

8   additional depositions" "depending on the documents produced."   Mot., at 25

9   (emphasis added).  To justify a request for depositions beyond the 10 presumptively

10  authorized by Federal Rule of Civil Procedure 30(a)(2)—a number already far

11  exceeded by Plaintiffs in discovery—Plaintiffs must demonstrate "a particularized

12  showing of the need" for each additional deposition.  *Authentec, Inc. v. Atrua Techs.,*

13  *Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (citations omitted).  They

14  must further show that the requested depositions are "relevant to the party's claims

15  or defenses and not unreasonably cumulative, duplicative, or burdensome."  *Oracle*

16  *Am., Inc. v. Google Inc.*, 2011 WL 12675492, at *1 (N.D. Cal. July 21, 2011) (quoting

17  Fed. R. Civ. P. 26(b)) (cleaned up).  Rather than attempting to satisfy these burdens,

18  Plaintiffs vaguely allude to some hypothetical need for several as-yet unspecified

19  depositions less than two months before trial, for which they failed to meet-and-

20  confer with the NFL.  Tellingly, Plaintiffs are not seeking depositions based on the

21  documents and information they already have—only based on speculation as to the

22  contents of withheld and privileged materials that the NFL has now several times

23  reviewed and confirmed remains privileged.   To satisfy their burden to justify

24  additional depositions based on any future productions, Plaintiffs would need to

25  demonstrate that any newly produced documents are material and not duplicative—

26  and they will not be able do so.  The Court should therefore likewise deny this

27  request.

28

***Special Master.*** Plaintiffs' request to appoint a special master is unfounded in the context of a straightforward privilege log review.  Plaintiffs fail to explain why, if any review of the specific challenged entries and additional depositions are necessitated, Magistrate Judge Kim cannot oversee the re-review process or compel those depositions.  Courts have rejected requests for special masters under similar circumstances. *See Stone Brewing Co., LLC v. MillerCoors LLC*, 2021 WL 4442177, at *2 (S.D. Cal. Sep. 28, 2021) (finding "both the district judge and magistrate judge capable of handling any discovery related issues"); *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc*., 2017 WL 365630, at *3 (N.D. Ind. Jan. 25, 2017) (rejecting request for special master when party "has not identified any specific discovery-related issues that the undersigned Magistrate Judge has been unable to handle effectively").  With the approaching trial date, appointing a special master now would only "add another layer of procedure in this case" and "risk [] delaying resolution of the claims on the merits." *Valley Forge*, 2017 WL 365630, at *3.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the NFL respectfully requests that the Court deny Plaintiffs' motion.

Dated: March 29, 2024              Respectfully submitted,

*/s/ Jeremy S. Barber*
Jeremy S. Barber (admitted *pro hac vice*)
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Max Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

24

jbarber@wilkinsonstekloff.com
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*