# EXHIBIT 13

## To the Declaration of Jeremy S. Barber

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
LANGER GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Class Counsel*

[Additional Counsel listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | CASE NO.: 2:15-ml-02668-PSG (JEMx) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANTS NATIONAL FOOTBALL LEAGUE, INC. AND NFL ENTERPRISES LLC PURSUANT TO RULE 30(b)(6)** |

NFL EXHIBIT No. 01
2022-07-28

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their counsel of record, will take the deposition upon oral examination and videotaped remote deposition(s) of the designated representative(s) of Defendants National Football League, Inc. and NFL Enterprises LLC (the "League Defendants") best able to testify as to the matters set forth in Exhibit A to this Notice of Deposition. The League Defendants have a duty to designate one or more officers, directors, managing agents, or other persons with sufficient knowledge to testify fully regarding the topics listed in Exhibit A.

The deposition will occur on July 28, 2022, or other date(s) to be mutually agreed upon by Plaintiffs and the League Defendants, and will occur at the offices of Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, or such other place as agreed upon by Plaintiffs and the League Defendants. The deposition will be taken before a duly qualified notary public or other officer authorized by law to administer oaths. The deposition will be recorded by video and stenographic means. The deposition may be used to preserve testimony for trial, to obtain discovery, and for any other purpose authorized by the Federal Rules of Civil Procedure.

The deposition, if not completed on the noticed date, shall be continued, if necessary, from day to day thereafter, excluding weekends and holidays, until completed, unless counsel for the noticing party wishes the deposition to be completed at a later date, in which case a mutually agreeable date shall be selected between counsel for the parties.

Pursuant to Rule 30(b)(6), the League Defendants have a duty to meet and confer with Plaintiffs regarding the matters for examination.

By May 20, 2022, the League Defendants shall provide a written designation of the name(s) and position(s) of the one or more officers, directors, managing agents, or other person(s) who will be produced to testify on their behalf concerning the topics and matters set forth in Exhibit A. Pursuant to Rule 30(b)(6), the

1

person(s) designated by the League Defendants should be prepared to testify to such matters known or reasonably available to the League Defendants as set forth in Exhibit A.

Dated: June 24, 2022

Respectfully submitted,

By: /s/ Ian M. Gore
  Ian M. Gore

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Arun Subramanian (*Pro Hac Vice*)
asubramanian@susmangodfrey.com
William Christopher Carmody
(*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Michael D. Hausfeld (*Pro Hac Vice*)
mhausfeld@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com

Irving Scher (*Pro Hac Vice*)
ischer@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Michael P. Lehmann (77152)
mlehmann@hausfeld.com
Bonny E. Sweeny (176174)
bsweeney@hausfeld.com
Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

# EXHIBIT A

# DEFINITIONS

1. The following rules of construction shall apply to all of the following topics:

    a. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topic all topics that might otherwise be construed to be outside of its scope;

    b. "Including" shall be construed to mean "without limitation"; and

    c. The use of the singular form of any word includes the plural and vice-versa.

2. "Broadcast Partner(s)" means CBS, Fox, Disney, ABC, ESPN, NBC, and/or Amazon.

3. "Club" means any football club or team that is a member of the NFL.

4. "Club-dedicated Network" means the same as that term is utilized in the NFL's 2005 Resolution BC-1.

5. "Club-equity Network" means the same as that term is utilized in the NFL's 2005 Resolution BC-1.

6. "NFL" or "League" means the National Football League, including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that the NFL manages or controls, including those merged with or acquired by the NFL, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf, including, but not limited to the Defendants to whom this deposition notice is directed.

7. "Telecast" means television or video streaming broadcasts.

8. "You," "your," or "your organization," unless otherwise noted, means each Defendant to whom this Interrogatory is directed, including its predecessors,

wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

**DEPOSITION TOPICS**

1. Provisions of the NFL Constitution and Bylaws that were effective from June 1, 2011 to the present day—that (a) restrict or limit Clubs from licensing television broadcasts of regular season games; (b) permit Clubs to license television broadcasts of pre-season games; or (c) permit Clubs to license radio broadcasts of their games. This topic is limited to: the identity of those provisions; the date in which they were originally enacted; changes to them since that date; and the reasons for such provisions.

2. The provisions of Your contracts with DIRECTV regarding NFL Sunday Ticket and NFL Network from 1994 to the present day related to: (a) the packaging of games available to Sunday Ticket subscribers; (b) the pricing of Sunday Ticket to Sunday Ticket subscribers; (c) the change from an agency structure to an exclusive licensing structure; (d) indemnification; (e) DIRECTV's ability to sell and distribute commercials during game telecasts rather than re-transmit the commercials aired by Fox or CBS; (f) the sharing of Sunday Ticket subscriber data between the NFL and DIRECTV; and (g) the creation of a "White Space" or "OTT Service" offering.

