REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (SKx) |
| | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED AND FOR LIMITED RELATED DISCOVERY** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | JUDGE: Hon. Philip S. Gutierrez<br>DATE: April 19, 2024<br>TIME: 1:30 p.m.<br>COURTROOM:<br>First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

1

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................... 1

ARGUMENT & AUTHORITIES .......................................................................... 3

    I.    The NFL Failed Its Burden to Prove the Documents Are
         Privileged. ...................................................................................... 3

         A.    Entries Related to Mr. Hawkins After 2000 Are
               Inherently Suspect. ................................................................ 4

         B.    The "███████████████" Memo Should Be
               Reviewed. ................................................................................ 6

         C.    Other Entries Identified by Plaintiffs Should Also Be
               Reviewed. ................................................................................ 7

         D.    The NFL Ignores Obvious Deficiencies in its
               Supplemental Log. ................................................................ 7

    II.    The Other Relief Requested by Plaintiffs Should be Granted. ............. 8

         A.    Plaintiffs Acted Diligently Throughout the Case. ...................... 9

         B.    Any Minimal Prejudice Is of the NFL's Own Making. ........... 15

CONCLUSION ................................................................................................. 15

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ActiveRain Corp. v. Move, Inc.*,

5

    2008 WL 11337643 (C.D. Cal. Dec. 16, 2008) ...................................................7

6

*Applied Med. Res. Corp. v. Ethicon, Inc.*,

7

    2005 WL 6567355 (C.D. Cal. May 23, 2005).......................................................3

8

*Appling v. State Farm Mut. Auto. Ins. Co.*,

9

    340 F.3d 769 (9th Cir. 2003) ..............................................................................13

10

*Authentec, Inc. v. Atrue Techs., Inc.*,

    2008 WL 5120767 (N.D. Cal. Dec. 4, 2008) ......................................................9

11

12

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,

    2008 WL 5214330 (N.D. Cal. Dec. 12, 2008) ....................................................8

13

14

*Bd. of Trade of Chicago v. U.S.*,

    246 U.S. 231 (1918) .......................................................................................2, 11

15

*Benchmark Young Adult School, Inc. v. Launchworks Life Services,*

16

    *LLC,*

17

    2014 WL 3014720 (S.D. Cal. July 3, 2014).......................................................14

18

*Boyd v. Meriter Health Servs., Inc.*,

    2011 WL 13209231 (W.D. Wisc. Aug. 23, 2011) ..............................................6

19

20

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,

    408 F.3d 1142 (9th Cir. 2005)..............................................................................8

21

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,

22

    2023 WL 8188844 (N.D. Cal. Nov. 27, 2023)...................................................13

23

*Feinberg v. Katz*,

24

    2003 WL 260571 (S.D.N.Y. Feb. 5, 2003) .........................................................5

25

*Franco-Gonzalez v. Holder*,

26

    2013 WL 8116823 (C.D. Cal. May 3, 2013)........................................................7

27

*Function Media, L.L.C. v. Google, Inc.*,

    2010 WL 276093 (E.D. Tex. Jan. 15, 2010) .....................................................11

28

*Grand River Enters. Six Nations, Ltd. v. King*,
2009 WL 1360686 (S.D.N.Y. May 15, 2009)............................................... 3

*Home Depot U.S.A., Inc. v. Ohio Cas. Ins. Co.*,
2008 WL 11424225 (N.D. Tex. Mar. 31, 2008) ....................................... 10

*In re ATM Fee Antitrust Litig.*,
2007 WL 1827635 (N.D. Cal. June 25, 2007) ......................................... 11

*Interstate Fire & Cas. Co. v. Apartment Mgmt. Consultants, LLC*,
2015 WL 12867058 (D. Wyo. May 29, 2015) ......................................... 10

*M.H.C. v. Cnty. of Los Angeles*,
2019 WL 13242561 (C.D. Cal. Nov. 5, 2019) ........................................ 12

*Procaps S.A. v. Patheon Inc.*,
2014 WL 1230737 (S.D. Fla. Mar. 25, 2014) ......................................... 15

*Shuey v. Cnty. of Ventura*,
2016 WL 4367224 (C.D. Cal. Aug. 11, 2016) ........................................ 12

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
272 F.R.D. 350 (W.D.N.Y. 2011) ............................................................. 3

*U.S. v. Ruehle*,
583 F.3d 600 (9th Cir. 2009) ...................................................................... 4

