UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Lynnie Fahey | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order GRANTING in part and DENYING in part Defendants' motion *in limine* No. 3.   DKT [1112]

Before the Court is Defendants'[1] motion *in limine* No. 3 to exclude reference to past litigation against the NFL.  *See generally* Dkt. # 1112 ("*D MIL 3*").  Plaintiffs[2] opposed, *see generally* Dkt. # 1193 ("*D MIL 3 Opp.*"), and Defendants replied, *see* Dkt. # 1226 ("*D MIL 3 Reply*").  The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving, opposing, and reply papers, the Court **GRANTS in part and DENIES in part** Defendants' motion *in limine* No. 3.

---

[1] Defendants in this action consist of:  National Football League, Inc. ("NFL"); Arizona Cardinals, Inc.; Atlanta Falcons Football Club LLC; Baltimore Ravens LP; Buccaneers LP; Buffalo Bills, Inc.; Chicago Bears Football Club Inc.; Cincinnati Bengals, Inc.; Cleveland Browns LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos Football Club; Detroit Lions, Inc.; Football Northwest LLC; Green Bay Packers, Inc.; Houston NFL Holdings LP; Indianapolis Colts Inc.; Jacksonville Jaguars Ltd.; Kansas City Chiefs Football Club, Inc.; Miami Dolphins, Ltd.; Minnesota Vikings Football Club LLC; NFL Enterprises LLC; New England Patriots, LP; New Orleans Louisiana Saints LLC; New York Football Giants, Inc.; New York Jets Football Club, Inc.; Oakland Raiders LP; PDB Sports Ltd.; Panthers Football LLC; Philadelphia Eagles Football Club, Inc.; Pittsburgh Steelers Sports, Inc.; San Diego Chargers Football Co.; San Francisco Forty Niners Ltd.; Tennessee Football, Inc.; The Rams Football Company LLC; and, Washington Football Inc.

[2] Plaintiffs are two classes of DirecTV NFL Sunday Ticket subscribers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

I. <u>Background</u>

This is an antitrust suit where Plaintiffs allege that Defendants have entered a set of agreements with each other and their broadcast partners—DirecTV, CBS, and FOX—that suppress the output of telecasts of out-of-market professional football games. *See Order re Defendants' Motion for Summary Judgment*, Dkt. # 1155 ("*Sum. J. Order*"), 2. The alleged outcome of these agreements is that DirecTV has been able to charge supracompetitive prices for Sunday Ticket, a subscription package that provides telecasts of all NFL games. *Id.*

Defendants move to exclude evidence of past lawsuits that involve the NFL under Federal Rules of Evidence ("FRE") 401, 402, and 403, specifically *United States v. Nat'l Football League*, 116 F. Supp. 319 (E.D. Pa. 1953) ("*NFL I*"); *United States v. Nat'l Football League*, 196 F. Supp. 445 (E.D. Pa. 1961) ("*NFL II*"); and *Shaw v. Dallas Cowboys Football Club, Ltd.*, No. 97-5184, 1998 WL 419765 (E.D. Pa. June 23, 1998), *aff'd*, 172 F.3d 299 (3d Cir. 1999) ("*Shaw*"). *See D MIL 3* 1:1–14; *D MIL 3 Reply* 8:19–21. On reply, Defendants clarify that they seek to preclude the existence or outcomes of the past lawsuits, and their motion does not concern admissible evidence of the facts underlying the past lawsuits. *See D MIL 3 Reply* 1:8–11, 2:3–5.

II. <u>Legal Standard</u>

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party may also file a motion *in limine* to admit evidence. *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the FREs. *See Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

FRE 402 provides that "[r]elevant evidence is admissible" unless the U.S. Constitution, a federal statute, the FREs, or "other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. FRE 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The FRE 403 balancing inquiry is made on a case-by-case basis, requiring an examination of the surrounding facts, circumstances, and issues. *United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015).

