REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

| | |
|---|---|
| Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Phone: (310) 789-3100<br>Fax: (310) 789-3150 | Howard Langer (*Pro Hac Vice*)<br>hlanger@langergrogan.com<br>LANGER GROGAN AND DIVER PC<br>1717 Arch Street, Suite 4020<br>Philadelphia, PA 19103<br>Tel: (215) 320-5660<br>Fax: (215) 320-5703 |

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NFL DEFENDANTS' MOTION TO QUASH PLAINTIFFS' TRIAL SUBPOENA**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: May 17, 2024<br>TIME: 10:00 a.m.<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. PLAINTIFFS' TRIAL SUBPOENA COMPLIES WITH RULE 45 ............. 3

III. PLAINTIFFS' TRIAL SUBPOENA IMPOSES NO UNDUE BURDEN ......................................................................................................... 8

IV. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ................................................................. 9, 10

*Dennison v. Ryan*,
  2022 WL 3134450 (D. Ariz. Aug. 5, 2022) ....................................................... 7

*Great Lakes Reinsurance (UK) SE v. Herzig*,
  2023 WL 4406149 (S.D.N.Y. July 7, 2023) ...................................................... 6

*Halliburton Energy Servs., Inc. v. M-I, LLC*,
  2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) .................................................. 4

*In re Funeral Consumers Antitrust Litig.*,
  2005 WL 2334362 (N.D. Cal. 2005) .......................................................... 10, 11

*Jones v. PGA TOUR, Inc.*,
  2023 WL 2838116 (N.D. Cal. Apr. 6, 2023) .............................................. 3, 4, 7

*K.S. v. Detroit Pub. Sch.*,
  2015 WL 6671560 (E.D. Mich. Nov. 2, 2015) .................................................. 7

*Legion Sys., LLC v. Valiant Glob. Def. Servs., Inc.*,
  2023 WL 4686245 (M.D. Fla. July 21, 2023) ................................................ 6, 7

*Lillie v. ManTech Int'l. Corp.*,
  2019 WL 653085 (C.D. Cal. Feb. 15, 2019) ...................................................... 9

*Nikola Corporation v. Tesla Incorporated*,
  2018 WL 6584981 (D. Ariz. Oct. 29, 2018) .................................................... 10

*Obrey v. England*,
  215 F. App'x 621 (9th Cir. 2006) ...................................................................... 10

*Owlink Tech., Inc v. Cypress Tech. Co., Ltd.*,
  2023 WL 4291822 (C.D. Cal. May 11, 2023) ............................................. 6, 10

*Perez v. Progenics Pharmacies*,
  2015 WL 4111551 (S.D.N.Y. June 24, 2015) ................................................ 5, 8

*Regents of Univ. of California v. Kohne*,
  166 F.R.D. 463 (S.D. Cal. 1996) ........................................................... 3, 4, 5, 7

*Stiner v. Brookdale Senior Living, Inc.*,
  665 F. Supp. 3d 1150 (N.D. Cal. 2023) ........................................................ 9, 10

*Sullivan v. PJ United, Inc.*,
  2017 WL 11675693 (N.D. Ala. Dec. 15, 2017) ................................................. 4

*Townsend v. Monster Beverage Corporation*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................. 9

**Rules**

Fed. R. Civ. P. 45 .................................................................................... *passim*

Fed. R. Civ. P. 45(a) ............................................................................................ 6

Fed. R. Civ. P. 45(c) ............................................................................... 2, 4, 5, 7

## I. INTRODUCTION.

The NFL Defendants' motion to quash and the accompanying declaration of NFL Executive Hans Schroeder serve only to confirm the propriety of Plaintiffs' trial subpoena to Mr. Schroeder—a witness with personal knowledge of facts regarding the "plainly relevant" issue of "price fixing between Defendants and DirecTV . . . ." Order Denying Mot. to Compel, Dkt. No. 1303 at 2.

