Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' TRIAL SUBPOENA**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: May 16, 2024<br>Time: 2:30 p.m.<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# INTRODUCTION

Months after the original trial date in a case that began in 2015, Plaintiffs realized they made a mistake and want a do-over. Plaintiffs seek to subpoena an out-of-state witness, Hans Schroeder, to testify at trial for the stated purpose of asking Mr. Schroeder about an email they already questioned him about during his deposition. But Plaintiffs' regret about their deposition strategy is not a proper basis for disregarding Rule 45's geographic limits on the subpoena power.

As explained in Mr. Schroeder's declaration and the NFL Defendants' Motion, Mr. Schroeder lives and works in New York and does not regularly transact business in person in Los Angeles or California. Dkt. 1294-7 ¶¶ 2–3, 6, 8. Indeed, since taking his current role at the NFL in May 2023, Mr. Schroeder has visited Los Angeles only twice for business. Under Rule 45 and the relevant caselaw, those simple geographic facts require the Court to quash the subpoena.

Plaintiffs nonetheless insist they should be able to compel Mr. Schroeder to testify due to his "personal knowledge of facts" regarding "plainly relevant" issues in this case. Plaintiffs' Memorandum of Points and Authorities in Opposition to NFL Defendants' Motion to Quash Plaintiffs' Trial Subpoena ("Opp."), Dkt. 1306, at 1. But Plaintiffs cite no authority that permits the Court to disregard Rule 45's clear geographic limits on the basis of a witness's relevance to a party's case. And there is certainly no reason for the Court to take that extraordinary step here, where Plaintiffs' primary justification for subpoenaing Mr. Schroeder is to re-question him about a deposition exhibit. *See id.*; Gore Ex. 2. Plaintiffs can introduce the video of Mr. Schroeder's deposition testimony about that document at trial—there is no need for him to travel across the country to repeat the answers he has already given.

The only relevant question is whether Mr. Schroeder currently falls within the geographic subpoena powers of the Court. He does not. The Court must therefore quash the subpoena.

# ARGUMENT

## I. Mr. Schroeder Does Not "Regularly Transact[] Business In Person" In Los Angeles Or California.

Plaintiffs do not contest that Mr. Schroeder does not "reside[]" and is not "employed" in California, so they may subpoena his attendance at trial only if he "regularly transacts business in person" in California. Fed. R. Civ. P. 45(c)(1). He does not. Since taking his current position a year ago, Mr. Schroeder has visited Los Angeles only twice, and his job responsibilities do not require regular in person travel. Dkt. 1294-7 ¶¶ 7, 8.

As an initial matter, the text of Rule 45(c)(1) compels a present-tense inquiry: whether the witness currently "resides, is employed, or regularly transacts business in person" in the forum state. Based on the plain text, the relevant "time frame for judging whether a witness must travel more than 100 miles from his residence, place of employment, and the place where he transacts business in person is *the time when the witness is to appear*," *Comm-Tract Corp. v. N. Telecom, Inc.*, 168 F.R.D. 4, 7 (D. Mass. 1996) (emphasis added); *see also In re Application of Yukos Hydrocarbons Invs. Ltd.*, 2009 WL 5216951, at *4 (N.D.N.Y. Dec. 30, 2009) (same)—not the "litigation period" or "crucial periods of this case," as Plaintiffs incorrectly suggest, *see* Opp., at 4, 8. Accordingly, where witnesses "no longer live, work, or regularly conduct in-person business" within Rule 45's geographic bounds, courts "must quash" the subpoena. *In re Kirkland*, 75 F.4th 1030, 1042 (9th Cir. 2023); *see also Comm-Tract Corp.*, 168 F.R.D. at 7 (quashing subpoena of witness who lived in Massachusetts at the time the subpoena was served but had taken a job in Hong Kong by the time of trial); *Dennison v. Ryan*, 2022 WL 3134450, at *1 (D. Ariz. Aug. 5, 2022) (granting motion to quash where potential witness had "[r]ecently" moved out of state and thus "[was] no longer a resident of, employed in, or regularly transact[ing] business in person in Arizona"); *K.S. v. Detroit Pub. Sch.*, 2015 WL

6671560, at *1 (E.D. Mich. Nov. 2, 2015) (quashing trial subpoena of "a former Detroit resident who ha[d] relocated to New York City").[1]

