UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Lynnie Fahey | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING Defendants' motion *in limine* No. 1. [1103]

Before the Court is Defendants'[1] motion *in limine* No. 1, seeking to exclude evidence or argument that revenue sharing is anticompetitive. *See* Dkt. # 1141 ("*D MIL 1*").[2] Plaintiffs[3] opposed, *see* Dkt. # 1190-1 ("*D MIL 1 Opp.*"),[4] and Defendants replied, *see* Dkt. # 1223-1 ("*D

---

[1] Defendants in this action consist of: National Football League, Inc. ("NFL"); Arizona Cardinals, Inc.; Atlanta Falcons Football Club LLC; Baltimore Ravens Limited Partnership; Buccaneers Limited Partnership; Buffalo Bills, Inc.; Chicago Bears Football Club Inc.; Cincinnati Bengals, Inc.; Cleveland Browns LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos Football Club; Detroit Lions, Inc.; Football Northwest LLC; Green Bay Packers, Inc.; Houston NFL Holdings LP; Indianapolis Colts Inc.; Jacksonville Jaguars Ltd.; Kansas City Chiefs Football Club, Inc.; Miami Dolphins, Ltd.; Minnesota Vikings Football Club LLC; NFL Enterprises LLC; New England Patriots, LP; New Orleans Louisiana Saints LLC; New York Football Giants, Inc.; New York Jets Football Club, Inc.; Oakland Raiders LP; PDB Sports Ltd.; Panthers Football LLC; Philadelphia Eagles Football Club, Inc.; Pittsburgh Steelers Sports, Inc.; San Diego Chargers Football Co.; San Francisco Forty Niners Ltd.; Tennessee Football, Inc.; The Rams Football Company LLC; and, Washington Football Inc.

[2] The Court cites the unredacted version of the motion. The original filing can be found at Docket Entry Number 1103.

[3] Plaintiffs are two classes of DirecTV NFL Sunday Ticket subscribers.

[4] The Court cites the unredacted version of the opposition. The original filing can be found at Docket Entry Number 1188.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

*MIL 1 Reply*").[5]  After considering the parties' papers and listening to the arguments made during the hearing held on May 2, 2024, the Court **DENIES** Defendants' motion *in limine* No. 1.

I. <u>Background</u>

This is an antitrust suit where Plaintiffs allege that Defendants have entered a set of agreements with each other and their broadcast partners—DirecTV, CBS, and FOX—that suppress the output of telecasts of out-of-market professional football games. *See Order re Defendants' Motion for Summary Judgment*, Dkt. # 1155 ("*Sum. J. Order*"), 2.  The alleged outcome of these agreements is that DirecTV has been able to charge supracompetitive prices for Sunday Ticket, a subscription package that provides telecasts of all NFL games.  *Id.*

The parties now dispute the scope of Plaintiffs' challenged conduct.  Defendants argue that Plaintiffs have only ever included pooling of telecast rights as the challenged conduct and that Plaintiffs are now belatedly and improperly adding sharing of revenue from telecast rights to the challenged conduct.  *See D MIL 1* 1:1–19.  Defendants specifically assert that Plaintiffs have never raised a challenge to Section 10.3 of the NFL Constitution—the provision that provides that "[a]ll regular season . . . television income will be divided equally among all member clubs of the League,"—until their merits reply and rebuttal expert reports.  *Id.*  In those reports, Plaintiffs' experts criticized Defendants' experts on including 100% revenue sharing in their but-for world models.  *Id.*  Plaintiffs respond that sharing 100% of revenues from telecast rights has always been a part of the challenged conduct because 100% revenue sharing "is part and parcel" of the agreement to pool 100% of the telecast rights and has the same anticompetitive effects.  *See D MIL 1 Opp.* 1:1–19.  For support, Plaintiffs point to their second consolidated amended complaint ("Second CAC"), which states that "the NFL's 32 member Teams have given the league authority to negotiate pooled rights television deals on their behalf, *in exchange for an equal share of the resulting revenues*."  *Id.* (emphasis included); *Second Consolidated Amended Complaint*, Dkt. # 441 ("*Second CAC*"), ¶ 81.

