UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Lynnie Fahey | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order GRANTING IN PART and DENYING IN PART Defendants' motion *in limine* No. 7. DKT [1126]

Before the Court is Defendants'[1] motion *in limine* No. 7, seeking to exclude certain testimony from Plaintiffs' expert witness, Professor Einer Elhauge.  *See* Dkt. # 1151-1 ("*D MIL 7*").[2]  Plaintiffs[3] opposed, *see* Dkt. # 1204-1 ("*D MIL 7 Opp.*")[4], and Defendants replied, *see* Dkt.

---

[1] Defendants in this action consist of:  National Football League, Inc. ("NFL"); Arizona Cardinals, Inc.; Atlanta Falcons Football Club LLC; Baltimore Ravens Limited Partnership; Buccaneers Limited Partnership; Buffalo Bills, Inc.; Chicago Bears Football Club Inc.; Cincinnati Bengals, Inc.; Cleveland Browns LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos Football Club; Detroit Lions, Inc.; Football Northwest LLC; Green Bay Packers, Inc.; Houston NFL Holdings LP; Indianapolis Colts Inc.; Jacksonville Jaguars Ltd.; Kansas City Chiefs Football Club, Inc.; Miami Dolphins, Ltd.; Minnesota Vikings Football Club LLC; NFL Enterprises LLC; New England Patriots, LP; New Orleans Louisiana Saints LLC; New York Football Giants, Inc.; New York Jets Football Club, Inc.; Oakland Raiders LP; PDB Sports Ltd.; Panthers Football LLC; Philadelphia Eagles Football Club, Inc.; Pittsburgh Steelers Sports, Inc.; San Diego Chargers Football Co.; San Francisco Forty Niners Ltd.; Tennessee Football, Inc.; The Rams Football Company LLC; and, Washington Football Inc.

[2] The Court cites the unredacted version of the motion.  The original filing can be found at Docket Entry Number 1126.

[3] Plaintiffs are two classes of DirecTV NFL Sunday Ticket subscribers.

[4] The Court cites the unredacted version of the opposition.  The original filing can be found at Docket Entry Number 1174.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

# 1258-1 ("*D MIL 7 Reply*").[5]  After considering the parties' papers and listening to the arguments made during the hearing held on May 2, 2024, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion *in limine* No. 7.

I.    Background

This is an antitrust suit where Plaintiffs allege that Defendants have entered a set of agreements with each other and their broadcast partners—DirecTV, CBS, and FOX—that suppress the output of telecasts of out-of-market professional football games.  *See Order re Defendants' Motion for Summary Judgment*, Dkt. # 1155 ("*Sum. J. Order*"), 2.  The alleged outcome of these agreements is that DirecTV has been able to charge supracompetitive prices for Sunday Ticket, a subscription package that provides telecasts of all NFL games.  *Id.*

Plaintiffs are relying on expert witness and law professor, Professor Einer Elhauge, to rebut the economic soundness of the opinions offered by Defendants' expert witness, Professor B. Douglas Bernheim.  *See D MIL 5 Opp.* 4:1–4.  Professor Elhauge's chief criticisms are that (1) Professor Bernheim's opinion that pooling telecast rights involves no horizontal agreement, in part because individual teams do not have "natural" property rights to telecasts of their own games, is contradicted by both economic principles and the history of sports broadcasting; and (2) Professor Bernheim fails to support his proffered justifications for the contractual restraints that Plaintiffs challenge in this litigation with quantitative evidence that demonstrate that they actually promote competition.  *Id.* 4:8–18.  Defendants now request that the Court prohibit Professor Elhauge from offering any legal testimony under Federal Rules of Evidence ("FRE") 402, 403, and 702.  *D MIL 7* 1:12–13.

II.    Legal Standard

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  A party may also file a motion *in limine* to admit evidence.  *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991).  A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the FREs.  *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial.  *Id.* at 41–42 ("[E]ven if nothing unexpected

---

[5] The Court cites the unredacted version of the reply.  The original filing can be found at Docket Entry Number 1239.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

FRE 402 provides that "[r]elevant evidence is admissible" unless the U.S. Constitution, a federal statute, the FREs, or "other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. FRE 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

FRE 702 provides that expert opinion evidence is admissible if the expert is "qualified as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702, and the rule "contemplates a broad conception of expert qualifications," *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Generally, "'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting Fed. R. Evid. 704(a)). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Id.* (quoting *Hangarter*, 373 F.3d at 1016).

