## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Lynnie Fahey | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order DENYING Defendants' motions *in limine* Nos. 5 and 6. DKT [1118] [1122]

Before the Court are two motions *in limine* filed by Defendants,[1] seeking to exclude or limit the testimony of Plaintiffs'[2] expert witnesses:  Professor Daniel A. Rascher, *see* Dkt. # 1147 ("*D MIL 5*"), and Dr. J. Douglas Zona, *see* Dkt. # 1149 ("*D MIL 6*").[3]  Plaintiffs opposed both motions, *see* Dkt. # 1170 ("*D MIL 5 Opp.*"); Dkt. # 1208-1 ("*D MIL 6 Opp.*"),[4] and

---

[1] Defendants in this action consist of:  National Football League, Inc. ("NFL"); Arizona Cardinals, Inc.; Atlanta Falcons Football Club LLC; Baltimore Ravens Limited Partnership; Buccaneers Limited Partnership; Buffalo Bills, Inc.; Chicago Bears Football Club Inc.; Cincinnati Bengals, Inc.; Cleveland Browns LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos Football Club; Detroit Lions, Inc.; Football Northwest LLC; Green Bay Packers, Inc.; Houston NFL Holdings LP; Indianapolis Colts Inc.; Jacksonville Jaguars Ltd.; Kansas City Chiefs Football Club, Inc.; Miami Dolphins, Ltd.; Minnesota Vikings Football Club LLC; NFL Enterprises LLC; New England Patriots, LP; New Orleans Louisiana Saints LLC; New York Football Giants, Inc.; New York Jets Football Club, Inc.; Oakland Raiders LP; PDB Sports Ltd.; Panthers Football LLC; Philadelphia Eagles Football Club, Inc.; Pittsburgh Steelers Sports, Inc.; San Diego Chargers Football Co.; San Francisco Forty Niners Ltd.; Tennessee Football, Inc.; The Rams Football Company LLC; and, Washington Football Inc.

[2] Plaintiffs are two classes of DirecTV NFL Sunday Ticket subscribers.

[3] The Court cites to the unredacted versions of the motions, but the original filings can be found at Docket Entry Numbers 1118 and 1122, respectively.

[4] The Court cites to the unredacted version of the opposition, but the original filing can be found at Docket Entry Number 1182.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Defendants replied, *see* Dkt. # 1254-1 ("*D MIL 5 Reply*"); Dkt. # 1256-1 ("*D MIL 6 Reply*").[5] The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **DENIES** Defendants' motions *in limine* Nos. 5 and 6.

    I.    Background

    This is an antitrust suit where Plaintiffs allege that Defendants have entered a set of agreements with each other and their broadcast partners—DirecTV, CBS, and FOX—that suppress the output of telecasts of out-of-market professional football games. *See Order re Defendants' Motion for Summary Judgment*, Dkt. # 1155 ("*Sum. J. Order*"), 2. The alleged outcome of these agreements is that DirecTV has been able to charge supracompetitive prices for Sunday Ticket, a subscription package that provides telecasts of all NFL games. *Id.*

    Defendants challenged the reports of Plaintiffs' expert witnesses, Professor Rascher and Dr. Zona, at the class certification stage, which the Court rejected. *Order Granting Class Certification*, Dkt. # 894 ("*Class Cert. Order*"), 9–12. Defendants now bring two motions *in limine*, reviving their challenges to the expert witnesses' testimonies, arguing that Professor Rascher's opinions should be excluded in light of the amendments to Federal Rule of Evidence ("FRE") 702, *see D MIL 5*; *see also Expert Report of Professor Daniel A. Rascher*, Dkt. # 962-4 ("*Rascher Rep.*"), and that Dr. Zona's models should also be reevaluated as they have since been updated, *see D MIL 6*; *see also Expert Report of Dr. J. Douglas Zona*, Dkt. # 962-34 ("*Zona Rep.*").

