| | |
|---|---|
| WALKER STEVENS CANNOM LLP<br>Hannah L. Cannom (SBN 245635)<br>hcannom@wscllp.com<br>Bethany M. Stevens (SBN 245672)<br>bstevens@wscllp.com<br>500 Molino Street #118<br>Los Angeles, CA 90013<br>Telephone:   (213) 337-9972<br>Facsimile:    (213) 403-4906<br><br>*Attorneys for Non-Party Apple Inc.* | AMIT Q. GRESSEL (SBN 307663)<br>WILSON SONSINI GOODRICH &<br>ROSATI<br>One Market Plaza, Spear Tower Suite 3300<br>San Francisco, CA 94105<br>Telephone:  (415) 947-2000<br>Email: agressel@wsgr.com<br><br>*Attorneys for Non-Parties Google LLC and YouTube, LLC* |

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (JEMx)<br><br>**NON-PARTIES' NOTICE OF MOTION AND MOTION FOR PROTECTIVE TREATMENT OF CERTAIN TRIAL EXHIBITS TO BE SEALED IN THE PUBLIC COURT FILE AND PRECLUDED FROM PUBLIC DISPLAY DURING TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Philip S. Gutierrez<br>Hearing Date: June 14, 2024<br>Hearing Time: 1:30 p.m.<br><br>COURTROOM:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2024, at 1:30 pm,[1] or as soon as the matter may be heard, before the Honorable Philip S. Gutierrez in Courtroom 6A of the United States District Court for the Central District of California, 350 W 1st., Los Angeles, CA 90012, Non-Parties Amazon.com, Inc. ("Amazon"), Apple Inc. ("Apple"), CBS Corporation ("CBS"),[2] Comcast Corporation ("Comcast"), DAZN Media, Inc. ("DAZN"), DIRECTV, LLC ("DIRECTV"), ESPN, Inc. ("ESPN"), EverPass Media, LLC, Google LLC and YouTube, LLC ("YouTube"), NBC Universal Media, LLC ("NBCU"), RedBird Capital Partners Management LLC, and Verizon Corporate Services Group ("Verizon") (together, the "Non-Parties"), by and through their undersigned counsel, will and hereby respectfully move this Court for an order (1) directing the parties to not display certain trial exhibits containing Non-Party confidential business information (the "Confidential Exhibits") on any screen visible by the public gallery and (2) sealing the Confidential Exhibits in the public court file during and after trial, including in any subsequent filings in this case.[3]

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Daniel Weinberg (on

---

[1] The Non-Parties understand that the Court may hold a conference among the parties on or around June 4, 2024, and would welcome the opportunity to be heard on this motion at or before that time if the Court sees fit.

[2] CBS Corporation is now known as Paramount Global.

[3] The specific trial exhibit numbers that each Non-Party seeks to seal are listed in the Proposed Order accompanying this motion, as proscribed under L.R. 79-5.2.2(a)(ii), and also specifically contained in the respective declarations of each Non-Party filed contemporaneously herewith. The Non-Parties reserve their right to modify the list of Confidential Exhibits contained within the Proposed Order based on any future amendments to the joint exhibit list as discussed at the May 16, 2024 Pre Trial Conference. The Non-Parties further reserve their right to modify the list of Confidential Exhibits contained within the Proposed Order to the extent additional exhibits are used at trial that have not been disclosed to the Non-Parties in advance of trial. *See, e.g.,* Declaration of Daniel Weinberg, CBS, at n.4. (hereinafter, "Weinberg Decl.").

behalf of CBS), Charlie Neiman (on behalf of Amazon) ("Neiman Decl."), Steve Smith (on behalf of Apple, Inc.) ("Smith Decl."), Marc Pellegrino (on behalf of DAZN) ("Pellegrino Decl."), Nick Dawson (on behalf of ESPN) ("Dawson Decl."), Jon Anthony Cruz (on behalf of YouTube LLC) ("Cruz Decl."), Justin Smith (on behalf of Comcast) ("J. Smith Decl."), Kevin LaForce (on behalf of RedBird) ("LaForce Decl."), Alex Kaplan (on behalf of EverPass) ("Kaplan Decl."), J. Christopher Lauricella (on behalf of DIRECTV), and David Pietrycha (on behalf of NBCU) ("Pietrycha Decl."), and the pleadings and records on file in the above-entitled action.

