1  Yehudah L. Buchweitz (admitted *pro hac vice*)
   Email: Yehudah.Buchweitz@weil.com
2  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
3  New York, NY 10153
   Telephone: (212) 310-8256
4  Facsimile: (212) 310-8007

5  Counsel for CBS Corporation

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10 | IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-PSG (JEMx) |
|---|---|
| THIS DOCUMENT RELATES TO ALL ACTIONS | **DECLARATION OF DANIEL WEINBERG IN SUPPORT OF PARTIES' JOINT STIPULATION FOR CONFIDENTIAL TREATMENT OF CERTAIN TRIAL EXHIBITS**<br><br>Trial Date: June 5, 2024<br>Judge: Hon. Philip S. Gutierrez |

I, Daniel Weinberg, declare that the following is true:

1. I am an Executive Vice President of Programming for CBS Sports, a division of non-party CBS Corporation ("**CBS**"). I am over 18 years of age and make this declaration of my own personal knowledge, and, if called to do so, could testify competently to the facts stated herein under oath.

2. I submit this Declaration in support of the Third Parties' motion filed in the above-captioned action.

3. I am advised that Plaintiffs and Defendants in this matter are seeking to use at trial certain of CBS's agreements with the NFL, as well as a document disclosing CBS's costs for the production of NFL broadcasts, which are highly confidential and competitively sensitive.

4. Specifically, the parties have informed CBS that the following exhibits contain this highly confidential and competitively sensitive information: TX0115, TX0117, TX0131, TX0132, TX0135, TX0139, TX0146, TX0149, TX0150, TX0168, TX0188, TX0189, TX0194, TX0202, TX0207, TX0213, TX0227, TX0228, TX0340, TX0347, TX0349, TX0361, TX0368 TX0381, TX0431, TX0438, TX0439, TX0453, TX0456, TX0651, TX0739 and TX0785 (the "**CBS Agreements**") and TX1016 ("**CBS Production Costs**," and together with the CBS Agreements, the "**CBS Confidential Exhibits**").

5. The CBS Confidential Exhibits have each been designated either (a) CONFIDENTIAL as defined in paragraph 2.4 of the Stipulated Protective Order ("**Protective Order**") as "information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)" ("**Confidential Information**"), (b) HIGHLY CONFIDENTIAL as defined in paragraph 2.10 of the Protective Order as "information that qualifies as 'CONFIDENTIAL' Information or Items and includes information or items that contain competitively sensitive confidential information of the Designating Party, the disclosure of which may result in competitive harm, including, but not limited to, (i) any documents or information relating to or reflective of market strategies,

1

including business planning, contract negotiations and terms, and research and development activities; (ii) any documents or information relating to or reflective or pricing, including underlying cost data, budgets, and any price-related terms of a party; and (iii) any documents or information relating to or reflective of customer information" ("**Highly Confidential Information**"), or (c) HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE as defined in paragraph 1 of the AMENDED STIPULATED SUPPLEMENTAL PROTECTIVE ORDER ("**Non-Party Protective Order**") as "carriage rate information, sensitive material implicated in the negotiation and execution of affiliation agreements, and sensitive material implicated in the negotiation and execution of licensing agreements with the NFL . . . prior to December 31, 2021" ("**Commercially Sensitive information**").[1]

6.  Pursuant to Paragraph 7.2 of the Protective Order, only select individuals may access Confidential Information, including Plaintiffs' outside counsel, directors, and employees actively engaged in assisting with the prosecution and to whom disclosure is reasonable necessary and who have executed the Acknowledgement and Agreement to Be Bound, testifying or consulting experts to whom disclosure is reasonably necessary and who have executed the Acknowledgement and Agreement to Be Bound, vendors to whom disclosure is reasonably necessary for this action and who have executed the Acknowledgment and Agreement to Be Bound, the Court and its personnel, court reporters and their staff, and witnesses who testify at deposition or at trial, provided such witnesses (i) possess prior knowledge of such Confidential Information or Items and execute the Acknowledgement and Agreement to be Bound or affirm under oath to abide by the Protective Order before being shown or given any Confidential

---

[1] I understand that the CBS Confidential Exhibits that were produced by CBS were each designated HIGHLY CONFIDENTIAL (*See, e.g.,* TX1016). I also understand that the CBS Confidential Exhibits that were produced by the NFL were designated by the NFL as HIGHLY CONFIDENTIAL or CONFIDENTIAL but that CBS did not have input into the category of confidentiality designated by the NFL.

