Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO: ALL ACTIONS

Case No. 2:15-ml-02668−PSG (SKx)

**DEFENDANTS' POSITION ON VERDICT FORMS**

Judge: Hon. Philip S. Gutierrez
Trial Date: June 5, 2024
Courtroom: First Street Courthouse
350 West 1st Street
Courtroom 6A
Los Angeles, CA 90012

Plaintiffs are pursuing two complex antitrust claims based on an alleged single conspiracy formed through "interlocking" agreements among the NFL, the NFL Teams, and DirecTV to restrain trade in the alleged market for professional football telecasts. Notwithstanding this complexity, Defendants have proposed a substantially streamlined verdict form while retaining the necessary questions to reach an intelligible verdict that can be meaningfully reviewed on appeal. Plaintiffs' form, by contrast, has myriad flaws. It fails to capture the jury's findings in any meaningful way, resulting in an unclear verdict that could not be meaningfully reviewed. It also contains obvious structural flaws, including omitting the burden of proof (asking the jury to simply choose between Plaintiffs and Defendants), allowing jurors to award damages even if they do not find liability, and inviting inconsistent and irreconcilable verdicts on Plaintiffs' Section 1 and Section 2 claims based on the same underlying conduct.

For all these reasons, Defendants' proposed form is consistent with precedent and more appropriate than Plaintiffs' proposal.

<u>First</u>, Plaintiffs improperly suggest use of a general verdict form. Plaintiffs' proposed verdict form asks the jury no questions about their findings on any of the issues relevant to their claims. This would result in an opaque verdict that fails to identify which parties would be bound by the verdict and could not meaningfully be reviewed. Where a verdict form does not "'fully and fairly present to the jury the issues it was called upon to decide,'" it deprives a Defendant of an adequate opportunity to present its case, *see United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 90265*, 51 F.3d 1402, 1408 (9th Cir. 1995) (cleaned up) (quoting *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990)), and therefore does not comport with the Seventh Amendment, *see Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

As described in more detail below, Plaintiffs' proposed verdict form would also fail to capture the jury's findings on potentially dispositive issues such as the

single-entity status of the Defendants, the relevant product market, and which specific conduct underlies the findings. Plaintiffs' proposed form thus fails to heed the guidance that, "'in large and complex cases such as this, involving many novel legal issues, the better practice would [be] to require special verdicts or the submission of interrogatories to the jury.'" *Pac. W. Cable Co. v. City of Sacramento*, 672 F. Supp. 1322, 1326 (E.D. Cal. 1987) (quoting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 279 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093 (1980)).

Indeed, Defendants are not aware of any recent complex antitrust case that used such a cursory form, let alone one with as many structural flaws as are present in Plaintiffs' proposal.[1] And while Plaintiffs object to Defendants' proposal to use a special verdict form here, they cite no authority that could be read to suggest that courts should default to sparse verdict forms in complex antitrust cases like this. *See, e.g.*, *Pac. W. Cable Co.*, 672 F. Supp. at 1326; *see also, e.g.*, Verdict Form, *In re Google Play*, No. 3:20-cv-05671, ECF No. 601 (requiring the jury to answer element-by-element questions for each claim). As a result, Plaintiffs present no persuasive argument why the jury should not be asked to make factual findings on each element of their claims. Rather, Plaintiffs propose to have the jury abdicate its fact-finding role by submitting a verdict form that fails to "fully and fairly present . . . the issues [the jury] was called upon to decide." *See Mateyko*, 924 F.2d at 827.

Not surprisingly, Plaintiffs' examples from other cases *support* the verdict form that the NFL Defendants have proposed here. Most of their examples included questions that closely parallel the types of questions proposed in the NFL Defendants' form. For example, in one of the recent antitrust cases that Plaintiffs cite,

[1] For a recent example, see the verdict form used in *In re Google Play Store Antitrust Litigation*, No. 3:20-cv-05671-JD (N.D. Cal. Dec. 8, 2023), ECF No. 601. *See also, e.g.*, Verdict Form, *Sidibe v. Sutter Health*, No. 3:12-cv-04854-LB (N.D. Cal. Mar. 11, 2022), ECF No. 1530; Verdict Form, *In re HIV Antitrust Litig.*, No. 3:19-cv-02573-EMC (N.D. Cal. June 30, 2023), ECF No. 2057; Verdict Form, *Costco Wholesale Corp. v. Au Optronics Corp.*, No. 2:13-cv-01207-RAJ (W.D. Wash. Oct. 23, 2014), ECF No. 628.

