Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (SKx) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **PLAINTIFFS' STATEMENT ON THE VERDICT FORM**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>TRIAL DATE: June 5, 2024<br>COURTROOM:<br>  First Street Courthouse<br>  350 West 1st Street<br>  Courtroom 6A<br>  Los Angeles, CA 90012 |

Plaintiffs propose a straightforward verdict form that, together with the detailed jury instructions that both parties acknowledge as necessary in a complex case such as this one, will enable the jury to determine the ultimate legal conclusion in this case: whether Defendants are liable under Section 1 and/or Section 2 of the Sherman Act. General verdict forms like the one proposed by Plaintiffs are appropriate here, as jurors will be subject to a long and detailed explanation of the operative law and its application to Plaintiffs' claims. *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1215 (E.D. Cal. 2011) ("general verdicts require the jury to apply the law to the facts, and therefore require legal instruction, whereas special verdicts 'compel the jury to focus exclusively on its fact-finding role.'" (quoting *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991)). Because Plaintiffs' proposed form is simple and impartial, asking jurors to determine only whether Plaintiffs prevail on each of their claims and to assess damages, the Court can adopt it without resolving any of the parties' disputes about the proper application of the Sherman Act to this case. Those disputes will necessarily be resolved in the instructions the Court gives to the jury. Plaintiffs' verdict form will be consistent with those instructions, whatever their final content.

Moreover, Courts have used verdict forms similar to Plaintiffs' proposed form in antitrust jury trials just like this one. *See, e.g., Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. Oct. 31, 2023), ECF No. 1294 (five-question verdict form in class action antitrust trial); *U.S. Wholesale Outlet & Distribution, Inc. v. Living Essentials, LLC*, Case No. 2:18-CV-1077-CBM-E (C.D. Cal. Oct. 21, 2019), ECF No. 517 (three-question general verdict form in multi-plaintiff Robinson-Patman Act trial); *Applied Medical Resources Corp. v. Ethicon Inc., et al.*, No. SACV 03-1329 JVS(MLGx) (C.D. Cal. Aug. 29, 2006), ECF No. 351 (eight-question verdict form for claims for actual and attempted monopolization under Section 2);

12426965v1/014918

1   *Masimo v. Tyco Health Care Group.,* No. CV 02-4770 NRP (C.D. Cal. Mar. 17,

2   2005) (three-question verdict form for Section 2 claim).[1]

3         In contrast to Plaintiffs' straightforward verdict form, the NFL's special

4   verdict form is confusing, unnecessarily lengthy, inaccurate as a matter of law, and

5   impermissibly slanted to increase the odds of a verdict in the NFL's favor—or at least

6   a hung jury. This Court should reject it.

7         Take the NFL's very first question, about whether Plaintiffs have proven the

8   existence of a relevant antitrust market. *There is no such requirement.* As the Ninth

9   Circuit has explained, "[a] plaintiff is not required to define a particular market . . .

10  for a rule of reason claim based on evidence of the actual anticompetitive impact of

11  the challenged practice." *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 838

12  (9th Cir. 2022), *cert. denied sub nom. The Nat'l Ass'n of Realtors v. The PLS.com,*

13  *LLC.*, 143 S. Ct. 567, 214 L. Ed. 2d 336 (2023). Nearly 40 years ago, the Supreme

14  Court held that "proof of actual detrimental effects, such as a reduction of output, can

15  obviate the need for an inquiry into market power, which is but a surrogate for

16  detrimental effects." *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61

17  (1986) (quotation marks omitted). In suggesting that recent cases demand more—

18  and overturned four decades of antitrust without saying so—the NFL neglects *Ohio*

19  *v. Am. Express Co*., 585 U.S. 529 (2018), and the Ninth Circuit's explanation: "In

20  *Amex*, the Supreme Court held that the plaintiffs were required to define the relevant

21  market even though they relied on direct evidence of an anticompetitive impact. . . .

22  But the Court distinguished *Amex*, where the plaintiff complained of a [purely]

23  vertical restraint of trade, from cases like this one, where the plaintiff complains of a

24  horizontal restraint of trade. Therefore, *Amex* did not disturb the *Indiana Federation*

25  *of Dentists* rule." *PLS.Com, LLC*, 32 F.4th at 838. So too here. Given the horizontal

26  aspects of the restraint—which distinguish this case from the NFL's examples from

27

28  [1] Each of these verdict forms is attached as an exhibit to the Declaration of Tyler
Finn, filed concurrently herewith.

