Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' OPPOSITION TO NON-PARTIES' MOTION FOR PROTECTIVE TREATMENT OF CERTAIN TRIAL EXHIBITS TO BE SEALED IN THE PUBLIC COURT FILE AND PRECLUDED FROM PUBLIC DISPLAY DURING TRIAL**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>DATE: June 14, 2024<br>TIME: 1:30 p.m.<br>COURTROOM:<br>    First Street Courthouse<br>    350 West 1st Street<br>    Courtroom 6A<br>    Los Angeles, CA 90012 |

## I. Introduction.

The Non-Parties' *second* eleventh-hour attempt to insert themselves into how this trial will be conducted and interfere with the parties' presentation of evidence should be rejected. The Non-Parties misstate and then misapply the governing legal standard, do not cite a single case that justifies the extraordinary relief they seek, and fail to overcome the "strong presumption" in favor of the public presentation of evidence. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). More than that, these thirteen Non-Parties appear to be indifferent to the interference with these proceedings they already have caused. Plaintiffs and the NFL filed their first joint trial exhibit list over four months ago, *see* Dkt. No. 1163, and these Non-Parties have known since at least that date that either Plaintiffs or the NFL could introduce at trial documents containing a Non-Party's business information relating to matters at issue in this litigation. Despite that knowledge, these Non-Parties waited until two weeks before trial—with a hearing date noticed for 10 days *after* trial is scheduled to begin—before making this motion. It is apparent that the Non-Parties—all business partners of the NFL Defendants (and in the case of EverPass Media, an entity owned in part by the NFL)—are aware of the fact that their efforts are having the effect of distracting Plaintiffs as they prepare for trial. The Court should not indulge this last-minute fire-drill these Non-Parties have predictably caused.[1]

## II. The Non-Parties misstate and misapply the governing law.

To start, the Non-Parties fail to provide any support for the extraordinary relief they seek. There is a long-standing presumption that civil trials will be public, and

---

[1] The thirteen Non-Parties, each represented by outside corporate counsel and each a counterparty or broadcast partner of the NFL Defendants, are Amazon, Apple, CBS, Comcast, DAZN, DIRECTV, ESPN, EverPass Media, Google and YouTube, NBC Universal, RedBird Capital Partners, and Verizon. Fox, the NFL's other Sunday afternoon broadcast partner, did not join the present motion.

that a party is free to try its case without undue interference from non-parties. *See, e.g.*, *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, 2017 WL 2806897, at *5 (C.D. Cal. Mar. 30, 2017) ("[H]istorically both civil and criminal trials have been presumptively open."); *see also Kamakana*, 447 F.3d at 1178 (reaffirming the "strong presumption in favor of access"); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (same).

To deviate from that constitutionally-based rule, any person seeking to restrict another parties' presentation of its evidence, or otherwise seal judicial records, bears the burden to "articulate[] **compelling reasons** supported by specific factual findings." *Kamakana*, 447 F.3d at 1178 (emphasis added); *see also Cntr. for Auto Safety v. Chrysler Group*, LLC, 809 F.3d 1092, 1096 (9th Cir. 2016) ("A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard."). And the "compelling reasons" standard is a "stringent" one. *In re ZF-TRW Airbag Control Units Products Liability Litig.*, 2020 WL 13688234, at *2 (C.D. Cal. Sept. 7, 2020). The person seeking protections may overcome the "strong presumption in favor of access … only on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture." *Hagestad*, 49 F.3d 1430, 1434 (internal citation omitted).

Here, however, the Non-Parties sidestep that controlling law. Instead, puzzlingly, they claim that their motion should be resolved "[u]nder Federal Rule of Civil Procedure 26(c)(1)(G)," which they say grants "the Court [] discretion to issue a protective order, including the sealing of court filings or other documents," under either a "good cause or compelling reasons" standard. Mot. 3–4. Rule 26 and its good-cause standard are indisputably inapplicable here. Rule 26 authorizes a court to issue protective orders in limited circumstances over the use of **discovery** materials. It has no bearing on the sealing of trial exhibits or limiting a party's presentation of evidence **at trial**. *See Polaris Innovations*, 2017 WL 2806897, at *4 ("[Rule 26] authorizes protective orders over discovery materials."). Indeed, the Ninth Circuit's

leading case concerning the standard for sealing trial exhibits and other judicial records—cited by the Non-Parties in their present motion, *see* Mot. 4—makes clear that an order sealing discovery material under Rule 26 "*will not suffice* to fulfill the compelling reasons standard that a party must meet to rebut the presumption of access" to trial evidence. *See Kamakana*, 447 F.3d at 1180 (emphasis added).

