Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 2:15-ml-02668-PSG (SKx)<br><br>**PLAINTIFFS' LOCAL RULE 16-10 TRIAL BRIEF**<br><br>JUDGE: Hon. Philip S. Gutierrez<br>TRIAL DATE: June 5, 2024<br>COURTROOM:<br>First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT ................................................................................................. 1

    A.   The Court Should Overrule Defendants' Meritless "Foundation" and Related Objections. ................................................................ 1

        1.   The Court May Determine Foundation from the Document Itself and No "Sponsoring Witness" Is Required. ......................................................................... 2

        2.   The Court Should Overrule Defendants' 50 Objections That Fail to Specify What Foundation Is Missing. .................. 4

        3.   The Court Should Overrule the Other 68 Objections, as the Documents Are Authentic, Relevant, and Non-Hearsay. ........................................................................... 4

        4.   The Documents Are Independently Admissible As Impeachment. ................................................................. 13

            a)   Impeachment of NFL Defendants ................................. 13

            b)   Impeachment of Deposition Testimony ......................... 14

    B.   Evidence of Product Quality Is Inadmissible Unless Tied to Challenged Restraints ..................................................... 17

    C.   Statements Made by Jerry Jones Are Admissible Regardless of Whether They Were Made in a Complaint ........................ 18

    D.   Defendants' Meritless Positions Regarding Deposition Designations Should Be Rejected. ............................................. 19

        1.   Defendants' Completeness Objections Exceed Rule 106. ....... 19

        2.   Designated Testimony of Brian Rolapp Is Not Cumulative. ....................................................................... 20

        3.   Plaintiffs Should Be Permitted to Organize Deposition Videos to Streamline Their Presentation to the Jury ............... 22

    E.   Evidence About Other Professional Sports Is Only Admissible When Presented in Proper Context ........................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States*,
2009 WL 1884387 (D. Id. June 28, 2009)................................................2

*Beard v. Mitchell*,
604 F.2d 485 (7th Cir. 1979)....................................................22, 23

*Bourjaily v. United States*,
483 U.S. 171 (1987) ...............................................................3

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
329 F.3d 923 (7th Cir. 2003) .......................................................2

*Corcoran v. CVS Pharmacy, Inc.*,
2021 WL 1721056 (N.D. Cal. Apr. 30, 2021) .....................................21

*Corkill v. Preferred Emps. Grp., LLC*,
2011 WL 5975678 (S.D. Cal. Nov. 28, 2011) ........................................3

*ETSI Pipeline Project v. Burlington Northern*,
No. B-84-979-CA (E.D. Tex. March 16, 1988) ....................................23

*Garber v. United States*,
2017 WL 797096 (C.D. Cal. Feb. 27, 2017)...........................................2

*In re Homestore.com, Inc. Sec. Litig.*,
347 F. Supp. 2d 769 (C.D. Cal. 2004)................................................5

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
285 F.R.D. 481 (N.D. Cal. 2012) ..................................................21

*Luxco, Inc. v. Jim Beam Brands Co.*,
2016 WL 6193794 (N.D. Ill. Oct. 24, 2016).........................................21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
454 F. Supp. 2d 966 (C.D. Cal. 2006)................................................5

*Mighty v. Miami-Dade Cnty.*,
2021 WL 4022616 (11th Cir. Sept. 3, 2021)..........................................22

*Orr v. Bank of America, NT & SA*,
      285 F.3d 764 (9th Cir. 2002) ................................................................. 4

*Reliable Money Ord., Inc. v. Mcknight Sales Co., Inc.*,
      2013 WL 12180512 (E.D. Wis. Sept. 11, 2013) ................................... 15

*Rigsbee v. City & Cnty. of Honolulu*,
      2019 WL 1089636 (D. Haw. Mar. 7, 2019) ......................................... 21

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*,
      2017 WL 952955 (N.D. Cal. Mar. 12, 2017) ..................................... 2, 4

*United States v. All Assets Held in Acct. No. XXXXXXXX*,
      2019 WL 13197264 (D.D.C. June 12, 2019) ......................................... 14

*United States v. Collicott*,
      92 F.3d 973 (9th Cir. 1996) ................................................................. 20

*United States v. Jones*,
      808 F.2d 561 (7th Cir. 1986) ............................................................... 15

*United States v. Shay*,
      57 F.3d 126 (1st Cir. 1995) ................................................................. 13

*United States v. Stewart*,
      907 F.3d 677 (2d Cir. 2018) ......................................................... 13, 15

*United States v. Vallejos*,
      742 F.3d 902 (9th Cir. 2014) ............................................................... 20

*United States v. Velasco*,
      953 F.2d 1467 (7th Cir. 1992) ............................................................. 13

**Rules**

Fed. R. Evid. 104 ......................................................................................... 2, 3

Fed. R. Evid. 106 ................................................................................... 1, 19, 20

Fed. R. Evid. 402 ......................................................................................*passim*

Fed. R. Evid. 403 ............................................................................... 5, 6, 9, 10

Fed. R. Evid. 602 ......................................................................................... 3, 4

Fed. R. Evid. 607 ................................................................................................. 13

Fed. R. Evid. 611 ................................................................................................. 22

Fed. R. Evid. 801 ................................................................................. 11, 12, 18

Fed. R. Evid. 803 ....................................................................................... 11, 16

Fed. R. Evid. 806 ................................................................................. 14, 15, 16

Fed. R. Evid. 901 ........................................................................................ 2, 3, 4

Fed. R. Evid. 902 .............................................................................................. 3, 5

## I.    INTRODUCTION

Plaintiffs respectfully submit this trial brief pursuant to Local Rule 16-10 to reply to certain issues raised in Defendants' Memorandum of Contentions of Fact and Law and the Final Pretrial Conference that remain unresolved, including:

- <u>Defendants' Foundation Objections:</u> Defendants' position that Plaintiffs must call a "sponsoring witness" in order to "lay foundation" for documents that are, on their face, authentic, relevant, and not hearsay.

- <u>Issues Relating to Defendants' Evidence of Product Quality</u>: Defendants' intent to introduce evidence of "quality" in violation of the Court's Order of Plaintiffs' Motion *in Limine* No. 2.

- <u>Defendants' Objection to Statements Made by Jerry Jones in a Complaint</u>: Defendants' position that any evidence with connection to other related litigation is inadmissible.

- <u>Issues Concerning Deposition Videos:</u> The parties' remaining disputes concerning publishing deposition videos, including Defendants' improper attempt to (1) exceed the scope of FRE 106 to play to the jury long passages of witness's deposition testimony that are not needed for optional completeness purposes; (2) preclude Plaintiffs from ordering the deposition videos in a way that will aid juror comprehension, as permitted by the rules; and (3) prevent Plaintiffs from playing short excerpts of non-cumulative deposition testimony from key witness Brian Rolapp and the NFL's 30(b)(6) representative. The 30(b)(6) testimony is by definition non-cumulative because Rolapp is testifying at trial only in his individual capacity.

