Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' TRIAL BRIEF TO PRECLUDE IMPROPER "REBUTTAL" TESTIMONY**<br><br>Judge: Hon. Philip S. Gutierrez<br>Courtroom: First Street Courthouse<br>     350 West 1st Street<br>     Courtroom 6A<br>     Los Angeles, CA 90012 |

Plaintiffs seek to call *five witnesses* presenting purported "rebuttal" evidence, which would include a second round of testimony from Dr. Rascher, two new experts (Len DeLuca and Einer Elhauge), and both commercial class representatives. But every issue these witnesses could address was already addressed—or could have been addressed—in Plaintiffs' case in chief.

With one narrow and immaterial exception discussed further below, the three experts were disclosed to rebut Dr. Bernheim, a Stanford professor who is Defendants' remaining economic expert witness. Calling three experts to rebut one would be cumulative and unnecessary under any circumstance, but it is particularly inappropriate here. As an initial matter, Dr. Bernheim filed his report and was deposed over a year ago, so Plaintiffs knew the scope of his testimony and opinions long before trial. Moreover, nothing Plaintiffs can offer in response now qualifies as proper rebuttal evidence. <u>Dr. Rascher</u> presumably intends to rebut Dr. Bernheim's conclusions about procompetitive benefits, which Dr. Rascher *already attempted to do* during his earlier examination, both on direct and redirect. <u>Mr. DeLuca</u> is not an economist and will simply repeat points Dr. Rascher already made about college football as a but-for world. <u>Mr. Elhauge</u> also is not an economist, and has little to offer in response to Dr. Bernheim's anticipated testimony besides critiquing Dr. Bernheim for not quantifying procompetitive benefits—even though the Court has ruled Defendants have no "'empirical burden' to prove procompetitive effects." ECF No. 1325, Order on Defs.' Mot. *in Limine* No. 7, at 8. As to the class representatives, they cannot be considered rebuttal witnesses in any relevant sense.

None of this is proper. "A trial court has broad discretion to admit or exclude rebuttal or surrebuttal evidence, including limiting such evidence 'to *new* evidence.'" *United States v. Hirokawa*, 342 F. App'x 242, 246–47 (9th Cir. 2009) (emphasis added) (internal quotations and citations omitted). Put simply, rebuttal is an opportunity to respond to unexpected argument or evidence—not a chance to recap points already discussed or hold back evidence to "get the last word." *See Mickey v. Ayers*, 606 F.3d 1223, 1248 (9th Cir. 2010). Plaintiffs cannot credibly argue that Defendants' expert testimony was new or

unexpected. The substance and basis of the testimony offered by Drs. Bernheim and Yurukoglu was fully disclosed in Rule 26(a)(2) expert reports served more than a year ago, both experts were deposed more than a year ago, and Plaintiffs have long known both witnesses would testify at trial. And as other courts have recognized, the fact that this case involves the burden-shifting rule of reason framework does not change the established standards governing when rebuttal testimony is proper. *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 55 (1st Cir. 2016).

Moreover, Plaintiffs' proposed rebuttal experts are cumulative because the points these experts will cover are already in the record. Much time has been wasted in this trial already on cumulative evidence and depositions at trial, and there is no warrant for prolonging the case further to repeat points the jurors have already heard. *See Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1510 (9th Cir. 1995) ("[S]everal courts have upheld exclusion of rebuttal testimony based on inability to conform to time limits, even though the district court did not assess the probative value of the evidence.") (collecting cases); *Hirokawa*, 342 F. App'x at 246–47 (affirming the decision to exclude cumulative rebuttal evidence). The Court should preclude Plaintiffs' proposed rebuttal evidence.

## ARGUMENT

**I.   REBUTTAL EVIDENCE MUST BE NEW, NOT AN EFFORT TO GET THE LAST WORD.**

Plaintiffs should not be permitted to present witnesses to respond to expert testimony that was fully disclosed, more than a year ago, in detailed Rule 26 reports. "'[R]ebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case.'" *Cook v. Cnty. of L.A.*, 2022 WL 1470574, at *3 (C.D. Cal. Mar. 21, 2022) (quoting *In re Toy Asbestos*, 2021 WL 1056552, at *3 (N.D. Cal. Mar. 19, 2021)). By contrast, "[i]f the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Stallworth v. Nike Retail Servs., Inc.*, 2021 WL 6618781, at *1 (C.D. Cal. Dec. 1, 2021) (cleaned up) (citation omitted).

