# EXHIBIT 1

                                                                        1

1
2             UNITED STATES DISTRICT COURT
3             CENTRAL DISTRICT OF CALIFORNIA
4
                         )
5                        )
                         ) CASE NO.
6                          2:15-ml-02668-PSG (JEMx)
   IN RE: NATIONAL FOOTBALL    )
7  LEAGUE'S "SUNDAY TICKET"    )
   ANTITRUST LITIGATION        )
8                        )PAGES 1 - 255
                         )
9                        )
   _____ )
10
11
12
13           DEPOSITION OF EINER ELHAUGE
14              Thursday, July 6, 2023
15   APPEARING REMOTELY FROM HUNTINGTON BEACH, CALIFORNIA
16
17
18
19
20
21
22
23   STENOGRAPHICALLY REPORTED BY:
     LINDSAY A. STOKER, RPR, CRC
24   CA CSR No. 14373
     Job No.: 2023-902215
25

2

1

UNITED STATES DISTRICT COURT

2

CENTRAL DISTRICT OF CALIFORNIA

3

4

)
5                    )
                     ) CASE NO.
6              2:15-ml-02668-PSG (JEMx)
IN RE: NATIONAL FOOTBALL   )
7  LEAGUE'S "SUNDAY TICKET"   )
ANTITRUST LITIGATION   )
8                    )PAGES 1 - 255
                     )
9                    )
_____ )

10
11
12
13
14
15
16
17     Deposition of Einer Elhauge, taken via remote
18   teleconference in Huntington Beach, California,
19   commencing at 10:04 a.m., on Thursday, July 6, 2023,
20   before Lindsay Stoker, RPR, CRC, Certified Shorthand
21   Reporter No. 14373 in and for the State of California.
22
23
24
25

Case 2:15-ml-02668-PSG-SK Document 1437-2 Filed 06/19/24 Page 4 of 9 Page ID #:52687
In Re - NFL Sunday Antitrust Litigation
Einer Elhauge
July 06, 2023

3

A P P E A R A N C E S
--oOo--

APPEARING ON BEHALF OF THE PLAINTIFF:

LANGER GROGAN & DIVER, P.C.
BY: PETER E. LECKMAN, ESQ.
Three Logan Square
Suite 4130
Philadelphia, Pennsylvania 19103
Telephone: (215) 320-0876
Facsimile: (215) 320-5703
Email: Pleckman@langergrogan.com

LANGER GROGAN & DIVER, P.C.
BY: HOWARD LANGER, ESQ.
Three Logan Square
Suite 4130
Philadelphia, Pennsylvania 19103
Telephone: (215) 320-0876
Facsimile: (215) 320-5703
Email: Hlanger@langergrogan.com

APPEARING ON BEHALF OF THE DEFENDANT:

WILKINSON STEKLOFF
BY: RAKESH KILARU, ESQ.
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4046
Facsimile: (202) 847-4005
Email: Rkilaru@wilkinsonstekloff.com

WILKINSON STEKLOFF
BY: CAROLINE LI, ESQ.
130 W 42nd Street
24th Floor
New York, New York 10036
Telephone: (212) 294-8915
Email: Cli@wilkinsonstekloff.com

