Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**DEFENDANTS' PROPOSED SUPPLEMENTAL FINAL JURY INSTRUCTION**<br><br>Judge: Hon. Philip S. Gutierrez<br>Trial Date: June 5, 2024<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Courtroom 6A<br>Los Angeles, CA 90012 |

# FINAL JURY INSTRUCTIONS
# INSTRUCTIONS ON THE TRIAL PROCESS AND EVIDENCE
# INSTRUCTION NO. 33.2: UNRELATED LAWSUITS

During this case you have heard reference to another lawsuit that Jerry Jones and the Cowboys filed against the NFL nearly thirty years ago. That lawsuit dealt with marketing, not telecast rights or telecast licensing. The allegations in that lawsuit are not relevant to this case and you should not consider them for any purpose.

**Authority:** *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) (noting the high risk of confusion from presenting the details of a prior lawsuit); 6/18/24 Trial Tr. at 1621:9–10 (concluding that "the lawsuit is irrelevant."); *see also Grace v. Apple, Inc.*, 2020 WL 227404, at *2–3 (N.D. Cal. Jan. 15, 2020) (excluding past litigation due in part to its "low probative value"); *United States v. Kealoha*, 2019 WL 2620004, at *6 (D. Haw. June 26, 2019) (excluding prior litigation for risk of confusion); *Wrather v. Farnam Cos., Inc.*, 2003 WL 25667639, at *1 (C.D. Cal. Nov. 3, 2003) (similar); *National Football League v. Dallas Cowboys*, 922 F. Supp. 849 (S.D.N.Y. 1996).

# PLAINTIFFS' OBJECTION TO DEFENDANTS' PROPOSED
# INSTRUCTION NO. 33.2: UNRELATED LAWSUITS[1]

The complaint of the Dallas Cowboys and Jerry Jones against the NFL contains plainly relevant party admissions that bear on the legal issues on this case. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement made in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation."). Mr. Jones did not seek to disavow the admissions made in the complaint: "I certainly stand by anything that I put in the lawsuit." Trial Tr. 1587:18-19; 1606:18-19.

As described below, the testimony regarding the Dallas Cowboys complaint is also admissible pursuant to FRE 401/402 and not prejudicial under FRE 403. Its relevance is so apparent that the NFL expected and understood it would be presented in this case and attempted to distinguish it on direct examination – opening the door by eliciting testimony on direct examination and failing to lodge any contemporaneous objection (which is now waived).

The Dallas Cowboys complaint pursued the NFL for taking the marks of all teams and giving the NFL the exclusive right to license those marks and alleged that that conduct was anticompetitive. Specifically, the complaint alleged, and Mr. Jones testified, that he wanted the teams to have that right rather than the NFL solely being able to market on the teams behalf, because it would provide incentives for each team to compete in the marketplace. ¶41. Mr. Jones agreed this was a concern. Trial Transcript 1595:24 – 1596:5.

In this case, Defendants contest that there is a horizontal agreement between the NFL and the teams to combine their telecast rights. Mr. Jones conceded, as alleged in the Dallas Cowboys complaint, that the "teams had put the rights you're

---

[1] Defendants' proposed instruction and Plaintiffs' objection should be discussed, if at all, as part of the final charge conference rather than a separately-given instruction.

talking about, they had put that in an agreement called a trust agreement." Trial Tr. 1585:1-10.  He also admitted he brought a claim for breach of the agreement between the parties. Trial Tr. 1606:2-5.

Contrary to the position Defendants have taken as to the relevant market and the NFL's market power in this case, the Dallas Cowboys complaint also alleges "[t]here has been no competing football league since 1966 to establish a football league to compete with the NFL." ¶29, and Mr. Jones conceded that "probably at that time there was not an active one" outside of the NFL.  Trial Transcript 1597:14-15. The Dallas Cowboys complaint alleges that the NFL improperly used its market power as the Plaintiffs here also contend.  The admission as to the market and market power is relevant and admissible.

The Dallas Cowboys complaint also directly undermines positions advanced by the Defendants in this case, including that a pooled structure and revenue sharing is necessary to maintain competitive balance.  The complaint alleged – and Mr. Jones conceded – that the cartel was "not reasonably necessary to maintain competitive balance in team performance among the member clubs." Trial Transcript 1600:18-22. While the NFL contends this was limited to merchandising and marks, the admissions in the complaint and in Mr. Jones' testimony go to revenue sharing more broadly and the problems it can create for incentives.  For example, the Dallas Cowboys complaint states "the equal sharing of profit does not in fact lead to competitive balance. Indeed, the sharing of profits can create just the opposite effect, leaving poor-performing teams with no incentive to spend more on players to strive to improve." ¶46. Mr. Jones testified regarding the same.  Trial Transcript 1603:18-1605:1.

This admission – that equal revenue sharing can create problematic incentives for teams – is wholly independent of whether it is applied to marks or the telecasts. The Dallas Cowboys complaint and Mr. Jones in his testimony acknowledged the

dissatisfaction with receiving a pro-rata share of revenue when the contribution of an individual team may be far greater. In the case of the logos at issue, Mr. Jones testified he thought the Dallas Cowboys were contributing 25% but only receiving 1/30th and he thought "we could have more fans" for the teams merchandise if it could do it rather than the "NFL offices doing it for 30 teams." Trial Tr. at 1586:6-11. The Dallas Cowboys complaint alleges the example of the Tampa Bay Buccaneers winning fewer games than any other team in the NFL between 1980 and 1990 but enjoying the highest profitability, ¶46, admissions which Mr. Jones likewise acknowledged. *Id.* These admissions are consistent with Plaintiffs' position in this case, including the testimony of Dr. Rascher, that 100 percent revenue sharing of all media telecasts is unnecessary and in fact, counterproductive. Trial Transcript 863: 2-10 (Dr. Rascher "too much revenue sharing, again, lowers the incentives for these teams – to market their teams").

