FILED
CLERK, U.S. DISTRICT COURT

JUN 2 7 2024

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No. 2:15-ml-02668-PSG (SKx) |
| | **JURY INSTRUCTIONS** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## COURT'S INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

# COURT'S INSTRUCTION NO. 2

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

2

**COURT'S INSTRUCTION NO. 3**

You should decide the case as to each Plaintiff and each Defendant separately. Unless otherwise stated, the instructions apply to all parties.

3

## COURT'S INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I have instructed you to accept as proved.

4

# COURT'S INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5

# COURT'S INSTRUCTION NO. 6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# COURT'S INSTRUCTION NO. 7

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the question was answered or the exhibit was received. If I sustained the objection, the question was not answered, and the exhibit was not received. Whenever I sustained an objection to a question, you were to ignore the question and were not to guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Case No. 2:15-ml-02668-PSG (SKx)                                              Jury Instructions

# COURT'S INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses may have given different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses

1   were, and how much weight you think their testimony deserves.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1

## COURT'S INSTRUCTION NO. 9

2      Certain documents have been admitted into evidence only for the limited

3 purpose of assessing the credibility of certain deposition testimony that has been

4 played by video.

5      Those documents are: TX0457; TX0536; TX0612; TX0618; TX0771;

6 TX0772; TX0775; TX0777; TX0779; TX0780; TX0787; TX0799; TX0800;

7 TX0801; TX0802; TX0805; TX0806; TX0808; TX0810; TX0818; TX0822; and

8 TX0830.

9      These documents may be considered in deciding whether or not to believe

10 the video deposition testimony contradicted by such documents and how much

11 weight to give to such testimony. Those documents may not be used or considered

12 for any other purpose.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

**COURT'S INSTRUCTION NO. 10**

You have heard testimony from experts who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

11

# COURT'S INSTRUCTION NO. 11

Certain charts and summaries may have been shown to you or admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Case No. 2:15-ml-02668-PSG (SKx)                                                    Jury Instructions

# COURT'S INSTRUCTION NO. 12

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT'S INSTRUCTION NO. 13

In 1961, Congress passed a statute, called the Sports Broadcasting Act, that provides that it is not a violation of the antitrust laws for a professional sports league to sell all or part of the telecast rights of its member teams to over-the-air networks like CBS and FOX.  Agreements involving or affecting the telecasting of games on cable or satellite TV are not included in the SBA, and must be analyzed separately.

14

**COURT'S INSTRUCTION NO. 14**

Plaintiffs allege two claims.

1. First, they allege that the NFL, the NFL Teams, and DirecTV entered into a conspiracy that unreasonably restrained trade in the alleged market for professional football telecasts in violation of Section 1 of the Sherman Act.

2. Second, they allege that the NFL, the NFL Teams, and DirecTV conspired to monopolize the alleged market for professional football telecasts in the United States, in violation of Section 2 of the Sherman Act.

I will now explain what Plaintiffs must establish by a preponderance of the evidence for each of their claims against Defendants.

15

# COURT'S INSTRUCTION NO. 15

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following:

(1) the existence of a contract, combination, or conspiracy between or among the NFL, the NFL Teams, and DirecTV;

(2) that the contract, combination, or conspiracy unreasonably restrained trade; and

(3) that the restraint caused Plaintiffs to suffer an injury to their business or property.

16

# COURT'S INSTRUCTION NO. 16

Plaintiffs allege that Defendants participated in a conspiracy to restrain competition in the market for professional football telecasts in the United States. A conspiracy is an agreement or understanding between two or more persons to restrain competition in the market for professional football telecasts in the United States.

Plaintiff must prove both of the following elements by a preponderance of the evidence:

(1) that the alleged conspiracy existed; and

(2) that defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor

17

is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to unreasonably restrain trade in the relevant antitrust market for professional football telecasts in the United States that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

# COURT'S INSTRUCTION NO. 17

You have heard evidence and argument throughout trial regarding the nflsundayticket.TV product (sometimes referred to as just ".TV" or as the broadband or whitespace product). You are not being asked to determine whether the agreements that created the .TV product unreasonably restrained trade. The parties agree that purchases of the .TV product are not at issue in this case. Instead, the members of the class in this case are only those people and businesses that purchased the Sunday Ticket product available on satellite television.

19

## COURT'S INSTRUCTION NO. 18

Each team, the NFL itself, DirecTV, and the television networks are all corporate entities.

