Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx)<br><br>**NFL DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL**<br><br>Judge: Hon. Philip S. Gutierrez<br>Hearing Date: July 31, 2024<br>Courtroom: First Street Courthouse<br>      350 West 1st Street<br>      Courtroom 6A<br>      Los Angeles, CA 90012 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Philip S. Gutierrez, Chief United States District Judge, Courtroom 6A, United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, the NFL Defendants[1] will, and hereby do, renew their motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, and, in the alternative, move for a new trial or decertification of the class. This supplemental motion incorporates all arguments made in Defendants' initial motion for judgment as a matter of law, ECF No. 1456.

Expanding on and adding to all arguments made in Defendants' motion under Rule 50(a), Defendants seek a ruling under Federal Rule of Civil Procedure 50(b) that (A) the jury's irrational damages award confirms that Plaintiffs failed to offer viable proof of anticompetitive effects, impact, or damages; (B) Plaintiffs relied on an untimely and legally improper theory of "price-fixing"; (C) Plaintiffs relied on an improper application of the rule of reason; and (D) Plaintiffs did not present a legally sufficient basis for any reasonable jury to find that Plaintiffs met their burden of showing that (i) their proffered experts were reliable under Rule 702 or that the experts' testimony was sufficient to sustain a verdict, (ii) Defendants conspired to monopolize in violation of Section 2 of the Sherman Act, (iii) Plaintiffs' "college football" but-for world proved anticompetitive effects in any relevant market or constituted a substantially less restrictive alternative to the NFL's

---

[1] The NFL Defendants consist of: Arizona Cardinals Football Club, LLC.; Atlanta Falcons Football Club, LLC; Baltimore Ravens Limited Partnership; Buffalo Bills, LLC; Panthers Football, LLC; The Chicago Bears Football Club, Inc.; Cincinnati Bengals, Inc.; Cleveland Browns Football Company LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos Team, LLC; The Detroit Lions, Inc.; Green Bay Packers, Inc.; Houston NFL Holdings, L.P.; Indianapolis Colts, Inc.; Jacksonville Jaguars, LLC.; Kansas City Chiefs Football Club, Inc.; Miami Dolphins, Ltd.; Minnesota Vikings Football, LLC; National Football League, Inc; NFL Enterprises LLC; New England Patriots LLC; New Orleans Louisiana Saints, LLC; New York Football Giants, Inc.; New York Jets LLC.; Raiders Football Club, LLC; Philadelphia Eagles, LLC; Pittsburgh Steelers LLC.; Chargers Football Company, LLC; Forty Niners Football Company LLC; Football Northwest LLC; The Los Angeles Rams, LLC; Buccaneers Team LLC; Tennessee Football, LLC.; and Pro-Football LLC.

i

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A Matter Of Law Or For A New Trial

procompetitive telecasting arrangement, (iv) the NFL Defendants are capable of "concerted action" under the Sherman Act, (v) Plaintiffs' "multiple distributor" but-for world proved anticompetitive effects in any relevant market or constituted a substantially less restrictive alternative to the NFL's procompetitive telecasting arrangement, (vi) injury or damages occurred on a class-wide basis, (vii) the commercial class suffered injury or damages, or (viii) Plaintiffs even *could* recover as a matter of law, in light of the bars on their claims under *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), and the Sports Broadcasting Act ("SBA"), 15 U.S.C. § 1291.

For the reasons included in the prior motion and in this supplemental motion, Defendants also move conditionally or in the alternative for a new trial under Federal Rule of Civil Procedure 59, as (A) Plaintiffs relied on an untimely and improper theory of "price-fixing"; (B) Plaintiffs relied on an improper application of the rule of reason; (C) instructional errors resulted in an improper jury verdict; (D) Defendants were prejudiced by the introduction of inadmissible evidence, including improper impeachment, rebuttal testimony, and evidence of prior litigation against the NFL; (E) the jury's irrational verdict was against the clear weight of the evidence, including because (i) Plaintiffs failed to prove the existence of a relevant market, (ii) Plaintiffs failed to prove that Defendants are not a single entity for the purposes of producing and licensing telecasts, (iii) Plaintiffs failed to demonstrate anticompetitive effects of the challenged conduct, (iv) Plaintiffs did not offer any *viable* less restrictive alternatives, as indicated by the jury's rejection of their only proffered less restrictive alternatives, (v) Defendants' pooling activities were protected by the SBA, and (vi) Plaintiffs failed to prove the existence of the *overarching* conspiracy they have repeatedly contended was the basis for this suit; and (F) the jury was improperly tainted by a biased juror.

In the alternative, and as explained further in this supplemental motion, Defendants move to remit or reduce the irrational and improper damages award to nominal damages of $1, and/or to decertify the class based on Plaintiffs' failure to introduce valid classwide proof.

Plaintiffs have been fully heard and have not presented legally sufficient evidence to find in their favor on any of these issues. In the alternative, the clear weight of the evidence is against a finding for Plaintiffs. Defendants' motions are based upon this notice of motion and motion, the prior notice of motion and motion, ECF No. 1456, the concurrently filed memoranda of points and authorities, all pleadings on file in this matter, all testimony and evidence at trial, any argument that may be presented to the Court on this motion, and such other matters as the Court deems appropriate.

| | |
|---|---|
| 1 | Dated: July 3, 2024 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

Dated: July 3, 2024

Respectfully submitted,

/s/ *Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

iv

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 2

ARGUMENT .............................................................................................................. 4

    I.    The Jury's Verdict On Damages Confirms That A Rule 50 Judgment Is Appropriate. ........................................................................................... 4

        A.    The jury's damages calculations confirm that Plaintiffs' experts failed to offer reliable or admissible analysis. .................................. 5

        B.    The jury's irrational calculations reflect speculation and guesswork and require setting aside the verdict. ................................. 6

        C.    The jury's calculations confirm that Plaintiffs lack reliable proof of classwide injury. ........................................................... 9

    II.    The Court Should Grant Judgment As A Matter Of Law Or A New Trial Based On Plaintiffs' Untimely And Improper "Price-Fixing" Theory ................................................................................................... 10

    III.    The Court Should Grant Judgment AS A MATTER OF LAW Or A New Trial Based On The Misapplication Of The Rule Of Reason. ............. 16

    IV.    In The Alternative, Defendants Are Entitled To A New Trial. .................... 18

        A.    A new trial is necessary based on instructional errors, including the Court's failure to instruct the jury on Plaintiffs' burden to prove classwide injury. ............................................................... 18

        B.    The erroneous admission of prejudicial and inadmissible evidence warrants a new trial. .......................................................... 19

            1.    The jury should not have been permitted to hear improper rebuttal testimony from Einer Elhauge. ...................................... 19

            2.    The jury should not have been permitted to consider evidence of prior litigation against the NFL. ............................ 21

         C.    The jury's verdict is against the clear weight of the evidence. ........... 22

            1.    The irrationality of the jury's award warrants a new trial. ....... 23

i

2. The inability to rely on Plaintiffs' experts warrants a new trial. ....................................................................... 23

3. Additional bases for judgment at least warrant a new trial. ....................................................................... 23

V. Defendants Are Entitled To A New Trial Based On Juror Partiality. .......... 24

CONCLUSION ............................................................................... 25

ii

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A
                                                     Matter Of Law Or For A New Trial

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuan v. Gen. Elec. Co.*,
3 F.3d 329 (9th Cir. 1993)........................................................................18

*Arroyo v. Volvo Grp. N. Am. LLC*,
2022 WL 17960686 (N.D. Ill. Dec. 27, 2022)............................................23

*B&H Med., L.L.C. v. ABP Admin., Inc.*,
526 F.3d 257 (6th Cir. 2008)......................................................................11

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005)......................................................................18

*Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, L.P.*,
768 F. App'x 776 (9th Cir. 2019) ...............................................................19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................9, 12

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ......................................................................2

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1983)....................................................................................23

*Cook v. County of Los Angeles*,
2022 WL 1470574 (C.D. Cal. Mar. 21, 2022) ...........................................19

*Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*,
830 F.3d 18 (1st Cir. 2016).....................................................................3, 23

*Coughlin v. Tailhook Ass'n*,
112 F.3d 1052 (9th Cir. 1997) ....................................................................24

*Darbin v. Nourse*,
664 F.2d 1109 (9th Cir. 1981) ....................................................................25

*DCD Partners, LLC v. Transam. Life Ins. Co.*,
2018 WL 3770030 (C.D. Cal. Aug. 1, 2018)..............................................13

*Engquist v. Or. Dep't of Agric.*,
   478 F.3d 985 (9th Cir. 2007).............................................................................22

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ..............................................................16, 17, 24

*Est. of Casillas v. City of Fresno*,
   2019 WL 2869079 (E.D. Cal. July 3, 2019) ...................................................25

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
   762 F.3d 829 (9th Cir. 2014)...............................................................3, 22, 23

*Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*,
   243 F.3d 980 (6th Cir. 2001)...................................................................2, 6, 8

