# EXHIBIT 2

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (2121) 202-4322

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: 2:15-ml-02668−PSG (JEMx) <br><br> CLASS ACTION |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **PLAINTIFFS' RESPONSES TO THE NFL DEFENDANTS' SECOND SET OF INTERROGATORIES TO RESIDENTIAL PLAINTIFFS** |

PROPOUNDING PARTY: NFL Defendants

RESPONDING PARTY: Residential Plaintiffs (as defined below)

SET NUMBER: Two

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs provide the following objections and responses to the NFL Defendants' Second Set of Interrogatories to Residential Plaintiffs ("Plaintiffs").

The responses provided herein are submitted on behalf of Plaintiffs and reflect Plaintiffs' continuing investigation of facts and discovery of information and documents relating to the claims and defenses at issue in this case. Accordingly, Plaintiffs' responses to these Interrogatories are based only upon Plaintiffs' current knowledge and reasonable belief. Plaintiffs expressly reserve the right to further modify, update, and/or supplement any response to assert additional objections to these Interrogatories as necessary or appropriate.

Plaintiffs have responded to these Interrogatories in accordance with their interpretation and understanding of each Interrogatory. If the NFL Defendants subsequently assert an interpretation of any Interrogatory or part thereof that differs from Plaintiffs' understanding of that Interrogatory or part thereof, Plaintiffs reserve the right to supplement their responses and/or objections.

By making these responses, Plaintiffs do not concede that the information sought is relevant, or that any information ultimately produced is admissible. These responses are made without intending to waive or waiving the right to object to the admissibility of any response herein or document produced pursuant hereto.

## **GENERAL OBJECTION**

1.      Plaintiffs object to the definition of "You," or "Your" to the extent the definition includes Plaintiffs' agents, employees, representatives, attorneys, accountants, investigators, consultants, and all persons acting on their behalf. Plaintiffs interpret the term "Residential Plaintiffs" to mean the named individual Plaintiffs in this matter.

10473717v1/014918

# INTERROGATORIES

## INTERROGATORY NO. 12

Identify and describe every form of competition that You contend will occur absent the NFL Defendants' Challenged Conduct and explain why each of those alleged forms of competition will benefit consumers, including how those benefits will outweigh the benefits of the challenged agreements.

## RESPONSE

Plaintiffs object to this interrogatory prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to the definition of "NFL Defendants' Challenged Conduct" as under inclusive of the anticompetitive conduct described in Plaintiffs' Consolidated Amended Complaint.

Subject to the foregoing objections, Plaintiffs respond by directing the NFL Defendants to the Consolidated Amended Complaint, Dkt. No. 163, and the Ninth Circuit's Opinion, Dkt. No. 266, which describe the restraints at issue and the facts supporting Plaintiffs' contention that the removal of those restraints will expand consumer access to live professional football telecasts while lowering the price of the NFL Sunday Ticket package currently only available to DirecTV subscribers.

Plaintiffs further respond that the NFL is an association of its thirty-two teams. The teams are not one collective single entity. "Each of the teams is a substantial, independently owned, and independently managed business." *Am. Needle Inc. v. NFL*, 560 U.S. 183, 196 (2010). "'[T]heir general corporate actions are guided or determined' by 'separate corporate consciousnesses,' and '[t]heir objectives are' not 'common.'" *Id.* (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984)). The teams compete "not only on the playing field, but to attract fans, for gate receipts, and for contracts with managerial and

10473717v1/014918

1    playing personnel," and "in the market for intellectual property." *Id*. at 196–97.

2        The teams have nonetheless expressly agreed not to compete in the

3    telecasting of their games. Instead, they have each agreed to convey their

4    telecasting rights to the league, which has entered into a set of agreements designed

5    to sharply limit competition between live professional football telecasts. Under

6    these agreements, CBS and Fox combine to produce telecasts of all Sunday-

7    afternoon games but have agreed with the NFL Defendants to distribute only one

8    game at a time in any local market. They coordinate with each other and the NFL

9    Defendants to ensure that only two or three (or very occasionally four) Sunday-

10   afternoon games are aired in each market, even though ten to thirteen games are

11   played every Sunday afternoon. Only two NFL telecasts—at most—are aired head-

12   to-head at a given time in any local television market.

