Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max J. Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
John S. Playforth (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5429
glevy@cov.com
dludwin@cov.com
jplayforth@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION <br><br> _____ <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−PSG (SKx) <br><br> **NFL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** <br><br> Judge: Hon. Philip S. Gutierrez <br> Hearing Date: July 31, 2024 <br> Hearing Time: 9:00 a.m. <br> Courtroom: First Street Courthouse <br> 350 West 1st Street <br> Courtroom 6A <br> Los Angeles, CA 90012 |

# TABLE OF CONTENTS

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 3

    I.    Plaintiffs' Expert Evidence Was Inadmissible, Requiring Judgment For Defendants As A Matter Of Law. ............................................................. 3

    II.    The Failure Of Plaintiffs' Models Requires Judgment For Defendants Or Decertification Of Both Classes. ................................................................ 5

    III.    The Jury's Verdict On Damages Must Be Set Aside. ..................................... 8

    IV.    Plaintiffs' Prejudicial Price-Fixing Arguments Improperly Tainted The Proceedings. ............................................................................................ 11

Conclusion ..................................................................................................................... 12

i

Case No. 2:15-ml-02668-PSG (SKx)                 NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
   926 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................... 10

*Apple Inc. v. Samsung Elecs. Co.*,
   786 F.3d 983 (Fed. Cir. 2015) ................................................................................. 10

*Automatic Equip. Mfg. Co. v. Danko Mfg., LLC*,
   582 F. Supp. 3d 649 (D. Neb. 2022) ....................................................................... 10

*Bah. Surgery Ctr., LLC v. Kimberly-Clark Corp.*,
   820 F. App'x 563 (9th Cir. 2020) .............................................................................. 8

*Cascade Health Sols. v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ................................................................................... 12

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ........................................................................................... 1, 5, 6

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ......................................................................... 3, 4, 5

*Cones v. County of Los Angeles*,
   2016 WL 7438817 (C.D. Cal. Sept. 28, 2016) ....................................................... 12

*Cook v. Rockwell Int'l Corp.*,
   618 F.3d 1127 (10th Cir. 2010) ................................................................................ 7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................. 1, 4

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) ................................................................................... 4

*Drake v. Delta Air Lines, Inc.*,
   2005 WL 1743816 (E.D.N.Y. July 21, 2005) ........................................................... 3

*Drake v. Delta Air Lines, Inc.*,
   216 F. App'x 95 (2d Cir. 2007) ................................................................................. 3

ii

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment
                                    As A Matter Of Law Or, In The Alternative, For A New Trial

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ....................................................................................... 12

*Gasperini v. Ctr. for Humans., Inc.*,
   518 U.S. 415 (1996) ...................................................................................................... 8

*Hendrix ex rel. United States v. J-M Mfg. Co.*,
   76 F.4th 1164 (9th Cir. 2023) ....................................................................................... 3

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ....................................................................... 5

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ............................................................................. 2, 9, 10

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
   481 F. Supp. 965 (N.D. Cal. 1979) .............................................................................. 8

*In re Lamictal Direct Purchaser Antitrust Litig.*,
   957 F.3d 184 (3d Cir. 2020) ......................................................................................... 7

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) ................................................................................... 11

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ...................................................... 4, 6, 8

*In re Optical Disk Drive Antitrust Litig.*,
   303 F.R.D. 311 (N.D. Cal. 2014) ................................................................................. 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ..................................................................................... 8

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ................................................................................... 7

*Kurtz v. Costco Wholesale Corp.*,
   818 F. App'x 57 (2d Cir. 2020) ................................................................................... 8

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   791 F.2d 1356 (9th Cir. 1986) ..................................................................................... 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................. 10

iii

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................... 12

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) ..................................................................................... 8

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  594 U.S. 69 (2021) ................................................................................................. 12

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ................................................................................................. 4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .................................................................................... 6

*Samsung Elecs. Co. v. Apple Inc.*,
  580 U.S. 53 (2016) ................................................................................................. 10

*Sardis v. Overhead Door Corp.*,
  10 F.4th 268 (4th Cir. 2021) .................................................................................... 3

*Shockley v. Arcan, Inc.*,
  248 F.3d 1349 (Fed. Cir. 2001) .............................................................................. 10

