Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

[Additional Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 2:15-ml-02668−MEMF (SKx)<br><br>**NFL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO RETAX COSTS**<br><br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br>Date: May 23, 2025<br>Courtroom: First Street Courthouse<br>350 West 1st Street<br>Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 1

ARGUMENT .......................................................................................................... 3

    I.  Plaintiffs Have Not Rebutted the Presumption of Awarding Costs to the Prevailing Party. ............................................................................... 3

        A. Any Disparity in Resources Between the NFL and the Individual Plaintiffs Does Not Immunize Plaintiffs from Costs. ................................................................................................ 4

        B. A Cost Award Will Not Have an Improper "Chilling Effect" on Future Litigants. ............................................................................ 5

        C. The Issues Presented in This Case Were Not Unusually "Close and Difficult." ............................................................................ 6

        D. This Case Is Not a Case of National Importance Envisioned By the Ninth Circuit. ............................................................................ 8

    II.  The Court Should Deny Plaintiffs' Request to Defer Cost Consideration Until After Appeal. ........................................................... 8

    III. The Specific Costs Taxed by the Clerk Are Proper and Should Be Upheld. ............................................................................................... 10

        A. Trial Exhibit Printing Costs Were Reasonable and Necessarily Incurred. ............................................................................................ 10

        B. Redaction Costs Were Necessary Copy Preparation Under § 1920. ................................................................................................. 12

CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Mexican-American Educ. v. State of California*,
  231 F.3d 572 (9th Cir. 2000)......................................................................... 3

*Camfield v. Bd. of Trs. of Redondo Beach Unified Sch. Dist.*,
  2018 WL 910459 (C.D. Cal. Feb. 14, 2018).......................................... 4, 5, 9

*Champion Produce, Inc. v. Ruby Robinson Co.*,
  342 F.3d 1016 (9th Cir. 2003)....................................................................... 8

*Dawson v. City of Seattle*,
  435 F.3d 1054 (9th Cir. 2006)..................................................................... 10

*Draper v. Rosario*,
  836 F.3d 1072 (9th Cir. 2016)....................................................................... 9

*Escriba v. Foster Poultry Farms, Inc.*,
  743 F.3d 1236 (9th Cir. 2014)............................................................... 6, 7, 8

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
  920 F.2d 587 (9th Cir. 1990)....................................................................... 11

*Haitayan v. 7-Eleven, Inc.*,
  2018 WL 5263210 (C.D. Cal. Aug. 31, 2018)............................................... 4

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  2018 WL 11354865 (C.D. Cal. Sept. 11, 2018) ................................. 4, 6, 8, 9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 914 (9th Cir. 2015)....................................................................... 12

*In re Williams Sec. Litig.-WCG Subclass*,
  558 F.3d 1144 (10th Cir. 2009)..................................................................... 3

*Jardin v. DATAllegro, Inc.*,
  2011 WL 4835742 (S.D. Cal. Oct. 12, 2011) ............................................ 5, 9

*Mam v. City of Fullerton*,
  2014 WL 12573550 (C.D. Cal. July 24, 2014)............................................. 5

*Mulligan v. Yang*,
  2017 WL 826909 (C.D. Cal. Mar. 2, 2017) ........................................................... 8

*National Football League v. Ninth Inning, Inc.*,
  141 S.Ct. 56 (2020) .............................................................................................. 6

*Newman v. Underhill*,
  2024 WL 1647218 (C.D. Cal. Mar. 29, 2024) ..................................................... 9

*Rossi v. City of Chicago*,
  790 F.3d 729 (7th Cir. 2015) ............................................................................... 4

*Save Our Valley v. Sound Transit*,
  335 F.3d 932 (9th Cir. 2003) ............................................................................... 4

*Stanley v. Univ. of S. Cal.*,
  178 F.3d 1069 (9th Cir. 1999) ......................................................................... 6, 8

*T.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
  2022 WL 1054935 (C.D. Cal. Mar. 3, 2022) ....................................................... 4

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
  566 U.S. 560 (2012) ............................................................................................. 6