3. The metrics You use to measure viewership of live NFL regular season games and the manner in which those metrics are utilized by You in determining the value of the rights fees associated with licensing live video telecasts to the League's Broadcast Partners.

4. The products You generally understand to compete with, or are reasonably interchangeable substitutes for, live game telecasts of NFL games and the basis of that understanding.

5. The data you maintain on NFL fans within the NFL's Fan Centric Marketing database and the fan related data you have produced in this litigation. Specifically, this topic includes the following information regarding the NFL's fan database(s): (a) the identity of the sources of information (e.g. Clubs, NFL.com, the League's Broadcast Partners, etc.) that provide data to those database(s); (b) the identity of the types of information (e.g. name, addresses, purchasing history, viewing history, etc.) provided by those sources of information; (c) the League's efforts to develop uniformity in the combined data; and (d) to whom the NFL shares fan-level data and the types of data shared with those entities.

6. The categories of data (e.g. name, address, favorite team, viewing habits, etc.) you receive from DIRECTV pursuant to your agreements with DIRECTV regarding residential and commercial subscribers to NFL Sunday Ticket, regardless of whether that subscriber is a subscriber to DIRECTV's satellite service, the DIRECTV NOW streaming service, or the NFLST.TV streaming service and the manner in which the NFL uses that data for its own purposes.

7. The NFL's general understanding, from June 1, 2011 to the present, concerning: (1) the relationship between the price and composition for licensing of any package of NFL game telecasts to a television network or multichannel video programming distributor; (2) the feasibility and financial consequences of providing multiple feeds of a given game telecast; and (3) the relationship between the viewership or advertising revenue associated with each game telecast and the number of, and content of, other game telecasts available at a particular time and television viewing market.

8. The NFL's general understanding of concerns raised during negotiations of broadcast agreements after June 1, 2011 by the NFL's Broadcast Partners and DIRECTV regarding any potential expansion of the distribution rights to live out-

6

of-market game telecasts or increasing the number of subscribers to NFL Sunday Ticket.

9. The following specific instances in which a NFL Broadcast Partner expressed concerns regarding the expansion of Sunday Ticket: the request made by Fox referred to in Paragraph 77 of Plaintiffs' Second Consolidated Amended Complaint (Dkt. No. 441); the request made by "at least one network" referred to in Paragraph 77 of the NFL Defendants' Answer to Plaintiffs' Second Consolidated Amended Complaint (Dkt. No. 442); and the proposals discussed in your response to Interrogatory No. 14. Specifically, this topic covers: (a) by whom and how those requests or proposals were communicated with the NFL; (b) the NFL's internal analysis regarding those requests or proposals; (c) the NFL's decisions regarding those requests or proposals: and (d) the extent to which those requests or proposals were carried out.

10. The availability of live NFL game telecasts in Canada and Mexico from June 1, 2011 to the present day, including: (a) the identity of the companies you have licensed those rights to, the distribution technology (e.g. network broadcasts, cable, satellite, or streaming); (b) the character of presentation to consumers (e.g., over-the-air reception, part of a normal subscription package, or as a premium channel or bundle that require additional payment by a consumer beyond a base package of channels); (c) the financial costs to the NFL to offer such telecasts; and (d) the NFL's general understanding of the consumer-level pricing for Sunday Ticket in Canada and Mexico compared to the United States.

11. Your decision to license NFL Sunday Ticket on an exclusive basis to DIRECTV effective after June 1, 2011, and bids received from potential distributors to license Sunday Ticket on a non-exclusive basis effective after June 1, 2011.

12. Your role in determining the packaging of games on NFL Sunday Ticket in lieu of a league-wide offering since June 1, 2011.

13. Any bids for the rights to NFL Sunday Ticket beginning in the 2023 NFL season, whether those bids include offers to license on an exclusive or non-exclusive basis, whether those bids include team-specific packages available to consumers, and the current status of those negotiations.

14. The NFL's general understanding of the potential financial costs and economic risks associated with the following changes to the manner in which out-of-market games are distributed: (a) permitting Sunday Ticket to be licensed to multiple distributors in the United States; (b) permitting team-specific packages on Sunday Ticket; and/or (c) permitting the Clubs to license regular live telecasts of regular season games on their own.

15. Your general understanding of Club interest in licensing live telecasts of regular season games separately from the League after January 1, 2000, specifically, each instance in which that interest was known to have been expressed to the NFL, when, where and how that interest was expressed, who expressed that interest, and any decision made by that Club or the League regarding that interest.

16. What factors the NFL generally considered when negotiating prices for the broadcast rights to live professional football games you sell or have sold for licenses that were in effect from June 1, 2011 to the present day (even if the negotiations occurred prior to June 1, 2011), including, but not limited to: economic modeling, pricing strategies, structure of payment (flat fee up front or by season, licensing fee or percentage by viewing or carriage, etc.), practices and policies, specific costs, customer types or attributes, and specific competitors and competing products.