*Wright v. Gringo*,
2021 WL 689924 (S.D. Cal. Feb. 22, 2021) ......................................... 15

**Rules**

Fed. R. Civ. P. 16 ...................................................................................... *passim*

Fed. R. Civ. P. 26(e) ................................................................................. *passim*

Fed. R. Civ. P. 37 ............................................................................................. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

The NFL's opposition confirms that there are strong reasons to doubt the integrity of its privilege logs—and that, if unaddressed, the problematic bases for its privilege assertions threaten to undermine the integrity of the trial itself. The NFL's only response to the incredibly high error rate on the hundreds of documents it has recently released—a *66%* reversal rate as to one tranche and a *57%* reversal rate as to another—is to say such documents were initially logged because they had some "indicia" of privilege. Opp. 11. The fact that the NFL apparently withheld and logged documents merely because they had "indicia" that they *may* be privileged—rather than *actually determining* that they *were* privileged—is, to say the least, very concerning.

The NFL has provided no assurance that there is not a similarly high error rate for the remaining documents on its logs. Faced with challenges to over 300 documents that it continues to withhold, the NFL does not come close to meeting its burden to establish they are privileged. While the NFL broadly withheld documents on the grounds that they involved legal advice from Mr. Hawkins, neither the NFL nor Mr. Hawkins disputes that, from 2000-2008 while he worked for the NFL in New York, he (1) was never barred in New York; (2) held the job title "Senior Vice President, Business Affairs," *not* "Legal and Business Affairs," as the NFL's list of counsel inaccurately represented; and (3) served primarily in a business strategy, rather than a legal, role. More importantly, the NFL's opposition makes no attempt to actually show that the specific communications at issue were made *primarily* for legal, rather than business, purposes, as the law requires. At the same time, the NFL ignores Plaintiffs' identification of several log entries that were either blatantly wrong or facially insufficient to justify the assertion of privilege. This response gives little reason to trust the integrity of the remaining log entries (particularly those including Mr. Hawkins).

1    Rather than defend its own conduct or attempt to prove the challenged
2    documents are actually privileged, the NFL instead attempts to shift the inquiry to
3    Plaintiffs' diligence. But this procedure-over-substance argument is both legally
4    and factually baseless. The NFL's brief entirely *ignores* the fact that it has a
5    *continuing* obligation under Rule 26(e) to produce non-privileged documents—an
6    obligation that is self-executing under Rule 37 and does not depend in any way on
7    modifying the Scheduling Order or on Plaintiffs' diligence. The NFL's brief does
8    not even cite Rule 26(e) because it simply has no answer to this basic point.

9    Plaintiffs' diligence is only relevant under Rule 16 to the extent it is
10   necessary to modify the scheduling order to permit the Magistrate Judge assigned to
11   this case or a Special Master to oversee the review of the remainder of its privilege
12   log and, on the basis of any produced documents, order any additional depositions
13   that may be required after the discovery cut-off. Plaintiffs have been more than
14   diligent in (1) seeking discovery concerning the NFL's ongoing control over
15   Sunday Ticket's price (including the reasons the NFL shifted from ████████
16   ████████████████████████████████████; (2) challenging the
17   NFL's privilege logs; and (3) following up on a needle-in-a-haystack find in the
18   leadup to trial.

19   But the NFL's contrary argument tellingly reveals its true concern: NFL
20   witnesses swore under oath that they did not engage in any price-setting during the
21   Class Period. *See* Opp. 10. No surprise, as witnesses may feel safe *saying* all sorts
22   of things when they believe *documents* that would show the opposite have been
23   withheld. But Plaintiffs' motion now threatens to unearth critically important
24   documents that bear on the NFL's long-standing control over Sunday Ticket's price
25   and could undermine that testimony. So the NFL says the documents are "too old"
26   and Plaintiffs are "too late." To quote the Bard, what's past is prologue. The NFL's
27   control of Sunday Ticket's price before, during, and after the class period are all
28   relevant. *Bd. of Trade of Chicago v. U.S.*, 246 U.S. 231, 238 (1918) ("The history

of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts."). And it is not too late to get to the *truth* before trial. Granting Plaintiffs' motion is the best way to ensure that is done.