III.   Discussion

The Court understands the scope of the dispute to be whether Plaintiffs can introduce *NFL I*, *NFL II*, and *Shaw*. While Defendants framed their motion to broadly exclude "prior lawsuits against the NFL," see *D MIL 3* 1:15–2:6, Plaintiffs only argue that "antitrust litigation involving the NFL Defendants regarding the broadcast arrangements of NFL games is relevant," *e.g., D MIL 3 Opp.* 1:8–19. As Plaintiffs concede that evidence of past lawsuits against the NFL not involving antitrust litigation or television broadcasts of NFL games is not relevant, the Court precludes Plaintiffs from introducing evidence of such cases involving the NFL. Further, Plaintiffs' opposition solely focuses on the merits of presenting evidence of *NFL I*, *NFL II*, and *Shaw* (collectively, "NFL Antitrust Litigations"). See *D MIL 3 Opp.* 2:7–19. Accordingly, the Court will focus its analysis on the NFL Antitrust Litigations.

Plaintiffs argue that the NFL Antitrust Litigations are (1) relevant because the "historical backdrop of the NFL Defendants' broadcasting arrangements and the challenges to those arrangements are necessary to the jury's rule of reason analysis"; (2) admissible under § 5(a) of the Clayton Act, 15 U.S.C. § 16(a), and the doctrine of collateral estoppel; and (3) admissible to prove Defendants' "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *D MIL 3 Opp.* 1:11–19. The Court will first begin by discussing the parties' arguments under FREs 401, 402, and 403 and then will address Plaintiffs' other arguments.

   A.   Admissibility of the NFL Antitrust Litigations under FREs 401, 402, and 403

As an initial matter, the Court excludes evidence of *Shaw*. Plaintiffs argue that *Shaw*, which involved Sunday Ticket, is relevant to the historical context of cable deals where teams pooled their telecast rights "in connection with paid telecasts" and to rebut Defendants' potential argument that "their conduct is protected under the [Sports Broadcasting Act ("SBA")]." *Id.* 6:22–7:9.

The Court further addresses Plaintiffs' rebuttal argument below. As to its relevance, evidence of *Shaw* would be introduced to show that a court has determined, in a similar context, that the SBA does not extend to paid telecasts. *Id.* 7:3–6 ("In *Shaw*, as in every case that has addressed the issue, the court rejected the NFL's claim that the SBA extended to cable or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

satellite television services, as opposed to those provided free to the general public."). But how the SBA applies to paid telecasts is an issue of law for the Court to instruct the jury on. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."); *see also Plaintiffs' Opp. to NFL MIL No. 2*, Dkt. # 1992, 5 n.4 (citing Plaintiffs' expert who explains he is "not opining on the scope of the SBA because that's a legal question"). And allowing Plaintiffs to introduce evidence of *Shaw* creates a significant risk of prejudice. *Cf. Malkin v. Fed. Ins. Co.,* 2:21-cv-00172-CAS (PDx)*, 2023 WL 6967458, at *14 (C.D. Cal. Oct. 20, 2023 (excluding evidence of insurance findings and the insurance code because "the limited relevance of this evidence is outweighed by the danger of confusion to the jury regarding questions of coverage and the applicable law").

The Court finds, on the other hand, that evidence of *NFL I* and *NFL II* is relevant.

*NFL I* is relevant to the history of NFL teams competing with each other for broadcast rights and helps explain Article X of the bylaws in the NFL Constitution, which includes the NFL's broadcasting and television conditions and restrictions. *See D MIL 3 Opp.* 3:5–4:11. That litigation arose from the NFL amending its bylaws to address the concern of too much competition between the teams in the market for broadcast rights. *See In re National Football League's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136, 1148, 1144 (9th Cir. 2019) ("*NFL Sunday Ticket*"). After a bench trial, the court "held that the NFL could restrict the broadcast of distant games into home territories in order to protect attendance for the local team's game without violating antitrust law," but "the NFL could not restrict teams from broadcasting their games into another team's local market when that team was playing away games." *Id.* at 1145. The court thus "enjoined the NFL teams from entering into a contract that restricts the sale of rights for the telecasting of outside games in club's home territory on a day when the home club is permitting the telecast of its away game in its home territory." *Id.*