The NFL Defendants have admitted that Mr. Schroeder has "direct and first-hand knowledge of issues relevant to the NFL Sunday Ticket package," including its pricing, composition, and distribution. *See* Gore Decl. Ex. 1 at 2. Indeed, in 2017, Mr. Schroeder e-mailed a subordinate asking him to "█████████████████████ █████████████████████████," raising the inference that ████████████ ███████████████████████████████████████████.[1] Gore Decl. Ex. 2 at -455 (emphasis added). During his deposition, when confronted with this document, Mr. Schroeder claimed not to know what his own words meant:

████████████████████████████████████████████████████
████████████████████████████████████████████████████

Gore Decl. Ex. 3 at 192:25–193:4 (emphasis added). Plaintiffs subpoenaed Mr. Schroeder for trial because it is important for the jury to judge his credibility in-person on this issue—subject to cross-examination and impeachment, including with other critically important documents that are highly relevant to Plaintiffs' claims.

The NFL, however, seeks to prevent the jury from hearing Mr. Schroeder's live testimony on the meritless grounds that (1) he is outside the subpoena power of this court under Rule 45 and (2) in any event, Plaintiffs should be limited to calling Mr. Rolapp or Mr. Goodell (Mr. Schroeder's superiors who did not author the e-mail in question) because the NFL would rather ostensibly prefer to burden more senior executives than Mr. Schroeder with traveling to Los Angeles for trial. These

---

[1] "NFLST", of course, is shorthand for NFL Sunday Ticket.

arguments are factually and legally baseless.

*First*, Mr. Schroeder's own declaration confirms that he "regularly transacts business in person" within 100 miles of the Court as required to enforce the subpoena under Rule 45. Fed. R. Civ. P. 45(c)(1)(A). Mr. Schroeder currently oversees and manages two major divisions of the NFL media empire—NFL Network and NFL RedZone—each of which is based in Los Angeles. Before that, and for at least the last four years of the Class Period (and thus the entire time this case has been proceeding before this Court), Mr. Schroeder was Executive Vice President and Chief Operating Officer of NFL Media, which is still based in Los Angeles. These roles required Mr. Schroeder to visit Los Angeles routinely and regularly: according to his declaration, at least 26 trips over a five-year period, amounting to approximately one trip every eight weeks. Despite the frequency and predictability of Mr. Schroeder's business-related trips to Los Angeles, the NFL has moved to quash the trial subpoena served on him, alleging that he somehow does not "regularly transact business in person" there. Yet each decision of other courts cherry-picked by the NFL either involves far less frequent travel to a court's jurisdiction or is in direct conflict with the NFL's bottom-line position.

*Second*, the NFL argues that even if Mr. Schroeder were within the Court's subpoena power, it would be unduly burdensome for him to travel to Los Angeles and his testimony would merely be cumulative of what his boss, Mr. Rolapp, and his boss's boss, the NFL's Commissioner Goodell, may have to say. This is a truly stunning reversal of the position the NFL has taken while litigating this case, as it previously sought to block the deposition of its "apex" witnesses, including Mr. Goodell, on the grounds that "Plaintiffs will be able to obtain relevant information through less intrusive means . . . includ[ing] [through], among others, … **Hans Schroeder**[.]" Gore Decl. Ex. 1 at 2–3 (emphasis added).

2

In any event, the NFL's newly-minted and counter-intuitive "reverse apex" argument that Plaintiffs should be limited to calling Mr. Rolapp or Mr. Goodell—who the NFL Defendants intend to call and who is not even on Plaintiffs' witness list—in lieu of Mr. Schroeder at trial has no factual or legal support. As an initial matter, given that Mr. Schroeder, by his own admission, regularly transacts business *in person* within the Los Angeles area, there is no reason to think that traveling to Los Angeles for one or two days to testify would be unduly burdensome—and certainly no more burdensome than it would be for Mr. Rolapp or Mr. Goodell, who also reside out-of-state. More importantly, neither Mr. Rolapp nor Mr. Goodell wrote or received the above e-mail which ▌                            . Mr. Schroeder wrote the document and there is no substitute for the jury hearing his live testimony about what he meant under the crucible of cross-examination and impeachment (including with documents that have been identified after his deposition).