Likewise, the Court must quash the trial subpoena of Mr. Schroeder here: since taking his new role in May 2023, Mr. Schroeder traveled to Los Angeles only twice for business. Dkt. 1294-7 ¶ 8. The case law is unequivocal that such a small number of in-person visits does not qualify as "regularly" transacting business in the state. *See, e.g.*, *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207–8 (S.D.N.Y. 2007) (five in-person visits in two years insufficient; motion to quash granted); *Jones v. Jasper Wyman & Son*, 2022 WL 16820442, at *4 (D. Me. Nov. 8, 2022) (hereinafter *Jasper Wyman*) (eight in-person business visits to Maine per year insufficient; motion to quash trial subpoena granted); *Perez v. Progenics Pharms., Inc.*, 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015) ("at least quarterly" visits to New York insufficient; request to call witness live denied); *Dietz v. Spangenberg*, 2014 WL 537753, at *5 (D. Minn. Feb. 11, 2014) (three visits in past year insufficient; motion to quash trial subpoena granted); *Bostian v. Suhor Indus., Inc.*, 2007 WL 3005177, at *1 (N.D. Okla. Oct. 12, 2007) (twice-yearly visits insufficient; motion to quash granted).[2] The fact that Mr. Schroeder recently visited Los Angeles does not change the analysis. *See Mustafa Dogan Dairy Consulting, LLC v. La Colombe Torrefaction, Inc.*, 2018 WL 9801022, at *2 (W.D. Mich. Sept. 7, 2018)

---

[1] Plaintiffs suggest that *Dennison* and *K.S.* are irrelevant to the extent they only address Rule 45(c)'s "resides" or "is employed" prongs, and not the rule's "regularly transacts" prong. Opp., at 7. But the courts' reasoning in those cases applies equally to the "regularly transacts" prong: the inquiry looks to a witness's *present* circumstances.

[2] Plaintiffs assert that the NFL has "cherry-picked" cases in support of its position that Mr. Schroeder's frequency of visits to California does not suffice to confer subpoena jurisdiction. Opp., at 2. Not so. District courts across the country have regularly concluded that visits similar in frequency to Mr. Schroeder's current visits are not "regular" enough for purposes of Rule 45. *See generally Dietz*, 2014 WL 537753, at *4 (collecting cases).

1  (quashing subpoena despite evidence that witnesses "recently visited the Michigan facility that [is] the subject of this lawsuit" where the visits were "infrequent and sporadic").

Plaintiffs' attempts to distinguish this precedent are unavailing. For example, contrary to Plaintiffs' inaccurate assertion, the court in *Perez* did not rely on the witness's option to attend committee and board meetings telephonically "at least quarterly" as grounds to conclude that her travel to New York was not regular—instead, the court assumed for purposes of the analysis that the witness conducted "in-person business in New York" and attended "occasional meetings in Tarrytown." 2015 WL 4111551, at *2. The other cases with which Plaintiffs take issue—*Legion Sys., LLC v. Valiant Glob. Def. Servs., Inc.*, 2023 WL 4686245 (M.D. Fla. July 21, 2023), *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 4406149 (S.D.N.Y. July 7, 2023), and *Owlink Tech., Inc v. Cypress Tech. Co., Ltd.*, 2023 WL 4291822 (C.D. Cal. May 11, 2023)—all reinforce the simple proposition that courts strictly enforce Rule 45's geographic bounds on the subpoena power.

Plaintiffs further contend that the Court should consider Mr. Schroeder's historical travel to California in his prior role with the NFL, arguing that "to determine whether something has been done 'regularly' requires looking back in time." Opp., at 7. But a past pattern is only evidence of "regularity" if it continues through the present, which is not true for Mr. Schroeder. Tellingly, in all of the cases Plaintiffs cite for this point, the subpoenaed witnesses were *continuously* engaged in ongoing travel to the state in question for business. *See Jones v. PGA TOUR, Inc.*, 2023 WL 2838116, at *6 (N.D. Cal. Apr. 6, 2023) (witness took nine trips to New York for business and no suggestion the travel had diminished); *Sullivan v. PJ United, Inc.*, 2017 WL 11675693, at *4 (N.D. Ala. Dec. 15, 2017) (corporation served with subpoena employed representatives who visited forty-six franchises within jurisdiction on quarterly basis, where the quarterly visits were ongoing); *Halliburton Energy Servs., Inc. v. M-I, LLC*, 2006 WL 2663948, at *2 (S.D. Tex. Sept. 15, 2006)

(witness currently "travels to the city approximately four times each year and stays for approximately ten days each time").[3] By contrast, in cases where witnesses' jobs have changed, or where witnesses have moved out of state, courts regularly quash trial subpoenas, regardless of the witness's past connection to the jurisdiction. *See Comm-Tract Corp.*, 168 F.R.D. at 7 (witness took a job abroad); *see also Dennison*, 2022 WL 3134450, at *1 (witness moved out-of-state); *K.S.*, 2015 WL 6671560, at *1 (witness moved out-of-state).