Defendants are not arguing that Plaintiffs have conceded the legality of a particular agreement, but that their challenge to revenue sharing is untimely.  *See D MIL 1 Reply* 3:6–9.  As a result, Defendants ask the Court to preclude Plaintiffs from discussing their "new theory of liability" at trial under Federal Rules of Civil Procedure ("FRCP") 8, 26(a), and 26(e).

---

[5] The Court cites the unredacted version of the reply.  The original filing can be found at Docket Entry Number 1220.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

II.  Legal Standard

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party may also file a motion *in limine* to admit evidence. *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

FRCP 8 states that a civil complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When a plaintiff fails to clearly identify the grounds of a claim, the district court must disregard the claim. *See id.* at 909.

FRCP 26(a) provides that

> [A] party must, without awaiting a discovery request, provide to the other parties (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . [and] (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . .

Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii).

FRCP 26(e) requires that "[a] party . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Under FRCP 37, when "a party fails to provide information or identify a witness as required by [FRCP] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37(c)(1) forbids "the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed"). This is typically a self-executing, automatic sanction, unless the party failing to disclose the information can show either a "substantial justification" for the failure or that the failure was harmless. *See Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008); Fed. R. Civ. P. 37(c)(1) advisory committee notes (1993) ("The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) . . . ."); *Yeti by Molly, Ltd.*, 259 F.3d at 1106–07.

### III. Discussion

#### A. Rule 8

As an initial matter, both parties agree Plaintiffs have not challenged partial revenue sharing and conceded that some revenue sharing is not necessarily anticompetitive. *See Second CAC* ¶ 124 ("If the NFL and its Teams were simply interested in competitive balance, they could generate revenues through ordinary competitive means and then engage in some *permissible* form of revenue sharing, or otherwise participate in less restrictive agreements.") (emphasis added). The concession that some revenue sharing may exist, however, does not mean that Plaintiffs have relinquished the argument that total revenue sharing would be anticompetitive. The Court thus sees the crux of the dispute to be whether 100% sharing of revenue from telecast rights is really a distinct practice from 100% pooling of telecast rights, such that Plaintiffs needed to plead it as a separate theory of liability.

First, the Court does not agree with Defendants that Plaintiffs need to have specifically challenged Section 10.3 of the NFL Constitution—which lays out the teams' agreement to share revenues—to have challenged this conduct. *See D MIL 1 Reply* 3:11–15 (arguing that "Plaintiffs' Opposition fails to address the relevant question of whether they included Section 10.3's 100% revenue sharing agreement as part of the challenged conduct in this suit"); *see also id.* 5:22–25 (arguing that the complaint failed to identify Section 10.3 specifically as anticompetitive). Just because Defendants separate telecast pooling and revenue sharing into different sections of the NFL Constitution does not mean that those practices are necessarily distinct. While Defendants are correct that an expert's but-for world analysis should eliminate only the challenged conduct, *see D MIL 1 Reply* 2:9–14, n.1, Defendants provide no caselaw that

Case 2:15-ml-02668-PSG-SK   Document 1321   Filed 05/02/24   Page 5 of 9   Page ID #:50865

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

holds that Plaintiffs needed to specify every agreement provision implicated by the challenged conduct.

Second, Defendants' focus on separating the agreement provisions related to pooling and sharing, but this is contrary to the Ninth Circuit's instruction: "'[T]he essential inquiry' is 'whether or not the challenged restraint enhances competition,' which is assessed by considering the totality of 'the nature or character of the contracts.'" *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1146–47 (9th Cir. 2019) ("*NFL Sunday Ticket*") (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okl.*, 468 U.S. 85, 103–04 (1984)).[6] In the Second CAC, Plaintiffs described the totality of the contracts as "the NFL's 32 member Teams have given the league authority to negotiate pooled rights television deals on their behalf, *in exchange for an equal share of the resulting revenues*." *Second CAC* ¶ 81 (emphasis added). And Defendants' own expert, Professor B. Douglas Bernheim, agreed that:

> The main effect of revenue sharing is that it homogenizes the objectives of otherwise independent firms. Firms that share the same objectives have no incentive to compete with one another. In the extreme, any firm that receives a fixed slice of the total profit pie will try to maximize the size of the pie rather than the portion resulting from its own activities.