III. Discussion

A. Legal Opinions

Defendants do not dispute that Professor Elhauge can testify about economics, *D MIL 7* 1:4–5, but argue that Professor Elhauge intends to impermissibly rely on his status as a law professor to invade the province of the Court by explaining the law to the jury, *id.* 1:6–8. Plaintiffs respond that each of the opinions Defendants challenge is an economic critique of a specific economic opinion offered by Professor Bernheim, which Defendants misconstrue as legal just because Professor Elhauge is a law professor. *D MIL 7 Opp.* 4:7–23. The Court finds that none of the opinions that Defendants identify, *see D MIL 7* 2:5–15, n.1;[6] *Rebuttal Expert*

---

[6] The Court will not address paragraphs not specifically identified by Defendants. *United States v. Lewis*, 493 F. Supp. 3d 858, 861 (C.D. Cal. 2020) ("[M]otions *in limine* must identify the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

*Report of Professor Einer Elhauge*, Dkt. # 962-29 ("*Elhauge Reb. Rep.*"), are legal conclusions or inadmissible legal instruction:

*Paragraphs 20–21.* Defendants take issue that Professor Elhauge offers opinions on how the "property rights to game broadcasts" are "initial[ly] allocat[ed]" as between the participants in the creation of those broadcasts. D MIL 7 2:5–7. This is not a legal opinion but a statement of facts of the history of how property rights to game broadcasts were distributed in sports. Further, Professor Bernheim discusses the same idea in his report, *see Expert Report of Professor B. Douglas Bernheim*, Dkt. # 962-10 ("*Bernheim Rep.*"), ¶¶ 77, 248–54, and it is no less economic or more legal when Professor Elhauge does the same.

*Paragraph 21.* Defendants say Professor Elhauge improperly offers opinions on the scope of the antitrust exemption provided by the Sports Broadcasting Act ("SBA"), 15 U.S.C. § 1291. D MIL 7 2:8–9. In this paragraph, however, Professor Elhauge explains his understanding of the SBA, which he is relies for his subsequent opinions. Indeed, Professor Elhauge has expressly testified that he is not opining on the scope of the SBA. *See Deposition Transcript of Professor Einer Elhauge*, Dkt. # 1204-2 ("*Elhauge Dep. Tr.*"), 39:12–13 ("I'm not opining on the scope of the SBA because that's a legal question."); *id.* 39:23–40:16 ("Q . . . . Do you know what over-the-air telecast rights [the SBA] exempts? A. That's a legal question, and I don't want to give an opinion on legal issues . . . . [W]hat the scope of the SBA is, is a legal question to be resolved by you guys in briefing to the court, it seems to me.").

*Paragraph 24.* Defendants assert Professor Elhauge improperly opines that "the selling of pooled telecast rights by college football conferences is a horizontal agreement just like the one challenged in [*National Collegiate Athletic Association v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984)]." D MIL 7 2:10–13. It is not legal testimony for Professor Elhauge to compare the structure of the NCAA prior to 1984 to the NFL today. However, the instructs that Professor Elhauge must limit his testimony in accordance with the Court's order on Defendants' motion *in limine* No. 2: He can "rely[] on the underlying facts of the Non-NFL Lawsuits, making comparisons with other sports leagues, or using college football as an analog. [He], however, may not introduce the existence of and the legal conclusions, outcomes, or

---

evidence at issue and state with specificity why such evidence is inadmissible." (cleaned up) (citation omitted)); *id.* ("The 'failure to specify the evidence' that a motion in limine 'seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion.'" (quoting *Bullard v. Wastequip Mfg. Co. LLC*, No. CV 14-01309 MMM (SSx), 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

opinions from the Non-NFL Lawsuits." *See Order re Defendants' Motion* in Limine *No. 2*, Dkt. # 1320.

*Paragraphs 24, 26, and 44*. Defendants argue that Professor Elhauge improperly offers opinions on the legal standards applicable to the construction of a but-for world. *D MIL 7* 2:14–15. In these paragraphs, Professor Elhauge criticizes Professor Bernheim's opinions about the but-for worlds as contradictory, lacking support, and having flawed factual premises for including 100% revenue sharing. In its order on Defendants' motion *in limine* No. 1, the Court determined that the conduct Plaintiffs challenge includes 100% revenue sharing. *See Order re Defendants' Motion* in Limine *No. 1*, Dkt. # 1321. But-for world models exclude the challenged conduct to show what could have alternatively occurred.[7] Therefore, Professor Elhauge is not offering opinions on the legal standards applicable to the construction of a but-for world, but is relying on the definition of a but-for world to criticize of Professor Bernheim.

*Paragraph 45 n.15*. Defendants say Professor Elhauge was wrong to cite his contribution to an antitrust treatise regarding legal principles applicable to tying claims. *D MIL 7* 2 n.1. Defendants provide no support showing that relying on a treatise renders an opinion legal. Indeed, Defendants do not claim that the opinion the cite supports is improper legal opinion.