    II.    Legal Standard

    A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party may also file a motion *in limine* to admit evidence. *See United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the FREs. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Regardless of a court's initial decision on a motion *in limine*, however, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected

---

[5] The Court cites to the unredacted versions of the replies, but the original filings can be found at Docket Entry Numbers 1231 and 1235, respectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

FRE 702 provides that expert opinion evidence is admissible if the proponent demonstrates that it is more likely than not that: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022). "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.'" Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

FRE 702 requires district courts to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Elosu*, 26 F.4th at 1024 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Id.* (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

With respect to reliability, the test is "whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal citation omitted). "To evaluate reliability, the district court 'must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance.'" *Elosu*, 26 F.4th at 1024 (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)). "These factors are nonexclusive, and 'the trial court has discretion to decide how to test an expert's reliability based on the particular circumstances of the particular case.'" *Id.* (quoting *City of Pomona*, 750 F.3d at 1044)) (cleaned up); *see also Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 (explaining that the *Daubert* reliability requirement "is flexible").

"[T]he critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," are threshold questions of admissibility, Fed. R. Evid. 702, advisory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

committee note 1 to 2023 amendment, but the district court is "a gatekeeper, not a fact finder." *Elosu*, 26 F.4th at 1024 (quoting *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)). "[FRE] 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* at 1026. "Accordingly, 'the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" *Id.* (quoting *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70) (cleaned up); *see also* Fed. R. Evid. 702, advisory committee note 1 to 2023 amendment ("Applying a higher standard than helpfulness to otherwise reliable expert testimony is unnecessarily strict."). The Ninth Circuit has emphasized *Daubert*'s guidance that FRE 702 "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citing *Daubert*, 509 U.S. at 588).

    III.    <u>Discussion</u>

        A.    <u>Defendants' Motion *in Limine* No. 5—Professor Rascher</u>

Despite the Court having determined that Professor Rascher's testimony was admissible at the class certification stage, *see Class Cert. Order*, 11–13, Defendants reraise their same objections to Dr. Rascher's methods and ask that the Court reassess his testimony in light of the recent amendments to FRE 702, *see id.* 12; *D MIL 5* 1:4–6. The purpose of the amendments to FRE 702, however, was to clarify—not change—the rule because the Advisory Committee believed that certain courts had misinterpreted the rule by applying an incorrect standard of review. Yet Defendants do not suggest that the Court applied an incorrect standard of review when it denied their motion to exclude Professor Rascher's opinions at the class certification stage. Nor do they point to anything in the Court's previous decision that is inconsistent with FRE 702 as it is written now. As a result, the Court does not find that the amendments to FRE 702 warrant a rehashing of the Court's prior analysis. The Court, therefore, **DENIES** Defendants' motion *in limine* No. 5.

        B.    <u>Defendants' Motion *in Limine* No. 6—Dr. Zona</u>

The Court admitted Dr. Zona's economic models at class certification, *see Class Cert. Order* 9–11, and Defendants now challenge them again because they have since been revised, *see D MIL 6* 1:5–6. Defendants make three arguments as to why the models are unreliable: (1) Dr. Zona assumes that the NFL would behave economically irrationally in his but-for world because he assumes the NFL would charge a fixed fee for its licenses, when every other sports

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

league with multiple distributors uses a per-subscriber fee structure; (2) Dr. Zona's Transaction & Viewership Model fails to model demand for Sunday Ticket reliably because it fails to account for the viewing preferences of individual fans; (3) Dr. Zona incorrectly uses the list price of Sunday Ticket—instead of the "actual-world" net price reflective of discounts—to compare to his Conjoint Model so as to generate the desired price reductions. *See generally D MIL* 6. The Court disagrees with Defendants' criticisms.