This Motion is made following several conferences between the parties and the Non-Parties pursuant to Local Rules 7-3 and 7-19, including on April 26, 2024 (all Non-Parties), May 9, 2024 (Amazon only), May 9, 2024 (ESPN only), May 10, 2024 (Apple only; Amazon only), May 12, 2024 (DIRECTV only) May 13, 2024 (CBS only; RedBird and EverPass only). *See* Dkt. Nos. 1336-1 (Cannom Decl. ¶¶ 3, 8); 1336-11 (Snodgrass Decl. ¶¶ 6, 7); 1336-10 (Gressel Decl. ¶ 10); 1336-9 (Warren Decl. ¶ 6); 1336-8 (Buchweitz Decl. ¶ 9); 1336-7 (Marvisi Decl. ¶ 5); 1336-5 (Morrison Decl. ¶ 6); 1336-4 (Kopczynski Decl. ¶ 5).

Plaintiffs do not consent. The NFL Defendants state that they "take no position and defer to the Court."

Dated: May 17, 2024          Respectfully submitted,

By: */s/ Bethany Stevens*

## MEMORANDUM OF POINTS AND AUTHORITIES

Non-Parties Amazon.com, Inc. ("Amazon"), Apple Inc. ("Apple"), CBS Corporation ("CBS"),[4] Comcast Corporation ("Comcast"), DAZN Media, Inc. ("DAZN"), DIRECTV, LLC ("DIRECTV"), ESPN, Inc. ("ESPN"), EverPass Media, LLC, Google LLC and YouTube, LLC ("YouTube"), NBC Universal Media, LLC ("NBCU"), RedBird Capital Partners Management LLC, and Verizon Corporate Services Group ("Verizon") (together, the "Non-Parties") respectfully move this Court for an order (1) directing the parties to not display certain trial exhibits containing Non-Party confidential business information (the "Confidential Exhibits") on any screen visible by the public gallery and (2) sealing the Confidential Exhibits in the public court file during and after trial, including in any subsequent filings in this case.

The Confidential Exhibits include the Non-Parties' most sensitive business information: non-public agreements between broadcasters and the NFL, *see* Neiman Decl. ¶ 7; and major college conferences that have never been disclosed publicly (some of which this Court has previously sealed, ECF 962); non-public affiliate rates negotiated between broadcasters and their television partners, (*see* J. Smith Decl. ¶ 4); non-public agreements between non-parties concerning licensing, distribution, and sponsorship agreements that have never been disclosed publicly, *see, e.g.,* Kelly Decl. ¶¶ 6-7; Lauricella Decl. ¶¶ 3-10; Kaplan Decl. ¶¶ 3,8-10; LaForce Decl. ¶¶ 5-6, 9-10; draft term sheets and financial analyses exchanged during non-public and highly commercially sensitive business negotiations, *see* Smith Decl. ¶ 5, Neiman Decl. ¶¶ 5, 14, Kaplan Decl. ¶ 8, LaForce Decl. ¶ 9; competitively sensitive financial analyses of the Non-Parties' respective businesses, *see* Weinberg Decl. ¶ 22; Dawson Decl. ¶ 8; Pellegrino Decl. ¶ 14; Neiman Decl. ¶¶ 5, 14; and strategic business presentations concerning negotiations and bids for NFL rights. *See e.g.* Dawson Decl. ¶ 10; Cruz Decl. ¶¶ 9-14, 18-26; Pietrycha Decl.

---

[4] CBS Corporation is now known as Paramount Global.

1

¶¶ 4-5; Kelly Decl. ¶ 6; Neiman Decl. ¶¶ 5, 14.[5] The non-public broadcast agreements contain a plethora of competitively sensitive and bespoke terms, including, but not limited to, information about production specifications, camera angles, and advertising inventory, much of which is irrelevant to this case. Weinberg Decl. ¶¶ 15-23; Pietrycha Decl. ¶¶ 4-5; Neiman Decl. ¶ 7.