2

DECL. OF DANIEL WEINBERG             CASE NO. 2:15-ML-02668-PSG (JEMX)

Information or Items or (ii) are directors, officers, or employees of the Designating Party or an owner of the Designating Party.

7. Similarly, pursuant to Paragraph 7.3, only select individuals may access Highly Confidential Information, including Plaintiffs' outside counsel, vendors to whom disclosure is reasonably necessary for this action and who have executed the Acknowledgment and Agreement to Be Bound, the Court and its personnel, court reporters and their staff, and (i) to witnesses or potential witnesses who are directors, officers, or employees of the Designating Party or an owner of parent of the Designating Party or (ii) other witnesses or potential witnesses, but only to the extent that counsel for the examining or preparing party reasonable believes in good faith that such witness or potential witness authored or previously received or reviewed such information or material in the course of business.

8. Similarly, pursuant to Paragraph 3 of the Amended Protective Order, only select individuals may access Commercially Sensitive Information, including Plaintiffs' outside counsel provided the counsel is not responsible for advising any person regarding negotiation or execution of affiliation agreements or licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party, vendors to whom disclosure is reasonably necessary for this action and who have executed the Acknowledgment and Agreement to Be Bound, the Court and its personnel, court reporters and their staff, and (i) to witnesses or potential witnesses who are directors, officers, or employees of the Designating Party or an owner of the Designating Party or (ii) other witnesses or potential witnesses, but only to the extent that counsel for the examining or preparing party reasonable believes in good faith that such witness or potential witness authored or previously received or reviewed such information or material in the course of business.

9. CBS is seeking confidential treatment at trial over just a small handful of its most sensitive documents, and it gave careful thought and consideration to each trial exhibit in determining whether it warrants confidential treatment. Out of the dozens of documents CBS

produced which contain CBS's confidential information, and the dozens more that the NFL produced, CBS is only seeking to protect a few contracts and one document reflecting its specific production costs from public disclosure at trial, because these documents contain CBS's most sensitive business information.

10. Indeed, the Court has already held on several occasions that CBS's agreements with the NFL warrant confidential treatment. *See, e.g.*, Order Regarding the NFL Defendants' Application Under Rule 79-5 to File Documents Under Seal, ECF No. 961 (allowing CBS's agreements with the NFL to be filed under seal); *see also* Order Re Joint Status Report on Production of Broadcast Agreements, ECF No. 432 (allowing redaction of the production specification provisions within the CBS Agreements because they were not relevant).[2]

11. Moreover, the protections that CBS is seeking are modest, and have been narrowly tailored to minimize any impact that such protections might have on trial. Specifically, CBS seeks an order that:

i. The CBS Confidential Exhibits and demonstratives that reference, excerpt, cite, or summarize the CBS Confidential Exhibits remain sealed in the record and precluded from public access;

ii. If presented in Court, the CBS Confidential Exhibits and demonstratives that reference, excerpt, cite, or summarize the CBS Confidential Exhibits may be viewed by counsel for Plaintiffs and the NFL, the Court (including its clerks, court reporters, and officers), and the jury, but such CBS Confidential Exhibits and demonstratives that reference, excerpt, cite, or summarize the CBS Confidential Exhibits may not be displayed on any public-facing screens for the public gallery or be viewed by any person other than those listed above; and

---

[2] This Order applied to the CBS Agreements that CBS was aware had been produced at the time. CBS has since learned that the NFL produced other CBS Agreements not presented to the Court for decision on ECF No. 432. However, the Court's Order at ECF No. 432 should apply with equal force to similar provisions in each of the CBS Agreements at issue herein.