the verdict form asked the jury (i) whether there was a conspiracy, (ii) whether the purpose of that conspiracy was to inflate rates, (iii) which specific entities joined that conspiracy, (iv) whether the conspiracy caused an injury to the plaintiffs, and (v) whether plaintiffs had proven damages. *See* Verdict Form, *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB, 2023 WL 11156379 (W.D. Mo. Oct. 31, 2023), ECF No. 1294. The form used in another of Plaintiffs' cited antitrust cases, *Masimo*, is similar: it asked the jury to decide for each claim (i) whether the defendant had engaged in the specific type of unlawful conduct alleged (*e.g.*, "Do you find that Masimo has proven that Tyco has unlawfully maintained monopoly power in the relevant market?"), (ii) whether that specific conduct had caused injury to plaintiffs, and (iii) if so, what damages were warranted. *See* Special Verdict Form, *Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. 2:02-cv-04770-MRP, 2005 WL 4782327 (C.D. Cal. Mar. 21, 2005), ECF No. 305. Moreover, two other non-antitrust cases cited by Plaintiffs used a similar approach: in *Williams*, the jury was required to answer separate questions for the elements of each claim, and then to make specific findings as to the various co-defendants; and in *MGA Entertainment*, the jury was required to fill out a chart to make specific findings as to each of the products at issue in the dispute. *See* Special Verdict, *Williams v. Bridgeport Music, Inc.*, No. 13-cv-06004 (C.D. Cal. Mar. 10, 2015), ECF No. 320, *aff'd on other grounds sub nom. Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018); Special Verdict, *MGA Ent., Inc. v. Harris*, No. 20-cv-11548-JVS (C.D. Cal. May 26, 2023), ECF No. 771.

Plaintiffs' examples reinforce the importance of asking the jury to make specific findings in complex lawsuits. All but one of the verdict forms they cite included questions that required the jury to identify the parties (or other entities) to which the findings applied. *See, e.g.*, *Sitzer*, 2023 WL 11156379 (requiring jury to identify which entities joined the conspiracy); Court's Verdict Form, *U.S. Wholesale Outlet & Distrib., Inc. v. Living Essentials LLC*, No. 2:18-cv-1077-CBM (C.D. Cal. Oct. 21, 2019), ECF No. 517 (requiring jury to identify which defendants violated

the antitrust laws, which defendants had injured plaintiffs, and which defendants owed damages); Special Verdict at 2, *Williams*, No. 13-cv-06004, ECF No. 320 (requiring jury to identify which defendants were liable); Verdict Form, *Cahill v. Edalat*, No. 8:16-cv-00686-AG (C.D. Cal. Aug. 8, 2017), ECF No. 324 (same); *see also* Special Verdict at 3–12, *MGA Ent.*, No. 20-cv-11548, ECF No. 771 (requiring jury to identify which products had been subject to infringement or misappropriation of name, image, likeness).

By contrast to all of these examples, Plaintiffs' proposed form obscures the question that the jury is being asked to answer—requiring them to decide which side won on the "Section 1" claim and "Section 2" claim, without reminding the jury what those two claims entail. Plaintiffs agree that this court "has broad discretion in deciding whether to send the case to the jury for a special or general verdict . . . *provided the questions asked are reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment*." *See 20832 Big Rock Drive*, 51 F.3d at 1408 (emphasis added); *accord Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991) ("This discretion extends to determining the form of the special verdict, provided the questions asked are 'adequate to obtain a jury determination of the factual issues essential to judgment.'" (quoting *Mateyko*, 924 F.2d at 827)). Plaintiffs' proposed form however fails to identify *any* factual issues essential to judgment, in direct conflict with this guidance and their own cited precedent.

Second, and relatedly, Plaintiffs' proposed form fails to address a number of critical questions related to their claims, including two key threshold questions in this case: (i) whether Plaintiffs have accurately defined and proven the relevant market; and (ii) whether the NFL and its member clubs are a single entity for purposes of licensing NFL telecasts.