3

1   trials involving vertical restraints—there is no requirement to define or prove a

2   relevant market.

3           The problems cascade from there. For example, the NFL proposes that

4   Plaintiffs have the burden of proving the "NFL teams are **not** a single entity for the

5   purposes of licensing telecasts of NFL football games"—which is doubly

6   problematic. At most, if the NFL were correct that this is a live issue for trial, it would

7   be akin to an affirmative defense that *the NFL* would need to prove. But here the

8   Ninth Circuit and this Court have already rejected the NFL's contention that it is

9   incapable of concerted action, whether as a matter of law or fact. *See Sunday Ticket*,

10  933 F.3d at 1153 ("We disagree. Defendants have failed to identify, and we are

11  unaware of, any binding precedent requiring the teams and the NFL to cooperate in

12  order to produce the telecasts."); *In re Nat'l Football League's Sunday Ticket*

13  *Antitrust Litig.*, No. ML 15-02668 PSG (SK), 2024 WL 168298, at *16 (C.D. Cal.

14  Jan. 11, 2024) ("the evidence shows it is possible for the member clubs to act

15  individually to produce telecasts"). The NFL misreads this Court's summary-

16  judgment decision to suggest that "whether the NFL and its member clubs are

17  properly considered a single entity incapable of concerted action," *id.*, is a "threshold

18  question that this Court has already held must be resolved by the jury." That passage

19  concerned *the Court's* task at summary judgment. The jury's role at trial is to evaluate

20  "whether the NFL and its member clubs' decision not to produce telecasts

21  independently" and not to "license telecast rights on their own without pooling their

22  rights with a conference or league" is a contract, combination, conspiracy, or

23  agreement among competitors—or, to put it in the language of *American Needle* and

24  *Copperweld*, "a sudden joining of two independent sources of economic power

25  previously pursuing separate interests." *In re Nat'l Football League's Sunday Ticket*

26  *Antitrust Litig.*, 2024 WL 168298, at *16. Tellingly, the NFL provides no other

27  example of a jury-verdict form that asked whether *plaintiffs* have proven that

28

4

defendants are not a single entity. It is not Plaintiffs' burden to "*disprove* that the NFL and the NFL teams are a single entity."

Equally radical are the NFL's four questions whether Plaintiffs have proven that "every" class member suffered injury (without which Plaintiffs lose), unquestionably loaded language about nearly 6,800,000 class members that again misstates Plaintiffs' burden of proof. The NFL's authorities advise only that the jury's damages award must be apportioned among injured class members, not that the class claims fail if a handful of class members were not injured.[2] *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2021) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.") (Roberts, C. J., concurring); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). In truth, the NFL is resurrecting an unsuccessful argument about class certification that the Ninth Circuit has rejected, in concert with Supreme Court precedent: Rule 23(b)(3) authorizes class certification even where "it includes more than a de minimis number of uninjured class members." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.,* 143 S. Ct. 424 (2022). To the extent that any such class members are not entitled to damages at trial, they may be weeded out through the claims process, consistent with *TransUnion*, 94 U.S. at 431. *See, e.g., Trevino v. Golden State FC LLC*, 2023 WL 3687377, at *26 (E.D. Cal. May 26, 2023); *Utne v. Home Depot U.S.A., Inc*., 2022 WL 1443338, at *8 (N.D. Cal. May 6, 2022).

To be sure, this debate may be immaterial here given that Plaintiffs' expert models "show that all class members suffered some injury." Class Certification

---

[2] Consider the implications of the NFL's proposal: If Plaintiffs were to prove an antitrust violation at trial, as well as injury and damages *to all but one class member*, that class's claims would falter—and no one would recover. But that is not how class actions work, and the NFL's authorities do not suggest such a draconian outcome.

Opinion, ECF No. 894 at 19. But that finding at class certification, in Plaintiffs' favor, does not entitle the NFL to a legally inaccurate verdict question that would be dangerous in other cases (and conceivably here if the NFL unearths an outlier class member or two at trial). Again, it speaks volumes that the NFL cannot find an equivalent juror question from another class-action antitrust trial nationwide, much less reconcile it with the Ninth Circuit's *Olean* decision.