Further, most of the cases cited by the Non-Parties deal with the sealing (or unsealing) of exhibits attached to pre- or post-trial motions. Those cases likewise have no bearing here. None deals with the sealing of trial exhibits or similar judicial records, and certainly none deals with a non-party's attempt to limit a party's ability to present evidence at trial. *See, e.g.*, *Cat Coven Ltd. Liab. Co. v. Shein Fashion Grp. Inc.*, 2019 WL 10856813, at *2 (C.D. Cal. Dec. 20, 2019) (Gutierrez, J.) (sealing limited exhibits attached to motion to dismiss; no discussion of use at trial); *Ameranth, Inc. v. Chownow, Inc.*, 2021 WL 3678415 at *2 (S.D. Cal. Aug. 18, 2021) (same); *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 7429304, at *4 (N.D. Cal. Feb. 9, 2016) (sealing limited exhibits attached to motion to strike expert report; no discussion of use at trial); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, 2014 WL 6986068, at *1 (N.D. Cal. Dec. 10, 2014) (sealing limited exhibits attached to motion for attorneys' fees; no discussion of use at trial); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, at *2–3 (S.D. Cal. Mar. 11, 2011) (similar). In short, the Non-Parties repeatedly cite to caselaw that has no bearing on the question presented to the Court.

Even where the Non-Parties reference applicable law, they misapply it. In *Kamakana*, for instance, a Honolulu detective blew the whistle on misconduct by other officers in his unit. *See* 447 F.3d at 1175. The detective subsequently was transferred and he filed suit, alleging unlawful retaliation and other civil rights violations. *Id.* at 1176. After settlement and dismissal, the Honolulu *Advertiser* (the largest Hawaiian daily newspaper), moved to unseal records that had been produced in discovery and attached to court filings under seal. *Id.* Eventually, the Ninth Circuit

affirmed as appropriate a magistrate judge's decision to unseal documents attached to certain motions. *Id.* The court reasoned that the justifications for sealing were "tepid and general"; that "the parties were always on notice, by virtue of the protective order itself," that such documents could be unsealed; and that "the judge took seriously the presumption of public access and did so in accord with precedent from the Supreme Court and this court." *Id.* at 1186–87.

The Non-Parties ignore *Kamakana*'s core holding. Instead, they cite it for the proposition that "'access to judicial records is not absolute' and documents or records that 'have traditionally been kept secret' are not subject to the right of public access." Mot. 4 (citing *Kamakana*, 447 F.3d at 1178). That the public's access to judicial records is "not absolute" is uncontroversial. But the Non-Parties' suggestion that the documents they seek to shield from the public's view in this case "have traditionally been kept secret" is simply wrong. The records that the *Kamakana* court said have "traditionally been kept secret" are just two—grand jury transcripts and pre-indictment warrant materials—narrow categories of documents for which limited access has long been the rule. *See Kamakana*, 447 F.3d at 1178.[2] Neither exception is remotely applicable here. The Non-Parties fail to explain how *Kamakana*'s limited carve-out applies to the business documents they seek to seal now.[3]

---

[2] The Supreme Court has long noted that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," and that "several distinct interests [are] served by safeguarding the confidentiality of grand jury proceedings," including that, "if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony." *See Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 (1979); *see also* Fed. R. Crim. P. 6(e).

[3] The Non-Parties also cite to the recent Google antitrust trial in Washington, D.C. *See United States of America et al. v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. 892 at 7-15 (D.D.C. Apr. 24, 2024) (Mehta, J.). There, the court closed the courtroom for the first two weeks of trial, and sealed significant testimony, leading some to

The Non-Parties' discussion of the two college athletic cases further underscores the deficiencies in their motion. *First*, the court in those cases rejected attempts by intervening parties to restrict the public's access to the trial. *See* Orders Granting in Part Mot. to Seal, *O'Bannon v. NCAA*, No. 09-3329, at 3 (N.D. Cal. June 10, 2014) ("The courtroom will not be closed."). *Second*, the two motions cited by the Non-Parties concerned the *partial* sealing of about sixteen exhibits in total. *See id.* (Orders of June 10, 2014 & June 17, 2014). Here, however, these thirteen Non-Parties have identified nearly 100 trial exhibits—the majority of which are exhibits proffered by Plaintiffs—that they seek to seal in full.[4] *Third*, the Non-Parties' sealing request indiscriminately applies across entire documents without regard to the alleged confidentiality of any particular provision or section, or without stating a particularized need for such extraordinary treatment of trial exhibits. In the college athletic antitrust cases, Judge Wilken rejected as "overbroad" those networks' attempt to seal more *provisions* than necessary. *See* Order of June 10, 2014, at 2 ("The conferences' sealing requests are overbroad. They seek to seal hundreds of pages of licensing agreements, only some of which actually contain potentially sensitive information."). The Non-Parties fail to explain how those orders support their request to seal in full nearly 100 trial exhibits, the vast majority of which are offered by Plaintiffs. Indeed, these cases cut squarely against the Non-Parties.

---

conclude that it was "shaping up to be perhaps the most secretive antitrust trial of the last few decade." *See* Nico Grant, Cecilia Kang and Tripp Mickle, Unprecedented Secrecy in Google Trial as Tech Giants Push to Limit Disclosures, N.Y. Times (Sept. 26, 2023). In response, several news and public-interest organizations moved the court to make witness testimony public. The court reversed course and opened the courtroom, and Judge Mehta observed that he "should have been a little bit more probing of the parties as to how much of it really needed to be under seal." *Id.* (quoting October 19, 2023 hearing).