- <u>Defendants' Use of Other Sports as a Sword/Shield:</u> The extent to which Defendants may introduce evidence or make arguments about telecasts of professional baseball, basketball, and hockey games, having won their Motion *in Limine* to preclude Plaintiffs from introducing evidence that such sports leagues were sued for antitrust violations about their restrictions on telecasts, which resolved through settlement.

## II.   ARGUMENT

### A.    The Court Should Overrule Defendants' Meritless "Foundation" and Related Objections.

Defendants have requested that the Court deny the admissibility of any document that was not authored or received by a trial witness—a meritless attempt

1

to limit the admission of documentary evidence that does not require any sponsoring witness to be admitted into evidence. Defendants wrongly claim that only a trial witness who authored or received the document at issue can provide the necessary foundation for a document's admissibility. Defendants' position is contrary to the Federal Rules of Evidence. As discussed below, the Court may determine questions of admissibility from the face of the documents in question. No further "foundation" from the document's author or recipient is required.

### 1. The Court May Determine Foundation from the Document Itself and No "Sponsoring Witness" Is Required.

"Foundation" means different things in different contexts under the Federal Rules of Evidence. Foundation as to the admissibility of a *document* means evidence sufficient to support a finding that the document is 1) authentic; 2) relevant; and 3) not subject to another substantive evidentiary objection, such as privilege or hearsay. Fed. R. Evid. 901(a), 104(b); *see Garber v. United States*, 2017 WL 797096, at *3 n.4 (C.D. Cal. Feb. 27, 2017) (describing foundation as "demonstrating that [evidence is] authentic, relevant, and admissible despite being hearsay"). As shown below, all three requirements are satisfied from the face of the documents in question and, in most cases, the lack of any specific objection by Defendants.

"There is no freestanding 'sponsoring witness' requirement in the Federal Rules of Evidence." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 2017 WL 952955, at *1 (N.D. Cal. Mar. 12, 2017) (admitting documents in jury trial without sponsoring witness because court determined they were authentic, relevant, and not hearsay); *see also Adams v. United States,* 2009 WL 1884387 (D. Id. June 28, 2009) (same). "Admissible documents are evidence, just like testimony. They do not require sponsorship." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 927 (7th Cir. 2003) (affirming provision to jury of exhibit not discussed with any witness).

The Federal Rules of Evidence empower the Court to determine questions of admissibility based on all available facts, including facts discerned from the document itself. Any factual disputes affecting the foundation for a document's

admissibility under the Rules of Evidence are for the Court to resolve. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (affirming admission of out-of-court statements under co-conspirator exception when court determined existence of conspiracy through hearsay evidence). Rule 104(a) directs that in deciding "any preliminary question about" whether "evidence is admissible," the court itself "is not bound by evidence rules, except those on privilege." If that were not clear enough, the Advisory Committee Notes make explicit that the Court may determine foundation for the admissibility of a document based on its contents:

> An item, offered and objected to, may itself be considered in ruling on admissibility, though not yet admitted in evidence. Thus the content of an asserted declaration against interest must be considered in ruling whether it is against interest.

Fed. R. Evid. 104(a) Adv. Comm. Notes.

The fact that a "sponsoring witness" is not required to lay foundation for documents is further confirmed by: (1) Rule 901(b), which provides non-exhaustive "examples" of methods of authentication, including *both* "testimony that an item is what it is claimed to be" and *also* "the appearance, contents, substance" of the "item" itself; and (2) Rule 902, which provides various methods by which documents are "self-authenticating." Fed. R. Evid. 901(b)(1) ("Testimony of a Witness with Knowledge"); 901(b)(4) ("Distinctive Characteristics and the Like"); 902 ("Evidence That Is Self-Authenticating"). These rules would be rendered a nullity if, as Defendants argue, a sponsoring witness is always required to establish a document's foundation for admissibility.

Defendants' insistence otherwise conflates the admissibility of a document with the propriety of the questions a trial witness may be asked about the document. Defendants' citation of Rule 602 in the proposed final pretrial conference order exemplifies this confusion. Dkt. 1331-1 at 52. Rule 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The rule does not apply to the ***admissibility*** of documents at trial. *See Corkill v. Preferred Emps. Grp., LLC*, 2011

WL 5975678, at *4 (S.D. Cal. Nov. 28, 2011) ("Rule 602 is inapplicable as it applies to witness testimony not documents."); *TEK Global,* 2017 WL 952955, at *1 (overruling Rule 602 objection to documents for the same reason). To the extent Defendants wish to argue that a witness cannot be *questioned* about a document they neither authored or received, that is a hypothetical objection to a question that has not yet arisen—and would be handled in the context of a witness exam—but is not a proper objection to the admissibility of the document. Rule 602 does not require Plaintiffs to establish that a witness had personal knowledge of a particular document in order to admit that document into evidence. Nor does any other Rule of Evidence.

### 2. The Court Should Overrule Defendants' 50 Objections That Fail to Specify What Foundation Is Missing.

Of the 118 foundation objections by Defendants that remain in dispute, 50 are standalone "foundation" objections that fail to identify *any* substantive reason to deny admissibility, such as authenticity, relevance, or hearsay. Because these 50 documents are therefore indisputably authentic, relevant, and not subject to any hearsay objection—as Defendants' failure to timely object concedes—there is no need for a live witness to provide any facts to establish admissibility. The Court should therefore overrule Defendants' free-standing "foundation" objection as to the exhibits listed in Appendix A.

### 3. The Court Should Overrule the Other 68 Objections, as the Documents Are Authentic, Relevant, and Non-Hearsay.

For the remaining 68 documents as to which Defendants object to "foundation," the facts necessary to establish their admissibility are clear from the documents themselves. A sponsoring witness is neither required nor necessary.

#### a) There Is No Authenticity Objection to Any Document.

As an initial matter, Defendants do not raise an authenticity objection under Rule 901 to a ***single*** document on Plaintiffs' entire exhibit list. Nor could they have done so. Authenticity is a threshold condition for admissibility, satisfied by "evidence sufficient to support a finding that the matter in question is what the proponent claims it is." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting

Fed. R. Evid. 901(a)). Documents produced by a party opponent from their own files in the course of discovery are deemed authentic by operation of law, as are the NFL-produced documents here. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) ("Authentication can be accomplished by judicial admission, such as . . . production of the items at issue in response to a discovery request"); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004) ("[T]he documents are deemed authentic because Plaintiff identified the documents as being produced by parties in discovery."). And all documents produced by third parties such as CBS, FOX, DirecTV, and others are supported by a business records affidavit, meaning they "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902(11).