As a result, attempts at rebuttal are improper when "offered merely to bolster the plaintiff's case-in-chief." *Brutsche v. City of Fed. Way*, 300 F. App'x 552, 553 (9th Cir. 2008); *Bennett ex rel. Bennett v. Hosp. Corp. of Am.*, 912 F.2d 468, 1990 WL 119096, at *7 (9th Cir. 1990) (affirming exclusion of evidence that "would have been admissible in [the plaintiff's] case-in-chief"). Courts consistently hold that plaintiffs should not be "allowed to 'carve out,' and withhold until the rebuttal stage, [] expert testimony" that can be presented during their case-in-chief. *G. W. I. S. ex rel. Stewart v. Integris Blackwell Reg'l Hosp.*, 2009 WL 10672482, at *1 (W.D. Okla. Oct. 22, 2009).

The rule of reason's burden-shifting framework does not change this well-settled principle. For example, the First Circuit affirmed a trial court's decision to exclude a plaintiff's rebuttal expert testimony in a rule of reason case because it "offered nothing 'new'" and therefore "properly belonged in the plaintiffs' case in chief, and not in their rebuttal." *In re Nexium*, 842 F.3d at 55. Trial courts in this Circuit have done the same in other cases applying burden-shifting frameworks. *Erickson v. Biogen, Inc.*, 2020 WL 885743, at *3 (W.D. Wash. Feb. 24, 2020) (affirming exclusion of rebuttal testimony as cumulative in a Title VII case).

## II. PLAINTIFFS' REBUTTAL EVIDENCE IS IMPROPER AND CUMULATIVE.

None of Plaintiffs' proposed experts would be responding to anything new and unexpected. In June 2023, Plaintiffs submitted a reply report from Dr. Rascher, which primarily responds to Dr. Bernheim, save for a small portion responding to Dr. Yurukoglu's conclusions about a per-subscriber fee. Plaintiffs also disclosed Einer Elhauge as a rebuttal expert to Dr. Bernheim, and Len DeLuca as a rebuttal expert nominally to Dr. Bernheim, but primarily to two media experts that Defendants have elected not to call. Defendants' experts were deposed in that same timeframe.

As a result, Plaintiffs have had a full understanding of the opinions Defendants' experts would offer at trial for over a year. *See* ECF No. 962-10 (Expert Report of B. Douglas Bernheim, dated April 28, 2023); *see also* ECF No. 1132-6 (Expert Report of Dr.

Ali Yurukoglu, dated April 28, 2023). Dr. Bernheim's report was 240 pages (and 568 paragraphs long) and was supported by detailed backup materials and appendices. Dr. Yurukoglu's opinions on the per-subscriber fee were similarly covered throughout his report. *See* Yurukoglu Rep. at pp. 9 n. 18, 12–13, ¶¶ 25–26, ¶¶ 35–50 & Fig. 8, ¶ 101 & Fig. 23. These detailed disclosures put Plaintiffs on notice of the criticisms and opinions that Drs. Bernheim and Yurukoglu would offer at trial, and Defendants made clear that they would be calling both experts to testify as to those critiques at least six weeks before trial. *See* ECF No. 1298, Joint Witness List at 11, 15 (placing Drs. Bernheim and Yurukoglu on Defendants' "Will Call" list and describing their testimony). Saving expert testimony to rebut these well-known opinions is the precise type of "carving out" that courts have rejected. *G. W. I. S.*, 2009 WL 10672482, at *1.

Moreover, Plaintiffs have already addressed the topics they presumably seek to cover. Evidence is cumulative where the same or similar points have already been made on the record. *See Romo v. Davison*, 2009 WL 3125547, at *12 (C.D. Cal. Sept. 24, 2009). The Ninth Circuit routinely affirms exclusion of repetitive evidence. *See Hirokawa*, 342 F. App'x at 246–47 (affirming the decision to limit rebuttal "to new evidence"); *United States v. Butcher*, 926 F.2d 811, 817 (9th Cir. 1991); *Mejorado v. Hedgpeth*, 629 F. App'x 785, 787 (9th Cir. 2015) (not unreasonable to exclude cumulative evidence); *United States v. Clark*, 617 F.2d 180, 187 (9th Cir. 1980) (affirming refusal to allow defense to recall the same expert where he would not "provide new or important" testimony).