WILKINSON STEKLOFF
BY: MAX WARREN, ESQ.
2001 M Street, NW
10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4008
Facsimile: (202) 847-4005

```
                                                              4
1    COVINGTON & BURLING LLP
     BY:  DEREK LUDWIN, ESQ.
2    850 10th St NW
     Washington, D.C. 20001
3    Telephone:  (202) 662-5429
     Email:  Dludwin@cov.com
4
5    APPEARANCES CONTINUED:
6    VIA REMOTE REALTIME CONNECTION:
     Juan Carlos Gozzi, Bates & White
7
     VIDEOGRAPHER:
8    Betsy Gomez, Lexitas Legal
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 2:15-ml-02668-PSG-SK   Document 1437-2   Filed 06/19/24   Page 6 of 9   Page ID
 #:52689
In Re - NFL Sunday Antitrust Litigation

Einer Elhauge
July 06, 2023

72

08:40:12  1  doesn't seem to have happened.  And I understand the

08:40:16  2  opinion of Professor Rascher is that it wouldn't

08:40:19  3  happen.

08:40:19  4     You could add streaming without taking away the

08:40:22  5  OTA telecasts, and that's what the NFL, in fact,

08:40:24  6  does for Thursday Night Football.

08:40:27  7  BY MR. KILARU:

08:40:28  8     Q.  Do you have an opinion as to whether, if

08:40:29  9  there were 32 teams selling rights to games versus

08:40:34 10  just the NFL distributing rights to games, there

08:40:37 11  would be an increased likelihood of streaming,

08:40:40 12  picking up some NFL games?

08:40:43 13     MR. LECKMAN:  Objection to form.

08:40:44 14     THE WITNESS:  I don't think there's any evidence

08:40:46 15  that streaming would be more attractive in that

08:40:49 16  world than in the actual world.  We already have

08:40:52 17  streaming going on, as I mentioned, with the NFL

08:40:55 18  without having 32 different ones.

08:40:59 19     I think the streaming attractiveness turns more

08:41:07 20  on technological factors that are changing over time

08:41:10 21  that some people are finding more attractive, for

08:41:12 22  example, to see things over the phone.

08:41:14 23     And so the more people that there are like that,

08:41:16 24  the more streaming becomes an attractive option to

08:41:19 25  offer.

Case 2:15-ml-02668-PSG-SK   Document 1437-2   Filed 06/19/24   Page 7 of 9   Page ID
 #:52690
In Re - NFL Sunday Antitrust Litigation

Einer Elhauge
July 06, 2023

73

08:41:20  1  BY MR. KILARU:
08:41:20  2     Q.  Are you offering -- I take it, from what
08:41:25  3  you said earlier, you're not offering affirmative
08:41:27  4  opinions on what the but-for world would look like;
08:41:30  5  is that correct?
08:41:30  6     A.  That's correct.
08:41:31  7     Q.  Okay.  Do you agree that it's important in
08:41:32  8  antitrust analysis to have a good understanding of
08:41:35  9  what the but-for world is in measuring competitive
08:41:37 10  effects?
08:41:38 11     A.  I think it's important to understand what
08:41:42 12  the but-for world is.  I don't think it has to be
08:41:44 13  one precise but-for world.  There could be a range
08:41:49 14  of possibilities as long as the range is sufficient
08:41:53 15  to make it likely that the competitive effects would
08:41:59 16  be better in the but-for world than in the actual
08:42:02 17  world.
08:42:02 18     Q.  If you have 50 but-for worlds, each of
08:42:06 19  which is 1 percent likely, do you think that you can
08:42:10 20  measure anticompetitive effects based on that?
08:42:14 21     A.  50 worlds, each which is 1 percent likely?
08:42:20 22     Q.  Yes.
08:42:20 23     A.  Then we are missing the other 50 percent.
08:42:23 24     Q.  Right.  So the -- the other 50 percent
08:42:26 25  would just be the world as it is today.

Case 2:15-ml-02668-PSG-SK Document 1437-2 Filed 06/19/24 Page 8 of 9 Page ID #:52691
In Re - NFL Sunday Antitrust Litigation
Einer Elhauge
July 06, 2023

74

08:42:29 1   A. The world as it is today is just one world.
08:42:32 2   Q. Okay.
08:42:33 3   A. For the but-for world, we have to have some
08:42:37 4 percentages that add up to 100 percent of but-for
08:42:40 5 worlds.
08:42:40 6   Q. 50 but-for worlds, each of which is
08:42:43 7 2 percent likely, do you think you can measure
08:42:45 8 anticompetitive effects based on that?
08:42:47 9   A. Sure. Well, you can determine if -- if
08:42:49 10 each of them or at least 50 or at least 26 of them
08:42:59 11 have more -- have, I guess, procompetitive effects
08:43:03 12 relative to the actual world, then it's likely that
08:43:05 13 the but-for world is more competitive, and thus
08:43:08 14 likely that the restraints had anticompetitive
08:43:13 15 effects.
08:43:13 16   Q. So just to break that down, in the first,
08:43:16 17 you would want to look at each world and compare
08:43:18 18 anticompetitive effects relative to the real world;
08:43:22 19 correct?
08:43:22 20   A. Yes.
08:43:22 21   Q. Okay. But then you need to get to a
08:43:25 22 scenario where, you know, 51 percent of them were
08:43:29 23 more likely one way or another; correct?
08:43:31 24   A. Yes. Something over 50 percent. I guess
08:43:34 25 it could be 50.1 percent, but you need to -- to show

Case 2:15-ml-02668-PSG-SK   Document 1437-2   Filed 06/19/24   Page 9 of 9   Page ID
In Re - NFL Sunday Antitrust Litigation            #:52692                    Einer Elhauge
                                                                              July 06, 2023

255

1  STATE OF CALIFORNIA   )
2                        ) ss.
3  COUNTY OF ORANGE      )
4
5        I, LINDSAY STOKER, Certified Shorthand
6  Reporter qualified in and for the State of California,
7  do hereby certify:
8        That the foregoing transcript is a true and
9  correct transcription of my original stenographic notes;
10       I further certify that I am neither attorney
11 or counsel for, nor related to or employed by any of the
12 parties to the action in which this proceeding was
13 taken; and, furthermore, that I am not a relative or
14 employee of any attorney or counsel employed by the
15 parties hereto or financially interested in the action.
16       IN WITNESS WHEREOF, I have hereunto set my
17 hand this 10th day of July, 2023.
18
19
            LINDSAY STOKER
20          CSR 14373
21
22
23
24
25