The Dallas Cowboys complaint and Mr. Jones' testimony also concede that the "purported interested in achieving competitive balance among member clubs can be readily achieved in a much less restrictive and anticompetitive manner, through devices such as player drafts favoring less successful teams, a salary cap, and the like." Complaint ¶ 46; Trial Transcript 1600:23-1601:05. These concessions are equally applicable to the claims here where defendants contend that 100 percent revenue sharing of out-of-market games is necessary to maintain competitive balance. The Dallas Cowboys complaint and Mr. Jones' accompanying testimony directly refute that. The complaint also impeaches Mr. Jones' prior statements on direct testimony about revenue sharing and the role it plays for competitive balance.

Mr. Jones further conceded – based on the admission in the Dallas Cowboys complaint – that the cartel formed by the NFL to solely license the marks hurt consumers because "output is lower than it would otherwise be and is unresponsive to consumer preferences" – again, an admission that the teams rather than the NFL

could better serve the preferences of consumers. Trial Transcript 1605:16-1606:1.

The Defendants should be held to their admission in other litigation. There is nothing prejudicial about these party admissions under FRE 403 – the jury may properly consider and weigh the party admissions. The jury is aware that the Dallas Cowboys complaint was never adjudicated and settled between the parties. To the extent the NFL wanted to draw distinctions between the Dallas Cowboys case and the presentation, they elicited that on both direct and re-direct examination. Trial Tr. June 17, 2024 at 1576:10-1578:25; 1643:10-1644:23.

Finally, Defendants have waived any basis to seek an instruction, which is also improper and redundant with the testimony. *Defendants* elicited testimony on direct examination of Mr. Jones on the very issue for which they now seek an instruction, asking him questions directly about the lawsuit, the nature of it, and its outcome. Trial Transcript 1576:10-1578:25. Defendants expressly sought testimony from Mr. Jones that his complaint related to merchandising and not telecast rights. Trial Transcript 1576:24-1577:4. It is not proper for Defendants to introduce the subject of the lawsuit, ask Mr. Jones to testify about its nature, and then seek an instruction to disregard his testimony. The evidence is in the record, and the jury can weigh it. Defendants also did not object to the publication to the jury of the complaint. Trial Transcript 1588:24-1589:3. Defendants never objected to any question during the cross-examination of Mr. Jones regarding his lawsuit, except in one instance when Defendants objected to a question as being asked and answered and argumentative – an objection the Court overruled. Trial Transcript 1589-1608; Trial Transcript sole objection at 1605:6-8. Defendants cannot seek an instruction as to testimony they elicited and to which they did not further object. *See Torres v. Johnson Lines*, No. CIV. 85-3513-RJK, 1989 WL 87085, at *2 (C.D. Cal. Feb. 21, 1989), aff'd, 932 F.2d 748 (9th Cir. 1991) ("A party may not complain about the introduction of evidence where he himself opens the door. … Having opened the door to a subject, a party

1  'open[s] the door to a full and not just a selective development of that subject.'")
2  (citing *United States v. Helina*, 549 F.2d 713, 719 (9th Cir.1977)).[2]

---

[2] These principles are also reflected in the Federal Rules of Evidence and Civil Procedure. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."); Fed. R. Civ. P. 32(a)(6)("If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts.").

# DEFENDANTS' ARGUMENT IN SUPPORT OF DEFENDANTS' DISPUTED INSTRUCTION NO. 33.2: UNRELATED LAWSUITS

Plaintiffs' attempts at establishing the relevance of the lawsuit ignore this Court's clear explanation that "merchandising is not media." 06/18/2024 Trial Tr. at 19. And their arguments as to "competitive balance" ignore Mr. Jones's testimony that his lawsuit did *not* challenge the pooling of telecast revenues, because that equal revenue sharing was necessary to maintain competition and grow the league's fan base. 06/18 Tr. 1644:13–23. Plaintiffs' arguments do nothing to overcome the Court's conclusion that the *Dallas Cowboys* suit "has nothing to do with this case." 06/18/2024 Trial Tr. at 18. Defendants therefore request an instruction to the Jury reflecting this conclusion.

Plaintiffs also do not identify any legal error in the instruction that Defendants request. Giving the instruction is thus well within the Court's "substantial latitude in tailoring jury instructions." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 917 (9th Cir. 2008) (quoting *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1051 (9th Cir.1998)).

Plaintiffs assert that Defendants "waived" their right to seek an instruction by eliciting, on direct examination, a brief explanation from Mr. Jones as to why that prior lawsuit is not relevant to this case. But the cases on which they rely relate to admissibility, and Defendants are not seeking to exclude or strike any evidence in the record. Moreover, nothing in Mr. Jones's testimony justified Plaintiffs' extensive cross examination as to the specific allegations in the Cowboys' complaint, which this Court properly noted had at least the potential to "prejudice the jury." Defendants appropriately seek a curative instruction to ameliorate the risk of such prejudice.

Dated: June 21, 2024

Respectfully submitted,

/s/ *Beth A. Wilkinson*

Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*