Under the law, a corporate entity is a person, but it acts only through its agents. A corporate entity's agents include its directors, officers, employees, or others acting on its behalf. Through its agents, however, a corporate entity is capable of conspiring with other persons or independent corporate entities.

A corporate entity is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

The fact that a corporate entity has instructed its agents not to violate the antitrust laws does not excuse the corporate entity from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporate entity is entitled to the same fair trial as a private individual. The acts of a corporate entity are to be judged by the same standard as the acts of a private individual, and you may hold a corporate entity liable only if such liability is established by a preponderance of the evidence. All persons, including corporate entities, are equal before the law.

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COURT'S INSTRUCTION NO. 19

You may not consider, for any purpose, the fact that DirecTV, CBS, or FOX are not appearing as Defendants in this case.

21

## COURT'S INSTRUCTION NO. 20

Before you can find that the NFL, the NFL Teams, and DirecTV were members of the conspiracy alleged by Plaintiffs, the evidence must show that that they each knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the unlawful purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator. A conspiracy exists even though a member participates in the conspiracy only under coercion.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether the NFL, the NFL Teams, or DirecTV were members of the alleged conspiracy, you should consider only the evidence about that particular entity's statements and conduct, including any evidence of its knowledge and participation in the events involved and any other evidence of that particular entity's participation in the conspiracy alleged.

You may not find that an entity was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether an entity was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the

22

**COURT'S INSTRUCTION NO. 21**

Section 1 of the Sherman Act only applies to conspiracies between two or more persons. Under Section 1 of the Sherman Act, separate persons or corporations may be treated as a single person, known as a "single entity," for specific purposes. If separate persons or corporations are a single entity for a particular purpose, then they cannot conspire with each other.

The parties dispute whether the NFL and the NFL Teams constitute a single entity for the purpose of producing and licensing telecasts of NFL football games. It is for you to determine, on the basis of all the facts and circumstances, whether the NFL and the NFL Teams constitute a single entity for this purpose.

To determine whether the NFL and NFL Teams are a single entity for purposes of producing and licensing NFL telecasts, you must decide if it is possible for the NFL Teams to produce and license telecast on their own. If Plaintiffs prove that it is possible for the NFL Teams to produce and license telecast on their own, then the NFL and NFL Teams are not a single entity for that purpose.

# COURT'S INSTRUCTION NO. 22

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraints challenged here were unreasonable, by applying the rule of reason.  The rule of reason has four steps.

First, you must determine whether Plaintiffs have proven that the challenged restraints have resulted in a substantial harm to competition in a relevant product and geographic market. In making this determination, you must look at how the various alleged agreements work together to actually impact competition.

Second, if you find Plaintiffs have proven that the challenged restraint results in a substantial harm to competition in a relevant market, Defendants may then come forward with evidence that the restraint produces countervailing competitive benefits.

Third, if Defendants make that showing, then the burden shifts back to Plaintiffs to rebut those claimed procompetitive benefits or rationales or to show that any procompetitive benefits or rationales could have been reasonably achieved in a substantially less restrictive manner. The challenged restraints are illegal under Section 1 of the Sherman Act if you find that these countervailing procompetitive benefits could reasonably have been achieved in a less restrictive manner.

Fourth, if you find that Plaintiffs have not proven that these same countervailing procompetitive benefits could reasonably have been achieved in a less restrictive manner, then you must balance the competitive harm against the competitive benefits of the restraints. The challenged restraints are illegal under Section 1 of the Sherman Act only if you find the anticompetitive harm outweighs the procompetitive benefits from those restraints.

I will now review each step of the analysis in more detail.

Jury Instructions

## COURT'S INSTRUCTION NO. 23

To meet their burden under the first step of the rule of reason, Plaintiffs must demonstrate that the restraint has resulted in a substantial harm to competition in the alleged relevant market.

Although it may be relevant to the inquiry, harm that occurs merely to the individual business of a Plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.

Plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. To prove harm to competition indirectly, it is Plaintiffs' burden to prove the existence of a relevant market. Plaintiffs allege that the relevant market is the market for professional football telecasts in the United States.