*Fed. Trade Comm'n v. Qualcomm*,
   969 F.3d 974 (9th Cir. 2020)..........................................................................16

*Fisher v. Smith*,
   2009 WL 10698910 (C.D. Cal. Mar. 25, 2009) ............................................14

*Gladhill v. Gen. Motors Corp.*,
   743 F.2d 1049 (4th Cir. 1984) .......................................................................25

*Grace v. Apple, Inc.*,
   2020 WL 227404 (N.D. Cal. Jan. 15, 2020)..................................................22

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004).........................................................................21

*Hatami v. Kia Motors Am., Inc.*,
   2010 WL 11475044 (C.D. Cal. July 7, 2010) ...............................................23

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
   442 F. Supp. 3d 1329 (D. Or. 2020) ...............................................................3

*Ill. Brick v. Illinois*,
   431 U.S. 720 (1977).......................................................................................24

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)........................................................................6, 8

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) ...............................................................11, 24

iv

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ..........................................9, 11, 12

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
2024 WL 168298 (C.D. Cal. Jan. 11, 2024) ..............................................11

*In re Nexium (Esomeprazole) Antitrust Litig.*,
842 F.3d 34 (1st Cir. 2016) ..................................................................20

*In re Prempro Prods. Liab. Litig.*,
586 F.3d 547 (8th Cir. 2009) ..................................................................6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ..............................................................3, 9

*In re Toy Asbestos*,
2021 WL 1056552 (N.D. Cal. Mar. 19, 2021) ............................................19

*Kenney v. Lawrence*,
2018 WL 2461491 (S.D. Cal. May 31, 2018)..............................................22

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974)..................................................................18

*Kode v. Carlson*,
596 F.3d 608 (9th Cir. 2010)..................................................................22

*L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*,
2024 WL 2272384, at (C.D. Cal. May 20, 2024) ..............................3, 18, 19

*Lillie v. ManTech Int'l Corp.*,
2019 WL 3387732 (C.D. Cal. July 26, 2019)................................................3

*Litton Sys., Inc. v. Honeywell, Inc.*,
1996 WL 634213 (C.D. Cal. July 24, 1996)..................................................3

*Mazzei v. The Money Store*,
829 F.3d 260 (2d Cir. 2016)....................................................................9

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007)..................................................................22

*Munoz v. PHH Mortg. Corp.*,
2022 WL 88497 (E.D. Cal. Jan. 7, 2022) ..................................................22

v

*Murphy v. City of Long Beach*,
914 F.2d 183 (9th Cir. 1990) ................................................................ 3, 18, 19

*Obsidian Fin. Grp., LLC v. Cox*,
740 F.3d 1284 (9th Cir. 2014) ..................................................................... 18

*Oliver v. Ralphs Grocery Co.*,
654 F.3d 903 (9th Cir. 2011) ....................................................................... 11

*Olsen v. CBS Musical Instruments*,
1982 WL 1876 (D. Utah July 22, 1982) ...................................................... 13

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
20 F.4th 466 (9th Cir. 2021) ....................................................................... 13

*Ormco Corp. v. Align Tech., Inc.*,
2009 WL 10668458 (C.D. Cal. May 12, 2009) ........................................... 22

*Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*,
732 F. App'x 532 (9th Cir. 2018) ................................................................... 4

*Parrish v. Nat'l Football League Players Ass'n*,
534 F. Supp. 2d 1081 (N.D. Cal. 2007) ...................................................... 24

*Perez v. State Farm Mut. Auto. Ins. Co.*,
291 F.R.D. 425 (N.D. Cal. 2013) ................................................................ 11

*Perez v. State Farm Mut. Auto. Ins. Co.*,
628 F. App'x 534 (9th Cir. 2016) ................................................................ 13

*Prendeville v. Singer*,
155 F. App'x 303 (9th Cir. 2005) ............................................................. 3, 23

*Rex Med. v. Intuitive Surgical, Inc.*,
2023 WL 6142254 (D. Del. Sept. 20, 2023) .................................................. 8

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................... 9

*Ruvalcaba v. City of Los Angeles*,
64 F.3d 1323 (9th Cir. 1995) ...................................................................... 19

*Smart Mktg. Grp. v. Publ'ns Int'l Ltd.*,
624 F.3d 824 (7th Cir. 2010) ......................................................................... 3

vi

*Smith for J.L. v. L.A. Unified Sch. Dist.*,
  2018 WL 6137133 (C.D. Cal. Feb. 13, 2018) ............................................... 15

*Stallworth v. Nike Retail Servs., Inc.*,
  2021 WL 6618781 (C.D. Cal. Dec. 1, 2021) ................................................. 19

*Stastny v. S. Bell Tel. & Tel. Co.*,
  628 F.2d 267 (4th Cir. 1980) ....................................................................... 10

*Tercero v. Texas Southmost Coll. Dist.*,
  989 F.3d 291 (5th Cir. 2021) .......................................................................... 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................. 9, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ..................................................................................... 19

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  686 F. App'x 422 (9th Cir. 2017) ................................................................. 22

*United Farmers Agents Ass'n v. Farmers Ins. Exch.*,
  89 F.3d 233 (5th Cir. 1996) .......................................................................... 23

*United States v. Bao*,
  189 F.3d 860 (9th Cir. 1999) ........................................................................ 15

*United States v. Clark*,
  617 F.2d 180 (9th Cir. 1980) ........................................................................ 20

*United States v. Crouch*,
  731 F.2d 621 (9th Cir. 1984) ........................................................................ 14

*United States v. Finley*,
  934 F.2d 837 (7th Cir. 1991) ........................................................................ 14

*United States v. Gilbert*,
  57 F.3d 709 (9th Cir. 1995) .......................................................................... 14

*United States v. Gomez-Gallardo*,
  915 F.2d 553 (9th Cir. 1990) ........................................................................ 14

*United States v. Gonzalez*,
  214 F.3d 1109 (9th Cir. 2000) ...................................................................... 25

vii

*United States v. Hirokawa*,
  342 F. App'x 242 (9th Cir. 2009) .............................................................20

*United States v. J-M Mfg. Co.*,
  2020 WL 4196880 (C.D. Cal. June 5, 2020) ...........................................3, 4

*United States v. Martinez-Salazar*,
  528 U.S. 304 (2000).................................................................................25

*United States v. Miller*,
  546 F. App'x 709 (9th Cir. 2013) .............................................................14

*United States v. Olsen*,
  704 F.3d 1172 (9th Cir. 2013)..................................................................24

*United States v. Saada*,
  212 F.3d 210 (3d Cir. 2000).....................................................................14

*United States v. Sine*,
  493 F.3d 1021 (9th Cir. 2007)..................................................................22

*Wells Real Est., Inc. v. Greater Lowell Bd. of Realtors*,
  850 F.2d 803 (1st Cir. 1988) ..................................................................6, 8

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002)......................................................................3

**Rules**

Fed. R. Civ. P. 50 ..............................................................................*passim*

Fed. R. Civ. P. 51(c).................................................................................18

Fed. R. Civ. P. 59 ..............................................................................*passim*

Fed. R. Evid. 702 ..............................................................................*passim*

Fed. R. Evid. 806 ..............................................................................*passim*

**Other Authorities**

ABA-JI-CIVANTI 1.C.1 .............................................................................17

ABA-JI-CIVANTI 1.C.4 .............................................................................17

ABA Section of Antitrust Law,
   *Antitrust Law Developments* (9th ed. 2022) ................................................................... 17

ix

## INTRODUCTION

The jury's verdict demonstrates that judgment should be granted to Defendants because of the undeniable failure of Plaintiffs' expert testimony under Rule 702. The Court appropriately expressed skepticism about Plaintiffs' experts after hearing them testify and recognized that excluding the experts would end the case. Those concerns were well-founded: Even a jury that ruled against the NFL was unwilling to credit Dr. Rascher's college football fantasy or any of Dr. Zona's multiple error-ridden models. The experts should have been excluded and the case ended prior to verdict. *See* ECF No. 1456, NFL Defs.' Mot. J. as a Matter of L. ("NFL Rule 50(a) Br.") at 3–10.

The jury's actions upon receiving the case confirm that point. The verdict in this case is at once among the largest in American history and also among the least defensible. The damages award is nonsensical: It represents the sum total of *discounts* that class members received—a number hastily calculated by a jury that quickly rejected Plaintiffs' models. And the case Plaintiffs presented that led to the verdict focused on belated, invented-for-trial claims supported only by contortions of inadmissible evidence. None of this is appropriate, and the Court's intervention is needed now.

While many errors at trial led to this runaway verdict, three errors stand out beyond those raised in Defendants' prior brief. *First*, the jury used its "phone calculator," 06/27/24 Tr. 2496:22, to create its own irrational and indefensible damages model. It first calculated an "overcharge" for a twelve-year period based on the difference between the *list price* of Sunday Ticket Basic in just 2018 and 2019 ($294.00) and the *average actual price paid* by residential subscribers over the whole class period ($102.74). Having mistaken a discount for an overcharge, the jury then multiplied that "overcharge" ($191.26) by the numbers of residential and commercial subscribers displayed during Plaintiffs' closing. That made-up methodology makes no sense. It also cannot support the judgment; the Rascher/Zona models, which the jury clearly rejected, were the *only* evidence offered to prove class-wide injury and damages based on the challenged conduct or any "but-for-world" ("BFW").