13       To protect these local telecasts from the other NFL telecasts, the NFL

14   Defendants and their television partners agreed that all Sunday-afternoon games not

15   telecast by AFC/NFC package winning bidders (Networks: CBS or Fox) at each

16   location would be available at that location only through a limited, non-basic,

17   subscription service that had to be offered at "premium" prices and on an all-or-

18   nothing basis (meaning that *a la carte* or pay per view offerings of games were

19   prohibited). That service is Sunday Ticket, which DirecTV has offered since 1994.

20   Sunday Ticket provides access in any given location to all "out-of-market" Sunday-

21   afternoon games—*i.e*., all games other than those available at the given location on

22   local, over-the-air networks (or on cable, satellite, or streaming retransmissions of

23   the network channel feeds of those local, over-the-air networks). Sunday Ticket is

24   available only from DirecTV. In the vast majority of cases, consumers must also

25   subscribe to a basic television package from DirecTV to get Sunday Ticket.

26   Because most households subscribe to different pay television services (often in

27   conjunction with Internet service, which DirecTV does not offer), or to no

28   television service at all, DirecTV's exclusivity significantly reduces the number of

Sunday Ticket subscribers. This limitation of telecasts to a fraction of potential viewers is unique in major American sports. Other American sports leagues offer subscription services through most pay-television providers and offer Internet versions that do not require a television subscription.

Because DirecTV is the exclusive provider of Sunday Ticket, it commands extraordinary prices. It is by far the most expensive of the professional sports packages offered in the United States, even though it offers the fewest telecasts. The consumer price per season for Sunday Ticket is roughly two times greater than for Major League Baseball's ("MLB") Extra Innings package, which is also offered through DirecTV, but without the exclusive telecasting rights it enjoys by agreement with the NFL. Commercial entities—such as bars or hotels—can pay as much as 20 times more per NFL season than per MLB season, resulting in per-game prices as much as 200 times higher.

The agreements are designed to work together to benefit DirecTV, the networks, and the NFL Defendants—at Plaintiffs' expense. They benefit the NFL Defendants because distributors will pay more for exclusive rights. They benefit AFC/NFC package winning bidders (Networks: CBS or Fox) because DirecTV's exclusivity and required high pricing limit the universe of potential subscribers to Sunday Ticket. The networks (and their local affiliates) are thus protected from competition from other potential providers of Sunday telecasts, enabling them to raise the prices they charge advertisers and distributors. And just as DirecTV's suppression of output protects the networks, the limitation on over-the-air telecasts protects DirecTV, allowing it to charge supracompetitive prices for both Sunday Ticket and its standard programming.

Without these restraints, the telecasts carried on Sunday Ticket would be available through additional distributors. There is no technological or economic impediment to expanding telecasts in this manner, and multiple distributors have an interest in carrying these telecasts. In addition, without the challenged restraints,

10473717v1/014918

each NFL team would be free to contract with competing distribution channels, such as other cable, satellite, or Internet carriers, and with competing networks. In an unrestrained market, each club would make its games available to all consumers through one or more systems of distribution, as determined by the market, at prices substantially lower than consumers currently pay for NFL Sunday Ticket. The removal of the restraints would result in (a) cheaper prices and (b) more viewing options available to more viewers that are (c) more responsive to consumer demand.

## INTERROGATORY NO. 13

Describe all factual bases that support Your contention that Residential Plaintiffs are paying a higher price for Sunday Ticket as a result of the NFL Defendants' Challenged Conduct than they otherwise would pay, and describe in detail:

    (a)    All factual bases that support Your contention that $359 for a full season of Sunday Ticket for Residential Plaintiffs was an "astronomic price[]"; and

    (b)    All the reasons how, if at all, You contend the exclusivity of the DirecTV-NFL arrangement impacted the price. (CAC ¶¶ 94, 102–03 ).

In responding to this Interrogatory, explain in detail what You contend Residential Plaintiffs should have been paying in lieu of the $359 price for a full season of Sunday Ticket and how you arrived at that value.