*Transam. Comput. Co. v. Int'l Bus. Machs. Corp.*,
  698 F.2d 1377 (9th Cir. 1983) ................................................................................. 8

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................. 7

*United States v. J-M Mfg. Co.*,
  2020 WL 4196880 (C.D. Cal. June 5, 2020) .......................................................... 3

*Ward v. Sorrento Lactalis, Inc.*,
  2005 WL 4021366 (D. Idaho Dec. 22, 2005) ....................................................... 10

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ............................................................................................ 1, 3

*Worthen Bank & Tr. Co., N.A. v. Utley*,
  748 F.2d 1269 (8th Cir. 1984) ............................................................................... 11

iv

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment
As A Matter Of Law Or, In The Alternative, For A New Trial

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 2, 6

Fed. R. Civ. P. 50 ..................................................................................................... *passim*

Fed. R. Civ. P. 59 ..................................................................................................... 12

Fed. R. Evid. 806 ..................................................................................................... 12

**Other Authorities**

6A Moore's Federal Practice (2d ed. 1996) ............................................................. 8

v

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial

## INTRODUCTION

What happened at trial is no mystery. The jury rejected the unreliable testimony of Dr. Rascher and Dr. Zona, and with it Plaintiffs' attempt at class-wide evidence of liability, injury, and damages. The jury then concocted its own approach, disregarding the Court's instructions, the conduct Plaintiffs challenged, and any evidence properly presented at trial. The jury's novel approach—which is transparent down to the penny—nonsensically treated the *discounts* that class members received as *overcharges*—a verdict that is fundamentally irrational. Nothing in Plaintiffs' opposition changes this obvious reality or amounts to a coherent defense of the verdict.

*First*, Plaintiffs' experts should have been excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because their testimony was unreliable, unscientific, and incoherent. The Court appropriately did not "think much of [their] best shot[s]." 06/18/24 Tr. 1623:3–5. Nor did the jury. And without the experts, as the Court observed, "there's nothing left." *Id.* 1623:8. Binding Supreme Court precedent holds that judgment as a matter of law should be entered for defendants where, as here, the plaintiffs' expert testimony should have been excluded under *Daubert* and the remaining, properly admitted evidence is insufficient to support the jury's verdict. *See Weisgram v. Marley Co.*, 528 U.S. 440, 445–46 (2000). Plaintiffs do not dispute this well-settled law or offer any valid defense of their experts.

*Second*, even if the expert testimony survives *Daubert*, judgment should be granted to Defendants based on the fatal disconnect between the verdict and Plaintiffs' models. The Supreme Court has made clear, including in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), that there can be no class action without a valid model of class-wide injury and damages tethered to Plaintiffs' theory of liability, *id.* at 35. Plaintiffs have now abandoned Dr. Zona, and the jury clearly rejected Dr. Rascher's model in which Sunday Ticket would not have existed and all Sunday afternoon NFL games would instead have been added to basic cable channels for free. The jury's approach was fundamentally different—it concluded the Sunday Ticket package would have existed, only at the lower price of

1

$102.74. The jury's approach bears no relation to Plaintiffs' theory of liability (which challenged pooling and exclusivity, not just Sunday Ticket's price), was neither vetted nor tested under Rule 23, and leaves the Court and Plaintiffs unable to answer essential questions such as which class members were injured or how to allocate any award.

*Third*, Plaintiffs badly misstate the law in arguing that anything goes with respect to injury and damages as long as damages come in below the outer bound that their experts proposed. Ninth Circuit precedent *requires* setting aside a damages award with no evidentiary support, particularly where the jury's inappropriate approach is plain as day. *See In re First All. Mortg. Co.*, 471 F.3d 977, 1001–02 (9th Cir. 2006). Plaintiffs do not deny that the jury determined that $102.74 was the but-for price of Sunday Ticket. Because the only record evidence of the actual average price of Sunday Ticket was also $102.74, the only damages calculation with any evidentiary support would have been $0. What the jury did instead—treat a *list price* for *residential* subscribers ($294), from only *two* years (2018 and 2019), that may have been paid by *nobody*, as the actual price for *all class members*, in separate residential *and commercial* classes, over a *twelve-year period*—is unsustainable.