*Taylor v. Autozone Inc.*,
  2012 WL 2357379 (D. Ariz. June 20, 2012) ....................................................... 6

*Tibble v. Edison Int'l*,
  2011 WL 3759927 (C.D. Cal. Aug. 22, 2011) ), *aff'd*, 520 Fed.
  Appx. 499 (9th Cir. 2013) .................................................................................... 5

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ............................................................................................. 7

*Williams v. J.B. Hunt Transp., Inc.*,
  2024 WL 2108841 n.1 (C.D. Cal. Apr. 30, 2024) ................................................ 5

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
  2010 WL 11404472 (C.D. Cal. June 17, 2010) ................................................. 11

**Statutes**

28 U.S.C. § 1920 ........................................................................................... 2, 10, 12

iii

Case No. 2:15-ml-02668-MEMF (SKx)    NFL Defendants' Memorandum In Opposition To Plaintiffs' Motion To Retax Costs

**Rules**

Fed. R. Evid. 702 ..................................................................................................... 2

Fed. R. Civ. P. 54 .............................................................................................. 3, 5, 6

C.D. Cal. L.R. 54-3.10 ................................................................................. 10, 11, 12

## INTRODUCTION

After a multi-week jury trial, the Court entered judgment for the NFL on all claims and declared the NFL the "prevailing party" for purposes of a costs award under Federal Rule 54(d)(1). Consistent with that ruling and pursuant to federal law, the Clerk of Court thereafter taxed $321,308.86 in litigation costs against Plaintiffs.

Plaintiffs now urge the Court to reject or defer that cost award. But none of Plaintiffs' arguments overcome the strong presumption that Defendants, as the prevailing parties, are entitled to recover their taxable costs under Rule 54(d)(1). Plaintiffs have not carried their heavy burden to show that this case is so exceptional that an ordinary cost award is not merited. To the contrary, the factors Plaintiffs cite were either considered and rejected by the Clerk or are insufficient as a matter of law to overcome Rule 54's presumption in favor of costs. As such, the Court should reject Plaintiffs' motion to retax costs.

## BACKGROUND

This class-action litigation challenged the NFL's "Sunday Ticket" television package under the antitrust laws. In June 2024, the case proceeded to a jury on behalf of a class of residential subscribers and a class of commercial subscribers.

Reading Plaintiffs' brief might leave the impression that they were the prevailing party at trial, but that is simply not true. Plaintiffs chose to stake their case on the testimony of their two experts, Dr. Rascher and Dr. Zona. Those experts laid out the theories of class-wide injury and damages that Plaintiffs put forth at trial. But as Judge Gutierrez repeatedly remarked at trial, Defendants' cross-examination of those experts at trial exposed the fatal deficiencies in those theories. Indeed, shortly after the experts' testimony, Judge Gutierrez observed, "I think there's a viable chance for a Rule 50 in this case because I think – I think I probably . . . should have granted the *Daubert* motions as to Zona and Rascher. . . . [W]e'll cross that when we come to it, but I think – I'm struggling with plaintiffs' case right now." Trial. Tr. 1621.

Following trial, the Court granted judgment as a matter of law in Defendants' favor on Plaintiffs' § 1 and § 2 antitrust claims. Dkt. 1513. In granting judgment, the Court found that "Dr. Rascher's and Dr. Zona's testimonies should be excluded under FRE 702 because the models they developed are not products of sound methodologies." *Id*. at 4. The Court concluded that without Dr. Rascher's and Dr. Zona's testimonies, Plaintiffs could not show injury on a class-wide basis, and issued an order granting judgment as a matter of law for the NFL on all claims. *Id*. The Court also conditionally ordered a new trial based on the irrationality of the jury's verdict. *Id.* at 12. After receiving Defendants' proposed judgment and Plaintiffs' objections thereto, the Court entered judgment for Defendants on all claims and ordered that the Defendants were the prevailing party for purposes of Rule 54(d)(1). Dkt. 1542. Plaintiffs have noticed an appeal from the judgment, which is now pending before the Ninth Circuit.