17. Your role in the prices charged or packages offered by DIRECTV to Sunday Ticket subscribers after June 1, 2011.

18. The revenue sharing provisions in the NFL's Constitution, bylaws, and collective bargaining agreements with the Clubs from June 1, 2011 to the present, regarding which sources of revenue are shared among the Clubs and the League, and the degree to which they are shared.

19. The League's involvement in the process by which the Clubs: (a) license the rights to live game telecasts of pre-season games; (b) license the rights to radio broadcasts of games; and/or (c) license the rights to non-game content (e.g., pre-game shows, shoulder programming, post-game shows). This topic pertains to the Clubs' licensing of those rights that were in effect from June 1, 2011 to the present, and does not pertain to any specific licensing decision made by a Club.

20. The offer made by InDemand in December 2002 referenced in Paragraph 95 of Plaintiffs' Second Consolidated Amended Complaint (Dkt. No. 441).

21. Your prior analysis of the effects, if any, on subscriptions to Sunday Ticket, revenue or costs associated with Sunday Ticket, or viewership of in-market games offered by any Broadcast Partner, as a result of the single-day packages ("Single Sunday Package") offered as part of the settlement in the *Shaw v. Dallas Cowboys* matter; the reasons underlying the decision to drop the single-day packages after the period of time defined by that settlement; and the changes required or made to the NFL's agreements with DIRECTV or its Broadcast Partners to permit those single-day packages to be offered by DIRECTV.

22. Your decision to permit multiple telecasts of the same game for Thursday Night Football starting with the 2014 season.

23. Your licensing of NFL Red Zone since 2011, specifically, whether to license Red Zone on an exclusive basis or not, the NFL's general understanding regarding the creation of Red Zone, the identity of the distributors that carry Red Zone in the United States and abroad, and the NFL's general understanding of the impact of Red Zone on subscriptions to Sunday Ticket and the NFL's agreements with Fox and CBS.

24. The NFL's blackout policies from June 1, 2011 to the present day, specifically: (a) a general description of the policies in place prior to the enactment of 2015 Resolution JC-1; (b) the reasons for enacting 2015 Resolution JC-1 and 2016 Resolution JC-1; (c) any changes to the NFL's blackout policies after the enactment of 2016 Resolution JC-1 and the reasons underlying those changes; and

(d) the NFL's general understanding of the number of occurrences in which those policies caused a game to be blacked out during that time period.

25. Your market and pricing studies, modeling, and analysis reflected in NFL_0056334, NFL_0057409, NFL_0057465, NFL_0265911, NFL_0278484, NFL_0285369, NFL_0299601, NFL_0402078, NFL_0537793, NFL_0556827, NFL_0589091, NFL_0593057, NFL_0596968, NFL_0609484, NFL_0609532, NFL_0610083, NFL_0622970, NFL_0623256, NFL_0624573, NFL_0653312, NFL_0660208, NFL_0715001, NFL_0730242, NFL_0753152, and NFL_0853407.

## PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of King, State of Washington. I am over the age of 18 and not a party to the within action; my business address is 1201 Third Avenue, Suite 3800, Seattle, Washington 98101.

On June 24, 2022, I served the foregoing document(s) described as follows:

**FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANTS NATIONAL FOOTBALL LEAGUE, INC. AND NFL ENTERPRISES LLC PURSUANT TO RULE 30(b)(6)**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

**See Attached Service List**

____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

____ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

____ BY FAX
I served by facsimile as indicated on the attached service list.

XX   BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on June 24, 2022, at Seattle, Washington.

____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

XX   (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| Ian M. Gore | /s/ Ian M. Gore |
|---|---|
| (Type or Print Name) | (Signature) |

11

# SERVICE LIST

Gregg H. Levy
glevy@cov.com
Derek Ludwin
dludwin@cov.com
COVINGTON & BURLING LLP
850 Tenth Street NW One City Center
Washington, DC 20001-4956
Telephone: (202) 622-5292
Facsimile: (202) 662-6804

Neema Trivedi Sahni
nsahni@cov.com
COVINGTON & BURLING LLP
2029 Century Park East Suite 3100
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4782

Beth A. Wilkinson
bwilkinson@wilkinsonstekloff.com
Brian L. Stekloff
bstekloff@wilkinsonstekloff.com
Rakesh Kilaru
rkilaru@wilkinsonstekloff.com
Max Warren
mwarren@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005

Jeremy S. Barber
jbarber@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
130 West 42nd Street 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
Facsimile: (202) 847-4005

Rahul Hari
rhari@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
11601 Wilshire Blvd. Suite 600
Los Angeles, CA 90025
Tel: (424) 291-9661
Fax: (202) 847-4005

*Counsel for Defendants National Football League, Inc. and NFL Enterprises LLC and the Individual NFL Clubs*