## ARGUMENT & AUTHORITIES

### I.     The NFL Failed Its Burden to Prove the Documents Are Privileged.

The NFL's opposition attempts to shift the focus to Plaintiffs' diligence, but that issue is completely *irrelevant* to the NFL's continuing obligation under Rule 26(e) to produce non-privileged documents—an obligation that is self-executing even after discovery has closed. Plaintiffs' opening brief cited extensive authority for that proposition, which the NFL's opposition brief ignores altogether. *Compare* Mot. at 9 (citing Rule 26(e) and supporting cases) *with* Opp. at Table of Auth. (failing to discuss Rule 26(e) or any of Plaintiffs' cases for this proposition).[1]

The NFL next erroneously argues that Plaintiffs have failed to "justify" why certain documents should be produced, but the burden of proof is not on Plaintiffs. Plaintiffs need only show—for purposes of deciding the propriety of *in camera* review—that a ***reasonable basis*** exists to question whether a document is privileged. *See Applied Med. Res. Corp. v. Ethicon, Inc.*, 2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005). That standard is easily satisfied here, given (1) the exceptionally high reversal rate on the NFL's recently released documents; (2) significant questions regarding Mr. Hawkins' business role; and (3) the NFL's failure to dispute that there were numerous inaccuracies in its privilege log, and its admission that it withheld documents based on the mere "indicia" of privilege. ***It is the NFL*** as the "party asserting the attorney-client privilege [that] has the burden of

---

[1] "Rule 26(e) is a 'continuing obligation' and is not subject to 'any limitation of time.'" *Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 1360686, at *2 (S.D.N.Y. May 15, 2009). *See also, e.g., Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) ("The duty to supplement continues even after the discovery period has closed.").

establishing the relationship *and* the privileged nature of the communication." *U.S. v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009) (cleaned up). But the NFL does not even come close to doing so.

### A.   Entries Related to Mr. Hawkins After 2000 Are Inherently Suspect.

The NFL makes no persuasive attempt to meet its burden of proving that the documents involving Mr. Hawkins are privileged. As an initial matter, there is serious reason to question whether *any* of the Hawkins documents dated from 2000-2008 are privileged based on his role at the NFL during that time. The NFL does not dispute the key facts about Mr. Hawkins raised in Plaintiffs' motion: (1) he was never barred nor registered as an attorney with the State of New York, where he worked from the year 2000 onward under a job title that plainly involved a business strategy role; (2) the job title the NFL listed for Mr. Hawkins with its privilege logs incorrectly indicated that his title included the word "Legal" when it did not; and (3) his ***primary*** job function during this time was business, rather than legal.

Hawkins' declaration says only that he was "a legal advisor" during his tenure at the NFL, rather than affirming that his role was ***primarily or principally*** as a legal advisor after he moved to New York in 2000. Mr. Hawkins' carefully-worded declaration never says what his ***primary*** role was, but concedes that he gave up at least some legal functions altogether upon his move to New York. Hawkins Decl. ¶¶ 8-10. That omission is notable because, before this dispute arose, Mr. Hawkins publicly described his role at the NFL as "strategic planning" regarding "the structuring, negotiation, and administration of the NFL's television and new media policies and contracts"—business, not legal, functions. Gore Decl. Ex. 36. The NFL attempts to fill this glaring gap in Mr. Hawkins' declaration by pointing to his deposition testimony that his role "was more legal" than business. Opp. 13. But the NFL's quote from that testimony omits a crucial word at the start of the very same sentence: "Initially." Barber Decl. Ex. 15 at 18:19. Hawkins joined the NFL in 1993. And, as he admits in his declaration, his title changed in 1999—six

4

years after joining the NFL—to "Senior Vice President, Business Affairs" and he shortly thereafter moved to New York where he was not barred. *See* Hawkins Decl. ¶¶ 7, 9. And while the NFL trots out documents referring to Mr. Hawkins in some legal role, they predominantly are dated from the 1990s before he assumed this new role related to "Business Affairs." *See* Opp. 13, n.4 and 5.

The NFL suggests that Mr. Hawkins nevertheless was *permitted* to practice law in New York, citing the ABA Model Rules and a Restatement of the Law. *See* Dkt. Opp. 15-16. But that ignores the fact that state law is controlling on these issues and, as Plaintiffs' motion shows (and the NFL does not dispute), New York did ***not*** permit multijurisdictional practice for in-house attorneys until well after Mr. Hawkins stopped working for the NFL. *See* Mot. 17-18; *Feinberg v. Katz*, 2003 WL 260571, at *4 (S.D.N.Y. Feb. 5, 2003).