*NFL II* is key to understanding the precipitating events that led to the passage of the SBA. *See D MIL 3 Opp.* 6:9–21. In 1961, the NFL filed a petition with the same court seeking to implement a new television contract between the NFL and CBS, where the "NFL teams would pool their television rights in the NFL and then the NFL would jointly sell those rights to CBS." *NFL Sunday Ticket* at 1145. The court denied the petition, "holding that the proposed agreement violated [its] previous injunction because if the agreement went into effect, 'the member clubs of the League [would] have eliminated competition among themselves in the sale of television rights to their games.'" *Id.* (quoting *NFL II* at 447). Rather than appeal, "the NFL sought Congressional relief, and in response to the NFL's lobbying, Congress passed" the SBA. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Accordingly, these antitrust litigations are relevant to the development of the current NFL broadcasting arrangement and, in turn, the agreements at issue in this case. The remaining issue now is whether their probative value is substantially outweighed by the risk of prejudice. Fed. R. Evid. 403.

Plaintiffs assert that the litigation history and the Defendants' admissions in these cases are essential for the jury to apply the rule of reason. *D MIL 3 Opp.* 5:6–9. Plaintiffs intend to use evidence of those litigations to show the "history of the restraints on NFL telecasts at issue in this case," *id.* 1:3, and introduce *NFL I* and *NFL II*'s specific findings of fact and conclusions of law, *see id.* 5:14–20. For example, Plaintiffs contend that *NFL I* shows that competition for telecast rights previously existed among the NFL teams. *Id.* 3:14–22. As evidence, Plaintiffs cite to *NFL I*:

> That competition was restrained by *agreement*, namely the teams' amendment of Article X of the NFL bylaws, as recounted plainly in *NFL I*: "The government has filed this action seeking an injunction against the provisions of Article X …. The by-laws have been agreed to by all the League members and are binding upon all of them. They clearly constitute a contract within the meaning of the word as it is used in the Sherman Act." *NFL I*, 116 F. Supp. at 319.

*Id.* 3:14–22.

As to *NFL II*, Plaintiffs argue that the "court's discussion, based on the teams' admitted arrangements, removes any doubt that the NFL Defendants can compete over broadcast rights and that the rights are not 'naturally owned by the League.'" *Id.* 4:15–17. Plaintiffs specifically refer to the court's opinion stating:

> *Defendants concede* that the 1961 NFL-CBS contract marks a basic change in National Football League television policy. Prior to this contract each member club individually negotiated and sold the television rights to its games to sponsors or telecasters with whom it could make satisfactory contracts. The NFL-CBS contract sharply departs from this practice. *It is implicit in the 1961 contract that the member clubs have agreed among themselves and with the League* that each club will not sell its television rights separate and apart from those of the other clubs, but that each club will pool its television rights with those of all of the other clubs, and that only the resulting package of pooled television rights will be sold to a purchaser. The clubs authorized the Commissioner of the League to sell this package of pooled television rights, and under the provisions of the 1961 contract with CBS he sold it. *Thus, by*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

*agreement, the member clubs of the League have eliminated competition among themselves in the sale of television rights to their games.*

*Id.* 4:18–5:5 (citing *NFL II*, 196 F. Supp. at 446–47).

If Plaintiffs can introduce the evidence of the existence or outcome, including the findings of fact and conclusions of law, of *NFL I* and *NFL II*, Defendants state they will be prejudiced because (1) Plaintiffs will use the evidence to suggest that Defendants have a history of violating antitrust laws; (2) it will carry undue weight with the jury; and (3) it will lead to time wasting mini-trials in order to set the proper context for each suit. *See D MIL 3 Reply* 2:17–3:3, 4:3–5:22. Although the Court disagrees with entirely excluding the existence of *NFL I* and *NFL II*, the Court shares Defendants concerns regarding their prejudicial effect.