The fact that the NFL now seeks to reverse the position it has taken throughout the case and use its more senior executives to shield Mr. Schroeder from testifying live reveals its true intent: not to shield its executives from undue burden, but rather to shield the jury from fairly evaluating some of the most salient evidence on the critically important issue of price-fixing. But given the routine nature of Mr. Schroeder's business travel to Los Angeles, the NFL does not come close to meeting its burden of proof to quash the subpoena and its motion should be denied. *See Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996) ("[T]he moving party bears the burden of proof."); *Jones v. PGA TOUR, Inc.*, 2023 WL 2838116, at *7 (N.D. Cal. Apr. 6, 2023) ("The movant bears the burden of persuasion on a motion to quash under [Rule 45].").

## II. PLAINTIFFS' TRIAL SUBPOENA COMPLIES WITH RULE 45.

Plaintiffs' trial subpoena to Mr. Schroeder plainly complies with all requirements of Rule 45. Rule 45 extends a federal court's subpoena power to

witnesses who live and work more than 100 miles outside of a trial location so long as they "regularly transact business in person" within that range. While that determination may be "highly fact-specific and [] not lend itself to a bright line rule," *see Jones*, 2023 WL 2838116, at *7, the declaration signed by Mr. Schroeder and attached to the NFL's motion confirms that he does. From March 2019 to May 2023, Mr. Schroeder was Executive Vice President and Chief Operating Officer of NFL Media, a significant division within the National Football League that is based in Los Angeles. *See* Declaration of Hans Schroeder in Support of NFL Defendants' Motion to Quash Plaintiffs' Trial Subpoena, Dkt. No. 1294-7, at ¶¶ 4, 6 (hereinafter "Schroeder Decl."). During that time, while Mr. Schroeder maintained an office in the NFL's New York City headquarters, he regularly traveled to Los Angeles for business purposes approximately once, on average, every eight weeks. *Id.* ¶ 5. Moreover, now, even though he "no longer manage[s] the Los Angeles-based Media team for the NFL," Mr. Schroeder still oversees the NFL Network and the NFL RedZone distribution teams, which are based in Los Angeles, and he admits that he has traveled to Los Angeles for business purposes twice in the past year, including once just two months or so ago. *Id.* ¶¶ 6–8.

District courts across the country have found far less frequent contacts with a court's subpoena range to satisfy Rule 45(c)'s 100-mile rule. *See, e.g.*, *Jones*, 2023 WL 2838116, at *7 (9 trips over 2 years); *Sullivan v. PJ United, Inc.*, 2017 WL 11675693, at *4–5 (N.D. Ala. Dec. 15, 2017) (quarterly trips during litigation period); *Halliburton Energy Servs., Inc. v. M-I, LLC*, 2006 WL 2663948, at *2 (S.D. Tex. Sept. 15, 2006) (4 trips per year).

The NFL ignores these cases and their discussions of what constitutes "regularly" under Rule 45(c). And significantly, the cases the NFL does rely on either turn on issues not directly relevant to the present motion or contradict the NFL's bottom-line position. For example, in *Kohne*, the district court ruled **against** a motion

4

to quash because the moving party—like the NFL here—"presented insufficient evidence … to find [Rule 45(c)] inapplicable." *Kohne*, 166 F.R.D. at 464 (court vacating magistrate judge's granting of motion to quash). Indeed, the *Kohne* court noted that nothing before it "provides a basis for inferring that the nature of [the subpoenaed witness's] employment does not regularly bring him within 100 miles of this courthouse." *Id.* The NFL's reliance on *Kohne* rests entirely on that court's statement in dicta that "'regularly' does not mean ten times in **seven years**." *See* NFL Mot. at 5 (citing *Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996)) (emphasis added). But Mr. Schroeder's visits to Los Angeles have been far more frequent than the witness in *Kohne* (a little over once per year), a point which the NFL does not dispute. *Kohne* cuts squarely against the NFL.