In any event, even if the Court considers Mr. Schroeder's historical travel to California, he did not spend enough time in the state to qualify as "regularly transact[ing] business in person" there, even before his change in role. Prior to May 2023, Mr. Schroeder took an average of six business trips to California per year, Dkt. 1294-7 ¶ 5—far fewer than the number of visits federal courts have required in other cases. *See, e.g.*, *Jasper Wyman*, 2022 WL 16820442 at *4 ("[A]ttending two sets of quarterly board meetings in Maine" per year [*i.e.*, 8 visits] did not equate to "regularly transact[ing] business in person in Maine" (quotations omitted)).

Because Mr. Schroeder does not "regularly transact[] business in person" in California, the Court should quash the subpoena.

## II. In Any Event, Mr. Schroeder's Live Testimony Would Be Cumulative And Unduly Burdensome.

Even if the Court were to conclude that Mr. Schroeder is within the geographic subpoena power, the Court should still quash the subpoena as cumulative and unduly

---

[3] In addition, *Jones* is further distinguishable because it involved a subpoena for a 30(b)(6) deposition, not a subpoena for trial testimony. The district court there was persuaded to enforce the subpoena at least in part because the subpoenaed witness was "the only known employee of [the company] who would be suitable to act as its Rule 30(b)(6) witness." 2023 WL 2838116, at *6. By contrast, Plaintiffs have already deposed Mr. Schroeder (twice—as both a 30(b)(1) and 30(b)(6) witness), can introduce videos of his testimony at trial, and can also cross-examine the other NFL witnesses who will be testifying live.

burdensome. As Plaintiffs themselves acknowledge, they have 12 hours of Mr. Schroeder's videotaped deposition testimony (including testimony about the single exhibit they claim they must ask him about at trial) and the ability to cross-examine other NFL witnesses live at trial (including Mr. Schroeder's supervisor, Brian Rolapp). NFL Defendants' Memorandum of Law in Support of Motion to Quash Plaintiffs' Trial Subpoena ("Mot."), Dkt. 1294-1, at 1; *see* Opp., at 3. Given the substantial NFL testimony already available to Plaintiffs at trial, there is simply no basis to impose the burden of traveling to testify live on Mr. Schroeder.

Faced with this commonsense reality, Plaintiffs nonetheless insist that Mr. Schroeder's live testimony is necessary and that it is not cumulative of the other NFL witnesses' live testimony.

Plaintiffs' primary justification for seeking Mr. Schroeder's live testimony is that they would like to question him again about a single 2017 email that was used as an exhibit during his 30(b)(1) deposition. *See* Opp., at 11; Gore Ex. 2. That is the very definition of cumulative: Plaintiffs already questioned Mr. Schroeder about this document, and they can simply play the video of his relevant testimony. *See Reddick v. Dillard Store Servs., Inc.*, 2010 WL 3025205, at *1 (S.D. Ill. Aug. 2, 2010) ("[R]equiring the doctor to travel from Oregon for trial—particularly when his deposition was videotaped—imposes undue burden and expense."). Plaintiffs suggest that the jury would only be able to assess Mr. Schroeder's "credibility and demeanor" if he appears live, but the deposition video will allow the jury to make the same judgments. *See* Opp., at 11.

Plaintiffs further contend that playing Mr. Schroeder's deposition videos is insufficient because by the time of trial, "his deposition testimony will be nearly two years old" and thus will not "address[] any of the significant evidence that has been uncovered since then[.]" *See* Opp., at 10, 11 n.5. But those contentions are misplaced in several ways. First, with respect to the date of Mr. Schroeder's depositions, it is hardly unusual for depositions in complex civil cases to occur a year or more before

a trial. The time lapse is particularly inconsequential here when the deposition was taken at the very end of the class period and thus post-dated the events and agreements at issue in this case. Second, with respect to the new evidence Plaintiffs apparently have "uncovered," it is unclear why they need to question Mr. Schroeder (as opposed to the other NFL witnesses who will testify live at trial) about those documents. Indeed, to the extent Plaintiffs are referring to documents from the NFL's more recent productions, *see* Opp., at 11 n.5, Plaintiffs previously sought to depose other NFL witnesses about those documents but chose not to include Mr. Schroeder as one of their deposition targets, *see* Dkt. 1009.[4] To the extent Plaintiffs refer to other documents, they fail to explain why those documents were "identified for the first time" in recent weeks and why they could not "have been found through targeted search terms or a detailed review of the production" before Mr. Schroeder's deposition. *See* Dkt. 1303, at 7.

Plaintiffs also dispute that Mr. Schroeder's trial testimony would be cumulative of other NFL witnesses called live for two reasons. Neither is persuasive.

*First*, Plaintiffs say that "the NFL's pre-trial representations confirm" that the testimony would not be cumulative. Opp., at 8. Plaintiffs point to the NFL's inclusion of Mr. Schroeder on their "may call" witness list and the NFL's reservation of the right to call Mr. Schroeder as a live witness if this motion is denied. Neither of these is a concession that Mr. Schroeder's testimony would necessarily be unique from other NFL witnesses' testimony at trial. Rather, in both instances, the NFL is preserving its right to present direct and re-direct testimony from Mr. Schroeder, depending on how circumstances unfold.