*Expert Report of B. Douglas Bernheim*, Dkt. # 962-10 ("*Bernheim Rep.*"), ¶ 257. While Professor Bernheim raised this argument to show Defendants' current scheme is procompetitive because—given the teams' revenue sharing—the teams would not compete with each other, he actually revealed total revenue sharing and telecast pooling are two sides of the same coin. Thus, after considering the totality of the nature of the agreements that Plaintiffs challenge in this case, the Court finds 100% revenue sharing is as much a part of the challenged conduct as 100% pooling of telecast rights.

---

[6] The Court also notes that the NFL Constitution is not necessarily distinct from the Teams-NFL Agreement, one of the three agreements identified as part of the challenged conduct in this case. *See NFL Sunday Ticket* at 1148 ("The 32 individual NFL teams . . . entered into an agreement with the NFL ('Teams-NFL Agreement') to pool their telecasting rights and give the NFL the authority to exercise those rights, rather than exercising those rights individually."). This is why, at the summary judgment stage, the NFL Constitution was introduced to show a material dispute of fact as to the existence of the Teams-NFL Agreement. *See Sum. J. Order* 21 ("[T]he restrictions in the NFL Constitution may reflect an agreement between the member clubs to pool their telecasts rights.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Third, the Court disagrees that Plaintiffs' challenge to 100% revenue sharing has been rebutted by Plaintiffs' own expert, Professor Daniel Rascher. *D MIL 1* 3:8–13, 6:17–19. Defendants point to several comments made by Professor Rascher where he says that the NFL's revenue sharing agreement would not necessarily need to change to eliminate the anticompetitive conduct. *See D MIL 1* 6:7–15; *Expert Reply Report of Daniel A. Rascher in Support of Plaintiffs' Motion for Class Certification*, Dkt. # 774-3 ("*Rasher Class Cert. Reply Rep.*"), ¶ 145 (There is "no reason to assume th[at the elimination of the NFL's equal revenue sharing agreement] is a necessary change inherently tied to the alleged misconduct."); *id.* ¶ 27 n. 23 ("[T]here [is] nothing inherently connected to the removal of the challenged conduct . . . that would require the NFL's existing revenue sharing of media rights to change."); *Expert Report of Daniel A. Rascher*, Dkt. # 962-4 ("*Rascher Rep.*"), ¶ 273 ("In a but-for world that consists of additional MVPDs distributing Sunday Ticket, th[e NFL's] policy [of sharing media revenues equally across all 32 teams] is easily maintained.").[7] But Professor Rascher's opinions are not incompatible with Plaintiffs' theory of liability. A closer look at Professor Rascher's arguments make clear that he is asserting the NFL's equal revenue sharing of *league-generated* revenues would not need to necessarily change if the teams were also independently generating their own, local revenue:

> Therefore, as long as the NFL maintains its tight payroll restrictions, [competitive balance] will not be an issue and will not be affected by changes in the media contracts/landscape in the but-for world. In fact, the current policy in the NFL is that national media revenues are shared equally across all 32 teams. In a but-for world that consists of additional MVPDs distributing Sunday Ticket, that policy is easily maintained; specifically there is no reason to assume this is a necessary change inherently tied to the alleged misconduct. In a more competitive [but-for world] in which individual franchises contract with different channels to produce and distribute their games, the NFL could continue to share those revenues, perhaps similarly to how ticket revenues are shared. Or, a certain portion of revenues could be shared equally as MLB had done in its previous CBA (2017-2021), where each team took 48% of its net local revenue and put it into a pool for equal sharing.

*Rasher Class Cert. Reply Rep.* ¶ 145. Professor Rascher's analysis assumes that the individual clubs are able to contract and sell their telecast rights at least somewhat individually, and in such a scenario, the NFL's decision to distribute its league-generated revenue equally may not be anticompetitive. The NFL's revenue sharing would be less than 100% revenue sharing of

---

[7] An MVPD, a multichannel video programming distributor, is a package-based video content delivery service.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

telecast rights, because teams would be keeping some of their own revenues.[8] Dr. Rascher's report, therefore, is not evidence that Plaintiffs are changing the scope of the challenged conduct.[9]

Because 100% revenue sharing is part of the overall challenged conduct—and Plaintiffs' experts have said nothing to indicate to Defendants otherwise—Plaintiffs have not violated FRCP 8's requirement that they clearly plead a claim such that Defendants were given adequate notice.