*Paragraph 69*. Defendants argue Professor Elhauge's improperly opines on "the law and policy associated with intellectual property protections." *D MIL 7* 2 n.1. Professor Elhauge is merely pointing out that Professor Bernheim's assertions that the restraints were needed to promote innovation, *see Bernheim Rep.* ¶¶ 518–48, fail to take into account that the intellectual property system already provides such protection. This is not a legal claim. Further, the jury will not be deciding anything about intellectual property law, so there is no risk of invading the province of the Court or jury.

*Paragraph 73 and n.32*. Defendants take issue with Professor Elhauge citing his own law review article as evidence of which theories have allegedly been rejected in antitrust suits related to patent settlements and understand Professor Elhauge to claim to interpret the underpinnings of "the very existence of antitrust law." *D MIL 7* 2 n.1. In this paragraph, Professor Elhauge expresses an economic concern by arguing Professor Bernheim's but-for worlds contain logical

---

[7] *See, e.g.*, ABA Section of Antitrust Law, Proving Antitrust Damages: Legal And Economic Issues 4 n.2 (3d ed. 2017) ("[D]amages resulting from an antitrust injury [are] measured by comparison to a 'but-for' world that reflects conditions in the actual world in all respects except for the alleged anticompetitive conduct.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

fallacies. And the Court agrees that Professor Elhauge's article presents an economic model to support the point, and even if it did not, Defendants provide no support showing that citing a law review automatically turns his claim into a legal one. Regardless, Professor Elhauge provides another article in an economics journal by an economics professor, so his point is additionally supported by a non-legal source.[8]

Accordingly, the Court **DENIES** Defendants' motion to the extent that it seeks to exclude testimony on the above paragraphs of Professor Elhauge's rebuttal report.

B.  Erroneous Statements of Law

A party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury. *See Nationwide*, 523 F.3d at 1063. Professor Elhauge opines that "Prof. Bernheim fails to establish any procompetitive justification for the challenged restraints" because "he provides no evidence to quantify their benefit to consumers, or show that the size of any benefit to consumers outweighs the anticompetitive effects on prices, output, and consumer choice." *Elhauge Rep.* ¶ 14. Defendants complain that Professor Elhauge is improperly shifting the burden of proof by arguing Defendants should quantify the effects of their procompetitive rationale. *D MIL 7* 3:13–18.

The rule of reason is "a multi-step, burden-shifting framework that requires courts to conduct a fact-specific assessment to determine a restraint's actual effect on competition." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 974 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024), *cert. denied*, 144 S. Ct. 682 (2024). To determine whether a restraint violates the rule of reason, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market" ("step one") and then "the burden shifts to the defendant to show a procompetitive rationale for the restraint" ("step two"). *Ohio v. Am. Express Co.*, 585 U.S. 529, 540, 541 (2018); *see also NCAA v. Bd. of Regents of the University of Oklahoma*, 468 U.S. 85, 113 (1984) ("Under the Rule of Reason, these hallmarks of anticompetitive behavior place upon petitioner a heavy burden of establishing an affirmative defense which competitively justifies this apparent deviation from the operations of a free market."). "A procompetitive rationale is a [1] nonpretextual claim that the defendant's conduct

---

[8] Defendant cites to several points in Professor Elhauge's deposition transcript where he makes the same "legal claims" as discussed above. *See D MIL 7* 2 n.1. For the same reasons as above, the Court does not find the testimony improper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

is [2] indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal." *Epic Games*, 67 F.4th at 986 (cleaned up).

"If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means" ("step three"). *Ohio*, 585 U.S. at 542. "[W]here a plaintiff's case comes up short at step three, the district court must proceed to step four and balance the restriction's anticompetitive harms against its procompetitive benefits" ("step four"). *Epic Games*, 67 F.4th at 994.

Defendants argue that they only must provide a procompetitive *rationale* for the alleged restraint. And once they do, it is actually on Plaintiffs to quantify and compare the competitive impacts. *D MIL 7* 4:23–5:7. Meanwhile, Plaintiffs assert that Professor Elhauge's critiques of Professor Bernheim's proffered justifications are helpful to the jury's fact-specific assessment of the restraints' effect on competition because they bear directly on steps two, three, and four of the rule-of-reason framework. *D MIL 7 Opp.* 14:23–25.

The Court agrees that Professor Elhauge's opinions can be of assistance to the jury throughout steps two through four of the framework. At step two—determining whether there is a procompetitive rationale that is not pretextual and actually improves competition—Defendants are obligated to produce *some* kind of evidence in support of their procompetitive rationale. *See* Notes to ABA Model Jury Instructions in Civil Antitrust Cases, Instruction 3C (2016) ("Defendant has the burden of producing evidence regarding the existence of competitive benefits."). So, while there is no requirement that that evidence be quantitative, *see infra*, Plaintiffs are free to criticize Defendants' evidence, or lack thereof. Professor Elhauge can point out that Defendants' support for their procompetitive rationale lacks quantitative evidence so that Plaintiffs' counsel can argue that the rationale may be pretextual for lack of support.[9]

Professor Elhauge's opinion can also assist the jury at step three of the rule of reason analysis—where Plaintiffs must demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means.[10] If Defendants' procompetitive

---

[9] The Court notes that it would be improper for Professor Elhauge to argue that the rationale may be pretextual.