First, Defendants imply that a fixed-fee structure would not maximize the NFL's profits, and therefore would be an irrational choice, but their only support for such an implication is that other sports leagues do not used a fixed fee licensing scheme. Defendants do not explain why the structures of the out-of-market packages of the MLB, NHL, and NBA are good comparators with respect to "practices" or "incentives." *See D MIL 6* 3:21–4:18. Moreover, the Court is satisfied with Dr. Zona's reasons to maintain the fixed-fee structure in his models: Each of the NFL's current broadcast agreements is for a fixed fee, and thus keeping this structure could contribute to the model's comparability. *See Zona Rep.* ¶ 67. Further, in Canada, Sunday Ticket is distributed non-exclusively, *see, e.g.*, *Rascher Rep.* ¶¶ 105, 382–84, yet the NFL does not license that content using a per-subscriber approach. Because a fixed-fee structure could very well be a rational economic choice, its inclusion in Dr. Zona's models does not make the models unreliable.

Second, Defendants' objection that Dr. Zona's Transaction & Viewership Model fails to account for the viewing preferences of individual fans mischaracterizes the model. The model incorporates transaction and viewership data at the DirecTV-customer level. *See Zona Rep.* ¶ 8. In this way, it does not assume that individuals within a certain region will make identical viewing choices. Defendants raise the following example to show why Dr. Zona's model is unreliable:

> For example, consider a Sunday on which the Rams, Chargers, and Cowboys each are playing games available on television in Los Angeles. Dr. Zona's model imposes the restriction that—if the Rams game became unavailable—all consumers in the Los Angeles DMA [Designated Market Area] would be equally and most likely to switch to the Chargers game, even though his own analysis shows that many consumers in the DMA prefer watching the Cowboys to the Chargers.

*D MIL 6* 6:14–19. Dr. Zona is not saying all Los Angeles residents would switch to the Chargers game, but that the likelihood that they will switch to a Chargers game is the same as the likelihood that they will switch to a Cowboys game. Contrary to Defendants' criticism, Dr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ML 15-02668 PSG (SKx) | Date | May 13, 2024 |
|---|---|---|---|
| Title | In re: NFL's "Sunday Ticket" Antitrust Litigation | | |

Zona's model specifically acknowledges that residents in a given market area would make different choices, and he identifies the proportions of those preferences. Measuring preferences using a distributional approach does not mean that Dr. Zona assumes all individual preferences are identical. His model contains no such flaw.

Third, Defendants criticize that Dr. Zona is not using the proper value of Sunday Ticket to compare to the results of his Conjoint Model, but this criticism conflates issues. Dr. Zona's Conjoint Model determines that in a market with one other competitor, the price of Sunday Ticket would be $158.50. *Zona Rep.* ¶ 93, Ex. 20. Defendants argue that he should not be comparing that price to Sunday Ticket's list price—$295—but to $102.74, the actual-world net price reflective of discounts. *Id.*; D MIL 6 8:25–9:7. Comparing $158.50 to $102.74, however, would not be an apples-to-apples comparison because $102.74 is not a retail price or a profit maximizing price, as Dr. Zona's model seeks to determine. *D MIL 6 Opp.* 7:13–8:3; *see Zona Rep.* ¶ 8. Similarly, $102.74 is an average price that was calculated using DirecTV transaction data that Dr. Zona analyzed in his Transaction & Viewership Model, and not the survey data used for Dr. Zona's Conjoint Model. And because it is an average price, $102.74 includes corporate promotions that do not exist in the survey data—and thus do not exist in Dr. Zona's Conjoint Model—including discounts, early cancellations, early terminations, free trials, employee referrals, and more. *D MIL 6 Opp.* 7:24–8:3, 9:6–23. Moreover, the survey data was calibrated around Sunday Ticket's list price, further making the comparison to the list price the appropriate choice. *See D MIL 6 Opp.* 8:4–19. The Court finds that Dr. Zona's commitment to comparing like data with like data sufficiently reliable.

Accordingly, the Court **DENIES** Defendants' motion *in limine* No. 6.

IV.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motions *in limine* Nos. 5 and 6.

**IT IS SO ORDERED.**