      Public disclosure of the Confidential Exhibits would irreparably harm the Non-Parties. *See* Weinberg Decl. ¶¶ 15-23; Smith Decl. ¶¶ 5-7; Dawson Decl. ¶¶ 17-20; Cruz Decl. ¶¶ 9-14, 18-26; J. Smith Decl. ¶ 5; Pietrycha Decl. ¶ 5; Kelly Decl. ¶ 7; Pellegrino Decl. ¶¶ 14-15; Neiman Decl. ¶¶ 6, 8-11; Lauricella Decl. ¶ 2; Kaplan Decl. ¶¶ 3,8-10; LaForce Decl. ¶¶ 5-6, 9-10. For example, many of the Non-Parties compete with each other to obtain rights to manage and distribute sports content. Public disclosure of the Confidential Exhibits would allow each Non-Party's competitors to ascertain how they value, negotiate, and implement sports content agreements. Disclosure would further harm each Non-Party by revealing competitive vulnerabilities and competitive advantages—allowing for both to be exploited by their competitors. If the Confidential Exhibits were publicly disclosed, competing broadcasters and media companies would become privy to valuable business information that could help them in future competitions to obtain sports broadcasting rights. *See e.g.* Dawson Decl. ¶¶ 17-20; Cruz Decl. ¶¶ 9-14, 18-26; Pietrycha Decl. ¶ 5; Kaplan Decl. ¶ 9; LaForce Decl. ¶ 9; Lauricella Decl. ¶ 4-5; Neiman Decl. ¶¶ 8-11.

      But the Non-Parties understand that their confidentiality interests cannot serve as a blanket to shield disclosure over every piece of information that they would prefer not be made public. That is why the Non-Parties promptly conferred

---

[5] The specific trial exhibit numbers which each Non-Party seeks to seal are listed in the Proposed Order accompanying this motion, as proscribed under L.R. 79-5.2.2(a)(ii), and also specifically contained in the respective declarations of each Non-Party filed contemporaneously herewith.

with the Plaintiffs and NFL Defendants over the course of several weeks, including dozens of separate meet-and-confer calls and emails, and have identified only their most sensitive Confidential Exhibits to be protected. And it was not until May 13 that Plaintiffs informed the Non-Parties that they would not stipulate to *any* procedures regarding *any* documents, and have not agreed to *any* Non-Party's request for confidential treatment of *any* exhibits at trial.[6] *See* ECF 1336-1 at ¶ 9.

The Non-Parties' present request is not novel: it has been utilized by other courts concerning similar highly sensitive non-party trial exhibits. Indeed, the same firm representing Plaintiffs here represented the plaintiffs in *O'Bannon v. NCAA* and *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, where they successfully tried their cases with similar protections.

To be clear, the Non-Parties do not want to interfere with the parties' ability to ask questions, and the Non-Parties do not want to interfere with any witness's ability to answer those questions. The Non-Parties simply seek to ensure that their highly confidential and competitively sensitive information, which they have gone to great lengths to develop and protect, cannot be photographed, reproduced, or otherwise accessed outside of its legitimate use during this trial.

For these reasons, and as set forth in greater detail below, the Non-Parties respectfully request the Court enter an order (1) directing the parties to not display the Confidential Exhibits on any screen visible by the public gallery and (2) sealing the Confidential Exhibits in the public court file during and after trial, including in any subsequent filings in this case.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1)(G), the Court has discretion to issue a protective order, including the sealing of court filings or other documents for, among other reasons, "requiring that a trade secret…development, or

---

[6] Except for limited redactions with regard to Non-Party DirecTV.

3

1 commercial information not be revealed." Fed. R. Civ. P. 26(c)(1)(G). The Ninth Circuit defines trade secrets as including any "compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it or use it" and may "relate[] to the sale of goods or to other operations in business." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (internal quotation omitted). "[A]ccess to judicial records is not absolute" and documents or records that "have traditionally been kept secret" are not subject to the right of public access. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). In particular, as this Court has recognized, "[c]ourts have refused to permit public access to files that serve as sources of business information that might harm a litigant's competitive standing." *Cat Coven Ltd. Liab. Co. v. Shein Fashion Grp. Inc.*, 2019 WL 10856813 (C.D. Cal. Dec. 20, 2019) (Gutierrez, J.) (internal quotations and citations omitted).