4

DECL. OF DANIEL WEINBERG         CASE NO. 2:15-ML-02668-PSG (JEMX)

iii. To the extent possible, the parties will use best efforts to not quote the CBS Confidential Exhibits in questions and answers of the witnesses (*i.e.*, instead of reading an excerpt from CBS's contract with the NFL into the record, the witness will point to the section of the contract that is relevant).

iv. For the avoidance of doubt, nothing shall preclude any witness from giving full and complete testimony, but party counsel and witnesses shall use best efforts to avoid public disclosure of the CBS Confidential Exhibits within their transcribed testimony to the extent practicable.

12. As discussed below, I understand that these procedures have worked well in similar litigations, balancing the interests of a public trial and the need to protect non-party information from unnecessary public disclosure.

13. There are compelling reasons for protecting the confidential information contained in the CBS Confidential Exhibits from disclosure at the public trial. CBS's legitimate private interests warrant confidential treatment. Denial of confidential treatment at trial would result in injury to CBS.

14. The below table reflects CBS's narrowly tailored list of exhibits (many of which are duplicates) over which it seeks confidential treatment at trial, each of which contain highly confidential and proprietary information such that a less restrictive alternative is not sufficient:[3]

---

[3] For the avoidance of doubt, CBS does not seek confidential treatment of any provisions of the CBS Agreements that are already in the public domain.

5

DECL. OF DANIEL WEINBERG  CASE NO. 2:15-ML-02668-PSG (JEMX)

| Exhibits for Confidential Treatment[4] ||
|---|---|
| **Exhibit** | **Description of Document** |
| TX0115 | 2012 & 2013 CBS-NFL Extension dated May 16, 2009 |
| TX0117 | 2006-2011 AFC Package Contract dated November 8, 2004 |
| TX0131 | 2006-2011 AFC Package Contract dated November 8, 2004 |
| TX0132 | 2006-2011 AFC Package Contract dated November 8, 2004 |
| TX0135 | CBS Sunday AFC Package Television Agreement dated February 5, 2014 and related contracts |
| TX0139 | 2014 AFC Package Basic Business Terms dated December 6, 2011 |
| TX0146 | 2021 NFL & CBS AFC Agreement dated March 16, 2021 |
| TX0149 | 2014 AFC Package Basic Business Terms Draft dated December 4, 2011 |
| TX0150 | 2014 AFC Package Basic Business Terms Draft dated December 4, 2011 |
| TX0168 | 2016 NFL & CBS Thursday Night Football Agreement dated January 31, 2016 |
| TX0188 | 2006 NFL & CBS Longform AFC Agreement dated February 28, 2006 |
| TX0189 | 2014 AFC Package Basic Business Terms dated December 6, 2011 |
| TX0194 | 2014 AFC Package Basic Business Terms Draft dated November 17, 2011 |
| TX0202 | 2014 NFL & CBS Thursday Night Football Agreement dated February 5, 2014 |
| TX0207 | 2015 NFL & CBS Thursday Night Football Agreement dated January 16, 2015 |
| TX0213 | 2014 AFC Package Basic Business Terms dated December 6, 2011 |
| TX0227 | 2014 AFC Package Basic Business Terms Draft dated December 4, 2011 |
| TX0228 | 2009 NFL & CBS AFC Extension Letter Agreement dated September 17, 2009 |
| TX0340 | 2016 NFL & CBS Thursday Night Football Agreement dated January 31, 2016 |

---

[4] I understand that there are additional trial exhibits that reference CBS's confidential information similar to the information listed herein, but which the NFL has not agreed to disclose to CBS in advance of trial. As such, CBS reserves the right to modify this list to the extent any additional trial exhibits that have yet to be disclosed to CBS contain CBS's confidential information.