*Relevant Market.* "A threshold step in any antitrust case is to accurately define the relevant market," *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020), and "[f]ailing to define a relevant market alone is fatal to an antitrust

claim," *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023). Plaintiffs' proposal obscures the jury's threshold decision as to the relevant market. In fact, the concept of the relevant market is wholly absent from their form, even though Plaintiffs have vacillated in recent filings about which markets they actually intend to present at trial. *See* ECF No. 1331-1 (Proposed Final Pretrial Conference Order) at 11–13, 23–24 (stating that the alleged relevant market is the market for professional football telecasts); *but see also id.* at 13 (arguing that they have not abandoned their submarket of out-of-market professional football games in a failed attempt to defend their duplicative Section 2 claim).

The appropriate approach, which other courts routinely adopt, is instead to ask the jury whether Plaintiffs have met the burden of proving the market they have alleged. *See, e.g.*, Verdict Form at 2–3, 6, *In re Google Play*, No. 3:20-cv-05671, ECF No. 601 (asking the jury whether the plaintiff proved the existence of a relevant antitrust market and requiring the jury to "specify each relevant product market and associated geographic market" it found the plaintiff proved); Verdict Form at 2, 6, *Sumotext Corp. v. Zoove, Inc.*, No. 5:16-cv-01370 (N.D. Cal. Mar. 6, 2020), ECF No. 470 (asking the jury whether the plaintiff proved its alleged relevant markets); Verdict Form at 3, *Pac. Surf Designs, Inc. v. WhiteWater West Indus., Ltd.*, No. 3:20-cv-01464 (S.D. Cal. Aug. 28, 2023), ECF No. 313 (same). As the Supreme Court has explained, "courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market" because "'[w]ithout a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition.'" *Ohio v. Am. Express Co.* ("*Amex*"), 585 U.S. 529, 543 (2018) (cleaned up) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)).

Plaintiffs object to the inclusion of a relevant market question, arguing that there is no requirement for them to prove the existence of their alleged relevant market. However, precedent confirms that Plaintiffs must define a viable relevant

antitrust market as part of their Section 1 claim. At step one of the rule of reason, "'the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023) (quoting *Amex*, 585 U.S. at 541). Because this is not a *per se* case and Plaintiffs cannot proceed under a quick-look framework, Plaintiffs must establish both the existence of the relevant market and substantial anticompetitive effects in that market. *Epic Games*, 67 F.4th at 974 & n.6, 983. Therefore, a threshold step is "defining the relevant market in which the alleged restraint occurs," *id.* at 974; *accord Qualcomm*, 969 F.3d at 992; *see also Amex*, 585 U.S. at 543.

This case is no exception. As the Ninth Circuit noted, "[i]n order to show that an agreement injures competition, a plaintiff must generally show that the defendants have market power within a relevant market, [] meaning that the defendants have 'the ability to raise prices above those that would be charged in a competitive market.'" *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1151 (9th Cir. 2019); *see also Amex*, 585 U.S. at 543. A plaintiff's burden to prove a relevant market may be relaxed if the plaintiff proves "a naked restriction on price or output," *Sunday Ticket*, 933 F.3d at 1151, but that limited exception has no application here, where Defendants have proffered a number of procompetitive effects of the challenged conduct.[2] *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 318 (2d Cir. 2008) ("more than a 'quick look' is required" if the challenged restraint "'might plausibly be thought to have a net procompetitive effect, or possibly no effect at all on competition.'" (quoting *Cal. Dental Ass'n v. Fed. Trade Comm'n*, 526 U.S. 756, 771 (1999))); *see also Cal. Dental*, 526 U.S. at 778 (declining to apply "quick look" review where "the

[2] For a more detailed discussion, see generally Defs.' Arg. in Supp. Defs.' Disp. Instr. No. 43 (Relevant Product Market) and ECF No. 1185 (Defs.' Mem. Contentions of Fact and L.) at 33–36.

plausibility of competing claims about the effects of the [challenged restraints] rules out the indulgently abbreviated review").