Substance to one side, the NFL's verdict form is also confusing on its own terms as a decision tree. It asks jurors to "follow the directions provided throughout the form," but those directions are often unclear or absent. For example, after some questions, the NFL's verdict form instructs the jury what to do if they answered "yes" or "no," while other questions provide no such guidance, as with questions 4, 9, 11, and 12.[3] The NFL's question 3 contains a perplexing double-negative possibility (unlike every other question) with the option of "no"—the Plaintiffs have *not* "proven that the NFL and the NFL teams are **not** a single entity for the purpose of licensing telecasts of NFL football games." And the NFL's proposed form would require constant resort to the final jury instructions, as jurors decode various terms of art used throughout (e.g., "a relevant antitrust market," "injury to their business or property") and attempt to understand why others are missing (e.g., "conspiracy" appears nine times but never "combination," "contract," or "agreement"). Finally, the NFL's question 13 restricts damages to those "caused by the Defendants' conduct" without any explanation of "caused" or "conduct," which are already addressed by earlier questions using *different* language. This is the first time "causation" is even mentioned; earlier questions ask about injury "as a result of this conspiracy," underscoring the redundancy. This is also the first time "conduct" is used to describe the totality of behavior encompassed by Plaintiffs' claims; nearly all the preceding questions ask about "conspiracy." As a result, jurors will wonder at this last step if

---

[3] Plaintiffs are willing to implement the same "traffic signals" in their proposed verdict form, which extinguishes the NFL's concerns about jurors "award[ing] damages even if they do not find liability."

these new terms have independent meaning and force. Unsurprisingly, none of the NFL's own verdict form examples include this language. *See, e.g., Sidibe v. Sutter Health*, No. 3:12-CV-04584-LB, ECF No. 1530 (N.D. Cal. Mar. 11, 2022) ("What are the damages to the class?").

At bottom, the NFL disagrees with Plaintiffs' use of a general verdict form here, demanding instead a special verdict form that requires jurors to unanimously agree on a dozen challenging questions riddled with antitrust jargon (many of them inaccurate) before awarding any damages. The Court should decline this needless complication, which increases the likelihood of juror confusion (and fatigue, when combined with the final jury instructions) and requires resolution of significant disagreements among the parties over the NFL's proposed questions. "As a general rule, the [trial] court has complete discretion over whether to have the jury return a special verdict or a general verdict." *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991). General verdict forms are a complement to detailed jury instructions, whereas special verdict forms "compel the jury to focus exclusively on its fact-finding role" and enable "the judge to give a minimum of legal instruction to the jurors." *Id.* Any special verdict form must, however, "fully and fairly present[] to the jury the issues it was called upon to decide." *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990).

Here, all sides agree that detailed jury instructions are warranted (if not their precise content), paving the way for a simple and straightforward verdict form rather than something elaborate and misleading. Heeding *Floyd*'s sliding scale, courts in this circuit have adopted general verdict forms in complex cases to ensure the jury's understanding and ease their burden.[4] *See, e.g., Cahill v. Edalat*, , 2021 WL 2850588,

---

[4] Nor is there a Seventh Amendment problem with general verdict forms, as the NFL implies. *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002), merely affirms that jury verdicts in federal civil cases must be unanimous (including as to any affirmative defenses), a point on which all parties agree. And *United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1408 (9th Cir. 1995), the NFL's other pillar, illustrates the perils of unnecessarily complex

at *4 (9th Cir. July 8, 2021) (affirming use of a general verdict form the district court determined "would be easier for the jury to understand in light of the number of claims and parties involved in the case"); *MGA Ent. Inc. v. Harris*, , 2023 WL 8896883, at *5 (C.D. Cal. Dec. 8, 2023) (adhering in trade-dress infringement trial to "the Court's regular practice in jury trials . . . to use a general verdict form as to each claim"); *see also Williams v. Gaye*, 895 F.3d 1106, 1130 (9th Cir. 2018) (general verdict form used in high-profile copyright infringement suit in conjunction with detailed jury instructions).

---

special verdict forms while repeating that "[t]he district court has broad discretion in deciding whether to send the case to the jury for a special or general verdict." *Id*. ("This discretion extends to determining the content and layout of the verdict form, and any interrogatories submitted to the jury, provided the questions asked are reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment.").

12426965v1/014918

Dated: May 22, 2024                    Respectfully submitted,

By:  /s/ Marc M. Seltzer
     Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
Eliza Finley (301308)
efinley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
One Manhattan West
New York, NY 10001
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfled.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908

9

Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

12426965v1/014918

10