[4] Indeed, of the 94 trial exhibits that the Non-Parties target for sealing, 73 were added to the Joint Exhibit List by Plaintiffs.

### III. The Non-Parties fail to articulate specific compelling reasons.

Even when viewed under the appropriate legal test, the Non-Parties fail to carry their burden to "articulate[] compelling reasons supported by specific factual findings" that overcome the "strong presumption" in favor of open and public trials. *See Kamakana*, 447 F.3d at 1178.

*First*, their request is not narrowly tailored to the relief they seek. The Non-Parties seek to seal nearly 100 documents in full and prevent those documents from being presented publicly at trial. Yet they do not identify which specific provisions or sections in those documents actually contain sensitive information that could justify the currently claimed need for secrecy. Nor do they point out that many of the documents were produced in discovery with extensive redactions already. *See* Dkt. 432 (McDermott, J.) (ordering redactions to the broadcast agreements between the NFL and its network partners).

The Non-Parties' requested relief also is conspicuously open-ended. In their motion, the Non-Parties "reserve their right" to object to other exhibits "based on any future amendments to the joint exhibit list … or to the extent additional exhibits are used at trial." Mot. 1 n.3. Thus, the relief that the Non-Parties seek not only would severely limit Plaintiffs from trying this case efficiently and effectively, and needlessly interrupt the Court's control of trial and the jury's ability to process the evidence being presented. It also would not be final. The Non-Parties apparently anticipate standing up and objecting to the use of exhibits in the middle of trial—an intolerable interference on the Plaintiffs' presentation of their case before the jury. Any order entered by the Court now pursuant to their requested relief would not prevent any of the thirteen Non-Parties from objecting anew to the mode or substance of Plaintiffs' evidence in the midst of trial. *See, e.g.*, Mot. 1 n.3 & 3 (Non-Parties reserving their right to interrupt during trial; noting only that they "do not want" to interfere with live testimony).

*Second*, the Local Rules already provide an effective and far less restrictive

alternative that would deliver the Non-Parties the core relief they seek. Throughout this litigation, this Court and the parties have followed the procedures laid out in Local Rule 79-5, which governs under-seal filings on the public docket. Indeed, the Non-Parties here cite to that Local Rule as the basis for their motion. *See* Mot. 1 n.3. The procedures established by Local Rule 79-5 incorporate the "compelling reasons" standard, and direct the party seeking to seal otherwise public material to explain why "the strong presumption of public access in civil cases should be overcome." *See* L.R. 79-5.2.2(a)(i).

If a party seeks to file any trial exhibit on the public docket that a non-party believes contains confidential business information, that non-party will have ample chance to move the Court for a targeted order sealing only the necessary information, provided it articulates "compelling reasons" to do so, and so long as that process in no way interferes with the use or introduction into evidence of any documents at trial. There is thus no need for the Court to decide now which portions of which trial exhibits should be sealed. *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (endorsing the sealing process for a trial exhibit filed on the public docket after trial). While Plaintiffs believe that the Non-Parties' motion should be denied in full, the Court may alternatively elect to direct the parties to continue to abide by the sealing procedures in the Local Rules for any trial exhibit that is to be filed on the public docket after the close of trial.

\* \* \* \* \*

The Non-Parties try to reassure Plaintiffs and the Court that they "do not wish to interfere with the trial," and that the expansive restrictions they request will have "**no impact** on the parties' ability to try their cases." Mot. 7, 10 (emphasis of the Non-Parties). Yet these Non-Parties already have interfered with proceedings and threaten to continue to disrupt them going forward. Each of the Non-Parties has known since the day it produced documents in this case that the protective order did ***not*** apply to proceedings at trial. *See* Dkt. No. 197, 360 ("This Order does not govern

7

the use of Protected Information at trial."). Each of the Non-Parties also has known since at least January 19, 2024—the date the parties first filed a joint trial exhibit list, *see* Dkt. No. 1163—that Plaintiffs or the NFL could introduce at trial documents containing information related to that Non-Party. It is also a fiction that these Non-Parties were unaware until May 13 that Plaintiffs would not agree to these restrictions. *See* Mot. 3. On April 29, the day after the parties first conferred, Plaintiffs communicated their position clearly: "Plaintiffs' position is that if any third-party wishes to deviate from the Court's general practice … that third-party should seek appropriate relief from the Court." *See* Dkt. No. 1336-2 (email from Plaintiffs' counsel to counsels for Non-Parties).

That the Non-Parties waited until two weeks before trial—with a hearing date noticed for 10 days *after* trial has begun—to file the present motion shows what would result if the Non-Parties were permitted to have *any* role at trial, especially if that role interferes with the parties' presentation of evidence. In all, this motion, like the untimely *ex parte* application before it, cannot overcome the longstanding and strong presumption of open and public trials, and threatens Plaintiffs' ability to try their case free of undue interference from these business partners of the NFL.

## IV. Conclusion

For these reasons, Plaintiffs respectfully request that the Court deny the Non-Parties' motion.

Dated: May 24, 2024

Respectfully submitted,

By: /s/ *Marc M. Seltzer*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.

8

1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)

ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*