  **b)**  **The Documents Are Admissible Under Rules 402 and 403 Given Prior Motion *in Limine* and Other Rulings.**

  The relevance of the documents is apparent from the fact they address matters that bear directly on Plaintiffs' claims, such as Defendants' price-fixing, exclusivity arrangements, the resulting harm, or the rationales that Defendants have offered to justify their conduct. Defendants' objections to Rule 402 and/or Rule 403 are nearly entirely based on Motions *in Limine* or "Priority Objections" that they already lost pursuant to rulings of this Court. The remaining documents are relevant to Plaintiffs' claims and Defendants largely appear to object because the content will be harmful to their defenses (rather than any "unfair" prejudice). Indeed, being harmful to one's case is not legal prejudice at all. Because these documents are relevant and no danger of unfair prejudice substantially outweighs their probative value, they do not require any further foundation to establish their admissibility under Rules 402 and 403.

  **(i)**  **Defendants' MIL No. 4 Was Denied.**

  Defendants object to five documents on the grounds of "foundation" and cite their Motion *in Limine* No. 4 "for preservation purposes." *See* TX-771, TX-806, TX-808, TX-836, TX-837. The Court denied that motion, which sought to preclude evidence regarding the pricing of the Sunday Ticket .TV product. Dkt. 1305.

### (ii)     Priority Objection Nos. 1-3 Were Denied.

Defendants also object to several documents based on their priority objection Nos. 1-3, which the Court denied. *See* Transcript of May 16, 2024 Hearing at 23-24.

*First*, Defendants object to seven documents on the grounds of "foundation" and the NFL's "Priority Objection #1," which sought to preclude evidence of the NFL's 1994 - 2002 agency agreements with DirecTV, pursuant to which the NFL expressly set the price of Sunday Ticket.[1] The Court indicated at the Final Pre-Trial Conference that it was inclined to overrule that objection, as it should. Thus, Rules 402 and 403 should not bar the admission of these highly relevant documents.

*Second*, Defendants object to TX-611 on the grounds of "Foundation," Rule 403, and "Priority Objection #2" because this internal NFL email and analysis relates to the pricing of Sunday Ticket internationally. As the Court tentatively ruled, evidence regarding lower pricing in international markets, where Sunday Ticket is not exclusive, is admissible and bears directly on Plaintiffs' claims that they were overcharged for Sunday Ticket as a result of Defendants' anticompetitive conduct.

*Third*, Defendants object to "Foundation" and cite Rule 402, Rule 403, and Defendants' "Priority Objection #3" to 12 documents. Defendants' "Priority Objection #3" asserted that any evidence concerning the NFL's recent negotiations with streaming providers should be excluded under Rules 402 and 403. These documents, which relate to the Google/YouTube deal that continued Defendants' wrongful course of conduct, are relevant to Plaintiffs' claims regarding their control over the market for NFL telecasts. The Court indicated at the Final Pre-Trial Conference that it was inclined to overrule that objection, as it should. Thus, Rules 402 and 403 should not bar the admission of any of these documents either.[2]

---

[1] TX-724, TX-725, TX-726, TX-740, TX-747, TX-773, TX-774.
[2] TX-503, TX-504, TX-519, TX-520, TX-548, TX-552, TX-555, TX-693, TX-850.

### (iii)   MIL Nos. 2-3 Objections Should Be Denied.

Defendants object to 23 documents on "foundation" and cite Rules 402 or 403, and/or the Court's rulings on Defendants' Motion *in Limine* No. 3 or Defendants' Motion *in Limine* No. 2.[3] These objections should be overruled.

*First*, TX-773 is dated December 3, 2002, and titled "DIRECTV CONTRACT ISSUES – DECISION POINTS." The document discusses contractual terms the NFL



"

The NFL produced this document as a "Hard Copy" with no metadata. The only potentially proper objection would be to authenticity, which Defendants have not raised. By objecting to foundation, Defendants seek to deny this documents' admissibility merely because it is a hard copy and is a smoking gun.

Nothing in this document refers to litigation involving the NFL, meaning the Court's ruling on Defendants' Motion *in Limine* No. 3 does not preclude the

---

[3] TX-650; TX-704; TX-704A ; TX-704B; TX-704C; TX-704D; TX-704E; TX-704F; TX-704G; TX-704H; TX-773; TX-865; TX-865A; TX-865C; TX-865D; TX-865E; TX-865F; TX-865G; TX-865H; TX-865I; TX-865J; TX-865K; TX-865L.

document's admission. The order excluding "evidence of the existence and outcomes in past *lawsuits* against the NFL" does not encompass evidence of the NFL's internal concerns about the legality of its conduct.[4] *See* Dkt. 1304 at 9 (emphasis added). The fact that the document relates to the change from an agency relationship to a rights-fee relationship does not bar its admission, as the Court's ruling on Defendants' "Priority Objection #1" made clear. And while it may be harmful to Defendants' case that the NFL was worried ████████████████████████████████████████████ ███████████ that is not the sort of "unfair" prejudice that would bar such plainly relevant evidence. To the contrary, it would be an entirely fair inference for the jury to conclude that because of its concerns over ██████████████, the NFL became more clever about characterizing the terms of its contracts with DirecTV, while finding other ways to maintain its actual control over Sunday Ticket's price.

 *Second*, TX-839 is a November 14, 2003, draft long form agreement that the NFL sent to DirecTV to memorialize their December 6, 2002 term sheet. On the very same day, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ *See* TX-393 at p. 2. The NFL apparently objects to the draft long form based on its Motion *in Limine* No. 3 because the draft indicates ██████████████████

████████████████████████████████████████████

---

[4] Defendants' objection to TX-632 on the grounds of Defendants' Motion *in Limine* No. 3 is meritless for the same reaso███████████████████████████████████████ ████████████████████████ case settlement. But the *Shaw* settlement provided only that the release and covenant not to sue would apply past the 2002 season if the weekly package was offered. The weekly package continued to be offered only because the NFL chose to do so–it was not a requirement of the *Shaw* settlement and the document does not mention *Shaw* at all. If the NFL wants to try to argue that they included this provision because of *Shaw* (as their Rule 30(b)(6) witness testified), that is a problem of Defendants' own making since they moved to exclude evidence of *Shaw*. The Court's order does not bar Plaintiffs from introducing relevant evidence about pricing restraints in the DirecTV agreement.

settlement in *Shaw* (also called *Schwartz* after the name of one of the plaintiffs) ███

████████████████████████████████████████████████████

█████ TX-839 at pp. 3-4. Plaintiffs are willing to redact the reference to *Shaw* but reserve their rights to revisit this issue should Defendants open the door to discussing *Shaw* and its connection, if any, to the weekly package offering.