Plaintiffs' three purported "rebuttal" expert witnesses are inappropriate under these well-established principles:

**Dr. Rascher:** In his trial testimony, Dr. Rascher already attempted to respond at length to the procompetitive benefit arguments that Defendants disclosed in their expert reports in April 2023. He testified at length on **competitive balance** in the NFL and in college football, arguing that such competitive balance is unrelated to the challenged restraints. *See* 6/11/24 Trial Tr. at 757:1–758:25; 6/12/24 Trial Tr. at 958:3–960:11 (asserting that there is minimal correlation between team revenue and competitive

4

balance); *see also* 6/11/24 Trial Tr. at 827:16–834:17, 842:12–843:10, 848:3–856:9, 902:14–906:19; 6/12/24 Trial Tr. at 947:5–22, 954:13–21. He testified that network **investment and innovation in production of telecasts** does not depend on the NFL's challenged broadcasting arrangements. *See, e.g.*, 6/11/24 Trial Tr. at 786:14–788:23, 788:24–789:9 ("I haven't seen anything that would tie putting those innovations into these games to having this Sunday Ticket package[.]"), 789:10–14 ("Q: Did you hear anything that would suggest that bringing the teams and the league into an agreement . . . was necessary to have innovations? A: No."), 789:15–791:2. And he asserted repeatedly that he does not believe the NFL's telecasting arrangements **increase output by protecting free, over-the-air broadcasts**. *See, e.g.*, *id.* at 716:20–720:22, 754:4–22, 776:4–778:6 (referring to the assertion that the challenged agreements protect over-the-air viewership as "illogical"), 790:9–791:2 ("the agreements of the NFL and the league and their interactions with the networks and the deal with DirecTV" "reduced the number . . . of viewers"), 765:3–23 (contrasting college football viewership and NFL viewership); *see also* 6/11/24 Trial Tr. at 810:19–811:3, 856:25–858:9, 885:20–900:18, 908:16–910:23. To be clear, Defendants disagree with Dr. Rascher's assertions, but the point for present purposes is that there is no need for him to return to the stand to either repeat these points or introduce additional supporting analysis he could have raised, but chose not to raise.

Dr. Rascher likewise spent considerable time attempting to support Plaintiffs' proposed less restrictive alternatives, required at the third step of the rule of reason. Dr. Rascher spent ample time attempting to defend his college football but-for world and answer cross-examination questions about that world that were not unexpected or surprising. *See, e.g.*, 6/11/24 Trial Tr. at 748:14–749:25 (explaining why he contends college football is an appropriate analogue), 752:2–756:1 (using a college football telecast schedule to "determine a way in which the NFL games could be more broadly available during the Sunday afternoon telecast"), 756:2–25 (suggesting that this model would achieve Defendants' proffered procompetitive benefits because, in college football, "[v]iewership is up. Attendance is up. . . . The revenues have grown at a very high pace[.]"),

757:1–10 (suggesting that the challenge restraints are not needed to protect over-the-air broadcasts because FOX broadcasts college football),757:11–22 ("'competitive balance' has actually gotten a little bit better" in college football),757:23–767:21 (asserting that he has seen "evidence" that his college football but-for world is "feasible from the network side"), 06/12/24 Trial Tr. at 960:2–963:1; *see also* 06/11/24 Trial Tr. *at* 808:1–809:9, 810:25–824:17 (discussing movement among college conferences and the impact of revenue on NCAA football), 824:18–826:16 (discussing competitive balance in NCAA football), 841:5–848:2, 856:10–884:16 (discussing potential logistical hurdles to negotiating telecast packages in the college football but-for world), 884:17–885:10; 898:7–23, 900:20–901:12, 06/12/24 Trial Tr. at 945:20–946:10, 953:16–954:25.[1]  Here too, there is no basis for allowing him to return to the stand.

**Mr. DeLuca**:  Just like Dr. Rascher, Mr. DeLuca contends that college football is an appropriate but-for world, meaning that his expert testimony would be duplicative of Dr. Rascher. Mr. DeLuca bases that opinion on the history of NCAA telecasting after 1984, just like Dr. Rascher said already. *Compare* DeLuca Rep. ¶¶ 48–49 *with* 6/11/24 Trial Tr. at 748:14–749:25, 750:1–24 (Rascher discussing the same factual events). Mr. DeLuca asserts that college football history shows that the challenged restraints were not necessary to protect free, over-the-air broadcasts of local NFL games, just like Dr. Rascher said already. *Compare, e.g.*, DeLuca Dep. ¶ 19 *with* 6/11/24 Trial Tr. at 770:2–771:6 (Rascher testifying to the same outcome). Mr. DeLuca also purported to reject the argument that the economics surrounding Thursday Night Football broadcasts undermine the college football but-for world, just like Dr. Rascher said already. *Compare* DeLuca Rep. ¶¶ 61–67 *with*

---

[1] Dr. Rascher was further on notice of Dr. Yurukoglu's criticisms on the per-subscriber fee issue, as Dr. Rascher affirmatively responded to those criticisms in his reports. *See, e.g.*, Rascher Reply Rep. ¶ 441. Indeed, Dr. Rascher's reply references six separate pages and four paragraphs from Dr. Yurukoglu's report, all of which are geared towards the per-subscriber fee criticism, and some of which were already raised on cross-examination of Dr. Yurukoglu. *See, e.g.*, 6/17/24 Trial Tr. at 1419:24–1424:16, 1428:24–1431:23; 1436:7–1436:20.