If you find that Plaintiffs have proven the existence of a relevant market, then you must determine whether Plaintiffs also have proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in higher prices, decreased output, or lower product quality in the relevant market. If the challenged conduct did not result in higher prices, decreased output, or lower quality in the relevant market, then there was no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm in that market, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;
- the purpose and nature of the restraint;

26

- the nature and structure of the relevant antitrust market;
- the number of competitors in the relevant antitrust market and the level of competition among them, both before and after the restraint was imposed; and
- whether Defendants possessed market power in the relevant antitrust market.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power.

1

**COURT'S INSTRUCTION NO. 24**

2        If you find that Plaintiffs have proven that any of the challenged restraints

3   resulted in substantial harm to competition in a relevant market, then you next must

4   determine whether the restraint also benefits competition in other ways. A

5   procompetitive rationale is a non-pretextual claim that Defendants' conduct is

6   indeed a form of competition on the merits because it involves, for example, greater

7   efficiency or enhanced consumer appeal.  Defendants bear the burden of producing

8   evidence regarding the existence of competitive benefits.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COURT'S INSTRUCTION NO. 25**

If you find that Defendants proved that their conduct had procompetitive benefits or rationales, then you should turn to the third step in the rule of reason framework, in which you must assess whether Plaintiffs have rebutted the procompetitive benefits or rationales or shown that those benefits or rationales could have been achieved through substantially less anticompetitive means.

Any alternative presented by Plaintiffs must be a substantially, not marginally, less restrictive means for achieving the same procompetitive rationales. The alternative must also be virtually as effective in serving the Defendants' procompetitive purposes without significantly increased cost.

If Plaintiffs rebut the procompetitive rationales or show that they could have been achieved through substantially less restrictive means, they have established an unreasonable restraint of trade.

## COURT'S INSTRUCTION NO. 26

If you find that the challenged restraints resulted in procompetitive benefits in the relevant market that could not have been achieved through substantially less restrictive means, then you must balance those procompetitive benefits against the anticompetitive harms resulting from the same restraints.

If the anticompetitive harm outweighed the procompetitive benefits, then the challenged restraints are unreasonable. If the anticompetitive harm did not outweigh the procompetitive benefits, then the challenged restraints are reasonable. In conducting this analysis, you must consider the benefits and harms to competition and consumers in the market as a whole, not just to a single competitor or group of competitors. Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct outweighed any procompetitive benefits that could not have been achieved through substantially less restrictive alternatives.

## COURT'S INSTRUCTION NO. 27

Your role as jurors in this case is not to determine whether the price of the Sunday Ticket package is reasonable. Your duty is instead to apply the rule of reason to the conduct being challenged in this case.

1

## COURT'S INSTRUCTION NO. 28

2   The Sherman Act applies only to conduct that affects interstate or foreign

3 commerce. You are instructed that Defendants' conduct affected interstate

4 commerce.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32

# COURT'S INSTRUCTION NO. 29

The complaint also alleges a conspiracy to monopolize in violation of Section 2 of the Sherman Act, which declares unlawful every conspiracy to monopolize interstate commerce.

To prevail against Defendants on their claim of conspiracy to monopolize, Plaintiffs must prove, by a preponderance of the evidence as to each Defendant, each of the following elements:

(1) two or more persons knowingly entered into an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in telecasts of professional football;

(2) Defendants specifically intended that one of the parties to the agreement would obtain or maintain monopoly power in telecasts of professional football;

(3) Defendants committed an overt act in furtherance of the conspiracy; and

(4) Plaintiffs were injured in its business or property because of the conspiracy to monopolize.

If you find that the evidence is insufficient to prove any one or more of these elements as to a Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' conspiracy to monopolize claim. If you find that the evidence is sufficient to prove each element as to a Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' conspiracy to monopolize claim.

**COURT'S INSTRUCTION NO. 30**

I previously read you Instruction Number 16 regarding the existence of a conspiracy under Section 1 of the Sherman Act. This instruction applies equally to Plaintiffs' claim of a conspiracy to monopolize under Section 2 of the Sherman Act.

# COURT'S INSTRUCTION NO. 31

To prove their conspiracy to monopolize claim, Plaintiffs must prove that the purpose of the conspiracy was that one of the parties to the agreement would obtain or maintain monopoly power in the market for professional football telecasts.

Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. However, possession of monopoly power, in and of itself, is not unlawful.

# COURT'S INSTRUCTION NO. 32

Plaintiffs must prove by a preponderance of the evidence that Defendants' agreement sought to obtain or maintain monopoly power in the relevant market. Defining the relevant market is essential because you are required to make a judgment about whether Defendants sought to obtain or maintain monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain Defendants' freedom to set prices for or to restrict the production level of professional football telecasts in the United States.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on Defendants' intent to set prices as they please because customers could switch to them if Defendants set their own prices somewhat higher. All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether Plaintiffs have met their burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market. The second is the relevant geographic market.