*Second*, Plaintiffs were improperly allowed to reinvent their case on the first day of

trial around a "price-fixing" theory. That theory makes no sense as a legal or factual matter. Among other things, that newfound theory permits leaving in place the pooling of out-of-market telecast rights and the NFL's exclusive agreement with DirecTV—the specific conduct Plaintiffs told court after court they were challenging for the decade prior to trial, and that Defendants spent that decade preparing to defend. The jury was never instructed to disregard Plaintiffs' trial counsel's prejudicial attempt to reinvent the case at the eleventh hour around inflammatory price-fixing rhetoric. The jury was also allowed—indeed, encouraged by Plaintiffs—to consider a substantial set of orphan documents purportedly supporting this newly-minted theory, which were improperly admitted under an unprecedented and improper reading of Rule 806.

*Third*, the jury's rejection of Plaintiffs' expert analysis of anticompetitive harm and less restrictive alternatives makes clear that the verdict was based on balancing at step four of the rule of reason. But the jury instructions lowered Plaintiffs' burden to the floor at the dispositive fourth step by allowing them to argue that they need show only a "50.00000001 percent" outweighing to prevail, 06/26/24 Tr. (Pls.' Closing) 2381:23–2382:7, rather than the "substantial" outweighing called for by the model instructions.

Nor should the broader implications of the verdict be overlooked. Plaintiffs' claims, if upheld, threaten to upend the entire structure by which content is created, distributed, and priced. It puts a wide range of legitimate joint ventures at risk. And it risks chilling investment, innovation, and reducing consumer choice and product quality.

This unprecedented verdict cannot stand. The Court should enter a Rule 50 judgment, and conditionally (or alternatively) grant a new trial.

## LEGAL STANDARD

As Defendants explained in their initial Rule 50(a) motion, ECF No. 1456, judgment as a matter of law is warranted in an antitrust case where the evidence is insufficient for a reasonable jury to find in Plaintiffs' favor. Fed. R. Civ. P. 50(a–b); *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 989–92 (6th Cir. 2001) (affirming post-trial grant of Rule 50 motion on Sherman Act claim); *Concord Boat Corp. v. Brunswick Corp.*, 207

F.3d 1039, 1054–63 (8th Cir. 2000). That is especially so in cases like this one, where key elements of plaintiffs' case rest entirely on expert testimony that falls short of the reliability requirements of Rule 702. *United States v. J-M Mfg. Co.*, 2020 WL 4196880, at \*12, \*20, \*37–41 (C.D. Cal. June 5, 2020), *aff'd sub nom. Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164 (9th Cir. 2023); NFL Rule 50(a) Br. at 2–3; 06/18/24 Tr. 1622:3–1623:15 ("[Rascher] gave us his best shot, and I don't think much of his best shot. And I don't think much of Zona's best shot. And I'm just here regretting not granting the *Daubert* motions maybe. Because what you do is you reconsider the—the *Daubert* motions and then, once you grant the *Daubert*s, there's nothing left.").

Rule 59 also permits courts to "grant a new trial," Fed. R. Civ. 59(a)(1), where the verdict is "contrary to the clear weight of the evidence," *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842, 846–47 (9th Cir. 2014), or where "[e]rroneous jury instructions . . . 'fail to fairly and correctly cover the substance of the applicable law,'" *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, 2024 WL 2272384, at \*2 (C.D. Cal. May 20, 2024) (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002)); *see also Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

Reversal of a jury verdict is also proper where, as here, a jury's damages award is an irrational or indefensible outcome. Courts often grant new trials in *non-class action* cases on this basis. *See, e.g.*, *Prendeville v. Singer*, 155 F. App'x 303, 305 (9th Cir. 2005); *Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 31–33 (1st Cir. 2016); *Smart Mktg. Grp.v. Publ'ns Int'l Ltd.*, 624 F.3d 824, 832–33 (7th Cir. 2010), *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 442 F. Supp. 3d 1329, 1363 (D. Or. 2020); *Litton Sys., Inc. v. Honeywell, Inc.*, 1996 WL 634213, at \*1 (C.D. Cal. July 24, 1996). In a class action, judgment as a matter of law is more appropriate because all class members consent to being bound by the plaintiffs' models. The failure here of those models—the only purported proof of anticompetitive effects, classwide injury, and damages—compels judgment. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252–53 (D.C. Cir. 2013); *see also Lillie v. ManTech Int'l Corp.*, 2019 WL 3387732, at \*24 (C.D.

3

Cal. July 26, 2019); *Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*, 732 F. App'x 532, 535 (9th Cir. 2018); *J-M Mfg. Co.*, 2020 WL 4196880, at *20.

At the Court's direction, Defendants are submitting this supplemental brief to their existing Rule 50 motion, and do not repeat at length arguments previously made. 06/27/24 Tr. 2504:4–6; *id.* 2504:19–21. For the reasons set forth in both briefs, the Court should grant judgment as a matter of law, or conditionally or alternatively order a new trial.

## ARGUMENT

## I.   THE JURY'S VERDICT ON DAMAGES CONFIRMS THAT A RULE 50 JUDGMENT IS APPROPRIATE.

The jury awarded damages of $96,928,272.90 for the commercial class and $4,610,331,671.74 for the residential class. Those figures were never proposed by the Plaintiffs or supported by any testimony. On the contrary, the jury rejected the damages figures calculated and but-for worlds created by Dr. Rascher and Dr. Zona, declining to award either $7.01 billion (Dr. Rascher's college football BFW damages) or $3.48 billion (the damages number Dr. Rascher selected from Dr. Zona's multiple-distributor models).

The jury instead did precisely what the Court expressed concern about during deliberations—working "with [their] phone calculator[s] creating [a] model," 06/27/24 Tr. 2496:22; *see id.* 2496:17–18. Although the jury did not detail the basis for its calculations, its highly specific damages figures leave no doubt what it did. The jury started with the list price of $294 for Sunday Ticket Basic in 2018 and 2019. *See* TX-417; *see also* 06/26/24 Tr. 2402:20–25 (closing argument reference to TX-1000, which involves a requested but not agreed-to price floor of $293.96 for Sunday Ticket based on the 2021 list price). It then subtracted $102.74, which the experts agreed was the *average price actually paid* by residential Sunday Ticket subscribers, and the *only* admissible evidence at trial of what subscribers actually paid. *See, e.g.*, 06/13/24 Tr. (Yurukoglu) 1326:3–1327:14; *id.* (Zona) 1205:5–16. That basic arithmetic resulted in a difference of $191.26. The jury then multiplied that number—its apparent "overcharge" finding—by the number of commercial and residential subscribers listed in the slide Plaintiffs repeatedly tried to display during

4

Case No. 2:15-ml-02668-PSG (SKx)                                    NFL Defendants' Notice of Renewed Motion For Judgment As A
                                                                    Matter Of Law Or For A New Trial

trial. *See* Ex. A. The results replicate the jury's damages awards perfectly for the residential class, and within two cents for the commercial class.

| | **A**<br>"Actual Price" | **B**<br>"But-For Price" | **C**<br>"Overcharges"<br>$(C = (A - B))$ | **D**<br>Number of Subscriptions | **E**<br>"Damages"<br>$(E = C \times D)$ |
|---|---|---|---|---|---|
| Commercial | $294.00 | $102.74 | $191.26 | 506,788 | $96,928,272.88 |
| Residential | $294.00 | $102.74 | $191.26 | 24,105,049 | $4,610,331,671.74 |

In short, the jury accepted Plaintiffs' repeated and improper efforts to get them to do their own unfounded math. *See, e.g.*, 06/13/24 Tr. (Zona) 1186:21–1188:15 (unsuccessfully attempting to calculate a new "actual price" of Sunday Ticket); 06/17/24 Tr. (Yurukoglu) 1403:9–1404:6 (unsuccessfully attempting same); 06/26/24 Tr. 2426:18–2434:8 (Plaintiffs' counsel permitted, over objection, to urge jurors to do the same calculation). Simply put, the jury's award has no record support.

Under these circumstances, judgment as a matter of law is appropriate for three independent reasons. *First*, the jury's rejection of the "models" offered by Plaintiffs' experts confirms that Plaintiffs failed to introduce valid proof of anticompetitive effects, injury, and damages. *Second*, the law does not permit juries to create speculative and irrational measures of damages. *Third*, the jury's rejection of Plaintiffs' experts means there is no valid *classwide* proof of anticompetitive effects, injury, or damages.