## RESPONSE

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly

6

burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Plaintiffs further object to the definition of "NFL Defendants' Challenged Conduct" as under inclusive of the anticompetitive conduct described in Plaintiffs' Consolidated Amended Complaint.

Subject to the foregoing objections, Plaintiffs incorporate by reference their response to Interrogatory No. 12.

**INTERROGATORY NO. 14**

Describe and identify all factual bases that support Your contention that absent the NFL Defendants' Challenged Conduct "a bundle of games, whether sold as Sunday Ticket or in another form, would continue to be profitable enough that the Teams would have an incentive to continue offering it." (CAC ¶ 103). In responding to this Interrogatory, identify and explain each and every single alternative form You contend the games would be sold to consumers and describe in detail how each of those alternative forms would work, including the number of teams that would comprise each bundle, the form in which these bundles would be made available to consumers, the pricing of these bundles, whether there would be any division between "in-market" and "out-of-market" games, whether there would be any blackout or other geographic restrictions, how many telecasts would exist for each game, etc.

## RESPONSE

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Plaintiffs further object to the definition of "NFL Defendants' Challenged Conduct" as under inclusive of the anticompetitive conduct described in Plaintiffs' Consolidated Amended Complaint.

Subject to the foregoing objections, Plaintiffs respond that in the absence of the anticompetitive restraints an efficient, unrestrained, and competitive market would determine the price at which such packages would be offered, and which live professional football telecasts into which locations would be offered in the packages. Given the low cost to supply telecast bundles, only the current anticompetitive restraints prevent suppliers from packaging telecasts in the manner most attractive to a variety of consumers, including but not limited to the current package of all out-of-market telecasts.

Plaintiffs further respond that an efficient, unrestrained, and competitive market would encourage greater distribution of NFL telecasts to consumers at lower cost. This would include alternative telecasting platforms, including but not limited

to Internet streaming, which would be driven by consumer demands for viewing both "in market" and "out of market" NFL games.

Plaintiffs further respond that the NFL's current practices reflect some alternative forms that may be used in a but-for world. For example, NFL Clubs are permitted to license game telecasts of pre-season games and, as a result, could license regular season games on their own as well. In light of the League's current practice of licensing games to networks such as NBC, CBS, FOX, or ESPN, the League or the Clubs could also license game telecasts to additional networks that would permit broader game viewership than permissible today. The League or the Clubs could also license games to other distributors beyond DIRECTV. Lastly, within Sunday Ticket itself, various options are available, including licensing Sunday Ticket to other distributors or offering *a la carte* or team-specific packages.

**INTERROGATORY NO. 15**

Identify whether in Your "but-for world" the same quantity of free NFL games would be available to consumers, explaining in detail how those games would be offered, if they would be at all, and how the quality of those broadcasts would differ from the current offerings of free NFL games.

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Subject to the foregoing objections, Plaintiffs respond that in the absence of the conspiracy alleged in the Consolidated Amended Class Action Complaint, an efficient, unrestrained, and competitive market would determine the price at which such packages would be offered, and which live professional football telecasts would be offered in the packages. There is no reason why, in the absence of the

anticompetitive restrictions, live NFL football telecasts would cease to be telecast via over-the-air television or via basic cable—just as hundreds of college football telecasts continue to be telecast over these distribution methods. There is also no reason why, in the absence of the anticompetitive restrictions, the quality of broadcasts would suffer. The fact that high-quality telecasts of other sports programming exist in the absence of the restraints here shows that the restraints are not necessary to create a quality product. Indeed, monopolies decrease incentives to improve quality and lower prices. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978) ("The Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services."). As a monopoly, the NFL Defendants and their distributors do not need to invest as much as firms in a competitive industry would have to invest to convince viewers to tune in to their product.

**INTERROGATORY NO. 16**

Identify each and every "less restrictive means" You contend could be utilized to achieve the procompetitive benefits with respect to live video presentations of professional football games. (*See* CAC ¶ 119).

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as vague and ambiguous because the referenced paragraph in the Consolidated Amended Complaint does not refer to any procompetitive benefit or less restrictive means as to the "live video presentations of professional football games" generally. Instead, the paragraph refers to the lack of procompetitive benefits and any less restrictive means as to the

output restrictions challenged by Plaintiffs in this case.