The Court gave Plaintiffs every chance to play it straight and present the case that they developed for over a decade. At class certification, the Court allowed Plaintiffs to move forward based on the possibility that their experts' models could show class-wide proof tied to their liability theory. At summary judgment, the Court allowed Plaintiffs to maintain those challenges to pooling and exclusivity. And at trial, the Court allowed Plaintiffs' experts to testify without limitation. In response, Plaintiffs exploited every opportunity to transform this case into a referendum on Sunday Ticket's price, leading to a nonsensical result with no evidentiary basis, let alone one based on coherent class-wide proof. The jury's verdict turns common and lawful business practices into a multi-billion-dollar antitrust violation and undermines every premise of the case that Plaintiffs presented to the courts over the previous decade. The verdict should be set aside and judgment entered for Defendants. At a minimum, the classes must be decertified.

2

Case No. 2:15-ml-02668-PSG (SKx)            NFL Defendants' Reply In Support Of Their Motion For Judgment
                                                  As A Matter Of Law Or, In The Alternative, For A New Trial

# ARGUMENT

## I. PLAINTIFFS' EXPERT EVIDENCE WAS INADMISSIBLE, REQUIRING JUDGMENT FOR DEFENDANTS AS A MATTER OF LAW.

As the Court recognized, *see* 06/18/24 Tr. 1623:8, a defendant is entitled to judgment as a matter of law where a plaintiff's case at trial hinges on expert testimony that should have been excluded. *See Weisgram*, 528 U.S. at 443–44, 457 (defense judgment is the appropriate outcome in "cases which, on excision of testimony erroneously admitted, there remains insufficient evidence to support the jury's verdict"). Following *Weisgram*, courts routinely grant Rule 50 judgments when trial confirms that expert testimony is unreliable. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (judgment for defendant where basis for damages was an "expert opinion [that] should not have been admitted because it did not incorporate all aspects of the economic reality of the [relevant] market"); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 299–300 (4th Cir. 2021); *United States v. J-M Mfg. Co.*, 2020 WL 4196880, at *20–41 (C.D. Cal. June 5, 2020), *aff'd sub nom. Hendrix ex rel. United States v. J-M Mfg. Co.*, 76 F.4th 1164 (9th Cir. 2023); *Drake v. Delta Air Lines, Inc.*, 2005 WL 1743816, at *8–9, *11 (E.D.N.Y. July 21, 2005), *aff'd,* 216 F. App'x 95 (2d Cir. 2007).

Plaintiffs do not dispute this principle. They cite no case—and Defendants are aware of none—in which plaintiffs avoided a Rule 50 judgment after their experts were deemed unreliable. Thus, Plaintiffs' whole case stands or falls on the reliability of Dr. Rascher's testimony. Plaintiffs have affirmatively disclaimed Dr. Zona in their latest brief, saying "his analysis is no longer at issue." ECF No. 1495, 50(b) Opp. at 17 n.15.[1] And as Plaintiffs' briefs show, Dr. Rascher's testimony was their central proof not just of damages, but of

---

[1] For good reason: despite over a year to prepare, Dr. Zona offered no response to the well-founded and well-known criticisms of his haphazard efforts. Plaintiffs' post-hoc defenses, *see* ECF No. 1458, 50(a) Opp. at 13–19, do not take his testimony from "gobbledygook" to a reliable methodology. 06/18/24 Tr. 1620:6–9, 1621:13–24. Like Dr. Rascher, Dr. Zona "ignored inconvenient evidence" and failed to account for "economic realities." *Concord Boat*, 207 F.3d at 1057; *see* 50(a) Mot. at 7–10.

3

Case No. 2:15-ml-02668-PSG (SKx)        NFL Defendants' Reply In Support Of Their Motion For Judgment
                                        As A Matter Of Law Or, In The Alternative, For A New Trial

anticompetitive effects and injury. *See* 50(a) Opp. at 2–7, 9–11; 50(b) Opp. at 9–14. The Court itself recognized that Dr. Rascher's testimony goes to "antitrust impact." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *11 (C.D. Cal. Feb. 7, 2023).

The Court appropriately expressed skepticism of Dr. Rascher's methodology after seeing his live testimony, including cross-examination. *See, e.g.*, 06/18/24 Tr. 1623:3–8. That skepticism was well-founded because Dr. Rascher committed virtually every *Daubert* error—including offering opinions without factual support (or contrary to the record), cherry-picking facts, being unable to answer basic questions about his model, and substituting speculation for sound economic analysis. ECF No. 1456, 50(a) Mot. at 3–7. The jury rejected Dr. Rascher's methodology, confirming the Court's well-founded fears.