As the prevailing parties in the district court, Defendants timely filed a consolidated Bill of Costs seeking $389,715.61, supported by detailed invoices and an itemized breakdown of each cost category. Dkt. 1547. Plaintiffs filed objections with the Clerk, Dkt. 1560, asserting both that certain categories were not taxable and that the Court should exercise discretion to deny all costs given the case's importance, complexity, and the parties' financial disparity. On May 9, 2025, the Clerk of Court issued a Taxation of Costs granting in part Defendants' application. Dkt. 1575. The Clerk allowed $321,308.86 in costs, and disallowed $68,406.75 (citing that fees for expedited transcripts are not taxable without a court order). *Id*. at 2. All allowed costs fell into the recognized categories of 28 U.S.C. § 1920 (such as filing fees, service fees, transcript costs, witness fees, exemplification, and copies of materials necessarily obtained for use in the case).

On May 16, 2025, Plaintiffs filed the instant motion to retax costs. Dkt. 1576. They ask this Court to review the Clerk's award and to order each side to bear its own costs or alternatively to defer any cost award until after the appeal. Plaintiffs

also specifically object to two categories of costs that the Clerk allowed: approximately $52,170 for trial exhibit printing, and approximately $30,931 for vendor services to redact confidential information from sensitive NFL business documents.

## ARGUMENT

### I. Plaintiffs Have Not Rebutted the Presumption of Awarding Costs to the Prevailing Party.

Rule 54(d)(1) of the Federal Rule of Civil Procedure provides that "costs—other than attorney's fees—should be allowed to the prevailing party." At the outset, there can be no dispute that Defendants are the prevailing party. Indeed, the Court rendered a complete judgment against Plaintiffs that explicitly decreed that Defendants were the prevailing party for purposes of Rule 54(d)(1). Dkt. 1542. That judgment rested on Plaintiffs' failure to prove antitrust injury, Dkt. 1513 at 4, which in an antitrust class action is not a mere technicality; it is an essential element without which Plaintiffs cannot prevail. For that reason, Plaintiffs are simply wrong to suggest that "the jury's verdict that the NFL Defendants violated the antitrust laws still stands." Pls.' Mot. at 1. It does not and could not, given the failure of proof on an essential element of their case.

On its face, Rule 54 "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-American Educ. v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) ("[D]enying costs to a prevailing party is a severe penalty and . . . there must be some apparent reason to penalize the prevailing party if costs are to be denied").

"To overcome this strong presumption in favor of awarding costs to the prevailing party, the losing party must convince the court that the case on which the Bill of Tax rests is 'not ordinary,' or, in other words, that it would not be equitable

for the losing party to bear the costs." *Camfield v. Bd. of Trs. of Redondo Beach Unified Sch. Dist.*, 2018 WL 910459, at *2 (C.D. Cal. Feb. 14, 2018) (citing *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003)).

Plaintiffs attempt to meet this high burden through four arguments in favor of reducing or denying costs: (1) the disparity in resources between the NFL and the individual plaintiffs; (2) that a cost award would chill future antitrust lawsuits; (3) that this case was unusually close and difficult; and (4) this case presented a landmark issue of national importance. None of those factors overcome the presumption in favor of awarding costs to Defendants.

### A. Any Disparity in Resources Between the NFL and the Individual Plaintiffs Does Not Immunize Plaintiffs from Costs.

Courts routinely reject arguments that costs should not be awarded to corporations in cases brought by individual plaintiffs. *See, e.g.*, *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 WL 11354865, at *4 (C.D. Cal. Sept. 11, 2018) (rejecting an argument that there was a vast economic disparity because the losing parties were individual consumers and Defendants had billions in revenue); *T.P. v. Walt Disney Parks & Resorts U.S., Inc.*, 2022 WL 1054935, at *2 (C.D. Cal. Mar. 3, 2022) ("Courts in this District routinely tax costs in favor of corporate defendants against individual plaintiffs."); *Haitayan v. 7-Eleven, Inc.*, 2018 WL 5263210, at *3 (C.D. Cal. Aug. 31, 2018) ("[E]ven assuming there is a 'vast disparity' between Plaintiffs' and 7-Eleven's financial resources, this factor alone cannot justify denying costs because there is almost always a financial disparity between a corporate entity and individual litigants.").