Even if he was not permitted to practice law in New York, the NFL cites caselaw suggesting that legal advice in this context *may* nevertheless—in some instances—be privileged. But the NFL fails to provide any evidence to show that the ***specific documents*** involving Mr. Hawkins—after he moved to New York in 2000, where he was not barred, and changed job titles—are ***actually*** privileged because they ***primarily*** involved legal rather than business advice. The NFL does not submit any declaration or other evidence to that effect, instead relying purely on argument in its brief. There is good reason to require that the NFL establish that each document involving Mr. Hawkins is privileged, as the law requires, particularly given that the NFL does not dispute that: (1) it produced nearly 200 entries associated with Mr. Hawkins from its logs that were not privileged (suggesting others may be as well); and (2) its logs contained multiple, now admittedly incorrect, representations on entries associated with Mr. Hawkins (stating that documents were "from" him when they weren't, and reflected his "legal advice" when he didn't provide any advice at all). Mot. at 18-19.

There is thus a reasonable basis to question whether Mr. Hawkins' documents from 2000 and later are privileged. *In camera* review in these circumstances is entirely justified and appropriate.

**B.    The "█████████████████" Memo Should Be Reviewed.**

The NFL does not dispute that the Sunday Ticket pricing memorandum was written by a non-lawyer or that it concerns the pros and cons of ████████ ████████████████. Rather, the NFL simply argues that, because one portion of the memorandum refers to an entirely separate memorandum █████ ████████████ then the entire memorandum must be privileged. That argument is nothing more than the flawed argument that including counsel on correspondence automatically makes it privileged in different clothing. *See, e.g.*, *Boyd v. Meriter Health Servs., Inc.*, 2011 WL 13209231, at *4-5 (W.D. Wisc. Aug. 23, 2011) (memorandum discussing pros and cons on business issue, even where based on legal advice, was not privileged).

To be clear, Plaintiffs are not seeking production or even *in camera* review of the referenced memorandum ████████████. But the NFL's exceptionally brief arguments regarding its own *internal* memorandum never respond to the points Plaintiffs' motion raised: *First*, it appears that whatever legal advice █████ ██████ is in a ***separate memorandum*** that Plaintiffs are not seeking. *Second*, there is no reason to think that the challenged pricing memo otherwise discusses ██████████ legal advice, as (1) there is a reference to the separate ██████ memorandum at the bottom of the first page; and (2) a comparison to an earlier draft of the pricing memo suggests that each section of the pricing memo is independent. *Compare* Gore Decl. Ex. 16 *with* Ex. 17. *Third*, the NFL presents no evidence that would show the remainder of the memo reflects ██████████ legal advice, rather than the strategic decision-making of business executives who were informed by many factors (including the separate ████████ analysis).

A reasonable basis exists to review this document *in camera*.

6

C.    **Other Entries Identified by Plaintiffs Should Also Be Reviewed.**

Plaintiffs also identified a limited number (21) among thousands of log entries that warrant additional review immediately. Mot. at 20-23. Yet the NFL provides no ***proof*** to satisfy its burden that the documents are privileged: it offers no declarations or other evidence supporting its claims as to those documents. Moreover, the NFL does not dispute the facts raised by Plaintiffs: that supplemental log entry 1370 was written by ██████████ (a non-lawyer) and that the changes on the NFL's log regarding this entry are questionable; that several entries did not have attorneys listed on them; that several entries where a lawyer was included amongst several recipients does not show that the lawyer ever responded; and that some relate to issues that are clearly business, rather than legal, in nature such as "██████████." *See* Mot. at 20-23. Combined with the many other issues on the NFL's privilege logs raised in the instant motion, there is a reasonable basis to question the NFL's privilege claims on this very narrow set of documents.

D.    **The NFL Ignores Obvious Deficiencies in its Supplemental Log.**

Plaintiffs also identified several specific entries on the NFL's supplemental privilege log that were severely deficient. These entries, for example, fail to identify the author of the document, the recipients of the document, the date the document was written, the document's purpose or ***any*** other information enabling Plaintiffs to assess the privilege claim. *See* Mot. at 23-24. It is clear that such information must be provided on a party's privilege log. *See Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013); *ActiveRain Corp. v. Move, Inc.*, 2008 WL 11337643, at *2 (C.D. Cal. Dec. 16, 2008).