As to Defendants' first concern that Plaintiffs will improperly suggest that NFL has a history of violating antitrust laws, the Court does not find the prejudicial effect outweighs the relevance of the existence and outcome of *NFL I* and *NFL II*. The antitrust litigations occurred over 60 years earlier under a completely different set of agreements. The length of time between the two antitrust litigations and the present dispute mitigates the concern that Plaintiffs can use these litigations to suggest that Defendants disregard antitrust laws. Further, when addressing these two litigations, Defendants may quickly distinguish them using cross-examination.[3] Their relevance goes to explaining the background of the NFL's current broadcasting arrangement and the development of the SBA. The Court believes that precluding their outcome or existence would be detrimental to the jurors' understanding of the broadcasting history of the NFL, which the Ninth Circuit described as very important to understanding this case. *See NFL Sunday Ticket* at 1144 ("To analyze the challenged arrangement between the NFL teams, the NFL, and DirecTV, it is necessary to understand the history of television broadcasting of NFL games.").

The Court, however, is concerned about the prejudicial effect of allowing Plaintiffs to introduce *NFL I*'s and *NFL II*'s findings of fact, conclusions of law, and purported admissions by the NFL as articulated in the court's orders. First, the Court is concerned that the jury will give undue weight to the court's orders, which is exacerbated given the complexity of this case. *See* Fed. R. Evid. 403; *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007), *aff'd* 553 U.S. 591 (2008). And second, opening the door to *NFL I*'s and *NFL II*'s findings of fact and conclusions of law would confuse issues and waste time by leading to time-consuming tangents about the merits of those litigations. *See United States v. Kealoha*, CR. NO. 17-00582 JMS-

---

[3] Particularly given the Court's ruling on Defendants' motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

WRP, 2019 WL 2620004, at *6 (D. Haw. June 26, 2019) (excluding a past verdict that would "open up the door to further evidence about the [underlying] civil trial," causing "undue delay").

Plaintiffs express concerns that "[t]he jury should not be left to wonder, or worse be misled, as to whether the NFL teams can compete, when in fact the litigation history demonstrates that they have competed in the past with respect to broadcast rights," *D MIL 3 Opp.* 7:11–13, and that "it is only through an act of Congress that the teams are permitted to restrain competition among themselves by pooling their rights," *id.* 7:14–15. But Plaintiffs can address those concerns by introducing the underlying facts and outcomes of *NFL I* and *NFL II* without the undue prejudice of introducing evidence of the court's factual findings and legal conclusions.

Accordingly, the Court excludes introducing evidence of the court's specific findings of fact and conclusions of law—*i.e.,* introduce specific language from the court's orders—in *NFL I* and *NFL II* because the probative value is substantially outweighed by the risk of prejudice. *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 686 F.App'x 422, 424–25 (9th Cir. 2017) ("Evidence of prior lawsuits should be excluded when the possible prejudice to a party outweighs any probative value."). Plaintiffs, however, are not precluded from discussing the ultimate outcomes of *NFL I* and *NFL II* when discussing the history of the NFL's broadcasting rights.

      B.    <u>Admissibility of the NFL Antitrust Litigations under FRE 404(b) and the doctrine of collateral estoppel</u>

The Court finds Plaintiffs' remaining arguments to be without merit.