In addition, the NFL cites *Perez* to suggest that "occasional[] visits [to] the forum state for business does not suffice to bring the witness within the subpoena power" of the issuing court. NFL Mot. at 5 (citing *Perez v. Progenics Pharmacies*, 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015)). The *Perez* court did not base its ruling on the regularity of the witness's visits to the issuing court's jurisdiction. Instead, the court granted the defendant's motion to quash because the only evidence before it concerning the witness's visits to its subpoena range was plaintiff's counsel's representation that the witness was "required to attend, either in person *or telephonically*," company board meetings "at least quarterly." *Id.* (emphasis added). The court rightly concluded that such a claim, even if true, merely "*suggests* that [the witness] is periodically physically present" near the court, which by itself could not satisfy Rule 45(c). *Id.* (emphasis added). Here, by contrast, the Court has *direct* record evidence that Mr. Schroeder has made frequent and routine trips to Los Angeles for NFL business over the last five years. *See, e.g.*, Schroeder Decl. ¶ 5 (26 trips over 5 years, with last one just over two months ago).

5

Similarly, in *Owlink Technology* and *Great Lakes Reinsurance*, the subpoenaed witnesses lived and worked outside the United States, and the plaintiffs put forward no evidence that any of them transacted any business within 100 miles of the issuing court. *See Owlink Tech., Inc v. Cypress Tech. Co., Ltd.*, 2023 WL 4291822, at *2 (C.D. Cal. May 11, 2023) ("[E]ach of the four witnesses undisputedly resides in Taiwan. They also undisputedly are employed in Taiwan. … Plaintiff does not appear to argue that the witnesses regularly transact business in person within 100 miles of this Court[.]"); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 4406149, at *3 (S.D.N.Y. July 7, 2023) ("[The subpoenaed witnesses] reside in the United Kingdom, … neither resides in New York; both men are employed in the United Kingdom, and neither regularly transacts business within 100 miles of the courthouse in which the forthcoming trial will take place, or anywhere in New York.").

Further, in *Great Lakes Reinsurance*, the plaintiff claimed that its subpoena of individual witnesses complied with Rule 45 because the witnesses' *employer* "commonly litigates in New York" and "includes a New York choice-of-law provision in its [insurance] policies." *See Great Lakes Reinsurance*, 2023 WL 4406149, at *3. Plaintiffs have made no such contention here, as "the inquiry under Rule 45 is directed at where the person … regularly transacts business in person, not where that person's employer transacts business." *Id.* (citation and quotation omitted). Unlike *Great Lakes Reinsurance*, Plaintiffs' subpoena complies with Rule 45 not because the NFL maintains a significant presence in Los Angeles (which it does), but because of Mr. Schroeder's regular business trips there over the past five years.

And *Legion Systems* has no bearing on the issues before this Court at all. There, the court granted the defendant's motion to quash because the underlying subpoena did not name any "person" to testify at the trial, as is required by Rule 45(a). *Legion*

*Sys., LLC v. Valiant Glob. Def. Servs., Inc.*, 2023 WL 4686245, at *1 (M.D. Fla. July 21, 2023). Rather, the plaintiff simply "emailed a subpoena" to opposing counsel that purported to "require" unnamed "Corporate Representative(s) of [defendant]" to testify. *Id.* The trial subpoena Plaintiffs served on Mr. Schroeder has no such defects, and the NFL has not suggested otherwise.