---

[4] Moreover, Plaintiffs voluntarily dropped their Motion to Compel Additional Depositions, explaining to the Court "we don't think we're going to need any additional discovery on the new deal[.]" Tr. from Jan. 23, 2024 Status Conference, at 8.

*Second*, Plaintiffs bizarrely assert that the NFL's argument about cumulative testimony amounts to a "course-reversal" from the position the NFL took on "apex" witnesses during the scheduling of fact witness depositions. Opp., at 12. But Plaintiffs' assertion is both inaccurate and irrelevant. In the letter that Plaintiffs cite, the NFL did not seek to prevent the depositions of the witnesses in question—only to impose "reasonable limits on the duration of their depositions[.]" *See* Gore Ex. 1, at 1. And Plaintiffs *did* in fact depose those witnesses. In any event, the context of that "apex" discussion is completely irrelevant to the issue here—whether Mr. Schroeder's testimony would be unnecessarily cumulative of the other live and deposition testimony that Plaintiffs will already be able to introduce at trial.

Finally, Plaintiffs are wrong to trivialize the burden the trial subpoena would impose on Mr. Schroeder. Compelling Mr. Schroeder to testify at trial would demand substantial time and effort on his part—not only to testify but also to prepare for such testimony over the upcoming weeks before trial. *See Reddick*, 2010 WL 3025205, at *1 ("[R]equiring the doctor to travel from Oregon for trial—particularly when his deposition was videotaped—imposes undue burden and expense."). Given that Plaintiffs can use his deposition testimony and that other NFL witnesses will testify live at trial, requiring Mr. Schroeder to testify live would be an undue burden. *See SBP LLLP v. Hoffman Constr. Co. of Am.,* 2021 WL 3131310, at *3 (D. Idaho July 23, 2021) (finding undue burden where other witnesses were able to provide same testimony); *Nautimill S.A. v. Legacy Marine Transp., LLC*, 2016 WL 3877977, at *1 (E.D. La. July 18, 2016) (concluding that trial subpoena imposed undue burden because testimony would be "unnecessarily cumulative" in light of documents available for same purpose).

## CONCLUSION

The NFL respectfully requests that the Court quash Plaintiffs' Subpoena commanding Mr. Schroeder's appearance at trial.

| | | |
|---|---|---|
| 1 | Dated: May 3, 2024 | Respectfully submitted, |
| 2 | | /s/ Brian L. Stekloff |
| | | Jeremy S. Barber (admitted *pro hac vice*) |
| 3 | | Beth A. Wilkinson (admitted *pro hac vice*) |
| 4 | | Brian L. Stekloff (admitted *pro hac vice*) |
| | | Rakesh N. Kilaru (admitted *pro hac vice*) |
| 5 | | Max J. Warren (admitted *pro hac vice*) |
| 6 | | **WILKINSON STEKLOFF LLP** |
| | | 2001 M Street NW, 10th Floor |
| 7 | | Washington, DC 20036 |
| 8 | | Telephone: (202) 847-4000 |
| | | Facsimile: (202) 847-4005 |
| 9 | | jbarber@wilkinsonstekloff.com |
| 10 | | bwilkinson@wilkinsonstekloff.com |
| | | bstekloff@wilkinsonstekloff.com |
| 11 | | rkilaru@wilkinsonstekloff.com |
| 12 | | mwarren@wilkinsonstekloff.com |
| 13 | | Neema T. Sahni (Bar No. 274240) |
| | | **COVINGTON & BURLING LLP** |
| 14 | | 1999 Avenue of the Stars |
| 15 | | Suite 3500 |
| | | Los Angeles, CA 90067-6045 |
| 16 | | Telephone: (424) 332-4800 |
| 17 | | Facsimile: (424) 332-4749 |
| | | nsahni@cov.com |
| 18 | | |
| 19 | | Gregg H. Levy (admitted *pro hac vice*) |
| | | Derek Ludwin (admitted *pro hac vice*) |
| 20 | | John S. Playforth (admitted *pro hac vice*) |
| 21 | | **COVINGTON & BURLING LLP** |
| | | One CityCenter |
| 22 | | 850 Tenth Street NW |
| 23 | | Washington, DC 20001 |
| | | Telephone: (202) 662-6000 |
| 24 | | Facsimile: (202) 662-6291 |
| 25 | | glevy@cov.com |
| | | dludwin@cov.com |
| 26 | | jplayforth@cov.com |
| 27 | | *Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs* |
| 28 | | |

9

| Case No. 2:15-ml-02668-PSG (SKx) | NFL Defendants' Reply in Support of Motion to Quash Plaintiffs' Trial Subpoena |
|---|---|