B.  Rule 26

In light of the above, the Court finds that Plaintiffs did not violate Rule 26(a) by introduction of new, unpleaded liability theories by their experts. *See D MIL 1* 3:8–13; Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016) ("Rebuttal testimony cannot be used to advance new arguments or new evidence, nor are they the place to set forth an alternate theory." (cleaned up)). Plaintiffs' experts, Professor Rascher and Professor Einer Elhauge, are not introducing new theories of liability, just critiquing Defendants' experts for failing to exclude all of the challenged conduct from their but-for worlds.

Defendants also complain that in violation of Rule 26(e), Plaintiffs failed to amend their interrogatory responses to assert a challenge to the NFL's revenue sharing agreement. *D MIL 1* 4:13–27. During the course of discovery, Defendants asked Plaintiffs whether the NFL and its clubs would continue revenue sharing in the proposed "but-for world[s]." Plaintiffs responded:

---

[8] This also supports the conclusion that Plaintiffs need not specifically attack Section 10.3 of the NFL Constitution. In theory, that provision of the Constitution could remain intact and the teams could share equally in the league-wide revenue as long as the teams could individually and competitively generate their own, local revenue, too. Thus, Plaintiffs did not need to identify Section 10.3 by name—they are challenging the practice of 100% revenue sharing in whatever form or contract provision it could take.

[9] Even Defendants' own expert, Professor Bernheim, acknowledged that he understood Professor Rascher's to assume there would not be 100% revenue sharing in a world without the restraints on telecast output. *See Bernheim Rep.* ¶ 24 ("Although Dr. Rascher is not explicit, he may have in mind a but-for world with unstated restrictions on the manner in which the NFL would be permitted to share telecast revenues among teams.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

> [A]nticompetitive restraints are unnecessary to equalize revenue among the clubs. The NFL Defendants have an extensive revenue-sharing program that extends beyond broadcast revenue, and other sports leagues use a variety of means to share revenue. If the NFL Defendants wish to achieve a more equal allocation of revenue among the clubs than a free market would produce, it is not necessary to restrain output and charge monopoly prices to do so. *Direct revenue sharing could achieve the same aim without any of these restraints and consequent harm to consumers*.

*Residential Plaintiffs' Responses to Second Set of Interrogatories*, Dkt. # 1130-1, 24 (emphasis added). The Court disagrees with Defendants that the emphasized portion of the interrogatory response is materially incomplete for failing to challenge Section 10.3. Again, Plaintiffs need not specifically challenge Section 10.3, they are challenging the sharing of *all* revenues from telecast rights regardless of the mechanism. *See supra* § III.A n.11. And this response accurately and completely answers Defendants' question: Plaintiffs do not assert that all levels of revenue sharing must be eliminated. Thus, this response does not preclude Plaintiffs from arguing that 100% revenue sharing is anticompetitive.

Regardless the Court agrees with Plaintiffs that Defendants would not be prejudiced, particularly given the intertwined nature of pooling telecast rights and sharing 100% of telecast rights revenue. Defendants claim that they "had no opportunity to take fact discovery to demonstrate and substantiate the procompetitive effects of their revenue sharing model," *D MIL 1* 6:21–23, but the revenue sharing is part of the same model as the telecast pooling; the parties' arguments about the procompetitive effects and the harms of the conduct should be the same. Defendants also state that they "had no opportunity to address whether a challenge to revenue sharing would generate individualized issues that would defeat class certification," *id.* 6:23–25, but how Defendants share revenues has nothing to do with the commonality of the class members' experiences—they all still bought an allegedly overpriced product regardless of how the revenues were distributed on the back end. Defendants lastly argue that they will not be able to offer responsive expert evidence on this "new theory of liability." *Id.* 6:25–27. But the Court finds this is the result of Defendants' continued and improper insistence on isolating parts of the alleged conspiracy instead of assessing the entire scheme.

Accordingly, Plaintiffs have not violated Rule 26, and even if they had, it would be harmless to Defendants.

IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion *in limine* No. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 2, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

**IT IS SO ORDERED.**