[10] The Court also disagrees with Defendants' assertion that Plaintiffs have an empirical duty at this stage, either. They cite no caselaw to that effect. Neither party is required to provide quantitative data during the rule of reason analysis, but both parties can be criticized for having

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

"rationale was nebulously defined and weakly substantiated" at step two, at step three, Plaintiffs "ha[ve] more flexibility . . . to fashion less restrictive alternatives." *Epic Games*, 67 F.4th at 986. Thus, Professor Elhauge's criticism about Professor Bernheim's lack of quantitative support for the stated procompetitive rationale is relevant as it can inform the jury as to how strictly to assess Plaintiffs' alternatives.

Professor Elhauge's opinion that the evidence proffered by Professor Bernheim "does not suffice to establish that the magnitude of that benefit would likely offset the anticompetitive effects," *Elhauge Reb. Rep.* ¶ 61, is likewise relevant to step four, which balances the restraints' anticompetitive harms against its procompetitive benefits.[11] He is pointing out that Defendants lack quantitative support for their assertion that the balance would weigh in their favor. The Court, therefore, finds that Professor Elhauge can comment that Professor Bernheim's opinions lack quantitative support.

But Professor Elhauge—or Plaintiffs—cannot argue or imply that Defendants have an "empirical burden" to prove procompetitive effects.[12] Plaintiffs cite no caselaw indicating that the procompetitive rationale or its comparative benefits need to be quantified.[13] Lack of

---

weak support for their arguments without such evidence.

[11] Defendants are correct that this opinion would be inappropriate to support the earlier steps in the framework because there it is not relevant at those stages whether the benefit offsets the anticompetitive effects.

[12] Plaintiffs concede this to an extent, asserting that "[n]owhere in Prof. Elhauge report does he state, or imply, that the law imposes on the NFL Defendant a burden to 'quantify the procompetitive effects of its behavior' or 'affirmatively prove that its conduct has a net positive effect on competition.'" *D MIL 7 Opp.* 17:14–17. But the Court finds it necessary to elaborate on this because Plaintiffs repeatedly argue that "NFL Defendants bear an empirical burden to prove procompetitive effects." *See id.* 16:18–19.

[13] Plaintiffs cite to *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 836 (9th Cir. 2022), *cert. denied sub nom. The Nat'l Ass'n of Realtors v. The PLS.com, LLC*, 143 S. Ct. 567 (2023), but the Court does not find that it supports Plaintiffs' point. The case merely stands for the proposition that the procompetitive rationale is not one that shows there are some benefits to the restraint, but one that shows that the benefits improve competition. In fact, the court looked at both qualitative and quantitative evidence to assess the validity of the procompetitive justification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 7, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

quantitative evidence does not necessarily equate a lack of factual basis for the assertion that the restraints are necessary to sustain the free broadcasting of NFL games. *See id.* 16:1–11.  Any implication that Professor Bernheim or Defendants have a duty to provide a quantitative analysis would be improper under the rule of reason.  Thus, Professor Elhauge and Plaintiffs cannot outright claim that Professor Bernheim fails to establish a procompetitive justification *because* he does not quantify its effects.

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' motion as to limiting Professor Elhauge's statements concerning the rule of reason and criticisms of Professor Bernheim's lack of quantitative evidence.  Professor Elhauge is free to point out that Professor Bernheim has no quantitative evidence for his claims about the procompetitive effects of the restraints.  And while Plaintiffs' counsel can assert that that makes Professor Bernheim's arguments weak or pretextual, they cannot go so far as to argue or imply that Defendants have a duty to provide quantitative evidence of their procompetitive rationale.

IV.  Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion *in limine* No. 7 to the following extent:

The Court **DENIES** the motion on the grounds that it seeks to preclude Professor Elhauge's opinions for being conclusions of law.

The Court **GRANTS in part** and **DENIES in part** the motion as to Professor Elhauge's statements concerning the rule of reason and criticisms of Professor Bernheim's lack of quantitative evidence.  Professor Elhauge is free to point out that Professor Bernheim has no quantitative evidence for his claims about the procompetitive effects of the restraints.  And while Plaintiffs' counsel can assert that the lack of quantitative evidence makes Professor Bernheim's arguments weak or pretextual, they cannot go so far as to argue or imply that Defendants had a duty to provide quantitative evidence of their procompetitive rationale.

**IT IS SO ORDERED.**