"[G]ood cause or compelling reasons" are required to seal. L.R. 79-5.2.2(a)(i). In determining whether compelling reasons exist to seal, the court shall consider "all relevant factors," including the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (quoting *EEOC v. Erection Co.*, 900 F.2d 168, 170 (9th Cir. 1990)).

**III. ARGUMENT**

**A. Non-Parties Confidential Information Clearly Meets the Standard for Protection at Trial**

Compelling reasons exist to implement the extremely narrow protective measure requested by the Non-Parties here—to turn off the public gallery-facing display (and only the public-facing display) during the introduction of a Confidential Exhibit—and grant the Non-Parties' targeted sealing requests. *See* Weinberg Decl.

4

¶¶ 15-23; Smith Decl. ¶¶ 5-7; Dawson Decl. ¶¶ 15-20; Cruz Decl. ¶¶ 5-6, 8-14, 18-26; Kelly Decl. ¶¶ 6-7; Neiman Decl. ¶¶ 12, 13; LaForce Decl. ¶¶ 5-6, 9-10; Kaplan Decl. ¶¶ 5, 7-10; *see also In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-02541-CW (N.D. Cal.) at ECF 805, 959, 1011, 1029, 1102, 1112-1114 (holding "compelling reasons" exist to seal broadcast agreements); *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 19-15566 (9th Cir. 2019) at ECF 65 ("[c]ompelling reasons justify continuing the seal of the Broadcasters' confidential information").

Indeed, this Court has already held that at least some of the Confidential Exhibits meet this standard and warrant sealing. *See, e.g.,* ECF 961. Judge McDermott has also held that certain confidential information contained within the Confidential Exhibits are "of secondary importance" and appropriate for redaction. ECF 432.

This makes sense. Courts routinely order protection over commercially sensitive material like the agreements and negotiation-related documents at issue here, recognizing the competitive disadvantage that would occur from disclosing contractual terms and negotiation strategies to competitors and potential business partners. *See e.g. Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 7429304, at *3 (N.D. Cal. Feb. 9, 2016) (finding compelling reasons to seal "confidential contracts and agreements" and "confidential agreements entered into by Proofpoint which disclose confidential contractual terms, fee structures, and agreements"); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, 2014 WL 6986068, at *1 (N.D. Cal. Dec. 10, 2014) (holding that Adobe's proprietary licensing agreements "were sealable information").

This action has "generated an extraordinary amount of public interest. But it does not necessarily follow that the public has a legally cognizable interest in every document filed." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1224 (Fed. Cir.

2013). Courts regularly balance the public's understanding of the judicial process with the interests of parties—and, more so, non-parties—in protecting their competitive standing. The public interest "does not extend to mere curiosity about the parties' confidential information where that information is not central to a decision on the merits." *Id*. at 1228. *See also Ameranth, Inc. v. Chownow*, Inc., 2021 WL 3678415 at *2 (S.D. Cal. Aug. 18, 2021) ("'sources of business information that might harm a litigant's competitive standing' may also constitute a compelling reason to seal, such as a company's confidential profit, cost, and pricing information, which if publicly disclosed could put the company at a competitive disadvantage.") (internal citations omitted); *In re Elec. Arts, Inc.*, 298 F.App'x 568, 569 (9th Cir. 2008) (finding compelling reasons to seal documents containing "pricing terms, royalty rates, and guaranteed minimum payment terms"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897 (S.D. Cal. Mar. 11, 2011) (finding compelling reasons to seal documents containing "trade secrets," "information akin to trade secrets that could cause competitive harm if publicly divulged," "pricing terms in distribution agreements," "pricing and marketing information," "company profit and loss," "detailed financial information," "business and marketing strategy," "information regarding product development, sales and pricing information, financials, internal troubleshooting, and information regarding the businesses of clients," "pricing proposal," and "required annual purchases"). Courts further distinguish between material actually relied upon for any claim or defense from other confidential or sensitive material that happens to appear in trial exhibits. "The other information [] is irrelevant to the public's understanding of the judicial proceedings." *Apple v. Samsung*, 727 F.3d at 1228; *accord* Order, *United States of America et al. v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 892 at 7-15 (D.D.C. Apr. 24, 2024) (Mehta, J.) (sustaining redactions of contractual terms and highly sensitive information that could put parties and third-parties at a competitive disadvantage;

6

redaction of information not relevant to disputed issues also appropriate).