| TX0347 | 2015 NFL & CBS Thursday Night Football Agreement dated January 16, 2015 |
|---|---|
| TX0349 | NFL /CBS National Feed Contract Framework dated July 2, 2019 |
| TX0361 | 2009 NFL & CBS AFC Extension Letter Agreement dated September 17, 2009 |
| TX0368 | CBS Issues List dated December 4, 2020 |
| TX0381 | 2006-2011 AFC Package Contract dated November 8, 2004 |
| TX0431 | NFL – CBS Sunday AFC Package Term Sheet |
| TX0438 | CBS Talking Points re AFC Package Agreement |
| TX0439 | AFC Package Basic Business Terms |
| TX0453 | CBS/NFL Agreement Proposal |
| TX0651 | 2014 AFC Package Basic Business Terms dated December 6, 2011 |
| TX0739 | CBS Contract Principles dated July 31, 1998 |
| TX0785 | CBS Agreement Issues List |
| TX1016 | Financial data reflecting CBS Sports' game production costs. |

15. The CBS Agreements relate to the distribution rights for the broadcasts of NFL games. CBS seeks to protect the CBS Agreements which contain highly proprietary information, including broadcasts of games that fall outside the scope of the Sunday Ticket package, production specifications, on-air talent, technical specifications for mobile streaming, and CBS's sale of advertising. Such information has never been made public, and public disclosure of this information would highly prejudice CBS by hindering its ability to negotiate licensing agreements to broadcast content in the future.

16. The CBS Production Costs are a chart reflecting CBS Sports' costs for the production of NFL games. CBS seeks to protect the CBS Production Costs, which is highly confidential and proprietary information that has never been made public, and which would highly prejudice CBS if disclosed by hindering its ability to negotiate licensing agreements to

7

broadcast content in the future.

17. CBS competes with a number of entities to obtain rights to manage and distribute content—many of whom have also appeared in this action and will be monitoring the upcoming trial closely. If the CBS Confidential Exhibits were made publicly available at trial, CBS would suffer significant irreparable competitive harm because competing broadcasters and media companies would learn valuable business information that could help them in future competitions to obtain sports broadcasting rights, including, but not limited to, future NFL broadcast rights.

18. For example, certain provisions in the CBS Agreements describe the suite of rights granted as consideration for the agreements. The negotiated bundle of rights granted under each of the agreements has not been shared publicly or with third parties outside of CBS and the NFL. These terms were heavily-negotiated, and if disclosed, would reduce the competitive advantage CBS retains over its competitors. Public disclosure would also give other entities with which CBS negotiates for distribution of content, including the NCAA (and its member conferences for both college football and college basketball), the PGA Tour, and other sports leagues an advantage because they could attempt to extract terms at least as favorable as the terms in these provisions of the CBS Agreements, hindering CBS's ability to negotiate different and/or favorable bundles of rights in its future licensing agreements.

19. Other terms in the CBS Agreements contain nonpublic information that, if disclosed, would create an asymmetry of information for CBS in the negotiation of future licensing deals and/or could cause CBS to lose the competitive advantages it has as an incumbent vis-à-vis other competitors that do not presently broadcast Sunday afternoon regular season NFL games. CBS would also be placed in a diminished bargaining position in renegotiating the terms of the licenses if the specifics of the CBS Agreements are disclosed. Moreover, as this Court previously recognized, many highly sensitive provisions of the CBS Agreements are not even

relevant to this action, such as production specifications, technical specifications for mobile streaming, and CBS's sale of advertising. *See* ECF No. 432.

20. Were the provisions in the CBS Agreements that discuss the production of game broadcasts, including CBS's method of preparing highlights, camera angles, on-air talent, encryptions, audio feeds, and equipment made public, CBS would suffer irreparable harm in that other broadcasts would be able to learn competitive business information about how CBS prepares its game broadcasts and could cause other entities with which CBS negotiates for distribution of content to seek comparable productions. Furthermore, these provisions bear no relevance to this action. *Id.*

21. Other provisions in the CBS Agreements relate to advertising, sponsorships, and commercials. Disclosure of this information would prejudice CBS if competitors and sponsors learned about the details around CBS's agreement with the NFL, and may negatively impact CBS's ability to negotiate with existing sponsors and/or obtain new sponsors.