Plaintiffs rely on the Ninth Circuit's discussion of *American Express* in *PLS.Com, LLC v. National Association of Realtors*, 32 F.4th 824 (9th Cir. 2022), to support their argument that there is no requirement to prove the relevant market in a rule of reason case involving horizontal restraints. But that argument is incorrect and misconstrues the relevant decisions. As the Ninth Circuit recognized, *American Express* dealt with a vertical restraint of trade and noted in dicta that market definition might not be required in certain cases involving *purely* horizontal restraints. *See PLS.Com*, 32 F.4th at 838 n.7; *Amex*, 585 U.S. at 543 n.7. Plaintiffs cannot cite any authority in the Ninth Circuit or elsewhere holding that market definition is not necessary in either (i) cases involving allegations of a conspiracy involving both vertical and horizontal conduct or (ii) cases involving antitrust challenges to conduct by sports leagues. *Cf. Chi. Pro. Sports Ltd. P'Ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 600 (7th Cir. 1996) (holding that the NBA's broadcast rules "may not be condemned without analysis under the full Rule of Reason" and that "plaintiffs cannot prevail without establishing that the NBA possesses power in a relevant market"); *Salvino*, 542 F.3d at 337 (Sotomayor, J., concurring) ("Recognizing that joint ventures 'hold the promise of increasing a firm's efficiency and enabling it to compete more effectively,' the Supreme Court has concluded that joint ventures should normally be analyzed under a rule of reason, requiring an inquiry into market power and structure and the actual effects of any restraints on trade." (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984))); *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 55, 58–59 (1st Cir. 2002) ("As in any other non-*per se* case, players would have to show that MLS exercised significant market power in a properly defined market, that the practices in question adversely affected competition in that market and that on balance the adverse effects on competition outweighed the competitive benefits.").

*Single Entity.* Plaintiffs' proposed form similarly omits another threshold question that this Court has already held must be resolved by the jury: whether "the NFL and its member clubs are properly considered a single entity incapable of concerted action." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2024 WL 168298, at *15–16, *18 (C.D. Cal. Jan. 11, 2024).

Section 1 of the Sherman Act "applies only to concerted action that restrains trade." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010). Defendants will argue to the jury that the NFL and its teams "must cooperate in the production . . . of games" and the resulting telecasts, *id.* at 202, as it is impossible to produce either games or telecasts "without agreements and joint action with every other team," *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1179 (D.C. Cir. 1978). Plaintiffs will presumably attempt to counter this showing, and it will be for the jury to decide whether they have proved that "it is possible for . . . individual sports teams . . . to license telecast rights on their own." *Sunday Ticket*, 2024 WL 168298, at *16 (holding that whether the NFL and the teams are "'independent sources of economic power previously pursuing separate interests'" is a question of fact for the jury (quoting *Am. Needle*, 560 U.S. at 196)).

The question is central to Plaintiffs' claims: if they do not disprove that the NFL and the NFL Teams are a single entity for purposes of licensing telecasts, and separately find that DirecTV did not participate in the alleged conspiracy, then there can be no concerted action, no conspiracy, and no liability under either Sections 1 or 2 of the Sherman Act. As the Ninth Circuit has made clear, "[l]iability cannot be established until after the jurors unanimously agree that the elements are satisfied." *Jazzabi*, 278 F.3d at 984 (emphasis in original). Yet Plaintiffs' proposed form omits any question on this issue, which would be inconsistent with the Seventh Amendment, *id.* at 985, and which would deprive Defendants of meaningful review of the jury's verdict.

Plaintiffs object to the inclusion of a single entity question on the grounds that

(i) this is not a live issue for trial and (ii) it is not their burden to disprove the NFL Defendants' single-entity status. Both of these arguments fail. As an initial matter, this Court has already decided that the question of single-entity status is one for the jury: in its order on Defendants' motion for summary judgment, the Court stated explicitly that "[t]here is a dispute of fact whether the NFL and its member clubs are capable of concerted action" because there is a dispute of fact as to whether "it is possible for the member clubs to act individually to produce telecasts." *Sunday Ticket*, 2024 WL 168298, at *15–18.[3] Moreover, Plaintiffs do not (and cannot) dispute that it is *their* burden to prove "a contract, combination or conspiracy among *two or more persons or distinct business entities*." *Sunday Ticket*, 933 F.3d at 1150 (emphasis added) (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012)); *see also Sunday Ticket*, 2024 WL 168298, at *16 ("The Supreme Court has 'long held that concerted action under § 1 does not turn simply on whether the parties involved are legally distinct entities.'" (quoting *Am. Needle*, 560 U.S. at 191)). Plaintiffs cannot identify any precedent that shifts the burden to Defendants to disprove concerted action; to the contrary, precedent is clear that it is plaintiffs' burden to show that the alleged conspiracy "joins together separate decisionmakers." *See Sunday Ticket*, 2024 WL 168298, at *16 (quoting *Am. Needle*, 560 U.S. at 195).