*Third*, Defendants object to TX-650, an internal NFL document describing the history of its media rights since the 1950s on the grounds of "Foundation" and their Motions *in Limine* 2 and 3. The document's brief reference to the *NFL I* and *NFL II* decisions does not discuss the specific wording of the Court's orders in those cases and thus is not barred by the Court's order on Motion *in Limine* No. 3. And the short reference to the *NCAA* decision can be redacted (so long as Defendants do not open the door, as stated in the Court's ruling on Motion *in Limine* No. 2).

Defendants object to the remaining exhibits because they originated as exhibits to depositions taken in *Shaw.* But this evidence does not violate the Court's order on Defendant's Motion *in Limine* No. 3 as Defendants' motion sought to preclude only evidence *of* past lawsuits not admissible evidence *from* those lawsuits.

**(iv)    Rule 402/403 Objections Should be Denied.**

Defendants object to "Foundation" and cite Rules 402 and 403 (but no Motion *in Limine* or "Priority Objection") to five documents, all of which are plainly relevant and whose probative value is not substantially outweighed by any danger of unfair prejudice.

The first document, TX-686, was prepared by the NFL's "LA Team" and circulated by the NFL executive Hans Schroeder. That document acknowledged that

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████ The fact that this document undermines the NFL's arguments is not a reason to exclude the evidence.

TX-543 was produced by ESPN, which lost out to YouTube to distribute Sunday Ticket because the NFL did "not like" ███████████████████████████

███████████████████████████████████████████████

██████████ *See* TX-696. This document, which has been proven up and authenticated as business records and shows ESPN's analysis as they were contemplating a bid that would have made Sunday Ticket available to consumers at a far cheaper rate than DirecTV or YouTube is highly relevant and there is no danger of *unfair* prejudice.

The last three documents reflect data upon which Plaintiffs' experts rely. TX-657 reflects the NFL's model for a standalone version of Sunday Ticket on which Plaintiffs' expert Dr. Zona relies. TX-721 reflects "NFL Sunday Ticket Survey Results" prepared for DirecTV's parent AT&T and on which Plaintiffs' survey expert relies. And TX-722 reflects Verizon's "carriage rates" for various cable channels, including FOX and CBS – financial data on which Plaintiffs' expert Professor Rascher relies. This data is relevant and there is no "unfair prejudice" that Defendants would suffer from its admission.

### (v)   Rule 403 Objections Should Be Denied.

Defendants object to "foundation" and "Rule 403" for three documents. Defendants thereby concede that all three are relevant and thus presumptively admissible. Fed. R. Evid. 402. But Defendants make no showing that the probative value of these documents is substantially outweighed by any danger of unfair prejudice (nor that Plaintiffs are required to establish more "foundation" with a live witness to establish that the documents are admissible under Rules 402 and 403).

TX-800 is an internal NFL email dated February 14, 2018, discussing various issues regarding "NFLST" that would be discussed with senior NFL leaders Hans Schroeder and Brian Rolapp, including ███████████████████████████

█████████████. Defendants object insofar as the document references some litigation involving AT&T. Plaintiffs do not intend to question witnesses about or draw the jury's attention to that portion and, if the Court requires, would be happy to redact it.

TX-687 is an NFL email attaching consumer research on NFL fans, including slides showing that 60% of fans "say following their favorite team was very important to building their interest," supporting Plaintiffs' argument that fans were harmed by the lack of availability of a "single team" package to out-of-market games.

TX-797 is an investor presentation prepared by the NFL that addresses multiple relevant topics, including (1) an overview of the NFL's media deals with FOX, CBS, and DirecTV; (2) financial data breaking down the NFL's revenue by category, including from media rights; (3) information regarding the salary cap; and (4) data showing the popularity of NFL content (37 of the Top 50 TV shows in 2017). To the extent the NFL objects because one slide references ███████████████ Plaintiffs do not intend to question witnesses or draw the jury's attention to those portions and, if required by the Court, would be happy to redact such portions.

### c)   The Documents Are Not Barred by the Hearsay Rule.

None of the documents as to which the NFL objects to "Foundation" are barred by the rule against hearsay. Seven of these were produced by third parties from whom Plaintiffs have obtained a business records affidavit that satisfies the requirements of Rule 902(11) and the business records exception to hearsay under Rule 803(6). *See* TX-536, TX-721, TX-763, and TX-764-66 (DirecTV-produced documents supported by affidavit at TX-466)[5]; TX-715 (Comcast-produced document supported by affidavit at TX-293). The remaining documents were produced from the NFL's files and are not inadmissible hearsay under Rule 801.

*First*, TX-789 is a 1986 letter from Neil Austrian to former NFL Commissioner Pete Rozelle proposing the original idea for Sunday Ticket and describing a plan that would allow ████████████████████████████████████████████ ████████████████████ On its face, the document falls within the hearsay exception for ancient documents as it was prepared before January 1, 1998. Fed. R. Evid. 803(16).[6]

---

[5] DirecTV's statements are also not hearsay when offered against Defendants because they were "made by the party's coconspirator during and in furtherance of the conspiracy" to restrain the market for NFL telecasts. Fed. R. Evid. 801(d)(2)(E).
[6] TX-704A, TX-704B, TX-704C, TX-704D, TX-704E, TX0704F, TX-704H also

1    *Second*, TX-770 is an email from NFL employee Hannah Farr to another NFL

2    employee Brent Lawton concerning her █████████████████████████████████

3    █████████████████████████████████████████████ TX-770. The

4    attached deck bears an NFL logo and is titled "NFL/DirecTV Sunday Ticket Insights

5    May 2018." Metadata indicates the deck was authored by Kathryn "Katie" Hevia,

6    Director of Consumer Insights & Research at the NFL. The document is not hearsay

7    pursuant to Rule 801(d)(2)(D) because the statements are made by NFL employees

8    on "a matter within the scope of that [employment] relationship."[7]

9    *Third*, TX-667 is an internal NFL email attaching a report prepared by the

10   ███████████████████████████████████████████████████████████

11   ████████ a document relied upon by Plaintiffs' experts. TX-667 at p. 3 (████████

12   ███████████████████████████████████████████████████████████

13   ████████████████████ This document is admissible under Rule 801(d)(2)(D) (a

14   statement is "not hearsay" if it is "offered against an opposing party" and "was made

15   ***by the party's agent*** or employee on a matter within the scope of that relationship

16   and while it existed") (emphasis added).