6/11/24 Trial Tr. at 771:20–772:18.[2] In light of this substantial overlap, Mr. DeLuca has nothing to share that Dr. Rascher has not already said to the jury.

**Mr. Elhauge**:   While the Court previously ruled on Defendants' motion to exclude legal opinions by Mr. Elhauge, the case for allowing him to testify has grown only weaker, and the time for Plaintiffs to offer his opinions has passed. Mr. Elhauge is not an economist, he is a lawyer. And his rebuttal of Dr. Bernheim's expected trial testimony will presumably consist of him faulting Dr. Bernheim for not quantifying the procompetitive rationales, and offering no quantifications or affirmative opinions of his own. *Compare* ECF No. 962-29, Expert Rebuttal Report of Einer Elhauge ¶¶ 14–15, 48, 51, *with* ECF No. 1325, Order on Defs.' Mot. *in Limine* No. 7 ("[T]here is no burden to quantify."). Plaintiffs offer no reason that they could not have criticized Defendants' purported lack of quantitative support for their procompetitive rationales during their case in chief, to the extent doing so is permissible. *See In re Nexium*, 842 F.3d at 55 (affirming exclusion of rebuttal-only expert addressing but-for worlds in rule of reason case because Plaintiffs should have anticipated these arguments and so it was "hardly true rebuttal testimony"). And Dr. Rascher's reports make clear that he could have offered the same opinions on the stand but chose not to. ECF No. 962-5, Expert Reply Report of Daniel A. Rascher ¶¶ 257, 259, 311, 365. It is further unclear how Defendants could effectively cross-examine Mr. Elhauge on this point without reference to the absence of any legal requirement to quantify procompetitive rationales, and it would be impractical, confusing, and a waste of time for a rebuttal witness to take the stand primarily to offer critiques about quantification that the Court will nullify almost immediately thereafter in the jury instructions.

As to the class representatives, they cannot properly be considered rebuttal witnesses in any sense. Plaintiffs have no explanation for why they did not call these witnesses in their case in chief or reserve their rights to call them when they rested their case. (Notably,

---

[2] Mr. DeLuca even cited much the same evidence. *Compare* TX659 (2020 ESPN proposal addressed in Dr. Rascher's testimony, at 6/11/24 Trial Tr. at 767:11–768:23) *with* NFL_0864430 (same email thread respecting same 2020 ESPN proposal discussed in Mr. DeLuca's report, at Deluca Rpt. n.18).

Mr. Baker was in court through last Wednesday.) And while Defendants subpoenaed Mr. Baker, but not Mr. Lennon, to reserve the option of calling him after Plaintiffs moved both to their "may call" witness list, Defendants do not intend to call him to testify.

\*     \*     \*

In short, none of the proposed rebuttal testimony is appropriate. It is not rebuttal evidence, but largely an effort to repeat critiques that have already been made. And for that reason, it makes no sense to further prolong the trial to allow Plaintiffs to once again repeat arguments the jurors have already heard several times over.

## CONCLUSION

The Court should preclude Plaintiffs' proposed rebuttal evidence.

| | |
|---|---|
| Dated: June 18, 2024 | Respectfully submitted,<br><br>/s/ *Beth A. Wilkinson*<br>Beth A. Wilkinson (admitted *pro hac vice*)<br>Rakesh N. Kilaru (admitted *pro hac vice*)<br>Brian L. Stekloff (admitted *pro hac vice*)<br>Jeremy S. Barber (admitted *pro hac vice*)<br>Max J. Warren (admitted *pro hac vice*)<br>**WILKINSON STEKLOFF LLP**<br>2001 M Street NW, 10th Floor<br>Washington, DC 20036<br>Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005<br>bwilkinson@wilkinsonstekloff.com<br>rkilaru@wilkinsonstekloff.com<br>bstekloff@wilkinsonstekloff.com<br>jbarber@wilkinsonstekloff.com<br>mwarren@wilkinsonstekloff.com<br><br>Neema T. Sahni (Bar No. 274240)<br>**COVINGTON & BURLING LLP**<br>1999 Avenue of the Stars<br>Suite 1500<br>Los Angeles, CA 90067-6045<br>Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749<br>nsahni@cov.com<br><br>Gregg H. Levy (admitted *pro hac vice*)<br>Derek Ludwin (admitted *pro hac vice*)<br>John S. Playforth (admitted *pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>Telephone: (202) 662-6000<br>Facsimile: (202) 662-6291<br>glevy@cov.com<br>dludwin@cov.com<br>jplayforth@cov.com<br><br>*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs* |