## COURT'S INSTRUCTION NO. 33

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and sustained increase in price is approximately a 5 percent increase in price above competitive levels not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just give you, you may also consider:

37

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either industry or the public as to whether the products are in separate markets;
- the views of Plaintiffs and Defendants regarding who their respective competitors are; and
- the existence or absence of different customer groups or distribution channels.

In this case, Plaintiffs contend that the relevant product market is professional football telecasts. By contrast, Defendants contend that Plaintiffs have failed to allege the proper relevant product market. If you find that Plaintiffs have proven a relevant product market, then you should continue to evaluate the remainder of Plaintiffs' Section 2 claim. However, if you find that Plaintiffs have failed to prove such a market, then you must find in Defendants' favor on Plaintiffs' Section 2 claim.

1

## COURT'S INSTRUCTION NO. 34

2      Regarding the relevant geographic market, the parties agree that the relevant

3 geographic market in this case is the United States.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

39

# COURT'S INSTRUCTION NO. 35

If you determine that there was an agreement among Defendants to monopolize the market for telecasts of professional football games, you must then decide, as to each defendant, whether Plaintiffs have proven that that Defendants had specifically intended that one of the members of the conspiracy would acquire or maintain monopoly power in the market for telecasts of professional football games. In other words, you must decide whether the evidence shows that Defendants entered into the agreement with the conscious aim of using anticompetitive conduct to acquire or maintain the power to control prices and exclude competition in the market for telecasts of professional football games. Neither proof of use of the power to exclude, nor proof of actual exclusion of existing or potential competitors, is essential to sustain the charge of conspiracy to monopolize.

There are several ways in which Plaintiffs may prove that a defendant had the specific intent to monopolize. There may be evidence of direct statements of a defendant's intent to use anticompetitive means to acquire monopoly power in the market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of a defendant at about the time of the agreement or by testimony concerning statements of responsible officers or employees of a defendant. However, you should be careful to distinguish between a lawful intent to compete vigorously, which may be accompanied by aggressive language, and a specific intent to monopolize by using anticompetitive conduct.

Even if you decide that the evidence does not prove directly that a defendant actually intended to exercise monopoly power by using anticompetitive conduct, specific intent may be inferred from what a defendant did. For example, if the evidence shows that the natural and probable consequence of the agreement or of the conduct of the parties to the agreement was to exclude or destroy competition in

40

the market for telecasts of professional football games, that there was no legitimate business justification but the destruction or damage to competition, and that this was plainly foreseeable by a defendant, then you may (but are not required to) infer that the defendant specifically intended to acquire monopoly power by using anticompetitive conduct.

In determining whether each defendant had a specific intent to monopolize, you should take into consideration the extent of competition all Defendants would face from producers of identical or equivalent goods and whether they had or probably could have acquired sufficient power, acting together as a group, to control prices in and to exclude competition from the market for telecasts of professional football games. If you find that it is unlikely that Defendants could have achieved the power to exclude competition from an appreciable segment of commerce, then you may consider this as circumstantial evidence that none of them had the required specific intent to monopolize.

# COURT'S INSTRUCTION NO. 36

Instruction No. 28 I read you previously regarding interstate commerce under Section 1 of the Sherman Act apply equally to Plaintiffs' claim of a conspiracy to monopolize under Section 2 of the Sherman Act.

## COURT'S INSTRUCTION NO. 37

If you find that Defendants have violated Sections 1 and/or 2 of the Sherman Act, then you must decide if Plaintiffs are entitled to recover damages from Defendants.

Plaintiffs are entitled to recover damages for an injury to its business or property if they can establish three elements of injury and causation:

(1)   Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws;

(2)   Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and

(3)   Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Defendants' alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by Defendants' alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that the fact of injury and the amount of damages are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violation, and not some other cause.

43

1   Plaintiffs are not required to prove that Defendants' alleged antitrust violation was
2   the sole cause of their injury; nor need Plaintiffs eliminate all other possible causes
3   of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was
4   a material cause of their injury.