## A. The jury's damages calculations confirm that Plaintiffs' experts failed to offer reliable or admissible analysis.

As Defendants have explained, NFL Rule 50(a) Br. at 2–3, and as the Court recognized, 06/18/24 Tr. 1622:3–1623:15, Plaintiffs' case cannot succeed without admissible and reliable expert testimony. The jury's award confirms that it found Plaintiffs' experts unreliable—which is why the case should never have gone to the jury at all.

**Dr. Rascher.** The jury rejected Dr. Rascher's analysis of the proposed BFW and his related damages analyses. Dr. Rascher's preferred model—his "college football" BFW—eliminates both the pooling and exclusivity conduct Plaintiffs challenged, which allegedly

results in Sunday Ticket being *free* to all class members during the class period. 06/11/24 Tr. (Rascher) 771:2–6; *id.* 809:1–2; 06/20/24 Tr. (Bernheim) 1889:17–25. The jury rejected this approach by awarding damages far below the $7.01 billion figure for which Dr. Rascher advocated. *See supra* at 5. That was an appropriate response to his speculative testimony contradicted by all available factual evidence. *See* NFL Rule 50(a) Br. at 3–7.

**Dr. Zona.** The jury similarly rejected Dr. Zona's analyses of a BFW without exclusivity by declining to award damages based on either his "One Competitor" BFW or the "Optimal Price" approach that he improperly disclosed for the first time at trial. *See* 06/13/24 Tr. (Zona) 1182:1–1183:13. Indeed, the jury appears to have accepted Dr. Zona's calculation of $102.74 as the but-for price, contrary to all his modeling. *Supra* at 5. The jury's rejection of Dr. Zona's analyses appropriately reflected Dr. Yurukoglu's unrebutted takedown of Dr. Zona's work. NFL Rule 50(a) Br. at 7–10.

The jury's verdict thus provides yet another reason to conclude that Plaintiffs' experts' work fails the requirements of Rule 702. NFL Rule 50(a) Br. at 3–10. As a result, Plaintiffs lack any proof of liability based on the pooling and exclusivity agreements that they have always represented are the cornerstone of their case. Indeed, in the absence of a reliable BFW model, Plaintiffs cannot establish liability, injury, or damages, and judgment as a matter of law is appropriate. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 570 (8th Cir. 2009); *see also* NFL Rule 50(a) Br. at 2–3 (collecting cases).

**B. The jury's irrational calculations reflect speculation and guesswork and require setting aside the verdict.**

The jury's self-created damages model is insupportable. The Ninth Circuit has recognized that it is appropriate to scrutinize the legal sufficiency of a jury's damages calculations when those calculations reasonably can be inferred from the award. *See In re First All. Mortg. Co.*, 471 F.3d 977, 1002 (9th Cir. 2006) (assessing jury award that matched inferred methodology "*to the dollar*"). Courts consistently reject jurors' attempts to do calculations based on "speculative and unreliable" methods. *Ezzo's*, 243 F.3d at 991; *see also Wells Real Est., Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 816 (1st Cir.

6

1988) ("If the plaintiff's proffered evidence permits no more than pure speculation and guesswork, then the damage evidence is insufficient as a matter of law." (internal quotations and citations omitted)). That is just what happened here: The jury concocted its own model in response to the failures of Plaintiffs' case. That is evident not only from their rejection of Plaintiffs' models, but also from the requests for damages-related information during deliberations. *See* 06/27/24 Tr. 2488:22–2489:9, 2497:21–2498:4.

The jury's calculations—which treat a discount as an overcharge and confuse a list price (i.e., a price on a piece of paper) with the actual price paid (i.e., money out of pocket)—are completely unsound. To start, there is no basis for treating $294 as the "actual" price paid by class members during the class period. The evidence suggests that was the *list* price in only *three* years: 2018, *see* TX-417; 2019, *see id.*; and 2020, *see* TX-1000. There is no evidence that $294 was the list price in *any other year*, let alone *ever* the list price or the price paid by any member of the commercial class.

Using list prices also makes no sense. As the Court recognized, the evidence plainly demonstrated that list prices for Sunday Ticket are not the actual price. *See, e.g.*, 06/27/24 Tr. 2491:24–25 ("I'm not going to give them the list price, that's for sure."); *id.* 2490:15–17, 2492:19–24, 2494:17–21. For good reason: Due to the many discounts provided by DirecTV, average actual prices paid were always well below the list price. *See* 06/11/24 Tr. (Rascher) 780:20–781:20; 06/13/24 Tr. (Zona) 1199:21–1200:16; *id.* (Yurukoglu) 1326:14–1327:11; 06/17/24 Tr. (Goodell) 1553:16–23. Even the Plaintiff class representatives testified to getting many discounts off the list price. 06/07/24 Tr. (Lippincott) 425:18–25, 430:2–12; 06/13/24 Tr. (Frantz) 1308:15–1309:11.

Next, using $102.74 as the "but-for" price requires concluding that residential Sunday Ticket subscribers *were not damaged at all*. There is no dispute as to what $102.74 represents: it is the average price paid by all residential DirecTV subscribers who received Sunday Ticket. 06/13/24 Tr. (Zona) 1214:22–1216:18, 1267:11–17, 1273:3–18; *id.* (Yurukoglu) 1325:25–1329:10. As Professor Yurukoglu explained, the way that Dr. Zona's analysis works is that if the predicted but-for price is below $102.74, damages

7

are positive; if the predicted but-for price is above $102.74, damages are negative; and—critically—if the but-for price equals $102.74, damages are zero. *See* 06/13/24 Tr. 1341:3–22; *see also id.* 1334:24–1335:9.

The jury apparently concluded that the appropriate but-for price was $102.74. As a result, the only rational conclusion with any evidentiary support would have been that damages were precisely zero. *Id.* Instead, the jury concluded that the *discounts* DirecTV gave represented *damages* to the class members. That makes no sense—it gets the relationship between actual prices paid and potential overcharges exactly backwards. Still more nonsensical was the jury's application of its *residential* overcharge estimate to the *commercial* class, which indisputably paid different prices and had a different discount structure. *See* 06/13/24 Tr. (Yurukoglu) 1357:25–1358:20; *see also id.* (Zona) 1188:21–1189:2, 1219:13–15. Back-of-the-envelope math resulting in unsound damages figures cannot overcome the failure of Plaintiffs' models or justify a judgment in their favor.

More fundamentally, the jury's methodology repudiates the central premise of Plaintiffs' models. Plaintiffs disavowed models based on a single but-for price, instead building their proof of injury and damages on "reduction factors" of each class member's purchases. 06/13/24 Tr. (Zona) 1219:16–19, 1190:3–15, 1190:23–1191:1, 1191:22–1192:2, 1208:19, 1211:24–1212:2, 1275:23–24; 06/11/24 Tr. (Rascher) 783:25. The jury rejected that approach, instead concocting its own model of injury and damages that is simply speculation and guesswork, divorced from the proof at trial, and based on unsound inputs, making judgment as a matter of law appropriate. *See Ezzo's*, 243 F.3d at 991–92 (affirming judgment as a matter of law); *Wells Real Est.*, 850 F.2d at 816–17 (similar). At minimum, the Court should reduce or remit the jury verdict to the amount supported by the evidence, which in this case is nominal damages of $1 because there was no justifiable basis for the jury's verdict. *See, e.g.*, *First All.*, 471 F.3d at 1003; *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 301 (5th Cir. 2021); *Rex Med. v. Intuitive Surgical, Inc.*, 2023 WL 6142254, at *7 (D. Del. Sept. 20, 2023).

8

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A
                                                            Matter Of Law Or For A New Trial

## C. The jury's calculations confirm that Plaintiffs lack reliable proof of classwide injury.

Dr. Rascher's and Dr. Zona's models are Plaintiffs' only evidence that all class members were injured by the challenged conduct. This Court relied exclusively on those models at class certification, holding that the models would establish the necessary proof on a classwide basis *if* they were credited by the jury. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *11 (C.D. Cal. Feb. 7, 2023). Class members who elected not to opt out are bound by the proof of those models. ECF No. 1063. At trial, Plaintiffs made no attempt to prove classwide injury through any other evidence.

It is apparent, however, that the jury rejected these models. Without them, Plaintiffs have no proof of *classwide injury* based on the *challenged conduct*. Both elements are critical. *First*, only class members who have been proven to suffer injury may receive any part of the jury's award; where there is no valid model, there is no proof of injury. *See Rail Freight*, 725 F.3d at 253. "[I]n a case like this that proceeds to trial, the specific facts set forth by the [P]laintiff to support standing must be supported adequately by the evidence adduced at trial" to satisfy Article III, the Rules Enabling Act, and the Seventh Amendment. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). *Second*, class damages must be based on a model connected to the specific conduct alleged, which here was pooling and exclusivity. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." (internal quotation marks omitted)).