Subject to the foregoing objections, Plaintiffs respond that there is no procompetitive benefit to the current distribution of live professional telecasts that could not be achieved if the challenged restraints were removed. The "less restrictive means" would therefore be to eliminate the NFL Defendants' distribution restrictions. Other less restrictive means would be to eliminate some but not all of the NFL Defendants' distribution restrictions.

Plaintiffs further respond by incorporating their responses to Interrogatory Nos. 14 and 15.

**INTERROGATORY NO. 17**

Describe all factual bases that support Your contention that Residential Plaintiffs have been injured by the unavailability of live video presentations of regular season NFL games over the Internet, and explain the nature of the injury, providing specific examples, as well as how many potential consumers would have elected to watch games over the internet, the technological requirements necessary to provide these video presentations over the internet, including with respect to commercial establishments, and the quality of the presentations displayed over the internet. (CAC ¶ 143).

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the

contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at \*6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Plaintiffs further respond that providing sports telecasts (and video presentations generally) over the Internet is commonplace. Absent the challenged restraints, individual clubs could easily stream their own games as multiple providers have advanced systems for distributing live-game programming that they offer to individual sports teams. In addition, technology exists that allows individuals to stream live events through a variety of streaming services for pennies per viewer or, in some instances, paid for entirely by advertising. The ease and cost of Internet distribution is further evidenced by the wide variety of sporting events at all levels that can be viewed through Internet streaming at home, through mobile devices, and in commercial establishments.

### INTERROGATORY NO. 18

Describe each and every way You contend that, in Plaintiffs' proposed "but-for world," the broadcasting agreements between the NFL and the Broadcast Networks will be impacted by the various bundles that You contend will be available in response to Interrogatory No. 14, and explain in detail the nature of that impact. In responding to this Interrogatory, if You contend that there will be no impact whatsoever on the broadcasting agreements identified herein, please so state.

### RESPONSE

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be

produced in accordance with the schedule set by the Court.

Subject to the foregoing objections, Plaintiffs respond that while the Broadcast Networks would face increased competition from the offerings available through an efficient unconstrained and competitive market, they would still have a significant economic interest in carrying live professional football telecasts. Demand for rights to live professional football game programming is high, and the supply is insufficient to meet this demand. This has led to an extraordinary rise in the costs of the rights to telecast professional football games. It is not plausible that the Broadcast Networks, which are currently willing to pay well over a billion dollars per season for these rights, would cease to be willing to pay anything for the rights in the face of competition.

**INTERROGATORY NO. 19**

Describe all legal and factual bases that support Your contention that the "relevant product market" here is the "live video presentations of professional football games" with a "submarket of 'out-of-market' NFL games played on Sunday afternoon and not broadcast on CBS, Fox, or formerly on NBC within the viewer's local television market." In responding to this Interrogatory, explain whether it is Your contention that "out-of-market" games are not substitutable for "in-market" games, and if it is, describe all factual bases that support this contention. (*See* CAC ¶ 1, n.1).

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all legal and factual bases" concerning

Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Subject to the foregoing objections, Plaintiffs respond that individual sports and their telecasts have long been held to be relevant product markets. *See, e.g.*, *NCAA v. Bd. Of Regents of the Univ. of Okla.*, 468 U.S. 85, 111 (1984)*; L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1393 (9th Cir. 1984) ("NFL football has limited substitutes from a consumer standpoint …."); *Laumann v. NHL*, 907 F. Supp. 2d 465, 491 (S.D.N.Y. 2012) ("It is well established that there are peculiar and unique characteristics that set major league men's ice hockey and baseball apart from other sports or leisure activities, that close substitutes do not exist.") (quotation omitted).

The Supreme Court has also recognized that within a broad market, "well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). A court may determine the boundaries of such a submarket by examining "such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id*. Each of these factors supports finding a submarket for out-of-market telecasts. Sunday Ticket is recognized as a separate product from locally available games. It has peculiar characteristics and uses, namely the ability to watch out-of-market games as they happen. It has distinct customers for the same

reasons—commercial establishments and individuals that want to be able to watch games that would not otherwise be available. And Defendants have substantial pricing power because of Sunday Ticket's position in the market.