Yet Plaintiffs offer no new defense of his work in their latest brief, or any valid defense in their earlier brief. Plaintiffs' primary submission is that Dr. Rascher was not actually required to construct a plausible but-for world ("BFW"), but needed only to remove the challenged conduct and assume that everything else would remain the same. That is not the law. The Ninth Circuit has held that an expert constructing a BFW must not only remove the challenged conduct, but also "presume the existence of rational economic behavior in the hypothetical free market." *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985). In other words, "antitrust plaintiffs are not entitled to assume [that] favorable aspects" of the market will remain constant in the BFW. *Id.* at 1512. They must instead "incorporate all aspects of the economic reality" of the market. *Concord Boat*, 207 F.3d at 1057; *see Ohio v. Am. Express Co.*, 585 U.S. 529, 547–48 (2018) (analysis must consider outcomes "one would expect to find in a competitive market"). Here, that meant conducting a rigorous analysis of what the BFW would look like that accounts for the incentives of market participants. *See* 50(a) Mot. at 4–7.[2] Plaintiffs

---

[2] To the extent that Plaintiffs rely on Mr. Elhauge, Dr. Rascher did not rely on him in either his reports or his testimony. And Plaintiffs do not (and cannot) suggest that Mr. Elhauge's testimony could independently support the verdict; among other things, he presented no model of the BFW, let alone one that proved injury and damages on a class-wide basis.

4

Case No. 2:15-ml-02668-PSG (SKx)                NFL Defendants' Reply In Support Of Their Motion For Judgment
                                                As A Matter Of Law Or, In The Alternative, For A New Trial

admit that Dr. Rascher did not do this analysis, *see* 50(a) Opp. at 2, which is fatal to his testimony.

Nor can Plaintiffs defend Dr. Rascher by again incanting the Ninth Circuit's references to college football. 50(a) Opp. at 2–3. The Ninth Circuit did not purport to do Dr. Rascher's job of preparing a sound economic analysis, nor did the Circuit sanction his approach of picking and choosing different facets of college football to support different points at different times. 50(a) Mot. at 3–4; *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (expert cannot "cherry-pick" data and "reject[] or ignor[e] . . . evidence that contradicts his conclusion"). Plaintiffs notably offer no defense of Dr. Rascher's constantly shifting account of college football.

Last, the NFL "New Frontier" document does not save Dr. Rascher. 50(a) Opp. at 4–5; *see* 50(a) Mot. at 6–7 (summarizing trial testimony explaining the document's unreliability). Dr. Rascher set out to create a BFW in which the NFL did not pool out-of-market game rights. But the New Frontier scenario involved the NFL Teams' continuing to pool their rights with the League. *See* TX-686 at 6, 13, 14. An expert cannot justify a BFW by cherry-picking parts of a single document that is fundamentally inconsistent with his theory of liability. *See Comcast*, 569 U.S. at 36–38; *Concord Boat*, 207 F.3d at 1056 (expert cannot "ignore[] inconvenient evidence").

In short, Plaintiffs offer nothing to improve on Dr. Rascher's "best shot" at trial. 06/18/24 Tr. 1623:3–6. His testimony should be excluded, obviating the need for any inquiry into how the jury reached its verdict. Without Dr. Rascher, there is "nothing left," *id.* 1623:8, requiring judgment as a matter of law for Defendants.

## II. THE FAILURE OF PLAINTIFFS' MODELS REQUIRES JUDGMENT FOR DEFENDANTS OR DECERTIFICATION OF BOTH CLASSES.

Even if Dr. Rascher's testimony is not excluded, a Rule 50 judgment is appropriate based on his model's abject failure at trial. A class-action damages verdict must be based on a valid model that matches Plaintiffs' liability case. That was the holding of *Comcast*: "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages

5

Case No. 2:15-ml-02668-PSG (SKx)　　　NFL Defendants' Reply In Support Of Their Motion For Judgment
As A Matter Of Law Or, In The Alternative, For A New Trial

case *must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.*" 569 U.S. at 35 (emphasis added) (citation omitted).