Moreover, to trigger an exception to this general rule, Plaintiffs must come forth with specific evidence supporting their claim of financial hardship. *See, e.g.*, *Camfield*, 2018 WL 910459, at *3 (citing *Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015) ("The burden of proving financial hardship falls on the objecting party, who must provide the court with sufficient documentation such as affidavits,

4

statements of assets and income, and a schedule of expenses.")); *Mam v. City of Fullerton*, 2014 WL 12573550, at *1 (C.D. Cal. July 24, 2014) ("The losing party has the burden of showing why costs should not be awarded."). Here, Plaintiffs fail to put forth *any* evidence of their inability to pay.

Indeed, Plaintiffs' motion never claims that Plaintiffs' themselves would be obligated to cover the cost award and, in class actions, costs are often borne by counsel or insurers. Because "there is not sufficient evidence that Plaintiffs themselves would have to pay for the cost award," this factor should not weigh in Plaintiffs' favor. *See Camfield*, 2018 WL 910459, at *4; *see also Tibble v. Edison Int'l*, 2011 WL 3759927, at *3 (C.D. Cal. Aug. 22, 2011), *aff'd*, 520 Fed. Appx. 499 (9th Cir. 2013) (awarding costs where a fee arrangement provided that plaintiff's counsel would be liable for costs); *Jardin v. DATAllegro, Inc.*, 2011 WL 4835742, at *4 (S.D. Cal. Oct. 12, 2011) (explaining that courts only consider financial disparity when one party has very limited resources and that plaintiff had not "argued that he—as opposed to his counsel, pursuant to a fee agreement—w[ould] have to pay the cost award himself.").

In short, Rule 54(d) entitles the Defendants to recoup out-of-pocket expenditures now that they have prevailed, and Plaintiffs have not attempted to make any specific showing of inability to pay. Under these circumstances, following the text of Rule 54(d) is appropriate.

### B. A Cost Award Will Not Have an Improper "Chilling Effect" on Future Litigants.

Plaintiffs also argue that awarding costs here will have a chilling effect on future litigation. Their concern is both legally unsupported and speculative. As this Court has previously explained, "the weight of case law is concerned with ensuring civil rights litigation is not chilled, and this case is not an issue of civil rights." *Williams v. J.B. Hunt Transp., Inc.*, 2024 WL 2108841, at *3 n.1 (C.D. Cal. Apr. 30, 2024). Cases that have credited this factor generally cases involve individual

plaintiffs seeking to enforce constitutional rights–contexts where deterrence would carry systemic consequences. *See, e.g.*, *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999).

That is not the case here. Instead, this case was brought by well-resourced class counsel, who are known for making strategic decisions about whether to pursue cases by weighing the potential recovery (here, billions of dollars) against the costs and risks (including the risk of paying the defendant's taxable costs if the case fails). The possibility of an adverse cost award is *not* an unexpected, unfair outcome—it is a routine and foreseeable risk of litigation.

In fact, courts routinely find that cost awards in these kinds of cases will not have a chilling effect. *See In re 5-Hour Energy*, 2018 WL 11354865, at *3 (refusing to waive costs when costs were divided among seven plaintiffs, and were "orders of magnitude smaller than the approximately $3 billion in damages that Plaintiffs sought to recover on behalf of the class"); *Taylor v. Autozone Inc.*, 2012 WL 2357379, at *2 (D. Ariz. June 20, 2012). As the Supreme Court recently explained, shifting costs serves the salutary purpose of discouraging unnecessary or frivolous litigation by causing parties to weigh the risk of having to pay the winner's costs. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (recognizing purpose of Rule 54(d) cost shifting).

### C. The Issues Presented in This Case Were Not Unusually "Close and Difficult."

Plaintiffs likewise miss the mark in arguing that the issues in this case were exceptionally close and difficult, excusing them from paying costs. To the extent there were any close and difficult questions here, it was whether the case should have been allowed to proceed to trial at all. *See, e.g.*, *National Football League v. Ninth Inning, Inc.*, 141 S.Ct. 56, 57 (2020) (Kavanaugh, J., statement respecting denial of

cert) (stating that the Ninth Circuit decision reversing dismissal of the case "appears to be in substantial tension with antitrust principles and precedents.").