Not only does the NFL fail to provide any proof that these entries are in fact privileged, but the NFL fails to provide ***any response whatsoever*** to Plaintiffs' arguments on these entries. The NFL's silence amounts to an admission that these entries are, indeed, deficient. In light of the fact that Plaintiffs identified these entries more than two months ago, the NFL's failure to correct any of those entries,

and the NFL's complete failure to respond, there is sufficient basis to conclude that the NFL has waived any privilege related to those documents and they should be produced to Plaintiffs immediately. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-48 (9th Cir. 2005); *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5214330, at *3 (N.D. Cal. Dec. 12, 2008) ("Failure to provide sufficient identification waives the privilege.").

## II.    The Other Relief Requested by Plaintiffs Should be Granted.

In addition to the specific, improperly withheld documents above, as to which Plaintiffs' request *in camera* review, Plaintiffs' motion also requests that the Court designate the Magistrate Judge assigned to this case or appoint a Special Master to (1) oversee the review of the remainder of its privilege log; (2) review withheld documents *in camera*; and (3) based on any produced documents, order limited, additional depositions if necessary (which, in, turn, would require allowing discovery now under Rule 16). This additional relief is warranted.

A complete review of the privilege logs is required to ensure that this case is tried on the merits. For the reasons discussed above, there are serious reasons to doubt the integrity of the NFL's logs as a whole, particularly entries involving Hawkins and that do not include outside counsel. It is especially troubling that the NFL (1) does not even attempt to defend numerous inaccurate statements in its log, which Plaintiffs' motion identified; (2) does not attempt to prove that the approximately 300 documents described above are *actually* privileged; and (3) concedes that it logged documents merely based on "indicia" of privilege, rather than actual determinations that the documents *are* privileged. The NFL focuses on the fact that a handful of its privilege claims were upheld previously, but that was well before the significant problems raised in the instant motion became known, or before the NFL's more recent reversal rate of *57% to 66%*.

Any review to be conducted should be subject to the oversight of either the Court, the Magistrate Judge, or a Special Master, with the power to inspect

documents *in camera*. (Plaintiffs raised the prospect of a special master as a potential resource if necessary. Plaintiffs respectfully defer to the Court's judgment as to who should oversee the review and conduct *in camera* inspection.)

Plaintiffs also understandably seek leave to conduct such limited depositions—a small number and with appropriate time limitations—in light of the documents that are produced as a result of this motion. Despite such a reasonable request, the NFL makes a litany of arguments in opposition to any discovery that are meritless. For example, the NFL claims Plaintiffs never conferred on the need for depositions, *see* Opp. 23, but elsewhere acknowledges that Plaintiffs did confer on depositions, *see id.* at 6. Plaintiffs also raised the potential need for depositions due to these issues at the January 23, 2024 status conference. *See* Dkt. No. 1216 at 8. As to the identity of potential deponents, common sense dictates that Plaintiffs require seeing the documents the NFL has wrongfully withheld before making that determination. In any event, and in contrast to the NFL's arguments, Plaintiffs *did* identify Hawkins as a potential deponent. Mot. 25. Moreover, the caselaw cited by the NFL supports Plaintiffs' request in light of the complex nature of this antitrust class action. *See Authentec, Inc. v. Atrue Techs., Inc.*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008) (noting that the case was a "run-of-the-mill patent case with one plaintiff and defendant" rather than a "complex class action with numerous plaintiffs and defendants").

The NFL's remaining arguments regarding the factors to modify the scheduling order under Rule 16 are equally meritless. But, in any event, such arguments only bear on whether depositions are justified—not whether the NFL must abide by its obligation under Rule 26(e) to produce non-privileged documents.

## A.     Plaintiffs Acted Diligently Throughout the Case.

The NFL seeks to distract from the unreliability of its privilege logs by focusing on Plaintiffs' diligence. As explained below, the NFL's arguments are meritless. More to the point, "[t]he court's ultimate objective is to seek the truth—

what really occurred—and it [should] not exalt procedure over substance at the expense of the truth." *Home Depot U.S.A., Inc. v. Ohio Cas. Ins. Co.*, 2008 WL 11424225, at *3 n.2 (N.D. Tex. Mar. 31, 2008) (taking judicial notice of document that defendant should have included in summary judgment materials); *see also Interstate Fire & Cas. Co. v. Apartment Mgmt. Consultants, LLC*, 2015 WL 12867058, at *2 (D. Wyo. May 29, 2015) ("To deny the motion is to potentially favor procedure over substance.") (granting motion to consider supplemental evidence after close of briefing). The record also shows that Plaintiffs have acted diligently, both as a general matter and as to the specific issues now in dispute.