Plaintiffs argue that the NFL Antitrust Litigations "are admissible under FRE 404(b) to prove the NFL Defendants' 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *D MIL 3 Opp.* 1:17–19 (quoting Fed. R. Evid. 404(b)(2)); *see also id.* 7:10–23. FRE 404(b) "deals with a specialized but important application of the general rule excluding circumstantial use of character evidence." Fed. R. Evid. 404 advisory committee's note to 1972 proposed rules. FRE 404(b) forbids evidence of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence is admissible if it is used for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

Though unclear, Plaintiffs' argument presupposes that Defendants seek to exclude evidence the NFL Antitrust Litigations as impermissible character evidence, which Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

could not do. *See David Sansone Co., Inc. v. Waiaha Ridge LLC*, No. CV 20-00411 HG-RT, 2023 WL 6958813, at *3 (D. Haw. Oct. 20, 2023) ("Rule 404(b) applies to evidence of the character of a "person," not a corporation."); *Disney Enterprises, Inc. v. VidAngel Inc.*, No. CV 16-04109-AB (PLAx), 2019 WL 4544428, at *4 (C.D. Cal. May 29, 2019) ("[Defendant] has not shown that Rule 404(b), which pertains to a "person's character," could apply to a corporation like itself.").

But more importantly, Plaintiffs' proffered use of the previous "crimes, wrongs, or acts" is problematic and not relevant to any material point at issue. *See U.S. v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006). For instance, Plaintiffs suggest that *Shaw*—where the court rejected the NFL's claim that the SBA extended to cable or satellite television services—is evidence of Defendants' knowledge that the SBA only extends to "over-the-air broadcasts, and specifically *not* the paid broadcasts here." *D MIL 3 Opp.* 7:3–9, 7:13–17. *Shaw* stands for a legal proposition. It did not address the agreements at issue here and cannot be used to support the inference Defendants' have knowledge that the agreements at issue here are unlawful. Plaintiffs are improperly trying to use FRE 404(b) to introduce evidence of previous litigation for the purpose of showing that Defendants were aware of the law. The Court does not find Plaintiffs' position persuasive.

Plaintiffs also seek to introduce *NFL I* and *NFL II*'s specific findings of fact and conclusions of law under § 5(a) of the Clayton Act, 15 U.S.C. § 16(a) and the doctrine of collateral estoppel. *D MIL 3 Opp.* 5:10–6:8.

Section 5 of the Clayton Act "makes available to a private litigant as prima facie evidence all matters respecting which said judgment or decree would be an estoppel between the defendant and the United States." *Pool Water Prod. v. Olin Corp.*, 258 F.3d 1024, 1030–31 (9th Cir. 2001). Importantly, § 5 "grants prima facie weight only to matters as to which collateral estoppel would apply had the government itself brought the suit." *Id.* at 1030. And, the "party asserting collateral estoppel must show that the estopped issue is identical to an issue actually litigated and decided in the previous action." *Id.* at 1031. For collateral estoppel to apply, four conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019). Plaintiffs do not attempt to show that they can satisfy any of the requirements collateral estoppel. *See D MIL 3 Opp.* 5:10–6:3. Accordingly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | April 26, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Plaintiffs' general assertion of collateral estoppel without any analysis of elements is insufficient.[4]

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion *in limine* No. 3.  Plaintiffs may not introduce evidence of the existence and outcomes in past lawsuits against the NFL, except for *NFL I* and *NFL II*.  Although Plaintiffs may introduce the existence, outcome, and any underlying facts of *NFL I* and *II*, Plaintiffs may not introduce the court's specific findings of fact and conclusions of law—*i.e.,* introduce specific language from the court's orders—in *NFL I* and *NFL II*.

**IT IS SO ORDERED.**

---

[4] The Court is skeptical that Plaintiffs could meet their burden even if they attempted to meet the elements of collateral estoppel.  Without even addressing the differences between the factual landscape between *NFL I* and *NFL II* and today, there has certainly been development in antitrust law, including the SBA which passed in response to *NFL II*.  *See Rejuso v. Brookdale Senior Living Communities, Inc.*, No. CV 17-5227-DMG (RAO), 2019 WL 6735124, at *4 (C.D. Cal. May 22, 2019) (finding "the issue before the Court is not identical to the issue [in the earlier proceeding] . . . because there has been a significant change in the legal climate" (citation omitted)).