The NFL finally claims that Rule 45's plain text "confirms" that this Court should quash Plaintiffs' subpoena because "the verbs 'resides,' 'is employed,' and 'transacts' are all framed in the present tense," and Mr. Schroeder's business visits to Los Angeles only occurred in the past. *See* NFL Mot. at 4. This argument misses the mark. For one, to determine whether something has been done "regularly" requires looking back in time. Indeed, each court interpreting the "regularly transacts" prong of Rule 45(c) asks how frequently or how habitually the witness *has been* visiting the court's subpoena jurisdiction, which necessarily turns on an assessment of the witness's *past* conduct. *See, e.g.*, *Kohne*, 166 F.R.D. 463, at 465 (looking back 7 years); *Jones*, 2023 WL 2838116, at *6–7 (looking back 2 years). For another, each case cited by the NFL to support this peculiar argument concerns Rule 45(c)'s "resides" or "is employed" prong, not Rule 45(c)'s "regularly transacts" prong. *See Dennison v. Ryan*, 2022 WL 3134450, at *1 (D. Ariz. Aug. 5, 2022) (residence and employment); *K.S. v. Detroit Pub. Sch.*, 2015 WL 6671560, at *1 (E.D. Mich. Nov. 2, 2015) (same). Finally, Rule 45(c)'s "regularly transacts" prong would be superfluous if a non-resident, non-employed witness could defeat a trial subpoena by arguing that they are not *presently* transacting business in the court's subpoena jurisdiction, even if they indisputably transacted business there regularly. In any case, even accepting the NFL's premise, the conclusion does not follow. Mr. Schroeder currently oversees major Los Angeles-based NFL departments, and his most recent business trip to Los Angeles was just over two months ago. *See* Schroeder Decl. ¶¶ 7–8.

In short, Mr. Schroeder's repeated and regular business visits to Los Angeles plainly bring him within the Court's subpoena jurisdiction. Mr. Schroeder's declaration shows that he has engaged in substantial business activities in or within 100 miles of Los Angeles ***in person***. During crucial periods of this case, Mr. Schroeder was Executive Vice President and Chief Operating Officer of the Los Angeles-based NFL Media, which he visited frequently and predictably over the span of at least five years. *See* Schroeder Decl. ¶ 5. And while the NFL claims that Mr. Schroeder's new position—which he has been in for less than a year—does not involve travel to the Los Angeles area, Mr. Schroeder's declaration states otherwise. In the last year alone, he has traveled to Los Angeles twice for business purposes. In all, the NFL has not carried its burden to quash Plaintiffs' subpoena, and Plaintiffs should be permitted to call Mr. Schroeder live at trial.

### III. PLAINTIFFS' TRIAL SUBPOENA IMPOSES NO UNDUE BURDEN.

Nor does Plaintiffs' trial subpoena impose an undue burden on Mr. Schroeder. The NFL claims that "the burden of requiring Mr. Schroeder to travel across the country outweighs any non-cumulative value of his potential trial testimony" because (1) "Mr. Schroeder's immediate supervisor, Mr. Rolapp, will be providing live testimony at trial, as will other high-ranking NFL officers, including the Commissioner," and (2) "Plaintiffs have approximately twelve hours of videotaped deposition testimony of Mr. Schroeder at their disposal." NFL Mot. at 7. Neither claim justifies shielding Mr. Schroeder's live testimony from the jury.

*First*, the NFL's pre-trial representations confirm that Mr. Schroeder's live testimony would not be duplicative of the testimony of Mr. Rolapp or Commissioner Goodell. The NFL always has included Mr. Schroeder on its witness list, indicating that he has non-duplicative testimony to offer at trial.[2] *See Perez*, 2015 WL 4111551,

---

[2] The NFL has also indicated that they intend to call Mr. Schroeder live at trial if this motion is denied, *see* Dkt. No. 1298 (joint witness list), further illustrating that it

8

at *2 (concluding that a defendant listing a subpoenaed witness on its witness list "contradicts its contention" that the witnesses' testimony would not be relevant).[3] Moreover, Plaintiffs did not include Commissioner Goodell on their witness list. The decision to bring Mr. Goodell to trial is entirely the NFL's own.

In addition, Mr. Schroeder's declaration fails to describe any burden, let alone an undue burden, in testifying live at trial. *See generally* Schroeder Decl. ¶¶ 1–9. That alone defeats the NFL's arguments regarding burden. *See, e.g.*, *Lillie v. ManTech Int'l. Corp.*, 2019 WL 653085, at *1 (C.D. Cal. Feb. 15, 2019) (denying motion to quash trial subpoena while noting "[i]t is the burden of the party seeking to quash the subpoena to demonstrate that the subpoena is unduly burdensome"); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (denying motion to quash trial subpoena because "[moving parties] do not submit affidavits from the subpoenaed entities and individuals describing the burden that the trial subpoenas impose").[4]

---

exercises control over Mr. Schroeder, that his testimony would not be duplicative, and that any burden from traveling to Los Angeles to testify at trial is not undue.