**B. Non-Parties' Request is Narrowly Tailored, Non-Disruptive, and has Been Used in Many other Similar Trials.**

That is why the Non-Parties' have crafted their requested relief to have **no impact** on the parties' ability to try their cases, and the jury's ability to digest what is presented to them. The Non-Parties' real concern is the risk that their key competitors and members of the public access the Confidential Exhibits for reasons having nothing to do with this trial. *Id.* at 1224. *See Ameranth,* 2021 WL 3678415 at *2.

These procedures have worked well in other trials concerning similar exhibits. For example, the court in *O'Bannon* recognized that the "specific dollar amounts" associated with the "NCAA's broadcast licensing agreements" could be sealed under the "compelling reasons" standard "[b]ecause the public disclosure of … these terms may undermine the NCAA's ability to negotiate future licensing agreements with other broadcasters." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2014 WL 662545, at *1 (N.D. Cal. Feb. 20, 2014). Also in *O'Bannon*, the court ordered the sealing at trial of the financial terms of certain of the media agreements when ruling on motions filed by athletic conferences and a stipulation entered into as between the NCAA, CBS, TBS, and plaintiffs. See *O'Bannon* at ECF 201 (granting in part and denying in part motion to seal trial exhibits and finding that the parties must refrain from referring to the dollar amounts mentioned in the media agreements at issue during the trial and must redact those dollar amounts from any exhibits submitted to the court or displayed on the courtroom monitors); ECF 223 (approving portion of stipulation between Plaintiffs, the NCAA, and non-parties CBS and TBS, and providing that financial terms of media agreement shall remain redacted in trial exhibit and shall not be disclosed at trial).

Thereafter, the Court in *NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*

recognized the confidentiality of various media agreements, ordered that broadcasters be allowed to redact certain provisions of its agreements, and further provided for a specific process to resolve any disputes about such redactions. ECF 538; *Jenkins v. NCAA*, No. 4:14-cv-02758-CW at ECF 212, 264. The Court further ordered that the redacted portions of broadcast agreements be sealed and further restricted their use at trial. *NCAA Athletic Grant-In-Aid Cap Antitrust Litig.* at ECF 1015. *See also id*. at ECF 392, 499, 503, 534, 537. That Court *repeatedly* held that broadcasters had "compelling reasons" to seek protection of their confidential information. *See id*. at ECF 805, 959, 1011, 1029, 1102, 1112-1114. The Ninth Circuit, likewise, agreed that "[c]ompelling reasons justify continuing the seal of the Broadcasters' confidential information." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 19-15566 (9th Cir. 2019) at ECF 65.

The situation here is identical: the Non-Parties have compelling reasons to maintain their most closely guarded information, and each stands to be irreparably prejudiced by the unnecessary disclosure of proprietary, competitively sensitive information, much of which is irrelevant. *See* Weinberg Decl. ¶¶ 17-23; Smith Decl. ¶¶ 5-7; Dawson Decl. ¶¶ 15-20; Cruz Decl. ¶¶ 5-6, 8-14, 18-26; J. Smith Decl. ¶¶ 5-6; Pietrycha Decl. ¶¶ 4-5; Kelly Decl. ¶¶ 6-7; Neiman Decl. ¶¶ 5-14; Lauricella Decl. ¶ 4-5; Kaplan Decl. ¶¶ 3,8-10; LaForce Decl. ¶¶ 5-6, 9-10; Pellegrino Decl. ¶¶ 14-15; ECF 432. For example, the Non-Parties' agreements and negotiation-related term sheets and analyses exchanged with the NFL and major conferences contain confidential financial information which includes, among other things, the rights fees for the agreements, including by year. Other of Non-Parties' agreements likewise contain heavily negotiated and non-public distribution terms, including pricing and other financial terms that are currently in effect. Other non-public economic provisions that could competitively harm the Non-Parties if they were publicly disclosed include future negotiations provisions. Disclosure of these provisions, as