22. The CBS Production Costs are a chart reflecting CBS Sports' costs for the production of NFL games. Were this information made public, CBS would suffer irreparable harm in that other broadcasts would be able to learn competitive business information about CBS's production costs, including CBS's strategic expenditures on talent, crew, and equipment, and could cause other entities with which CBS negotiates for distribution of content to seek comparable expenditures.

23. CBS takes significant steps to ensure that the CBS Confidential Exhibits and the highly confidential information contained therein are not disclosed outside of a limited group of persons within CBS who have a business reason to know their contents.

24. To protect the highly confidential nature of these and other similar CBS agreements, I have also submitted similar declarations on behalf of CBS in other actions regarding sports broadcast agreements, including, but not limited to, *O'Bannon v. NCAA*, No. 09-CV-3329-CW (N.D. Cal.) and *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No.

4:14-md-02541-CW (N.D. Cal.). I understand that similar treatment of CBS's confidential information in those cases has been permitted.

25. The Stipulated Protective Order entered in this action does not address the concerns discussed above, because it does not contemplate the admission and disclosure of documents at trial. CBS has previously faced a similar situation in *O'Bannon*.

26. During discovery and class certification in *O'Bannon*, and its related case, *Keller v. Elec. Arts, Inc.*, No. 4:09-cv-01967-CW (ND. Cal.), the Court held that broadcast agreements "contain commercially valuable information that could competitively disadvantage the [broadcasters] in future negotiations," and issued orders allowing such agreements to be treated as confidential. *Id.* at ECF No. 645 at 4.

27. During the *O'Bannon* trial, unredacted versions of CBS's agreements were attempted to be shown in open court to, among others, reporters and competitors who were present in the courtroom, and CBS intervened to seek protection thereof. The *O'Bannon* court recognized the confidentiality of certain CBS agreements. *Id.* at ECF No. 201 (Granting in part and denying in part Conference-USA and the Big 12 Conference's Administrative Motion to File Under Seal Confidential Trial Exhibits and allowing portions of CBS's agreements to remain confidential during trial). The Court in *O'Bannon* entered an order recognizing CBS's confidentiality interests at trial, ordering that certain portions of CBS's agreement with the NCAA remain confidential throughout the trial, and ordering that, to the extent the agreement was filed with any pleading or motion in the case, it must be filed under seal. *Id.*

28. Thereafter, the Court in *NCAA Athletic Grant-In-Aid Cap Antitrust Litigation* recognized the confidentiality of various CBS media agreements (including, but not limited to, CBS's agreements with the NCAA, the Southeastern Conference, and Conference-USA), ordered that CBS be allowed to redact certain provisions of its agreements, and further provided for a specific meet and confer process to resolve any disputes about such redactions during the course of discovery. *Id.* at ECF No. 537; *Jenkins v. NCAA*, No. 4:14-cv-02758-CW at ECF Nos.

10

212, 264. The Court further ordered that the redacted portions of the CBS agreements be sealed and further restricted their use at trial. No. 4:14-md-02541-CW at ECF No. 1015. *See also id.* at ECF Nos. 392, 499, 503, 534, 537. Indeed, that Court repeatedly held that the Broadcasters had "compelling reasons" to seek protection of their confidential information. *See id.* at ECF Nos. 805, 959, 1011, 1029, 1102, 1112-1114. The Ninth Circuit, likewise, agreed that "[c]ompelling reasons justify continuing the seal of the Broadcasters' confidential information." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 19-15566 (9th Cir. Oct. 29, 2019) at ECF No. 65.

29. Based on the foregoing, CBS respectfully requests that the Court protect the confidentiality of the CBS Confidential Exhibits and give them confidential treatment at trial as set forth in greater detail in the accompanying motion.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on May 13, 2024, in New York, New York.

DANIEL WEINBERG
EVP Programming
CBS Sports

DECL. OF DANIEL WEINBERG                    CASE NO. 2:15-ML-02668-PSG (JEMx)