Third, Plaintiffs' proposed form likewise fails to identify with specificity the showings Plaintiffs must make and which entities will be bound by the verdict. Plaintiffs wholly omit the central liability questions—whether Plaintiffs have proven a conspiracy to unreasonably restrain trade in the relevant market, for Section 1, and whether Plaintiffs have proven a conspiracy to engage in anticompetitive conduct to

[3] Plaintiffs' citation to the Ninth Circuit's motion to dismiss opinion is inapposite. The Ninth Circuit held only that there was no "binding precedent" sufficient to support dismissal on the argument that the Teams and the NFL must cooperate to produce telecasts. *See Sunday Ticket*, 933 F.3d at 1153. That decision has no impact on the live question of "whether the NFL and its member clubs are engaging in concerted action or acting like a single entity as to the conduct of producing telecasts." *See Sunday Ticket*, 2024 WL 168298, at *16.

give the NFL monopoly power in the same relevant market, for Section 2. Here too, omitting these questions is inconsistent with the Seventh Amendment and would deprive Defendants of meaningful review of the jury's verdict. *See Jazzabi*, 278 F.3d at 985. It would also stand in opposition to the consistent practice in antitrust jury trials. *See supra* at 2 n.1.

Similarly, Plaintiffs' proposed form does not provide any way of knowing which Defendants entered into a conspiracy (highly relevant to, for example, direct purchaser standing); whether any Defendants who entered a conspiracy entered into the *same* conspiracy as the others; and whether every Defendant is liable for conduct in violation of the Sherman Act. In the absence of such specificity, the verdict form fails to answer the question of whether a damages award is even sustainable (the direct purchaser issue); whether Plaintiffs have identified a single conspiracy, if any; and if so, whether the verdict binds all Defendants. *See Sunday Ticket*, 933 F.3d at 1157 (explaining that plaintiffs have alleged that their "injuries were proximately caused by *a single conspiracy*" (emphasis added)); *see also Blyden v. Mancusi*, 186 F.3d 252, 271 (2d Cir. 1999) (noting that to comply with Seventh Amendment requirements, the special verdict form completed by the jury should specify the set of acts for which each defendant was liable).

<u>Fourth</u>, Defendants' proposed form is tailored to the specific conduct that Plaintiffs challenge, while Plaintiffs' form obfuscates the requisite findings for conspiracies under both Sections 1 and 2. Plaintiffs' form does not require the jury to find specifically that there was a single conspiracy into which every Defendant and DirecTV entered, which violated the Sherman Act, and which caused injury to all class members.

The core allegation of Plaintiffs' complaint is of a "conspiracy [that] involves both the Teams-NFL agreement and the NFL-DirecTV agreement, which work together as a single conspiracy to limit the output of NFL telecasts," *Sunday Ticket*, 933 F.3d at 1157, and "to monopolize the market for professional football telecasts,"

*id.* at 1159; *see also, e.g.*, ECF No. 441 (2d Am. Compl.) ¶ 46(i) (alleging that a common question at trial will be "[w]hether the alleged conspiracy violated Section 1 of the Sherman Act"); *id.* ¶ 46(j) (alleging that a common question at trial will be "[w]hether the alleged conspiracy violated Section 2 of the Sherman Act"). Courts thus routinely submit verdict forms to the jury requiring the jury to answer whether the plaintiff proved the existence of a conspiracy. *See, e.g.*, Verdict Form at 2, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Oct. 24, 2023), ECF No. 7001; Verdict Form at 6, 8, *Sumotext Corp.*, No. 5:16-cv-01370, ECF No. 470.

Plaintiffs' form thus risks substantial confusion on the issues. Asking the jury to indicate only in whose favor their verdict is could lead to a jury verdict for Plaintiffs even in the absence of proof that each of the Defendants knowingly entered into a single integrated conspiracy, such that the discrete, commercial agreements at issue in this case in fact "work[ed] together as a single conspiracy." *See* ABA, *Model Jury Instructions in Civil Antitrust Cases*, Chapter 2–Section 1 of the Sherman Act––Contract, Combination, or Conspiracy, Instruction 4: Participation and Intent (Am. Bar Ass'n Antitrust L. Section 2016) ("[T]he evidence must show that [each member of the alleged conspiracy] knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy. To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason."). It would permit the jury to answer "Yes" to Questions 1, 3, 5, and 7 without finding any single unlawful conspiracy into which all of the NFL, the NFL Teams, and DirecTV entered. Defendants' form, which asks the jury to find that each alleged participant actually and knowingly participated in the same conspiracy, Defs.' Proposed Verdict Form, Questions 4–5, 9–10, will allow the jury to render a verdict consistent with the requirements of the Sherman Act.