17   *Finally*, TX-727 is the NFL's October 27, 2004, draft of what became the

18   November 8, 2004, DirecTV contract for Sunday Ticket. The document appears to

19   contain notes written by NFL employee Frank Hawkins and reflecting comments

20   made by Chase Carey, DirecTV's then-CEO. The document itself is a party

21   admission under Rule 801(d)(2)(D), as are Mr. Hawkins' notes (as would be the notes

22   of any NFL employee who would have been negotiating with DirecTV about Sunday

23   Ticket). To the extent the notes memorialize statements made by Mr. Carey, those

24   particular statements are also not hearsay as (1) they are statements "offered against

25   an opposing party" and "made by the party's coconspirator during and in furtherance

26   of the conspiracy"; and (2) they are admissible for the non-hearsay purpose of

27

28   predate 1998 and fall under the same exception.
     [7] TX-727 and TX-853 are non hearsay pursuant to Rule 801(d)(2)(D) for the same
     reasons.

showing the effect on the listener and information acted upon by Defendants.

**4.      The Documents Are Independently Admissible As Impeachment.**

Many of the disputed exhibits are also admissible for an additional, independent reason: to impeach trial witnesses, whether they appear live or through designated deposition testimony. This is true whether or not that witness is called by Plaintiffs or by Defendants. Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility"). Moreover, documents introduced for impeachment are admissible as substantive evidence as long as they satisfy the other requirements of admissibility. Refusal to permit impeachment evidence is grounds for reversible error. *United States v. Stewart*, 907 F.3d 677, 691 (2d Cir. 2018) (vacating conviction because district court refused to admit inconsistent statement by third party contradicting defendant's hearsay statement).

**a)      Impeachment of NFL Defendants**

Many disputed exhibits are admissible as impeachment of 1) any NFL witness who testifies live at trial and 2) any NFL admissions that are introduced as evidence, such as interrogatory responses and Rule 30(b)(6) testimony.

Statements made a party opponent are admissible to attack that party's credibility. *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) ("the credibility of the party-opponent is always subject to an attack" (quoting Senate Judiciary Committee report on Fed. R. Evid. 806)); *United States v. Velasco*, 953 F.2d 1467, 1473 n.5 (7th Cir. 1992) (same).

Here, statements by Defendants denying the NFL's involvement in setting the price of Sunday Ticket and arguing that the challenged restraints are justified by "competitive balance" are subject to impeachment by NFL internal documents showing otherwise. These documents show, among other things, that the NFL was involved in pricing the Sunday Ticket package purchased by class members and was aware of studies that showed no correlation between revenue sharing and competitive balance. *See, e.g.*, TX-748 █████████████████

1  ███████████████████████████████████████████ TX-
2  814 ( ████████████████████████████████████████████
3  ████████████████████████████ TX-818 ███████████████████
4  ████████████████████████████████████

5          Each such document is admissible to impeach any contrary testimony offered

6  by Defendants, as well as Rule 30(b)(6) testimony of the NFL or DirecTV. *See United*

7  *States v. All Assets Held in Acct. No. XXXXXXXX*, 2019 WL 13197264, at *4 n.5

8  (D.D.C. June 12, 2019) ("If Bagudu seeks to attack the truthfulness of the

9  government's Rule 30(b)(6) testimony, he may do so by using the allegedly

10 contradictory evidence to impeach Hicks' Rule 30(b)(6) testimony.").

11        **b)     Impeachment of Deposition Testimony**

12        Federal Rule of Evidence 806 provides yet another avenue for the admission

13 of the challenged exhibits: impeachment of deposition testimony that will be played

14 to the jury. Rule 806 states:

15        When a hearsay statement—or a statement described in Rule
        801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's
16        credibility may be attacked, and then supported, by any evidence that
        would be admissible for those purposes if the declarant had testified as a
17        witness. The court may admit evidence of the declarant's inconsistent
        statement or conduct, regardless of when it occurred or whether the
18        declarant had an opportunity to explain or deny it.

19

20        This rule expressly permits the admission of statements or conduct that are

21 inconsistent with deposition testimony played at trial without any requirement that

22 the proponent lay the foundation for the inconsistency with the deponent. The

23 Advisory Committee Notes make this clear:

24        Deposition procedures at best are cumbersome and expensive, and to
        require the laying of the foundation may impose an undue burden…. The
25        rule dispenses with the requirement in all hearsay situations, which is
        readily administered and best calculated to lead to fair results.
26

27 Fed. R. Evid. 806 Adv. Comm. Notes. All the techniques of impeachment available

28 to challenge the credibility of a live witness may be used to impeach the credibility

of a hearsay declarant under Rule 806. *See* 5 Weinstein's Federal Evidence § 806.04

(2024). Evidence of prior statements or conduct can be introduced so long as the inconsistency is logically connected to the admitted hearsay statement (or deposition testimony). And it has long been recognized that inconsistency is a low bar to clear. *See Stewart*, 907 F.3d at 687 ("[S]tatements need not be diametrically opposed to be inconsistent."); *accord United States v. Jones*, 808 F.2d 561, 568 (7th Cir. 1986).

As applied here, Rule 806 allows a party to introduce evidence to impeach the credibility of any witness who testifies via deposition after that testimony is admitted into evidence. A party may offer evidence to impeach a deponent, whether or not the deposition testimony is offered in their case-in-chief or their opponent's case. In *Johnson v. Bay Area Rapid Transit District*, for example, the Court granted Defendants' motion to quash Plaintiffs' subpoena of an individual defendant (who was out of subpoena range on active duty), but then permitted Plaintiffs to designate his deposition testimony *and* to offer evidence impeaching that testimony. *See* 2014 WL 2514542, at *3 n.4 (N.D. Cal. June 4, 2014) ("to the extent there are inconsistencies between Pirone's deposition testimony and his prior criminal testimony, the Court will permit Plaintiffs to impeach Pirone's deposition testimony with the prior inconsistencies"). Other cases are in accord. *See One Source Env't, LLC v. M + W Zander, Inc.*, 2015 WL 13505360, at *1 (D. Vt. Dec. 8, 2015) (admitting affidavit to impeach deposition testimony); *Reliable Money Ord., Inc. v. Mcknight Sales Co., Inc.,* 2013 WL 12180512, at *2 (E.D. Wis. Sept. 11, 2013) (admitting evidence to impeach deposition testimony from that case).

In sum, Rule 806 requires the admission of any evidence of statements or conduct that are inconsistent with deposition testimony that will be played to the jury. Because Defendants refused to bring many NFL witnesses for trial, including by successfully moving to quash a subpoena issued to one of the NFL's top officers, Hans Schroeder, a significant amount of testimony by NFL and DirecTV witnesses will be shown by deposition. Rule 806 entitles Plaintiffs to admit any evidence that impeaches statements made in those depositions. Defendants' foundation objections

do not establish otherwise. Indeed, in the Rule 806 context, the "sponsoring witness," though not required, is the deponent whose testimony will be played to the jury.