5       Finally, Plaintiffs must establish that their injury is the type of injury that the
6   antitrust laws were intended to prevent. This is sometimes referred to as "antitrust
7   injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that
8   would lead to a reduction in competition, or acts that would otherwise harm
9   consumers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if
10  Plaintiffs' injuries were caused by heightened competition, the competitive process
11  itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not
12  antitrust injuries and Plaintiffs may not recover damages for those injuries under the
13  antitrust laws.

14      In summary, if Plaintiffs can establish that they were in fact injured by
15  Defendants' conduct, that Defendants' conduct was a material cause of Plaintiffs'
16  injury, and that Plaintiffs' injury was the type that the antitrust laws were intended to
17  prevent, then Plaintiffs are entitled to recover damages for the injury to their business
18  or property.

19
20
21
22
23
24
25
26
27
28

                **Jury Instructions**

**COURT'S INSTRUCTION NO. 38**

Plaintiffs must establish that the injury they claim to have suffered was an injury to their businesses or property. The term "business" includes any commercial interest or venture. Plaintiffs have been injured in their businesses if you find that they have suffered injury to any of their commercial interests or enterprises as a result of Defendants' alleged antitrust violation. The term property includes anything of value Plaintiffs own, possess, or in which Plaintiffs have a protectable legal interest. Plaintiffs have been injured in their property if you find that anything of value that they own, possess, or have a legal interest in has been damaged as a result of Defendants' alleged antitrust violation. Plaintiffs have been injured in their property if you find that they have paid an inflated price for goods, services, any legal interest of value, or have lost money as a result of Defendants' alleged antitrust violation.

## COURT'S INSTRUCTION NO. 39

If you find that Defendants violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover. The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case. If you reach a verdict for Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages— or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

Case No. 2:15-ml-02668-PSG (SKx)                                          Jury Instructions

**COURT'S INSTRUCTION NO. 40**

You are permitted to make just and reasonable estimates in calculating Plaintiffs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages, or you may award nominal damages, not to exceed one dollar.

47

1

2

3

4

5

6

7

## COURT'S INSTRUCTION NO. 41

If you have determined that there was an unlawful agreement among competitors to restrict output that caused some injury to Plaintiffs, you must now determine the amount of damages to award to Plaintiffs. The proper way to calculate those damages is to determine the difference between the prices Plaintiffs actually paid for Sunday Ticket and the prices Plaintiffs would have paid had there been, no agreement to restrict output. This is referred to as the overcharge.

## COURT'S INSTRUCTION NO. 42

Plaintiffs Mucky Duck and Gael Pub are seeking to recover damages on behalf of a class of purchasers that includes all DirecTV commercial subscribers that purchased the NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time between June 17, 2011 and February 7, 2023.

Plaintiffs Lippincott and Frantz are seeking to recover damages on behalf of a class of purchasers that includes all DirecTV residential subscribers that purchased the NFL Sunday Ticket from DirecTV, or its subsidiaries, at any time between June 17, 2011 and February 7, 2023.

To award damages for a class, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision. It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

## COURT'S INSTRUCTION NO. 43

Plaintiffs can recover damages only if they made a purchase directly from a participant in an unlawful conspiracy.  Because Plaintiffs purchased subscriptions to Sunday Ticket from DirecTV, you may award damages only if you conclude that DirecTV participated in an unlawful conspiracy.

50

# COURT'S INSTRUCTION NO. 44

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## COURT'S INSTRUCTION NO. 45

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media,

1    turn away and report it to me as soon as possible.

2        These rules protect each party's right to have this case decided only on

3    evidence that has been presented here in court. Witnesses here in court take an oath

4    to tell the truth, and the accuracy of their testimony is tested through the trial

5    process. If you do any research or investigation outside the courtroom, or gain any

6    information through improper communications, then your verdict may be

7    influenced by inaccurate, incomplete, or misleading information that has not been

8    tested by the trial process. Each of the parties is entitled to a fair trial by an

9    impartial jury, and if you decide the case based on information not presented in

10   court, you will have denied the parties a fair trial. Remember, you have taken an

11   oath to follow the rules, and it is very important that you follow these rules.

12       A juror who violates these restrictions jeopardizes the fairness of these

13   proceedings. If any juror is exposed to any outside information, please notify the

14   court immediately.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:15-ml-02668-PSG (SKx)                                              **Jury Instructions**

**COURT'S INSTRUCTION NO. 46**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Case No. 2:15-ml-02668-PSG (SKx)                                               Jury Instructions

## COURT'S INSTRUCTION NO. 47

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.