The jury's verdict shows that neither of these essential requirements was satisfied here, and that judgment as a matter of law should be entered against the class. In the alternative, the classes should be decertified based on the absence of common proof on the central issue of antitrust impact. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *see also Mazzei v. The Money Store*, 829 F.3d 260, 271 (2d Cir. 2016) ("[T]he district court did not abuse

9

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A
                                                    Matter Of Law Or For A New Trial

discretion in determining that, given the failure of class-wide evidence as to privity at trial, Rule 23(a) and (b)(3) requirements were not satisfied and decertification was therefore warranted."); *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 276 (4th Cir. 1980) (reversing judgment where "the district court erred in failing to withdraw certification of the class action at the conclusion of the trial on the merits, if not sooner").

## II.   THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL BASED ON PLAINTIFFS' UNTIMELY AND IMPROPER "PRICE-FIXING" THEORY.

The trial was infected with Plaintiffs' novel "price-fixing" theory—namely their allegation that the NFL had agreed with CBS, FOX, and DirecTV that DirecTV would maintain the Sunday Ticket price at an allegedly elevated level. *See* 06/06/24 Tr. (Pls.' Opening) 121:2–9; 06/26/24 Tr. (Pls.' Closing) 2389:2–11, 2390:8–2391:5, 2391:20–2392:5, 2393:15–25, 2394:18–2395:19, 2398:5–22, 2399:23–2400:1, 2402:20–2404:7, 2415:24–2416:3; 06/12/24 Tr. (Rolapp) 1002:21–1005:23, 1010:3–1012:24 (repeatedly arguing that $293.96 was an agreed-upon price floor despite clear contradiction by witnesses). That theory should never have been allowed at trial, and the Court compounded that error with jury instructions and incorrect evidentiary rulings under Rule 806.

First, a "price-fixing" theory is inconsistent with how this case has been litigated for almost a decade. From the start of the case in this Court, through the appeals to the Ninth Circuit and Supreme Court, and in the years that followed, Plaintiffs repeatedly insisted that they were challenging pooling and exclusivity. But the price-fixing theory Plaintiffs' trial counsel emphasized *permits the continuance of that challenged conduct*. Plaintiffs' trial-only theory rests on the premise that prices would have been lower, absent alleged price-fixing agreements, even in a world where the NFL and the teams jointly license all telecasting rights (pooling) *and* license all out-of-market rights to DirecTV (exclusivity).

Prior to trial, Plaintiffs *never* articulated this price-fixing theory because it was inconsistent with their core claim that the NFL and Teams need to stop pooling, exclusivity, or both. Articulating a challenge to pooling and exclusivity was how Plaintiffs overcame

Defendants' motion to dismiss.[1] Models eliminating pooling and exclusivity were the basis for this Court's class certification order.[2] And a challenge to pooling and exclusivity was the basis on which Plaintiffs survived summary judgment.[3] New theories of liability may not be asserted for the first time at trial, as happened here. *See Perez v. State Farm Mut. Auto. Ins. Co.*, 291 F.R.D. 425, 433–34 (N.D. Cal. 2013) (Koh, J.) (rejecting attempt to convert quality restriction claim to a price-fixing claim prior to trial), *aff'd*, 628 F. App'x 534 (9th Cir. 2016); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011) (all theories must be pleaded in the complaint); *see also* NFL Rule 50(a) Br. at 23–24.

Indeed, courts in this Circuit and elsewhere have rejected similar last-minute efforts to transform other Section 1 claims into "price-fixing" cases. *See, e.g.*, *Perez*, 291 F.R.D. at 433–34; *B&H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008). *B&H Medical* is instructive. There, the Sixth Circuit rejected an effort by plaintiffs to reframe their initial factual claims—"focused on whether the [challenged restraint] was an exclusive-dealing arrangement"—as price-fixing allegations. *B & H Med*, 526 F.3d at 268. As the court explained, "[p]rice fixing and exclusive dealing are two entirely separate theories of antitrust liability, with vastly different applicable standards and analyses relying on very different kinds of evidence." *Id.* Just so here, where Plaintiffs pleaded and pursued an output restriction claim for a decade but then pivoted to a price-fixing claim at trial.

---

[1] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1156 (9th Cir. 2019) ("We conclude that the complaint adequately alleges the element of injury to competition by alleging that the interlocking Teams-NFL and NFL-DirecTV Agreements injure competition.").

[2] *Sunday Ticket*, 2023 WL 1813530, at *1 (summarizing challenged conduct: "Specifically, acting on behalf of the 32 individual NFL teams, through a pooled-rights agreement, the NFL entered into two licensing agreements: (1) an agreement in which CBS and Fox coordinate to create a single telecast for every Sunday afternoon NFL game and are permitted to broadcast only a limited number of games through free, over-the-air television; and (2) an agreement allowing DirecTV to obtain all of the live telecasts produced by CBS and Fox and bundle them into a subscription package called NFL Sunday Ticket").

[3] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2024 WL 168298, at *2 (C.D. Cal. Jan. 11, 2024) ("This is the basis for Plaintiffs' suit: Absent the agreements, the telecasts solely available on Sunday Ticket would be available through other means, which would result in a greater number of telecasts of NFL games that would be more accessible to more viewers at lower prices.").

Second, any "price-fixing" theory is wholly unsupported by Plaintiffs' experts and thus requires judgment for Defendants and decertification of the class. Like Plaintiffs before trial, Plaintiffs' experts defined the challenged conduct as pooling and exclusivity. *E.g.*, ECF No. 962-4, Rascher Rep. ¶ 17. They similarly created BFWs in which only pooling and/or exclusivity are eliminated. *E.g.*, *id.* ¶¶ 25–26; ECF No. 962-34, Zona Rep. ¶ 8. Plaintiffs' trial theory does not correspond with *any* of Plaintiffs' proposed BFWs, and findings of liability, injury, and damages that are not based on Plaintiffs' theories are improper. *See Comcast*, 569 U.S. at 35. That is particularly so because Plaintiffs never purported to identify classwide evidence of injury or damages for a "price-fixing" theory, as would have been necessary to obtain class certification on such a theory. *See Sunday Ticket*, 2023 WL 1813530, at *11–12 (relying on Zona and Rascher models); *see also* ECF No. 962-4, Rascher Rep. ¶ 419 & Ex. 19; NFL Rule 50(a) Br. at 9, 24.[4]

Third, any "price-fixing" theory would fail under the facts and law in this case. As both Professor Yurukoglu and Professor Bernheim explained, if the NFL wanted to maintain a high price for Sunday Ticket, it could have achieved that goal simply by employing a per-subscriber fee. 06/13/24 Tr. (Yurukoglu) 1337:8–1341:22; 06/20/24 Tr. (Bernheim) 1966:12–1967:1. Plaintiffs never properly rebutted this testimony, which guts the theory that there must have been an illicit agreement to control price. *See infra* at 19–21 (addressing the improper legal testimony by Mr. Elhauge).

Nor can Plaintiffs attempt to retrofit the jury verdict as necessarily reflecting a removal of pooling or exclusivity. Because Plaintiffs' case depended on Dr. Rascher and Dr. Zona's models, *see supra* at 5; *see generally* NFL Rule 50(a) Br. at 1–10, the jury's rejection of those models necessitates rejection of the underlying liability theories. Moreover, any such attempt would not cure the obvious prejudice to Defendants from the eleventh-hour introduction of a price-fixing theory. Defendants had no advance notice or

---

[4] Defendants properly objected to Plaintiffs' attempt, at trial, to introduce a price-fixing damages measure through Dr. Zona's calculation of the "NFL Tax." Prior to trial, Dr. Zona never calculated damages *at all*. More to the point, the jury did not accept Dr. Zona's number as to what price-fixing damages would look like for either class.

12

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A
                                                    Matter Of Law Or For A New Trial

opportunity to prepare for Plaintiffs' price-fixing theory, and the concept of price-fixing has prejudicial *per se* liability connotations that do not fit this case. *See Perez*, 628 F. App'x at 535 (requiring Defendants to respond to "pure price-fixing allegations," which constituted "a substantial change" from Plaintiffs' prior theory, "would result in unfair prejudice"); *DCD Partners, LLC v. Transam. Life Ins. Co.*, 2018 WL 3770030, at *6 (C.D. Cal. Aug. 1, 2018) (noting the risk of unfair prejudice from plaintiffs' "somewhat problematic" opening statement and introduction of irrelevant evidence, warranting a curative instruction); *Olsen v. CBS Musical Instruments*, 1982 WL 1876, at *2 (D. Utah July 22, 1982) (refusing to accept plaintiff's representations that its group boycott claim under Section 1 could, two years after the close of discovery, be read as a price-fixing claim because it would be "manifestly unfair and unduly prejudicial" to the defendant at that stage in litigation); *see also* 06/07/24 Tr. 318:24 (referring to use of the term "price fixing" as "fast and loose").