In terms of substitution, each NFL game is a substitute, but not a perfect substitute, for another. NFL telecasts are "differentiated products," meaning that they have different qualities or characteristics that affect consumer choices. That is hardly uncommon:

> Products are differentiated when many buyers regard them as different though the products still perform the same essential function. … Many machines performing the same function—such as copiers, computers, or automobiles—differ not only in brand name but also in performance, physical appearance, size, capacity, cost, price, reliability, ease of use, service, customer support, and other features. Nevertheless, they generally compete with one another sufficiently that the price of one brand is greatly constrained by the price of others.

Areeda & Hovenkamp, Antitrust Law, ¶ 563a at 383–84 (3d. ed. 2007).

As with other differentiated product markets, consumers differ in their demand characteristics. Some consumers are content to simply watch the games available on local television. Others, including all class members, are willing to pay a premium to watch certain teams or to obtain the option to watch any game. Many are in between—they would pay for some or all out-of-market games depending on the price. Defendants have segmented the market to capitalize on the differences in consumer preferences and price-sensitivities, offering a handful of games over the air while forcing more dedicated (or less price-sensitive) fans who want to be able to watch any of the Sunday games to purchase Sunday Ticket.

Plaintiffs further respond by referring the NFL Defendants to the holding of the Ninth Circuit regarding Plaintiffs' allegations regarding the market for live professional football telecasts:

15

"[D]efendants claim that the complaint fails to allege injury to competition because it has not alleged a properly defined market in which defendants have market power. Defendants argue that the complaint failed to plausibly allege that they have market power in either the market for live video presentations of regular season NFL games or the submarket for out-of-market game broadcasts. We reject these arguments. Given that professional football games have no substitutes (as fans do not consider NFL games to be comparable to other sports or forms of entertainment), *see L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1393 (9th Cir. 1984), the defendants in this case have effective control over the entire market for telecasts of professional football games. The complaint therefore plausibly alleges a naked restraint on output: that the defendants' interlocking agreements have the effect of limiting output to one telecast of each game, which is then broadcast in a limited manner, solely according to the NFL's agreements with CBS, Fox, and DirecTV. When there is such an agreement not to compete in terms of output, "no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement." *NCAA*, 468 U.S. at 109, 104 S. Ct. 2948 (quoting *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692, 98 S. Ct. 1355). Here, as in NCAA, "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999). Because the complaint adequately alleged that the defendants have imposed "a naked restriction" on output, it has not failed to allege market power. *NCAA*, 468 U.S. at 109, 104 S. Ct. 2948."

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1155–56 (9th Cir. 2019).

10473717v1/014918

**INTERROGATORY NO. 20**

Describe all factual bases that support Your contention that the NFL Defendants' Challenged Conduct "harms competition and lacks any procompetitive benefits[.]" In responding to this Interrogatory, identify with specificity the conduct you refer to and explain in detail how and why that alleged conduct lacks any procompetitive benefits. (CAC ¶ 158).

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Plaintiffs further object to the definition of "NFL Defendants' Challenged Conduct" as under inclusive of the anticompetitive conduct described in Plaintiffs' Consolidated Amended Complaint.

Subject to the foregoing objections, Plaintiffs incorporate by reference their response to Interrogatory No. 12.

10473717v1/014918

**INTERROGATORY NO. 21**

Identify and describe all factual bases that support Your contention that "[t]he exclusive distribution agreement is not needed to assure a quality broadcast of the games offered on Sunday Ticket or to allow the NFL sufficient oversight of games offered on Sunday Ticket or any other reasonable objective." (CAC ¶ 107); *see also* (CAC ¶ 126).

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Subject to the foregoing objections, Plaintiffs respond that the fact that high-quality telecasts of other sports programming exist in the absence of the restraints challenged here shows that the restraints are not necessary to create a quality product. Indeed, monopolies decrease incentives to improve quality and lower prices. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978) ("The Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services."). As a monopoly, the NFL Defendants and their distributors do not need to spend as much

as firms in a competitive industry would have to spend to convince viewers to tune in to their product.