Plaintiffs cannot satisfy that bright-line rule because the jury rejected Plaintiffs' liability theory and adopted a different approach inconsistent with that theory.[3] Plaintiffs' case was premised on challenging pooling and exclusivity. Having discarded Dr. Zona, Plaintiffs' only class-wide proof of injury and damages tied to that liability theory was Dr. Rascher's college football model, in which out-of-market games would have been "available on regular cable or satellite channels—and class members would not have had to pay the subscription fee required for [] Sunday Ticket." 50(a) Opp. at 3. In other words, Sunday Ticket would have been unnecessary, and damages could be calculated on a class-wide basis by reference to the uniform BFW price of $0.

The jury's verdict manifestly did not apply Dr. Rascher's methodology. The jury disagreed that the but-for price of out-of-market games would have been $0 because those games would be free and Sunday Ticket would not exist. That is undeniable because the jury both did not award $7 billion in damages and plainly used $102.74 as the but-for price. *See* ECF No. 1490, 50(b) Mot. at 1, 4–5 (explaining jury's formula to the penny). Indeed, the fact that the jury used $102.74 as the but-for price reflects the belief that Sunday Ticket would continue to exist (and have value) in the BFW. The jury's assessment of injury and calculation of damages thus are "not consistent with the plaintiffs' theory of liability," *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 n.9 (9th Cir. 2022), and reflect a rejection of the core assumptions on which Dr. Rascher's BFW is based. In short, the jury rejected the only class-wide model of injury and damages tied to plaintiffs' theory of liability, necessitating outright reversal.

But the jury's specific impact and damages determination presents even worse problems under Rule 23. *First*, antitrust damages can exist only if the real-world prices are

---

[3] In granting certification, the Court did not find that Plaintiffs had shown class-wide impact by a preponderance of the evidence—only that their models, if accepted by the jury, could do so. *Sunday Ticket*, 2023 WL 1813530, at *11. The jury did not make this finding either—just the opposite—so *no* fact finder has concluded that Plaintiffs met their burden.

6

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Reply In Support Of Their Motion For Judgment
As A Matter Of Law Or, In The Alternative, For A New Trial

higher than but-for prices. Here, the only evidence of the actual Sunday Ticket price paid by class members was Dr. Zona's $102.74 calculation for all subscribers—which the jury seized upon as the but-for price. If Plaintiffs had sought class certification by showing that the but-for price for all class members equaled the only measure of actual price for residential class members—and by then comparing that price to a list price in two out of twelve years of the class period—this Court would surely have denied their motion. *Second*, the jury's use of the *average* actual price as the but-for price means that liability as to any individual plaintiff is speculative. Courts routinely deny certification when presented with approaches that employ averages that mask individual variation among class members. *See, e.g.*, *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020); *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 321 (N.D. Cal. 2014); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring) ("[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand."). *Third*, the jury's approach provides no way to fairly apportion the award to the classes—a central requirement to a valid judgment. *See, e.g.*, *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1138 (10th Cir. 2010).

Plaintiffs cite no case permitting a class verdict to survive such a massive bait-and-switch. Almost all of the cases Plaintiffs cite are not class actions and merely uphold verdicts where adjustments of parameters in the plaintiff's model provide a ready explanation for the jury's damages award. In the only post-*Comcast* class action decision cited by Plaintiffs, *In re Urethane Antitrust Litigation*, 768 F.3d 1245 (10th Cir. 2014), the court upheld the verdict, not simply because it was below the plaintiffs' outer bound, but because it was consistent with the jury's having "fully credited [the expert's] models" and reducing damages based on specific, rational choices grounded in the evidence, *id.* at 1267–68. Here, by contrast, the jury's calculations are fundamentally irreconcilable with Dr. Rascher's model; there are no mere adjustments (and Plaintiffs identify none) that could get the jury from all games' being available for free without Sunday Ticket to Sunday Ticket's being worth $102.74 but not $294. *See supra* at 2, 6. Plaintiffs identify no authority

7

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Reply In Support Of Their Motion For Judgment
As A Matter Of Law Or, In The Alternative, For A New Trial

upholding a verdict where it is clear that the jury rejected Plaintiffs' model designed for a different liability theory and the mismatch is evident for all to see down to the penny. The failure of Plaintiffs' models means this Court should enter a Rule 50 judgment against the Class. *See Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 62 (2d Cir. 2020).