The fact that Plaintiffs had some initial success, though, is immaterial under Rule 54. Prevailing at the motion to dismiss or summary judgment stages involves different legal standards than prevailing at trial. At trial, Plaintiffs bore the burden to establish three elements. "(1) the existence of a contract, combination, or conspiracy between or among the NFL, the NFL Teams, and DirecTV; (2) that the contract, combination, or conspiracy unreasonably restrained trade; and (3) that the restraint caused Plaintiffs to suffer an injury to their business or property." Dkt. 1513 at 11. As the Court explained, "Plaintiffs failed to provide evidence from which a reasonable jury could make a finding of injury." *Id*. at 12. "And because there was no other support for the class-wide injury and damages elements of Plaintiffs' § 1 and § 2 claims, judgment as a matter of law for the Defendants is appropriate." *Id*. at 4 (citing *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000)). In short, this case did not turn on a "close" factual dispute that could have gone either way; it turned on a failure of proof. The result was a complete defense judgment following the exclusion of Plaintiffs' expert evidence.

Nor does the case's complexity distinguish it from other antitrust litigations in which costs are routinely awarded to the winner. Antitrust class actions often involve technical economic models and expert testimony, so accepting Plaintiffs' rule would mean that no antitrust defendant would ever recover costs. This case is far removed from the circumstances in *Escriba*, where the "close and complicated" nature of the issues was supported by specific findings, including unusual factual circumstances, complicated regulatory interpretation, and expert testimony on an uncommon point of law. 743 F.3d at 1248.

### D. This Case Is Not a Case of National Importance Envisioned By the Ninth Circuit.

Plaintiffs are also wrong that costs are inappropriate because this case "presents a landmark issue of national importance." Pls.' Mot. at 6–7 (citing *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003)). While a decision against the NFL might well have raised issues of national importance, a decision premised on the inadequacies of Plaintiffs' experts does not. "Courts most frequently deny costs on this ground when the case involves assertions of civil rights or tests the boundaries of the law in a way that is beneficial to the public." *In re 5-Hour Energy*, 2018 WL 11354865, at *2. This litigation did not clarify unsettled law nor vindicate any broadly applicable rights. Unlike the civil rights cases in which costs have been denied, Plaintiffs here did not attempt to "test the boundaries of our laws" to advance fundamental rights. *Stanley,* 178 F.3d at 1080; *see also Escriba*, 743 F.3d at 1248 (describing the case as one that protected "vital civil rights for women in the workplace").

Although this case was undeniably important to the NFL, it did not implicate constitutional rights or advance any broadly applicable doctrine. As such, it did not have public significance in the sense relevant to the cost analysis. As this Court has noted in similar costs disputes, "[w]hile worthy efforts to probe the law's limits should not be discouraged, Plaintiff's case does not approach the standard set in *Escriba*." *Mulligan v. Yang*, 2017 WL 826909, at *2 (C.D. Cal. Mar. 2, 2017) (denying costs where the plaintiff's claims were standard retaliation claims).

### II. The Court Should Deny Plaintiffs' Request to Defer Cost Consideration Until After Appeal.

As a fallback, Plaintiffs request that the Court defer ruling on costs until their pending appeal is resolved. That request should be denied.

Rule 54(d)(1) contemplates that costs be awarded promptly after judgment, even if an appeal is pending. In the Ninth Circuit, any cost order entered while an appeal is ongoing is simply treated as part of the appeal when reviewed by the

appellate court. *See Draper v. Rosario*, 836 F.3d 1072, 1086 (9th Cir. 2016) ("[A]n order fixing costs in the district court, while an appeal was pending, should be considered an inseparable part of the pending appeal").