*First*, as Plaintiffs' motion points out—and the NFL does not dispute— Plaintiffs were diligent throughout discovery in this case. Plaintiffs pursued hundreds of document requests, issued numerous third-party subpoenas, received millions of pages of documents, filed several motions to compel against the NFL and third parties, and took numerous depositions of NFL witnesses and third parties. *See* Mot. 10; *see also* Gore Decl., Dkt. No. 1265-2, at ¶ 6.

*Second*, the NFL's argument that Plaintiffs did not seek discovery about the ███████████████████████████████████████████████████████████████ is demonstrably meritless. The NFL claims, for example, that Plaintiffs **never** asked **any** NFL witnesses at their depositions about the ████████████████, including its 30(b)(6) witness that was designated to testify on ███████████████ ████████████████████████. *See* Opp. 10. Not so. Plaintiffs spent nearly *60 pages* of transcript questioning former Commissioner Tagliabue about ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████, and related topics. *See* Gore Reply Decl. Ex. 47 at 79:23-138:25. Plaintiffs also asked the NFL's corporate representative about the change from ████████████████████

1    ████████████, but he had nothing meaningful to offer. As pointed out in Plaintiffs'

2    motion, the NFL's 30(b)(6) witness could only respond with: "████████████."

3    Gore Decl. Ex. 4 at 40:4-12.[2] In short, the NFL's claim that Plaintiffs never asked

4    any NFL witnesses about these topics is clearly wrong.

5        The NFL's argument about Plaintiffs' diligence in pursuing discovery on the

6    ████████████ is also a red herring. The NFL contends that Plaintiffs are

7    seeking discovery about "decades-old documents related to a fundamentally

8    different set of broadcasting agreements" that are irrelevant to Plaintiffs' claims.

9    Opp. at 8. It then trots out evidence in support of its claim—on the merits—that

10    DIRECTV supposedly had ████████████ for Sunday Ticket

11    subscribers without any influence from the NFL.

12        The NFL ignores, however, that the history of the restraints at issue is

13    undeniably relevant in an antitrust case such as this. *See Bd. of Trade of Chicago v.*

14    *U.S.*, 246 U.S. 231, 238 (1918) ("The history of the restraint, the evil believed to

15    exist, the reason for adopting the particular remedy, the purpose or end sought to be

16    attained, are all relevant facts."); *In re ATM Fee Antitrust Litig.*, 2007 WL 1827635,

17    at *1, 6 (N.D. Cal. June 25, 2007) ("The Court recognizes that historical

18    information is important to Plaintiffs' case, particularly insofar as it reflects

19    changes or discussion about the structure of the ATM network.") (citing *Bd. of*

20    *Trade of Chicago*). Substantial evidence exists to show that—contractual language

21    notwithstanding—the NFL has consistently ████████████

22    ████████████ before, during, and after the Class Period.

23        The NFL's recent negotiations for the rights to Sunday Ticket show the

24    NFL's continuing role in ████████████. For

25    example, in negotiating with ████ NFL leadership actively sought to "████

26

27    _____

     [2] "When the 30(b)(6) representative claims ignorance of a subject during the

28    deposition, courts have precluded the corporation from later introducing evidence
     on that subject." *Function Media, L.L.C. v. Google, Inc.*, 2010 WL 276093, at *1
     (E.D. Tex. Jan. 15, 2010) (citing cases).

1    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Gore Reply Decl. Ex. 48 (emphasis

2    added). And when negotiating with ▮▮▮ around the same time, the NFL expressly

3    told ▮▮▮ that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮. Gore Reply Decl. Ex. 49.

5        The pricing memoranda discussed in Plaintiffs' motion show that ▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮ not only took place during the Class Period and continues today,

7    but began long before the Class Period: in the midst of negotiating the change

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮" Gore Decl. Ex. 9 at -787; Ex. 16 at -555 (emphasis

12   added).  Consistent  with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮ Gore Reply Decl. Ex. 50 at 96:11-23; Ex. 51 at 128:15-

16   129:9. NFL documents also show that retail pricing for Sunday Ticket was ▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Gore Reply Decl. Ex. 52 at -

18   455 (referring to the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮"). And a DIRECTV witness testified that the relationship between the NFL

20   and DIRECTV was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮." Gore Reply Decl. Ex. 53 at 145:4-19.