[3] The NFL also highlights that, in the parties' joint witness list filed prior to the now-vacated trial date, Plaintiffs listed Mr. Schroeder as a "Deposition Only" witness. The NFL appears to suggest that that designation somehow implies that Plaintiffs "understood" that Mr. Schroeder was outside of the Court's subpoena power or estops them from calling Mr. Schroeder live now. *See* NFL Mot. at 1–3. Not so. The email exchange to which the NFL points makes no mention of the Court's subpoena power at all, *see* Dkt. No. 1294-5, and the NFL otherwise cites no authority for such an extraordinary limitation on an opposing party's trial rights.

[4] Nor could the NFL cure this decisive defect by submitting an additional statement by Mr. Schroeder on reply describing any alleged undue burden. Generally, "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Townsend v. Monster Beverage Corporation*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) (internal citation omitted); *see also Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1179 (N.D. Cal. 2023)

9

*Second*, that Plaintiffs have at their disposal Mr. Schroeder's deposition testimony does not replace the value of his live testimony. Courts have long and unanimously "favor[ed] live witness testimony as opposed to 'trial by deposition,'" which is easier to follow and comprehend, and allows the jury to assess first-hand a witness's demeanor and credibility. *Owlink*, 2023 WL 4291822, at *1; *see also, e.g., Obrey v. England*, 215 F. App'x 621, 623–24 (9th Cir. 2006) ("[O]ur statement that the jury 'naturally has to determine the credibility of witness testimony' indicates that we contemplated live testimony."); *In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *5 (N.D. Cal. 2005) ("In the conduct of the trial itself, any jury would prefer to see and hear important witnesses in person. … Live testimony, therefore, always is to be preferred over deposition excerpts."); *Aristocrat Leisure*, 262 F.R.D. at 300 ("The preference for live testimony is well established in this Circuit.") (collecting cases); *cf. Nikola Corporation v. Tesla Incorporated*, 2018 WL 6584981, at *5 (D. Ariz. Oct. 29, 2018) (noting that a "strong factor" in "transferring the case to Northern California [is that it] will allow for more in-person testimony from witnesses").

Mr. Schroeder's live testimony is all the more important here because, by trial, his deposition testimony will be nearly two years old. That testimony cannot have, therefore, addressed any of the significant evidence that has been uncovered since then, will importantly not allow the jury to assess his credibility by observing his testimony from the witness stand, and otherwise "not fully address points decisive to

---

(same). Accordingly, district courts will often decline to consider new evidence raised for the first time in reply. *See id.* ("'New evidence submitted as part of a reply is improper' because it does not allow the [opposing party] an adequate opportunity to respond."). Here, the Court should not consider any additional declaration submitted by Mr. Schroeder in reply because any undue burden allegedly faced by him was known to the NFL at the time it submitted its motion, yet Mr. Schroeder's declaration did not identify *any* burden to him from testifying live at trial.

the jury." *See In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *5; *see also id.* (noting that the preference of live testimony over deposition read-ins or video clips "is exacerbated by the fact that depositions are often taken before certain fact issues gather importance").

Take just one important example noted above: Mr. Schroeder authored an email in 2017 in which he asked Brent Lawton (another NFL employee) to " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " Gore Decl. Ex. 2 at -455. The inference the jury would be asked to make after seeing this document is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. At his deposition, Plaintiffs asked Mr. Schroeder, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?" He answered: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Gore Decl. Ex. 3 at 192:25–193:4. This document is plainly relevant to Plaintiffs' antitrust claims, Mr. Schroeder wrote it, and the jury should be able to judge Mr. Schroeder's credibility and demeanor in person, including his gratuitous self-serving comment about DirecTV, subject to cross-examination and impeachment, if he maintains that he does not know what "▮▮▮▮▮" meant.[5]

Mr. Rolapp's or Commissioner Goodell's live testimony thus is no substitute for Mr. Schroeder's. Neither Mr. Rolapp nor Commissioner Goodell authored the email asking another NFL employee for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and neither Mr. Rolapp nor Commissioner Goodell said he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in his deposition. Further, given Mr. Schroeder's significant contacts with Los Angeles at the time of his deposition, Plaintiffs had every reason to believe that they would be able to call him live at trial. It is an entirely ordinary trial strategy to set up a basis for impeachment in a deposition but wait for trial to impeach. The

---

[5] Since Mr. Schroeder's July 29, 2022, deposition, the NFL has produced 2,474 documents to Plaintiffs, and third-parties have produced more.