well as disclosure of draft terms and analyses exchanged during contract negotiations, would harm the Non-Parties' bargaining position in future negotiations with other rights partners, who might seek similar terms, and could also lead to competitive issues between the Non-Parties. Weinberg Decl. ¶¶ 17-23; Smith Decl. ¶¶ 5-7; Dawson Decl. ¶¶ 15-20; Cruz Decl. ¶¶ 5-6, 8-14, 18-26; Kelly Decl. ¶¶ 6-7; Neiman Decl. ¶¶ 5-14; Kaplan Decl. ¶ 9; LaForce Decl. ¶¶ 3, 8-9; Lauricella Decl. ¶ 4-5.

In addition to the financial terms, the agreements contain highly sensitive provisions dealing with internal production specifications, such as camera angles, audio and video feeds, personnel, use of graphics, and production equipment. Similarly, the Non-Parties' negotiation-related documents reflect broader analyses and strategies regarding video, sports, and streaming technology. Smith Decl. ¶ 7. Not only do these provisions have no relevance to the case, they are also highly sensitive and their disclosure could disadvantage the Non-Parties in their negotiations with other rights partners, who again, may try to seek comparable terms.

Other examples of highly sensitive provisions which have not been made public include provisions, which, if disclosed, could affect the Non-Parties' abilities to negotiate with current sponsors and advertisers, as well as to obtain new sponsors and advertisers. These include provisions specifically dealing with promotional rights and obligations, as well as allocation of advertising units and billboards. There is no need for this information to be publicly accessible outside of its use at trial. *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. 07-6053, 2010 WL 841274, at *3 (N.D. Cal. Mar. 10, 2010) (sealing documents that contained "highly technical portions of Mr. Brandt's report that would do little to aid the public's understanding of the judicial process, but have the potential to cause significant harm to NetApp's competitive and financial position within its industry"); *see also Ameranth,* 2021 WL 3678415 at *2.

**IV. CONCLUSION**

The Non-Parties do not wish to interfere with the trial. They just want to make sure that their most closely guarded secrets are protected. Therefore, for the reasons described above and in the accompanying declarations, the Non-Parties respectfully request that the Court enter an order (1) directing the parties to not display the Confidential Exhibits on any screen visible by the public gallery and (2) sealing the Confidential Exhibits in the public court file during and after trial, including in any subsequent filings in this case.

Case 2:15-ml-02668-PSG-SK   Document 1348   Filed 05/17/24   Page 14 of 17   Page ID
#:51268

Dated: May 17, 2024               Respectfully submitted,

By: <u>*/s/ Bethany Stevens*</u>
    Bethany Stevens
    **Walker Stevens Cannom LLP**
    500 Molino St. Suite 118
    Los Angeles, CA 90013
    (213) 712-0145
    bstevens@wscllp.com
    *Counsel for Apple Inc.*

<u>*/s/ Amit Q. Gressel*</u>
Amit Q. Gressel
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Email: agressel@wsgr.com
*Counsel for*
*Google LLC and YouTube, LLC*

<u>*/s/ Ramie O. Snodgrass*</u>
Arthur Kats (CA SBN 344384)
**DAVIS WRIGHT TREMAINE LLP**
865 S. Figueroa Street, Suite 2400
Los Angeles, CA, 90017
(213) 655-9669
arthurkats@dwt.com