Plaintiffs separately object to the flow of Defendants' verdict form as "unclear" or "confusing." In Defendants' view, it is not necessary to include additional guidance for each question on where or how to proceed because it is

otherwise apparent that the jury should proceed to the next question absent instruction otherwise. However, Defendants would not object to a revision to the form that includes additional instructions to that effect.

Fifth, Plaintiffs' proposed form improperly allows the jury to evaluate whether there was a Section 2 conspiracy to monopolize even if they find no unlawful conspiracy under Section 1—a legal impossibility in this case. Proving their Section 2 theory would require Plaintiffs to prove every element of their Section 1 claim, plus the additional elements. *See Qualcomm*, 969 F.3d at 992 ("[P]roving an antitrust violation under § 2 of the Sherman Act is more exacting than proving a § 1 violation."). That is because Plaintiffs' Section 2 claim is based on the same conduct as the Section 1 claim, and the Ninth Circuit has consistently held that failure to prove a Section 1 claim dooms a Section 2 claim based on the same conduct. *See, e.g.*, *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) ("Because [plaintiff's] claim under § 1 fails, its claim of a conspiracy to monopolize under § 2 based on the same conduct necessarily fails as well." (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998))); *see also* 3B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 809 (4th ed. 2022) ("Any arrangement that could be considered a 'conspiracy' to monopolize must necessarily also be an unreasonable 'contract,' 'combination,' or 'conspiracy' in restraint of trade offending §1."); ECF No. 1185 (Defs.' Mem. Contentions of Fact and L.) at 15–16, 32–33.

As a result, if Plaintiffs' claims fail under Section 1, they necessarily fail under Section 2, leaving no question for the jury to resolve. As the Ninth Circuit has explained, "[i]f, in reviewing an alleged Sherman Act violation, a court finds that the conduct in question is *not* anticompetitive under § 1, the court need not separately analyze the conduct under § 2." *Qualcomm*, 969 F.3d at 991 (emphasis in original) (citing *Williams v. I.B. Fischer Nev.*, 999 F.2d 445, 448 (9th Cir. 1993)) . The Court should therefore reject this attempt to give Plaintiffs a second bite at the apple if they

fail to prove the elements of their Section 1 claim.

Sixth, Plaintiffs' proposed questions on the Section 2 claim would not allow the Court or Defendants to understand whether the jury determined that Plaintiffs proved every element of their Section 2 claim.

Defendants' proposed form accurately accounts for the requirements of the law: Defendants request that the jury be required to answer whether Plaintiffs have proven (i) that Defendants conspired to engage in anticompetitive conduct (ii) with the specific intent to give the NFL monopoly power in the relevant market. Defs.' Proposed Verdict Form, Question 8.

Seventh, Plaintiffs' proposed verdict form fails to ask the relevant question of whether every member of both certified classes in fact suffered antitrust injury. Instead, Plaintiffs propose to sidestep any question of injury or causation. Because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted), a verdict in favor of the whole class cannot be justified by anything less than a jury finding that every class member was harmed, *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

Plaintiffs object that Defendants' proposed questions on injury, causation, and damages misstate Plaintiffs' burden of proof, but the verdict form asks the jury accurate and necessary questions to support any damages award to Plaintiffs. Because uninjured class members cannot recover, Plaintiffs bear the burden to establish injury and damages as to every class member that would receive an award of damages. This does not mean that Plaintiffs must in all cases prove that all class member were harmed. Rather, Plaintiffs have two options to appropriately adjudicate the question of injury at trial consistent with the Seventh Amendment. They can either (i) try to "prove, through common evidence, that *all* class members were in

fact injured," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (emphasis added), or (ii) offer an appropriate "winnowing mechanism" that would permit *the jury* to identify and exclude from recovery all uninjured class members, *see In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight II*"), 934 F.3d 619, 625 (D.C. Cir. 2019).