Here is an example of how the exhibits in question could be admitted under Rule 806: Robert Stecklow, a former DirecTV employee who worked with the NFL on Sunday Ticket during the class period, is out of subpoena range and the NFL has not called him. Plaintiffs must therefore present his testimony by deposition designation. Stecklow testified in deposition that he ███████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Stecklow Dep. Tr. 23:14-20.

The documents tell a much different story. TX-267 is a slide deck that Stecklow put together, which states that ████████████████████████ ████████████████████████████████ In TX-536, Stecklow writes in an email that ██████████████████████████████████████████████████ █████████████████████████████████████████ Each of these documents impeaches Stecklow's deposition statements about █████████████ █████████████████████ Rule 806 entitles Plaintiffs to publish these documents to the jury once the testimony is admitted into evidence, regardless of whether Plaintiffs asked Stecklow about them during his deposition. *See* Fed. R. Evid. 806 ("The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of … whether the declarant had an opportunity to explain or deny it.").

While the Defendants object to TX-536 on foundation grounds, they register no objection to TX-267. That inconsistency makes no sense. Both documents concern the same subject matter, both were introduced in the deposition of Stecklow's colleague Alex Kaplan, and both have been authenticated by a DirecTV business records affidavit, making them independently admissible under Rule 803(6) and under Rule 902(11) (even though Defendants never question their authenticity).[8]

---

[8] The statements are also independently admissible as statements made by co-conspirators in furtherance of the conspiracy under Rule 801(d)(2)(E).

In conclusion, Defendants' foundation objections are uniformly meritless. No live witness is required to establish foundation where the documents in question are authentic, relevant (and not unfairly prejudicial), and not barred by the hearsay rule.

**B.    Evidence of Product Quality Is Inadmissible Unless Tied to Challenged Restraints**

This Court has ruled that "product quality … is only relevant if it is related to the challenged restraint," and "[w]ithout that link, this evidence is inadmissible as irrelevant." Order on Plaintiffs' Motion *in Limine* No. 2, Dkt. 1292 at 5. Defendants cannot use evidence of product quality to show why class members bought Sunday Ticket without connecting that quality to the restraints. The Court's order likewise precludes Defendants from arguing that these restraints are justified simply because product features existed or increased consumer demand for the NFL. Yet Defendants intend to do just that—by introducing evidence about "quality" or "innovation" with no tether to the challenged restraints. In the joint statement of the case, Defendants proposed telling the jury that "[t]he business agreements challenged by Plaintiffs ensure that consumers across the United States have broad access to watch competitive and exciting NFL football games and have high quality options to view those games." Whether the evidence is couched as quality, innovation, or any other procompetitive justification, it is admissible *only* if linked to challenged restraints.

Defendants' exhibits, deposition designations, and jury instructions make clear they intend to violate the Court's order on the subject. For example, Defendants designated testimony from NBC that "quality" announcers contribute to "quality" broadcasts, Pietrycha 140:22-141:19, and insist that it "goes to Defendants' presentation of the procompetitive benefits of the current system." But none of that testimony—or any other related testimony—refers to the challenged restraints. This attempt to unmoor the alleged procompetitive benefits from the restraints they supposedly justify is best exemplified by Defendants' proposed jury instructions, which seek to edit the ABA model instruction to prevent the jury from being instructed that "procompetitive benefits" have to be "countervailing" to the restraint.

*See* Dkt. 1364 at 53. But if Defendants cannot show that the restraints improved the product then they cannot show the restraints are justified on that basis. "The only permissible argument is that the restraints are what make the product high quality." Dkt. 1292 at 5.

That is why the exhibits and testimony that Defendants seek to introduce about product innovations and specific quality features of NFL telecasts are inadmissible. And Defendants cannot justify this evidence by claiming that the required link to the restraints will be established through expert testimony. Defendants' expert Dr. Bernheim has offered no opinion on this specific point—attributing any innovation or quality of NFL telecasts during the class period to a challenged restraint. Instead, Bernheim offers abstract opinions that exclusivity creates incentives to "maintain" and "enhance" quality, Dkt. 956-10, Bernheim Report ¶¶ 533-544. He makes no claim that NFL games would lack such quality in the but-for-world. And he is barred by Rule 26 from offering any new opinions at trial. Defendants cannot lay the foundation to prove that the aspects of the product they wish to highlight were improved as a result of the restraints.

Defendants intend to introduce this evidence to confuse the issues, and to prejudice Plaintiffs by misleading the jury into considering product quality in its rule of reason analysis. Plaintiffs raise this issue now, before trial begins, so that the Court can police compliance with its order and prevent a motion from Plaintiffs for a mistrial.

### C.   Statements Made by Jerry Jones Are Admissible Regardless of Whether They Were Made in a Complaint

Defendants have raised meritless objections to the introduction of statements that Jerry Jones made in a complaint by the Dallas Cowboys against the NFL alleging a "price-fixing cartel that has eliminated free competition among NFL clubs" in the licensing of club trademarks, and to the introduction of the complaint itself, TX-703D. These are admissible statements of a party opponent under Rule 801(2)(d), and highly relevant to the jury's consideration whether (a) pooling intellectual

property rights makes the NFL a "cartel"; (b) whether there would be more competition in teams licensing their intellectual property rights in the absence of a cartel; and (c) whether the competitive balance justification is pretextual, as Jones states in the complaint. *See* TX-703 at -320 ("the equal sharing of profits does not in fact lead to competitive balance"). This evidence does not violate the Court's order on Defendant's Motion *in Limine* No. 3 as Defendants' motion did not reference this case at all or preclude prior inconsistent statements made by party opponents simply because they occurred in the context of litigation.

**D.    Defendants' Meritless Positions Regarding Deposition Designations Should Be Rejected.**

Defendants are improperly attempting to prevent Plaintiffs from streamlining their presentation of evidence to the jury through effective use of deposition video. Plaintiffs have gone to great lengths to ensure that the deposition videos they intend to play are short and to the point—some are as short as 2:13 minutes and the longest is 9:29 minutes. Yet Defendants seek to ***triple*** the run time of these videos by attempting to portray their own deposition designations as "Rule 106" completeness objections. Despite the fact that numerous courts have permitted parties to organize deposition designations by subject matter in order to aid juror comprehension, Defendants insist that all designations be played sequentially. Defendants also object to Plaintiffs playing non-cumulative portions of deposition testimony involving Brian Rolapp so that their live cross-examination may focus on other topics. The Court should reject these attempts to prevent Plaintiffs from presenting evidence succinctly and clearly during their case-in-chief, thereby aiding juror comprehension.

**1.    Defendants' Completeness Objections Exceed Rule 106.**

Under the guise of "completeness" under Rule 106, Defendants propose to add an additional two hours and fifty-seven minutes in response to the one hour nineteen minutes of testimony designated by Plaintiffs. These attempts to litter Plaintiffs' case-in-chief with unrelated testimony run contrary to Rule 106 and the Court's clear ruling that Defendants' designations to advance their case would be played in their

1  case, not during Plaintiffs' case. *See* Transcript of May 16, 2024 Hearing at 28-30.