The prejudice was compounded by multiple other errors. One was the Court's decision not to give Defendants' proposed curative instruction regarding price-fixing. Even after Plaintiffs mentioned price-fixing fifteen times in opening and tried to invent new damages numbers on the fly based on the alleged "NFL Tax," the Court declined to instruct the jury that this is not a price-fixing case. ECF No. 1412, Defs.' Proposed Supp. Final Jury Instrs. at 7; 06/10/24 Tr. 473:2–474:25. Plaintiffs then argued about "set[ting] prices" in closing. 06/26/24 Tr. (Pls.' Closing) 2389:2–11, 2390:8–2391:5, 2391:20–2392:5, 2393:15–25, 2394:18–2395:19, 2398:5–22, 2399:23–2400:1, 2402:20–2404:7, 2415:24–2416:3. A curative instruction was necessary to avoid the resulting prejudice. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 478–79 (9th Cir. 2021) (affirming the use of a curative instruction in an antitrust case).

Plaintiffs' price-fixing theory also depended on the improper admission, under Rule 806, of many documents related to this price-fixing theory. Plaintiffs had no witness testimony supporting their price-fixing case. So they built the theory with orphan documents that they declined to ask anyone about during discovery, and that were

13

improperly admitted under Rule 806. The law is clear that nothing about Rule 806 changes the ordinary rules of impeachment. *United States v. Finley*, 934 F.2d 837, 839 (7th Cir. 1991) ("Rule 806 extends the privilege of impeaching the declarant of a hearsay statement but does not obliterate the rules of evidence that govern . . . impeachment."); *United States v. Saada*, 212 F.3d 210, 220–21 (3d Cir. 2000). But Plaintiffs ignored those rules at trial.

First, it is a hallmark rule of impeachment that a party cannot open its own door to inadmissible evidence. Specifically, a witness cannot be called (or a deposition played) exclusively to impeach the testimony elicited with otherwise inadmissible evidence. *Fisher v. Smith*, 2009 WL 10698910, at *5 (C.D. Cal. Mar. 25, 2009) ("[I]t would be improper . . . to pose a question . . . to elicit a denial and create a basis for impeaching through the introduction of contradictory extrinsic evidence").[5] That is exactly what Plaintiffs did: (i) they played deposition testimony confirming that DirecTV set the price for Sunday Ticket, and then (ii) offered inadmissible documents to "impeach" that testimony. A telling example is Brent Lawton: Plaintiffs used all but fifteen seconds of his six minutes of his testimony on Sunday Ticket pricing, then offered as "impeachment" more than *a dozen* exhibits related to pricing—only one of which was asked about at his deposition, 06/07/24 Tr. 454:13–455:9[6]—and which were otherwise inadmissible, *id.* 06/26/24 Tr. 2338:24–2339:3. The Court acknowledged that there was no precedent for this use of Rule 806, 06/07/24 Tr. 315:23–317:4, but allowed this contortion of the rule to create trial by ambush.

---

[5] The Ninth Circuit has been clear on this limitation. *United States v. Gilbert*, 57 F.3d 709, 711 (9th Cir. 1995) ("Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible."); *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990) (same); *United States v. Miller*, 546 F. App'x 709, 710 (9th Cir. 2013) (same); *United States v. Crouch*, 731 F.2d 621, 624 (9th Cir. 1984) ("[C]ourts have repeatedly emphasized that the government must not 'knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony.'").

[6] Offering as "impeachment" of Mr. Lawton TX-612, TX-618, TX-771, TX-772, TX-775, TX-777, TX-779, TX-799, TX-800, TX-801, TX-802, TX-806, TX-830. Confirming they were playing a shell game, Plaintiffs did not designate Lawton's testimony on TX-618, the one exhibit they asked him about in deposition.

14

Second, Plaintiffs violated the rules of impeachment by introducing documents from other witnesses. "Only the declarant of the prior inconsistent statement, and not another witness, may be impeached with the statement." *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999). Any attempt to impeach a witness with someone else's prior statements is *per se* substantive rather than impeaching. *Id.*; *see also Smith for J.L. v. L.A. Unified Sch. Dist.*, 2018 WL 6137133, at *3 (C.D. Cal. Feb. 13, 2018). Plaintiffs improperly and repeatedly ignored this limitation.[7] Mr. Lawton again offers a telling example: Plaintiffs offered TX-801 to "impeach" Mr. Lawton's statements about pricing, but TX-801 is an email that Mr. Lawton *received.* It contained only statements from *other* employees.

In all, *twenty-two* documents were admitted under Rule 806, and were the core of Plaintiffs' purported evidence of "price-fixing." Plaintiffs also relied heavily on those documents not for impeachment, but instead for their substance. Indeed, the Court twice sustained objections to Plaintiffs' substantive use of these documents in closing—including the use of TX-801. 06/26/24 Tr. 2396:19–2397:3, 2397:13–21. And Plaintiffs presented these documents to multiple witnesses throughout trial as substantive evidence. 06/12/24 Tr. (Rolapp) 983:1–984:12 (attempting to impeach Brian Rolapp with TX-779, a document he had never seen before and was not quoted in); *id.* 1032:6–1035:11 (TX-800, same); *id.* 983:1–984:12, 989:15–982:25 (TX-808, same); *id.* 987:15–991:13, 992:10–22 (TX-806, same); 06/17/24 Tr. (Goodell) 1535:19–1539:14 (use of TX-808, despite not being a statement by or to Mr. Goodell). All of this was highly prejudicial to Defendants. The Court should grant judgment as a matter of law because the price-fixing theory was improper, and the jury rejected Plaintiffs' proof as to the liability case they pleaded and pursued before trial. But at minimum, Defendants should receive a new trial free of Plaintiffs' untimely price-fixing theory and the related instructional and evidentiary errors.

---

[7] *See, e.g.*, TX-808 (email from Brian Fitzgerald to Adam Kerner, neither of whom was called or had deposition testimony played); TX-771 (emails sent *to* Brent Lawton with no statement or response from him); TX-779 (email and agenda that went *to* Brent Lawton and included no statement from him).

15

## III.    THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL BASED ON THE MISAPPLICATION OF THE RULE OF REASON.

Reversal is also appropriate based on the misapplication of the fourth step of the rule of reason. As Defendants have explained, Plaintiffs had to satisfy the rule of reason not only for their Section 1 claim, but also to prove the essential element of "anticompetitive conduct" in their Section 2 claim. *See* NFL Rule 50(a) Br. at 10; *FTC v. Qualcomm*, 969 F.3d 974, 991–92 (9th Cir. 2020). As noted above, the jury rejected Plaintiffs' models of the BFW—Plaintiffs' sole effort to prove both anticompetitive effects and less restrictive alternatives. ECF No. 633-1 (Pls.' Mot. Class Cert.) at 15–17 (asserting that their experts' theories would prove classwide injury); ECF No. 962-4, Rascher Rep. ¶¶ 291–93 (asserting "less restrictive alternatives"); ECF No. 962-34, Zona Rep. ¶ 71 (similar). Because no reasonable jury could have found the absence of sufficient proof of procompetitive benefits, *see* NFL Rule 50(a) Br. at 12–17, 19–21, the verdict must have rested on the jury's apparent finding at step four that the anticompetitive effects of the challenged conduct outweighed its procompetitive rationales.

The fourth step does not apply in cases that are decided by a jury—particularly where, as here, the step is the foundation for billions of dollars of damages. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 993–94 (9th Cir. 2023) (noting that Supreme Court precedent does not require a fourth step and expressing skepticism about its utility in a *bench* trial); *see* ECF No. 1360, Defs.' Disp. Proposed Final Jury Instrs. at 50–52, 82; ECF No. 1364. Pls.' Disp. Proposed Final Jury Instrs. at 56, 82. But at minimum, a new trial is warranted based on improper instructions regarding this fourth step. The Court improperly watered down Plaintiffs' burden over Defendants' objection. *See* 06/26/24 Tr. 2355:3–10, 2358:21–2359:7. The model instructions require Plaintiffs to show that competitive harm *substantially* outweighs any competitive benefits to prevail under this step:

> If the competitive harm *substantially* outweighs the competitive benefits, then the challenged restraint is unreasonable. If the

16

competitive harm does not *substantially* outweigh the
competitive benefits, then the challenged restraint is not
unreasonable. . . . Plaintiff bears the burden of proving that the
anticompetitive effect of the conduct *substantially* outweighs its
benefits.

ABA-JI-CIVANTI 1.C.4 (emphases added); *see also* ABA-JI-CIVANTI 1.C.1 ("The
challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the
competitive harm *substantially* outweighs the competitive benefit." (emphasis added));
ABA Section of Antitrust Law, *Antitrust Law Developments* 1B-3-b (9th ed. 2022) ("The
ultimate issue, then, is whether the restraint's anticompetitive effect substantially
outweighs the procompetitive effect for which the restraint is reasonably necessary.").