Similarly, the fact that other sports leagues can operate and telecast their games without imposing the anticompetitive restraints at issue here shows that the restraints are unnecessary to allow the NFL sufficient oversight of games offered on Sunday Ticket. Until 1961, teams had no trouble obtaining television coverage without collective decision-making by the league. To this day, each team negotiates individual radio broadcasting contracts (separately from any national radio broadcasting contracts that the NFL Defendants negotiate), which compete against each other through all manner of radio distribution platforms.

**INTERROGATORY NO. 22**

Describe all legal and factual bases that support Your contention that you have standing to challenge the horizontal agreement between the NFL and its 32 member clubs to cooperate in the "broadcasting and sale of live video presentations of professional football games, including . . . the broadcasting and sale of" Sunday Ticket, (CAC ¶ 1), even though you are not a "direct purchaser" of any products related to that agreement.

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all legal and factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting

Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Plaintiffs further object to the interrogatory's contention that each Plaintiff is "not a 'direct purchaser' of any products related to" the "horizontal agreement between the NFL and its 32 member clubs to cooperate in the 'broadcasting and sale of live video presentations of professional football games, including . . . the broadcasting and sale of" Sunday Ticket. (CAC ¶ 1).'" Plaintiffs refer the NFL Defendants to the Ninth Circuit's opinion in this matter—and the legal authority therein—holding that Plaintiffs have standing as direct purchasers to challenge the agreement between the NFL and its 32 member clubs.

Plaintiffs further respond that they are direct purchasers from the conspiracy and its direct and intended victims. Plaintiffs' injury is a direct result of DirecTV's exploitation of its monopoly position in the market in selling Sunday Ticket—a position created by its agreement with the League, the agreements between the teams, and the agreements with the networks. Plaintiffs are injured directly because the interconnected agreements between the League, its member teams, and the NFL Defendants' broadcast partners directly caused Sunday Ticket's supracompetitive prices.

In addition, Plaintiffs seek injunctive relief as well as damages, so regardless of whether they are direct or indirect purchasers, they have standing to challenge the agreements between the NFL and the 32 clubs.

## **INTERROGATORY NO. 23**

Describe all factual bases that support Your contention that the NFL Defendants' Challenged Conduct injured all or a vast majority of the alleged class

10473717v1/014918

1   members in a measurable way, explaining in detail the scope and nature of that

2   injury and how the magnitude of that injury should be measured.

3   **RESPONSE**

4       Plaintiffs object to this interrogatory as prematurely seeking expert discovery

5   prior to the deadlines in the Court's schedule for this case and the terms of the

6   parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be

7   produced in accordance with the schedule set by the Court.

8       Plaintiffs further object to this interrogatory as overly broad and unduly

9   burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs'

10  allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170,

11  at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the

12  contention interrogatories eBay advances seek 'all facts' supporting Malone's

13  allegations, they are overly broad and unduly burdensome on their face."); *Anaya v.*

14  *CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007)

15  ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting

16  allegations, however, is overly broad and unduly burdensome on its face.").

17      Plaintiffs further object to the definition of "NFL Defendants' Challenged

18  Conduct" as under inclusive of the anticompetitive conduct described in Plaintiffs'

19  Consolidated Amended Complaint.

20      Subject to the foregoing objections, Plaintiffs respond by directing the NFL

21  Defendants to the Consolidated Amended Complaint, the Ninth Circuit's Opinion

22  reversing the District Court's grant of Defendants' Motion to Dismiss, and the

23  above response to Interrogatory 12, which describe the restraints at issue and the

24  facts supporting Plaintiffs' contention that the removal of those restraints will

25  expand consumer access to live professional football telecasts while lowering the

26  price of the NFL Sunday Ticket package currently only available to DirecTV

27  subscribers.

28      In terms of monetary harm, Plaintiffs' injury is the difference between what

they paid for the NFL Sunday Ticket package and what they would have paid for access to those telecasts in a world without the alleged anticompetitive restraints.

**INTERROGATORY NO. 24**

Explain whether You contend that, in your "but-for world," individual clubs would share revenue from their broadcasting feeds with other clubs, who would also be providing their own broadcast feeds, and explain in detail how that revenue sharing process would operate.