In the alternative, the Court should decertify the (b)(2) and (b)(3) classes, necessitating entry of final judgment against the named plaintiffs. The Court's certification analysis relied entirely on the possibility that the jury would accept Plaintiffs' models in service of pooling or exclusivity challenges. *See Sunday Ticket*, 2023 WL 1813530, at *11. Plaintiffs have now abandoned Dr. Zona, and the jury clearly rejected Dr. Rascher's model in favor of an alternative approach with no evidentiary basis. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). Moreover, if Plaintiffs had originally tried to certify a price-fixing class based on Dr. Rascher's college football model (or alternatively based on nothing), the Court would have rejected it out of hand. There is no reason for a different outcome now. *Bah. Surgery Ctr., LLC v. Kimberly-Clark Corp.*, 820 F. App'x 563, 566 (9th Cir. 2020); *see also, e.g.*, *Mazzei v. Money Store*, 829 F.3d 260, 271 (2d Cir. 2016). Decertification would leave the Court with only the individual claims of the four plaintiffs, for whom there was no evidence of injury or damages outside of Dr. Rascher's testimony—meaning that judgment should also be entered against them.

**III. THE JURY'S VERDICT ON DAMAGES MUST BE SET ASIDE.**

At a minimum, the Court should vacate the damages verdict because "[g]uesswork is guesswork, whether it originates on the witness stand or in the jury room." *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 1019 (N.D. Cal. 1979), *aff'd sub nom. Transam. Comput. Co. v. IBM*, 698 F.2d 1377 (9th Cir. 1983). Contrary to Plaintiffs' assertions, precedent stretching back to the dawn of this Nation's history confirms that the power of a trial court to set aside an irrational, outrageous verdict is deeply rooted and very broad. *See, e.g.*, *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 433 (1996) ("That authority is large." (citing, among other things, 6A Moore's Federal

8

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial

Practice ¶ 59.05[2], pp. 59-44 to 59-46 (2d ed. 1996) ("The power of the English common law trial courts to grant a new trial for a variety of reasons with a view to the attainment of justice was well established prior to the establishment of our Government."))).

Plaintiffs suggest otherwise only by misrepresenting the law. Take *Los Angeles Memorial Coliseum Commission v. National Football League ("Raiders")*, 791 F.2d 1356 (9th Cir. 1986). What Plaintiffs say about that case is that "Ninth Circuit precedent is crystal clear: if the jury's award is 'within the range' supported by the evidence, courts *do not* touch it." 50(b) Opp. at 17. But that interpretation—the central premise of Plaintiffs' brief—is not the law. What the Ninth Circuit actually said in *Raiders* is that a jury's damages award must *both* "find substantial support in the record *and* lie within the range sustainable by the proof." *Raiders*, 791 F.2d at 1366 (emphasis added). In subsequent cases, the Ninth Circuit interpreted *Raiders* to permit inquiry into whether "it is sufficiently certain that the jury award was not based on proper consideration of the evidence," and overturned awards where there is "no other plausible explanation" besides the jury's reliance on "an incorrect damages calculation." *First Alliance*, 471 F.3d at 1001–02.

*First Alliance* controls here. Once the jury rejected Plaintiffs' models, any award of damages was by definition based only on speculation and guesswork. And just as in *First Alliance*, a "candid assessment of the jury's calculations" shows "beyond doubt" what the jury did, *id.* at 1001–02, and that those calculations have no support, let alone "substantial support in the record," *Raiders*, 791 F.2d at 1366. The only evidence in the case of the actual price paid for Sunday Ticket on average was $102.74. By finding injury and damages anyway, the jury irrationally turned *discounts* that class members had received into "damages" to be trebled. Indeed, the jury's transparent error is at least twice as obvious as in *First Alliance*, because here the jury applied the same damages formula to the residential *and* commercial classes rather than just one class. And contrary to Plaintiffs' suggestion, 50(b) Opp. at 20–21, nothing in *First Alliance* turned on the fact that the damages award exceeded the maximum offered by the expert. That was one fact in the case, but the ground for decision was that the jury's approach was "beyond doubt" yet

9

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment
As A Matter Of Law Or, In The Alternative, For A New Trial

"incorrect." 471 F.3d at 1001–02; *see also Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1109 (N.D. Cal. 2013) (Koh, J.) (ordering new trial where improper damages calculation was "quite apparent," even though "the evidence as a whole could have supported an award of a similar, or even higher, amount"), *vacated and remanded on other grounds*, 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded*, 580 U.S. 53 (2016).