If Plaintiffs wish to avoid paying the award pending appeal, the proper (and usually only) way is to post a supersedeas bond under Rule 62. Supersedeas bonds are necessary to protect the prevailing party's rights. *Camfield*, 2018 WL 910459, at *7. Plaintiffs have not done so, instead seeking an unsecured, indefinite stay. But "for an appellant to receive a waiver of a bond and an unsecured stay, the case must be 'extraordinary.'" *Id*. (quoting *Jardin*, 2011 WL 4835742 at *9). Plaintiffs have not explained *at all* why this case is "extraordinary," nor why following the ordinary course of seeking a stay and supersedeas bond would not suffice.

Indeed, Plaintiffs cannot satisfy any of the four factors that courts apply in determining whether to stay a cost award pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Newman v. Underhill*, 2024 WL 1647218, at *1 (C.D. Cal. Mar. 29, 2024); *In re 5-Hour Energy*, 2018 WL 11354865, at *4.

Plaintiffs have not come close to establishing they will likely prevail on appeal. The Court painstakingly detailed the many flaws in Plaintiffs' experts' methodologies, including the fact that they failed to provide a coherent model for the but-for-world. Dkt. 1513, at 4–11. The Court went on to explain how, without these experts' testimonies, Plaintiffs could put forth no evidence of antitrust injury. The Court's decision to exclude the experts is subject to abuse of discretion review, and Plaintiffs cannot make such a showing. Plaintiffs are similarly unlikely to succeed in convincing the Ninth Circuit that judgment as a matter of law on all of Plaintiffs' claims, including those for injunctive and declaratory relief, was improper given

Plaintiffs' failure to prove antitrust injury and given the expiration of the underlying agreement that gave rise to Plaintiffs' allegations.

Nor can Plaintiffs show the risk of irreparable injury if the cost award is enforced now, or that the case is uniquely important, for all the reasons described above.

Finally, deferral serves no efficiency purpose. The cost issues have been fully briefed and can be resolved now. *See Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006) ("[O]ur case law allows a party to contest an award of costs on appeal even if the notice of appeal did not raise the issue expressly."). The cleanest and most efficient path is to enforce Rule 54(d) now, with costs shifting later, only if appellate proceedings change the prevailing-party status.

In sum, Plaintiffs have provided no valid basis for postponement. Their request should be denied, and the Clerk's cost award should be affirmed.

### III. The Specific Costs Taxed by the Clerk Are Proper and Should Be Upheld.

Plaintiffs concede that they do not have specific objections to the majority of the costs claimed in the NFL's application, including filing fees, service of subpoenas, witness fees, deposition transcripts, and court-approved daily trial transcript. Instead, Plaintiffs seek to reduce two categories of costs allowed by the Clerk: (1) printing of trial exhibits and (2) redaction of confidential documents. Both are recoverable under 28 U.S.C. § 1920(4) and Local Rule 54-3.10. Plaintiffs present no authority or factual basis to disturb the Clerk's well-supported decision.

#### A. Trial Exhibit Printing Costs Were Reasonable and Necessarily Incurred.

Local Rule 54-3.10(f) authorizes costs for "exemplification of any document or record necessarily obtained for use in the case[.]" C.D. Cal. L.R. 54-3.10(f); *see also* 28 U.S.C § 1920(2), (4). Despite having a total cost of printing for trial of $104,341.79, the NFL only requested 50% of those costs ($52,170.89). Dkt. 1562, at

10

1  4. This reduction excluded internal-use materials and reflected only what was
2  reasonably attributable to trial: copies for the Court, jury, witnesses, and opposing
3  counsel. This reduction was also in line with similar printing expenses for other
4  complex cases. *See, e.g.*, *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams,*
5  *Inc.*, 920 F.2d 587, 588 (9th Cir. 1990) (affirming district court's award for the costs
6  of "half of the 320,000 papers copied"). The clerk agreed with this assessment,
7  refusing to lower the amount.