22       While the NFL faults Plaintiffs for not having discovered the two ▮▮

23   ▮▮▮▮▮ memoranda buried amongst millions of pages, "reasonable diligence does

24   not demand perfection." *Shuey v. Cnty. of Ventura*, 2016 WL 4367224, at *4 (C.D.

25   Cal. Aug. 11, 2016) (holding good cause was shown despite mistake when party

26   "promptly moved for leave to amend after they discovered the error").[3] And the

27   _____

28   [3] *See also M.H.C. v. Cnty. of Los Angeles*, 2019 WL 13242561, at *4 (C.D. Cal. Nov. 5, 2019) ("[T]he fact Plaintiff's counsel could have reviewed the documents sooner does not compel a finding that they acted without reasonable diligence.")

NFL does not dispute that the two memoranda discussed in Plaintiffs' motion were produced without any meaningful metadata that would facilitate their identification amongst the hundreds of thousands of documents produced in this case.

*Third*, the NFL's own arguments show that Plaintiffs were diligent in challenging the NFL's privilege logs. As the NFL points out, Plaintiffs previously challenged several entries on the NFL's privilege logs on multiple occasions. *See* Opp. at 3-4, 7-8. Similarly, Plaintiffs promptly challenged several entries on DIRECTV's privilege log in this case. *See generally* Dkt. No. 665. That the full scope of the deficiencies on the NFL's logs did not become apparent until recently does not negate the fact that Plaintiffs have regularly—and promptly—challenged privilege assertions throughout this case. Moreover, the NFL's arguments again ignore the NFL's continuing obligation under Rule 26(e) to correct its deficient logs irrespective of the timing.[4] As to Mr. Hawkins and whether Plaintiffs would be entitled to his deposition, the NFL's arguments amount to saying Plaintiffs are at fault for reposing trust in the NFL's representations. *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 785 (9th Cir. 2003) (Fletcher, J., dissenting) (stating that the principle "that a party may not rely on the plain representations of adverse counsel in the discovery process" is "not only cynical but unworkable").

*Fourth*, Plaintiffs acted promptly once they became aware of the present issues. As soon as Plaintiffs uncovered these issues, they immediately raised them with the NFL. Plaintiffs went so far as to retain an investigator to assist in

---

(quotation marks omitted); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2023 WL 8188844, at *3 (N.D. Cal. Nov. 27, 2023) ("Rule 16 does not demand prescience from Plaintiff; it only requires diligence.").

[4] The NFL wrongly claims that Plaintiffs misstated whether the NFL objected to the timeliness of Plaintiffs' recent privilege challenges. While the NFL made reference to the fact that the privilege logs were produced in 2022, the NFL never **refused** to address these issues because they were untimely. Nor could it because of its continuing obligations under Rule 26(e).

investigating the circumstances surrounding Mr. Hawkins' role at the NFL and the status of his bar admission. *See* Dkt. No. 1269; Gore Reply Decl. ¶ 2. When the NFL served amended privilege logs on January 26, 2024, Plaintiffs re-examined the entirety of those logs—7,522 entries over the span of 468 pages—and identified additional deficiencies within one week. *See* Mot. 7-8; Gore Decl. Ex. 3.

The NFL highlights that Plaintiffs never filed a motion under the parties' expedited briefing schedule, but that timeline was necessitated by the prior trial setting. Indeed, the NFL itself acknowledged at the January 23, 2024 status conference that the parties "were sort of cramming in the schedule so it could be heard on February 7th" and that additional time may be needed after Plaintiffs saw what the NFL produced. Dkt. No. 1216 at 9. That production—where the NFL produced two-thirds of the requested documents and where numerous documents were never arguably privileged, *see* Dkt. No. 1271-1 at 7—made clear the scale of the deficiencies in the NFL's privilege logs. That the NFL afterward was compelled to produce hundreds of more documents off its privilege logs is only further proof of those deficiencies. Once the NFL indicated it had completed review of the entries challenged by Plaintiffs, produced documents off its logs, and served yet another set of amended logs, Plaintiffs promptly filed the present motion.[5]