11

NFL's insistence that Plaintiffs "have at their disposal" Mr. Schroeder's deposition testimony—and thus do not need his live testimony—would have required Plaintiffs to disclose meaningful trial strategy (whether known or unknown) to the NFL and do so nearly two years ago. There is no support for that position.

The NFL Defendants' insistence that Plaintiffs do not need to call Mr. Schroeder live at trial because they may call higher-ranking NFL employees also is directly contrary to their position thus far in litigation. Throughout this case, the NFL Defendants have fought hard to shield their apex employees (including Commissioner Goodell) from deposition discovery, even arguing that "the case law supports the grant of a protective order to withhold the deposition of these individuals altogether," and that, rather than deposing those higher-level NFL employees, "Plaintiffs will be able to obtain relevant information through less intrusive means … includ[ing] [through], among others, … **Hans Schroeder**[.]" *See* Gore Decl. Ex. 1 at 2–3 (emphasis added). The NFL's self-serving course-reversal on the eve of trial—arguing for what amounts to a novel reverse apex doctrine—must be rejected.

Rejecting the NFL's attempt to prevent Mr. Schroeder from testifying live in the upcoming trial will ensure that all evidence relevant to the parties' claims is presented to the jury, and this case is tried fully and fairly on the merits. The NFL's motion to quash must therefore be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny the NFL's Motion to Quash Plaintiffs' Trial Subpoena.

12

| | | |
|---|---|---|
| 1 | Dated: April 26, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By: /s/ *Marc M. Seltzer* |
| 4 | | Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com |
| 5 | | Kalpana Srinivasan (237460)<br>ksrinivasan@susmangodfrey.com |
| 6 | | Amanda Bonn (270891)<br>abonn@susmangodfrey.com |
| 7 | | SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400 |
| 8 | | Los Angeles, CA 90067<br>Tel: (310) 789-3100 |
| 9 | | Fax: (310) 789-3150 |
| 10 | | William C. Carmody (*Pro Hac Vice*)<br>bcarmody@susmangodfrey.com |
| 11 | | Seth Ard (*Pro Hac Vice*)<br>sard@susmangodfrey.com |
| 12 | | Tyler Finn (*Pro Hac Vice*)<br>tfinn@susmangodfrey.com |
| 13 | | SUSMAN GODFREY L.L.P<br>1301 Avenue of the Americas, 32nd Fl. |
| 14 | | New York, NY 10019<br>Tel: (212) 336-8330 |
| 15 | | Fax: (212) 336-8340 |
| 16 | | Ian M. Gore (*Pro Hac Vice*)<br>igore@susmangodfrey.com |
| 17 | | SUSMAN GODFREY L.L.P.<br>401 Union Street, Suite 3000 |
| 18 | | Seattle, WA 98101<br>Tel: (206) 505-3841 |
| 19 | | Fax: (206) 516-3883 |
| 20 | | Scott Martin (*Pro Hac Vice*)<br>smartin@hausfeld.com |
| 21 | | HAUSFELD LLP<br>33 Whitehall Street, 14th Floor |
| 22 | | New York, NY 10004<br>Tel: (646) 357-1100 |
| 23 | | Fax: (212) 202-4322 |
| 24 | | Christopher L. Lebsock (184546)<br>clebsock@hausfeld.com |
| 25 | | Samuel Maida (333835)<br>smaida@hausfeld.com |
| 26 | | HAUSFELD LLP<br>600 Montgomery St., Suite 3200 |
| 27 | | San Francisco, CA 94111<br>Tel: (415) 633-1908 |
| 28 | | |

Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*