**DAVIS WRIGHT TREMAINE LLP**
Jim Howard
Ramie O. Snodgrass
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 757-8208
jimhoward@dwt.com
ramiesnodgrass@dwt.com
*Counsel for Non-Party*
*Amazon.com, Inc.*

|   |   |
|---|---|
| 1 | |
| 2 | _/s/ Erika H. Warren_ |
|   | Erika H. Warren (Bar No. 295570) |
| 3 | Francesca M. S. Germinario |
|   | (Bar No. 326208) |
| 4 | WARREN KASH WARREN LLP |
| 5 | 2261 Market Street, No. 606 |
|   | San Francisco, California, 94114 |
| 6 | +1 (415) 895-2940 |
| 7 | +1 (415) 895-2964 facsimile |
|   | 15-2668@cases.warrenlex.com |
| 8 | |
| 9 | _Attorneys for Non-Parties RedBird_ |
|   | _Capital Partners Management LLC_ |
| 10 | _and EverPass Media, LLC_ |
| 11 | |
| 12 | _/s/ Arthur J. Burke_ |
|    | Arthur J. Burke |
| 13 | **DAVIS POLK & WARDWELL** |
| 14 | 1600 El Camino Real |
|    | Menlo Park, CA, 94025 |
| 15 | (650) 752-2000 |
|    | arthur.burke@davispolk.com |
| 16 | _Counsel for Non-Parties Comcast and_ |
| 17 | _NBCUniversal_ |
| 18 | _/s/ Yehudah L. Buchweitz_ |
|    | Yehudah L. Buchweitz |
| 19 | (admitted PHV) |
| 20 | WEIL, GOTSHAL & MANGES LLP |
|    | Email: Yehudah.Buchweitz@weil.com |
| 21 | 767 Fifth Avenue |
| 22 | New York, NY 10153 |
|    | Telephone: (212) 310-8256 |
| 23 | Facsimile: (212) 310-8007 |
| 24 | |
| 25 | _Counsel for CBS Corporation,_ |
|    | _now known as Paramount Global_ |
| 26 | |
| 27 | _/s/ Emily Curran-Huberty_ |
|    | Emily Curran-Huberty (SBN 293065) |
| 28 | |

|   |   |
|---|---|
| 1 | MUNGER, TOLLES & OLSON LLP |
| 2 | Emily.Curran-Huberty@mto.com |
|   | 560 Mission Street, 27th Floor |
| 3 | San Francisco, CA 94132 |
| 4 | Telephone: (415) 512-4052 |
|   | *Counsel for ESPN, Inc.* |
| 5 |   |
| 6 |   /s/ Brandon Marvisi            |
|   | HUNTON ANDREWS KURTH LLP |
| 7 | Ann Marie Mortimer (SBN 169077) |
|   | amortimer@HuntonAK.com |
| 8 | Brandon Marvisi (SBN 329798) |
| 9 | bmarvisi@HuntonAK.com |
|   | 550 South Hope Street, Suite 2000 |
| 10 | Los Angeles, California 90071-2627 |
| 11 | Telephone: 213 • 532 • 2000 |
|   | Facsimile: 213 • 532 • 2020 |
| 12 | *Counsel for Verizon Corporate* |
| 13 | *Services Group, Inc.* |
| 14 |   |
|   |   /s/ Jeffrey A.N. Kopczynski    |
| 15 | Jeffrey A.N. Kopczynski |
|   | (admitted PHV) |
| 16 | jkopczynski@omm.com |
| 17 | O'MELVENY & MYERS LLP |
|   | Times Square Tower |
| 18 | 7 Times Square |
| 19 | New York, New York 10036 |
|   | Telephone:  (212) 326-2000 |
| 20 | Facsimile:   (212) 326-2061 |
| 21 | *Counsel for Non-Party DIRECTV, LLC* |
| 22 |   |
| 23 |         /s/ David Y. Livshiz            |
|   | David Y. Livshiz |
| 24 | FRESHFIELDS BRUCKHAUS |
| 25 | DERINGER US LLP |
|   | 3 World Trade Center |
| 26 | 175 Greenwich Street |
| 27 | New York, NY 10007 |
|   | Telephone:  (212) 284-4979 |
| 28 |   |

Email: david.livshiz@freshfields.com
*Counsel for DAZN Media, Inc.*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for non-party Apple Inc., certifies that this brief contains 2,882 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 17, 2024

       */s/ Bethany Stevens*
       Bethany Stevens