There is no third option of a jury verdict that concludes that there are some uninjured class members, but that fails to identify with specificity which class members were not harmed. *See Tyson Foods*, 577 U.S. at 466 (Roberts, C. J., concurring) ("if there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand"). Nor is it permissible to defer the question of whether each member of the proposed class was injured to an unspecified, post-trial proceeding. Because injury is an *element* of each of Plaintiffs' legal claims, that element must be adjudicated by a jury as a matter of the Seventh Amendment. *See Rail Freight II*, 934 F.3d at 625 (class actions must "winnow" away uninjured class members through procedures that are "robust enough to preserve the defendants' Seventh Amendment and due process rights to contest every element of liability and to present every colorable defense"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (Rule 23 "provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act.").

Therefore, if a jury agrees that all members of the class were harmed, then it may award damages. But if the jury "conclude[s] that the [Plaintiffs] failed to prove antitrust impact on a class-wide basis," then the only permissible outcome would be a verdict in Defendants' favor. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 681 (9th Cir. 2022). Defendants' verdict form appropriately asks the binary question that arises from how Plaintiffs propose to prove their case. *See id.* at 685 (defendants must be given "the opportunity to convince a jury that not all class members were overcharged").

Eighth, Plaintiffs' objection to Question 13's language asking the jury to identify "damages caused by the Defendants' conduct" is unfounded. Plaintiffs cannot dispute that they must prove that "their harm was directly caused by the antitrust violator." *Sunday Ticket*, 2024 WL 168298, at *4, or that their injury must be caused by the conspiracy they have alleged, *i.e.*, the challenged conduct, *see Sunday Ticket*, 933 F.3d at 1157 (upholding Plaintiffs' standing to assert damages claims on their assertion that their "injuries were proximately caused by a *single conspiracy*" (emphasis added)). Moreover, the use of this language is supported by several verdict forms used in antitrust trials, including class actions, despite Plaintiffs' suggestion otherwise. *See, e.g.*, Verdict Form at 3, *Costco Wholesale*, No. 2:13-cv-01207, ECF No. 628 ("What amount of damages did Costco prove it sustained as a result of the price-fixing conspiracy . . .?"); Verdict Form at 3, *HIV Antitrust Litig.*, No. 3:19-cv-02573, ECF No. 2057 ( "Did the plaintiffs prove that defendants' *conduct caused* . . .?" (emphasis added)); Verdict Form at 9, *Sumotext Corp.*, No. 5:16-cv-01370, ECF No. 470 (asking the "total amount of damages" plaintiffs were entitled to based on responses to questions asking whether Defendant "caused injury"); Verdict Form at 3, *Broiler Chicken*, No. 1:16-cv-08637, ECF No. 7001 ("What is the total amount of damages that the Class Plaintiffs sustained as a result of the conspiracy . . .?").

Ninth, Plaintiffs' form does not protect against a jury award of damages in contravention of the direct-purchaser requirement. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 730–31 (1977) (dismissing antitrust claim by indirect purchasers). In applying the *Illinois Brick* rule, this Court explained that because Plaintiffs bought Sunday Ticket exclusively from DirecTV, they can satisfy the direct purchaser requirement only if DirecTV was a participant in the alleged conspiracy. *Sunday Ticket*, 2024 WL 168298, at *4–5; *see also Sunday Ticket*, 933 F.3d at 1158 (applying the same rule at the motion to dismiss stage). Yet Plaintiffs' proposed form would allow a jury to award damages to the Plaintiffs even if the jury finds that DirecTV

did not participate in the alleged conspiracy; the form asks no questions about DirecTV's participation in the alleged conspiracy and provides no instructions to the jury about the implication of DirecTV's participation. As a result, when presented with Plaintiffs' proposed form, the jury may award damages regardless of whether DirecTV was a participant in conspiracy. This is wrong as a matter of law. The Court should instead accept Defendants' proposed verdict form, which properly directs the jury not to answer the damages question if they find that DirecTV was not a participant.

Finally, the structure of Plaintiffs' form suggests that the jury's role is simply to choose between two sides, asking not whether Plaintiffs have met their burden of proof, but instead whether the jury "find[s] in favor" of one side or the other. That framing is an attempt to improperly influence the jury to focus on their attitudes and sympathies toward the parties, rather than the merits of Plaintiffs' claims. It also fails to ask for unanimous findings as to each of the ultimate issues, and thus is not consistent with the requirement that civil juries "must render unanimous verdicts on the ultimate issues of a given case[,] not just the final verdict itself." *Jazzabi*, 278 F.3d at 985 (quotation marks and citation omitted).

Dated: May 22, 2024

Respectfully submitted,

/s/ *Beth Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*