2      The Ninth Circuit has recognized that the purpose of Rule 106 is to "correct a

3  misleading impression of a prior statement created by taking [those statements] out

4  of context." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). The rule of

5  completeness prevents a party from introducing a misleadingly tailored snippet so as

6  to avoid any resulting "misunderstanding or distortion." *United States v. Vallejos*,

7  742 F.3d 902, 905 (9th Cir. 2014). But the rule of completeness does not apply "if

8  the complete statement [does] not serve to correct a misleading impression." *Id.*

9  (concluding that jury was not "misled" by introduction of redacted transcript omitting

10  declarant's "prior prison sentence, his drug history, and his church …").

11      Rule 106 does not justify Defendants' proposed addition of deposition

12  testimony, much of which is in the NFL's own affirmative designations. Consider

13  the case of DirecTV employee Jamie Dyckes. Defendants seek to add more than ***20***

14  minutes of testimony as "completeness" to the ***4:50*** minutes proposed by Plaintiffs.

15  None of the proposed designations is tailored to correct a misleading impression. For

16  example, the NFL seeks to designate testimony about the RedZone channel, among

17  other topics, even though Plaintiffs designated no testimony on any of those subjects.

18  Further examples abound. Defendants' attempts to designate additional testimony

19  finds no support in Rule 106. *See* Mueller & Kirkpatrick *Federal Evidence* § 44

20  (1994) ("[I]t is often perfectly proper to admit segments of prior testimony without

21  including everything, and adverse parties are not entitled to offer additional segments

22  just because they are there and the proponent has not offered them."). The Court

23  should reject this attempt to intrude on Plaintiffs' case-in-chief.

24      **2.**    **Designated Testimony of Brian Rolapp Is Not Cumulative.**

25      As the Court recognized at the pre-trial conference, the appearance of Brian

26  Rolapp as a live witness at trial does not preclude Plaintiffs from presenting video

27  deposition testimony to the jury so long as the designated testimony is not

28  cumulative. *See* Transcript of May 16, 2014 Hearing at 25. As an initial matter, Mr.

Rolapp's deposition testimony as a Rule 30(b)(6) representative of the NFL cannot be cumulative by definition. *See Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) ("The testimony of an individual, then, is distinct from the testimony of an entity."). No NFL corporate representative is testifying at trial; Rolapp will testify only in his individual capacity. Under Rule 32, each deposition can be used "for any purpose" as Rolapp testified as a "managing agent" of the NFL and separately as its "Rule 30(b)(6) designee."

Plaintiffs represent to the Court that the designated testimony will not be cumulative of their planned cross-examination of Mr. Rolapp, and that designations will make trial more efficient than if all testimony were live. Plaintiffs currently anticipate playing a mere 5:17 minutes of testimony from the Rule 30(b)(6) deposition and 9:01 minutes of testimony from Rolapp's individual deposition. Plaintiffs have designated deposition testimony about certain discrete subject matters that they *will not* address during their live examination of Mr. Rolapp at trial. These include the pooling of telecast rights among the NFL teams, the lack of availability of single-team packages, and the exclusivity of the Sunday Ticket package.

The case law supports Plaintiffs' position. In *Boston Scientific Corp. v. Cook Medical LLC,* the Court permitted designation of deposition testimony of a witness who would appear live because "both sides had been given twenty hours to present their case" and defendant would be able to object if the plaintiffs elicited cumulative testimony. 2023 WL 3604030, at *5 (S.D. Ind. May 22, 2023). *See also Luxco, Inc. v. Jim Beam Brands Co.*, 2016 WL 6193794, at *1 (N.D. Ill. Oct. 24, 2016) (permitting introduction of deposition testimony that was not "repetitious or immaterial in light of [witnesses'] live trial testimony.").

This includes the cases that Defendants cited in the proposed final pre-trial conference order. *See Corcoran v. CVS Pharmacy, Inc*., 2021 WL 1721056, at *5 (N.D. Cal. Apr. 30, 2021) (denying presentation of 30(b)(6) video testimony because testimony "appears duplicative"); *Rigsbee v. City & Cnty. of Honolulu*, 2019 WL

1089636, at *2 (D. Haw. Mar. 7, 2019) (denying proposal to play the entirety of a 235-minute deposition video); *Mighty v. Miami-Dade Cnty.*, 2021 WL 4022616, at *8–9 (11th Cir. Sept. 3, 2021) (affirming denial of proposal "to introduce portions of Defendant's videotaped deposition in order to illustrate his demeanor to the jurors").

Plaintiffs believe that the presentation of certain topics by deposition is the most efficient way to present the information to the jury. Because the live testimony will not be repetitive of the designated testimony, and Plaintiffs' case-in-chief is subject to a 25-hour time limit, the Court should permit this testimony by deposition.

### 3. Plaintiffs Should Be Permitted to Organize Deposition Videos to Streamline Their Presentation to the Jury

The Court should also permit Plaintiffs to present designated deposition testimony in the order that most clearly presents their case. In many depositions which last seven hours, lawyers jump from topic to topic. If the witness then testifies live at trial, the lawyer can organize their examination by subject matter and impeach with deposition testimony, if needed, even if it comes from disparate places in the deposition transcript. However, when the witness does not testify live at trial and the deposition testimony must be played by video, it aids juror comprehension to re-arrange the testimony so that it is grouped by subject matter rather than jumping from topic to topic.

Courts have long blessed this approach, so long as the re-arrangement does not create a misleading impression. *See* Michael J. Henke, *The Taking and Use of Videotaped Depositions*, 16 Am. J. Trial Advoc. 151 (Summer 1992) (summarizing cases). That is because Federal Rule of Evidence 611 provides the Court with broad discretion in controlling "the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment and truth . . . ." Fed. R. Evid. 611.

In *Beard v. Mitchell*, 604 F.2d 485, 502 (7th Cir. 1979), for example, a witness who had previously testified in two trials and two depositions was unavailable to testify in the trial at issue. Rather than designating and presenting the prior testimony

in sequential order, the plaintiff "sought to integrate the testimony from the four sources and present it in correspondence with the chronological sequence of events." *Id.* While the district court permitted plaintiff to do so during the first day of trial, it eventually sustained a defense objection on the grounds that the testimony was "confusing" and could lead to "false inferences" being drawn. On appeal, the Seventh Circuit "***agree[d] with plaintiff that in some cases it may well be permissible for the trial court to permit the integrated presentation of deposition testimony***," but found, under the facts of that case, that the trial court's refusal to allow it was not error given the finding that the "manner of presentation" was making it "difficult" to "make intelligent rulings." *Id.* at 503 (emphasis added). *See also ETSI Pipeline Project v. Burlington Northern*, No. B-84-979-CA (E.D. Tex. March 16, 1988) (pre-trial order) (Appendix A) (permitting editing of video to "rearrange the deposition testimony"). Here, there are no such concerns, as the parties are making their designations well in advance to facilitate the Court ruling outside the presence of the jury.