The Court, however, eliminated the word "substantially" from the instructions—and
Plaintiffs capitalized on this error, arguing that they need show only a "50.00000001
percent" outweighing to prevail, 06/26/24 Tr. (Pls.' Closing) 2381:23–2382:7. There was
no justification for this consequential departure. While the word "substantially" does not
appear in *Epic Games*, there is no reasonable way to read a decision that questioned the
existence of the fourth step at all as dramatically *lowering* Plaintiffs' burden under that
step—particularly in a jury trial. Indeed, the jury instructions in the recent Epic/Google
case required proof of substantiality. *See* Final Jury Instructions for *Epic* Trial at 36, *In re
Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. Dec. 6, 2023), ECF No.
850 ("The challenged restraints are illegal under Section 1 of the Sherman Act *only if you
find that the competitive harm substantially outweighs the competitive benefit*." (emphasis
added)); *id.* at 40 ("Epic bears the burden of proving by a preponderance of the evidence
that the anticompetitive effect of the conduct substantially outweighs its benefits."); *see
also* Closing Jury Instructions at 18, 25, *In re HIV Antitrust Litig.*, No. 3:19-cv-02573 (N.D.
Cal. June 27, 2023), ECF No. 2018 (same); Final Jury Instructions at 32, 36, *Sumotext
Corp. v. Zoove Inc.*, No. 5:16-cv-01370 (N.D. Cal. Mar. 1, 2020), ECF No. 461 (same).

17

A district court may grant a new trial where, as here, "[e]rroneous jury instructions . . . 'fail to fairly and correctly cover the substance of the applicable law,'" *L.A. Int'l Corp.*, 2024 WL 2272384, at \*2; *see also Murphy*, 914 F.2d at 187. There can be no question that happened here as to the fourth step of the rule of reason.

## IV.   IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO A NEW TRIAL.

Multiple other instructional and evidentiary errors—as well as the irrational jury verdict—require the conditional grant of a new trial.

### A. A new trial is necessary based on instructional errors, including the Court's failure to instruct the jury on Plaintiffs' burden to prove classwide injury.

Defendants preserved their objections to the jury instructions actually given, *see* 06/25/24 Tr. 2327:6–2328:2, Fed. R. Civ. P. 51(c); *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1289 (9th Cir. 2014), and maintain that the failure to give Defendants' proposed instructions at a minimum require a new trial. But beyond the price-fixing and step-four instructional errors addressed above, an additional error stands out as particularly consequential. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431. Because uninjured class members cannot recover, Plaintiffs bore the burden at trial to establish injury and damages as to every class member. But the jury was not instructed on Plaintiffs' burden.

Rule 23 permits "generalized proof of damages" but "does not eliminate the ultimate need for individual proof of damages by each member of the class." *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 236 n.8 (9th Cir. 1974); *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 334 (9th Cir. 1993) ("[A]t some point in the litigation Plaintiffs would be required to prove individual causation and damages."); *Blades v. Monsanto Co.*, 400 F.3d 562, 571 (8th Cir. 2005) (similar). The Court did not give Defendants' requested instruction on this precise issue, which accurately reflects this governing law. ECF No. 1360 at 153–54, 156–57.

Moreover, during the charge conference, the Court explicitly declined to instruct the jury that it was required to accept Plaintiffs' models in order to justify a class verdict.

18

06/25/24 Tr. 2297:15–24, *see also* ECF No. 1360 at 140 (Defs.' Proposed Jury Instr. No. 72, Damages for Purchasers—Class Damages). The Court's decision not to give these instructions resulted in a legally impermissible injury and damages finding that in no way proves individual damages or matches Plaintiffs' models. *See supra* at 9–10; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand"). A new trial is therefore necessary on all issues. *See L.A. Int'l Corp.*, 2024 WL 2272384, at *2; *Murphy*, 914 F.2d at 187.

**B. The erroneous admission of prejudicial and inadmissible evidence warrants a new trial.**

A new trial is also permitted under Rule 59 where "'an erroneous evidentiary ruling substantially prejudiced a party.'" *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, L.P.*, 768 F. App'x 776, 778 (9th Cir. 2019) (citing *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995)). Other erroneous evidentiary rulings beyond those described above allowed highly prejudicial evidence to be improperly submitted to the jury.

**1.    The jury should not have been permitted to hear improper rebuttal testimony from Einer Elhauge.**

Plaintiffs should not have been permitted to present the testimony of Einer Elhauge because (i) he did not offer proper rebuttal testimony and (ii) his testimony consisted of inadmissible economic opinions by a law professor.

*First*, "rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case.'" *Cook v. County of Los Angeles*, 2022 WL 1470574, at *3 (C.D. Cal. Mar. 21, 2022) (quoting *In re Toy Asbestos*, 2021 WL 1056552, at *3 (N.D. Cal. Mar. 19, 2021)). By contrast, "[i]f the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Stallworth v. Nike Retail Servs., Inc.*, 2021 WL 6618781, at *1 (C.D. Cal. Dec. 1, 2021) (cleaned up). The testimony of Defendants' experts, particularly Dr. Bernheim, could not possibly be called new or unexpected. The

19

substance and basis of Dr. Bernheim's testimony was fully disclosed in his Rule 26(a)(2) report and deposition over a year ago. Plaintiffs also knew that Dr. Bernheim would testify and the subject matter of his testimony. *See* ECF No. 1162, Joint Witness List at 13; ECF No. 1298, Am. Joint Witness List at 11; ECF No. 1381, 2d Am. Joint Witness List at 15. Indeed, Dr. Rascher attempted to rebut Dr. Bernheim's conclusions about procompetitive benefits during his nearly two days of testimony in Plaintiffs' case-in-chief.

Plaintiffs failed to provide any reason why they could not have called Mr. Elhauge in their case-in-chief. That this case includes a burden-shifting framework for one element of Plaintiffs' claims does not change the established standards governing when rebuttal testimony is proper. *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 55 (1st Cir. 2016). At trial, Mr. Elhauge's testimony also did not respond to any unexpected or new testimony by Dr. Bernheim. It also was cumulative of Dr. Rascher's testimony. It therefore should have been precluded. *United States v. Hirokawa*, 342 F. App'x 242, 246–47 (9th Cir. 2009) (affirming the decision to exclude cumulative rebuttal evidence and limit rebuttal "to new evidence"); *United States v. Clark*, 617 F.2d 180, 187 (9th Cir. 1980) (affirming refusal to allow defense to recall the same expert where he would not "provide new or important" testimony); *see also* ECF No. 1425 at 4–7 (detailing Dr. Rascher's testimony and the overlap between Elhauge's and Rascher's opinions).

*Second*, Plaintiffs elicited improper opinion testimony from Mr. Elhauge. Plaintiffs should not have been permitted to close the evidence with prejudicial testimony from a lawyer with no economics degree. 06/24/24 Tr. (Elhauge) 2175:17–21. For example, and despite this Court's rulings that an antitrust defendant has no burden to quantify its proffered procompetitive rationales, *see* ECF No. 1325, Order on Defs.' Mot. *in Limine* No. 7 at 8–9 & nn.12–13; 06/20/24 Tr. 2055:7–11, Mr. Elhauge was permitted to testify that there was no "evidence quantifying" Defendants' procompetitive justifications, 06/24/24 Tr. 2151:20–2152:22, 2157:8–24, 2165:1–10. This impermissibly implied to the jury that because Defendants did not quantify the procompetitive benefits, they could not outweigh the alleged anticompetitive effects—which became all the more important given

20

the jury's step four decision. *See supra* at 16–18. That is wrong as a matter of law and the Court did not instruct otherwise. *See* 06/25/24 Tr. 2279:17–2280:10, 2283:10.

Similarly, Mr. Elhauge testified that a most-favored-nations clause tied to per-subscriber fees would be anticompetitive and have "equal anticompetitive effects" to the exclusive licensing agreement challenged here, 06/24/24 Tr. 2143:11–16, *i.e.* an opinion on an ultimate issue of law in this case. This is exactly the type of legal conclusion that courts in this Circuit have regularly held cannot be offered to a jury, *see, e.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015–17 (9th Cir. 2004), let alone from a Harvard Law School professor at the end of a trial.

### 2.      The jury should not have been permitted to consider evidence of prior litigation against the NFL.

Plaintiffs suggested to the jury in their opening statement, closing argument, and the testimony of Dr. Rascher, that the outcomes of *NFL I* and *NFL II* were conclusive here. Specifically, Plaintiffs encouraged the jury to find that because the DOJ successfully sued the NFL more than a half century ago, the NFL violated the antitrust laws in this case. While the Court excluded evidence of the specific findings of fact and conclusions of law from those cases, the remaining discussion of the legal outcomes of the cases substantially prejudiced Defendants, and the Court erred in not excluding this evidence in its totality.