**RESPONSE**

Plaintiffs object to this interrogatory as prematurely seeking expert discovery prior to the deadlines in the Court's schedule for this case and the terms of the parties' Stipulated Expert Protocol (Dkt. No. 289). Plaintiffs' expert reports will be produced in accordance with the schedule set by the Court.

Plaintiffs further object to this interrogatory as overly broad and unduly burdensome in asking Plaintiffs to identify "all factual bases" concerning Plaintiffs' allegations. *See In re eBay Seller Antitrust Litig.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) ("Additionally, pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face."); *Anaya v. CBS Broad. Inc.*, No. 06-0476, 2007 WL 2219458, at *6 (D.N.M. May 16, 2007) ("A contention interrogatory that seeks, in one paragraph, all of the facts supporting allegations, however, is overly broad and unduly burdensome on its face.").

Subject to the foregoing objections, and without agreeing that revenue sharing is necessarily procompetitive, Plaintiffs respond that anticompetitive restraints are unnecessary to equalize revenue among the clubs. The NFL Defendants have an extensive revenue-sharing program that extends beyond broadcast revenue, and other sports leagues use a variety of means to share revenue. If the NFL Defendants wish to achieve a more equal allocation of revenue among

the clubs than a free market would produce, it is not necessary to restrain output and charge monopoly prices to do so. Direct revenue sharing could achieve the same aim without any of these restraints and consequent harm to consumers.

Dated:  March 21, 2022                    Respectfully submitted,

By:   */s/ Marc M. Seltzer*
                          Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Arun Subramanian (*Pro Hac Vice*)
asubramanian@susmangodfrey.com
William C. Carmody (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
Seth Ard (*Pro Hac Vice*)
sard@susmangodfrey.com
Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

Ian M. Gore (*Pro Hac Vice*)
igore@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883

Armstead Lewis (*Pro Hac Vice*)
alewis@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

Scott Martin (*Pro Hac Vice*)
smartin@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor

23

New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322

Christopher L. Lebsock (184546)
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980

Farhad Mirzadeh (*Pro Hac Vice*)
fmirzadeh@hausfeld.com
HAUSFELD LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

Howard Langer (*Pro Hac Vice*)
hlanger@langergrogan.com
Edward Diver (*Pro Hac Vice*)
ndiver@langergrogan.com
Peter Leckman (235721)
pleckman@langergrogan.com
Kevin Trainer (*Pro Hac Vice*)
ktrainer@langergrogan.com
LANGER GROGAN AND DIVER PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

*Plaintiffs' Co-Lead Counsel*

10473717v1/014918

# PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the County of King, State of Washington. I am over the age of 18 and not a party to this action; my business address is 1201 Third Avenue, Suite 3800, Seattle, WA 98101.

On March 21, 2022, I served the foregoing document(s) described as follows:

**PLAINTIFFS' RESPONSES TO THE NFL DEFENDANTS' SECOND SET OF INTERROGATORIES TO RESIDENTIAL PLAINTIFFS**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

**See Attached Service List**

_____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

_____ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

_____ BY FAX
I served by facsimile as indicated on the attached service list.

_XX_ BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

Executed on March 21, 2022, at Seattle, Washington

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_XX_ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| Ian M. Gore | /s/ Ian M. Gore |
|---|---|
| (Type or Print Name) | (Signature) |

10473717v1/014918

# SERVICE LIST

Gregg H. Levy
glevy@cov.com
Derek Ludwin
dludwin@cov.com
COVINGTON & BURLING LLP
850 Tenth Street NW One City Center
Washington, DC 20001-4956
Tel: (202) 662-6000
Fax: (202) 662-6804

Neema Trivedi Sahni
nsahni@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4800
Fax: (424) 332-4782

Beth A. Wilkinson
bwilkinwon@wilkinsonstekloff.com
Brian L. Stekloff
bstekloff@wilkinsonstekloff.com
Rakesh Kilaru
rkilaru@wilkinsonstekloff.com
Max Warren
mwarren@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005

Jeremy S. Barber
jbarber@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, NY 10036
Tel: (212) 294-8910
Fax: (202) 847-4005

*Counsel for Defendants National Football League, Inc., NFL Enterprises LLC, and the Individual NFL Clubs*

10473717v1/014918