*First Alliance* thus flatly contradicts Plaintiffs' assertion that "[r]everse-engineering a jury's damages verdict" is "completely impermissible." 50(b) Opp. at 19. That is what the Ninth Circuit did in *First Alliance* and other courts have done elsewhere. 471 F.3d at 1002; *see, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336–39 (Fed. Cir. 2009) (vacating damages award, lower than the expert's outer bound, where "working the math backwards strongly suggests that the jury must have used" a particular calculation, that was inappropriate under the facts of the case); *Automatic Equip. Mfg. Co. v. Danko Mfg., LLC*, 582 F. Supp. 3d 649, 658, 666–69 (D. Neb. 2022); *Ward v. Sorrento Lactalis, Inc.*, 2005 WL 4021366, at *1 (D. Idaho Dec. 22, 2005) (where it was "apparent" that the jury's math involved irrational assumptions about future job prospects, the damages award could not stand); *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363–64 (Fed. Cir. 2001).

Without their baseless claim that courts can never look under the hood when a jury issues an irrational verdict below the experts' top-end estimate, Plaintiffs have nothing else. Their attempted explanations for the verdict, *see* 50(b) Opp. at 21–22, are mere fantasy. For example, it makes no sense to say that the jury "may have believed the but-for price would be $0," or some other number, but awarded lower damages because of "defense arguments that created uncertainty about the actual prices class members paid." 50(b) Opp. at 21–22. If the jury believed the but-for price was $0, they would have had no choice but to award Plaintiffs' full request—that the classes spent a total of $7 billion on Sunday Ticket was undisputed. And they had no competent class-wide evidence of any other but-for price. The defense for unsupported speculation is not more unsupported speculation.

In the end, it *does* "matter why the jury reduced damages for the residential class by 18%," "why they discounted damages for the commercial class by 93%," and "why

they . . . subtracted $102.74 from $294 along the way." 50(b) Opp. at 22. "There was no testimony or evidence from the record which would support an award in this amount[, so] the amount of the verdict is not supported by substantial evidence." *Worthen Bank & Tr. Co., N.A. v. Utley*, 748 F.2d 1269, 1273 (8th Cir. 1984). But this verdict is even worse than a typical lack-of-substantial-evidence case: It is clear exactly what steps the jury took to reach the damages verdict, and that it created an entire damages approach with no evidentiary or legal basis. That decision requires reversal.

## IV. PLAINTIFFS' PREJUDICIAL PRICE-FIXING ARGUMENTS IMPROPERLY TAINTED THE PROCEEDINGS.

While the Court need not reach the issue to grant Defendants' motion, Plaintiffs' improper trial conduct provides a clear explanation for how the jury lost its way. Throughout trial, Plaintiffs exploited every opportunity to interject the concept of price-fixing, contrary to the law and to their prior representations to the courts.

As an initial matter, Plaintiffs are simply wrong that their heavy references to price fixing were not a reinvention of their case. *See* 50(b) Opp. at 7. Plaintiffs said to the Ninth Circuit: "[T]his case is not an explicit price-fixing case." Opening Br. for Plaintiffs-Appellants at 70, *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, No. 17-56119 (9th Cir. Feb. 5, 2018); *accord* ECF No. 184, Pls.' Opp. Defs.' MTD at 22–23 (same). The Ninth Circuit, in turn, agreed that Plaintiffs had not brought a price-fixing case. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1158 (9th Cir. 2019). Notwithstanding those prior representations, Plaintiffs used the phrase "price fixing" *fifteen times* during their opening statement. *See* 06/06/24 Tr. (Pls.' Opening) 104:9–105:19, 110:17–23, 113:17–114:3, 121:5–9, 122:9–22, 123:5–7, 129:16–20, 131:4–8, 131:19–23, 132:11–13, 134:12–16, 137:18–19.