8  Defendants provided detailed invoices showing nearly 600,000 pages printed
9  and 830 hours of vendor labor. The requested $52,170.89 is thus both a reasonable
10 and fully supported taxable amount of costs for "exemplification of any document or
11 record necessarily obtained for use in the case." C.D. Cal. L.R. 54-3.10(f). Parties are
12 not required to prove that every page was ultimately used in court—only that the
13 printing was reasonably necessary at the time. In a high-volume antitrust trial,
14 producing thousands of exhibits and binders is standard and expected. Plaintiffs
15 identify no specific improper charge and instead speculate that some printing may
16 have been unnecessary. Plaintiffs' pure speculation about what was reasonable does
17 not rebut the presumption of necessity or the Clerk's discretionary judgment.

18 Plaintiffs argue that because 75% of their own printing costs were for their
19 internal benefit, that the Court should reduce the NFL's printing costs by another
20 50% (or reject them entirely). But this argument is both unclear and entirely
21 unsupported by law. Plaintiffs seem to imply that because they printed a substantial
22 volume of materials that were not necessary for trial, Defendants must have too.
23 Courts in this district have refused to make such arbitrary reductions to printing costs
24 at the losing party's request. *See Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
25 2010 WL 11404472, at *3 (C.D. Cal. June 17, 2010), aff'd, 526 F. App'x 761 (9th
26 Cir. 2013).

27 The Clerk, in taxing these costs, implicitly found that the printing costs were
28 properly documented and allowable. The Clerk would have disallowed any printing

charges for items not used or not necessary (the local rules require documentation, and Defendants provided it). Plaintiffs offer no competing evidence or methodology. The Clerk correctly taxed these costs.

### B. Redaction Costs Were Necessary Copy Preparation Under § 1920

Plaintiffs also challenge $30,931.00 for vendor redaction of confidential NFL contracts. Local Rule 54-3.10(g) authorizes costs for "physically replicating or reproducing material necessarily obtained for use in the case (including copies obtained to be produced in discovery) in any format in which such material is required to be produced and with any required characteristics (such as metadata or manipulability) intact." C.D. Cal. L.R. 54-3.10(g). Among other production costs, the NFL requested costs for the manual redaction of third-party confidential information.

Defendants used a vendor to ensure consistent redactions and avoid inadvertent disclosure of highly sensitive information. The vendor worked 170 hours to redact these lengthy and complex agreements. Redaction is part of "making copies" under § 1920(4). Courts have recognized that preparation of electronic discovery—including OCR, file conversion, and similar tasks—is recoverable as part of producing usable copies. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 928–29 (9th Cir. 2015). Redaction fits squarely within this category. And while Plaintiffs suggest the NFL engaged in duplicative "re-redaction," they are mistaken. Given the volume of sensitive third-party material in this case, it was important to make redactions correctly and ensure they reflect the Court's rulings at trial.

While Plaintiffs appear to dispute the costs of redactions, they provide no data on the number of pages redacted or complexity of the task. Nor do they identify any inefficiency or duplication. Without such evidence, the Court should not second-guess the Clerk's taxation.

# **CONCLUSION**

For all of the foregoing reasons, the NFL respectfully requests that the Court deny Plaintiffs' motion.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Rakesh N. Kilaru*
Beth A. Wilkinson (admitted *pro hac vice*)
Brian L. Stekloff (admitted *pro hac vice*)
Rakesh N. Kilaru (admitted *pro hac vice*)
Jeremy S. Barber (admitted *pro hac vice*)
Max Warren (admitted *pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jbarber@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

|   |   |
|---|---|
| 1 |   |
| 2 | Gregg H. Levy (admitted *pro hac vice*) |
|   | Derek Ludwin (admitted *pro hac vice*) |
| 3 | John S. Playforth (admitted *pro hac vice*) |
|   | **COVINGTON & BURLING LLP** |
| 4 | One CityCenter |
| 5 | 850 Tenth Street NW |
|   | Washington, DC 20001 |
| 6 | Telephone: (202) 662-6000 |
| 7 | Facsimile: (202) 662-6291 |
|   | glevy@cov.com |
| 8 | dludwin@cov.com |
| 9 | jplayforth@cov.com |
| 10 | *Counsel for Defendants National Football* |
| 11 | *League, NFL Enterprises LLC, and the Individual NFL Clubs* |