*Fifth*, the caselaw cited by the NFL fails to support its arguments. In fact, the court's decision in *Benchmark Young Adult School, Inc. v. Launchworks Life Services, LLC*, supports Plaintiffs. In that case, the Court found good cause existed under Rule 16 despite the fact that the information underlying Plaintiffs' proposed amendments to the complaint were available on a public website. *See* 2014 WL 3014720, at *3 (S.D. Cal. July 3, 2014). Here, however, Plaintiffs uncovered two documents among millions of pages that were produced without any meaningful

---

[5] The apparent contradiction in the NFL's arguments should also not go unnoticed. In one breath, the NFL claims Plaintiffs failed to act promptly. In another, the NFL claims—despite acknowledging repeated meet and confers on this dispute—that Plaintiffs have "manufactured" this dispute prematurely.

metadata—a fact the NFL does not dispute. And the other case cited by the NFL, *Procaps S.A. v. Patheon Inc.*, focuses on the interpretation of a local rule and does not address a party's continuing obligation under Rule 26(e). *See generally* 2014 WL 1230737 (S.D. Fla. Mar. 25, 2014).

## B.   Any Minimal Prejudice Is of the NFL's Own Making.

Any prejudice the NFL will suffer because of this motion is of the NFL's own making. As Plaintiffs' motion shows, the NFL's logs are riddled with problems—as evidenced by the NFL's production of hundreds of documents listed in those logs and the NFL's failure to respond to many of Plaintiffs' arguments.

The NFL claims it will be prejudiced by the need to prepare for trial, including jury instructions, conferring on trial exhibits, depo designations, and so on. But a substantial amount of that work was completed before the trial date was moved to June 2024. For example, in January 2024, the parties exchanged affirmative deposition designations, filed memoranda of contentions of fact and law, filed exhibit and witness lists, and Plaintiffs served proposed jury instructions. While the parties may need to continue to work on their prior submissions and make adjustments, significant work on those tasks was done months ago.

In addition, the case cited by the NFL was based on completely different circumstances, in which the defendants asked to depose the plaintiffs' expert—for the first time—less than six weeks before trial and after having failed to re-schedule after requesting a postponement and "barely sp[eaking] about the case again" with opposing counsel. *See Wright v. Gringo*, 2021 WL 689924, at *2-3 (S.D. Cal. Feb. 22, 2021). That is not the case here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion so that this case may be tried fully and fairly on the merits.

1    Dated:  April 5, 2024          Respectfully submitted,

2                                        By:  _/s/ Marc M. Seltzer_____

3                                              Marc M. Seltzer

4                                              Marc M. Seltzer (54534)
                                               mseltzer@susmangodfrey.com
5                                              Kalpana Srinivasan (237460)
                                               ksrinivasan@susmangodfrey.com
6                                              Amanda Bonn (270891)
7                                              abonn@susmangodfrey.com
                                               SUSMAN GODFREY L.L.P.
8                                              1900 Avenue of the Stars, Suite 1400
                                               Los Angeles, CA 90067
9                                              Tel: (310) 789-3100
                                               Fax: (310) 789-3150
10

11                                             William C. Carmody (*Pro Hac Vice*)
                                               bcarmody@susmangodfrey.com
12                                             Seth Ard (*Pro Hac Vice*)
                                               sard@susmangodfrey.com
13                                             Tyler Finn (*Pro Hac Vice*)
                                               tfinn@susmangodfrey.com
14                                             SUSMAN GODFREY L.L.P
                                               One Manhattan West
15                                             New York, NY 10001
                                               Tel: (212) 336-8330
16                                             Fax: (212) 336-8340

17                                             Ian M. Gore (*Pro Hac Vice*)
                                               igore@susmangodfrey.com
18                                             SUSMAN GODFREY L.L.P.
                                               401 Union Street, Suite 3000
19                                             Seattle, WA 98101
                                               Tel: (206) 505-3841
20                                             Fax: (206) 516-3883

21                                             Scott Martin (*Pro Hac Vice*)
                                               smartin@hausfeld.com
22                                             HAUSFELD LLP
                                               33 Whitehall Street, 14th Floor
23                                             New York, NY 10004
                                               Tel: (646) 357-1100
24                                             Fax: (212) 202-4322

25                                             Christopher L. Lebsock (184546)
                                               clebsock@hausfeld.com
26                                             Samuel Maida  (333835)
                                               smaida@hausfeld.com
27                                             HAUSFELD LLP
                                               600 Montgomery St., Suite 3200
28                                             San Francisco, CA 94111
                                               Tel: (415) 633-1908
                                               Fax: (415) 633-4980

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

17