Defendants have raised a wholesale objection to the presentation of *any* testimony that does not match the chronology of questions of the deposition transcript. Yet there is no rule that so requires. The Court has discretion to allow parties to order testimony in the way they determine most clear and persuasive.

Plaintiffs seek only to re-order limited segments of deposition testimony in a manner that most clearly presents their case to the jury. Plaintiffs submit that they should be permitted to re-arrange deposition designations by subject matter, which is in the interest of justice and of avoiding the unnecessary juror confusion that would result from the fact that certain witnesses are not available to be called to testify live.

**E.    Evidence About Other Professional Sports Is Only Admissible When Presented in Proper Context**

The Court should not allow Defendants to offer cherry-picked evidence that compares other professional sports' leagues with the NFL regarding *only* the availability of over-the-air games in the local markets. Defendants' designation testimony indicates that they seek to use the Court's ruling on the NFL's Motion *In*

*Limine* No. 2—excluding evidence about past litigation over the telecast practices of other professional sports' leagues—as both a sword and a shield.[9] Because the testimony is by deposition, Plaintiffs cannot cross-examine these witnesses at trial.

This testimony, whether offered by deposition or live witnesses, invites evidence about the anticompetitive nature of those other sports leagues' conduct— bearing directly on their contractual arrangements for telecasts of their games and opening the door to the evidence regarding the antitrust lawsuits against those sports leagues that the Court has excluded at the request of the Defendants. Permitting this specific testimony would open the door to collateral litigation over the various similarities and differences between these sports leagues' contractual arrangements and telecast distribution methods and why those differences were themselves the product of anticompetitive contractual arrangements that led to litigation and, eventually, more favorable conditions for television viewers of those sports.

Allowing the testimony in question out of context, as Defendants propose, would potentially mislead the jury into believing that the telecast markets of those other sports are proxies for a competitive market in the but-for world. Defendants argue that the NFL's broadcasting of over-the-air games in local markets requires that out-of-market games be limited to paid subscriptions to suppress viewership of out-of-market games and protect over-the-air games from competition. Other sports' telecasts are *also* part of systems that were interrelated by agreements among the teams and the leagues, and which were challenged as illegal under the antitrust laws. Defendants recognize this fact. Their expert, Dr. Douglas Bernheim, says that the pricing and availability of other professional sports' out-of-market games should not be compared to the NFL, precisely because the prices charged to subscribers for

---

[9] *See* Carey 123:21-125:19, 126:5-135:20; Dyckes (30(b)(6)) 33:11-22, 34:3-37:11, 38:10-39:4, 39:6-42:3; Dyckes 235:14-236:20; 237:8-238:15, 238:25-240:5; Lawton 207:20-25; Magnus 230:5-7, 231:13-25, 233:14-25, 234:2-11, 235:2-6; Schroeder: 216:11-25, 217:2-13; Smith, J. 109:14-17, 135:6-25, 136:2-25; Thun 195:10-196:3; 198:18-25, 199:2-23; White 212:7-215:23; York 97:15-98:23, 101:10-102:6, 102:24:103:5, 140:5-150:5, 105:8-13, 106:11-17, 106:21-108:14, 109:11-13, 109:19-23, 140:14-141:19, 146:16-22.

games reflect the results of antitrust litigation. Bernheim Report ¶ 336 ("A fourth problem with Dr. Rascher's comparisons between the NFL and either MLB or the NHL is that price reductions for OOM packages resulted from litigation rather than market forces. He acknowledges that litigation played an important role in the context of MLB's OOM package, but he dismisses this observation on the grounds that MLB maintained low prices after the terms of the settlement expired."). The Court should thus exclude this testimony.

If, however, the Court permits Defendants to compare the availability of NFL games over-the-air to those of other sports, Plaintiffs should be entitled to introduce evidence about the anticompetitive nature of those sports leagues' contractual arrangements. If Defendants dispute the anticompetitive nature of those arrangements, Plaintiffs should be allowed to tell the jury that those other sports leagues' broadcast arrangements were challenged for violating the antitrust laws and that as a result of that litigation, prices were lowered to sports fans. The Court has already held that any challenge by Defendants to the opinion that the NCAA football market before 1984 was competitive "will open the door to evidence of *NCAA v. Board of Regents.*" Order on Defendants Motion *in Limine* No. 2, Dkt. 1320 at 4 n.4. The same logic applies to evidence of other professional sports. If Defendants challenge Plaintiffs' evidence about the anticompetitive practices of other sports leagues, they will open the door to evidence that MLB and the NHL were sued for antitrust violations. If Defendants open the door, Plaintiffs should be allowed to show that these leagues entered into contractual arrangements that restrained the teams from competing in licensing their telecast rights and that the settlement of those cases resulted in lower charges and improved options for subscribers of out-of-market games, including the right to buy single-game packages.

The Court should prevent this sideshow altogether by excluding testimony that compares the availability of over-the-air NFL games to those of other professional sports' leagues.

Dated: May 29, 2024                     Respectfully submitted,


By: /s/ *Marc Seltzer*

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Kalpana Srinivasan (237460)
ksrinivasan@susmangodfrey.com
Amanda Bonn (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
One Manhattan West
New York, NY 10001
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfeld.com
Samuel Maida (333835)
smaida@hausfeld.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Sathya S. Gosselin (269171)
sgosselin@hausfeld.com
Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

<u>Appendix A to Plaintiffs' Rule 16-10 Trial Brief</u>

Trial Exhibits to Which Defendants Have Objected Only on Foundation

1. TX-541
2. TX-630
3. TX-638
4. TX-648
5. TX-649
6. TX-651
7. TX-672
8. TX-716
9. TX-717
10. TX-744
11. TX-745
12. TX-748
13. TX-750
14. TX-769
15. TX-772
16. TX-775
17. TX-777
18. TX-779
19. TX-780
20. TX-782
21. TX-784
22. TX-785
23. TX-787
24. TX-790
25. TX-799
26. TX-801
27. TX-802
28. TX-804
29. TX-805
30. TX-807
31. TX-809
32. TX-810
33. TX-813
34. TX-814
35. TX-818
36. TX-822
37. TX-826
38. TX-827
39. TX-829
40. TX-830
41. TX-831
42. TX-834
43. TX-838
44. TX-841
45. TX-842
46. TX-843
47. TX-854
48. TX-855
49. TX-856
50. TX-864