The prejudice to Defendants is evident from the arguments Plaintiffs made. In closing, Plaintiffs argued that the prior cases prove that pooling "violates the antitrust laws" and "is not legal." 06/26/24 Tr. 2383:23–25. Plaintiffs also argued that the practices challenged in *NFL I* and *II* were "out in the open," so there should also be a finding of anticompetitive harm here.[8]

---

[8] *See also* 06/26/24 Tr. 2472:19–24 ("When the Feds came after them in '60, all their conduct was out in the open. The Federal Government still came after them. They were found to have violated the antitrust laws, and then they went to Congress to use their political power to get an exemption. That's the way the stuff really worked out."); 06/06/24 Tr. 117:6–11 ("The United States Department of Justice sued the NFL and all of its teams saying that scheme violates the antitrust laws, it violates the Sherman Act. And you'll hear the outcome of the case. The Court hearing that case agreed with the Government and said (continued…)

The risk that a jury would afford undue weight to the outcome of past decisions involving the NFL is grounds for excluding the evidence. *See, e.g.*, *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008); *Munoz v. PHH Mortg. Corp.*, 2022 WL 88497, at *2 (E.D. Cal. Jan. 7, 2022); *Grace v. Apple, Inc.*, 2020 WL 227404, at *2 (N.D. Cal. Jan. 15, 2020) (Koh, J.). This is especially so where the case poses complex antitrust issues, *see Ormco Corp. v. Align Tech., Inc.*, 2009 WL 10668458, at *2 (C.D. Cal. May 12, 2009), and where a plaintiff seeks to offer evidence of decisions made exclusively by federal judges, whom jurors are likely to see as authoritative, *see United States v. Sine*, 493 F.3d 1021, 1034–35 (9th Cir. 2007). In contrast, such evidence is "of minimum probative value." *Grace*, 2020 WL 227404, at *2. As this Court recognized, "[t]he antitrust litigations occurred over 60 years earlier under a completely different set of agreements." ECF No. 1304 at 6. The jury's verdict suggests that it afforded undue weight to the outcomes of those litigations, which unfairly prejudiced Defendants. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 686 F. App'x 422, 424–25 (9th Cir. 2017).

**C. The jury's verdict is against the clear weight of the evidence.**

Rule 59 also permits courts to "grant a new trial," Fed. R. Civ. 59(a)(1), when the verdict is "contrary to the clear weight of the evidence," *Experience Hendrix*, 762 F.3d at 842, 846–47. In making that determination, the court "is not required to view the trial evidence in the light most favorable to the verdict." *Id.* at 842. "[T]he district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Kenney v. Lawrence*, 2018 WL 2461491, at *2 (S.D. Cal. May 31, 2018) (cleaned up) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)); *Kode v. Carlson*, 596 F.3d 608, 613 (9th Cir. 2010).

what the NFL was doing is illegal. And the Court made them stop."); *id.* 118:3–7; 06/11/24 Tr. (Rascher) 704:25–707:2 (testifying about "the determination of the Court in *NFL 1*" and "the Court's ruling in *NFL 2*").

22

### 1.   The irrationality of the jury's award warrants a new trial.

As detailed above, the jury's damages calculations do not track any cogent theory of liability or damages, and indeed, reflect a wholesale rejection of the plaintiffs' theories and supporting evidence. Simply put, they are impermissible speculation and guesswork. Where, as here, there is no rational connection between the damages awarded and the underlying evidence, a new trial is warranted. *Experience Hendrix,* 762 F.3d at 846 (affirming a grant of a new trial where damages award was "the product of speculation [ and] error," including assumption that "total income" equaled "profits").

This ruling does not just apply to the damages portion of the verdict, because the irrationality of the damages verdict similarly negates the underlying liability findings. *Arroyo v. Volvo Grp. N. Am. LLC*, 2022 WL 17960686, at *4 (N.D. Ill. Dec. 27, 2022), *aff'd*, 93 F.4th 1066 (7th Cir. 2024); *see also Prendeville*, 155 F. App'x at 305; *Cornwell*, 830 F.3d at 31–33; *Hatami v. Kia Motors Am., Inc.*, 2010 WL 11475044, at *5 (C.D. Cal. July 7, 2010). That is exactly the case here.

### 2.   The inability to rely on Plaintiffs' experts warrants a new trial.

The jury's rejection of Plaintiffs' experts' BFWs confirms the experts should be excluded under Rule 702 and that, at minimum, a new trial is appropriate. *See supra* at 5.

### 3.   Additional bases for judgment at least warrant a new trial.

The Court should conditionally, or alternatively, grant a new trial based on the following arguments warranting judgment as a matter of law:

*First*, Plaintiffs failed to properly prove a relevant market, or harm to competition in that market, because their market definition includes comparable substitutes (over-the-air football telecasts) for free and in unlimited quantity. NFL Rule 50(a) Br. at 12; *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 238 n.6 (5th Cir. 1996).

*Second*, Plaintiffs failed to prove Defendants could conspire to injure competition. NFL Rule 50(a) Br. at 10–12. Under *Copperweld Corp. v. Independence Tube Corp.*, it was incumbent upon Plaintiffs to prove that each team could *produce* and *license* telecasts absent cooperation with other teams or the league. 467 U.S. 752, 769 (1983). The

23

undisputed evidence at trial, however, demonstrated that the league is properly considered a single entity for those purposes—or at minimum that the telecasts are the product of a joint venture by the league as a whole, the creation of which Plaintiffs have not challenged.

*Third*, Plaintiffs failed to demonstrate any anticompetitive effects of the challenged exclusivity. NFL Rule 50(a) Br. at 17–19. Indeed, clear legal precedent confirms that "[t]he mere existence of an exclusive deal between the [NFL] and its licensee[] does not violate the antitrust laws or significantly threaten competition." *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1092 (N.D. Cal. 2007).

*Fourth*, Plaintiffs did not offer *viable,* less restrictive alternatives to achieve the procompetitive benefits. *Epic Games*, 67 F.4th at 985–94. Plaintiffs failed to demonstrate any viable alternatives to the challenged conduct. NFL Rule 50(a) Br. at 12–17, 19–21. In fact, the verdict clearly rejects Plaintiffs' proposed less restrictive alternatives.

*Fifth*, Defendants' pooling of rights and exclusive contracts with CBS and FOX were legally protected under the SBA, 15 U.S.C. § 1291. NFL Rule 50(a) Br. at 25.

*Finally*, Plaintiffs offered no evidence that DirecTV was party to an *overarching* conspiracy with the NFL, CBS, and FOX. NFL Rule 50(a) Br. at 23–25. Indeed, as explained *supra* at 14–16, most of the evidence that Plaintiffs introduced regarding the alleged pricing agreement between DirecTV and the NFL was purported impeachment testimony that should not have been admitted at all. Accordingly, Plaintiffs have not established themselves as direct purchasers and their claims are barred under *Illinois Brick v. Illinois*, 431 U.S. 720 (1977). *Sunday Ticket*, 933 F.3d at 1157. The award of damages despite this bar warrants a new trial.

## V. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON JUROR PARTIALITY.

The Court should also grant a new trial based on juror partiality. "The bias or prejudice of even a single juror is enough to violate" the right to a fair trial. *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013) (citation omitted). The proper remedy for the participation of a biased juror is a new trial. *See Coughlin v. Tailhook Ass'n*, 112 F.3d

24

Case No. 2:15-ml-02668-PSG (SKx)                    NFL Defendants' Notice of Renewed Motion For Judgment As A Matter Of Law Or For A New Trial

1052, 1062 (9th Cir. 1997); *Est. of Casillas v. City of Fresno*, 2019 WL 2869079, at *4 (E.D. Cal. July 3, 2019). Juror 7—the foreperson—had an improper financial stake in the outcome of the litigation but was allowed to remain on—and lead—the jury.

During jury selection, the Court recognized that class members who paid for Sunday Ticket, as well as their household members, had an improper financial interest in the case, creating the potential for bias. 06/05/24 Tr. 12:20–13:7, 13:24–14:4. That was appropriate because a juror with a pecuniary interest in the outcome of a case must be excused for cause. *See, e.g.*, *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). Defendants made the same objection to Juror 7, who "pay[s] for" a household member's Sunday Ticket subscription. 06/05/24 Tr. 68:18–70:23. But the Court rejected the challenge because Juror 7's household member was not a class member. *See id.* 70:24–71:11.

That does not eliminate the possibility of bias, which is all the law requires. *United States v. Gonzalez*, 214 F.3d 1109, 1113 (9th Cir. 2000); *see Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1050 (4th Cir. 1984). Plaintiffs repeatedly argued that Sunday Ticket should have been available at a lower price during the entire pendency of the class period, including at lower prices than Juror 7 currently pays for Sunday Ticket on YouTube. 06/06/24 Tr. (Pls.' Opening) 138:7–11; 06/17/24 Tr. (Goodell) 1546:14–19; 06/12/24 Tr. (Rolapp) 1012:19–25; 06/26/24 Tr. (Pls.' Closing) 2404:1–7. The fact that the jury concluded that the but-for price of Sunday Ticket should have been $102.74 during the class period confirms the point. *See supra* at 4–5. This structural error also warrants a new trial. *See United States v. Martinez-Salazar*, 528 U.S. 304 (2000) (no need to use peremptory strike on juror who should have been excused for cause).

## CONCLUSION

The Court should grant judgment as a matter of law to the NFL, and conditionally (or alternatively) grant the NFL a new trial.

NFL Defendants' Notice of Renewed Motion For Judgment As A
Matter Of Law Or For A New Trial

Dated: July 3, 2024

Respectfully submitted,

/s/ *Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

26