But Plaintiffs' reinvention of their case did not end with their opening statement. As the Court observed, their trial examinations often amounted to belated depositions, *see, e.g.*, 06/10/24 Tr. (L. Jones) 554:9–23, 680:4–21, because of their effort to focus the trial on documents relating to their newly constructed, post-discovery price-fixing theory, such

11

as documents from the agency period that were never explored during depositions, *see, e.g.*, 06/06/24 Tr. (Bornstein) 293:13–294:18; 06/07/24 Tr. 327:1–9.

Plaintiffs compounded the prejudice by exploiting Rule 806, including by repeatedly arguing the documents for their truth after they were admitted, including in closing. 50(b) Mot. at 15 & n.7. "Where attorneys have tried to get in the 'back-door' what they could not get into evidence, courts have protected against harm to the opposing party by granting a new trial." *Cones v. County of Los Angeles*, 2016 WL 7438817, at *8–9 (C.D. Cal. Sept. 28, 2016) (Gutierrez, J.) (granting new trial in part based on use of inadmissible evidence because jury "may have considered the evidence despite the Court's limiting instructions").

The straight line between Plaintiffs' misconduct and the jury's verdict is plain to see. The jury rejected Plaintiffs' class-wide proof of anticompetitive harm, injury, and damages from pooling and exclusivity, and instead inexplicably decided that Sunday Ticket should have been offered by DirecTV at the *only record-supported measure of actual price that class members paid*. Both the Supreme Court and the Ninth Circuit have made clear that courts should be especially wary of antitrust theories that punish price cutting. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 896 (9th Cir. 2008). That is a particularly pro-consumer manifestation of the general requirement to give "'wide berth to [defendants'] business judgments'" in antitrust cases. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 990 (9th Cir. 2023) (quoting *NCAA v. Alston*, 594 U.S. 69, 102 (2021)). The jury's decision to convert the substantial discounts DirecTV offered into a multi-billion-dollar antitrust violation contravenes these fundamental principles, in a decision with wide-ranging consequences not just for the NFL, but for businesses throughout the country.

## CONCLUSION

For the reasons stated in Defendants' motions under Federal Rules of Civil Procedure 50 and 59, the Court should grant judgment as a matter of the law to Defendants, conditionally (or alternatively) grant Defendants a new trial, or decertify the classes.

12

Case No. 2:15-ml-02668-PSG (SKx)   NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial

| | |
|---|---|
| Dated: July 24, 2024 | Respectfully submitted, |
| | /s/ *Beth A. Wilkinson* |
| | Beth A. Wilkinson (admitted *pro hac vice*) |
| | Rakesh N. Kilaru (admitted *pro hac vice*) |
| | Brian L. Stekloff (admitted *pro hac vice*) |
| | Jeremy S. Barber (admitted *pro hac vice*) |
| | Max J. Warren (admitted *pro hac vice*) |
| | **WILKINSON STEKLOFF LLP** |
| | 2001 M Street NW, 10th Floor |
| | Washington, DC 20036 |
| | Telephone: (202) 847-4000 |
| | Facsimile: (202) 847-4005 |
| | bwilkinson@wilkinsonstekloff.com |
| | rkilaru@wilkinsonstekloff.com |
| | bstekloff@wilkinsonstekloff.com |
| | jbarber@wilkinsonstekloff.com |
| | mwarren@wilkinsonstekloff.com |
| | |
| | Neema T. Sahni (Bar No. 274240) |
| | **COVINGTON & BURLING LLP** |
| | 1999 Avenue of the Stars |
| | Suite 1500 |
| | Los Angeles, CA 90067-6045 |
| | Telephone: (424) 332-4800 |
| | Facsimile: (424) 332-4749 |
| | nsahni@cov.com |
| | |
| | Gregg H. Levy (admitted *pro hac vice*) |
| | Derek Ludwin (admitted *pro hac vice*) |
| | John S. Playforth (admitted *pro hac vice*) |
| | **COVINGTON & BURLING LLP** |
| | One CityCenter |
| | 850 Tenth Street NW |
| | Washington, DC 20001 |
| | Telephone: (202) 662-6000 |
| | Facsimile: (202) 662-6291 |
| | glevy@cov.com |
| | dludwin@cov.com |
| | jplayforth@cov.com |
| | |
| | *Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs* |

13

Case No. 2:15-ml-02668-PSG (SKx)    NFL Defendants' Reply In Support Of Their Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial